## **EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>                Debtors. [1] | Chapter 11<br><br>Case No. 23-11131 (___)<br><br>Jointly Administered<br><br>**Related Docket No.** |

**INTERIM ORDER (I) AUTHORIZING**
**THE DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS,**
**FOREIGN VENDORS, 503(b)(9) CLAIMANTS AND LIEN CLAIMANTS;**
**(II) AUTHORIZING ALL FINANCIAL INSTITUTIONS TO HONOR ALL RELATED**
**PAYMENT REQUESTS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an interim order (this "Interim Order"): (a) authorizing, but not directing, the Debtors to pay (i) Critical Vendor Claims up to the applicable Critical Vendor Cap; (ii) certain prepetition claims of Foreign Vendors up to the applicable Foreign Vendor Cap; (iii) 503(b)(9) Claimants; and (iv) Lien Claimants up to the applicable Lien Claimant Cap; (b) authorizing applicable banks and other financial institutions to honor and process related checks and transfers; (c) approving the form of Vendor Agreement attached to this Interim Order as **Exhibit 1**; and (e) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at an interim hearing before this Court (the "Hearing"); upon the Debtors' representation that the Interim Critical Vendor Cap, Interim Foreign Vendor Cap, and Interim Lien Claimant Cap amounts authorized to be paid on account of Vendors are consistent with the Debtors' debtor in possession financing budget; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an **interim** basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2023 at __:00 _.m. (Eastern Time).  Any objections or responses to entry of a final order on the Motion shall be filed with the Court and served so as to be received by the Notice Parties (as defined in the Motion) on or before _____, 2023 at 4:00 p.m. (Eastern Time).  In the event that no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.      The Debtors are authorized, but not directed, to pay the Critical Vendor Claims; *provided* that such payments shall not exceed $6.5 million in the aggregate on an interim basis unless otherwise ordered by the Court after notice and a hearing.

4.      The Debtors are authorized, but not directed, to pay the Foreign Vendor Claims; *provided* that such payments shall not exceed $1.2 million in the aggregate on an interim basis unless otherwise ordered by the Court after notice and a hearing.

5.      The Debtors are authorized, but not directed, to pay the Lien Claims; *provided* that such payments shall not exceed $2 million in the aggregate on an interim basis unless otherwise ordered by the Court after notice and a hearing.

6.      The Debtors are authorized, but not directed, to pay the 503(b)(9) Claims as the Debtors determine to be necessary or appropriate.

7.      The Debtors are authorized, but not directed, to pay the Lien Claims as the Debtors determine to be necessary or appropriate.

8.      The Vendor Agreement, substantially in the form attached hereto as **Exhibit 1**, is approved in its entirety.  A Vendor Agreement, once agreed to and accepted by the Vendor, shall be the legally binding contractual relationship between the parties governing the commercial trade relationship as provided therein.

9.      The Debtors are authorized, but not directed, to pay the Trade Claims, in whole or in part, upon such terms and in the manner provided in this Interim Order regardless of whether a Vendor has executed a Vendor Agreement; *provided that*, if any Vendor accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, availability, and other programs) in place twelve (12) months prior to the Petition Date, or such other trade terms that are acceptable to the Debtors (collectively, the "Customary Trade Terms"), then:  (a) the Debtors may take any and all appropriate steps to cause such Vendor to repay payments made to them on

3

account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such Vendor; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to re-characterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance, and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding, without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

10.     If any Vendor accepts payment on account of a Trade Claim and thereafter does not continue to provide goods or services to the Debtors on Customary Trade Terms, *provided that* any such Vendor shall be provided a reasonable opportunity to contest whether it continued to provide goods or services to the Debtors on Customary Trade Terms, any such payment shall be deemed an unauthorized avoidable postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may either:  (a) recover from the Vendor in cash or goods; or (b) at the Debtors' option, apply against any outstanding administrative claim held by such Vendor.  Upon recovery by the Debtors, the claim shall be reinstated as a prepetition claim in the amount so recovered, less the Debtors' reasonable costs to recover such amounts.  The Debtors are hereby authorized to obtain written verification before issuing payment to a Vendor that such Vendor will continue to provide goods and services to the Debtors on Customary Trade Terms for the remaining term of the Vendor's agreement with the Debtors; *provided, however*, that the absence of such written verification will not limit the Debtors' rights hereunder.

11.     The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary, to implement and effectuate the relief granted in this Interim Order.

12.     In accordance with this Interim Order (or other order of this Court), each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in the Motion are authorized to:  (a) receive, process, honor, and pay all checks presented for payment and to honor all funds transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts; and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated before, on, or subsequent to the Petition Date, without any duty to inquire otherwise and without any liability for following the Debtors' instructions.

13.     Nothing herein shall impair or prejudice the Debtors' ability to contest, in their discretion, or any other party's ability to contest, the extent, perfection, priority, validity, or amounts of any claims held by any Vendor.

14.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Interim Order or any payment made pursuant to this Interim Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtors, a waiver of the Debtors' rights subsequently to dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

15.     The Debtors shall maintain a matrix summarizing (i) the name of each Vendor paid on account of its Trade Claim and (ii) the amount paid by each Debtor payor to each Vendor on account of its Trade Claim.  On a monthly basis, the Debtors shall deliver an updated copy of the matrix to the United States Trustee, counsel to the DIP Agent, and any statutory committee appointed in these chapter 11 cases.

16.     Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any Trade Claim payment, which is authorized hereunder, made on account of an outstanding obligation of a Non-Debtor Affiliate[3] shall be subject to and in compliance with, the Intercompany Transaction (as defined in the Cash Management Orders) requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Motion for Entry of Interim and Final Orders Authorizing the Debtors to (A) Continue Operating Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Granting Related Relief* [Docket No. ●] filed substantially contemporaneously herewith (the "Cash Management Orders"). Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Cash Management Orders.

