# fIN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (\_\_\_)<br><br>(Joint Administration Requested) |

**DECLARATION OF LORIE BEERS IN SUPPORT OF
MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS (A) TO OBTAIN POSTPETITION
FINANCING AND (B) TO UTILIZE CASH COLLATERAL, (II) GRANTING
ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES,
(III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL
HEARING, AND (V) GRANTING RELATED RELIEF**

I, Lorie Beers, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am a Managing Director and the Head of Special Situations at Intrepid Investment Bankers LLC ("Intrepid"), the proposed investment bankers to the above-captioned debtors and debtors in possession (the "Debtors").

2. I submit this Declaration in support of the Motion of Debtors for Interim and Final Orders (I) Authorizing the Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing; and (VI) Granting Related Relief (the "Motion") and the financing package proposed therein (the "DIP Facility").[2]

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris, Inc.'s, principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, California 94608.

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

3. Except as otherwise indicated, all statements set forth in this Declaration are based upon (a) my personal knowledge of Debtors' operations and finances gleaned during the course of Intrepid's engagement with Debtors, (b) my discussions with Debtors' senior management, other members of the Intrepid team and Debtors' other advisors, and (c) my review of relevant documents and/or my opinion based upon my experience. If I were called upon to testify, I could and would testify competently to the facts set forth herein based on such personal knowledge, discussions, review of documents and/or opinion.

## BACKGROUND AND QUALIFICATIONS

4. I am a Managing Director and the Head of Special Situations at Intrepid. Intrepid is a specialty investment bank that provides M&A advisory, capital markets advisory, and special situations advisory services to a range of institutions including major corporations, private equity sponsors, and entrepreneur and family-owned companies, , through dedicated industry banking teams and product specialists. The firm's professionals have significant knowledge and expertise within relevant industries, having advised clients on a broad range of strategic transactions. I have over 35 years of professional experience that encompasses the full spectrum of financial restructuring. Prior to joining Intrepid, I was the founder and Group Head of Special Situations Investment Banking at Cowen. I have also held senior banker roles at StormHarbour Securities, Variant Capital Advisors, Seabury Group, KPMG Corporate Finance and Gordian Group. I began my career as a bankruptcy attorney and was a partner at Kasowitz, Benson, Torres & Friedman.

5. Intrepid has a dedicated capital advisory group, whose special situations professionals have extensive expertise providing investment banking services to financially distressed companies, creditors, committees, equity holders, asset purchasers, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court. Intrepid's professionals

have served as investment bankers and/or financial advisors in numerous chapter 11 cases, including but not limited to: *In re Tritek Int'l, Inc*., No. 23-10520 (TMH) (Bankr. D. Del. June 8, 2023) (advising debtor); *In re Watsonville Hospital Corp.*, No. 21-51477 (Bankr. N.D.C.A. Dec. 5, 2021) (advising debtor); *In re Aluminum Shapes, LLC*, No. 21-16520 (JNP) (Bankr. D.N.J. Oct. 8, 2021) (advising debtor); *In re Garrett Motion Inc.*, No. 20-12212 (Bankr. S.D.N.Y. Feb. 5, 2021) (advising Official Equity Committee); *In re Carla's Pasta, Inc.*, No. 21-20111 (Bankr. D. Conn. Mar. 22, 2021) (advising debtors); *In re Mishti Holdings, LLC*, No. 1911813 (CSS) (Bankr. D. Del. Dec. 16, 2019) (advising debtors); *In re Sienna Biopharmaceuticals, Inc.*, No. 19-12051 (MFW) (Bankr. D. Del. Oct. 15, 2019) (advising debtor).

## **DIP MARKETING EFFORTS AND FINANCING NEED**

6. In July 2023, the Debtors engaged Intrepid as investment banker. I lead the Intrepid team and, working closely with Debtors' management and other advisors, I have become well acquainted with Debtors' capital structure, liquidity needs, and business operations.

7. Following its engagement, Intrepid, with assistance of the Debtors and their other advisors, considered potential sources of financing that would provide the liquidity necessary to fund the Debtors' chapter 11 cases. As part of this process, Intrepid solicited proposals for debtor in possession financing by contacting approximately twenty (20) well-established and experienced third-party financial institutions and other capital sources. Such parties included lenders that often make loans in distressed and bankruptcy situations and have the capital necessary to provide adequate financing to the Debtors. Of these parties, seven (7) executed non-disclosure agreements and accessed information made available by Intrepid for prospective financing purposes.

8. To this date, the foregoing efforts have not surfaced any actionable financing proposals from any third parties. The Debtors received an offer from the Foris Prepetition Lenders

to provide postpetition financing necessary, and to authorize the use of Cash Collateral, to fund the Debtors' operations during the chapter 11 cases on a senior secured basis.

9. The DIP Facility and the authorization to use Cash Collateral as offered by the Foris Prepetition Lenders are the best financing options that the Debtors could obtain. Fully unsecured postpetition financing was not available to Debtors. Other potential sources of debtor in possession financing for Debtors, including on a junior secured basis, were also nonexistent. However, as noted above, the Debtors were able to obtain (i) financing from the Foris Prepetition Lenders on the terms of the proposed DIP Facility and (ii) consent of the Foris Prepetition Lenders' to use Cash Collateral on the terms set forth in the Motion.

10. Based on my experience and involvement in the negotiation of the DIP Facility, I believe that the DIP Facility, together with the use of Cash Collateral, is the best available option for the Debtors, in the best interest of Debtors' estates and stakeholders, and is necessary and appropriate under the circumstances. As such, in my opinion, the DIP Facility should be approved and Debtors should be authorized to use Cash Collateral.

## **CONCLUSION**

11. For all of the reasons set forth herein and in the Motion, I believe that obtaining postpetition financing in accordance with the terms of the proposed DIP Facility and Debtors' use of Cash Collateral is absolutely essential to Debtors' ability to minimize disruption and avoid immediate and irreparable harm to their estates.

12. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: August 9, 2023

*/s/ Lorie Beers*
Lorie Beers

Managing Director and the Head of Special Situations at Intrepid Investment Bankers LLC