## Exhibit A

**Motion**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re:

AMYRIS, INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 23-11131

(Joint Administration Requested)

## MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR INSURANCE POLICIES AND PROGRAMS, (B) HONOR ALL INSURANCE OBLIGATIONS, (C) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE AND FINANCE INSURANCE POLICIES; (II) AUTHORIZING CONTINUATION OF INSURANCE PREMIUM FINANCING AGREEMENT; AND (III) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors" or "Amyris") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby file this motion (the "Motion") for the entry of an interim order on an expedited basis, substantially in the form attached hereto as **Exhibit A** (the "Interim Order") and, following a final hearing to be set by the Court (the "Final Hearing"), the entry of a final order, substantially in the form attached hereto as **Exhibit B** (the "Final Order"), pursuant to sections 105, 363(b)(1), 503(b)(1), 1107(a), and 1112(b)(4)(C) of title 11 of the United State Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing, but not directing, the Debtors to continue their existing Insurance Policies (as defined below); (ii) authorizing, but not directing, the Debtors to pay certain (a) prepetition Insurance Obligations (as defined below), and (b) postpetition Insurance Obligations in the ordinary course of business; (iii) authorizing the Debtors to renew, amend, supplement, extend, or purchase and finance

---

[1]     A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

insurance policies in the ordinary course; (iv) authorizing the Debtors, in their discretion, to continue the Debtors' insurance premium financing agreement; and (v) granting related relief. In support of this Motion, the Debtors rely upon and refer this Court to the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), incorporated herein by reference.[2] In further support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. The Debtors confirm their consent, pursuant to Rule 9013-1(f) of the Local Rules, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105, 363(b)(1), 503(b)(1), 1107(a), and 1112(b)(4)(C) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

---

[2]      A capitalized term used but not defined herein shall have the meaning ascribed to it in the First Day Declaration.

**Background**

4.     On the date hereof (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases, and no committees have been appointed or designated.

5.     Amyris was founded in 2003 to create a more stable supply of a key anti-malarial treatment.  Through Amyris' cutting-edge science, artemisinin—the most effective anti-malarial drug in the world—is now consistently available to treat the deadly disease.  Using the same technological innovations that produced artemisinin, Amyris has become the world's leading manufacturer of ingredients made with synthetic biology.  Amyris provides sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products.

6.     In addition, Amyris operates a family of consumer brands that utilize the Company's ingredients to meet the growing demand for sustainable, effective, and accessible products, including Biossance® (clean beauty skincare), JVN™ (haircare), Rose Inc.™ (clean color cosmetics), Pipette® (clean baby skincare), OLIKA™ (clean wellness), MenoLabs™ (healthy living and menopause wellness), Stripes™ (menopausal wellness), and 4U by Tia™ (a new clean haircare line).

7.     A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the First Day Declaration.

3

## The Insurance Policies and Related Payment Obligations

8.      In the ordinary course of business, the Debtors are the beneficiaries of certain insurance policies (collectively, the "Insurance Policies," and each individually an "Insurance Policy") that provide coverage for, among other things, property, business automobile, general commercial liability, directors' and officers' liability,[3] and workers' compensation liability.  The Debtors obtain the Insurance Policies through various third-party insurance carriers (collectively, the "Insurance Carriers").  A list of the Insurance Policies is attached hereto as **Exhibit C**.[4]  As part of maintaining their Insurance Policies in the ordinary course of business, the Debtors pay premiums and other obligations related thereto, including any broker or advisor fees, assessments, or other fees (collectively, the "Insurance Obligations").  The Debtors believe that they are current on payment of all prepetition Insurance Obligations.  Out of an abundance of caution, the Debtors seek authority to pay any prepetition Insurance Obligations up to $100,000.

9.      The Debtors also use Arthur J. Gallagher & Co. (the "Broker") as their insurance broker to assist with the procurement and negotiation of certain Insurance Policies, and the Broker assesses certain fees or commissions ("Broker's Fees") that are included and paid as part of the applicable Insurance Policies.  The Debtors are current on payment of outstanding prepetition Broker's Fees.

10.      Continuation of the Insurance Policies, and entry into new insurance policies and related financing agreements, is essential to the preservation of the value of the Debtors' businesses and operations.  Moreover, in many instances, insurance coverage is required by the regulations,

---

[3]      The Debtors are current on premium payments for their directors' and officers' liability Insurance Policy, and tail coverage is currently in place.

[4]      The Debtors believe that **Exhibit C** is a complete list of the Insurance Policies.  However, to the extent that any Insurance Policy has been omitted, or the Debtors obtain new Insurance Policies, the Debtors request that the relief sought herein applies to such Insurance Policies as well.

4

laws, and contracts that govern the Debtors' commercial activities, including the Office of the United States Trustee's (the "U.S. Trustee") requirement that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. Accordingly, the Debtors request authorization, but not direction, to continue prepetition practices related to the Insurance Policies, satisfy prepetition obligations related thereto, and enter into new insurance policies and related financing arrangements, as applicable, in the ordinary course of business on a postpetition basis, subject to applicable law.

### Insurance Premium Financing Agreement

11.     Some, but not all, of the Insurance Policies are financed through that certain Premium Finance Agreement, effective as of September 17, 2022 (the "Insurance Premium Financing Agreement") between Amyris Inc. as the insured party (the "Insured Party") and IPFS Corporation of California d/b/a IPFS Corporation ("IPFS") as lender. A copy of the Insurance Premium Financing Agreement is attached hereto as **Exhibit D**. The obligations under the Insurance Premium Financing Agreement (the "Premium Financing Obligations") are secured by any and all unearned or return premiums and dividends that may become due under the policies purchased in connection with the Insurance Premium Financing Agreement. Among the potential remedies available to IPFS for non-payment is the ability to cancel the Insurance Policies and seek a refund of the Insurance Premiums it financed. As of the Petition Date, the Debtors are current on their Premium Financing Obligations. The Debtors seek authority to enter into new agreements as needed to finance the premiums under the affected Insurance Policies and to pay any associated Premium Financing Obligations.

