## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

Hearing Date:  September 14, 2023 at 2:00 p.m. (ET)
Objection Deadline:  September 7, 2023 at 4:00 p.m. (ET)

**DEBTORS' APPLICATION FOR ENTRY OF
AN ORDER (A) AUTHORIZING THE RETENTION
AND EMPLOYMENT OF INTREPID INVESTMENT BANKERS LLC
AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS IN
POSSESSION, PURSUANT TO 11 U.S.C. §§ 327(A) AND 328, *NUNC PRO TUNC*
TO THE PETITION DATE, (B) WAIVING CERTAIN REQUIREMENTS
IMPOSED BY LOCAL RULE 2016-2, AND (C) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession ("Amyris" or the "Debtors"), file this application (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"):  (a) authorizing the retention and employment of Intrepid Investment Bankers LLC ("Intrepid") as investment banker for the Debtors, *nunc pro tunc* to the Petition Date (defined below), in accordance with the terms and conditions of that certain engagement agreement dated as of July 21, 2023 (the "Engagement Agreement"), attached as

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

**Exhibit B** hereto and incorporated herein by reference; (b) modifying the timekeeping requirements of Local Rule 2016-2 and the guidelines (the "U.S. Trustee Guidelines") established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") in connection with Intrepid's proposed engagement by the Debtors; and (c) granting related relief. In support of this Application, the Debtors rely upon and refer this Court to the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), incorporated herein by reference.[2]  In further support of the Application, the Debtors submit the Declaration of Lorie R. Beers, Managing Director and Head of Special Situations at Intrepid (the "Beers Declaration"), attached as **Exhibit C** hereto, and incorporated herein by reference.  In further support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

3.     The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2.

## BACKGROUND

4.     On August 9, 2023 and August 21, 2023 as applicable, (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

5.     Amyris was founded in 2003 to create a more stable supply of a key anti-malarial treatment.  Through Amyris's cutting-edge science, artemisinin—the most effective anti-malarial drug in the world—is now consistently available to treat the deadly disease.  Using the same technological innovations that produced artemisinin, Amyris has become the world's leading manufacturer of ingredients made with synthetic biology.  Amyris provides sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products.

6.     In addition, Amyris operates a family of consumer brands that use the company's ingredients to meet the growing demand for sustainable, effective, and accessible products, including Biossance® (clean beauty skincare), JVN™ (haircare), Rose Inc.™ (clean color cosmetics), Pipette® (clean baby skincare), OLIKA™ (clean wellness), MenoLabs™ (healthy living and menopause wellness), Stripes™ (menopausal wellness), and 4U by Tia™ (a new clean haircare line).

7.    A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the First Day Declaration [Docket No. 18].

## RELIEF REQUESTED

8.    By this Application, the Debtors seek entry of the Proposed Order, substantially in the form attached as **Exhibit A** hereto:  (i) authorizing the retention and employment of Intrepid as investment banker for the Debtors, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions of the Engagement Agreement, this Application, and the Proposed Order; (ii) modifying the timekeeping requirements of Local Rule 2016-2 and the U.S. Trustee Guidelines in connection with Intrepid's proposed engagement by the Debtors; and (iii) granting related relief.

## INTREPID'S QUALIFICATIONS AND THE NEED FOR INTREPID'S SERVICES

9.    The Debtors submit this Application because of their need to retain a qualified investment banker to assist them in the critical tasks associated with guiding the Debtors through these Chapter 11 Cases.  The Debtors believe that the retention of an investment banker is necessary and appropriate to enable them to evaluate the financial and economic issues raised by these Chapter 11 Cases, to consummate a Transaction (as defined in the Engagement Agreement), and to fulfill their statutory duties.

10.    The Debtors selected Intrepid as their investment banker in these Chapter 11 Cases based upon Intrepid's extensive experience in advising companies facing complex financial challenges and the excellent reputation for the services that its professionals have rendered in other chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.

4

11.    Intrepid is a specialty investment bank that provides M&A advisory, buy-side target search, capital advisory, and special situations advisory services to entrepreneur and family-owned companies, private equity sponsors, and major corporations, through dedicated banking teams with over four decades of deep industry sector experience.  Intrepid is the advisory arm of Mitsubishi UFJ Financial Group, one of the largest financial organizations in the world. Intrepid is headquartered in Los Angeles, California, with offices in New York, Chicago, Charlotte, and Menlo Park.

