IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

Hearing Date:  September 14, 2023 at 2:00 p.m. (ET)
Objection Deadline:  September 7, 2023 at 4:00 p.m. (ET)

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN ANKURA CONSULTING GROUP, LLC TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER, (II) DESIGNATING PHILIP J. GUND AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby apply to the Court (the "Application") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtors to:  (i) employ and retain Ankura Consulting Group, LLC ("Ankura") to provide the Debtors with a Chief Restructuring Officer ("CRO"), and (ii) designate Philip J. Gund as CRO in the Chapter 11 Cases effective as of the Petition Date (defined below).  In support of this Application, the Debtors rely on the *Declaration of Philip J. Gund* attached hereto as **Exhibit B** (the "Gund Declaration").  In further support of this Application, the Debtors respectfully represent as follows:

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

**JURISDICTION AND VENUE**

1. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief sought herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2016-1 and 2016-2.

**BACKGROUND**

4. On August 9, 2023 and August 21, 2023 as applicable, (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

5. Amyris was founded in 2003 to create a more stable supply of a key anti-malarial treatment. Through Amyris's cutting-edge science, artemisinin—the most effective anti-

malarial drug in the world—is now consistently available to treat the deadly disease. Using the same technological innovations that produced artemisinin, Amyris has become the world's leading manufacturer of ingredients made with synthetic biology. Amyris provides sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products.

6. In addition, Amyris operates a family of consumer brands that use the company's ingredients to meet the growing demand for sustainable, effective, and accessible products, including Biossance® (clean beauty skincare), JVN™ (haircare), Rose Inc.™ (clean color cosmetics), Pipette® (clean baby skincare), OLIKA™ (clean wellness), MenoLabs™ (healthy living and menopause wellness), Stripes™ (menopausal wellness), and 4U by Tia™ (a new clean haircare line).

7. A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "<u>First Day Declaration</u>") [Docket No. 18], incorporated herein by reference.[2]

## RELIEF REQUESTED

8. The Debtors seek entry of the Order, effective as of the Petition Date, authorizing the Debtors to: (i) employ and retain Ankura to provide the Debtors with a CRO, and (ii) designate Philip J. Gund as the Debtors' CRO.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

3

**RETENTION OF ANKURA**

A.     **Ankura's Qualifications**

9.     In consideration of the size and complexity of their business, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced restructuring managers will substantially enhance their attempts to maximize the value of their estates.  On August 9, 2023, Ankura was engaged to provide interim consulting services in connection with a potential restructuring.  Mr. Gund is familiar with the Debtors' business and is well-qualified to act on the Debtors' behalf given his extensive knowledge and expertise with respect to chapter 11 proceedings.

10.     Ankura is a business advisory and expert services firm whose professionals have significant experience in providing bankruptcy crisis management and consulting, and special financial advisory services.  Ankura's professionals have provided strategic advice to debtors in numerous chapter 11 cases of similar size and complexity as these Chapter 11 Cases.  Ankura and its professionals have provided restructuring or crisis management services in numerous bankruptcy cases, including:  *In re Country Fresh Holding Co.*, No. 21-30574 (MI) (Bankr. S.D. Tex. Mar. 31, 2021); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. 2020); *In re Brooks Brothers Grp., Inc.*, No. 20–11785 (CSS) (Bankr. D. Del. 2020); *In re Exide Holdings, Inc.*, No. 20-11157 (CSS) (Bankr. D. Del. May 19, 2020); *In re Elk Petroleum, Inc.*, No. 19- 11157 (LSS) (Bankr. D. Del. 2019); *In re MTE Holdings LLC*, No. 19-12269 (CTG) (Bankr. D. Del. 2019); *In re High Ridge Brands Co.*, No. 19-12689 (BLS) (Bankr. D. Del. Dec. 18, 2019); *In re Emerge Energy Services LP*, No. 19-11563 (KBO) (Bankr. D. Del. Dec. 18, 2019); *In re Fallbrook Techs. Inc.*, No. 18-10384 (MFW) (Bankr. D. Del. Feb. 26, 2018); *In re Payless Holdings LLC*, No. 19-40883-659 (Bankr. E.D. Mo. Feb. 18, 2019); *In re Model Reorg Acquisition, LLC*, No. 17-11794

