**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**Objections Due: September 7, 2023 at 4:00 P.M. (ET)**
**Hearing Date: September 14, 2023 at 2:00 P.M. (ET)**

**MOTION FOR AN ORDER (I) APPROVING KEY EMPLOYEE INCENTIVE PLAN FOR SENIOR LEADERSHIP EMPLOYEES AND (II) APPROVING KEY EMPLOYEE RETENTION PLAN FOR NON-INSIDER EMPLOYEES**

The above-captioned debtors and debtors-in-possession (the "Debtors" or the "Amyris") file this motion (the "Motion") for the entry of an order substantially in the form of **Exhibit A** hereto (the "Proposed Order"): (i) approving key employee incentive program (the "KEIP") for twelve Senior Leadership Employees (as defined below) and (ii) approving a key employee retention program (the "KERP") for seventy-eight Non-Insider Employees (as defined below). In support of this Motion, the Debtors rely upon and refer this Court to the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration") and Declaration of Steven J. Fleming (the "Fleming Declaration"), incorporated herein by reference.[2]

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the First Day Declaration.

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. The Debtors confirm their consent, pursuant to Rule 9013-1(f) of the Local Rules, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein are sections 105(a), 363(b), and 503(b) and (c)(3) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

## INTRODUCTION

4. Prior to the Petition Date, the Debtors reduced their workforce by approximately thirty percent (30%) over two workforce reductions that took place on or about June 26 and August 8, 2023. As a result of the reductions in force, many of the remaining employees in the Debtors' accounting, finance, legal, human resources, and operations departments have substantial additional responsibilities as they work toward a restructuring of the business. The Debtors must seek to shore up morale in various areas of operation and management to preserve the business and ensure a successful restructuring in these cases. These employees' responsibilities have been further expanded to include the necessary tasks and obligations to

make these Chapter 11 Cases run as smoothly as possible and to ensure that the Debtors consummate a successful restructuring. The Employees' continued focus, energy, and efforts are critical to the Debtors' ability to restructure and to maximize creditor recoveries in these Chapter 11 Cases.

5. The Debtors, with their advisors, have developed the Programs, which are designed to retain the services of the KERP Participants and to incentivize the KEIP Participants, as the Debtors continue to operate for numerous months in chapter 11, pursue an expedited sale transaction, and maximize and preserve value for all stakeholders. Without this relief, KERP and KEIP Participants will not be properly incentivized to achieve the Debtors' objectives, which will imperil the success of these Chapter 11 Cases. For the avoidance of doubt, the proposed Programs seek to supplement compensation and benefits approved on an interim basis under the First Day wage motion and to replace any expectations key employees may have to an existing payment for severance, whether provided by the terms of contract or under the Debtors' informal prepetition practice.

6. Importantly, the Programs comply with the Bankruptcy Code. Retention payments will only be made to non-insider employees. As set forth in the First Day Declaration and the Fleming Declaration, the Programs are reasonable, within the range of comparable plans, and reflect a sound exercise of the Debtors' business judgment. Accordingly, the Debtors respectfully request the Court authorize the Debtors to implement the Programs.

7. For these reasons, and as more fully explained below, the Debtors respectfully request that this Court grant the relief requested herein.

# BACKGROUND

## A. Case Background

8. On August 9 and August 21, 2023 (as applicable, the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

9. Amyris was founded in 2003 to create a more stable supply of a key anti-malarial treatment. Through Amyris' cutting-edge science, artemisinin—the most effective anti-malarial drug in the world—is now consistently available to treat the deadly disease. Using the same technological innovations that produced artemisinin, Amyris has become the world's leading manufacturer of ingredients made with synthetic biology. Amyris provides sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products.

10. In addition, Amyris operates a family of consumer brands that utilize the Company's ingredients to meet the growing demand for sustainable, effective, and accessible products, including Biossance® (clean beauty skincare), JVN™ (haircare), Rose Inc.™ (clean color cosmetics), Pipette® (clean baby skincare), OLIKA™ (clean wellness), MenoLabs™ (healthy living and menopause wellness), Stripes™ (menopausal wellness), and 4U by Tia™ (a new clean haircare line).

