IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

Proposed Hearing Date:  August 30, 2023 at 3:00 P.M. (ET)
Proposed Objection Deadline:  At the hearing

### DEBTORS' MOTION TO ASSUME AND/OR ENTER INTO REIMBURSEMENT AGREEMENTS WITH PROFESSIONALS FOR THE AD HOC NOTEHOLDER GROUP

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to enter into and, as applicable, assume reimbursement agreements (each, a "Reimbursement Agreement") between the Debtors and professionals retained by the *ad hoc* group of the holders of the 1.50% Convertible Senior Notes due 2026 (the "Ad Hoc Noteholder Group") pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code").  In support of this Motion, the Debtors rely upon and refer this Court to the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), incorporated herein by reference[2] and the *Declaration of Philip J. Gund in Support of Debtors' Emergency Motion to Assume and/or*

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration or the *Interim Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 54] (the "Interim DIP Order"), as applicable.

ACTIVE/124637625

*Enter Into Reimbursement Agreements with Professionals for the Ad Hoc Noteholder Group* (the "Gund Declaration"), filed concurrently herewith.  In further support of the Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.  The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory bases for the relief requested herein are sections 105(a), 363, and 365 of the Bankruptcy Code, Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1.

### BACKGROUND

**A.    General Background**

4.  On August 9 and August 21, 2023 (as applicable, the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11

Cases"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

5. Amyris was founded in 2003 to create a more stable supply of a key anti-malarial treatment. Through Amyris's cutting-edge science, artemisinin—the most effective anti-malarial drug in the world—is now consistently available to treat the deadly disease. Using the same technological innovations that produced artemisinin, Amyris has become the world's leading manufacturer of ingredients made with synthetic biology. Amyris provides sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products. A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the First Day Declaration.

B.  **Negotiations With Key Stakeholders**

6. In March, 2023, a group of holders of the Debtors' 1.50% convertible unsecured notes due 2026 (the "Convertible Notes") formed and retained Paul Hastings LLP ("Paul Hastings") as its legal counsel for the purpose of addressing the Debtors' financial condition and performance under the Convertible Notes. Recognizing that holders of the Convertible Notes represent the Debtors' single-largest creditor constituency, the Debtors and the Debtors' prepetition secured lenders began to work consensually with the Ad Hoc Noteholder Group prior to the Petition Date. As of August 23, 2023 the Ad Hoc Noteholder Group represents holders of approximately 65% of the $690 million in principal of Convertible Notes.

7.      Since the Petition Date, the Debtors have been in discussions with key stakeholders, including Foris Ventures, LLC and its affiliates ("Foris"), in their capacity as Foris Prepetition Secured Lenders and the DIP Secured Parties, and the Ad Hoc Noteholder Group, regarding the terms of a comprehensive and consensual restructuring of the Debtors through these Chapter 11 Cases.  Importantly, pursuant to the terms of the Debtors' DIP Facility, these discussions are occurring within a compressed time frame—from the Petition Date through September 13, 2023 (the "Compensation Period").

**C.      The Reimbursement Agreements**

8.      Prior to the Petition Date, Debtor Amyris, Inc. and Paul Hastings, as legal counsel to the Ad Hoc Noteholder Group, executed a reimbursement agreement (the "Prepetition PH Reimbursement Agreement").[3]  Under the Prepetition PH Reimbursement Agreement, the Debtors agreed to, among other things, for the period prior specified in the PH Reimbursement Agreement, pay the reasonable and documented fees and expenses incurred by Paul Hastings in connection with a potential financial and/or operational transaction and/or restructuring of the Debtors. Pursuant to the Prepetition PH Reimbursement Agreement, prior to the Petition Date, the Debtors made a $175,000 advance payment (the "PH Advance Payment") to Paul Hastings to be applied against Paul Hastings' fees and expenses to be paid in accordance with the PH Reimbursement Agreement in connection with its representation of the Ad Hoc Noteholder Group.  By this Motion, the Debtors seek authority, pursuant to sections 365(a) and 363(b) of the Bankruptcy Code, to enter into an amendment of and assume the Prepetition PH Reimbursement Agreement, as

