**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| | (Jointly Administered) |
| Debtors.[1] | **Re: Docket No. 19** |

**LIMITED OBJECTION OF LAVVAN, INC. TO MOTION OF THE DEBTORS FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING AND (B) TO UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Lavvan, Inc. ("**Lavvan**"), by and through its undersigned counsel, hereby submits this limited objection and reservation of rights (the "**Limited Objection**") to the *Motion of the Debtors for Interim and Final Orders (i) Authorizing Debtors (a) to Obtain Postpetition Financing and (b) to Utilize Cash Collateral, (ii) Granting Adequate Protection to Prepetition Secured Parties, (iii) Modifying the Automatic Stay, (iv) Scheduling a Final Hearing, and (v) Granting Related Relief* [Docket No. 19] (the "**DIP Motion**")[2] and respectfully states as follows:

## BACKGROUND

**A.     General Background**

1.     On August 9, 2023 (the "**Petition Date**"), Amyris, Inc. ("**Amyris**") and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") filed voluntary petitions in this Court commencing cases for relief under chapter 11 of title 11 of the

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Capitalized terms used but not defined in this Limited Objection have the meanings used in the DIP Motion.

United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"). The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been requested in these cases.

2. On August 10, 2023, the Debtors filed, among other things, the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 18] (the "**First Day Declaration**") and the DIP Motion.

3. On August 11, 2023, after a hearing (the "**First Day Hearing**") regarding certain first day motions filed by the Debtors, the Court entered an order [Docket No. 54] (the "**Interim DIP Order**") granting the relief requested in the DIP Motion on an interim basis. At the First Day Hearing, to avoid a limited objection by Lavvan to entry of the Interim DIP Order, the Debtors and Foris (as defined herein) put on the record agreed statements with Lavvan confirming that (a) the DIP Order would not prime properly perfected prior security interests and (b) notwithstanding section 7.25 of the DIP Credit Agreement, if the Debtors sell any collateral during the chapter 11 cases, the distribution of proceeds from the sale of such collateral will be in accordance with the relative lien priorities in such collateral (the "**Lavvan Resolutions**"). *See* First Day Hearing Transcript at 68-69.

B. **The RCLA and the Security Agreement**

4. Lavvan and Amyris are parties to that certain *Research, Collaboration and License Agreement*, dated as of March 18, 2019 (as amended from time to time, the "**RCLA**"). A redacted version of the RCLA which the Debtors have previously publicly filed is attached hereto as **Exhibit A**. Lavvan entered into the RCLA because, as an ingredients and formulations business focused on the production and commercialization of cannabinoids for use in a variety of end markets, Lavvan recognized the excellence of Amyris's scientific capabilities and a unique

opportunity to leverage Amyris's platform to establish itself as the clear leader in a large and growing field.

5. Under the RCLA, Amyris was responsible for research and development and delivering the technology and process to produce certain molecules through fermentation, while Lavvan controlled the manufacturing and commercialization of the molecules.

6. In accordance with the requirements of the RCLA, Lavvan and Amyris also entered into that certain Security Agreement, dated as of May 2, 2019 (the "**Security Agreement**"), attached hereto as **Exhibit B**, wherein Amyris granted Lavvan a security interest in substantially all of the Debtors' intellectual property. *See* Security Agreement, § 2.01 ("As collateral security for the Secured Obligations,[3] the Grantor[4] hereby grants to Secured Party[5] a continuing lien on and security interests in all of the Intellectual Property Collateral,[6] wherever the same may be now or hereafter located"). Significantly, the Intellectual Property Collateral (the "**IP Collateral**") includes both (i) intellectual property that is "conceived, reduced to practice, obtained or developed" in connection with the RCLA, except for certain collaboration-specific intellectual property (the "**Carve Out IP**"), which was assigned to a bankruptcy remote special purpose entity, and (ii) all intellectual property not already included in category (i), other than the Carve Out IP, controlled by Amyris prior to the effective date of the RCLA or independently of the RCLA. *See*

