**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>Debtors.¹ | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

Hearing Date:  October 18, 2023 at 2:00 p.m. (ET)
Objection Deadline:  September 14, 2023 at 4:00 p.m. (ET)

## APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF PWC US BUSINESS ADVISORY LLP AS FINANCIAL ADVISOR TO THE DEBTORS, EFFECTIVE AS OF AUGUST 9, 2023

Amyris, Inc. ("Amyris"), and certain of its affiliates as debtors and debtors-in-possession (collectively, the "Debtors"), hereby submit this application (the "Application") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the Debtors to employ and retain PwC US Business Advisory LLP ("PwC US Business Advisory") as financial advisor to the Debtors, effective as of August 9, 2023, pursuant to the terms and conditions of the Engagement Letter (as defined below), subject to the limitations and modifications proposed herein, and provided for in the Proposed Order.  In support of this Application, the Debtors submit the declaration of Steven J. Fleming (the "Fleming Declaration"),

---

¹ A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

attached hereto as **Exhibit B**. In further support of the Application, the Debtors respectfully represent and set forth as follows:

**Background**

1. On August 9, 2023 and August 21, 2023 as applicable, (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

2. On August 27, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Creditors Committee") including the following: U.S. Bank Trust Co. NA, Cosan U.S. Inc., Sartorius Stedim North America Inc., Hearst Magazine Media Inc., Wiley Companies, Park Wynwood LLC, and Allog Participacoes Ltda.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

4. Amyris was founded in 2003 to create a more stable supply of a key anti-malarial treatment. Through Amyris's cutting-edge science, artemisinin—the most effective anti-malarial drug in the world—is now consistently available to treat the deadly disease. Using the same technological innovations that produced artemisinin, Amyris has become the world's leading manufacturer of ingredients made with synthetic biology. Amyris provides sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products.

5. In addition, Amyris also has developed and launched a family of clean beauty brands that utilize the natural and sustainable ingredients that Amyris produces. The

Company sells these clean beauty products through direct-to-consumer e-commerce platforms and a network of retail partners, including Sephora, Target, and Walmart.

6. A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration") [Docket No. 18], incorporated herein by reference.[2]

## Jurisdiction and Venue

7. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-1.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

**Relief Requested**

10. By this Application, the Debtors request entry of the Proposed Order authorizing the retention and employment of PwC US Business Advisory to provide financial advisory services to the Debtors, effective August 9, 2023, pursuant to the terms and conditions of the Engagement Letter, subject to the limitations and modifications proposed herein and provided for in the Proposed Order. The facts and circumstances supporting this Application are set forth herein and in the Fleming Declaration.

**Facts Specific to the Relief Requested**

**A.    Qualifications**

11. The Debtors seek to employ PwC US Business Advisory to provide financial advisory services to the Debtors because, among other things, PwC US Business Advisory is a leading business advisory services firm and has offices across the United States. PwC US Business Advisory professionals have considerable experience providing financial advisory services, including to businesses in a chapter 11 environment, and PwC US Business Advisory professionals have been employed in numerous cases under the Bankruptcy Code. Accordingly, the Debtors believe that PwC US Business Advisory is qualified to provide financial advisory services during these Chapter 11 Cases in an efficient and timely manner.

12. As set forth in the Fleming Declaration, the Debtors engaged PwC US Business Advisory as their financial advisory services provider pursuant to the terms and conditions set forth in the July 20, 2023 engagement letter (the "Engagement Letter"), attached hereto as **Exhibit C**.[3]

---

[3] All summaries herein are provided for convenience only and are qualified by reference to the Engagement Letter. To the extent that this Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control. Capitalized terms used but not otherwise defined in this Application shall have the meanings ascribed to such terms in the Engagement Letter.

13. PwC US Business Advisory has indicated a desire and willingness to act in these Chapter 11 Cases to render the Professional Services (defined below) on the terms set forth in the Engagement Letter, as the same may be modified by the Proposed Order. Pursuant to the Engagement Letter and subject to the Court's entry of the Proposed Order, all services that PwC US Business Advisory provides to the Debtors will be: (a) at the request of the Debtors; and (b) appropriately directed by the Debtors so as to avoid unnecessary duplication of efforts among the Debtors' other professionals retained in these Chapter 11 Cases.

