**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br><br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: September 7, 2023 at 4:00 p.m. (ET)**<br>**Hearing Date: September 14, 2023 at 2:00 p.m. (ET)**<br><br>Re: Docket No. 19 |

**LAVVAN, INC.'S MOTION FOR LIMITED MODIFICATION**
**OF AUTOMATIC STAY TO PERMIT ISSUANCE**
**<u>OF AN ARBITRATION AWARD</u>**

Lavvan, Inc. ("**Lavvan**"), by and through its undersigned counsel, hereby submits this motion (the "**Motion**"), pursuant to Section 362(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, modifying the automatic stay imposed by Section 362(a) of the Bankruptcy Code to permit an arbitration Panel (as defined herein) of the ICC (as defined herein) to issue an award that the Panel has told the parties it has already decided but is stayed from issuing. In support of this Motion, Lavvan respectfully states as follows:

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

RLF1 29534366v.6

**PRELIMINARY STATEMENT**

1.   Lavvan and Amyris, Inc. ("**Amyris**") entered into the *Research, Collaboration and License Agreement*, dated March 18, 2019 (as amended from time to time, the "**RCLA**"). As described herein, in response to Amyris's decision to repudiate the RCLA, in 2020 Lavvan commenced, among other things, arbitration (the "**Arbitration**") as required by the RCLA, in the International Chamber of Commerce International Court of Arbitration (the "**ICC**"). The Arbitration was fully tried more than ten months ago and after final briefing was submitted for decision approximately 7.5 months ago and is situated for prompt issuance of a ruling. Indeed, shortly after the filing of these chapter 11 cases, the Arbitration panel (the "**Panel**") ███████████████████████████████████████████████████████

2.   Contemporaneously herewith, Lavvan has filed the *Limited Objection and Reservation of Rights of Lavvan, Inc. to Final Relief Requested in Motion of the Debtors for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "**Limited DIP Objection**"). As set forth more fully in the Limited DIP Objection, if the Debtors move forward with a sale process, Lavvan likely intends to exercise its right to credit bid the amount of its claim against the Debtors on intellectual property. However, while Lavvan has a perfected security interest in the intellectual property, the Debtors might argue that it does not yet have an allowed claim because the ICC has not yet issued its decision.

3.   Accordingly, Lavvan requests that the automatic stay be lifted in order to permit the Panel to issue its final ruling regarding Lavvan's claim. Stay relief also is necessary because, if Lavvan is not the winning bidder in a sale of the Debtors' intellectual property, Lavvan intends to make an election under Bankruptcy Code Section 365(n). The Panel's final ruling also likely

will determine whether the RCLA (as defined herein) is an executory contract such that Section 365(n) applies.

4.   Thus, the stay should be lifted for the limited purpose of allowing the Panel to issue its ruling, which will require no effort at all by the Debtors and will not distract from their reorganization or sale efforts.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The authority for the relief requested includes Section 362(d) of the Bankruptcy Code, Bankruptcy Rule 4001(a), and Local Rule 4001-1.

## BACKGROUND

A.   **General Background**

6.   On August 9, 2023 (the "**Petition Date**"), Amyris and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") filed voluntary petitions in this Court commencing cases for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").  The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in these cases.

7.   On August 10, 2023, the Debtors filed, among other things, the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 18] (the "**First Day Declaration**") and the DIP Motion.

8.   On August 11, 2023, after a hearing (the "**First Day Hearing**") regarding certain first day motions filed by the Debtors, the Court entered an order [Docket No. 54] (the "**Interim DIP Order**") granting the relief requested in the DIP Motion on an interim basis.  At the First Day

3

Hearing, to avoid a limited objection by Lavvan to entry of the Interim DIP Order, the Debtors and Foris (as defined herein) put on the record agreed statements with Lavvan confirming that (a) the DIP Order would not prime properly perfected prior security interests and (b) notwithstanding section 7.25 of the DIP Credit Agreement, if the Debtors sell any collateral during the chapter 11 cases, the distribution of proceeds from the sale of such collateral will be in accordance with the relative lien priorities in such collateral (the "**Lavvan Resolutions**"). *See* First Day Hearing Transcript at 68-69.

