IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
|  | : | Case No. 23-11131 (TMH) |
| Amyris, Inc., *et al.*, | : | (Jointly Administered) |
|  | : |  |
| Debtors. | : | Hearing Date: Sept. 7, 2023 @ 11:00 a.m. |
|  | : | Objection Deadline: Sept. 1, 2023 |
|  | : |  |

**UNITED STATES TRUSTEE'S OBJECTION TO THE DEBTORS'
EMERGENCY MOTION TO ASSUME AND/OR ENTER INTO
REIMBURSEMENT AGREEMENTS WITH PROFESSIONALS FOR THE
<u>AD HOC NOTEHOLDER GROUP</u>**

Andrew R. Vara, the United States Trustee for Region 3 (the "<u>U.S. Trustee</u>"), by and through his undersigned counsel, hereby files this objection (the "<u>Objection</u>") to the *Debtors' Emergency Motion to Assume and/or Enter Into Reimbursement Agreements With Professionals for the Ad Hoc Noteholder Group* (Docket No. 148) (the "<u>Bondholder Fee Motion</u>").[1]  In support of this Objection, the U.S. Trustee states:

**PRELIMINARY STATEMENT**

1. Through the Bondholder Fee Motion, the Debtors seek authority to pay the professional fees and expenses of the Ad Hoc Noteholder Group pursuant to Bankruptcy Code sections 105(a), 363, and 365.  The U.S. Trustee objects to the requested relief.

2. Bankruptcy Code section 503(b) is the exclusive avenue for payment of administrative expenses and sections 503(b)(3)(D)/503(b)(4) are the specific and sole authority for an estate to pay the legal fees and expenses of an unsecured creditor.  Those sections require

---

[1] Capitalized terms used herein and not otherwise defined are defined as set forth in the Bondholder Fee Motion.

the court to find that the creditor made a substantial contribution to the case and that the fees and expenses of counsel or an accountant are reasonable, and only after notice and a hearing. Under Code sections 503(b)(3)(D) and 503(b)(4), a creditor simply cannot have a prospective claim for having made a substantial contribution. Because it is impossible at this time to know whether the Ad Hoc Noteholder Group will make a substantial contribution in these cases, the Court should deny the Motion as legally improper and premature.

3. Although the Motion relies on Bankruptcy Code sections 105(a), 363, and 365 as authority to pay the legal and other professional fees, the general provisions of the Bankruptcy Code cannot be used to evade the specific provisions of sections 503(b)(3) and (4). A debtor cannot enter into an agreement that ignores or modifies the Code's requirements for payment of substantial contribution claims and then ask a Court to approve an agreement which contravenes the Bankruptcy Code.

4. Moreover, unless and until the Ad Hoc Noteholder Group's professionals are required to file fee applications, on notice with an opportunity to object, in accordance with applicable law (and, by extension, the fee and expense detail of the professionals is before this Court), it is impossible to discern whether there are other grounds for objecting to the compensation/reimbursement requests – for example, duplication of effort with the Official Committee of Unsecured Creditors (on which the Indenture Trustee for the note issuance represents the noteholders), or other, "standard" grounds (vagueness, lumping, etc.).

5. In any instance, there is no provision of the Bankruptcy Code that allows for payment of the professional fees and expenses of the Ad Hoc Noteholder Group on an emergency basis at this stage of these Chapter 11 Cases. Accordingly, the Court should deny the Bondholder Fee Motion.

**JURISDICTION & STANDING**

6. Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve the Bondholder Fee Motion and this Objection.

7. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

8. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Bondholder Fee Motion and the issues raised in this Objection.

