**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

**Objection Deadline: September 15, 2023 at 4:00 p.m. (ET)
Hearing Date: October 18, 2023 at 2:00 p.m. (ET)**

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
(A) AUTHORIZING THE EMPLOYMENT AND RETENTION OF
FENWICK & WEST LLP AS SPECIAL CORPORATE COUNSEL EFFECTIVE
AS OF THE PETITION DATE AND (B) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors") hereby file this application (the "Application") for the entry of an order substantially in the form annexed hereto as **Exhibit C** (the "Proposed Order"), pursuant to section 327(e) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the Debtors to retain and employ Fenwick & West LLP ("Fenwick" or the "Firm") as special corporate counsel to the Debtors effective as of the Petition Date. In support of the Application, the Debtors rely upon and incorporate by reference the Rule 2016 statement attached hereto as **Exhibit A** and the declaration of Mark Porter (the "Porter Declaration") attached hereto as **Exhibit B**. In further support of the Application, the Debtors respectfully state as follows:

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief sought herein are sections 327(e) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1.

**Background**

3. On August 9, 2023 and August 21, 2023 as applicable, (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

4. On August 27, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Creditors Committee") including the following: U.S. Bank Trust Co. NA, Cosan U.S. Inc., Sartorius Stedim North America Inc., Hearst Magazine Media Inc., Wiley Companies, Park Wynwood LLC, and Allog Participacoes Ltda.

5. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

6. Amyris was founded in 2003 to create a more stable supply of a key anti-malarial treatment. Through Amyris's cutting-edge science, artemisinin—the most effective anti-malarial drug in the world—is now consistently available to treat the deadly disease. Using the same technological innovations that produced artemisinin, Amyris has become the world's leading manufacturer of ingredients made with synthetic biology. Amyris provides sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products.

7. In addition, Amyris also has developed and launched a family of clean beauty brands that utilize the natural and sustainable ingredients that Amyris produces. The Company sells these clean beauty products through direct-to-consumer e-commerce platforms and a network of retail partners, including Sephora, Target, and Walmart.

8. A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "<u>First Day Declaration</u>") [Docket No. 18], incorporated herein by reference.[2]

**Relief Requested**

9. By this Application the Debtors seek to employ and retain Fenwick as special corporate counsel to the Debtors. The Debtors request that Fenwick be retained to perform the services described in this Application.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

**Basis For Relief**

10. Section 327(e) of the Bankruptcy Code authorizes a debtor, with court approval, to retain

> for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).  Clarifying the statute, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."

11. Section 327(e) of the Bankruptcy Code authorizes the retention of an attorney who represented a debtor prior to the bankruptcy petition date, provided: (a) such retention is for a special purpose; (b) the purpose of the retention is not to conduct the case; (c) the retention is in the best interests of the estate; and (d) the attorney does not hold any interest adverse to the debtor with respect to the subject of its retention.  Fenwick's retention as the Debtor's corporate counsel falls within the scope of section 327(e) of the Bankruptcy Code.

12. When analyzing the retention of special counsel under section 327(e), "the court should consider all relevant facts surrounding the debtor's case, including but not limited to, the nature of the debtor's business, all foreseeable employment of special counsel, the history and relationship between the debtor and the proposed special counsel, the expense of replacement counsel, potential conflicts of interest, and the role of general counsel." *Stapleton v. Woodworkers Warehouse, Inc. (In re Woodworkers Warehouse, Inc.)*, 323 B.R. 403, 406 (D. Del. 2005) (citing *In the Matter of First Am. Health Care of Georgia, Inc.*, 1996 WL 33404562, at *3 (Bankr. S.D.

Ga. Apr. 18, 1996)). In general, however, subject to the requirements of sections 327 and 1107 of the Bankruptcy Code, a debtor in possession is entitled to the counsel of their choosing. *See, e.g.*, *Vouzianas v. Ready & Pontisakos (In re Vouzianas)*, 259 F. 3d 103, 108 (2d Cir. 2001) (observing that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel") (citation omitted).

13. Here, the Debtors' retention of Fenwick is in the best interest of their estates, and satisfies all other standards of retention under section 327(e) of the Bankruptcy Code. Fenwick has substantial experience in representing clients with respect to a broad range of corporate matters, including capital markets, mergers & acquisitions, general corporate advisory work as well as litigation matters. Specifically, Fenwick has represented the Debtors since 2008 in connection with all matters of corporate work, including private round financings, the Debtors' initial public offering in 2010, numerous equity and debt financings, corporate governance matters, including SEC and Nasdaq compliance, M&A transactions of the Debtors, SEC investigations, FINRA inquiries, and other general corporate matters. Accordingly, the Debtors believe that it is in its best interests to employ and retain Fenwick as special corporate counsel.

