**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**REPLY IN SUPPORT OF DEBTORS' MOTION TO ASSUME
AND/OR ENTER INTO REIMBURSEMENT AGREEMENTS
WITH PROFESSIONALS FOR THE AD HOC NOTEHOLDER GROUP**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby submit this reply (this "Reply") in support of the *Debtors' Motion to Assume and/or Enter*

*Into Reimbursement Agreements with Professionals for the Ad Hoc Noteholder Group* [Docket

No. 148] (this "Motion")[2] and in response to the sole objection to the Motion [Docket No. 178]

(the "Objection") filed by the United States Trustee for Region 3 (the "U.S. Trustee").  In support

of this Reply, the Debtors respectfully state as follows:

**REPLY**

1.        No party-in-interest challenges the Debtors' business judgment in seeking to

assume and enter into the Noteholder Group Reimbursement Agreements.  The sole objection to

the Motion is a narrow legal question—whether approval of the relief sought in the Motion is

proper under sections 363(b) and 365(a).  The U.S. Trustee argues that the "sole and specific

statutory authority"[3] for the Debtors to pay the professional fees and expenses of the Ad Hoc

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors'
claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal
place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100,
Emeryville, CA 94608.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3]   *Objection* at ¶ 2.

Noteholder Group is found in section 503(b) of the Bankruptcy Code.  The U.S. Trustee, respectfully, is incorrect.

2.      As courts in this district and others have repeatedly concluded when presented with the exact legal question at issue here,[4] sections 363(b) and 365(a) of the Bankruptcy Code are easily harmonized with—and not overridden by—section 503(b) of the Bankruptcy Code in the context of an estate's payment of creditor professional fees.  Indeed, none of the cases cited by the U.S. Trustee in his Objection even consider or address the interplay (or lack thereof) of sections 363(b) or 365(a), on one hand, and section 503(b), on the other.  Those courts that have directly considered the issue—including Bankruptcy Judge Dorsey and District Court Judge Stark in *Mallinckrodt*[5] just over one year ago—have found that "§§ 363(b) and 365(a) provide the right procedural mechanisms through which Debtors may seek to pay [a creditor's] professional fees and expenses ***on a prospective basis***."[6]

3.      In their unchallenged business judgment, the Debtors determined that assumption and entry into the Noteholder Group Reimbursement Agreements is necessary and appropriate inasmuch as the Ad Hoc Noteholder Group represents the interests of the Debtors' single-largest creditor constituency and the Debtors determined that continued engagement of the Ad Hoc Noteholder Group in the formulation and advancement of a comprehensive plan of reorganization

---

4      *See, e.g., City of Rockford v. Mallinckrodt plc* (*In re Mallinckrodt plc*), Civ. No. 21-167-LPS, 2022 U.S. Dist. LEXIS 54785 (D. Del. Mar. 28, 2022) ("*Mallinckrodt*"); *In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. Nov. 19, 2020), Nov. 19, 2020 Hr'g Tr. ("*Purdue*"); *United States Trustee v. Bethlehem Steel Corp.* (*In re Bethlehem Steel Corp.*), Case No. 02-Civ.-2854 (MBM), 2003 U.S. Dist. LEXIS 12909 (S.D.N.Y. July 23, 2003) ("*Bethlehem Steel*").  A true and correct copy of the *Purdue* transcript is attached hereto as **Exhibit C**.

5      The U.S. Trustee attempts to downplay the import of *Mallinckrodt* to the Motion by pointing to factual differences between that case and the Debtors' chapter 11 proceedings.  However, Judge Stark's analysis of the interplay between sections 363 and 365, on one hand, and 503, on the other, is a purely legal analysis that does not rely on the facts of the case.

6      *Mallinckrodt* 2022 U.S. Dist. LEXIS 54785, at *17-18 (cleaned up) (emphasis added).

ACTIVE/124637625

is in the best interests of the Debtors and their estates.  Accordingly, the Debtors respectfully request that the Court grant the Motion.

