**Exhibit C**

*In re Purdue Pharma L.P.*, **Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.)**
**Nov. 19, 2020 Hr'g Tr. Excerpt**

Page 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4  In the Matter of:

5

6  PURDUE PHARMA L.P., ET AL.        Case No. 19-23649-rdd

7

8           Debtors.

9  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11

12              U.S. Bankruptcy Court

13              300 Quarropas Street

14              White Plains, New York 10601

15

16              November 19, 2019

17              10:31 AM

18

19

20

21

22  B E F O R E :

23  HON ROBERT D. DRAIN

24  U.S. BANKRUPTCY JUDGE

25  ECRO:  NAROTAM RAI

1         THE COURT:  Okay.  Thank you.
2     (Laughter)
3         MR. HUEBNER:  That's the only time in my life my
4    argument has been shorter than my opponents.
5     (Laughter.
6         THE COURT:  All right.  All right.
7         I have before me a motion by the Debtors for
8    either approval of their entry into or the approval of the
9    assumption of any fee reimbursement letter, a copy of which
10   is attached to the motion whereby they would agree to have
11   the estate pay the reasonable fees and expenses of certain
12   designated professionals for the loop of plaintiffs who pre-
13   bankruptcy had agreed to a settlement framework with the
14   Debtors.  That has now been embodied in a term sheet.
15        The agreement has been modified as reflected in
16   the proposed order submitted to chambers late last week and
17   discussed on the record today and provided to the parties.
18   But the basic concept is the same which is that the work
19   that the four designated law firms and currently one
20   designated financial advisor would be doing during the
21   course of this case, not subject to strong rights of the
22   Debtors to terminate the agreement, however, would be paid.
23        Because the Debtors are in bankruptcy such a
24   proposal needs to be put forth and subject to notice of a
25   hearing and the agreement has received a number of

1  objections as well as support from the other large group of
2  states who have not yet agreed to a settlement framework in
3  this case but are, in certain respects, working with the ad
4  hoc committee that has reached a settlement framework.
5      The first issue for me to consider is whether the
6  rubric under which the Debtors are seeking approval of the
7  reimbursement agreement is permissible.
8      The United States Trustee has taken the position
9  that because fees are at issue and obviously these are not
10 the fees and expenses of professionals to be compensated
11 under Section 330 and 331 of the Code, and that they're not
12 retained under Section 327 or 1104 of the Code, that the
13 only source for the authority to pay such fees and expenses
14 appears in Section 503(b) of the Bankruptcy Code and
15 specifically 503(b)(3) or (4) of the Code.
16     The Debtors, on the other hand, contend that I
17 have the separate power to approve their motion as the
18 assumption of a contract under Section 365 of the Code or
19 for a proposed use of the estate's assets, in this case
20 cash, under Section 363(b) of the Bankruptcy Code.
21     Other courts have addressed this issue before.
22 The U.S. Trustee relies heavily, perhaps, you know, almost
23 exclusively on In Re. Lehman Brothers Holdings, Inc, David
24 V. Elliott Management Corp. 508 Br. 283 SDNY 2014, in which
25 the district court reversed the Bankruptcy Court on a

1    reserved issue that was reserved at the time of the

2    confirmation of the Lehman Brothers Chapter 11 plan.

3            That issue was whether the plan itself could

4    provide for the payment of previously incurred fees and

5    expenses of committee -- creditors' committee members,

6    including their counsel, under a standard separate and apart

7    from Section 503(3) of the Bankruptcy Code.  For example,

8    under Section 1129(a)(4) of the Bankruptcy Code.

9            In that case, Judge Sullivan concluded that 503(b)

10   was the only source for paying such a claim and that

11   Congress had specifically deleted the types of fees for

12   committee members from the statute and therefore found that

13   that provision of the plan could not stand.

14           On the other hand, the issue was directly raised

15   on a case that I believe is much more on point in In Re.

