# Exhibit A

## Subordination Agreement

## Subordination Agreement

This **Subordination Agreement** (this "**Agreement**") is entered into as of May 2, 2019, by and between Foris Ventures, LLC (the "**Senior Lienholder**") and Lavvan, Inc. (the "**Junior Lienholder**") regarding their respective liens and security interests in assets of Amyris, Inc. (the "**Grantor**"), the terms and provisions of which Grantor acknowledges and agrees.

### RECITALS

A. The Senior Lienholder, as successor in interest to GACP Finance Co., LLC, holds certain liens and security interests (the "**Senior Liens**") in certain assets of the Grantor (the "**Senior Lienholder Collateral**") pursuant to that certain Loan and Security Agreement, dated as of June 29, 2018 (as the same has been and may be amended from time to time, the "**Senior Agreement**").

B. The Junior Lienholder holds certain liens and security interests (the "**Junior Liens**") in certain assets of the Grantor (the "**Junior Lienholder Collateral**") pursuant to that certain Research, Collaboration and License Agreement dated as of March 18, 2019 (the "**License Agreement**") and that certain Security Agreement dated as of May 2, 2019 (collectively with the License Agreement and as the same have been and may be amended from time to time, the "**Junior Agreements**")

D. The Senior Lienholder and the Junior Lienholder desire to state their respective rights in respect of the assets of the Grantor constituting Senior Lienholder Collateral and Junior Lienholder Collateral**.**

### AGREEMENT

NOW, THEREFORE, each of the Senior Lienholder and the Junior Lienholder hereby agrees as follows:

1. As used herein, the following terms shall have the following meanings:

"**Bankruptcy Code**" means the federal bankruptcy law of the United States as from time to time in effect, currently as Title 11 of the United States Code.

"**Event of Default**" means an "Event of Default" or similar event as defined in either the Senior Agreement or the Junior Agreements.

"**Insolvency Proceeding**" shall have the meaning ascribed to it in Section 6 of this Agreement.

"**Obligations**" means all present and future indebtedness of Borrower that may be incurred by Borrower from time to time, including, but not limited to, any negotiable instruments evidencing the same, all guaranties, debts, demands, monies, indebtedness, liabilities and obligations owed or to become owing, including principal, interest, premium (if any), fees, costs, expenses (including attorneys' fees), and other charges (including interest, premium, fees, costs,

expenses, and other charges accruing after the filing of a petition by or against Borrower under the Bankruptcy Code or any similar federal or state statute, whether or not such interest, premium, fees, costs, expenses, and other charges are allowed), and all claims, rights, causes of action, judgments, decrees, remedies, or other obligations of any kind whatsoever and howsoever arising, whether voluntary, involuntary, absolute, contingent, direct, indirect, or by operation of law.

"**Paid in Full**," "**Payment in Full**," "**paid in full**" or "**payment in full**" means, as of any date of determination with respect to the Senior Debt, that: (a) all of such Senior Debt (other than Borrower's inchoate indemnification obligations) has been finally and indefeasibly paid in full in cash and (b) all commitments to lend under the Senior Loan Documents are terminated.

"**Senior Debt**" means any and all Obligations owing to the Senior Lienholder under or in respect of the Senior Agreement.

Other capitalized terms used herein and not otherwise defined herein shall have the meaning given such terms in the Uniform Commercial Code as in effect in the State of California, as in effect from time to time.

2. Until Payment in Full of the Senior Debt, the Junior Lienholder subordinates any and all Junior Liens to any and all Senior Liens. Notwithstanding the respective dates of attachment or perfection of any Senior Liens and any Junior Liens and notwithstanding (i) any lack or defect in the perfection of the Senior Liens or (ii) any avoidance, equitable subordination or recharacterization of the Senior Lienholder's rights or claims in an Insolvency Proceeding of Borrower, the Senior Liens shall at all times be prior to the Junior Liens. The Junior Lienholder acknowledges that all Junior Lienholder Collateral as of the date hereof is also Senior Noteholder Collateral, provided that if at any time the Junior Lienholder holds any lien or security interest in any asset of the Grantor that is not Senior Lienholder Collateral, the Junior Lienholder agrees that it shall hold such lien or security interest and any products or proceeds thereof in trust for the Senior Lienholder, subject to the terms of this Agreement, as if the Senior Lienholder held a Senior Lien in such asset and as if such asset were Senior Lienholder Collateral.

