IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

**Objection Deadline: September 22, 2023 at 4:00 p.m. (ET)**
**Hearing Date: October 18, 2023 at 2:00 p.m. (ET)**

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
(A) AUTHORIZING THE EMPLOYMENT AND RETENTION OF
SHEARMAN & STERLING LLP AS SPECIAL COUNSEL EFFECTIVE
AS OF THE PETITION DATE AND (B) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors") hereby file this application (the "Application") for the entry of an order substantially in the form annexed hereto as **Exhibit C** (the "Proposed Order"), pursuant to section 327(e) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the Debtors to retain and employ Shearman & Sterling LLP ("Shearman & Sterling" or the "Firm") as special counsel to the Debtors effective as of the Petition Date. In support of the Application, the Debtors rely upon and incorporate by reference the Rule 2016 statement attached hereto as **Exhibit A** and the declaration of Michael S. Dorf (the "Dorf Declaration") attached hereto as **Exhibit B**. In further support of the Application, the Debtors respectfully represent as follows:

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

**Jurisdiction and Venue**

1. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief sought herein are sections 327(e) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1.

**Background**

4. On August 9 and August 21, 2023 (as applicable, the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

5. On August 27, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Creditors Committee") including the following: U.S. Bank Trust Co. NA; Cosan U.S. Inc.; Sartorius Stedim North America Inc.;

Hearst Magazine Media Inc.; Wiley Companies; Park Wynwood LLC; and Allog Participacoes Ltda.

6. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

7. Amyris was founded in 2003 to create a more stable supply of a key anti-malarial treatment. Through Amyris's cutting-edge science, artemisinin—the most effective anti-malarial drug in the world—is now consistently available to treat the deadly disease. Using the same technological innovations that produced artemisinin, Amyris has become the world's leading manufacturer of ingredients made with synthetic biology. Amyris provides sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products.

8. In addition, Amyris also has developed and launched a family of clean beauty brands that utilize the natural and sustainable ingredients that Amyris produces. The Company sells these clean beauty products through direct-to-consumer e-commerce platforms and a network of retail partners, including Sephora, Target, and Walmart.

9. A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "<u>First Day Declaration</u>") [Docket No. 18], incorporated herein by reference.[2]

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

**Relief Requested**

10. By this Application the Debtors seek to employ and retain Shearman & Sterling as special counsel to the Debtors. The Debtors request that Shearman & Sterling be retained to perform the services described in this Application.

**Basis for Relief**

11. Section 327(e) of the Bankruptcy Code authorizes a debtor, with court approval, to retain:

> for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e). Clarifying the statute, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

12. Section 327(e) of the Bankruptcy Code authorizes the retention of an attorney who represented a debtor prior to the bankruptcy petition date, provided that: (a) such retention is for a special purpose; (b) the purpose of the retention is not to conduct the case; (c) the retention is in the best interests of the estate; and (d) the attorney does not hold any interest adverse to the debtor with respect to the subject of its retention. Shearman & Sterling's retention as the Debtors' mergers and acquisitions and commercial transactions counsel falls within the scope of section 327(e) of the Bankruptcy Code.

13. When analyzing the retention of special counsel under section 327(e), "the court should consider all relevant facts surrounding the debtor's case, including but not limited to, the

4

nature of the debtor's business, all foreseeable employment of special counsel, the history and relationship between the debtor and the proposed special counsel, the expense of replacement counsel, potential conflicts of interest, and the role of general counsel." *Stapleton v. Woodworkers Warehouse, Inc. (In re Woodworkers Warehouse, Inc.)*, 323 B.R. 403, 406 (D. Del. 2005) (citing *In re First Am. Health Care of Georgia, Inc.*, 1996 WL 33404562, at *3 (Bankr. S.D. Ga. Apr. 18, 1996)). In general, however, subject to the requirements of sections 327 and 1107 of the Bankruptcy Code, a debtor in possession is entitled to the counsel of their choosing. *See, e.g.*, *Vouzianas v. Ready & Pontisakos (In re Vouzianas)*, 259 F. 3d 103, 108 (2d Cir. 2001) (citation omitted) (observing that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel").

14. Here, the Debtors' retention of Shearman & Sterling is in the best interest of their estates and satisfies all other standards of retention under section 327(e) of the Bankruptcy Code. Shearman & Sterling has substantial experience in representing clients with respect to mergers, acquisitions, dispositions, antitrust, joint ventures, commercial transactions and strategic investments, and it has represented the Debtors in connection with such matters since 2009, including but not limited to the Debtors' terminated biodiesel and biojet joint venture with an affiliate of Total S.A., their sweetener joint venture with Ingredion, the disposition of a Brazil production facility to, and the establishment of a manufacturing partnership with, DSM, their acquisitions of Beauty Labs International Limited, MenoLabs, OndaSpa and OLIKA, the launch of the 4U by Tia™ hair care line in collaboration with actress Tia Mowry, the restructuring of their Aprinnova joint venture with Nikko Chemicals, the sale of certain assets of Aprinnova to Givaudan SA, and several other commercial transactions, as well as disputes and antitrust advice related to

the foregoing. Accordingly, the Debtors believe that it is in the best interests of their estates to employ and retain Shearman & Sterling as special counsel.

