**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>                                    Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered)<br><br>**Re: D.I. 171 and 211** |

**REPLY OF EUAGORE, LLC AND THE FORIS PREPETITION SECURED
LENDERS TO OBJECTION OF LAVVAN, INC., AND JOINDER TO REPLY
OF THE DEBTORS IN SUPPORT OF FINAL ORDER (I) AUTHORIZING
DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) TO
UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE
PROTECTION TO PREPETITION SECURED PARTIES, (III)  MODIFYING
THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

Euagore, LLC, as DIP Lender and DIP Agent (the "DIP Secured Parties"), and the Foris

Prepetition Secured Lenders[2] (together with the DIP Secured Parties, "Foris Lenders") submit this

reply (the "Reply") to the *Limited Objection of Lavvan, Inc. to Motion of the Debtors for Interim*

*and Final Orders (I) Authorizing the Debtors (A) to Obtain Postpetition Financing and (B) to*

*Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III)*

*Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*

[Docket No. 171] (the "Lavvan Initial Objection") and the *Supplemental Objection of Lavvan, Inc.*

*to Motion of the Debtors for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain*

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors'
claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal
place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100,
Emeryville, CA 94608.

[2]    The Foris Prepetition Secured Lenders include Foris Ventures, LLC ("Foris"), Perrara Ventures, LLC ("Perrara"),
Anesma Group, LLC ("Anesma"), Anjo Ventures, LLC ("Anjo"), and Muirisc, LLC ("Muirisc").  Foris is the lender
under the Foris 2018 LSA (as defined herein) and party to the Subordination Agreement, while all five
lenders (Foris, Perrara, Anesma, Anjo, and Muirisc) provided loans to the Debtors from and after September 27,
2022.

*Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 211] (the "Lavvan Supplemental Objection," and together with the Lavvan Initial Objection, the "Lavvan Objection") and joinder to the *Reply of the Debtors in Support of Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief*, filed contemporaneously herewith (the "Debtors' Reply").[3]  The Foris Lenders hereby join in the legal arguments set forth in the DIP Motion and the Debtors' Reply and incorporates those arguments as though set forth herein, and in support thereof respectfully states as follows:

### PRELIMINARY STATEMENT

1.       Lavvan has a junior lien on certain intellectual property of Amyris, Inc. ("Amyris") and Foris has a senior lien on the same collateral.  Under the DIP Facility, Foris has consented to the priming of its senior lien pursuant to the Interim and Final Orders.  Lavvan has no basis, as a matter of contract and bankruptcy law, to contest this result.  Therefore, the Court should overrule the Lavvan Objection and enter the proposed Final Order.[4]

2.       Resolution of this dispute is critical as the Debtors require debtor-in-possession financing to pay employees, operate as a going concern, and continue their efforts to implement a

---

[3]     Each capitalized term used but not defined herein shall have the meaning ascribed to it in the *Interim Order (I) Authorizing the Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 54] (the "Interim Order"), the DIP Motion, the Debtors' Reply, or the Lavvan Objection.

[4]     The proposed Final Order is attached to the Debtors' Reply at **Exhibit 1**.

value maximizing restructuring.  A number of undisputed facts govern the prompt resolution of

this dispute:

- **First**, it is undisputed that Foris has a senior lien and Lavvan asserts a subordinate and junior lien on any shared collateral.  Lavvan Initial Objection ¶ 10 (confirming that "Lavvan agreed to subordinate its security interest . . . to liens Foris held, as successor in interest, in certain assets of Amyris"); Supplemental Objection ¶ 1 (confirming that Lavvan's "lien is subordinated, pursuant to the subordination agreement with Foris . . ."). It is undisputed that Foris' lien securing debt provided under the Foris 2018 LSA (as defined herein) was granted and perfected prior to the lien that Lavvan asserts.;

- **Second**, it is undisputed that Lavvan waived its right to seek adequate protection until the Foris debt under the Foris 2018 LSA is indefeasibly paid in cash in full. Subordination Agreement ¶ 6 ("Junior Lienholder agrees not to seek adequate protection or the payment of interest, fees or other expenses in respect of the Junior Lienholder Collateral unless or until there has been Payment in Full of the Senior Debt."); Subordination Agreement ¶ 7 (waiving any right of the junior lienholder to take a replacement lien in any shared collateral);

- **Third**, it is undisputed that Lavvan agreed to subordinate its right of any payment until all the amounts owed to Foris under the Foris 2018 LSA are indefeasibly paid in cash in full.  Subordination Agreement ¶ 3 ("Junior Lienholder hereby subordinates any claim or right to payment it has or may have against Grantor or Borrower to which the Junior Lender holds (and has not waived) the Junior Lien . . . to the Payment in Full of any and all debts, claims, rights to payment or Obligations of Borrower to Senior Lienholder . . .");

- **Fourth**, it is undisputed that the DIP Motion and Interim Order made clear that the liens granted to the DIP Secured Parties are senior perfected priming liens on all of the Debtors' assets subject to the first priority liens of the Foris Prepetition Secured Lenders and that the Foris Prepetition Secured Lenders consented to and are being primed by the DIP Liens. *See* DIP Motion ¶ 23(m);  Interim Order ¶ 8(b);

