# EXHIBIT B

**(Redline)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>Debtors.¹ | Chapter 11<br><br>Case No. 23-11131 (~~(~~TMH~~)~~)<br><br>(Jointly Administered)<br><br>**Re Docket Nos. 16, 51** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR AND PAY BANK FEES, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")² of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), for the entry of a final order (this "Final Order"), pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2: (i) authorizing the Debtors to (a) continue operating the Cash Management System, (b) honor and pay the Bank Fees in the normal course, including any prepetition Bank Fees, and (c) maintain existing business forms; and (ii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; upon the Debtors' representation that the Bank Fees and Intercompany Transactions with Non-Debtor Affiliates are consistent with the Debtors' debtor in possession financing budget and in compliance with the DIP Credit Agreement; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and

---

¹ A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

² A capitalized term used but not defined herein have the meaning ascribed to it in the Motion.

this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at an interim hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED on a final basis, as set forth in this Final Order.

2. The Debtors are authorized, but not directed to: (a) continue operating the Cash Management System, substantially as identified on Exhibit C to the Motion and as described in the Motion; (b) honor their prepetition obligations related thereto; (c) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors-in-possession, *provided* that once the Debtors' existing supply of checks has been exhausted, the Debtors shall, when reordering (or with respect to checks the Debtors or their agents print themselves, within 15 days hereof) require or print, as applicable, the "Debtor in Possession" legend and corresponding bankruptcy case number on all such items; (d) continue to perform Intercompany Transactions; (e) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on Exhibit D to the Motion; (f) treat the Debtor Bank Accounts for all purposes as

accounts of the Debtors as debtors-in-possession; (g) deposit funds into and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (h) pay the Bank Fees, including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts, and otherwise to perform their obligations under the documents governing the Bank Accounts; *provided* that in the case of each of (a) through (h), such action is taken in the ordinary course of business and consistent with historical practices.

3. The Bank is authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors-in-possession, without interruption and in the ordinary course of business consistent with historical practices, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order; *provided* that the Debtors shall only instruct or request the Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for payment after the Petition Date as authorized by an order of the Court.

4. The Bank is authorized to debit the Debtors' accounts in the ordinary course of business, consistent with historical practices, without the need for further order of this Court for: (a) all checks drawn on the Debtors' accounts that are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in the Debtors' accounts with such Bank prior to the Petition Date that

have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent that the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Bank as service charges for the maintenance of the Cash Management System.

5. Any existing agreements between or among the Debtors, the Bank, and other parties shall continue to govern the postpetition cash management relationship between the Debtors and the Bank, and all of the provisions of such agreements, including, without limitation, the termination provisions, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Bank may, without further order of the Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, consistent with historical practices, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Final Order; provided that any such changes to the Cash Management System shall be subject to the prior written consent (not to be unreasonably withheld, conditioned, or delayed) of the DIP Agent and the Committee (email being sufficient) or Court order.

6. The Debtors' time to comply with section 345(b) of the Bankruptcy Code is hereby extended for a period of thirty (30) days from the date of this Order (the "Extension Period"), provided, however, that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or a final waiver of the requirements of section 345(b) in these Chapter 11 Cases.

7. For the Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, as soon as practicable after entry of this

Final Order, the Debtors shall: (a) contact such Bank; (b) provide such Bank with each of the Debtors' employer identification numbers; and (c) identify each of their Bank Accounts held at such Bank as being held by a debtor-in-possession in these Chapter 11 Cases.

8. For any Bank at which the Debtors hold Bank Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the Bank to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Final Order. The U.S. Trustee's rights to seek further relief from this Court in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

9. All banks maintaining any of the Bank Accounts that are provided with notice of this Final Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date; *provided, however*, that any such bank shall not be found to be in violation of this Final Order nor liable to the Debtors or their estates should any such bank honor or pay any bank payment: (a) in a good-faith belief that the Court has authorized such payment to be honored; or (b) as the result of a mistake made despite implementation of customary item handling procedures.

10. The Bank is authorized, without further order of the Court, to deduct any applicable fees from the applicable Bank Accounts in the ordinary course of business consistent with historical practices and pursuant to the applicable agreements governing each Bank Account.

11. The Bank is authorized, without further order of the Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other

5

returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers, including, without limitation, on account of checks that have been dishonored or returned as a result of insufficient funds in the Bank Accounts, in each case to the same extent that the Debtors were responsible for such items prior to the Petition Date.

