**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*[1] | Case No. 23-11131 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 19** |

**STATEMENT OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS REGARDING THE MOTION
OF THE DEBTORS FOR INTERIM AND FINAL ORDERS (I)
AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING AND (B)
TO UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO
PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") states as follows (the "**Statement**") with respect to the *Motion of the Debtors for Interim and Final Orders (i) Authorizing Debtors (a) to Obtain Postpetition Financing and (b) to Utilize Cash Collateral, (ii) Granting Adequate Protection to Prepetition Secured Parties, (iii) Modifying the Automatic Stay, (iv) Scheduling a Final Hearing, and (v) Granting Related Relief* [Docket No. 19] (the "**DIP Motion**"):[2]

1. There is no question that these are hugely complex chapter 11 cases and that the Debtors have significant funding needs during the pendency of these cases. The Debtors

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Capitalized terms used but not defined in this Objection have the meanings used in the DIP Motion or the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 18].

generated revenue of $269.8 million in 2022, operate eight major consumer brands, in addition to their core businesses of developing, commercializing, and manufacturing rare molecules through proprietary fermentation processes, and have material operations in the United States, Brazil, the United Kingdom, and Portugal, among other countries.  The Debtors commenced these cases to restructure over $1 billion dollars of funded indebtedness, including approximately $690 million of unsecured convertible notes and hundreds of millions of dollars of unsecured obligations to trade vendors, litigation counterparties, employees, and other junior stakeholders.  These cases currently contemplate the sale of certain consumer brands, and a plan process and/or sale process for the remaining parts of their businesses.  In other words, there is a lot of work to do to right this ship and secure a successful restructuring for the benefit of its stakeholders.  Quite simply, the Committee needs its chosen advisors front and center in that process, including in the investigation of what happened to this company and why unsecured creditors may be left unsatisfied.

2. Not surprisingly, the Committee and its advisors have been "drinking from a firehose" and getting up to speed as quickly as possible after being appointed in these cases.  In particular, the Committee's advisors have engaged in extensive negotiations with the Debtors and the DIP Lenders regarding the Committee's concerns about the Debtors' proposed DIP financing.  There is no question that the $190 million DIP facility has certain attractive aspects, including a relatively low interest rate and the absence of any "roll-up."  Rather, the Committee's principal concern with the DIP was, and remains, that it does not adequately fund the Debtors' restructuring process—which is being dictated by the DIP Lenders (which are affiliates of the Debtors' largest shareholder and a member of Amyris, Inc.'s board of directors, John Doerr).  In addition, the Committee has concern that the Milestones do not provide the Debtors with enough

time to address pressing operational issues and refine a go-forward business plan, run a sales process(es), and negotiate, develop, and confirm a plan of reorganization.

3.  Following extensive, around-the-clock negotiations among the Committee, the Debtors, and the DIP Lenders, the parties were able to address, at least for the time being, certain critical path issues, including ensuring there is additional funding for the Committee's professionals to acquit their fiduciary duties to unsecured creditors. Regrettably, those discussions did not result in agreement on some of the most critical path issues. Most critically, the DIP Lenders were unwilling to provide additional liquidity that is necessary to effectuate the restructuring strategy favored by the DIP Lenders, to say nothing if that process is delayed and additional time is required to maximize stakeholder value. In addition, as a result of this process, the Committee has concerns that certain aspects of the DIP Facility restrict the Committee's ability to discharge its fiduciary duties by limiting the budget allocated to its professionals. In particular, the DIP Lenders refused to engage with—and intimated that they will object to the retention of—the Committee's proposed investment banker, Jefferies LLC ("**Jefferies**"). This is troubling behavior from a lender that has led the Debtors into a complicated, multi-faceted restructuring process that will require the Committee to have a sound, informed view of not only the sale process(es), but potentially valuation and capital structure issues and distributions in the absence of a sale of some or all of the Debtors' business segments.

4.  Despite its ongoing concerns, the Committee did—based on the compromise reached with the parties and related revisions to the proposed Final Order—agree that it would not object to the DIP Motion, avoiding a messy and contested second-day hearing and the attendant significant costs to the estate. Nevertheless, the Committee—as it must—intends to fully prosecute its duties and have its professionals pursue these objectives (including starting

with its vigorous pursuit of Jefferies' retention, given the critical role that Jefferies will play in these cases), despite the problematic issues in the DIP financing.

[*Remainder of page intentionally left blank*]

Dated:  September 13, 2023
       Wilmington, Delaware

Respectfully submitted,

*/s/ Katelin A. Morales*
Christopher M. Samis (No. 4909)
Katelin A. Morales (No. 6683)
Sameen Rizvi (No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email:  csamis@potteranderson.com
          kmorales@potteranderson.com
          srizvi@potteranderson.com

-and-

Gregory F. Pesce, Esq.
Andrew F. O'Neill, Esq.
**WHITE & CASE LLP**
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  gpesce@whitecase.com
          aoneill@whitecase.com

-and-

John Ramirez, Esq.
Andrea Kropp, Esq.
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  john.ramirez@whitecase.com
          andrea.kropp@whitecase.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*