# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al*.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered)<br>**Hearing Date: October 18, 2023 at 2:00 p.m. (ET)**<br>**Obj. Deadline: October 4, 2023 at 4:00 p.m. (ET)** |

## APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF JEFFERIES LLC AS INVESTMENT BANKER PURSUANT TO 11 U.S.C. §§ 328(a) AND 1103(a), EFFECTIVE AS OF SEPTEMBER 1. 2023 AND (II) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby files this application (the "Application") for an order, substantially in the form attached hereto as **Exhibit A**, authorizing the retention and employment of Jefferies LLC ("Jefferies") as its investment banker, effective as of September 1, 2023 pursuant to section 1103 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). In support of this Application, the Committee respectfully submits the declaration of Leon Szlezinger, Managing Director and Joint Global Head of Debt

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

IMPAC 11067113v.2

Advisory & Restructuring at Jefferies (the "Szlezinger Declaration"), attached hereto as **Exhibit B**, and respectfully represents as follows:

## JURISDICTION AND VENUE

1. Pursuant to 28 U.S.C. §§ 157 and 1334, this Court has jurisdiction to consider and grant the relief requested herein. A proceeding to consider and grant such relief is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 328(a) and 1103(a) of the Bankruptcy Code. Relief is also proper pursuant to Bankruptcy Rule 2014 and Local Rules 2014-1 and 2016-2.[2]

## BACKGROUND

2. On August 9 and August 21, 2023 (as applicable, the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No trustee or examiner has been appointed in these Chapter 11 Cases.

4. On August 27, 2023, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Committee consists of the following seven (7) members: (i) Cosan U.S. Inc., (ii) U.S. Bank Trust Company, National Association as Trustee; (iii) Sartorius Stedim North

---

[2] Pursuant to Local Rule 9013-1(f), the Committee hereby confirms its consent to the entry of a final order by this Court in connection with this Application if it is later determined that this Court, absent consent of the parties, cannot enter a final order or judgment with respect to this Application consistent with Article III of the United States Constitution.

America, Inc.; (iv) Hearst Magazine Media, Inc.; (v) Wiley Companies; (vi) Park Wynwood, LLC.; and (vii) Allog Participacoes, Ltda [Docket No. 152].

5.  On August 28, 2023, the Committee selected White & Case LLP as its proposed lead counsel and Potter Anderson as its proposed Delaware counsel. On August 30, 2023, the Committee selected FTI Consulting, Inc., ("FTI") as its proposed financial advisor, and on September 1, 2023, Jefferies as its investment banker.

## RELIEF REQUESTED

6.  The Committee seeks entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Committee to retain and employ Jefferies as its investment banker, effective as of September 1, 2023, pursuant to the terms and subject to the conditions of that certain engagement letter between Jefferies and the Committee dated September, 1 2023, a copy of which is annexed as **Exhibit 1** to **Exhibit A** attached hereto (the "Engagement Letter");[3] and (b) waiving and modifying certain of the time-keeping requirements of Bankruptcy Rule 2016(a), any guidelines (the "Trustee Guidelines") of the United States Trustee, the Local Rules, and any other guidelines regarding submission and approval of fee applications. The Engagement Letter describes: (a) the various services that the Committee seeks Jefferies to perform on its behalf during these Chapter 11 Cases; and (b) the terms and conditions of Jefferies' proposed engagement by the Committee.

---

[3] Capitalized terms not defined here shall have the meanings set forth in the Engagement Letter.

**JEFFERIES' QUALIFICATIONS AND THE NEED FOR JEFFERIES' SERVICES**

7.  The Committee submits this Application because of its need to retain a qualified investment banker to assist it in the critical tasks associated with guiding the Committee through these Chapter 11 Cases. The Committee believes that its retention of an investment banker is necessary and appropriate to enable it to evaluate the financial and economic issues raised by the Debtors' chapter 11 proceedings, successfully consummate any sale or restructuring transaction, and effectively carry out its duties as the Committee.

8.  The Committee selected Jefferies as its investment banker in these Chapter 11 Cases based upon Jefferies' extensive experience in matters involving complex financial restructurings and its excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States. The Committee thus believes that Jefferies is both well qualified and uniquely able to advise the Committee in these Chapter 11 Cases.

