**Exhibit A**

EXECUTION VERSION

# CONSENT AND WAIVER

May 2, 2019

| | | |
|---|---|---|
| PARTIES: | Borrower: | Amyris, Inc., a Delaware corporation ("Parent"), Amyris Fuels, LLC, a Delaware limited liability company, Amyris Clean Beauty LLC, a Delaware limited liability company, and AB Technologies LLC, a Delaware limited liability company |
| | Lender: | Foris Ventures, LLC, a Delaware limited liability company |

## RECITALS

A. Lender is the successor in interest to GACP Finance Co., LLC (the "Predecessor Lender"), which extended credit (the "Loan") to Borrower in the original principal amount of Thirty-Six Million Dollars ($36,000,000.00) pursuant to that certain Loan and Security Agreement, dated as of June 29, 2018, as modified by that certain First Modification Agreement, effective as of June 29, 2018 and as amended pursuant to that certain Amendment No 1 to Loan Agreement, effective as of August 24, 2018, that certain Amendment No 2 to Loan Agreement, effective as of September 30, 2018, that certain Amendment No 3 to Loan Agreement, effective as of December 14, 2018 and that certain Amendment No 4 to Loan Agreement ("Amendment No 4"), effective as of the date hereof (the "Loan Agreement"), each by and among Parent, each "Subsidiary Guarantor" party thereto, the several banks and other financial institutions or entities from time to time parties thereto and the Predecessor Lender, in its capacity as administrative agent.

B. On March 18, 2019, Parent and Lavvan, Inc. ("Lavvan") entered into that certain Research, Collaboration and License Agreement (the "CBD Agreement"), in the executed form attached hereto as Annex A, pursuant to which (a) Parent and Lavvan will form a special purpose entity (the "SPE") owned not less than 99% by Parent and the remainder by Lavvan, which will be subject to an LLC Operating Agreement in the form attached hereto as Annex B and otherwise acceptable to Lender in its sole and absolute discretion (the "SPE Operating Agreement"), (b) Parent will develop "Amyris Cannabinoid Foreground IP" as such term is defined in the CBD Agreement, which will be transferred by Parent to the SPE (the "Foreground Transfer") through an Assignment Agreement in the form attached hereto as Annex C and otherwise acceptable to Lender in its sole and absolute discretion (the "SPE Assignment" and the "SPE Assignment Agreement"), which will subsequently license on an exclusive basis such Amyris Cannabinoid Foreground IP to Lavvan through a License Agreement in the form attached hereto as Annex D and otherwise acceptable to Lender in its sole and absolute discretion (the "SPE License" and the "SPE License Agreement"), except that the SPE will also license the assigned intellectual property back to Parent for the sole purpose of permitting Parent to perform its obligations under the CBD Agreement, through a License Agreement in the form attached hereto as Annex E and otherwise acceptable to Lender in its sole and absolute discretion (the "SPE License-Back" and the "SPE License-Back Agreement"), (c) Parent will license to Lavvan on an exclusive basis certain "Amyris Platform Improvement Foreground IP," as such term is defined in the CBD Agreement (the "Foreground License"), as well as any "Amyris Background IP" and "Technology" as such terms are defined in the CBD Agreement, reasonably

necessary or actually used for the research, development, manufacture or commercialization activities under the CBD Agreement (the "Background License") and (d) Parent will grant to Lavvan a lien on the intellectual property subject to the Background License to secure any obligations of Parent under the CBD Agreement, through a Security Agreement in the form attached hereto as Annex F and otherwise acceptable to Lender in its sole and absolute discretion, which lien will be expressly subordinate to Lender's lien under the Loan Documents pursuant to a subordination agreement in the form attached hereto as Annex G and otherwise acceptable to Lender in its sole and absolute discretion (the "CBD Subordination Agreement"), all as more specifically set forth in the CBD Agreement (collectively the "Subject Transaction").

C.  The Subject Transaction would violate certain provisions of the Loan Agreement, including the prohibition against certain liens and transfers in Section 7.5 and Section 7.8 of the Loan Agreement, respectively, and would constitute an "Asset Sale" within the meaning set forth in the Loan Agreement requiring a mandatory prepayment under Section 2.4(b)(i) of the Loan Agreement (the "Mandatory Prepayment Requirement").

D.  The creation of the SPE as a Subsidiary would require that the SPE become a Subsidiary Guarantor under Section 7.13 of the Loan Agreement, and if the SPE did not become a Subsidiary Guarantor, the Subject Transaction would violate the prohibition against certain investments and transfers in Section 7.6 and Section 7.8 of the Loan Agreement, respectively (collectively, Section 7.5, Section 7.6, Section 7.8 and Section 7.13 of the Loan Agreement, the "Affected Compliance Covenants").

