**AMENDMENT NO. 3**
**TO SENIOR SECURED SUPER PRIORITY DEBTOR IN POSSESSION LOAN AGREEMENT**

This Amendment No. 3 (this "Amendment") to the Senior Secured Super Priority Debtor in Possession Loan Agreement, dated as of August 9, 2023 (as amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement") is made as of October 2, 2023, and is entered into by and among by and among AMYRIS, INC., a Delaware corporation (the "Parent"), each of the Subsidiaries of the Parent set out in Part 1 of Schedule 1 to this Amendment (together with the Parent, each, a "Borrower" and collectively, the "Borrowers"), the Subsidiaries of the Parent set out in Part 2 of Schedule 1 to this Amendment (such other Subsidiaries of the Parent that are guarantors, each, a "Guarantor" and collectively, the "Guarantors" and, together with the Borrowers, each an "Obligor" and collectively, the "Obligors"), each lender from time to time party hereto (each, a "Lender" and collectively, the "Lenders") and Euagore, LLC, in its capacity as Administrative Agent (the "Administrative Agent").

WHEREAS, on August 9, 2023, the Parent and certain of its Subsidiaries filed voluntary petitions with the Bankruptcy Court initiating their respective cases under chapter 11 of the Bankruptcy Code and have continued in the possession of their assets and the management of their business pursuant to Section 1107 and 1108 of the Bankruptcy Code;

WHEREAS, on August 9, 2023, the Obligors and the Lenders entered into the Loan Agreement to provide a super priority multiple-draw senior secured debtor-in-possession term loan credit facility (the "DIP Facility"), with all of the Borrowers' obligations under the DIP Facility guaranteed by each Guarantor, and the Lenders agreed to extend the DIP Facility to the Borrowers on the terms and subject to the conditions set forth in the Loan Agreement;

WHEREAS, the Obligors and the Lenders have entered into Amendment No. 1 and Amendment No. 2 to the Loan Agreement, which modified, among other things, certain milestones in Section 7.25(d) of the Loan Agreement; and

WHEREAS, the Obligors have requested that the Administrative Agent and the Lenders further amend the Loan Agreement in certain respects, and the Administrative Agent and such Lenders are willing to do so, in each case, subject to the terms and conditions set forth herein,

NOW THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Amendment agree as follows:

1.    Definitions. All terms used herein that are defined in the Loan Agreement and not otherwise defined herein shall have the meanings given to them in the Loan Agreement.

2.    Amendments and Consents. With effect from the Effective Date:

(a)    the first paragraph of Section 7.25(d) (*Certain Case Milestones*) and clauses (1) and (2) of Section 7.25(d) are deleted and replaced with:

"(d)    no later than sixty four (64) calendar days following the Petition Date (*i.e.* October 12, 2023) (the "Plan Support Deadline"), the Debtors shall have executed a plan support agreement

DocuSign Envelope ID: 422EEC25-12C1-4386-80EB-0C0F52B7EE9B

(the "Plan Support Agreement") by and among the Debtors, the Administrative Agent, the Lenders, the Foris Prepetition Secured Lenders, and such other party- or parties-in-interest determined by the Administrative Agent, the Required Lenders, and the Foris Prepetition Secured Lenders, in their sole and absolute discretion, to be necessary and sufficient for the Administrative Agent, the Lenders and the Foris Prepetition Secured Lenders to support a Chapter 11 Plan (collectively, the "Plan Support Persons"), with such Plan Support Agreement being acceptable to the Administrative Agent and the Foris Prepetition Secured Lenders in their sole discretion (the "Plan Support Agreement Milestone"); *provided* that (x) the Debtors shall not file a motion to sell any Other Amyris Assets on or prior to the Plan Support Deadline and (y) (A) if the Plan Support Agreement Milestone Date occurs on or prior to the Plan Support Deadline, the Plan Support Agreement shall include, and the Obligors shall achieve, each of the following Milestones:

 (1) on the Plan Support Agreement Milestone Date (*i.e.* October 12, 2023), the Debtors shall file with the Bankruptcy Court a Chapter 11 Plan, a Disclosure Statement (each consistent with the Plan Support Agreement and in form and substance acceptable to the Administrative Agent), and a motion to approve the Plan, the Disclosure Statement and the related solicitation materials, dates and deadlines (the "Plan Filing Deadline");

