## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Amyris, Inc.,[1] | ) Case No. 23-11131 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket Nos. 19, 54, and 322** |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS
### (A) TO OBTAIN POSTPETITION FINANCING AND (B) TO UTILIZE
### CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO
### PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
### (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "DIP Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above captioned chapter 11 cases (collectively, the "Chapter 11 Cases") for entry of a final order (this "Final Order"), pursuant to sections 105, 361, 362, 363, 364, 507, and 552 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1(b), 4001-2, 9006-1, and 9013 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of this Final Order:

(i)     authorizing Amyris, Inc., Amyris Clean Beauty, Inc., and Aprinnova, LLC, in their capacity as borrowers (collectively, the "Borrowers"), to obtain postpetition financing, and for each of the other Debtors and such other non-Debtor subsidiaries to guarantee unconditionally (the Debtors and such other non-Debtor subsidiaries,

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion or the DIP Credit Agreement (as defined herein).

other than the Borrowers as specified below[3], and such other non-Debtor subsidiaries as required by the DIP Agent (as defined below) collectively, the "Guarantors"), on a joint and several basis, the Borrowers' obligations in connection with a senior secured superpriority multiple-draw term loan facility (the "DIP Facility") in the aggregate principal amount of up to **$190 million** (the "DIP Loans"), subject to and in accordance with the terms and conditions set forth in that certain *Senior Secured Super Priority Debtor In Possession Loan Agreement*, dated as of August 9, 2023, attached as Exhibit A to the Second Interim Order (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement"), by and among the Borrowers, the Guarantors, and Euagore, LLC (together with the other lenders from time to time party thereto, the "DIP Lenders"), and Euagore, LLC, as Administrative Agent (the "DIP Agent" and, together with the DIP Lenders, the "DIP Secured Parties"), and consistent with all other terms and conditions of the DIP Documents (as defined herein) and upon entry of the Final Order, resulting in:

    a. upon entry of the Second Interim Order, draws prior to entry of the Final Order in the aggregate principal amount of up to **$93 million** (each an "Initial Borrowing" and collectively the "Initial Borrowings"); and

    b. upon entry of this Final Order, multiple additional draws (each a "Subsequent Borrowing" and collectively, the "Subsequent Borrowings") in the aggregate principal amount not to exceed **$97 million**; *provided* that (x) each Subsequent Borrowing shall not be in an amount greater than the amounts specified in the Budget (each as defined herein) to be drawn through the date of such Subsequent Borrowing and (y) each Subsequent Borrowing shall be at least twenty-one (21) calendar days apart; and

(ii)    authorizing the Debtors to execute, deliver and perform under the DIP Credit Agreement, and together with this Final Order, the Interim Orders and all other related agreements, documents, and instruments delivered or executed in connection therewith, including, without limitation, as applicable, security agreements, pledge agreements, control agreements, mortgages, deeds, charges, guaranties, promissory notes, intercompany notes, certificates, intellectual property security agreements, and such other documents that may be reasonably requested by the DIP Agent (collectively, as such may be amended, restated supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, the "DIP Documents"), each of which shall be in form and substance satisfactory to the DIP Secured Parties; and to perform such other and further acts

---

[3] The Guarantors shall be AB Technologies LLC, Amyris Fuels, LLC, Amyris-Olika LLC, Onda Beauty Inc., Upland 1, LLC, Amyris Eco-Fab LLC, Clean Beauty Collaborative, Inc., Clean Beauty 4U LLC, Clean Beauty 4U Holdings, LLC, Amyris Clean Beauty LATAM Ltda., Amyris Biotecnologia do Brasil Ltda., Amyris Europe Trading B.V., Amyris Bio Products Portugal, Unipessoal, Lda., Beauty Labs International Limited, Interfaces Industria e Comericio de Cosmeticos Ltda., and Amyris UK Trading Limited.

as may be reasonably necessary, desirable or appropriate in connection with the DIP Documents;

(iii)     authorizing the Debtors to use the DIP Loans, the proceeds thereof, and the Prepetition Collateral (as defined herein), including Cash Collateral (as defined herein), in accordance with the Budget[4] (subject only to Permitted Variances (as defined herein) and in accordance with the DIP Documents) in form and substance acceptable to the DIP Lenders, to provide working capital for, and for other general corporate purposes of, the Debtors, solely in accordance with this Final Order and the DIP Documents;

(iv)     granting the DIP Agent, for itself and the for the benefit of the DIP Lenders, a valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected, first priority priming senior security interest in and lien upon the Prepetition Collateral (as defined herein) and all proceeds thereof, subject only to the Carve-Out (as defined herein);

(v)     granting to the DIP Agent, for itself and for the benefit of the DIP Lenders, a valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected, first priority senior security interest in and lien upon the Prepetition Unencumbered Collateral (as defined herein) and all proceeds thereof, including all Avoidance Actions Proceeds (as defined herein), subject only to (x) the Carve-Out and (y) other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) on the terms and conditions set forth herein and in the DIP Documents; *provided* that with respect to: (i) any unencumbered equity interests in any foreign subsidiaries of the Borrower that are Guarantors; or (ii) any unencumbered intellectual property rights (including, without limitation, licenses, grants, contracts, in lieu of such lien, the DIP Agent may elect[5] to take a grant of a non-avoidable, automatically vested, senior and first priority right to, the value of such unencumbered assets, including any proceeds realized on account thereof, or in connection therewith, which value shall not be allocated, distributed, or realized by any party until the payment in full of the DIP Obligations (as defined herein), in each case subject to the Carve Out;

---

[4]  All references in this Final Order (other than in Section 6 hereof (which shall be read in accordance with its terms)) to the use of DIP Loans, the proceeds thereof, and/or Prepetition Collateral, including Cash Collateral, "in accordance with the Budget" or "consistent with the Budget" shall be deemed to also include the following parenthetical "(or, in the case of the Committee's Professionals, in accordance with or consistent with the Committee Carve-Out Amount (subject to the Liquidity Condition))" (each of the foregoing capitalized terms, as defined below).

[5]  For all acts required of the DIP Agent as set forth in this Final Order and the Interim Orders, the DIP Agent acts at the direction of the Required Lenders, as defined in the DIP Credit Agreement.

(vi)      granting the DIP Agent, for itself and the for the benefit of the DIP Lenders, a valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected, security interest in and lien upon any Other Encumbered Prepetition Collateral (as defined herein) (Other Encumbered Prepetition Collateral, together with the Prepetition Collateral and the Prepetition Unencumbered Collateral, the "DIP Collateral") and all proceeds thereof, junior only to the valid, binding, continuing enforceable and non-avoidable liens on the Other Prepetition Encumbered Collateral as of the Petition Date, subject to the Carve-Out

(vii)     granting to the DIP Agent, for itself and for benefit of the DIP Lenders, allowed superpriority administrative expense claims against each of the Debtors' estates in respect of all DIP Obligations over any and all administrative expenses of any kind or nature, subject and subordinate only to the payment of the Carve-Out on the terms and conditions set forth herein and in the DIP Documents;

(viii)    authorizing and directing the Debtors to pay all principal, interest, fees, costs, expenses, and other amounts payable under the DIP Documents as such become due and payable, as provided and in accordance therewith;

(ix)      authorizing the Debtors, the DIP Secured Parties, and the Foris Prepetition Secured Lenders (as defined herein) to take all commercially reasonable actions to implement and effectuate the terms of this Final Order;

(x)       authorizing the Debtors to waive (a) their right to surcharge the DIP Collateral (as defined herein) pursuant to section 506(c) of the Bankruptcy Code, (b) their right to surcharge the Prepetition Collateral (as defined herein) pursuant to section 506(c) of the Bankruptcy Code, and (c) any "equities of the case" exception under Bankruptcy Code section 552(b) with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral, or the DIP Collateral, as applicable;

(xi)      authorizing the Debtors to waive the equitable doctrine of "marshaling" and similar doctrines (i) with respect to any of the Prepetition Collateral (including Cash Collateral (as defined herein)) for the benefit of any party other than the Foris Prepetition Secured Lenders (except with respect to the marshaling of Avoidance Action Proceeds as provided in Paragraph 9(a) and (b)), (ii) with respect to the DIP Collateral for the benefit of any party other than the DIP Secured Parties and (iii) with respect to the Adequate Protection (as defined herein) granted to the Foris Prepetition Secured Lenders;

(xii)     granting Adequate Protection to the Foris Prepetition Secured Lenders to the extent of any diminution in value as of the Petition Date of their interests in the Prepetition Collateral (as defined herein), including, without limitation, any diminution in value resulting from the imposition of the automatic stay under section 362 of the Bankruptcy Code (the "Automatic Stay"), the Debtors' use, sale, or lease of the Prepetition Collateral (as defined herein), including Cash Collateral and the

priming of its interests in the Prepetition Collateral (including Cash Collateral) as provided in Paragraph 9;

(xiii)    vacating and modifying the Automatic Stay as set forth herein to the extent necessary to permit the Debtors and their affiliates, the DIP Secured Parties, and the Foris Prepetition Secured Lenders to implement and effectuate the terms and provisions of this Final Order and the DIP Documents, as further set forth herein and therein, respectively; and

(xiv)    waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Final Order.

The Court having considered the interim relief requested in the DIP Motion; the exhibits thereto; the (i) the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), (ii) the *Declaration of Lorie Beers in Support of the Motion of the Debtors for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Beers Declaration"), and (iii) the *Declaration of Steve Fleming in Support of the Motion of the Debtors for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Fleming Declaration"); and the other evidence submitted or adduced and the arguments of counsel made at the interim hearing on August 11, 2023; and the Court having entered an initial interim order on the DIP Motion on August 11, 2023 [Docket No. 54] (the "First Interim Order"); and the other evidence submitted or adduced and the arguments of counsel made at a final hearing on September 14, 2023 (the "First Final Hearing"); and the Court having entered a second interim order on the DIP Motion on September 19, 2023 [Docket No. 322] (the "Second Interim Order" and together with the First

Interim Order, the "Interim Orders"); and the other evidence submitted or adduced and the arguments of counsel made at the final hearing on October 4, 2023 (the "Final Hearing"); and due and sufficient notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and all applicable Local Rules and the Interim Orders; and the Final Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved, or overruled by the Court; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, otherwise is fair and reasonable and in the best interests of the Debtors' and their estates, and is essential for the continued operations of the Debtors' business and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[6]**

A.      *Petition Date*. On August 9, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware commencing these Chapter 11 Cases.

---

[6] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

B.      *Debtors in Possession*. The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

C.      *Jurisdiction and Venue*. The Court has jurisdiction over the Motion, these Chapter 11 Cases, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue for these Chapter 11 Cases and proceedings on the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Committee*. On August 27, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") has formed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 152].

E.      *Notice*. The Final Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  As evidenced by the proofs of service filed on the docket for these Chapter 11 Cases, proper, timely, adequate and sufficient notice of the Final Hearing and the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Interim Orders.  No further notice of the Motion or entry of this Final Order shall be required.

F.      *Debtors' Stipulations*. Without prejudice to the rights of parties in interest, other than the Debtors, but subject to the limitations thereon contained in Paragraphs 11 and 26 in the Final Order herein, the Debtors stipulate and agree, having considered and reviewed the facts and

circumstances and record, that the following statements are true and correct (collectively, Paragraphs F(i) through (vii) below are referred to herein as the "Debtors' Stipulations"):

(i)     *Foris Prepetition Secured Loans*.

(a)     Pursuant to those certain (i) Amended and Restated Loan and Security Agreement by and among Amyris, Inc. ("Amyris"), as borrower, Amyris Clean Beauty, Inc. ("Clean Beauty"), Amyris Fuels, LLC ("Amyris Fuels"), and AB Technologies LLC, as guarantors ("AB Technologies," and together with Clean Beauty and Amyris Fuels, the "Subsidiary Guarantors" or "Subsidiary Grantors," as applicable herein), and Foris Ventures, LLC ("Foris"), as lender, dated as of October 28, 2019, as amended by that certain Omnibus Amendment Agreement, dated as of June 5, 2023, and as further amended, restated, supplemented or otherwise modified from time to time, (ii) Amended and Restated Loan and Security Agreement by and among Amyris, as borrower, the Subsidiary Guarantors, as guarantors, and Foris, as lender, dated as of September 27, 2022, as amended by that certain Omnibus Amendment Agreement, dated as of June 5, 2023, and as further amended, restated, supplemented or otherwise modified from time to time, (iii) Bridge Loan and Security Agreement by and among Amyris, as borrower, the Subsidiary Guarantors, as guarantors, and Perrara Ventures, LLC ("Perrara"), as lender, dated as of March 10, 2023, as amended by that certain Omnibus Amendment Agreement, dated as of June 5, 2023, and as further amended, restated, supplemented or otherwise modified from time to time, (iv) Loan and Security Agreement by and among Amyris, as borrower, the Subsidiary Guarantors, as guarantors, and Anesma Group, LLC ("Anesma"), as lender, dated as of June 5, 2023, (v) Loan and Security Agreement by and among Amyris, as borrower, the Subsidiary Guarantors, as guarantor, and Anjo Ventures, LLC ("Anjo"), as lender, dated June 29, 2023, and

(vi) Loan and Security Agreement by and among Amyris, as borrower, the Subsidiary Guarantors, as guarantors, and Muirisc, LLC ("Muirisc"), and lender, dated as of August 2, 2023 (all of the foregoing as further amended, supplemented, amended and restated, or otherwise modified prior to the Petition Date, the "Foris Prepetition Secured Loans," and collectively with any other agreements and documents executed or delivered in connection with the Foris Prepetition Secured Loans, including the Security Agreements (as defined herein), the "Foris Prepetition Secured Loan Agreements"), and Foris, Perrara, Anesma, Anjo, and Muirisc (collectively, the "Foris Prepetition Secured Lenders"), provided prepetition term loans to the Company.

