IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

**DEBTORS' (1) FURTHER OPPOSITION TO LAVVAN, INC.'S REQUEST FOR IMPOSITION OF AN ADVERSE INFERENCE AND (2) OPPOSITION TO LAVVAN, INC.'S CROSS-MOTION TO EXCLUDE TESTIMONY OF OKSANA WRIGHT**

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby submit their (1) further opposition to the request of Lavvan Inc. ("Lavvan") for the imposition of an adverse inference (the "Adverse Inference Request") and (2) opposition to Lavvan's Cross-Motion to Exclude Testimony of Oksana Wright (the "Cross Motion")[2] [Docket No. 427] (this "Opposition"), and, in support thereof, respectfully state as follows:

**PRELIMINARY STATEMENT**

1. Pursuant to this Court's Scheduling Order, entered on September 19, 2023, the parties were required to exchange documents relating to the October 4, 2023 continued Final DIP Hearing on or before September 22, 2023. The Debtors made their document production on that date in accordance with the Scheduling Order. On September 29, 2023, in the Lavvan Opening Brief (defined below), Lavvan, for the first time, requested that this Court make an adverse inference because of the Debtors' purported failure to produce documents. Lavvan never sought to meet and confer on this issue, never sought the Court's intervention via letter or request for a

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Cross-Motion.

conference, never made a motion, and never complied with this Court's Local Rules regarding discovery motions.[3]

2.      Confronted with this eleventh hour, procedurally deficient request, and in order to rebut the Adverse Inference Request, the Debtors included Oksana Wright, Amyris Inc.'s Chief Compliance Officer, as a rebuttal witness on their Witness and Exhibit List filed on October 2, 2023.  Lavvan now seeks to exclude Ms. Wright's rebuttal testimony.

3.      This Court should not entertain Lavvan's Adverse Inference Request because it is procedurally and legally improper.  If, as it should, it determines not to consider the request, there will be no need for Ms. Wright's testimony as such testimony will only be elicited in order to rebut Lavvan's Adverse Inference Request. If the Court determines to consider the Adverse Inference Request, Ms. Wright's testimony should be permitted in order to establish the Debtors' good faith and diligence in connection with its document search and document production.  As discussed in greater detail below, even if the Court considers Lavvan's request, in light of the Debtors' good faith, there is no basis for an adverse inference.

## PROCEDURAL HISTORY

4.      The Court entered its Scheduling Order at approximately 2:00 p.m. on September 19, 2023.  Among other things, the Scheduling Order required that witnesses be disclosed on September 21, 2023, and that documents be exchanged by September 22, 2023.  The Scheduling Order also set a briefing schedule with simultaneous opening briefs due on September 29, 2023, witness and exhibit lists due on October 2, 2023, and responsive briefs due at noon EST on October 3, 2023.

---

[3]   Indeed at the September 15, 2023 Hearing, this Court stated explicitly: "If I need to resolve discovery disputes, I will do that."  Sept 15 Tr. at 30:11-12.

5.     At 11:54 PM EST on September 19, 2023, Lavvan requested, *inter alia*, that the Debtors and the Foris Lenders produce a very broad category of communications related to the Foris LSA (the "Discovery Request").[4] To put it in perspective, Lavvan requested that the Debtors (and the Foris Lenders) produce practically every communication pertaining to the Foris LSA by no later than the September 22, 2023 deadline for the exchange of documents under the Scheduling Order.

6.     Just one day later, on September 20, 2023, the Debtors wrote to Lavvan objecting to the broad and burdensome scope of the Discovery Request and stating that the Discovery Request fell outside of this Court's directive at the September 15, 2023, status conference (the "September 15 Status Conference") regarding the appropriate scope of discovery in connection

---

[4] Lavvan's Discovery Request demanded the production of the following records:

    i. The Foris LSA transaction documents, including all purported amendments or modifications thereto; (ii) Debtors'/Foris's documents and communications concerning the status of the Foris LSA.

    ii. Debtors'/Foris's documents and communications concerning the flow of funds or other assets between Debtors and Foris (or any other entity owned or controlled by John Doerr).

    iii. Debtors'/Foris's documents and communications concerning the extinguishment, or potential extinguishment, of debt related to the Foris LSA.

    iv. Debtors'/Foris's documents and communications concerning the analysis of whether any of Debtors' transactions with Foris (including certain equity transactions with Foris on or about January 31, 2020) resulted in "a modification or extinguishment of the Foris LSA," as described in Amyris's Form 10-K for the fiscal year ended December 31, 2020.

    v. Debtors'/Foris's documents and communications concerning "the accelerated paydown of the Foris LSA loan balance," as described in Amyris's Form 10-K for the fiscal year ended December 31, 2020.

