**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: Oct. 18, 2023 at 4:00 p.m. (ET)**<br>**Hearing Date: Nov. 6, 2023 at 10:00 a.m. (ET)** |

## REQUEST OF DSM-FIRMENICH FOR ADEQUATE PROTECTION

DSM Finance B.V. ("DSM BV") (together with its affiliates, including DSM Nutritional Products Ltd., "DSM-Firmenich") as secured lender under that certain Loan and Security Agreement dated as of October 11, 2022, as amended and restated by that certain Amendment and Restatement Agreement dated as of December 12, 2022 (as amended by that certain First Forbearance Agreement and First Amendment to Amended and Restated Loan Agreement dated as of May 9, 2023, as further amended by that certain Amendment No. 2 and Waiver to Amended and Restated Loan and Security Agreement dated as of June 5, 2023, and as further amended, restated, supplemented or otherwise modified from time to time, the "DSM LSA"), by and among DSM BV, Amyris, Inc. ("Amyris") and certain subsidiaries thereof as guarantors (the "Subsidiary Guarantors"), hereby requests (this "Request") that this Court grant DSM-Firmenich adequate protection pursuant to Sections 361, 362, and 363(e), of title 11 of the United States Code (the "Bankruptcy Code"), effective as of the Petition Date (as defined below).

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

30838466.1

## PRELIMINARY STATEMENT

1. Despite DSM-Firmenich's status as a secured creditor — having approximately $74 million in principal amount outstanding under secured term loans as of the Petition Date — the Debtors have not provided DSM-Firmenich with adequate protection. While DSM-Firmenich has been negotiating an adequate protection stipulation with the Debtors for over one month, the parties have been unable to reach agreement.

2. Accordingly, DSM-Firmenich files this Request to preserve its rights and ensure it is adequately protected for any diminution in the value of the Collateral (as defined below) as a result of the filing of these chapter 11 cases. DSM-Firmenich remains willing to engage with the Debtors on what the appropriate adequate protection should ultimately be, as well as to work towards a global resolution of all outstanding issues between DSM-Firmenich and the Debtors. However, DSM-Firmenich must be provided adequate protection under the Bankruptcy Code.

## JURISDICTION

3. This Court has jurisdiction to consider this Request under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Request in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Sections 361, 362, 363(c)(2), 363(e), 503, and 507 of the Bankruptcy Code.

## BACKGROUND

4. On August 9, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code commencing these chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (this "Court"). The Debtors have continued in the management and operation of their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.  Pursuant to the DSM LSA, DSM BV agreed to extend certain loans and make other financial accommodations to the Debtors. Under the DSM LSA, the Debtors obtained, among other financial accommodations, term loans in three tranches: (a) Tranche 1, in the initial principal amount of $50,000,000; (b) Tranche 2, in the initial principal amount of $25,000,000; and (c) Tranche 3, in the initial principal amount of $25,000,000 (collectively, the "DSM Prepetition Secured Loans").

6.  Pursuant to that certain Security Agreement dated as of October 11, 2022, by and among Amyris and DSM BV (as amended, restated, supplemented or otherwise modified from time to time, the "DSM Security Agreement"), certain of the Debtors' obligations under the DSM LSA are secured by a lien and security interest in favor of DSM BV in all of Amyris's rights to any earn-out amounts (the "Earn-Out Payments") that may become payable from DSM Nutritional Products Ltd. to Amyris, in accordance with Section 3.5 of the Purchase Agreement (as defined in the DSM LSA) and any and all claims, rights, and interests in any of the above.

7.  Pursuant to that certain Pledge Agreement dated as of December 12, 2022, by and among Amyris and DSM BV (as amended, restated, supplemented or otherwise modified from time to time, the "DSM Pledge Agreement" and, together with the DSM Security Agreement, the DSM LSA, and any other agreements and documents executed or delivered in connection with the DSM Prepetition Secured Loans, collectively, the "DSM Prepetition Secured Loan Agreements"), certain of the Debtors' obligations under the DSM LSA are secured by a lien and security interest in favor of DSM BV in Amyris's 69.00% equity interests in Amyris RealSweet, LLC (together with the Earn-Out Payments, the "Collateral").

