# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: Oct. 11, 2023 at 4:00 p.m. (ET)**<br>**Hearing Date: Oct. 18, 2023 at 2:00 p.m. (ET)** |

## MOTION OF DSM-FIRMENICH TO COMPEL DEBTORS' COMPLIANCE WITH SECTION 365(N)(4) OF THE BANKRUPTCY CODE

DSM Nutritional Products Ltd. ("DSM Nutritional") and its affiliates (including Firmenich S.A.) (collectively, "DSM-Firmenich"), by and through undersigned counsel, hereby move the Court for an order compelling the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases to comply with section 365(n)(4) of title 11 of the United States Code (the "Bankruptcy Code") with respect to certain intellectual property license agreements by and among the Debtors and DSM-Firmenich.

### PRELIMINARY STATEMENT[2]

1.  For years, DSM-Firmenich and the Debtors have worked closely together to develop and commercialize ingredients in the flavors and fragrance markets. As part of that relationship, certain of the Debtors license intellectual property for exclusive use by DSM-Firmenich. Those licenses are critical to DSM-Firmenich's ongoing business.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Capitalized terms not defined herein shall have the meanings given in the License and Drawing Rights Agreement (the "LDRA") attached hereto as **Exhibit A**.

2. The Bankruptcy Code gives debtors powerful tools with respect to executory contracts. But, because of the disproportionate harm that such tools can cause to a licensee, Congress limited those powers where the debtor is a licensor of intellectual property. Under section 364(n)(4), upon the written request of an intellectual property licensee, the debtor "*shall to the extent provided in such contract or any agreement supplementary to such contract*" either (i) "perform such contract" or (ii) "provide to the licensee such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law) held by the [debtor]" (emphasis added). 11 U.S.C. § 365(n)(4). The application of this provision is mandatory.

3. Pursuant to the License and Drawing Rights Agreement attached hereto as **Exhibit A** (the "LDRA") and other relevant license agreements,[3] Debtor Amyris, Inc. ("Amyris") was required to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. However, Amyris has failed to adhere to most of those obligations — namely, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But the LDRA also provided an even more fundamental protection to DSM Nutritional, however: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] Certain DSM-Firmenich affiliates are licensees of intellectual property from the Debtors under additional intellectual property licenses that are not the subject of this Motion. DSM-Firmenich anticipates seeking appropriate relief, including under section 365(n)(4), with respect to those licenses as well in due course. DSM-Firmenich expressly reserves its right to seek to compel the Debtors to comply with section 365(n)(4) in the future with respect to these additional licenses.

████████████████████████████████████████████

████████████████████

4.This structure makes perfect sense — the parties recognized the value of the licensed intellectual property to DSM-Firmenich's business and negotiated and agreed to contractual protections to ensure that DSM-Firmenich will not be left without the access and usage rights for which it bargained. And the structure was negotiated with section 365(n)(4) in mind: the parties specified Amyris' affirmative obligations upon ████████████ because a licensee's ability to compel the debtor to "perform such contract" is limited to performance "*to the extent provided in* such contract or any agreement supplementary to such contract." 11 U.S.C. § 365(n)(4).

5.On August 25, 2023, DSM-Firmenich made a written request that the Debtors comply with section 365(n)(4). *See* **Exhibit B** (the "Demand Letter"). On September 3, 2023, the Debtors formally refused to do so. *See* **Exhibit C** (the "Demand Letter Response").

6.Rather than immediately filing this Motion, DSM-Firmenich has spent the past month trying to negotiate a consensual resolution of this and other issues between the Debtors and DSM-Firmenich, including revisiting the economic terms of their commercial relationship to support the Debtors' business going forward. But the parties have so far been unable to reach such an agreement and DSM-Firmenich cannot have its business put further at risk by the Debtors' refusal to comply with the Bankruptcy Code's clear mandates. Accordingly, DSM-Firmenich now seeks, and is entitled to, an order compelling the Debtors to comply with section 365(n)(4).

