**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AMYRIS, INC., *et al*., | ) | Case No. 23-11131 (TMH) |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | Objection Deadline: 10/19/2023 |

**DECLARATION IN SUPPORT OF EMPLOYMENT OF DELOITTE TAX LLP AS PROFESSIONAL UTILIZED IN THE ORDINARY COURSE OF BUSINESS**

I, Matt Walton, under penalty of perjury, declare as follows:

1. I am a partner of the firm of Deloitte Tax LLP ("**Deloitte Tax**"), which has an office at 225 West Santa Clara Street, Suite 600, San Jose, CA 95113. I am duly authorized to make and submit this declaration (the "**Declaration**") on behalf of Deloitte Tax pursuant to the *Order: (I) Authorizing Employment and Payment of Professionals Utilized in the Ordinary Course of Business; and (II) Granting Related Relief* [D.I. 260] (the "**OCP Order**"). The Debtors included Deloitte Tax on **Schedule 1** to the proposed OCP Order as one of the Ordinary Course Professionals (as such term is defined in the Debtors' motion approved by the OCP Order).

2. The Debtors seek to retain Deloitte Tax pursuant to the terms and conditions set forth in: (a) that certain engagement letter, dated March 22, 2022 for tax advisory services on federal, foreign, state and local tax matters (the "**Tax Advisory Engagement Letter**"), (b) that certain engagement letter, dated April 4, 2023, for tax advisory and compliance services regarding the Debtors' tax information reporting and withholding obligations for tax year 2022 (the "**Tax**

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

**Compliance Engagement Letter**"), (c) that certain work order, dated September 6, 2023, entered into pursuant to the Tax Advisory Engagement Letter, for preparation of the 2022 and 2023 federal and state income tax returns, extensions and estimate payments for Amyris, Inc. and Subsidiary (as amended, the "**Amyris, Inc. and Subsidiary Work Order**"), (d) that certain work order, dated September 6, 2023, entered into pursuant to the Tax Advisory Engagement Letter, for preparation of the 2022 and 2023 federal and state income tax returns, extensions and estimate payments for Amyris RealSweet LLC (as amended, the "**Amyris RealSweet Work Order**"), (e) that certain work order, dated September 6, 2023, entered into pursuant to the Tax Advisory Engagement Letter, for preparation of the 2022 and 2023 federal and state income tax returns, extensions and estimate payments for Aprinnova, LLC (as amended, the "**Aprinnova Work Order**"), (f) that certain work order, dated September 6, 2023, entered into pursuant to the Tax Advisory Engagement Letter, for preparation of the 2022 and 2023 federal and state income tax returns, extensions and estimate payments for Clean Beauty Collaborative (as amended, the "**Clean Beauty Collaborative Work Order**"), (g) that certain work order, dated September 6, 2023, entered into pursuant to the Tax Advisory Engagement Letter, for preparation of the 2022 and 2023 federal and state income tax returns, extensions and estimate payments for EcoFAB, LLC (as amended, the "**EcoFAB Work Order**"), and (h) that certain work order, dated March 22, 2022, entered into pursuant to the Tax Advisory Engagement Letter, for tax advisory services in connection with the calculation of the Debtors' income tax provision under the provisions of ASC 740, *Income Taxes* ("**ASC 740**") (as amended, the "**ASC 740 Work Order**" and, together with the Tax Advisory Engagement Letter, the Tax Compliance Engagement Letter, the Amyris, Inc. and Subsidiary Work Order, the Amyris RealSweet Work Order, the Aprinnova Work Order, the Clean Beauty Collaborative Work Order and the EcoFAB Work Order, the "**Engagement Agreements**"). Copies of the Engagement Agreements are attached hereto as **Exhibit 1**.

3. The statements set forth in this Declaration are based upon my personal knowledge, information and belief, and/or client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte Tax or its affiliates.

