# EXHIBIT 1

Exhibit A
Amyris, Inc. and Subsidiary
Work Order
September 5, 2023

| Work Order Number: 2023-1120-1 (Amyris) | Authorized Start Date: upon execution of this work order |
|---|---|

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP ("Deloitte Tax") and Amyris, Inc. and Subsidiary ("Client") dated March 22, 2022.

**Description of Services:**

Deloitte Tax will prepare the 2022 and 2023 federal and state income tax returns, extensions, and any estimate payments ("tax returns") identified in Exhibit A, Listing of Income Tax Returns Included in Engagement, attached to this Work Order and incorporated herein by reference.

**Extensions**

In addition to the preparation of Client's 2022 and 2023 tax returns, Deloitte Tax will assist in calculating the amounts of extension payments and preparing the extension requests for the 2022 and 2023 tax returns identified in Exhibit A.

**Estimated Taxes**

Deloitte Tax has not been engaged to prepare any quarterly estimated tax payments for the 2023 or 2024 tax year. You have assumed responsibility for the preparation of these filings. If you need assistance with these filings, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

**Delinquent Tax Returns:**

You acknowledge that many of the above-described income tax returns that you are engaging Deloitte Tax to prepare under this Work Order are already late and will be filed by you late. Consequently, you recognize that your late filing of these returns may result in the imposition of additional taxes, penalties (which may be significant), or interest relating to those returns. You further understand and acknowledge by signing this Work Order that Deloitte Tax is not, nor shall ever be, responsible for any such claims, liabilities or expenses relating to the "late-filing" by you of these returns.

**Foreign Bank Account Reporting**

If Client has foreign bank accounts, investment accounts, partnerships or similar assets, or if Client has signature or similar authority over these types of accounts or investments (whether owned by Client or by others), Client may have to file a FinCEN Form 114, Report of Foreign Bank and Financial Accounts. Unless outlined above or the subject of a separate engagement letter, the Deloitte Tax return preparation Services that are the subject of this Engagement Letter do not include the preparation of any FinCEN Forms 114, which must be received by the Department of Treasury by April 18, 2023 with an automatic extension available until October 16, 2023. If assistance with these filings is needed, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

**Electronic Return Filing**

Client has engaged Deloitte Tax to electronically file ("e-file") its federal and state income tax returns. Deloitte Tax will transmit the tax return(s) in the form of electronic files as authorized by the Client. In order for Deloitte Tax to e-file Client's returns, Client must provide signed e-file authorizations to Deloitte Tax at least seven (7) days prior to transmission to the IRS and states indicated. Upon receipt of the signed e-file authorizations, Deloitte Tax will transmit the electronic files without modification other than as necessary to resolve diagnostic

or other errors generated as a result of the transmission. The receipt of the signed e-file authorizations will be deemed by Deloitte Tax as authorization by Client to e-file Client's returns. Client retains responsibility for compliance with any electronic funds transfer requirements that may apply to the payment of applicable taxes.

## Electronic Funds Withdrawal

The IRS allows for payment of federal income taxes due or estimated tax payments via electronic funds withdrawal ("EFW"). In addition, certain states provide or mandate EFW for payment of taxes due and/or estimated tax payments. You have requested that Deloitte Tax provide assistance in connection with your use of EFW. Our assistance will be limited to entering the requisite bank account information, tax payment amount, etc. ("EFW Information") into the tax compliance software used to prepare your Returns. Your signed approval for Deloitte Tax to transmit your Returns will serve as your acknowledgement that the EFW Information is correct. Deloitte Tax will transmit the EFW Information to the IRS and state authorities as required without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. You retain responsibility for bank account accessibility and for confirming that the necessary funds are available in your bank account to pay the taxes due on the date prescribed for withdrawal, including those for quarterly estimated taxes. Deloitte Tax assumes no responsibility for any interest or penalties arising from your use of EFW under this Engagement Letter. Deloitte Tax will not remind you of future quarterly estimated tax payments that you have directed to be withdrawn by taxing authorities using EFW.

## Engagement Technology

In providing the Services, we expect to utilize our innovative cloud-based solution, Intela, to facilitate efficient communication between Client's team and ours and streamline the process associated with requesting and receiving the data necessary for our Services. For additional information about Intela, please contact your Deloitte Tax engagement team.

## Potential Impact of U.S. Supreme Court Decision in *Wayfair*

In light of the Court's statement in *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018) ("*Wayfair*") that physical presence is not a necessary element for "substantial nexus" , guidance from the Multistate Tax Commission, and the potential state adoption and/or application of their guidance (e.g., California Technical Advice Memorandum 2022-01), Client may need to revisit positions it may have historically taken regarding income/franchise tax nexus. As a result, the scope of our Services may need to be expanded to include a nexus review for additional filings. Deloitte Tax has not been engaged to perform a nexus review or consulting services. If you need assistance with these services, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

---

## TAX POSITIONS, POTENTIAL PENALTIES, TAXING AUTHORITY AUDITS

In accordance with our professional standards, while in the course of performing our Services should Deloitte Tax become aware of tax return positions for which either Client or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss with Client these positions including how any such penalties may be avoided through adequate disclosures to taxing authorities. Client should be aware that as a tax return preparer, Deloitte Tax may be required to satisfy disclosure requirements that may exceed those applicable to Client.

---

## FEES AND EXPENSES

The Deloitte Tax fees for the preparation of the tax returns, including preparation of extension requests and quarterly estimates, are $85,000. Deloitte Tax will also bill you (i) reasonable out-of-pocket expenses and (ii) an

allocation of estimated administrative and technology costs incurred (e.g., tax technology and processing support activities, research materials, etc.) equal to five (5) percent of professional fees. If Deloitte Tax finds that there is an increased level of complexity or if additional services are necessary in order to complete the returns outlined in Exhibit A, Deloitte Tax will contact you to discuss the billing arrangement related to such out-of-scope services.

Additionally, Deloitte Tax estimates that the fee for the preparation of additional state and local tax returns not listed on Exhibit A will be $1,500 for each separate return and between $1,500 and $2,500 for each combined return based on the level of information requested on the tax return. Deloitte Tax estimates that the fee for the preparation of additional foreign information forms (for example Form 5471) will be $4,500 per form. Deloitte Tax will prepare such additional state and local tax returns, or foreign information forms as requested by Client.

### Impact on Fees Due to Failure to Provide Requested Information

Deloitte Tax assumes that Client will provide timely and complete information as requested, including complete trial balances and reconciliations of the trial balances to the audited financial statements, state apportionment information that reconciles to Client trial balances, state payment/overpayment carryforward information (including adjustments for notices), depreciation reports and timely approval and authorization for a particular task [in accordance with the above timetable]. In the event that Client is unable to provide requested information in a manner suitable to prepare the returns or approval and authorization for a particular task by agreed-upon deadlines, Deloitte Tax may incur additional time necessary to analyze the required information or perform the particular task, resulting in an increase to our overall fees. To the extent the charges for these additional services will exceed 10% of the overall fees for this engagement, Deloitte Tax will inform Client prior to incurring such additional time.

### UNANTICIPATED OUT-OF-SCOPE SERVICES

In the event there is a mutually agreed upon change in the scope of our services for any other reason (e.g., new legislation, changes in the number of entities or tax returns included in the engagement, a need to file amended federal or state tax returns, specified tax reporting for transactions arising in the year such as dispositions and acquisitions and internal entity realignment or reorganizations (including relevant elections and statements), significant intercompany transactions, debt modifications, reportable transactions, expansion of the requirements or complexities with electronically filing tax returns, regulatory changes in filing requirements, analysis and tracking of state attributes that have carryover amounts, separate computations of attribute allocations to joining and departing members of the consolidated group and/or the limitations thereon, or other items that would impact the amount of time incurred to perform the Services as currently contemplated), it may be necessary to discuss a change in our fee estimate with you. Our fees for such out-of-scope services will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved. Deloitte Tax will bring these items to Client's attention and will discuss the associated additional fees for such out-of-scope services prior to proceeding.

Additionally, state tax jurisdictions may continue to modify their laws to address tax law changes and mandated informational reporting. It is possible that a state may adopt retroactive legislation after the filing of the 2022 tax return(s). Therefore, consideration may need to be given to filing an initial original return followed by an amended return once the state has issued final guidance.

Subject to any applicable Bankruptcy Court (as defined below) orders, rules or procedures, Deloitte Tax will bill Client every four weeks as the Services progress.

The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the tax authorities, nor are those amounts contingent or refundable.

Client agrees that Client will promptly seek the Bankruptcy Court's approval of this engagement. The supporting documents submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects.  In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this Work Order, or (b) the engagement is denied by the Bankruptcy Court. In such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any documentation filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Chapter 11 proceeding.

For purposes of this Work Order, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

**IRC Section 174 expenditure calculation**
Any calculations or analyses related to the mandatory amortization of IRC Section 174 expenditures for taxable years beginning after December 31, 2021, as per the Tax Cuts and Jobs Act ("TCJA") are specifically excluded from our scope of services. For any such assistance a separate Engagement letter or Work Order should be executed.

---

**Client Responsibilities:**

Client will provide to Deloitte Tax, in a timely manner, necessary information needed to perform the requested services.

---

**Other Terms (if applicable):**

**CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION**

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Work Order, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Work Order, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Very truly yours,

DELOITTE TAX LLP

By: _____

Matt Walton
Partner

AGREED AND ACCEPTED

Amyris, Inc. and Subsidiary, on behalf of itself and its subsidiaries and/or affiliates

By: _Elizabeth E. Dreyer_____

Elizabeth Dreyer

Title: _Chief Accounting Officer_____

Date: _9/6/23_____

Exhibit A - Amyris, Inc. and Subsidiary

Listing of Federal and State Income Tax Returns Included in Engagement

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| Amyris, Inc. and Subsidiary | Federal | 1120 | U.S. Corporation Income Tax Return |
| Amyris, Inc. and Subsidiary | California | 100 | California Corporation Franchise or Income Tax Return |
| Amyris, Inc. & Subsidiaries | District of Columbia | D-20 | District of Columbia SUB Corporate Franchise Tax Return Form |
| Amyris, Inc. & Subsidiaries | Illinois | IL-1120 | Illinois Corporation Income and Replacement Tax Return |
| Amyris, Inc. & Subsidiaries | New Jersey | CBT-100U | New Jersey Corporation Business Unitary Tax Return |
| Amyris, Inc. & Subsidiaries | New York | CT-3-A | New Jersey Corporation Business Unitary Tax Return |
| Amyris, Inc. & Subsidiaries | New York | CT-3-M | New Jersey Corporation Business Unitary Tax Return |
| Amyris, Inc. & Subsidiaries | New York City | CBT-100U | New Jersey Corporation Business Unitary Tax Return |
| Amyris, Inc. & Subsidiaries | Texas | 05-158 | Texas Franchise Tax Report |
| Amyris, Inc. | Alabama | 20C | Alabama Corporation Income Tax Return |
| Amyris, Inc. | Alabama | CPT | Alabama Business Privilege Tax Return and Annual Report |
| Amyris, Inc. | Colorado | 112 | Colorado Corporation Income Tax Return |
| Amyris, Inc. | Florida | F-1120 | Florida Corporate Income/Franchise Tax Return |
| Amyris, Inc. | North Carolina | CD405 | North Carolina C Corporation Tax Return |
| Amyris, Inc. | Oklahoma | BT-190 | Oklahoma Annual Business Activity Return |

| Amyris, Inc. | Oklahoma | 512 | Oklahoma Corporation Income Tax Return |
| Amyris, Inc. | Pennsylvania | RCT -101 | Pennsylvania Corporate Net Income Tax Report |
| Amyris Fuel LLC | Virginia | 500 | Virginia Corporation Income Tax Return |

## Listing of International Forms included in Federal Income Tax Return

| Entity Name | Jurisdiction | Form Number | Form Name |
| --- | --- | --- | --- |
| SMA Industria Quimica S.A. | Federal | 5471 | Information Return of U.S. Persons With Respect To Certain Foreign Corporations |
| Amyris Bio Products Portugal, Unipessoal, LDA | Federal | 5471 | Information Return of U.S. Persons With Respect To Certain Foreign Corporations |
| Amyris Brotas Fermentacao De Performance LTDA | Federal | 5471 | Information Return of U.S. Persons With Respect To Certain Foreign Corporations |
| Amyris Biossance Do Brasil Comercio De Cosmeticos LT | Federal | 5471 | Information Return of U.S. Persons With Respect To Certain Foreign Corporations |
| MG Empower Limited | Federal | 5471 | Information Return of U.S. Persons With Respect To Certain Foreign Corporations |
| Beauty Labs International Limited | Federal | 5471 | Information Return of U.S. Persons With Respect To Certain Foreign Corporations |

Exhibit A
Amyris RealSweet LLC
Work Order
September 5, 2023

| | |
|---|---|
| **Work Order Number:** 2023-1065-1 (RealSweet) | **Authorized Start Date:** upon execution of this work order |

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP ("Deloitte Tax") and Amyris, Inc. and its subsidiaries ("Client") dated March 22, 2022.

**Description of Services:**
Deloitte Tax will prepare the 2022 and 2023 federal and state income tax returns ("tax returns") identified in Exhibit A, Listing of Income Tax Returns Included in Engagement, attached to this Work Order and incorporated herein by reference.

**Extensions**
In addition to the preparation of Client's 2022 and 2023 tax returns, Deloitte Tax will assist in calculating the amounts of extension payments and preparing the extension requests for the 2022 and 2023 tax returns identified in Exhibit A.

**Estimated Taxes**
Deloitte Tax has not been engaged to prepare any quarterly estimated tax payments for the 2023 or 2024 tax year. You have assumed responsibility for the preparation of these filings. If you need assistance with these filings, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

**Delinquent Tax Returns:**
You acknowledge that many of the above-described income tax returns that you are engaging Deloitte Tax to prepare under this Work Order are already late and will be filed by you late. Consequently, you recognize that your late filing of these returns may result in the imposition of additional taxes, penalties (which may be significant), or interest relating to those returns. You further understand and acknowledge by signing this Work Order that Deloitte Tax is not, nor shall ever be, responsible for any such claims, liabilities or expenses relating to the "late-filing" by you of these returns.

**Foreign Bank Account Reporting**
If Client has foreign bank accounts, investment accounts, partnerships or similar assets, or if Client has signature or similar authority over these types of accounts or investments (whether owned by Client or by others), Client may have to file a FinCEN Form 114, Report of Foreign Bank and Financial Accounts. Unless outlined above or the subject of a separate engagement letter, the Deloitte Tax return preparation Services that are the subject of this Engagement Letter do not include the preparation of any FinCEN Forms 114, which must be received by the Department of Treasury by April 18, 2023 with an automatic extension available until October 16, 2023. If assistance with these filings is needed, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

**Electronic Return Filing**
Client has engaged Deloitte Tax to electronically file ("e-file") its federal and  state income tax returns. Deloitte Tax will transmit the tax returns in the form of electronic files as authorized by the Client. In order for Deloitte Tax to e-file Client's returns, Client must provide signed e-file authorizations to Deloitte Tax at least seven (7)

days prior to transmission to the IRS and states indicated. Upon receipt of the signed e-file authorizations, Deloitte Tax will transmit the electronic files without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. The receipt of the signed e-file authorizations will be deemed by Deloitte Tax as authorization by Client to e-file Client's returns. Client retains responsibility for compliance with any electronic funds transfer requirements that may apply to the payment of applicable taxes.

## Electronic Funds Withdrawal

The IRS allows for payment of federal income taxes due or estimated tax payments via electronic funds withdrawal ("EFW"). In addition, certain states provide or mandate EFW for payment of taxes due and/or estimated tax payments. You have requested that Deloitte Tax provide assistance in connection with your use of EFW. Our assistance will be limited to entering the requisite bank account information, tax payment amount, etc. ("EFW Information") into the tax compliance software used to prepare your Returns. Your signed approval for Deloitte Tax to transmit your Returns will serve as your acknowledgement that the EFW Information is correct. Deloitte Tax will transmit the EFW Information to the IRS and state authorities as required without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. You retain responsibility for bank account accessibility and for confirming that the necessary funds are available in your bank account to pay the taxes due on the date prescribed for withdrawal, including those for quarterly estimated taxes. Deloitte Tax assumes no responsibility for any interest or penalties arising from your use of EFW under this Engagement Letter. Deloitte Tax will not remind you of future quarterly estimated tax payments that you have directed to be withdrawn by taxing authorities using EFW.

## Engagement Technology

In providing the Services, we expect to utilize our innovative cloud-based solution, Intela, to facilitate efficient communication between Client's team and ours and streamline the process associated with requesting and receiving the data necessary for our Services. For additional information about Intela, please contact your Deloitte Tax engagement team.

## Potential Impact of U.S. Supreme Court Decision in *Wayfair*

In light of the Court's statement in *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018) ("*Wayfair*") that physical presence is not a necessary element for "substantial nexus" , guidance from the Multistate Tax Commission, and the potential state adoption and/or application of their guidance (e.g., California Technical Advice Memorandum 2022-01), Client may need to revisit positions it may have historically taken regarding income/franchise tax nexus. As a result, the scope of our Services may need to be expanded to include a nexus review for additional filings. Deloitte Tax has not been engaged to perform a nexus review or consulting services. If you need assistance with these services, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

## Potential Impact of State Elective Pass-Through Entity Taxes

Many states have enacted an elective state pass-through entity income tax. Client may need to evaluate whether to make the election, if available in states listed in Exhibit A. The scope of our Services may need to be expanded to include an analysis of whether to make the applicable elections. Such services will be the subject of a separate written agreement between Client and Deloitte Tax.

## Changes in reporting requirements on Form 1065 and Schedules K-1, K-2 and K-3 and related State Returns

The IRS has incorporated several significant changes to the Form 1065 Schedule K-1 reporting requirements since the 2019 year, including:

- Tax basis capital account for each partner starting with the 2020 tax year;
- A partner's amount of net unrecognized built-in gain (BIG) or loss (BIL) under section 704(c);

- Codes for adjustments to basis made under section 743;
- Disclosure of decreases in a partner's share of profit, loss, or capital sharing due to a sale or exchange of the interest in the partnership;
- A breakout between guaranteed payments for services and guaranteed payments for use of capital;
- Check boxes for noting whether there is more than one activity for purposes of sections 465 and 469;
- Additional section 465 at-risk reporting starting with the 2020 tax year;
- Potential additional Schedule K-1 footnote reporting for taxpayers who either want to follow or are required to follow provisions in final and/or proposed regulations (e.g., section 163(j), section 1061);
- Required reporting of section 751 "hot asset" information to partners who transfer a partnership interest; and
- Additional changes that may be made to the 2022 Form 1065 and its related Instructions.

In addition, beginning with tax year 2021, Schedules K-2 and K-3 apply to any persons required to file Form 1065, Form 1120-S, or Form 8865 if the entity for which the form is being filed has items of international tax relevance (generally foreign activities or foreign partners – direct or indirect). The information required on these schedules may include information that has not previously been required to be reported. Compliance with this reporting requirement likely will require additional analysis and time to complete. Penalties may apply for filing Form 1065, Form 1120-S, or Form 8865 without all required information or for furnishing Schedule K-3 to partners or shareholders without all requireFd information. Note that new Schedules K-2 and K-3 **do not** replace existing US international tax information reporting requirements of the partnership, S corporation, or US persons required to file Form 8865, Form 5471, or Form 8621.

In order to gather the required information to meet the IRS's (and any applicable state and/or local jurisdictions) reporting requirements on Schedule K-1, Schedules K-2 and K-3, and prepare the updated forms, we anticipate that we will incur additional hours for services above and beyond the base fees included herein and which cannot be estimated at this time. While our fees for these additional hours will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, the specific scope of services needed to assist Client with these requirements will depend upon the information that Client has historically tracked and maintained. Once determined, the actual scope of services to be performed, and the corresponding fees, will be mutually agreed upon between Client and Deloitte Tax, and evidenced by an additional engagement letter or an addendum to this Work Order prior to commencement of those Services.

The enactment of the Inflation Reduction Act of 2022 may have an impact on IRS (and applicable state and/or local jurisdictions) reporting requirements for Form 1065 and Schedules K-1, K-2 and K-3. We anticipate that we may incur additional hours for services above and beyond the base fees included herein and which cannot be estimated at this time. *See* "Unanticipated Out-of-Scope Services," below.

## TAX POSITIONS, POTENTIAL PENALTIES, TAXING AUTHORITY AUDITS

In accordance with our professional standards, while in the course of performing our Services should Deloitte Tax become aware of tax return positions for which either you or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss with you these positions including how any such penalties may be avoided through adequate disclosures to taxing authorities. You should be aware that as a tax return preparer, Deloitte Tax may be required to satisfy disclosure requirements that may exceed those applicable to you. In those instances where Deloitte Tax is aware of tax return positions that may trigger an accuracy-related tax preparer penalty under Internal Revenue Code ("IRC") sections 6662 or 6694 (or comparable state provisions), Deloitte Tax will include in the returns we prepare the disclosures necessary to avoid such penalties.

Our Services do not include representation of you in administrative taxing authority proceedings. However, Deloitte Tax would generally be willing to represent you in such proceedings for an additional fee that is mutually agreed upon.

## FEES AND EXPENSES

The Deloitte Tax fees for the preparation of the tax returns, excluding preparation of extension requests and quarterly estimates, are $25,000. Deloitte Tax will also bill you (i) reasonable out-of-pocket expenses and (ii) an allocation of estimated administrative and technology costs incurred (e.g., tax technology and processing support activities, research materials, etc.) equal to five (5) percent of professional fees. If Deloitte Tax finds that there is an increased level of complexity or if additional services are necessary in order to complete the returns outlined in Exhibit A, Deloitte Tax will contact you to discuss the billing arrangement related to such out-of-scope services.

Additionally, Deloitte Tax estimates that the fee for the preparation of additional state and local tax returns not listed on Exhibit A will be $1,500 for each separate return and between $1,500 and $2,500 for each combined return based on the level of information requested on the tax return. Deloitte Tax estimates that the fee for the preparation of additional foreign information forms (for example Form 5471) will be $4,500 per return. Deloitte Tax will prepare such additional state and local tax returns, or foreign information forms as requested by Client.

### Impact on Fees Due to Failure to Provide Requested Information
Deloitte Tax assumes that Client will provide timely and complete information as requested, including complete trial balances and reconciliations of the trial balances to the audited financial statements, state apportionment information that reconciles to Client trial balances, state payment/overpayment carryforward information (including adjustments for notices), depreciation reports and timely approval and authorization for a particular task. In the event that Client is unable to provide requested information in a manner suitable to prepare the returns or approval and authorization for a particular task by agreed-upon deadlines, Deloitte Tax may incur additional time necessary to analyze the required information or perform the particular task, resulting in an increase to our overall fees. To the extent the charges for these additional services will exceed 10% of the overall fees for this engagement, Deloitte Tax will inform Client prior to incurring such additional time.

### UNANTICIPATED OUT-OF-SCOPE SERVICES

In the event there is a mutually agreed upon change in the scope of our services for any other reason (e.g., new legislation, changes in the number of entities or tax returns included in the engagement, a need to file amended federal or state tax returns, specified tax reporting for transactions arising in the year such as dispositions and acquisitions and internal entity realignment or reorganizations (including relevant elections and statements), significant intercompany transactions, debt modifications, reportable transactions, expansion of the requirements or complexities with electronically filing tax returns, regulatory changes in filing requirements, analysis and tracking of state attributes that have carryover amounts, separate computations of attribute allocations to joining and departing members of the consolidated group and/or the limitations thereon, or other items that would impact the amount of time incurred to perform the Services as currently contemplated), it may be necessary to discuss a change in our fee estimate with you. Our fees for such out-of-scope services will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved. Deloitte Tax will bring these items to Client's attention and will discuss the associated additional fees for such out-of-scope services prior to proceeding.

Additionally, state tax jurisdictions may continue to modify their laws to address tax law changes and mandated informational reporting. It is possible that a state may adopt retroactive legislation after the filing of the 2022

tax return(s). Therefore, consideration may need to be given to filing an initial original return followed by an amended return once the state has issued final guidance.

Subject to any applicable Bankruptcy Court (as defined below) orders, rules or procedures, Deloitte Tax will bill Client every four weeks as the Services progress.

The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the tax authorities, nor are those amounts contingent or refundable.

Client agrees that Client will promptly seek the Bankruptcy Court's approval of this engagement. The supporting documents submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects.  In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this Work Order, or (b) the engagement is denied by the Bankruptcy Court. In such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any documentation filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Chapter 11 proceeding.

For purposes of this Work Order, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

## IRC Section 174 expenditure calculation

Any calculations or analyses related to the mandatory amortization of IRC Section 174 expenditures for taxable years beginning after December 31, 2021, as per the Tax Cuts and Jobs Act ("TCJA") are specifically excluded from our scope of services. For any such assistance a separate Engagement letter or Work Order should be executed.

## Client Responsibilities:

Client will provide to Deloitte Tax, in a timely manner, necessary information needed to perform the requested services.

## Other Terms (if applicable):

## CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Work Order, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Work Order, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's

tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Very truly yours,

DELOITTE TAX LLP

By: _____

Matt Walton
Partner

AGREED AND ACCEPTED

Amyris Inc., on behalf of itself and its subsidiaries and/or affiliates

By: _____*Elizabeth E. Dreyer*_____

Elizabeth Dreyer

Title: _____Chief Accounting Officer_____

Date: _____9/6/23_____

Exhibit A - Amyris RealSweet LLC

Listing of Federal and State Income Tax Returns Included in Engagement

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| Amyris RealSweet LLC | Federal | 1065 | U.S. Return of Partnership Income |
| Amyris RealSweet LLC | California | 568 | Limited Liability Company Return of Income |

Listing of International Forms included in Federal Income Tax Return

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| Amyris Fermentacao De Performance LTDA | Federal | 5471 | Information Return of U.S. Persons With Respect To Certain Foreign Corporations |

Exhibit A
Aprinnova, LLC
Work Order
September 5, 2023

**Work Order Number:** 2023-1065-2 (Aprinnova)    **Authorized Start Date:** upon execution of this work order

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP ("Deloitte Tax") and Aprinnova, LLC ("Client") dated March 22, 2022 .

**Description of Services:**
Deloitte Tax will prepare the 2022 and 2023 federal and state income tax returns, extensions, and any estimate payments ("tax returns") identified in Exhibit A, Listing of Income Tax Returns Included in Engagement, attached to this Work Order and incorporated herein by reference.

**Extensions:**
In addition to the preparation of Client's 2022 and 2023 tax returns, Deloitte Tax will assist in calculating the amounts of extension payments and preparing the extension requests for the 2022 and 2023 tax returns identified in Exhibit A.

