**<u>EXHIBIT A</u>**

**(Proposed Order)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al*., | Case No. 23-11131 (TMH) |
| Debtors. [1] | (Jointly Administered) |

### ORDER APPROVING THE SALE OF NON-OPERATING BRAND (ONDA BEAUTY)

Pursuant to the motion [Docket No. 132] (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors") for approval of (i) the sale of certain assets of a Non-Operating Brand, ONDA Beauty ("Onda"), pursuant to the *Bill of Sale, Assignment and Agreement* attached hereto as Exhibit A (the "Bill of Sale"), free and clear of all liens, claims, encumbrances, and other interests, to Larissa Thomson LLC (the "Buyer") and (ii) assumption and assignment of that certain *Standard Form of Lease* dated July 19, 2017 between Onda Beauty, Inc., as Tenant, and Duane Ventures, Inc., as Landlord, as may have been amended, restated, or modified from time to time, including, but not limited to, pursuant to that certain *Lease Modification, Extension Assignment and Assumption and Consent Agreement* effective as of April 9, 2022 by and among Onda Beauty, Inc., as Assignor; Amyris, Inc., as Assignee; and Duane Ventures, Inc. (the "Lease"); and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent

with Article III of the United States Constitution; and the Court having found that venue of this

proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having

found that the Debtors' notice of the relief set forth herein was appropriate under the circumstances

and no other notice need be provided; and upon all of the proceedings had before the Court; and

after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Bill of Sale and all terms and conditions thereof are approved.  Pursuant to

sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to perform their

obligations under, and comply with the terms of, the Bill of Sale and consummate the sale

contemplated thereby (the "Sale Transaction") and the related transactions pursuant to, and in

accordance with, the terms and conditions of the Bill of Sale and this Order.  The Debtors are

authorized to execute and deliver, and empowered to perform under, consummate, and implement,

the Bill of Sale and the Sale Transaction contemplated therein, together with all additional

instruments and documents that the Debtors or the Buyer deem necessary or appropriate to

implement the Bill of Sale and effectuate the Sale Transaction contemplated therein.

2.      Upon the closing of the Sale Transaction (the "Closing"), pursuant to sections

105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Property (as defined in the

Bill of Sale), including the Lease, shall be transferred to the Buyer in accordance with the Bill of

Sale, and such transfer shall be free and clear of all liens, claims, and encumbrances of any person,

including, without limitation, all such liens, claims, and encumbrances specifically enumerated in

this Order, whether arising by agreement, by statute, or otherwise and whether occurring or arising

before, on, or after the Petition Date, whether known or unknown, occurring or arising prior to

such transfer, with all such liens, claims, and encumbrances attaching to the proceeds of the Sale Transaction ultimately attributable to the property against or in which the holder of any liens, claims, and encumbrances claims or may claim any liens, claims, and encumbrances, in the order of its priority, with the same validity, force, and effect which they now have and had against the Property immediately prior to Closing, including, without limitation, as provided for in any interim and/or final order approving the Debtors' debtor in possession financing in these Chapter 11 Cases (the "DIP Orders"), as applicable, subject to any claims and defenses the Debtors may possess with respect thereto. The Buyer shall not be responsible for any such liens, claims and encumbrances. All persons and entities are hereby prohibited, enjoined and barred from taking any action that would adversely affect or interfere with, or that would be inconsistent with the ability of, (a) the Debtors to sell and transfer the Property to the Buyer and (b) the Buyer to acquire, use and operate the Property in accordance with the Bill of Sale and this Order. For the avoidance of doubt, the Debtors shall utilize any proceeds of the Sale Transaction in accordance with the approved budget under the DIP Orders.

