**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC. et al,[1] | Case No.: 23-11131 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 508** |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING DEBTORS' PROPOSED FORM OF FINAL ORDER AUTHORIZING DIP FINANCING AND EXTENDING THE COMMITTEE'S INVESTIGATION CHALLENGE PERIOD**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") states as follows in support of this statement regarding the extension of the Committee's Challenge Period (as defined in the *Proposed Final Order (I) Authorizing the Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 508] (the "**Proposed Final DIP Order**")) through November 15, 2023:

**STATEMENT**

1. Since its appointment, the Committee has worked diligently to investigate the circumstances that brought the Debtors into these cases, the Debtors' secured debt, and potential

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

claims and causes of action that will likely form a significant piece of the recoveries available to unsecured creditors in these chapter 11 cases. As described below, however, the Debtors have produced zero custodial emails, and a paltry number of documents and other materials, in the nearly four weeks since the Committee first propounded discovery. This is completely unacceptable. Although the Debtors and DIP Lenders have agreed to extend the challenge period for the Committee by three weeks to November 15 in their recently filed Proposed Final DIP Order, the Committee's acceptance of that new deadline is premised on actually receiving materials from the Debtors and DIP Lenders. To be clear, if the Debtors do not improve their record of meeting their discovery obligations, the Committee expects to be back before this Court shortly on a motion to further extend the challenge period and compel the production of documents.

2. As part of the Committee's efforts to investigate potential claims and causes of action, on September 18, 2023, the Committee served 47 document requests and 13 interrogatories on the Debtors regarding topics such as (i) the facts and circumstances surrounding these chapter 11 cases, including the Debtors' decision to file for bankruptcy and any alternatives the Debtors considered, (ii) the Debtors' prepetition efforts (if any) in connection with potential sales of their material assets, (iii) the Debtors' incurrence of new secured debt, and the securitization of previously unsecured debt, held by entities affiliated with the Debtors' controlling shareholder, John Doerr, shortly before the bankruptcy filing, and (iv) the investigation regarding estate claims and causes of action against the Debtors' insiders at the direction of M. Freddie Reiss, a purported independent director appointed in connection with the commencement of these cases.

3. To ensure that routine discovery disputes do not occupy the Court's limited time, the Committee's counsel—consistent with the custom and practice in this District and the Court's own protocols regarding discovery matters (*see, e.g.*, Del. L. R. 7026-1(a) and Chambers

Procedures for Judge Thomas M. Horan)—has engaged in substantial discussions with the Debtors' primary counsel, Pachulski Stang Ziehl & Jones LLP, regarding these requests both before and after they were served.  Among other things, the Committee's counsel provided the Debtors' counsel with proposed custodians and search terms, and, at the Debtors' request, identified certain requests for the Debtors to prioritize.

4. The Debtors, unfortunately, have failed to provide even basic information about their affairs and matters integral to the Committee's investigation. More specifically, it is now more than three weeks since the Committee served its discovery requests on the Debtors, and the Debtors have produced to the Committee barely 1,000 documents.  Moreover, many of these documents are simply reproductions of documents produced in the Lavvan litigation (and thus not responsive to the Committee's requests), and the Debtors have not produced a ***single*** custodial email responsive to the Committee's inquiries.  Nor have the Debtors answered the Committee's interrogatories.  Moreover, the Debtors have not identified when they expect their document production to be substantially complete, or even when they anticipate their production of custodial emails to ***begin***.

5. The Debtors have offered several excuses for their failure to provide the Committee with meaningful discovery, including that (i) the Debtors have been focused on the litigation with Lavvan and could not attend to the Committee's discovery requests, (ii) the Debtors employ one IT specialist, who was "away" from September 26 to October 6, and the rest of the Debtors' workforce (which the Debtors pegged at 708 employees as of the Petition Date) could not assist with production, and (iii) the Debtors' emails are largely stored on a server that was taken offline and the Debtors have not yet managed to access that server. Certain of these excuses were raised to the Committee for the first time on a meet-and-confer that occurred at the end of last week,

which is why the Committee did not raise them to the Court sooner. Needless to say, the Committee does not believe that any of these untimely justifications has merit or relieves the Debtors of their discovery obligations. Moreover, the Debtors' excuses regarding their email severs give the Committee significant pause regarding the Debtors' control over their books, records, and systems.

