## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date:  November 21, 2023 at 11:00 a.m. (ET)**<br>**Objection Deadline:  November 14, 2023 at 5:00 p.m. (ET)** |

**DEBTORS' MOTION FOR AN ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) SCHEDULING CONFIRMATION HEARING; (III) APPROVING FORM AND MANNER OF NOTICE OF CONFIRMATION HEARING; (IV) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PLAN, INCLUDING (A) APPROVING FORM AND CONTENT OF SOLICITATION MATERIALS; (B) ESTABLISHING RECORD DATE AND APPROVING PROCEDURES FOR DISTRIBUTION OF SOLICITATION MATERIALS; (C) APPROVING FORMS OF BALLOTS; (D) ESTABLISHING VOTING DEADLINE FOR RECEIPT OF BALLOTS AND (E) APPROVING PROCEDURES FOR VOTE TABULATIONS; (V) APPROVING FORM AND MANNER OF NOTICE OF PLAN RELEASES; (VI) ESTABLISHING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO CONFIRMATION OF PLAN; AND (VII) GRANTING RELATED RELIEF**

Amyris, Inc. ("Amyris") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned Chapter 11 Cases file this *Motion for an Order (I) Approving the Disclosure Statement; (II) Scheduling Confirmation Hearing; (III) Approving Form and Manner of Notice of Confirmation Hearing; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (A) Approving Form and Content of Solicitation Materials; (B) Establishing Record Date and Approving Procedures for*

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

*Distribution of Solicitation Materials;(C) Approving Forms of Ballots; (D) Establishing Voting Deadline for Receipt of Ballots and (E) Approving Procedures for Vote Tabulations; (V) Approving Form and Manner of Notice of Plan Releases; (VI) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plan; and (VII) Granting Related Relief* (the "Motion").  In support of this Motion, the Debtors rely upon and refer to the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 18] (the "First Day Declaration"), which is incorporated herein by reference.[2]  In further support of the Motion, the Debtors respectfully represent as follows:

## RELIEF REQUESTED

1.      Pursuant to sections 105, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), Rules 2002, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 3016-2 and 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors respectfully request the entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "Disclosure Statement Order"):

    a.      approving the *Disclosure Statement for Debtors' Chapter 11 Plan of Reorganization* [Docket No. 524], filed on October 12, 2023 (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement");

    b.      scheduling the Confirmation Hearing (as defined below);

    c.      establishing procedures for solicitation and tabulation of votes to accept or reject the *Debtors' Chapter 11 Plan of Reorganization* [Docket No. 523] filed by the Debtors on October 12, 2023 (including all exhibits thereto and as amended,

---

[2] A capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the First Day Declaration.

modified or supplemented from time to time, the "Plan"),[3] including (A) establishing a Record Date and approving procedures for distributing Solicitation Materials; (B) approving the form and content of the Debtors' proposed Solicitation Materials, including ballots; (C) establishing a voting deadline for receipt of ballots; and (D) approving procedures for tabulating acceptances and rejections of the Plan;

d.      approving the form and manner of notice of the Confirmation Hearing as to both Voting Classes and Non-Voting Classes and notice of Third Party Release with opt out provisions and procedures, as applicable;

e.      establishing the deadline and procedures for filing any comments or objections to confirmation of the Plan; and

f.      granting related relief.

2.      The Debtors have requested that the Court schedule a hearing on this Motion (the "Disclosure Statement Hearing") on **November 21, 2023 at 11:00 a.m. (prevailing Eastern Time)**. The chart below lists key proposed dates discussed in further detail herein with respect to the Plan solicitation and approval process:

| Event | Proposed Date/Deadline[4] |
|---|---|
| Deadline to Object to Disclosure Statement | November 14, 2023 at 5:00 p.m. |
| Disclosure Statement Hearing | November 21, 2023 at 11:00 a.m. |
| Record Date | November 15, 2023 |
| Solicitation Mailing Deadline | November 27, 2023 |
| Non-Voting Class Notices Mailing Deadline | November 27, 2023 |
| Publication Notice Deadline | November 28, 2023 |
| Deadline for Claimants to File Rule 3018(a) Motions | January 3, 2024 at 5:00 p.m. |
| Voting Deadline/Release Opt Out Election Deadline | January 10, 2024 at 5:00 p.m. |
| Plan Objection Deadline | January 10, 2024 at 5:00 p.m. |
| Plan Brief and Voting Tabulation Affidavit Deadline | January 15, 2024 |

---

[3] Unless otherwise defined in this Motion, all capitalized terms used herein shall have the respective meanings ascribed to them in the Plan.

[4] All times are prevailing Eastern time.

| Event | Proposed Date/Deadline[4] |
|---|---|
| Confirmation Hearing | January 17, 2024 at 11:00 a.m. |

3.      Below is a list of the various exhibits and documents cited throughout and approval of which is sought in this Motion:

| Proposed Document | Exhibit |
|---|---|
| Disclosure Statement Order | **Exhibit A** |
| Notice of Confirmation Hearing and Related Matters (Voting Classes) | **Exhibit B** |
| Notice of Confirmation Hearing and Related Matters (Non-Voting Classes/Holders of Claims) | **Exhibit C1** |
| Notice of Confirmation Hearing and Related Matters (Non-Voting Classes/Holders of Interests) | **Exhibit C2** |
| Form of Ballot for Class 3 – Foris Prepetition Secured Claims | **Exhibit D1** |
| Form of Ballot for Class 4 – DSM RealSweet Secured Claims | **Exhibit D2** |
| Form of Ballot for Class 5 – DSM Other Secured Claims | **Exhibit D3** |
| Form of Ballot for Class 6 – Lavvan Secured Claim | **Exhibit D4** |
| Form of Beneficial Ballot for Class 7 – Convertible Notes Claims<br>Form of Master Ballot for Class 7 – Convertible Notes Claims | **Exhibit D5(a)**<br>**Exhibit D5(b)** |
| Form of Ballot for Class 8 – General Unsecured Claims | **Exhibit D6** |
| Form of Ballot for Class 9 – DSM Contract Claims | **Exhibit D7** |
| Form of Ballot for Class 10 – Givaudan Contract Claims | **Exhibit D8** |
| [Form of Ballot for Class 13 – Convenience Claims] | **[Exhibit D9]** |

## <u>JURISDICTION AND VENUE</u>

4.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry

of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.       The statutory predicates for the relief requested herein are sections 1125 and 1126 of the Bankruptcy Code; Bankruptcy Rules 2002, 3016, 3017, 3020, and 9006; and Local Rules 3017-1(a) and 3017-1(b).

