**<u>EXHIBIT C1</u>**

**Notice of Confirmation Hearing and Related Matters
(Non-Voting Classes/Holders of Claims)**

11

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE TO NON-VOTING CLAIM HOLDER CLASSES OF (A) STATUS WITH RESPECT TO CLASSES DEEMED TO ACCEPT OR REJECT DEBTORS' CHAPTER 11 PLAN, (B) HEARING TO CONSIDER CONFIRMATION OF DEBTORS' CHAPTER 11 PLAN; (C) DEADLINE FOR FILING PLAN OBJECTIONS, (D) DEBTORS' RELEASES AND THIRD PARTY RELEASE; (E) PROCEDURES AND DEADLINE REGARDING OPT OUT ELECTION; AND (F) RELATED MATTERS**

TO:    **HOLDERS OF CLAIMS IN NON-VOTING CLASSES:**
        **Class 1 (Other Secured Claims)**
        **Class 2 (Other Priority Claims)**
        **Class 12 (Section 510(b) Claims)**

      **PLEASE TAKE NOTICE**: On October 12, 2023, Amyris, Inc. and its affiliated debtors and debtors in possession (the "Debtors") filed the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ____] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").

      Concurrently with the filing of the Plan, the Debtors filed the related Disclosure Statement in support of the Plan [Docket No. ___] (including all exhibits thereto and as may be amended, modified or supplemented from time to time, collectively, the "Disclosure Statement"). On [_____, 2023], this Court entered an order approving the Disclosure Statement [Docket No. __] (the "Disclosure Statement Order") and certain related materials (i) establishing notice, voting and objection procedures for Voting Classes (the "Solicitation Materials") and (ii) establishing notice and objection procedures for Non-Voting Classes (the "Non-Voting Class Notices").

      **A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held on January 17, 2024, commencing at 11 a.m. (prevailing Eastern Time),** before the Honorable Thomas M. Horan, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 824 Market Street, Courtroom No. 6, Wilmington, Delaware 19801. It may be possible to attend the Confirmation Hearing remotely. Any party who wishes to attend via video conference is required to register with the Court at the following link: https://protect-us.mimecast.com/s/48LqCYEMNEs6v2kKt0scm9. The Confirmation Hearing may be continued from

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

time to time without further notice except for (i) an announcement made at the Confirmation Hearing or any adjourned confirmation hearing or (ii) a written notice filed with the Bankruptcy Court and served on all parties who have filed Plan Objections, the United States Trustee, and all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

**If you have received this Notice, your Claims are in a Non-Voting Class and you are not eligible to vote to accept or reject the Plan.**

**PLEASE TAKE NOTICE** that pursuant to section 1126(f) of the Bankruptcy Code, Holders of Claims in Classes 1 and 2 under the Plan are Unimpaired and deemed to have accepted the Plan and therefore, are not entitled to vote.  Also, pursuant to section 1126(g) of the Bankruptcy Code, Holders of Claims in Class 12 under the Plan are Impaired and shall not receive nor retain any property under the Plan on account of such Claims, and therefore, are deemed to have rejected the Plan and not entitled to vote.

Accordingly, the Debtors are not required to transmit Solicitation Materials to holders of Claims in Classes 1, 2, and 12 of the Plan (each, a "Non-Voting Class") pursuant to the Disclosure Statement Order. Instead, you have been sent this Notice for the purpose of notifying you of the Confirmation Hearing and Plan Objection Deadline, AND NOTIFYING YOU OF YOUR ABILITY TO OPT OUT OF GRANTING THE THIRD PARTY RELEASE DESCRIBED IN DETAIL BELOW.

**The Bankruptcy Court has established January 10, 2024 at 5:00 p.m. (Eastern Time), as the last date and time for filing and serving objections to the confirmation of the Plan (the "Plan Objection Deadline").**  All Plan Objections must state with particularity the legal and factual grounds for such objection; (i) be in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection; (iv) be filed with the Court and served so as to be received by the Plan Objection Deadline; and (v) served on the following parties: (a) Counsel for the Debtors, (i) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com); and (ii) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com); (b) Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware, 19801, Attn: John Schanne, Esq. (John.Schanne@usdoj.gov); (c) Counsel to the DIP Lenders, DIP Agent and the Foris Prepetition Secured Lenders, (i) Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein (mgoldstein@goodwinlaw.com), Alexander J. Nicas (anicas@goodwinlaw.com), and Debora Hoehne (dhoehne@goodwinlaw.com); and (ii) Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier (david.fournier@troutman.com); (d) Counsel to the Committee, (i) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095; Attn: Gregory Pesce, (gregory.pesce@whitecase.com), Andrew O'Neill, (aoneill@whitecase.com), and John Ramirez, (john.ramirez@whitecase.com); and (ii) local counsel to the Committee, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801; Attn: Christopher M. Samis, (csamis@potteranderson.com), Katelin A. Morales, (kmorales@potteranderson.com), Sameen Rizvi (srizvi@potteranderson.com); and (e) any party that requests service pursuant to Bankruptcy Rule 2002.