17.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

18.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

---

[3]     The Debtors fund operations of certain non-debtor subsidiaries located in Brazil, the United Kingdom and Portugal (the "Non-Debtor Affiliates").

DOCS_DE:243859.7

21.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

DOCS_DE:243859.7

**<u>Exhibit 1 to Interim Order</u>**

**Form of Vendor Agreement**

DOCS_DE:243859.7

_____

_____, 20__

TO:    [Vendors]
[Name]
[Address]


Dear Valued Supplier:

       As you are aware, Amyris, Inc. and certain of its affiliates (the "Company") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Case" and the "Bankruptcy Court," respectively) on August [●], 2023 (the "Petition Date"). On the Petition Date, the Company requested the Bankruptcy Court's authority to pay the pre-bankruptcy claims of certain suppliers in recognition of the importance of the Company's relationship with such suppliers and its desire that the Bankruptcy Case has as little effect on the Company's ongoing business operations as possible. On [●], the Bankruptcy Court entered an order (the "Order") authorizing the Company, under certain conditions, to pay the prepetition claims of certain trade creditors that agree to the terms set forth below and to be bound by the terms of the Order. A copy of the Order is enclosed.

       In order to receive payment on account of prepetition claims, you must agree to continue to supply goods, or services, as applicable, to the Company based on Customary Trade Terms (as defined in the Order). In the Order, Customary Trade Terms are defined as the normal and customary trade terms, practices, and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, availability, and other programs), that were most favorable to the Company and in effect between you and the Company prior to the Petition Date, or such other trade terms as you and the Company agree.

       For purposes of administration of this trade program as authorized by the Bankruptcy Court, you and the Company both agree that:

1.      The estimated balance of the prepetition claim (net of any setoffs, credits, or discounts) (the "Vendor Claim") that you will receive from the Company is $[●].

2.      You agree to waive [all/a portion] of any general unsecured claim against the Company in the amount of $[●] arising out of the following invoices: [●].

3.      [You will provide an open trade balance or credit line to the Company for delivery of postpetition movie titles, goods, or services, as applicable, in the amount of $[●] (which shall not be less than the greater of the open trade balance outstanding: (a) on [●], or (b) on normal and customary terms on a historical basis before and up to the Petition Date).]

4.      The terms of such open trade balance or credit line are as follows (if more space is required, attach continuation pages): [●]

5.      During the pendency of the Bankruptcy Case, you will continue to extend to the Company all Customary Trade Terms (as defined in the Order).

6.      You will not demand a lump sum payment upon consummation of a plan of reorganization in the Bankruptcy Case on account of any administrative expense priority claim that you assert, but instead agree that such claims will be paid in the ordinary course of business after consummation of a plan under applicable Customary Trade Terms, if the plan provides for the ongoing operations of the Company.

7.      The undersigned, a duly authorized representative of [Vendor], has reviewed the terms and provisions of the Order and agrees that [Vendor] is bound by such terms.

8.      You will not separately seek payment for reclamation and similar claims outside of the terms of the Order unless your participation in the Vendor payment program authorized by the Order (the "Vendor Payment Program") is terminated.

9.      You agree not to file or otherwise assert against the Company, the estate, or any other person or entity or any of their respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which such lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to you by the Company arising from agreements entered into prior to the Petition Date.  Further, you agree to take (at your own expense) all necessary steps to remove any such lien as soon as possible.

10.     In addition to any other obligations of confidentiality between you and the Company, you agree to hold in confidence and not disclose to any party:  (a) the existence of this Vendor Agreement, (b) the terms of this Vendor Agreement, and (c) the Customary Trade Terms (together, the "Confidential Information"); *provided* that if any party seeks to compel your disclosure of any or all of the Confidential Information, through judicial action or otherwise, or you intend to disclose any or all of the Confidential Information, you shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order, or any other available remedy to prevent such disclosure; *provided*, further, that if such remedy is not obtained, you shall furnish only such information as you are legally required to provide.

11.     If either the Vendor Payment Program or your participation therein terminates as provided in the Order, or you later refuse to continue to supply goods to the Company on Customary Trade Terms during the pendency of the Bankruptcy Case, any payments you receive on account of your Vendor Claim will be deemed voidable postpetition transfers pursuant to section 549(a) of the Bankruptcy Code.  You will immediately repay to the Company any payments made to you on account of your Vendor Claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever.  Your Vendor Claim shall be reinstated in such an amount so as to restore the

2

Company and you to the same positions as would have existed if payment of the Vendor Claim had not been made.

12.     It is agreed and understood that by entering into this Agreement there is no admission of liability, wrongdoing, or violation of law whatsoever by any party. This Agreement results solely from the parties' desire to expeditiously resolve disputed issues of law and fact. The existence and execution of this Agreement shall not be considered as an admission by any party.

13.     This Agreement shall in no event be offered as or construed or be deemed to be evidence or an admission or a concession by any party, with respect to the truth, validity, or merit of any claim, defense, or disputed fact, or with respect to any fault, wrongdoing, liability, or damages whatsoever or with respect to any matter.

14.     This Agreement shall be binding upon, and shall inure to the benefit of, the Parties and their respective successors and assigns.

15.     Any dispute with respect to this letter agreement, the Order, or your participation in the Vendor Payment Program shall be determined by the Bankruptcy Court.

If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call.

Sincerely,


_____
By:
[Name] [Title]

Agreed and Accepted by: [Vendor]

By: Its:

Dated: _____

3