## Relief Requested

12.     The Debtors seek entry of the proposed Interim Order in substantially the form attached hereto as <u>Exhibit A</u>, and entry of the proposed Final Order in substantially in the form attached hereto as <u>Exhibit B</u> (together, the "<u>Proposed Orders</u>"):  (i) authorizing, but not directing, the Debtors to continue their existing Insurance Policies; (ii) authorizing, but not directing, the Debtors to pay certain (a) prepetition Insurance Obligations, and (b) postpetition Insurance Obligations in the ordinary course of business; (iii) authorizing the Debtors to renew, amend, supplement, extend, or purchase and finance insurance policies in the ordinary course; (iv) authorizing  the  Debtors,  in their discretion, to continue the Debtors' insurance premium financing agreement; and (v) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately thirty-five (35) calendar days of the commencement of the Chapter 11 Cases to consider approval of this Motion on a final basis.

## Basis for Relief

**A.     Continuation of the Insurance Policies is Required
by the Bankruptcy Code and U.S. Trustee Guidelines**

13.     Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the Office of the United States Trustee for Region 3 (the "<u>U.S. Trustee Guidelines</u>").  Accordingly, the Debtors believe that it is essential to their estates, and consistent with the Bankruptcy Code and the U.S. Trustee Guidelines, that they continue to satisfy all Insurance Obligations related to the Insurance Policies and related financing agreements and that they have

6

the authority to supplement, amend, extend, renew, or replace their Insurance Policies as needed, in their judgment, without further order of the Court.

**B.     Satisfying the Insurance Obligations under the Insurance Policies and Related Financing Agreements in the Ordinary Course of Business Is Warranted**

14.     Under section 363(b) of the Bankruptcy Code, a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363(c) of the Bankruptcy Code authorizes a debtor-in-possession to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and . . . use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Maintenance of the Debtors' Insurance Policies and insurance financing programs, including payment of the prepetition and postpetition Insurance Obligations, renewing the Insurance Policies, and entering into new insurance arrangements, are within the ordinary course of the Debtors' business.

15.     Further, even if the continuation or renewal of the Insurance Policies was not considered to be ordinary course, under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus. Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtors to show that a sound business purpose justifies such actions."); *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (stating that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code).

7

16.     Moreover, pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  The purpose of section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction."  2 Collier on Bankruptcy § 105.01 (15th ed., rev. 2008).  Section 105(a) of the Bankruptcy Code essentially codifies the bankruptcy courts' equitable powers.

17.     The Insurance Policies provide the Debtors with essential insurance coverage.  Any lapse in the coverage to be provided under the Insurance Policies could expose the Debtors to substantial liability, monetary and otherwise, for injuries, damages, and penalties for failing to maintain proper insurance.  Therefore, in light of the importance of the Insurance Policies, the Debtors should be permitted to exercise their reasonable business judgment to continue and renew the Insurance Policies as they expire.

18.     Courts in this district have routinely granted relief similar to that requested herein. *See, e.g.*, *In re GigaMonster Networks, LLC*, No. 23-10051 (JKS) (Bankr. D. Del. Feb. 9, 2023); *In re Medly Health Inc.*, No. 22-11257 (Bankr. D. Del. Jan. 6, 2023); *In re First Guar. Mortg. Corp.*, No. 22-10584 (CTG) (Bankr. D. Del. July 26, 2022); *In re CarbonLite Holdings LLC*, No. 21-10527 (JTD) (Bankr. D. Del. Apr. 7, 2021); *In re Advantage Holdco, Inc.*, No. 20-11259 (JTD) (Bankr. D. Del. June 30, 2020); *In re Hertz Corp.*, No. 20-11218 (MFW) (Bankr. D. Del. June 25, 2020); *In re Exide Holdings, Inc.*, No. 20-11157 (CSS) (Bankr. D. Del. June 18, 2020); *In re Rentpath Holdings, Inc.*, No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Melinta Therapeutics, Inc.*, No. 19-12748 (LSS) (Bankr. D. Del. Feb. 7, 2020); *In re J & M Sales Inc.*, No. 18-11801 (LSS) (Bankr. D. Del. Aug. 27, 2018); *In re Samuels Jewelers, Inc.*, No. 18-11818 (KJC) (Bankr. D. Del. Aug. 8, 2018).

**C.  The Debtors Should Be Authorized to Honor their Insurance Obligations
Under and Renew or Otherwise Obtain Postpetition Premium Financing**

19.     Insurance premium financing traditionally involves an advance by the finance
company to the insurance company or its agent of the premium due for the full term of the
insurance policy.  "This advance is then repaid by the insured to the finance company in amortized
monthly installments which include an additional amount to cover financing charges.  The
financing company is secured in making this advance payment by obtaining the right to cancel the
policy and to receive the return premium due upon cancellation if timely repayments are not
made." *Baker & Co. v. Preferred Mut. Ins. Co.*, 569 F.2d 1347, 1348 (5th Cir. 1978).  The return
premium due to the finance company upon cancellation is known as an unearned premium.