12.    As set forth in the Beers Declaration, Intrepid has a dedicated capital advisory group, whose special situations professionals have extensive expertise providing investment banking services to financially distressed companies, creditors, committees, equity holders, asset purchasers, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court.  Intrepid's professionals have served as investment bankers and financial advisors in numerous chapter 11 cases, including but not limited to:  *In re Tritek Int'l Inc.*, No. 23-10520 (TMH) (Bankr. D. Del. June 8, 2023) (advising debtor); *In re Watsonville Hosp. Corp.*, No. 21-51477 (Bankr. N.D. Cal. Dec. 5, 2021) (advising debtor); *In re Aluminum Shapes, LLC*, No. 21-16520 (JNP) (Bankr. D.N.J. Oct. 8, 2021) (advising debtor); *In re Garrett Motion Inc.*, No. 20-12212 (Bankr. S.D.N.Y. Feb. 5, 2021) (advising Official Equity Committee); *In re Carla's Pasta, Inc.*, No. 21-20111 (Bankr. D. Conn. Mar. 22, 2021) (advising debtors); *In re Mishti Holdings, LLC*, No. 19-11813 (CSS) (Bankr. D. Del. Dec. 16, 2019) (advising debtors); *In re Sienna Biopharmaceuticals, Inc.*, No. 19-12051 (MFW) (Bankr. D. Del. Oct. 15, 2019) (advising debtor).

13.    Moreover, Intrepid has been engaged by the Debtors since July 21, 2023. Since then, Intrepid's professionals have worked closely with the Debtors' management and other

5

professionals in preparing for these Chapter 11 Cases and have become familiar with the Debtors'
business operations, capital structure, creditors, and other matters.  Specifically, Intrepid has
assisted and advised the Debtors in connection with their marketing and sale process as described
in the First Day Declaration.

14.    For the foregoing reasons, the Debtors believe that Intrepid is well-qualified
to advise the Debtors in an expert and efficient manner.

## SERVICES TO BE PROVIDED[3]

15.    Subject to the Court's approval, the Debtors anticipate that Intrepid will
continue to perform investment banking and advisory services, among others, by assisting the
Debtors pursuant to the terms of the Engagement Agreement:

(a)    Assisting the Debtors in analyzing their business, operations, properties, financial conditions, and prospects;

(b)    Assisting the Debtors in their analysis and consideration of financing alternatives, including debtor-in-possession financing;

(c)    Preparing and distributing information in connection with a Transaction;

(d)    Identifying and soliciting potential acquirers, financing sources, or partners for a Transaction;

(e)    Assisting in the determination of the form, structure, terms, and pricing of a Transaction;

(f)    Assisting the Debtors on tactics and strategies for negotiating with potential counterparties and stakeholders and, if requested by the Debtors, participating in such negotiations;

(g)    Advising the Debtors in the timing, nature, and terms of new securities, other consideration, or other inducements to be offered pursuant to a Transaction;

---

[3]    The summary of the Engagement Agreement in this Application is qualified in its entirety by reference to the provisions of the Engagement Agreement.  To the extent that there is any discrepancy between the summary contained in the Application and the terms set forth in the Engagement Agreement, the terms of the Engagement Agreement shall govern.  Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them in the Engagement Agreement.

(h)     Rendering financial advice and participating in meetings or negotiations with stakeholders or outside agencies or appropriate parties in connection with a Transaction;

(i)     Attending meetings of the Debtors' boards of directors or governors, as applicable, and committees with respect to matters on which Intrepid has been engaged to advise the Debtors;

(j)     Providing oral and written testimony, as necessary, with respect to matters on which Intrepid has been engaged to advise the Debtors; and

(k)     Providing such other services as may be mutually agreed by Intrepid and the Debtors.

16.     By separate applications, the Debtors are also seeking to employ various other restructuring professionals.  The Debtors do not believe that the services to be rendered by Intrepid will be duplicative of the services performed by any other professional, and Intrepid will work with the other professionals retained by the Debtors to minimize any duplication of services on behalf of the Debtors.

## PROFESSIONAL COMPENSATION[4]

17.     As set forth more fully in the Engagement Agreement, Intrepid and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee and Expense Structure"):

(a)     Initial Restructuring Fee: A non-refundable initial restructuring fee payable (and which was paid) upon the execution of the Engagement Agreement in the amount of $150,000 (the "Initial Restructuring Fee").

(b)     Monthly Fee(s): A non-refundable monthly fee (each, a "Monthly Fee" and collectively, the "Monthly Fees"), payable upon each monthly anniversary of the Initial Restructuring Fee payment date, equal to $150,000 per month; *provided*, that 100% of each Monthly Fee earned after the sixth monthly anniversary of the Engagement Agreement shall be creditable against the earliest of any Financing Fee, Restructuring Fee, or Sale Fee.