(CSS) (Bankr. D. Del. 2017); *In re Last Call Guarantor, LLC*, No. 16-11844 (KG) (Bankr. D. Del. Sept. 2, 2016); *In re SynCardia Systems, Inc.*, No. 16-11599 (MFW) (Bankr. D. Del. Aug. 1, 2016); *In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y. Aug. 11, 2016); *In re C. Wonder LLC*, No. 16-11127 (MBK) (Bankr. D.N.J. Jan. 28, 2015); *In re The SCOOTER Store Holdings, Inc.*, No. 13-10904 (LSS) (Bankr. D. Del. April 15, 2013); *In re Vivaro Corp.*, No. 12-13810 (MG) (Bankr. S.D.N.Y. Sept. 5, 2012); *In re Am. Commercial Lines LLC*, No. 03-90305 (Bankr. S.D. Ind. 2003) (Philip J. Gund).

11. Ankura's professionals specialize in interim management, restructuring advisory, turnaround consulting, operational due diligence, creditor advisory services, and performance improvement. Ankura's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans, and related assessments of a business's strategic position; monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

12. Mr. Gund is a Senior Managing Director of Ankura and has more than 30 years of experience advising the boards of directors and senior management of troubled companies and creditor constituencies in both operational and financial restructurings, providing interim management services to both non-distressed and distressed companies and acting as liquidating trustee for liquidation trusts. He has worked in a wide variety of industries including marine transportation, marine construction, automotive parts, healthcare, hotel development and management, retail, co-op purchasing and distribution, daily publications, printing, import/export, real estate and construction, specialty chemicals, coke and electrode production, alternative energy

development, construction and management, telecommunications, golf courses and practice facilities, family entertainment centers, and manufacturing and wholesale distribution. Over the course of his career, Mr. Gund has performed an array of restructuring advisory and consulting services for a variety of different types of companies, and he has a deep understanding of the economic, regulatory, operational, strategic, and financial factors that drive businesses operating in chapter 11. Mr. Gund's prior experience includes a wide range of services and activities targeted at restructuring, stabilizing, and improving a company's financial position, including: (a) developing and implementing business plans; (b) developing and executing turnaround strategies; (c) planning and implementing financial and operational restructurings and debt reorganizations; (d) financial modeling; (e) managing negotiations with stakeholders; (f) forensic accounting; and (g) stabilizing business and liquidity.

13. Ankura has significant relevant experience and expertise regarding the Debtors, their operations, and the unique circumstances of the Chapter 11 Cases. Ankura is well-qualified to deal effectively and efficiently with matters that may arise in the context of the Chapter 11 Cases. Ankura has advised the Debtors that it will endeavor to coordinate with the other professionals retained in the Chapter 11 Cases to eliminate unnecessary duplication of work. Accordingly, the Debtors submit that the retention of Ankura and the designation of Mr. Gund as CRO on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted.

**B.    Scope of Services**

14. Subject to Court approval, the Debtors propose to retain Ankura on the terms and conditions set forth in the engagement letter dated August 9, 2023, attached hereto as **Exhibit C** (the "Engagement Letter")[3] and any order granting this Application.

15. Ankura will provide Mr. Gund to serve as the Debtors' CRO. The CRO shall report to and have such duties as the Board of Directors (the "Board") may from time to time determine.

16. Generally, the CRO shall perform activities and services customarily performed by a chief restructuring officer, including assisting in: (a) the operational and cash management functions of the Debtors; (b) the development of any cost reduction programs or asset conservation measures with respect to the Debtors and any underlying analysis thereof; and (c) any elements of the restructuring process with respect to the Debtors.

17. The services to be provided by Ankura do not include audit, legal, tax, environmental, accounting, actuarial, employee benefits, insurance advice, or similar specialist and other professional services that are typically outsourced and that shall be obtained directly where required by the Debtors at the Debtors' expense. Consistent with the "Jay Alix Protocol," Ankura and Mr. Gund will not act as financial advisors retained under section 327 of the Bankruptcy Code, claims agents or claims administrators appointed pursuant to 28 U.S.C. § 156(c), or investors or acquirers in the Debtors' Chapter 11 Cases.[4]

---

[3] The Engagement Letter summaries contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein. Capitalized terms used in such summaries but not otherwise defined herein have the meanings given in the Engagement Letter.