11. A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the First Day Declaration.

**B. General Employee Overview and Prepetition Bonus Programs**

12. As of the Petition Date, the Debtors employ approximately 708 employees, 557 of whom are salaried and 151 of whom are hourly (the "Employees"). The Employees perform a variety of functions critical to the preservation of value and the administration of the Debtors' estates. In many instances, the Employees include personnel who have specialized and unique technical and scientific expertise, are intimately familiar with the Debtors' businesses, processes, and systems, and who cannot be easily replaced. Without the continued, uninterrupted services of the Employees, the Debtors simply could not run their business and preserve value for the benefit of all stakeholders. None of the Debtors' employees are subject to collective bargaining agreements.

13. On the Petition Date, the Debtors filed that certain *Motion for Entry of Interim and Final Orders (I) Authorizing, But Not Directing, the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits Programs and (II) Grant Related Relief* [Docket No. 11] (the "Wage Motion"). Among other things, the Wage Motion sets forth the various programs and compensation that the Debtors proposed to offer their employees postpetition. The Wage Motion further discloses the existence of certain bonus and incentive programs offered by the Debtors prepetition (the "Prepetition Bonus Programs"), but explicitly does not request authority to continue to honor Prepetition Bonus Programs on a postpetition basis.

14. In this regard, and among the Prepetition Bonus Programs were annual and quarterly bonuses offered to substantially all of the Debtors' employees (the "Annual/Quarterly

Bonus Program”). However, as of the Petition Date, the Debtors have not made payments pursuant to the Annual/Quarterly Bonus Program based on annual and fourth quarter performance in 2022.

15. Additionally, a material component of the prepetition compensation for many of the Debtors’ employees were restricted stock units and non-qualified stock options (“Equity Compensation”). However, in light of the Debtors’ financial condition, it is unlikely that the Equity Compensation will have any value.

16. Furthermore, in the days leading up to the Petition Date, the Debtors conducted a reduction in force, resulting in a work force reduction of approximately thirty percent (30%) of the Debtors’ then-existing workforce. This reduction in force required employees to, in almost all circumstances, take on more day-to-day responsibility, which responsibility is now compounded by these Chapter 11 Cases. This reduction in force required employees to, in almost all circumstances, take on more day-to-day responsibility, which responsibility is now compounded by these Chapter 11 Cases.

**C. The Proposed KEIP**

17. The “Senior Leadership Employees” are twelve members of the Debtors’ senior leadership team, consisting of among others the Debtors’ Chief Financial Officer/Interim Chief Executive Officer, Chief Operations Officer, Chief Strategist/Product Development, and Chief People Officer. The Senior Leadership Employees also includes those individuals that lead the Debtors’ consumer brands. The Senior Leadership Employees are responsible for executing the Debtors’ operating and strategic plans, including maintaining the Debtors’ business operations, overseeing and addressing issues during these Chapter 11 Cases, managing the Debtors’ sale and marketing process, and maintaining employee morale and a positive culture among the Debtors’

employees during these Chapter 11 Cases. The Debtors believe that the Senior Leadership Employees cannot be easily replaced without significant operational setbacks and material efficiency losses, especially during the anticipated brief duration of these Chapter 11 Cases. The Senior Leadership Employees are vital to the on-going stability, continuity, and strength of the Debtors during these Chapter 11 Cases.

18. There are two tranches of KEIP awards – the "Consumer Brands Sale KEIP Award" and the "Supplemental KEIP Award". The first tranche (the "Consumer Brands Sale KEIP Award") is payable to the twelve Senior Leadership Employees based upon either (a) the amount of total consideration received in connection with a sale of the Debtors' consumer assets or (b) the total consideration received from the sale of a particular brand. The second tranche (the "Supplemental KEIP Award") is payable to seven of the twelve Senior Leadership Employees who are most critical to the overall restructuring efforts based on compliance with the DIP budget and confirmation of a chapter 11 plan. The performance targets were developed carefully to ensure they are an appropriate "reach" to drive performance, on the one hand, but will not present unrealistic or unattainable goals, on the other hand—which would of course thwart the incentivizing nature of the KEIP.