---

[3]   A true and correct copy of the Prepetition PH Reimbursement Agreement is attached hereto as **Exhibit B-1**.

amended on August 23, 2023 (the "Amended PH Reimbursement Agreement") and subject to the terms set forth herein.[4]

9. The Debtors did not execute prepetition reimbursement agreements with Blank Rome LLP ("Blank Rome"), as Delaware counsel to the Ad Hoc Noteholder Group, or Berkeley Research Group, LLC ("BRG" and, together with Paul Hastings and Blank Rome, the "Noteholder Group Professionals"), as financial advisor to the Ad Hoc Noteholder Group. By this Motion, the Debtors seek authority to enter into Reimbursement Agreements with each of Blank Rome and BRG (collectively, the "Postpetition Reimbursement Agreements," and along with the Amended PH Reimbursement Agreement, the "Noteholder Group Reimbursement Agreements") pursuant to section 363(b) of the Bankruptcy Code, copies of which are attached hereto as **Exhibits C-1 and C-2**, respectively.

10. In recognition of the importance of productively engaging with their largest creditor constituency regarding the terms of a consensual restructuring, with the consent of the Foris Prepetition Secured Lenders and the DIP Secured Parties, the Debtors have agreed to enter into and assume, as applicable, the Noteholder Group Reimbursement Agreements, that, subject to the provisions of the Order, provide as follows:

- The Debtors will agree to pay the Noteholder Group Professionals for their reasonable and documented fees and expenses incurred during the Compensation Period on a bi-weekly basis for the sole purpose of allowing the Noteholder Group Professionals (i) to review documents related to the Foris Prepetition Secured Lenders' claims, including the: (x) terms, conditions and amount of the Foris Prepetition Secured Lenders' claims, (y) nature, extent, and perfection of the liens that secure the Foris Prepetition Secured Lenders' claims; and (z) the Debtors' purpose for the incurrence of the obligations constituting the Foris Prepetition Secured Lenders' claims, including the Debtors' board minutes related thereto; and (ii) to conduct and engage in

---

[4] A true and correct copy of the Amended Postpetition PH Reimbursement Agreement is attached hereto as **Exhibit B-2**.

diligence, negotiation, prosecution, documentation, and implementation of a comprehensive consensual restructuring of the Debtors in accordance with the terms and conditions of the Reimbursement Agreements (the "<u>Scope</u>"); *provided, however,* that:

- o the Debtors are only authorized to pay the Noteholder Group Professionals up to $750,000 in the aggregate (the "<u>Noteholder Group Professional Cap</u>") on account of the Scope during the Compensation Period (exclusive of the PH Advance Payment, which PH Advance Payment, to the extent remaining after application against Paul Hastings' fees and expenses in representing the Ad Hoc Noteholder Group prior to the Petition Date, shall first be applied by Paul Hastings on account of their reasonable and documented fees and expenses incurred during the Compensation Period in accordance with the Scope);

- o the Debtors shall have no obligation to pay any fees, expenses, or other amounts incurred by a Noteholder Group Professional other than for payment of reasonable fees and reimbursement of expenses incurred during the Compensation Period and only with respect to the Scope and in no event after the termination of such party's Reimbursement Agreement in accordance with its terms;

- o the Debtors are not authorized to pay any fees, expenses, or other amounts incurred by any Noteholder Group Professional (i) in connection with or in furtherance of investigating (except to the extent expressly provided for in the Scope), preparing for, commencing, or prosecuting any claim, cause of action or litigation against the Debtors, the Foris Prepetition Secured Lenders or the DIP Secured Parties, or assisting any person in connection with the foregoing; or (ii) in connection with the prosecution or defense of any claim of any individual member of the Ad Hoc Noteholder Group; and

- o The DIP Secured Parties agree that the Debtors' obligations to the Noteholder Group Professionals, solely to the extent described in this Motion and as approved by the Order, shall be reflected in an amended DIP Budget consistent with the Motion and Order and, consistent with that DIP Budget, the Noteholder Group Professionals' shall be entitled to share in the protection of the Carve Out provisions of the Interim DIP Order and any final order thereto.