---

[3] "Secured Obligations" is defined in the Security Agreement as all obligations of the Grantor to the Secured Party under the RCLA.
[4] "Grantor" is defined in the Security Agreement as Amyris.
[5] "Secured Party" is defined in the Security Agreement as Lavvan.
[6] "Intellectual Property Collateral" is defined in the Security Agreement as all of Amyris's right, title, and interest in the Amyris Background IP, the Amyris Platform Improvement IP, and the Amyris Additional IP Collateral. In turn, the Amyris Background IP is defined as any intellectual property, other than the Foreground IP, controlled by Amyris and/or its affiliates prior to March 18, 2019 or independently of the RCLA; the Amyris Platform Improvement IP is defined as any intellectual property that is conceived, reduced to practice, obtained or developed by or on behalf of Amyris and/or its affiliates in connection with the RCLA after March 18, 2019 that is controlled by Amyris, other than the Carve Out IP; and the Amyris Additional IP Collateral is defined as any property or asset that is not within the scope of the definition of Amyris Background IP or Amyris Platform Improvement IP as of the date of the Security Agreement but that later becomes within the scope of such defined terms as a result of any amendment or modification of the RCLA following the date of the Security Agreement.

Security Agreement, § 1.01.  Accordingly, the Security Agreement broadly granted Lavvan a lien and security interest in substantially all of Amyris's intellectual property — not limited to intellectual property that was used in Amyris's collaboration with Lavvan.

7. To perfect its security interest in the IP Collateral, Lavvan filed the UCC Financing Statement (the "**UCC-1**"), attached hereto as **Exhibit C**, on May 9, 2019, with the Delaware Department of State.

8. Shockingly, neither the discussion of the Debtors' secured obligations in the First Day Declaration nor the DIP Motion even mention Lavvan as a secured creditor.

C. **The Subordination Agreement**

9. The Security Agreement and the RCLA provide that Lavvan's security interest in the IP Collateral would be junior in priority to certain loans upon execution of a subordination agreement among Lavvan, Amyris, and any such lender.  *See* RCLA, § 5.12.2.

10. Lavvan, Amyris and Foris Ventures, LLC ("**Foris**") entered into that certain Subordination Agreement, dated as of May 2, 2019 (the "**Subordination Agreement**"), wherein Lavvan agreed to subordinate its security interest in the IP Collateral to liens Foris held, as successor in interest, in certain assets of Amyris pursuant to that certain Loan and Security Agreement, dated as of June 29, 2018 (the "**2018 Foris Loan**").

11. The DIP Motion lists six separate loan agreements between one or more of the Debtors and Foris and/or one or more of Foris's affiliates.  *See* DIP Motion ¶ 10.  According to the DIP Motion, the current amount outstanding under all six agreements totals $295 million.  Lavvan's subordination agreement is not a subordination to any and all loan agreements the Debtors would thereafter enter into with any Foris affiliate, but rather subordinates Lavvan solely to amounts under one specific agreement, the 2018 Foris Loan.  Interestingly, the 2018 Foris Loan

is <u>not</u> among the six loan agreements listed in paragraph 6 of the DIP Motion, and from Amyris's public securities filings, it is apparent that Foris equitized certain loans. Thus, it is not clear if the Subordination Agreement continues to subordinate Lavvan to any amounts currently outstanding. But even if it does, it is, at most, to a subset — perhaps 15 - 20% — of the $295 million listed in paragraph 10 of the DIP Motion.

12. As set forth above, the Debtors and Foris confirmed on the record at the First Day Hearing that the DIP loan does not prime prior perfected liens. *See supra* ¶ 3; *see also* Interim DIP Order ¶ 8(d). Thus, Lavvan's lien is not subordinated to the DIP loan (and is subordinated to, at most, only a small percentage of Foris's pre-petition lien and claims).

**D.      The Arbitration and Litigation**

13. The collaboration memorialized in the RCLA did not move forward as the parties agreed therein. Unfortunately, Amyris decided to repudiate and breach the RCLA, including by unilaterally proceeding with the manufacture and commercialization of biosynthetic cannabinoids without Lavvan's consent or participation, in breach of Lavvan's exclusivity rights. Amyris's willful breaches of the RCLA not only resulted in hundreds of millions of dollars in damages to Lavvan, but also triggered broad rights in favor of Lavvan over substantial Amyris intellectual property, as set forth in the RCLA and related documents.