**B.     Scope of Services**

14. As requested by the Debtors, and consistent with the terms of the Engagement Letter, PwC US Business Advisory was asked to provide the following financial advisory services (collectively, the "Professional Services"):

   a. *Financial Advisory Services*: PwC US Business Advisory's service may include the following services, as directed by Amyris:

      i. Cash & Liquidity Management: As directed by Amyris, advise and assist Amyris in its preparation of its short-term cash flow forecasts and related liquidity management analyses as follows:

         - Prepare updates to Amyris' short-term cash flow forecast, including any supplementary schedules (e.g., daily, weekly, monthly or annual cash flows);
         - Prepare periodic updates to Amyris' working capital roll-forwards for accounts receivable and accounts payable;
         - Prepare weekly variance analyses and updates to Amyris' liquidity outlook and provide observations regarding potential related risks and opportunities for Amyris' consideration;

         As directed by Amyris, provide the following other services to Amyris in connection with its analysis of its vendor management activities:

         - Advise and assist Amyris in its identification of its key vendors;
         - Analyze key business terms for key vendors and store leases, as each are identified by Amyris
         - Assist Amyris in its development of vendor payment prioritization schedules and internal communication plans as Amyris seeks to balance liquidity & operational considerations

- Assist Amyris in its analysis and quantification of escalated vendor payment requests and in tracking compliance with payment plans agreed to by Amyris with key vendors.

ii. <u>Strategic Alternatives Analysis</u>: As directed by Amyris, advise and assist Amyris with its identification, analysis and evaluation of potential strategic alternatives and potential turnaround strategies as follows:

- Identify Amyris' legal entity structure and analyze potential exposures with respect to liabilities by entity;
- Prepare an analysis of Amyris' potential existing financial exposure, focusing on debt maturities, covenants, interest rates, and other key provisions within the credit agreements and analyze potential implications on Amyris' capital structure;
- Analyze various options for potential refinancing of existing debt, and/or opportunities for additional sources of capital as identified by Amyris or its other advisors;
- Analyze potential enterprise value of the business under various scenarios in comparison to the face amount of outstanding liabilities identified by Amyris (and recorded in Amyris' financial reporting system) for Amyris' evaluation and consideration;
- Advise and assist Amyris with identifying potential opportunities for strategic asset divestitures and assist Amyris with its quantification of an estimated range of potential impacts of such divestitures on its capital structure;
- Identify potential restructuring options that may be available to Amyris in connection with its development of its restructuring plan and, if requested, prepare an analyses of potential risks and opportunities for Amyris' review and consideration;
- Advise and assist Amyris in developing an incentive and/or retention plan for key employees;
- Support Amyris in its coordination of PwC US Business Advisory and its other advisors, including external counsel, investment bankers, etc., in connection with Amyris' objective of avoiding duplication of efforts
- Assist Amyris in its preparation of its internal presentations, analyses and discussion materials related to various strategic alternatives identified by Amyris.

iii. <u>Bankruptcy Advisory</u>: Advise and assist Amyris on its internal planning and preparation for a potential Chapter 11 bankruptcy filing, including if requested by Amyris, advice and assistance in connection with the following services, which, in some instances, involve input from or work product by Amyris' other professionals (e.g., external counsel, investment bankers, etc.):

- Preparation of certain of Amyris' bankruptcy court motions;
- Advising on potential best practices Amyris may consider adopting as it establishes its cut off procedures as of the filing date to for Amyris to appropriately identify, classify and report its pre and post-petition liabilities.
- Certain accounting related matters applicable to Amyris' contemplated bankruptcy process as well as the statutory filings typically required by the bankruptcy court and such other documents that are customarily issued by an estate's chief financial officer and management in connection with a chapter 11 bankruptcy filing.
- Amyris' preparation of certain financial disclosures and other related reporting requirements of the bankruptcy court, including, for example: Amyris' First Day Motions, Creditor Matrix, Schedule of Assets and Liabilities; Statement of Financial Affairs, Monthly Operating Reports, and Schedule 2015.3 (non-Debtor entities).
- Consult with management on its negotiation with various key stakeholders (and their respective advisors) throughout the bankruptcy process; Amyris' preparation of financial analyses of any proposed asset sales or other proposed transactions for which Amyris may seek the bankruptcy court's approval.
- Amyris' preparation of its analysis of creditor claims by type, entity or any individual claims, including assistance with the development of databases, as directed by Amyris, to track such claims and help Amyris to reconcile those claims to its existing books and records. To the extent Amyris' advisors include a claims agent, Amyris will coordinate all professionals working on claim analyses so as to avoid duplication of efforts;
- Amyris' identification of executory contracts and unexpired leases and Amyris' preparation of its internal cost/benefit evaluations with respect to the assumption or rejection of each.
- Amyris' development and preparation of certain aspects of its plan of reorganization or such alternative restructuring options as identified by Amyris and its advisors.
- Amyris' project management of its "working group" professionals assisting Amyris in its bankruptcy process.
- Testify as a "fact witness" in Amyris' bankruptcy court proceedings, based on PwC US Business Advisory's direct knowledge of the estate arising from or relating to the Services performed.