### B. The RCLA and the Security Agreement

9. Lavvan and Amyris are parties to the RCLA.[2] A redacted version of the RCLA, which the Debtors previously have publicly filed. Lavvan entered into the RCLA because, as an ingredients and formulations business focused on the production and commercialization of cannabinoids for use in a variety of end markets, Lavvan recognized the excellence of Amyris's scientific capabilities and a unique opportunity to leverage Amyris's platform to establish itself as the clear leader in a large and growing field.

10. Under the RCLA, Amyris was responsible for research and development and delivering the technology and process to produce certain molecules through fermentation, while Lavvan controlled the manufacturing and commercialization of the molecules.

11. In accordance with the requirements of the RCLA, Lavvan and Amyris also entered into that certain Security Agreement, dated as of May 2, 2019 (the "**Security Agreement**"). In the Security Agreement, Amyris granted Lavvan a security interest in substantially all of the Debtors' intellectual property pursuant to the RCLA. *See* Security Agreement, § 2.01 ("As

---

[2] The documents referenced herein are attached to the Limited DIP Objection which is being filed simultaneously herewith.

collateral security for the Secured Obligations,[3] the Grantor[4] hereby grants to Secured Party[5] a continuing lien on and security interests in all of the Intellectual Property Collateral,[6] wherever the same may be now or hereafter located"). Significantly, the Intellectual Property Collateral (the "**IP Collateral**") is made up of (i) intellectual property that is "conceived, reduced to practice, obtained or developed" in connection with the RCLA, except for certain collaboration-specific intellectual property (the "**Carve Out IP**"), which was assigned to a bankruptcy remote special purpose entity, and (ii) <u>all</u> intellectual property not already included in category (i), other than the Carve Out IP, controlled by Amyris prior to the effective date of the RCLA or independently of the RCLA. *See* Security Agreement, § 1.01. Accordingly, the Security Agreement broadly granted Lavvan a lien and security interest in substantially all of Amyris's intellectual property — not limited to intellectual property that was used in Amyris's collaboration with Lavvan.

12.  To perfect its security interest in the IP Collateral, Lavvan filed the UCC Financing Statement on May 9, 2019, with the Delaware Department of State.

C.  **The Arbitration and Litigation**

13.  The collaboration memorialized in the RCLA did not move forward as the parties agreed therein. Unfortunately, Amyris decided to repudiate and breach the RCLA, including by

---

[3] "Secured Obligations" is defined in the Security Agreement as all obligations of the Grantor to the Secured Party under the RCLA.

[4] "Grantor" is defined in the Security Agreement as Amyris.

[5] "Secured Party" is defined in the Security Agreement as Lavvan.

[6] "Intellectual Property Collateral" is defined in the Security Agreement as all of Amyris's right, title, and interest in the Amyris Background IP, the Amyris Platform Improvement IP, and the Amyris Additional IP Collateral. In turn, the Amyris Background IP is defined as any intellectual property, other than the Foreground IP, controlled by Amyris and/or its affiliates prior to March 18, 2019 or independently of the RCLA; the Amyris Platform Improvement IP is defined as any intellectual property that is conceived, reduced to practice, obtained or developed by or on behalf of Amyris and/or its affiliates in connection with the RCLA after March 18, 2019 that is controlled by Amyris, other than the Carve Out IP; and the Amyris Additional IP Collateral is defined as any property or asset that is not within the scope of the definition of Amyris Background IP or Amyris Platform Improvement IP as of the date of the Security Agreement but that later becomes within the scope of such defined terms as a result of any amendment or modification of the RCLA following the date of the Security Agreement.

5

unilaterally proceeding with the manufacture and commercialization of biosynthetic cannabinoids without Lavvan's consent or participation, in breach of Lavvan's exclusivity rights. Amyris's willful breaches of the RCLA not only resulted in hundreds of millions of dollars in damages to Lavvan, but also triggered broad rights in favor of Lavvan over substantial Amyris intellectual property, as set forth in the RCLA and related documents.