**BACKGROUND**

9. On August 9 and August 21, 2023 (as applicable, the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code which initiated the Chapter 11 Cases. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

10. On August 27, 2023, the U.S. Trustee appointed the committee of unsecured creditors (the "Committee") pursuant to Bankruptcy Code section 1102(a)(1). The Committee members are: (i) Cosan U.S. Inc., (ii) U.S. Bank Trust Company, National Association as Trustee ("U.S. Bank"), (iii) Sartorius Stedim North America, Inc., (iv) Hearst Magazine Media, Inc., (v) Wiley Companies, (vi) Park Wynwood, LLC, and (vii) Allog Participacoes, Ltda.

11. Committee member U.S. Bank is the trustee (in such capacity, the "Indenture

3

Trustee") under that certain indenture through which the the Convertible Notes held by the Ad Hoc Noteholder Group were issued.

12. No request has been made for appointment of an additional committee pursuant to Bankruptcy Code section 1102(a)(2).

13. Through the Bondholder Fee Motion, the Debtors seek authority to enter into and assume, as applicable, the Noteholder Group Reimbursement Agreements. In summary, the relief requested consists of the following:

   a. The Debtors seek to pay the Noteholder Group Professionals up to the Noteholder Group Professional Cap (*i.e.*, up to $750,000) for fees and expenses incurred from the Petition Date through September 13, 2023 (the "Compensation Period") and within the agreed Scope (which is (i) to review documents related to the Foris Prepetition Secured Lenders' claims and (ii) to conduct and engage in diligence, negotiation, prosecution, documentation, and implementation of a comprehensive consensual restructuring of the Debtors in accordance with the terms and conditions of the Reimbursement Agreements).

   b. Although the Bondholder Fee Motion contemplates some limited notice and disclosure related to the payments to be made to the Noteholder Group Professionals, the Debtors further request that the Noteholder Group Professionals not be required to file any interim or final applications for compensation with the Court as a condition precedent to the Debtors' obligation to pay such fees and expenses.

   c. If the Debtors, the Foris Prepetition Secured Lenders, the DIP Secured Parties, and the Ad Hoc Noteholder Group agree to amend the Scope, the Noteholder Group Professional Cap, and/or the Compensation Period, the Debtors may file with the Court and serve a notice of such amendment (an "Amendment Notice") in accordance with Bankruptcy Rule 2002, to which parties will have only five (5) business days to review and respond.

## ARGUMENT

**A. Section 503(b) is the Only Code Section Governing the Payment of an Ad Hoc Committee's Fees and Expenses, and Any Request for Allowance of Compensation or Reimbursement for a "Substantial Contribution" is Premature.**

14. The proposed payments to the Noteholder Group Professionals constitute

compensation that is specifically governed by Bankruptcy Code sections 503(b)(3)(D) and (4). These sections govern payments to the professionals of ad hoc committees and individual creditors. *See* 11 U.S.C. §§ 503(b)(3)(D), 503(b)(4).[2]

15.  By enacting Bankruptcy Code section 503(b), Congress provided a specific procedure and standard for the allowance and approval of fees and expenses incurred by ad hoc committees and others in making a substantial contribution to a case. *See* 4 Collier on Bankruptcy at ¶ 503.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Administrative expenses, except ordinary course expenses paid pursuant to Sections 363 and 364 of the Code, are allowed only after notice and a hearing and are not 'deemed allowed' but rather must be actually allowed by court order."). Section 503 imposes detailed requirements that must be met before approval and payment, including the timely filing of a request for payment by the professional, *see* 11 U.S.C. § 503(a); notice and a hearing before the court, *see* 11 U.S.C. § 503(b); a showing that such expenses were "actual" and "necessary," *see* 11 U.S.C. § 503(b)(3); a showing that the creditor, unofficial committee, or indenture trustee has made a "substantial contribution" to the bankruptcy case, *see* 11 U.S.C. § 503(b)(3)(D); and a finding by the court that any compensation paid to an attorney or accountant is "reasonable," s*ee* 11 U.S.C. § 503(b)(4). Moreover, a party's right to payment under section 503(b) is not automatic but "depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir.1999).