**Qualifications and Scope of Services**

14. The Debtors have also filed an application seeking to employ Pachulski Stang Ziehl & Jones LLP ("PSZJ") as general bankruptcy counsel in connection with the commencement and prosecution of these chapter 11 cases. It is the intention of the Debtors that the services to be performed by Fenwick, and those services to be performed by PSZJ and any other parties retained by the Debtors, will not be duplicative, but rather will ensure the most economic and effective means for the Debtors to be represented in these cases while continuing to operate their businesses. However, Fenwick may be required, from time to time, to consult and/or advise PSZJ with regard to the matters on which Fenwick is representing the Debtors, which may include without

limitation, matters that impact the Debtors' efforts to consummate a chapter 11 plan of reorganization.

15. In sum, the professional services that Fenwick has rendered to the Debtors and may continue to render shall include, but shall not be limited to, (i) corporate governance advice, (ii) securities law advice, including review of filings with the SEC, (iii) potential M&A transactions, (iv) potential corporate financings, (v) general employment advice, and (vi) assistance regarding internal investigations.

16. Fenwick has stated its desire and willingness to continue to act as corporate counsel to the Debtors, and to render the necessary professional services required in connection therewith. Moreover, the retention and employment of Fenwick as corporate counsel would prevent the Debtors' estates from incurring the unnecessary cost of having another firm like PSZJ essentially repeating work previously done by Fenwick. Accordingly, the employment and retention of Fenwick as special corporate counsel is in the best interest of the Debtors and their estates and therefore should be approved.

## Compensation

17. Subject to Court approval in accordance with section 330(a) of the Bankruptcy Code, compensation will be payable to Fenwick on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by Fenwick. Fenwick's current range of standard hourly rates are reflected in the chart below:

| Category | Hourly Rate |
| --- | --- |
| Partners | $1135-$1900 |
| Counsel/Senior Counsel | $790-$1135 |
| Associates/Staff Attorneys | $540-$1075 |

| Category | Hourly Rate |
|---|---|
| Paralegals | $215-$580 |
| Practice Support Professionals | $195-$890 |

18. The Debtors will be responsible for all reasonable costs and expenses incurred by Fenwick in connection with its services as special corporate counsel, provided, however, that all costs and expenses must be approved by the Bankruptcy Court after proper application for payment of same.

19. The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions.

20. The hourly rates set forth above are Fenwick's standard hourly rates for work of this nature. These rates are set at a level designed to fairly compensate Fenwick for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. It is Fenwick's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document retrieval, photocopying charges (including color copies), charges for mailing supplies (including, without limitation, envelopes and labels) provided by Fenwick & West to outside copying services for use in mass mailings, travel expenses, expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses such as secretarial and other overtime. Fenwick will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to Fenwick's other clients. Fenwick believes that it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

21. The Debtors understand that Fenwick intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of this Court for all services performed and expenses incurred after the Petition Date.

22. The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and further orders of this Court, propose to pay Fenwick its customary hourly rates for services rendered that are in effect from time to time, as set forth above and in the Porter Declaration, and to reimburse Fenwick according to its customary reimbursement policies, and submits that such rates are reasonable.

**Disinterestedness and Disclosure of Connections**

23. To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Porter Declaration, Fenwick: (i) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee for the District of Delaware; (ii) does not hold any interest adverse to the Debtors' estates; and (iii) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code. Accordingly, the Debtors believe that Fenwick is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

24. Fenwick will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise in such review, Fenwick will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit, as required by Bankruptcy Rule 2014(a).

**Notice**

25. The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lenders, DIP Agent, and the Foris Prepetition Secured Lenders, Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com), and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com); (d) co-counsel to the DIP Lenders, the DIP Agent, and the Foris Prepetition Secured Lenders, Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com); (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which the Debtors conduct business; and (g) any party that requests service pursuant to Bankruptcy Rule 2002.

**No Prior Request**

26. No prior Application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, granting the relief requested herein and granting such other and further relief as is just and proper.

Dated: September 1, 2023       AMYRIS, INC.

　　　　　　　　　　　　　　　　　　　*/s/ Han Kieftenbeld*
　　　　　　　　　　　　　　　　　　　Han Kieftenbeld
　　　　　　　　　　　　　　　　　　　Interim Chief Executive Officer and Chief Financial Officer