## I.    Approval of the Relief Requested Under Sections 363(b) and 365(a) Is Appropriate

### A.  Sections 363(b) and 365(a) Apply to the Relief Requested and are Satisfied

4.    Pursuant to section 363(b) of the Bankruptcy Code, a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[7]  Further, pursuant to section 365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."[8]  Here, the Debtors filed a motion (*i.e.* the Motion) under section 363(b) of the Bankruptcy Code for the Court's approval, after notice and a hearing, to use property of the Debtors' estates (*i.e.* cash) through entry into Noteholder Group Reimbursement Agreements to prospectively pay the fees and expenses of the Ad Hoc Noteholder Group.[9]  Similarly, the Debtors have moved under section 365(a) of the Bankruptcy Code for this Court to approve the Debtors' assumption of a pre-petition executory contract (*i.e.* the Prepetition PH Reimbursement Agreement, as amended).[10]  As set forth in the Motion, courts in this and other jurisdictions have repeatedly "held that §§ 363(b) and 365(a) provide the right procedural mechanisms through which Debtors may seek to pay [a creditor's] professional fees and expenses on a prospective basis."[11]

5.    The standard applicable to both sections of the Bankruptcy Code "is the business judgment test, under which a bankruptcy court will authorize debtor-initiated actions if the debtor

---

[7]    11 U.S.C. § 363(b).

[8]    11 U.S.C. § 365(a).

[9]    *Cf. Mallinckrodt*, 2022 U.S. Dist. LEXIS 54785, at *17.

[10]    *Id.*

[11]    *Mallinckrodt*, 2022 U.S. Dist. LEXIS 54785, at *18; *see also* Motion at footnote 16.

3

ACTIVE/124637625

shows that 'a sound business purpose justifies' such actions."[12]  The Debtors' business judgment

to assume and/or enter into the Noteholder Group Reimbursement Agreements, as set forth in the

Motion and the Gund Declaration, is uncontested.  Accordingly, pursuant to sections 363(b) and

365(a) of the Bankruptcy Code, the Court should approve the Motion.

### B.  Section 503(b) Does Not Apply Here or Override Sections 363(b) and 365(a)

6.        The U.S. Trustee's principal argument is that section 503(b) of the Bankruptcy

Code is the "specific and sole authority for an estate to pay the legal fees and expenses of an

unsecured creditor."[13]  This argument rests on the "principle of statutory construction that the

specific governs the general."[14]  This canon of statutory construction applies either to "eliminate

[a] contradiction" between two statutes or to avoid "the superfluidity of a specific provision that

is swallowed by the general one."[15]  According to the U.S. Trustee, because section 503(b)(4) of

the Bankruptcy Code addresses the payment of fees and expenses for professional services

provided to a creditor, sections 363(b) and 365(a) cannot do the same.  The U.S. Trustee, however,

ignores an equally important canon of statutory construction: "the provisions of a statute should

be interpreted in a way that renders them compatible, not contradictory."[16]

---

[12]    *Mallinckrodt*, 2022 U.S. Dist. LEXIS 54785, at \*19 (quoting *In re Culp*, 545 B.R. 827, 844 (D. Del. 2016) (*aff'd* 681 Fed. Appx. 140 (3d Cir. 2017)); *see also Purdue* at 157:24 – 158:4 ("ultimately, whether I'm applying 365 or 363(b) here, I believe it's ultimately the same standard for me to apply which is whether the entry into the agreement and the performance of it including the ongoing payment of the professional fees is a proper exercise of business judgment and in the best interest of the debtors and their estates and creditors").

[13]    *Objection* at ¶ 2; *cf. Bethlehem Steel*, 2003 U.S. Dist. LEXIS 12909, at \*23 ("According to the U.S. Trustee, the 'sole statutory avenue for an individual creditor to have its professional fees reimbursed is as an administrative expense.'").

[14]    *Objection* at ¶ 26; *cf. Mallinckrodt*, 2022 U.S. Dist. LEXIS 54785, at \*28 ("As Debtors correctly point out, the UST's argument rests on a single canon of construction: the notion that a specific statute controls over a more general statute.")

[15]    *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).

[16]    *In re Conrad*, 604 B.R. 163, 172 (Bankr. M.D. Pa. 2019); *see also Gov't Emps. Ret. Sys. of the Virgin Islands v. Gov't of the Virgin Islands*, 995 F.3d 66, 97 (3d Cir.2021) (*quoting United States v. Bass*, 404 U.S. 336, 344 (1971)) ("courts should interpret a statute with . . . an ear for harmonizing potentially discordant provisions.").