16   Bethlehem Steel Corp., 2003 WL 217, 38964, SDNY July 23,

17   2003, in which District Judge Mukasey overruled an objection

18   by the U.S. Trustee made on essentially the same basis as

19   the objection before me and affirmed Bankruptcy Judge

20   Lifland's approval of the Debtors' payment of the ongoing

21   fees and expenses of the United Steelworkers of America

22   Captain, and subject to review, as set forth in that

23   agreement.

24           This was an unsecured -- this was a creditor that

25   held an unsecured claim.  It clearly was not being retained

```
 1   under Section 327 or 1104 and was not seeking payment under
 2   503(b).  Nevertheless, in a thoughtful opinion, Judge
 3   Mukasey affirmed Judge Lifland, in concluding that under
 4   Section 363(b) the payment was warranted and not precluded
 5   by Section 503 of the Bankruptcy Code.
 6           The Court noted that these were for ongoing work.
 7   These fees would be paid for ongoing work as opposed to for
 8   past work and that the motion was made by the debtor as
 9   opposed to by a creditor.
10           The Court further said that subsections
11   503(b)(3)(d) and (b)(4) are not rendered meaningless simply
12   because a certain unique -- in certain unique circumstances
13   the bankruptcy court approves a debtor's motion to enter
14   into an agreement to reimburse a creditor for professional
15   fees.
16           In most cases, a debtor will make no such motion
17   as it will not be in its business interest to do so or the
18   Court will refuse approval under Section 363(b).  That's in
19   most cases if the creditor wants to be reimbursed, it must
20   file an application under subsections 503(b)(3)(d) and
21   (b)(4).
22           Those provisions continue to serve a purpose, a
23   separate purpose.
24           I agree with that analysis and will note that just
25   as Judge Mukasey and Judge Lifland noted in Bethlehem Steel,
```

1    there are a number of cases under the Bankruptcy Code are
2    fact patterns under the Bankruptcy Code where Courts have
3    approved payments of ongoing fees and expenses not under
4    Section 503(b) but under Section 363(b) or sometimes under
5    Section 365.
6         The most common is in connection with the debtor's
7    request for approval or a restructuring support agreement
8    that has garnered the support of some but not all of the
9    debtor's creditors.  Often those agreements are with secured
10   creditors but it's not clear whether they are over secured
11   and therefore would have a right to attorney's fee.  But
12   they are also in the past have been with unsecured
13   creditors.
14        As Judge Mukasey noted, Courts have also approved
15   paying reasonable fees and expenses of -- including legal
16   fees of proposed bidders for the debtor's assets under
17   Section 363 notwithstanding the potential applicability of
18   503.  In fact, the Third Circuit made a distinction in the
19   Applied Energy case discussed in Bethlehem Steel where there
20   was no advance approval of such a request.  The debtor
21   didn't seek approval until thereafter and the disappointed
22   bidder made its request, it had to make it under Section 503
23   and it was reviewed under 503.
24        But obviously the facts of the case are
25   distinguishable from countless cases where courts have

1   approved at the debtor's request the payment of fees and
2   expenses as part of (indiscernible) procedures.
3            Also courts have approved the fees and expenses of
4   secured creditors in the case fairly routinely in cash
5   collateral orders even where there's no showing that the
6   debtors -- that the collateral serving for the secured
7   creditor is sufficient to cover not only the debt but also
8   the fees and therefore the secured creditor would be
9   entitled to the fees.  And there's no showing of the need to
10  pay them as part of adequate protection.
11           Nevertheless, they're paid because of the role
12  that the secured creditor is playing in the case.
13           So I conclude that the proper standard to review
14  this motion under is, in fact, the standard applicable which
15  I believe is applicable to both sections, 363(b) and Section
16  365 of the Bankruptcy Code.
17           I will note that there is case law that --
18  including in this District declines to approve the
19  assumption of an agreement under Section 365 that provides
20  for the payment of the debtor's attorney fees.  See In Re.
21  Financial News Network, Inc., 134 Br. 732 Br. SDNY 1991,
22  which was a clear runaround the requirements of Section 330
23  and 331 of the Bankruptcy Code.
24           But, ultimately whether I'm applying 365 or 363(b)
25  here, I believe it's the same standard for me to apply which

1     is whether the entry into the agreement and the performance

2     of it including the ongoing payment of the professional fees

3     is a proper exercise of business judgement and in the best

4     interest of the debtors and their estates and creditors.