3. Junior Lienholder hereby subordinates any claim or right to payment it has or may have against Grantor or Borrower to which the Junior Lender holds (and has not waived) the Junior Lien (including, without limitation, any such unsecured or deficiency claim in any Insolvency Proceeding of Borrower) to the Payment in Full of any and all debts, claims, rights to payment or Obligations of Borrower to Senior Lienholder (including, without limitation, any such unsecured or deficiency claim of Senior Lienholder in any Insolvency Proceeding of Borrower), regardless of whether the security interests of Senior Lienholder are perfected or unperfected, set aside, or avoided in an Insolvency Proceeding of Borrower, or whether any such claim or Obligation of Senior Lienholder against Borrower is equitably subordinated or recharacterized in any Insolvency Proceeding of Borrower.

4. Except as otherwise permitted hereunder, so long as any of the Senior Debt has not been Paid in Full, the Junior Lienholder shall not, without the prior written consent of the Senior Lienholder, exercise any remedy with respect to any Junior Lienholder Collateral, nor shall the Junior Lienholder commence, or cause to commence, prosecute or participate in any administrative, legal or equitable action against any Junior Lienholder Collateral or against

Borrower in respect of any Junior Lienholder Collateral (each an "**Enforcement Action**"). Notwithstanding the foregoing, "**Enforcement Action**" shall not include (a) filing proofs of claim against the Grantor in any proceeding involving the Grantor, (b) any suit or action initiated or maintained to prevent the loss of a claim as a result of the running of any applicable statute of limitations or other similar restriction on claims, (c) any counterclaim or comparable action brought against the Grantor in an action commenced against the Junior Lienholder, provided that such action is not inconsistent with another provision of this Agreement, (d) any exercise of rights and remedies for specific performance or equitable relief to compel the Grantor to comply with the Junior Agreements, provided that such action is not inconsistent with another provision of this Agreement, or (e) any non-judicial procedural actions that may be required or desired as a precondition to acceleration or relating to preservation of rights (such as giving a notice of default or reservation of rights (including acceleration in accordance with the terms of the Junior Agreements)).

5. Notwithstanding anything in this Agreement to the contrary, the Junior Lienholder may, after the occurrence and during the continuance of an Event of Default under the Junior Agreements and following the Payment in Full of the Senior Debt (such period commencing from the occurrence and continuance of such Event of Default and terminating upon the Payment in Full of the Senior Debt, the "**Standstill Period**") take an Enforcement Action. In connection with any Insolvency Proceeding, the Junior Lienholder agrees not to assert and hereby waives, to the fullest extent permitted by applicable law, any right to demand, request, plead or otherwise assert or otherwise claim against the Senior Lienholder the benefit of any marshaling or other similar doctrine or right that may otherwise be available under applicable law or any other similar rights a junior secured creditor might have under applicable law with respect to any and all Junior Lienholder Collateral.

6. The Junior Lienholder shall have the right to file such proofs of claim and, subject to this Agreement, other documents as may be necessary or appropriate to establish and protect its claims in any liquidation, bankruptcy, receivership, assignment for the benefit of creditors, or any other judicial, equitable, or administrative action or proceeding commenced by or against Borrower or any of the assets or property of Borrower under the Bankruptcy Code or under any other federal or state law involving the adjustment or restructuring of any or all of its assets, obligations, business, or property (collectively, an "**Insolvency Proceeding**").  Junior Lienholder shall not, without the prior written consent of the Senior Lienholder, vote in favor of any plan of reorganization or other arrangement in connection with an Insolvency Proceeding that provides for treatment of the Senior Lienholder or the Junior Lienholder in a manner that violates or is otherwise inconsistent with the terms and conditions of this Agreement.  The Junior Lienholder agrees not to object, contest or support any other person or entity objecting to or contesting, (i) any request by the Senior Lienholder for adequate protection in respect of the Senior Lienholder Collateral or any adequate protection provided to the Senior Lienholder in respect of the Senior Lienholder Collateral, or (ii) the payment of interest, fees, expenses or other amounts to the Senior Lienholder in respect of the Senior Lienholder Collateral under Sections 506(b) or 506(c) of the Bankruptcy Code.   Junior Lienholder agrees not to seek adequate protection or the payment of interest, fees or other expenses in respect of the Junior Lienholder Collateral unless or until there has been Payment in Full of the Senior Debt.