**Qualifications and Scope of Services**

15. The Debtors have also filed an application seeking to employ Pachulski Stang Ziehl & Jones LLP ("PSZJ") as general bankruptcy counsel in connection with the commencement and prosecution of these Chapter 11 Cases. It is the Debtors' intention that the services to be performed by Shearman & Sterling, and those services to be performed by PSZJ and any other professionals retained by the Debtors, will not be duplicative but rather will ensure the most economic and effective means for the Debtors to be represented in these Chapter 11 Cases while continuing to operate their businesses. However, Shearman & Sterling may be required, from time to time, to consult with or advise PSZJ with regard to the matters on which Shearman & Sterling is representing the Debtors, which may include, without limitation, matters that impact the Debtors' efforts to consummate a chapter 11 plan of reorganization.

16. In sum, the professional services that Shearman & Sterling has rendered to the Debtors and may continue to render shall include, but shall not be limited to: (i) asset sales and other dispositions, (ii) restructuring or renegotiation of joint ventures and other commercial transactions, (iii) matters related to ongoing litigation in which Shearman & Sterling represented the Debtors prior to the commencement of these Chapter 11 Cases, (iv) matters related to corporate and commercial transactions in which Shearman & Sterling represented the Debtors prior to the commencement of these Chapter 11 Cases, and (v) other matters incidental to the foregoing (including disputes and antitrust advice).

17. Shearman & Sterling has stated its desire and willingness to continue to act as mergers and acquisitions and commercial transactions counsel to the Debtors and to render the

6

necessary professional services required in connection therewith.  Moreover, the retention and employment of Shearman & Sterling as mergers and acquisitions and commercial transactions counsel would prevent the Debtors' estates from incurring the unnecessary cost of having another firm like PSZJ essentially repeating work previously done by Shearman & Sterling.  In particular, Shearman & Sterling represented the Debtors in connection with (i) the acquisition of several of the consumer brands that may be disposed of in connection with these Chapter 11 Cases, and (ii) the formation of several of the joint ventures and other commercial transactions that may be restructured or renegotiated in connection with these Chapter 11 Cases. Accordingly, the employment and retention of Shearman & Sterling as special counsel is in the best interest of the Debtors and their estates and therefore should be approved.

## Compensation

18. Subject to Court approval in accordance with section 330(a) of the Bankruptcy Code, compensation will be payable to Shearman & Sterling on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by Shearman & Sterling. Shearman & Sterling's current range of standard hourly rates are reflected in the chart below:[3]

| Category | Hourly Rate |
| --- | --- |
| Partners | $1,460–$2,130 |
| Counsel | $1,425–$1,665 |
| Associates | $775–$1,415 |
| Legal Assistants/Specialists | $375–$535 |

---

[3] As do its peer firms, Shearman & Sterling increases the hourly billing rate of attorneys and paraprofessionals in the form of "step increases" in the ordinary course of business.  These step increases do not constitute "rate increases" (as the terms are used in the United States Trustee's *Appendix B—Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013).  As set forth in the Proposed Order, Shearman & Sterling will provide reasonable notice to the Debtors, the United States Trustee, and the Creditors Committee before implementing any periodic rate increases (other than step increases for individual timekeepers).

DOCS_DE:244636.2 03703/004

19. The Debtors will be responsible for all reasonable costs and expenses incurred by Shearman & Sterling in connection with its services as special counsel, *provided*, however, that all costs and expenses must be approved by the Bankruptcy Court after proper application for payment of same.

20. The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions, provided that Shearman & Sterling will provide reasonable notice to the Debtors, the United States Trustee, and the Creditors Committee before implementing any such periodic rate increases (other than step increases for individual timekeepers) as set forth in footnote 3.

21. The hourly rates set forth above are Shearman & Sterling's standard hourly rates for work of this nature. These rates are set at a level designed to compensate Shearman & Sterling fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. It is Shearman & Sterling's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document retrieval, photocopying charges (including color copies), charges for mailing supplies (including, without limitation, envelopes and labels) provided by Shearman & Sterling to outside copying services for use in mass mailings, travel expenses, expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses such as secretarial and other overtime. Shearman & Sterling will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to Shearman & Sterling's other clients. Shearman & Sterling believes that it is fairer to charge these

expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

22. The Debtors understand that Shearman & Sterling intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of this Court for all services performed and expenses incurred after the Petition Date.

23. The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and further orders of this Court, propose to pay Shearman & Sterling its customary hourly rates for services rendered that are in effect from time to time, as set forth above and in the Dorf Declaration, and to reimburse Shearman & Sterling according to its customary reimbursement policies, and the Debtors submit that such rates are reasonable.

**Disclosure of Connections**

24. To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Dorf Declaration, Shearman & Sterling:  (i) has no connection with the Debtors, the Potential Parties In Interest (as defined in the Dorf Declaration), or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee for the District of Delaware; and (ii) does not hold any interest adverse to the Debtors' estates with respect to the matters for which it is being engaged.

25. Shearman & Sterling will review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise in such review, Shearman & Sterling will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit, as required by Bankruptcy Rule 2014(a).

**Notice**

26. The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) counsel to the Creditors Committee; (c) counsel to the DIP Lenders, DIP Agent, and the Foris Prepetition Secured Lenders; (d) co-counsel to the DIP Lenders, the DIP Agent, and the Foris Prepetition Secured Lenders; and (e) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

**No Prior Request**

27. No prior Application for the relief requested herein has been made to this Court or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, granting the relief requested herein and granting such other and further relief as is just and proper.

Dated: September 8, 2023         **AMYRIS, INC.**

*/s/ Han Kieftenbeld*
Han Kieftenbeld
Interim Chief Executive Officer and Chief Financial Officer