- **Fifth**, it is undisputed that the statement read into the record at the first day hearing— "[n]othing contained in the Interim DIP Order or the DIP Documents authorizes the non-consensual priming of any properly perfected first priority security interest in and lien upon any of the debtors' collateral," *see* First Day Hearing Transcript at 68, aligns with the facts as it is undisputed that Foris' lien securing debt provided under the Foris 2018 LSA was granted and perfected prior to the lien that Lavvan asserts; and

- **Sixth**, it is undisputed that Lavvan asserts a lien on only certain intellectual property owned by Amyris.  *See* Lavvan Initial Objection ¶ 6 and n. 4, 6 (confirming that the "Grantor" is only Amyris and the collateral subject to the security interest is only intellectual property controlled by Amyris prior to March 18, 2019); *see also* Debtors' Reply ¶¶ 14, 15 (outlining different assets, including real property, the consumer

3

Case 23-11131-TMH    Doc 235    Filed 09/11/23    Page 4 of 20

brands, manufacturing assets, and foreign subsidiaries as examples of the Debtors' most valuable assets which are not subject to any lien granted to Lavvan).

3.      The legal bases to support the Court's denial of the Lavvan Objection are straightforward.  As a matter of contract, pursuant to the Subordination Agreement, Lavvan has (1) expressly subordinated its asserted lien to the lien of Foris, (2) expressly subordinated any right to payment on any claim it has at least until all obligations under the Foris 2018 LSA are indefeasibly paid in cash in full, and (3) waived any right to seek adequate protection. Subordination Agreement ¶¶ 2, 3, and 6.  Each of these contractual provisions is enforceable in these chapter 11 cases against Lavvan.  *See* 11 U.S.C. § 510(a); Cal. Com. Code § 1209; *see also* Subordination Agreement ¶ 14 ("This Agreement, which the parties hereto expressly acknowledge is a "subordination agreement" under Section 510(a) of the Bankruptcy Code, shall remain in full force and effect during and after the commencement of an Insolvency Proceeding.").

4.      Under Section 364(d)(1) of the Bankruptcy Code, if a priming lien is sought the debtor must demonstrate that it is unable to obtain credit otherwise, and the primed lienholder is entitled (absent waiver) to seek adequate protection.  11 U.S.C. § 364(d)(1).  Lavvan does not argue that the Debtors can obtain credit in any other manner.  Nor could Lavvan do so.  As set forth in the Beers Declaration and the Fleming Declaration in support of the DIP Motion, and confirmed in the Interim Order, the DIP Facility is fair, reasonable, the product of arms' length, good faith negotiations, and constitutes the best and **only** postpetition financing option available to the Debtors.  *See* Fleming Declaration ¶ 5; Beers Declaration ¶ 8-11; Interim Order ¶ H.  Lavvan does not argue that it is entitled to adequate protection, nor could Lavvan do so.  Pursuant to the Subordination Agreement, Lavvan has waived any right to seek adequate protection.  Therefore, Lavvan has not raised any colorable factual or legal argument upon which this Court should deny entry of the proposed Final Order.

4

162749481v1

5.      As a point of clarification, and to provide this Court with a clear path to entry of the proposed Final Order, the Priming Liens sought pursuant to paragraph 8(b) of the proposed Final Order result in $190 million in claims under the DIP Facility, in addition to, at a minimum, $63.5 million in claims under the Foris 2018 LSA being senior in the payment waterfall to any secured claim that Lavvan asserts on account of shared collateral.  Despite the fact that the Foris Prepetition Secured Lenders provided approximately $248.6 million in loans to the Debtors from and after the date the RCLA was executed (the "2022/2023 Prepetition Debt"), the 2022/2023 Prepetition Debt is not presently subject to the Subordination Agreement (though the Foris Prepetition Secured Lenders maintain that Lavvan's lien was made junior to their liens under the terms of the RCLA and Security Agreement, which is an issue for another day).  Although the Foris Prepetition Secured Lenders have demanded that Lavvan execute a subordination agreement for the 2022/2023 Prepetition Debt, Lavvan has refused to sign a new subordination agreement.[5] The Foris Prepetition Secured Lenders intend to seek declaratory relief to resolve all disputes between Lavvan and the Foris Prepetition Secured Lenders with respect to the 2022/2023 Prepetition Debt.[6]  This issue, however, is not before the Court today.  Instead, the DIP Secured Parties only seek confirmation from the Court, through entry of the proposed Final Order, that the

---

[5]   The demand letter dated August 31, 2023, sent by the Foris Prepetition Secured Lenders to Lavvan, which attaches a proposed new subordination agreement, together with Lavvan's response letter dated September 8, 2023, is attached hereto as **Exhibit A**.

[6]   To be clear, the relative priority issue that may be subject to declaratory relief litigation has only two outcomes: (1) Lavvan has a junior lien behind only the first priority lien of Foris granted pursuant to the Foris 2018 LSA as a matter of being first in time and pursuant to the Subordination Agreement or (2) Lavvan has a junior lien behind the first priority lien of Foris granted pursuant to the Foris 2018 LSA and all of the liens granted to the Foris Prepetition Secured Lenders on account of the 2022/2023 Prepetition Debt, which liens would be *pari passu* with Foris' first priority lien in existence today.  Regardless of the outcome of any such litigation, under no circumstances would Lavvan have a first priority lien on or security interest in any of the Debtors' assets until, at a minimum, all obligations owing under the Foris 2018 LSA are indefeasibly paid in cash in full (approximately $63.5 million as of the Petition Date), and all DIP Facility obligations are indefeasibly paid in cash in full.