12. Subject to the terms set forth herein, any bank, including the Bank, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of the Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order: (a) at the direction of the Debtors; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be liable or shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

13. Any banks, including the Bank, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Bank shall not have any liability to any party for relying on such representations to the extent that such reliance otherwise complies with applicable law.

DOCS_DE:243865.6 03703/003243865.18 03703/003

14. The Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions in connection with the Cash Management System in the ordinary course of business; *provided, however*, that any disbursements of cash from the Debtors to the Non-Debtor Affiliates shall not exceed $18,000,000.00 in the aggregate per month; provided however that such disbursements shall not exceed $23,000,000 for the month of September. The Debtors shall (i) maintain accurate and detailed records of all Intercompany Transactions and the payment of Intercompany Claims so that all transactions may be readily traced, ascertained, and recorded properly on applicable intercompany accounts (if any) and distinguished between prepetition and postpetition transactions for the purposes of determining administrative expense status and (ii) a Debtor by Debtor summary on a semi-monthly basis of any postpetition Intercompany Transactions involving the transfer of cash for the preceding month (to be available on the 21st day of the following month). The Debtors shall provide the DIP Agent and the Committee with any such records of all Intercompany Transactions within three (3) business days of the DIP Agent's or Committee's request for such records. The Debtors shall provide the Committee and the DIP Agent on a monthly basis with a matrix of all intercompany balances (reflecting (a) balances between Debtors and (b) between Debtors and Non-Debtors).

15. In the event that the DIP Lender elects the Sale Toggle Event (as defined in the *Motion of the Debtors for Interim and Final Orders (I) Authorizing the Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 171], the Committee reserves all rights to investigate and object to the Intercompany Transactions. Such an objection may be brought on

an emergency basis, with a hearing on such objection within ten (10) calendar days of filing of the objection.

16. ~~15.~~ The Debtors and the Banks may, ~~without further order of this~~ with prior written consent (not to be unreasonably withheld, conditioned, or delayed) of the DIP Agent and the Committee (email being sufficient) or Court order, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business, consistent with historical practice, including, without limitation, the opening of any new bank accounts, the closing of any existing Bank Accounts, and entrance into ancillary agreements, including new deposit account control agreements related to the foregoing, as the Debtors may deem necessary and appropriate.  Any new bank account opened by the Debtors shall be established at an institution that is (a) a party to a UDA with the United States Trustee for the District of Delaware or is willing to immediately execute a UDA, and (b) bound by the terms of this Interim Order. The Debtors shall provide notice within fifteen (15) days to the U.S. Trustee, the Committee, counsel to the DIP Agent, the DIP Lenders and the Foris Prepetition Lenders, of the opening of such account or closing of any Bank Account; provided, that such opening or closing shall be timely indicated on the Debtors' monthly operating reports.

17. ~~16.~~ All postpetition payments from a Debtor to another Debtor or non-Debtor under any postpetition Intercompany Transactions authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.

18. ~~17.~~ Nothing contained in the Motion or this Final Order shall be construed to:  (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date; or (b) alter or impair the validity, priority, enforceability, or

perfection of any security interest or lien or setoff right, in favor of any person or entity, that existed as of the Petition Date.

19.   18. Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be: (a) an admission by the Debtors or the Committee as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors', the Committee's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding by the Debtors or the Committee that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization by any Debtor to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors or the Committee as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors, the Committee, or any other party in interest against any person or entity under the Bankruptcy Code or other applicable nonbankruptcy law.

20.   19. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

21. Debtors and PayPal Holdings, Inc. and its affiliates ("PayPal") are a party to certain PayPal User Agreements (the "User Agreements") for, among other things the processing of payment transactions in exchange for a Processing Fee. Debtors are authorized and directed to continue to operate under the User Agreements and shall be required to pay or reimburse PayPal for all obligations owed pursuant to the terms and conditions of the User Agreements, including fees, charges, refunds, chargebacks, reserves, and other amounts due and owing from Debtors to PayPal, whether such obligations were incurred prepetition or postpetition. PayPal is authorized to receive and obtain payment for such obligations that Debtors owes to it, as provided under and in the manner set forth in the User Agreements, including without limitation, by way of recoupment or setoff without further order of the Court regardless of whether such obligations arose prepetition or postpetition. Pursuant to the terms and conditions of the User Agreements, PayPal has and shall continue to have the right to setoff any and all obligations that Debtors owe to it against the sale revenue it processes for Debtors.

22. ~~20.~~ Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

23. ~~21.~~ Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

24. ~~22.~~ Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

25. ~~23.~~ The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

26. ~~24.~~ This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.