9.  As set forth in the Szlezinger Declaration, Jefferies is a full-service investment banking firm, with approximately 4,000 employees in more than 45 offices around the world. Jefferies and its senior professionals have extensive expertise providing investment banking services to financially distressed companies, creditors, committees, equity holders, asset purchasers, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court. Jefferies and its professionals are providing or have provided investment banking, financial advisory, and other services in connection with the following recent cases, among others: *In re FTX Trading Ltd. Case* No. 22-11068- (JTD) (Bankr. D. Del. Feb. 15, 2023); *In re Clovis Oncology Inc.*, Case No. 22-11292 (JKS) (Bankr. D. Del. Feb. 8, 2023); *In re Hospitality Investors Trust*, Case No. 21-10831 (CTG) (Bankr. D. Del. May 20,

2021); *In re CarbonLite Holdings LLC*, Case No. 21-10527 (JTD) (Bankr. D. Del. Apr. 7, 2021); *In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Jan. 13, 2021); *In re Southland Royalty Co. LLC*, Case No. 20-10158 (KBO) (Bankr. D. Del. May 7, 2020); *In re Melinta Therapeutics, Inc.*, Case No. 19-12748 (LSS) (Bankr. D. Del. Feb. 7, 2020); *In re Clover Tech. Grp., LLC*, Case No. 19-12680 (KBO) (Bankr. D. Del. Jan. 21, 2020); *In re Dura Auto. Sys., LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019); *In re Cloud Peak Energy Inc.*, Case No. 19-11047 (KG) (Bankr. D. Del. Jul 1, 2019).

## SCOPE OF SERVICES

10. Subject to the Court's approval, the Committee anticipates that Jefferies will perform the following investment banking services, among others, pursuant to the Engagement Letter, as mutually agreed upon by Jefferies and the Committee and as appropriate:[4]

   (a) Act as exclusive investment banker to the Committee in connection a sale or other business transaction or series of transactions, involving all or a material portion of the Debtors' equity or assets, through any form of transaction, including, without limitation, a merger, stock purchase, asset purchase, recapitalization, reorganization, consolidation or amalgamation (and including, but not limited to, a sale under Section 363 of the Bankruptcy Code, including any credit bid transaction) (any such transaction, an "M&A Transaction");

   (b) Act as exclusive investment banker to the Committee in connection with any restructuring of the Debtors' outstanding indebtedness including, without limitation, through any offer by the Debtors with respect to any outstanding indebtedness, a solicitation of votes, approvals, or consents giving effect thereto (however such result is achieved, including, without limitation, through any plan confirmed pursuant to chapter 11 of the Bankruptcy Code), the execution of any agreement giving effect thereto, an offer by any party to convert, exchange or acquire any material outstanding indebtedness, or any similar balance sheet restructuring involving the Debtors (any such transaction, a "Restructuring");

   (c) Act as exclusive investment banker to the Committee in connection with any material investment by any third party in the Debtors and/or any other financing

---

[4] To the extent there is any inconsistency between this summary of the services set forth in the Engagement Letter and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

IMPAC 11067113v.2

<ul>
<li>activities the Debtors engage in (any such transaction, a "<u>Financing</u>" and a Financing, an M&A Transaction and a Restructuring, each and together, a "<u>Transaction</u>");</li>
</ul>

(d) Become familiar with, to the extent Jefferies deems appropriate, and analyze the business, operations, properties, financial condition and prospects of the Debtors;

(e) Advise the Committee on the current state of the "restructuring market";

(f) Analyze various Transaction scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of those stakeholders impacted by a Transaction;

(g) Assist and advise the Committee in developing a general strategy for accomplishing a Transaction;

(h) Advise the Committee on any capital structure, debt capacity and feasibility issues in connection with any Transaction;

(i) Assist and advise the Committee in analyzing historical financing transactions;

(j) Assist and advise the Committee in implementing a Transaction involving the Debtors;

(k) Assist and advise the Committee in evaluating and negotiating any Transaction, including any securities, contingent value rights or debt instruments that may be issued in any Transaction;

(l) Assist and advise the Committee in implementing a Transaction involving the Debtors;

(m) Provide testimony, as necessary and appropriate, with respect to matters on which Jefferies has been engaged to advise the Committee hereunder, in these Chapter 11 Cases; and

(n) Render such other investment banking services as may from time to time be agreed upon by the Committee and Jefferies.