E.  Borrower has requested that Lender consent to the Subject Transaction and waive compliance with the Loan Agreement, including the Affected Compliance Covenants and the Mandatory Prepayment Requirement, with respect to the Subject Transaction.

## AGREEMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender agree as follows:

1.  Consent and Waiver.  Effective as of the date hereof,

1.1     Lender hereby consents to the Subject Transaction and waives any default or Event of Default that would occur under the Loan Agreement or any related document as a result of the Subject Transaction.

1.2     Lender agrees that any lien or security interest it may have in any of the Amyris Cannabinoid Foreground IP (as defined in the CBD Agreement) being transferred to the SPE pursuant to the SPE Assignment Agreement (as in effect on the date hereof) (the "Transferred Assets") shall be automatically and immediately released upon the transfer of such Transferred Assets to the SPE.

1.3     Lender hereby waives compliance with the Affected Compliance Covenants with respect to the Subject Transaction.

1.4     Lender hereby waives compliance with the Mandatory Prepayment Requirement with respect to the Subject Transaction.

2.      Effectiveness.  The effectiveness of this Consent and Waiver shall be subject to the satisfaction of the following conditions:

2.1     Borrower shall certify in writing to Lender that no Event of Default under any of the Loan Documents as modified herein and in any Loan Documents executed concurrently herewith, nor any event, that, with the giving of notice or the passage of time or both, would constitute such an Event of Default, will result from the consummation of the Subject Transaction, assuming the effectiveness hereof, and that the Loan Documents as modified herein and in each of the Loan Documents executed concurrently herewith are the legal, valid, and binding obligation of Borrower, enforceable against Borrower in accordance with their terms, except as such enforceability may be limited by bankruptcy, insolvency, moratorium, reorganization, or similar laws or by equitable principals of general application.

2.2     Lender shall have received a fully-executed copy of each of the following (which may be submitted in escrow pending the effectiveness hereof): (a) the CBD Agreement, (b) the SPE Operating Agreement, (c) the SPE Assignment Agreement, (d) the SPE License Agreement, (e) the SPE License-Back Agreement, (f) the CBD Security Agreement, and (g) the CBD Subordination Agreement.

2.3     Lender shall have received a copy of this Consent and Waiver executed by Borrower.

3.      Miscellaneous.

3.1     [Reserved].

3.2     Borrower represents and warrants that it is the sole and lawful owner of all right, title and interest in and to every claim and every other matter which it releases herein, and that it has not heretofore assigned or transferred, or purported to assign or transfer, to any person, firm or entity any claims or other matters herein released.  Borrower shall indemnify Lender, defend and hold it harmless from and against all claims based upon or arising in connection with prior assignments or purported assignments or transfers of any claims or matters released herein.

3.3     The Loan Documents are ratified and affirmed by Borrower and remain in full force and effect as modified herein and in each of the Loan Documents executed concurrently herewith.  Any property or rights to or interests in property granted as security in the Loan Documents remain as security for the Loan and the obligations of Borrower in the Loan Documents as modified herein and in each of the Loan Documents executed concurrently herewith.

3.4     The Loan Documents as modified herein and in any Loan Documents executed concurrently herewith contain the entire understanding and agreement of Borrower and Lender in respect of the Loan and supersede all prior representations, warranties, agreements, arrangements, and understandings with respect thereto.  No provision of the Loan Documents as modified herein and in any Loan Documents executed concurrently herewith may be changed, discharged, supplemented, terminated, or waived except in a writing signed by Lender and Borrower.

3.5     Except as specifically provided in this Consent and Waiver, no implied consent involving any of the matters set forth in this Consent and Waiver or otherwise shall be inferred or implied by Lender's execution of this Consent and Waiver or any other action of Lender. Lender's execution of this Consent and Waiver shall not constitute a waiver, either express or implied, of the requirement that any further waiver with respect to or modification of the Loan or of the Loan Documents shall require the express written approval of Lender, as further set forth in the Loan Documents. Except as expressly set forth herein, Lender's execution of this Consent and Waiver shall not constitute a waiver of any of the rights and remedies that Lender may have against Borrower, or of any of Lender's rights and remedies arising out of the Loan Documents as modified herein and in any Loan Documents executed concurrently herewith and such rights and remedies are hereby expressly reserved.