 (2) no later than thirty-five (35) calendar days following the Plan Filing Deadline (*i.e.* November 16, 2023 (the "Disclosure Statement Hearing Order Deadline"), the Bankruptcy Court shall enter an order approving the Disclosure Statement, which order shall provide that the date upon which votes to accept or reject the Chapter 11 Plan must be submitted shall be no later than thirty-two (32) calendar days following the Disclosure Statement Hearing Order Deadline (*i.e.* December 18, 2023);"

 3. Representations and Warranties; No Event of Default. Each Obligor hereby represents and warrants to the Administrative Agent and the Lenders that:

 (a) the representations and warranties in Section 5 and in each other Loan Document, certificate or other writing delivered by or on behalf of the Obligors to the Administrative Agent or any Lender pursuant to any Loan Document on or before the Effective Date are true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations or warranties that already are qualified or modified as to "materiality" or "Material Adverse Effect" in the text thereof, which representations and warranties shall be true and correct in all respects subject to such qualification) on and as of the Effective Date as though made on and as of such date, except to the extent that any such representation or warranty expressly relates solely to an earlier date (in which case such representation or warranty shall be true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations or warranties that already are qualified or modified as to "materiality" or "Material Adverse Effect" in the text thereof, which representations and warranties shall be true and correct in all respects subject to such qualification) on and as of such earlier date), and no Default or Event of Default has occurred and is continuing as of the Effective Date or would result from this Amendment becoming effective in accordance with its terms;

 (b) the execution, delivery and performance of this Amendment (i) are within its corporate, partnership, limited partnership or limited liability company power and do not contravene any provision of its organizational documents; (ii) have been duly authorized by all necessary or proper action of each Obligor; (iii) will not result in the creation or imposition of any Lien upon the Collateral, other than

Permitted Liens; (iv) do not violate (A) any Laws or regulations to which it or its Subsidiaries are subject, the violation of which would be reasonably expected to have a Material Adverse Effect or (B) any order, injunction, judgment, decree or writ of any Governmental Authority to which it or its Subsidiaries are subject; (v) do not conflict with, or result in the breach or termination of, constitute a default under or accelerate or permit the acceleration of any performance required by, any indenture mortgage, deed of trust, lease or agreement or other instrument, in each case, in respect of material Indebtedness to which it or its Subsidiaries is a party or by which it or its Subsidiaries or any of its property is bound; and (vi) do not violate any contract or agreement or require the consent or approval of any other Person or Governmental Authority which has not already been obtained. The individual or individuals executing this Amendment are duly authorized to do so. This Amendment has been duly executed and delivered on behalf of each Obligor party thereto; and

(c)     this Amendment upon execution will constitute, a legal, valid and binding obligation of each Obligor party thereto, enforceable against each such Obligor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law).

4.     <u>Conditions to Effectiveness.</u> This Amendment shall become effective only upon the date (the "<u>Effective Date</u>") on which the Administrative Agent and Required Lenders have received (or waived receipt of) the following documents and other evidence, each in form and substance satisfactory to them:this Amendment, signed by all Obligors party to it;

(b)     the representations and warranties contained in <u>Section 5</u> and in this Amendment shall be true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations or warranties that already are qualified or modified as to "materiality" or "Material Adverse Effect" in the text thereof, which representations and warranties shall be true and correct in all respects subject to such qualification) on and as of the Effective Date as though made on and as of such date, except to the extent that any such representation or warranty expressly relates solely to an earlier date (in which case such representation or warranty shall be true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations or warranties that already are qualified or modified as to "materiality" or "Material Adverse Effect" in the text thereof, which representations and warranties shall be true and correct in all respects subject to such qualification) on and as of such earlier date); and

(c)     no Default or Event of Default shall have occurred and be continuing or shall result from this Amendment becoming effective in accordance with its terms.

5.     <u>Reaffirmation</u>. Each Obligor, as debtor, grantor, pledgor, guarantor, assignor, or in any other similar capacity in which such Person grants liens or security interests in its property or otherwise acts as accommodation party or guarantor, as the case may be, in each case, pursuant to any Loan Document, hereby (a) confirms, ratifies and reaffirms all of its payment and performance obligations, contingent or otherwise, under the Loan Agreement and each other Loan Document to which it is a party (after giving effect hereto), (b) confirms and agrees that each Loan Document to which it is a party is, and shall continue to be, in full force and effect and is hereby ratified and confirmed in all respects, except that on and after the Effective Date, all references in any such Loan Document to "the Loan Agreement", the "Agreement", "thereto", "thereof", "thereunder" or words of like import referring to the Loan Agreement shall mean the Loan