(b)     As of the Petition Date, Amyris and the Subsidiary Guarantors were justly and lawfully indebted and liable to the Foris Prepetition Secured Lenders pursuant to the Foris Prepetition Secured Loan Agreements, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of at least $296.0 million, *plus* at least $16.1 million in accrued and unpaid non-default interest, *plus* any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Foris Prepetition Secured Loan Agreements) owing, in each case under or in connection with the Foris Prepetition Secured Loan Agreements without defense, counterclaim, or offset of any kind (but subject to liquidation of unliquidated obligations) (collectively, the "Foris Prepetition Obligations"), which Foris Prepetition Obligations has been guaranteed on a joint and several basis by each of the Subsidiary Guarantors.

(c)     From and after the Petition Date, Amyris and the Subsidiary Guarantors are justly and lawfully indebted and liable to the Foris Prepetition Secured Lenders pursuant to the Foris Prepetition Secured Loan Agreements for accrued default interest, *plus* any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations owing, in each case, under or in connection with the Foris Prepetition Secured Loan Agreements after the Petition Date and without defense, counterclaim, or offset of any kind (but subject to liquidation of unliquidated obligations).

(ii)     *Foris Prepetition Loan Collateral*. In connection with the Foris Secured Prepetition Loan Agreements, Amyris and the Subsidiary Guarantors, as applicable, entered into those certain (i) Security Agreement, by and between Amyris, the Subsidiary Grantors, and Foris, dated as of September 27, 2022; (ii) Security Agreement, by and between Amyris, the Subsidiary Grantors, and Perrara, dated as of March 10, 2023; (iii) Patent Security Agreement, by and between Amyris, the Subsidiary Grantors, and Foris, dated as of June 5, 2023; (iv) Trademark Security Agreement, by and between Amyris, the Subsidiary Grantors, and Foris, dated as of June 5, 2023; (v) Security Agreement, by and between Amyris, the Subsidiary Grantors, and Anesma, dated as of June 5, 2023; (vi) Patent Security Agreement, by and between Amyris, the Subsidiary Grantors, and Anesma, dated as of June 5, 2023; (vii) Trademark Security Agreement, by and between Amyris, the Subsidiary Grantors, and Anesma, dated as of June 5, 2023; (viii) Patent Security Agreement by and between Amyris, the Subsidiary Grantors, and Perrara, dated as of June 5, 2023; (ix) Trademark Security Agreement by and between Amyris, the Subsidiary Grantors, and Perrara,

dated as of June 5, 2023; (x) Security Agreement by and between Amyris, the Subsidiary Grantors, and Anjo dated as of June 29, 2023; (xi) Patent Security Agreement, by and between Amyris, the Subsidiary Grantors, and Anjo, dated as of June 29, 2023; (xii) Trademark Security Agreement, by and between Amyris, the Subsidiary Grantors, and Anjo, dated as of June 29, 2023; (xiii) Security Agreement by and between Amyris, the Subsidiary Grantors, and Muirisc, dated as of August 2, 2023; (xiv) Trademark Security Agreement, by and between Amyris, the Subsidiary Grantors, and Muirisc, dated as of August 2, 2023; (xv) Patent Security Agreement, by and between Amyris, the Subsidiary Grantors, and Muirisc, dated as of August 2, 2023; and (xvi) Copyright Security Agreement, by and between Amyris, the Subsidiary Grantors, and Muirisc, dated as of August 2, 2023 (all of the foregoing as further amended, supplemented, amended and restated, or otherwise modified from time to time, the "Security Agreements").  Pursuant to the Foris Prepetition Secured Loan Agreements, the Foris Prepetition Obligations are secured by valid, binding, perfected first priority security interests in and liens (the "Foris Liens") on the "Collateral," as defined in the Security Agreements (the "Prepetition Collateral").

    (iii) *Cash Collateral*. Any and all of the Debtors' cash, including the Debtors' cash and other amounts on deposit or maintained in any account or accounts by the Debtors, including any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral existing as of the Petition Date, and the proceeds of any of the foregoing is the Foris Prepetition Secured Lenders' cash collateral within the meaning of Bankruptcy Code section 363(a) (the "Cash Collateral").

    (iv) *Bank Accounts*. The Debtors acknowledge and agree that as of the Petition Date, none of the Debtors has either opened or maintains any bank accounts other than the accounts

listed in the exhibit attached to any order authorizing the Debtors to continue to use the Debtors'

existing cash management system (the "Cash Management Order").

(v)     *Validity, Perfection, and Priority of Foris Liens and Prepetition*

*Obligations*. Each of the Debtors acknowledges and agrees that: (a) as of the Petition Date, the

Foris Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and

security interests in the Prepetition Collateral and were granted to, or for the benefit of, the Foris

Prepetition Secured Lenders for fair consideration and reasonably equivalent value; (b) as of the

Petition Date, the Foris Liens are subject and/or subordinate only to valid, perfected, and

unavoidable liens and security interests existing as of the Petition Date that are senior in priority

to the Foris Liens as permitted by the terms of the Foris Prepetition Secured Loan Agreements; (c)

the Foris Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of

Amyris and the Subsidiary Guarantors enforceable in accordance with the terms of the applicable

Foris Prepetition Secured Loan Agreements; (d) no offsets, challenges, objections, defenses,

claims, or counterclaims of any kind or nature to any of the Foris Liens or Foris Prepetition

Obligations exist, and no portion of the Foris Liens or Foris Prepetition Obligations is subject to

any challenge or defense including impairment, set-off, right of recoupment, avoidance,

attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination

(whether equitable or otherwise), attack, offset, defense, counterclaims, cross-claims, or "claim"

(as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable

nonbankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes

of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action,

including "lender liability" causes of action, derivative claims, or avoidance claims under chapter

5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 541 through 553 of the Bankruptcy Code), against the Foris Prepetition Secured Lenders, or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to their loans under the Foris Prepetition Secured Loan Agreements, the Foris Prepetition Obligations, or the Foris Liens; and (f) the Debtors waive, discharge, and release any right to challenge any of the Foris Prepetition Secured Loans, the amount, allowance, character and priority of the Debtors' Obligations under the Foris Prepetition Secured Loans, and the validity, binding, legal, enforceability, allowance, amount, characterization, extent and priority as to the Foris Liens securing the Foris Prepetition Secured Loans.

(vi)     *No Claims or Causes of Action*. No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Foris Prepetition Secured Lenders, the Foris Prepetition Secured Loans, the Foris Prepetition Secured Loan Agreements, or under any agreements, documents, facts or circumstances, by and among, or related to, the Debtors and the Foris Prepetition Secured Lenders.

(vii)    *Releases*. Effective as of the date of entry of the First Interim Order, subject solely to the rights and limitations set forth in Paragraphs 11 and 26 herein, each of the Debtors and the Debtors' estates, on its and their own behalf, on behalf of its and their respective past, present and future predecessors, heirs, successors, subsidiaries, and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Foris Prepetition Secured Lenders, the DIP Secured Parties, and each of their respective Representatives (as defined

13

herein), in each case solely in their respective capacities as such and not in any other capacities (collectively, the "Released Parties"), from any and all (a) obligations and liabilities to the Debtors (and their successors and assigns) and (b) claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the date of the First Interim Order of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, in each case arising out of or related to (as applicable) the Foris Prepetition Secured Loan Agreements, the DIP Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions and agreements reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of the First Interim Order. For the avoidance of doubt, nothing in this release shall relieve the DIP Lenders or the Debtors of their Obligations under the DIP Documents from and after the date of the First Interim Order.

G.      *Corporate Authority*.  Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Documents to which it is a party and to perform its obligations thereunder.

H.   *Findings Regarding the DIP Facility and Use of Cash Collateral*.

(i)   The Debtors have an immediate and critical need to obtain the DIP Facility and to use Cash Collateral (solely to the extent consistent with the Budget (subject to Permitted Variances as set forth in this Final Order and the DIP Documents)) to, among other things, (a) permit the orderly continuation of their businesses; (b) maintain business relationships with vendors, suppliers, and customers; (c) make payroll; (d) fund expenses of the Chapter 11 Cases; and (e) satisfy other working capital, operational, and general corporate needs.  The Debtors do not have sufficient sources of working capital and financing to operate their businesses in the ordinary course throughout the Chapter 11 Cases without access to the DIP Facility and authorized use of Cash Collateral.  In the absence of the DIP Facility and the use of Cash Collateral, the Debtors' business and estates would suffer immediate and irreparable harm.  Access to the DIP Facility will provide the Debtors with sufficient working capital and liquidity to operate during these Chapter 11 Cases and is vital to the preservation and maintenance of the Debtors' business and assets.

(ii)   The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without granting to the DIP Secured Parties, the DIP Liens and the DIP Superpriority Claims (each as defined herein), in each case subject to the Carve-Out to the extent set forth herein, under the terms and conditions set forth in this Final Order and the DIP Documents.

15

(iii)    As a condition to entry into the DIP Documents, the extension of credit under the DIP Facility, and authorization to use Cash Collateral, the Debtors, the DIP Secured Parties, and the Foris Secured Prepetition Lenders have agreed that as of and commencing on the date of the Final Hearing, the Debtors shall utilize the proceeds of the DIP Collateral in accordance with this Final Order.

(iv)    The DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Documents including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Documents and all other obligations under the DIP Documents (collectively, the "DIP Obligations")[7] shall be deemed to have been extended by the DIP Secured Parties in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code.  The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, and any liens or claims granted to, or payments made to, or payments made to, the DIP Secured Parties hereunder arising prior to the effective date of any

---

[7] Notwithstanding anything to the contrary in this Final Order, the Interim Orders, or the DIP Credit Agreement, Clean Beauty Collaborative, Inc.'s and Clean Beauty 4U LLC's (each a "Clean Beauty Subsidiary" and, collectively, the "Clean Beauty Subsidiaries") DIP Obligations shall not exceed the principal amount of all Advances to each Clean Beauty Subsidiary, together with all interest on such Advances and all other obligations and liabilities of each Clean Beauty Subsidiary under this Final Order, the Interim Orders, or the DIP Credit Agreement related to such Advances; *provided*, *further* the maximum amount recoverable pursuant to the DIP Liens on each Clean Beauty Subsidiary's Collateral granted under this Final Order, the Interim Orders, or the DIP Credit Agreement shall not exceed the such Clean Beauty Subsidiary's DIP Obligations. Capitalized terms used in this footnote but not defined in this Final Order shall have the meanings given to such terms in the DIP Credit Agreement.

such vacatur, reversal, or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

(v)    Pursuant to the Interim Orders, the Debtors prepared and delivered to the DIP Secured Parties the initial budget (the "Initial Budget") covering the first 60 days of these Chapter 11 Cases.  The Initial Budget reflected, among other things, the anticipated sources and uses of cash for each calendar week, in form and substance satisfactory to the DIP Secured Parties. The Initial Budget may be modified, amended, and updated from time to time in accordance with the DIP Documents, and once approved by the DIP Secured Parties, shall supplement and replace the Initial Budget.  The Debtors believe that the Initial Budget is reasonable under the facts and circumstances of these Chapter 11 Cases.  The DIP Secured Parties are relying, in part, upon the Debtors' agreement to comply with the Budget, the DIP Documents, the Interim Orders, and this Final Order in determining to enter into DIP Facility as provided for in this Final Order.

(vi)    The Foris Prepetition Secured Lenders are entitled to the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Foris Prepetition Secured Lenders with respect to proceeds, product, offspring, or profits with respect to any of the Prepetition Collateral.

(vii)    In light of the financing made available under the DIP Facility to the Debtors to fund the ongoing working capital requirements to operate and maintain their businesses in the ordinary course and preserve value, the DIP Secured Parties and the Foris Prepetition Secured Lenders are entitled to the benefit of a waiver of the rights of the Debtors under section 506(c) of the Bankruptcy Code and the Debtors waive any right to surcharge the DIP Collateral,

the Debtors waive any rights to surcharge the Prepetition Collateral, in each case, pursuant to section 506(c) of the Bankruptcy Code.