    vi. Debtors'/Foris's documents and communications concerning Amyris's accounting for the "accelerated paydown" of the Foris LSA loan balance as "a debt extinguishment and new debt issuance," as described in Amyris's Form 10-K for the fiscal year ended December 31, 2020, including the accountant's conclusions, any related reports or memoranda, and communications leading it to undertake such analysis.

    vii. Any of Debtors'/Foris's books and records in which Debtors/Foris recorded or identified the Foris LSA debt as extinguished.

    viii. Debtors'/Foris's documents and communications concerning the application of the Subordination Agreement in the event that Foris purported to subordinate its rights to those of a third party or related party.

    ix. Debtors'/Foris's documents and communications concerning adequate protection for Lavvan.

    x. All documents reviewed by Steven Fleming in connection with his September 2023 Declaration and Amended Declaration in support of Debtors' motion.

with the resolution of the DIP Motion.[5]  In an email dated September 21, 2023, counsel for Lavvan responded by stating that Lavvan "expects Debtors and Foris to comply with these discovery requests and reserves all rights to the extent they fail to do so."  In accordance with the Scheduling Order, the Debtors produced their documents on September 22, 2023.  Thereafter, Lavvan neither sought to meet and confer nor moved to compel the requested discovery; nor did they write to the Court regarding the purported document discovery dispute.

7.     The Debtors disclosed their anticipated witnesses on September 21, 2023.[6]

8.     Late on October 29, 2023, Lavvan filed its *Opening Brief of Lavvan, Inc. in Opposition to Motion of the Debtors for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 402] (the "<u>Lavvan Opening Brief</u>").

9.     In the Lavvan Opening Brief, for the first time, without ever (1) having made a motion to compel; (2) written to this Court regarding any discovery dispute; or (3) certified, as required by the rules of this Court, that it had made a reasonable effort to reach agreement with the Debtors, Lavvan argued that this Court should make an adverse inference as to whether the Loan and Security Agreement, dated as June 29, 2018, as amended from time to time, remained in

---

[5] Specifically, this Court expressly stated that the issues should be "cabin[ed]" and that the parties had to work to "get to finality."  *See* Hr'g Tr., dated September 15, 2023 (the "<u>Sept. 15 Tr.</u>") at 19:21-25.  Further, the Court expressly acknowledged the "limited time and space" for discovery, and the need for the parties to "work realistically within the time that we have."  *Id*. at 20:14-21.  With regard to discovery in particular, the Court cautioned that the parties could not engage in a "free w[heel]ing inquiry into everything that Foris is alleged to have done or could be alleged to have done," because such an inquiry would amount to a "fishing expedition."  *Id*. at 30:2-18.  The Court "trust[ed] that the parties are going to appropriately limit discovery to get the issues that we've identified."  *Id*. at 30:13-15.

[6] The Debtors initially identified Elizabeth Dreyer, the Debtors' Chief Accounting Officer, and Theodore Martens (their expert) as witnesses.  On September 25, 2023, before Lavvan even contacted the Debtors to request a deposition of either witness, the Debtors notified the parties that Han Kieftenbeld, the Debtors Chief Financial Officer and Interim Chief Executive Officer, would testify as their fact witness instead of Ms. Dreyer.

effect, based upon purported failure of the Debtors and Foris Lenders to produce documents. Lavvan Opening Brief at pages 33-34.

10. In accordance with the Scheduling Order, the Debtors filed their witness and exhibit lists on October 2, 2023. [Docket No. 408]. As a result of Lavvan's eleventh hour, procedurally defective request for an adverse inference, the Debtors identified Ms. Wright, Amyris Inc.'s Vice President of Compliance and Litigation, as a rebuttal witness in order to establish, that as discussed in greater detail below and in the joint reply of the Debtors and the Foris Lenders to the Lavvan Opening Brief (the "Joint Reply Brief") [Docket No. 433], the documents produced by the Debtors are proportional to the matters at issue in this contested matter and consistent with this Court's comments at the September 15 Status Conference, that the Debtors acted in good faith in producing them, and that, accordingly, an adverse inference is not warranted.

## ARGUMENT

### A. This Court Should Not Entertain a Motion For or Make an Adverse Inference

11. Ms. Wright is being proffered as a witness by the Debtors only to rebut Lavvan's contention that this Court should make an adverse inference in connection with the Debtors' determination that they would not produce "communications" sought in the Discovery Request. Thus, the necessity of Ms. Wright's rebuttal testimony is inextricably tied to the question of whether this Court determines to consider the Adverse Inference Request, an extreme sanction. The Debtors submit that the Court should neither consider nor grant the Adverse Inference Request because it is both procedurally and substantively deficient. If this Court determines, as it should, not to entertain the Adverse Inference Request, then there will be no need for Ms. Wright to testify.

12. This Court should not consider the Adverse Inference Request because it is procedurally deficient. Requests for remedies for alleged deficiencies in discovery, like Lavvan

asserts here, must be made by motion, and no motion was filed by Lavvan. And, as is the case for all discovery motions, prior to being filed, the movant must meet and confer with opposing counsel and generally must write to a court to seek intervention prior to filing a motion to compel. Lavvan did not do this.