8.  As of the Petition Date, Amyris and the Subsidiary Guarantors were justly and lawfully indebted and liable to DSM BV pursuant to the DSM Prepetition Secured Loan

30838466.1

-3-

Agreements, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of at least $74,968,925.16, *plus* accrued and unpaid interest, any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Secured Obligations (as defined in the DSM LSA) owing, in each case under or in connection with the DSM Prepetition Secured Loan Agreements without defense, counterclaim, or offset of any kind (but subject to liquidation of unliquidated obligations) (collectively, the "DSM Prepetition Obligations"), which DSM Prepetition Obligations have been guaranteed on a joint and several basis by each of the Subsidiary Guarantors.

9. In connection with the DSM Prepetition Secured Loan Agreements, Amyris entered into (a) the DSM Security Agreement and (b) the DSM Pledge Agreement. Pursuant to the DSM Security Agreement and the DSM Pledge Agreement, the DSM Prepetition Obligations are secured by valid, binding, perfected first priority security interests in and liens on (the "DSM Liens") the Collateral.

**ARGUMENT**

10. DSM-Firmenich is entitled to adequate protection of its interests in the Collateral to compensate it for any depreciation, deterioration, or diminution in the value of such Collateral as it existed on the Petition Date as a matter of right pursuant to Sections 361 and 363(e) of the Bankruptcy Code. Adequate protection is meant to insulate a secured creditor from the negative effects of a decline, or threatened decline, in the market value of its collateral as a result of, among other things, the imposition of the automatic stay. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc's., Ltd*., 484 U.S. 365, 370 (1988); *see also In re Price*, 370 F.3d 362, 373

(3d Cir. 2004) ("If the value of collateral is threatened, creditors may seek adequate protection and relief from the automatic stay . . . ."); *In re Energy Future Holdings Corp.*, 546 B.R. 566, 581 (Bankr. D. Del. 2016) ("Where a Creditor is threatened with a decline in the value of its collateral, the Bankruptcy Code *must protect the creditor's interest* either by periodic payments or substitute liens covering the decline, or by some other means that provides the 'indubitable equivalent' of the creditor's interest.") (emphasis added).

11. Section 363(e) of the Bankruptcy Code provides, in relevant part, that "notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e); *see Metromedia Fiber Network Servs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.)*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary—it states that the court 'shall' grant the relief specified, at any time, on the request of secured entity."); *Travelers Life Ins. & Annuity Co. v. Ritz-Carlton of D.C., Inc. (In re Ritz-Carlton of D.C. Inc.)*, 98 B.R. 170, 173 (S.D.N.Y. 1989) (holding that "the general rule is that for adequate protection purposes a secured creditor's position as of the *petition date* is entitled to adequate protection against deterioration.") (citing to *Metropolitan Life Ins. v. Monroe*, 17 B.R. 934, 939 (D. Del. 1982)). The focus of the requirement to provide adequate protection is to protect a secured creditor from the diminution in the value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.").

12. The legislative history makes clear that the concept of adequate protection is rooted in the Fifth Amendment protection of property interests; it is intended to ensure that secured creditors are not "deprived of the benefit of their bargain" simply because the debtor decided to file for bankruptcy. *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 339. A secured creditor should receive the same measure of protection in bankruptcy that they would have received outside bankruptcy and their interest in the collateral should not be harmed as a result of the debtors' bankruptcy cases. *See In re Bobroff*, 32 B.R. 930, 932 (Bankr. E.D. Pa. 1983).

13. Here, DSM-Firmenich should receive adequate protection for (i) any reduction in the Earn-Out Payment, including through any attempt by the Debtors to reject the contracts giving rise to the Earn-Out Payments and any reduction in the amount of the Earn-Out, and (ii) any diminution in the value of the Debtors' interest in Amyris RealSweet, LLC during these chapter 11 cases.