## RELIEF REQUESTED

7.DSM-Firmenich requests that the Court compel the Debtors to comply with section 365(n)(4) immediately by *either*:

a) Performing under the LDRA and agreements supplementary thereto pursuant to section 365(n)(4)(A)(i), including by:

   i) providing DSM Nutritional with ███████████████████████████████████████████████████████████████████████████████████████████████████;

   ii) depositing "███████████████████████████████" for ███████████████████████████████████████████████████████████████████; and

   iii) adding DSM Nutritional ███████████████████████████████; **OR**

b) Providing to DSM Nutritional the ███████████████████████████████████████████████████████████████ pursuant to section 365(n)(4)(A)(ii);

and such further relief as the Court deems just and proper.

8. **Exhibit D** hereto contains a list of the intellectual property licenses (the "<u>IP Licenses</u>") and agreements supplementary thereto (together with the IP Licenses, the "<u>IP Licenses and Agreements</u>") to which the relief requested by this Motion applies. Although not required by section 365(n)(4), to facilitate the Debtors' compliance, **Exhibit E** lists the ███████████████████████ at issue (collectively, along with all other intellectual property licensed to DSM Nutritional under the LDRA, the "<u>Relevant IP</u>").[4]

## JURISDICTION AND VENUE

9. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion in

---

[4] For the avoidance of doubt, this Motion's requests apply to all ███████████████████████████████████████████ — licensed to DSM Nutritional under the LDRA. The ███████████████████ listed on **Exhibit E** are illustrative and for convenience only and should not be read to limit DSM Nutritional's rights under the IP Licenses and Agreements.

this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 365(n) and 105(a) of the Bankruptcy Code.

## **BACKGROUND**

10. DSM-Firmenich has been an indispensable business partner of the Debtors for years, having worked with the Debtors on numerous research and development projects, as well as provided critical supplies and licenses of intellectual property used in the Debtors' businesses. Furthermore, DSM-Firmenich has supported the Debtors with approximately $100 million of secured prepetition loans, invested equity, and made significant financial accommodations to support the Debtors during their recent periods of financial distress.

11. The Debtors and DSM-Firmenich are party to numerous intellectual property licenses and ancillary agreements. Among such agreements, in connection with DSM-Firmenich's purchase of certain assets from Amyris, on March 31, 2021, Amyris, Inc. and DSM Nutritional entered into the LDRA, which provides, among other things, that:



LDRA § 2.1.1 (emphases added). The "███████████████████████" licensed to DSM Nutritional under the LDRA is defined as:

-5-

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████

LDRA § 1.30 (emphasis added).

    12.    In plain English, the license granted to DSM Nutritional Products includes a license to ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████.

    13.    To ensure that DSM-Firmenich would have continued access to ██████████

████████████████████████████████, the LDRA requires Amyris to ██████

██████████████████████:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████

LDRA § 3.5 (emphases added).[5]

---

[5] ███████████████████████████████████████████
███████████████████████████████████████████
████ █████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

14. "███████████" is defined as:

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███

Escrow Agreement, dated August 22, 2013, by and among Amyris, Inc., Firmenich SA, and SciSafe, Inc. § 1(c) (attached hereto as **Exhibit F** (the "SciSafe Escrow Agreement")).[6]

15. And, among other obligations under the LDRA and ███████████ ███████, Amyris is required to ███████████████████████:

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████

SciSafe Escrow Agreement § 1(a) (emphasis added).[7]

16. The LDRA also expressly gave *both* Amyris and DSM Nutritional certain rights ██ ███████████████████████████:

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

LDRA § 6.2. ███████████████████████, DSM Nutritional had two sets of rights.

---

███████████████████████████████████████
███████████████████████████████████████
███████    For brevity, DSM-Firmenich has not attached ███████████████ to this Motion, but can provide it upon the request or order of this Court.