## Deloitte Tax's Qualifications

4. Deloitte Tax is a tax services firm with offices across the United States. Deloitte Tax has significant experience performing tax services and has performed such services in large and complex chapter 11 cases on behalf of debtors throughout the United States. Such experience renders Deloitte Tax well-qualified and able to provide services to the Debtors during the pendency of these Chapter 11 Cases in a cost-effective, efficient, and timely manner. Deloitte Tax's services fulfill an important need and are not provided by any of the Debtors' other professionals.

5. In addition, since approximately 2008, Deloitte Tax has provided various tax-related professional services to the Debtors. In providing such prepetition professional services to the Debtors, Deloitte Tax has become familiar with the Debtors and their financial affairs, debt structure, business operations, and related matters. Having worked with the Debtors' management, Deloitte Tax has developed relevant experience and knowledge regarding the Debtors that will assist it in providing effective and efficient services during the Chapter 11 Cases. Accordingly, Deloitte Tax is both well-qualified and able to provide the services for the Debtors during the Chapter 11 Cases in an efficient and timely manner.

## Disinterestedness

### A. *Additional Background Information Related to Deloitte Tax.*

6. Deloitte Touche Tohmatsu Limited ("**DTTL**") is a United Kingdom private company limited by guarantee. DTTL itself does not provide services to clients. Each of the member firms of DTTL (each, a "**DTTL Member Firm**") is a legally separate and distinct entity. The DTTL Member Firms are primarily organized on an individual country or regional basis, and

operate within the legal and regulatory framework of their particular jurisdiction(s). The DTTL Member Firm structure reflects the fact that the DTTL Member Firms are not affiliates, subsidiaries, or branch offices of each other or of a global parent. Rather, they are separate and independent firms that have come together to practice under a common brand and shared methodologies, client service standards, and other professional protocols and guidelines. DTTL Member Firm partners and/or principals are generally the sole owners of their respective DTTL Member Firms. There is no overlap with respect to a partner's or principal's ownership in its respective DTTL Member Firm and any other DTTL Member Firm. Profits are not shared between or among the DTTL Member Firms.

7. In the United States, Deloitte LLP is a DTTL Member Firm. Like DTTL, Deloitte LLP does not provide services to clients. Rather, Deloitte LLP has operating affiliates that perform services for clients, including Deloitte Tax, Deloitte & Touche LLP ("**Deloitte & Touche**"), Deloitte Consulting LLP ("**Deloitte Consulting**"), Deloitte Financial Advisory Services LLP ("**Deloitte FAS**"), and Deloitte Transactions and Business Analytics LLP ("**DTBA**") (Deloitte LLP and each of the foregoing, and together with their respective direct and indirect subsidiaries, collectively, the "**Deloitte U.S. Entities**"). The partners and/or principals of each operating affiliate of Deloitte LLP are owners of their respective affiliate along with, directly or indirectly, Deloitte LLP. Generally, each affiliate's respective partners and principals are also partners and principals, as applicable, of Deloitte LLP.

**B.** ***Conflicts Check Process, Generally.***

8. As described herein, for the most part, the conflicts searches conducted by Deloitte Tax involve checking client and other databases of the Deloitte U.S. Entities. Given the separateness of the various DTTL Member Firms as described above, the Deloitte U.S. Entities do not have the capability to directly check the client or other databases of any of the non-U.S. DTTL

Member Firms or their respective affiliates or subsidiaries. However, notwithstanding the separateness of the DTTL Member Firms, as described below, the Deloitte U.S. Entities' checking procedures in bankruptcy cases do result in the gathering of certain information related to the DTTL Member Firms.