**Estimated Taxes:**
Deloitte Tax has not been engaged to prepare any quarterly estimated tax payments for the 2023 or 2024 tax year. You have assumed responsibility for the preparation of these filings. If you need assistance with these filings, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

**Delinquent Tax Returns:**
You acknowledge that many of the above-described income tax returns that you are engaging Deloitte Tax to prepare under this Work Order are already late and will be filed by you late. Consequently, you recognize that your late filing of these returns may result in the imposition of additional taxes, penalties (which may be significant), or interest relating to those returns. You further understand and acknowledge by signing this Work Order that Deloitte Tax is not, nor shall ever be, responsible for any such claims, liabilities or expenses relating to the "late-filing" by you of these returns.

**Foreign Bank Account Reporting:**
If Client has foreign bank accounts, investment accounts, partnerships or similar assets, or if Client has signature or similar authority over these types of accounts or investments (whether owned by Client or by others), Client may have to file a FinCEN Form 114, Report of Foreign Bank and Financial Accounts. Unless outlined above or the subject of a separate engagement letter, the Deloitte Tax return preparation Services that are the subject of this Engagement Letter do not include the preparation of any FinCEN Forms 114, which must be received by the Department of Treasury by April 18, 2023 with an automatic extension available until October 16, 2023. If assistance with these filings is needed, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

**Electronic Return Filing:**
Client has engaged Deloitte Tax to electronically file ("e-file") its federal and state income tax returns. Deloitte Tax will transmit the tax return(s) in the form of electronic files as authorized by the Client. In order for Deloitte Tax to e-file Client's returns, Client must provide signed e-file authorizations to Deloitte Tax at least seven (7) days prior to transmission to the IRS and states indicated. Upon receipt of the signed e-file authorizations, Deloitte Tax will transmit the electronic files without modification other than as necessary to resolve diagnostic

or other errors generated as a result of the transmission. The receipt of the signed e-file authorizations will be deemed by Deloitte Tax as authorization by Client to e-file Client's returns. Client retains responsibility for compliance with any electronic funds transfer requirements that may apply to the payment of applicable taxes.

## Electronic Funds Withdrawal

The IRS allows for payment of federal income taxes due or estimated tax payments via electronic funds withdrawal ("EFW"). In addition, certain states provide or mandate EFW for payment of taxes due and/or estimated tax payments. You have requested that Deloitte Tax provide assistance in connection with your use of EFW. Our assistance will be limited to entering the requisite bank account information, tax payment amount, etc. ("EFW Information") into the tax compliance software used to prepare your Returns. Your signed approval for Deloitte Tax to transmit your Returns will serve as your acknowledgement that the EFW Information is correct. Deloitte Tax will transmit the EFW Information to the IRS and state authorities as required without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. You retain responsibility for bank account accessibility and for confirming that the necessary funds are available in your bank account to pay the taxes due on the date prescribed for withdrawal, including those for quarterly estimated taxes. Deloitte Tax assumes no responsibility for any interest or penalties arising from your use of EFW under this Engagement Letter. Deloitte Tax will not remind you of future quarterly estimated tax payments that you have directed to be withdrawn by taxing authorities using EFW.

## Engagement Technology:

In providing the Services, we expect to utilize our innovative cloud-based solution, Intela, to facilitate efficient communication between Client's team and ours and streamline the process associated with requesting and receiving the data necessary for our Services. For additional information about Intela, please contact your Deloitte Tax engagement team.

## Potential Impact of U.S. Supreme Court Decision in *Wayfair*

In light of the Court's statement in *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018) ("*Wayfair")* that physical presence is not a necessary element for "substantial nexus" , guidance from the Multistate Tax Commission, and the potential state adoption and/or application of their guidance (e.g., California Technical Advice Memorandum 2022-01), Client may need to revisit positions it may have historically taken regarding income/franchise tax nexus. As a result, the scope of our Services may need to be expanded to include a nexus review for additional filings. Deloitte Tax has not been engaged to perform a nexus review or consulting services. If you need assistance with these services, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

## Potential Impact of State Elective Pass-Through Entity Taxes

Many states have enacted an elective state pass-through entity income tax. Client may need to evaluate whether to make the election, if available in states listed in Exhibit A. The scope of our Services may need to be expanded to include an analysis of whether to make the applicable elections. Such services will be the subject of a separate written agreement between Client and Deloitte Tax.

## Changes in reporting requirements on Form 1065 and Schedules K-1, K-2 and K-3 and related State/Local Returns

The IRS has incorporated several significant changes to the Form 1065 Schedule K-1 reporting requirements since the 2019 year, including:

- Tax basis capital account for each partner starting with the 2020 tax year;
- A partner's amount of net unrecognized built-in gain (BIG) or loss (BIL) under section 704(c);
- Codes for adjustments to basis made under section 743;

- Disclosure of decreases in a partner's share of profit, loss, or capital sharing due to a sale or exchange of the interest in the partnership;
- A breakout between guaranteed payments for services and guaranteed payments for use of capital;
- Check boxes for noting whether there is more than one activity for purposes of sections 465 and 469;
- Additional section 465 at-risk reporting starting with the 2020 tax year;
- Potential additional Schedule K-1 footnote reporting for taxpayers who either want to follow or are required to follow provisions in final and/or proposed regulations (e.g., section 163(j), section 1061);
- Required reporting of section 751 "hot asset" information to partners who transfer a partnership interest; and
- Additional changes that may be made to the 2022 Form 1065 and its related Instructions.

In addition, beginning with tax year 2021, Schedules K-2 and K-3 apply to any persons required to file Form 1065, Form 1120-S, or Form 8865 if the entity for which the form is being filed has items of international tax relevance (generally foreign activities or foreign partners – direct or indirect). The information required on these schedules may include information that has not previously been required to be reported. Compliance with this reporting requirement likely will require additional analysis and time to complete. Penalties may apply for filing Form 1065, Form 1120-S, or Form 8865 without all required information or for furnishing Schedule K-3 to partners or shareholders without all required information. Note that new Schedules K-2 and K-3 **do not** replace existing US international tax information reporting requirements of the partnership, S corporation, or US persons required to file Form 8865, Form 5471, or Form 8621.

In order to gather the required information to meet the IRS's (and any applicable state and/or local jurisdictions) reporting requirements on Schedule K-1, Schedules K-2 and K-3, and prepare the updated forms, we anticipate that we will incur additional hours for services above and beyond the base fees included herein and which cannot be estimated at this time. While our fees for these additional hours will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, the specific scope of services needed to assist Client with these requirements will depend upon the information that Client has historically tracked and maintained. Once determined, the actual scope of services to be performed, and the corresponding fees, will be mutually agreed upon between Client and Deloitte Tax, and evidenced by an additional engagement letter or an addendum to this Work Order prior to commencement of those Services.

The enactment of the Inflation Reduction Act of 2022 may have an impact on IRS (and applicable state and/or local jurisdictions) reporting requirements for Form 1065 and Schedules K-1, K-2 and K-3. We anticipate that we may incur additional hours for services above and beyond the base fees included herein and which cannot be estimated at this time. *See* "Unanticipated Out-of-Scope Services," below.

The enactment of the Inflation Reduction Act of 2022 may have an impact on IRS (and applicable state and/or local jurisdictions) reporting requirements for Form 1120-S and Schedules K-1, K-2 and K-3. We anticipate that we may incur additional hours for services above and beyond the base fees included herein and which cannot be estimated at this time. *See* "Unanticipated Out-of-Scope Services," below.

---

**TAX POSITIONS, POTENTIAL PENALTIES, TAXING AUTHORITY AUDITS**

In accordance with our professional standards, while in the course of performing our Services should Deloitte Tax become aware of tax return positions for which either Client or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss with Client these positions including how any such penalties may be avoided through adequate disclosures to taxing authorities. Client should be aware that as a tax return preparer, Deloitte Tax may be required to satisfy disclosure requirements that may exceed those applicable to Client.

## FEES AND EXPENSES

The Deloitte Tax fees for the preparation of the tax returns, including preparation of extension requests and quarterly estimates, are $ 35,000. Deloitte Tax will also bill you (i) reasonable out-of-pocket expenses and (ii) an allocation of estimated administrative and technology costs incurred (e.g., tax technology and processing support activities, research materials, etc.) equal to five (5) percent of professional fees. If Deloitte Tax finds that there is an increased level of complexity or if additional services are necessary in order to complete the returns outlined in Exhibit A, Deloitte Tax will contact you to discuss the billing arrangement related to such out-of-scope services.

Additionally, Deloitte Tax estimates that the fee for the preparation of additional state and local tax returns not listed on Exhibit A will be $1,500 for each separate return and between $1,500 and $2,500 for each combined return based on the level of information requested on the tax return. Deloitte Tax will prepare such additional state and local tax returns as requested by Client.

### Impact on Fees Due to Failure to Provide Requested Information

Deloitte Tax assumes that Client will provide timely and complete information as requested, including complete trial balances and reconciliations of the trial balances to the audited financial statements, state apportionment information that reconciles to Client trial balances, state payment/overpayment carryforward information (including adjustments for notices), depreciation reports and timely approval and authorization for a particular task. In the event that Client is unable to provide requested information in a manner suitable to prepare the returns or approval and authorization for a particular task by agreed-upon deadlines, Deloitte Tax may incur additional time necessary to analyze the required information or perform the particular task, resulting in an increase to our overall fees. To the extent the charges for these additional services will exceed 10% of the overall fees for this engagement, Deloitte Tax will inform Client prior to incurring such additional time.

### UNANTICIPATED OUT-OF-SCOPE SERVICES

In the event there is a mutually agreed upon change in the scope of our services for any other reason (e.g., new legislation, changes in the number of entities or tax returns included in the engagement, a need to file amended federal or state tax returns, specified tax reporting for transactions arising in the year such as dispositions and acquisitions and internal entity realignment or reorganizations (including relevant elections and statements), significant intercompany transactions, debt modifications, reportable transactions, expansion of the requirements or complexities with electronically filing tax returns, regulatory changes in filing requirements, analysis and tracking of state attributes that have carryover amounts, separate computations of attribute allocations to joining and departing members of the consolidated group and/or the limitations thereon, or other items that would impact the amount of time incurred to perform the Services as currently contemplated), it may be necessary to discuss a change in our fee estimate with you. Our fees for such out-of-scope services will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved. Deloitte Tax will bring these items to Client's attention and will discuss the associated additional fees for such out-of-scope services prior to proceeding.

Additionally, state tax jurisdictions may continue to modify their laws to address tax law changes and mandated informational reporting. It is possible that a state may adopt retroactive legislation after the filing of the 2022 tax returns. Therefore, consideration may need to be given to filing an initial original return followed by an amended return once the state has issued final guidance.

Subject to any applicable Bankruptcy Court (as defined below) orders, rules or procedures, Deloitte Tax will bill Client every four weeks as the Services progress.

The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the tax authorities, nor are those amounts contingent or refundable.

Client agrees that Client will promptly seek the Bankruptcy Court's approval of this engagement. The supporting documents submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects.  In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this Work Order, or (b) the engagement is denied by the Bankruptcy Court. In such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any documentation filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Chapter 11 proceeding.

For purposes of this Work Order, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

### IRC Section 174 expenditure calculation

Any calculations or analyses related to the mandatory amortization of IRC Section 174 expenditures for taxable years beginning after December 31, 2021, as per the Tax Cuts and Jobs Act ("TCJA") are specifically excluded from our scope of services. For any such assistance a separate Engagement letter or Work Order should be executed.

### Client Responsibilities:

Client will provide to Deloitte Tax, in a timely manner, necessary information needed to perform the requested services.

### Other Terms (if applicable):

### CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Work Order, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Work Order, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Very truly yours,

DELOITTE TAX LLP

By: _____

Matt Walton
Partner

AGREED AND ACCEPTED

Amyris, Inc. , on behalf of itself and its subsidiaries
and/or affiliates

By: *Elizabeth E. Dreyer*_____

Elizabeth Dreyer

Title: Chief Accounting Officer_____

Date: 9/6/23_____

**Exhibit A - Aprinnova LLC**

**Listing of Federal and State Income Tax Returns Included in Engagement**

| Entity Name | Jurisdiction | Form Number | Form Name |
| --- | --- | --- | --- |
| Aprinnova, LLC | Federal | 1065 | U.S. Return of Partnership Income |
| Aprinnova, LLC | North Carolina | D-403 | Partnership Income Tax Return |

Exhibit A
Clean Beauty Collaborative
Work Order
September 5, 2023

**Work Order Number:** 2023-1120-2 (Clean Beauty)  **Authorized Start Date:** upon execution of this work order

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP ("Deloitte Tax") and Clean Beauty Collaborative ("Client") dated March 22, 2022.

**Description of Services:**

Deloitte Tax will prepare the 2022 federal and 2023 federal and state income tax returns extensions, and any estimate payments ("tax returns") identified in Exhibit A, Listing of Income Tax Returns Included in Engagement, attached to this Work Order and incorporated herein by reference.

**Extensions**
In addition to the preparation of Client's 2022 and 2023 tax returns, Deloitte Tax will assist in calculating the amounts of extension payments and preparing the extension requests for the 2022 and 2023 tax returns identified in Exhibit A.

**Estimated Taxes**
Deloitte Tax has not been engaged to prepare any quarterly estimated tax payments for the 2023 or 2024 tax year. You have assumed responsibility for the preparation of these filings. If you need assistance with these filings, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

**Delinquent Tax Returns:**
You acknowledge that many of the above-described income tax returns that you are engaging Deloitte Tax to prepare under this Work Order are already late and will be filed by you late. Consequently, you recognize that your late filing of these returns may result in the imposition of additional taxes, penalties (which may be significant), or interest relating to those returns. You further understand and acknowledge by signing this Work Order that Deloitte Tax is not, nor shall ever be, responsible for any such claims, liabilities or expenses relating to the "late-filing" by you of these returns.

**Foreign Bank Account Reporting**
If Client has foreign bank accounts, investment accounts, partnerships or similar assets, or if Client has signature or similar authority over these types of accounts or investments (whether owned by Client or by others), Client may have to file a FinCEN Form 114, Report of Foreign Bank and Financial Accounts. Unless outlined above or the subject of a separate engagement letter, the Deloitte Tax return preparation Services that are the subject of this Engagement Letter do not include the preparation of any FinCEN Forms 114, which must be received by the Department of Treasury by April 18, 2023 with an automatic extension available until October 16, 2023. If assistance with these filings is needed, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

**Electronic Return Filing**
Client has engaged Deloitte Tax to electronically file ("e-file") its federal and XYZ state income tax returns. Deloitte Tax will transmit the tax return(s) in the form of electronic files as authorized by the Client. In order for Deloitte Tax to e-file Client's returns, Client must provide signed e-file authorizations to Deloitte Tax at least

seven (7) days prior to transmission to the IRS and states indicated. Upon receipt of the signed e-file authorizations, Deloitte Tax will transmit the electronic files without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. The receipt of the signed e-file authorizations will be deemed by Deloitte Tax as authorization by Client to e-file Client's returns. Client retains responsibility for compliance with any electronic funds transfer requirements that may apply to the payment of applicable taxes.

## Electronic Funds Withdrawal

The IRS allows for payment of federal income taxes due or estimated tax payments via electronic funds withdrawal ("EFW"). In addition, certain states provide or mandate EFW for payment of taxes due and/or estimated tax payments. You have requested that Deloitte Tax provide assistance in connection with your use of EFW. Our assistance will be limited to entering the requisite bank account information, tax payment amount, etc. ("EFW Information") into the tax compliance software used to prepare your Returns. Your signed approval for Deloitte Tax to transmit your Returns will serve as your acknowledgement that the EFW Information is correct. Deloitte Tax will transmit the EFW Information to the IRS and state authorities as required without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. You retain responsibility for bank account accessibility and for confirming that the necessary funds are available in your bank account to pay the taxes due on the date prescribed for withdrawal, including those for quarterly estimated taxes. Deloitte Tax assumes no responsibility for any interest or penalties arising from your use of EFW under this Engagement Letter. Deloitte Tax will not remind you of future quarterly estimated tax payments that you have directed to be withdrawn by taxing authorities using EFW.

## Engagement Technology

In providing the Services, we expect to utilize our innovative cloud-based solution, Intela, to facilitate efficient communication between Client's team and ours and streamline the process associated with requesting and receiving the data necessary for our Services. For additional information about Intela, please contact your Deloitte Tax engagement team.

## Potential Impact of U.S. Supreme Court Decision in *Wayfair*

In light of the Court's statement in *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018) ("*Wayfair*") that physical presence is not a necessary element for "substantial nexus" , guidance from the Multistate Tax Commission, and the potential state adoption and/or application of their guidance (e.g., California Technical Advice Memorandum 2022-01), Client may need to revisit positions it may have historically taken regarding income/franchise tax nexus. As a result, the scope of our Services may need to be expanded to include a nexus review for additional filings. Deloitte Tax has not been engaged to perform a nexus review or consulting services. If you need assistance with these services, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

## TAX POSITIONS, POTENTIAL PENALTIES, TAXING AUTHORITY AUDITS

In accordance with our professional standards, while in the course of performing our Services should Deloitte Tax become aware of tax return positions for which either Client or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss with Client these positions including how any such penalties may be avoided through adequate disclosures to taxing authorities. Client should be aware that as a tax return preparer, Deloitte Tax may be required to satisfy disclosure requirements that may exceed those applicable to Client.

## FEES AND EXPENSES

The Deloitte Tax fees for the preparation of the tax returns, including preparation of extension requests and quarterly estimates, are $30,000. Deloitte Tax will also bill you (i) reasonable out-of-pocket expenses and (ii) an allocation of estimated administrative and technology costs incurred (e.g., tax technology and processing support activities, research materials, etc.) equal to five (5) percent of professional fees. If Deloitte Tax finds that there is an increased level of complexity or if additional services are necessary in order to complete the returns outlined in Exhibit A, Deloitte Tax will contact you to discuss the billing arrangement related to such out-of-scope services.

Additionally, Deloitte Tax estimates that the fee for the preparation of additional state and local tax returns not listed on Exhibit A will be $1,500 for each separate return and between $1,500 and $2,500 for each combined return based on the level of information requested on the tax return. Deloitte Tax estimates that the fee for the preparation of additional foreign information forms (for example Form 5471) will be $4,500 per form. Deloitte Tax will prepare such additional state and local tax returns, or foreign information forms as requested by Client.

### Impact on Fees Due to Failure to Provide Requested Information

Deloitte Tax assumes that Client will provide timely and complete information as requested, including complete trial balances and reconciliations of the trial balances to the audited financial statements, state apportionment information that reconciles to Client trial balances, state payment/overpayment carryforward information (including adjustments for notices), depreciation reports and timely approval and authorization for a particular task. In the event that Client is unable to provide requested information in a manner suitable to prepare the returns or approval and authorization for a particular task by agreed-upon deadlines, Deloitte Tax may incur additional time necessary to analyze the required information or perform the particular task, resulting in an increase to our overall fees. To the extent the charges for these additional services will exceed 10% of the overall fees for this engagement, Deloitte Tax will inform Client prior to incurring such additional time.

### UNANTICIPATED OUT-OF-SCOPE SERVICES

In the event there is a mutually agreed upon change in the scope of our services for any other reason (e.g., new legislation, changes in the number of entities or tax returns included in the engagement, a need to file amended federal or state tax returns, specified tax reporting for transactions arising in the year such as dispositions and acquisitions and internal entity realignment or reorganizations (including relevant elections and statements), significant intercompany transactions, debt modifications, reportable transactions, expansion of the requirements or complexities with electronically filing tax returns, regulatory changes in filing requirements, analysis and tracking of state attributes that have carryover amounts, separate computations of attribute allocations to joining and departing members of the consolidated group and/or the limitations thereon, or other items that would impact the amount of time incurred to perform the Services as currently contemplated), it may be necessary to discuss a change in our fee estimate with you. Our fees for such out-of-scope services will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved. Deloitte Tax will bring these items to Client's attention and will discuss the associated additional fees for such out-of-scope services prior to proceeding.

Additionally, state tax jurisdictions may continue to modify their laws to address tax law changes and mandated informational reporting. It is possible that a state may adopt retroactive legislation after the filing of the 2022 tax return(s). Therefore, consideration may need to be given to filing an initial original return followed by an amended return once the state has issued final guidance.

Subject to any applicable Bankruptcy Court (as defined below) orders, rules or procedures, Deloitte Tax will bill Client every four weeks as the Services progress.

The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the tax authorities, nor are those amounts contingent or refundable.

Client agrees that Client will promptly seek the Bankruptcy Court's approval of this engagement. The supporting documents submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects.  In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this Work Order, or (b) the engagement is denied by the Bankruptcy Court. In such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any documentation filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Chapter 11 proceeding.

For purposes of this Work Order, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

### IRC Section 174 expenditure calculation

Any calculations or analyses related to the mandatory amortization of IRC Section 174 expenditures for taxable years beginning after December 31, 2021, as per the Tax Cuts and Jobs Act ("TCJA") are specifically excluded from our scope of services. For any such assistance a separate Engagement letter or Work Order should be executed.

### Client Responsibilities:

Client will provide to Deloitte Tax, in a timely manner, necessary information needed to perform the requested services.

### Other Terms (if applicable):

#### CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Work Order, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Work Order, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above.

Very truly yours,                                    AGREED AND ACCEPTED

DELOITTE TAX LLP                                     Amyris, Inc., on behalf of itself and its subsidiaries
                                                     and/or affiliates

By: _____                        By:  *Elizabeth E. Dreyer* _____

        Matt Walton                                          Elizabeth Dreyer
        Partner

                                                     Title:  Chief Accounting Officer _____

                                                     Date:  9/6/23 _____

Exhibit A - Clean Beauty Collaborative, Inc

Listing of Federal and State Income Tax Returns Included in Engagement

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| Clean Beauty Collaborative, Inc | Federal | 1120 | U.S. Corporation Income Tax Return |
| Clean Beauty Collaborative, Inc | California | 100 | California Corporation Franchise or Income Tax Return |
| Clean Beauty Collaborative, Inc | Florida | F-1120 | Florida Corporate Income/Tax Franchise Return |
| Clean Beauty Collaborative, Inc | New York State | CT-3 | General Business Corporation Franchise Tax Return |
| Clean Beauty Collaborative, Inc | New York State | CT-3-M | General Business Corporation Franchise Tax Return |
| Clean Beauty Collaborative, Inc | New York City | NYC-2 | Business Corporation Tax Return |
| Clean Beauty Collaborative, Inc | Texas | Form 05-164 | Texas Franchise Tax Report |

Exhibit A
EcoFAB, LLC
Work Order
September 5, 2023

| | |
|---|---|
| **Work Order Number:** 2023-1065-3 (EcoFAB) | **Authorized Start Date:** upon execution of this work order |

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP ("Deloitte Tax") and EcoFAB, LLC ("Client") dated March 22, 2022.

**Description of Services:**

Deloitte Tax will prepare 2022 and 2023 federal and state income tax returns, extensions, and any estimate payments ("tax returns") identified in Exhibit A, Listing of Income Tax Returns Included in Engagement, attached to this Work Order and incorporated herein by reference.

**Extensions:**
In addition to the preparation of Client's 2022 and 2023 tax returns, Deloitte Tax will assist in calculating the amounts of extension payments and preparing the extension requests for the 2022 and 2023 tax returns identified in Exhibit A.

**Estimated Taxes:**
Deloitte Tax has not been engaged to prepare any quarterly estimated tax payments for the 2023 or 2024 tax year. You have assumed responsibility for the preparation of these filings. If you need assistance with these filings, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

**Delinquent Tax Returns:**
You acknowledge that many of the above-described income tax returns that you are engaging Deloitte Tax to prepare under this Work Order are already late and will be filed by you late. Consequently, you recognize that your late filing of these returns may result in the imposition of additional taxes, penalties (which may be significant), or interest relating to those returns. You further understand and acknowledge by signing this Work Order that Deloitte Tax is not, nor shall ever be, responsible for any such claims, liabilities or expenses relating to the "late-filing" by you of these returns.

**Foreign Bank Account Reporting:**
If Client has foreign bank accounts, investment accounts, partnerships or similar assets, or if Client has signature or similar authority over these types of accounts or investments (whether owned by Client or by others), Client may have to file a FinCEN Form 114, Report of Foreign Bank and Financial Accounts. Unless outlined above or the subject of a separate engagement letter, the Deloitte Tax return preparation Services that are the subject of this Engagement Letter do not include the preparation of any FinCEN Forms 114, which must be received by the Department of Treasury by April 18, 2023 with an automatic extension available until October 16, 2023. If assistance with these filings is needed, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

**Electronic Return Filing:**
Client has engaged Deloitte Tax to electronically file ("e-file") its federal and state income tax returns. Deloitte Tax will transmit the tax return(s) in the form of electronic files as authorized by the Client. In order for Deloitte

Tax to e-file Client's returns, Client must provide signed e-file authorizations to Deloitte Tax at least seven (7) days prior to transmission to the IRS and states indicated. Upon receipt of the signed e-file authorizations, Deloitte Tax will transmit the electronic files without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. The receipt of the signed e-file authorizations will be deemed by Deloitte Tax as authorization by Client to e-file Client's returns. Client retains responsibility for compliance with any electronic funds transfer requirements that may apply to the payment of applicable taxes.

## Electronic Funds Withdrawal

The IRS allows for payment of federal income taxes due or estimated tax payments via electronic funds withdrawal ("EFW"). In addition, certain states provide or mandate EFW for payment of taxes due and/or estimated tax payments. You have requested that Deloitte Tax provide assistance in connection with your use of EFW. Our assistance will be limited to entering the requisite bank account information, tax payment amount, etc. ("EFW Information") into the tax compliance software used to prepare your Returns. Your signed approval for Deloitte Tax to transmit your Returns will serve as your acknowledgement that the EFW Information is correct. Deloitte Tax will transmit the EFW Information to the IRS and state authorities as required without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. You retain responsibility for bank account accessibility and for confirming that the necessary funds are available in your bank account to pay the taxes due on the date prescribed for withdrawal, including those for quarterly estimated taxes. Deloitte Tax assumes no responsibility for any interest or penalties arising from your use of EFW under this Engagement Letter. Deloitte Tax will not remind you of future quarterly estimated tax payments that you have directed to be withdrawn by taxing authorities using EFW.

## Engagement Technology:

In providing the Services, we expect to utilize our innovative cloud-based solution, Intela, to facilitate efficient communication between Client's team and ours and streamline the process associated with requesting and receiving the data necessary for our Services. For additional information about Intela, please contact your Deloitte Tax engagement team.

## Potential Impact of U.S. Supreme Court Decision in *Wayfair*

In light of the Court's statement in *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018) ("*Wayfair*") that physical presence is not a necessary element for "substantial nexus" , guidance from the Multistate Tax Commission, and the potential state adoption and/or application of their guidance (e.g., California Technical Advice Memorandum 2022-01), Client may need to revisit positions it may have historically taken regarding income/franchise tax nexus. As a result, the scope of our Services may need to be expanded to include a nexus review for additional filings. Deloitte Tax has not been engaged to perform a nexus review or consulting services. If you need assistance with these services, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

## Potential Impact of State Elective Pass-Through Entity Taxes

Many states have enacted an elective state pass-through entity income tax. Client may need to evaluate whether to make the election, if available in states listed in Exhibit A. The scope of our Services may need to be expanded to include an analysis of whether to make the applicable elections. Such services will be the subject of a separate written agreement between Client and Deloitte Tax.