3.     Pursuant to section 365 and 363, as applicable, of the Bankruptcy Code, the Debtors are authorized to assume the Lease and assign or otherwise transfer such Lease to the Buyer. The cure amount associated with the Lease will be paid by the Buyer pursuant to the Bill of Sale on or before Closing of the Sale Transaction subject to and in accordance with the Bill of Sale. The Buyer has provided adequate assurance of future performance of and under the Lease within the meaning of section 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

4.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and the Buyer are authorized to close the Sale Transaction

immediately upon entry of this Order.  Time is of the essence in closing the Sale Transaction referenced herein, and the Debtors and the Buyer intend to close the Sale Transaction as soon as practicable.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.   Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

5.      The Buyer is a good faith purchaser of the Property within the meaning of section 363(m) of the Bankruptcy Code, and as such, is entitled to, and is hereby granted, the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code.  The Debtors and the Buyer shall be acting in good faith if they consummate the Sale Transaction in accordance with the Bill of Sale and this Order.  The reversal or modification on appeal of the authorization provided by this Order to consummate the Sale Transaction (including the assumption and assignment of the Lease) shall not alter, limit, or otherwise impair the validity of the sale of the Property to the Buyer, including the assumption and assignment of the Lease.

6.      The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

## EXHIBIT A

*Execution Version*

## BILL OF SALE, ASSIGNMENT AND AGREEMENT

**THIS BILL OF SALE, ASSIGNMENT AND AGREEMENT** (the "Agreement") is made and entered into as of this 6th day of October, 2023, by and among (i) Amyris, Inc. and Onda Beauty Inc. (collectively, the "Seller"), each a debtor and debtor-in-possession in Case No. 23-11131 (TMH) (Jointly Administered) (the "Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and Larissa Thomson LLC (the "Buyer").

### RECITALS

A.      On September 8, 2023, the Bankruptcy Court entered that certain *Order (I) Establishing Procedures Governing the Sale or Transfer of Certain* De Minimis *Assets and Non-Operating Brands, and (II) Granting Related Relief* [Docket No. 205] (the "Procedures Order").

B.      Concurrently with the execution and delivery of this Agreement, Seller is selling to Buyer and Buyer is acquiring from Seller, all of Seller's right, title and interest in and to (i) that certain real property lease described on **Exhibit "A"** attached hereto and incorporated herein by this reference (the "Lease"), (ii) the inventory and other tangible personal property and equipment specifically described on **Exhibit "B"** attached hereto and incorporated herein by this reference (collectively, the "Personal Property"), (iii) total stock as of 07/31/2023 in the amount of $312,848,44 as described in the Seller's data room under the file name "Onda 2023.07.31 Inventory Reconciliation," as updated as of September 29, 2023, as such stock may vary prior to the Closing (the "Stock"), and (iv) the intellectual property specifically listed and described on **Exhibit "C"** attached hereto and incorporated herein by this reference (collectively, the "Intellectual Property" and, together with Seller's right, title and interest in the Lease, the Personal Property, and the Stock, the "Property").

C.      Buyer and Seller wish to provide for the transfer of such right, title and interest in and to the Property and for other terms and conditions applicable to such transfer, all as hereinafter more particularly provided.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      Transfer of Assets; Assumption of Lease. Subject to satisfaction of the conditions and upon and subject to the terms, disclaimers and acknowledgments hereinafter set forth (including, without limitation, those provisions set forth in Section 4 and the condition set forth in Section 5, below), and except for the obligations under the Lease, Seller hereby sells, assigns, transfers, conveys and delivers to Buyer the Property free and clear of any liens, claims, encumbrances, and other interests to the extent provided in or by virtue (in the case of deemed approval pursuant to the Procedures Order) the Transaction Authorization (as defined in Section 5 hereof). For its part, Buyer hereby assumes and agrees to fully perform all of the Seller's obligations under the Lease arising on and after the date the closing of the transactions contemplated hereby (the "Closing") occurs. To the extent any monetary defaults exist that are required to be cured pursuant to section 365(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") to effectuate  the

Seller's assumption and assignment of the Lease, Buyer shall bear and pay such amounts (the "Cure Costs") in full at the Closing. For the avoidance of doubt, Buyer shall not assume and shall not pay any debts, obligations, commitments or other liabilities of Seller other than the Cure Costs.