6. Unfortunately, the Debtors' failure to produce documents and information is just one of the roadblocks preventing the Committee from the timely completion of its investigation. As the Court is aware, the Debtors have appointed an independent director, M. Freddie Reiss, to conduct an investigation that in part overlaps with the investigation the Committee is conducting. For this reason, almost immediately after the Committee retained counsel, the Committee reached out to Mr. Reiss to discuss coordinating efforts, thus avoiding duplication and preserving estate resources. To the Committee's surprise, its efforts were completely rebuffed. The Committee has not been provided the opportunity to meet by phone or videographic means with Mr. Reiss. Moreover, Mr. Reiss, through his counsel, has not only refused to allow the Committee to attend any of his planned interviews (despite the fact that the Committee would likely seek interviews or depositions of the same individuals), but would not even identify his interview list.[2] The Committee informed Mr. Reiss that they share a common interest, and proposed a common interest / non-waiver agreement to address any concerns regarding privilege. In what is becoming a recurring pattern in these cases, this proposal, too, was rebuffed.[3]

---

[2] Indeed, on September 12, 2023, Mr. Reiss noticed the deposition of Mike Rytokoski, the Debtors' President of Ingredients and Consumer Brands. When the Committee asked to attend that deposition, Mr. Reiss canceled and instead conducted an informal interview, which the Committee was barred from attending. Since then, Mr. Reiss has not noticed any further depositions and has proceeded entirely by informal interviews, which the Committee has not been allowed to attend (assuming they have even occurred) and as to which the Committee has no visibility.

[3] Recently, on October 11, 2023—about one month after the Committee first requested access to Mr. Reiss's investigation—Debtors' counsel (not Mr. Reiss's counsel) sent the Committee a proposed common interest

7. In addition to the above impediments, the Debtors have required the Committee to seek emails, documents and information separately from each of the Debtors' board members (including, notably, Mr. Doerr, who is a key subject of the Committee's investigation). As a result, the Committee has had to navigate a web of external counsel to attempt to obtain documents and information from many of the key custodians in this case, rather than receiving those materials directly from one source. Moreover, the Debtors still have not informed the Committee whether certain key board members (such as members of the Debtors' Restructuring Committee) are represented by counsel, or provided the contact information for those board members to the Committee.

8. The Committee appreciates the DIP Lenders' agreement to extend the challenge period. However, the Committee continues to have serious concerns regarding the Debtors' commitment to meeting—and, frankly, their actual ability to meet—their discovery obligations. Accordingly, the Committee has determined to file this Statement to make the Court aware of the Debtors' track record thus far, and to preserve the right to seek assistance from the Court on an expedited basis if that record does not improve.

9. The Committee thanks the Court for its attention to this matter, and is available to discuss this matter further at the Court's request.

[*Remainder of page intentionally left blank*]

---

agreement. It is not clear what this common interest agreement is intended to cover. Before this proposed common interest agreement was transmitted, the Committee was informed that Mr. Reiss would consider sharing certain interview recordings with the Committee if the Committee agreed to waive its right to re-interview or depose any of the same individuals—effectively seeking to force the Committee to blindly outsource its investigation to Mr. Reiss, which would constitute a breach of both the Committee's fiduciary and ethical obligations. Regardless of the terms on which the Debtors' proposed common interest agreement is premised, any benefit from coordinating with Mr. Reiss to avoid duplicating efforts with him has by now largely, if not entirely, passed.

Dated: October 12, 2023  
       Wilmington, Delaware

Respectfully submitted,

*/s/ Sameen Rizvi*
Christopher M. Samis (No. 4909)
Katelin A. Morales (No. 6683)
Sameen Rizvi (No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email:  csamis@potteranderson.com
         kmorales@potteranderson.com
         srizvi@potteranderson.com

-and-

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Andrew F. O'Neill (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.com
       aoneill@whitecase.com

-and-

**WHITE & CASE LLP**
Samuel P. Hershey (admitted *pro hac vice*)
John Ramirez (admitted *pro hac vice*)
Andrea Kropp (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: sam.hershey@whitecase.com
      john.ramirez@whitecase.com
      andrea.kropp@whitecase.com

*Counsel for the Official Committee of Unsecured Creditors*