## BACKGROUND

### A.       The Debtors' Chapter 11 Cases

7.       On August 9 and August 21, 2023 (as applicable, the "Petition Date"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.  The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.       On August 27, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") which consists of the following members: U.S. Bank Trust Co. NA; Cosan U.S. Inc.; Sartorius Stedim North America Inc.; Hearst Magazine Media Inc.; Wiley Companies; Park Wynwood LLC; and Allog Participacoes Ltda.

9.       The Debtors were founded in 2003 to create a more stable supply of a key anti-malarial treatment.  Through the Debtors' cutting-edge science, artemisinin—the most effective anti-malarial drug in the world—is now consistently available to treat the deadly disease.  Using the same technological innovations that produced artemisinin, the Debtors have

DOCS_NY:48499.8

become the world's leading manufacturer of ingredients made with synthetic biology. The Debtors provide sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products.

10.     In addition, the Debtors operate a family of consumer brands that utilize the Company's ingredients to meet the growing demand for sustainable, effective, and accessible products, including Biossance® (clean beauty skincare), JVN™ (haircare), Rose Inc.™ (clean color cosmetics), Pipette® (clean baby skincare), OLIKA™ (clean wellness), MenoLabs™ (healthy living and menopause wellness), Stripes™ (menopausal wellness), and 4U by Tia™ (a new clean haircare line).

11.     A detailed description of the Debtors' businesses and the facts precipitating the filing of the Debtors' Chapter 11 Cases are set forth in the First Day Declaration.

**B.      DIP Financing, Asset Sales, and Restructuring Transactions**

12.     In order to obtain the funds necessary to effectuate the Debtors' restructuring strategy, contemporaneous with the filing of these Chapter 11 Cases, the Debtors filed their *Motion of the Debtors for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 19] (the "DIP Financing Motion").[5] On August 11, 2023, the Court entered the First Interim DIP Order and on September 19, 2023, the Court entered the Second Interim DIP Order approving the DIP Facility on an interim basis.[6]

---

[5] A capitalized term used but not otherwise defined in this paragraph shall have the meaning ascribed to it in the DIP Financing Motion.

[6] *Interim Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 54] (the "First Interim DIP Order") and *Second Interim Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting*

6

Pursuant to the Interim DIP Orders and the DIP Credit Agreement executed by the Debtors and the DIP Lenders,[7] certain Milestones were established, which are consistent with the deadlines sought to be approved in this Motion, pursuant to which the Debtors were to utilize the first two months of these Chapter 11 Cases to engage with major constituencies in furtherance of developing a consensual plan of reorganization while continuing the process of marketing its noncore consumer brands.  In the event such a deal cannot be reached, the DIP Financing contemplates a toggle, whereby the Debtors would pivot to a sale of substantially all their assets pursuant to section 363 of the Bankruptcy Code.

13.     Consistent with the above strategy, on September 18, 2023, the Debtors filed their *Motion for (I) an Order (A) Approving Bid Procedures for the Sale of the Debtors' Brand Assets; (B) Approving Certain Bid Protections in Connection with the Debtors' Entry Into Any Potential Stalking Horse Agreements; (C) Scheduling the Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II) an Order or Orders (A) Approving the Sale of the Debtors' Brand Assets Free and Clear of All Encumbrances; and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 316] (the "Brand Assets Sale Motion").[8]  Pursuant to the Brand Assets Sale Motion, the Debtors seek to establish bid and other procedures to market and

---

[7] *Senior Secured Super Priority Debtor in Possession Loan Agreement* dated as of August 9, 2023, as amended by *Amendment No. 1 to Senior Secured Super Priority Debtor in Possession Loan Agreement* dated as of September 13, 2023 (collectively, the "DIP Facility").

*Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 322] (the "Second Interim DIP Order", and collectively, the "Interim DIP Orders").  A hearing regarding entry of a final DIP Order was held on October 4, 2023.

[8] A capitalized term used but not otherwise defined in this paragraph shall have the meaning ascribed to it in the Brand Assets Sale Motion.

potentially sell their Brand Assets, including the assumption and assignment of any applicable

executory contracts,[9] associated with the Operating Consumer Brands.

14.    The Debtors Plan and Disclosure Statement were filed as an additional step

in the effectuation of the Restructuring Transactions and restructuring strategy contemplated by

the DIP Facility and as further described in the First Day Declaration, Brand Assets Sale Motion,

and Contract/Lease Procedures Motion.

### BASIS FOR RELIEF REQUESTED

**A.    Approval of the Disclosure Statement**

15.    Section 1125 requires that a disclosure statement be approved by the

bankruptcy court as containing "adequate information" prior to a debtor's commencement of

solicitation of acceptances or rejections to its plan.[10] "Adequate information" is defined in the

Bankruptcy Code as:

> information of a kind, and in sufficient detail, as far as is reasonably
> practicable in light of the nature and history of the debtor and the condition
> of the debtor's books and records, including a discussion of the potential
> material Federal tax consequences of the plan to the debtor, any successor
> to the debtor, and a hypothetical investor typical of the holders of claims or
> interests in the case, that would enable such a hypothetical investor of the
> relevant class to make an informed judgment about the plan, but adequate
> information need not include such information about any other possible or
> proposed plan and in determining whether a disclosure statement provides
> adequate information, the court shall consider the complexity of the case,

---

[9] Contemporaneous with the Brand Assets Sale Motion, the Debtors filed their *Motion for an Order (A) Approving Procedures Related to the Assumption, Assumption and Assignment, or Transfer of Executory Contracts and Unexpired Leases; and (B) Granting Related Relief* [Docket No. 317] (the "Contract/Lease Procedures Motion"), seeking to establish the procedures relating to the assumption, assumption and assignment, or transfer of executory contracts and unexpired leases, whether in connection with a sale of the Debtors' assets (including, but not limited to, a sale governed by the Brand Assets Sale Motion or a plan of reorganization (either, a "Restructuring Transaction"), including notice of proposed cure amounts and approving the form and manner of notice of the potential assumption, assumption and assignment, or transfer of executory contracts and unexpired leases.