**Any Plan Objection not timely filed and served by the Plan Objection Deadline in accordance with the provisions of this Notice will not be heard and will be overruled.**

**PLEASE TAKE NOTICE: ARTICLE IX OF THE PLAN CONTAINS CERTAIN RELEASES, EXCULPATION PROVISIONS AND INJUNCTIONS, INCLUDING THIRD PARTY RELEASES**

2

**THESE PROVISIONS ARE SET FORTH IN THE ATTACHED ANNEX A**

**All Holders of Claims or Interests in Voting and Non-Voting Classes will be deemed to have consented to the Third Party Release set forth in Article IX.D of the Plan (as set forth in full in the attached Annex A.**

**You are the Holder of a Claim in a Non-Voting Class.  If you do not want to consent to granting the Third Party Release set forth in Article IX.D of the Plan, you must complete the attached Opt Out Election Form and return it to the Solicitation Agent in the manner indicated by January 10, 2024, at 5:00 p.m.  A failure to complete and submit the Opt Out Election Form will be deemed consent to granting the Third Party Release.**

**If the Third-Party Releases are not approved by the Bankruptcy Court, each holder of a Direct Claim may voluntarily elect to receive its Pro Rata share of 50% of the portion of the Direct Claims Recovery Pool to which it is entitled by electing to grant the Third-Party Releases, through the following methods: (x) for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases, and (y) for holders of Claims and Interests who are deemed to accept or reject the Plan and are provided with a notice of non-voting status providing them with the right to opt out of granting the Third-Party Releases and do not elect to exercise such right; *provided,* that, as applicable, the Direct Claims Threshold is satisfied. Any undistributed amounts in the Direct Claims Recovery Pool that would have otherwise been allocated to holders of Direct Claims that opted out of granting the Third-Party Release shall revert to the Reorganized Amyris.**

   **PLEASE TAKE FURTHER NOTICE** that any party in interest, including any member of a Non-Voting Class, wishing to obtain copies of the Solicitation Materials, including the Plan and Disclosure Statement, at the Debtors' expense may do so by (i) contacting the Debtors' Solicitation Agent at 888.855.0485 (Toll free) or 303.276.0309 (International) or by email at TeamAmyris@stretto.com or by viewing such documents by accessing online at no cost to you at https://cases.stretto.com/Amyris.  The documents are also available on the Court's website: www.deb.uscourts.gov.  Please note that a PACER password and login are needed to access documents on the Court's website.

DOCS_NY:48499.8

Dated:   [●]

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ DRAFT*

Richard M. Pachulski (*pro hac vice* forthcoming)
Debra I. Grassgreen (*pro hac vice* forthcoming)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell (*pro hac vice* forthcoming)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
joneill@pszjlaw.com
jrosell@pszjlaw.com
sgolden@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

4

**Annex A**

**ARTICLE IX.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

B.      *Release of Liens.*

Except as otherwise provided herein, in the Exit First Lien Facility Documents, the Plan Supplement, the Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, and other than as to the DIP Facility Claims and Foris Prepetition Secured Claims rolled up, converted, exchanged, refinanced or amended and restated, into the Exit First Lien Facility, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, or any other Holder of a Secured Claim.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such mortgages, deeds of trust, Liens, pledges, and other security interests.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or the Exit First Lien Facility Agent, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

C.      *Releases by the Debtors.*

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, each of the Debtors, on its own behalf and as a representative of its Estates, to the fullest extent permitted under applicable law, shall, and shall be deemed to, completely and forever release, waive, void and extinguish unconditionally, as against each and all of the Released Parties, any and all Claims, Estate Causes of Action, interests, obligations, suits, judgments, damages, debts, rights, remedies, set offs, and Liabilities of any nature whatsoever, whether liquidated or Unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, tort, contract,

5

or otherwise, that are or may be based in whole or part on any act, omission, transaction, event, occurrence, or other circumstance, whether direct or derivative, taking place or existing on or prior to the Effective Date (including prior to the Petition Date) arising from, in connection with, or related to, directly or indirectly, in any manner whatsoever, the Debtors or their operations, assets, liabilities, financings, the Estates, or the Chapter 11 Cases, that may be asserted by or on behalf of such Debtor or its Estate, against any of the Released Parties; *provided*, *however*, that nothing in this section shall operate as a release, waiver, discharge or impairment of any Estate Causes of Action transferred to the Excluded Party Litigation Trust, which are preserved notwithstanding anything to the contrary in this section.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (b) the rights of any Holder of Allowed Claims to receive distributions under the Plan; (c) any Claims for indemnification that are expressly assumed by the Debtors pursuant to the Plan or any document, instrument, or agreement executed to implement the Plan or the Restructuring Transactions; or (d) any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any claim or Cause of Action released by the Debtor release against any of the Released Parties.

D.      *Third-Party Release by the Releasing Parties.*

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date,  for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Parties shall be deemed to forever release and waive, as against each and all of the Released Parties, any and all Direct Claims, whether liquidated or Unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise that are or may be based in whole or in part upon any act, omission, transaction, event, or other occurrence taking place or existing on or prior to the Effective Date; *provided*, *however*, that nothing in this section shall operate as a release, waiver, discharge or impairment of (i) any Estate Causes of Action or liabilities arising out of fraud or criminal acts of any such Released Party as determined by a Final Order, or (ii) any Causes of Action transferred to the Excluded Party Litigation Trust, which Causes of Action are preserved notwithstanding anything to the contrary in this section, or (iii) any Excluded Party Direct Claims.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to

6

implement the Plan or the Restructuring Transactions, including the Exit First Lien Facility Documents; (b) the rights of any Holder of Allowed Claims or Allowed Interests to receive distributions under the Plan; and (c) any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity.