20.     Security interests created by premium financing agreements have been recognized
as creating secured claims in bankruptcy to the extent of the amount of unearned premiums
financed pursuant to such agreements and, by extension, entry into purchase finance agreements
constitutes the incurrence of secured credit.  *See TIFCO, Inc. v. U.S. Repeating Arms Co. (In re
U.S. Repeating Arms Co.)*, 67 B.R. 990, 994–95 (Bankr. D. Conn. 1986); *Drabkin v. A.I. Credit
Corp. (In re Auto-Train Corp.)*, 9 B.R. 159, 164–66 (Bankr. D.D.C. 1981).  If the Debtors fail to
honor the Insurance Premium Financing Agreement, IPFS could seek to cancel the financed
policies for non-payment and may accelerate and declare due and payable the entire unpaid
premiums upon the Debtors' failure to honor their obligations under the Insurance Premium
Financing Agreement.  Because the Debtors are required to maintain insurance coverage during
these Chapter 11 Cases, the cancellation of these policies would be particularly disastrous.
Accordingly, the Debtors submit that payment of the prepetition amounts outstanding and the
monthly installment payments under the Insurance Premium Financing Agreement is necessary
and appropriate and may be authorized under sections 105(a) and 363(b) of the Bankruptcy Code.

9

21.      Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured postpetition debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate.  *See, e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating that with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko Prod. Co.*, 47 B.R. 444, 448–49 (D. Colo. 1985) (authorizing an interim financing agreement where the debtors' business judgment indicated that the financing was necessary and reasonable for the benefit of the debtors' estates).  Given the prevailing practices in the premium financing business, the Debtors believe that it is highly unlikely they would be able to obtain financing for their premiums under the Insurance Policies absent a secured financing agreement.  Accordingly, the Debtors submit that entry into any replacement financing agreement and granting security interests to secure such obligations is appropriate under section 364(c) of the Bankruptcy Code.

**D.      Cause Exists to Authorize the Debtors'
        Financial Institutions to Honor Checks and Electronic Funds Transfers**

22.      The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and access to debtor-in-possession financing.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Insurance Policies.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests with respect to the relief requested in this Motion.

10

## Satisfaction of Bankruptcy Rule 6003

23.     The Debtors believe that they are entitled to immediate authorization for the relief contemplated by this Motion.  Pursuant to Bankruptcy Rule 6003, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001."  Fed. R. Bankr. P. 6003.  As described above, continuing insurance coverage during these Chapter 11 Cases is necessary to the continuation of the Debtors' business operations.  Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' business operations at this critical juncture and add needless costs to the administration of these cases.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Waiver of Bankruptcy Rule 6004(h)

24.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, cause exists to justify a finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied, and to support the grant of a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that such notice requirements and such stay apply.

11

**Reservation of Rights**

25.     Nothing contained herein is intended or shall be construed as:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

**Notice**

26.     The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware, 19801, Attn: John Schanne, Esq. (John.Schanne@usdoj.gov); (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lenders, DIP Agent and the Foris Prepetition Secured Lenders, Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com), and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com); (d) co-counsel to the DIP Lenders, the DIP Agent and the Foris Prepetition Secured Lenders, Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com); (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which the Debtors conduct business; (g) the Securities Exchange Commission; and (h) any party that requests service pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business

days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).

### No Prior Request

27.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

### Conclusion

WHEREFORE, the Debtors respectfully request entry of the Proposed Orders, substantially in the forms attached hereto as <u>Exhibit A</u> (on an interim basis) and <u>Exhibit B</u> (on a final basis): (i) authorizing, but not directing, the Debtors to continue their existing Insurance Policies; (ii) authorizing, but not directing, the Debtors to pay certain (a) prepetition Insurance Obligations, and (b) postpetition Insurance Obligations in the ordinary course of business; (iii) authorizing the Debtors to renew, amend, supplement, extend, or purchase and finance insurance policies in the ordinary course; (iv) authorizing the Debtors, in their discretion, to continue the Debtors' insurance premium financing agreement; and (v) granting related relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

13

Dated: August 9, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*

Richard M. Pachulski (*pro hac vice* forthcoming)
Debra I. Grassgreen (*pro hac vice* forthcoming)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell (*pro hac vice* forthcoming)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  rpachulski@pszjlaw.com
        dgrassgreen@pszjlaw.com
        joneill@pszjlaw.com
        jrosell@pszjlaw.com
        sgolden@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

14

## Exhibit A

## Proposed Interim Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

AMYRIS, INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 23-11131

(Joint Administration Requested)
**Ref. Docket No. ____**

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR INSURANCE POLICIES AND PROGRAMS, (B) HONOR ALL INSURANCE OBLIGATIONS, (C) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE AND FINANCE INSURANCE POLICIES; (II) AUTHORIZING CONTINUATION OF INSURANCE PREMIUM FINANCING AGREEMENT; AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), for the entry of an interim order (this "Interim Order"): (i) authorizing, but not directing, the Debtors to continue their existing Insurance Policies; (ii) authorizing, but not directing, the Debtors to pay certain (a) prepetition Insurance Obligations, and (b) postpetition Insurance Obligations in the ordinary course of business; (iii) authorizing the Debtors to renew, amend, supplement, extend, or purchase and finance insurance policies in the ordinary course; (iv) authorizing the Debtors, in their discretion, to continue the Debtors' insurance premium financing agreement; and (v) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2]   A capitalized term used but not defined herein have the meaning ascribed to it in the Motion.

the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at an interim hearing before the Court (the "Hearing"); and upon the Debtors' representation that the amounts authorized to be paid pursuant to this Interim Order are consistent with the Debtors' debtor-in-possession financing budget; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2023, at__:__ _.m. (prevailing Eastern Time).  Any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served so as to be received by the following parties, by no later than 4:00 p.m. (prevailing Eastern Time) on _____, 2023:  (i) proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn:  James E. O'Neill (joneill@pszjlaw.com) and Jason H. Rosell (jrosell@pszjlaw.com); (ii) the Office of the United