---

[4]     The summary of the Fee and Expense Structure in this Application is qualified in its entirety by reference to the provisions of the Engagement Agreement.  To the extent there is any discrepancy between the summary contained in this Application and the terms set forth in the Engagement Agreement, the terms of the Engagement Agreement shall govern.  Capitalized terms used but not defined in this section shall have the meanings ascribed to such terms in the Engagement Agreement.

(c)    Financing Fee: A non-refundable financing fee, payable at each closing of a Financing, equal to the applicable percentage set forth below of the gross proceeds and/or aggregate principal amount (if applicable) of any Financing irrevocably committed or funded in connection with such Financing (whether or not actually drawn):

    (i)    1.0% for bank debt or first lien secured debt or DIP, inclusive of any exit facility (collectively, "Senior Debt")

    (ii)    2.0% for any debt junior to Senior Debt that is not an Equity-Linked Security;

    (iii)    4.0% for equity or equity-linked securities (including, but not limited to, preferred securities, securities with warrants, and convertible notes) ("Equity-Linked Securities"); and

    (iv)    *Provided*, that any Financing related to a DIP Facility provided or arranged by Foris, Ingredion, DSM, Givaudan, Corbion, Schottenfeld, Silverback, Vivo, or any of their respective related entities or respective affiliates shall be waived, and any Financing provided or arranged by Foris, or any of its related entities or affiliates, shall be waived.

(a)    Restructuring Fee: A restructuring fee equal to $3,000,000 payable upon consummation of a Restructuring (a "Restructuring Fee"); *provided*, however, if a Restructuring is to be completed through a "pre-packaged" or "pre-arranged" plan of reorganization, the Restructuring Fee shall be earned upon the earlier of:  (i) execution of definitive agreements with respect to such plan; and (ii) delivery of binding consents to such plan by a sufficient number of creditors and/or bondholders, as the case may be, to the plan; *provided* further, that the Restructuring Fee shall be payable upon the earlier of the effective date of the plan of reorganization or an order authorizing payment by the United States Bankruptcy Court

(a)    Sale Fee: A non-refundable sale fee payable upon the consummation of any Sale in an amount equal to the greater of (i) $4,500,000; plus (ii) 1.5% of the Aggregate Consideration greater than $250,000,000; (iii) any Sale by the Company of ONDA, MG Empower, Costa Brazil, and Rose Inc. (pursuant to discussions existing at the time of the effective date of the Engagement Agreement) that is ultimately consummated shall not be credited to the Sale Fee earned by Intrepid under the Engagement Agreement (the "Sale Fee").

(b)    Expenses: In addition to any other compensation payable to Intrepid under the Engagement Agreement, the Debtors shall reimburse Intrepid for all reasonable out-of-pocket expenses incurred by Intrepid in connection with the performance of the Engagement Agreement, irrespective of whether a

Transaction is completed. Such expenses may include, without limitation, costs relating to printing, delivery, database charges, out-of-town travel, direct out-of-pocket expenses, and required advice from counsel. All reimbursements shall be made within ten (10) business days of being invoiced by Intrepid. Intrepid shall seek the prior written approval of the Debtors to incur expenses which in the aggregate exceed $50,000.

18. During the pendency of these Chapter 11 Cases, Intrepid shall apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the proposed compensation arrangement set forth in the Engagement Agreement. The Debtors believe that the Fee and Expense Structure is reasonable. The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Intrepid and the fee structures typically used by leading investment banking firms of similar stature to Intrepid for comparable engagements, both in and out of court. The Fee and Expense Structure is consistent with Intrepid's normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein. Moreover, the Fee and Expense Structure is reasonable in light of: (a) industry practice; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) Intrepid's substantial experience with respect to investment banking services; and (d) the nature and scope of work to be performed by Intrepid in these Chapter 11 Cases. In particular, the Debtors believe that the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees. Similar fixed and contingency fee arrangements have been approved and implemented in other recent, large chapter 11 cases in this District. *See, e.g.*, *In re Winc, Inc.*, No. 22-11238 (LSS) (Bankr. D. Del. Jan. 18, 2023); *In re EYP Grp. Holdings, Inc.*, No. 22-10367 (MFW) (Bankr. D. Del. June 3, 2022); *CraftWorks Parent, LLC*, No. 20-10475 (BLS) (Bankr. D. Del. Apr. 1, 2020); *In re Oldapco, Inc. (f/k/a Appvion, Inc.)*,