[4] A copy of the "Jay Alix Protocol" is available at https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual.

**C.     Ankura's Disinterestedness**

18.     The Debtors believe that the CRO is not a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code.  However, Ankura has informed the Debtors that, except as may be set forth in the Gund Declaration, Ankura and its subsidiaries that may be performing the Services to the Debtors:  (i) have no connection with the Debtors, their creditors, or other parties in interest in the Chapter 11 Cases; (ii) do not hold any interest adverse to the Debtors' estates; and (iii) believe each of them is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.

**D.     Terms of Retention**

19.     As set forth in the Engagement Letter, the Debtors have agreed, among other things:  (a) to compensate and reimburse Ankura for services provided and expenses incurred; and (b) to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and to provide such persons with insurance coverage under the Debtors' director and officer liability insurance policies.

20.     For Ankura's services, the Debtors have agreed to pay to Ankura the following non-refundable Monthly Fee and Additional Fee:

  A.     <u>Monthly Fee</u>:  A monthly fee for the CRO in the amount of $135,000, payable in advance on the first business day of each month.  If Ankura is retained mid-month, the initial Monthly Fee will be prorated for the period retained.

  B.     <u>Additional Fee</u>:  The CRO will be entitled to an additional fee as follows:

   (i)     $650,000 upon the filing and confirmation of a Plan of Reorganization, or

   (ii)    $325,000 to the extent that the assets are sold through a 363 sale during the pendency of the Debtors' bankruptcy cases.

8

Any Additional Fee shall be the subject of a fee application and shall be approved by the Court prior to payment.

21.     In addition to the fees outlined above, Ankura will bill for reasonable direct expenses which are incurred on the Debtors' behalf during the Chapter 11 Cases.  Expenses include reasonable and customary out-of-pocket expenses that are billed directly to the Chapter 11 Cases such as certain telephone, overnight mail, messenger, travel, meals, accommodations, and other expenses specifically related to the engagement.  Further, if Ankura or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, Ankura will be compensated by the Debtors at its regular hourly rates and reimbursed for reasonable direct expenses (including reasonable, documented fees of counsel) with respect thereto.

22.     In connection with Ankura's original August 9, 2023 retention and in accordance with its Engagement Letter, Ankura received an unapplied advance payment from the Debtors in the amount of $150,000.00 (the "<u>Retainer</u>").  According to Ankura's books and records, during the thirty-day period before the Petition Date, the Debtors paid Ankura $150,000.00 in the aggregate for professional services rendered, expenses incurred, and the Retainer.  Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately before the Petition Date, Ankura may have incurred, but not billed, fees and expenses incurred before the Petition Date.  The Debtors request that the Court permit Ankura to apply the Retainer to these amounts.  Upon entry of an Order approving the relief requested herein, the Debtors will not owe Ankura any sums for periods before the Petition Date.  The Debtors and Ankura have agreed that any portion of the Retainer not used to compensate Ankura for its prepetition services

and expenses will be held by Ankura, not placed in a separate account, and applied against Ankura's postpetition invoices.

### E.   Indemnification and Liability Limitation

#### 1.   Indemnification

23.   As a material part of the consideration for which Ankura has agreed to provide the Services described herein, the Debtors have agreed to the indemnification provisions set forth in Schedule I to the Engagement Letter (the "<u>Indemnification Provisions</u>").  The Indemnification Provisions provide that the Debtors indemnify and hold harmless Ankura and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors, and employees under certain circumstances.  All requests of Ankura for the payment of indemnity pursuant to the Indemnification Provisions will be made by means of an application to, and shall be subject to review by, the Court to ensure that payment of such indemnity: (a) conforms to the terms of the Engagement Letter; and (b) is reasonable based upon the circumstances.

24.   Notwithstanding the foregoing, the Proposed Order modifies the Indemnification Provisions so that the Debtors are only permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the Debtors' bylaws and applicable state law, in addition to insurance coverage under the Debtors' director and officer insurance policies.  The Proposed Order further provides that there shall be no other indemnification of Ankura and its affiliates or subsidiaries.  The Debtors and Ankura believe that the Indemnification Provisions, as modified by the Proposed Order, are customary and reasonable for firms providing interim management services.