19. **Consumer Brands Sale KEIP Award.** The Consumer Brands Sale KEIP Award is a tiered award based upon, and funded by, the sale proceeds of a transaction or transactions (the "Consumer Brands Sale Proceeds"). The total Consumer Brands Sale KEIP Award totals in the range of $0 - $5,225,000, depending upon the sale proceeds received. Seven of the Senior Management Employees' award will be measured based upon the aggregate sale proceeds for all of the consumer brands. The other five Senior Management Employees' award will be measured based upon the sale proceeds solely for a particular consumer brand.

20. **Supplemental KEIP Award.** In addition to the Consumer Brands KEIP Award, the Supplemental KEIP Award is a pool in the amount of $691,000 (the "Supplemental KEIP Award Pool"). Supplemental KEIP Awards are payable to seven of the Senior Management Employees instrumental in effectuating a successful restructuring and will be in addition to the Consumer Brands KEIP Award, based upon the following targets:

1. Fifty percent (50%) of the target payout ($345,500) is conditioned on the Debtors staying within 15% of the cumulative "Total Operating Cash Flows" line item of the approved DIP financing budget in effect at the time through confirmation of the chapter 11 plan.
2. The remaining fifty percent (50%) of the pay-out ($345,500) is earned upon the successful confirmation of a chapter 11 plan.

21. In the event that the employment of a Senior Management Employee is terminated without cause, prior to target, such Senior Management Employee will receive his/her KEIP Award on a *pro rata* basis based on the percentage of the amount of time from the Petition Date to the date the KEIP Award is earned. Under all other employment termination scenarios, Senior Management Employees will not be eligible for any payments under the KEIP.

22. Subject to Court approval of the KEIP, the Senior Management Employees will waive any contractual cash severance and/or bonus payments, including claims arising from rejection of change in control agreements or executive severance agreements.

## D. The Proposed KERP

23. The seventy-eight Non-Insider Employees, who each serve crucial roles in the Debtors' various, engineering, sales, operational, and back office and administrative positions, are divided into three tiers under the KERP:

- Tier One includes Non-Insider Employees who play a critical role in maintaining the Debtors' operations and have direct knowledge and expertise required to execute the Debtors' sale process and operational restructuring.
- Tier Two includes Non-Insider Employees who for the most part are direct reports to certain of the Tier One Non Insider-Employees. The loss of any Non-Insider Employees in Tier Two would directly affect the ability of the Tier One Non-Insider Employees to carry out their essential duties.
- Tier Three consists of Non-Insider Employees who are necessary to support the continuity of the Debtors' operations. The continued focus of Tier Three Non-Insider Employees is needed to support the administration of the chapter 11 cases and manage the normal day-to-day responsibilities critical to the continued operation of the Debtors' business.

24. Under the proposed KERP, each Non-Insider Employee will receive aggregate payments totaling between one to three months' base salary, depending on their tier level, in two installments. In order to receive the first payment under the KERP, a Non-Insider Employee must be employed by the Debtors as of November 30, 2023 (the "First KERP Trigger Date"). In order to receive the second payment under the KERP, a Non-Insider Employee must be employed by the Debtors upon emergence from chapter 11 (the "Second KERP Trigger Date"). However, if a Non-Insider Employee's employment with the Debtors is terminated without Cause (as defined below), or due to death or disability, prior to the closing date of a sale of substantially all the Debtors' assets, the such Non-Insider Employee shall be entitled to receive any payment they would have been entitled to receive under the KERP, had the Non-Insider Employee been employed through the KERP Trigger Date.

25. For purposes of the preceding paragraph, "Cause" means (i) a Non-Insider Employee' failure to materially perform the duties for which they are employed, (ii) a Non-Insider Employee's willful violation of a material policy of the Debtors, (iii) a Non-Insider Employee's commission of any act or acts of fraud, embezzlement, dishonesty, or other willful misconduct, (iv) a Non-Insider Employee's material breach of any of their obligations under any

written agreement or covenant with the Debtors, or (v) an act of dishonesty on the part of the Non-Insider Employee resulting or intended to result, directly or indirectly, in their gain for personal enrichment at the expense of the Debtors.

26. Subject to Court approval of the KERP, the Senior Management Employees will waive any contractual cash severance and/or bonus payments, including claims arising from rejection of change in control agreements or employment agreements. The KERP replaces all of the Debtors' prepetition incentive and severance plans for the Non-Insider Employees.