- Noteholder Group Professionals shall not be required to file any interim or final applications for compensation with the Court as a condition precedent to the Debtors' obligation to pay such fees and expenses in accordance with this

6

Order; *provided, however*, that payment of the Noteholder Group Professional Compensation shall be subject to the following procedures:

- o Noteholder Group Professionals shall submit a reasonably detailed invoice (which shall include the total number of hours billed by attorney or other professional but shall not be required to comply with any particular format, and may be in summary form only) to counsel to the Debtors, Foris Prepetition Secured Lenders, DIP Secured Parties, the United States Trustee, and any official committee appointed in these Chapter 11 Cases (collectively, the "Notice Parties") for any postpetition fees and expenses, which summary invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses and compliance with other terms of this Order (without limiting the right of the Noteholder Group Professionals to redact privileged, confidential, or sensitive information);

- o If any Notice Party objects to the fees and expenses in accordance with this Order and cannot resolve such objection within five (5) business days of the Notice Parties' receipt of an invoice, the Debtors shall file with the Court and serve on such Noteholder Group Professional an objection (a "Fee Objection") limited to one or more of (i) the reasonableness of the fees and expenses; (ii) the fees and expenses falling outside of the Scope; or (iii) the fees and expenses exceeding the Noteholder Group Professional Cap; and

- o If no Fee Objection is timely received, the Debtors shall timely (and in any event within five (5) business days) pay the invoice of the Noteholder Group Professional. If a Fee Objection is timely received, the Debtors shall timely (and in any event within five (5) business days) pay the undisputed amount of the invoice of the Noteholder Group Professional.

- To the extent the Debtors, the Foris Prepetition Secured Lenders, the DIP Secured Parties, and the Ad Hoc Noteholder Group agree to amend the Scope, the Noteholder Group Professional Cap, and/or the Compensation Period, the Debtors may file with the Court and serve a notice of such amendment (an "Amendment Notice") in accordance with Bankruptcy Rule 2002. To the extent no party-in-interest objects to such amendment within three (3) business days of the filing of the Amendment Notice, any such amendment is deemed effective and incorporated into this Order. If any party-in-interest objects to such amendment within five (5) business days of the filing of the Amendment Notice, the Debtors shall schedule a hearing with the Court with respect to the Amendment Notice and the objection thereto.

7

ACTIVE/124637625

**BASIS FOR RELIEF**

A. **The Debtors May Enter into and Assume the Reimbursement Agreements Pursuant to Sections 365(a) and 363(b) (As Applicable) of the Bankruptcy Code**

11. Sections "363(b) and 365(a) provide the right procedural mechanisms through which Debtors may seek to pay . . . professional fees and expenses" of the Noteholder Group Professionals.[5] Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."[6] When a debtor seeks to assume an executory contract, it must assume the contract in its entirety—*cum onere*.[7] However, a debtor may assume a prepetition executory contract subject to an agreed-to postpetition amendment.[8] If the debtor determines that the assumption of the executory contract in its entirety is advantageous to the estate, the debtor must obtain the court's approval before it can assume the contract.[9] Under the business judgment standard, courts will generally not second-guess a debtors' business judgment regarding whether assumption will benefit the debtor's estate and grant authority to assume executory contracts absent a showing of bad faith or an abuse of discretion.[10]

---

[5] *City of Rockford v. Mallinckrodt PLC* (*In re Mallinckrodt PLC*), 2022 U.S. Dist. LEXIS 54785, at *17-18 (D. Del. Mar. 28, 2022) (cleaned up).

[6] 11 U.S.C. § 365(a).

[7] *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (a debtor must assume an executory contract "*cum onere*") (citing *In re Italian Cook Oil Corp.*, 190 F.2d 994, 996 (3d Cir. 1951)); *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003); *Cinicola v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001).