14. In 2020, Lavvan raised the aforementioned issues to Amyris's entire board of directors. When the board did nothing and Amyris persisted in its breaches, Lavvan commenced an ICC arbitration and a separate litigation in the U.S. District Court for the Southern District of New York (the "**SDNY Court**") as provided by the RCLA, both in 2020.[7] In the SDNY litigation,

---

[7] The RCLA provides for arbitration of certain types of disputes but also provides that matters related to the scope, ownership, validity, enforceability, revocation, or infringement of intellectual property be brought in a court. *See* RCLA, §§ 7.1 & 7.2. Lavvan asserted both types of claims, and therefore split its claims into an arbitration and a

5

Amyris filed a motion to dismiss or compel arbitration, which was denied, and such denial was affirmed on appeal to the Second Circuit Court of Appeals. Rather than move forward and coordinate discovery in both actions, Amyris moved for a stay of the case in the SDNY Court pending resolution of its appeal to the Second Circuit, and that stay request was granted. Upon the Second Circuit Court of Appeals' resolution of Amyris's appeal in Lavvan's favor and remand for further proceedings, the parties stipulated in February 2023 to a limited further stay in the SDNY Court, in anticipation of the imminent issuance of the arbitral tribunal's ruling.

15. The arbitration proceeded in the International Chamber of Commerce International Court of Arbitration ("**ICC**") and was fully tried and briefed. The arbitral tribunal held a full evidentiary hearing on October 24-28, 2022, and the parties fully submitted post-hearing briefing on January 11, 2023. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

16. On August 10, 2023, counsel to the Debtors sent a notice of the Debtors' chapter 11 filing and the imposition of the automatic stay to the arbitration panel (the "**Panel**"). ████████████████████████████████████████

---

lawsuit, consistent with the RCLA's terms. *See Lavvan, Inc. v. Amyris, Inc.*, No. 21-1819, 2022 WL 4241192, at *3 (2d Cir. Sept. 15, 2022).

██████████████████████████████████████████████████

██████████████████████████████████████████  A copy of the ICC's email (the "**Arbitration Email**") is attached hereto as **Exhibit D**.

# LIMITED OBJECTION

Lavvan takes no position on, and does not object to, the DIP Loan itself. Rather, its objection is limited to the specific terms set forth below.

### I. The Current Milestones in the DIP Motion Will Impede Lavvan's Right to Credit Bid in a Sale of the Debtors' Assets.

17. As set forth in the DIP Motion, the DIP Facility requires the Debtors to comply with certain milestones, which as a general concept is not unusual. Here, the Administrative Agent — which is an affiliate of Foris[8] — may "elect to require the Debtors to initiate a process to sell all or substantially all of the Debtors' assets (a "**Sale**") by issuing a notice to the Debtors (the "**Sale Toggle Notice**"). *See* DIP Motion, p. 24. Once the Administrative Agent has done so, the Debtors are required to meet certain sale-related milestones (the "**Sale Milestones**"), including that no later than thirty-five days following the issuance of the Sale Toggle Notice, the Court must have entered a bidding procedures order and no later than ninety days following the Sale Toggle Notice, the Court shall enter an order approving a Sale. *See* DIP Motion, pp. 24-25.

18. In the event of a Sale in these chapter 11 cases, Lavvan, as a prepetition, first-priority (or, at a minimum, first-priority after a relatively small amount of Foris's pre-petition claim) secured creditor of the Debtors, is entitled to credit bid the amount of its claim against the Debtors. Lavvan understands that the protections of section 363(k) of the Bankruptcy Code are afforded to a lienholder that holds a lien on the assets for sale that secures an allowed claim. *See*

---

[8] In addition to controlling the Prepetition Lenders and the DIP lenders and agent, Mr. John Doerr is a member of the Debtors' Board of Directors and directly or indirectly controls 30% of the Debtors' stock. *See* First Day Declaration ¶ 38 and footnote 9.

11 U.S.C. § 363(k). While Lavvan's security interest in the IP Collateral is perfected and unavoidable, it is possible that the Debtors might argue that Lavvan's claim is not yet an allowed claim because the ICC has not yet issued its decision in the arbitration involving the RCLA and the SDNY suit has not yet been tried. However, ███████████████████████████████ ███████████████████████████████████████████, Lavvan will have an allowed claim (███████████████████████████████) on which it could credit bid promptly after the stay is lifted.