iv. <u>Project Management Services</u>: Amyris has also requested project management advisory services related to Amyris' management of various workstreams related to the bankruptcy process. Amyris will designate a member of its management team to be the leader of the projects and associated workstreams. Amyris's project leader will oversee, review, and take responsibility for all activities performed by PwC US Business Advisory in connection with such services. PwC US Business Advisory will perform the following project management advisory services: Provide advice and assistance to support Amyris in the development of Amyris'

project plans including, as requested, advice on the timing of milestones and interdependencies, communication frameworks (e.g., the development of status reporting templates), governance structures (e.g., the responsibilities of various project teams/participants), resource requirements, and issues resolution processes; Based on Amyris-provided information, assist in preparing and collating status reports for Amyris' project leader and making project updates to Amyris' project plan and other project management tools; Provide observations on project status, potential completion risks and interdependencies; and to the extent changes to milestones are necessary, PwC US Business Advisory will provide advice and assistance to support Amyris' project leader in the development of a structured change management process.

15. If the Debtors request PwC US Business Advisory perform additional services not contemplated by the Engagement Letter, the Debtors and PwC US Business Advisory will mutually agree upon such services and fees in writing in advance, and if the additional services require an amendment to or statement of work with respect to the Engagement Letter, or entry into a separate engagement letter, the Debtors shall file notice of such documents with the Court, together with a supplemental declaration if appropriate, in accordance with the Court's approval procedures and the terms of the Proposed Order. Provided no objection is timely filed to the proposed services and agreements, PwC US Business Advisory will continue to provide the requested services subject to any prior order entered by the Court on PwC US Business Advisory's retention.

C. **Professional Compensation**

16. Pursuant to the terms and conditions of the Engagement Letter, and subject to the Court's approval, PwC US Business Advisory is providing the Professional Services under an hourly fee arrangement. The following outlines the proposed compensation structure that is set forth in the Engagement Letter (the "Fee and Expense Structure"):

a.  The following are the agreed upon hourly rates:

| Staff Class | Hourly Rates |
|---|---|
| Partner/Principal | $1,195 |
| Director | $915 |
| Senior Manager | $815 |
| Manager | $715 |
| Senior Associate | $585 |
| Associate | $248-$500 |

b.  Pre-petition, pursuant to engagement letters with PwC LLP (as defined below) and PwC US Business Advisory to provide financial advisory services, the Debtors paid retainers totaling $3,331,000 of which $1,915 remains available to be applied against approved post-petition fees and expenses.

17.  PwC US Business Advisory will invoice the Debtors for PwC US Business Advisory's actual, reasonable, and necessary expenses during these chapter 11 cases, including travel (and internal per-ticket charges), delivery services, applicable sales, use, excise or value-added tax, the fees and expenses of outside counsel to the extent applicable, and other expenses incurred in providing the Professional Services.

18.  As set forth in the Fleming Declaration, PwC US Business Advisory will apply to the Court for allowances of compensation and reimbursement of expenses in accordance with applicable *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330* (collectively, the "Fee Guidelines"), the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of the Court, in accordance with the terms and conditions of the Engagement Letter.

19.  The Debtors are advised that it is not the practice of PwC US Business Advisory's professionals to keep detailed time records in one-tenth-of-an-hour (0.10) increments as customarily kept by attorneys compensated subject to Court-approval. Instead, the customary

practice of PwC US Business Advisory's professionals is to keep reasonably detailed records of services rendered during an engagement in half-hour (0.50) increments. The Debtors request that the Court allow PwC US Business Advisory's professionals to provide the following in its monthly, interim and/or final fee applications: (a) a narrative summarizing each project category and the services rendered under each project category; (b) a project-category based summary of services rendered to the Debtors, identifying each professional rendering services, the number of hours expended by each professional, and the amount of compensation requested with respect to the services rendered; and (c) reasonably detailed records of time, in half-hour (0.50) increments for fixed fee engagements and in tenth of an hour (0.10) increments for hourly fee arrangements, describing the services rendered by each professional and the amount of time spent on each date.

20. Given the nature of the services to be provided by PwC US Business Advisory, the Debtors submit that such billing format and associated time details will be sufficient for parties-in-interest to make informed judgments regarding the nature and appropriateness of PwC US Business Advisory's services and fees. Accordingly, to the extent necessary, based on the foregoing, the Debtors respectfully seek a waiver of the information requirements set forth in the compensation procedures.