14. In 2020, Lavvan raised the aforementioned issues to Amyris's entire board of directors. When the board did nothing and Amyris persisted in its breaches, Lavvan commenced the Arbitration and a separate litigation in the U.S. District Court for the Southern District of New York (the "**SDNY Court**") as provided by the RCLA, both in 2020.[7] In the SDNY litigation, Amyris filed a motion to dismiss or compel arbitration, which was denied, and such denial was affirmed on appeal to the Second Circuit Court of Appeals. Rather than move forward and coordinate discovery in both actions, Amyris moved for a stay of the case in the SDNY Court pending resolution of its appeal to the Second Circuit, and that stay request was granted. Upon the Second Circuit Court of Appeals' resolution of Amyris's appeal in Lavvan's favor and remand for further proceedings, the parties stipulated in February 2023 to a limited further stay in the SDNY Court, in anticipation of the imminent issuance of the arbitral tribunal's ruling.

15. The Arbitration proceeded in the International Chamber of Commerce International Court of Arbitration ("**ICC**") and was fully tried and briefed. The arbitral tribunal held a full evidentiary hearing on October 24-28, 2022, and the parties fully submitted post-hearing briefing on January 11, 2023. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

[7] The RCLA provides for arbitration of certain types of disputes but also provides that matters related to the scope, ownership, validity, enforceability, revocation, or infringement of intellectual property be brought in a court. *See* RCLA, §§ 7.1 & 7.2. Lavvan asserted both types of claims, and therefore split its claims into an arbitration and a lawsuit, consistent with the RCLA's terms. *See Lavvan, Inc. v. Amyris, Inc.*, No. 21-1819, 2022 WL 4241192, at *3 (2d Cir. Sept. 15, 2022).

███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
██████████████

16. On August 10, 2023, counsel to the Debtors sent a notice of the Debtors' chapter 11 filing and the imposition of the automatic stay to the Panel. ████████████████ ███████████████████████████████ ███████████████████████████████ ████████████████████ A copy of the ICC's email (the "**Arbitration Email**").

17. On August 22, 2023, counsel for Lavvan had a telephone call with counsel for the Debtors. Among other things, counsel for Lavvan asked if the Debtors would agree to limited stay relief solely to allow the Panel to rule. At the first day hearing, the Debtors had indicated that they, too, had an interest in having the Panel issue its ruling. *See* Hr'g Tr. 25:1-3, Aug. 11, 2023 (Debtors' counsel: "There's, for instance, one piece of litigation that we're waiting to see if there will be an award, which our hope is that there will not be."). Nonetheless, on the call, the Debtors declined to agree to lift the stay for this limited purpose.

## RELIEF REQUESTED

18. The Debtors seek entry of an order, pursuant to Section 362(d)(1) of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-1, lifting the automatic stay for the limited

purpose of permitting the Arbitration Panel to issue its final ruling.  While Lavvan reserves the right to seek a broader modification of the automatic stay at a later time, it currently seeks the minimum relief necessary to address the immediate chapter 11 concerns of credit bidding and Bankruptcy Code section 365(n) rights.

## BASIS FOR THE RELIEF REQUESTED

19. Under the pertinent portion of the Bankruptcy Code's automatic stay provision, filing a petition "operates as a stay" of any pre-petition "action or proceeding against the debtor" or any pre-petition action "to recover a claim against the debtor."  11 U.S.C. § 362(a)(1).  The automatic stay is intended to benefit a debtor by providing a "breathing spell" from ongoing litigation and the pursuit of creditor litigation or actions against estate property.  *See Borman v. Raymark Industries, Inc.*, 946 F.2d 1031, 1036 (3rd Cir. 1991).  But "the automatic stay is not meant to be absolute, and in appropriate instances relief may be granted." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).