---

[2] In the Third Circuit, a creditor makes a substantial contribution if, and only if, its efforts provide an "actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Financial Inc.*, 27 F.3d 937, 943-44 (3d Cir. 1994) (citation omitted) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)). Furthermore, to be compensable under section 503(b)(3)(D), the creditor's activity must have "benefit[ed] the estate as a whole." *See Lebron*, 27 F.3d at 944. Activities "which were designed primarily to serve [the applicants'] own interests" are ***not*** compensable, because they "would have been undertaken absent an expectation of reimbursement from the estate." *Id.*

5

16. The fact that the payment of professional fees is proposed as part of a pre-petition contract proposed to be assumed or, alternatively, a post-petition contract does not relieve a creditor or its third-party professionals of their obligation to comply with the requirements of Bankruptcy Code section 503, which is the "sole source" of authority to pay post-petition professional fees on an administrative basis. *Davis v. Elliot Management Corp. (In re Lehman Bros. Holdings Inc.)*, 508 B.R. 283, 290 (S.D.N.Y. 2014).

17. In *Lehman,* the court roundly rejected an attempt by certain committee members to circumvent section 503(b)(4) by seeking payment under a "permissive" plan provision that purported to pay third-party professional fees without regard to whether they could be authorized under section 503. As the court explained, plans pay only claims and administrative expenses:

> Although the Bankruptcy Code does not explicitly forbid payments [of] professional fees that are not administrative expenses, no such explicit prohibition is necessary. Reorganization plans exist to pay claims and expenses . . . Therefore, the Individual Members' professional fee expenses are either administrative expenses or not, and if the latter, they cannot be paid under a plan.

*Id.* at 293. Indeed, the court recognized that any contrary result "could lead to serious mischief," because it would allow plan proponents to distribute the estate's assets without regard to the Bankruptcy Code's priority scheme. *Id.*

18. The allowance of attorney's fees is an exception to "the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (internal quotation marks omitted). The Supreme Court has recognized departures from the American Rule "only in specific and explicit provisions for the allowance of attorneys' fees under selected statutes." *Id*. (internal quotation marks omitted). "Section 503(b)(3)(D) represents an accommodation between the twin objectives of encouraging meaningful creditor participation in

the reorganization process and keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors." *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994) (internal quotation marks and citation omitted).

19. Substantial contribution awards are granted only in "rare and extraordinary circumstances." *Leidos Rng'g, LLC v. KiOR, Inc*. (*In re KiOR Inc.),* 567 B.R. 451, 459 (internal quotation marks omitted); *accord RS Legacy*, No. 15-10197, 2016 WL 1084400, at *4 (Bankr. D. Del. March 17, 2016). "[T]he benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests." *Lebron*, 27 F.3d at 944. Under Third Circuit precedent, there must be a "demonstrable benefit to the debtor's estate and the creditors," *id*. (internal quotation omitted), because of "the concern that administrative claims deplete the bankruptcy estate's assets." *In re Energy Future HLDGS. Corp.*, 2021 WL 957301 at *10 (3d Cir. March 15, 2021). The benefit "must be *actual*, not hypothetical," *id*. (emphasis in original), thus "a hindsight-based analysis of the benefit to the estate requirement is appropriate," *id*. at *12. *See also KiOR*, 567 B.R. at 458 ("The substantial contribution test is applied in hindsight and scrutinizes the actual benefit to the case."). In determining whether a creditor has made a substantial contribution, "the court should weigh the cost of the claimed fees and expenses against the benefits conferred upon the estate which flow directly from those actions." *Hall Fin. Grp., Inc. v. DP Partners Ltd. (In re DP Partners, Ltd.)*, 106 F.3d 667, 673 (5th Cir. 1997).

20. By its nature, a substantial contribution claim is retrospective only, not prospective. There is no way to approve a substantial contribution claim before a bankruptcy case is largely concluded because no substantial contribution has been made and no claim exists. Moreover, the

7

award of fees and expenses for making a substantial contribution must be reasonable, and that determination cannot be made prospectively either.