ACTIVE/124637625

7.      Faced with the exact same objection by the United States Trustee based on the "general/specific" canon of statutory construction, Judge Stark in *Mallinckrodt*, Judge Drain in *Purdue*, and Judge Mukasey in *Bethlehem Steel* disagreed with the U.S. Trustee's argument:

> All three statutory provisions can be given effect without raising any contradiction or superfluidity concerns.  Sections 363(b) and 365(a), on the one hand, and § 503(b), on the other hand, are directed at different parties, operate at different times, and serve different purposes.  Sections 363(b) and 365(a) permit **debtors** (or trustees) to take actions for the benefit of the estate **going forward** based on their own **business judgment**.  Section 503(b), by contrast, permits **creditors** (often over debtor objections) to seek allowance of an administrative expense for **past contributions** to an estate under a **substantial contribution** standard.[17]

8.      None of the cases cited in the Objection are to the contrary; in fact, not a single case cited by the U.S. Trustee addresses the interplay between of sections 363(b) or 365(a), on one hand, and section 503(b), on the other.[18]  Nor does the U.S. Trustee provide any support for his contention that "Congress targeted a specific problem"[19] through enactment of sections

---

[17]  *Mallinckrodt*, 2022 U.S. Dist. LEXIS 54785, at *29 (citations omitted) (emphasis in original); *see also Bethlehem Steel*, 2003 U.S. Dist. LEXIS 12909, at *35 – 40; *Purdue*, 155: 2 – 156:5.

[18]  The allegedly "analogous circumstances" cited to by the U.S. Trustee concern courts' understandable (and uncontroversial) refusal to allow trustees or debtors to use section 365 of the Bankruptcy Code to retain and compensate their own professionals without compliance with sections 327 or 330 of the Bankruptcy Code.  *See* Objection at ¶ 31.  There is no parallel between these cases and the relief sought in the Motion.  Sections 327, 330, and 365 all concern actions taken by a trustee or debtor-in-possession, whereas section 503 of the Bankruptcy Code concern actions taken by creditors.  Indeed, section 503(b)(2) provides the mechanism for an unpaid estate professional whose fees and expenses have been awarded under section 330(a) of the Bankruptcy Code to seek the allowance of an administrative expense against the estate.  *See generally Mallinckrodt*, 2022 U.S. Dist. LEXIS 54785, at *38 – 39, fn. 3 (specifically distinguishing the two cases cited by the U.S. Trustee).

The U.S. Trustee also points to *Davis v. Elliot Management Corp.* (*In re Lehman Bros. Holdings Inc.*), 508 B.R. 283, 294 (S.D.N.Y. 2014) for support.  "There, the court refused to allow individual members of an official creditors committee to rely on §§ 1123(b)(6) and 1129(a), instead of § 503(b), to recover expenses on a retrospective basis, as part of a plan of reorganization."  *Mallinckrodt*, 2022 U.S. Dist. LEXIS 54785, at *39.  *Lehman*, therefore, "focused on retrospective payments expressly prohibited by § 503(b)," *id.*, rather than the prospective and ongoing payments sought in the Motion.  *See also Purdue* at 154:9 – 23.

[19]  *Objection* at ¶ 26.  To the contrary—"[t]he legislative history of § 503(b)(3)(D) indicates that it was intended to alter the preexisting law in only one respect: It does not require a contribution that leads to confirmation of a plan because Congress believed that in many cases it will be a substantial contribution if the person involved uncovers facts that would lead to a denial of confirmation, such as fraud in connection with the case." *Lebron v. Mechem Fin.*, 27 F.3d 937, 945 (3d Cir. 1994) (cleaned up).

5

503(b)(3)(D) and (b)(4) of the Bankruptcy Code such that the legislative history precludes the relief sought in the Motion.

9.       Allowing payments to be made under sections 363 and 365 of the Bankruptcy Code does not render section 503 superfluous.  In fact, the provisions serve entirely different purposes. "Section 503 allows entities that incurred certain expenses to request payment from the estate . . . Section 363, on the other hand, governs the use of funds by the debtor in possession while it operates its business after the bankruptcy petition is filed."[20]  Indeed, a debtor's use of section 363(b) to pay the prospective or ongoing professional fees incurred by creditors is near ubiquitous in chapter 11 cases—"courts have approved the fees and expenses of secured creditors in the case fairly routinely in cash collateral orders even where there's no showing . . . that the collateral serving for the secured creditor is sufficient to cover not only the debt but also the fees and therefore the secured creditor would be entitled to the fees.  And there's no showing of the need to pay them as part of adequate protection.  Nevertheless, they're paid because of the role that the secured creditor is playing in the case."[21]

10.       Accordingly, as a matter of law, section 503(b) is not the exclusive avenue for a bankruptcy estate to pay the fees and expenses of a creditor.  As is relevant to the Motion, sections 363(b) and 365(a) of the Bankruptcy Code are is the proper mechanisms for a debtor to seek prospective or ongoing relief.  Accordingly, the Debtors respectfully submit that the Objection should be overruled.