5            The case law as to the determination of what is a

6     proper exercise of business judgment is I believe fairly

7     clear in the Second Circuit and it is clear that

8     notwithstanding the Integrated Resources case often cited by

9     debtors in Section 363(b) motions, the Second Circuit has

10    made it clear since that case that ultimately the bankruptcy

11    judge has to make the decision as to whether the debtor has

12    exercised proper business judgment in taking the action out

13    of the ordinary course and/or assuming a pre-petition

14    contract under Section 365.  See In Re. Orion Pictures

15    Corp., 4 F.3d, 1095, 1099, Second Circuit 1993.

16           Most of the time most actions out of the ordinary

17    course are unopposed.  If that's the case, the court

18    ordinarily will defer to the debtor's judgment in entering

19    into the agreement.  Although, even then, the court has an

20    obligation to make sure that that judgment makes sense.  See

21    In Re. Genco Shipping & Trading Ltd, 509 Br. 455, 463, Br.

22    SDNY 2014.

23           But I believe clearly given the fact that Congress

24    requires both under 363(b) and 365 of the Bankruptcy Code,

25    notice of the opportunity for a hearing that where there are

1  objections in particular, the Court needs to carefully weigh
2  all the opposing views as well as the views stated in
3  support of the motion to determine, in its judgment, whether
4  the decision is a good one or note.
5           The fact is that often in bankruptcy cases as much
6  as the code and courts urge parties in interest to work
7  together to a common goal, there are different points of
8  view that are almost structurally required and ultimately
9  that is why I believe Congress made the Court the final
10 arbiter as to what makes good business sense for something
11 like this.
12          Given my review of the motion and the supporting
13 papers, as well as the objections to the motion, as well as
14 oral argument today, it's first clear to me that the facts
15 are largely undisputed.
16          The Debtors' cases are highly unusual.  It may be
17 there are more like them in the future.  But the Debtors are
18 largely in a sua generous position whereby they have already
19 agreed to turn over all of their value to their creditors.
20          The question is whether that agreement should be
21 augmented by a specific set of terms basically agreed with
22 the ad hoc consenting group or whether additional terms can
23 be agreed to that pertain to third parties of the Debtors'
24 shareholders and further and as equally important how the
25 resulting estate should be distributed to the creditors.

1         The unusual perhaps unique issue in these cases is
2    that there is a distinct possibility that the allocation
3    issues could either be dealt with in an efficient and fair
4    way that's respectful of the various parties-in-interest in
5    this case or the parties can spend an inordinate amount of
6    time disputing them to all their detriment.
7         One would think if you sit in bankruptcy court
8    every day, as I do, that that issue also is common to
9    bankruptcy cases. And, as I just articulated, it is. What
10   is different here, however, is that this is a fundamentally
11   public health crisis driven case where the claimants, in one
12   sense, can be almost every citizen in the country. That is
13   why every state, except the two states that have already
14   settled with these Debtors, has taken a highly active role
15   not only in this case but in the litigation that preceded
16   this case in federal and state court.
17        Thus deciding how the public at large is to
18   benefit from the agreement that the Debtors have already
19   made and a potential agreement from their shareholders is
20   truly unusual.
21        It appears clear to me that we would not be in
22   this place but for the work done by the states in general
23   and that has been acknowledged by those who have objected to
24   this motion as well as the Debtors.
25        It's also clear to me that the states have a

1  unique role in these cases because of their unique position.

2  First of all, they are the sovereign state governments of

3  the 48 states involved.

4          Secondly, because of that, they have unique

5  rights under the Bankruptcy Code.  Those rights can be

6  tested in a wasteful way or they can be reserved for a

7  future day if the states are satisfied that the process is

8  proceeding in a way that is credible and acceptable to them.