7. The Junior Lienholder further agrees that in case that the Junior Lienholder should take or receive any security interest in, or lien on, any Senior Lienholder Collateral by way of the

exercise of remedies by the Junior Lienholder in any manner contrary this Agreement, at any time prior to the Payment in Full of the Senior Debt, the Senior Lienholder shall be entitled to have the same vacated, dissolved and set aside by such proceedings at law, or otherwise, as the Senior Lienholder may deem proper, and this Agreement shall be and constitute full and sufficient grounds therefor and shall entitle the Senior Lienholder to become a party to any proceedings at law, or otherwise, initiated by the Senior Lienholder or by any other party, in or by which the Senior Lienholder may deem it proper to protect its interests hereunder.

8. If the Junior Lienholder, contrary to this Agreement, takes any action with respect to any Senior Lienholder Collateral, then the Senior Lienholder may obtain relief against the Junior Lienholder by injunction, specific performance, and/or other appropriate equitable relief, it being understood and agreed by the Junior Lienholder that (a) the Senior Lienholder's damages from such actions may at that time be difficult to ascertain and may be irreparable, and (b) the Junior Lienholder waives any defense that the Senior Lienholder cannot demonstrate damage and/or be made whole by the awarding of damages.

9. Except as otherwise expressly agreed to in this Agreement, if the Junior Lienholder shall receive any payments, security interests or liens, or other rights in any property of the Grantor in violation of this Agreement, such payment or property shall be received by the Junior Lienholder in trust for the Senior Lienholder and shall be delivered promptly to the Senior Lienholder in the form received.

10. In the event that, following Payment in Full of the Senior Debt or the Obligations, all or any portion of such payment is avoided, set aside, clawed back, recovered, returns, refunded, equitably subordinated, recharacterized (collectively or individually, a "**Claw Back**"), or any security interest of Senior Lienholder is avoided, set aside, equitably subordinated or recharacterized (collectively or individually, an "**Avoidance**"), this Agreement shall be reinstated and, as between the Senior Lienholder and the Junior Lienholder, (i) this Agreement shall remain fully enforceable the same as if such Claw Bank or Avoidance had never occurred, and (ii) any payment made to Junior Lienholder in respect of its Junior Lienholder Collateral or claims against Borrower or Grantor shall be held in trust for Senior Lienholder and paid over to it in accordance with Section 9 hereof.

11. Until the Senior Debt has been finally Paid in Full, the Junior Lienholder shall not assign, sell or otherwise transfer all or any portion of the Junior Agreements without the sale, assignment or transfer thereof being conditioned on the transferee thereof agreeing to become a party to this Agreement and being bound by the provisions of this Agreement as "Junior Lienholder" hereunder. The Junior Lienholder further agrees that if the Grantor is in the process of refinancing a portion of the Senior Debt with a new Permitted Senior Lender, and if the Senior Lienholder makes a request of the Junior Lienholder, then the Junior Lienholder shall agree to enter into a new subordination agreement with the new Permitted Senior Lender on substantially the terms and conditions of this Agreement and in any case reasonably acceptable to such new Permitted Senior Lender and the Junior Lienholder

12. In the event that the Senior Lienholder exercises remedies in respect of any Senior Lienholder Collateral, the Senior Lienholder shall honor the licenses granted to the Junior Lienholder in the Senior Lienholder Collateral notwithstanding such exercise and any related transfer or assignment of such Senior Lienholder Collateral, as if such exercise, transfer, and

4

assignment, as applicable, were subject to such license rights; provided, however, that this Section 12 shall not apply to the extent that the same would impair Senior Lienholder's recovery, return, or the Payment in Full of the Senior Debt.

13. The Junior Lienholder agrees to not directly or indirectly take or support, or induce or instigate others to take or support, any action inconsistent with this Agreement.