DIP Facility primes the properly perfected first priority lien of (1) Foris, on all collateral securing the Foris 2018 LSA, including any collateral in which Lavvan asserts a lien and (2) all other Foris Prepetition Secured Lenders on all collateral that is not subject to Lavvan's asserted lien.

## BACKGROUND

### A.    The DIP Facility

6.    Through the DIP Facility, the DIP Secured Parties committed to fund a process during these chapter 11 cases to maximize the value of the Debtors' estates for all stakeholders. This commitment is undeniable given the long-dated milestones outlined in the DIP Motion (*i.e.*, a total case duration of close to 5 months) and the substantial commitment necessary to fund the Debtors' operations (which are cash flow negative) through maturity (*i.e.*, $190 million).   The Debtors acknowledge that the DIP Facility is below market.  *See* First Day Hearing Transcript at 13-14.

### B.    The DIP Liens

7.    The DIP Secured Parties agreed to provide the DIP Facility, subject to a number of conditions in the DIP Documents being met, including entry of an acceptable Final Order.  One condition is that the DIP Liens are secured by first priority priming liens on all of the assets of the Debtors, subject only to valid, perfected and non-avoidable senior liens in existence as of the Petition Date.  DIP Credit Agreement § 3.1(b); DIP Motion ¶ 23(m); Interim Order ¶ 8.  To meet this condition, the Foris Prepetition Secured Lenders agreed to the priming of their liens.  Interim Order ¶ 8(b).  No party, including Lavvan, contests the fact that the Foris Prepetition Secured Lenders have a first priority lien on the Debtors' assets as of the Petition Date.  Indeed, as acknowledged by Lavvan, any lien that Lavvan holds is subordinate and junior to the lien of Foris on the shared collateral.

C.    **Foris 2018 LSA**

8.      Foris and certain of the Debtors are party to an Amended & Restated Loan and Security Agreement dated October 28, 2019 (as thereafter amended) (the "Foris 2018 LSA").[7]  The Foris 2018 LSA amended and restated a loan and security agreement between certain Debtors and GACP Finance Co., LLC ("GACP") dated June 29, 2018 (as thereafter amended) (the "June 2018 GACP LSA").[8]

9.      On June 29, 2018, GACP filed a UCC Financing Statement (the "GACP UCC-1") perfecting its security interest under the June 2018 GACP LSA.  *See* **Exhibit B.**  Thereafter, the GACP UCC-1 was assigned to Foris on April 17, 2019, and subsequently continued by Foris on May 25, 2023.  *See* **Exhibit C**.

10.     As of the Petition Date, the Debtors were obligated to Foris on account of the Foris 2018 LSA in the approximate amount of $63.5 million. *See* Supplemental Fleming Declaration ¶¶ 9, 10.

D.    **The Lavvan Transaction**

11.     On May 2, 2019, Amyris entered into the RCLA with Lavvan for the development, manufacture and commercialization of cannabinoids, subject to certain closing conditions.[9]  On the same day, the parties also executed the Security Agreement and the Subordination Agreement (collectively, together with the RCLA, the "Lavvan Transaction Documents").

---

[7]    *See* 8-K dated October 28, 2019 (disclosing the Foris 2018 LSA and attaching a copy of it as exhibit 10.2 of the 8-K): sec.gov/Archives/edgar/data/1365916/000117184319007067/f8k_110119.htm.

[8]    *See* 8-K dated April 15, 2019 (disclosing the purchase, by Foris, of the loans under the 2018 GACP LSA): www.sec.gov/Archives/edgar/data/1365916/000117184319002457/f8k_041719.htm.

[9]    *See* 10-K dated October 7, 2019 (disclosing the consummation of the Lavvan Transaction): www.sec.gov/Archives/edgar/data/1365916/000117184319006387/f10q_100319p.htm.

7

12.    As disclosed in the Lavvan Initial Objection, Lavvan filed its UCC-1 on May 9, 2019.  That was almost **one year after** the GACP UCC-1 was filed and **one month after** the assignment of the GACP UCC-1 to Foris.  Accordingly, any lien granted to Lavvan is junior to the lien granted to Foris.  *See* U.C.C. § 9-322.

13.    Pursuant to the Lavvan Transaction Documents, the lien granted to Lavvan is limited to certain intellectual property held by one entity—Amyris.  Lavvan Initial Objection ¶ 6. Lavvan's lien does not cover other assets, including the consumer brands assets, any of the Debtors' real property interests, Amyris' 69% equity interest in Real Sweet, LLC or any of the equity interests in any of Amyris' subsidiaries, or any intellectual property not in existence prior to March 18, 2019.  *See* Debtors' Reply ¶¶ 5, 14, 15.  The Debtors also dispute whether Lavvan has any claims or a lien at all because Lavvan repudiated and/or terminated the RCLA and Lavvan's purported damages are based on a theory of lost profits, which remedy is expressly disclaimed in the RCLA  *See* Debtors' Reply ¶ 5.