11. The services to be rendered by Jefferies will not be duplicative of the services performed by FTI or any other professional, and Jefferies will work together with the other professionals retained by the Committee to minimize and avoid duplication of services. In fact, given the uncertainties and exigencies of these cases, Jefferies' services as an investment banker are particularly needed in these cases for at least two reasons. *First*, these are large and complex

6

cases—the Debtors potentially have up to $2.2 billion in debt outstanding, with unsecured creditors holding the lion's share of this amount, including almost $700 million in unsecured bonds, more than $100 million in trade debt, and up to a $1 billion dollars in contract-related claims. Given the magnitude of these claims, as well as the fact that unsecured creditors will likely populate the only non-insider voting class(es) in these cases, the Committee will play a critical role in evaluating all sale and restructuring options available to the Debtors, and it will require the services of both FTI and Jefferies to successfully undertake this evaluation.

12.     *Second*, the extremely compressed timeframe and "toggle" nature of the cases as proposed by the Debtors mandate that the Committee have the services of both a financial advisor and an investment banker at its disposal. More specifically, the Debtors have stated that they intend to use the chapter 11 process to both sell their consumer brands businesses and reorganize around the Lab-to-Market™ platform. The first thirty-five days of these Chapter 11 Cases were intended to be used by the Debtors to promote this approach through engagement with major constituencies in furtherance of developing a consensual plan of reorganization while continuing the process of marketing its noncore consumer brands. Instead, the milestone for the Debtors' DIP lender to "toggle" to an all-asset sale has been extended, and the cases continue to hinge on the DIP Lender's future determinations. In the event a deal to pursue a plan is not reached, the Debtors would pivot to a sale of substantially all assets pursuant to section 363 of the Bankruptcy Code, and they would then have approximately two months to market and complete a sale of the Lab-to-Market™ platform.

13.     It is clear that the Committee will require Jefferies' services with respect to both sides of this "toggle" structure. On the restructuring side, Jefferies will need to evaluate the plan's overall structure, test its assumptions, understand valuation implications, and ultimately weigh in

7

on its feasibility. It may also be required to assist the Committee with assessing the potential equity split and future value considerations that will undergird relevant plan structures. These are all pure investment banking workstreams, and the Committee deserves to have access to Jefferies for this expertise. On the sale side, Jefferies will be expected to assess the marketing efforts undertaken to date by Intrepid Investment Bankers LLP ("Intrepid"), the Debtors' investment banker, use its connections to bring more potential bidders to the table, and work with Intrepid to ensure that the bids received and the conduct of the auction itself are handled in such a way so as maximize the proceeds ultimately available for the benefit of the Debtors' estates and their unsecured creditors. Hiring an investment banker would be appropriate in a case of this magnitude if there were a clear path to either a reorganization or a comprehensive sale. This case will have both, heightening the Committee's need for an investment banker.

## PROFESSIONAL COMPENSATION

14. As set forth more fully in the Engagement Letter, Jefferies and the Committee have agreed on the following terms of compensation and expense reimbursement (the "Fee and Expense Structure"):[5]

    (a) **Monthly Fee**. A monthly fee (the "Monthly Fee") equal to $125,000 per month until the termination of the engagement. The first Monthly Fee shall be payable as of the date of the Engagement Letter, and each subsequent Monthly Fee shall be payable in advance on each monthly anniversary of such date. Additionally, commencing with the fifth full Monthly Fee actually paid to Jefferies under the Engagement Letter, an amount equal to fifty percent (50%) of all full Monthly Fees actually and subsequently paid to Jefferies shall be credited once, without duplication, against any Transaction Fee (as defined below) subsequently payable to Jefferies.