3.6     Borrower hereby acknowledges and agrees that Borrower has no offsets, defenses, claims, or counterclaims against Lender with respect to the Secured Obligations, or otherwise, and that if Borrower now has, or ever did have, any offsets, defenses, claims, or counterclaims against Lender, whether known or unknown, at law or in equity, all of them are hereby expressly WAIVED and Borrower hereby RELEASES Lender from any liability thereunder.  In consideration of the agreements of Lender set forth in this Consent and Waiver, Borrower, and all of their respective heirs, personal representatives, predecessors, successors and assigns (individually and collectively, the "Releasors"), hereby fully, finally, and forever release and discharge Lender and its successors, assigns, directors, officers, employees, agents, and representatives from any and all actions, causes of action, claims, debts, demands, liabilities, obligations, and suits of whatever kind or nature, in law or equity, the Releasors or any of them have, whether known or unknown, in respect of the Loan Documents arising from events occurring prior to the date hereof.

In furtherance of this release, Borrower expressly acknowledges and waives any and all rights under Section 1542 of the California Civil Code, which provides as follows:

"**A general release** does not extend to claims that the releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the released party." (Emphasis added.)

-4-

By entering into this release, Borrower recognizes that no facts or representations are ever absolutely certain and it may hereafter discover facts in addition to or different from those which it presently knows or believes to be true, but that it is the intention of Borrower hereby to fully, finally and forever settle and release all matters, disputes and differences, known or unknown, suspected or unsuspected; accordingly, if Borrower should subsequently discover that any fact that it relied upon in entering into this release was untrue, or that any understanding of the facts was incorrect, Borrower shall not be entitled to set aside this release by reason thereof, regardless of any claim of mistake of fact or law or any other circumstances whatsoever. Borrower acknowledges that it is not relying upon and has not relied upon any representation or statement made by Lender with respect to the facts underlying this release or with regard to any of such party's rights or asserted rights.

This release may be pleaded as a full and complete defense and/or as a cross-complaint or counterclaim against any action, suit, or other proceeding that may be instituted, prosecuted or attempted in breach of this release. Borrower acknowledges that the release contained herein constitutes a material inducement to Lender to enter into this Consent and Waiver and that Lender would not have done so but for Lender's expectation that such release is valid and enforceable in all events.

3.7     This Consent and Waiver shall be governed by the laws of the State of California, excluding conflict of laws principles that would cause the application of laws of any other jurisdiction.

3.8     This Consent and Waiver may be executed in one or more counterparts, each of which is deemed an original and all of which together constitute one and the same document. Signature pages may be detached from the counterparts and attached to a single copy of this Consent and Waiver to physically form one document.

[SIGNATURE PAGE FOLLOWS]

EXECUTED as of May _2_, 2019 and EFFECTIVE as of the Effective Date.

"Borrower"

AMYRIS, INC., a Delaware corporation

By: _/s/ Kathleen Valiasek_
Name: Kathleen Valiasek
Title: CFO

AMYRIS FUELS, LLC, a Delaware limited liability company

By: _/s/ Kathleen Valiasek_
Name: Kathleen Valiasek
Title: CFO

AMYRIS CLEAN BEAUTY LLC, a Delaware limited liability company

By: _/s/ Kathleen Valiasek_
Name: Kathleen Valiasek
Title: CFO

AB TECHNOLOGIES LLC, a Delaware limited liability company

By: _/s/ Kathleen Valiasek_
Name: Kathleen Valiasek
Title: Vice President

"Lender"

FORIS VENTURES, LLC, a Delaware limited liability company

By: _____
Name: _____
Title: _____

EXECUTED as of May __, 2019 and EFFECTIVE as of the Effective Date.

"Borrower"

AMYRIS, INC., a Delaware corporation

By: _____
Name: _____
Title: _____

AMYRIS FUELS, LLC, a Delaware limited liability company

By: _____
Name: _____
Title: _____

AMYRIS CLEAN BEAUTY LLC, a Delaware limited liability company

By: _____
Name: _____
Title: _____

AB TECHNOLOGIES LLC, a Delaware limited liability company

By: _____
Name: _____
Title: _____

"Lender"

FORIS VENTURES, LLC, a Delaware limited liability company

By: *Barbara Hager*
Name: _____
Title: _____

[Signature Page to CBD Consent and Waiver]

-2-

**ANNEXES**

ANNEX A: CBD AGREEMENT

ANNEX B: SPE OPERATING AGREEMENT

ANNEX C: SPE ASSIGNMENT AGREEMENT

ANNEX D: SPE LICENSE AGREEMENT

ANNEX E: SPE LICENSE-BACK AGREEMENT

ANNEX F: CBD SECURITY AGREEMENT

ANNEX G: CBD SUBORDINATION AGREEMENT