DocuSign Envelope ID: 422EEC25-12C1-4386-80EB-0C9F52B7EE9B

Agreement as amended by this Amendment, and (c) confirms and agrees that, to the extent that any Loan Document to which it is party purports to assign or pledge to the Administrative Agent, for the benefit of the Secured Parties, or to grant to the Administrative Agent, for the benefit of the Secured Parties, a security interest in or Lien on any Collateral as security for the Secured Obligations of the Obligors from time to time existing in respect of the Loan Agreement (as amended hereby) and the other Loan Documents, or otherwise guaranteed the Secured Obligations under or with respect to the Loan Documents, such guarantee, pledge, assignment and/or grant of the security interest or Lien is hereby ratified, reaffirmed and confirmed in all respects and confirms and agrees that such guarantee, pledge, assignment and/or grant of the security interest or Lien hereafter guarantees and secures all of the Secured Obligations as amended hereby.  This Amendment does not and shall not affect any of the obligations of the Obligors, other than as expressly provided herein, including, without limitation, the Obligors' obligations to repay the Advances in accordance with the terms of Loan Agreement or the obligations of the Obligors under any Loan Document to which they are a party, all of which obligations shall remain in full force and effect. Except as expressly provided herein, the execution, delivery and effectiveness of this Amendment shall not operate as a waiver of any right, power or remedy of the Administrative Agent or any Lender under any Loan Document, shall not constitute a waiver of any provision of any Loan Document, and shall not be construed as a substitution or novation of the Secured Obligations which shall remain in full force and effect.

6.    No Representations. Each Obligor hereby acknowledges that it has not relied on any representation, written or oral, express or implied, by the Administrative Agent or any Lender in entering into this Amendment.

7.    Miscellaneous.

(a)    Sections 10.1 (*Severability*), 10.9 (*Consent to Jurisdiction and Venue*), 10.10 (*Mutual Waiver of Jury Trial*) and 10.15 (*Counterparts*) are deemed incorporated into this Amendment with all necessary changes.

(b)    Section and paragraph headings herein are included for convenience of reference only and shall not constitute a part of this Amendment for any other purpose. References to "Sections" are to sections of the Loan Agreement, unless otherwise stated.

(c)    EXCEPT TO THE EXTENT GOVERNED BY THE BANKRUPTCY CODE, THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PROVISIONS THEREOF (OTHER THAN SECTION 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

(d)    Each Obligor hereby acknowledges and agrees that this Amendment is  a "Loan Document".

(e)    With respect to any Obligor, this Amendment is subject in all respects (including with respect to all obligations and agreements of the Obligors provided for hereunder) to the terms of the Interim Order (and, when applicable, the Final Order) and if any provision in this Amendment expressly conflicts or is inconsistent with any provision in the Interim Order or Final Order, the provisions in the applicable DIP Order shall govern and control.

[*Remainder of page intentionally left blank.*]

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed and delivered as of the date set forth on the first page hereof.