(viii)    The DIP Secured Parties and the Foris Prepetition Secured Lenders are entitled to the rights and benefits of section 363(k) of the Bankruptcy Code and the DIP Secured Parties and the Foris Prepetition Secured Lenders shall be entitled to credit bid their respective secured claims in connection with any sale of the DIP Collateral.

I.        _Good Cause Shown; Best Interest_. Good cause has been shown for entry of this Final Order, and entry of this Final Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing business and enhance the value of the Debtors' estates and assets.

J.        _Immediate Entry_. Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2), (c)(2), and 6003.  Absent granting the relief set forth in this Final Order, the Debtors' estates will be immediately and irreparably harmed as they will have no ability to pay employees or suppliers, honor contractual obligations, or otherwise maintain operations and thus would be forced to liquidate.  Entry into the DIP Facility and the use of Prepetition Collateral (including Cash Collateral), in accordance with this Final Order and the DIP Documents are therefore in the best interests of the Debtors' estates and consistent with the Debtors' sound exercise of their fiduciary duties.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      *DIP Facility Approved on Final Basis*. The DIP Motion is granted as set forth herein on a final basis, and the use of Cash Collateral on an interim basis is authorized, subject to the terms of this Final Order.

2.      *Objections Overruled*. Any objections, reservations of rights, or other statements with respect to entry of the Final Order, to the extent not withdrawn or resolved, are overruled on the merits.  This Final Order shall become effective immediately upon its entry.

3.      *Authorization of the DIP Facility and the DIP Documents*.

(a)      The Debtors are hereby immediately authorized and empowered to execute, deliver, enter into, and perform all of their obligations under the DIP Documents, and such additional documents, instruments, certificates and agreements as may be reasonably required or requested by the DIP Secured Parties to implement the terms or effectuate the purposes of this Final Order and the DIP Documents.  In addition, the Debtors are authorized and empowered to cause the non-Debtor subsidiaries to enter into any DIP Documents.  To the extent not entered into as of the date hereof, the Debtors and the DIP Secured Parties shall negotiate the DIP Documents in good faith, and in all respects such DIP Documents shall be, subject to the terms of this Final Order, consistent with the terms of the DIP Credit Agreement and otherwise acceptable to the DIP Secured Parties.  Upon entry of this Final Order, the Final Order, the DIP Credit Agreement, and other DIP Documents shall govern and control the DIP Facility.  Upon entry of this Final Order and until execution and delivery of all DIP Documents required by the DIP Secured Parties, the Debtors and the DIP Secured Parties shall be bound by this Final Order and all executed DIP Documents shall govern and control the DIP Facility.  The DIP Secured Parties are hereby

authorized to execute and enter into its respective obligations under the DIP Documents, subject to the terms and conditions set forth therein, and in the Interim Orders and this Final Order. Upon execution and delivery thereof, the DIP Documents shall constitute valid and binding obligations of the Debtors enforceable in accordance with their terms. To the extent there exists any conflict among the terms and conditions of the DIP Motion, the DIP Documents, the Interim Orders, and this Final Order, the terms and conditions of this Final Order shall govern and control. To the extent there is a conflict between the terms and conditions of the DIP Motion and the DIP Documents, the terms and conditions of the DIP Documents shall govern.

(b)     Upon entry of this Final Order, the Borrowers are hereby authorized to borrow, and the Guarantors are hereby authorized to guaranty, borrowings up to an aggregate principal amount of the Initial Borrowings and Subsequent Borrowings in DIP Loans, subject to the terms of the DIP Credit Agreement and in accordance with this Final Order.

(c)     In accordance with the terms of this Final Order, the Interim Order and the DIP Documents, proceeds of the DIP Loans shall be used solely for the purposes permitted under the DIP Documents and this Final Order, the Interim Orders, and in accordance with the Budget (subject to Permitted Variances as set forth in this Final Order and the DIP Documents).

(d)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized, and the Automatic Stay imposed by section 362 of the Bankruptcy Code is hereby lifted to the extent necessary to allow each Debtor, to perform all acts and to make, execute, and deliver all instruments and documents (including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent contemplated thereby, or the DIP Credit Agreement), and, subject to the Carve-Out, to pay on the DIP

Termination Date (as defined in the DIP Credit Agreement) all fees (including all amounts owed to the DIP Lenders and the DIP Agent under the DIP Documents), that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility including, without limitation:

(1)    the execution, delivery, and performance of the DIP Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent contemplated thereby;

(2)    the execution, delivery, and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Documents (in each case in accordance with the terms of the applicable DIP Documents and in such form as the Debtors and the DIP Secured Parties may agree), it being understood that no further approval of the Court shall be required for amendments, waivers, consents, or other modifications to and under the DIP Documents or the DIP Obligations that do not shorten the maturity of the extensions of credit thereunder or modify the commitments or the rate of interest or other amounts payable thereunder; *provided* that counsel to the Committee shall be promptly provided with a copy (which shall be provided through electronic mail) of any amendment, waiver, consent, or other modification; *provided*, *further* that counsel to the Committee shall be entitled to five (5) business days' advance notice of an amendment, modification, or supplement to the DIP Documents that materially or adversely affects the rights of the Committee or unsecured

21

creditors under the DIP Documents (but not any waiver provided by the DIP Secured Parties), and the Committee shall have an opportunity to object in writing after which approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate any amendment, modification, or supplement to the DIP Documents that materially or adversely affects the rights of the Committee or unsecured creditors under the DIP Documents;

(3)    the non-refundable payment as of the DIP Termination Date to each of and/or on behalf of the DIP Secured Parties, as applicable, of the fees referred to in the DIP Documents, including all fees and other amounts owed to the DIP Agent and the DIP Lenders; and

(4)    the performance of all other acts required under or in connection with the DIP Documents.

(e)    Upon entry of this Final Order, the DIP Lenders shall have the right to sell, assign, or otherwise transfer any interest in the DIP Facility, or any of the obligations thereunder, or any portion thereof, and to syndicate the DIP Loans (or any portion thereof), to any person or persons selected by each DIP Lender in its sole discretion and subject to the terms of the DIP Credit Agreement.

(f)    Without the prior written consent of the DIP Lender, the Borrowers shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral or interest in the DIP Facility, except as may be expressly permitted by the DIP Documents and this Final Order.

(g)     The Guarantors hereby are authorized and directed to jointly, severally, and unconditionally guarantee, and upon entry of this Final Order shall be deemed to have guaranteed, in full, all of the DIP Obligations of the Borrowers.

(h)     *DIP Obligations*.  Upon entry of the First Interim Order and the execution of the DIP Documents, the DIP Obligations and the DIP Liens shall constitute valid, binding, and non-avoidable obligations of the Borrowers and Guarantors, enforceable against the Borrowers or Guarantors or their estates in accordance with the terms of the DIP Documents and this Final Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").  Upon execution and delivery of the DIP Documents, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Borrowers or Guarantors to any of the DIP Secured Parties under, or secured by, the DIP Documents, or the Interim Orders or this Final Order, including all principal, interest, costs, fees, expenses, premiums, indemnities and other amounts under the DIP Documents.  No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Documents, the Interim Orders, or this Final Order to the DIP Secured Parties shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim.  All DIP Obligations shall be allowed

23

claims against the Debtors' estates without the need to file a proof of claim.

4.    _Budget and Variance Reporting_.

(a)    The Initial Budget, covering the first 60 days of these Chapter 11 Cases, was approved pursuant to the Interim Orders. An updated plan scenario Budget (the "Plan Budget") and an updated sale scenario budget (the "Sale Budget," and together with the Plan Budget, and each subsequent approved Plan Budget or approved Sale Budget, shall constitute, without duplication, the "Budget") annexed hereto as **Exhibit A-1 and A-2**, respectively, are hereby approved. The Plan Budget, or any updated and approved Plan Budget, shall be the controlling budget in these Chapter 11 Cases after entry of this Final Order until a Sale Toggle Event Notice is issued; _provided_ that if a Sale Toggle Event Notice is issued, the Sale Budget, or any updated and approved Sale Budget shall be the controlling budget in these Chapter 11 Cases. Any modification to, or amendment or update to the Budget (and any other subsequent updated Budget) shall be in form and substance acceptable to and approved in writing (email being sufficient) by the DIP Agent in its sole discretion. A copy of any modification to, or amendment or update to the Budget shall be provided to the Committee. There shall be no changes to the line items in the Budget for the fees and expenses of the Committee Professionals (as defined herein) without the express written consent (email being sufficient) of counsel to the Committee.

(b)    By 5:00 p.m. Pacific Time on the date that is two weeks after the date the Final Order approving the updated Budget is entered (or such date as mutually agreed in writing (email being sufficient) by the Debtors and DIP Secured Parties), and every two weeks thereafter, the Debtors shall prepare and provide the DIP Secured Parties with an updated Budget. The DIP Agent, in its reasonable discretion, shall have the right to approve or object to any such updated

24

Budget by providing the Borrowers specific notice thereof within three (3) business days after the delivery by the Borrowers of any such update or amendment ("Updated Budget Notice Deadline"). To the extent the DIP Agent objects to the updated Budget by the Updated Budget Notice Deadline, the then existing Budget shall continue to constitute the applicable Budget until such time as an update or amendment is approved by the DIP Agent.  Once an updated Budget has been approved by the DIP Agent, the Debtors shall promptly share such updated Budget with the Committee.

(c)        By 5:00 p.m. Pacific Time on the first Wednesday after entry of this Final Order and every Wednesday thereafter, the Debtors shall deliver to the DIP Agent and the Committee a Budget variance report and reconciliation (the "Approved Budget Variance Report") utilizing the Budget then in effect (and to the extent the applicable Measuring Period so requires, utilizing the immediately prior Budget previously in effect).   The Approved Budget Variance Report shall compare on a line item by line item basis: (x) total receipts for such period to total receipts for such period as set forth in the Budget on a weekly and cumulative basis; (y) total disbursements for such period to total disbursements for such period as set forth in the Budget on a weekly and cumulative basis; together with a statement certifying compliance with the Permitted Variances (as defined herein) for such period (each a "Measuring Period") and explaining in reasonable detail any Material Variance (as defined herein) (each such report, a "Variance Report," which shall be in a form satisfactory to the DIP Agent).  For purposes of each Measuring Period, the Borrowers shall calculate on a line item by line item basis: (x) the numerical difference between total receipts for such period to total receipts for such period as set forth in the Budget for the then applicable week and on a cumulative basis (the "Receipts Variance"), and the percentage such Receipts Variance (as an absolute amount) is of the applicable week and cumulative basis budgeted

amount for receipts for such Measuring Period (the "Receipts Variance Percentage") and (y) the numerical amount by which total disbursements for such Measuring Period are greater than total disbursements, respectively, on a line item by line item basis, for such Measuring Period as set out in the Budget for the then applicable week and on a cumulative basis for such Measuring Period (the "Disbursements Variance"), and the percentage such Disbursements Variance (as an absolute amount) is of the applicable week and cumulative budgeted amount for disbursements for such Measuring Period (the "Disbursements Variance Percentage").  For purposes of this Final Order, (w) "receipts" shall not include any Initial Borrowing or Subsequent Borrowing under the DIP Facility or any proceeds from the sale of DIP Collateral; (x) the calculation of the Disbursements Variance shall exclude any amounts in the Budget related to professional fees for the Debtors and the Committee, which, at all times, for purposes of any Initial Borrowing or Subsequent Borrowing under the DIP Facility, shall not exceed amounts set forth in the then approved Budget, (y) a "Material Variance" shall mean on a line item by line item basis with respect to each Measuring Period either (i) a Receipts Variance Percentage greater than 15% or (ii) a Disbursements Variance Percentage greater than 10%, and (z) "Permitted Variance" shall mean on a line item by line item basis with respect to each Measuring Period: (i) if the Receipts Variance is a negative number, the Receipts Variance Percentage shall not be greater than 25% measured on a four (4) week cumulative basis and (ii) if the Disbursements Variance is a positive number, the Disbursements Variance Percentage shall not be greater than (A) 20% measured on a two (2) week and cumulative basis and (B) 15% measured on a four (4) week and cumulative basis.  For purposes hereof, "line item by line item" shall mean each line of the Budget (excluding any amounts in the Budget related to professional fees for the Debtors and the Committee); *provided*, *however*, for line items labeled

"Other AP Disbursements", "InterCo disbursements for Goods", and "InterCo Loan", "line item by line item" shall be with references to the line items set forth in the supporting schedules provided to the DIP Secured Parties and the Committee in connection with the Budget.