13. Further, Rule 7026-1(d) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") provides that any discovery motion "shall be accompanied by an averment of Delaware Counsel for the moving party that a reasonable effort has been made to reach agreement with the opposing party on the matters set forth in the motion or the basis for the moving party not making such an effort. Unless otherwise ordered, failure to so aver may result in dismissal of the motion." Local Rule 7026-1(d). No such averment has been made here, and none could be made, because no effort to reach agreement occurred.

14. Lavvan's request for preclusion is therefore procedurally defective on its face and should not be considered.

**B. <u>Ms. Wright's Testimony Should not be Excluded</u>**

15. Should this Court determine to entertain the Adverse Inference Request, Ms. Wright's rebuttal testimony should be permitted in order to establish the Debtors' good faith in responding to the Discovery Request.

16. Ms. Wright will testify as to the Debtors' efforts to provide proportional discovery of responsive documents during the very narrow three day window for document discovery. She will also testify concerning the Debtors diligence in preparing and running search terms across the emails of relevant custodians to determine if production of "communications" was proportional under the circumstances, which searches generated approximately 100,000 hits. This testimony is critical to the Debtors' opposition to the Adverse Inference Request.

### C. This Court Should Not Grant Adverse Inference Request

17. As set forth in the Joint Reply Brief, no adverse inference should be made here because the Debtors acted in good faith in connection with their discovery response.

18. In the Third Circuit, the non-production of documents properly requested under the federal rules may constitute spoliation and can be treated in the same manner as the destruction of relevant information as "a party's failure to produce a document can have the same practical effect as destroying it." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). However, there can be no spoliation finding where the non-producing party did not act in "bad faith." *Id*. at 79. "This only makes sense, since spoliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually withheld, rather than—for instance—misplaced." *Id*. However, "[n]o unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995).

19. The Debtors' objections cannot equate to bad faith. The Debtors promptly responded to the Discovery Request and identified legitimate reasons for why they believed the Discovery Request fell outside the scope of this Court's directive. "A party is substantially justified in failing to produce required discovery when a reasonable person could conclude that parties could differ as to whether disclosure was required." *In re Atomica Design Group, Inc.*, 591 B.R. 217, 233 (Bankr. E.D. Pa. 2018) (citing *LightStyles, Ltd. ex rel. Haller v. Marvin Lumber & Cedar Co.*, No. 1:13-CV-1510, 2015 WL 4078826 at *2 (M.D. Pa. July 6, 2015)); *see also Johnson v. Fed. Express Corp.*, No. 1:12-CV-444, 2014 WL 65761, at *1 (M.D. Pa. Jan. 8, 2014) ("Substantial justification for the failure to make a required disclosure means justification to a

degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.") (internal citations and quotations omitted).

20. Moreover, the cases cited by Lavvan to support its request for an adverse inference are factually distinguishable and do not support an adverse inference against the Debtors. In *Stone & Webster, Inc.*, the court drew an adverse inference against a party that refused to comply with a discovery order that specifically ordered a party to produce certain documents. 547 B.R. 588, 610-611 (Bankr. D. Del. 2016). In *Communication Dynamics, Inc.*, the subpoena recipient claimed to have lost a document at issue in the case and made no attempt to obtain an additional copy of the report to be provided. 300 B.R. 220, 224 (Bankr. D. Del. 2003). The Court found this account to be noncredible and authorized an adverse inference from the nonproduction. *Id*. In *SuperMedia LLC*, the court expressly **refused to award adverse inferences** as the requesting party "failed to convince the Court that SuperMedia's conduct amounted to fraud or an intentional action" as there was no evidence of bad faith in the non-production nor was there any evidence of a duty to have preserved the missing documents. No. 13-10546 (KG), 2016 WL 1367070, at *8 (Bankr. D. Del. Apr. 4, 2016). Additionally, in *SuperMedia*, Judge Gross refused to award the adverse inference after having otherwise sanctioned SuperMedia for failing to initially produce documents subject to the adverse inference request. *Id*. Here, there was no discovery order, and there was no bad faith.

21. Accordingly, for the reasons set forth herein and in the Joint Reply Brief, this Court should not make an adverse inference against the Debtors.

**CONCLUSION**

22. For the reasons set forth above, the Debtors request that the Court deny the Adverse Inference Request, and to the extent it determines to entertain the Adverse Inference Request, deny the Cross Motion.

Dated: October 4, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Steven W. Golden*
Richard M. Pachulski (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
Alan J. Kornfeld (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  rpachulski@pszjlaw.com
        dgrassgreen@pszjlaw.com
        akornfeld@pszjlaw.com
        joneill@pszjlaw.com
        sgolden@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*