14. Here, the Debtors are continuing to take actions which impact the value of the Earn-Out (including through their threatened use of Section 365 of the Bankruptcy Code to reject the agreement giving rise to the Earn-Out) and to operate Amyris RealSweet, LLC while in bankruptcy. But for the automatic stay, DSM-Firmenich would have exercised its right to foreclose under the DSM Prepetition Secured Loan Agreements on the Petition Date.

15. A decline in the market value of the collateral as a result of market conditions during the pendency of these cases gives rise to the requirement of the Debtors to fashion adequate protection. *See United Sav. Ass'n of Tex.*, 484 U.S. at 370. A threatened decline in the value of the collateral has the same effect. *In re Price*, 370 F.3d at 373; *In re Energy Future Holdings*, 546 B.R. at 581. Here, the Debtors' commencement of these cases itself may result in the

diminution in value of the Collateral, giving rise to the Debtors' requirement to provide adequate protection to DSM-Firmenich.[2]

16. Section 361 of the Bankruptcy Code provides that when adequate protection is required, such adequate protection may be provided by:

(1) requiring the [debtor] to make a cash payment or periodic cash payments to such entity, to the extent that . . . use under section 363 . . . or any grant of a lien under section 364 . . . results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such . . . use results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title . . . as will result in the realization . . . of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

17. The burden of proof falls to the Debtors to prove the sufficiency of the adequate protection under Section 363 of the Bankruptcy Code. *See* 11 U.S.C. § 363(p)(1). As of the date hereof, the Debtors have provided no adequate protection.

18. Accordingly, while the parties continue to negotiate the terms of a potential global resolution, DSM-Firmenich requests adequate protection of its interests in the Collateral in accordance with Sections 361, 362, and 363(e) of the Bankruptcy Code. A proposed form of order is attached to this Request.

---

[2] DSM-Firmenich notes that, as of the date of filing of this Request, the Debtors have not yet filed their initial reports of financial information in respect of entities in which the Debtors hold a controlling or substantial interest. *See* Order Extending Time to File Initial Rule 2015.3 Reports [Docket No. 383] (extending the deadline to November 10, 2023).

30838466.1

## RESERVATION OF RIGHTS

19. All rights of DSM-Firmenich arising under Section 507(b) of the Bankruptcy Code (including the priority of claims thereunder) are reserved in respect of the adequate protection provided pursuant to any order of this Court in respect of the Collateral and nothing herein shall alter, limit, or impair such rights arising under Section 507(b) of the Bankruptcy Code (including the priority of claims thereunder and the requirement that any such allowed Section 507(b) claims, if any, be paid in full in cash under a chapter 11 plan).

## NOTICE

20. Notice of this Request shall be provided to: (a) counsel to the Debtors; (b) the Office of the U.S. Trustee for the District of Delaware; (c) counsel to the Committee; (d) counsel to the DIP Lenders, DIP Agent, and the Foris Prepetition Secured Lenders; (e) co-counsel to the DIP Lenders, the DIP Agent, and the Foris Prepetition Secured Lenders; and (f) any other party that requests service pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. DSM-Firmenich respectfully submits that no further notice is required.

*[Signature page follows]*

30838466.1

| | |
|---|---|
| Dated: October 4, 2023 | Respectfully submitted,<br><br> /s/ Andrew L. Magaziner <br>**YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br>Andrew L. Magaziner (No. 5426)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: amagaziner@ycst.com<br><br>-and-<br><br>**LATHAM & WATKINS LLP**<br>James Ktsanes (admitted *pro hac vice*)<br>Joseph C. Celentino[3] (admitted *pro hac vice*)<br>330 North Wabash Avenue<br>Suite 2800<br>Chicago, Illinois 60611<br>Telephone: (312) 876-7700<br>Email: james.ktsanes@lw.com<br>         joe.celentino@lw.com<br><br>-and-<br><br>Jonathan J. Weichselbaum (admitted *pro hac vice*)<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 906-1200<br>Email: jon.weichselbaum@lw.com<br><br>*Counsel to DSM-Firmenich AG and DSM Finance B.V.* |

---

[3] Not admitted in Illinois. Admitted in New York.

30838466.1