[6] The "Amendment #1" to the SciSafe Escrow Agreement dated December 23, 2016 (the "SciSafe Escrow Amendment") is attached hereto as **Exhibit G**. The quoted language above was not changed by the SciSafe Escrow Amendment. The Strain Escrow Agreement between Amyris, Inc., Givaudan International, SA and SciSafe Inc. dated as of September 28, 2018 (the "Givaudan Escrow Agreement") is attached as **Exhibit H**. ███████████ ███████████████████████████████████████

[7] ███████████████████████████████████████

17.    *First*, DSM Nutritional can ████████████████████████

████:



*Id.* (emphasis added).

18.    *Second*, DSM Nutritional has the right to ████████████

████████████████████████████████:

*Id.* (emphasis added).

19.    On August 25, 2023, DSM-Firmenich sent the Debtors the Demand Letter, formally invoking its rights under section 365(n)(4) of the Bankruptcy Code:

> DSM-Firmenich hereby requests, pursuant to 11 U.S.C. § 365(n)(4) that Amyris either (i) "provide [DSM-Firmenich] such intellectual property" including "any embodiment of such intellectual property" or (ii) perform under the provisions of the intellectual property licenses . . . .

Demand Letter [**Exhibit B**]. DSM-Firmenich identified in the Demand Letter the relevant "contract[s] or any agreement[s] supplementary to such contract[s]" with respect to which it was seeking to invoke its section 365(n)(4) rights. *See id.* at Ex. A.

20.    On September 3, 2023, the Debtors sent the Demand Letter Response, and thereby refused to comply with their section 365(n)(4) obligations. *See* Demand Letter Response

[**Exhibit C**]. In relevant part, the Debtors claimed that they were continuing to perform under the LDRA and had not yet rejected the LDRA, and thus claimed that DSM-Firmenich was not entitled to delivery of the Relevant IP. *See id.* at 3 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Yet, in the very same letter, the Debtors admitted that they had failed to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See id.* at 2 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. The Debtors have also failed to comply with their obligations to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[8]

21.  The Debtors have not disputed that the LDRA or ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ remain in effect.[9] Indeed, their Demand Letter Response declines to deliver intellectual property to DSM Nutritional on the ground that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 2. Nor do the Debtors dispute that the IP Licenses and Agreements, including, without limitation, the LDRA, were executory contracts as of the Petition Date. *See, e.g.*, Schedules/Statements of Assets and Liabilities of Amyris, Inc. [Docket No. 356] Sch. G at

---

[8] The examples given in this Motion are illustrative only and should not be deemed a waiver by DSM-Firmenich of any kind. DSM-Firmenich reserves all rights to assert further failures of the Debtors to comply with the LDRA, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and any other relevant agreements.

[9] On August 8, 2023 — before the Petition Date — the Debtors purported to terminate that certain Collaboration Agreement, dated as of March 13, 2013, between Amyris, Inc. and Firmenich S.A. (the "2013 Collaboration Agreement"). DSM-Firmenich disputes the validity of the Debtors' purported termination of the 2013 Collaboration Agreement and anticipates promptly bringing a separate motion and/or adversary proceeding regarding the validity of the purported termination if it cannot be reach agreement with the Debtors. For the avoidance of doubt, DSM-Firmenich is not by this Motion seeking to compel the Debtors' compliance with section 365(n)(4) with respect to the 2013 Collaboration Agreement, although DSM-Firmenich reserves the right to seek such relief at an appropriate time.

no. 2.1155 (listing the LDRA as an executory contract); *id.* at no. 2.45 (listing SciSafe Escrow Agreement as an executory contract); *id.* at 2.1408 (listing SciSafe Escrow Amendment as an executory contract).