9. When any of Deloitte LLP's operating affiliates, such as Deloitte Tax, is to be the subject of an application to be retained in a chapter 11 case, a process commences regarding checking connections to the debtor, its affiliates and the debtor's parties in interest (as provided by the debtors). With the assistance of the Deloitte U.S. Entities' conflicts team (the "**Conflicts Team**"), a series of conflicts checking procedures are undertaken, including checking a number of Deloitte U.S. Entities' databases for their connections. Additionally, the Conflicts Team performs procedures to identify certain relationships of other DTTL Member Firms, as described below:

a. With respect to the debtor and debtor affiliates, the Conflicts Team will:

i. Initiate cross-border check requests to the DTTL Member Firm(s) where the debtor or debtor affiliate is domiciled (i.e., the country of incorporation or the entity's headquarters, as the case may be) based upon information provided by the debtors and research by the Conflicts Team of publicly available information. The DTTL Member Firm(s) will then search applicable local databases to identify client or non-client relationships in their jurisdiction (such as lender, vendors, business relationship entities or third parties associated with a client engagement).

ii. Perform a search of the cross-border conflict check requests the Conflicts Team has previously received from other DTTL Member Firms, which are submitted when a DTTL Member Firm seeks to commence an engagement with or involving a U.S. entity.[2] This search is conducted to identify whether those prospective engagements involved the debtor or its affiliates domiciled in the U.S. as the engaging client or non-client relationship (such as business relationship entities or third parties associated with a client engagement).

iii. Perform a search of the database system associated with audit and other related independence requirements (the "**Independence**

[2] These cross-border conflict check requests are pursuant to a policy adopted by DTTL Member Firms.

**Database**") to identify possible connections with debtor and debtor affiliates with respect to whom such requirements are actually or potentially implicated. Each DTTL Member Firm is required to input its respective audit and attest clients into the Independence Database, and all DTTL Member Firms have access to the Independence Database.[3] Each entity in the Independence Database has a designated partner who is responsible for approving and monitoring services for entities included in its corporate tree. The Independence Database includes audit and attest clients of the various DTTL Member Firms, as well as certain other non-clients thereof.

b. With respect to the debtor's parties in interest, the Conflicts Team will:

i. Perform a search of the cross-border conflict check requests the Conflicts Team has previously received from other DTTL Member Firms (described above) to identify whether those prospective engagements involved a U.S.-domiciled party in interest as a direct attest or litigation client or business relationship entity.

ii. Perform a search of the Independence Database to determine whether a party in interest is identified therein.

10. Based upon the foregoing, it is my understanding that the overall design and implementation of Deloitte U.S. Entities' current procedures provide a reasonable level of comfort that relationships and potential conflicts related to a debtor will be identified.

**C. *Disinterestedness of Deloitte Tax.***

11. Subject to the foregoing, to the best of my information, knowledge, and belief based on reasonable inquiry: (a) neither I, Deloitte Tax, nor any partner, principal, or managing director of Deloitte Tax that is anticipated to provide the services for which Deloitte Tax is to be retained (the "**Engagement Partners/Principals/Managing Directors**") holds any interest adverse to the Debtors; and (b) Deloitte Tax has no relationship to the Debtors, their significant creditors, certain other significant parties-in-interest, or to the attorneys that are known to be assisting the Debtors in the Chapter 11 Cases, except as stated herein or in any attachment hereto.

---

[3] Inputting audit and attest clients into the Independence Database is a policy followed by DTTL Member Firms so that such relationships are tracked in connection with such firms' independence requirements.

12. In connection with Deloitte Tax's retention by the Debtors in these Chapter 11 Cases, Deloitte Tax undertook searches to determine, and to disclose, whether it or its affiliates is or has been employed by or has other relationships with the Debtors or their affiliates, subsidiaries, directors, or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals, or other entities with significant relationships with the Debtors (the "**Potential Parties-in-Interest**"), whose specific names were provided to Deloitte Tax by the Debtors, listed on **Schedule 1** attached hereto. To check upon and disclose possible relationships with significant Potential Parties-in-Interest in these Chapter 11 Cases, Deloitte Tax researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with the Debtors or the significant Potential Parties-in-Interest.