## Changes in reporting requirements on Form 1065 and Schedules K-1, K-2 and K-3 and related State/Local Returns

The IRS has incorporated several significant changes to the Form 1065 Schedule K-1 reporting requirements since the 2019 year, including:

- Tax basis capital account for each partner starting with the 2020 tax year;

- A partner's amount of net unrecognized built-in gain (BIG) or loss (BIL) under section 704(c);
- Codes for adjustments to basis made under section 743;
- Disclosure of decreases in a partner's share of profit, loss, or capital sharing due to a sale or exchange of the interest in the partnership;
- A breakout between guaranteed payments for services and guaranteed payments for use of capital;
- Check boxes for noting whether there is more than one activity for purposes of sections 465 and 469;
- Additional section 465 at-risk reporting starting with the 2020 tax year;
- Potential additional Schedule K-1 footnote reporting for taxpayers who either want to follow or are required to follow provisions in final and/or proposed regulations (e.g., section 163(j), section 1061);
- Required reporting of section 751 "hot asset" information to partners who transfer a partnership interest; and
- Additional changes that may be made to the 2022 Form 1065 and its related Instructions.

In addition, beginning with tax year 2021, Schedules K-2 and K-3 apply to any persons required to file Form 1065, Form 1120-S, or Form 8865 if the entity for which the form is being filed has items of international tax relevance (generally foreign activities or foreign partners – direct or indirect). The information required on these schedules may include information that has not previously been required to be reported. Compliance with this reporting requirement likely will require additional analysis and time to complete. Penalties may apply for filing Form 1065, Form 1120-S, or Form 8865 without all required information or for furnishing Schedule K-3 to partners or shareholders without all required information. Note that new Schedules K-2 and K-3 **do not** replace existing US international tax information reporting requirements of the partnership, S corporation, or US persons required to file Form 8865, Form 5471, or Form 8621.

In order to gather the required information to meet the IRS's (and any applicable state and/or local jurisdictions) reporting requirements on Schedule K-1, Schedules K-2 and K-3, and prepare the updated forms, we anticipate that we will incur additional hours for services above and beyond the base fees included herein and which cannot be estimated at this time. While our fees for these additional hours will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, the specific scope of services needed to assist Client with these requirements will depend upon the information that Client has historically tracked and maintained. Once determined, the actual scope of services to be performed, and the corresponding fees, will be mutually agreed upon between Client and Deloitte Tax, and evidenced by an additional engagement letter or an addendum to this Work Order prior to commencement of those Services.

The enactment of the Inflation Reduction Act of 2022 may have an impact on IRS (and applicable state and/or local jurisdictions) reporting requirements for Form 1065 and Schedules K-1, K-2 and K-3. We anticipate that we may incur additional hours for services above and beyond the base fees included herein and which cannot be estimated at this time. *See* "Unanticipated Out-of-Scope Services," below.

## TAX POSITIONS, POTENTIAL PENALTIES, TAXING AUTHORITY AUDITS

In accordance with our professional standards, while in the course of performing our Services should Deloitte Tax become aware of tax return positions for which either Client or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss with Client these positions including how any such penalties may be avoided through adequate disclosures to taxing authorities. Client should be aware that as a tax return preparer, Deloitte Tax may be required to satisfy disclosure requirements that may exceed those applicable to Client.

Our Services do not include representation of you in administrative taxing authority proceedings. However, Deloitte Tax would generally be willing to represent you in such proceedings for an additional fee that is mutually agreed upon.

## FEES AND EXPENSES

The Deloitte Tax fees for the preparation of the tax returns, including preparation of extension requests and quarterly estimates, are $25,000. Deloitte Tax will also bill you (i) reasonable out-of-pocket expenses and (ii) an allocation of estimated administrative and technology costs incurred (e.g., tax technology and processing support activities, research materials, etc.) equal to five (5) percent of professional fees. If Deloitte Tax finds that there is an increased level of complexity or if additional services are necessary in order to complete the returns outlined in Exhibit A, Deloitte Tax will contact you to discuss the billing arrangement related to such out-of-scope services.

Additionally, Deloitte Tax estimates that the fee for the preparation of additional state and local tax returns not listed on Exhibit A will be $1,500 for each separate return and between $1,500 and $2,500 for each combined return based on the level of information requested on the tax return. Deloitte Tax will prepare such additional state and local tax returns as requested by Client.

### Impact on Fees Due to Failure to Provide Requested Information

Deloitte Tax assumes that Client will provide timely and complete information as requested, including complete trial balances and reconciliations of the trial balances to the audited financial statements, state apportionment information that reconciles to Client trial balances, state payment/overpayment carryforward information (including adjustments for notices), depreciation reports and timely approval and authorization for a particular task. In the event that Client is unable to provide requested information in a manner suitable to prepare the returns or approval and authorization for a particular task by agreed-upon deadlines, Deloitte Tax may incur additional time necessary to analyze the required information or perform the particular task, resulting in an increase to our overall fees. To the extent the charges for these additional services will exceed 10% of the overall fees for this engagement, Deloitte Tax will inform Client prior to incurring such additional time.

## UNANTICIPATED OUT-OF-SCOPE SERVICES

In the event there is a mutually agreed upon change in the scope of our services for any other reason (e.g., new legislation, changes in the number of entities or tax returns included in the engagement, a need to file amended federal or state tax returns, specified tax reporting for transactions arising in the year such as dispositions and acquisitions and internal entity realignment or reorganizations (including relevant elections and statements), significant intercompany transactions, debt modifications, reportable transactions, expansion of the requirements or complexities with electronically filing tax returns, regulatory changes in filing requirements, analysis and tracking of state attributes that have carryover amounts, separate computations of attribute allocations to joining and departing members of the consolidated group and/or the limitations thereon, or other items that would impact the amount of time incurred to perform the Services as currently contemplated), it may be necessary to discuss a change in our fee estimate with you. Our fees for such out-of-scope services will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved. Deloitte Tax will bring these items to Client's attention and will discuss the associated additional fees for such out-of-scope services prior to proceeding.

Additionally, state tax jurisdictions may continue to modify their laws to address tax law changes and mandated informational reporting. It is possible that a state may adopt retroactive legislation after the filing of the 2022

tax return(s). Therefore, consideration may need to be given to filing an initial original return followed by an amended return once the state has issued final guidance.

Subject to any applicable Bankruptcy Court (as defined below) orders, rules or procedures, Deloitte Tax will bill Client every four weeks as the Services progress.

The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the tax authorities, nor are those amounts contingent or refundable.

Client agrees that Client will promptly seek the Bankruptcy Court's approval of this engagement. The supporting documents submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects.  In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this Work Order, or (b) the engagement is denied by the Bankruptcy Court. In such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any documentation filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Chapter 11 proceeding.

For purposes of this Work Order, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

### IRC Section 174 expenditure calculation
Any calculations or analyses related to the mandatory amortization of IRC Section 174 expenditures for taxable years beginning after December 31, 2021, as per the Tax Cuts and Jobs Act ("TCJA") are specifically excluded from our scope of services. For any such assistance a separate Engagement letter or Work Order should be executed.

### Client Responsibilities:

Client will provide to Deloitte Tax, in a timely manner, necessary information needed to perform the requested services.

### Other Terms (if applicable):

### CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Work Order, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Work Order, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's

tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Very truly yours,                                    AGREED AND ACCEPTED

DELOITTE TAX LLP                                     Amyris, Inc., on behalf of itself and its subsidiaries
                                                     and/or affiliates

By: _____                         By: _Elizabeth E. Dreyer_____
      Matt Walton                                          Elizabeth Dreyer
      Partner


                                                     Title: _Chief Accounting Officer_____


                                                     Date: _9/6/23_____

Exhibit A - EcoFAB, LLC

Listing of Federal and State Income Tax Returns Included in Engagement

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| EcoFAB, LLC | Federal | 1065 | U.S. Return of Partnership Income |
| EcoFAB, LLC | California | 568 | Limited Liability Company Return of Income |

Amyris, Inc.
Work Order – 2022 and 2023 ASC 740 Preparation Services
March 22, 2022

---

| Work Order Number: 2022 and 2023 Provision | Authorized Start Date: Upon Execution of Work Order |
| --- | --- |

---

This work order ("Work Order") incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP ("Deloitte Tax") and **Amyris, Inc.** and its subsidiaries and/or affiliates ("Client") dated March 22, 2022.

## Description of Services:

Deloitte Tax will provide tax advisory services ("Services") in connection with the calculation of Client's income tax provision under the provisions of ASC 740, *Income Taxes*, ("ASC 740") for the year ending December 31, 2022 and December 31, 2023, and the interim periods ending March 31, 2022, June 30, 2022, September 30, 2022, March 31, 2023, June 30, 2023, and September 30, 2023. This Work Order describes the scope of the Deloitte Tax Services, the respective responsibilities of Deloitte Tax and Client relating to this engagement and the fees Deloitte Tax expects to charge.

The Services to be provided by Deloitte Tax pursuant to this Work Order, as described in Exhibit A, Services to be Performed, attached to this Work Order and incorporated herein by reference, are to be performed subject to Client's review and approval. The scope of the Services has been established based on discussions with you. Determination as to the sufficiency of the Services for purposes of meeting financial reporting requirements is solely the responsibility of Client, as discussed below. In addition, the scope of the Services may be changed or modified by mutual agreement between Client and Deloitte Tax if, for example, unforeseen circumstances arise. Deloitte Tax will promptly discuss any such circumstances it notes with Client and, likewise, Client agrees to promptly notify Deloitte Tax if Client believes that modifications to the scope of the Services are necessary.

The work product under this engagement will consist of providing computations, verbal comments and observations regarding Client's ASC 740 related computations and documentation reflecting collaboration between Client and Deloitte Tax personnel. Such computations and documentation will be prepared by Deloitte Tax personnel for Client's consideration. Client's management will be responsible for reviewing and making all decisions with respect to approval, potential modifications and ultimate acceptance of the computations.

## Potential Impact of Tax Reform

Recently enacted tax reform measures have altered overall tax rates and numerous other areas of the Internal Revenue Code, including areas such as exclusions and deductions, cost recovery, credits, compensation, and taxation of foreign income and foreign persons. These tax reform measures could have a significant impact on Client's current and future tax obligations. As the full impact of tax reform on Client's overall tax situation and this engagement is analyzed, the scope of our Services may need to change and it may be necessary to discuss a change in our fee estimate with you. Our fees for such out-of-scope services will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved. We will discuss such additional services with Client prior to proceeding.

Deloitte Tax may also prepare a summary memo and/or memoranda specific to certain components of the income tax provision and related balance sheet income tax accounts, documenting Client management's determination of evidence supporting Client's computations e.g., valuation allowance analysis, indefinite

reinvestment assertions, uncertain tax positions, etc. With respect to the memoranda provided, Deloitte Tax does not assume any management responsibility. Client's management will be responsible for reviewing and making all decisions with respect to approval, potential modifications and ultimate acceptance of any memoranda.

## Acknowledgements and Agreements:

Client specifically acknowledges and agrees to the following:

- Client acknowledges that the performance of certain Services described herein may cause affiliates of Deloitte Tax, including Deloitte & Touche LLP ("Deloitte & Touche"), to not be independent with respect to Client's financial statements for the calendar or fiscal year to which the Services relate or in which the Services are performed. Accordingly, should Client wish to engage Deloitte & Touche to audit said financial statements, Deloitte & Touche may be required to decline that engagement.

- All management decisions and final conclusions reached in connection with this engagement will be the responsibility of Client. Deloitte Tax will not perform any management functions, make any management decisions, or perform in a capacity equivalent to that of an employee of Client.

- Client will designate an individual with suitable skill, knowledge, and/or experience, preferably within senior management, to serve as the project manager and oversee the Services. Also, Client acknowledges that the Services do not include the recording of any amounts in Client's books or records. All amounts derived from the performance of the Services will be reviewed and approved by, and will be the responsibility of, Client's management.

- Client will advise Deloitte Tax of any past or current differences of opinion between Client and its independent auditors concerning the proper tax or accounting treatment for a particular item or circumstance that pertains to ASC 740. Deloitte Tax has no responsibility for any disagreements between Client and Client's independent auditors or any successor independent auditors related to Client's accounting or disclosure conclusions, whether or not such conclusions of Client are related to the Services.

- Client will consult with its independent auditors and be solely responsible for all decisions regarding the accounting treatment of any item discussed during this engagement. Client will be solely responsible for all decisions regarding its compliance with accounting principles generally accepted in the United States of America ("GAAP"). Client is solely responsible for the past, present, and future determination of the appropriate accounting treatment and/or financial statement presentation of Client's books and records.

- Client has informed its independent auditors of the Services and, if appropriate, will facilitate meetings, discussions, or other communications between Deloitte Tax and Client's independent auditors. The purpose of such communications will be to ensure that both Deloitte Tax and Client's independent auditors are fully aware of all facts and circumstances that may be relevant to Client's accounting for income taxes under ASC 740.

- The Services will be performed in accordance with the *Statement on Standards for Consulting Services* issued by the American Institute of Certified Public Accountants ("AICPA"). However, the performance of the Services does not constitute an engagement to provide audit, compilation, review or attest services as described in the pronouncements on professional standards issued by the AICPA or the U.S. Public Company Accounting Oversight Board and, therefore, Deloitte Tax will not express an opinion or any other form of assurance with respect to any matters including, without limitation, compliance with GAAP.

- Client will not seek Deloitte Tax's opinion, and Deloitte Tax will not provide any such opinion, on the application of accounting principles in connection with this engagement. Furthermore, Client management agrees that it will not represent to any third parties that it has obtained such opinion from Deloitte Tax. If such opinion is requested, any such services would be subject to a determination by Deloitte & Touche that such services can be rendered, additional client acceptance procedures and a separate signed engagement letter with terms and conditions that are acceptable to Deloitte & Touche and Client. Deloitte & Touche is under no obligation to perform such an engagement, if requested.

- The responsibility of Deloitte Tax for purposes of this Work Order is limited to performing the Services specified above or otherwise agreed to in writing, subject to the limitations contained herein. This engagement cannot be relied on to disclose internal control weaknesses, errors, or fraud should they exist. Deloitte Tax has no responsibility for updating the Services performed or for performing any additional services, except as agreed to in writing with Client.

- Client will be solely responsible for the design and operation of effective internal controls and for complying with all applicable laws and regulations. In the performance of the Services, Deloitte Tax will not perform any evaluation of internal controls and procedures for financial reporting upon which Client's management can base its assertion in connection with the Sarbanes-Oxley Act of 2002 or related rules or regulations. In addition, Deloitte Tax will not provide any legal advice or conduct a legal review of any of Client's documents, records or policies.

- Client will be solely responsible for providing accurate and complete information requested by Deloitte Tax. Deloitte Tax has no responsibility for the accuracy or completeness of the information provided by or on behalf of Client.

- The scope of Services may include assistance, in addition to computational assistance, with respect to the Client's identification, recognition or measurement of Uncertain Tax Positions ("UTPs") pursuant to ASC 740 (see Exhibit A). If our scope of Services includes this assistance, Deloitte Tax will undertake an effort to identify material UTPs meeting the criteria established by Client. However, Deloitte Tax cannot, and does not, warrant or represent to Client that the Services will result in the identification of all such UTPs (including, but not limited to, any potential error, tax issue, tax disclosure, tax election, tax filing requirement or notice requirement).

- Client is solely responsible for providing support for opening deferred tax assets and liabilities. Deloitte Tax has no responsibility for the accuracy or completeness of the information provided. Deloitte Tax will consider supporting documentation and advise Client whether such documentation, may be appropriate to support ending deferred taxes. If the Client seeks to engage Deloitte Tax for Services for assistance in computations related to opening deferred tax balances, a separate work order should be prepared.

- Any information provided to Client as a result of the Services described herein has been prepared at the direction of, and is intended solely for the use of Client and is not intended to be used by or for the benefit of, or relied upon by or for the benefit of, any third party.

- Any information provided to Client as a result of the Services described herein is subject to the terms and conditions set forth in this Work Order, including, without limitation, the scope limitations and Client's responsibilities set forth therein.

Amyris, Inc.
Work Order 2022 and 2023 Provision
Page 4 of 7

- Any information provided to Client as a result of the Services described herein does not constitute an opinion or any other form of assurance with respect to any matter, including, without limitation, the application of any accounting principles under the requirements of AU 625, Reports on the Application of Accounting Principles, and is intended for Client's review, consideration, possible modification and ultimate approval and acceptance as Client's own document.

- The workpapers prepared by Deloitte Tax in connection with this engagement are the property of Deloitte Tax. Upon completion of the Services, Deloitte Tax will provide Client management with copies of any and all workpapers that Deloitte Tax considers nonproprietary. Client may provide access to such copies to Client's independent auditors in connection with their audit of Client's financial statements. However, third parties may not be provided access to such copies without prior written consent from Deloitte Tax.

**Engagement Personnel:**

Matt Walton, as your Lead Tax Partner, will be responsible for your overall satisfaction with the Deloitte Tax engagement, team and results.

Jessie Xu, Tasx Senior Manager, will be the overall Deloitte Tax engagement Manager and will be responsible for the overall quality and timeliness of the Services as well as managing the day-to-day Deloitte Tax engagement activities.

Other Deloitte Tax professionals, who will be identified during the course of the engagement, will provide additional support as needed throughout the term of the engagement.

---

**Estimated Timing for Services and Deliverables (if any):**

Deloitte Tax is prepared to begin and deliver the Services at mutually agreeable dates upon execution of this Work Order.

---

**Fees and Expenses (if different from the provisions stated in the Engagement Letter):**

The Deloitte Tax fees for the Services are based on time incurred at the following hourly rates not recommended to be less than 70% of standard, plus (i) reasonable out-of-pocket expenses and (ii) an allocation of estimated administrative and technology costs incurred (e.g., tax technology, research materials, etc.) equal to five (5) percent of professional fees:

|  | Rates |
|---|---|
| Partner/Director | $879 |
| Senior Manager | $788 |
| Manager | $665 |
| Senior Staff | $553 |
| Associate | $452 |

Based on discussions with you, and the scope of Services as detailed on Exhibit A, we estimate that our professional fees for assistance with the FY2022 and FY2023 year-end provision will be between $93,500 and $148,500. We estimate that our fee for assistance with the interim tax provision for the first three quarters of FY2022 and FY2023 will be between $16,500 and $27,500 per quarter, plus reasonable out-of-pocket expenses.

Amyris, Inc.
Work Order 2022 and 2023 Provision
Page 5 of 7

We expect our these fees to increase commencerate with the annual Consumer Price Index. To the extent that the scope of our work changes, we will discuss those changes with you and mutual agree on the impact on our fees.

For each year involved, Deloitte Tax will bill 50% of estimated fees and expenses for the Services as outlined in this agreement upon commencement of the Services, and the remainder will be billed every four weeks as the Services progress. To the extent that the scope of our work changes, we will discuss those changes with you and mutual agree on the impact on our fees.

---

**Other Terms (if applicable):**

CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Work Order, (ii) derived or generated by Deloitte Tax from information described in (i) above, or (iii) associated with prior years' tax return information in possession of Deloitte Tax may, for a period of up to eight (8) years from the date of this Work Order, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Work Order, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above.

**Deloitte Tax LLP**                                    Amyris, Inc., on behalf of itself and its subsidiaries
                                                         and/or affiliates

By: _____              By: _____

Printed                                                  Printed
Name: Matt Walton                                        Name: Tony Hughes

Title: Partner                                           Title: Chief Accounting Officer

Date:      March 22, 2022                                Date: 3/31/2022

Address: 225 West Santa Clara St., Suite 600             Address: 5885 Hollis Street, Suite 100

         San Jose, CA 95113                                       Emeryville, CA 94608

**Exhibit A – ASC 740 Preparation Services**
**Amyris, Inc.**
**Services to be Performed**

The Services that Deloitte Tax will provide pursuant to this Work Order include the following:

1.  Assist Client with the computation of its entries required to adjust the income tax account balances such that they are consistent with the tax return filed for the year ended December 31, 2021 and December 31, 2022.

2.  Assist Client with the computation of its federal, state and foreign current income tax receivable/payable balances as of December 31, 2022 and December 31, 2023.

3.  Assist Client in computing its federal, state and foreign current and deferred income tax expense or benefit for the year ended December 31, 2022 and December 31, 2023.

4.  Assist Client with its efforts to identify tax provision items to be recorded to equity (either additional paid in capital or other comprehensive income) for the year ended December 31, 2022 and December 31, 2023.

5.  Assist Client with the computation of its federal, state and foreign deferred income tax asset/liability balances as of December 31, 2022 and December 31, 2023.

6.  Provide observations and assist Client with its documentation regarding the Client's assessment of positive and negative evidence identified in connection with whether a valuation allowance is needed with respect to deferred tax assets.

7.  Provide observations and assist Client with its documentation regarding the Client's analysis of outside basis difference in a foreign subsidiary or foreign corporate joint venture that is essentially permanent in duration and whether a deferred tax liability should be recognized.

8.  Assist Client with its preparation of the income tax footnote and related disclosures for the year ended December 31, 2022 and December 31, 2023.

9.  Assist Client with its computation of amounts to be included in Client's interim financial statements for December 31, 2022 and December 31, 2023.

10. Provide observations associated with Client's assessment of its income tax consequences related to specific events and issues, including enacted and proposed law changes, planned or actual dispositions, corporate restructuring and reorganizations, jurisdictional, and intercompany transactions.

11. Assist Client in preparing Client materials, documents, presentations, etc. that it will use to communicate its tax posture from an income tax perspective to management and/or Client's Audit Committee/Board of Directors.

12. Assist Client with its efforts to analyze federal, state and foreign unrecognized tax benefits (tax, interest and penalties) as relates to the following:

    a.  Summarizing existing uncertain tax positions (recognition and measurement);

b.   Analyzing and documenting current year and prior year uncertain tax positions (including tax technical conclusions)

c.   Advise Client with its recording and disclosing of unrecognized tax benefit liability appropriately; and

d.   Assisting Client in documenting its procedures to support its process with respect to identification of uncertain tax positions.


The term "assist" as used above includes circumstances where Deloitte Tax may perform the work described subject to the review and approval of, and for use by, the person designated by Client, which will have overall responsibility for the work and the related results.

Deloitte Tax will meet with Client and its independent auditor, if appropriate, prior to providing any of the Services noted above to discuss any unusual or non-recurring transaction or circumstances for purposes of obtaining Client's direction and approval as to the proposed accounting and related documentation.

Amyris, Inc.
Work Order – 2022 and 2023 ASC 740 Preparation Services
March 22, 2022

| Work Order Number: 2022 and 2023 Provision | Authorized Start Date: Upon Execution of Work Order |
|---|---|

This work order ("Work Order") incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP ("Deloitte Tax") and **Amyris, Inc.** and its subsidiaries and/or affiliates ("Client") dated March 22, 2022.

Description of Services:

Deloitte Tax will provide tax advisory services ("Services") in connection with the calculation of Client's income tax provision under the provisions of ASC 740, *Income Taxes*, ("ASC 740") for the year ending December 31, 2022 and December 31, 2023, and the interim periods ending March 31, 2022, June 30, 2022, September 30, 2022, March 31, 2023, June 30, 2023, and September 30, 2023. This Work Order describes the scope of the Deloitte Tax Services, the respective responsibilities of Deloitte Tax and Client relating to this engagement and the fees Deloitte Tax expects to charge.

The Services to be provided by Deloitte Tax pursuant to this Work Order, as described in Exhibit A, Services to be Performed, attached to this Work Order and incorporated herein by reference, are to be performed subject to Client's review and approval. The scope of the Services has been established based on discussions with you. Determination as to the sufficiency of the Services for purposes of meeting financial reporting requirements is solely the responsibility of Client, as discussed below. In addition, the scope of the Services may be changed or modified by mutual agreement between Client and Deloitte Tax if, for example, unforeseen circumstances arise. Deloitte Tax will promptly discuss any such circumstances it notes with Client and, likewise, Client agrees to promptly notify Deloitte Tax if Client believes that modifications to the scope of the Services are necessary.

The work product under this engagement will consist of providing computations, verbal comments and observations regarding Client's ASC 740 related computations and documentation reflecting collaboration between Client and Deloitte Tax personnel. Such computations and documentation will be prepared by Deloitte Tax personnel for Client's consideration. Client's management will be responsible for reviewing and making all decisions with respect to approval, potential modifications and ultimate acceptance of the computations.

Potential Impact of Tax Reform
Recently enacted tax reform measures have altered overall tax rates and numerous other areas of the Internal Revenue Code, including areas such as exclusions and deductions, cost recovery, credits, compensation, and taxation of foreign income and foreign persons. These tax reform measures could have a significant impact on Client's current and future tax obligations. As the full impact of tax reform on Client's overall tax situation and this engagement is analyzed, the scope of our Services may need to change and it may be necessary to discuss a change in our fee estimate with you. Our fees for such out-of-scope services will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved. We will discuss such additional services with Client prior to proceeding.

Deloitte Tax may also prepare a summary memo and/or memoranda specific to certain components of the income tax provision and related balance sheet income tax accounts, documenting Client management's determination of evidence supporting Client's computations e.g., valuation allowance analysis, indefinite

Amyris, Inc.
Work Order 2022 and 2023 Provision
Page 2 of 7

reinvestment assertions, uncertain tax positions, etc. With respect to the memoranda provided, Deloitte Tax does not assume any management responsibility. Client's management will be responsible for reviewing and making all decisions with respect to approval, potential modifications and ultimate acceptance of any memoranda.

**Acknowledgements and Agreements:**

Client specifically acknowledges and agrees to the following:

- Client acknowledges that the performance of certain Services described herein may cause affiliates of Deloitte Tax, including Deloitte & Touche LLP ("Deloitte & Touche"), to not be independent with respect to Client's financial statements for the calendar or fiscal year to which the Services relate or in which the Services are performed. Accordingly, should Client wish to engage Deloitte & Touche to audit said financial statements, Deloitte & Touche may be required to decline that engagement.

- All management decisions and final conclusions reached in connection with this engagement will be the responsibility of Client. Deloitte Tax will not perform any management functions, make any management decisions, or perform in a capacity equivalent to that of an employee of Client.

- Client will designate an individual with suitable skill, knowledge, and/or experience, preferably within senior management, to serve as the project manager and oversee the Services. Also, Client acknowledges that the Services do not include the recording of any amounts in Client's books or records. All amounts derived from the performance of the Services will be reviewed and approved by, and will be the responsibility of, Client's management.

- Client will advise Deloitte Tax of any past or current differences of opinion between Client and its independent auditors concerning the proper tax or accounting treatment for a particular item or circumstance that pertains to ASC 740. Deloitte Tax has no responsibility for any disagreements between Client and Client's independent auditors or any successor independent auditors related to Client's accounting or disclosure conclusions, whether or not such conclusions of Client are related to the Services.