2.    Purchase Price; Deposit. The cash purchase price for the Property is $220,000 (the "Purchase Price"), plus the amount of Cure Costs, which Buyer shall pay to Seller immediately following the satisfaction of the condition set forth in Section 5 below; provided that any Cure Costs in excess of $6,753 shall be deducted from the Purchase Price. Concurrently with the execution and delivery of this Agreement, Buyer shall deposit an aggregate amount (inclusive of the $9,000 heretofore deposited with Seller's counsel by Buyer) equal to $22,000 in cash as "good faith deposit" (the "Deposit") by wire transfer of immediately available funds in the client trust account held by Pachulski Stang Ziehl & Jones LLP at City National Bank pursuant to wire instructions to be provided to Buyer, to be held in escrow. If the Closing does not occur for any reason by the Outside Date, or if this Agreement is otherwise terminated other than as a result of a breach by the Buyer, Sellers shall return the Deposit to Buyer immediately and, in any case, no later than   two (2) business days after the earlier to occur of the Outside Date or such termination. For the avoidance of doubt, the Deposit shall not be considered property of the Sellers' estates under section 541 of the Bankruptcy Code and shall be held and disbursed pursuant to the terms of this Agreement. If the Closing shall occur, then the Deposit shall be credited against the Purchase Price. The Deposit shall be the sole and exclusive remedy of the Sellers against Buyer with respect to any breach of this Agreement.

3.    Sales, Use and Other Taxes. If any amounts payable arise on account of sales, purchases, transfer, stamp, documentary stamp, use or similar taxes under the laws of the state(s) where the Property (or the applicable portion thereof, including, for the avoidance of doubt, the real property which is the subject of the real property lease included in the Property) is located, or any subdivision of any such state(s), which are or will be payable by reason of the sale of the Property, as and when the actual amounts payable on account of the taxes, items and charges described in this sentence can be finally determined, Seller be responsible for and bear all such taxes, items and charges.

4.    Good Title; "AS IS" Transaction. Seller represents and warrants to Buyer that Seller has good title to the Property and that, subject to Buyer's timely performance of its obligations hereunder and to obtaining the Transaction Authority, Seller has the right and authority (a) to assume and assign the Lease, subject to obtaining any third party consents the need for which is not obviated by the Transaction Authority, and (b) to sell, transfer, and deliver the Personal Property (with such delivery to be made at the current locations of such Personal Property) and Intellectual Property to Buyer.  Buyer hereby acknowledges and agrees that Seller neither makes nor has made any other representations or warranties whatsoever, express or implied, with respect to any matter relating to the Property (including, without limitation, income to be derived or expenses to be incurred in connection with the Property, the physical condition of the Personal Property or the real property and improvements to which the Lease relates, the value of the Property (or any portion thereof), what liens or encumbrances may exist and whether the same are valid or enforceable against the Property (or any portion thereof) any other matter relating to the real property to which the Lease relates, the merchantability or fitness of the Personal

Property or any other portion of the Personal Property for any particular purpose, or any other matter or thing relating to the Property or any portion thereof), except as expressly set forth herein. Without in any way limiting the foregoing, Seller hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to the Personal Property or any other portion of the Property to which such implied warranties might otherwise be applicable. Buyer hereby accepts the Property **"AS IS, "WHERE IS,"** and **"WITH ALL FAULTS."**

5. <u>Bankruptcy Matters</u>. Both Buyer's and Seller's obligations under this Agreement are subject to the Bankruptcy Court's approval (or deemed approval pursuant to the provisions of the Procedures Order) (such approval, "<u>Transaction Authorization</u>") on or before October 11, 2023 (the "<u>Outside Date</u>"). The Transaction Authorization shall occur upon the entry of an order of the Bankruptcy Court approving the transactions set forth herein (the "<u>Approval Order</u>"). Seller shall use commercially reasonable efforts timely to obtain entry of the Approval Order; provided, however, for the avoidance of doubt, Buyer's sole and exclusive remedy in the event that the Transaction Authorization is not timely obtained shall be to terminate this Agreement upon written notice to Seller. Without limiting the foregoing, if adequate assurance of future performance is required by the Bankruptcy Court as to the Lease, Buyer shall be solely responsible for satisfying the Bankruptcy Court that there is adequate assurance of future performance under Section 365(b) of the Bankruptcy Code in connection with the assumption and assignment of the Lease as contemplated herein. The obligation of Buyer to consummate the transaction contemplated herein for the Purchase Price is subject to Seller's assumption of the Lease and assignment of the Lease to Buyer; <u>provided</u>, that Buyer expressly acknowledges that Buyer's obligation to consummate the transaction contemplated herein for the Purchase Price shall be unaffected by the failure to assign the Lease to Buyer because of Buyer's failure to satisfy the Bankruptcy Court that adequate assurance of future performance exists in the event it is required by the Bankruptcy Court; rather, any Contract which is not so assigned to Buyer for such reason shall for all purposes hereof thereafter conclusively be deemed excluded from the transaction contemplated herein such that such non-assigned Lease no longer forms a part or portion of the Property. Upon receipt of the Transaction Authorization and the payment of the Purchase Price by the Buyer thereafter, the Closing shall be deemed, automatically and without any further action from any person or entity, to have occurred as of the date of the payment of the Purchase Price. The Buyer shall be deemed to be the owner of the Property on and after the date the Closing occurs. If the Transaction Authorization is not obtained on or before the Outside Date, this Agreement shall be terminable by any party hereto upon written notice of termination to the other party hereto given prior to Transaction Authorization being obtained.