[10] 11 U.S.C. § 1125(b).

the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.[11]

16.     The primary purpose of a disclosure statement is to provide creditors and interest holders affected by a proposed plan with all material information needed to make an informed decision whether to vote for the plan.[12] Congress intended that such informed judgments would be needed to both negotiate the terms of, and vote on, a plan of reorganization.[13]

17.     In evaluating whether a disclosure statement provides "adequate information," the Bankruptcy Court is given wide discretion to make a determination based upon the facts of the particular case.[14] Courts within the Third Circuit and elsewhere acknowledge that determining what constitutes "adequate information" for the purpose of satisfying section 1125 resides within the sound discretion of the court.[15]

18.     Here, the Disclosure Statement contains, among other things, information concerning (a) the business and background of the Debtors; (b) significant events that have occurred in these Chapter 11 Cases; (c) the classification and treatment of creditors under the Plan; (d) which classes of creditors are entitled to vote on the Plan; (e) selected historical information;

---

[11] 11 U.S.C. § 1125(a)(1).

[12] *See, e.g., Century Glove, Inc. v. First Amer. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988) (stating that section 1125 "seeks to guarantee a minimum amount of information to the creditor asked for its vote"); *Prudential Ins. Co. of Amer. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 1342 (8th Cir. 1985); *In re Phoenix Petroleum, Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001).

[13] *Century Glove*, 860 F.2d at 100.

[14] *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case.").

[15] *See, e.g., Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."); *Cadle Co. II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate information' in any particular situation is determined on a case-by-case basis, with the determination being largely in the discretion of the bankruptcy court." (Citation omitted)); *In re River Village Assocs.*, 181 B.R. 795, 804 (E.D. Pa. 1995) (same); *Phoenix Petroleum*, 278 B.R. at 393 (same).

9

(f) means for implementation of the Plan; (g) how distributions under the Plan will be made; (h) full disclosure of all releases, exculpation provisions and injunctions provided in the Plan; (i) certain factors creditors should consider before voting; (j) procedures for confirming the Plan; and (k) certain tax consequences.  The Debtors will continue to review and refine the Disclosure Statement, and based upon their ongoing review and further material developments in these Chapter 11 Cases, may make additional changes and disclosures prior to the Disclosure Statement Hearing.  Any such additional disclosures would increase the amount of information being provided to parties in interest, and consequently, would further substantiate that the Disclosure Statement contains adequate information.

19.     Accordingly, the Debtors submit that the Disclosure Statement contains "adequate information" as that phrase is defined in section 1125(a)(1) of the Bankruptcy Code. The Debtors believe that the Disclosure Statement should be approved and the attached proposed Disclosure Statement Order be entered.

**B.     Scheduling a Confirmation Hearing**

20.     Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan."[16]  Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court . . . may fix a date for the hearing on confirmation."[17]  Additionally, Bankruptcy Rule 2002(b) requires 28 days' notice of the hearing to consider approval of a disclosure statement or confirmation of a plan.  In accordance with the provisions of section 1128(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 3017, the

---

[16] 11 U.S.C. § 1128(a).

[17] Fed. R. Bankr. P. 3017(c).

Debtors hereby request entry of the Disclosure Statement Order setting a date for the confirmation hearing on the Plan (the "Confirmation Hearing").

21.     The Debtors request that the Confirmation Hearing be held on **January 17, 2024, at 11:00 a.m. (prevailing Eastern Time)**, subject to the Court's availability.  The Debtors also request that the Confirmation Hearing may be adjourned from time to time by announcing such continuance in open court or otherwise, without further notice to parties in interest.

**C.      Approval of Form of Solicitation Materials and Non-Voting Class Notices**

22.     The Bankruptcy Rules require that copies of a plan (or, if appropriate, a court-approved summary of the plan), court-approved disclosure statement, and notice of voting deadline be provided to all creditors, equity security holders, and the United States Trustee, unless the Court orders otherwise.[18]

23.     The Debtors have requested the Court schedule the Disclosure Statement Hearing on **November 21, 2023 at 11:00 a.m. (prevailing Eastern Time)**.  Upon approval of the Disclosure Statement, the Debtors request that the Court approve the form and manner of notice of the Confirmation Hearing to holders of Claims and Interests in both Voting and Non-Voting Classes, as defined and more specifically set forth below.

24.     Solicitation Materials and Notice of Confirmation Hearing to Voting Classes.  On or before **November 27, 2023** (the "Solicitation Mailing Deadline"), the Debtors, through the Solicitation Agent (as defined below), propose to transmit certain solicitation materials (the "Solicitation Materials") by mail to holders of Claims in Classes 3, 4, 5, 6, 7, 8, 9, 10, and [13] (the "Voting Classes"), containing the following:

   a.     a printed copy of the notice in substantially the form attached hereto as **Exhibit B** (the "Confirmation Hearing Notice") of: (i) the order approving the Disclosure

---

[18] Fed. R. Bankr. P. 3017(d).

Statement, (ii) the commencement date of the Confirmation Hearing, (iii) the deadline and procedures for filing objections to confirmation of the Plan, (iv) the deadline for receipt of ballots to accept or reject the Plan, and (v) notice of the Plan's non-consensual release, indemnification and exculpation provisions, including the Third Party Release, and the alternative option to opt out of granting such Third Party Release if not approved on a non-consensual basis, as described in the Confirmation Hearing Notice and applicable Ballot;

b.    a printed copy of the ballot (the "Ballot"), the proposed forms of which are annexed hereto as **Exhibits D1 – D9**, and a Ballot return envelope;

c.    a flash drive or printed book containing the Disclosure Statement (together with the exhibits thereto, including the Plan, that have been filed with the Court before the date of the mailing), the Plan, and a copy of the Disclosure Statement Order (without the exhibits as such are separately included in the Solicitation Materials);

d.    a cover letter from the Debtors explaining the enclosures and requesting that creditors vote in favor of the Plan; and

e.    such other materials as the Court may direct.