If the Third-Party Releases are not approved by the Bankruptcy Court, each holder of a Direct Claim may voluntarily elect to receive its Pro Rata share of 50% of the portion of the Direct Claims Recovery Pool to which it is entitled by electing to grant the Third-Party Releases, through the following methods: (x) for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases, and (y) for holders of Claims and Interests who are deemed to accept or reject the Plan and are provided with a notice of non-voting status providing them with the right to opt out of granting the Third-Party Releases and do not elect to exercise such right; *provided,* that, as applicable, the Direct Claims Threshold is satisfied.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) essential to the Confirmation; (ii) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Excluded Party Litigation Trust and the Direct Claim Recovery Pool and the restructuring and implementing the Plan; (iii) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (iv) in the best interests of the Debtors and their Estates; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; and (vii) a bar to any of the Releasing Parties asserting any Direct Claim released pursuant to the Third-Party Release.

E.    *Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any claims and Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of prepetition transactions (including with respect to the Debt Documents), the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the Exit First Lien Facility Documents, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the Exit First Lien Facility, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to

7

reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable Law with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.     *Plan Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, and separate and apart from the Direct Claims Injunction, all Entities who have held, hold, or may hold the Released Claims are permanently enjoined from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any Released Claims; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Released Claims; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the Estates of such Entities on account of or in connection with or with respect to any Released Claims; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any Released Claims unless such Entity has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Released Claims released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this **F** hereof.

G.     *Direct Claims Injunction.*

1.     **General Purposes and Terms.**

The Confirmation Order shall provide that, as of the Effective Date, and irrespective of whether any such holder has agreed to be bound by the Plan, all holders of Direct Claims and their respective Related Parties will be permanently and forever stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Direct Claim against the Direct Claims Injunction Parties, including all of the following actions (collectively, the "Direct Claims Injunction"):

8

     **a.**     **commencing or continuing in any manner, any actions or other proceedings of any kind with respect to any Direct Claims against any of the Direct Claims Injunction Parties or against the property of any of the Direct Claims Injunction Parties;**

     **b.**     **enforcing, levying, attaching, collecting, or otherwise recovering, by any manner or means, from any of the Direct Claims Injunction Parties, or the property of the Direct Claims Injunction Parties, any judgment, award, decree, or order with respect to any Direct Claim against any of the Direct Claims Injunction Parties, or any other person;**

     **c.**     **creating, perfecting, or enforcing any lien of any kind relating to any Direct Claim against any of the Direct Claims Injunction Parties, or the property of the Direct Claims Injunction Parties; and**

     **d.**     **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, with respect to any such Direct Claim.**

     **2.**     **Standing of Direct Claim Injunction Parties.**

     **Each of the Direct Claims Injunction Parties shall have standing to seek relief from the Bankruptcy Court or any court of competent jurisdiction for purposes of enforcement of the Direct Claims Injunction or other Injunction or releases under the Plan to the extent that any act occurs or is taken that is contrary to the provisions of, or would interfere with, restrict, defeat, nullify, violate or otherwise limit the protections afforded the Direct Claims Injunction Party through the Direct Claims Injunction.**

## RELEVANT DEFINITIONS (PLAN ARTICLE I):[2]

"*Debtor Release*" means the release given by the Debtors and the Estates to the Released Parties as set forth in <u>0</u> of the Plan.

"***Direct Claims***" **means any claim or Cause of Action held by a Releasing Party against any of the Released Parties (excluding the Debtors) and their respective Related Parties, but only to the extent such claims arise from, relate to, or are connected with, directly or indirectly, in any manner whatsoever, the Debtors, including their respective assets, liabilities, operations, financings, contractual agreements, licenses, and including the governance thereof, and existing on or prior to the Effective Date (including prior to the Petition Date).**

"*Direct Claims Injunction Parties*" means (a) the Reorganized Debtors; (b) the Foris Secured Parties; and (c) the Related Parties of the foregoing parties.

"*Direct Claims Threshold*" means (a) with respect to holders of Direct Claims who are creditors of the Debtors, creditors who hold at least a majority in amount of the Claims asserted against the Debtors (such

---

[2] The defined terms set forth herein are those relevant to the above the ability of Holders of Claims and Interests to make an informed decision about the release, exculpation and injunction provisions, and is not intended to be a complete list of all applicable definitions which are set forth in Article I of the Plan.

Claims measured as of the Petition Date on the same basis as such Claims are Allowed for voting purposes); and (b) with respect to holders of Direct Claims who are holders of any Interests, such holders who hold at least a majority of the outstanding common stock of Amyris (excluding for purposes of such calculation, any outstanding common stock of Amyris held by any of the Direct Claims Injunction Parties) (such outstanding common stock of Amyris measured as of the Petition Date).

"*Direct Claims Recovery Pool*" means the net proceeds of any D&O Insurance Settlement and the net proceeds of Estate Causes of Action against Excluded Parties assigned to the Excluded Party Litigation Trust.

"***Exculpated Parties***" **means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Foris Secured Parties; (c) the Creditors' Committee; (d) the Creditors' Committee Members; and (e) the Related Parties of each of the foregoing parties.**

"*Related Party*" means, collectively, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, shareholders, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts, or funds, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, fiduciaries, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, restructuring advisors, and other professionals and advisors, and any such person's or Entity's respective predecessors, successors, assigns, heirs, executors, estates, and nominees.