17

States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: John Schanne (john.schanne@usdoj.gov); (iii) counsel to the DIP Lenders, DIP Agent and the Foris Prepetition Secured Lenders, Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com) and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com); (iv) co-counsel to the DIP Lenders, the DIP Agent and the Foris Prepetition Secured Lenders, Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com); and (v) counsel for any official committee of unsecured creditors appointed in the Chapter 11 Cases. In the event that no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.    The Debtors are hereby authorized, but not directed, to pay, in the ordinary course of their business, all premiums, claims, deductibles, retrospective adjustments, administrative and broker's fees, and all other obligations related to the Insurance Policies on account of such prepetition obligations without further order of this Court, *provided* that such payments shall not exceed $100,000 in the aggregate on an interim basis pending a final hearing on the Motion, and the Debtors are authorized to pay and honor any postpetition Insurance Obligations in connection with the Insurance Policies as such obligations come due in the ordinary course of business.

4.    Subject to entry of a final order and only as necessary to avoid immediate and irreparable harm, the Debtors are hereby authorized, but not directed, to: (a) maintain their Insurance Policies without interruption, on the same basis and in accordance with the same practices and procedures that were in effect prior to the Petition Date and in the ordinary course of their business, in their business judgment and at their sole discretion; and (b) enter into new

18

financing agreements, to the extent consistent with the Debtors' ordinary course prepetition practices, and to continue, in the ordinary course of business, their current Insurance Premium Financing Agreement; *provided* that, absent further order of the Court upon notice, during the course of these Chapter 11 Cases, the Debtors shall not renew or enter into any new premium financing agreement upon any terms less favorable than those in the existing Insurance Premium Financing Agreement.

5.      The Debtors are authorized, but not directed, to renew, amend, supplement, extend, or purchase insurance policies, and to enter into, renew, amend, supplement, or extend premium financing agreements as necessary, to the extent that the Debtors determine that such action is in the best interest of their estates; *provided* that the Debtors shall provide notice of any renewal, amendment, supplement, or extension of an insurance policy or financing agreement to the U.S. Trustee, counsel to the DIP Agent, and any official committee appointed in the Chapter 11 Cases within seven (7) days of the effective date of such renewal, amendment, supplement, or extension.

6.      Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed to be: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

19

7.     Each of the banks and financial institutions at which the Debtors maintain their accounts relating to the payment of the Insurance Obligations are authorized to:  (a) receive, process, honor, and pay all checks presented for payment and to honor all funds transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts; and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this Interim Order or any other order of the Court, whether such checks, drafts, wires, or transfers are dated before, on, or after the Petition Date, without any duty to inquire otherwise.

8.     The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of the Insurance Obligations, and to replace any prepetition checks or electronic funds transfer requests that may be lost, dishonored, or rejected as a result of the commencement of these Chapter 11 Cases.

9.     Nothing contained in this Interim Order shall be construed to accelerate payments that are not otherwise due and payable.

10.     Entry of this Interim Order is necessary to avoid immediate and irreparable harm. The requirements of Bankruptcy Rule 6003(b) have been satisfied.

11.     Adequate notice of the Motion has been provided under the circumstances.  Such notice satisfies the requirements of Bankruptcy Rule 6004(a).   Notwithstanding Bankruptcy Rules 6004(h), 7062, and 9014, the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

13.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>EXHIBIT B</u>**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

AMYRIS, INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 23-11131

(Joint Administration Requested)
**Ref. Docket No. _____**

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR INSURANCE POLICIES AND PROGRAMS, (B) HONOR ALL INSURANCE OBLIGATIONS, (C) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE AND FINANCE INSURANCE POLICIES; (II) AUTHORIZING CONTINUATION OF INSURANCE PREMIUM FINANCING AGREEMENT; AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), for the entry of a final order (this "Final Order"): (i) authorizing, but not directing, the Debtors to continue their existing Insurance Policies; (ii) authorizing, but not directing, the Debtors to pay certain (a) prepetition Insurance Obligations, and (b) postpetition Insurance Obligations in the ordinary course of business; (iii) authorizing the Debtors to renew, amend, supplement, extend, or purchase and finance insurance policies in the ordinary course; (iv) authorizing the Debtors, in their discretion, to continue the Debtors' insurance premium financing agreement; and (v) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] A capitalized term used but not defined herein have the meaning ascribed to it in the Motion.

the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at an interim hearing before this Court (the "Hearing"), and the Court having entered an interim order on the Motion [Docket No. ____]; and notice of a final hearing having been provided; and upon the Debtors' representation that the amounts authorized to be paid pursuant to this Final Order are consistent with the Debtors' debtor-in-possession financing budget; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are hereby authorized, but not directed, to pay, in the ordinary course of their business, all premiums, premium finance payments, claims, deductibles, retrospective adjustments, administrative and broker's fees, and all other obligations related to the Insurance Policies on account of such prepetition obligations without further order of the Court, and the Debtors are authorized to pay and honor any postpetition Insurance Obligations in connection with the Insurance Policies as such obligations come due in the ordinary course of business.

2

3.     The Debtors are hereby authorized, but not directed, to:  (a) maintain their Insurance Policies without interruption, on the same basis and in accordance with the same practices and procedures that were in effect prior to the Petition Date and in the ordinary course of their business, in their business judgment and at their sole discretion; and (b) enter into new financing agreements, to the extent consistent with the Debtors' ordinary course prepetition practices, and to continue, in the ordinary course of business, their current Insurance Premium Financing Agreement; *provided* that, absent further order of the Court upon notice, during the course of these Chapter 11 Cases, the Debtors shall not renew or enter into any new premium financing agreement upon any terms less favorable than those in the existing Insurance Premium Financing Agreement.