No. 17-12082 (KJC) (Bankr. D. Del. Oct. 30, 2017); *In re Ltd. Stores Co., LLC*, No. 17-10124

(KJC) (Bankr. D. Del. Feb. 16, 2017); *In re Essar Steel Minn. and ESML Holdings Inc.*, No. 16-

11626 (BLS) (Bankr. D. Del. Aug. 9, 2016).[5]

### WAIVER OF COMPLIANCE WITH TIME-DETAIL REQUIREMENTS

19.     Consistent with its ordinary practice and the practice of investment bankers

in other chapter 11 cases whose fee arrangements are not hours-based, Intrepid does not maintain

contemporaneous time records or provide or conform to a schedule of hourly rates for its

professionals.  Given the foregoing and that Intrepid's compensation is based on fixed fees, the

Debtors request that, notwithstanding anything to the contrary in the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, any order of this Court, or any other guideline regarding the

submission and approval of fee applications, Intrepid's professionals be excused from maintaining

time records in connection with the services to be rendered pursuant to the Engagement

Agreement.  Intrepid will nonetheless maintain reasonably detailed summary time records in half-

hour (.50) increments, which records shall indicate the total hours incurred by each professional

for each day and provide a brief description of the nature of the work performed.  Courts in other

large chapter 11 cases have excused flat-fee professionals from time-keeping requirements under

similar circumstances.  *See, e.g.*, *In re EYP Grp. Holdings, Inc.*, No. 22-10367 (MFW) (Bankr. D.

Del. June 3, 2022) (allowing investment banker to maintain time records of services in one-hour

increments); *In re Winc, Inc.*, No. 22-11238 (LSS) (Bankr. D. Del. Jan. 18, 2023) (allowing

investment banker to maintain time records of services rendered in half-hour increments); *In re

CraftWorks Parent, LLC*, No. 20-10475 (BLS) (Bankr. D. Del. Apr. 1, 2020) (same); *In re

Oldapco, Inc. (f/k/a Appvion, Inc.)*, No. 17-12082 (KJC) (Bankr. D. Del. Oct. 30, 2017) (allowing

---

[5]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this
Application.  Copies of these orders are available upon request to the Debtors' proposed counsel.

investment banker only to keep reasonably detailed summary time records in half-hour increments while indicating the total hours incurred by each professional for each day and briefly describing the nature of the work performed); *In re Ltd. Stores Co., LLC*, No. 17-10124 (KJC) (Bankr. D. Del. Feb. 16, 2017) (same); *In re Essar Steel Minn. and ESML Holdings Inc.*, No. 16-11626 (BLS) (Bankr. D. Del. Aug. 9, 2016) (same); *In re Pac. Sunwear of Cal., Inc.*, No. 16-10882 (LSS) (Bankr. D. Del. May 3, 2016) (same).[6]

## INDEMNIFICATION

20.    As part of the overall compensation payable to Intrepid under the terms of the Engagement Agreement, the Engagement Agreement provides for certain indemnification obligations to Intrepid and its affiliates, and each of their respective directors, officers, members, employees, agents, representatives, and controlling persons, to the fullest extent lawful, from and against any losses, claims, damages and liabilities, as incurred, related to or arising out of or in connection with Intrepid's services under the Engagement Agreement.[7]  Such terms of indemnification, as modified by the Proposed Order, reflect the qualifications and limits on such terms that are customary for investment bankers such as Intrepid in chapter 11 cases.  Such terms of indemnification, as modified by the Proposed Order, reflect the qualifications and limits on such terms that are customary for investment bankers such as Intrepid in chapter 11 cases.  *See, e.g.*, *In re Winc, Inc.*, No. 22-11238 (LSS) (Bankr. D. Del. Jan. 18, 2023); *In re EYP Grp. Holdings, Inc.*, No. 22-10367 (MFW) (Bankr. D. Del. June 3, 2022); *CraftWorks Parent, LLC*, No. 20-10475 (BLS) (Bankr. D. Del. Apr. 1, 2020); *In re Oldapco, Inc. (f/k/a Appvion, Inc.)*, No. 17-12082 (KJC)

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application.  Copies of these orders are available upon request to Debtors' proposed counsel.

[7]    To the extent that there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in the indemnification provisions annexed to the Engagement Agreement as Exhibit B thereto, the terms of such Exhibit B and the Engagement Agreement shall control.