25.     Moreover, the terms and conditions of the Indemnification Provisions were negotiated by the Debtors and Ankura at arm's length and in good faith.  The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Ankura's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require Ankura's services successfully to navigate the Chapter 11 Cases.  Accordingly, the Debtors request that this Court approve the Indemnification Provisions as set forth in the Engagement Letter, as modified by the Proposed Order.

   **2.     Limitation of Liability**

26.     The Engagement Letter provides that no Indemnified Person shall be liable to the Debtors, or their successors, affiliates, or assigns for damages in excess of the total amount of the fees paid to Ankura under the Engagement Letter and, without limiting the generality of the foregoing, that in no event shall any Indemnified Person be liable for consequential, indirect, or punitive damages, damages for lost profits or opportunities, or other like damages or claims of any kind.  The Debtors and Ankura have agreed that during the course of these Chapter 11 Cases, any limitation of liability provisions in the Engagement Letter shall have no force or effect.

   **3.     Fees and Reporting**

27.     If the Court approves the relief requested herein, Ankura will be retained and Mr. Gund will be designated as CRO pursuant to section 363 of the Bankruptcy Code.  Because Ankura is not being employed as a professional under section 327 of the Code, Ankura will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  Instead, Ankura will file with the Court, and provide notice to the U.S. Trustee and all official committees appointed in these Chapter 11 Cases (together with the U.S. Trustee, the "<u>Notice Parties</u>"), reports of compensation earned, expenses incurred, and staffing on the Chapter 11 Cases (the "<u>Staffing Report</u>") by the 30th day of each month for the previous month, which will include

summary charts describing the number of hours billed by Mr. Gund  The first Compensation and Staffing Report shall cover the period from the Petition Date until the end of the month in which the Proposed Order is entered and shall be submitted within thirty (30) days thereafter.

28. The Staffing Reports will be subject to review by the Court if an objection is filed by any of the Notice Parties and served on the Debtors, the Debtors' undersigned counsel, and Ankura within twenty-one (21) days after the date each Staffing Report is filed and served (the "Objection Period").  The Debtors respectfully request that they be authorized, but not directed, to pay, in the ordinary course of business, all amounts invoiced by Ankura for fees and expenses incurred in connection with Ankura's retention.  In the event an objection is filed and served during the Objection Period and not consensually resolved, the Debtors shall deduct an amount equal to the amount objected to from the next payment to Ankura until such objection is resolved, either consensually or by Court order.

29. Given the numerous issues that Mr, Gund may be required to address in the performance of their services and the effort necessary to address all such issues as they arise, and the market prices for such services in engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth in the Engagement Letter are reasonable.

## DISPUTE RESOLUTION PROVISIONS

30. The Debtors and Ankura have agreed, subject to the Court's approval of this Application, that: (a) any claim, dispute, or difference concerning the Engagement Letter and any matter arising from it, shall be brought in in any federal court of competent jurisdiction sitting in the Southern District of New York; and (b) Ankura and the Debtors irrevocably and unconditionally agree to waive a trial by jury in any action, proceeding, or counterclaim arising out of or relating to the services or the Engagement Letter.

**BASIS FOR RELIEF**

31. The Debtors seek to employ and retain Ankura and designate Mr. Gund as CRO pursuant to section 363 of the Bankruptcy Code effective as of the Petition Date. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

32. Under applicable case law, in this and other jurisdictions, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

33. The relief requested herein is appropriate and warranted under each of the above standards. The decision to retain Ankura and employ Mr. Gund as CRO should be authorized because it is based on a sound exercise of the Debtors' business judgment. First, as described above, Mr. Gund has extensive experience as a senior officer and advisor for many

troubled companies. The Debtors believe that Mr. Gund will provide services that substantially benefit the Debtors' estates and creditors. Ankura has extensive experience in providing turnaround and crisis management services in chapter 11 proceedings and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

34. Second, Mr. Gund, working in conjunction with the Debtors' senior management, has already proven to be of invaluable assistance to the Debtors in developing financial projections, assisting in short-term cash management activities, evaluating strategic alternatives, and coordinating the Debtors' efforts to prepare for and operate in chapter 11.