27. Because the Debtors have not made payments to the Non-Insider Employees pursuant to the Annual/Quarterly Bonus Program for the annual and fourth quarter of 2022, the Debtors are seeking to provide the KERP in lieu of such payments in order to meaningfully incentivize the Non-Insider Employees to continue to provide their services to the Debtors during these Chapter 11 Cases. The KERP proposes to incentivize approximately ten percent (10%) of the Debtors' total workforce and has a maximum cost of approximately $2,666,307, in the aggregate.

**RELIEF REQUESTED**

28. By this Motion, pursuant to sections 105(a), 363(b) and 503(b) and (c)(3) of the Bankruptcy Code and Bankruptcy Rule 6004, the Debtors request the entry of the Proposed Order, attached hereto as Exhibit A, (i) approving the KEIP for the Senior Leadership Employees, and (ii) approving the KERP for the Non-Insider Employees.

## BASIS FOR RELIEF REQUESTED

### A. The KEIP

#### i. Implementation of the KEIP Is Warranted Under Section 363(b)(1) as an Appropriate Exercise of the Debtors' Business Judgment

29. "The [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate," 11 U.S.C. § 363(b)(1), as long as the debtor can "show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *see also Culp v. Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015). Where there is a reasonable basis for a debtor's business decisions, courts generally do not contradict the proposed course of conduct. *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

30. The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment. *In re Global Home Prods., LLC*, 369 B.R. 778, 784 (Bankr. D. Del. 2007) (citing *In re U.S. Airways, Inc.*, 329 B.R. 793, 795 (Bankr. E.D. Va. 2005)). Therefore, the implementation of the proposed KEIP is a sound exercise of the Debtors' business judgment and, as such, should be approved under section 363(b) of the Bankruptcy Code. The Senior Leadership Employees are essential to the Debtors' operations and their services are necessary to maximize the value of these Debtors' estates. The KEIP establishes goals for the Senior Leadership Employees that, if achieved, will have a meaningful impact on the Debtors' sale efforts. The payment levels under the KEIP are reasonable in light of the size of the Debtors' estates and the amounts that comparable companies have provided as incentives to their senior leadership in other chapter 11 cases. As a result, the Debtors, in their sound

business judgment, believe that the implementation of the KEIP is well justified under the circumstances and will benefit the Debtors' estates and their creditor constituencies.

**ii. The KEIP Is Warranted Under Section 503(b)(1) as Actual, Necessary Costs and Expenses of Preserving the Debtors' Chapter 11 Estates**

31. Section 503(b) of the Bankruptcy Code states in pertinent part that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including – (1)(A) the actual necessary costs and expenses of preserving the estate including – (i) wages, salaries, and commissions for services rendered after commencement of the case. . . ." 11 U.S.C. § 503(b); *see also In re APF Co.*, 270 B.R. 567, 570-71 (Bankr. D. Del. 2001) (postpetition employee bonus is an administrative expense claim under section 503(b)(1)(A)). As discussed above, the KEIP is appropriate designed to maximize the value of these estates and are appropriately categorized as wages earned after the Petition Date.

**iii. The KEIP Provides Incentives, Not Retention or Severance Payments, and Therefore Sections 503(c)(1) and 503(c)(2) Do Not Apply**

32. Sections 503(c)(1) and (2) of the Bankruptcy Code govern retention and severance payments to insiders, and therefore does not apply to performance-based incentive plans like the KEIP. *See*, *e.g.*, *In re Alpha Natural Res., Inc*., 546 B.R. 348, 356 (Bankr. E.D. Va. 2016) ("On its face, § 503(c)(1) does not apply to a KEIP because the payments thereunder are incentive and not purely retentive."); *In re Nobex Corp*., 2006 Bankr. LEXIS 417, at *8 (Bankr. D. Del. Jan. 19, 2006) ("The sale-related incentive pay to [senior management] is not governed by sections 503(c)(1) or 503(c)(2) of the Bankruptcy Code.").