[8] *See, e.g., Official Comm. for Unsecured Creditors v. Aust* (*In re Network Access Sols. Corp.*), 330 B.R. 67, 74-75 (Bankr. D. Del. 2005) (approving assumption of prepetition contract, as amended postpetition, pursuant to sections 365(a) and 363(b) of the Bankruptcy Code).

[9] *See* 11 U.S.C. § 365(a).

[10] *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992); *In re Fed. Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 182 (Bankr. E.D. Pa. 2010); *see also Mallinckrodt*, 2022 U.S. Dist. LEXIS 54785, at *19 ("The legal standard to both §§ 363(b) and 365(a) is the business judgment test, under which a bankruptcy court will authorize debtor-initiated actions if the debtor shows that a sound business purpose justifies such actions. The test considers the benefit to the debtor's estate and, if a

12. When a debtor assumes an executory contract, all defaults must be cured and all expenses and costs incurred in performing the contract (including any provisions providing for the payment of attorneys' fees) are entitled to priority treatment as an administrative expense and are not subject to further limitation by section 503(b) of the Bankruptcy Code.[11] Courts routinely require a debtor to pay a prepetition creditor's attorney's fees and expenses as a condition to assumption if the underlying contract to be assumed provides for the payment of such fees and expenses.[12] Notably, this line of cases does not subject the creditor's attorney's fees to scrutiny under section 503(b) of the Bankruptcy Code and often involve instances where the fees and expenses are incurred by the creditor in the creditor's own interest that is adverse to the estate. Nor would such scrutiny be appropriate—a debtor cannot assume a contract under section 365(a) and refuse to comply with or unilaterally modify provisions therein providing for the payment of attorney's fees without running afoul of Supreme Court and Third Circuit precedent requiring a debtor to assume the contract in its entirety—*cum onere*.[13]

13. Here, the Prepetition PH Reimbursement Agreement, and the Amended PH Reimbursement Agreement (collectively, the "PH Reimbursement Agreement"), are executory contracts under the Countryman definition—*i.e.*, the Debtors' obligations (*i.e.*, payment of fees and expenses) and the Ad Hoc Noteholder Group's performance (*i.e.*, the negotiation, documentation and implementation of a restructuring) remain unperformed. The Debtors are now moving for

---

valid business justification exists, then a strong presumption follows that the agreement was negotiated in good faith and is in the best interests of the estate.") (cleaned up).

[11] *See In re Klein Sleep Prods., Inc.*, 78 F.3d 18, 25-26 (2d Cir. 1996); *In re Vision Metals, Inc.*, 311 B.R. 692, 699-700 (Bankr. D. Del. 2004); *In re Monroeville Dodge, Ltd.*, 166 B.R. 264, 267 (Bankr. W.D. Pa. 1994); *In re Pearson*, 90 B.R. 638, 642 (Bankr. D.N.J. 1988).

[12] *See, e.g.*, *In re Williams*, No. 10-11108, 2011 WL 2533046 at *1 (Bankr. D. Del. June 4, 2011); *In re Crown Books Corp.*, 269 B.R. 12, 15-20 (Bankr. D. Del. 2001).

[13] *See Bildisco & Bildisco*, 465 U.S. at 531; *CellNet Data Systems*, 327 F.3d at 249; *Cinicola*, 248 F.3d at 119.

authority to enter into and assume (as applicable) the Noteholder Group Reimbursement Agreements. The Debtors' decision to enter into and assume (as applicable) the Noteholder Group Reimbursement Agreements is a sound exercise of their business judgment and is critical to advancing these Chapter 11 Cases to a successful resolution.

14.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[14]  Section 363(b) provides the statutory basis for a debtor to enter into a postpetition agreement, as the Debtors propose to do with the Noteholder Group Reimbursement Agreement, and to reimburse professional fees pursuant thereto.[15]

15.     Courts in this and other jurisdictions have approved relief substantially similar to that requested in this Motion pursuant to sections 363 and 365 of the Bankruptcy Code.[16]

---

[14] 11 U.S.C. § 363(b)(1).

[15] *See generally Mallinckrodt*, 2022 U.S. Dist. LEXIS 54785.