19. In the interest of avoiding serious problems for the process, Lavvan asked the Debtors to stipulate to lifting the stay to allow the Panel to issue its final award. The Debtors refused. Accordingly, Lavvan is filing a motion to lift the stay in these cases contemporaneously herewith. However, given standard noticing rules for stay relief motions, it will take weeks to lift the stay and for the Panel to issue its award thereafter. Thus, it is likely that the Panel's award will not yet have been issued by the time of the Sale Milestones.

20. In light of the foregoing, Lavvan objects to final approval of the DIP Motion (the "**Final DIP Order**") to the extent that the Sale Milestones — together with the Debtors' refusal to voluntarily lift the stay to obtain issuance of a final award from the Panel — leave insufficient time for Lavvan to credit bid the amount of its allowed claim in a Sale. Instead, the Sale Milestones should be extended by the modest additional time it will take the Panel to issue its award.

## II. Foris Should Be Permitted to Credit Bid Only Any Amount in a First Priority Position

21. It appears that the Final DIP Order will also provide that both the DIP Agent and the Foris Prepetition Lenders shall have the right to credit bid their claims. *See* Interim DIP Order

¶ 25.[9]  But as set forth above, at most a small percentage of the prepetition loan is senior to Lavvan's liens, and the DIP loan does not prime Lavvan as a prior perfected secured creditor.  *See supra* ¶¶ 9-12.

22.    The Final DIP Order should not permit Foris (as either DIP Lender or Prepetition Lender) to credit bid amounts junior to Lavvan.  Otherwise, the junior creditor will walk away with the most valuable assets of the estate without providing any cash with which to pay the senior creditor.[10]

### III. Lavvan Objects to the Final DIP Order to the Extent It Does Not Include the Lavvan Resolutions

23.    As set forth above, the Debtors and Foris stated the Lavvan Resolutions on the record of the First Day Hearing.  *See supra* ¶ 3.  Because the Final DIP Order has not yet been filed, Lavvan does not know what it will contain.  For the avoidance of doubt, Lavvan objects to the Final DIP Order to the extent such order does not memorialize the Lavvan Resolutions therein.

### RESERVATION OF RIGHTS

24.    Lavvan reserves all rights with respect to its lien on substantially all of the Debtors' intellectual property, the DIP Motion, and all other pending pleadings in these chapter 11 cases.  Lavvan further reserves the right to amend or supplement this Limited Objection at any time prior to final approval of the DIP Motion, and to assert further arguments as the evidence may allow at any hearing thereon.  Additionally, Lavvan reserves all rights with respect to the Debtors' proposed Final DIP Order, given that such proposed order has not been filed in these cases as of the date hereof.

---

[9]  Because a proposed Final DIP Order has not yet been filed in these cases, this Limited Objection cites to provisions of the Interim DIP Order.

[10]  Of course, any such sale would not meet Section 363(f)(3) and therefore would not be free and clear of Lavvan's liens.

## **CONCLUSION**

25. For the reasons set forth above, Lavvan objects to the relief requested in the DIP Motion on a final basis to the extent such relief (i) impedes Lavvan's ability to timely credit bid in any Sale that occurs in these chapter 11 cases, (ii) permits lenders junior to Lavvan to credit bid, and (iii) purports to prime Lavvan's lien on substantially all of the Debtors' intellectual property.

Dated: August 31, 2023
      Wilmington, Delaware

              Respectfully submitted,

              */s/ Emily R. Mathews*
              Russell C. Silberglied (No. 3462)
              Emily R. Mathews (No. 6866)
              **RICHARDS, LAYTON & FINGER, P.A.**
              One Rodney Square
              920 North King Street
              Wilmington, Delaware 19801
              Telephone: (302) 651-7700
              Facsimile: (302) 651-7701
              Email:    silberglied@rlf.com
                          mathews@rlf.com

                      **-and-**

              Jason Cyrulnik
              Paul Fattaruso
              **CYRULNIK FATTARUSO LLP**
              55 Broadway, Third Floor
              New York, NY 10006
              Telephone: (646) 844-2466
              Email:    jcyrulnik@cf-llp.com
                          pfattaruso@cf-llp.com

              *Counsel for Lavvan, Inc.*