21. Except as set forth in the Fleming Declaration, PwC US Business Advisory has not agreed to share any compensation paid by the Debtors with any non-affiliated or unrelated entity in accordance with section 504 of the Bankruptcy Code.

**D.  Indemnification**

22. As part of the overall compensation payable to PwC US Business Advisory under the terms of the Engagement Letter, the Debtors agreed to certain indemnification

obligations described in the Engagement Letter and subject to modifications set forth in the Proposed Order.

23.     The terms of the Engagement Letter and the indemnification provisions were fully negotiated at arm's length.  The Debtors believe that the indemnification provisions are reasonable and in the best interest of the Debtors, their estates, and creditors, and are customary and reasonable for engagements of this nature.

24.     The Debtors believe that the proposed modifications to the indemnification provisions of the Engagement Letter as set forth in the Proposed Order are appropriate under the circumstances.

**E.     Disinterestedness**

25.     On July 1, 2023, PricewaterhouseCoopers LLP ("PwC LLP") effectuated a legal entity restructuring whereby its tax, business advisory, and consulting businesses are now performed by entities affiliated with PwC LLP, including PwC US Business Advisory.

26.     In the 90 days prior to the Petition Date, the Debtors paid: (i) PwC US Business Advisory approximately $925,000 the entirety of which was on account of pre-petition retainers; (ii) PwC LLP approximately $2,406,000, the entirety of which was on account of pre-petition retainers; and (iii) PricewaterhouseCoopers Advisory Services LLC, an entity affiliated with PwC LLP and PwC US Business Advisory ("PwC Advisory"), approximately $593,145, the entirety of which was on account of pre-petition retainers.

27.     In light of the aforementioned PwC LLP restructuring, the parties agreed that a remaining retainer amount of $81,718 paid to PwC LLP for financial advisory services would be netted against the retainer shortfall of $79,803 owed to PwC US Business Advisory for financial advisory services under the Engagement Letter.  The remaining $1,915 of the retainer is

available to be applied against approved post-petition fees and expenses for services provided by PwC US Business Advisory.  As of the Petition Date, the Debtors did not owe PwC LLP, PwC US Business Advisory, or PwC Advisory any money on account of prepetition services performed.

28. The Debtors' knowledge, information, and belief regarding certain of the matters set forth in this Application, including, without limitation, PwC US Business Advisory's disinterestedness, are based on, and are made in reliance upon, the Fleming Declaration.

29. In reliance on the Fleming Declaration, the Debtors believe that, except as set forth in the Fleming Declaration, PwC US Business Advisory:  (a) has no connection with the Debtors and the parties identified in that certain Parties in Interest list; (b) does not hold any interest adverse to the Debtors or the Debtors' estates; and (c) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required by section 327(a) of the Bankruptcy Code.

30. The Debtors were informed that PwC US Business Advisory will conduct a periodic review of its files to ensure that no disqualifying circumstances arise.  To the extent any information PwC US Business Advisory discloses requires amendment, modification or supplementation, as additional information becomes available, PwC US Business Advisory will submit a supplemental declaration to the Court.

**Basis for Relief**

**A. The Debtors' Retention and Employment of PwC US Business Advisory Is Appropriate Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.**

31. Section 327 (a) of the Bankruptcy Code provides, in relevant part, as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

32. Section 328 (a) of the Bankruptcy Code provides, in relevant part, as follows:

> The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

*Id.* at 328(a).

33. Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 . . . of the Code shall be made only on application of the trustee or committee.

Fed. R. Bankr. P. 2014.

34. As set forth above, the Debtors have selected PwC US Business Advisory to provide the Professional Services set forth in the Engagement Letter and described herein because PwC US Business Advisory is a well-respected professional services firm. PwC US Business Advisory professionals possess extensive experience in the areas of financial advisory services that will be useful to the Debtors and PwC US Business Advisory has indicated a desire

and willingness to act in these Chapter 11 Cases and to render the necessary and contracted for Professional Services to the Debtors.

35. The Debtors believe that the Fee and Expense Structure appropriately reflects the nature of the services PwC US Business Advisory will provide in connection with these Chapter 11 Cases and is consistent with, and typical of, arrangements PwC US Business Advisory and other financial advisory services firms enter to render comparable services for clients similar to the Debtors, both in and out of chapter 11. PwC US Business Advisory and the Debtors also believe that the Fee and Expense Structure is reasonable and at market rates, and the terms and conditions of employment should be approved by the Court under section 328(a) of the Bankruptcy Code in light of: (a) industry practice; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) PwC US Business Advisory professionals' substantial experience with respect to the Professional Services; and (d) the nature and scope of work to be performed by PwC US Business Advisory in connection with these Chapter 11 Cases.