20. Section 362(d)(1) of the Bankruptcy Code authorizes the Court to "grant relief" from the automatic stay—"such as by terminating, annulling, modifying, or conditioning" the stay—"for cause."  11 U.S.C. § 362(d)(1).  Lavvan respectfully submits that "cause" exists here to modify the stay to permit the issuance of the Arbitration award because (a) ████████ ████████████████████████████████████████████████████████████████ – an act that requires no action by the Debtors and therefore creates no prejudice, and (b) as described below, there is an immediate need in these chapter 11 cases to know the outcome of the Arbitration.

21. "Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997).  This Court traditionally applies "a three-prong balancing test"

8

formulated in *In re Rexene Prod. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992), to determine whether cause exists to modify or lift the automatic stay. The test considers: (1) "whether the lifting of the stay will result in harm to the debtor or the estate"; (2) whether "any harm to the debtor or the estate" from granting relief from the stay outweighs "any hardship that the movant will suffer as a result of the stay being enforced"; and (3) "whether the movant has some probability of success on the merits of the pending litigation." *SCO Grp.*, 395 B.R. at 857-59. In addition, "this Court also considers the general policies underlying the automatic stay." *In re Scarborough-St. James Corp.*, 535 B.R. 60, 68 (Bankr. D. Del. 2015).

    A.    **The *Rexene* Factors Favor Granting Relief From The Automatic Stay**

22.    The *Rexene* factors strongly favor granting the relief requested herein and allowing the Panel to communicate its final ruling regarding the Arbitration.

23.    *First*, granting the requested relief will not result in any prejudice to the Debtors or their estates. If the requested relief is granted, the Debtors would not be required to take any action at all. The case has been fully tried and briefed, so no further action is required from the Debtors. As set forth in the Arbitration Email, ███████████████████████████████████████ ████████████████████████████████ Indeed, Lavvan purposefully is seeking as limited relief from the stay as possible to assure that the Debtors need to do little or no work. For example, because of the limited request, the Debtors will not be required to take action to dispute or appeal the award issued by the Panel until such time as a broader modification of the stay is sought and ordered.[8]

---

[8] Lavvan is amenable to such a broader modification of the stay now if the Debtors reverse course and request it.

24. *Second*, denying the requested relief will prejudice Lavvan, a risk that certainly outweighs the (nonexistent) prejudice to the Debtors from lifting the stay. If the automatic stay is not modified, Lavvan, a prepetition, first-priority (or, at a minimum, second priority behind a small amount of Foris's prepetition loans) secured lender, may be impeded in its ability to credit bid its claim in a possible sale of the Debtors' intellectual property, a right afforded to it under section 363(k) of the Bankruptcy Code, because the Debtors might claim that until the Panel issues its award, Lavvan does not have an allowed claim. *See Limited DIP Objection* ¶¶ 17-20.

25. Additionally, the Panel's ruling is likely to be relevant to Lavvan's election under section 365(n) of the Bankruptcy Code, as a licensee of intellectual property under the RCLA. Section 365(n) of the Bankruptcy Code provides that, in the event that a debtor rejects an executory contract under which the debtor is a licensor of a right to intellectual property, the licensee counterparty to such executory contract has "the option of treating the contract as terminated by reason of the rejection or of retaining its rights to the license provided under the contract." 3 Collier on Bankruptcy ¶ 365.15 (16th ed. 2023). Since Lavvan is such a licensee of intellectual property, this election is very important to it. But section 365(n) applies only to executory contracts. Lavvan does not know if the Debtors will dispute that the RCLA is executory, but the ruling from the Panel likely will address that issue as well. Thus, without lifting the stay, Lavvan would be prejudiced by prevention of the Panel's issuance of the final award, which could address a key component of the section 365(n) analysis.