21.     At this stage of the cases, it is a legal impossibility that anyone could have and prove a substantial contribution claim for reasonable fees and expenses, and the Noteholder Group Professionals should not be awarded one. The Bankruptcy Code contains no provision for interim payment of substantial contribution fees and expenses.

22.     Furthermore, even if it were proper to award fees for a substantial contribution on a prospective basis to legal counsel to the Ad Hoc Noteholder Group, the payment of BRG's fees and expenses, as financial advisor to the Ad Hoc Noteholder Group, may not be permissible. Section 503(b)(4) only allows for the reimbursement of fees of attorneys and accountants. 11 U.S.C. § 503(b)(4). "[T]he language of § 503(b)(4) (unlike § 330(a)(1)), limits compensation to attorneys and accountants only, rather than any professional. Accordingly, reimbursement for Seidman's [the financial advisor's] services must be disallowed." *Matter of Baldwin-United Corp.*, 79 B.R. 321, 341 (Bankr. S.D. Ohio 1987).

**B.  The General Provisions of Section 365 and 363 Cannot Be Used to Circumvent the Specific Provisions of Section 503(b).**

23.     The United States Supreme Court has held that "in all matters of statutory construction, the court must begin with 'the language itself [and] the specific context in which that language is used.'" *McNeill v. United States*, 131 S.Ct. 2218 (2011) (*quoting Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see also Lamie v. United States*, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.").

24.     The Supreme Court also has ruled, including when applying the Bankruptcy Code, that a specific statutory provision governs a general one. *E.G., RadLAX Gateway Hotel, LLC v.*

*Amalgamated Bank*, 566 U.S. 639, 645 (2012). In *RadLAX,* the Supreme Court recited the well-reasoned rule that:

> We find the debtors' reading of § 1129(b)(2)(A)—under which clause (iii) permits precisely what clause (ii) proscribes—to be hyperliteral and contrary to common sense.  A well established canon of statutory interpretation succinctly captures the problem: "[I]t is a commonplace of statutory construction that the specific governs the general." (citation omitted).  That is particularly true where, as in § 1129(b)(2)(A), **"Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions**."

*Id.* (citation omitted) (emphasis added).³

25.     The Third Circuit adheres to this approach. *See Kannikal v. Attorney General*, 776 F.3d 146, 150 (3d Cir. 2015) (citing both *Morales* and *RadLAX* with respect to the specificity of Title VII's limitations scheme over a more general section of Title VII stating "[I]t is a commonplace of statutory construction that the specific governs the general . . ." *Morales,* 504 U.S. at 384.

26.     The *RadLAX* principle of statutory construction that the specific governs the general applies here.  Congress targeted a specific problem— payment of reasonable fees and expenses for ad hoc committees making a substantial contribution—with a specific solution—Bankruptcy Code sections 503(b)(3)(D) and 503(b)(4).  An ad hoc committee can have its fees and expenses paid, but only after giving notice to creditors and after proving to a court that it made a substantial contribution to a case and that its fees and expenses are reasonable.  The parties cannot evade the mandatory statutory scheme by agreement: "the federal scheme cannot

---

³ *See also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992); *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991) (specific statutory provision normally controls one of more general application); *Bloate v. United States*, 130 S.Ct. 1345, 1353-1354 (2010) (same)); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of priority of enactment.") (*quoting Morton v. Mancari*, 417 U.S. 535, 550-51 (1974)).

remain comprehensive if interested parties and bankruptcy courts in each case are free to tweak the law to fit their preferences." *Lehman*, 508 B.R. at 294.

27. Further, the Supreme Court has articulated that a statutory provision should not be construed to render any other provision of the statute superfluous. *See Turner v. Rogers*, 131 S. Ct. 2507, 2522 (2011) ("The fact that one constitutional provision expressly provides a right to appointed counsel in specific circumstances indicates that the Constitution does not also sub silentio provide that right far more broadly in another, more general, provision.").