## II.       The U.S. Trustee's Remaining Arguments Are Unavailing

---

[20]   *Bethlehem Steel*, 2003 U.S. Dist. LEXIS 12909, at *35-36; *see also Mallinckrodt*, 2022 U.S. Dist. LEXIS 54785, at *31 ("Creditors cannot seek payment under §§ 363(b) or 365(a), and therefore § 503(b) continues to serve a clear purpose.").

[21]   *Purdue*, at 157:3-12.

ACTIVE/124637625

11.     None of the U.S. Trustee's remaining arguments in the Objection are availing. Much of the Objection concerns the application of the "substantial contribution" standard.[22] However, "§ 503(b)'s substantial contribution standard has no role in assessing compliance with §§ 363(b) or 365(a)," which Bankruptcy Code sections apply here.[23]  But, even if section 503(b) *did* supply the governing legal standard, the Court could still authorize the relief sought in the Motion.  In *RCS Capital*, Judge Walrath prospectively authorized the debtors' request to reimburse creditors' professional fees under section 503(b), stating:

> I disagree with the United States Trustee that I need to wait and see if the plan is confirmed before I can approve such fees. Getting the Debtor stabilized and on track to an exit; whether it is ultimately approved in that form is not necessary. I do rely on the *O'Brien* case for that. The *O'Brien* case did not rule that I have to wait and see the success of the sale; whether the stalking horse or another wins the sale before I can approve any breakup fee. I can approve a breakup fee, in advance, if I determine that that is necessary to allow the sale to proceed and, in this case, to allow a plan to proceed or to allow the Debtor, in its fiduciary capacity, to consider any other alternative, and the RSA does allow the Debtor to do that.[24]

12.     Nor is the Supreme Court of the United States' decision in *ASARCO* relevant here.[25] Indeed, the quotation from *ASARCO* in the Objection belies its relevance to the Motion—"Each litigant pays his own attorney's fees, win or lose, unless a statute ***or contract*** provides otherwise."[26] To the extent *ASARCO* would have any application here more generally (which it does not), the Noteholder Group Reimbursement Agreements are contracts that "provide otherwise."

13.     Finally, while the Debtors do not rely on section 105(a) of the Bankruptcy Code for the relief sought in the Motion, section 105 properly implements other sections of the Bankruptcy

---

[22]   *Objection*, at ¶¶ 14 – 15; 19 -22; 29 - 30

[23]   *Mallinckrodt*, *Mallinckrodt*, 2022 U.S. Dist. LEXIS 54785, at *40.

[24]   *In re RCS Capital Corp.*, Case No. 16-10223 (MFW) (Bankr. D. Del. Mar. 16, 2016), Mar. 16, 2016 Hr'g Tr. 40:24 – 41:9.

[25]   *Objection* at ¶ 18.

[26]   *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (emphasis added).

ACTIVE/124637625

Code.[27]   "[B]ecause § 363(b) [and 365(a)] provide[ ] a basis for allowing the reimbursement agreement, the use of § 105 in connection with § 363(b) [and 365(a)] to issue the Order" is proper.[28]

14.    Far from a "blank check,"[29] the relief sought through the Motion is defined in scope, is intended to enable the Debtors to build upon their existing efforts in an efficient and value-maximizing manner, and is anticipated to result in measurable and specific benefit to the estates. Because the approvals sought in the Motion are in the best interests of the estates and the work anticipated is not solely for the benefit of individual creditors or creditor groups, the Debtors respectfully request that the Motion be granted and the Order, as modified, entered.[30]

*[Remainder of page intentionally left blank]*

---

[27]   *See, e.g., In re Owens Corning Corp.*, 419 F.3d 195, 208 n. 14 (3d Cir. 2005) (citing cases).

[28]   *Bethlehem Steel*, 2003 U.S. Dist. LEXIS 12909, at * 44.

[29]   *Objection* at ¶ 33.

[30]   Attached hereto as **Exhibit A** and **Exhibit B** is an amended proposed Order, reflecting changes agreed to with the Official Committee of Unsecured Creditors and a blackline reflecting changes to the original form of proposed Order, respectively.

ACTIVE/124637625

Dated:  September 5, 2023                    **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*

Richard M. Pachulski (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell (admitted *pro hac vice*)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  rpachulski@pszjlaw.com
        dgrassgreen@pszjlaw.com
        joneill@pszjlaw.com
        jrosell@pszjlaw.com
        sgolden@pszjlaw.com

*Proposed Counsel to the*
*Debtors and Debtors in Possession*

9

ACTIVE/124637625