9          At this point in the case, the latter, to my

10 relief, appears to be the approach that the states have

11 taken.  Not only the ad hoc group of so-called settling

12 states but also the ad hoc group of non-settling states.

13         But those types of issues I believe need to be

14 dealt with sensitively throughout these cases.  I think it's

15 correct that the Debtors recognize the unique role that the

16 states have played and will continue to play in these cases.

17 And, frankly, I believe that such recognition is in the best

18 interests of all of the Debtors' creditors.

19         It is clear to me from today's record that the

20 states need to perform their own analysis, their own due

21 diligence, and be heavily involved in the rest of these

22 cases as they have been so far.

23         While it appears to me that we are quite fortunate

24 in this case to have an active and well represented official

25 committee of unsecured creditors, the states' interests are,

19-23649-rdd Case 23-15531-FMW Doc 182-1 Filed 12/27/23 Entered 12/27/23 10:48:13 Page 13 of 16 Main Document
Pg 162 of 178

Page 162

```
 1   as I said before, unique and require unique steps to insure
 2   that they are dealt with in a sensitive and an appropriate
 3   way.
 4             I believe it is reasonable for them to want to
 5   perform their own due diligence, do their own analysis, and
 6   it is in the interests of the Debtors' estates and creditors
 7   that they do so in an efficient and organized way which
 8   means focusing their work through point counsel and point
 9   decision makers who then develop transparent ways to
10   communicate to their colleagues.
11             The question is is it necessary, or at least a
12   good business decision, to pay for that work at this time as
13   the motion proposes.
14             That is not an easy question to answer as
15   evidenced by the well argued objections under Section 363
16   while applying Section 363(b)'s standard and it's my job to
17   sift through whether this expenditure of that money just in
18   terms of sheer dollar amount as well as any affect that that
19   expenditure would have on these cases is a proper exercise
20   of business judgment.
21             Any dollar that the Debtor can spend to solve the
22   health crisis that is the reason for its case one would
23   believe is a dollar well spent.  So taking any dollar away
24   from that is a difficult decision to make.
25             However, it is also the case that because of the
```

19-23649-rdd Doc 1531 Filed 11/27/19 Entered 11/27/19 10:48:17 Main Document
Case 20-15133-FMD Doc 182-3 Filed 09/05/23 Page 14 of 18
Pg 163 of 178

Page 163

1  context of this case and the difficult issues it raises,

2  dollars will need to be spent to resolve those issues in an

3  efficient and fair way.  The Debtor just can't put a chest

4  of money out on the street and say come and get it.

5           Instead, the parties-in-interest need to approach

6  the problems that this case presents in a very thoughtful

7  and creative way.  That takes times and it takes money.

8           The creditors committee and its allies in

9  connection with the objection to this motion takes the view

10 that this -- the expenditure of any money here is premature

11 because we are not yet at the stage where -- let alone there

12 is a plan but there's not even a restructuring support

13 agreement.

14          It also notes that the cost of this motion could

15 be high although I take issue necessarily with the view that

16 it would be 15 to 20 million dollars because that is a cost

17 spread over several months and the Debtor has the right, at

18 any time, to opt out of this agreement and the agreement, in

19 any event, unless extended, ends, if there is no RSA, by, in

20 essence, a month of so from now.