14. This Agreement, which the parties hereto expressly acknowledge is a "subordination agreement" under Section 510(a) of the Bankruptcy Code, shall remain in full force and effect during and after the commencement of an Insolvency Proceeding. This Agreement shall terminate and be of no further force and effect upon the earlier to occur of the following: (a) the Payment in Full of the Senior Debt, or (b) the Senior Lienholder has otherwise consented thereto in writing.

15. This Agreement shall be binding upon the successors and assigns of the parties hereto, and shall inure to the benefit of the respective successors and assigns of the parties hereto. This Agreement represents the entire agreement with respect to the subject matter hereof, and supersedes all prior negotiations, agreements and commitments.

16. This Agreement and all rights and liabilities to the parties hereto shall be governed as to validity, interpretation, enforcement and effect by the laws of the State of California.

17. This Agreement may be executed in one or more counterparts, each of which is deemed an original and all of which together constitute one and the same document. Signature pages may be detached from the counterparts and attached to a single copy of this Agreement to physically form one document.

18. All notices and other communications under this Agreement shall be in writing and shall be deemed to have been given three days after deposit in the mail, first class mail, postage prepaid, or one day after being entrusted to a reputable commercial overnight delivery service, or when sent out by facsimile transmission addressed to the party to which such notice is directed at its address set forth beneath its signature line hereto. Any party to this Agreement may change the address to which notices shall be directed hereunder by giving 10 days' written notice of such change to the other party.

[Remainder of Page Intentionally Left Blank]

This Subordination Agreement has been duly executed by the undersigned as of the date first referenced above.

**By the Junior Lienholder, LAVVAN, INC.:**

By: */s/ E. Bendheim/*

Name: Etan Bendheim

Title: President

Address: 434 West 33rd Street, New York, NY 10001, USA
Attention: Head of Operations

**By the Senior Lienholder, FORIS VENTURES, LLC:**

By: _____

Name: _____

Title: _____

Address: 751 Laurel Street #717, San Carlos, CA 94070
Attention: Barbara Hager

**Acknowledged and Agreed by the Grantor, AMYRIS, INC.:**

By: _____

Name: _____

Title: _____

Address: 5885 Hollis Street, Emeryville, CA 94608, USA
Attention: Nicole Kelsey, General Counsel

[SIGNATURE PAGE TO SUBORDINATION AGREEMENT]

This Subordination Agreement has been duly executed by the undersigned as of the date first referenced above.

**By the Junior Lienholder, LAVVAN, INC.:**

By: _____

Name: _____

Title: _____

Address: 434 West 33rd Street, New York, NY 10001, USA
Attention: Head of Operations


**By the Senior Lienholder, FORIS VENTURES, LLC:**

By: *Barbara Hager* (DocuSigned by: 1E00D3DD94C24C3...)

Name: Barbara Hager

Title: _____

Address: 751 Laurel Street #717, San Carlos, CA 94070
Attention: Barbara Hager


**Acknowledged and Agreed by the Grantor, AMYRIS, INC.:**

By: _____

Name: _____

Title: _____

Address: 5885 Hollis Street, Emeryville, CA 94608, USA
Attention: Nicole Kelsey, General Counsel


[SIGNATURE PAGE TO SUBORDINATION AGREEMENT]

This Subordination Agreement has been duly executed by the undersigned as of the date first referenced above.

**By the Junior Lienholder, LAVVAN, INC.:**

By: _____

Name: _____

Title: _____

Address:   434 West 33rd Street, New York, NY 10001, USA
Attention: Head of Operations

**By the Senior Lienholder, FORIS VENTURES, LLC:**

By: _____

Name: _____

Title: _____

Address:   751 Laurel Street #717, San Carlos, CA 94070
Attention: Barbara Hager

**Acknowledged and Agreed by the Grantor, AMYRIS, INC.:**

By: _____*[signature]*_____

Name: ___Kathleen Valiasek___

Title: ___CFO___

Address:   5885 Hollis Street, Emeryville, CA 94608, USA
Attention: Nicole Kelsey, General Counsel

[SIGNATURE PAGE TO SUBORDINATION AGREEMENT]