14.    In addition to the lien and payment subordination provisions, the Subordination Agreement imposes a number of other express limitations on Lavvan.  Specifically, until Foris is indefeasibly paid in cash in full, Lavvan cannot undertake any Enforcement Action,[10] waives any right of marshalling and any other similar right, and agrees not to: (a) vote in favor of any plan of reorganization or other arrangement in connection with an Insolvency Proceeding[11] that provides

---

[10]  "Enforcement Action" is defined in the Subordination Agreement as: to "commence, or cause to commence, prosecute or participate in any administrative, legal or equitable action against any Junior Lienholder Collateral or against Borrower in respect of any Junior Lienholder Collateral."  Subordination Agreement ¶ 4.

[11]  "Insolvency Proceeding" is defined in the Subordination Agreement as: "any liquidation, bankruptcy, receivership, assignment for the benefit of creditors, or any other judicial, equitable, or administrative action or proceeding commenced by or against Borrower or any of the assets or property of Borrower under the Bankruptcy Code or under any other federal or state law involving the adjustment or restructuring of any or all of its assets, obligations, business, or property."  Subordination Agreement  ¶ 6.

162749481v1

for treatment of the Senior Lienholder [Foris] or the Junior Lienholder [Lavvan] in a manner that violates or is otherwise inconsistent with the terms and conditions of the Subordination Agreement; (b) object, contest or support any other person or entity objecting to or contesting: (i) any request by the Senior Lienholder for adequate protection in respect of the Senior Lienholder Collateral[12] or any adequate protection provided to the Senior Lienholder in respect of the Senior Lienholder Collateral, or (ii) the payment of interest, fees, expenses or other amounts to the Senior Lienholder in respect of the Senior Lienholder Collateral under sections 506(b) or 506(c) of the Bankruptcy Code; (c) seek adequate protection or the payment of interest, fees or other expenses in respect of the Junior Lienholder Collateral,[13] unless or until there has been Payment in Full[14] of the Senior Debt;[15] and (d) directly or indirectly take or support, or induce or instigate others to take or support, any action inconsistent with the Subordination Agreement.  Subordination Agreement ¶¶ 6, 13.

## **REPLY**

I.      **The DIP Documents Clearly Require the Grant of a First Priority or First Priority Priming Lien on All Assets Not Subject to a Valid Senior Lien**

15.      The DIP Documents require that the DIP Facility be secured by a perfected first priority or perfected first priority priming lien on all of the Debtors' assets, except for those assets

---

[12]  "Senior Lienholder Collateral" is defined in the Subordination Agreement as: "certain liens and security interests . . . in certain assets of the Grantor . . .  pursuant to that certain Loan and Security Agreement, dated as of June 29, 2018."  Subordination Agreement, Recital A.

[13]  "Junior Lienholder Collateral" is defined in the Subordination Agreement as: "certain liens and security interests . . .  in certain assets of the Grantor . . . pursuant to that certain Research, Collaboration and License Agreement dated as of March 18, 2019 . . . and that certain Security Agreement dated as of May 2, 2019."  Subordination Agreement, Recital B.

[14]  "Payment in Full" is defined in the Subordination Agreement as: "as of any date of determination with respect to the Senior Debt, that: (a) all of such Senior Debt (other than Borrower's inchoate indemnification obligations) has been finally and indefeasibly paid in full in cash and (b) all commitments to lend under the Senior Loan Documents are terminated."  Subordination Agreement ¶ 1.

[15]  "Senior Debt" is defined in the Subordination Agreement as: "any and all Obligations owing to the Senior Lienholder under or in respect of the Senior Agreement."  Subordination Agreement ¶ 1.

that are subject to a "valid, perfected and non-avoidable senior lien[] in existence immediately prior to the Petition Date." *See* DIP Motion ¶ 23(m); Interim Order ¶ 8(c).  This is memorialized in the DIP Credit Agreement, which requires that the DIP Facility "be secured by a fully perfected security interest in and lien on all Collateral of each Debtor, as provided in and with the priority granted by the Interim Order (and, when applicable, the Final Order)."  DIP Credit Agreement § 3.1(b).

16.     Lavvan does not hold a lien that falls within the ambit of paragraph 8(c) of the Interim Order.  Therefore, Lavvan had to know that the Debtors intended to prime the Foris Liens and, as a result, any junior lien asserted by Lavvan on shared collateral.  This is clear from the text of paragraph 8(b) of the Interim Order, the operative paragraph, which states that the Debtors agreed to provide the DIP Secured Parties with a "properly perfected, first priority priming security interest in and lien upon the Prepetition Collateral . . . subject to the Foris Liens . . . which Priming Liens shall prime in all respects the interests of the Foris Prepetition Secured Lenders arising from the current and future liens of the Foris Prepetition Secured Lenders."  Interim Order ¶ 8(b).  It also could not have been lost on Lavvan that the Prepetition Collateral encompasses whatever collateral was granted to Lavvan pursuant to the Security Agreement, as otherwise there would have been no need for the Subordination Agreement.  Accordingly, it was no secret that Lavvan's lien was being primed by operation of paragraph 8(b) of the Interim Order.