    (b) **Transaction Fee**. A transaction fee (the "Transaction Fee") in an amount equal to $2,000,000. The Transaction Fee shall be earned upon the consummation of

---

[5] To the extent there is any inconsistency between the summary of the Fee and Expense Structure set forth in this Application and the Fee and Expense Structure as set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

IMPAC 11067113v.2

an M&A Transaction involving all or substantially all of the assets of the Debtors or the confirmation of a plan pursuant to the Bankruptcy Code and the Transaction Fee shall be payable upon the consummation of any chapter 11 plan and/or any dismissal or other resolution of the Debtors' Chapter 11 Cases. For the avoidance of doubt, only one Transaction Fee may be payable to Jefferies under the Engagement Letter.

(c) **Expenses.** In addition to any fees that may be paid to Jefferies under the Engagement Letter, whether or not any Transaction occurs, the Debtors will reimburse Jefferies, promptly upon receipt of an invoice therefor, for all out-of-pocket expenses (including fees and expenses of its counsel, ancillary expenses and the fees and expenses of any other independent experts retained by Jefferies) incurred by Jefferies and its designated affiliates in connection with the engagement contemplated thereunder.

15. During the pendency of these Chapter 11 Cases, Jefferies shall apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the proposed compensation arrangement set forth in the Engagement Letter.

16. The Committee believes that the Fee and Expense Structure set forth in the Engagement Letter is reasonable. The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Jefferies and the fee structures typically utilized by leading investment banking firms of similar stature to Jefferies for comparable engagements, both in and out of court. The Fee and Expense Structure is consistent with Jefferies' normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein. Moreover, the Fee and Expense Structure is reasonable in light of: (a) industry practice; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) Jefferies' substantial experience with respect to investment banking services; and (d) the nature and scope of work to be performed by Jefferies in these Chapter 11 Cases. In particular, the Committee believes that the Fee and Expense Structure creates a proper balance between fixed

monthly fees and contingency fees. Similar fixed and contingency fee arrangements have been approved and implemented in other recent large chapter 11 cases. *See, e.g., In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Jan. 13, 2021) (authorizing Jefferies' retention as investment banker); *In re Dura Automotive Systems, LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3, 2018) (same); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6, 2018).[6]

17. Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are not hours-based, Jefferies does not maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals. Given the foregoing and that Jefferies' compensation is based on fixed fees, the Committee requests that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court, or any other guidelines regarding the submission and approval of fee applications, Jefferies' professionals be excused from maintaining time records as set forth in Bankruptcy Rule 2016(a) and the Trustee Guidelines in connection with the services to be rendered pursuant to the Engagement Letter. Jefferies will nonetheless maintain reasonably detailed summary time records in one-half hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed. Courts in other large chapter 11 cases have excused flat-fee professionals from time-keeping requirements under similar circumstances. *See, e.g., In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Jan. 13, 2021) (requiring

---

[6] Because of the voluminous nature of the orders cited herein, they are not attached to this Application. Copies of these orders, however, are available on request.

10

IMPAC 11067113v.2

Jefferies only to keep reasonably detailed summary time records in one-half hour increments while indicating the total hours incurred by each professional for each day and briefly describing the nature of the work performed); *In re Dura Automotive Systems, LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3, 2018) (same); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6, 2018) (same).[7]

### INDEMNIFICATION OF JEFFERIES

18. As part of the overall compensation payable to Jefferies under the terms of the Engagement Letter, the Engagement Letter provides for certain indemnification obligations to Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees, and agents, and any other controlling persons, to the fullest extent lawful, from and against any claims, liabilities, losses, damages, costs, and expenses, as incurred, related to or arising out of or in connection with Jefferies' services under the Engagement Letter.[8] Such terms of indemnification, as modified by the Order, reflect the qualifications and limits on such terms that are customary for investment bankers such as Jefferies in chapter 11 cases. *See, e.g., In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Jan. 13, 2021) (approving similar indemnification provisions); *In re Dura Automotive Systems, LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Claire's Stores, Inc.* Case No. 18-

---

[7] Because of the voluminous nature of the orders cited herein, they are not attached to this Application. Copies of these orders, however, are available on request.

[8] To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Schedule A to the Engagement Letter, the terms of the Engagement Letter shall control.