**COMPANIES**:

**AMYRIS, INC.**, a Delaware corporation

By: _Han Kieftenbeld_

Name: Han Kieftenbeld

Title: Interim Chief Executive Officer and Chief Financial Officer

**AMYRIS CLEAN BEAUTY, INC.**, a Delaware corporation

By: _Han Kieftenbeld_

Name: Han Kieftenbeld

Title: Chief Financial Officer

**APRINNOVA, LLC**, a Delaware limited liability company

By: _Han Kieftenbeld_

Name: Han Kieftenbeld

Title: Chief Financial Officer

**AB TECHNOLOGIES LLC**, a Delaware limited liability company

By: _Han Kieftenbeld_

Name: Han Kieftenbeld

Title: Chief Financial Officer

**AMYRIS FUELS, LLC**, a Delaware limited liability company

By: _Han Kieftenbeld_

Name: Han Kieftenbeld

Title: Chief Financial Officer

**AMYRIS-OLIKA, LLC**, a Delaware limited liability
company

By: _____
Name: Han Kieftenbeld
Title: Chief Financial Officer


**ONDA BEAUTY INC.**, a Delaware corporation

By: _____
Name: Han Kieftenbeld
Title: Chief Financial Officer


**UPLAND 1 LLC**, a Delaware limited liability
company

By: _____
Name: Han Kieftenbeld
Title: Chief Financial Officer


**AMYRIS- ECOFAB LLC**, a Delaware limited
liability company

By: _____
Name: Han Kieftenbeld
Title: Chief Financial Officer


**CLEAN BEAUTY  4U HOLDINGS, LLC**,   a
Delaware limited liability company

By: _____
Name: Han Kieftenbeld
Title: CEO & President


**AMYRIS  CLEAN  BEAUTY  LATAM  LTDA.**, a
Brazilian limited liability company

By: _____
Name: Daniel Moreira
Title: Legal Director

By: _____
Name: Claudia Marina Nohara
Title: Chief Financial Officer

**INTERFACES INDUSTRIA E COMERCIO DE COSMETICOS LTDA.**, a Brazilian limited liability company

By: _____
Name: Claudia Marina Nohara
Title: Chief Financial Officer

By: _____
Name: Daniel Moreira
Title: Legal Director

**AMYRIS BIOTECNOLOGIA DO BRASIL LTDA.**, a Brazilian limited liability company

By: _____
Name: Claudia Marina Nohara
Title: Chief Financial Officer

By: _____
Name: Daniel Moreira
Title: Legal Director

**AMYRIS EUROPE TRADING B.V. (NETHERLANDS)**, a Netherlands limited liability company

By: _____
Name: Luca Galantucci
Title: Director

**AMYRIS BIO PRODUCTS PORTUGAL, UNIPESSOAL, LDA.**, a Portugal liability company

By: _____
Name: Shannon Griffin
Title: Director

**BEAUTY LABS INTERNATIONAL LIMITED**, a United Kingdom limited company

By: _____
Name: Luca Galantucci
Title: Director

**AMYRIS UK TRADING LIMITED**, a United Kingdom limited company

By: _____
Name: Luca Galantucci
Title: Director

-8-

**CLEAN BEAUTY 4U LLC**, a
Delaware limited liability company

By: Amyris, Inc.
Its: Manager

By: _____
Name: Han Kieftenbeld
Title: Interim CEO and Chief Financial Officer


**CLEAN BEAUTY COLLABORATIVE, INC**. a
Delaware corporation


By: _____
Name: Caroline Hadfield
Title: Chief Executive Officer &
President


**ADMINISTRATIVE AGENT:**


**EUAGORE, LLC**, a Delaware limited liability
company


By: _____
Name:  Barbara S. Hager
Title:   Manager


**LENDER:**


**EUAGORE, LLC**, a Delaware limited liability
company


By: _____
Name:  Barbara S. Hager
Title:   Manager

**CLEAN BEAUTY 4U LLC**, a
Delaware limited liability company

By: _____
Name:
Title:

**CLEAN BEAUTY COLLABORATIVE, INC**. a
Delaware corporation

By: _____
Name:
Title:

### ADMINISTRATIVE AGENT:

**EUAGORE, LLC**, a Delaware limited liability company

By: *Barbara S. Hager*
Name:  Barbara S. Hager
Title:   Manager

### LENDER:

**EUAGORE, LLC**, a Delaware limited liability company

By: *Barbara S. Hager*
Name:  Barbara S. Hager
Title:   Manager

DocuSign Envelope ID: 422EEC35-12C4-4286-89EB-9G0EE2B7EE0B

## Schedule 1

Part 1

### Borrowers

1.  Amyris, Inc., a Delaware corporation

2.  Amyris Clean Beauty, Inc., a Delaware corporation

3.  Aprinnova, LLC, a Delaware limited liability company

Part 2

### Guarantors

1.  AB Technologies LLC, a Delaware limited liability company

2.  Amyris Fuels, LLC, a Delaware limited liability company

3.  Amyris-Olika, LLC, a Delaware limited liability company

4.  Onda Beauty Inc., Delaware corporation

5.  Upland 1 LLC, a Delaware limited liability company

6.  Amyris Eco-Fab LLC, a Delaware limited liability company

7.  Clean Beauty 4U Holdings, LLC, a Delaware limited liability company

8.  Clean Beauty 4U LLC, a Delaware limited liability company

9.  Clean Beauty Collaborative, Inc., a Delaware corporation

10. Amyris Clean Beauty LATAM Ltda., a Brazil limited liability company

11. Interfaces Industria e Comercio de Cosmeticos Ltda., a Brazil limited liability company

12. Amyris Biotecnologia Do Brasil Ltda., a Brazil limited liability company

13. Amyris Europe Trading B.V. (Netherlands), a Netherlands limited company

14. Amyris Bio Products Portugal, Unipessoal, Lda., a Portugal limited company

15. Beauty Labs International Limited, a United Kingdom limited company

16. Amyris UK Trading Limited, a United Kingdom limited company