5.      *Access to Records*. The Debtors shall provide the advisors to the DIP Secured Parties with all reporting and other information required to be provided to the DIP Agent or DIP Lenders under the DIP Documents.  Any reporting and other information provided pursuant to this Paragraph 5 shall also be contemporaneously provided (or as contemporaneous as is reasonable under the circumstances) to advisors to the Committee; *provided* that all such reporting may be shared by the Committee's advisors with the members of the Committee (subject to any applicable confidentiality agreements or arrangements) unless such reporting provided to the Committee's advisors is specifically classified as for "professional eyes only."  In addition to, and without limiting, whatever rights to access the DIP Secured Parties have under the DIP Documents, upon reasonable notice to Debtors' counsel (email being sufficient), the Debtors shall permit representatives, agents, and employees of the DIP Secured Parties to have reasonable access to (i) inspect the Debtors' assets, and (ii) all information (including historical information and the Debtors' books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management of the Debtors and other company advisors (during normal business hours), and the DIP Secured Parties shall be provided with access to all information they shall reasonably request, excluding any information for which confidentiality is owed to third parties, information subject to attorney client or similar privilege, or where such disclosure would not be permitted by any applicable requirements of law.

6.      *Carve-Out*.

(a)     *Priority of Carve-Out*. Subject to the terms and conditions contained in this Paragraph 6, each of the DIP Liens, DIP Superpriority Claims, Foris Liens, Foris Prepetition Obligations, Adequate Protection Liens, and Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve-Out. The Carve-Out shall have such priority over all assets of the Debtors, including any DIP Collateral, Prepetition Collateral, and any funds in the account into which the DIP Loans are funded.  The Carve-Out shall not reduce or affect in any respect the obligations owing to the DIP Secured Parties or the Foris Prepetition Secured Lenders.

(b)     *Definition of Carve-Out*. As used in this Final Order, the "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iv) below); (ii) all reasonable fees and expenses up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) all obligations due and owing under any key employee incentive plan and retention plan consistent with the Budget, consented to by the DIP Agent, and approved by the Bankruptcy Court; (iv) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, and whether allowed before or after delivery of a Trigger Notice, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by (x) persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code, including any Transaction  Fee consistent with the engagement letter entered into between the Debtors and the Debtors' investment banker, Intrepid Investment Bankers LLC, and approved by the Bankruptcy Court with the support of the DIP Agent (the "Debtors' Professionals"), (y) White & Case LLP, Potter Anderson & Corroon LLP, and FTI Consulting, Inc., as advisors to the

Committee, as retained pursuant to sections 328, 330 and/or 1103 of the Bankruptcy Code (the "Committee's Professionals"[8] and, together with the Debtors' Professionals, the "Professional Persons"), and (z) persons or firms retained by the ad hoc group of the holders of the 1.50% Convertible Senior Notes due 2026 pursuant to the *Amended Order Authorizing the Debtors to Assume and/or Enter Into Reimbursement Agreements with Professionals for the Ad Hoc Noteholder Group* (the "Noteholder Group Professionals' Order" and the professional persons' thereunder, the "Ad Hoc Noteholder Group's Professionals"), subject to the Noteholder Group Professional Cap as defined in the Noteholder Group Professionals' Order and all other terms and conditions of the Noteholder Group Professionals' Order, and subject to the then Budget for each Professional Person as approved by the DIP Agent for the period of time from the Petition Date to the earlier of the date of a Trigger Notice or the occurrence of any other DIP Termination Date; *provided that* with respect to clause (iv) of this Paragraph 6(b), notwithstanding the fact that the Budget for the Committee's Professionals currently equals $3.3 million (the "Committee Budget Amount"), the Carve-Out with respect to the Committee's Professionals shall be $6 million (the "Committee Carve-Out Amount"); and (v) Allowed Professional Fees of the Professional Persons in an amount not to exceed $750,000 incurred after the earlier of delivery of a Trigger Notice or the occurrence of any other DIP Termination Date (other than pursuant to clause (ii) of the

---

[8] The Committee intends to engage Jefferies & Company ("Jefferies") as investment banker under section 1103 of the Bankruptcy Code. The Debtors', the DIP Lenders' and the Foris Prepetition Secured Parties' rights to object to the retention of Jefferies and any fees or expenses sought by Jefferies in connection with its proposed engagement by the Committee are reserved  and preserved in all respects.  Nothing in this Final Order shall limit, modify, or in any way affect any of the Committee's rights to seek to modify the Carve Out, or to seek payment (under the Carve Out or otherwise), with respect to fees and expenses of Jefferies to the extent the Committee is authorized to retain Jefferies & in these Chapter 11 Cases and any such fees and expenses of Jefferies are authorized or approved by the Court, and such rights of the Committee are fully reserved and preserved in all respects, and the rights of the Debtors', the DIP Lenders' and the Foris Prepetition Secured Parties' to object to any such modification, authorization, approval or payment are fully reserved and preserved in all respects.

definition of "DIP Termination Date" in the DIP Credit Agreement) (this clause (v), the "Carve-Out Cap"), less the amount of any prepetition retainers received by such Professional Persons and not previously returned or applied to Allowed Professionals Fees; *provided*, *however*, nothing herein shall be construed to impair any party's ability to object to court approval of the fees, expenses, reimbursement of expenses or compensation of the Debtors' Professionals, the Committees' Professionals, and Ad Hoc Noteholder Group's Professionals.  For purposes of this Paragraph 6, "Trigger Notice" shall mean a written notice delivered by the DIP Agent to the U.S. Trustee and counsel to the Debtors and Committee describing the Event of Default that is alleged to continue under the DIP Documents (or after the payment in full of the DIP Obligations, delivered by the Prepetition Lenders under the Foris Prepetition Secured Loan Agreements describing the reason for termination of the use of Cash Collateral).

(c)     *Carve-Out Account*. On the day on which a Trigger Notice is given by the DIP Agent or on the DIP Termination Date, and prior to (and not conditioned upon, or subject to any delay on account of) the payment to any of the DIP Agent, DIP Lenders or the Foris Prepetition Secured Lenders on account of the DIP Obligations, the Foris Prepetition Obligations, any Adequate Protection Obligations (as defined herein), claims or liens, or otherwise, the Debtors shall immediately, and be authorized and required to, deposit, as soon as reasonably practicable, in a non-interest bearing trust fund account of the Debtors' general bankruptcy counsel for the benefit of Professional Persons not subject to the control of the DIP Agent, DIP Lenders or the Foris Prepetition Secured Lenders (the "Carve-Out Account"), an amount equal to the Carve-Out Cap.  If any amounts remain in the Carve-Out Account after payment of Professional Persons in accordance with the Carve-Out (subject to the Budget or, in the case of the Committee's

Professionals, the Committee Carve-Out Amount (subject to the Liquidity Condition (as defined below))), such amounts shall be returned to the DIP Agent and shall be subject to the DIP Liens and Adequate Protection Liens; *provided* that to the extent the DIP Loans are indefeasibly paid in full at the time such amounts are to be returned, such amounts shall be returned to the Foris Prepetition Secured Lenders.  Prior to the date of delivery of a Trigger Notice or the occurrence of the DIP Termination Date, the Debtors shall be authorized to make weekly deposits into the Carve-Out Account in accordance with the Budget (which, for the avoidance of doubt, in the case of the Committee Professionals, is the Committee Budget Amount, subject to clause (e) below). Funds which are on deposit in the Carve-Out Account shall be available only to satisfy obligations benefitting from the Carve-Out, and the DIP Agent, DIP Lenders and the Foris Prepetition Secured Lenders, each on behalf of itself and the relevant secured parties, (i) shall not sweep or foreclose on cash of the Debtors necessary to fund the Carve-Out Account, (ii) shall subordinate their security interests and liens in the Carve-Out Account to the payment of the Allowed Professional Fees in accordance with the Carve-Out and the Carve-Out Cap, and shall only have a security interest upon, and shall only have a right of enforcement against, any residual interest in the Carve-Out Account available following satisfaction in full in cash of all obligations benefitting from the Carve-Out Account; and (iii) waive, and agree not to assert, any right of disgorgement with respect to the payment of the Allowed Professional Fees. Further, notwithstanding anything to the contrary in this Final Order or the Interim Orders, (i) disbursements by the Debtors from the Carve-Out Account shall not constitute Advances (as defined in the DIP Credit Agreement) or increase the DIP Term Loan Obligations, (ii) the failure of the Carve-Out Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Budget,

31

Carve-Out, Carve-Out Cap, the Liquidity Condition, Committee Carve-Out Amount or Committee Budget Amount, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.

(d)      *Trust Fund Amounts*. Notwithstanding the delivery and effectiveness of a Trigger Notice, the Debtors shall be entitled to use Cash Collateral to pay payroll expenses that have accrued through the date of the Trigger Notice and trust fund taxes that have accrued through the date of the Trigger Notice, each in an amount included in the Budget through the date of the Trigger Notice but which such amounts remain unpaid (the "Trust Fund Amounts").

(e)      *Compensation and Reimbursement of Expenses*. Notwithstanding the foregoing, so long as no Carve-Out Trigger Notice has been issued by the DIP Agent, the Borrowers shall be permitted to pay compensation and reimbursement of expenses Allowed and payable under sections 330 and 331 of the Bankruptcy Code but solely to the extent such amounts are provided for in the Budget (or, in the case of the Committee's Professionals, the Committee Carve-Out Amount (subject to the Liquidity Condition)), as the same may be due and payable and otherwise allowed and payable by order of the Bankruptcy Court, and the same shall not reduce the Carve-Out amount; *provided* that with respect to such allowed compensation or reimbursement of expenses of the Committee's Professionals up to and including the Committee Carve-Out Amount but in excess of the Committee Budget Amount, prior to the earlier of the issuance of a Carve-Out Trigger Notice or the occurrence of a DIP Termination Event, such amounts shall be payable (and may be deposited into the Carve-Out Account) solely to the extent the Debtors receive or recover funds or proceeds from any non-recurring source not in the Budget as of the date of this Final Order (for example, but not limited to, any settlement, asset sale, insurance

recovery) or the Debtors receive receipts under the Budget in excess of the amounts set forth in the Budget to the extent all receipts exceed actual disbursements; *provided further* that if the Debtors require some or all of the liquidity generated by such non-recurring event or excess amounts to fund the Debtors' operation, the Debtors may, in their reasonable discretion, determine at such time not to fund into the Carve-Out Account such compensation or reimbursement of expenses of the Committee's Professionals in excess of the Committee Budget Amount, subject in all respects to the rights of all parties, including the Committee, the DIP Lender and the Foris Prepetition Secured Lenders to contest (or support) the Debtors' decision on any basis (the foregoing provisos in this clause (e), collectively, the "Liquidity Condition").  Notwithstanding anything to the contrary herein, the Liquidity Condition shall not in any way affect the priority of, or constitute a cap or limitation on, the Carve-Out in respect of the Committee's Professionals up to the Committee Carve-Out Amount.

(f)    *Payment of Allowed Professional Fees*. For the avoidance of doubt, the Carve-Out shall be secured by a senior perfected first lien on the DIP Collateral in favor of the Professional Persons up to the amount to which each such Professional Person is entitled under the Budget (or, in the case of the Committee's Professionals, the Committee Carve-Out Amount) and the Carve-Out Cap, including the Carve-Out Account, and the DIP Agent, DIP Lenders, and the Foris Prepetition Secured Lenders shall have no right to seek disgorgement of any Allowed Professional Fees paid and allowed by a final order, provided, however, that, in connection with the determination by the Bankruptcy Court of the Allowed Professional Fees, the DIP Agent, DIP Lenders and Foris Prepetition Secured Lenders agree that they will not challenge such allowance (or seek disgorgement) on account of any administrative claim, or super-priority claim, they may

have or assert; provided, further, that all rights of the DIP Agent, DIP Lenders, and the Foris Prepetition Secured Lenders are expressly reserved with respect to the reasonableness and allowance of any fees and expenses of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.

(g)    *No Direct Obligation To Pay Allowed Professional Fees*.  None of the DIP Agent, DIP Lenders, or the Foris Prepetition Secured Lenders shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Final Order, the Interim Orders or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Foris Prepetition Secured Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

7.    *DIP Superpriority Claims*. Pursuant to, and to the extent provided by, section 364(c)(1) of the Bankruptcy Code, but subject to the Carve-Out, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors' estates (the "DIP Superpriority Claims") (without the need to file any proof of claim) with priority over any and all administrative expenses, Adequate Protection Claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code or otherwise, which allowed claims shall for the purposes of section

1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation any proceeds or property recovered in connection with the pursuit of claims or causes of action arising under chapter 5 of the Bankruptcy Code (the "Avoidance Actions Proceeds"), subject only to the payment of the Carve-Out.  Except as set forth in this Final Order or the Interim Orders, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

8.    *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Final Order, and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the DIP Agent or any DIP Lenders of, or over, any DIP Collateral, the following security interests and liens are hereby granted by the Debtors to the DIP Agent, for the benefit of the DIP Secured Parties, subject to (x) the Permitted Liens (as defined in the DIP Credit Agreement) and (y) the Carve-Out (all such liens and security interests granted to the DIP Agent, for the benefit of the DIP Lenders, pursuant to this Final Order and the DIP Documents, the "DIP Liens"):

(a)    *First Priority Lien on Unencumbered Property*. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected, first priority security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, that, on or as of the Petition Date, is not subject to (i) a valid, perfected and non-avoidable lien or (ii)

35

a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, including, without limitation, any and all unencumbered cash of the Debtors and any investment of cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, goodwill, causes of action, insurance policies and rights, claims and proceeds from insurance, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), chattel paper (including electronic chattel paper and tangible chattel paper), interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, equity interests of subsidiaries, joint ventures and other entities, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise (the "Prepetition Unencumbered Collateral"), in each case other than the Avoidance Actions Proceeds (but, for the avoidance of doubt, the Prepetition Unencumbered Collateral shall include the Avoidance Actions Proceeds).