22.    DSM-Firmenich remains in ongoing discussions with the Debtors regarding a consensual global resolution of a variety of issues, including access to the Relevant IP. However, given the uncertainty of the Debtors' path forward and the critical importance of continued access to the Relevant IP for DSM-Firmenich's business, the Debtors cannot be permitted to flout their obligations under the Bankruptcy Code and the LDRA to either ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, or to deliver the Relevant IP and supporting materials to DSM Nutritional.

## BASIS FOR RELIEF

23.    Section 365(n)(4) of the Bankruptcy Code provides:

Unless and until [a debtor] rejects such contract, on the written request of the licensee [a debtor] *shall*—

(A) to the extent provided in such contract or any agreement supplementary to such contract—

    (i) perform such contract; or

    (ii) provide to the licensee such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law) held by the trustee; and

(B) not interfere with the rights of the licensee as provided in such contract, or any agreement supplementary to such contract, to such intellectual property (including such embodiment), including any right to obtain such intellectual property (or such embodiment) from another entity.

11 U.S.C. § 365(n)(4) (emphasis added).

24.    The language of the statute is mandatory — the debtor "shall" perform or provide the intellectual property in question. Thus, with respect to executory contracts under which a

debtor is a licensor of intellectual property (or agreements supplementary thereto), unless and until such license is rejected, a debtor is expressly obligated under section 365(n)(4)(ii) to perform all of the debtor-licensor's contractual obligations or, at a minimum, to provide the licensee with access to the intellectual property itself.

### THE DEBTORS HAVE FAILED TO COMPLY WITH SECTION 365(N)(4)

25. It is indisputable that DSM Nutritional is a licensee of intellectual property under the IP Licenses and Agreements. The LDRA is styled as a "*License* and Drawing Rights Agreement," and it expressly grants an intellectual property license to DSM Nutritional. *See* ¶ 11 *supra*.

26. And the ▮▮▮▮▮▮▮▮▮▮ are incorporated into the LDRA and are "agreements supplementary" to the LDRA. In the legislative history to section 365(n), escrow agreements like these are *the* quintessential example of "agreements supplementary":

> It is also not unusual for the license agreement to be one of several agreements governing the working relationship between the licensor and licensee. . . . To assure the licensee of access to such secret information at the defined time, the licensor may have agreed to turn over such information to a third party to be held in escrow until the triggering event. The third-party escrow agent would be a party to such an agreement, and the agreement would be set forth in a document separate from the basic license. Section 365(n)(1)(B), thus, speaks of the retention by the licensee of rights to the intellectual property under "any agreement supplementary to such contract."

S. Rep No. 100-505 at 9 (1988).

27. The LDRA and SciSafe Escrow Agreement contain numerous obligations of Amyris. These obligations include ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, among others. *See* ¶¶ 13-15 *supra*. In addition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, DSM Nutritional is ▮▮▮▮

███████████████████████████████████████████████

███████████████████████████████████████████████

*See* ¶ 17 *supra*.

28. DSM-Firmenich provided a written request that the Debtors comply with section 365(n)(4) on August 25, 2023. *See* Demand Letter [**Exhibit B**]; *see also* ¶ 19 *supra*. However, the Debtors have refused to comply with their obligations under section 365(n)(4). *See* Demand Letter Response [**Exhibit C**]; *see also* ¶¶ 20–21 *supra.*

29. The reasons given by the Debtors for noncompliance ring hollow. The Debtors suggested that DSM Nutritional had failed to adequately explain which intellectual property (and which licenses) it was seeking to enforce its section 365(n)(4) rights with respect to. *See id.* Yet, the Debtors' Demand Letter Response went on to respond with specificity with respect to ███ ███████ requested, including by referencing the LDRA — the Debtors obviously understood what was being requested. *See id.* at 2–3. The Debtors suggested that DSM Nutritional's ability to access the intellectual property through ██████████ eliminates DSM Nutritional's right to ████████████████████████████ the intellectual property from Amyris ████ ████████████████████████████ But having two paths to access the intellectual property — one from Amyris directly and one from an escrow agent — was essential *for exactly the reason DSM Nutritional now finds itself bringing this Motion*: because ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████.[10]