13. With respect to Deloitte Tax's conflicts checks conducted in these cases, if a database query identified a potential connection between a Potential Party-in-Interest and a Deloitte U.S. Entity or DTTL Member Firm, an email was sent to certain of the Deloitte U.S. Entity's and/or DTTL Member Firm's individuals, as applicable, associated with such Potential Party-in-Interest to confirm whether or not the relationship with such Potential Party-in-Interest related or currently relates to the Debtors' Chapter 11 Cases. Responses to these emails were consolidated and subsequently reviewed. As stated in this Declaration, these processes result in the disclosures that are set forth herein, including the disclosure of certain connections with Potential Parties-in-Interest that do not relate to the Debtors' Chapter 11 Cases. The identified potential connections to the Potential Parties-in-Interest are included on **Schedule 2** appended hereto, and such connections do not relate to the Chapter 11 Cases.

14. Deloitte Tax and its affiliates have relationships with thousands of clients, some of which may be creditors of the Debtors or other Potential Parties-in-Interest. Accordingly, Deloitte Tax and/or its affiliates have had, currently have and/or may have in the future banking or other

relationships with such parties, or provided, may currently provide, and/or may provide in the future professional services to certain of these parties in matters unrelated to the Chapter 11 Cases. From time to time, Deloitte Tax and its affiliates have provided or may currently provide services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties potentially adverse to the Debtors in matters unrelated to the Chapter 11 Cases, except as set forth herein or in the attachments hereto. Additionally, certain significant Potential Parties-in-Interest have or may have provided goods or services, may currently provide goods or services, and/or may in the future provide goods or services to Deloitte Tax and/or its affiliates and the Engagement Partners/Principals/Managing Directors in matters unrelated to the Chapter 11 Cases. A listing of such parties is attached to this Declaration as **Schedule 2**.

15. Deloitte Tax believes that the relationships described herein or reflected on **Schedule 2** have no bearing on the services for which Deloitte Tax's retention is being sought by the Debtors in the Chapter 11 Cases. Furthermore, such relationships do not impair Deloitte Tax's disinterestedness, and Deloitte Tax does not represent an adverse interest in connection with the Chapter 11 Cases.

16. Despite the efforts described above to identify and disclose Deloitte Tax's connections with the significant Potential Parties-in-Interest in the Chapter 11 Cases, because Deloitte Tax is a nationwide firm with many personnel, Deloitte Tax is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Deloitte Tax discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

17. To the best of my knowledge, based on the internal search discussed above, Deloitte Tax has determined that certain relationships should be disclosed as follows:

a. Deloitte Tax and/or its affiliates provide services in matters unrelated to the

Chapter 11 Cases to certain of the Debtors' largest unsecured creditors and other Potential Parties-in-Interest or their affiliates listed on **Schedule 2**.

b. Law firms identified on **Schedule 2**, including Blank Rome LLP; Fenwick & West LLP; Fish & Richardson P.C.; Gibson, Dunn, & Crutcher LLP; Goodwin Proctor LLP; Latham & Watkins LLP; McDermott Will & Emery LLP; Olshan Frome Wolosky LLP; Pachulski Stang Ziehl & Jones LLP; Paul Hastings LLP; Potter Anderson & Corroon LLP; Shartsis Friese LLP; Shearman & Sterling LLP; Shipman & Goodwin LLP; Squire Patton Boggs LLP; Troutman Pepper Hamilton Sanders LLP; Weisman, Brodie, Starr & Margolies, P.A.; and White & Case LLP, have provided, currently provide and may in the future provide legal services to Deloitte Tax or its affiliates in matters unrelated to the Chapter 11 Cases, and/or Deloitte Tax or its affiliates have provided, currently provide and may in the future provide services to such firms or their clients.

c. In the ordinary course of its business, Deloitte Tax and its affiliates have business relationships in unrelated matters with its principal competitors, which together with their affiliates may be Potential Parties-in-Interest in the Chapter 11 Cases. For example, from time to time, Deloitte Tax and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes.