- Client will consult with its independent auditors and be solely responsible for all decisions regarding the accounting treatment of any item discussed during this engagement. Client will be solely responsible for all decisions regarding its compliance with accounting principles generally accepted in the United States of America ("GAAP"). Client is solely responsible for the past, present, and future determination of the appropriate accounting treatment and/or financial statement presentation of Client's books and records.

- Client has informed its independent auditors of the Services and, if appropriate, will facilitate meetings, discussions, or other communications between Deloitte Tax and Client's independent auditors. The purpose of such communications will be to ensure that both Deloitte Tax and Client's independent auditors are fully aware of all facts and circumstances that may be relevant to Client's accounting for income taxes under ASC 740.

- The Services will be performed in accordance with the *Statement on Standards for Consulting Services* issued by the American Institute of Certified Public Accountants ("AICPA"). However, the performance of the Services does not constitute an engagement to provide audit, compilation, review or attest services as described in the pronouncements on professional standards issued by the AICPA or the U.S. Public Company Accounting Oversight Board and, therefore, Deloitte Tax will not express an opinion or any other form of assurance with respect to any matters including, without limitation, compliance with GAAP.

- Client will not seek Deloitte Tax's opinion, and Deloitte Tax will not provide any such opinion, on the application of accounting principles in connection with this engagement. Furthermore, Client management agrees that it will not represent to any third parties that it has obtained such opinion from Deloitte Tax. If such opinion is requested, any such services would be subject to a determination by Deloitte & Touche that such services can be rendered, additional client acceptance procedures and a separate signed engagement letter with terms and conditions that are acceptable to Deloitte & Touche and Client. Deloitte & Touche is under no obligation to perform such an engagement, if requested.

- The responsibility of Deloitte Tax for purposes of this Work Order is limited to performing the Services specified above or otherwise agreed to in writing, subject to the limitations contained herein. This engagement cannot be relied on to disclose internal control weaknesses, errors, or fraud should they exist. Deloitte Tax has no responsibility for updating the Services performed or for performing any additional services, except as agreed to in writing with Client.

- Client will be solely responsible for the design and operation of effective internal controls and for complying with all applicable laws and regulations. In the performance of the Services, Deloitte Tax will not perform any evaluation of internal controls and procedures for financial reporting upon which Client's management can base its assertion in connection with the Sarbanes-Oxley Act of 2002 or related rules or regulations. In addition, Deloitte Tax will not provide any legal advice or conduct a legal review of any of Client's documents, records or policies.

- Client will be solely responsible for providing accurate and complete information requested by Deloitte Tax. Deloitte Tax has no responsibility for the accuracy or completeness of the information provided by or on behalf of Client.

- The scope of Services may include assistance, in addition to computational assistance, with respect to the Client's identification, recognition or measurement of Uncertain Tax Positions ("UTPs") pursuant to ASC 740 (see Exhibit A). If our scope of Services includes this assistance, Deloitte Tax will undertake an effort to identify material UTPs meeting the criteria established by Client. However, Deloitte Tax cannot, and does not, warrant or represent to Client that the Services will result in the identification of all such UTPs (including, but not limited to, any potential error, tax issue, tax disclosure, tax election, tax filing requirement or notice requirement).

- Client is solely responsible for providing support for opening deferred tax assets and liabilities. Deloitte Tax has no responsibility for the accuracy or completeness of the information provided. Deloitte Tax will consider supporting documentation and advise Client whether such documentation, may be appropriate to support ending deferred taxes. If the Client seeks to engage Deloitte Tax for Services for assistance in computations related to opening deferred tax balances, a separate work order should be prepared.

- Any information provided to Client as a result of the Services described herein has been prepared at the direction of, and is intended solely for the use of Client and is not intended to be used by or for the benefit of, or relied upon by or for the benefit of, any third party.

- Any information provided to Client as a result of the Services described herein is subject to the terms and conditions set forth in this Work Order, including, without limitation, the scope limitations and Client's responsibilities set forth therein.

- Any information provided to Client as a result of the Services described herein does not constitute an opinion or any other form of assurance with respect to any matter, including, without limitation, the application of any accounting principles under the requirements of AU 625, Reports on the Application of Accounting Principles, and is intended for Client's review, consideration, possible modification and ultimate approval and acceptance as Client's own document.

- The workpapers prepared by Deloitte Tax in connection with this engagement are the property of Deloitte Tax. Upon completion of the Services, Deloitte Tax will provide Client management with copies of any and all workpapers that Deloitte Tax considers nonproprietary. Client may provide access to such copies to Client's independent auditors in connection with their audit of Client's financial statements. However, third parties may not be provided access to such copies without prior written consent from Deloitte Tax.

## Engagement Personnel:

Matt Walton, as your Lead Tax Partner, will be responsible for your overall satisfaction with the Deloitte Tax engagement, team and results.

Jessie Xu, Tasx Senior Manager, will be the overall Deloitte Tax engagement Manager and will be responsible for the overall quality and timeliness of the Services as well as managing the day-to-day Deloitte Tax engagement activities.

Other Deloitte Tax professionals, who will be identified during the course of the engagement, will provide additional support as needed throughout the term of the engagement.

## Estimated Timing for Services and Deliverables (if any):

Deloitte Tax is prepared to begin and deliver the Services at mutually agreeable dates upon execution of this Work Order.

## Fees and Expenses (if different from the provisions stated in the Engagement Letter):

The Deloitte Tax fees for the Services are based on time incurred at the following hourly rates not recommended to be less than 70% of standard, plus (i) reasonable out-of-pocket expenses and (ii) an allocation of estimated administrative and technology costs incurred (e.g., tax technology, research materials, etc.) equal to five (5) percent of professional fees:

|  | Rates |
| --- | --- |
| Partner/Director | $879 |
| Senior Manager | $788 |
| Manager | $665 |
| Senior Staff | $553 |
| Associate | $452 |

Based on discussions with you, and the scope of Services as detailed on Exhibit A, we estimate that our professional fees for assistance with the FY2022 and FY2023 year-end provision will be between $93,500 and $148,500. We estimate that our fee for assistance with the interim tax provision for the first three quarters of FY2022 and FY2023 will be between $16,500 and $27,500 per quarter, plus reasonable out-of-pocket expenses.

Amyris, Inc.
Work Order 2022 and 2023 Provision
Page 5 of 7

We expect our these fees to increase commencerate with the annual Consumer Price Index. To the extent that the scope of our work changes, we will discuss those changes with you and mutual agree on the impact on our fees.

For each year involved, Deloitte Tax will bill 50% of estimated fees and expenses for the Services as outlined in this agreement upon commencement of the Services, and the remainder will be billed every four weeks as the Services progress. To the extent that the scope of our work changes, we will discuss those changes with you and mutual agree on the impact on our fees.

---

**Other Terms (if applicable):**

CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Work Order, (ii) derived or generated by Deloitte Tax from information described in (i) above, or (iii) associated with prior years' tax return information in possession of Deloitte Tax may, for a period of up to eight (8) years from the date of this Work Order, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Work Order, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above.

**Deloitte Tax LLP**

By: _____

Printed
Name: Matt Walton

Title: Partner

Date: March 22, 2022

Address: 225 West Santa Clara St., Suite 600

San Jose, CA 95113

**Amyris, Inc., on behalf of itself and its subsidiaries and/or affiliates**

By: _____

Printed
Name: Tony Hughes

Title: Chief Accounting Officer

Date: 3/31/2022

Address: 5885 Hollis Street, Suite 100

Emeryville, CA 94608

**Exhibit A – ASC 740 Preparation Services**
**Amyris, Inc.**
**Services to be Performed**

The Services that Deloitte Tax will provide pursuant to this Work Order include the following:

1.  Assist Client with the computation of its entries required to adjust the income tax account balances such that they are consistent with the tax return filed for the year ended December 31, 2021 and December 31, 2022.

2.  Assist Client with the computation of its federal, state and foreign current income tax receivable/payable balances as of December 31, 2022 and December 31, 2023.

3.  Assist Client in computing its federal, state and foreign current and deferred income tax expense or benefit for the year ended December 31, 2022 and December 31, 2023.

4.  Assist Client with its efforts to identify tax provision items to be recorded to equity (either additional paid in capital or other comprehensive income) for the year ended December 31, 2022 and December 31, 2023.

5.  Assist Client with the computation of its federal, state and foreign deferred income tax asset/liability balances as of December 31, 2022 and December 31, 2023.

6.  Provide observations and assist Client with its documentation regarding the Client's assessment of positive and negative evidence identified in connection with whether a valuation allowance is needed with respect to deferred tax assets.

7.  Provide observations and assist Client with its documentation regarding the Client's analysis of outside basis difference in a foreign subsidiary or foreign corporate joint venture that is essentially permanent in duration and whether a deferred tax liability should be recognized.

8.  Assist Client with its preparation of the income tax footnote and related disclosures for the year ended December 31, 2022 and December 31, 2023.

9.  Assist Client with its computation of amounts to be included in Client's interim financial statements for December 31, 2022 and December 31, 2023.

10. Provide observations associated with Client's assessment of its income tax consequences related to specific events and issues, including enacted and proposed law changes, planned or actual dispositions, corporate restructuring and reorganizations, jurisdictional, and intercompany transactions.

11. Assist Client in preparing Client materials, documents, presentations, etc. that it will use to communicate its tax posture from an income tax perspective to management and/or Client's Audit Committee/Board of Directors.

12. Assist Client with its efforts to analyze federal, state and foreign unrecognized tax benefits (tax, interest and penalties) as relates to the following:

    a.  Summarizing existing uncertain tax positions (recognition and measurement);

b.  Analyzing and documenting current year and prior year uncertain tax positions (including tax technical conclusions)

c.  Advise Client with its recording and disclosing of unrecognized tax benefit liability appropriately; and

d.  Assisting Client in documenting its procedures to support its process with respect to identification of uncertain tax positions.

The term "assist" as used above includes circumstances where Deloitte Tax may perform the work described subject to the review and approval of, and for use by, the person designated by Client, which will have overall responsibility for the work and the related results.

Deloitte Tax will meet with Client and its independent auditor, if appropriate, prior to providing any of the Services noted above to discuss any unusual or non-recurring transaction or circumstances for purposes of obtaining Client's direction and approval as to the proposed accounting and related documentation.



**Deloitte Tax LLP**
225 West Santa Clara, St., Ste 600
San Jose, CA 95113-1728
USA

Tel: +1 408 704 4000
www.deloitte.com

March 22, 2022

Mr. Tony Hughes
Chief Accounting Officer
Amyris, Inc.
5885 Hollis Street, Suite 100
Emeryville, CA 94608

**RE: General Tax Consulting through April 30, 2024**

Dear Tony:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax" or "our") for tax advisory services ("Services") for Amyris, Inc. and its subsidiaries and/or affiliates ("Client") during the period through April 30, 2024 or other appropriate date. Deloitte Tax is willing to provide Services on federal, foreign, state and local tax matters as requested by the Client.

This letter is intended to establish an overall contractual framework for the provision and delivery of Services to Client, describe the respective responsibilities of Deloitte Tax and Client relating to the Services and the fees Deloitte Tax expects to charge. This letter does not commit Client to purchase any Services and does not commit Deloitte Tax to provide any Services. Client only becomes committed to purchasing, and Deloitte Tax only becomes committed to providing, Services when such Services are (i) requested by Client and (ii) agreed to by Deloitte Tax in a Work Order (described below) or otherwise. If/when Deloitte Tax is contacted and agrees to be engaged to provide specific Services, this letter shall be considered the engagement letter ("Engagement Letter").

**SCOPE OF SERVICES**

Client and Deloitte Tax agree that the terms of this Engagement Letter will apply to all Services to be provided by Deloitte Tax to Client during the period set forth above, unless such services are the subject of a separate written agreement entered into between Deloitte Tax and Client.

As the specific Service Client wishes to engage Deloitte Tax to provide is identified, Client and Deloitte Tax will execute a separate work order ("Work Order") when such Service involves contemplated fees in excess of $25,000. The request for Services should be in a form of a Work Order as set forth in Exhibit A attached to this Engagement Letter (or a substantially similar form). The request for Services should reference this Engagement Letter and clearly describe the specific details of the Services Deloitte Tax will be engaged to provide pursuant to the Work Order (including scope of work, deliverables, timing, Client responsibilities and fees).

It is contemplated that the Services requested from Deloitte Tax may include oral and written opinions, consulting, recommendations and other communications rendered in response to specific tax questions posed by Client. Deloitte Tax's analysis and response to these tax questions may be based upon a review of various documentation including, but not limited to, legal opinions, books and records (collectively, "books and

Amyris, Inc.
March 22, 2022
Page 2

records") relevant to Client's transactions and business activity that Client provides to Deloitte Tax. With respect to such Services, Deloitte Tax is entitled to assume without independent verification the accuracy of all representations, assumptions, information and data provided by Client and its representatives. Deloitte Tax may ask Client to clarify or supplement information provided in this context.

## TAX POSITIONS, POTENTIAL PENALTIES, TAXING AUTHORITY AUDITS

In accordance with our professional standards, while in the course of performing our Services should Deloitte Tax become aware of tax return positions for which either Client or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss with Client these positions including how any such penalties may be avoided through adequate disclosures to taxing authorities. Client should be aware that as a tax return preparer, Deloitte Tax may be required to satisfy disclosure requirements that may exceed those applicable to Client.

## ACKNOWLEDGMENTS AND AGREEMENTS

The Services will be performed in accordance with the *Statement on Standards for Consulting Services* established by the American Institute of Certified Public Accountants ("AICPA"). Services to be performed by Deloitte Tax will be established by mutual agreement and can be changed or modified in the same manner. Deloitte Tax will promptly inform Client of any circumstances that warrant a change in the scope of the specific services to be provided, and similarly, Client agrees to notify Deloitte Tax promptly if modifications to the Services are requested.

Client acknowledges and agrees that the Services provided pursuant to this Engagement Letter will be based solely upon:

(a) Client's understanding that Deloitte Tax will only be responsible to provide tax advice with respect to the specific matter, transaction or question actually presented by Client, including the type of tax and the taxing jurisdiction specifically identified by Client (e.g., federal, foreign, state, local, sales, excise, etc.); and

(b) Client's understanding that Deloitte Tax, as a result of providing such tax advice, is under no obligation to represent Client with respect to any such challenge or an administrative or judicial challenge thereof. Deloitte Tax would generally be available to represent Client before the appropriate taxing authorities, if permissible, for an additional fee that is mutually agreed upon.

All rights and obligations of Deloitte Tax and Client described in this Engagement Letter will apply to each Work Order. In the event of any conflict or inconsistency between the terms of this Engagement Letter and the terms of any Work Order, the terms of this Engagement Letter shall control. Notwithstanding the immediately preceding sentence, in the event that a Work Order expressly provides that certain provisions therein shall control over specified provisions of this Engagement Letter, then, to the extent that such provisions of the Work Order conflict or are inconsistent with the specified provisions of this Engagement Letter, such provisions of the Work Order shall control. If a Work Order is not executed, as previously described, the terms of this Engagement Letter will apply to the Services provided.

## CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i)

above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Engagement Letter, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

## FEES AND EXPENSES

The Deloitte Tax fees for Services, other than for Services which are the subject of a separate engagement letter with a different fee arrangement or a Work Order, will be based on the amount of professional time incurred and our agreed-upon hourly rates, which will vary depending upon the experience level of the professionals involved. Deloitte Tax will also bill (i) reasonable out-of-pocket expenses and (ii) an allocation of estimated administrative and technology costs incurred (e.g., tax technology, research materials, etc.) equal to five (5) percent of professional fees. Hourly rates of our Washington National Tax and other subject matter specialists may exceed the hourly rates of our local office professionals. Reasonable out-of-pocket expenses incurred and allocated costs are reflected as additional amounts on the bills.

Our agreed-upon hourly rates are as follows:

| | |
|---|---|
| Partner/Principal/Managing Director | $879/hour |
| Senior Manager | $788/hour |
| Manager | $665/hour |
| Senior | $553/hour |
| Associate | $452/hour |
| Administrative Services* (Senior/Associate) | $290/hour |

*Examples of administrative services include senior staff or associate assistance with administrative tasks such as organizing state tax notices, facilitating tax authority audit information document requests, making simple telephone inquiries regarding state tax notice, etc.

Deloitte Tax will submit monthly or periodic bills as the Services are performed. The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the taxing authorities, nor are those amounts contingent or refundable. Tax rate quoted above are subject to change.  It is anticipated that  they will increase  by at least the Annual Consumer Price Index every June 1.

## ACCEPTANCE

This Engagement Letter, including all exhibits and Work Orders, together with the General Business Terms attached hereto and thereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this overall contractual framework, supersedes all other oral and written representations, understandings or agreements relating to this framework, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Amyris, Inc.
March 22, 2022
Page 4

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the tax Services described in this Engagement Letter, or any other assistance that Deloitte Tax may provide to you, please feel free to contact me at (408) 704 4082 or Jessie Xu at (415) 783 6702.

Very truly yours,                                          AGREED AND ACCEPTED

DELOITTE TAX LLP                                  Amyris, Inc., on behalf of itself and its subsidiaries
                                                                    and/or affiliates

By: _____        By: _____
      Matt Walton                                            Tony Hughes
      Partner


                                                              Title: __Chief Accounting Officer_____


                                                              Date: __3/31/2022_____


Enclosures

Exhibit A
Amyris, Inc.
Sample Work Order

| Work Order Number: N/A | Authorized Start Date: N/A |
| --- | --- |

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP ("Deloitte Tax") and Amyris, Inc. and its subsidiaries and/or affiliates ("Client") dated March 22, 2022.

**Description of Services:**

**Estimated Timing for Services and Deliverables (if any):**

**Fees and Expenses (if different from the provisions stated in the Engagement Letter):**

**Client Responsibilities:**

**Other Terms (if applicable):**

CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Work Order, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Work Order, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above.

Very truly yours,

DELOITTE TAX LLP

By:  ___SAMPLE_____
      Matt Walton
      Partner

AGREED AND ACCEPTED

Amyris, Inc., on behalf of itself and its subsidiaries and/or affiliates

By:  ___SAMPLE_____
      Tony Hughes

Title:  ___Chief Accounting Officer_____

Date:  _____

DELOITTE TAX LLP GENERAL BUSINESS TERMS

1.  **Contract and Parties.**

(a)  The engagement letter and any appendices and exhibits other than these General Business Terms ("Engagement Letter") issued by Deloitte Tax LLP ("Deloitte Tax") and addressed to the Client, a particular work order associated with such Engagement Letter ("Work Order"), if any, and these General Business Terms (together, the "Contract") constitute the whole agreement between the Client and Deloitte Tax in relation to the services, delivered work product (including Advice as defined below) described in the Contract to be provided by Deloitte Tax (the "Services") and Deloitte Tax's responsibilities for providing the Services. Capitalized terms not defined in these General Business Terms shall have the meaning given to them in the Engagement Letter.

(b)  This Contract is between the Client and Deloitte Tax. For the purposes of this Contract:

"Client" shall mean the entity specified in the Engagement Letter and shall include such of the Client's subsidiaries and/or affiliates as identified in the Engagement Letter and/or Work Order or, if none is identified, all of the Client's subsidiaries and affiliates. The signatory of the Engagement Letter represents and warrants that it has the power and authority to (i) sign the Contract, and (ii) to bind, itself and its subsidiaries and/or affiliates.

"Advice" shall mean all advice, opinions, reports and other work product in any form (including Deliverables) provided by or on behalf of Deloitte Tax and/or its Subcontractors as part of the Services.

"Content" means any publications, thought pieces or other content or materials that are provided by Deloitte Tax or through the Deloitte Technologies that are not an output of the Services.

"Deliverables" means any and all tangible work outputs of the Services to be delivered by Deloitte Tax as part of the Services, including written returns, reports, documents and other materials.

(c)  Deloitte Tax may subcontract any Services under this Contract to any other Deloitte Entity and/or to any other third party, in either case whether within or outside of the United States (collectively "Subcontractor"). Additionally, Deloitte Tax may utilize other Deloitte Entities and third parties (in either case whether within or outside the United States) to provide administrative, infrastructure, hosting, the use of cloud-based solutions and other support services to Deloitte Tax (including with respect to the Deloitte Technologies). The Client's relationship is solely with Deloitte Tax as the entity contracting to provide the Services. Each party to the Contract is an independent contractor and neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner, or representative.

(d)  Deloitte Tax remains responsible to the Client for all of the Services performed or to be performed under this Contract, including Services performed by its Subcontractors. Accordingly, to the fullest extent possible under applicable law (i) none of the Deloitte Entities (except Deloitte Tax) will have any liability to the Client; (ii) the Client will not bring any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities (except Deloitte Tax); and (iii) the Client will also ensure that no Client subsidiary or affiliate which is not a party to the Contract brings any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities.

(e)  "Deloitte Entities" means Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its member firms and their respective subsidiaries and affiliates (including Deloitte Tax), their predecessors, successors and assignees, and all partners, principals, members, owners, directors, employees, subcontractors (including the Subcontractors) and agents of all such entities. Neither DTTL nor, except as expressly provided herein, any member firm of DTTL, has any liability for each other's acts or omissions. Each member firm of DTTL is a separate and independent legal entity operating under the names "Deloitte", "Deloitte & Touche", "Deloitte Touche Tohmatsu" or other related names; and services are provided by member firms or their subsidiaries or affiliates and not by DTTL.

## 2.  Responsibilities of the Client and of Deloitte Tax.

### (a)  Responsibilities of the Client

(i)  The Client shall cooperate with Deloitte Tax and its Subcontractors in connection with the performance of the Services, including, without limitation, providing Deloitte Tax and its Subcontractors with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and third parties retained by the Client, for the timeliness, accuracy and completeness of all data and information (including all financial information and statements) provided to Deloitte Tax and its Subcontractors by or on behalf of the Client and for the implementation of any Advice provided. Deloitte Tax and its Subcontractors may use and rely only on information and data furnished by the Client or others without verification. The performance of the Services is dependent upon the timely performance of the Client's responsibilities under the Contract and timely decisions and approvals of the Client in connection with the Services. Deloitte Tax and its Subcontractors shall be entitled to rely on all decisions and approvals of the Client.

(ii)  The Client shall be solely responsible for, among other things: (A) making all management decisions, performing all management functions and assuming all management responsibilities; (B) designating one or more individuals who possess suitable skill, knowledge, and/or experience, preferably within senior management to oversee the Services; (C) evaluating the adequacy and results of the Services; (D) accepting responsibility for implementing the results of the Services; and (E) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities. The provisions in the preceding sentence are not intended to and do not alter, modify or change in any manner the duties and obligations of Deloitte Tax as agreed to and set forth in this Contract. With respect to the data and information provided by the Client to Deloitte Tax or its Subcontractors for the performance of the Services, the Client shall have all rights required to provide such data and information and shall do so only in accordance with applicable law and with any procedures agreed upon in writing.

### (b)  Responsibilities of Deloitte Tax

(i)  The Services provided are not binding on tax or other governmental or regulatory authorities or the courts and do not constitute a representation, warranty, or guarantee that the tax or other governmental or regulatory authorities or the courts will concur with any Advice. Any Services provided by or on behalf of Deloitte Tax will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time the specific Services are provided. Subsequent changes in or to the foregoing (for which Deloitte Tax shall have no responsibility to advise the Client) may result in the Services provided by or on behalf of Deloitte Tax being rendered invalid.

(ii)  Except as specifically agreed to in writing, Deloitte Tax shall not provide Advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law in relation to the Services.

(iii)  In formulating any Advice as part of the Services, Deloitte Tax may discuss ideas with the Client orally or show the Client drafts of such Advice. To the extent that the content of drafts or oral Advice are expected to be finalized and confirmed to the Client in writing, such confirmed Advice shall supersede any previous drafts or oral Advice and Deloitte Tax shall not be responsible if the Client or others choose to rely on, act or refrain from acting on the basis of any drafts or oral Advice.

(iv)  Deloitte Tax will use its reasonable endeavors, acting in a commercially prudent manner, to carry out the Services in accordance with any timetable specified in the Contract. However, it is agreed that any dates specified in the Contract for the performance of any part of the Services, including delivery of any Advice, are estimated dates for planning purposes only. Deloitte Tax will notify the Client promptly if it expects or encounters any significant delays which will materially affect achievement of any timetable for delivery of the Services.

(v)  Unless expressly agreed otherwise in writing, each item of Advice will be deemed accepted (and the Services or relevant part completed) when such Advice has been delivered in its final form and no material objection to the Advice or its content is notified by the Client to Deloitte Tax in writing within fourteen (14) days of delivery or when first use of the Advice is made by or on behalf of the Client, whichever occurs first.

## 3.   Payment of Invoices.

Deloitte Tax's invoices are due and payable by the Client upon presentation. If payment of an invoice is not received within thirty (30) days of the invoice date ("Due Date"), Deloitte Tax reserves the right to charge interest at the rate of  (i) 1½% per month or, if higher, (ii) the rate mandated or allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its other rights or remedies, Deloitte Tax shall have the right to suspend or terminate the Services entirely or in part if payment is not received by the Due Date. The Client shall be responsible for all taxes, such as VAT, sales and use tax, gross receipts tax, withholding tax, and any similar tax, imposed on or in connection with the Services, other than Deloitte Tax's income and property taxes. If any portion of an invoice is disputed, the Client shall notify Deloitte Tax within fifteen (15) days of receipt of the disputed invoice and pay the undisputed portion of that invoice by the Due Date.

## 4.   Term.

(a)  This Contract or any Work Order hereunder, may be terminated in whole or in part by either party at any time, without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination.

(b)  Either party may terminate this Contract or any Work Order hereunder in whole or in part by written notice to the other on or at any time after the occurrence of any of the following events:  (i) a material breach by the other party of an obligation under the Contract or any respective Work Order hereunder and, if the breach is capable of remedy, the defaulting party failing to remedy the breach within 30 days of receipt of notice of such breach; (ii) the other party becomes insolvent or goes into liquidation; (iii) the other party has a resolution passed or a petition presented for its winding-up or dissolution (other than for the purpose of a solvent amalgamation or reconstruction); (iv) the making of an administration order in relation to the other party, or the appointment of a receiver over, or an encumbrancer taking possession of or selling, an asset of the other party; (v) the other party making an arrangement or composition with its creditors generally or making an application to a court of competent jurisdiction for protection from its creditors generally; or (vi) any event analogous to those set out in (ii) to (v) in any relevant jurisdiction.

(c)  Deloitte Tax may terminate this Contract or any Work Order hereunder in whole or in part, with immediate effect upon written notice to the Client if Deloitte Tax determines that (i) a governmental, regulatory, or professional entity, or other entity having the force of law has introduced a new, or modified an existing, law,

rule, regulation, interpretation, or decision, the result of which would render Deloitte Tax's performance of any part of the Contract illegal or otherwise unlawful or in conflict with independence or professional rules; or (ii) circumstances change (including, without limitation, changes in ownership of the Client or of its affiliates) so that Deloitte Tax's performance of any part of the Contract would be illegal or otherwise unlawful or in conflict with independence or professional rules.