6. <u>Miscellaneous</u>.

6.1    <u>Risk of Loss</u>. Notwithstanding anything to the contrary herein, the risk of loss or damage to the Personal Property shall shift to the Buyer immediately upon the assignment and transfer of the Property to Buyer pursuant hereto.

6.2    <u>Attorneys' Fees</u>. In the event that either party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the

prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

      6.3    <u>Notices</u>. Unless otherwise provided herein, any notice, tender, or delivery to be given hereunder by either party to the other may be effected (i) by personal delivery in writing, by registered or certified mail, postage prepaid, return receipt requested, or (ii) by electronic mail transmitted to the applicable email address set forth below, and notice, tender, or delivery shall be deemed communicated to the other party as of the first to occur of the date of mailing or transmission by electronic mail.  Mailed notices shall be addressed as set forth below, but each party may change its address (including its electronic mail address) by written notice in accordance with this paragraph.

        To Seller:        Amyris, Inc.
                          5885 Hollis Street, Suite 100
                          Emeryville, CA 94608
                          Attn: Doris Choi, General Counsel
                          Email: dchoi@amyris.com

      With a copy (which shall not constitute notice) to:

                          Pachulski Stang Ziehl & Jones LLP
                          One Sansome Street, Suite 3430
                          San Francisco, CA 94104
                          Attn: Debra I. Grassgreen, Jason Rosell
                          and Steven Golden
                          E-mail:
                          dgrassgreen@pszjlaw.com;
                          jrosell@pszjlaw.com; and sgolden@pszjlaw.com

        To Buyer:        Larissa Thomson LLC
                          300 North End Avenue #19C
                          New York, NY 10282
                          larissa.thomson@gmail.com

      With a copy (which shall not constitute notice) to:

                          Willkie Farr & Gallagher LLP
                          787 Seventh Avenue
                          New York, NY 10019
                          Attn: Russell L. Leaf and Debra M. Sinclair
                          E-mail:
                          rleaf@willkie.com and dsinclair@willkie.com

6.4     Entire Agreement. This Agreement contains the entire agreement between Buyer and Seller relating to the sale of the Property and replaces (and supersedes in its entirety) that certain Bill of Sale, Assignment and Agreement dated September 14, 2023 by and between Seller and Buyer. Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the party to be charged.

6.5     Modification. This Agreement may be modified, amended or supplemented only by a written instrument duly executed by the Seller and Buyer.

6.6     Severability. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

6.7     Captions. All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

6.8     Waiver. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

6.9     Brokerage Obligations. Other than Intrepid Investment Bankers LLP (for whose compensation, if any, Seller shall be responsible), the Seller and the Buyer each represent and warrant to the other that such party has incurred no liability to any broker or agent with respect to the payment of any commission regarding the consummation of the transaction contemplated hereby. It is agreed that if any claims for commissions, fees or other compensation, including, without limitation, brokerage fees, finder's fees, or commissions are ever asserted against Buyer or the Seller in connection with this transaction, all such claims shall be handled and paid by the party whose actions form the basis of such claim and such party shall indemnify, defend (with counsel reasonably satisfactory to the party entitled to indemnification), protect and save and hold the other harmless from and against any and all such claims or demands asserted by any person, firm or corporation in connection with the transaction contemplated hereby.