To avoid duplication and reduce expenses, the Debtors propose that creditors who have more than one claim shall receive only one set of Solicitation Materials and one Ballot for each Voting Class to which they belong.  The Debtors submit that such Solicitation Materials and manner of service satisfy the requirements of Bankruptcy Rule 3017(d).

25.    In addition to Holders of Claims in the Voting Classes, the Debtors shall mail a copy of the Confirmation Hearing Notice and Solicitation Materials to the Notice Parties (as defined below) by the Solicitation Mailing Deadline.

26.    Notice to Non-Voting Classes.    Pursuant to section 1126(f) of the Bankruptcy Code, Holders of Claims in Classes 1 and 2 under the Plan, are Unimpaired and deemed to have accepted the Plan and therefore, are not entitled to vote.  Also, pursuant to section 1126(g) of the Bankruptcy Code, Holders of Claims in Class 12, as well as Holders of Interests in Class 15 under the Plan, are Impaired and shall not receive nor retain any property under the Plan

on account of such Claims and/or Interests, and therefore, are deemed to have rejected the Plan and are not entitled to vote. Bankruptcy Rule 3017(d) provides:

> If the court orders that the disclosure statement and the plan or a summary of the plan shall not be mailed to any unimpaired class, notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, shall be mailed to members of the unimpaired class together with the notice of the time fixed for filing objections to and the hearing on confirmation.[19]

Accordingly, the Debtors propose that they should not be required to transmit the Solicitation Materials to Holders of Claims and/or Interests in Classes 1, 2, 12, and 15 of the Plan (collectively, the "Non-Voting Classes"). The Debtors further propose that Holders of Claims in Class 11 (Intercompany Claims) and Interests in Class 14 (Intercompany Interests) should be deemed to have received all required notices upon entry of the proposed Disclosure Statement Order without actual delivery of such notices. Neither Class 11 nor Class 14 are entitled to vote on the Plan. Class 11 consists of the Claims of Debtors or wholly-owned Affiliates of Debtors which while impaired, have consented to the Plan and Class 14 consists of the Interests of Debtors or wholly-owned Affiliates of Debtors who are not impaired and are deemed to have accepted the Plan. Pursuant to section 105(a) of the Bankruptcy Code, such additional notice to these Classes is unnecessary.

27. Therefore, on or before **November 27, 2023**, the Debtors, through the Solicitation Agent (as defined below), propose to mail the following: (i) to each Holder of Claims in the Non-Voting Classes required to receive notice, a notice substantially in the form attached hereto as **Exhibit C1** (the "Non-Voting Class Notice (Holders of Claims)") and (ii) to each Interest

---

[19] Fed. R. Bankr. P. 3017(d).

Holder in the Non-Voting Classes, a notice substantially in the form attached hereto as **Exhibit C2** (the "Non-Voting Class Notice (Interest Holders)", and with the Non-Voting Class Notice (Holders of Claims), the "Non-Voting Class Notices"), which set forth: (a) the recipient's status as a member of a Non-Voting Class; (b) the date and time of the Confirmation Hearing; and (c) the deadline and procedures for filing objections to the Plan.  The Non-Voting Class Notice will also include a description of the Plan's release, indemnification and exculpation provisions, including the Third Party Release, and the alternative option, if the Third Party Release is not approved on a non-consensual basis, to opt out of granting such Third Party Release, and will set forth the deadline and procedures for each Holder of a Claim or Interest in a Non-Voting Class to make such opt out election, as applicable.  The Non-Voting Class Notices will further indicate that a holder of a Claim and/or Interest in a Non-Voting Class is entitled, upon written request to counsel to the Debtors, to receive a copy of the Plan and Disclosure Statement, in electronic format (or such other format as specifically requested by such Claimant or Interest Holder) at the expense of the Debtors.  The Non-Voting Class Notices will also contain the link to the Solicitation Agent's website where any party in interest can access copies of the Solicitation Materials, including the Plan and Disclosure Statement, at no cost.

D.      **Approval of Form and Manner of Notice of the Confirmation Hearing**

28.      Bankruptcy Rule 2002(b) requires at least 28 days' notice by mail to all creditors and indenture trustees of the time set for filing objections to confirmation of a chapter 11 plan and the hearing to consider confirmation of a chapter 11 plan.  Bankruptcy Rule 2002(d) requires that equity security holders be given notice of the foregoing in the manner and the form directed by the Court.

14

29.     The Debtors propose that if the Court approves the Disclosure Statement and grants the relief requested by this Motion, the Confirmation Notice be served as part of the Solicitation Materials via first-class mail to Holders of Claims in the Voting Classes.  The Debtors further propose that, with respect to the Non-Voting Classes, service by first-class mail of the Non-Voting Class Notices (as applicable to Holders of Claims and/or Interests) be deemed adequate and sufficient notice of the Confirmation Hearing and deadline to object to confirmation of the Plan.

30.     The Debtors shall publish the Confirmation Hearing Notice on November 28, 2023 once in the national editions of the *Wall Street Journal* and an applicable Brazilian publication.  Additionally, the Confirmation Hearing Notice shall be posted electronically on the website maintained for the Debtors by the Voting Agent, at https://cases.stretto.com/Amyris.

**E.     Establishment of Record Date and Approval of Procedures for Distribution of Solicitation Materials and Non-Voting Class Notices, including Procedures for Notice to Beneficial Holders of Convertible Notes Claims (Class 7) and Beneficial Holders of Interests in Amyris (Class 15)**

31.     Bankruptcy Rule 3017(d) provides that, for purposes of voting on a plan of reorganization under the Bankruptcy Code, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."[20]

32.     Accordingly, the Debtors propose that the Court establish **November 15, 2023** as the record date (the "Record Date") for purposes of determining (a) which Holders of Claims or Interests are entitled to vote to accept or reject the Plan and receive the Solicitation

---

[20] Fed. R. Bankr. P. 3017(d).

Materials or the applicable Non-Voting Class Notice and (b) whether Claims or Interests have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of a Claim or Interest.  The Record Date shall apply to all of the Debtors' creditors, Interest Holders and other parties in interest.

33.     The Debtors have retained Bankruptcy Management Solutions, Inc. d/b/a Stretto, as their voting and solicitation agent to serve the Solicitation Materials, inspect, monitor, and supervise the solicitation process, serve as the tabulator of the Ballots and the Opt Out Election Forms (each as defined herein), and certify to the Court the results of the balloting and release opt outs (in such capacity, the "Solicitation Agent").