"***Released Claims***" **means any Claim or Interest or Direct Claim that has been released, satisfied, stayed, terminated, discharged, or is subject to compromise and settlement pursuant to the Plan.**

"***Released Parties***" **means, collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c); the DIP Lenders and the DIP Agent; (d) the Foris Prepetition Secured Lenders; (e) the Consenting Convertible Noteholders, (f) the Consenting Contract Counterparties; (g) [the Creditors' Committee and its members]; and (f) with respect to each of the foregoing Entities in clauses (a) through (e), all Related Parties. For the avoidance of doubt, (i) the Debtors' current [and former] directors, managers, officers, employees, professionals, and shareholders shall each be a Released Party; and (ii) no Excluded Party shall be a Released Party.**

"***Releasing Parties***" **means collectively, and in each case in its capacity as such:  ((a) [the Creditors' Committee and its members]; (b) the Foris Prepetition Secured Lenders; (c) the Consenting Convertible Noteholders; (d) the Consenting Contract Counterparties; (e) all Holders of Claims against the Debtors; and (f) all persons who hold Interests in Amyris.**

"***Third-Party Release***" **means the release of Direct Claims deemed given by each of the Releasing Parties to the Released Parties in consideration for the distributions to be made from a D&O Insurance Settlement and/or the Excluded Party Litigation Trust and the creation and funding of, and the assignment of certain Causes of Action to, the Excluded Party Litigation Trust, as set forth in D of the Plan.**

10

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[3] | (Jointly Administered) |

**NON-VOTING CLASS RELEASE OPT OUT ELECTION FORM (HOLDERS OF CLAIMS)**

**THIS OPT OUT ELECTION FORM IS TO BE USED BY OR ON BEHALF OF HOLDERS OF CLAIMS IN NON-VOTING CLASSES TO INDICATE THAT SUCH HOLDER <u>DOES NOT CONSENT</u> TO THE THIRD PARTY RELEASE SET FORTH IN THE PLAN, AS DESCRIBED MORE FULLY IN ANNEX A TO THE ENCLOSED NON-VOTING CLASS NOTICE.**

**IF YOU ARE RECEIVING THIS FORM, YOU ARE A HOLDER OF A CLAIM IN A NON-VOTING CLASS.**

**IF YOU DO NOT (I) COMPLETE THIS OPT OUT ELECTION FORM PURSUANT TO WHICH YOU INDICATE YOUR ELECTION NOT TO CONSENT TO THE THIRD PARTY RELEASE <u>AND</u> (II) TIMELY RETURN THIS OPT OUT ELECTION FORM BY <u>JANUARY 10, 2024 AT 5:00 P.M. (PREVAILING EASTERN TIME)</u> TO THE SOLICITATION AGENT IN THE MANNER INDICATED BELOW, <u>YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASE SET FORTH IN THE PLAN.</u>**

<u>**Release Opt Out**</u>: The undersigned, the Holder of a Claim in a Non-Voting Class, hereby elects to opt out of granting the Third Party Release set forth in the Plan, **the relevant provisions of which are attached as Annex A to the enclosed Non-Voting Class Notice**. [Check box]

☐ Opt Out of the granting the Third Party Release

**If the Third-Party Releases are not approved by the Bankruptcy Court, each holder of a Direct Claim may voluntarily elect to receive its Pro Rata share of 50% of the portion of the Direct Claims Recovery Pool to which it is entitled by electing to grant the Third-Party Releases, through the following methods: (x) for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases, and (y) for holders of Claims and Interests who are deemed to accept or reject the Plan and are provided with a notice of**

---

[3] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

**non-voting status providing them with the right to opt out of granting the Third-Party Releases and do not elect to exercise such right;** *provided,* **that, as applicable, the Direct Claims Threshold is satisfied.**

**Acknowledgments.**  By signing this Opt Out Election Form, the undersigned acknowledges receipt of the Non-Voting Class Notice, including Annex A, and certifies that (i) the undersigned is the claimant, or (ii) has the power and authority complete this Opt Out Election Form on behalf of the claimant.

| | |
|---|---|
| _____ | _____ |
| Name of Holder of Claim | Social Security or Federal Tax I.D. No. (optional) |
| _____ | _____ |
| Signature | Amount of Claim: |
| _____ | _____ |
| If by Authorized Agent, Name and Title | Street Address |
| | _____ |
| | City, State, Zip Code |
| _____ | _____ |
| | E-mail: |
| Date Completed | Telephone Number: |

## INFORMATION AND INSTRUCTIONS FOR SUBMITTING OPT OUT ELECTION FORM

In the Release Opt Out box provided on the first page of this Opt Out Election Form, please indicate your election to opt out of granting the Third Party Release, complete the Form by providing all the information requested and sign, date and return the Form by mail, overnight courier or personal delivery to the Solicitation Agent at the following address:

> **Amyris Balloting**
> **c/o Stretto**
> **410 Exchange, Suite 100**
> **Irvine, CA 92602**

An envelope addressed to the Solicitation Agent is enclosed for your convenience.

**Opt Out Election Forms must be** *received* **by the Solicitation Agent by 5:00 p.m., prevailing Eastern Time, January 10, 2024.**  If an Opt Out Election Form is received after that date, it will not be counted and you will be deemed to consent to granting the Third Party Release and will be a Releasing Party under the Plan.