4.     The Debtors are authorized, but not directed, to renew, amend, supplement, extend, or purchase insurance policies, and to enter into, renew, amend, supplement, or extend premium financing agreements as necessary, to the extent that the Debtors determine that such action is in the best interest of their estates.

5.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed to be:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

6.      Each of the banks and financial institutions at which the Debtors maintain their accounts relating to the payment of the Insurance Obligations are authorized to:  (a) receive, process, honor, and pay all checks presented for payment and to honor all funds transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts; and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this Final Order or any other order of the Court, whether such checks, drafts, wires, or transfers are dated before, on, or after the Petition Date, without any duty to inquire otherwise.

7.      Nothing contained in this Final Order shall be construed to accelerate payments that are not otherwise due and payable.

8.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of the Insurance Obligations, and to replace any prepetition checks or electronic funds transfer requests that may be lost, dishonored, or rejected as a result of the commencement of these Chapter 11 Cases.

9.      Adequate notice of the Motion has been provided under the circumstances.  Such notice satisfies the requirements of Bankruptcy Rule 6004(a).  Notwithstanding Bankruptcy Rules 6004(h), 7062, and 9014, the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

10.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

11.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

4

# EXHIBIT C

**List of Insurance Policies**

| Type of Coverage | Insurer | Debtor | Policy Number | Period | Financed? |
|---|---|---|---|---|---|
| Employment Practices Liability | Travelers | Amyris Inc. | 107513548 | 9/14/22 to 9/17/23 | No |
| Fiduciary Liability | Travelers | Amyris Inc. | 107513548 | 9/14/22 to 9/17/23 | No |
| Crime | Travelers | Amyris Inc. | 107513548 | 9/14/22 to 9/17/23 | No |
| Kidnap, Ransom & Extortion | Hiscox | Amyris Inc. | UKA3004781.21 | 9/17/21 to 9/17/24 | No |
| D&O Primary (Side A/B/C) | AIG | Amyris Inc. | 01-565-41-08 | 9/14/22 to 9/17/23 | No |
| D&O 1st Excess (Side A/B/C) | Platinum | Amyris Inc. | 20220916-5001 | 9/14/22 to 9/17/23 | No |
| D&O 2nd Excess (Side A/B/C) | Husdon | Amyris Inc. | HN-0303-8860 | 9/14/22 to 9/17/23 | No |
| D&O 3rd Excess (Side A/B/C) | Old Republic | Amyris Inc. | ORPRO 12 102616 | 9/14/22 to 9/17/23 | No |
| D&O 4th Excess (Side A/B/C) | BHSI/ Applied | Amyris Inc. | 47-EPC-324288-01/BFLXLDTCA0 11200_020098_02 | 9/14/22 to 9/17/23 | No |
| D&O Lead Side A Excess/DIC | BHSI | Amyris Inc. | 47-EPC-324289-01 | 9/14/22 to 9/17/23 | No |
| D&O 1st Excess Side A DIC | AIG | Amyris Inc. | 01-568-01-72 | 9/14/22 to 9/17/23 | No |
| D&O 2nd Excess Side A DIC | AWAC | Amyris Inc. | 0313-0677 | 9/14/22 to 9/17/23 | No |
| D&O 3rd Excess Side A DIC | Old Republic | Amyris Inc. | ORPRO 12 102617 | 9/14/22 to 9/17/23 | No |

| Type of Coverage | Insurer | Debtor | Policy Number | Period | Financed? |
|---|---|---|---|---|---|
| Package – Liability Excl. Products, Intl Liab, Intl WC, & Intl Auto Excl. Products, Intl Liability, WC & Auto | Federal Ins. Co. | Amyris Inc. | 35963734 | 9/14/22 to 9/17/23 | No |
| Package International Casualty (workers comp and auto) | Federal Ins. Co. | Amyris Inc. | 35963734 | 9/14/22 to 9/17/23 | No |
| Property Excl. Inventory $75M Limit | ACE Am. Ins. Co. | Amyris Inc. | EPRN18659888 | 9/14/22 to 9/17/23 | Yes |
| Stockthru Put (Inventory) | Under-writers at Lloyd's London | Amyris Inc. | MCFAL60000325 | 9/14/22 to 9/17/23 | Yes |
| Products Liability $10m | Federal Ins. Co. | Amyris Inc. | 99479201 | 9/14/22 to 9/17/23 | No |
| Automobile | Federal Ins. Co. | Amyris Inc. | 73570501 | 9/14/22 to 9/17/23 | No |
| Lead $10M Umb (Excl. Products) | Federal Ins. Co. | Amyris Inc. | 79879855 | 9/14/22 to 9/17/23 | No |
| 1st Excess Liability - $10 xs $10M (Chubb Products & Umbrella Excl. Products) | Everest Indemnity Ins. Co. | Amyris Inc. | LS9EX00113221 | 9/14/22 to 9/17/23 | Yes |
| 2nd Excess Liability - $5 xs $20M (Chubb Products & Umbrella Excl. Products) | TDC National Assurance Co. | Amyris Inc. | LSX002462200 | 9/14/22 to 9/17/23 | Yes |
| Workers Compensation | Federal Ins. Co. | Amyris Inc. | 2371737562 | 9/14/22 to 9/17/23 | No |