(Bankr. D. Del. Oct. 30, 2017); *In re Ltd. Stores Co., LLC*, No. 17-10124 (KJC) (Bankr. D. Del. Feb. 16, 2017); *In re Essar Steel Minn. and ESML Holdings Inc.*, No. 16-11626 (BLS) (Bankr. D. Del. Aug. 9, 2016).[8]

### INTREPID'S DISINTERESTEDNESS

21.     To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Beers Declaration:  (a) Intrepid has no relevant connection with any of the Debtors, the Debtors' creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party with an actual or potential interest in these Chapter 11 Cases (or their respective attorneys or accountants); (b) Intrepid (and Intrepid's professionals) are not creditors, equity security holders, or insiders of any of the Debtors; (c) neither Intrepid nor any of its professionals is or was, within two (2) years of the Petition Date, a director, officer, or employee of any of the Debtors; and (d) neither Intrepid nor any of its professionals hold or represent an interest materially adverse to any of the Debtors, their estates, or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in any of the Debtors, or for any other reason.  Accordingly, based upon its review of interested parties in these Chapter 11 Cases, Intrepid is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and Intrepid's employment is permissible under sections 327(a) and 328(a) of the Bankruptcy Code.

22.     Given the large number of parties in interest in these Chapter 11 Cases, despite the efforts to identify and disclose Intrepid's relationships with parties in interest in these Chapter 11 Cases, Intrepid is unable to state with certainty that every client relationship or other connection has been disclosed in the Beers Declaration.  Intrepid will make continued inquiries

---

[8]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application.  Copies of these orders are available upon request to Debtors' proposed counsel.

following the filing of this Application to monitor for any matters that might affect its disinterested status.  To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Intrepid's retention are discovered or arise, Intrepid will use reasonable efforts promptly to file a supplemental declaration.

23.    During the ninety (90) days prior to the Petition Date, Intrepid was paid in the ordinary course certain fees and expenses due under the Engagement Agreement.  Specifically, the Debtors paid the following amounts to Intrepid:  (a) $150,000 on August 2, 2023 on account of the Initial Advisory Fee; and a $15,000 expense advance.  Intrepid will apply the expense advance first to any expenses incurred but not reimbursed prior to the Petition Date, and second to any expenses incurred after the Petition Date.  To the extent that any other amounts remained due as of the Petition Date, if any, Intrepid has agreed to waive such amounts upon the Court's approval of its engagement by the Debtors.

**BASIS FOR RELIEF**

**I.    RETENTION AND EMPLOYMENT OF Intrepid IS PERMITTED PURSUANT TO SECTIONS 327(A) AND 328(A) OF THE BANKRUPTCY CODE**

24.    The Debtors seek approval of the retention and employment of Intrepid pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides that a debtor "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in carrying out its duties. 11 U.S.C. § 327(a).

25.    Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of the Bankruptcy Code by a

DOCS_DE:244346.2 03703/004

debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

26.     In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that debtors, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Thus, section 328(a) of the Bankruptcy Code permits the Court to approve the terms of Intrepid's engagement as set forth in the Engagement Agreement, including the Fee and Expense Structure and the indemnification and contribution provisions.

27.     Bankruptcy Rule 2014 requires that an application for retention of a professional person include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

28.     Additionally, Local Rule 2014-1 requires an entity seeking approval of employment under section 327(a) of the Bankruptcy Code to file a motion, supporting affidavit, and proposed order, all of which have been satisfied by this Application, the Beers Declaration, and the Proposed Order.  Further, in accordance with Local Rule 2014-1, Intrepid acknowledges its continuing duty to supplement the Beers Declaration with additional material information relating to the employment of Intrepid, if necessary.

29.     Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases.  Local Rule

14

2016-2(d) also requires retained professionals to submit detailed time entries that set forth, among other things, a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity, and the parties involved with the activity at issue. However, Local Rule 2016-2(h) allows a retained professional to request a waiver of these requirements for cause.

30.    The Debtors submit that the Court's approval of the Debtors' retention of Intrepid in accordance with the terms and conditions of the Engagement Agreement is warranted. First, section 327(a) of the Bankruptcy Code is satisfied because Intrepid is a "disinterested person" pursuant to section 327(a) of the Bankruptcy Code as that term is defined under section 101(14) of the Bankruptcy Code as further discussed above and in the Beers Declaration. Second, section 1107(b) of the Bankruptcy Code is satisfied because Intrepid's prepetition relationship with the Debtors is not an impediment to Intrepid's retention as the Debtors' postpetition investment banker. Intrepid was engaged by the Debtors prepetition and has committed time and effort with respect to the transactions to be consummated postpetition. Intrepid is needed postpetition to continue to assist with marketing, negotiations, and to provide expert advice (and potentially testimony) regarding financial matters related to the Debtors' sale process with respect to substantially all of the Debtors' assets, and to enable the Debtors to discharge their duties as debtors and debtors in possession. Intrepid has become familiar with the Debtors' business operations and other material information and is able to assist the Debtors in their marketing and sales efforts for substantially all of the Debtors' assets.