35. Finally, through negotiations, the Debtors have been able to retain Ankura and secure the services of Mr. Gund during these Chapter 11 Cases on economic terms that are fair, reasonable, and beneficial to the Debtors' estates. Moreover, the compensation arrangement provided for in this Application and the Engagement Letter is consistent with and typical of arrangements entered into by Ankura and other restructuring consulting firms with respect to rendering similar services for clients such as the Debtors.

36. In view of the foregoing, the Debtors believe that the retention of Ankura and the employment of Mr. Gund is a sound exercise of the Debtors' business judgment and is in the best interests of all parties in interest in these Chapter 11 Cases. The Debtors additionally believe that Ankura is well-qualified and able to represent the Debtors in a cost-effective, efficient, and timely manner. Ankura has indicated a willingness to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of the Court.

37. Courts in this district and in other jurisdictions have approved relief similar to the relief requested in this Motion. *See, e.g.*, *In re TZEW Holdco LLC*, No. 20-10910 (CSS)

(Bankr. D. Del. May 7, 2020) (Docket No. 200); *In re Forever 21, Inc.*, No. 19-12122 (MFW) (Bankr. D. Del Nov. 4, 2019) (Docket No. 388); *In re KG Wind Down, Inc.*, No. 19-10953 (CSS) (Bankr. D. Del. Oct. 24, 2019) (Docket No. 465); *In re Aerogroup Int'l, Inc.*, No. 17-11962 (KJC) (Bankr. D. Del. Oct. 16, 2017) (Docket No. 167); *In re APP Winddown, LLC*, No. 16-12551 (BLS) (Bankr. D. Del. Dec. 8, 2016) (Docket No. 258); *In re Basic Energy Services, Inc.*, No. 16-12320 (KJC) (Bankr. D. Del. Nov. 18, 2016) (Docket No. 185); *In re UCI-Airtex Holdings, Inc.*, No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016).[5]

38. Based upon the foregoing, the Debtors submit that the retention of Ankura and the designation of Mr. Gund as CRO on the terms set forth herein and in the Engagement Letter is essential, appropriate, and in the best interests of the Debtors' estates, creditors, and other parties in interest, and should be granted in these Chapter 11 Cases.

39. The Debtors further request that Ankura's retention be made effective as of the Petition Date, to allow Ankura to be compensated for the work performed for the Debtors prior to the Court's consideration and approval of this Application. The Debtors submit that under the circumstances, and to avoid irreparable harm to the Debtors' estates that may occur if Ankura is not immediately retained, retroactive approval to the Petition Date is warranted.[6] *See, e.g.*, *FIS Airlease II, Inc.* v. *Simon (In re FIS Airlease II, Inc.)*, 844 F.2d 99, 103 (3d Cir. 1988), *cert. denied*, 488 U.S. 852 (1988); *In re Garden Ridge Corp.*, 326 B.R. 278, 281 (Bankr. D. Del. 2005); *Indian River Homes, Inc.* v. *Sussex Trust Co.*, 108 B.R. 46, 51 (D. Del. 1989) (finding that approval of

---

[5] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these orders are available upon request to the Debtors' proposed counsel.

[6] Local Rule 2014-1(b) provides, in relevant part: "If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise." Del. Bankr. L.R. 2014-1(b).

15

the debtor's employment of an attorney and real estate agent as of a prior date was not an abuse of discretion).

## NOTICE

40. The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lenders, DIP Agent, and the Foris Prepetition Secured Lenders, Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com) and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com); (d) co-counsel to the DIP Lenders, the DIP Agent, and the Foris Prepetition Secured Lenders, Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com); (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which the Debtors conduct business; and (g) any party that requests service pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, for the reasons set forth herein, in the Gund Declaration, and in the First Day Declaration, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Application and such other and further relief as is just and proper.

Dated: August 24, 2023            AMYRIS, INC., *et al.*

/s/ Han Kieftenbeld
Name: Han Kieftenbeld
Title: Interim Chief Executive Officer and Chief Financial Officer