33. Also, the KEIP is not subject to the restrictions set forth in section 503(c)(2) of the Bankruptcy Code with respect to severance payments to insiders because no payments under the KEIP are tied to the termination of employment. See *In re Dana Corp*., 358 B.R. 567, 577-78 (Bankr. S.D.N.Y. 2006) (incentive plan was not subject to section 503(c)(2) of the Bankruptcy

Code because incentives were not tied to termination of employment); accord In *In re Pilgrim's Pride Corp.*, 401 B.R. 229, 235-36 (Bankr. N.D. Tex. 2009) (consulting agreement did not fall under section 503(c)(2) of the Bankruptcy Code because payments were not intended as severance).

34. The KEIP was designed in order to incentivize a value maximizing sale and align the Senior Leadership Employees' interests with the Debtors' economic stakeholders. The KEIP was not designed to retain the Senior Leadership Employees, although a prerequisite to receiving a payment under the KEIP is that the particular Senior Leadership Employee must be employed at the time of the payment unless such employee's employment was terminated without cause. This should not bar its implementation; any successful incentive program would be expected to have this indirect benefit. *See, e.g., In re Global Home Prods., LLC,* 369 B.R. at 786 ("The fact, as Debtors pointed out, that all compensation has a retention element does not reduce the Court's conviction that Debtors' primary goal [is] to create value by motivating performance. All companies seek to retain employees they value by fairly compensating them."). As a result of the foregoing, the Debtors respectfully submit that sections 503(c)(1) and 503(c)(2) of the Bankruptcy Code do not apply to the KEIP.

**iv. Approval of the Proposed KEIP Is Justified by the Facts and Circumstances of these Chapter 11 Cases and Therefore Satisfies Section 503(c)(3)**

35. Section 503(c)(3) of the Bankruptcy Code prohibits transfers or obligations outside the ordinary course of business "not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition." 11. U.S.C. § 503(c)(3). Courts use the business judgment standard in analyzing transfers and obligations under section 503(c)(3). *See, e.g., In re Alpha Natural Res., Inc.*, 546 B.R. at 357-58 (citing *In re Borders Grp., Inc.*, 453

B.R. 459, 474 (Bankr. S.D.N.Y. 2011) ("[T]he legal standard under § 363(b) is no different than section 503(c)(3) . . . ."); *In re Global Home Prods., LLC*, 369 B.R. at 786 (applying the business judgment test to an incentive plan)).[3]

36. Courts assessing a debtor's business judgment relating to an incentive program under section 503(c)(3) look at six factors (the "Dana Factors"): (a) whether a reasonable relationship existed between the proposed plan and the desired results; (b) whether the cost of the plan was reasonable in light of the overall facts of the case; (c) whether the scope of the plan was fair and reasonable; (d) whether the plan was consistent with industry standards; (e) whether the debtor had put forth sufficient due diligence efforts in formulating the plan; and (f) whether the debtor received sufficient independent counsel in performing any due diligence and formulating the plan. *In re Dana Corp*., 358 B.R. at 576-77, applied in *In re Global Home Products, LLC*, 369 B.R. at 786.

37. The KEIP satisfies each of the Dana Factors. As to the first and third Dana Factors ((a) and (c) above), the KEIP was designed to motivate the Senior Leadership Employees for their significant efforts in these Chapter 11 Cases and to ensure that key management and employees continue to focus their full effort and attention on the Debtors' day-to-day operations and affairs as well as to implement the other goals of the KEIP. The KEIP incentivizes Senior Leadership Employees to stabilize and improve the Debtors' business performance during chapter 11 to make their operations an attractive target for potential sale. It fairly compensates the Senior Leadership Employees for the increased demands placed upon them in connection

---

[3] Although the Debtors believe that the business judgment rule applies to the "facts and circumstances" test of section 503(c)(3), some courts have applied a slightly higher bar. *See Pilgrim's Pride*, 401 B.R. at 236-37 (finding that, in addition to satisfying the business judgment standard, a proposed transfer was in the best interests of creditors and the debtor's estate). The Debtors believe that the KEIP and KERP would also satisfy any more rigorous standard that this Court might choose to apply because the benefits of the KEIP and KERP, respectively, to Debtors' chapter 11 estates and constituencies described in this Motion, along with the support for them by the Debtors' secured creditors.

with these Chapter 11 Cases, thereby maximizing the value of the Debtors' chapter 11 estates for the benefit of all parties in interest. As to the remaining Dana Factors, the KEIP was designed by the Debtors with the assistance of PwC, which (a) priced the KEIP based on comparisons with similar incentive plans of other comparable companies; (b) designed the KEIP to be within industry standards; (c) performed due diligence for purposes of designing and implementing the KEIP; and (d) provided independent counsel in performing due diligence and formulating the KEIP.