[16] *See, e.g., Mallinckrodt*, 2022 U.S. Dist. LEXIS 54785 (affirming bankruptcy court's approval of performance under Reimbursement Agreements pursuant to sections 363 and 365 of the Bankruptcy Code); *United States Trustee v. Bethlehem Steel Corp.* (*In re Bethlehem Steel Corp.*), 2003 U.S. Dist. LEXIS 12909, at *2 (S.D.N.Y. July 28, 2003) (affirming reimbursement of creditor's fees under section 363(b) of the Bankruptcy Code "to help evaluate and negotiate the terms of a plan"); *In re Purdue Pharma, LP*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. Dec. 2, 2019) (authorizing debtors to "perform the Reimbursement Agreement pursuant to section 363 of the Bankruptcy Code."); *see also In re Hercules Offshore, Inc.*, No. 15-11685 (KJC) (Bankr. D. Del. Aug. 24, 2015) [Docket No. 95] (approving payment of unsecured creditors' professional fees in connection with the assumption of a restructuring support agreement); *In re Dendreon Corp.*, No. 14-12515 (PJW) (Bankr. D. Del. Dec. 23, 2014) [Docket No. 215] (approving, over the objection of the United States Trustee, assumption of prepetition restructuring support agreement that provided for payment of unsecured debt holders' fees, finding that it was a proper exercise of the debtors' business judgment); *In re Rural/Metro Corp.*, No. 13-11952 (KJC) (Bankr. D. Del. Sept. 5, 2013) [Docket No. 217] (approving payment of unsecured noteholders' professional fees in connection with the assumption of a restructuring support agreement as an exercise of the debtors' business judgment); *In re Edison Mission Energy*, No. 12-49219 (JPC) (Bankr. N.D. Ill. Jan 18, 2013) [Docket No. 317] (approving the debtors' assumption of a prepetition agreement to pay certain professional fees of an ad hoc committee of unsecured noteholders); *In re William Lyon Homes*, No. 11-14019 (CSS) (Bankr. D. Del. Dec. 29, 2011) [Docket No. 105] (same); *accord In re Genco Shipping & Trading*, 509 B.R. 455, 463-64 (Bankr. S.D.N.Y. 2014) (approving payment of counsel to an ad hoc group of unsecured noteholders' professional fees pursuant to a prepetition restructuring support agreement assumed under section 365 of the Bankruptcy Code and paid in accordance with the debtors' business judgment).

ACTIVE/124637625

16. The Court need not wait until the end of the Chapter 11 Cases (or confirmation of a plan) to approve such fees. As Judge Walrath noted in authorizing payment of unsecured creditors' professional fees under a similar "benefit to the estate" standard in *RCS Capital*:

> I disagree with the United States Trustee that I need to wait and see if the plan is confirmed before I can approve such fees. Getting the Debtor stabilized and on track to an exit; whether it is ultimately approved in that form is not necessary. I do rely on the *O'Brien* case for that. The *O'Brien* case did not rule that I have to wait and see the success of the sale; whether the stalking horse or another wins the sale before I can approve any breakup fee. I can approve a breakup fee, in advance, if I determine that is necessary to allow the sale to proceed and, in this case, to allow a plan to proceed . . . .[17]

Similarly, in authorizing payment of professional fees and expenses of an unsecured noteholder ad hoc group and indenture trustee pursuant to the plan in *Extraction Oil & Gas*, Judge Sontchi recognized the importance of debtors retaining flexibility to pay such amounts if doing so serves their business or reorganization interests:

> I would generally agree with this concept that 363 allows you to do anything unless it's controverted by the code in another provision. The whole point, of course, of having a debtor-in-possession with the authority to operate a business is for the Court to limit its interference in the operation of that business to points where it matters. It's just like the concept under *Butner v. United States* in the '30s that state law governs unless the Bankruptcy Code specifically takes over.
>
> So I don't think necessarily that 503 is exclusive on these issues, and I certainly have a world of respect for former Judge Gerber and what he did in *Adelphia*.[18]

17. These cases make clear that creditor fees may be authorized to the extent payment of such fees is necessary to facilitate progress in the cases for the benefit of the estate and all constituents. Such prospective relief is particularly appropriate (and important) here given the

---

[17] *RCS Capital*, Mar. 16, 2016 Hr'g Tr. 40:24-41:9.