36. Furthermore, not granting the relief requested herein would force the Debtors to engage new financial advisor to replace PwC US Business Advisory, causing the Debtors to needlessly expend additional time and resources at a critical stage of these Chapter 11 Cases, disadvantaging the Debtors and all parties in interest. Accordingly, the Debtors submit that the services provided by PwC US Business Advisory are critical to the success of these Chapter 11 Cases.

**B.  Retroactive Relief is Warranted.**

37. Employment of PwC US Business Advisory effective as of August 9, 2023 is warranted under the circumstances of these Chapter 11 Cases. At the Debtors' request, PwC US Business Advisory began providing the requested Professional Services in anticipation that its requested retention would be approved, effective as of August 9, 2023. PwC US Business

Advisory has worked diligently to complete its thorough disinterestedness review process in support of this Application, taking all necessary steps to prepare and file this Application.

**C.    Approval of the Indemnification Provisions of the Engagement Letter, As Limited and Modified by the Proposed Order, Is Appropriate.**

38.    The Engagement Letter provides, among other things, that the Debtors will indemnify and hold each indemnified party harmless from and against any and all third-party claims, losses, liabilities and damages arising from or relating to the services or deliverables provided under the Engagement Letter (the "<u>Indemnification Provisions</u>"). The Indemnification Provisions are standard engagement provisions, both in and out of chapter 11 cases, and reflect the qualifications and limits on such terms that are customary for PwC US Business Advisory and other similar financial advisory services providers as approved in this and other jurisdictions.

39.    In connection with this Application, and in light of the Debtors' pending Chapter 11 Cases, PwC US Business Advisory agrees to the following limitations and modifications to the Indemnification Provisions, which are reflected in the Proposed Order:

   a.    All requests for payment of indemnity, contribution or otherwise pursuant to the Engagement Letter shall be made by means of fee application and shall be subject to the approval of, and review by, this Court to ensure that such payment conforms to the terms of the Engagement Letter, the Bankruptcy Code, the Local Rules and any orders of the Court and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided* that in no event shall an indemnified party be indemnified or receive contribution to the extent that any claim or expense is determined by final judicial order to have primarily resulted from the gross negligence, self-dealing, willful misconduct or bad faith of such indemnified party;

   b.    In no event shall any indemnified party be indemnified or receive contribution or other payment of an indemnity claim under the Engagement Letter if the Debtors or a representative of the Debtors' estates asserts a claim that a court of competent jurisdiction determines by final order primarily arose out of the gross negligence, self-dealing, willful misconduct or bad faith of such indemnified party; and

   c.    In the event that an indemnified party seeks reimbursement for attorneys' fees from the Debtors in connection with the payment of an indemnity claim

pursuant to the Engagement Letter, the invoices and supporting time records from such attorney shall be attached to PwC US Business Advisory's own fee applications, and such invoices and time records shall be subject to the Fee Guidelines and the approval of this Court under the standards of section 330 and 331 of the Bankruptcy Code without regard to whether such indemnified party's attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

40. The Debtors believe that the Indemnification Provisions, as limited and modified by the aforementioned language (and set forth in the Proposed Order), are customary and reasonable for financial advisory services providers, both in and out of court in chapter 11 cases. *See United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217, 234 (3d Cir. 2003) (finding that an indemnification agreement between the debtor and its financial advisor was reasonable under section 328 of the Bankruptcy Code).

## Notice

41. The Debtors will provide notice of this Application to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lenders, DIP Agent, and the Foris Prepetition Secured Lenders, Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com) and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com); (d) co-counsel to the DIP Lenders, the DIP Agent, and the Foris Prepetition Secured Lenders, Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com); (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which the Debtors conduct business; and (g) any party that requests service pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**No Prior Request**

42. No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court: (a) enter the Proposed Order, authorizing the Debtors to employ and retain PwC US Business Advisory as a financial advisory services provider to the Debtors effective as of August 9, 2023, pursuant to the terms and conditions of the Engagement Letter, subject to the limitations and modifications proposed herein and provided for in the Proposed Order; and (b) grant such other and further relief as may be just and proper.

Dated: August 31, 2023

AMYRIS, INC., *et al.*

*/s/ Han Kieftenbeld*
Name: Han Kieftenbeld
Title: Interim Chief Executive Officer and Chief Financial Officer