26. *Third*, the likelihood of success on the merits prong of the *Rexene Products* test supports granting the requested relief. For this factor, "[t]he required showing is very slight." *Rexene Prod. Co.*, 141 B.R. at 578. To meet it, Lavvan merely needs to show that its claim is not frivolous. *In re Levitz Furniture*, 267 B.R. 516, 523 (Bankr. D. Del. 2000) ("Defendants have met

the third prong, since that merely requires a showing that their claim is not frivolous."). Lavvan respectfully submits that the Arbitration would not have gotten all the way to the stage where it was fully tried and briefed, with the Panel prepared to issue its final ruling, if its claims were frivolous. Indeed, the fact that the Debtors refused to agree to limited relief from the stay when they need to do no further work, when ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ – and when the Debtors know that Lavvan is asserting a secured claim for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that is a significant issue in these chapter 11 cases – shows that they understand they lost the Arbitration.

### B. Granting The Requested Relief Is Consistent With The Purposes Of The Automatic Stay

27.     Granting the requested relief is also consistent with the purposes underlying the Bankruptcy Code's automatic stay provision. As the Third Circuit has explained, the "automatic stay was designed 'to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.'" *Borman*, 946 F.2d at 1036 (citation omitted).

28.     Here, Lavvan requests modification of the stay only to the extent required to permit the Panel to issue its final award regarding the Arbitration. The Debtors will not be required to defend themselves in any proceedings, and the requested relief from the stay does not extend to any collection effort. Therefore, there will be no depletion of assets. Further, this request will not interfere with the Debtors' orderly restructuring or sale, nor give Lavvan any preference that it is not already due, given that the case is fully submitted and ripe for the prompt issuance of an award. Lifting the stay simply will allow Lavvan to exercise the rights it has under the Bankruptcy Code as a prepetition secured lender of the Debtors.

29. Indeed, not lifting the stay would run contrary to its purpose. The stay is not supposed to be used as a weapon, nor a tool to gain bargaining leverage. *See In re Gaslight Village Inc.*, 8 B.R. 866, 870 (Bankr. D. Ct. 1981) ("The automatic stay under Code s[ection] 362 was not intended to be used as a weapon or club to reduce secured creditors into submission with the continued passage of time while no payments are made to them. The automatic stay was only intended to give the debtor a breathing spell from his creditors and to afford him reasonable time to come up with a repayment or reorganization plan while relieved of the financial pressures that drove him to petition for relief.") Here, unless the stay is lifted, the Debtors might contend that precisely because the Panel has not yet issued its award, Lavvan cannot credit bid. Yet they are effectively preventing the Panel from issuing its award by refusing to consent voluntarily to targeted relief from the stay. The stay was never intended to be used as a sword and a shield. Limited relief from the stay to prevent that result is amply warranted.

30. Moreover, not lifting the stay would leave unanswered critical questions relating to the claim of a senior secured claimant and the intellectual property of the Debtors' estate. The orderly liquidation or rehabilitation of the Debtors would only be made more difficult, and subject to unnecessary uncertainty, were that to occur.

## CONCLUSION

31. For the reasons set forth above, Lavvan respectfully requests that this Court an enter an order modifying the automatic stay under Bankruptcy Code Section 362(a) for the sole purpose of permitting the issuance of the final award in the pending Arbitration, and such other and further relief as the Court deems just and proper.

Dated: August 31, 2023
      Wilmington, Delaware

                                        Respectfully submitted,

                                        */s/ Emily R. Mathews*
                                        Russell C. Silberglied (No. 3462)
                                        Emily R. Mathews (No. 6866)
                                        **RICHARDS, LAYTON & FINGER, P.A.**
                                        One Rodney Square
                                        920 North King Street
                                        Wilmington, Delaware  19801
                                        Telephone:  (302) 651-7700
                                        Facsimile:  (302) 651-7701
                                        Email:     silberglied@rlf.com
                                                      mathews@rlf.com

                                                   **-and-**

                                        Jason Cyrulnik
                                        Paul Fattaruso
                                        **CYRULNIK FATTARUSO LLP**
                                        55 Broadway, Third Floor
                                        New York, NY 10006
                                        Telephone:  (646) 844-2466
                                        Email:     jcyrulnik@cf-llp.com
                                                      pfattaruso@cf-llp.com

                                        *Counsel for Lavvan, Inc.*