28. When these traditional principles of statutory construction are applied to the issues before this Court, the resulting conclusion is that section 503(b) is the only Bankruptcy Code section to directly address the issue of the payment of professionals for an ad hoc committee and is the only appropriate statutory provision under which this Court should consider the Motion. *See Lehman*, 508 B.R. at 294 (committee members seeking repayment of legal fees must seek reimbursement under sections 503(b)(3)(D) and 503(b)(4)).

29. Finally, a request for compensation under section 503(b)(4) is akin to a professional fee application and thus is governed by similar requirements. *See In re Worldwide Direct, Inc.*, 334 B.R. 112, 120 (Bankr. D. Del. 2005). Once it has been found that the particular creditor and/or professional provided a substantial benefit or contribution to the estate, the next step is to determine if the fees and expenses are reasonable. The measured standards for reasonableness under section 503(b)(4) are "the time, the nature, the extent, and the value of such services, and the cost of comparable services under this title." These factors mirror the factors considered to determine reasonable compensation under section 330(a)(3), and courts generally apply the same analysis and approach to fee requests under section 503(b)(4) that are used for fee applications under section 330. A party making an application for fees under Bankruptcy Code section 330 bears the

burden of establishing the reasonableness of the fees, and to meet that burden, the party must, among other things, submit sufficiently detailed time records such that the court can determine whether the fees and expenses requested are reasonable. While the Motion and Reimbursement Agreement provide that Professionals will file certain information regarding the requested fees and expenses, here the Debtors request expressly that the Noteholder Group Professionals be excused from the requirement to file fee applications.

30. The Debtors and the Noteholder Group Professionals must comply with Bankruptcy Code section 503(b) at the conclusion of the cases when the Court can determine for itself whether a substantial contribution has been made and whether the compensation sought is reasonable.

**C.  The Motion Cannot Be Approved Pursuant to Sections 365 and 363.**

31. Sections 365 and 363 cannot override other specific provisions of the Bankruptcy Code. In analogous circumstances, courts have refused to allow section 365 to be used to assume pre-petition contracts to retain and pay a debtor's professionals. *See In re Snowcrest Dev. Grp., Inc.*, 200 B.R. 473, 479 n.5 (Bankr. D. Mass. 1996) (pre-petition executory contract of broker may only be assumed "to the extent there was compliance with § 327(a)."); *In re Office Prods. of America, Inc.,* 136 B.R. 675, 686 (Bankr. W.D. Tex. 1992) ("If the trustee were permitted to circumvent the requirements for § 327 by impliedly assuming a pre-petition executory contract to hire a professional, Section 327 would be eviscerated . . .. Indeed, even an express assumption of such a contract would override the more specific provisions of § 327, a result which this court eschews."); *see also Lehman,* 508 B.R. at 294 (denying attempt to circumvent section 503(b) by using section 1129(a)(4) to pay professionals). Just as it is improper to rely on section 365 to evade section 327's retention requirements, it would be equally improper to rely on section 365

11

to evade section 503(b)'s substantial contribution standards.  Moreover, it is not axiomatic that the professional fees and expenses would be paid at the agreed rate even if the Reimbursement Agreements could be assumed.  *See e.g., In re Crown Books Corp.*, 269 B.R. 12, 18 (Bankr. D. Del. 2001) ("Attorneys' fees are recoverable under section 365(b)(1) only if they are reasonable.").

32. Section 363(b) similarly cannot override other specific provisions of the Bankruptcy Code.  For example, debtors cannot retain and pay their chosen professionals under section 363 unless those professionals have been retained under section 327 and have filed fee applications that have been approved.  Section 363(b) allows a debtor-in-possession (subject to court approval) to use, sell or lease, other than in the ordinary course of business, property of the estate, but not at the point that such activity is governed by another section of the Bankruptcy Code.