21          So I view the issue about whether this relief is

22 premature a little differently.  It seems to me that with

23 the limitations imposed by the changes to the proposed

24 order, the work that would be compensated here would be

25 appropriately compensated and be to the benefit of all the

1  parties in this case.  As far as the analyses of the Debtors
2  and their business, which includes difficult analyses about
3  not only their -- the value of those businesses but also how
4  to monetizes them including non-debtor entities and also due
5  diligence and work in connection with analyses of causes of
6  action that the Debtors have that may well be equal to or
7  greater than the value of their hard assets and their
8  businesses.
9           I believe that's what is now appropriately
10 compensated under this revised agreement.
11          The committee has argued that that work will be
12 done anyway if I don't approve this agreement and it is
13 possible that some portion of it will be.  However, as I
14 said during oral argument, this motion is as much, if not
15 more, about bringing structure to this case as it is about
16 the actual hard dollars spent on paying for the work to be
17 done.
18          I believe without such a structure, i.e., where
19 there are clear lines of communication and clearly defined
20 roles for the professionals for the ad hoc group, there
21 would be a substantial risk that the trust, based on
22 assessments of the Debtors' credibility, that has been
23 generated over the last three months or so, would be frayed
24 and potentially lead to what I believe would be a major step
25 back in this case which is or which would be various states

1     and the PEC group feeling that they were on their own and
2     taking therefore diverse and unorganized positions.
3              Besides the due diligence, the next major step in
4     this case, which I've already, and I know I sound like a
5     broken record, but I've said it two or three times now,
6     needs to be focused is creative thinking about the
7     allocation of the Debtors' assets.
8              I continue to believe that the states play a major
9     role in that process.  The role I'm envisioning for them is
10    not one where they say we get everything.  I think that
11    should be clear and I think it is clear to them.
12             But, rather, where they act as -- in the best
13    principles of federalism, for their state, the coordinator
14    for the victims in their state.
15             Thus, I would expect the people from Mr. Neiger's
16    group, for example, to be working with the states closely to
17    maximize benefits because it appears to me from his
18    description of his group that they're not so much focusing
19    on individual claims as a way to deal with a whole host of
20    individuals.
21             And there may be very good ways to do that in a
22    particular state and less good ways in another state and I
23    hope that the states will act as a way to coordinate that
24    type review.
25             There is a legitimate concern that those hopes

```
 1   will not be fulfilled.  I don't think that will be the case.
 2   I think the states appreciate that this money needs to go
 3   where it is most in need of going and that  we don't repeat
 4   the experience of some states from the tobacco settlements,
 5   for example.
 6             But because of that concern, even though I believe
 7   it is not the likely outcome in this case, I think that
 8   there should be two additional conditions on certain of the
 9   work reimbursement.
10             First, I believe work done on this critical issue
11   of allocation should, like the pre-petition work covered by
12   the agreement now, be payable upon the earlier of the
13   Court's approval of an RSA or confirmation of a plan.
14             For those of you who are not bankruptcy lawyers
15   that doesn't mean that I'm disapproving it.  Rather, I would
16   look at the time that an RSA is proposed and see whether it,
17   in fact, makes good business sense and that may not mean
18   that it has to be universally accepted but that it is a
19   focal point for moving the case to the next step.
20             I want to be clear that what I'm conditioning on
21   the approval of an RSA is not all of the work but just work
22   on the allocation issue and, knowing the professionals
23   involved, I know they know how to bill by separate tasks to
24   cover that.
25             Secondly, I believe that that RSA needs to have
```

1  within it, if not -- and I'm not ruling out anything before
2  then, but it needs to have within it a valid and credible
3  proposal for the emergency use before confirmation of a
4  plan, of a substantial amount of the Debtors' cash because I
5  do think it is important for the parties-in-interest to be
6  focusing on that use now.
7        I appreciate that those two conditions put the ad
8  hoc group at some risk for some portion of the fees at issue
9  here.  On the other hand, I believe that that risk to them
10  is minimal given how they've conducted themselves so far in
11  this case and my belief that past is prologue, i.e., that
12  they will continue to be constructive; continue to try to
13  achieve consensus and, most importantly, consistent with
14  their roles as representatives of individual states as well
15  as the plaintiffs who have -- who brought the pre-petition
16  litigation, that brought us to where we are today, will see
17  the need to continue to contribute in these cases in a way
18  that brings the parties together in an efficient and fair
19  way.
20        So, with the changes that had previously been
21  agreed to, all of which I believe were well considered and
22  warranted, I will approve the motion with those two
23  additions.
24        MR. HUEBNER:  Your Honor, I would never agree to
25  leave a hearing with the Court having a potential factual