17.     In that context, the statement read into the record at the first day hearing, which Lavvan  agreed with, confirms that Lavvan has no valid argument against the priming of its junior lien. *See* First Day Hearing Transcript at 68-70 ("Nothing contained in the Interim DIP Order or the DIP Documents authorizes the non-consensual priming of any properly perfected first priority security interest in and lien upon any of the debtors' collateral").  This statement is as true today

162749481v1

as it was at the first day hearing because Foris has a properly perfected first priority security interest

and lien that is senior to Lavvan's asserted lien.  Lavvan holds no first priority lien and Lavvan is

precluded from requesting adequate protection pursuant to the Subordination Agreement.[16]

18.     For all of these reasons, Lavvan consented to its junior lien being primed by, at a

minimum, a DIP Lien senior to the Foris Liens provided under the Foris 2018 LSA.  Lavvan's

argument in the Lavvan Supplemental Objection that its asserted junior lien was not primed is

therefore false.  The DIP Credit Agreement and Interim Order make clear that the DIP Liens are

first priority priming liens on all of the Debtors' assets subject to the liens of the Foris Prepetition

Secured Lenders.  DIP Credit Agreement § 3.1(b); Interim Order ¶ 8(b).  Additionally, Lavvan's

articulated objection to being primed—"no facts exist showing that Lavvan's interest in its IP

Collateral would be better off if it were subordinated to $70 million under the Interim DIP Order

and an additional $120 million (for a total of $190 million) under the Final Order," Lavvan

Supplemental Objection ¶ 7—is not the standard for approval of debtor-in-possession financing.

*See In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del. 2011) (observing that in

seeking approval of postpetition superpriority loan, debtors bear the burden of proving that (1)

they were unable to obtain unsecured credit, such as by allowing lender only administrative claim,

(2) credit transaction was necessary to preserve assets of estate, and (3) terms of transaction were

fair, reasonable, and adequate, given circumstances of debtors and proposed lenders).  Lavvan's

Supplemental Objection does not overcome the Debtors' business judgment and the demonstrated

---

[16]   Lavvan initially mischaracterized the sentence read into the record at the first day hearing in two instances in the Lavvan Initial Objection.  *See* Lavvan Initial Objection ¶ 3 (referring to a "properly perfected *prior* security interest" versus a "properly perfected *first priority* security interest"); *id*. at ¶ 12 (referring to "prior perfected liens" versus a "properly perfected *first priority* security interest").  Once informed of its mischaracterization, Lavvan changed course and now argues that the DIP Motion seeks to prime Lavvan's asserted lien.  Lavvan Supplemental Objection ¶ 6.

need for debtor-in-possession financing in these chapter 11 cases.  And to the extent Lavvan's

argument is a backdoor attempt to avoid the adequate protection waiver in the Subordination

Agreement, it should be summarily dismissed.

II.    **Lavvan is Bound by the Subordination Agreement, Which Terms Make Clear that Lavvan Only Has a Junior Lien on Certain Collateral, is Payment Subordinated, Waived the Right to Seek Adequate Protection, and is Fully Enforceable**

A.    **Lavvan's Lien Is Subordinated**

19.    By admission, Lavvan concedes that its asserted lien is subordinated to the lien

granted to Foris pursuant to the Foris 2018 LSA.  Lavvan Supplemental Objection ¶ 1.  This is

clear upon review of paragraph 2 of the Subordination Agreement:

> Until Payment in Full of the Senior Debt, the Junior Lienholder subordinates any
> and all Junior Liens to any and all Senior Liens.  Notwithstanding the
> respective dates of attachment or perfection of any Senior Liens and any Junior
> Liens and notwithstanding (i) any lack or defect in the perfection of the Senior
> Liens or (ii) any avoidance, equitable subordination or recharacterization of the
> Senior Lienholder's rights or claims in an Insolvency Proceeding of Borrower, the
> Senior Liens shall at all times be prior to the Junior Liens.  The Junior Lienholder
> acknowledges that all Junior Lienholder Collateral as of the date hereof is also
> Senior Noteholder Collateral, provided that if at any time the Junior Lienholder
> holds any lien or security interest in any asset of the Grantor that is not Senior
> Lienholder Collateral, the Junior Lienholder agrees that it shall hold such lien or
> security interest and any products or proceeds thereof in trust for the Senior
> Lienholder, subject to the terms of this Agreement, as if the Senior Lienholder
> held a Senior Lien in such asset and as if such asset were Senior Lienholder
> Collateral.

Subordination Agreement ¶ 2.

B.    **Lavvan's Right to Payment is Subordinated**

20.    The Subordination Agreement subordinates the payment of any obligations owing

to Lavvan to the payment of, among other things, the obligations owing under the Foris 2018 LSA.