11

10584 (MFW) (Bankr. D. Del. Aug. 3, 2018) (same); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6, 2018) (same).[9]

## JEFFERIES' DISINTERESTEDNESS

19. Jefferies has informed the Committee that, as of the date hereof, except as set forth in the Szlezinger Declaration: (a) Jefferies has no connection with the Debtors, their creditors, equity security holders, or other parties in interest in these Chapter 11 Cases; (b) Jefferies does not have or represent any entity having an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders; and (c) Jefferies (i) is not a creditor, equity security holder, or an insider of the Debtors and (ii) is not or was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors. In addition, none of the Jefferies professionals expected to assist the Committee in these Chapter 11 Cases are related or connected to any United States Bankruptcy Judge for the District of Delaware, the U.S. Trustee, or any person employed by the U.S. Trustee.

20. The Committee has been advised that Jefferies has agreed not to share with any other person or firm the compensation to be paid for professional services rendered in connection with these Chapter 11 Cases in accordance with section 504(a) of the Bankruptcy Code.

21. Based on the foregoing, the Committee believes that Jefferies is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and utilized in section 328(c) of the Bankruptcy Code.

---

[9] Because of the voluminous nature of the orders cited herein, they are not attached to this Application. Copies of these orders, however, are available on request.

IMPAC 11067113v.2

**BASIS FOR RELIEF**

22. The Committee requests entry of an order authorizing it to retain and employ Jefferies pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code. Section 1103(a) of the Bankruptcy Code provides, in relevant part, that the Committee, with the Court's approval, "may select and authorize the employment . . . of one or more attorneys, accountants, or other agents, to represent or perform services" for the Committee. 11 U.S.C. § 1103(a). Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Committee, with the Court's approval, "may employ or authorize the employment of a professional person under section . . . 1103 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

23. Given the numerous issues that Jefferies may be required to address in performing its services for the Committee, Jefferies' commitment to the variable time requirements and effort necessary to address all such issues as they arise, and the market prices for Jefferies' services for engagements of this nature, the Committee submits that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code. The Committee also believes that the Fee and Expense Structure appropriately reflects (a) the nature and scope of Jefferies' services; (b) Jefferies' substantial experience with respect to investment banking services; and (c) the fee structures typically utilized by Jefferies and other investment banks, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

24. As set forth above, and notwithstanding Court approval of Jefferies' engagement under section 328(a) of the Bankruptcy Code, Jefferies intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these

Chapter 11 Cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of this Court, with certain limited modifications as set forth herein. Notwithstanding the foregoing, Jefferies has agreed that the U.S. Trustee may review Jefferies' compensation under section 330 of the Bankruptcy Code.

25. In light of the foregoing, the Committee submits that the retention of Jefferies is in the best interest of the Committee and the Debtors' unsecured creditors. Jefferies has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtor and creditor constituencies throughout the United States. The Committee therefore submits that it has satisfied the requirements of the Bankruptcy Code and the Bankruptcy Rules to support entry of an order authorizing the Committee to retain and employ Jefferies in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

**NOTICE**

26. Notice of the Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Debtors; (ii) the Office of the U.S. Trustee; (iii) counsel to the DIP Lenders, DIP Agent, and the Foris Prepetition Secured Lenders, Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com), and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com); (iv) co-counsel to the DIP Lenders, the DIP Agent, and the Foris Prepetition Secured Lenders, Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com); and (v) any party who has filed a formal request for notice in

**Official Committee of Unsecured Creditors of Amyris, Inc.,** *et al.*
As of September 1, 2023
Page 10

the Patriot Act.  This notice is given in accordance with the requirements of the Patriot Act.Please sign below and return to Jefferies to indicate your acceptance of the terms set forth herein.

                                              Sincerely,

                                              **JEFFERIES LLC**

                                              By:  /s/ Leon Szlezinger
                                              Name: Leon Szlezinger
                                              Title:   Managing Director and
                                                       Joint Global Head of Debt
                                                       Advisory & Restructuring

Accepted and Agreed:

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF AMYRIS, INC., ET AL.**

By: Wiley Companies

By: *Joshua Wiley* (DocuSigned)
479D87156AF7443...
Joshua Wiley, solely in his capacity as representative of the Committee and not in his personal capacity