(b)     *Liens Priming the Foris Liens*. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected, first priority priming security interest in and lien upon the Prepetition Collateral, including, without limitation, all tangible and intangible prepetition and postpetition property of the Debtors subject to the Foris Liens, regardless of where located, regardless of whether or not any liens on such assets are voided, avoided, invalidated, lapsed, or unperfected (the "Priming Liens"), which Priming Liens shall prime in all respects the interests of the Foris

36

Prepetition Secured Lenders arising from the current and future liens of the Foris Prepetition Secured Lenders (the "Primed Liens").  The Foris Prepetition Secured Lenders have consented to the Primed Liens being primed.  For the avoidance of doubt, the Primed Liens not only include the liens of the Foris Prepetition Secured Lenders but also include, and the Priming Liens are senior to, any liens of Lavvan, Inc. ("Lavvan") as a matter of contract pursuant to that certain subordination agreement, by and between Foris and Lavvan, dated as of May 2, 2019 (the "Subordination Agreement"), through and under which Lavvan consented to the subordination of its liens and claims (the "Lavvan Liens") prior to the indefeasible payment in full of all obligations owing to Foris as set forth in the Subordination Agreement.  Nothing contained in this Final Order or the DIP Documents authorizes the non-consensual priming of any properly perfected first priority security interest in and lien upon any of the Debtors' collateral.  In addition, to clarify the language of section 7.25 of the DIP Credit Agreement, to the extent that any of the Debtors' collateral is sold during these chapter 11 cases, the distribution of proceeds from the sale of such collateral will be in accordance with the relative lien priority of any properly perfected security interests in and liens upon such collateral.

(c)      *Liens Junior to Certain Other Liens*. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected, security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Debtors that is subject to (i) valid, perfected and non-avoidable senior liens in existence immediately prior to the Petition Date (other than the Primed Liens) or (ii) valid and non-avoidable senior liens (other than the Primed Liens) in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date, as permitted by section

546(b) of the Bankruptcy Code (the "Other Encumbered Prepetition Collateral"), which shall be (x) immediately junior and subordinate to any valid, perfected and non-avoidable liens (other than the Primed Liens) in existence immediately prior to the Petition Date, and (y) any such valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code; *provided* that nothing in the foregoing clauses (i) and (ii) shall limit the rights of the DIP Secured Parties under the DIP Documents to the extent such liens are not permitted thereunder.  For the avoidance of doubt, the DIP Liens shall be junior and subordinate to any properly perfected first priority security interest in and lien upon any Other Encumbered Prepetition Collateral arising under that certain Loan and Security Agreement dated as of October 11, 2022, as amended and restated by that certain Amendment and Restatement Agreement dated as of December 12, 2022 (as further amended, restated, supplemented or otherwise modified from time to time, the "DSM LSA"), by and among Amyris, certain subsidiaries thereof as guarantors, and DSM Finance B.V. ("DSM"). For the avoidance of doubt, the collateral to which the Lavvan Liens attach is not Other Encumbered Prepetition Collateral under this Final Order because the Lavvan Liens are junior and subordinate to the liens of Foris pursuant to the Subordination Agreement.

(d)      *Liens Senior to Certain Other Liens.*  The DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Final Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including

any regulatory body), commission, board or court for any liability of the DIP Secured Parties, or (C) any intercompany or affiliate liens of the Debtors or its non-Debtor affiliates or security interests of the Debtors; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

9.     *Adequate Protection for the Foris Prepetition Secured Lenders*. The Foris Prepetition Secured Lenders are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral (including Cash Collateral) in an amount equal to the aggregate diminution in the value of the Foris Prepetition Secured Lenders' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, which diminution is the result of the sale, lease or use by the Debtors of the Prepetition Collateral, the priming of the Foris Liens by the DIP Liens pursuant to the DIP Documents and this Final Order, the grant of any other priming lien under section 364 of the Bankruptcy Code, the stay of the Foris Prepetition Secured Lenders' rights under the Prepetition Collateral, the payment of any amounts under the Carve-Out or pursuant to the Interim Order, this Final Order or any other order of the Court or provision of the Bankruptcy Code or otherwise, and the imposition of the Automatic Stay ("Adequate Protection" and the resulting claims, "Adequate Protection Claims").  In consideration of the foregoing, the Foris Prepetition Secured Lenders are hereby granted the following as Adequate Protection for, and to secure repayment of an amount equal to such Adequate Protection Claims, and as an inducement to the Foris Prepetition Secured Lenders to consent to the priming of the Foris Liens and use of the Prepetition Collateral (including Cash Collateral) (collectively, the "Adequate Protection Obligations"):

(a)     *Prepetition Adequate Protection Liens*. The Foris Prepetition Secured Lenders are hereby granted (effective and perfected upon the date of this Final Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements) in the amount of their Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral (the "Adequate Protection Liens"), all Avoidance Actions Proceeds, in each case subject and subordinate only to (A) the DIP Liens, (B) the Carve-Out, and (C) Permitted Liens or any valid and non-avoidable senior liens (other than the Primed Liens) in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date; *provided that* the Adequate Protection Liens shall be payable out of Avoidance Actions Proceeds only after the Foris Prepetition Secured Lenders have exercised commercially reasonable efforts to satisfy the Adequate Protection Obligations from all other DIP Collateral.  For the avoidance of doubt, the Adequate Protection Liens shall be junior and subordinate to any properly perfected first priority security interest in and lien upon any Other Encumbered Prepetition Collateral in favor of DSM under the DSM LSA.

(b)     *Adequate Protection Superpriority Claims*. The Foris Prepetition Secured Lenders are hereby granted, subject to the Carve-Out, an allowed superpriority administrative expense claim to the fullest extent provided by sections 503(b) and 507(b) of the Bankruptcy Code in each of the Chapter 11 Cases in an amount equal to the Adequate Protection Obligations that are not secured by the Adequate Protection Liens (the "Adequate Protection Superpriority Claims").  The Adequate Protection Superpriority Claims shall be ahead of and senior to any and all other administrative expense claims of any kind specified or ordered pursuant to any provision

of the Bankruptcy Code, but junior to the DIP Superpriority Claims and subject to and subordinate to the Carve-Out and shall have recourse to and be payable from all prepetition or postpetition DIP Collateral, including any Avoidance Action Proceeds; *provided that* the Adequate Protection Superpriority Claims shall be payable out of Avoidance Actions Proceeds only after the Foris Prepetition Secured Lenders have exercised commercially reasonable efforts to satisfy the Adequate Protection Superpriority Claims from all other DIP Collateral. The Foris Prepetition Secured Lenders shall not receive or retain any payments, property or other amounts in respect of the Adequate Protection Superpriority Claims under section 507(b) of the Bankruptcy Code granted hereunder unless and until the DIP Obligations have been indefeasibly paid in full.

(c)     *Adequate Protection Payments*. The Debtors are authorized and directed to pay, without the necessity of filing fee applications with, or seeking approval of, the Court or in compliance with the U.S. Trustee fee guidelines, all reasonable and documents fees, costs, and expenses of (i) Goodwin Procter LLP and Troutman Pepper Hamilton Sanders LLP, counsel to the Foris Prepetition Secured Lenders, (ii) CR3 Partners LLC, financial advisor to the Foris Prepetition Secured Lenders, and (iii) any other professionals necessary to represent the interests of the Foris Prepetition Secured Lenders in connection with these Chapter 11 Cases whether arising on, prior to or after the Petition Date (all payments referenced herein, collectively, the "Adequate Protection Payments"); *provided* that all Adequate Protection Payments shall be deferred until the DIP Termination Date.

(d)     *Right to Seek Additional Adequate Protection*. This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Foris Prepetition Secured Lenders to request further or alternative forms of Adequate Protection at any

time or the rights of the Debtors or any other party to contest such request.

(e)      *Other Covenants*. The Debtors shall (i) contemporaneously provide the Foris Prepetition Secured Lenders, the Committee, the DIP Agent with all reports, documents and other information required to be delivered to the DIP Lenders and DIP Agent under the DIP Documents and this Final Order and (ii) use Cash Collateral in accordance with the Budget.

10.      *Reservation of Rights of the DIP Agent, DIP Lenders, and Foris Prepetition Secured Lenders*. Subject in all cases to the Carve-Out, notwithstanding any other provision in this Final Order or the DIP Documents to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of any of the Foris Prepetition Secured Lenders to seek any other or supplemental relief in respect of the Debtors including the right to seek additional Adequate Protection at and following the Final Hearing; (b) any of the rights of the DIP Secured Parties or the Foris Prepetition Secured Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the DIP Secured Parties or the Foris Prepetition Secured Lenders to (i) request modification of the Automatic Stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of the Chapter 11 Cases, (iii) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Secured Parties or the Foris Prepetition Secured Lenders.  The delay in or failure of the DIP Secured Parties and/or the Foris Prepetition Secured Lenders to seek

relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the DIP Secured Parties' or the Foris Prepetition Secured Lenders' rights and remedies.

11.     _Reservation of Certain Committee and Third Party Rights and Bar of Challenges and Claims_. The Debtors' Stipulations, admissions, agreements, waivers, and releases contained in this Final Order, shall be binding upon the Debtors, their estates, and any of their respective successors (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors' Stipulations, admissions, agreements, waivers, and releases contained in this Final Order shall be binding upon all other parties in interest, including the Committee and any other person acting on behalf of the Debtors' estates, unless and to the extent such Committee or party in interest with requisite standing (in each case, to the extent requisite standing is obtained pursuant to an order of this Court entered prior to the expiration of the Challenge Period (as defined herein) and subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so) has timely and properly filed an adversary proceeding or contested matter (i) before 75 calendar days after entry of the First Interim Order, each subject to further extension by written agreement of the Debtors, the DIP Agent, and the Foris Prepetition Secured Lenders, (in each case, a "Challenge Period" and the date of expiration of each Challenge Period being a "Challenge Period Termination Date"); (ii) seeking to avoid, object to, or otherwise challenge the findings or Debtors' Stipulations regarding: (a) the validity, binding, legal, enforceability, allowance, amount, characterization, extent and priority as to the Foris Prepetition Secured Lenders under the Foris Prepetition Secured Loan Agreements; (b) the validity, enforceability, allowability, priority, characterization, secured status, or amount of the Foris Prepetition

Obligations; or (c) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances subordination, recharacterization, avoidance power claims under the Bankruptcy Code or applicable state or federal law, other avoidance power claims or other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against the Foris Prepetition Secured Lenders or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, or agents, and the respective successors and assigns thereof, in each case in their respective capacity as such (each, a "Representative" and, collectively, the "Representatives") in connection with any matters directly or indirectly related to, arising from, or connected with the Foris Prepetition Secured Loan Agreements, and Foris Prepetition Obligations, the Foris Liens, and the Prepetition Collateral, and the negotiation, implementation and facts and circumstances related to any of the foregoing and (iii) in which there is a final non-appealable order entered in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim, and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released, and barred, including any amended or additional claims that may or could have been asserted thereafter through an amended complaint under Fed. R. Civ. P. 15 or otherwise.  If the Chapter 11 Cases convert to cases under chapter 7, or if a chapter 11 trustee is appointed, in each case prior to the end of the Challenge Period, the Challenge Period shall be extended solely for the chapter 7 or chapter 11 trustee to 30 days after the respective appointment of any such trustee to the extent the Challenge Period had not expired prior the appointment of such trustee.  Upon the expiration of the Challenge Period Termination