---

[10] It was essential for other reasons too: the Escrow Agent, like with most intellectual property escrows, holds a copy of the intellectual property as a backup in case the licensor's original is destroyed or corrupted. *See* Upcounsel,

-12-

30. Moreover, even if the Debtors' reading were correct — and it is not — they still cannot decline to comply with section 365(n)(4)(A)(i)'s obligation to "perform such contract" if they wish to avoid providing the Relevant IP to DSM-Firmenich under section 365(n)(4)(A)(ii). As noted, the LDRA imposes numerous performance obligations on Amyris, including the obligation to ▮. *See* ¶ 13 *supra*. The ▮ similarly impose numerous performance obligations on Amyris, including the obligation to ▮. *See* ¶ 15 *supra*. The Debtors have not complied with several of these obligations.[11] And their Demand Letter Response concedes that the Debtors not complied with the obligation to ▮. *See* ¶ 20 *supra*. The Debtors cannot avoid their obligations under section 365(n)(4) simply by stating that they are performing under the relevant agreements when they are not in fact doing so.

31. Pursuant to the plain and express language of section 365(n)(4) of the Bankruptcy Code, the Debtors are statutorily obligated to either "perform" under section 365(n)(4)(A)(i) or provide the intellectual property under section 365(n)(4)(A)(ii). Under the LDRA, performance means providing DSM Nutritional with a ▮

---

*Intellectual Property Escrow: Everything You Need to Know* (last accessed Sept. 28, 2023), https://www.upcounsel.com/intellectual-property-escrow#.

[11] It is of no import that some of the breaches took place prepetition. Judge Sontchi, in a well-reasoned opinion, has held that even a debtor's prepetition breach of an intellectual property license does not excuse its compliance with section 365(n) in bankruptcy. *See In re Kemeta, LLC*, 470 B.R. 304, 321-25 (Bankr. D. Del. 2012). Any other result would create perverse incentives for a debtor to breach prepetition in order to thwart the protections Congress intended to provide licensees in section 365(n).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ If the Debtors do not wish to take that path, they can simply provide the licensed intellectual property and embodiments to DSM Nutritional as section 365(n)(4)(A)(ii) allows. The decision of which path to take is up to them, but they are not permitted to refuse to take either path.

## RESERVATION OF RIGHTS

32. DSM-Firmenich reserves all rights under any license of intellectual property with the Debtors or agreements supplementary thereto — including any section 365(n)(4) rights — including under licenses and agreements not at issue in this Motion.

## NOTICE

33. Notice of this Motion shall be provided to: (a) counsel to the Debtors; (b) the Office of the U.S. Trustee for the District of Delaware; (c) counsel to the Committee; (d) counsel to the DIP Lenders, DIP Agent, and the Foris Prepetition Secured Lenders; (e) co-counsel to the DIP Lenders, the DIP Agent, and the Foris Prepetition Secured Lenders; and (f) any other party that requests service pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. DSM-Firmenich respectfully submits that no further notice is required.

Dated: October 4, 2023                          Respectfully submitted,

                                                    */s/ Andrew L. Magaziner*
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Andrew L. Magaziner (No. 5426)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: amagaziner@ycst.com

-and-

**LATHAM & WATKINS LLP**
James Ktsanes (admitted *pro hac vice*)
Joseph C. Celentino[12] (admitted *pro hac vice*)
330 North Wabash Avenue
Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Email: james.kstanes@lw.com
        joe.celentino@lw.com

-and-

Jonathan J. Weichselbaum (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Email: jon.weichselbaum@lw.com

*Counsel to DSM-Firmenich AG, DSM Nutritional Products Ltd., and Firmenich SA*

---

[12] Not admitted in Illinois. Admitted in New York.