d. Certain financial institutions or their respective affiliates (including Bank of the West; Barclays; HSBC; J.P. Morgan SE; JPMorgan Chase Bank, N.A.; and U.S. Bank National Association; US Bank) listed on **Schedule 2** (i) are lenders to an affiliate of Deloitte Tax (Deloitte Tax is a guarantor of such indebtedness) and/or (ii) have financed a portion of the capital and/or capital loan requirements of various partners and principals, respectively, of Deloitte Tax and its affiliates. In addition, certain institutions or their respective affiliates, including JPMorgan Chase Bank, N.A., provide asset management services for, and/or have a similar role with respect to investments of, certain pension, benefit and similar funds sponsored by affiliates of Deloitte Tax.

e. Certain DTTL Member Firms, including those located in the United Kingdom, have provided, currently provide or may in the future provide professional services to certain of the non-debtor affiliates of the Debtors and/or their non-debtor affiliates.

f. Deloitte Tax has provided and continues to provide certain tax-related services to Jay D. Keasling and Patrick Yang, former directors of the Debtors, in matters unrelated to the Chapter 11 Cases.

g. Certain Potential Parties-in-Interest may be adverse to and/or involved in litigation matters with Deloitte Tax or its affiliates in connection with matters unrelated to these Chapter 11 Cases.

h. Deloitte & Touche has provided and continues to provide audit services to certain Potential Parties-in-Interest and/or their affiliates in matters unrelated to these Chapter 11 Cases. In its capacity as independent auditor, Deloitte & Touche also provides such clients with ordinary course accounting advice and conducts typical audit procedures that may arise from such Potential Parties-in-Interest's business arrangements with the Debtors.

i. Deloitte Consulting and certain of its affiliates have provided and will continue to provide services to the Executive Office of the United States Trustee in matters unrelated to these Chapter 11 Cases.

18. Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte Tax or its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in these Chapter 11 Cases, the United States Trustee for Regions 3 and 9, the Assistant United States Trustee for the District of Delaware, and the attorneys therefor assigned to these Chapter 11 Cases.

19. Except as may be disclosed herein, to the best of my knowledge, information, and belief, Deloitte Tax and the Engagement Partners/Principals/Managing Directors do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte Tax is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

**Scope of Services**

20. As set forth more fully in the Engagement Agreements, Deloitte Tax has agreed to provide certain tax advisory services for the Debtors in accordance with the terms and conditions set forth in the Engagement Agreements, and as requested by the Debtors and agreed to by Deloitte Tax, as follows:

a. ***Tax Advisory Engagement Letter***. Pursuant to the terms and conditions of the Tax Advisory Engagement Letter, Deloitte Tax will provide tax advisory services on federal, foreign, state and local tax matters.

b. ***Tax Compliance Engagement Letter***. Pursuant to the terms and conditions of the Tax Compliance Work Order, Deloitte Tax will assist the Debtors

with identifying certain U.S. federal tax information reporting and withholding obligations under Chapter 3 or 4 of the Internal Revenue Code ("**IRC**") for the 2022 tax year, as follows:

*Tax Advisory Services*

i. *Reportable Payment Identification.* Deloitte Tax will assist the Debtors in identifying payments the Debtors made during 2022 that the Debtors are required to report on the IRS information reporting forms 1042, 1042-S, 8804, and 8805 (collectively, the "**Tax Forms**") identified in Exhibit A, Listing of Tax Forms attached to the Tax Compliance Engagement Letter, as follows:

- Assisting the Debtors by providing guidance in working sessions or in the form of a memo or power point on criteria the Debtors can use to identify payment types and payments that are reportable on the Tax Forms; and

- Assisting the Debtors with by analyzing the list of payments associated with payees (the "**Payment List**") provided by the Debtors and provide feedback to the Debtors based on the face of the information in the Payment Lists as to whether the payment information provided by the Debtors appears complete or meets the reporting criteria for the Tax Forms.