(d)  Upon termination of the Contract or any Work Order hereunder for any reason, the Client will compensate Deloitte Tax in accordance with the terms of the Contract for the Services performed and expenses incurred through the effective date of termination.

(e)  Termination of any part of the Contract shall not affect the remainder of the Contract. These General Business Terms shall continue to apply to any Work Order in force that has not itself been terminated in accordance with the provisions of Paragraphs 4(a), (b) or (c).

5.    Ownership of Deloitte Property & Work Products.

(a)  To the extent that any property (whether tangible or intangible) of any Deloitte Entity is used or developed in connection with this Contract, such property, including work papers, shall remain the property of the relevant Deloitte Entity. Subject to payment of all of Deloitte Tax's fees due in connection with the Services and this Contract, the Client shall obtain a perpetual, royalty-free, non-exclusive, non-transferable license to use any Advice for the purpose set out in the Contract (or in the Advice) and in compliance with the provisions of this Contract. Deloitte Tax shall have ownership (including, without limitation, copyright and other intellectual property ownership) of the Advice and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall ensure that it and its subsidiaries and/or affiliates do not assert or cause to be asserted against any Deloitte Entity any prohibition or restraint from so doing. Any intellectual property and other proprietary rights in the material and data provided by the Client for performing the Services shall remain the property of the Client.

(b)  Deloitte Tax and its Subcontractors, in connection with performing the Services, may develop or acquire general experience, skills, knowledge and ideas. Any Deloitte Entity may use and disclose such experience, skills, knowledge and ideas subject to the obligations of confidentiality set out in Paragraph 10.

(c)  The Client shall also be entitled to have access to and use of those Deloitte Technologies supplied solely for the purposes of receiving the Services, and for no other purposes, in accordance with and subject to the provisions of the terms of use and licenses that may be applicable to such Deloitte Technologies as notified by Deloitte Tax and agreed by the Client (acting reasonably). Client shall be responsible for all personnel (including other third parties, such as advisors) that Client and Deloitte Tax have agreed shall have access to the Deloitte Technologies in connection with the Services.  As between the Client and Deloitte Tax, and for the benefit of the respective Deloitte Entity owning the Deloitte Technologies, Deloitte Tax and/or the respective Deloitte Entity will own and retain ownership of all intellectual property rights and other proprietary rights of any kind in the Deloitte Technologies that are used or developed in connection with this Contract.

(d)  To the extent any Deloitte Technologies provided to Client hereunder constitute inventory within the meaning of section 471 of the Internal Revenue Code, such Deloitte Technologies are licensed to Client by Deloitte Tax as agent for Deloitte Tax Products Company LLC on the terms and conditions contained herein. The rights granted in this Paragraph 5 do not apply to any intellectual property that is subject to a separate mutually executed license agreement between Client and any third party (including Deloitte Tax's affiliates).

(e)  "Deloitte Technologies" means all know-how and software, system interfaces, templates, methodologies, ideas, concepts, techniques, tools, processes, Content and technologies, including cloud-based technologies and

algorithms owned by, licensed to or developed by any Deloitte Entity and used by Deloitte Tax and its Subcontractors in performing the Services or its other obligations.

6.    Limitations on Damages.

(a)    Deloitte Tax shall not be liable to the Client for any claims, liabilities, losses, damages, costs or expenses arising under or in connection with the Contract ("Claims") for an aggregate amount in excess of the fees paid under the Contract, or the fees paid under a particular Work Order for Claims arising under such Work Order, by the Client to Deloitte Tax, for that part of the Services giving rise to the Claim, except to the extent it is finally determined to have resulted primarily from the intentional fraud, intentional misconduct or bad faith of Deloitte Tax, any Deloitte Entity or any Subcontractor retained for providing the Services to the Client.

(b)    In no event shall any Deloitte Entity (including Deloitte Tax and its Subcontractors) be liable whether in contract, tort or otherwise for any losses incurred as a result of loss of use, contracts, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense arising under or in connection with the Contract.

(c)    In circumstances where all or any portion of the provisions of this Paragraph 6 are finally determined to be unavailable, the aggregate liability of Deloitte Tax, any other Deloitte Entity (including Subcontractors) and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

(d)    Deloitte Tax's responsibility for the Services is solely toward the Client identified in the Contract or Advice to be entitled to rely on the Services, and not toward any other subsidiary or affiliate of the Client. If more than one Client subsidiary or affiliate is a party to the Contract or is identified in the Contract, Deloitte Tax's responsibility is solely toward the Client for whose benefit the Services were provided.

(e)    The liability cap in Paragraph 6(a) applies in aggregate to each and all Claims which from time to time arise under or in connection with the Contract and the Services, whether such Claims are made at the same or different times or by the Client entity and/or other persons. The liability cap in Paragraph 6(a) also applies to any and all Claims against any other Deloitte Entities, including the Subcontractors, if and only to the extent that it is judicially determined that any of them have any liability under or in connection with the Contract or the Services.

(f)    If the liability exclusion for other Deloitte Entities provided in Paragraph 1(d) is for any reason not effective, then the limitations on liability provided for in this Paragraph 6 shall apply to the other Deloitte Entities (including Subcontractors) as if they were named therein.

(g)    The provisions of Paragraph 6 shall not apply to any liability which by the governing law of the Contract is unlawful to limit or exclude.

7.    Limitation on Warranties.

THIS IS A SERVICES AGREEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE AND SKILL. TO THE FULLEST EXTENT PERMITTED BY LAW, DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

8.  Force Majeure.

Neither party shall be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), fire or other casualty, act of God, epidemic, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

9.  Limitation on Actions.

No action, regardless of form, relating to the Contract or the Services, may be brought by either party more than two years after the cause of action has accrued under applicable law, except that an action for non-payment of Deloitte Tax's invoices by the Client may be brought at any time.

10.  Confidentiality.

(a)  To the extent that, in connection with the Contract, Deloitte Tax comes into possession of any tax or other information related to the Services, trade secrets or other proprietary information relating to the Client which is either designated by the disclosing party as confidential or is by its nature clearly confidential ("Confidential Information"), Deloitte Tax shall not disclose such Confidential Information to any third party without the Client's consent. The Client hereby consents to Deloitte Tax disclosing such Confidential Information (i) to contractors providing administrative, infrastructure, hosting, cloud-based solutions and other support services to Deloitte Tax as well as to any Deloitte Entity (including any Subcontractors) and their respective personnel, in any case, whether located within or outside of the United States, provided that such contractors and Subcontractors adhere to confidentiality obligations similar to those in this Paragraph 10; (ii) to Client's legal advisors, auditors, and insurers; and (iii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with potential or actual mediation, arbitration or litigation. To the extent permitted by applicable law or regulation, Deloitte Tax shall provide the Client with prompt written notice of disclosures required by law, regulation, judicial or administrative process.   The obligation of confidentiality shall not apply to the extent such Confidential Information (A) is or becomes publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a breach by Deloitte Tax; (B) becomes available to any Deloitte Entity on a non-confidential basis from a source other than the Client which Deloitte Tax reasonably believes is not prohibited from disclosing such Confidential Information to Deloitte Tax by an obligation of confidentiality to the Client; (C) is known by any Deloitte Entity prior to its receipt from the Client without any obligation of confidentiality; or (D) is developed by any Deloitte Entity independently of Confidential Information disclosed by the Client.

(b)  The Client shall not disclose to any third party any Advice without the express written consent of Deloitte Tax, except (i) disclosure may be made to the extent mandatory laws, applicable regulations, rules and professional obligations prohibit limitations on disclosure; (ii) if the Client or its affiliates have securities registered with the United States Securities and Exchange Commission and any Deloitte Entity is the auditor of the Client or any of its affiliates, in which case no restrictions or limitations are placed by Deloitte Tax on the Client's disclosure of  the tax treatment or tax structure associated with the tax Services or transactions described in the Contract and the Client acknowledges that none of its other advisors has imposed or will impose restrictions or limitations with such tax treatment or tax structure; (iii) to the extent the United States Internal Revenue Code and applicable Internal Revenue Service guidance relating to confidential tax shelters (or comparable law or guidance from other taxing authorities in other jurisdictions) apply, in which case there are no restrictions or limitations on the disclosure of the tax treatment or tax structure; (iv) to the extent legislation or regulations of any jurisdiction provide for the reporting to the tax authorities of certain tax arrangements or

transactions, there shall be no restrictions or limitations on the disclosure of any such arrangements or transactions provided as part of the Advice; (v) the Client may disclose the Advice on a need to know basis to any affiliate that is not a member of the Client for information purposes only, provided that the Client ensures and the recipient undertakes to keep such Advice confidential and not to bring any claim of any kind against any Deloitte Entity in relation to the Advice or the Services; and (vi) on a need to know basis to statutory auditors of the Client in their capacity as such.

(c)   The Client shall use the Advice, solely for the purposes specified in the Contract or Advice and, without limitation, shall not, without the prior written consent of Deloitte Tax, use any Advice, in connection with any business decisions of any third party or for advertisement purposes. All Services are intended only for the benefit of the Client identified in the Contract or Advice as being entitled to rely on the Advice. The mere receipt of any Advice (or any information derived therefrom) by any other persons is not intended to create any duty of care, professional relationship or any present or future liability of any kind between those persons and Deloitte Tax.

## 11.  Assignment.

Neither party may assign or otherwise transfer this Contract without the prior express written consent of the other. Neither party will directly or indirectly agree to assign or transfer to a third party any Claim against the other party arising out of this Contract.

## 12.  Indemnification.

The Client shall indemnify and hold harmless Deloitte Tax, and any other Deloitte Entity from all third-party Claims, except to the extent finally determined to have resulted primarily from the intentional fraud, intentional misconduct or bad faith of Deloitte Tax, or any other Deloitte Entity. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax and all other Deloitte Entities (including their respective personnel) for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

## 13.  Electronic Communications.

(a)   Except as instructed otherwise in writing, Deloitte Entities and the Client are authorized to receive properly addressed fax, e-mail (including e-mails exchanged via Internet media) and voicemail communication for both sensitive and non-sensitive documents and other communications concerning this Contract, as well as other means of communication used or accepted by the other. Deloitte Entities may also communicate electronically with tax and other authorities.

(b)  It is recognized that the internet is inherently insecure and that data can become corrupted, communications are not always delivered promptly (or at all) and that other methods of communication may be appropriate. Electronic communications are also prone to contamination by viruses. Each party will be responsible for protecting its own systems and interests and, to the fullest extent permitted by law, will not be responsible to the other on any basis (contract, tort or otherwise) for any loss, damage or omission in any way arising from the use of the internet or from access by any Deloitte Entity personnel to networks, applications, electronic data or other systems of the Client.

## 14.  Other Clients.

Nothing in this Contract will prevent or restrict any Deloitte Entity, including Deloitte Tax, from providing services to other clients (including services which are the same or similar to the Services) or using or sharing for any purpose any knowledge, experience or skills used in, gained or arising from performing the Services subject to

the obligations of confidentiality set out in Paragraph 10 even if those other clients' interests are in competition with the Client. Also, to the extent that Deloitte Tax possesses information obtained under an obligation of confidentiality to another client or other third party, Deloitte Tax is not obliged to disclose it to the Client, or use it for the benefit of the Client, however relevant it may be to the Services.

## 15.  Staff.

Deloitte Tax and the Client each agree not to directly or indirectly solicit, employ or engage any personnel of the other party who within six (6) months of such action has been involved directly with the provision of the Services or otherwise directly connected with this Contract, except where an individual responds directly to a general recruitment campaign.

## 16.  Destruction of Working Papers.

Deloitte Tax may retain copies of documents and files provided by the Client in connection with the Services for purposes of compliance with professional standards and internal retention policies. Any documents and files retained by Deloitte Tax on completion of the Services subject to the obligations of confidentiality set forth in Paragraph 10(a) (including documents legally belonging to the Client) may routinely be destroyed in accordance with Deloitte Entities' policies applying from time to time.

## 17.  Marketing Material & Use of Name.

Neither the Deloitte Entities nor the Client shall use the other's name, trademarks, service marks, logos, and/or branding in external publicity material without such other party's prior written consent.

## 18.  Spreadsheets, Models and Tools.

In the course of providing the Services, Deloitte Tax may make reference to spreadsheets, models or tools (together "Models") that the Client provides to Deloitte Tax or requests Deloitte Tax to rely upon ("Client Models") or that Deloitte Tax otherwise uses in connection with the Services ("Deloitte Models"). All Models have limitations and may not produce valid results for all possible combinations of input data with the result that actual and potential errors are not detected. Unless otherwise expressly agreed in the Contract: (i) Deloitte Tax will not be responsible for reviewing, testing or detecting any errors in any Client Models; (ii) no Deloitte Model will be provided or treated as Advice; and (iii) where Deloitte Tax provides any Deloitte Model by way of explanation or illustration of any Advice, Deloitte Tax makes no representation, warranty or undertaking (express or implied) of any kind about the accuracy, suitability or adequacy of any such Deloitte Model for the Client's own needs.

## 19.  Data Protection.

(a)  Each party shall comply with its respective obligations under the applicable data protection laws to the extent that, in connection with the Contract and the Services, a party stores, processes and transfers any personal data to which data protection laws apply ("Personal Data").

(b)  The Client confirms that it has obtained all legally required authorizations to disclose and/or transfer any Personal Data to Deloitte Tax and its Subcontractors, including across borders and outside the territory of the European Economic Area ("EEA").

(c)  Deloitte Tax may collect data from the Client, other Deloitte Entities, third parties and the data subject directly. Deloitte Tax may for purposes of the collection, use, storage or processing thereof, transfer the Client's

and/or the data subject's Personal Data to: (i) administrative contractors, including providers of cloud-based solutions; (ii) another country for legitimate purposes; (iii) another Deloitte Entity.

(d)    To the extent that Deloitte Tax processes Personal Data in or transferred from the EEA in its performance of the Services and to the extent that the EU General Data Protection Regulation 2016/679 ("GDPR") applies, the remainder of the provisions of this Paragraph 19 shall apply.

(e)    In this Paragraph 19, "Data Protection Legislation" means GDPR, together with all other applicable legislation relating to privacy or data protection including any statute or statutory provision which amends, extends, consolidates or replaces the same. The terms "personal data," "data subject," "controller," "processor" and "process" (and its derivatives) shall have the meanings given to them in the Data Protection Legislation.

(f)    The parties acknowledge that certain of the Services may be performed by Deloitte Tax acting as a controller and certain Services may be performed by Deloitte Tax acting as a processor. The Contract shall identify whether it is the understanding of the parties that Deloitte Tax carries out the particular Services as a controller or a processor. In the absence of any such indication, the capacity in which Deloitte Tax acts shall be determined in accordance with the Data Protection Legislation. When acting as a controller, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.1 shall apply. When acting as a processor, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.2 shall apply. Where Deloitte Tax acts as a processor, the Contract shall set out the scope of the processing carried out by Deloitte Tax in relation to the Services.

## 19.1 If Deloitte Tax Is Acting As Data Controller

(a)    Each of the Client and Deloitte Tax shall be considered to be a controller in respect of Personal Data disclosed to Deloitte Tax by or on behalf of the Client and processed in connection with the Contract and the Services and each of the Client and Deloitte Tax shall comply with its obligations as a controller under the Data Protection Legislation in respect of Personal Data processed by it in connection with the Contract and the Services.

(b)    The Client acknowledges that Deloitte Tax may process Personal Data as a controller for the purpose of, or in connection with the Services to comply with: (i) applicable legal, professional or regulatory requirements; (ii) requests and communications from competent authorities as permitted by law; and (iii) administrative, financial accounting, risk analysis, client relationship and other reasonable business purposes.

(c)    The Client shall collect any necessary permission, provide any necessary notice and do all such other things as are required under the Data Protection Legislation in order for it to disclose Personal Data to Deloitte Tax for the purposes described in Paragraph 19.1(b) and such other purposes as may be described in the Contract.

(d)    Deloitte Tax shall process the Personal Data as reasonably required to provide the Services, meet its legal or regulatory obligations or for its other reasonable business purposes (including quality control and administration) and may disclose Personal Data to any third parties including its Subcontractors, regulators and any party based in any jurisdiction including a jurisdiction outside the EEA provided that such disclosure is reasonably required in connection with such purposes and is at all times in compliance with the Data Protection Legislation that applies to Deloitte Tax in its performance of the Services.

## 19.2 If Deloitte Tax Is Acting As Data Processor

(a)    Where Deloitte Tax may process Personal Data as a processor Deloitte Tax shall: (i) only process Personal Data: (A) to the extent necessary to provide the Services; (B) in accordance with the specific reasonable instructions of the Client (except to the extent, in the reasonable opinion of Deloitte Tax, such instructions

infringe the Data Protection Legislation or other applicable law, in which case Deloitte Tax shall notify the Client); or (C) as required by any competent authority or law that applies to Deloitte Tax in its performance of the Services; (ii) implement appropriate technical and organizational measures designed to provide a level of security appropriate to the risk relating to its processing of the Personal Data and any security measures specified in the Contract; (iii) keep, and require that its personnel and agents keep, Personal Data confidential in accordance with Deloitte Tax's confidentiality obligations contained in Paragraph 10(a); (iv) notify the Client in writing without undue delay, and provide reasonable cooperation after becoming aware of a personal data breach (that is, a breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data processed by Deloitte Tax) relating to Personal Data in Deloitte Tax's possession or control; (v) provide reasonable cooperation and assistance to the Client in relation to any request by a data subject to have access to Personal Data held about them or in relation to a reasonable request, allegation or complaint by a competent authority or data subject, including notifying the Client in writing without undue delay of receipt of any such request (except to the extent prevented from doing so by applicable law); (vi) be entitled to recover any reasonable costs incurred in complying with Paragraph 19.2(a)(v) above, or as result of assisting the Client in meeting its obligations under the Data Protection Legislation; (vii) subject to applicable legal, professional or regulatory requirements or business practices, at the reasonable request of the Client, delete or return all Personal Data to the Client on termination or expiry of the Contract and in such circumstance the provisions of Paragraph 19.1 apply.

(b)  To the extent required by Data Protection Legislation applicable to Deloitte Tax in its performance of the Services, Deloitte Tax shall maintain a record of its processing activities and provide such cooperation and information to the Client as is reasonably necessary for the Client to demonstrate compliance with its obligations pursuant to Data Protection Legislation. Such cooperation shall include permitting the Client, at the Client's sole cost and expense, to audit Deloitte Tax's compliance with this Paragraph 19.2 provided that (unless expressly required otherwise by any competent authority): (i) reasonable notice of not less than thirty (30) days is given of any proposed audit and the parties shall, acting reasonably, agree to the scope and parameters of any such audit; (ii) to the extent the audit scope is covered in any audit carried out for Deloitte Tax by an independent third party auditor within twelve (12) months prior to the Client's audit request and there have been no material changes to the controls audited, Deloitte Tax may share the report to the extent relevant to the Client and the disclosure of such report shall be deemed to satisfy the audit request made by the Client; (iii) where, acting reasonably, a specific audit is still required by the Client, such audit shall be conducted during regular business hours, subject to Deloitte Tax's policies and confidentiality requirements and may not unreasonably interfere with Deloitte Tax's business activities; (iv) the audit shall be subject to Deloitte Tax's duties of confidentiality owed to any of its clients, personnel or other parties; and (v) the rights granted in this Paragraph 19.2(b) may not be conducted more than once in any calendar year.

(c)  The Client authorizes Deloitte Tax to use any Subcontractor, including any Deloitte Entity, to process Personal Data as a subprocessor of Deloitte Tax provided that Deloitte Tax shall (i) procure that such processing is subject to a written contract or other legal act with such subprocessor containing data protection obligations no less onerous than those set out in this Paragraph 19.2; and (ii) remain liable for the acts and omissions of any such subprocessor with respect to the processing of Personal Data to the same extent Deloitte Tax would be liable if it had caused such acts or omissions. Deloitte Tax's material subprocessors who have been engaged to perform Services for Client, if any, are listed in the Contract.

(d)  Deloitte Tax shall be entitled to (i) transfer Personal Data to, and (ii) process Personal Data in, any jurisdiction including a jurisdiction outside the EEA, including to any Subcontractor, provided that such transfer is either permissible or legitimized by a valid transfer mechanism under Data Protection Legislation or as otherwise permitted under the Contract.

20. **Anti-corruption.**

Deloitte Tax understands that the Client may be subject to laws that prohibit bribery and/or providing anything of value to government officials with the intent to influence that person's actions in respect of the Client. Deloitte Tax may be subject to similar laws and codes of professional conduct and has its own internal policies and procedures which prohibit illegal or unethical behaviors. In providing the Services, Deloitte Tax undertakes not to offer, promise or give financial or other advantage to another person with the intention of inducing a person to perform improperly or to reward improper behavior for the benefit of the Client, in each case, in violation of applicable law.

21. **Disclosure Laws.**

The Deloitte Entities may be obligated to notify relevant authorities of certain types of arrangements and of proposals to implement such arrangements. The decision to make such a notification, its timing and content, is a matter that the Deloitte Entities reserve entirely to their sole discretion. The Deloitte Entities may also be obligated to notify those authorities of the participants in those arrangements. The Client may also have obligations under the same legislation to give notification of such arrangements. Where there are other current or future laws or regulations in any jurisdiction that require disclosure relevant to the Deloitte Entities Services, the Deloitte Entities will also comply with those disclosure requirements. For the avoidance of doubt nothing in this Contract restricts the Client from disclosing any Deliverables or other Advice to any relevant authority.

22. **Counterparts and Language.**

This Contract may be signed in any number of counterparts (whether such counterparts are original or fax or in the form of a pdf attachment to an e-mail). Each signed counterpart shall be deemed to be an original thereof, but all the counterparts shall together constitute one and the same instrument. Where there are versions of the Contract in the English language and another language, in the event of any discrepancies between versions, the English language version shall prevail.

23. **Entire Agreement, Modification and Effectiveness.**

Nothing discussed prior to execution of the Contract induced, nor forms part of, the Contract except to the extent repeated in this Contract. This Contract supersedes any previous agreement, understanding or communication, written or oral, relating to its subject matter. No variation to the Contract shall be effective unless it is documented in writing and signed by authorized representatives of both parties, provided, however, that the scope of the Services may be changed by agreement of the parties in writing, including by e-mail or fax. If Deloitte Tax has already started work (e.g., by gathering information, project planning or giving initial advice) at the request of the Client then the Client agrees that this Contract is effective from the start of such work.

24. **Survival and Interpretation and Third-Party Beneficiary.**

(a)   Any provisions of the Contract which either expressly or by their nature extend beyond the expiration or termination of this Contract shall survive such expiration or termination.

(b)   If any provision of the Contract is found by a court of competent jurisdiction or other competent authorities to be unenforceable, in whole or in part, such provision or the affected part shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein. **Each of the provisions of the Contract or any Work Order shall apply to the fullest extent of the law, whether in contract, statute, tort**

**(including without limitation negligence), or otherwise, notwithstanding the failure of the essential purpose of any remedy.** Any references herein to the term "including" shall be deemed to be followed by "without limitation".

(c)   Deloitte Entities are intended third-party beneficiaries of the Contract. Each such Deloitte Entity may in its own right enforce such terms, agreements and undertakings.

## 25.  Governing Law and Submission to Jurisdiction.

This Contract, and all matters relating to it (including non-contractual obligations) shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). Any action or proceeding arising out of or relating to this Contract or the Services shall be brought and maintained exclusively in New York County, the State of New York. Subject to Paragraph 26, the parties hereby expressly and irrevocably: (i) submit to the exclusive jurisdiction of such courts for the purposes of any such action or proceeding and (ii) waive, to the fullest extent permitted by law, any defense of inconvenient forum to the venue and maintenance of such action in any such courts. Nothing in this paragraph will prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy. **DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THE CONTRACT.**

## 26.  Dispute Resolution.

The parties agree to attempt in good faith to resolve any dispute or claim arising out of or in connection with the Contract promptly through negotiations between senior management. If the matter is not resolved through negotiation, then either party may request that a good faith attempt is made to resolve the dispute or claim by participating in an Alternative Dispute Resolution ("ADR") procedure. If the dispute or claim has not been resolved within sixty (60) days of a request being made for reference to ADR, then legal proceedings may be commenced in respect of the matter. Nothing in this paragraph prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy.

## 27.  Third Parties and Internal Use.

Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax services or transactions described in the Contract. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014, or IRC sections 6011 and 6111 and related IRS guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax services or transactions described in the Contract. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports, or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

## Deloitte Tax LLP Privacy Statement

Last revised: August 17, 2020

**Introduction**

This Privacy Statement explains what personal information we may collect about you in connection with our services engagement and how this personal information may be used and shared. This Privacy Statement also sets out your rights in relation to your personal information and tells you who you can contact if you have questions.

**To whom does this Privacy Statement apply and what does it cover?**

This Privacy Statement applies to Deloitte Tax LLP (also referred to as **"Deloitte Tax", "we", "us", and "us",** an entity within the Deloitte Network.** As used in this Privacy Statement, the "Deloitte Network" refers to one or more of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its network of member firms and their related entities. DTTL and each of its member firms are legally separate and independent entities. Please see deloitte.com/about for a detailed description of the legal structure of Deloitte Touche Tohmatsu Limited and its member firms.

This Privacy Statement sets out how we will process your personal information as part of our provision of tax, social security and (in certain jurisdictions outside of the United States) immigration related services as may be relevant to you. Deloitte Tax is providing these services either under a direct contract with you or via a contract with another person (such as a company or a partnership or a trustee) who has asked us to provide the services.

Your personal information will be protected and handled with consideration for its confidentiality and Deloitte Tax will only disclose it as set out in the "To whom will we disclose your personal information?" section below.

In this Privacy Statement, we refer to handling, collecting, protecting and storing your personal information as "processing".

**What personal information do we collect?**

Deloitte Tax may collect personal information relating to you such as:

- name
- contact details (such as work or home address, email and phone numbers)
- date of birth
- government identifiers (such as social security number and passport details)
- financial information
- calendar data (where applicable)

In order to provide services to you, Deloitte Tax may receive and also need to process personal information about you that may be considered special category (or "sensitive") personal information (special category personal information is considered to include information about your health, racial or ethnic origin, political opinions, religious or philosophical beliefs, trade union membership, genetic data, biometric data or sexual orientation). Special category personal information about you includes information that may be reasonably inferred from other information that we receive.

Where we receive special category personal information or other information from which special category personal information can be reasonably inferred, we will require explicit consent in order to process it.