6.10     Survival. Except for covenants set forth in this Agreement which by their terms are to be performed after the Closing (which covenants shall survive the Closing), the respective representations, warranties, covenants and agreements of Seller and Buyer herein, or in any certificates or other documents delivered prior to or at the Closing, shall automatically lapse and cease to be of any further force or effect upon the Closing. For the avoidance of any doubt, Buyer's and Seller's sole and exclusive remedy for the failure of any representation set forth in this Agreement to be true and correct shall be to terminate this Agreement upon written notice to the party who made such representation.

6.11     Binding Effect. This Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the parties hereto.

6.12    Applicable Law. This Agreement shall be governed by and construed in accordance with the internal substantive and procedural laws of State of Delaware, without regard to its choice of law principles.

6.13    Construction. In the interpretation and construction of this Agreement, the parties acknowledge that the terms hereof reflect extensive negotiations between the parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either party hereto.

6.14    Counterparts. This Agreement may be signed in counterparts. The parties further agree that this Agreement may be executed by the exchange of signature pages delivered by electronic mail provided that by doing so the parties agree to provide original signatures as soon thereafter as reasonable in the event the other party requests or requires in writing that originals be delivered.

6.15    Time is of the Essence. Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

6.16    Bankruptcy Court Jurisdiction. BUYER AND SELLER AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT; AND/OR (ii) THE PROPERTY (OR ANY PORTION THEREOF), AND BUYER HEREBY EXPRESSLY CONSENTS TO AND AGREES NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION.

6.17    Personally Identifiable Information. Buyer shall honor and observe any and all written policies of Seller in effect on the date the Case was commenced prohibiting the transfer of personally identifiable information about individuals and otherwise comply with the requirements of Section 363(b)(1)(A) of the Bankruptcy Code.

**[BALANCE OF PAGE INTENTIONALLY LEFT BLANK.]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Bill of Sale, Assignment and Agreement as of the day and year first above written.

**SELLER:**

**AMYRIS, INC.**
**ONDA BEAUTY INC.**

By: _Han Kieftenbeld_
DocuSigned by:

Name: ___Han Kieftenbeld___

Its: ___Chief Financial Officer___

**BUYER:**

**LARISSA THOMSON LLC**

By: _____

Name: Larissa Thomson

Its:  Manager

`

[Signature Page – Bill of Sale, Assignment and Agreement]

*Execution Version*

**IN WITNESS WHEREOF**, the parties hereto have executed this Bill of Sale, Assignment and Agreement as of the day and year first above written.

**SELLER:**

**AMYRIS, INC.**
**ONDA BEAUTY INC.**


By:_____
  Name:_____
  Its:  _____


**BUYER:**

**LARISSA THOMSON LLC**

DocuSigned by:
*LARISSA THOMSON*
By:_____2A5FC6B4FC554E4..._____
  Name: Larissa Thomson
  Its:  Manager

`

# EXHIBIT A

## Real Property Lease

1. *Standard Form of Store Lease* dated July 19, 2017 between Onda Beauty, Inc., as Tenant, and Duane Ventures, Inc., as Landlord, as may have been amended, restated, or modified from time to time, including, but not limited to, pursuant to that certain *Lease Modification, Extension Assignment and Assumption and Consent Agreement* effective as of April 9, 2022 by and among Onda Beauty, Inc., as Assignor; Amyris, Inc., as Assignee; and Duane Ventures, Inc.

## EXHIBIT B

### Personal Property

1. All equipment, machinery, fixtures, inventory and all other assets owned by the Seller that are located at 117 West Broadway, New York, NY 10013

2. All inventory owned by the Seller and branded with the name Onda Beauty that are located in the facility utilized by Sellers and operated by ShipDudes

3. All social media accounts related exclusively to the Onda Beauty brand, including, but not limited to, the Instagram account @ondabeauty

4. The domain name located at www.ondabeauty.com

## EXHIBIT C

### Intellectual Property

1.  The following trademarks and trade names:

| Name | Listed Owner | USPTO Serial Number | Registration Date | Status |
|------|--------------|---------------------|-------------------|--------|
| **ONDA BEAUTY** | Onda Beauty Inc. | 88043644 | August 22, 2023 | LIVE |
| **ONDA BEAUTY** | Onda Beauty Inc. | 88042951 | September 20, 2022 | LIVE |