34.     Subject to the procedures set forth below regarding Holders of Convertible Notes Claims (Class 7), the Solicitation Agent will transmit the Solicitation Materials to the known Holders of Claims in the Voting Classes based upon the names and addresses in the proofs of claim filed by the claimants, or the Debtors' schedules if no proof of claim was filed by the Record Date. Each Holder of an Allowed Claim in the Voting Classes will be required to return a properly executed Ballot so that it is received by the Solicitation Agent on or before the Voting Deadline (as defined below) in order for that Holder's Ballot to be counted.

35.     The Solicitation Agent will transmit the Non-Voting Class Notice (Holders of Claims) to the known Holders of Claims in Classes 1, 2, and 12 based upon the names and addresses in the proofs of claim filed by the claimants, or the Debtors' schedules if no proof of claim was filed by the Record Date.  Subject to the procedures set forth below regarding Holders of Class 15 Interests, the Solicitation Agent will transmit the Non-Voting Class Notice (Interest Holders) to the known Holders of Interests in Class 15 as of the Record Date.

36.     <u>Procedures for Notice and Distribution of (i) Solicitation Materials to Holders of Convertible Notes Claims (Class 7) and (ii) Non-Voting Class Notice (Interest Holders) to Holders of Class 15 Interests</u>.  In additional to the procedures set forth above, the Debtors submit the following procedures are consistent with procedures approved by this Court in other cases involving public debt and equity and will facilitate appropriate notice being given to Holders of Claims in Class 7 and Interests in Class 15.

a.     <u>Procedures for Notice to Holders of Class 7 Convertible Notes Claims</u>.  Within three (3) Business Days of the entry of the Disclosure Statement Order, the Convertible Notes Trustee shall provide the Solicitation Agent with (a) a copy of the list of the names, addresses and holdings of any directly registered Holders of Convertible Notes as of the Record Date in an electronic file, (b) the name and address of each bank, broker, or other intermediary (each a "<u>Nominee</u>") identified as a Holder of record through which one or more beneficial noteholders (the "<u>Beneficial Noteholders</u>") hold a Convertible Notes Claim in "street name" as of the Record Date in an electronic file, and (c) such other information the Solicitation Agent deems reasonable and necessary to perform its duties pursuant to the Disclosure Statement Order.  The Solicitation Agent shall use such information only for purposes consistent with these Solicitation Procedures and any order of the Court.  The Solicitation Agent will transmit the Solicitation Materials to such identified Holders of Convertible Notes Claims as provided herein.

b.     <u>Procedures for Notice to Holders of Class 15 Interests</u>.  Within three (3) Business Days of the entry of the Disclosure Statement Order, each of the agents under the applicable documents governing the Class 15 Interests shall provide the Solicitation Agent with (a) a copy of the list of the names, addresses and holdings of any directly registered Holders of Class 15 Interests as of the Record Date in an electronic file, (b) the name and address of each Nominee identified as a Holder of record through which one or more beneficial holders (the "<u>Beneficial Interest Holders</u>") hold an Interest in the Parent in "street name" as of the Record Date in an electronic file, and (c) such other information the Solicitation Agent deems reasonable and necessary to perform its duties pursuant to the Disclosure Statement Order.  The Solicitation Agent shall use such information only for purposes consistent with these Solicitation Procedures and any order of the Court. The Solicitation Agent will transmit the Non-Voting Class Notice (Interest Holders) to such identified Holders of Class 15 Interests as provided herein.

37.     The Solicitation Agent will serve the notice of the hearing on this Motion upon all known creditors and holders of equity interests pursuant to Bankruptcy Rule 3017(a).  The Debtors expect that certain of such notices will be returned by the United States Postal Service or

couriers as undeliverable.[21]   After approval hereof, and in connection with mailing Solicitation

Materials or Non-Voting Class Notices, the Debtors believe that it would be costly and wasteful

to mail such Solicitation Materials or Non-Voting Class Notices to the same addresses from which

notices of this Motion are returned as undeliverable.   Therefore, the Debtors seek the Court's

approval to dispense with service as to each such creditor or interest holder as to which notice of

this Motion was returned as undeliverable unless the Debtors are provided with an accurate address

prior to the Disclosure Statement Hearing.   Further, as to Solicitation Materials or Non-Voting

Class Notices that hereafter are mailed and returned by the United States Postal Service or a courier

as undeliverable, the Debtors propose that they may, but shall not be required to, attempt to locate

the correct address and resend Solicitation Materials prior to the Voting Deadline (as defined

below) and Non-Voting Class Notices prior to the Plan Objection Deadline (as defined below).

The Debtors further propose that to the extent any Solicitation Materials or Non-Voting Class

Notices are returned as undeliverable and are re-sent, the initial mailing date shall be the date of

service for the purpose of calculating notice.

F.     **Approval of Form of Ballots**

38.     Bankruptcy Rule 3017(d) requires that ballots for accepting or rejecting the

Plan should substantially conform to Official Form No. 14.  The Debtors propose to use a ballot

(the "Ballot") substantially in the forms annexed hereto as **Exhibits D1 – D9**.  The Ballot is based

on Official Form No. 14, but has been modified to address the particular requirements of the

Chapter 11 Cases, the Plan, and as appropriate, the applicable Voting Class.  The Debtors propose

---

[21]  Upon the return of an undeliverable notice, the Debtors will perform a review of the notice address with the address
set forth on the proofs of claim filed with the Court to confirm that the Debtors' notice address conforms to the
creditor's address set forth in the proofs of claim.  To the extent any errors occur, such creditor will be mailed the
Solicitation Materials or Non-Voting Class Notices, as applicable.  Further, the Debtors will incorporate into the
creditor address database all change of address notices received from creditors.

that each Ballot be distributed only to holders of Claims in the applicable Voting Classes, as these are the only Classes entitled to vote to accept or reject the Plan.  Each Ballot will include an election for the Claimant to opt out of granting the Third Party Release where the Claimant votes to reject the Plan or abstains from voting on the Plan, in the event the Third Party Release is not approved on a non-consensual basis.