12

**EXHIBIT C2**

**Notice of Confirmation Hearing and Related Matters
(Non-Voting Classes/Interest Holders)**

DOCS_NY:48499.8

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.¹ | (Jointly Administered) |

**NOTICE TO NON-VOTING INTEREST HOLDER CLASSES OF (A) STATUS WITH RESPECT TO CLASSES  DEEMED TO ACCEPT OR REJECT DEBTORS' CHAPTER 11 PLAN, (B) HEARING TO CONSIDER CONFIRMATION OF DEBTORS' CHAPTER 11 PLAN; (C) DEADLINE FOR FILING PLAN OBJECTIONS, (D) DEBTORS' RELEASES AND THIRD PARTY RELEASE; (E) PROCEDURES AND DEADLINE REGARDING OPT OUT ELECTION; AND (F) RELATED MATTERS**

**TO:     HOLDERS OF NON-VOTING INTERESTS:
         Class 15 (Amyris, Inc. Equity Interests)**

     **PLEASE TAKE NOTICE**: On October 12, 2023, Amyris, Inc. and its affiliated debtors and debtors in possession (the "Debtors") filed the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ____] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").

     Concurrently with the filing of the Plan, the Debtors filed the related Disclosure Statement in support of the Plan [Docket No. ___] (including all exhibits thereto and as may be amended, modified or supplemented from time to time, collectively, the "Disclosure Statement"). On [_____, 2023], this Court entered an order approving the Disclosure Statement [Docket No. __] (the "Disclosure Statement Order") and certain related materials (i) establishing notice, voting and objection procedures for Voting Classes  (the "Solicitation Materials") and (ii) establishing notice and objection procedures for Non-Voting Classes (the "Non-Voting Class Notices").

     **A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held on January 17, 2024, commencing at 11 a.m. (prevailing Eastern Time),** before the Honorable Thomas M. Horan, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 824 Market Street, Courtroom No. 6, Wilmington, Delaware 19801. It may be possible to attend the Confirmation Hearing remotely.  Any party who wishes to attend via video conference is required to register with the Court at the following link: https://protect-us.mimecast.com/s/48LqCYEMNEs6v2kKt0scm9. The Confirmation Hearing may be continued from time to time without further notice except for (i) an announcement made at the Confirmation Hearing or any adjourned confirmation hearing or (ii) a written notice filed with the Bankruptcy Court and served on

---

¹ A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

all parties who have filed Plan Objections, the United States Trustee, and all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

**If you have received this Notice, your Interests are in a Non-Voting Class and you are not eligible to vote to accept or reject the Plan.**

**PLEASE TAKE NOTICE** that pursuant to section 1126(g) of the Bankruptcy Code, Holders of Interests in Class 15 under the Plan, are Impaired and shall not receive nor retain any property under the Plan on account of such Interests, and therefore, are deemed to have rejected the Plan and not entitled to vote.

Accordingly, the Debtors are not required to transmit Solicitation Materials to holders of Interests in Class 15 of the Plan (each, a "Non-Voting Class") pursuant to the Disclosure Statement Order.  Instead, you have been sent this Notice for the purpose of notifying you of the Confirmation Hearing and Plan Objection Deadline, AND NOTIFYING YOU OF YOUR ABILITY TO OPT OUT OF GRANTING THE THIRD PARTY RELEASE DESCRIBED IN DETAIL BELOW.

**The Bankruptcy Court has established January 10, 2024 at 5:00 p.m. (Eastern Time), as the last date and time for filing and serving objections to the confirmation of the Plan (the "Plan Objection Deadline").**  All Plan Objections must state with particularity the legal and factual grounds for such objection; (i) be in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection; (iv) be filed with the Court and served so as to be received by the Plan Objection Deadline; and (v) served on the following parties: (a) Counsel for the Debtors, (i) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com); and (ii) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com); (b) Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware, 19801, Attn: John Schanne, Esq. (John.Schanne@usdoj.gov); (c) Counsel to the DIP Lenders, DIP Agent and the Foris Prepetition Secured Lenders, (i) Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein (mgoldstein@goodwinlaw.com), Alexander J. Nicas (anicas@goodwinlaw.com), and Debora Hoehne (dhoehne@goodwinlaw.com); and (ii) Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier (david.fournier@troutman.com); (d) Counsel to the Committee, (i) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095; Attn: Gregory Pesce, (gregory.pesce@whitecase.com), Andrew O'Neill, (aoneill@whitecase.com), and John Ramirez, (john.ramirez@whitecase.com); and (ii) local counsel to the Committee, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801; Attn: Christopher M. Samis, (csamis@potteranderson.com), Katelin A. Morales, (kmorales@potteranderson.com), Sameen Rizvi (srizvi@potteranderson.com); and (e) any party that requests service pursuant to Bankruptcy Rule 2002.