2

| Type of Coverage | Insurer | Debtor | Policy Number | Period | Financed? |
|---|---|---|---|---|---|
| International Liability - Brazil GL & EL (Local Policy) | Chubb Seguros Brazil S.A. | Amyris Inc. | 175100003992628 | 9/14/22 to 9/17/23 | No |
| Hanover Package w/Umbrella | Citizens Ins. Co of America (Hanover) | Onda Beauty | OBYD33581407 | 8/7/20 to 8/7/24 | No |
| Med. Prof. E&O | Landmark Am. Ins. Co. | Onda Beauty | LHM850441 | 7/18/23 to 9/17/24 | No |

# EXHIBIT D

**Insurance Premium Financing Agreement**

CAF.PROCESSING@IPFS.COM
49 STEVENSON STREET STE 1275
SAN FRANCISCO, CA 94105
(877)687-9826 FAX: (415)796-6156
CUSTOMER SERVICE: (800)774-8282

## PREMIUM FINANCE AGREEMENT
### License # 973 9750

**IPFS CORPORATION OF CALIFORNIA**

| | | |
|---|---|---|
| **A** | **CASH PRICE (TOTAL PREMIUMS)** | **$827,392.77** |
| **B** | **CASH DOWN PAYMENT** | **$306,000.00** |
| **C** | **PRINCIPAL BALANCE (A MINUS B)** | **$521,392.77** |

**AGENT**
(Name & Place of business)
ARTHUR J GALLAGHER & CO.

595 MARKET STREET, SUITE 2100

SAN FRANCISCO,CA 94105
(415)546-9300 FAX: (415)536-8499

**INSURED**
(Name & Residence or business)
AMYRIS INC.
5885 HOLLIS ST STE 100

EMERYVILLE, CA 94608-2405
(510)450-0761
nossa@amyris.com

Commercial

Account #: _____

**LOAN DISCLOSURE**
Additional Policies Scheduled on Page 3

Quote Number: 20740436

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled |
| **4.750%** | **$10,373.58** | **$521,392.77** | **$531,766.35** |

### YOUR PAYMENT SCHEDULE WILL BE

| Number Of Payments | Amount Of Payments | When Payments Are Due Beginning: | |
|---|---|---|---|
| 9 | $59,085.15 | | MONTHLY 10/17/2022 |

ITEMIZATION OF THE AMOUNT FINANCED: THE AMOUNT FINANCED IS FOR APPLICATION TO THE PREMIUMS SET FORTH IN THE SCHEDULE OF POLICIES UNLESS OTHERWISE NOTED.

**Security:** Refer to paragraph 1 below for a description of the collateral assigned to Lender to secure this loan.
**Late Charges:** A late charge will be imposed on any installment in default 10 days or more. This late charge will be 5.00% of the installment due.
**Prepayment:** If you pay your account off early, you may be entitled to a refund of a portion of the finance charge computed as provided in Sec. 18635, California Statute or as otherwise allowed by law. The finance charge includes a predetermined interest rate plus a non-refundable service/origination fee of $25.00. See the terms below and on the next page for additional information about nonpayment, default and penalties.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | MINIMUM EARNED PERCENT | POL TERM | PREMIUM |
|---|---|---|---|---|---|---|
| EPRN18659888 | 09/17/2022 | ACE AMERICAN INSURANCE CO | PROPERTY | 0.000% | 12 | 428,000.00 Fee: 5,440.00 Tax: 1,613.09 |

The undersigned agent/broker is paid by Lender for assistance in arranging the premium financing. Please see attached for details regarding how.

| | |
|---|---|
| Broker Fee: | $0.00 |
| TOTAL: | $827,392.77 |

The undersigned insured directs IPFS Corporation of California d/b/a/ IPFS Corporation (herein, "Lender") to pay the premiums on the policies described on the Schedule of Policies. In consideration of such premium payments, subject to the provisions set forth herein, the insured agrees to pay Lender at the branch office address shown above, or as otherwise directed by Lender, the amount stated as Total of Payments in accordance with the Payment Schedule, in each case as shown in the above Loan Disclosure. The named insured(s), on a joint and several basis if more than one, hereby agree to the following provisions set forth on pages 1 and 2 of this Agreement: **1. SECURITY:** To secure payment of all amounts due under this Agreement, insured assigns Lender a security interest in all right, title and interest to the scheduled policies, including (but only to the extent permitted by applicable law): (a) all money that is or may be due insured because of a loss under any such policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee), (b) any unearned premium under each such policy, (c) dividends which may become due insured in connection with any such policy and (d) interests arising under a state guarantee fund. **2. POWER OF ATTORNEY:** Insured irrevocably appoints Lender attorney-in-fact with full power of substitution and full authority upon default to cancel all policies above identified, receive all sums assigned to its Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the insured documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this Agreement. **3. POLICY EFFECTIVE DATES:** The finance charge begins to accrue as of the earliest policy effective date.

**NOTICE: A.** Do not sign this agreement before you read it or if it contains any blank space. **B.** You are entitled to a completely filled in copy of this agreement. **C.** Under the law, you have the right to pay in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge. **D.** Keep your copy of this agreement to protect your legal rights. **FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL INSTITUTIONS, STATE OF CALIFORNIA**

The undersigned hereby warrants and agrees to Agent's Representations set forth herein.