31.    Third, section 328(a) of the Bankruptcy Code is satisfied because the terms of the Engagement Agreement are reasonable. Specifically, the Fee and Expense Structure is consistent with Intrepid's normal and customary billing practices for cases of this size and

15

complexity that require the level of scope and services outlined herein.  In particular, the Debtors believe that the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees.  In addition, the Debtors believe that the Fee and Expense Structure is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.  The Fee and Expense Structure reflects Intrepid's commitment to the variable level of time and effort necessary to perform the services contemplated by the Engagement Agreement, Intrepid's particular expertise, and the market prices for Intrepid's services for engagements of this nature both out of court and in a chapter 11 context.  Intrepid's professionals have extensive experience and an excellent reputation in providing high-quality investment banking services to debtors and creditors in bankruptcy reorganizations, mergers and acquisitions, and other restructurings.  The Debtors therefore believe that Intrepid is well-qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner.

32.     As set forth above, Intrepid intends to apply to the Court for allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, with certain limited modifications and waivers.

33.     The Debtors request that the requirements of Local Rule 2016-2(d) and the guidelines set forth in the U.S. Trustee Guidelines be tailored appropriately to reflect Intrepid's engagement and its compensation structure.  Intrepid has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate or fixed-percentage basis.  Additionally, it is not the general practice of investment banking firms to keep detailed time records similar to

those customarily kept by attorneys.  As discussed above, however, Intrepid's investment banking professionals will keep summary time records in half-hour (.50) increments describing their daily activities.   Apart from the time-recording practices described above, however, Intrepid's investment banking professionals do not maintain their time records on a "project category" basis. As such, the Debtors request modification of the requirements pursuant to Local Rule 2016-2(h).

## II.   THE INDEMNIFICATION PROVISIONS CONTAINED IN THE ENGAGEMENT LETTER ARE APPROPRIATE

34.    The indemnification provisions contained in the Engagement Agreement were fully negotiated between the Debtors and Intrepid.  The Debtors believe that the indemnification provisions, as modified by the Proposed Order, are customary and reasonable for investment banking engagements in chapter 11 cases.  *See, e.g.*, *In re United Artists Theatre Co.*, 315 F.3d 217, 230 (3d Cir. 2003) (finding Houlihan Lokey's indemnification agreement to be reasonable and permissible under section 328 of the Bankruptcy Code); *In re Joan & David Halpern, Inc.*, 248 B.R. 43 (Bankr. S.D.N.Y. 2000) (authorizing the indemnification of Newmark Retail Financial Advisors by the debtor).  Accordingly, the Debtors submit that the terms of the indemnification provisions, as modified by the Proposed Order, are reasonable and customary and should be approved.

## III.   NUNC *PRO TUNC* RELIEF IS APPROPRIATE

35.    Pursuant to the Debtors' request, Intrepid has agreed to serve as investment banker on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention *nunc pro tunc* to the Petition Date.  The Debtors believe that retention *nunc pro tunc* to the Petition Date is appropriate given the extensive work that Intrepid has performed leading up to the Petition Date and thereafter and the Debtors' immediate need for the assistance of an investment banker to continue marketing the Debtors' assets consistent with the

17

DOCS_DE:244346.2 03703/004

proposed sale timeline.  The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as provided in this Application, because Intrepid has provided and continues to provide valuable services to the Debtors' estates in the interim period.

### NOTICE

36.     The Debtors will provide notice of this Motion to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lenders, DIP Agent, and the Foris Prepetition Secured Lenders, Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com) and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com); (d) co-counsel to the DIP Lenders, the DIP Agent, and the Foris Prepetition Secured Lenders, Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com); (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which the Debtors conduct business; and (g) any party that requests service pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated:  August 24, 2023                           AMYRIS, INC., *et al.*

                                                                */s/ Han Kieftenbeld*
                                                                Name: Han Kieftenbeld
                                                                Title:  Interim Chief Executive Officer and Chief
                                                                Financial Officer