38. Additionally, Courts in this district have approved similar incentive plans. *See, e.g.*, *In re Melinta Therapeutics, Inc., et al.*, Case No. 19-12748 (LSS) (Bankr. D. Del. Feb. 5, 2020) (KEIP with sale price thresholds); *Pacific Sunwear of California, Inc., et al.,* Case No. 16-10822 (LSS) (Bank. D. Del. May 12, 2016) (plan confirmation and compliance with DIP covenants metrics); *New Gulf Resources, LLC*, et al., Case No. 15-12566 (BLS) (Bankr. D. Del. January 19, 2016); *In re Hipcricket, Inc*., Case No. 15-10104 (LSS) (Bankr. D. Del. March 18, 2015) (plan confirmation performance goals); *In re Longview Power, LLC*, et al. Case No. 13-12211 (BLS) (Bank. D. Del. December 18, 2013) (KEIP with chapter 11 confirmation and power capacity operation milestones).

### v. Authorization and Approval of the KEIP is Appropriate Under Section 105(a) of the Bankruptcy Code

39. Bankruptcy courts may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Courts use their section 105(a) powers to authorize payments essential to the operation of the debtor's business and maximizing the value of the estate. *Just for Feet, Inc.*, 242 B.R. 821, 824-26 (D. Del. 1999) (debtors may make payments that are essential to the continued operation of the business while in chapter 11); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re*

*Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payments to employees on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit … payment of creditors in full or at least proportionately"). Here, approval of KEIP is an appropriate use of the Court's section 105(a) powers because the KEIP is necessary to the continued operation of the Debtors' business and to the maximization of the value of the Debtors' chapter 11 estates for all stakeholders.

**B. The KERP**

40. The KERP should also be approved under the business judgement rule as applied under the statutory authority cited above for approval of the KEIP. 11 U.S.C. §§ 105(a) and 503(b). The KERP, however, is different than the KEIP in a material respect in that the employees that would benefit from it are not insiders of the Debtors and may receive time-based retention bonuses and severance. 11 U.S.C. § 503(c).[4]

**i. Because the KERP Does Not Include Insiders, It Is Not Subject to Sections 503(c)(1) and (2) of the Bankruptcy Code**

41. The KERP is not subject to the restrictions set forth in sections 503(c)(1) and (2) of the Bankruptcy Code because the KERP is not applicable to any "insiders" (as such term is defined by section 101(31) of the Bankruptcy Code). Generally, the Bankruptcy Code defines an "insider" to include, among other things, "an officer of the debtor" and a "person in control of the debtor." 11 U.S.C. § 101(31). Courts have also concluded that an employee may be an "insider" if that employee has "at least a controlling interest in the debtor or . . . exercise[s] sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the

[4] However, the KERP does not provide severance. As discussed above with respect to the KEIP, the KERP is not subject to the restrictions set forth in section 503(c)(2) of the Bankruptcy Code with respect to severance payments to insiders because no payments under the KEIP are tied to the termination of employment, see *Dana*, 358 B.R. at 577-78. Also, as discussed in the next subsection of this Motion, the Non-Insider Employees are not "insiders."

disposition of corporate assets." *In re Velo Holdings, Inc.*, 472 B.R. 201, 208 (Bankr. S.D.N.Y. 2012) (citation omitted). An employee's job title, alone, does not make that employee an "insider" as defined by the Bankruptcy Code. *See In re Borders Grp., Inc.*, 453 B.R. 459, 469 (Bankr. S.D.N.Y. 2011) (noting that "[c]ompanies often give employees the title 'director' or 'director-level,' but do not give them decision-making authority akin to an "executive" and concluding that certain "director-level" employees in that case were not insiders); *see also In re Foothills Texas, Inc.*, 408 B.R. 573, 574-75 (Bankr. D. Del. 2009) (noting that the presumption of an officer as an insider based on title may be rebutted with "evidence sufficient to establish that the person holds the title of an officer in name only and, in fact, does not meet the substantive definition of the same, *i.e.*, he or she is not taking part in the management of the debtor.").