[18] *In re Extraction Oil & Gas, Inc.,* No. 20-11548 (CSS) (Bankr. D. Del. Dec. 22, 2020), Dec. 22, 2020 Hr'g Tr. at 84:7-25.

extent of the cooperation and assistance that the Debtors will require from the Ad Hoc Noteholder Group in the near term to advance their cases, as discussed in greater detail in Section B below.[19]

**B.      Entry Into and Assumption of the Noteholder Group Reimbursement Agreement Will Benefit the Debtors' Estates as a Whole**

18.     The Debtors' request to enter into and assume (as applicable) the Noteholder Group Reimbursement Agreement is consistent with sections 363(b) and 365(a) of the Bankruptcy Code and precedent applying sections 363(b) and 365(a) of the Bankruptcy Code. The Debtors require continued support and engagement from the Ad Hoc Noteholder Group – which represents the interests of the Debtors' single-largest creditor constituency – in order to advance their plan formulation process. It was for this reason that the Debtors determined in their business judgment to enter into the Noteholder Group Reimbursement Agreements. Given the considerable work that must be done in these Chapter 11 Cases in a rapid timeframe, and the important role the Ad Hoc Noteholder Group will play in completing it, the Debtors' decision to request the relief herein is supported by an equally sound business justification.

19.     *First*, the Debtors cannot progress on the framework of a consensual restructuring on its own; it will require the continuous and active engagement from its stakeholders, including the Convertible Noteholders, who collectively hold approximately $690 million in principal of unsecured claims against the Debtors.

20.     *Second*, "piecemeal negotiation" with a large and disparate number of Convertible Noteholders rather than an "organized ad hoc group[ ] represented by experienced advisors" is not

---

[19]  *See In re Purdue Pharma, LP*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. Nov. 27, 2019) [Docket No. 550], Nov. 26, 2019 Hr'g. Tr. At 163:3-7 ("The Debtor just can't put a chest of money out on the street and say come and get it. Instead, the parties-in-interest need to approach the problems this case presents in a very thoughtful and creative way. *That takes time and it takes money.*") (emphasis added).

a "feasible option."[20]  Entry into and assumption (as applicable) of the Noteholder Group Reimbursement Agreement facilitates the continued existence of and engagement from the Ad Hoc Noteholder Group, as well as their retention of skilled and experienced advisors to assist the Debtors in their efforts to progress and garner critical support for a consensual restructuring.  The Debtors believe, based on the comments and actions by the Ad Hoc Noteholder Group, that the Ad Hoc Noteholder Group "will not actively participate in" the diligence, negotiation, prosecution, documentation, and implementation of a comprehensive restructuring of the Debtors "if they cannot be reimbursed for the costs associated with that effort."[21]

## Notice

21. The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lenders, DIP Agent, and the Foris Prepetition Secured Lenders, Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com) and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com); (d) co-counsel to the DIP Lenders, the DIP Agent, and the Foris Prepetition Secured Lenders, Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com); (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which the Debtors conduct business; and (g) any party that requests service pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that no further notice is required.

---

[20] *Mallinckrodt*, 2022 U.S. Dist. LEXIS 54785, at *21.

[21] *Mallinckrodt*, 2022 U.S. Dist. LEXIS 54785, at *20 (quoting the decision of the bankruptcy court).

13

**No Prior Request**

22.    No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request entry of the Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: August 25, 2023      **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*
Richard M. Pachulski (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell (admitted *pro hac vice*)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  rpachulski@pszjlaw.com
         dgrassgreen@pszjlaw.com
         joneill@pszjlaw.com
         jrosell@pszjlaw.com
         sgolden@pszjlaw.com

*Proposed Counsel to the*
*Debtors and Debtors in Possession*