33. As courts have recognized, section 363(b) is not a "blank check" for debtors to do whatever they want to do, as there are more specific statutory provisions (e.g., section 503(b)) that are designed to protect creditors and other parties' rights.  *See In re Lionel Corp.,* 722 F.2d 1063, 1069 (2d Cir. 1983) (holding that section 363(b) does not grant judges carte blanche to use section 363(b) to justify any action and to rule otherwise would have section 363 swallow up other provisions of chapter 11).

34. The Debtors cite to *City of Rockford v. Mallinckrodt PLC* (*In re Mallinckrodt PLC*), 2022 U.S. Dist. LEXIS 54785 (D. Del. Mar. 28, 2022) in support of the requested relief. First, district court decisions are <u>not</u> binding on future decisions by a bankruptcy court. *Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 (3d. Cir. 1991) ("First, it is clear that there is no such thing as 'the law of the district.'  Even where the facts of a prior district

court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior 'resolution of those claims does not bar reconsideration by this Court of similar contentions.'"); *In re U.S. Wireless Corp., Inc.*, 384 B.R. 713, 723 n.62 (Bankr. D. Del. 2008) ("In the Third Circuit there 'is no such thing as the law of the district' and, **thus, the decision of a district court is not binding on a bankruptcy court.** *In re Raphael*, 238 B.R. 69, 77 (D.N.J.1999) (quoting *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371, (3d Cir.1991))) (emphasis added). Moreover, the facts are markedly different, in that "piecemeal negotiation" was not a "feasible option" in *Mallinckrodt* because negotiations with the multiple ad hoc groups there garnered support for an "RSA reflecting support from attorneys general for 50 (out of 56) U.S. states and territories (representing more than 95% of the national population), more than 1,300 municipalities, tribes, and other public opioid claimants, and over 84% of the Debtors' fulcrum-funded debt securities", *City of Rockford v. Mallinckrodt PLC (In re Mallinckrodt PLC)*, 2022 U.S. Dist. LEXIS 54785, at *21 (D. Del. Mar. 28, 2022), versus the factual situation in these Chapter 11 Cases where negotiations are with a single group of creditors that have a significant interest in facilitating a plan of reorganization.

35. Although cited in the Bondholder Fee Motion, it is unclear whether the Debtors rely on section 105(a). As with sections 365 and 363, the general provision cannot override the specific provisions of the Bankruptcy Code. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3rd Cir. 2004) ("The general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself"); *see also Law v. Siegel,* 134 S. Ct. 1188, 1194 (2014) ("We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code.") (citations omitted).

13

36. In any event, Congress enacted the substantial contribution requirement in Bankruptcy Code section 503(b). Ad hoc committees are not excluded from this provision. In fact, there are no Bankruptcy Code sections that provide for the post-petition payment of unsecured creditors' attorney's fees. The Noteholder Group Professionals must comply with Bankruptcy Code section 503(b) at the conclusion of the cases when the Court can judicially determine for itself whether a substantial contribution has been made and whether the compensation sought is reasonable. Any other result undermines and countermands the Bankruptcy Code's comprehensive statutory scheme.

## CONCLUSION

37. The U.S. Trustee reserves any and all rights, duties and obligations found at law, equity or otherwise.

WHEREFORE, for the foregoing reasons, the U.S. Trustee respectfully requests that the Court deny the Bondholder Fee Motion and grant such other and further relief that is deemed just and equitable.

Dated: September 1, 2023  
       Wilmington, DE

Respectfully submitted,

**ANDREW R. VARA**  
**UNITED STATES TRUSTEE,**  
**REGIONS 3 & 9**

By: */s/ John Schanne*  
    John Schanne  
    Trial Attorney  
    Office of the United States Trustee  
    J. Caleb Boggs Federal Building  
    844 King Street, Suite 2207, Lockbox 35  
    Wilmington, DE 19801  
    (202) 934-4154(Phone)  
    (302) 573-6497 (Fax)  
    john.schanne@usdoj.gov