This is clear upon review of paragraph 3 of the Subordination Agreement:

> Junior Lienholder hereby subordinates any claim or right to payment it has or may
> have against Grantor or Borrower to which the Junior Lender holds (and has
> not waived) the Junior Lien (including, without limitation, any such unsecured

12

or deficiency claim in any Insolvency Proceeding of Borrower) to the Payment in Full of any and all debts, claims, rights to payment or Obligations of Borrower to Senior Lienholder (including, without limitation, any such unsecured or deficiency claim of Senior Lienholder in any Insolvency Proceeding of Borrower), regardless of whether the security interests of Senior Lienholder are perfected or unperfected, set aside, or avoided in an Insolvency Proceeding of Borrower, or whether any such claim or Obligation of Senior Lienholder against Borrower is equitably subordinated or recharacterized in any Insolvency Proceeding of Borrower.

Subordination Agreement ¶ 3.

### C.    Lavvan Waived Any Right to Seek Adequate Protection

21.    The Subordination Agreement includes express waivers of Lavvan's right to seek adequate protection.  First, pursuant to paragraph 6 of the Subordination Agreement, the "Junior Lienholder agrees not to seek adequate protection or the payment of interest, fees or other expenses in respect of the Junior Lienholder Collateral unless or until there has been Payment in Full of the Senior Debt."  Subordination Agreement ¶ 6.  By its plain language, this provision prohibits Lavvan from seeking adequate protection in these chapter 11 cases.

22.    Second, pursuant to paragraph 7 of the Subordination Agreement, "[t]he Junior Lienholder further agrees that in case that the Junior Lienholder should take or receive any security interest in, or lien on, any Senior Lienholder Collateral by way of the exercise of remedies by the Junior Lienholder in any manner contrary this Agreement, at any time prior to the Payment in Full of the Senior Debt, the Senior Lienholder shall be entitled to have the same vacated, dissolved and set aside by such proceedings at law, or otherwise, as the Senior Lienholder may deem proper . . . ."  Subordination Agreement ¶ 7.  This provision directly prohibits Lavvan from seeking a replacement lien on any collateral that is shared with Foris.

23.    Curiously, Lavvan does not acknowledge these obviously applicable prohibitions in the Lavvan Objection.  Instead, Lavvan wrongly asserts that "the Subordination Agreement – despite having several provisions concerning a bankruptcy case – never even mentions DIP

13

financing, let alone requires Lavvan to subordinate to DIP financing." Lavvan Supplemental Objection ¶ 8. It strains credulity to argue that the Subordination Agreement does not address DIP Financing given the express waiver of adequate protection. Adequate protection is a unique concept specifically addressed by Section 361 of Bankruptcy Code, and is contemplated in certain situations under Sections 362, 363, and 364 of the Bankruptcy Code. 11 U.S.C. § 361.

24.     Even if Section 364(d)(1)[17] of the Bankruptcy Code would authorize Lavvan to request adequate protection with respect to the priming of its lien (which it does not), doing so would be inconsistent with the RCLA and the Subordination Agreement – both of which allow for the incurrence of debt to a Permitted Senior Lender and provide no limit on the amount (or type) of such debt that can be incurred. More significantly, Lavvan has waived the right to seek adequate protection in all instances where the Foris debt under the Foris 2018 LSA has not been indefeasibly paid in cash in full. Subordination Agreement ¶ 6. But what is determinative is that by reason of the Subordination Agreement, Lavvan cannot be paid until the Foris 2018 LSA is indefeasibly paid in cash in full and that cannot happen until the DIP Facility is indefeasibly paid in cash in full. Any argument by Lavvan to the contrary directly contradicts the Subordination Agreement, is a breach of the Subordination Agreement, and must be rejected.

25.     The logical conclusion, supported by case law, is that when a creditor has waived its right to seek adequate protection, it has consented to the priming of a junior lien by a senior lienholder. *See, e.g.*, *RCD Invs. No. 4, Ltd. v. Foothill Capital Corp. (In re GDH Int'l, Inc.)*, Case No. 00-45647-BJH-11 (BJH), Adv. Proc. No. 00-4185 (BJH), 2001 Bankr. LEXIS 2230 (Bankr.

---

[17] Under section 364(d)(1) of the Bankruptcy Code, a creditor with a lien on property is only entitled to request adequate protection if a senior or equal lien on property is being sought pursuant to this section of the Bankruptcy Code. 11 U.S.C § 364(d)(1). Here, to the extent that Lavvan has a lien, its scope as to the Debtors' assets is limited and thus so too would be the adequate protection it might be afforded (if adequate protection was not waived pursuant to the Subordination Agreement).

14

N.D.T.X. Apr. 2, 2001) (granting summary judgment to senior lender and finding junior lienholder's liens could be primed in connection with postpetition financing by senior lender, and that no adequate protection need be provided, where junior lien holder had waived such right under the intercreditor agreement); *see also In re Bear Island Paper Co.*, Case No. 10-31202 (DOT), 2011 Bankr. LEXIS 1884, *20-21 (Bankr. E.D. Va. Mar. 30, 2011) (approving final DIP order and finding, pursuant to provisions of the parties' intercreditor agreement, the junior lenders had agreed their liens would be primed, and such junior lienholders would not seek adequate protection). That is precisely the case here.