Date without the filing of a Challenge (or if any such Challenge is filed and overruled): (a) any and all such Challenges by any party (including the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever barred; (b) the Foris Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in these Chapter 11 Cases and any Successor Cases; (c) the Foris Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, enforceable and perfected secured claims, not subject to recharacterization, subordination, or avoidance; and (d) all of the Debtors' Stipulations and admissions contained in this Final Order, including the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations regarding the validity, binding, legal, enforceability, allowance, amount, characterization, priority, and extent as to the Foris Prepetition Secured Lenders' claims, liens, and interests contained in this Final Order shall be of full force and effect and forever binding upon the Debtors, the Debtors' estates, and all creditors, interest holders, and other parties in interest in these Chapter 11 Cases and any Successor Cases.  If any such adversary proceeding or contested matter is timely and properly filed under the Bankruptcy Rules and remains pending and the Chapter 11 Cases are converted to a case under chapter 7, the chapter 7 trustee may continue to prosecute such adversary proceeding or contested matter on behalf of the Debtors' estates. Furthermore, if any such adversary proceeding or contested matter is timely and properly filed under the Bankruptcy Rules, the stipulations and admissions contained in this Final Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive on the

Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such adversary proceeding or contested matter prior to the Challenge Period Termination Date.  Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including, without limitation, the Committee appointed in the Chapter 11 Cases, requisite standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation any challenges (including a Challenge) with respect to the Foris Prepetition Secured Loan Agreements, the Foris Liens, and the Foris Prepetition Obligations, and a separate order of the Court conferring such requisite standing on the Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by such Committee or such other party-in-interest; *provided that* so long as any potential claim has not previously been lawfully waived under the organizational documents of the applicable Debtors, no interested party shall be permitted to raise as a defense to any request for standing or to any Challenge the argument that creditors of such Debtor do not have the ability under applicable law to file derivative suits on behalf of limited liability companies under the Delaware Limited Liability Company Act, but all other objections, defenses, claims or arguments to any such request for standing or to any Challenge are expressly reserved and preserved in all respects. Notwithstanding the foregoing, to the extent a motion seeking standing to commence a Challenge is timely filed and attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge prior to the expiration of the Challenge Period and the Challenge Period expires before such motion is ruled upon by this Court, the Challenge Period will be tolled solely with respect to the Challenges asserted in the draft complaint until the earlier of (x) the thirtieth (30th) day following the filing of such motion (which may be extended by Court order or written

agreement of the DIP Agent, Debtors and movant, in each case, to accommodate the Court's calendar) or (y) three (3) business days from the entry of an order ruling on such motion.  If standing is denied by the Court, the Challenge Period shall be deemed to have expired with respect to such Challenges; *provided*, *however* nothing herein shall limit the Foris Prepetition Secured Lenders' right to seek an expedited ruling on any such motion.

12.     *DIP Termination Date*.  On the DIP Termination Date, (a) all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility will terminate; (b) all authority to use Cash Collateral shall cease; provided, however, that during the Remedies Notice Period (as defined below), the Debtors may use Cash Collateral to fund the Carve-Out and Trust Fund Amounts in accordance with the Budget (subject to the Permitted Variances) (or, in the case of the Committee's Professionals, the Committee Carve-Out Amount); and (c) the DIP Secured Parties shall be otherwise entitled to exercise rights and remedies under the DIP Documents in accordance with Paragraph 15 of this Final Order.

13.     *Events of Default*. The occurrence of any of the following events, unless waived by the DIP Agent in accordance with the terms of the DIP Documents, shall constitute an event of default (collectively, the "Events of Default"): (a) the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order; or (b) the occurrence of an "Event of Default" under the DIP Credit Agreement.

14.     *Milestones*. The failure of the Debtors to comply with any of the Milestones (as defined in, and set forth in, Section 7.25 of the DIP Credit Agreement and subject to section 8.12(t)) shall (a) constitute an Event of Default under (i) the DIP Credit Agreement and (ii) this Final Order, (b) result in the automatic termination of the Debtors' authority to use Cash Collateral

under this Final Order, and (c) permit the DIP Agent, subject to the terms of Paragraph 15 hereof (as applicable), to exercise the rights and remedies provided for in this Final Order and the DIP Documents.

      15.    *Rights and Remedies upon Event of Default*.

      (a)    Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the Automatic Stay, which is lifted with respect to the provisions of this paragraph, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order, the DIP Agent may declare (any such declaration shall be referred to herein as a "Termination Declaration") (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) the termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) the termination of the Debtors' ability to use Cash Collateral, except for payment of the Trust Fund Amounts and funding of the Carve-Out Account and any obligations to fund the Carve-Out through the delivery of the Carve-Out Trigger Notice to the Borrowers (the date which is the earliest to occur of any such date a Termination Declaration is delivered and the DIP Termination Date shall be referred to herein as the "Termination Date" and the remedies set forth in clauses (i) through (v) hereof, the "Automatic Remedies").  The Termination Declaration shall not be effective until notice has been provided by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Committee, and the U.S. Trustee.

(b)      With respect to all rights and remedies of the DIP Agent, the DIP Lenders and the Foris Prepetition Secured Lenders other than the Automatic Remedies, the Automatic Stay in the Chapter 11 Cases otherwise applicable to the DIP Agent, the DIP Lenders, and the Foris Prepetition Secured Lenders is hereby modified so that five (5) business days after the date a Termination Declaration is delivered (the "Remedies Notice Period"), unless the Bankruptcy Court orders otherwise, the DIP Agent shall be entitled to exercise all of its rights and remedies (other than the Automatic Remedies) in accordance with the DIP Documents and this Final Order to satisfy the DIP Obligations, DIP Liens, and Adequate Protection Obligations subject to the Carve-Out.  During the Remedies Notice Period, the Debtors, the Committee, and/or any party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court; *provided* that, if a request for such hearing is made prior to the end of the Remedies Notice Period, then the Remedies Notice Period shall be continued until the Court hears at its earliest availability and rules with respect thereto.  Upon expiration of the Remedies Notice Period, the DIP Agent and the Foris Prepetition Secured Lenders shall be permitted to exercise all remedies set forth herein, and in the DIP Documents, the Foris Prepetition Secured Loan Agreements and as otherwise available at law without further order of or application or motion to this Court consistent with this Final Order; *provided* that the Foris Prepetition Secured Lenders shall be permitted to exercise remedies to the extent available solely with respect to the Debtors' use of Cash Collateral and the Adequate Protection Obligations.  In the event the Debtors request a hearing at which the Debtors seek to prevent the DIP Agent from exercising any of its rights and remedies that arise after an Event of Default (except for those provided for in the DIP Agent remedies), the sole issue that may be raised by the Debtors before the Bankruptcy Court at such hearing shall be whether an Event

49

of Default has occurred and has not been waived.  .

16.    *Limitation on Charging Expenses Against Collateral*. Except to the extent of the Carve-Out, as applicable (but for the avoidance of doubt, without duplication), no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from (a) the Prepetition Collateral or the Foris Prepetition Secured Lenders or (b) the DIP Collateral, the DIP Agent or the DIP Lenders, in each case, pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the DIP Agent, the DIP Lenders, and the Foris Prepetition Secured Lenders, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, or the Foris Prepetition Secured Lenders.

17.    *Use of Cash Collateral*. The Debtors are hereby authorized to use all Cash Collateral of the Foris Prepetition Secured Lenders, but solely for the purposes set forth in this Final Order and in accordance with the Budget (subject to Permitted Variances as set forth in this Final Order and the DIP Documents) including, without limitation, to make payments on account of the Adequate Protection Obligations provided for in this Final Order, from the date of this Final Order through and including the Termination Date.

18.    *Expenses and Indemnification*.

(a)    The Debtors are hereby authorized and directed to pay, in accordance with this Final Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts become due and without need to obtain further Court approval, including, without limitation, all invoiced fees and other amounts owed to the DIP

50

Lenders or the DIP Agent (solely in their respective capacities as such), the reasonable and documented fees and disbursements of counsel and other professionals to the extent set forth in Paragraphs 3(d) and 9(c) of this Final Order, whether or not such fees arose before or after the Petition Date, all to the extent provided in this Final Order or the DIP Documents; *provided that* payment of such fees, expenses, and other disbursements shall be deferred to the DIP Termination Date; and *further provided that* payment shall be made after at least ten (10) days' notice (which may be via email) of an invoice (the "<u>Fee Objection Period</u>") has been provided to the Debtors, the U.S. Trustee, and the Committee (the "<u>Fee Notice Parties</u>"). If a formal objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested postpetition fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until such objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors. Notwithstanding the foregoing, the Debtors are authorized and directed to pay all adequate protection fees and expenses incurred under this Paragraph 18 on or prior to the Petition Date without the need for any applicable professional to first deliver a copy of its invoice or other supporting documentation. Subject to paragraph 11, any and all fees, costs and expenses paid prior to the Petition Date by any of the Debtors to or on behalf of the Foris Prepetition Secured Lenders (solely in their capacities as such), in connection with or with respect to these matters, are hereby approved in full and shall not be subject to avoidance, disgorgement, or any similar form of recovery by the Debtors or any other person.

(b) The Foris Prepetition Secured Lenders and the DIP Secured Parties have acted in good faith and without negligence, misconduct, or violation of public policy or law, in

respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Obligations, any challenges or objections to the DIP Facility or the use of Cash Collateral, the DIP Documents, the Final Order, and all other documents related to and all transaction contemplated by the foregoing.  Accordingly, without limitation to any other right to indemnification, the DIP Secured Parties and their Representatives, in each case solely in their respective capacities as such, and the Foris Prepetition Secured Lenders and their Representatives, in each case solely in their respective capacities as such, shall be and hereby are indemnified (as applicable) as provided in the DIP Documents.  The Debtors agree that no exception or defense in contract, law, or equity exists as of the date of this Final Order to any obligation set forth, as the case may be, in this Paragraph 18 or in the DIP Documents to indemnify and/or hold harmless the DIP Secured Parties, and the Foris Prepetition Secured Lenders  (in each case, solely in their respective capacities as such) and any such defenses that may be in existence as of the date of this Final Order are hereby waived, except in the case of bad faith, fraud, or gross negligence.

19.     _No Third Party Rights_.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

20.     _Section 507(b) Reservation_.  Subject to the Carve-Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the Adequate Protection provided to the Foris Prepetition Secured Lenders is insufficient to compensate for any aggregate diminution in the value as of the Petition Date of their interests in the Prepetition

Collateral (including Cash Collateral) as provided in Paragraph 9 during the Chapter 11 Cases. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Foris Prepetition Secured Lenders that the Adequate Protection granted herein does in fact adequately protect any of the Foris Prepetition Secured Lenders against any aggregate diminution in the value as of the Petition Date of their respective interests in the Prepetition Collateral (including the Cash Collateral) as provided in Paragraph 9.

21.     _Insurance_. Upon entry of this Final Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the DIP Secured Parties) and the Foris Prepetition Secured Lenders (solely with respect to any Adequate Protection Obligations), shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

22.     _No Waiver for Failure to Seek Relief_. The failure or delay of the DIP Agent or the DIP Lenders to exercise rights and remedies under this Final Order, the DIP Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

23.     _Perfection of the DIP Liens and Adequate Protection Liens_.

(a)     Without in any way limiting the automatic validity and effective perfection of the DIP Liens and Adequate Protection Liens granted herein, the DIP Agent, the DIP Lenders, and the Foris Prepetition Secured Lenders are hereby authorized, but not required, to file or record (and to execute in the name of the Borrowers and Guarantors and the Foris Prepetition Secured Lenders (as applicable), as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, patent filings,

53

copyright filings, other intellectual property filings, mortgages, deposit account control agreements, notices of lien or similar instruments in any jurisdiction, or to take possession of or control over cash or securities, or to amend or modify security documents, or to subordinate existing liens and any other similar action or action in connection therewith or take any other action in order to document, validate and perfect the liens and security interests granted hereunder (the "Perfection Actions").  Whether or not the DIP Agent, on behalf of the DIP Secured Parties, or the Foris Prepetition Secured Lenders shall take such Perfection Actions, the liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not, subject to challenge, dispute, or subordination, at the time and on the date of entry of this Final Order.  If the DIP Agent and the Foris Prepetition Secured Lenders determine to take any Perfection Actions, the Debtors shall cooperate and assist in any such execution and/or filings as reasonably requested by the DIP Agent, and the Automatic Stay shall be modified to allow such Perfection Actions to be taken.

(b)    A certified copy of this Final Order may, at the direction of the DIP Agent, and/or the Foris Prepetition Secured Lenders, be filed with or recorded in filing or recording offices by the DIP Agent and the Foris Prepetition Secured Lenders in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording; *provided*, *however*, that notwithstanding the date of any such filing, the date of such perfection shall be the date of the First Interim Order.

(c)    Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords, licensor, contract counterparty  or

other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, license, contracts, or other rights, or the proceeds thereof, or other collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, subject to applicable law. Any such provision shall have no force and effect with respect to the granting of the DIP Liens and the Adequate Protection Liens on such leasehold interest, license, contract or other rights, or the proceeds thereof, of any assignment and/or sale thereof by any Debtor in accordance with the terms of the DIP Credit Agreement or this Final Order, subject to applicable law.