ii. *Withholding Analysis for Reportable Payments*. Deloitte Tax will assist the Debtors in identifying payments on the Payment List that require tax withholding and remittance to the IRS under Chapters 3 or 4 of the IRC. Deloitte Tax will read the payment information on the Payment List and provide observations to the Debtors on payments that would require tax withholding based on the information in the Payment List. Deloitte Tax will also provide a recommended default withholding tax rate for each payment based on the face of the information in the Payment List considering the sourcing and tax status of each beneficial owner of the payments. Deloitte Tax will provide guidance and criteria to the Debtors on circumstances that could allow for a reduced rate of withholding tax if the Debtors have appropriate documentation or information about the beneficial owner of the payment (such as a Form W-9 or Form W-8 with a treaty claim or tax exemption claim).

iii. *Tax Form Reporting Template Data Extraction, Transformation and Loading (ETL) assistance*. Deloitte Tax will assist the Debtors in gathering, extracting, transforming and organizing data necessary to populate Deloitte Tax's Tax Form Reporting Template, for payments identified by the Debtors on the Payment List. After Deloitte Tax completes loading of the Tax Form Reporting

Template with such data, Deloitte Tax will provide a copy of the template for the Debtors to review and approve for filing as part of the tax form preparation services provided by Deloitte Tax to the Debtors pursuant to the Tax Compliance Engagement Letter.

iv. *Withholding Certificate Assistance*. Deloitte Tax will assist the Debtors with the analysis of Forms 8233, W- 8BEN, W-8BEN-E, W-8IMY, W-8EXP, W-9, and/or W-8ECI (the "**Withholding Certificates**") as they are submitted electronically by the Debtors to Deloitte Tax on an as needed basis, as follows:

- Assisting the Debtors with examining the Withholding Certificates to assist in determining whether the above-mentioned forms are properly completed for U.S. tax information reporting and withholding purposes, including U.S. FATCA;

- Assisting the Debtors by providing comments on the availability of reduced rates of withholding under tax treaties based solely on claims presented on the face of the Withholding Certificates and on treaty rates identified in IRS Publication 515 and associated IRS Treaty Tables;

- Assisting the Debtors by providing a list of the Withholding Certificates analyzed with indications as to whether the Withholding Certificates provided appear to be complete or incomplete, and if the form appears incomplete Deloitte Tax will provide an indication of the reason the form appeared to be incomplete. Note that for Forms W-8IMY, each underlying Form W-8/W-9 would be considered a separate form for analyses and pricing purposes; and

- For Withholding Certificates that are identified as incomplete or noncompliant, assisting the Debtors by providing suggested actions to remediate and correct the incomplete or noncompliant form.

*Tax Form Preparation Services*

i. Deloitte Tax will assist with the Debtors with preparing the Tax Forms identified in Exhibit A, Listing of Tax Forms attached to the Tax Compliance Engagement Letter, electronically transmitting the Tax Forms to the IRS and filing extensions of time for related filings with the IRS.

c. **Amyris, Inc. and Subsidiary Work Order.** Pursuant to the terms and

conditions of the Amyris, Inc. and Subsidiary Work Order, Deloitte Tax will assist Amyris, Inc. and Subsidiary with preparing the 2022 and 2023 federal and state income tax returns identified in Exhibit B, Listing of Income Tax Returns Included in Engagement attached to the Amyris, Inc. and Subsidiary Work Order, as well as assist in calculating the amounts of extension payments and preparing the extension requests for the 2022 and 2023 tax returns identified in such Exhibit A.

d. **Amyris RealSweet Work Order.** Pursuant to the terms and conditions of the Amyris, Inc. and Subsidiary Work Order, Deloitte Tax will assist Amyris RealSweet with preparing the 2022 and 2023 federal and state income tax returns identified in Exhibit B, Listing of Income Tax Returns Included in Engagement attached to the Amyris RealSweet Work Order, as well as assist in calculating the amounts of extension payments and preparing the extension requests for the 2022 and 2023 tax returns identified in such Exhibit A.

e. **Aprinnova Work Order.** Pursuant to the terms and conditions of the Aprinnova, Inc. Work Order, Deloitte Tax will assist Amyris, Inc. and Subsidiary with preparing the 2022 and 2023 federal and state income tax returns identified in Exhibit B, Listing of Income Tax Returns Included in Engagement attached to the Aprinnova Work Order, as well as assist in calculating the amounts of extension payments and preparing the extension requests for the 2022 and 2023 tax returns identified in such Exhibit A.