**How do we collect personal information?**

Deloitte Tax may collect personal information about you in different ways:

- you may provide it directly to us
- we may obtain it because of the services that Deloitte Tax provides or has previously provided
- we may receive it from other members of the Deloitte Network or from third parties, such as your employer/partnership, or a tax authority and/or other relevant authority/administrative bodies
- we may observe or infer it from the information you provide to us and/or the way you interact with us

This personal information can be received in any manner, including in-person discussions, telephone conversations, and electronic or other written communications.

Without access to all the personal information that we need, we may be unable to provide or complete the services.

Where another party (such as a company or a partnership or any third parties acting on your or their behalf) provides your personal information to us, they must also comply with their obligations under the relevant privacy laws and regulations. If you believe that the entity for whom you work or a third party has not provided you with details of the personal information that it holds about you and/or has not obtained your authority to provide us with that personal information for processing as described in this Privacy Statement, then please contact such entity directly.

**Disclosing personal information to us relating to third parties**

If any personal information which you provide to us relates to any third party, for example a spouse or civil partner, individuals (including children) who depend on you financially, or a joint account holder or a beneficiary or trustee of a trust, then by providing us with their personal information you will need to ensure that you have obtained any necessary permissions from those persons to the use of their personal information in the way set out in this Privacy Statement, or you are otherwise permitted to give us this personal information. You should share a copy of this Privacy Statement with those other individuals before disclosing any personal information about them to us.

**How do we use your personal information?**

Deloitte Tax processes personal information about you to:

- establish or maintain our relationship with you
- provide services to you and/or family member(s) or to the entity that has engaged us to provide the services

We may also use your personal information for the purposes of, or in connection with:

- compliance with applicable legal, regulatory or professional requirements
- protecting our rights and/or property

**On what basis do we process personal information about you?**

This Privacy Statement sets out the grounds upon which we rely in order to process your personal information.

We may use your personal information for the purposes outlined above because:

(a)   where relevant, we have a contract with you to provide services and processing your personal information is necessary for the performance of such contract;

or (b) we have a legitimate interest in processing your personal information, which may be to:

- provide services to you and/or to the entity that has engaged us to provide the services;
- support the management of our client engagements;
- evaluate, develop or improve our services or products; or
- protect our business interests.

or (c) we are subject to legal, regulatory or professional obligations.

**To whom will we disclose your personal information?**

In connection with one or more of the purposes outlined in this Privacy Statement, we may disclose your personal information to:

- other members of the Deloitte Network
- those with whom you have requested us to share information, such as your spouse or civil partner
- competent authorities, including courts and authorities regulating us or another member of the Deloitte Network, in each case to comply with legal, regulatory or professional obligations or requests
- vendors and administrative, support, infrastructure and other service providers handling your information on our behalf; in each case, such vendors and service providers will be contractually bound by confidentiality and privacy obligations consistent with the obligations in this Privacy Statement

© 2020. For information, contact Deloitte Touche Tohmatsu Limited.

## Deloitte Tax LLP Privacy Statement

Last revised: August 17, 2020

- third parties to whom we disclose information in the course of providing services to you or to the entity that has engaged us to provide the services

Any personal information that we have referenced above under "What personal information do we collect?" may be disclosed to the third parties identified in this section for the purposes set forth herein.

Please note that some of the recipients of your personal information referred to above may be based in countries or regions without data protection rules similar to those in effect in your area of residence. In such cases, adequate safeguards will be in place to protect your personal information.

For further details about the transfers described above and the adequate safeguards used by Deloitte Tax with respect to such transfers, please contact us using the details below.

**Do we sell your personal information?**

We do not sell your personal information.

**How do we keep your personal information secure?**

We have in place reasonable commercial standards of technology and operational security to protect your personal information from loss, misuse and unauthorized access, disclosure, alteration or destruction. Only authorized personnel, with appropriate awareness of privacy obligations, are provided access to your personal information.

**How long will we keep your information?**

We retain personal information as long as is necessary to fulfill the purposes identified in this Privacy Statement or (i) as otherwise necessary to comply with applicable laws or professional standards, or (ii) as long as the period in which litigation or investigations might arise in respect of our services.

**What are your rights in relation to your personal information?**

You have various rights in relation to your personal information. In particular, you have a right to:

- obtain confirmation that we are processing your personal information and request a copy of the personal information we hold about you
- ask that we update the personal information we hold about you, or correct such information that you think is inaccurate or incomplete

Depending on the jurisdiction in which you are located, you may also have the right to:

- ask that we delete personal information that we hold about you, or restrict the way in which we use your personal information
- withdraw consent to our processing of your personal information (to the extent our processing is based on your consent)
- ask us to stop or start sending you marketing messages at any time
- obtain and/or move your personal information to another service provider
- object to our processing of your personal information
- request that we provide the following information regarding the personal information we hold about you:
  - The categories and/or specific pieces of personal information we collected
  - The categories of sources from which personal information is collected
  - The business or commercial purpose for collecting personal information
  - The categories of third parties with whom we shared personal information

Where our processing of special category personal information is reliant on your consent and you withdraw that consent, we will cease processing the relevant information for the purposes of providing our services and the effect may be that we are no longer able to provide the services.

However, we may still retain a copy of the relevant information for as long as necessary to comply with applicable laws or professional standards, or as long as the period in which litigation or investigations might arise in respect of our services.

To exercise any of your rights under applicable law described above regarding your personal information, please complete our Personal Information Request Form (available at https://datasubject.deloitte.com/) or call us at this toll-free number **+1-844-919-0711**. When calling us, please provide your full name, mailing address and email address.

Applicable laws may also give you the right to lodge a complaint with a local supervisory authority related to this Privacy Statement. For individuals in the EU, you may contact your European or Swiss data protection authority regarding our processing of your personal information.

We will not discriminate against you for exercising any of your rights with respect to your personal information.

**How do we verify your identity when you submit a data subject request?**

For certain personal information requests, we must first verify your identity before processing your request. To do so, we may ask you to provide us with your full name, contact information, and relationship to Deloitte. Depending on your request, we may ask you to provide additional information. Once we receive this information, we will then review it and determine whether we are able to match it to the information Deloitte maintains about you to verify your identity.

**How do we process third party requests?**

If you are submitting a personal information request on behalf of someone other than yourself, please contact us at USPrivacyQuestions@deloitte.com and include proof that you are authorized to make the request. This may be in the form of a written authorization signed by the person whom you are acting on behalf of or a valid power of attorney.

**Privacy Shield Notice**

Deloitte LLP and its United States affiliates, including Deloitte Tax, adhere to the EU-U.S. and Swiss Privacy Shield Framework as set forth by the U.S. Department of Commerce with respect to personally identifiable information that is transferred from the European Economic Area, the United Kingdom and Switzerland to the United States within the scope of their Privacy Shield certifications. To learn more, see our Privacy Shield Notice (available at https://www2.deloitte.com/us/en/footerlinks1/privacy-shield.html?icid=bottom_privacy-shield).

**Changes to this Privacy Statement**

In addition to describing our current privacy practices, this Privacy Statement also describes the categories of personal information we collected, disclosed, or sold during the preceding 12 months. We may modify or amend this Privacy Statement from time to time at our discretion. When we make changes to this Privacy Statement, we will amend the revision date at the top of this page and the modified or amended Privacy Statement shall apply to you and your personal information as of that revision date. We encourage you to review the Privacy Statement on our website (available at https://www2.deloitte.com/us/en/footerlinks1/tax-privacy.html?icid=bottom_tax-privacy) periodically to be informed about how we are protecting your personal information.

**Contact us**

If you have any questions or concerns regarding this Privacy Statement or your personal information, please contact our data protection officer by email at USPrivacyQuestions@deloitte.com or call us at +1-844- 919-0711. Our European Union representative, Deloitte Tax EU Privacy Rep Limited, can be contacted by email at EURepresentative@deloitte.com.

© 2020. For information, contact Deloitte Touche Tohmatsu Limited.



**Deloitte Tax LLP**
Suite 600
225 West Santa Clara
Street
San Jose, CA 95113-1728
USA
Tel: +1 408 704 4000
Fax: +1 408 704 3083
www.deloitte.com

September 15, 2023

Ms. Elizabeth Dreyer
Chief Accounting Officer
Amyris, Inc.
5885 Hollis Street, Suite 100
Emeryville, CA 94608

**RE:  Work Order Number: 2023-1120-1 (Amyris)**

Dear Elizabeth:

Deloitte Tax LLP ("Deloitte Tax" or "our") and Amyris, Inc. and its subsidiaries and/or affiliates ("Client") are amending a previously existing arrangement set forth in Work Order Number **2023-1120-1 (Amyris)** between Deloitte Tax and Client dated September 5, 2023 (the "Work Order").  This addendum letter ("Addendum") is intended to clarify the fee provisions of the original arrangement relating to the Services provided by Deloitte Tax to Client pursuant to the terms and conditions of the Work Order.

Except for the following additions or revisions to the Work Order, all other terms and conditions of the Engagement Letter, including the Consent for Disclosure and Use of Tax Return Information, will continue in full force and effect.  For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to amend the Work Order as follows:

**Modifications to Scope of Services**

Not Applicable

**Modifications to Fees and Expenses Paragraph**

Client and Deloitte Tax agree that the original intention and mutual understanding of the parties was for the Deloitte Tax fees of $85,000 stated in the Work Order to apply on a per tax year basis.  As such, and to document this mutually agreed understanding for the avoidance of doubt, Client and Deloitte Tax agree in this Addendum to clarify the original language in Work Order Number **2023-1120-1 (Amyris)** as follows:

> *The Deloitte Tax fees for the preparation of the tax returns, including preparation of extension requests and quarterly estimates, are $85,000, **per tax year**.*

Please indicate your acceptance of this Addendum by signing in the space provided below and returning a copy of the Addendum to our office.  Thank you for giving Deloitte Tax the opportunity to serve you.  If you have any questions regarding the Addendum, please feel free to contact me at (408) 704-4082.

Very truly yours,                          AGREED AND ACCEPTED:

DELOITTE TAX LLP                           Amyris, Inc. on behalf of itself and its subsidiaries
                                           and/or affiliates

By: _____               By: _____
    Matt Walton                                Elizabeth Dreyer
    Partner                                    Chief Accounting Officer

                                           Date: 09/18/23 _____



Deloitte Tax LLP
555 Mission St.
San Francisco, CA 94105
USA

Tel: +1 415 783 4000
www.deloitte.com

April 4, 2023

Elizabeth Dreyer
Amyris, Inc.
5885 Hollis Street, Suite 100
Emeryville, CA 94608

Dear Elizabeth:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax" or "our") to provide tax advisory services and compliance services to Amyris, Inc. and its subsidiaries and/or affiliates, Including Aprinnova LLC ("Client") regarding Client's tax information reporting and withholding obligations for tax year 2022 (collectively, the "Services"). This engagement letter ("Engagement Letter") describes the scope of the Deloitte Tax Services, the respective responsibilities of Deloitte Tax and Client relating to this engagement and the fees Deloitte Tax expects to charge.

Client and Deloitte Tax agree that this Engagement Letter shall be retroactive to March 1, 2023.

SCOPE OF SERVICES

1. <u>Tax Advisory Services</u>

Deloitte Tax will provide tax advisory services to assist Client in identifying certain United States federal tax information reporting and withholding obligations under Chapters 3 or 4 of the Internal Revenue Code ("IRC") for the 2022 tax year.  Deloitte Tax's Advisory services will include the following:

**1(a) Reportable Payment Identification:** Deloitte Tax will assist Client in identifying payments Client made during 2022 that Client is required to report on the Internal Revenue Service ("IRS") information reporting forms 1042, 1042-S, 8804, and 8805 (collectively the "Tax Forms") identified in Exhibit A, Listing of Tax Forms attached to this Engagement Letter and incorporated herein by reference.

- Deloitte Tax will provide guidance to Client in working sessions or in the form of a memo or power point on criteria Client can use to identify payment types and payments that are reportable on the Tax Forms,
- Client will review its payment records and provide to Deloitte Tax a list of payments associated with payees (the "Payment List") in an electronic format that Client determines meet the reporting criteria provided by Deloitte Tax's guidance, and
- Deloitte Tax will read and analyze the Payment Lists provided by the Client and provide feedback to Client based on the face of the information in the Payment Lists as to whether the payment information provided by the Client appears complete or meets the reporting criteria for the Tax Forms.

The information included in the Payment List provided by the Client should include, but not be limited to, information indicating:

- The character of each payment (such as whether a payment is for services, royalties, rents, interest, dividends, return of capital, purchase of goods, etc.),

- The tax source of the payment (e.g. whether the payment is US sourced, non-US sourced, or unknown/undetermined),
- The name and address of the beneficial owner of the payment,
- The US tax status and tax identification number of the beneficial owner of the payment (if any) as established by an IRS Form W-8, W-9, or Form 8233 ("Forms W-8/W-9"), or other means as established by Client to determine the US tax status and tax identification number of the payee, and
- The date and amount of the payments to each payee and the total aggregate payments by payment type to the payee during the year.

While Deloitte Tax will provide guidance, education, and criteria to the Client to assist in identifying and characterizing reportable payments, Client will ultimately be responsible for the accuracy of the payment information Client gathers and in deciding which payments are to be reported.

**1(b) Withholding Analysis for Reportable Payments:** Deloitte Tax will assist Client in identifying payments on the Payment List, created as part of the Reportable Payment Identification services above, that require tax withholding and remittance to the IRS under Chapters 3 or 4 of the IRC. Deloitte Tax will read the payment information on the Payment List and provide observations to Client on payments that would require tax withholding based on the information in the Payment List. Deloitte Tax will also provide a recommended default withholding tax rate for each payment based on the face of the information in the Payment List considering the sourcing and tax status of each beneficial owner of the payments. Deloitte Tax will provide guidance and criteria to Client on circumstances that could allow for a reduced rate of withholding tax if the Client has appropriate documentation or information about the beneficial owner of the payment (such as a Form W-9 or Form W-8 with a treaty claim or tax exemption claim).

**1(c) Tax Form Reporting Template Data Extraction, Transformation and Loading (ETL) assistance:** Deloitte Tax will assist Client in gathering, extracting, transforming and organizing data necessary to populate Deloitte Tax's Tax Form Reporting Template, for payments identified by the Client on the Payment List. After Deloitte Tax completes loading of the Tax Form Reporting Template with such data, Deloitte Tax will provide a copy of the template for Client to review and approve for filing as part of Deloitte's Tax Form Preparation Services, discussed below.

**1(d) Withholding Certificate assistance:** Deloitte Tax will assist Client with the analysis of Forms 8233, W-8BEN, W-8BEN-E, W-8IMY, W-8EXP, W-9, and/or W-8ECI (the "Withholding Certificates") as they are submitted electronically by Client to Deloitte Tax on an as needed basis. Deloitte Tax's assistance with the Withholding Certificates will include the following:

1. Examine the Withholding Certificates to assist in determining whether the above-mentioned forms are properly completed for U.S. tax information reporting and withholding purposes, including U.S. FATCA.
2. Provide comments on the availability of reduced rates of withholding under tax treaties based solely on claims presented on the face of the Withholding Certificates and on treaty rates identified in Internal Revenue Service ("IRS") Publication 515 and associated IRS Treaty Tables
3. Provide Client with a list of the Withholding Certificates analyzed with indications as to whether the Withholding Certificates provided appear to be complete or incomplete, and if the form appears incomplete Deloitte Tax will provide an indication of the reason the form appeared to be incomplete. Note that for Forms W-8IMY, each underlying Form W-8/W-9 would be considered a separate form for analyses and pricing purposes.
4. For Withholding Certificates that are identified as incomplete or noncompliant, Deloitte Tax will provide suggested actions to remediate and correct the incomplete or noncompliant form.

5. Assistance will be based on the face of the information provided on the Withholding Certificates provided by the Client and will not include an evaluation of other documentation provided to Client by the individuals or entities providing Client the Withholding Certificates or that Client has in its possession that are not included as part of the Withholding Certificates or the attachments to the Withholding Certificates that Client provides to Deloitte Tax for analysis.

For all Tax Advisory Services addressed in this Engagement Letter above, Deloitte Tax will assume that the data and information provided by Client is true and accurate. Further, Client acknowledges that Deloitte Tax's services are limited only to assisting Client in identifying obligations for payments related to the Tax Forms and does not include an analysis of obligations applicable to payment types that are not in-scope for the Tax Forms.

2. <u>Tax Form Preparation Services</u>

Deloitte Tax will prepare the Tax Forms identified in Exhibit A, Listing of Tax Forms Included in Engagement attached to this Engagement Letter and incorporated herein by reference from information provided by Client. The data and information provided by Client to Deloitte Tax is assumed to be true and accurate. Deloitte Tax will not test the accuracy or quality of the data. Deloitte Tax will not be responsible for identifying Tax Forms which are required to be filed. Client will be solely responsible for identifying the Tax Forms to be prepared, along with the recipients that are to receive the Tax Forms.

Deloitte Tax and Client acknowledge that certain new entities may be added to the Services provided during the term of this engagement letter. See Exhibit A for initial agreed entity filing list. Should Client request additional entities to be covered by the Services agreed herein, all terms and conditions of this Engagement Letter will apply to such additional Services and the fees for such Services will be consistent with the filing fees applicable to those entities initially included in this Engagement Letter. Additional entities added to scope of service will be agreed to in writing, which can be in the form of an e-mail between Client and Deloitte Tax. Such additional entities will be required to be identified and data required to be reported on will follow the due dates on Exhibit B of the Engagement letter.

In addition to the preparation of the Tax Forms, Deloitte Tax will, after review and approval by Client, electronically transmit the Tax Forms to the IRS and provide a file containing the recipient copies of the Tax Forms for Client to mail to the recipients.

The following outlines the key tasks that will take place as Deloitte Tax performs the Services:

1. Deloitte Tax will provide client with an Excel Template and instructions for completion to capture data to be reported on Tax Forms. Client will provide Deloitte Tax with a completed template containing the information to be reported on the Tax Forms in the format prescribed by Deloitte Tax, no later than the dates listed in Exhibit B.

2. Deloitte Tax will analyze the information for formatting issues only (i.e., the data is in the correct columns, missing information such as addresses and tax identification numbers, etc.) and communicate issues to Client for Client's correction. Client is responsible for the accuracy of the information that is provided to Deloitte Tax, e.g., the recipient names, addresses and dollar amounts.

3. Deloitte Tax will import the information into the information reporting application used by Deloitte Tax and will provide Client an error report for review, if applicable, and will request that Client provide corrections, as necessary.

Amyris, Inc.
April 4, 2023
Page 4

4.  Upon receipt of corrections provided by Client, if applicable, Deloitte Tax will import the revised information into the information reporting application and generate the final file.

5.  Deloitte Tax will provide Client with an electronic copy of the file for review and approval. Client will provide written authorization via email to electronically file the Tax Forms as described below. Upon receipt of Client's written authorization, Deloitte Tax will provide a single file for each form type in PDF format containing all the recipient copies for Client to print and mail to corresponding recipients. If client should require individual recipient PDF copies, this will be charged at an additional fee based on mutually agreed upon rates.

6.  Upon receipt of Client's written authorization, Deloitte Tax will generate the electronic file and will transmit the electronic file to the IRS.

7.  Client will provide Deloitte Tax with the information for any withholding Form 1042 and 8804 liability arose during 2022, including the date and the amount of the liability.  Deloitte Tax will prepare Forms 1042 and 8804 from the information provided by the Client and provide Client with Forms 1042 and 8804 for client to review, sign and file with the IRS.

8.  Deloitte Tax will provide Client with Form 1042 for client to review, sign and file with the IRS.

9.  Client is responsible for printing and mailing Forms 1042-S to each recipient.

10. Deloitte Tax will assist with preparation of extensions of time for related filings with the IRS.

At Client's request, Deloitte Tax will prepare corrected or duplicate Tax Forms as Client considers necessary and appropriate. This will be charged at an additional fee based on mutually agreed upon rates.

Please note that, where new information regarding information return requirements become available to Deloitte Tax after the original or extended due date, such new or additional filings will not be filed on a timely basis and will potentially be subject to penalty and associated interest. Client acknowledges that Deloitte Tax will not be responsible for any penalty or interest that is assessed on such filings that will not be filed on a timely basis.

**In order to meet the due dates imposed by the Internal Revenue Code ("IRC"), Deloitte Tax must receive the required information in the format described above no later than the dates included in Exhibit B. In order for Deloitte Tax to electronically transmit Client's files, Client must provide written authorization at least three (3) days prior to transmission to the IRS.** Deloitte Tax will notify Client of circumstances encountered that could significantly change the targeted completion dates.

**Failure to meet the Exhibit B deadlines will result in an urgency premium of 25% of the total fees related to the Payor and Form Type provided after the deadline. Client's failure to meet the deadlines described in Exhibit B may result in additional fees. Additionally, Client understands and agrees that Deloitte Tax may not be able to complete the Services in time for Client to timely file the Forms if the Exhibit B deadlines are not met.**

Deloitte Tax will assist the client with filing extensions for IRS filing copies and the Recipient filing copies for the Forms identified in Exhibit A. Further, Deloitte Tax has not been engaged to prepare Forms 1099 or any tax returns associated with Forms 1099, such as Forms 945, *Annual Return of Withheld Federal Income Tax*. To the

extent Client requests assistance with these filings, Deloitte Tax and Client will execute a separate engagement letter or an addendum to this Engagement Letter for such services.

The Deloitte Tax responsibilities in connection with providing electronic filing assistance will be limited to communicating to Client the specific procedures and responsibilities that will enable Client to comply with the IRS requirements, and the transmission of the electronic files in the form and content as authorized by the Client. Upon receipt of the written authorization, Deloitte Tax will transmit the electronic file without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. The receipt of a written authorization will be deemed by Deloitte Tax as authorization by Client to transmit Client's electronic files. Client retains responsibility for compliance with any electronic funds transfer requirements that may apply to the payment of applicable taxes.

Deloitte Tax may provide tax consulting services (also deemed as part of the "Services") with respect to issues and questions that arise during the performance of the Services under this Engagement Letter.

## UNANTICIPATED OUT-OF-SCOPE SERVICES

As the full impact of tax law changes on Client's overall tax situation and this engagement continues to evolve, the scope of our Services may need to change. In the event there is a mutually agreed, upon change in the scope of our Services, whether related to the continuing impact of new legislation changes or other items that would impact the amount of time incurred to perform the Services as currently contemplated, it may be necessary to discuss a change in our fee estimate with you. Our fees for such out-of-scope services will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved. Deloitte Tax will bring these items to Client's attention and will discuss the associated additional fees for such out-of-scope services prior to proceeding.

## TAX POSITIONS, POTENTIAL PENALTIES, TAXING AUTHORITY AUDITS

In accordance with our professional standards, while in the course of performing our Services should Deloitte Tax become aware of tax return positions for which either Client or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss with Client these positions including how any such penalties may be avoided through adequate disclosures to taxing authorities. Client should be aware that as a tax return preparer, Deloitte Tax may be required to satisfy disclosure requirements that may exceed those applicable to Client.

Unless listed in our scope of Services, our Services do not include representation of you in administrative taxing authority proceedings. However, Deloitte Tax would generally be willing to represent you in such proceedings for an additional fee that is mutually agreed upon.

## CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Engagement Letter, tax planning or preparation of tax returns, audited financial statements or other financial statements or financial information as required by a government authority, municipality or regulatory

body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

## FEES AND EXPENSES

1. <u>Tax Advisory Services</u>

Deloitte Tax fees for the Tax Advisory Services for this engagement will be based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved.

2. <u>Tax Form Preparation Services</u>

The Deloitte Tax fees for preparing and electronically filing the Tax Forms and related extensions are estimated to be $23,760. Deloitte Tax fees for this engagement and will be based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved.

The estimated fees for the Services are as follows:

- Prepare Client's 2022 Form 1042-S and 1042, and related extensions, and e-File Forms 1042-S: $16,500
- Prepare Client's 2022 Form 8804 and 8805, and related extensions: $7,260

Deloitte Tax will also bill you (i) reasonable out-of-pocket expenses and (ii) an allocation of estimated administrative and technology costs incurred (e.g., tax technology, research materials, etc.) equal to five (5) percent of professional fees. Hourly rates of our Washington National Tax and other subject matter specialists may exceed the hourly rates of our local office professionals. Reasonable out-of-pocket expenses incurred and allocated costs are reflected as additional amounts on the bills.

The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the tax authorities, nor are those amounts contingent or refundable.

## ACCEPTANCE

This Engagement Letter, including the attached Exhibits A and B, together with the General Business Terms attached hereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Amyris, Inc.
April 4, 2023
Page 7

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the tax services described in this Engagement Letter, or any other assistance that Deloitte Tax may provide to you, please feel free to contact me at (415) 783-4575 or Matt Walton at (408) 704-4082 .

Very truly yours,

DELOITTE TAX LLP

By: _____
Peter Larsen
Tax Principal

AGREED AND ACCEPTED

Amyris, Inc., on behalf of itself and its subsidiaries and/or affiliates, including Aprinnova LLC

By:    *Elizabeth E. Dreyer*
      _____
      Elizabeth Dreyer

Title:    CAO/Corporate Controller
        _____

Date:    4/13/23
        _____

Amyris, Inc.
April 4, 2023
Page 8

Exhibit A

Listing of Tax Forms Included in Engagement

| Entity Name | Form Number | Form Name |
|---|---|---|
| Amyris, Inc. | Form 1042-S | Foreign Person's U.S. Source Income Subject to Withholding |
| Amyris, Inc. | Form 1042 | Annual Withholding Tax Return for U.S. Source Income of Foreign Persons |

| Entity Name | Form Number | Form Name |
|---|---|---|
| Aprinnova, LLC | Form 1042-S | Foreign Person's U.S. Source Income Subject to Withholding |
| Aprinnova, LLC | Form 1042 | Annual Withholding Tax Return for U.S. Source Income of Foreign Persons |
| Aprinnova, LLC | Form 8804 | Annual Return for Partnership Withholding Tax (Section 1446) |
| Aprinnova, LLC | Form 8805 | Foreign Partner's Information Statement of Section 1446 Withholding Tax |

Amyris, Inc.
April 4, 2023
Page 9

Exhibit B

Listing of Return Due Dates and Deadlines

If any date shown falls on a Saturday, Sunday or legal holiday, the due date is the next business day.

| Form | Title | Due Date (No Extension) | | | Due Date (With Extension) | | |
|------|-------|--------|--------|--------|--------|--------|--------|
| | | To IRS | To Recipient | Data to Deloitte Tax | To IRS | To Recipient | Data to Deloitte Tax |
| 1042 | Annual Withholding Tax Return for U.S. Source Income of Foreign Persons | March 15 | N/A | February 20 | September 15 | N/A | August 25 |
| 1042-S | Foreign Person's U.S. Source Income Subject to Withholding | March 15 | March 15 | February 20 | April 14 | April 14 | March 20 |
| 8804 | Annual Withholding Tax Return for U.S. Source Income of Foreign Persons | March 15 | N/A | February 20 | September 15 | N/A | March 15 |
| 8805 | Foreign Person's U.S. Source Income Subject to Withholding | March 15 | March 15 | February 20 | September 15 | September 15 | March 15 |

*Assumes electronic submission to the IRS.