### G.   <u>Voting Deadline for Receipt of Ballots</u>

39.   Pursuant to Bankruptcy Rule 3017(c), at the time of or before approval of the Disclosure Statement, "the court shall fix a time within which the holders of claims and interests may accept or reject a plan."[22]  The Debtors respectfully request that the Court establish **5:00 p.m. (Eastern Time) on January 10, 2024** as the deadline by which all Ballots accepting or rejecting the Plan must be received by the Solicitation Agent (the "<u>Voting Deadline</u>"), unless otherwise extended by the Debtors in writing.  The Debtors request that to be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed, and delivered to the Solicitation Agent by: (a) first class mail, (b) overnight courier, (c) personal delivery, or (d) submission by no later than the Voting Deadline of an electronic Ballot through the Solicitation Agent's on-line electronic Ballot submission portal at https://cases.stretto.com/Amyris (except for submission of the Class 7 Convertible Notes Claims Ballots (as defined below) which may only be submitted in accordance with the express instructions set forth in the applicable Beneficial Holder Ballot or Master Ballot, the forms of which are attached hereto as Exhibits D5(a) and D5(b)).

40.   The Solicitation Agent shall file with the Bankruptcy Court, by January 15, 2024, or, if the Confirmation Hearing is on a date other than January 17, 2024, no later than three

---

[22] Fed. R. Bankr. P. 3017(c).

(3) business days prior to the Confirmation Hearing, an affidavit regarding the results of the tabulation of the Ballots received on the Plan (the "Voting Tabulation Affidavit").  The Voting Tabulation Affidavit shall also identify any parties which elected to opt out of granting the Third Party Release as to both Voting and Non-Voting Classes.

## H.    Procedures for Vote Tabulation

41.    The Bankruptcy Code provides that a class of claims or interests has accepted a plan if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims or interests of such class held by creditors that have accepted or rejected such plan.[23]  Further, the Bankruptcy Rules provide that "the court after notice and hearing may temporarily allow a claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."[24]

42.    With respect to Claims in Voting Classes, and solely for purposes of voting on the Plan, the Debtors propose the following (collectively, the "Voting Procedures"):

a.    If an objection has not been filed to a Claim, the amount of such Claim for voting purposes shall be the non-contingent, liquidated and undisputed Claim amount contained on a timely filed Proof of Claim or, if no timely filed Proof of Claim has been filed by the Voting Deadline, the amount of such Claim for voting purposes shall be the non-contingent, liquidated, and undisputed amount of such Claim listed in the Debtors' Schedules of Assets and Liabilities;

b.    If a Claim (i) for which a Proof of Claim has been timely filed as wholly contingent, unliquidated or disputed, undetermined, or unknown in amount, or (ii) is Scheduled as wholly contingent, unliquidated or disputed, undetermined, or unknown in amount and such Claimant has not filed a superseding Proof of Claim, in either case, such Claims shall be temporarily allowed in the amount of $1.00 for voting purposes only, but not for purposes of allowance or distribution;

c.    If a Claim is partially liquidated and partially unliquidated, such Claim shall be allowed for voting purposes only in the liquidated amount;

---

[23] 11 U.S.C. §§ 1126(c) and (d).

[24] Fed. R. Bankr. P. 3018(a).

d.     If a holder of a Claim in a Voting Class casts a Ballot with respect to a Claim that is the subject of an objection filed no later than thirty (30) days before the Confirmation Hearing, the Debtors request, in accordance with Bankruptcy Rule 3018, that the party's Ballot not be counted, unless the Court temporarily allows such Claim for purposes of voting to accept or reject the Plan, and that such creditor be required to file a motion for such relief (the "Rule 3018 Motion") no later than **5:00 p.m. (Eastern Time) on January 3, 2024**, and that the Court schedule a hearing on such motion for a date on or prior to the Confirmation Hearing. Notwithstanding the foregoing, if the Debtors file an objection to a Claim and request that such Claim be allowed in a specific amount, such creditor's Ballot shall be counted in such specified amount;

e.     Holders of Proofs of Claim filed for $0.00 are not entitled to vote;

f.     Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased one or more duplicate Claims within the same Class shall be provided with only one Solicitation Materials and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims;

g.     If a Claim is the subject of an amended Proof of Claim, the originally filed Proof of Claim shall be deemed superseded by the later filed amended Proof of Claim, regardless of whether or not the Debtors have objected to such Claim, and only the amended Proof of Claim shall be used for the purpose of determining voting eligibility in accordance with the provisions herein;

h.     For purposes of the numerosity requirement of section 1126(c), a Creditor with multiple Claims in a particular Class may vote each of its Claims against the Debtors in such Class, but must vote all of such Claims either to accept the Plan or all of such Claims to reject the Plan, and each such vote to accept or reject the Plan shall be counted separately;

i.     If a Claim has been disallowed by agreement of the applicable creditor or order of the Court at any time before the Voting Deadline, or if the Claim is on account of a contract or lease that has been assumed pursuant to section 365 of the Bankruptcy Code, such Claim shall also be disallowed or disregarded for voting purposes; and

j.     If a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim shall be temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution.

43.     Additionally, the Debtors propose that the following voting procedures and standard assumptions be used in tabulating the Ballots (collectively, together with the Voting Procedures, the "Voting and Tabulation Procedures"):

a.   Except to the extent the Debtors otherwise determine, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Debtors in connection with the confirmation of the Plan;

b.   Claims shall not be split for purposes of voting; thus, each creditor must vote the full amount of its Claim(s) within each class to either accept or reject the Plan.  If a creditor attempts to split such vote on their Ballot, such Ballot will not be counted for voting purposes;

c.   Any executed Ballot which does not indicate an acceptance or rejection shall not be counted;

d.   Any executed Ballot which indicates both an acceptance and rejection of the Plan shall not be counted;

e.   Votes cast pursuant to a Ballot that is not signed or does not contain an original signature or, in the case of Ballots which are electronically submitted using the Solicitation Agent's official on-line electronic ballot portal as set forth on the Ballots, an electronic signature, shall not be counted, unless the Court orders otherwise;

f.   Parties holding Claims in more than one Class under the Plan may receive more than one Ballot coded for each different Class;

g.   The method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder of a Claim, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Solicitation Agent;