**Any Plan Objection not timely filed and served by the Plan Objection Deadline in accordance with the provisions of this Notice will not be heard and will be overruled.**

**PLEASE TAKE NOTICE: ARTICLE IX OF THE PLAN CONTAINS CERTAIN RELEASES, EXCULPATION PROVISIONS AND INJUNCTIONS, INCLUDING THIRD PARTY RELEASES**

**THESE PROVISIONS ARE SET FORTH IN THE ATTACHED ANNEX A**

**All Holders of Claims or Interests in Voting and Non-Voting Classes will be deemed to have consented to the Third Party Release set forth in Article IX.D of the Plan (as set forth in full in the attached Annex A.**

**You are the Holder of an Interest in a Non-Voting Class.** <u>**If you do not want to consent to granting the Third Party Release set forth in Article IX.D of the Plan, you must complete the attached Opt Out Election Form and return it to the Solicitation Agent in the manner indicated by January 10, 2024, at 5:00 p.m.**</u> **A failure to make and submit the Opt Out Election Form will be deemed consent to granting the Third Party Release.**

**If the Third-Party Releases are not approved by the Bankruptcy Court, each holder of a Direct Claim may voluntarily elect to receive its Pro Rata share of 50% of the portion of the Direct Claims Recovery Pool to which it is entitled by electing to grant the Third-Party Releases, through the following methods: (x) for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases, and (y) for holders of Claims and Interests who are deemed to accept or reject the Plan and are provided with a notice of non-voting status providing them with the right to opt out of granting the Third-Party Releases and do not elect to exercise such right;** *provided,* **that, as applicable, the Direct Claims Threshold is satisfied. Any undistributed amounts in the Direct Claims Recovery Pool that would have otherwise been allocated to holders of Direct Claims that opted out of granting the Third-Party Release shall revert to the Reorganized Amyris.**

PLEASE TAKE FURTHER NOTICE that any party in interest, including any member of a Non-Voting Class, wishing to obtain copies of the Solicitation Materials, including the Plan and Disclosure Statement, at the Debtors' expense may do so by (i) contacting the Debtors' Solicitation Agent at 888.855.0485 (Toll free) or 303.276.0309 (International) or by email at TeamAmyris@stretto.com or by viewing such documents by accessing online at no cost to you at https://cases.stretto.com/Amyris.  The documents are also available on the Court's website: www.deb.uscourts.gov.  Please note that a PACER password and login are needed to access documents on the Court's website.

DOCS_NY:48499.8

Dated:  [●]                                 **PACHULSKI STANG ZIEHL & JONES LLP**

                                            */s/ DRAFT*
                                            Richard M. Pachulski (*pro hac vice* forthcoming)
                                            Debra I. Grassgreen (*pro hac vice* forthcoming)
                                            James E. O'Neill (DE Bar No. 4042)
                                            Jason H. Rosell (*pro hac vice* forthcoming)
                                            Steven W. Golden (DE Bar No. 6807)
                                            919 N. Market Street, 17th Floor
                                            P.O. Box 8705
                                            Wilmington, DE 19899-8705 (Courier 19801)
                                            Telephone: (302) 652-4100
                                            Facsimile: (302) 652-4400
                                            rpachulski@pszjlaw.com
                                            dgrassgreen@pszjlaw.com
                                            joneill@pszjlaw.com
                                            jrosell@pszjlaw.com
                                            sgolden@pszjlaw.com

                                            *Counsel to the Debtors and Debtors in Possession*

**Annex A**

**ARTICLE IX.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**B.**     *Release of Liens.*

Except as otherwise provided herein, in the Exit First Lien Facility Documents, the Plan Supplement, the Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, and other than as to the DIP Facility Claims and Foris Prepetition Secured Claims rolled up, converted, exchanged, refinanced or amended and restated, into the Exit First Lien Facility, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, or any other Holder of a Secured Claim.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such mortgages, deeds of trust, Liens, pledges, and other security interests.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or the Exit First Lien Facility Agent, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

**C.**     *Releases by the Debtors.*

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, each of the Debtors, on its own behalf and as a representative of its Estates, to the fullest extent permitted under applicable law, shall, and shall be deemed to, completely and forever release, waive, void and extinguish unconditionally, as against each and all of the Released Parties, any and all Claims, Estate Causes of Action, interests, obligations, suits, judgments, damages, debts, rights, remedies, set offs, and Liabilities of any nature whatsoever, whether liquidated or Unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, tort, contract, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event,

5

occurrence, or other circumstance, whether direct or derivative, taking place or existing on or prior to the Effective Date (including prior to the Petition Date) arising from, in connection with, or related to, directly or indirectly, in any manner whatsoever, the Debtors or their operations, assets, liabilities, financings, the Estates, or the Chapter 11 Cases, that may be asserted by or on behalf of such Debtor or its Estate, against any of the Released Parties; *provided*, *however*, that nothing in this section shall operate as a release, waiver, discharge or impairment of any Estate Causes of Action transferred to the Excluded Party Litigation Trust, which are preserved notwithstanding anything to the contrary in this section.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (b) the rights of any Holder of Allowed Claims to receive distributions under the Plan; (c) any Claims for indemnification that are expressly assumed by the Debtors pursuant to the Plan or any document, instrument, or agreement executed to implement the Plan or the Restructuring Transactions; or (d) any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any claim or Cause of Action released by the Debtor release against any of the Released Parties.

D.     *Third-Party Release by the Releasing Parties.*

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date,  for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Parties shall be deemed to forever release and waive, as against each and all of the Released Parties, any and all Direct Claims, whether liquidated or Unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise that are or may be based in whole or in part upon any act, omission, transaction, event, or other occurrence taking place or existing on or prior to the Effective Date; *provided*, *however*, that nothing in this section shall operate as a release, waiver, discharge or impairment of (i) any Estate Causes of Action or liabilities arising out of fraud or criminal acts of any such Released Party as determined by a Final Order, or (ii) any Causes of Action transferred to the Excluded Party Litigation Trust, which Causes of Action are preserved notwithstanding anything to the contrary in this section, or (iii) any Excluded Party Direct Claims.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions, including the Exit First Lien Facility Documents; (b) the rights of any Holder of Allowed Claims or Allowed Interests to receive

6

distributions under the Plan; and (c) any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity.