DocuSigned by:
*paul vincent*
34C34CCBDC52466.
Signature of Insured or Authorized Agent

10/3/2022 | 8:50 AM PDT
DATE

*Sandra Moreno*
Signature of Agent

10/3/22
DATE

Insured and Lender further agree that: **4. AGREEMENT EFFECTIVE DATE**: This Agreement shall be effective when written acceptance is mailed to the insured by Lender. **5. DEFAULT AND DELINQUENT PAYMENTS**: If any of the following happens insured will be in default: (a) a payment is not made when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against insured, or (c) insured fails to keep any promise the insured makes in this Agreement; provided, however, that, to the extent required by applicable law, insured may be held to be in default only upon the occurrence of an event described in clause (a) above. The acceptance by Lender of one or more late payments from the insured shall not estop Lender or be a waiver of the rights of Lender to exercise all of its rights hereunder or under applicable law in the event of any subsequent late payment. **6. CANCELLATION**: Lender may cancel the scheduled policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the insured does not pay any installment according to the terms of this Agreement or transfers any of the scheduled policies to a third party and the unpaid balance due to Lender shall be immediately due and payable by the insured. Lender at its option may enforce payment of this debt without recourse to the security given to Lender. **7. CANCELLATION CHARGES**: If Lender cancels any insurance policy in accordance with the terms of this Agreement and applicable law, then the insured shall pay Lender a cancellation charge equal to $15.00 or the maximum amount permitted by law. If cancellation occurs, the insured agrees to pay a finance charge on the outstanding indebtedness at the maximum rate authorized by applicable state law in effect on the date of cancellation until the outstanding indebtedness is paid in full or until such other date as required by law. **8. INSUFFICIENT FUNDS (NSF) CHARGES**: If insured's check or electronic funding is dishonored for any reason, the insured will pay to Lender a fee of $15.00 or the maximum amount permitted by law. **9. MONEY RECEIVED AFTER CANCELLATION**: Any payments made to Lender after Lender's Notice of Cancellation of the insurance policy(ies) has been mailed may be credited to the insured's account without any obligation on the part of Lender to request reinstatement of any policy. Any money Lender receives from an insurance company shall be credited to the balance due Lender with any surplus refunded to whomever is entitled to the money. In the event that Lender does request a reinstatement of the policy(ies) on behalf of the insured, such a request does not guarantee that coverage under the policy(ies) will be reinstated or continued. Only the insurance company has authority to reinstate the policy (ies). The insured agrees that Lender has no liability to the insured if the policy(ies) is not reinstated and Lender may charge a reinstatement fee where permitted up to the maximum amount allowed by law. **10. ASSIGNMENT**: The insured agrees not to assign this Agreement or any policy listed hereon or any interest therein (except for the interest of mortgagees or loss payees), without the written consent of Lender, and that Lender may sell, transfer and assign its rights hereunder or under any policy without the consent of the insured, and that all agreements made by the insured hereunder and all rights and benefits conferred upon Lender shall inure to the benefit of Lender's successors and assigns (and any assignees thereof). **11. INSURANCE AGENT OR BROKER**: The insured agrees that the insurance agent or broker soliciting the policies or through whom the policies were issued is not the agent of Lender; and the agent or broker named on the front of this Agreement is neither authorized by Lender to receive installment payments under this Agreement nor to make representations, orally or in writing, to the insured on Lender's behalf (except to the extent expressly required by applicable law). The insured understands that the Agent/Broker is receiving a fee of $2085.57 for the preparation of this contract. **12. FINANCING NOT A CONDITION**: The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance. **13. COLLECTION COSTS**: Insured agrees to pay attorney fees and other collection costs to Lender to the extent permitted by law if this Agreement is referred to an attorney or collection agency who is not a salaried employee of Lender, to collect any money insured owes under this Agreement. **14. LIMITATION OF LIABILITY**: The insured agrees that Lender's liability to the insured, any other person or entity for breach of any of the terms of this Agreement for the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of Lender' gross negligence or willful misconduct. Insured recognizes and agrees that Lender is a lender only and not an insurance company and that in no event does Lender assume any liability as an insurer hereunder or otherwise. **15. CLASSIFICATION AND FORMATION OF AGREEMENT**: This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the insured and agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy. **16. REPRESENTATIONS AND WARRANTIES**: The insured represents that (a) the insured is not insolvent or presently the subject of any insolvency proceeding (or if the insured is a debtor of bankruptcy, the bankruptcy court has authorized this transaction), (b) if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured, (c) all parties responsible for payment of the premium are named and have signed this Agreement, and (d) there is no term or provision in any of the scheduled policies that would require Lender to notify or get the consent of any third party to effect cancellation of any such policy. **17. ADDITIONAL PREMIUM FINANCING**: Insured authorizes Lender to make additional advances under this premium finance agreement at the request of either the Insured or the Insured's agent with the Insured's express authorization, and subject to the approval of Lender, for any additional premium on any policy listed in the Schedule of Policies due to changes in the insurable risk. If Lender consents to the request for an additional advance, Lender will send Insured a revised payment amount ("Revised Payment Amount"). Insured agrees to pay the Revised Payment Amount, which may include additional finance charges on the newly advanced amount, and acknowledges that Lender will maintain its security interest in the Policy with full authority to cancel all policies and receive all unearned premium if Insured fails to pay the Revised Payment Amount. **18. PRIVACY**: Our privacy policy may be found at https://ipfs.com/Privacy. **19. ENTIRE DOCUMENT / GOVERNING LAW**: This document is the entire Agreement between Lender and the insured and can only be changed in writing and signed by both parties except that the insured authorizes Lender to insert or correct on this Agreement, if omitted or incorrect, the insurer's name and the policy number(s). Lender is also authorized to correct patent errors and omissions in this Agreement. In the event that any provision of this Agreement is found to be illegal or unenforceable, it shall be deemed severed from the remaining provisions, which shall remain in full force and effect. The laws of the State of California will govern this Agreement. **20. AUTHORIZATION**: The insurance company(ies) and their agents, any intermediaries and the agent / broker named in this Agreement and their successors and assigns are hereby authorized and directed by insured to provide Lender with full and complete information regarding all financed insurance policy(ies), including without limitation the status and calculation of unearned premiums, and Lender is authorized and directed to provide such parties with full and complete information and documentation regarding the financing of such insurance policy(ies), including a copy of this Agreement and any related notices. **21. WAIVER OF SOVERIGN IMMUNITY**: The insured expressly waives any sovereign immunity available to the insured, and agrees to be subject to the laws as set forth in this Agreement (and the jurisdiction of federal and/or state courts) for all matters relating to the collection and enforcement of amounts owed under this Agreement and the security interest in the scheduled policies granted hereby.