42. As discussed above, for purposes of eligibility to participate in the KERP, the Debtors only considered non-insider "rank and file" employees. None of the Non-Insider Employees are officers or hold executive-level decision making positions with the Debtors. Therefore, no Non-Insider Employee is an "insider" of the Debtors (as such term is defined by the Bankruptcy Code) and the restrictions of section 503(c)(1) and (2) of the Bankruptcy Code are inapplicable to the KERP.

43. Because the KERP does not include insiders, the applicable standard for evaluating the appropriateness of the KERP is provided by section 503(c)(3) of the Bankruptcy Code. As stated above, section 503(c)(3) permits payments to a debtor's employees outside the ordinary course of business if those payments are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). As discussed above, courts have generally held that this standard is no different from the business judgment standard applied by courts in determining whether to

authorize the use, sale or lease of property outside the ordinary course of business under section 363(b) of the Bankruptcy Code. Accordingly, the KERP should be approved as a valid exercise of the Debtors' business judgment pursuant to section 363(b) of the Bankruptcy Code.

44. Also, the KERP satisfies each of the Dana Factors. As to the first and third Dana Factors, the KERP was designed to motivate the Non-Insider Employees for their significant efforts in these Chapter 11 Cases and to ensure that they continue to focus their full effort and attention on the Debtors' day-to-day operations and affairs as well as to implement the other goals of the KERP including retaining as many of the Non-Insider Employees as possible at least through the closing of the sale. The KERP fairly compensates the Non-Insider Employees for the increased demands placed upon them in connection with these Chapter 11 Cases, thereby maximizing the value of the Debtors' chapter 11 estates for the benefit of all parties in interest. As to the remaining Dana Factors, as stated above with regard to the KEIP, the KERP was designed by the Debtors with the assistance of PwC, which (a) priced the KERP based on comparisons with similar retention plans of other comparable companies; (b) designed the KERP to be within industry standards; (c) performed due diligence for purposes of designing and implementing the KERP; and (d) provided independent counsel in performing due diligence and formulating the KERP.

45. The KERP is similar to retention plans routinely approved in this district. *See, e.g.*, *In re Kona Grill, Inc.*, Case No. 19-10953 (CSS) (Bankr. D. Del. May 23, 2019); *In re Achaogen, Inc.*, Case No. 19-10844 (BLS) (Bankr. D. Del. May 8, 2019); *In re Promise Healthcare Group, LLC*, Case No. 18-12491 (CSS) (Bankr. D. Del. May 6, 2019); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 30, 2018*); In re True Religion Apparel Inc.*, Case No. 17-11460 (CSS) (Bankr. D. Del. Aug. 4, 2017); *In re*

*Pacific Sunwear of California, Inc.*, Case No. 16-10882 (LSS) (Docket No. 335) (Bankr. D. Del. May 12, 2016).

46. Accordingly, the Debtors respectfully submit that the KERP is justified by the facts and circumstances of these Chapter 11 Cases, is a sound exercise of business judgment, and that implementation of the KERP is in the best interests of the Debtors, their estates, creditors and all other stakeholders. For the reasons discussed above, the Debtors' KERP should be approved.

**NOTICE**

47. The Debtors will provide notice of this Motion to: (a)the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lenders, DIP Agent and the Foris Prepetition Secured Lenders, Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com), and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com); (d) co-counsel to the DIP Lenders, the DIP Agent and the Foris Prepetition Secured Lenders, Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com); (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which the Debtors conduct business; and (g) any party that requests service pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).

**NO PRIOR REQUEST**

48. The Debtors have not made any prior request for the relief sought herein to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request the entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: August 24, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*

Richard M. Pachulski (*pro hac vice* forthcoming)
Debra I. Grassgreen (*pro hac vice* forthcoming)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell (*pro hac vice* forthcoming)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
joneill@pszjlaw.com
jrosell@pszjlaw.com
sgolden@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*