### D.    The Subordination Agreement is Fully Enforceable under Section 510(a) of the Bankruptcy Code

26.    It is uncontroverted that the Subordination Agreement is an enforceable subordination agreement under the Bankruptcy Code—the Subordination Agreement includes an express acknowledgement that it is a "subordination agreement" under Section 510(a) of the Bankruptcy Code and shall remain in full force and effect and be treated as such during these chapter 11 cases. Subordination Agreement ¶ 14; *see also* 11 U.S.C. § 510(a) ("A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.").[18]

27.    Bankruptcy courts in this District enforce subordination agreements containing lien and payment subordination provisions. *See e.g., In re La Paloma Generating Co., et al.*, 595 B.R. 466, 477 (Bankr. D. Del. 2018) *aff'd sub nom. In re La Paloma Generating Co. LLC,* 609 B.R. 80

---

[18] Although not necessary to demonstrate enforceability in light of the Section 510(a) designation, the Subordination Agreement is governed by California law and under California Law, the Subordination Agreement is enforceable against the parties. *See Simas v. Western Distrib. Ctrs. (In re Western Distrib. Ctrs.)*, Case No. 93-17193, 1994 U.S. App. LEXIS 26221 (9th Cir. 1994). ("Subordination agreements are enforceable under California law. *See* Cal. Com. Code § 1209. There is no California law which indicates that the enforceability of a subordination agreement depends on the fulfillment of all conditions prior to the filing of bankruptcy. Therefore, under California nonbankruptcy law, the agreement is enforceable.").

(D. Del. 2019) (finding that a subordination agreement that contained payment subordination provisions was enforceable); *In re Consol Bedding, Inc.*, Case No. 09-11875 (BLS), Adv. Proc. No. 19-50727 (BLS), 2021 Bankr. LEXIS 1720, at *15 (Bankr. D. Del. June 25, 2021) (under an intercreditor agreement a junior secured creditor could not receive payment until the senior secured creditor was paid in full); *see also In re Energy Future Holdings Corp.*, Case No. 18-1957, 2019 WL 2535700, at *93 (3d Cir. June 19, 2019) (affirming the bankruptcy court and district court decisions that payments or distributions of collateral would be subject to the waterfall provisions of an intercreditor agreement).

28.   So too do courts in other jurisdictions. *See, e.g. In re First Baldwin Bancshares, Inc.*, Case No. 13-00563, 2013 WL 5429844, at *7 (Bankr. S.D. Ala. Sept. 30, 2013) (enforcing a payment subordination provision); *Highland Park CDO I Grantor Trust, Series A v. Wells Fargo Bank, N.A.,* No. 08 Civ. 5723 (NRB), 2009 U.S. Dist. LEXIS 53272, at *4 (S.D.N.Y. June 16, 2009) ("[T]he Intercreditor Agreement bars Highland from recovering on the mezzanine loan until the senior loan is repaid in full."); *see also In re Ion Media Networks Inc.*, 419 B.R. 585, 595 (Bankr. S.D.N.Y. 2009) ("Moreover, plainly worded contracts establishing priorities and limiting obstructionist, destabilizing and wasteful behavior should be enforced and creditor expectations should be appropriately fulfilled. The Intercreditor Agreement is an enforceable contract under section 510(a), and the Court will not disturb the bargained-for rights and restrictions governing the second lien debt.").

29.   Moreover, bankruptcy courts routinely enforce other common features of silent second intercreditor and subordination agreements including:

- **Waivers of Voting Rights**: *see, e.g.*, *In re Avondale Gateway Ctr. Entitlement, LLC,* Case No. 02-09-BK-12153-CGC, 2011 WL 1376997, at *4 (D. Ariz. Apr. 12, 2011) (upholding a subrogation provision in intercreditor agreement that allowed senior creditor to exercise junior creditor's voting rights because such rights could be assigned

16

under bankruptcy law, and state law permitted subrogation of assignable rights); *In re Coastal Broad. Sys., Inc.*, Case No. 12-5682(RMB), 2012 WL 2803745, at *7-8 (Bankr. D. N.J. July 6, 2012) (holding assignment of voting rights provision in subordination agreement to be enforceable and further noting that "enforcement of such agreements is necessary to prevent junior creditors from receiving windfalls after having explicitly agreed to accept less lucrative payment arrangements"); *In re Curtis Ctr. Ltd. P'ship*, 192 B.R. 648, 660 (Bankr. E.D. Pa. 1996) (holding provision of subordination agreement allowing senior creditor to vote for junior creditor was enforceable); *Blue Ridge Investors, II, LP v. Wachovia Bank, N.A. (In re Aerosol Packaging, LLC)*, 362 B.R. 43, 47 (Bankr. N.D. Ga. 2006) (finding that under the express terms of a subordination agreement, the voting rights of the junior creditor were assigned to the senior creditor);

- **Waivers of Adequate Protection**: *see, e.g., Aurelius Cap. Master, Ltd. v. Tousa Inc.*, Case No. 08-61317-CIV, 2009 WL 6453077, at *8 (S.D. Fla. Feb. 6, 2009) ("[P]ursuant to Article 5.2 of the Intercreditor Agreement, Wells Fargo is barred from 'request[ing] any form of adequate protection or any other relief in connection with the use of the cash.' Put differently, Wells Fargo had bargained away its right to object by entering into the Intercreditor Agreement.");