24. _Credit Bidding_. The DIP Agent shall have the right to credit bid up to the full amount of the DIP Obligations in any sale of the DIP Collateral. The Foris Prepetition Secured Lenders shall have the right to credit bid (either directly or through one or more acquisition vehicles), up to the full amount of the Foris Prepetition Obligations pursuant to section 363(k) of the Bankruptcy Code, subject to the rights and limitations set forth in Paragraphs 11 and 26 of this Final Order, without the need for any further Court order authorizing the same and whether any such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

25. _Preservation of Rights Granted Under this Final Order._

(a) Unless and until all DIP Obligations are indefeasibly paid in full, in cash, and all commitments to extend credit under the DIP Facility are terminated, unless the DIP Lenders agree otherwise, the Foris Prepetition Secured Lenders shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the

Foris Prepetition Secured Loan Agreements or this Final Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral; and (ii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral, except as set forth in Paragraph 24 herein.

(b)     In the event this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, any liens or claims granted to the DIP Secured Parties or the Foris Prepetition Secured Lenders hereunder arising prior to the effective date of any such vacatur, reversal, or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the DIP Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits afforded in section 364(e) of the Bankruptcy Code.

(c)     Unless and until all DIP Obligations, Foris Prepetition Obligations, and Adequate Protection Payments are indefeasibly paid in full, in cash, and all commitments to extend credit under the DIP Facility are terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly (i) except as permitted under the DIP Documents or, if not provided for therein, with the prior written consent of the DIP Agent and (x) any modification, stay, vacatur, or amendment of this Final Order or (y) a priority claim for any administrative expense or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases, *pari passu* with or senior to the DIP Superpriority Claims, the Adequate

Protection Superpriority Claims, or the Foris Prepetition Obligations, or (z) any other order allowing use of the DIP Collateral; (ii) except as permitted under the DIP Documents (including the Carve-Out), any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, the Adequate Protection Liens or the Foris Liens, as applicable; (iii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Final Order; (iv) except as set forth in the DIP Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor; (v) an order converting or dismissing any of the Chapter 11 Cases; (vi) an order appointing a chapter 11 trustee in any of the Chapter 11 Cases; or (vii) an order appointing an examiner with enlarged powers in any of the Chapter 11 Cases.

(d)     Notwithstanding any order dismissing any of the Chapter 11 Cases entered at any time, (x) the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Obligations and the Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to this Final Order, shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full, in cash (and such DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Obligations and Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to this Final Order, shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) to the fullest extent permitted by law the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (x) above.

(e)    Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, the DIP Obligations, and the Adequate Protection Obligations, and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Foris Prepetition Secured Lenders granted by the provisions of this Final Order and the DIP Documents shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Prepetition Collateral or DIP Collateral pursuant to section 363(b) of the Bankruptcy Code, or (iii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Final Order and the DIP Documents shall continue in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code. The DIP Liens, the DIP Obligations and the Adequate Protection Obligations and all other rights and remedies of the DIP Secured Parties and the Foris Prepetition Secured Lenders granted by the provisions of this Final Order shall continue in full force and effect until the DIP Obligations and the Adequate Protection Obligations are indefeasibly paid in full, in cash (or, with respect to the DIP Obligations, otherwise satisfied in a manner agreed to by the DIP Lenders and the DIP Agent).

(f)    Other than as set forth in this Final Order, neither the DIP Liens nor the Adequate Protection Liens shall be made subject to or *pari passu* with any lien or security interest granted in any of the Chapter 11 Cases or arising after the Petition Date, and neither the DIP Liens

nor the Adequate Protection Liens shall be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551.

26.    _Limitation on Use of DIP Facility Proceeds, DIP Collateral, and Cash Collateral_. Notwithstanding any other provision of this Final Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral (including Cash Collateral) or any portion of the Carve-Out, may be used directly or indirectly, including, without limitation through reimbursement of professional fees of any non-Debtor party (a) in connection with the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation or challenges (i) against any of the DIP Secured Parties, the Foris Prepetition Secured Lenders, or their Representatives, or any action purporting to do the foregoing in respect of the DIP Obligations, the DIP Liens, Foris Prepetition Obligations, and/or the Adequate Protection Obligations or (ii) challenging the validity, binding, legal, enforceability, allowance, amount, characterization, extent and priority or asserting any defense, counterclaim or offset with respect to, the DIP Obligations, the Adequate Protection Obligations, the Foris Prepetition Secured Loans and/or the liens, claims, rights, or security interests securing or supporting the DIP Obligations and the Adequate Protection Obligations granted under this Final Order, the Interim Orders, the DIP Documents or the Foris Prepetition Secured Loan Agreements in respect of the Foris Prepetition Secured Loans, including, in the case of each (i) and (ii), without limitation, for lender liability, recharacterization, subordination, derivative claims, or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise (provided that, notwithstanding anything to the contrary herein, the proceeds of the DIP Loans and/or DIP Collateral (including Cash Collateral) may be used

by the Committee to investigate (but not to prosecute or initiate the prosecution of, including the preparation of any complaint or motion on account of) (A) the claims and liens of the Foris Prepetition Secured Lenders and (B) potential claims, counterclaims, causes of action or defenses against the Foris Prepetition Secured Lenders (together, the "Investigation"), up to an aggregate cap of no more than **$100,000** (the "Investigation Budget"), (b) to prevent, hinder, or otherwise delay or interfere with the Foris Prepetition Secured Lenders', or the DIP Agent's, or the DIP Secured Parties', as applicable, enforcement or realization on the Foris Prepetition Obligations, Foris Liens, Prepetition Collateral, Adequate Protection Obligations, DIP Obligations, DIP Liens, DIP Collateral, and the liens, claims and rights granted to such parties under the Interim Orders or Final Order, as applicable, each in accordance with the DIP Documents, the Foris Prepetition Secured Loan Agreements or this Final Order; (c) to seek to modify any of the rights and remedies granted to the Foris Prepetition Secured Lenders, the DIP Agent or the DIP Lenders under this Final Order, the Foris Prepetition Secured Loan Agreements or the DIP Documents, as applicable; (d) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens permitted pursuant to the DIP Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Obligations, and Adequate Protection Obligations, or (e) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved or authorized by the Court, agreed to in writing by the DIP Lenders, expressly permitted under this Final Order or permitted under the DIP Documents (including the Budget, subject to the Permitted Variance, or, in the case of the Committee's Professionals, the Committee Carve-Out Amount (subject to the Liquidity Condition)), in each case unless all DIP Obligations, Foris Prepetition Secured Loans,

Adequate Protection Obligations, and claims granted to the DIP Agent, DIP Lenders and Foris Prepetition Secured Lenders under this Final Order (in the case of the Foris Prepetition Secured Lenders, subject to Paragraph 11), have been refinanced or paid in full in cash or otherwise agreed to in writing by the DIP Secured Parties and the Foris Prepetition Secured Lenders.  To the extent the fees and expenses of the Committee incurred in connection with such actions exceed the Investigation Budget, the Committee's rights with respect to the assertion and allowance of any administrative expense claim against the Debtors for any fees and expenses incurred (whether in excess of the Investigation Budget or otherwise) are preserved and all parties' rights to oppose the allowance of any fees and expenses of the Committee shall be preserved.

27.    *Conditions Precedent*. No DIP Lenders shall have any obligation to make any DIP Loan under the respective DIP Documents unless all of the conditions precedent to the making of such extensions of credit under the applicable DIP Documents have been satisfied in full or waived in accordance with such DIP Documents.

28.    *Binding Effect; Successors and Assigns*. The DIP Documents and the provisions of this Final Order and the Interim Orders, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including without limitation, the DIP Secured Parties, the Foris Prepetition Secured Lenders, the Committee appointed in these Chapter 11 Cases, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties and the Foris Prepetition Secured

Lenders; *provided* that, except to the extent expressly set forth in this Final Order, the Foris Prepetition Secured Lenders shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan (whether under the DIP Credit Agreement, a promissory note or otherwise) to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the DIP Secured Parties and the Foris Prepetition Secured Lenders  (in each case, solely in their respective capacities as such) shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

29.    *Limitation of Liability*.  In determining to make any loan under the DIP Documents, permitting the use of Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the DIP Secured Parties and the Foris Prepetition Secured Lenders shall not, solely by reason thereof, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, nothing in this Final Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or the Foris Prepetition Secured Lenders (in each case, solely in their respective capacities as such) of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors.

30.     _No Requirement to File Claim for DIP Obligations_. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, the DIP Secured Parties and the Foris Prepetition Secured Lenders shall not be required to file any proof of claim or request for payment of administrative expenses with respect to any of the DIP Obligations, Adequate Protection Obligations, all of which shall be due and payable in accordance with the DIP Documents without the necessity of filing any such proof of claim or request for payment of administrative expenses, and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, binding, legal, enforceability, allowance, amount, characterization, extent and priority as to any of the DIP Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or under this Final Order, or prejudice or otherwise adversely affect the DIP Secured Parties' or the Foris Prepetition Secured Lenders' respective rights, remedies, powers, or privileges under any of the DIP Documents, this Final Order, or applicable law.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

31.     _No Requirement to File Claim for Foris Prepetition Obligations_. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, no Foris Prepetition Secured Lender shall be required to file any proof of claim or request for payment of

administrative expenses with respect to any of the Foris Prepetition Obligations; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, binding, legal, enforceability, allowance, amount, characterization, extent and priority as to any of the Foris Prepetition Secured Loan Agreements or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the Foris Prepetition Secured Lenders' rights, remedies, powers, or privileges under any of the Foris Prepetition Secured Loan Agreements, this Final Order, or applicable law.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

32.    _No Marshaling_.  In no event shall (a) the DIP Agent or the DIP Secured Parties with respect to the DIP Collateral and the DIP Obligations, or the Foris Prepetition Secured Lenders with respect to the Adequate Protection Obligations (except with respect to the marshaling of Avoidance Action Proceeds as provided in Paragraph 9(a) and (b)), or (b) the Foris Prepetition Secured Lenders with respect to the Prepetition Collateral or the Foris Prepetition Obligations, subject to entry of this Final Order, in each case, be subject to the equitable doctrine of "marshaling" or any other similar doctrine.

33.    _Equities of the Case_.  In no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Foris Prepetition Secured Lenders with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral.

34.    _Joint and Several Liability_.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however,

that the Debtors and the Guarantors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Documents.

35.     _Discharge_.  The DIP Obligations and the obligations of the Debtors with respect to the Adequate Protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such plan of reorganization, or each of the DIP Secured Parties and the Foris Prepetition Secured Lenders as applicable, has to otherwise agreed in writing; provided, that the DIP Facility, at the sole option of the DIP Lenders may be continued and/or converted into an exit term facility financing, subject to and in accordance with the DIP Credit Agreement.

36.     _Payments Held In Trust_.  Except as expressly permitted in this Final Order or the DIP Documents, and subject to the Carve-Out, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of the DIP Collateral, or receives any other payment with respect thereto from any other source prior to all DIP Obligations, Adequate Protection Obligations, and Foris Prepetition Obligations, in accordance with the DIP Documents and the Foris Prepetition Secured Loan Agreements, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of the DIP Collateral in trust for the benefit of the DIP Secured Parties and the Foris Prepetition Secured Lenders and shall immediately turn over such proceeds to them in accordance with their relative priority, or as otherwise instructed by this Court, for application in

accordance with the DIP Credit Agreement, the Foris Prepetition Secured Loan Agreements and this Final Order.