f. **Clean Beauty Collaborative Work Order**. Pursuant to the terms and conditions of the Clean Beauty Collaborative Work Order, Deloitte Tax will assist Clean Beauty Collaborative with preparing the 2022 and 2023 federal and state income tax returns identified in Exhibit B, Listing of Income Tax Returns Included in Engagement attached to the Clean Beauty Collaborative Work Order, as well as assist in calculating the amounts of extension payments and preparing the extension requests for the 2022 and 2023 tax returns identified in such Exhibit A.

g. **EcoFAB Work Order**. Pursuant to the terms and conditions of the EcoFAB Work Order, Deloitte Tax will assist EcoFAB, LLC with preparing the 2022 and 2023 federal and state income tax returns identified in Exhibit B, Listing of Income Tax Returns Included in Engagement attached to the EcoFAB Work Order, as well as assist in calculating the amounts of extension payments and preparing the extension requests for the 2022 and 2023 tax returns identified in such Exhibit A.

h. **ASC 740 Work Order**. Pursuant to the ASC 740 Work order, Deloitte Tax will provide tax advisory services to the Debtors in connection with the calculation of the Debtors' income tax provision under ASC 740 for the year ending December 31, 2022 and December 31, 2023, and the interim periods ending March 31, 2022, June 30, 2022, September 30, 2022, March 31, 2023, June 30, 2023, and September 30, 2023.

**Professional Compensation**

21. Deloitte Tax's retention by the Debtors is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangements and indemnification provisions set forth in the Engagement Agreements.

22. Pursuant to the terms and conditions of the Tax Advisory Engagement Letter, Deloitte Tax will bill the Debtors fees and expenses based on the amount of professional time required and the experience level of the professionals involved. Deloitte Tax will bill the Debtors at the hourly rates set forth in the table below:

| Professional Level | Hourly Rates |
|---|---|
| Partner / Principal / Managing Director | $879 |
| Senior Manager | $788 |
| Manager | $665 |
| Senior | $553 |
| Associate | $452 |
| Administrative Services (Senior/Associate) | $290 |

23. Pursuant to the terms and conditions of the Tax Compliance Engagement Letter, Deloitte Tax will bill the Debtors fees and expenses for the remaining tax compliance services to be performed under such letter. The fees, excluding expenses, are expected to be $7,260.00.

24. Pursuant to the terms and conditions of the Amyris, Inc. and Subsidiary Work Order, Deloitte Tax will bill the Debtors a fixed fee of $85,000, respectively, for the preparation of tax returns for each of the 2022 and 2023 tax years, respectively, including preparation of extension requests. In addition, Deloitte Tax estimates that the fee for the preparation of additional state and local tax returns not listed on Exhibit B attached to the Amyris, Inc. and Subsidiary Work Order will be $1,500 for each separate return and between $1,500 and $2,500 for each combined return based on the level of information requested on the tax return, and that the fee for the

preparation of additional foreign information forms (e.g., Form 5471) will be $4,500 per form.

25. Pursuant to the terms and conditions of the Amyris RealSweet Work Order, Deloitte Tax will bill the Debtors a fixed fee of $25,000 for the preparation of tax returns for each of the 2022 and 2023 tax years, respectively, including preparation of extension requests. In addition, Deloitte Tax estimates that the fee for the preparation of additional state and local tax returns not listed on Exhibit B attached to the Aprinnova Work Order will be $1,500 for each separate return and between $1,500 and $2,500 for each combined return based on the level of information requested on the tax return, and that the fee for the preparation of additional foreign information forms (e.g., Form 5471) will be $4,500 per form.