Amyris, Inc.
April 4, 2023
Page 10

<u>DELOITTE TAX LLP GENERAL BUSINESS TERMS</u>

1.  **Contract and Parties.**

(a)  The engagement letter and any appendices and exhibits other than these General Business Terms ("Engagement Letter") issued by Deloitte Tax LLP ("Deloitte Tax") and addressed to the Client, a particular work order associated with such Engagement Letter ("Work Order"), if any, and these General Business Terms (together, the "Contract") constitute the whole agreement between the Client and Deloitte Tax in relation to the services, delivered work product (including Advice as defined below) described in the Contract to be provided by Deloitte Tax (the "Services") and Deloitte Tax's responsibilities for providing the Services. Capitalized terms not defined in these General Business Terms shall have the meaning given to them in the Engagement Letter.

(b)  This Contract is between the Client and Deloitte Tax. For the purposes of this Contract:

"Client" shall mean the entity specified in the Engagement Letter and shall include such of the Client's subsidiaries and/or affiliates as identified in the Engagement Letter and/or Work Order or, if none is identified, all of the Client's subsidiaries and affiliates. The signatory of the Engagement Letter represents and warrants that it has the power and authority to (i) sign the Contract, and (ii) to bind, itself and its subsidiaries and/or affiliates.

"Advice" shall mean all advice, opinions, reports and other work product in any form (including Deliverables) provided by or on behalf of Deloitte Tax and/or its Subcontractors as part of the Services.

"Content" means any publications, thought pieces or other content or materials that are provided by Deloitte Tax or through the Deloitte Technologies that are not an output of the Services.

"Deliverables" means any and all tangible work outputs of the Services to be delivered by Deloitte Tax as part of the Services, including written returns, reports, documents and other materials.

(c)  Deloitte Tax may subcontract any Services under this Contract to any other Deloitte Entity and/or to any other third party, in either case whether within or outside of the United States (collectively "Subcontractor"). Additionally, Deloitte Tax may utilize other Deloitte Entities and third parties (in either case whether within or outside the United States) to provide administrative, infrastructure, hosting, the use of cloud-based solutions and other support services to Deloitte Tax (including with respect to the Deloitte Technologies). The Client's relationship is solely with Deloitte Tax as the entity contracting to provide the Services. Each party to the Contract is an independent contractor and neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner, or representative.

(d)  Deloitte Tax remains responsible to the Client for all of the Services performed or to be performed under this Contract, including Services performed by its Subcontractors. Accordingly, to the fullest extent possible under applicable law (i) none of the Deloitte Entities (except Deloitte Tax) will have any liability to the Client; (ii) the Client will not bring any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities (except Deloitte Tax); and (iii) the Client will also ensure that no Client subsidiary or affiliate which is not a party to the Contract brings any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities.

(e)  "Deloitte Entities" means Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its member firms and their respective subsidiaries and affiliates (including Deloitte Tax), their predecessors, successors and assignees, and all partners, principals, members, owners, directors, employees, subcontractors (including the Subcontractors) and agents of all such entities. Neither DTTL nor, except as expressly provided herein, any member firm of DTTL, has any liability for each other's acts or omissions. Each member firm of DTTL is a separate and independent legal entity operating under the names "Deloitte", "Deloitte & Touche", "Deloitte Touche Tohmatsu" or other related names; and services are provided by member firms or their subsidiaries or affiliates and not by DTTL.

2.  **Responsibilities of the Client and of Deloitte Tax.**

(a)  **Responsibilities of the Client**
(i)  The Client shall cooperate with Deloitte Tax and its Subcontractors in connection with the performance of the Services, including, without limitation, providing Deloitte Tax and its Subcontractors with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and third parties retained by the Client, for the timeliness, accuracy and completeness of all data and information (including all financial information and statements) provided to Deloitte Tax and its Subcontractors by or on behalf of the Client and for the implementation of any Advice provided. Deloitte Tax and its Subcontractors may use and rely on information and data furnished by the Client or others without verification. The performance of the Services is dependent upon the timely performance of the Client's responsibilities under the Contract and timely decisions and approvals of the Client in connection with the Services. Deloitte Tax and its Subcontractors shall be entitled to rely on all decisions and approvals of the Client.

(ii)  The Client shall be solely responsible for, among other things: (A) making all management decisions, performing all management functions and assuming all management responsibilities; (B) designating one or more individuals who possess suitable skill, knowledge, and/or experience, preferably within senior management to oversee the Services; (C) evaluating the adequacy and results of the Services; (D) accepting responsibility for implementing the results of the Services; and (E) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities. The provisions in the preceding sentence are not intended to and do not alter, modify or change in any manner the duties and obligations of Deloitte Tax as agreed to and set forth in this Contract. With respect to the data and information provided by the Client to Deloitte Tax or its Subcontractors for the performance of the Services, the Client shall have all rights required to provide such data and information and shall do so only in accordance with applicable law and with any procedures agreed upon in writing.

(b)  **Responsibilities of Deloitte Tax**
(i)  The Services provided are not binding on tax or other governmental or regulatory authorities or the courts and do not constitute a representation, warranty, or guarantee that the tax or other governmental or regulatory authorities or the courts will concur with any Advice. Any Services provided by or on behalf of Deloitte Tax will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time the specific Services are provided. Subsequent changes in or to the foregoing (for which Deloitte Tax shall have no responsibility to advise the Client) may result in the Services provided by or on behalf of Deloitte Tax being rendered invalid.

(ii)  Except as specifically agreed to in writing, Deloitte Tax shall not provide Advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility

for any financial reporting with respect to the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law in relation to the Services.

(iii)  In formulating any Advice as part of the Services, Deloitte Tax may discuss ideas with the Client orally or show the Client drafts of such Advice. To the extent that the content of drafts or oral Advice are expected to be finalized and confirmed to the Client in writing, such confirmed Advice shall supersede any previous drafts or oral Advice and Deloitte Tax shall not be responsible if the Client or others choose to rely on, act or refrain from acting on the basis of any drafts or oral Advice.

(iv)  Deloitte Tax will use its reasonable endeavors, acting in a commercially prudent manner, to carry out the Services in accordance with any timetable specified in the Contract. However, it is agreed that any dates specified in the Contract for the performance of any part of the Services, including delivery of any Advice, are estimated dates for planning purposes only. Deloitte Tax will notify the Client promptly if it expects or encounters any significant delays which will materially affect achievement of any timetable for delivery of the Services.

(v)   Unless expressly agreed otherwise in writing, each item of Advice will be deemed accepted (and the Services or relevant part completed) when such Advice has been delivered in its final form and no material objection to the Advice or its content is notified by the Client to Deloitte Tax in writing within fourteen (14) days of delivery or when first use of the Advice is made by or on behalf of the Client, whichever occurs first.

## 3.   Payment of Invoices.

Deloitte Tax's invoices are due and payable by the Client upon presentation. If payment of an invoice is not received within thirty (30) days of the invoice date ("Due Date"), Deloitte Tax reserves the right to charge interest at the rate of  (i) 1½% per month or, if higher, (ii) the rate mandated or allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its other rights or remedies, Deloitte Tax shall have the right to suspend or terminate the Services entirely or in part if payment is not received by the Due Date. The Client shall be responsible for all taxes, such as VAT, sales and use tax, gross receipts tax, withholding tax, and any similar tax, imposed on or in connection with the Services, other than Deloitte Tax's income and property taxes. If any portion of an invoice is disputed, the Client shall notify Deloitte Tax within fifteen (15) days of receipt of the disputed invoice and pay the undisputed portion of that invoice by the Due Date.

## 4.   Term.

(a)  This Contract or any Work Order hereunder, may be terminated in whole or in part by either party at any time, without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination.

(b)  Either party may terminate this Contract or any Work Order hereunder in whole or in part by written notice to the other on or at any time after the occurrence of any of the following events:  (i) a material breach by the other party of an obligation under the Contract or any respective Work Order hereunder and, if the breach is capable of remedy, the defaulting party failing to remedy the breach within 30 days of receipt of notice of such breach; (ii) the other party becomes insolvent or goes into liquidation; (iii) the other party has a resolution passed or a petition presented for its winding-up or dissolution (other than for the purpose of a solvent amalgamation or reconstruction); (iv) the making of an administration order in relation to the other party, or the appointment of a receiver over, or an encumbrancer taking possession of or selling, an asset of the other party; (v) the other party making an arrangement or composition with its creditors generally or making an application to a court of competent jurisdiction for protection from its creditors generally; or (vi) any event analogous to those set out in (ii) to (v) in any relevant jurisdiction.

(c)   Deloitte Tax may terminate this Contract or any Work Order hereunder in whole or in part, with immediate effect upon written notice to the Client if Deloitte Tax determines that (i) a governmental, regulatory, or professional entity, or other entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte Tax's performance of any part of the Contract illegal or otherwise unlawful or in conflict with independence or professional rules; or (ii) circumstances change (including, without limitation, changes in ownership of the Client or of its affiliates) so that Deloitte Tax's performance of any part of the Contract would be illegal or otherwise unlawful or in conflict with independence or professional rules.

(d)   Upon termination of the Contract or any Work Order hereunder for any reason, the Client will compensate Deloitte Tax in accordance with the terms of the Contract for the Services performed and expenses incurred through the effective date of termination.

(e)   Termination of any part of the Contract shall not affect the remainder of the Contract. These General Business Terms shall continue to apply to any Work Order in force that has not itself been terminated in accordance with the provisions of Paragraphs 4(a), (b) or (c).

5.   **Ownership of Deloitte Property & Work Products.**

(a)   To the extent that any property (whether tangible or intangible) of any Deloitte Entity is used or developed in connection with this Contract, such property, including work papers, shall remain the property of the relevant Deloitte Entity. Subject to payment of all of Deloitte Tax's fees due in connection with the Services and this Contract, the Client shall obtain a perpetual, royalty-free, non-exclusive, non-transferable license to use any Advice for the purpose set out in the Contract (or in the Advice) and in compliance with the provisions of this Contract. Deloitte Tax shall have ownership (including, without limitation, copyright and other intellectual property ownership) of the Advice and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall ensure that it and its subsidiaries and/or affiliates do not assert or cause to be asserted against any Deloitte Entity any prohibition or restraint from so doing. Any intellectual property and other proprietary rights in the material and data provided by the Client for performing the Services shall remain the property of the Client.

(b)   Deloitte Tax and its Subcontractors, in connection with performing the Services, may develop or acquire general experience, skills, knowledge and ideas. Any Deloitte Entity may use and disclose such experience, skills, knowledge and ideas subject to the obligations of confidentiality set out in Paragraph 10.

(c)   The Client shall also be entitled to have access to and use of those Deloitte Technologies supplied solely for the purposes of receiving the Services, and for no other purposes, in accordance with and subject to the provisions of the terms of use and licenses that may be applicable to such Deloitte Technologies as notified by Deloitte Tax and agreed by the Client (acting reasonably). Client shall be responsible for all personnel (including other third parties, such as advisors) that Client and Deloitte Tax have agreed shall have access to the Deloitte Technologies in connection with the Services.  As between the Client and Deloitte Tax, and for the benefit of the respective Deloitte Entity owning the Deloitte Technologies, Deloitte Tax and/or the respective Deloitte Entity will own and retain ownership of all intellectual property rights and other proprietary rights of any kind in the Deloitte Technologies that are used or developed in connection with this Contract.

(d)   To the extent any Deloitte Technologies provided to Client hereunder constitute inventory within the meaning of section 471 of the Internal Revenue Code, such Deloitte Technologies are licensed to Client by Deloitte Tax as agent for Deloitte Tax Products Company LLC on the terms and conditions contained herein. The

rights granted in this Paragraph 5 do not apply to any intellectual property that is subject to a separate mutually executed license agreement between Client and any third party (including Deloitte Tax's affiliates).

(e) "Deloitte Technologies" means all know-how and software, system interfaces, templates, methodologies, ideas, concepts, techniques, tools, processes, Content and technologies, including cloud-based technologies and algorithms owned by, licensed to or developed by any Deloitte Entity and used by Deloitte Tax and its Subcontractors in performing the Services or its other obligations.

## 6.    Limitations on Damages.

(a)    Deloitte Tax shall not be liable to the Client for any claims, liabilities, losses, damages, costs or expenses arising under or in connection with the Contract ("Claims") for an aggregate amount in excess of the fees paid under the Contract, or the fees paid under a particular Work Order for Claims arising under such Work Order, by the Client to Deloitte Tax, for that part of the Services giving rise to the Claim, except to the extent it is finally determined to have resulted primarily from the intentional fraud, intentional misconduct or bad faith of Deloitte Tax, any Deloitte Entity or any Subcontractor retained for providing the Services to the Client.

(b)    In no event shall any Deloitte Entity (including Deloitte Tax and its Subcontractors) be liable whether in contract, tort or otherwise for any losses incurred as a result of loss of use, contracts, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense arising under or in connection with the Contract.

(c)    In circumstances where all or any portion of the provisions of this Paragraph 6 are finally determined to be unavailable, the aggregate liability of Deloitte Tax, any other Deloitte Entity (including Subcontractors) and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

(d)    Deloitte Tax's responsibility for the Services is solely toward the Client identified in the Contract or Advice to be entitled to rely on the Services, and not toward any other subsidiary or affiliate of the Client. If more than one Client subsidiary or affiliate is a party to the Contract or is identified in the Contract, Deloitte Tax's responsibility is solely toward the Client for whose benefit the Services were provided.

(e)    The liability cap in Paragraph 6(a) applies in aggregate to each and all Claims which from time to time arise under or in connection with the Contract and the Services, whether such Claims are made at the same or different times or by the Client entity and/or other persons. The liability cap in Paragraph 6(a) also applies to any and all Claims against any other Deloitte Entities, including the Subcontractors, if and only to the extent that it is judicially determined that any of them have any liability under or in connection with the Contract or the Services.

(f)    If the liability exclusion for other Deloitte Entities provided in Paragraph 1(d) is for any reason not effective, then the limitations on liability provided for in this Paragraph 6 shall apply to the other Deloitte Entities (including Subcontractors) as if they were named therein.

(g)    The provisions of Paragraph 6 shall not apply to any liability which by the governing law of the Contract is unlawful to limit or exclude.

## 7.    Limitation on Warranties.

THIS IS A SERVICES AGREEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE AND SKILL. TO THE FULLEST EXTENT PERMITTED BY LAW, DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

8.   Force Majeure.

Neither party shall be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), fire or other casualty, act of God, epidemic, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

9.   Limitation on Actions.

No action, regardless of form, relating to the Contract or the Services, may be brought by either party more than two years after the cause of action has accrued under applicable law, except that an action for non-payment of Deloitte Tax's invoices by the Client may be brought at any time.

10.  Confidentiality.

(a)  To the extent that, in connection with the Contract, Deloitte Tax comes into possession of any tax or other information related to the Services, trade secrets or other proprietary information relating to the Client which is either designated by the disclosing party as confidential or is by its nature clearly confidential ("Confidential Information"), Deloitte Tax shall not disclose such Confidential Information to any third party without the Client's consent. The Client hereby consents to Deloitte Tax disclosing such Confidential Information (i) to contractors providing administrative, infrastructure, hosting, cloud-based solutions and other support services to Deloitte Tax as well as to any Deloitte Entity (including any Subcontractors) and their respective personnel, in any case, whether located within or outside of the United States, provided that such contractors and Subcontractors adhere to confidentiality obligations similar to those in this Paragraph 10; (ii) to Client's legal advisors, auditors, and insurers; and (iii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with potential or actual mediation, arbitration or litigation. To the extent permitted by applicable law or regulation, Deloitte Tax shall provide the Client with prompt written notice of disclosures required by law, regulation, judicial or administrative process.   The obligation of confidentiality shall not apply to the extent such Confidential Information (A) is or becomes publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a breach by Deloitte Tax; (B) becomes available to any Deloitte Entity on a non-confidential basis from a source other than the Client which Deloitte Tax reasonably believes is not prohibited from disclosing such Confidential Information to Deloitte Tax by an obligation of confidentiality to the Client; (C) is known by any Deloitte Entity prior to its receipt from the Client without any obligation of confidentiality; or (D) is developed by any Deloitte Entity independently of Confidential Information disclosed by the Client.

(b)  The Client shall not disclose to any third party any Advice without the express written consent of Deloitte Tax, except (i) disclosure may be made to the extent mandatory laws, applicable regulations, rules and professional obligations prohibit limitations on disclosure; (ii) if the Client or its affiliates have securities registered with the United States Securities and Exchange Commission and any Deloitte Entity is the auditor of the Client or any of its affiliates, in which case no restrictions or limitations are placed by Deloitte Tax on the Client's disclosure of  the tax treatment or tax structure associated with the tax Services or transactions described in the Contract and the Client acknowledges that none of its other advisors has imposed or will impose

restrictions or limitations with such tax treatment or tax structure; (iii) to the extent the United States Internal Revenue Code and applicable Internal Revenue Service guidance relating to confidential tax shelters (or comparable law or guidance from other taxing authorities in other jurisdictions) apply, in which case there are no restrictions or limitations on the disclosure of the tax treatment or tax structure; (iv) to the extent legislation or regulations of any jurisdiction provide for the reporting to the tax authorities of certain tax arrangements or transactions, there shall be no restrictions or limitations on the disclosure of any such arrangements or transactions provided as part of the Advice; (v) the Client may disclose the Advice on a need to know basis to any affiliate that is not a member of the Client for information purposes only, provided that the Client ensures and the recipient undertakes to keep such Advice confidential and not to bring any claim of any kind against any Deloitte Entity in relation to the Advice or the Services; and (vi) on a need to know basis to statutory auditors of the Client in their capacity as such.

(c)   The Client shall use the Advice, solely for the purposes specified in the Contract or Advice and, without limitation, shall not, without the prior written consent of Deloitte Tax, use any Advice, in connection with any business decisions of any third party or for advertisement purposes. All Services are intended only for the benefit of the Client identified in the Contract or Advice as being entitled to rely on the Advice. The mere receipt of any Advice (or any information derived therefrom) by any other persons is not intended to create any duty of care, professional relationship or any present or future liability of any kind between those persons and Deloitte Tax.

## 11.  Assignment.

Neither party may assign or otherwise transfer this Contract without the prior express written consent of the other. Neither party will directly or indirectly agree to assign or transfer to a third party any Claim against the other party arising out of this Contract.

## 12.  Indemnification.

The Client shall indemnify and hold harmless Deloitte Tax, and any other Deloitte Entity from all third-party Claims, except to the extent finally determined to have resulted primarily from the intentional fraud, intentional misconduct or bad faith of Deloitte Tax, or any other Deloitte Entity. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax and all other Deloitte Entities (including their respective personnel) for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

## 13.  Electronic Communications.

(a)   Except as instructed otherwise in writing, Deloitte Entities and the Client are authorized to receive properly addressed fax, e-mail (including e-mails exchanged via Internet media) and voicemail communication for both sensitive and non-sensitive documents and other communications concerning this Contract, as well as other means of communication used or accepted by the other. Deloitte Entities may also communicate electronically with tax and other authorities.

(b)  It is recognized that the internet is inherently insecure and that data can become corrupted, communications are not always delivered promptly (or at all) and that other methods of communication may be appropriate. Electronic communications are also prone to contamination by viruses. Each party will be responsible for protecting its own systems and interests and, to the fullest extent permitted by law, will not be responsible to the other on any basis (contract, tort or otherwise) for any loss, damage or omission in any way arising from the use of the internet or from access by any Deloitte Entity personnel to networks, applications, electronic data or other systems of the Client.

Amyris, Inc.
April 4, 2023
Page 17

## 14.  Other Clients.

Nothing in this Contract will prevent or restrict any Deloitte Entity, including Deloitte Tax, from providing services to other clients (including services which are the same or similar to the Services) or using or sharing for any purpose any knowledge, experience or skills used in, gained or arising from performing the Services subject to the obligations of confidentiality set out in Paragraph 10 even if those other clients' interests are in competition with the Client. Also, to the extent that Deloitte Tax possesses information obtained under an obligation of confidentiality to another client or other third party, Deloitte Tax is not obliged to disclose it to the Client, or use it for the benefit of the Client, however relevant it may be to the Services.

## 15.  Staff.

Deloitte Tax and the Client each agree not to directly or indirectly solicit, employ or engage any personnel of the other party who within six (6) months of such action has been involved directly with the provision of the Services or otherwise directly connected with this Contract, except where an individual responds directly to a general recruitment campaign.

## 16.  Destruction of Working Papers.

Deloitte Tax may retain copies of documents and files provided by the Client in connection with the Services for purposes of compliance with professional standards and internal retention policies. Any documents and files retained by Deloitte Tax on completion of the Services subject to the obligations of confidentiality set forth in Paragraph 10(a) (including documents legally belonging to the Client) may routinely be destroyed in accordance with Deloitte Entities' policies applying from time to time.

## 17.  Marketing Material & Use of Name.

Neither the Deloitte Entities nor the Client shall use the other's name, trademarks, service marks, logos, and/or branding in external publicity material without such other party's prior written consent.

## 18.  Spreadsheets, Models and Tools.

In the course of providing the Services, Deloitte Tax may make reference to spreadsheets, models or tools (together "Models") that the Client provides to Deloitte Tax or requests Deloitte Tax to rely upon ("Client Models") or that Deloitte Tax otherwise uses in connection with the Services ("Deloitte Models"). All Models have limitations and may not produce valid results for all possible combinations of input data with the result that actual and potential errors are not detected. Unless otherwise expressly agreed in the Contract: (i) Deloitte Tax will not be responsible for reviewing, testing or detecting any errors in any Client Models; (ii) no Deloitte Model will be provided or treated as Advice; and (iii) where Deloitte Tax provides any Deloitte Model by way of explanation or illustration of any Advice, Deloitte Tax makes no representation, warranty or undertaking (express or implied) of any kind about the accuracy, suitability or adequacy of any such Deloitte Model for the Client's own needs.

### 19.  Data Protection.

(a)  Each party shall comply with its respective obligations under the applicable data protection laws to the extent that, in connection with the Contract and the Services, a party stores, processes and transfers any personal data to which data protection laws apply ("Personal Data").

(b)  The Client confirms that it has obtained all legally required authorizations to disclose and/or transfer any Personal Data to Deloitte Tax and its Subcontractors, including across borders and outside the territory of the European Economic Area ("EEA").

(c)  Deloitte Tax may collect data from the Client, other Deloitte Entities, third parties and the data subject directly. Deloitte Tax may for purposes of the collection, use, storage or processing thereof, transfer the Client's and/or the data subject's Personal Data to: (i) administrative contractors, including providers of cloud-based solutions; (ii) another country for legitimate purposes; (iii) another Deloitte Entity.

(d)  To the extent that Deloitte Tax processes Personal Data in or transferred from the EEA in its performance of the Services and to the extent that the EU General Data Protection Regulation 2016/679 ("GDPR") applies, the remainder of the provisions of this Paragraph 19 shall apply.

(e)  In this Paragraph 19, "Data Protection Legislation" means GDPR, together with all other applicable legislation relating to privacy or data protection including any statute or statutory provision which amends, extends, consolidates or replaces the same. The terms "personal data," "data subject," "controller," "processor" and "process" (and its derivatives) shall have the meanings given to them in the Data Protection Legislation.

(f)  The parties acknowledge that certain of the Services may be performed by Deloitte Tax acting as a controller and certain Services may be performed by Deloitte Tax acting as a processor. The Contract shall identify whether it is the understanding of the parties that Deloitte Tax carries out the particular Services as a controller or a processor. In the absence of any such indication, the capacity in which Deloitte Tax acts shall be determined in accordance with the Data Protection Legislation. When acting as a controller, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.1 shall apply. When acting as a processor, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.2 shall apply. Where Deloitte Tax acts as a processor, the Contract shall set out the scope of the processing carried out by Deloitte Tax in relation to the Services.

### 19.1 If Deloitte Tax Is Acting As Data Controller

(a)  Each of the Client and Deloitte Tax shall be considered to be a controller in respect of Personal Data disclosed to Deloitte Tax by or on behalf of the Client and processed in connection with the Contract and the Services and each of the Client and Deloitte Tax shall comply with its obligations as a controller under the Data Protection Legislation in respect of Personal Data processed by it in connection with the Contract and the Services.

(b)  The Client acknowledges that Deloitte Tax may process Personal Data as a controller for the purpose of, or in connection with the Services to comply with: (i) applicable legal, professional or regulatory requirements; (ii) requests and communications from competent authorities as permitted by law; and (iii) administrative, financial accounting, risk analysis, client relationship and other reasonable business purposes.

(c)   The Client shall collect any necessary permission, provide any necessary notice and do all such other things as are required under the Data Protection Legislation in order for it to disclose Personal Data to Deloitte Tax for the purposes described in Paragraph 19.1(b) and such other purposes as may be described in the Contract.

(d)   Deloitte Tax shall process the Personal Data as reasonably required to provide the Services, meet its legal or regulatory obligations or for its other reasonable business purposes (including quality control and administration) and may disclose Personal Data to any third parties including its Subcontractors, regulators and any party based in any jurisdiction including a jurisdiction outside the EEA provided that such disclosure is reasonably required in connection with such purposes and is at all times in compliance with the Data Protection Legislation that applies to Deloitte Tax in its performance of the Services.

## 19.2 If Deloitte Tax Is Acting As Data Processor

(a)   Where Deloitte Tax may process Personal Data as a processor Deloitte Tax shall: (i) only process Personal Data: (A) to the extent necessary to provide the Services; (B) in accordance with the specific reasonable instructions of the Client (except to the extent, in the reasonable opinion of Deloitte Tax, such instructions infringe the Data Protection Legislation or other applicable law, in which case Deloitte Tax shall notify the Client); or (C) as required by any competent authority or law that applies to Deloitte Tax in its performance of the Services; (ii) implement appropriate technical and organizational measures designed to provide a level of security appropriate to the risk relating to its processing of the Personal Data and any security measures specified in the Contract; (iii) keep, and require that its personnel and agents keep, Personal Data confidential in accordance with Deloitte Tax's confidentiality obligations contained in Paragraph 10(a); (iv) notify the Client in writing without undue delay, and provide reasonable cooperation after becoming aware of a personal data breach (that is, a breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data processed by Deloitte Tax) relating to Personal Data in Deloitte Tax's possession or control; (v) provide reasonable cooperation and assistance to the Client in relation to any request by a data subject to have access to Personal Data held about them or in relation to a reasonable request, allegation or complaint by a competent authority or data subject, including notifying the Client in writing without undue delay of receipt of any such request (except to the extent prevented from doing so by applicable law); (vi) be entitled to recover any reasonable costs incurred in complying with Paragraph 19.2(a)(v) above, or as result of assisting the Client in meeting its obligations under the Data Protection Legislation; (vii) subject to applicable legal, professional or regulatory requirements or business practices, at the reasonable request of the Client, delete or return all Personal Data to the Client on termination or expiry of the Contract and in such circumstance the provisions of Paragraph 19.1 apply.