h.   Delivery of the original executed Ballot to the Solicitation Agent on or before the Voting Deadline is required.  Delivery of a Ballot by facsimile, email or any other electronic means will not be accepted unless otherwise ordered by the Court; provided, however, that Ballots may be electronically submitted using the Solicitation Agent's official on-line electronic ballot portal at https://cases.stretto.com/Amyris (except for submission of the Class 7 Convertible Notes Claims Ballots (as defined below) which may only be submitted in accordance with the express instructions set forth in the applicable Beneficial Holder Ballot or Master Ballot, the forms of which are attached hereto as Exhibits D5(a) and D5(b));

i.   Ballots must be submitted in accordance with the Voting Procedures.  No Ballot sent to the Debtors, or the Debtors' financial or legal advisors, shall be accepted or counted;

j.   If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

k.  If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtors, must submit proper evidence, satisfactory to the Debtors, of such person's authority to so act in such capacity;

l.  The Debtors, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein, the Debtors may reject any defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

m.  Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots shall be determined by the Debtors, which determination shall be final and binding;

n.  If a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such Claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

o.  Any holder of a Claim who has delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

p.  Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

q.  Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

r.  No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

s.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

t.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of the validity or allowability of a Claim for distribution or any other purposes.

u.  Any executed Ballot which does not indicate an opt out of granting the Third Party Release shall be deemed to be consent to such Third Party Release, regardless of

whether such Ballot is voted to accept or reject the plan, or contains no voting election.

44.    Procedures for Voting Tabulation of Class 7 Convertible Notes Claims.  In addition to the foregoing generally applicable Voting and Tabulation Procedures, the following procedures shall apply to the tabulation of votes cast by Beneficial Noteholders of Convertible Notes Claims in Class 7 that hold and therefore, will vote, their position through a Nominee:

a.    On the Solicitation Mailing Deadline, the Solicitation Agent shall distribute or cause to be distributed (i) the Solicitation Materials, including an applicable Ballot, to all Beneficial Noteholders of Convertible Notes Claims as of the Record Date, and (ii) an appropriate number of Solicitation Materials, including an appropriate number of applicable ballots, and a master ballot (a "Master Ballot") to each Nominee identified to the Solicitation Agent as a Holder of record through which one or more Beneficial Noteholders holds a Convertible Notes Claim in "street name" as of the Record Date;[25]

b.    Within three (3) business days of receipt of the Solicitation Materials from the Solicitation Agent, each Nominee must distribute the Solicitation Materials, including the applicable Ballots, to each Beneficial Noteholder for which they hold the applicable Convertible Notes Claim in one of the following two ways (as selected by the Nominee):

(i)    Obtaining the votes of the Beneficial Noteholders by (1) immediately distributing the Solicitation Materials, including Beneficial Holder Ballots, it receives from the Solicitation Agent to all such Beneficial Noteholders, (2) promptly collecting Beneficial Holder Ballots from such Beneficial Noteholders that cast votes on the Plan, (3) compiling and validating the votes and other relevant information of all such Beneficial Noteholders on the Master Ballot, and (4) transmitting the Master Ballot to the Solicitation Agent by the Voting Deadline; or

(ii)    Distributing pre-validated Beneficial Holder Ballots pursuant to the following procedures: (1) the Nominee shall forward to each Beneficial Noteholder as of the Record Date the Solicitation Materials, an individual Beneficial Holder Ballot that has been pre-validated, postage prepaid return envelope as indicated in subparagraph (2); (2) to pre-validate a Beneficial Holder Ballot, the Nominee should complete the first item and execute the Ballot and

---

[25] Nominees may use their ordinary and standard procedures to disseminate the voting materials (including use of their own voting form) as well as in the collection of votes and elections from their Beneficial Noteholders.

indicate on the Beneficial Holder Ballot the name of the Nominee and DTC participant number, as applicable, the number and dollar amount of Convertible Notes held by the Nominee for the Beneficial Noteholder, and the account number for the account in which such Convertible Notes are held by the Nominee; and (3) the Beneficial Noteholder shall complete and return the pre-validated Beneficial Holder Ballot to the Solicitation Agent by the Voting Deadline.

c.  Any Nominee of a Convertible Notes Claim in its own name may vote on the Plan by completing a Beneficial Holder Ballot or a Master Ballot and returning it directly to the Solicitation Agent on or before the Voting Deadline.

d.  The Convertible Notes Trustee will not be entitled to vote on behalf of the Beneficial Holder; rather, each Beneficial Holder must vote his or her own Convertible Notes Claim in the manner set forth herein.

e.  Nominees that pre-validate Beneficial Holder Ballots must keep a list of Beneficial Noteholders for whom they pre-validated a Beneficial Holder Ballot along with copies of the pre-validated Beneficial Holder Ballots for a period of one year after the Effective Date of the Plan.

f.  The Solicitation Agent will not count votes of Beneficial Noteholders unless and until they are included on a valid and timely Master Ballot or a valid and timely "pre-validated" Beneficial Holder Ballot.

g.  If a Beneficial Noteholder holds Convertible Notes Claims through more than one Nominee or through multiple accounts, such Beneficial Noteholder may receive more than one Beneficial Holder Ballot and each such Beneficial Noteholder must vote consistently and execute a separate Beneficial Holder Ballot for each block of Convertible Notes that it holds through any Nominee and must return each such Beneficial Holder Ballot to the appropriate Nominee or return each such "pre-validated" Beneficial Holder Ballot to the Solicitation Agent.

h.  Votes cast by Beneficial Noteholders through Nominees will be applied to the applicable positions held by such Nominees in the applicable Voting Class, as of the Record Date, as evidenced by the record and depository listings. Votes submitted by a Nominee pursuant to a Master Ballot will not be counted in excess of the amount of such Convertible Notes Claims held by such Nominee as of the Record Date.

45.  If no Holder of a Claim eligible to vote in a particular Class timely votes to accept or reject the Plan, the Debtors may seek to have the Plan deemed accepted by the Holders of such Claims in such Class for purposes of section 1129(b) of the Bankruptcy Code.