If the Third-Party Releases are not approved by the Bankruptcy Court, each holder of a Direct Claim may voluntarily elect to receive its Pro Rata share of 50% of the portion of the Direct Claims Recovery Pool to which it is entitled by electing to grant the Third-Party Releases, through the following methods: (x) for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases, and (y) for holders of Claims and Interests who are deemed to accept or reject the Plan and are provided with a notice of non-voting status providing them with the right to opt out of granting the Third-Party Releases and do not elect to exercise such right; *provided,* that, as applicable, the Direct Claims Threshold is satisfied.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) essential to the Confirmation; (ii) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Excluded Party Litigation Trust and the Direct Claim Recovery Pool and the restructuring and implementing the Plan; (iii) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (iv) in the best interests of the Debtors and their Estates; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; and (vii) a bar to any of the Releasing Parties asserting any Direct Claim released pursuant to the Third-Party Release.

E.    *Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any claims and Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of prepetition transactions (including with respect to the Debt Documents), the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the Exit First Lien Facility Documents, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the Exit First Lien Facility, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable Law with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.    *Plan Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, and separate and apart from the Direct Claims Injunction, all Entities who have held, hold, or may hold the Released Claims are permanently enjoined from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any Released Claims; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Released Claims; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the Estates of such Entities on account of or in connection with or with respect to any Released Claims; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any Released Claims unless such Entity has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Released Claims released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this F hereof.

G.    *Direct Claims Injunction.*

1.    **General Purposes and Terms.**

The Confirmation Order shall provide that, as of the Effective Date, and irrespective of whether any such holder has agreed to be bound by the Plan, all holders of Direct Claims and their respective Related Parties will be permanently and forever stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Direct Claim against the Direct Claims Injunction Parties, including all of the following actions (collectively, the "Direct Claims Injunction"):

    a.    commencing or continuing in any manner, any actions or other proceedings of any kind with respect to any Direct Claims against any of the Direct Claims

Injunction Parties or against the property of any of the Direct Claims Injunction Parties;

b.        enforcing, levying, attaching, collecting, or otherwise recovering, by any manner or means, from any of the Direct Claims Injunction Parties, or the property of the Direct Claims Injunction Parties, any judgment, award, decree, or order with respect to any Direct Claim against any of the Direct Claims Injunction Parties, or any other person;

c.        creating, perfecting, or enforcing any lien of any kind relating to any Direct Claim against any of the Direct Claims Injunction Parties, or the property of the Direct Claims Injunction Parties; and

d.        taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, with respect to any such Direct Claim.

2.        Standing of Direct Claim Injunction Parties.

Each of the Direct Claims Injunction Parties shall have standing to seek relief from the Bankruptcy Court or any court of competent jurisdiction for purposes of enforcement of the Direct Claims Injunction or other Injunction or releases under the Plan to the extent that any act occurs or is taken that is contrary to the provisions of, or would interfere with, restrict, defeat, nullify, violate or otherwise limit the protections afforded the Direct Claims Injunction Party through the Direct Claims Injunction.

## RELEVANT DEFINITIONS (PLAN ARTICLE I):[2]

"*Debtor Release*" means the release given by the Debtors and the Estates to the Released Parties as set forth in 0 of the Plan.

"***Direct Claims***" means any claim or Cause of Action held by a Releasing Party against any of the Released Parties (excluding the Debtors) and their respective Related Parties, but only to the extent such claims arise from, relate to, or are connected with, directly or indirectly, in any manner whatsoever, the Debtors, including their respective assets, liabilities, operations, financings, contractual agreements, licenses, and including the governance thereof, and existing on or prior to the Effective Date (including prior to the Petition Date).

"*Direct Claims Injunction Parties*" means (a) the Reorganized Debtors; (b) the Foris Secured Parties; and (c) the Related Parties of the foregoing parties.

"*Direct Claims Threshold*" means (a) with respect to holders of Direct Claims who are creditors of the Debtors, creditors who hold at least a majority in amount of the Claims asserted against the Debtors (such Claims measured as of the Petition Date on the same basis as such Claims are Allowed for voting purposes); and (b) with respect to holders of Direct Claims who are holders of any Interests, such holders who hold at least a majority of the outstanding common stock of Amyris (excluding for purposes of such calculation,

---

[2] The defined terms set forth herein are those relevant to the above the ability of Holders of Claims and Interests to make an informed decision about the release, exculpation and injunction provisions, and is not intended to be a complete list of all applicable definitions which are set forth in Article I of the Plan.

any outstanding common stock of Amyris held by any of the Direct Claims Injunction Parties) (such outstanding common stock of Amyris measured as of the Petition Date).

"*Direct Claims Recovery Pool*" means the net proceeds of any D&O Insurance Settlement and the net proceeds of Estate Causes of Action against Excluded Parties assigned to the Excluded Party Litigation Trust.

"**Exculpated Parties**" **means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Foris Secured Parties; (c) the Creditors' Committee; (d) the Creditors' Committee Members; and (e) the Related Parties of each of the foregoing parties.**

"*Related Party*" means, collectively, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, shareholders, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts, or funds, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, fiduciaries, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, restructuring advisors, and other professionals and advisors, and any such person's or Entity's respective predecessors, successors, assigns, heirs, executors, estates, and nominees.