## AGENT/BROKER REPRESENTATIONS

The agent/broker executing this, and any future, agreements represents, warrants and agrees: (1) installment payments totaling $0.00 and all applicable down payment(s) have been received from the insured in immediately available funds, (2) the insured has received a copy of this Agreement; if the agent/broker has signed this Agreement on the insured's behalf, the insured has expressly authorized the agent/broker to sign this Agreement on its behalf or, if the insured has signed, to the best of the undersigned's knowledge and belief such signature is genuine, (3) the policies are in full force and effect and the information in the Schedule of Policies including the premium amounts is correct, (4) no direct company bill, audit, or reporting form policies or policies subject to retrospective rating or to minimum earned premium are included, except as indicated, and the deposit of provisional premiums is not less than anticipated premiums to be earned for the full term of the policies, (5) the policies can be cancelled by the insured or Lender (or its successors and assigns) on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (6) there are no bankruptcy, receivership, or insolvency proceedings affecting the insured, (7) to hold Lender, its successors and assigns harmless against any loss or expense (including attorney fees) resulting from these representations or from errors, omissions or inaccuracies of agent/broker in preparing this Agreement, (8) to pay the down payment and any funding amounts received from Lender under this Agreement to the insurance company or general agent (less any commissions where applicable), (9) to hold in trust for Lender or its assigns any payments made or credited to the insured through or to agent/broker directly or indirectly, actually or constructively by the insurance companies and to pay the monies, as well as the unearned commissions to Lender or its assigns upon demand to satisfy the outstanding indebtedness of the insured, (10) all material information concerning the insured and the financed policies necessary for Lender to cancel such policies and receive the unearned premium has been disclosed to Lender, (11) no term or provision of any financed policy requires Lender to notify or get the consent of any third party to effect cancellation of such policy, and (12) to promptly notify Lender in writing if any information on this Agreement becomes inaccurate.

| AGENT | INSURED |
|---|---|
| (Name & Place of business) | (Name & Residence or business) |
| ARTHUR J GALLAGHER & CO. | AMYRIS INC. |
| | 5885 HOLLIS ST STE 100 |
| 595 MARKET STREET, SUITE 2100 | |
| | EMERYVILLE, CA 94608-2405 |
| SAN FRANCISCO,CA 94105 | (510)450-0761 |
| (415)546-9300 FAX: (415)536-8499 | nossa@amyris.com |

Account #: _____

## SCHEDULE OF POLICIES
### (continued)

Quote Number: 20740436

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | MINIMUM EARNED PERCENT | POL TERM | PREMIUM |
|---|---|---|---|---|---|---|
| LS9EX00113221 | 09/17/2022 | EVEREST INDEMNITY INSURANCE CO | EXCESS LIABILITY | 25.00% | 12 | 146,490.00 Tax: 4,760.93 |
| LSX002462200 | 09/17/2022 | TDC SPECIALTY INSURANCE COMPANY | EXCESS LIABILITY | 25.00% | 12 | 58,000.00 Tax: 1,885.00 |
| MCFAL60000325 | 09/17/2022 | LLOYD'S LONDON - CERTAIN UNDERWRITE FALVEY CARGO UNDERWRITING | STOCK THROUGHPUT | 100.0% | 12 | 175,500.00 Tax: 5,703.75 |

TOTAL: $827,392.77

The undersigned agent/broker is paid by Lender for assistance in arranging the premium financing. Please see attached for details regarding how.

(10/17) Copyright 2017 IPFS Corporation ™

9/30/2022 Web - CACFEE

# Arthur J. Gallagher Brokerage & Risk Management Services, LLC
# Disclosure Letter

September 30, 2022

In an effort to deliver a higher level of client service, we are pleased to offer you a premium finance quote with your insurance proposal.

While not required, financing your premium allows you to borrow the capital to pay your insurance premium and re-pay the amount borrowed in periodic installments. Many businesses choose to take advantage of this option, even when carriers offer installment payments on select policies. Some of the benefits of Premium Finance include:

- Better capital and cash flow management driven by small premium installments during the year rather than paying the entire premium upfront.
- Financed premiums are not typically considered debt on your balance sheet*.
- All your premium payments for all your policies can be covered by one finance agreement, and consolidated into one convenient monthly or quarterly payment.
- Automated ACH options and flexible payment terms are available.

The attached Premium Finance Agreement is an example of the terms available to you based on bound premium.

Arthur J. Gallagher Brokerage & Risk Management Services LLC and its affiliates ("Gallagher") have a referral arrangement with the premium finance company and will receive approximately 0.40% of Amount Financed you pay to them. While most of our customers do not experience Late Charges, in the event that your payment is late, we share in 50% of the collected late fees, where allowed by law. You are under no obligation to finance your premium or accept the premium finance proposal. Other financing options may be available and if you prefer, you may independently obtain premium financing. Regardless of which company you may choose to finance your premium, this arrangement will be between you and the premium finance company and Gallagher will not represent you in this transaction.

Thank you for giving us the opportunity to serve you. We appreciate your business and the confidence you have placed in us.

Sincerely,
ARTHUR J GALLAGHER & CO.
595 MARKET STREET, SUITE 2100
SAN FRANCISCO,CA 94105
(415)546-9300

*Please consult your accountant for your specific situation. Gallagher does not provide accounting advice.