- **No Action Clauses**: *see, e.g., BOKF, NA v. Wilmington Sav. Fund Soc'y, FSB (In re MPM Silicones, L.L.C.)*, 596 B.R. 416, 431 (S.D.N.Y. 2018) (citing *In re Innkeepers U.S.A. Trust*, 448 B.R. 131 (Bankr. S.D.N.Y. 2011)) (holding securitization trust certificate holder was bound by no-action clause and could not raise individual objections because it had expressly delegated its powers to do so); *In re American Roads, LLC*, 496 B.R. 727 (Bankr. S.D.N.Y. 2013) (holding bondholders were prohibited from taking action against debtor's plan of reorganization where a specific "no action" clause existed in their agreement); and

- **Plan Objections**: *see, e.g, Ion Media*, 419 B.R. at 595 (holding junior lenders could not object to a plan where the intercreditor agreement included an express waiver of the right to vote contrary to senior lenders).

30.    Under the Subordination Agreement, Lavvan is prohibited from taking any action inconsistent with its contractual agreements set forth in the Subordination Agreement. To the extent that Lavvan is seeking to be relieved of its obligations under the Subordination Agreement, including any backdoor attempt to seek adequate protection, or seeking to be paid prior to the indefeasible payment in cash in full of the DIP Facility, it is prohibited from doing so. *See Ion Media*, 419 B.R. at 597 (finding intercreditor agreement expressly prohibited second lien lenders from "oppos[ing], object[ing] to or vot[ing] against any plan of reorganization or disclosure

162749481v1

statement the terms of which are consistent with the rights of the First Priority Secured Parties under the Security Agreement" unless first lien lenders were paid in full).

31.     Based upon Lavvan's express contractual undertakings in the Subordination Agreement, it has agreed to the DIP Facility being secured by a lien that primes the Foris Liens on its shared collateral, has agreed not to be paid until the Foris 2018 LSA is indefeasibly paid in cash in full, and has waived its right to object to the same, take any action inconsistent with the same, or ask for adequate protection.   Accordingly, the Lavvan Objection must be overruled.

III.     **All Other Objections Raised in the Lavvan Objection Should be Overruled**

32.     The Foris Lenders join in the arguments set forth in the Debtors' Reply to the Lavvan Objection and separately address several other points raised in the Lavvan Objection.

A.      **The Milestones Are Appropriate**

33.     Lavvan's argument that the milestones set forth in the DIP Motion and DIP Credit Agreement will impede Lavvan's right to credit bid are misguided.  As the Court is aware, the Debtors stipulated to lift the automatic stay for the sole purpose of allowing the ICC to render a decision.  That decision should be received well in advance of any qualified bid deadline,[19] and likely in advance of any hearing to approve bidding procedures governing the sale of any of the Debtors' assets.  Thus, this point in the Lavvan Objection should be resolved at a later date, and provides no basis for modifying the proposed Final Order.

B.      **It is Premature to Address Credit Bid Rights**

34.     It is premature for the Court to decide any challenge as to the credit bid rights of the Foris Prepetition Secured Lenders.  Paragraph 24 of the proposed Final Order only provides

---

[19]     The DIP Credit Agreement makes clear that any sale process will not commence until the Sale Toggle Event Notice is issued.  As such, bid procedures will be not established and thus the bid deadline will not be fixed until a bidding procedures motion is filed and approved by the Court.  Thus, there is ample time for Lavvan to file a motion and seek relief as to its right, if any, to credit bid.

18

that the Foris Prepetition Secured Lenders have a right to credit bid "pursuant to section 363(k) of the Bankruptcy Code" subject only to the Challenges.  Even if Lavvan believes that it has a colorable Challenges, such Challenges are premature today in the context of the proposed Final Order.  But regardless, Lavvan's characterization that either the DIP Secured Parties or the Foris Prepetition Section Lenders is a "junior creditor" is factually incorrect, as described above.  Even assuming, *arguendo*, that Lavvan has an allowed secured claim against Amyris, Lavvan would only move from a junior lienholder position to a senior lienholder position with respect to such shared collateral if, at a minimum, the debt obligations owed under the DIP Facility and the Foris 2018 LSA have been indefeasibly paid in cash in full.

## **CONCLUSION**

35.     For the reasons set forth in this Reply, the Foris Lenders respectfully request that the Court overrule the Lavvan Objection and enter proposed Final Order.

*[Remainder of Page Left Intentionally Blank]*

19

162749481v1

Dated: September 11, 2023
Wilmington, Delaware

*/s/ David M. Fournier*
David M. Fournier (DE No. 2812)
Kenneth A. Listwak (DE No. 6300)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Hercules Plaza, Suite 5100
1313 N. Market Street, P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
E-mail:  david.fournier@troutman.com
               ken.listwak@troutman.com

-and-

Michael H. Goldstein (admitted *pro hac vice*)
Alexander J. Nicas (admitted *pro hac vice*)
Debora A. Hoehne (admitted *pro hac vice*)
Artem Skorostensky (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800
Email:  mgoldstein@goodwinlaw.com
              anicas@goodwinlaw.com
              dhoehne@goodwinlaw.com
              askorostensky@goodwinlaw.com


*Counsel to the Foris Prepetition Secured Lenders and the
DIP Secured Parties*