37.    _Effect of this Final Order_. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

38.    _Retention of Jurisdiction_. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

**<u>Exhibit A-1</u>**

**Plan Budget**

Exhibit A-1 (Plan Scenario)

Amyris, Inc., et al.

| $ thousands | Actual 14-Aug | Actual 21-Aug | Actual 28-Aug | Actual 4-Sep | Week 1 11-Sep | Week 2 18-Sep | Week 3 25-Sep | Week 4 2-Oct | Week 5 9-Oct | Week 6 16-Oct | Week 7 23-Oct | Week 8 30-Oct | Week 9 6-Nov | Week 10 13-Nov | Week 11 20-Nov | Week 12 27-Nov | Week 13 4-Dec | Week 14 11-Dec | Week 15 18-Dec | Week 16 25-Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Operating cash flows* | | | | | | | | | | | | | | | | | | | | | |
| Receipts | 1,431 | 2,900 | 2,733 | 2,488 | 2,695 | 2,915 | 3,118 | 3,593 | 4,000 | 4,000 | 4,000 | 3,895 | 4,001 | 4,001 | 4,001 | 3,894 | 4,729 | 4,729 | 2,431 | 2,181 | 67,735 |
| Other receipts | - | - | - | - | - | 480 | - | - | - | - | - | - | - | 2,000 | - | - | - | - | - | - | 2,480 |
| Total Receipts | 1,431 | 2,900 | 2,733 | 2,488 | 2,695 | 3,395 | 3,118 | 3,593 | 4,000 | 4,000 | 4,000 | 3,895 | 4,001 | 6,001 | 4,001 | 3,894 | 4,729 | 4,729 | 2,431 | 2,181 | 70,215 |
| Payments per First day orders | (65) | (476) | (725) | - | (3,183) | (3,183) | (3,183) | (3,183) | (2,500) | - | - | - | - | - | - | - | - | - | - | - | (16,500) |
| Other AP disbursements | (1,072) | (611) | (887) | (2,436) | (4,712) | (4,775) | (4,775) | (3,722) | (3,609) | (7,567) | (7,567) | (7,567) | (8,733) | (8,178) | (5,928) | (4,902) | (4,902) | (4,902) | (4,902) | (100,478) |
| Non-Debtor InterCo Disbursements for Goods | (3,063) | (2,174) | (2,180) | - | (2,158) | (2,440) | (1,761) | (1,434) | (1,434) | (1,434) | (1,434) | (1,434) | (1,741) | (1,741) | (1,741) | (1,741) | (1,349) | (1,349) | (1,349) | (33,697) |
| Non-Debtor InterCo Loan | (5,609) | (4,406) | (3,969) | (6,243) | (3,367) | (4,009) | (3,922) | (2,688) | (2,689) | (3,593) | (3,040) | (1,382) | (1,422) | (1,473) | (1,946) | (1,530) | (1,584) | (1,348) | (1,554) | (1,722) | (57,498) |
| US Payroll | (5,780) | (307) | (5,077) | (610) | (4,832) | (65) | (4,832) | (865) | (4,832) | (65) | (65) | (4,832) | (865) | (4,832) | (65) | (4,832) | (865) | (4,832) | (65) | (2,832) | (51,349) |
| Insurance | - | - | - | - | (1,500) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (1,500) |
| Rent | - | - | - | (1,412) | - | - | - | (1,469) | - | - | - | - | - | (1,469) | - | - | (2,491) | - | - | - | (6,840) |
| Total disbursements | (15,590) | (7,974) | (12,838) | (10,701) | (19,753) | (14,472) | (18,473) | (13,361) | (15,064) | (12,659) | (12,107) | (15,215) | (14,229) | (16,778) | (11,929) | (14,031) | (11,582) | (12,430) | (7,870) | (10,805) | (267,861) |
| **Total Operating cash flows** | **(14,158)** | **(5,074)** | **(10,105)** | **(8,214)** | **(17,058)** | **(11,077)** | **(15,355)** | **(9,768)** | **(11,064)** | **(8,659)** | **(8,107)** | **(11,320)** | **(10,227)** | **(10,777)** | **(7,928)** | **(10,137)** | **(6,853)** | **(7,701)** | **(5,439)** | **(8,624)** | **(197,646)** |
| *Financing cash flows* | | | | | | | | | | | | | | | | | | | | | |
| Financing | 30,000 | - | 40,000 | - | - | 23,000 | - | - | 42,000 | - | - | 35,000 | - | - | - | 20,000 | - | - | - | - | 190,000 |
| Total financing cash flows | 30,000 | - | 40,000 | - | - | 23,000 | - | - | 42,000 | - | - | 35,000 | - | - | - | 20,000 | - | - | - | - | 190,000 |
| *Restructuring costs* | | | | | | | | | | | | | | | | | | | | | |
| Employee Separation costs | (713) | (103) | - | - | - | (670) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (1,486) |
| Board member fees | (50) | - | (103) | (70) | - | - | (173) | - | - | - | - | (173) | - | - | - | (173) | - | - | - | (173) | (915) |
| UST / Court / Deposit fees | - | - | (100) | - | - | - | (21) | - | - | - | (250) | - | - | - | - | - | - | - | - | (250) | (621) |
| KEIP / KERP | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (950) | - | - | - | (4,550) | (5,500) |
| Professional fees | - | - | (2,805) | - | (2,663) | - | - | - | (4,620) | (979) | (979) | (979) | (929) | (929) | (929) | (929) | (1,093) | (1,093) | (1,043) | (1,043) | (21,007) |
| Total Restructuring costs | (763) | (103) | (3,008) | (70) | (2,663) | (670) | (194) | - | (4,620) | (979) | (1,229) | (1,152) | (929) | (929) | (929) | (2,052) | (1,093) | (1,093) | (1,043) | (6,016) | (29,529) |
| **Net Cash flow** | **15,079** | **(5,177)** | **26,887** | **(8,284)** | **(19,720)** | **11,253** | **(15,549)** | **(9,768)** | **26,316** | **(9,638)** | **(9,335)** | **22,529** | **(11,156)** | **(11,705)** | **(8,857)** | **7,811** | **(7,945)** | **(8,794)** | **(6,481)** | **(14,639)** | **(37,175)** |
| *Cash roll-forward* | | | | | | | | | | | | | | | | | | | | | |
| Beginning cash | 10,162 | 25,240 | 20,063 | 46,950 | 38,667 | 18,946 | 30,199 | 14,650 | 4,882 | 31,198 | 21,560 | 12,225 | 34,754 | 23,598 | 11,892 | 3,036 | 10,847 | 2,901 | (5,893) | (12,374) | 10,162 |
| (+) / (-) Net cash flow | 15,079 | (5,177) | 26,887 | (8,284) | (19,720) | 11,253 | (15,549) | (9,768) | 26,316 | (9,638) | (9,335) | 22,529 | (11,156) | (11,705) | (8,857) | 7,811 | (7,945) | (8,794) | (6,481) | (14,639) | (37,175) |
| **Ending cash** | **25,240** | **20,063** | **46,950** | **38,667** | **18,946** | **30,199** | **14,650** | **4,882** | **31,198** | **21,560** | **12,225** | **34,754** | **23,598** | **11,892** | **3,036** | **10,847** | **2,901** | **(5,893)** | **(12,374)** | **(27,013)** | **(27,013)** |

## **Exhibit A-2**

**Sale Budget**

Exhibit A-2 (Sale Scenario)

**Amyris, Inc., et al.**

| $ thousands | Actual 14-Aug | Actual 21-Aug | Actual 28-Aug | Actual 4-Sep | Week 1 11-Sep | Week 2 18-Sep | Week 3 25-Sep | Week 4 2-Oct | Week 5 9-Oct | Week 6 16-Oct | Week 7 23-Oct | Week 8 30-Oct | Week 9 6-Nov | Week 10 13-Nov | Week 11 20-Nov | Week 12 27-Nov | Week 13 4-Dec | Week 14 11-Dec | Week 15 18-Dec | Week 16 25-Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Operating cash flows* | | | | | | | | | | | | | | | | | | | | | |
| Receipts | 1,431 | 2,900 | 2,733 | 2,488 | 2,695 | 2,915 | 3,118 | 3,593 | 4,000 | 4,000 | 4,000 | 3,895 | 3,408 | 3,408 | 3,408 | 3,258 | 3,280 | 3,184 | 886 | 636 | 59,237 |
| Other receipts | - | - | - | - | - | 480 | - | - | - | - | - | - | - | 2,000 | - | - | - | - | - | - | 2,480 |
| Total Receipts | 1,431 | 2,900 | 2,733 | 2,488 | 2,695 | 3,395 | 3,118 | 3,593 | 4,000 | 4,000 | 4,000 | 3,895 | 3,408 | 5,408 | 3,408 | 3,258 | 3,280 | 3,184 | 886 | 636 | 61,717 |
| Payments per First day orders | (65) | (476) | (725) | - | (3,183) | (3,183) | (3,183) | (3,183) | (2,500) | - | - | - | - | - | - | - | - | - | - | - | (16,500) |
| Other AP disbursements | (1,072) | (611) | (887) | (2,436) | (4,712) | (4,775) | (4,775) | (3,722) | (3,412) | (7,208) | (6,964) | (6,559) | (7,647) | (7,647) | (7,370) | (4,904) | (4,016) | (4,016) | (4,016) | (4,016) | (90,763) |
| Non-Debtor InterCo Disbursements for Goods | (3,063) | (2,174) | (2,180) | - | (2,158) | (2,440) | (1,761) | (1,434) | (1,414) | (1,414) | (1,414) | (988) | (991) | (991) | (991) | (595) | (514) | (514) | (514) | (514) | (26,539) |
| Non-Debtor InterCo Loan | (5,609) | (4,406) | (3,969) | (6,243) | (3,367) | (4,009) | (3,922) | (2,688) | (1,151) | (2,054) | (1,502) | (1,024) | (819) | (871) | (1,344) | (928) | (567) | (627) | (833) | (1,002) | (46,935) |
| US Payroll | (5,780) | (307) | (5,077) | (610) | (4,832) | (65) | (4,832) | (865) | (4,832) | (65) | (65) | (4,832) | (865) | (4,832) | (65) | (4,832) | (865) | (4,832) | (65) | (4,832) | (53,349) |
| Insurance | - | - | - | - | (1,500) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (1,500) |
| Rent | - | - | - | (1,412) | - | - | - | (1,469) | - | - | - | - | - | (1,469) | - | - | (2,491) | - | - | - | (6,840) |
| Total disbursements | (15,590) | (7,974) | (12,838) | (10,701) | (19,753) | (14,472) | (18,473) | (13,361) | (13,308) | (10,741) | (9,945) | (13,402) | (11,791) | (14,340) | (9,769) | (11,654) | (8,533) | (9,988) | (5,428) | (10,363) | (242,426) |
| **Total Operating cash flows** | **(14,158)** | **(5,074)** | **(10,105)** | **(8,214)** | **(17,058)** | **(11,077)** | **(15,355)** | **(9,768)** | **(9,308)** | **(6,741)** | **(5,945)** | **(9,507)** | **(8,383)** | **(8,933)** | **(6,361)** | **(8,396)** | **(5,253)** | **(6,804)** | **(4,542)** | **(9,726)** | **(180,708)** |
| *Financing cash flows* | | | | | | | | | | | | | | | | | | | | | |
| Financing | 30,000 | - | 40,000 | - | - | 23,000 | - | - | 42,000 | - | - | 35,000 | - | - | - | 20,000 | - | - | - | - | 190,000 |
| Total financing cash flows | 30,000 | - | 40,000 | - | - | 23,000 | - | - | 42,000 | - | - | 35,000 | - | - | - | 20,000 | - | - | - | - | 190,000 |
| *Restructuring costs* | | | | | | | | | | | | | | | | | | | | | |
| Employee Separation costs | (713) | (103) | - | - | - | (670) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (1,486) |
| Board member fees | (50) | - | (103) | (70) | - | - | (173) | - | - | - | - | (173) | - | - | - | (173) | - | - | - | (173) | (915) |
| UST / Court / Deposit fees | - | - | (100) | - | - | - | (21) | - | - | - | (250) | - | - | - | - | - | (950) | - | - | (250) | (621) |
| US Payroll | - | - | - | - | - | - | - | - | (4,600) | (969) | (969) | (969) | (854) | (854) | (854) | (854) | (936) | (936) | (886) | (886) | (20,032) |
| KEIP / KERP | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (950) | - | - | - | (4,550) | (5,500) |
| Professional fees | - | - | (2,805) | - | (2,663) | - | - | - | (4,600) | (969) | (1,219) | (1,142) | (854) | (854) | (854) | (1,977) | (936) | (936) | (886) | (5,859) | (28,554) |
| Total Restructuring costs | (763) | (103) | (3,008) | (70) | (2,663) | (670) | (194) | - | (4,600) | (969) | (1,219) | (1,142) | (854) | (854) | (854) | (1,977) | (936) | (936) | (886) | (5,859) | (28,554) |
| **Net Cash flow** | **15,079** | **(5,177)** | **26,887** | **(8,284)** | **(19,720)** | **11,253** | **(15,549)** | **(9,768)** | **28,092** | **(7,709)** | **(7,164)** | **24,351** | **(9,237)** | **(9,786)** | **(7,215)** | **9,627** | **(6,189)** | **(7,740)** | **(5,428)** | **(15,586)** | **(19,263)** |
| *Cash roll-forward* | | | | | | | | | | | | | | | | | | | | | |
| Beginning cash | 10,162 | 25,240 | 20,063 | 46,950 | 38,667 | 18,946 | 30,199 | 14,650 | 4,882 | 32,974 | 25,265 | 18,101 | 42,452 | 33,216 | 23,430 | 16,215 | 25,842 | 19,653 | 11,913 | 6,485 | 10,162 |
| (+) / (-) Net cash flow | 15,079 | (5,177) | 26,887 | (8,284) | (19,720) | 11,253 | (15,549) | (9,768) | 28,092 | (7,709) | (7,164) | 24,351 | (9,237) | (9,786) | (7,215) | 9,627 | (6,189) | (7,740) | (5,428) | (15,586) | (19,263) |
| **Ending cash** | **25,240** | **20,063** | **46,950** | **38,667** | **18,946** | **30,199** | **14,650** | **4,882** | **32,974** | **25,265** | **18,101** | **42,452** | **33,216** | **23,430** | **16,215** | **25,842** | **19,653** | **11,913** | **6,485** | **(9,101)** | **(9,101)** |