26. Pursuant to the terms and conditions of the Aprinnova Work Order, Deloitte Tax will bill the Debtors a fixed fee of $35,000 for the preparation of tax returns for each of the 2022 and 2023 tax years, respectively, including preparation of extension requests. In addition, Deloitte Tax estimates that the fee for the preparation of additional state and local tax returns not listed on Exhibit B attached to the Aprinnova Work Order will be $1,500 for each separate return and between $1,500 and $2,500 for each combined return based on the level of information requested on the tax return.

27. Pursuant to the terms and conditions of the Clean Beauty Collaborative Work Order, Deloitte Tax will bill the Debtors a fixed fee of $30,000 for the preparation of tax returns for each of the 2022 and 2023 tax years, respectively, including preparation of extension requests. In addition, Deloitte Tax estimates that the fee for the preparation of additional state and local tax returns not listed on Exhibit B attached to the Clean Beauty Collaborative Work Order will be $1,500 for each separate return and between $1,500 and $2,500 for each combined return based on the level of information requested on the tax return, and that the fee for the preparation of additional foreign information forms (e.g., Form 5471) will be $4,500 per form.

28. Pursuant to the terms and conditions of the EcoFab Work Order, Deloitte Tax will bill the Debtors a fixed fee of $25,000 for the preparation of tax returns for each of the 2022 and 2023 tax years, respectively, including preparation of extension requests. In addition, Deloitte Tax estimates that the fee for the preparation of additional state and local tax returns not listed on Exhibit B attached to the EcoFab Work Order will be $1,500 for each separate return and between $1,500 and $2,500 for each combined return based on the level of information requested on the tax return.

29. Pursuant to the terms of the ASC 740 Work Order, Deloitte Tax will bill the Debtors fees and expenses based on the amount of professional time required and the experience level of the professionals involved. Deloitte Tax will bill the Debtors at the hourly rates set forth in the table below:

| Professional Level | Hourly Rates |
|---|---|
| Partner / Principal / Managing Director | $879 |
| Senior Manager | $788 |
| Manager | $665 |
| Senior | $553 |
| Associate | $452 |

30. Hourly rates are revised periodically in the ordinary course of Deloitte Tax's business. Deloitte Tax shall advise the Debtors of any new rates should it institute a rate-change during the Chapter 11 Cases. Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

31. In addition to the fees set forth above, actual, reasonable and necessary expenses, including travel, report production, delivery services, and other expenses incurred in providing Deloitte Tax's services will be included in the total amount billed.

32. As noted above, prior to the Petition Date, Deloitte Tax provided professional services to the Debtors. In the ninety (90) days prior to the Petition Date, the Debtor did not pay

Deloitte Tax any amounts on account of invoices issued prior to such date. As of the Petition Date, approximately $306,291 was outstanding with respect to the invoice(s) issued and/or services performed by Deloitte Tax prior to such date.

33. Some services incidental to the tasks to be performed by Deloitte Tax in these Chapter 11 Cases may be performed by personnel now employed by or associated with affiliates of Deloitte Tax, such as Deloitte FAS, DTBA, Deloitte & Touche, and Deloitte Consulting, or their respective subsidiaries, including subsidiaries located outside of the United States. For example, a portion of the tax services will be performed, at Deloitte Tax's direction, by its indirect subsidiary, Deloitte Tax Services India Private Limited ("**Deloitte Tax India**"). A specifically assigned team of personnel from Deloitte Tax India will assist in the tax services under the supervision, and with the input, of personnel of Deloitte Tax. The hourly rates charged to clients by Deloitte Tax for services performed by Deloitte Tax India personnel are comparable to the market rates charged for similar services by Deloitte Tax, but, do not directly correlate with the hourly rates attributed to such services by Deloitte Tax India. The connections of Deloitte Tax India (along with the connections of Deloitte Tax and its other affiliates) to the Potential Parties-in-Interest searched by Deloitte Tax are set forth in **Schedule 2** to this Declaration.

34. Deloitte Tax has received no promises regarding compensation in the Chapter 11 Cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration. Deloitte Tax has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in the Chapter 11 Cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 2, 2023

*/s/ Matt Walton*
Matt Walton
Partner
Deloitte Tax LLP