(b)   To the extent required by Data Protection Legislation applicable to Deloitte Tax in its performance of the Services, Deloitte Tax shall maintain a record of its processing activities and provide such cooperation and information to the Client as is reasonably necessary for the Client to demonstrate compliance with its obligations pursuant to Data Protection Legislation. Such cooperation shall include permitting the Client, at the Client's sole cost and expense, to audit Deloitte Tax's compliance with this Paragraph 19.2 provided that (unless expressly required otherwise by any competent authority): (i) reasonable notice of not less than thirty (30) days is given of any proposed audit and the parties shall, acting reasonably, agree to the scope and parameters of any such audit; (ii) to the extent the audit scope is covered in any audit carried out for Deloitte Tax by an independent third party auditor within twelve (12) months prior to the Client's audit request and there have been no material changes to the controls audited, Deloitte Tax may share the report to the extent relevant to the Client and the disclosure of such report shall be deemed to satisfy the audit request made by the Client; (iii) where, acting reasonably, a specific audit is still required by the Client, such audit shall be conducted during regular business hours, subject to Deloitte Tax's policies and confidentiality requirements and may not unreasonably interfere with Deloitte Tax's business activities; (iv) the audit shall be subject to Deloitte Tax's duties of confidentiality

owed to any of its clients, personnel or other parties; and (v) the rights granted in this Paragraph 19.2(b) may not be conducted more than once in any calendar year.

(c)  The Client authorizes Deloitte Tax to use any Subcontractor, including any Deloitte Entity, to process Personal Data as a subprocessor of Deloitte Tax provided that Deloitte Tax shall (i) procure that such processing is subject to a written contract or other legal act with such subprocessor containing data protection obligations no less onerous than those set out in this Paragraph 19.2; and (ii) remain liable for the acts and omissions of any such subprocessor with respect to the processing of Personal Data to the same extent Deloitte Tax would be liable if it had caused such acts or omissions. Deloitte Tax's material subprocessors who have been engaged to perform Services for Client, if any, are listed in the Contract.

(d)  Deloitte Tax shall be entitled to (i) transfer Personal Data to, and (ii) process Personal Data in, any jurisdiction including a jurisdiction outside the EEA, including to any Subcontractor, provided that such transfer is either permissible or legitimized by a valid transfer mechanism under Data Protection Legislation or as otherwise permitted under the Contract.

## 20.  Anti-corruption and Sanctions.

(a) Deloitte Tax understands that the Client may be subject to laws that prohibit bribery and/or providing anything of value to government officials with the intent to influence that person's actions in respect of the Client. Deloitte Tax may be subject to similar laws and codes of professional conduct and has its own internal policies and procedures which prohibit illegal or unethical behaviors. In providing the Services, Deloitte Tax undertakes not to offer, promise or give financial or other advantage to another person with the intention of inducing a person to perform improperly or to reward improper behavior for the benefit of the Client, in each case, in violation of applicable law.

(b) Each party shall comply with all economic sanctions, export control, and import laws and regulations applicable to it in (or having an impact on) providing and receiving the Services under this Contract.  The parties recognize that such laws and regulations restrict the export and reexport of the Services and Deliverables to jurisdictions subject to territorial economic sanctions (currently, e.g., Russia).

## 21.  Disclosure Laws.

The Deloitte Entities may be obligated to notify relevant authorities of certain types of arrangements and of proposals to implement such arrangements. The decision to make such a notification, its timing and content, is a matter that the Deloitte Entities reserve entirely to their sole discretion. The Deloitte Entities may also be obligated to notify those authorities of the participants in those arrangements. The Client may also have obligations under the same legislation to give notification of such arrangements. Where there are other current or future laws or regulations in any jurisdiction that require disclosure relevant to the Deloitte Entities Services, the Deloitte Entities will also comply with those disclosure requirements. For the avoidance of doubt nothing in this Contract restricts the Client from disclosing any Deliverables or other Advice to any relevant authority.

## 22.  Counterparts and Language.

This Contract may be signed in any number of counterparts (whether such counterparts are original or fax or in the form of a pdf attachment to an e-mail). Each signed counterpart shall be deemed to be an original thereof, but all the counterparts shall together constitute one and the same instrument. Where there are versions of the Contract in the English language and another language, in the event of any discrepancies between versions, the English language version shall prevail.

23.  Entire Agreement, Modification and Effectiveness.

Nothing discussed prior to execution of the Contract induced, nor forms part of, the Contract except to the extent repeated in this Contract. This Contract supersedes any previous agreement, understanding or communication, written or oral, relating to its subject matter. No variation to the Contract shall be effective unless it is documented in writing and signed by authorized representatives of both parties, provided, however, that the scope of the Services may be changed by agreement of the parties in writing, including by e-mail or fax. If Deloitte Tax has already started work (e.g., by gathering information, project planning or giving initial advice) at the request of the Client then the Client agrees that this Contract is effective from the start of such work.

24.  Survival and Interpretation and Third-Party Beneficiary.

(a)  Any provisions of the Contract which either expressly or by their nature extend beyond the expiration or termination of this Contract shall survive such expiration or termination.

(b)  If any provision of the Contract is found by a court of competent jurisdiction or other competent authorities to be unenforceable, in whole or in part, such provision or the affected part shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein. **Each of the provisions of the Contract or any Work Order shall apply to the fullest extent of the law, whether in contract, statute, tort (including without limitation negligence), or otherwise, notwithstanding the failure of the essential purpose of any remedy.** Any references herein to the term "including" shall be deemed to be followed by "without limitation".

(c)  Deloitte Entities are intended third-party beneficiaries of the Contract. Each such Deloitte Entity may in its own right enforce such terms, agreements and undertakings.

25.  Governing Law and Submission to Jurisdiction.

This Contract, and all matters relating to it (including non-contractual obligations) shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). Any action or proceeding arising out of or relating to this Contract or the Services shall be brought and maintained exclusively in New York County, the State of New York. Subject to Paragraph 26, the parties hereby expressly and irrevocably: (i) submit to the exclusive jurisdiction of such courts for the purposes of any such action or proceeding and (ii) waive, to the fullest extent permitted by law, any defense of inconvenient forum to the venue and maintenance of such action in any such courts. Nothing in this paragraph will prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy. **DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THE CONTRACT.**

26.  Dispute Resolution.

The parties agree to attempt in good faith to resolve any dispute or claim arising out of or in connection with the Contract promptly through negotiations between senior management. If the matter is not resolved through negotiation, then either party may request that a good faith attempt is made to resolve the dispute or claim by participating in an Alternative Dispute Resolution ("ADR") procedure. If the dispute or claim has not been

resolved within sixty (60) days of a request being made for reference to ADR, then legal proceedings may be commenced in respect of the matter. Nothing in this paragraph prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy.

### 27. Third Parties and Internal Use.

Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax services or transactions described in the Contract. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014, or IRC sections 6011 and 6111 and related IRS guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax services or transactions described in the Contract. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports, or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

Amyris, Inc.
April 4, 2023
Page 23

## Deloitte Tax LLP Privacy Statement

Last revised: January 1, 2023

**Introduction**

This Privacy Statement explains what personal information we may collect about you in connection with our services engagement and how this personal information may be used and shared. This Privacy Statement also sets out your rights in relation to your personal information and tells you who you can contact if you have questions.

**To whom does this Privacy Statement apply and what does it cover?**

This Privacy Statement applies to Deloitte Tax LLP (also referred to as "Deloitte Tax", "we", "us", and "our"), an entity within the Deloitte Network. As used in this Privacy Statement, the "Deloitte Network" refers to one or more of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its network of member firms and their related entities. DTTL and each of its member firms are legally separate and independent entities. Please see deloitte.com/about for a detailed description of the legal structure of Deloitte Touche Tohmatsu Limited and its member firms.

This Privacy Statement sets out how we will process your personal information as part of our provision of tax, social security and (in certain jurisdictions outside of the United States) immigration related services as may be relevant to you. Deloitte Tax is providing these services either under a direct contract with you or via a contract with another person (such as a company or a partnership or a trustee) who has asked us to provide the services.

Your personal information will be protected and handled with consideration for its confidentiality and Deloitte Tax will only disclose it as set out in the "To whom will we disclose your personal information?" section below.

In this Privacy Statement, we refer to handling, collecting, protecting and storing your personal information as "processing".

**What personal information do we collect?**

Deloitte Tax may collect personal information relating to you such as:

- name
- contact details (such as work or home address, email and phone numbers)
- date of birth
- government identifiers (such as social security number and passport details)
- financial information
- calendar data (where applicable)

In order to provide services to you, Deloitte Tax may receive and also need to process personal information about you that may be considered special category (or "sensitive") personal information under certain U.S. State laws (special category personal information is considered to include information about your social security, driver's license, state identification card, or passport numbers; non-Deloitte account username or number or financial account, debit card, or credit card number in combination with credentials allowing access to such accounts; racial or ethnic origin; immigration or citizenship status; religious or philosophical beliefs; trade union membership; genetic or biometric data for identification purposes; precise geolocation; political opinions; medical or health conditions; or sex life or sexual orientation. Sensitive personal information also includes the contents of your personal mail, email, or text messages unless we are the intended recipient). Special category personal information about you includes information that may be reasonably inferred from other information that we receive.

Where we receive special category personal information or other information from which special category personal information can be reasonably inferred, we will, where required by law, require explicit consent in order to process it.

**How do we collect personal information?**

Deloitte Tax may collect personal information about you in different ways:

- you may provide it directly to us
- we may obtain it because of the services that Deloitte Tax provides or has previously provided
- we may receive it from other members of the Deloitte Network or from third parties, such as your employer/partnership, or a tax authority and/or other relevant authority/administrative bodies
- we may observe or infer it from the information you provide to us and/or the way you interact with us

This personal information can be received in any manner, including in-person discussions, telephone conversations, and electronic or other written communications.

Without access to all the personal information that we need, we may be unable to provide or complete the services.

Where another party (such as a company or a partnership or any third parties acting on your or their behalf) provides your personal information to us, they must also comply with their obligations under the relevant privacy laws and regulations. If you believe that the entity for whom you work or a third party has not provided you with details of the personal information that it holds about you and/or has not obtained your authority to provide us with that personal information for processing as described in this Privacy Statement, then please contact such entity directly.

**Disclosing personal information to us relating to third parties**

If any personal information which you provide to us relates to any third party, for example a spouse or civil partner, individuals(including children) who depend on you financially, or a joint account holder or a beneficiary or trustee of a trust, then by providing us with their personal information you will need to ensure that you have obtained any necessary permissions from those persons to the use of their personal information in the way set out in this Privacy Statement, or you are otherwise permitted to give us this personal information. You should share a copy of this Privacy Statement with those other individuals before disclosing any personal information about them to us.

**How do we use your personal information?**

Deloitte Tax processes personal information about you to:

- establish or maintain our relationship with you
- provide services to you and/or family member(s) or to the entity that has engaged us to provide the services

We may also use your personal information for the purposes of, or in connection with:

- compliance with applicable legal, regulatory or professional requirements
- protecting our rights and/or property

Any personal information that we have about you may be de-identified and maintained and used by us without re-identifying such information. Such de-identified information is not subject to the terms of this Privacy Statement.

**On what basis do we process personal information about you?**

This Privacy Statement sets out the grounds upon which we rely in order to process your personal information.

We may use your personal information for the purposes outlined above because:

(a) where relevant, we have a contract with you to provide services and processing your personal information is necessary for the performance of such contract;

or (b) we have a legitimate interest in processing your personal information, which may be to:

- provide services to you and/or to the entity that has engaged us to provide the services;
- support the management of our client engagements;
- evaluate, develop or improve our services or products; or
- protect our business interests;

or (c) we are subject to legal, regulatory or professional obligations.

**To whom will we disclose your personal information?**

In connection with one or more of the purposes outlined in this Privacy Statement, we may disclose your personal information to:

- other members of the Deloitte Network
- those with whom you have requested us to share information, such as your spouse or civil partner
- competent authorities, including courts and authorities regulating us or another member of the Deloitte Network, in each case to comply with legal, regulatory or professional obligations or requests
- vendors and administrative, support, infrastructure and other service providers handling your information on our behalf; in each case, such vendors and service providers will be contractually bound by confidentiality and privacy obligations consistent with the obligations in this Privacy Statement
- third parties to whom we disclose information in the course of providing services to you or to the entity that has engaged us to provide the services

Any personal information that we have referenced above under "What personal information do we collect?" may be disclosed to the third parties identified in this section for the purposes set forth herein.

© 2023. For information, contact Deloitte Touche Tohmatsu Limited.

Amyris, Inc.
April 4, 2023
Page 24

## Deloitte Tax LLP Privacy Statement

Last revised: January 1, 2023

Please note that some of the recipients of your personal information referred to above may be based in countries or regions without data protection rules similar to those in effect in your area of residence. In such cases, adequate safeguards will be in place to protect your personal information.

For further details about the transfers described above and the adequate safeguards used by Deloitte Tax with respect to such transfers, please contact us using the details below.

**Do we sell your personal information?**

We do not sell your personal information.

**How do we keep your personal information secure?**

We have in place reasonable commercial standards of technology and operational security to protect your personal information from loss, misuse and unauthorized access, disclosure, alteration or destruction. Only authorized personnel, with appropriate awareness of privacy obligations, are provided access to your personal information.

**How long will we keep your information?**

We retain personal information as long as is necessary to fulfill the purposes identified in this Privacy Statement or (i) as otherwise necessary to comply with applicable laws or professional standards, or (ii) as long as the period in which litigation or investigations might arise in respect of our services.

**What are your rights in relation to your personal information?**

You may have various rights in relation to your personal information. In particular, you have a right to:

- obtain confirmation that we are processing your personal information and request a copy of the personal information we hold about you
- ask that we update the personal information we hold about you, or correct such information that you think is inaccurate or incomplete

Depending on the jurisdiction in which you are located, you may also have the right to:

- ask that we delete personal information that we hold about you, or restrict the way in which we use your personal information
- withdraw consent to our processing of your personal information (to the extent our processing is based on your consent)
- ask us to stop or start sending you marketing messages at any time
- obtain and/or move your personal information to another service provider
- object to our processing of your personal information
- request that we provide the following information regarding the personal information we hold about you
  - the categories and/or specific pieces of personal information we collected
  - the categories of sources from which personal information is collected
  - the business or commercial purpose for collecting personal information
  - the categories of third parties with whom we shared personal information

Where our processing of special category personal information is reliant on your consent and you withdraw that consent, we will cease processing the relevant information for the purposes of providing our services and the effect maybe that we are no longer able to provide the services.

However, we may still retain a copy of the relevant information for as long as necessary to comply with applicable laws or professional standards, or as long as the period in which litigation or investigations might arise in respect of our services.

To exercise any of your rights under applicable law described above regarding your personal information, complete our Personal Information Request Form or call us at this toll-free number +1-844-919-0711. When calling us, please provide your full name, mailing address, email address and the specific type of request you are making. You may also have a right to appeal a denial of your request by completing the Personal Information Request Appeal Form (available at https://datasubject.deloitte.com/appeal-form).

For individuals in the EU and Switzerland, you may contact your European or Swiss data protection authority regarding our processing of your personal information.

We will not discriminate against you for exercising any of your rights with respect to your personal information.

**How do we verify your identity when you submit a data subject request?**

For certain personal information requests, we must first verify your identity before processing your request. To do so, we may ask you to provide us with your full name, contact information, and relationship to Deloitte. Depending On your request, we may ask you to provide additional information. Once we receive this information, we will then review it and determine whether we are able to match it to the information Deloitte maintains about you to verify your identity.

**How do we process third party requests?**

If you are submitting a personal information request on behalf of someone other than yourself, please complete our Personal Information Request Form (https://datasubject.deloitte.com/) and include proof that you are authorized to make the request. This may be in the form of a written authorization signed by the person whom you are acting on behalf of or a valid power of attorney.

**Privacy Shield Notice**

Deloitte LLP and its United States affiliates, including Deloitte Tax, adhere to the EU-U.S. and Swiss Privacy Shield Framework as set forth by the U.S.

Department of Commerce with respect to personally identifiable information that is transferred from the European Economic Area, the United Kingdom and Switzerland to the United States within the scope of their Privacy Shield certifications. To learn more, see our Privacy Shield Notice (available at https://www2.deloitte.com/us/en/footerlinks1/privacy-shield.html?icid=bottom%20_privacy-shield).

**Changes to this Privacy Statement**

In addition to describing our current privacy practices, this Privacy Statement also describes the categories of personal information we collected, disclosed, or sold during the preceding 12 months. We may modify or amend this Privacy Statement from time to time at our discretion. When we make changes to this Privacy Statement, we will amend the revision date at the top of this page and the modified or amended Privacy Statement shall apply to you and your personal information as of that revision date. We encourage you to review the Privacy Statement on our website (available at https://www2.deloitte.com/us/en/footerlinks1/tax-privacy.html?icid=bottom_tax-privacy) periodically to be informed about how we are protecting your personal information.

**Contact us**

If you have any questions or concerns regarding this Privacy Statement or your personal information, please contact our data protection officer by email at USPrivacyQuestions@deloitte.com or call us at +1-844-919-0711. Our European Union representative, Deloitte Tax EU Privacy Rep Limited, can be contacted by email at EURepresentative@deloitte.com.

© 2023. For information, contact Deloitte Touche Tohmatsu Limited.



**Deloitte Tax LLP**
Suite 600
225 West Santa Clara
Street
San Jose, CA 95113-1728
USA
Tel: +1 408 704 4000
Fax: +1 408 704 3083
www.deloitte.com

September 15, 2023

Ms. Elizabeth Dreyer
Chief Accounting Officer
Amyris, Inc.
5885 Hollis Street, Suite 100
Emeryville, CA 94608

**RE:  Work Order Number: 2023-1065-2 (Aprinnova)**

Dear Elizabeth:

Deloitte Tax LLP ("Deloitte Tax" or "our") and Amyris, Inc. and its subsidiaries and/or affiliates ("Client") are amending a previously existing arrangement set forth in Work Order Number **2023-1065-2 (Aprinnova)** between Deloitte Tax and Client dated September 5, 2023 (the "Work Order").  This addendum letter ("Addendum") is intended to clarify the fee provisions of the original arrangement relating to the Services provided by Deloitte Tax to Client pursuant to the terms and conditions of the Work Order.

Except for the following additions or revisions to the Work Order, all other terms and conditions of the Engagement Letter, including the Consent for Disclosure and Use of Tax Return Information, will continue in full force and effect.  For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to amend the Work Order as follows:

**Modifications to Scope of Services**

Not Applicable

**Modifications to Fees and Expenses Paragraph**

Client and Deloitte Tax agree that the original intention and mutual understanding of the parties was for the Deloitte Tax fees of $35,000 stated in the Work Order to apply on a per tax year basis.  As such, and to document this mutually agreed understanding for the avoidance of doubt, Client and Deloitte Tax agree in this Addendum to clarify the original language in Work Order Number **2023-1065-2 (Aprinnova)** as follows:

> *The Deloitte Tax fees for the preparation of the tax returns, including preparation of extension requests and quarterly estimates, are $35,000, **per tax year**.*

Please indicate your acceptance of this Addendum by signing in the space provided below and returning a copy of the Addendum to our office.  Thank you for giving Deloitte Tax the opportunity to serve you.  If you have any questions regarding the Addendum, please feel free to contact me at (408) 704-4082.

Very truly yours,

DELOITTE TAX LLP

By: _____
Matt Walton
Partner

AGREED AND ACCEPTED:

Amyris, Inc. on behalf of itself and its subsidiaries and/or affiliates

By: *Elizabeth E. Dreyer* _____
Elizabeth Dreyer
Chief Accounting Officer

Date: 09/18/23 _____



**Deloitte Tax LLP**
Suite 600
225 West Santa Clara
Street
San Jose, CA 95113-1728
USA
Tel: +1 408 704 4000
Fax: +1 408 704 3083
www.deloitte.com

September 15, 2023

Ms. Elizabeth Dreyer
Chief Accounting Officer
Amyris, Inc.
5885 Hollis Street, Suite 100
Emeryville, CA 94608

**RE:  Work Order Number: 2023-1120-2 (Clean Beauty)**

Dear Elizabeth:

Deloitte Tax LLP ("Deloitte Tax" or "our") and Amyris, Inc. and its subsidiaries and/or affiliates ("Client") are amending a previously existing arrangement set forth in Work Order Number **2023-1120-2 (Clean Beauty)** between Deloitte Tax and Client dated September 5, 2023 (the "Work Order").  This addendum letter ("Addendum") is intended to clarify the fee provisions of the original arrangement relating to the Services provided by Deloitte Tax to Client pursuant to the terms and conditions of the Work Order.

Except for the following additions or revisions to the Work Order, all other terms and conditions of the Engagement Letter, including the Consent for Disclosure and Use of Tax Return Information, will continue in full force and effect.  For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to amend the Work Order as follows:

**Modifications to Scope of Services**

Not Applicable

**Modifications to Fees and Expenses Paragraph**

Client and Deloitte Tax agree that the original intention and mutual understanding of the parties was for the Deloitte Tax fees of $30,000 stated in the Work Order to apply on a per tax year basis.  As such, and to document this mutually agreed understanding for the avoidance of doubt, Client and Deloitte Tax agree in this Addendum to clarify the original language in Work Order Number **2023-1120-2 (Clean Beauty)** as follows:

> *The Deloitte Tax fees for the preparation of the tax returns, including preparation of extension requests and quarterly estimates, are $30,000, **per tax year**.*

Please indicate your acceptance of this Addendum by signing in the space provided below and returning a copy of the Addendum to our office.  Thank you for giving Deloitte Tax the opportunity to serve you.  If you have any questions regarding the Addendum, please feel free to contact me at (408) 704-4082.

Very truly yours,                          AGREED AND ACCEPTED:

DELOITTE TAX LLP                           Amyris, Inc. on behalf of itself and its subsidiaries
                                           and/or affiliates

By:  _____              By: _*Elizabeth E. Dreyer*_____

     Matt Walton                               Elizabeth Dreyer
     Partner                                   Chief Accounting Officer

                                           Date: _09/18/23_____



**Deloitte Tax LLP**
Suite 600
225 West Santa Clara
Street
San Jose, CA 95113-1728
USA
Tel: +1 408 704 4000
Fax: +1 408 704 3083
www.deloitte.com

September 15, 2023

Ms. Elizabeth Dreyer
Chief Accounting Officer
Amyris, Inc.
5885 Hollis Street, Suite 100
Emeryville, CA 94608

**RE:  Work Order Number: 2023-1065-3 (EcoFAB)**

Dear Elizabeth:

Deloitte Tax LLP ("Deloitte Tax" or "our") and Amyris, Inc. and its subsidiaries and/or affiliates ("Client") are amending a previously existing arrangement set forth in Work Order Number **2023-1065-3 (EcoFAB)** between Deloitte Tax and Client dated September 5, 2023 (the "Work Order").  This addendum letter ("Addendum") is intended to clarify the fee provisions of the original arrangement relating to the Services provided by Deloitte Tax to Client pursuant to the terms and conditions of the Work Order.

Except for the following additions or revisions to the Work Order, all other terms and conditions of the Engagement Letter, including the Consent for Disclosure and Use of Tax Return Information, will continue in full force and effect.  For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to amend the Work Order as follows:

**Modifications to Scope of Services**

Not Applicable

**Modifications to Fees and Expenses Paragraph**

Client and Deloitte Tax agree that the original intention and mutual understanding of the parties was for the Deloitte Tax fees of $25,000 stated in the Work Order to apply on a per tax year basis.  As such, and to document this mutually agreed understanding for the avoidance of doubt, Client and Deloitte Tax agree in this Addendum to clarify the original language in Work Order Number **2023-1065-3 (EcoFAB)** as follows:

> *The Deloitte Tax fees for the preparation of the tax returns, including preparation of extension requests and quarterly estimates, are $25,000, **per tax year***.

Please indicate your acceptance of this Addendum by signing in the space provided below and returning a copy of the Addendum to our office.  Thank you for giving Deloitte Tax the opportunity to serve you.  If you have any questions regarding the Addendum, please feel free to contact me at (408) 704-4082.

Very truly yours,

DELOITTE TAX LLP

By: _____
Matt Walton
Partner

AGREED AND ACCEPTED:

Amyris, Inc. on behalf of itself and its subsidiaries and/or affiliates

By: *Elizabeth E. Dreyer*_____
Elizabeth Dreyer
Chief Accounting Officer

Date: 09/18/23 _____



**Deloitte Tax LLP**
Suite 600
225 West Santa Clara
Street
San Jose, CA 95113-1728
USA
Tel: +1 408 704 4000
Fax: +1 408 704 3083
www.deloitte.com

September 15, 2023

Ms. Elizabeth Dreyer
Chief Accounting Officer
Amyris, Inc.
5885 Hollis Street, Suite 100
Emeryville, CA 94608

**RE:  Work Order Number: 2023-1065-1 (RealSweet)**

Dear Elizabeth:

Deloitte Tax LLP ("Deloitte Tax" or "our") and Amyris, Inc. and its subsidiaries and/or affiliates ("Client") are amending a previously existing arrangement set forth in Work Order Number **2023-1065-1 (RealSweet)** between Deloitte Tax and Client dated September 5, 2023 (the "Work Order").  This addendum letter ("Addendum") is intended to clarify the fee provisions of the original arrangement relating to the Services provided by Deloitte Tax to Client pursuant to the terms and conditions of the Work Order.

Except for the following additions or revisions to the Work Order, all other terms and conditions of the Engagement Letter, including the Consent for Disclosure and Use of Tax Return Information, will continue in full force and effect.  For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to amend the Work Order as follows:

**Modifications to Scope of Services**

Not Applicable

**Modifications to Fees and Expenses Paragraph**

Client and Deloitte Tax agree that the original intention and mutual understanding of the parties was for the Deloitte Tax fees of $25,000 stated in the Work Order to apply on a per tax year basis.  As such, and to document this mutually agreed understanding for the avoidance of doubt, Client and Deloitte Tax agree in this Addendum to clarify the original language in Work Order Number **2023-1065-1 (RealSweet)** as follows:

> *The Deloitte Tax fees for the preparation of the tax returns, including preparation of extension requests and quarterly estimates, are $25,000, **per tax year**.*

Please indicate your acceptance of this Addendum by signing in the space provided below and returning a copy of the Addendum to our office.  Thank you for giving Deloitte Tax the opportunity to serve you.  If you have any questions regarding the Addendum, please feel free to contact me at (408) 704-4082.

Very truly yours,                          AGREED AND ACCEPTED:

DELOITTE TAX LLP                          Amyris, Inc. on behalf of itself and its subsidiaries
                                          and/or affiliates

By: _____              By: *Elizabeth E. Dreyer* _____
     Matt Walton                               Elizabeth Dreyer
     Partner                                   Chief Accounting Officer

                                         Date: 09/18/23 _____