46.     If the Third-Party Releases are not approved by the Bankruptcy Court, each holder of a Direct Claim may voluntarily elect to receive its Pro Rata share of 50% of the portion of the Direct Claims Recovery Pool to which it is entitled by electing to grant the Third-Party Releases, through the following methods: (x) for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases, and (y) for holders of Claims and Interests who are deemed to accept or reject the Plan and are provided with a notice of non-voting status providing them with the right to opt out of granting the Third-Party Releases and do not elect to exercise such right; *provided,* that, as applicable, the Direct Claims Threshold is satisfied.

I.      **Approval of Form of and Procedures for Tabulation of Release Opt out Election**

47.     The Non-Voting Class Notices shall set forth the Plan's release, indemnification and exculpation provisions, including the Third Party Release, and the alternative option for the Holder of any Claim or Interest in a Non-Voting Class to opt out of granting such Third Party Release.  The Non-Voting Class Notices shall include an election form, with applicable instructions and procedures, to enable the recipient to opt out of the Third Party Release (the "Opt Out Election Form").  The Opt Out Election Form is based on the ballot form, but has been modified to indicate that is it relates solely to the Third Party Release, and does not constitute a vote for or against the Plan as the recipient of the Opt Out Election Form is not entitled to vote on the Plan.  The Debtors propose that each Opt Out Election Form be distributed only to Holders of Claims and/or Interests in the applicable Non-Voting Classes.

48.     The Opt Out Election Form shall include instructions for it to be returned to the Solicitation Agent on or before **5:00 p.m. (Eastern Time) on January 10, 2024**, and shall

26

indicate that failure to return the completed Opt Out Election Form will be deemed a consent to the Third Party Release.  The Solicitation Agent shall tabulate the results of the Opt Out Election Form and include such results in the Voting Tabulation Affidavit.

**J.     Establishment of Deadline and Procedures for Filing Objections to Confirmation of the Plan and Debtors' Confirmation Brief**

49.     Bankruptcy Rule 3020(b) provides that objections to the confirmation of a proposed chapter 11 plan must be filed with the bankruptcy court and served on the debtor, the trustee, any committee appointed under the Bankruptcy Code, and on any other entity designated by the bankruptcy court, within a time specified by the bankruptcy court.  Bankruptcy Rules 2002(b) and 2002(d) require 28 days' notice of the Confirmation Hearing and the deadline to object to confirmation of the Plan.  Accordingly, the Debtors request that the Court set **5:00 p.m. (prevailing Eastern Time) on January 10, 2024** as the date by which any objection, comment, or response to confirmation of the Plan (including any supporting memoranda) (each a "Plan Objection") must be filed with the Court and served on the Notice Parties (as identified below), together with proof of service (the "Plan Objection Deadline").

50.     The Debtors further propose that any Plan Objection must: (i) be in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party, including the amount of the claim or number of shares of stock held; and (iii) state with particularity the legal and factual basis and nature of any objection to the confirmation of the Plan. Any such Plan Objection must be filed with the Court and served so that it is received by the Notice Parties on or before the Plan Objection Deadline.

51.     The Debtors request that the Court establish **January 15, 2024,** or if the Confirmation Hearing is a date other than January 17, 2024, the date that is three (3) business days prior to the Confirmation Hearing, as the date by which the Debtors must file with the Court a brief

supporting confirmation of the Plan (including any supporting legal memoranda) and replying to any timely-filed and served Plan Objections (the "Confirmation Brief"). The Debtors shall serve the Confirmation Brief on the applicable Notice Parties.

52.    The Debtors submit that the foregoing procedures for providing notice of the Confirmation Hearing, the Plan Objection Deadline, and related matters fully comply with Bankruptcy Rules 2002 and 3017. Accordingly, the Debtors request that the Court approve the proposed procedures as appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**K.    Notice Parties**

53.    As used in this Motion, any notices or pleadings required to be filed with the Court and served on the Notice Parties must be served upon the following:

a.    Counsel for the Debtors, (i) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com); and (ii) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com);

b.    Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware, 19801, Attn: John Schanne, Esq. (John.Schanne@usdoj.gov);

c.    Counsel to the DIP Lenders, DIP Agent and the Foris Prepetition Secured Lenders, (i) Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein (mgoldstein@goodwinlaw.com), Alexander J. Nicas (anicas@goodwinlaw.com), and Debora Hoehne (dhoehne@goodwinlaw.com); and (ii) Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier (david.fournier@troutman.com);

d.    Counsel to the Committee, (i) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095; Attn: Gregory Pesce, (gregory.pesce@whitecase.com), Andrew O'Neill, (aoneill@whitecase.com), and John Ramirez, (john.ramirez@whitecase.com); and (ii) local counsel to the Committee, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801; Attn: Christopher M. Samis,

(csamis@potteranderson.com), Katelin A. Morales, (kmorales@potteranderson.com), Sameen Rizvi (srizvi@potteranderson.com); and

e.    any party that requests service pursuant to Bankruptcy Rule 2002.

## NOTICE

54.    The Debtors will provide notice of this Motion to (a) the Notice Parties and (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis).

## NO PRIOR REQUEST

55.    No prior request for the relief sought herein has been made by the Debtors to this Court or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter the Disclosure Statement Order, in substantially the form attached hereto: (i) approving the Disclosure Statement; (ii) scheduling the Confirmation Hearing; (iii) approving the form and manner of notice of the Confirmation Hearing to both Voting Classes and Non-Voting Classes; (iv) establishing procedures for solicitation and tabulation of votes to accept or reject the Plan, including (A) establishing a Record Date and approving procedures for distributing the Solicitation Materials; (B) approving the form and content of the Solicitation Materials, including the form of Ballots; (C) establishing a voting deadline for the receipt of Ballots; and (D) approving procedures for tabulating acceptances and rejections of the Plan; (v) approving the form of notice of the releases, exculpation provisions and injunctions provided in the Plan and the opt out election, as applicable, for both Voting Classes and Non-Voting Classes; (vi) establishing the deadline and procedures for filing Plan Objections and the Confirmation Brief; and (vii) granting related relief.

Dated: October 12, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*

Richard M. Pachulski (*pro hac vice* forthcoming)
Debra I. Grassgreen (*pro hac vice* forthcoming)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell (*pro hac vice* forthcoming)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  rpachulski@pszjlaw.com
        dgrassgreen@pszjlaw.com
        joneill@pszjlaw.com
        jrosell@pszjlaw.com
        sgolden@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

30