"*Released Claims*" **means any Claim or Interest or Direct Claim that has been released, satisfied, stayed, terminated, discharged, or is subject to compromise and settlement pursuant to the Plan.**

"*Released Parties*" **means, collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c); the DIP Lenders and the DIP Agent; (d) the Foris Prepetition Secured Lenders; (e) the Consenting Convertible Noteholders, (f) the Consenting Contract Counterparties; (g) [the Creditors' Committee and its members]; and (f) with respect to each of the foregoing Entities in clauses (a) through (e), all Related Parties. For the avoidance of doubt, (i) the Debtors' current [and former] directors, managers, officers, employees, professionals, and shareholders shall each be a Released Party; and (ii) no Excluded Party shall be a Released Party.**

"*Releasing Parties*" **means collectively, and in each case in its capacity as such:  ((a) [the Creditors' Committee and its members]; (b) the Foris Prepetition Secured Lenders; (c) the Consenting Convertible Noteholders; (d) the Consenting Contract Counterparties; (e) all Holders of Claims against the Debtors; and (f) all persons who hold Interests in Amyris.**

"*Third-Party Release*" **means the release of Direct Claims deemed given by each of the Releasing Parties to the Released Parties in consideration for the distributions to be made from a D&O Insurance Settlement and/or the Excluded Party Litigation Trust and the creation and funding of, and the assignment of certain Causes of Action to, the Excluded Party Litigation Trust, as set forth in <u>D</u> of the Plan.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[3] | (Jointly Administered) |

**NON-VOTING CLASS RELEASE OPT OUT ELECTION FORM
(HOLDERS OF INTERESTS)**

**THIS OPT OUT ELECTION FORM IS TO BE USED BY OR ON BEHALF OF HOLDERS INTERESTS IN NON-VOTING CLASSES TO INDICATE THAT SUCH HOLDER <u>DOES NOT CONSENT</u> TO THE THIRD PARTY RELEASE SET FORTH IN THE PLAN, AS DESCRIBED MORE FULLY IN ANNEX A TO THE ENCLOSED NON-VOTING CLASS NOTICE.**

**IF YOU ARE RECEIVING THIS FORM, YOU ARE A HOLDER OF AN INTEREST IN A NON-VOTING CLASS.**

**IF YOU DO NOT (I) COMPLETE THIS OPT OUT ELECTION FORM PURSUANT TO WHICH YOU INDICATE YOUR ELECTION NOT TO CONSENT TO THE THIRD PARTY RELEASE <u>AND</u> (II) TIMELY RETURN THIS OPT OUT ELECTION FORM BY <u>JANUARY 10, 2024 AT 5:00 P.M. (PREVAILING EASTERN TIME)</u> TO THE SOLICITATION AGENT IN THE MANNER INDICATED BELOW, <u>YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASE SET FORTH IN THE PLAN.</u>**

**Release Opt Out**: The undersigned, the Holder of an Interest in a Non-Voting Class, hereby elects to opt out of granting the Third Party Release set forth in the Plan, **the relevant provisions of which are attached as Annex A to the enclosed Non-Voting Class Notice**. [Check box]

☐ Opt Out of granting the Release Provisions

**If the Third-Party Releases are not approved by the Bankruptcy Court, each holder of a Direct Claim may voluntarily elect to receive its Pro Rata share of 50% of the portion of the Direct Claims Recovery Pool to which it is entitled by electing to grant the Third-Party Releases, through the following methods: (x) for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases, and (y) for holders of Claims and Interests who are deemed to accept or reject the Plan and are provided with a notice of**

---

[3] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

**non-voting status providing them with the right to opt out of granting the Third-Party Releases and do not elect to exercise such right;** *provided,* **that, as applicable, the Direct Claims Threshold is satisfied.**

**Acknowledgments.** By signing this Opt Out Election Form, the undersigned acknowledges receipt of the Non-Voting Class Notice, including Annex A, and certifies that (i) the undersigned is the interest holder, or (ii) has the power and authority complete this Opt Out Election Form on behalf of the interest holder.

| | |
|---|---|
| _____ | _____ |
| Name of Holder of Interest | Social Security or Federal Tax I.D. No. (optional) |
| _____ | _____ |
| Signature | Amount of Interest Held on Petition Date: |
| _____ | _____ |
| If by Authorized Agent, Name and Title | Street Address |
| | _____ |
| | City, State, Zip Code |
| _____ | _____ |
| Date Completed | E-mail: |
| | Telephone Number: |

## INFORMATION AND INSTRUCTIONS FOR SUBMITTING OPT OUT ELECTION FORM

In the Release Opt Out box provided on the first page of this Opt Out Election Form, please indicate your election to opt out of granting the Third Party Release, complete the Form by providing all the information requested and sign, date and return the Form by mail, overnight courier or personal delivery to the Solicitation Agent at the following address:

**Amyris Balloting**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

An envelope addressed to the Solicitation Agent is enclosed for your convenience.

**Opt Out Election Forms must be** *received* **by the Solicitation Agent by 5:00 p.m., prevailing Eastern Time, January 10, 2024.** If an Opt Out Election Form is received after that date, it will not be counted and you will be deemed to consent to granting the Third Party Release and will be a Releasing Party under the Plan.

DOCS_NY:48499.8