IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: <br><br> AMYRIS, INC., *et al.*,[1] <br><br> Debtors. | ) <br> ) Chapter 11 <br> ) <br> ) Case No. 23-11131 (TMH) <br> ) (Jointly Administered) <br> ) <br> ) Hearing Date: October 18, 2023 at 2:00 p.m. (ET) <br> ) <br> ) **[Related D.I. 334]** |

### AD HOC NOTEHOLDER GROUP'S STATEMENT IN SUPPORT OF THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF JEFFERIES LLC AS INVESTMENT BANKER PURSUANT TO 11 U.S.C. §§ 328(A) AND 1103(A)

The ad hoc group of holders of the 1.5% Convertible Senior Notes due 2026 (the "Ad Hoc Noteholder Group") hereby submits this statement in support of to the *Application of the Official Committee of Unsecured Creditors for Entry of an Order (I) Authorizing the Retention and Employment of Jefferies LLC as Investment Banker Pursuant to 11 U.S.C. §§ 328(a) and 1103(a)* [D.I. 334] (the "Jefferies Retention Application"), filed by the Committee (as defined below) seeking to employ Jefferies LLC ("Jefferies") pursuant to Bankruptcy Code section 328(a).[2] The debtors and debtors in possession in the above captioned chapter 11 cases (collectively, the "Debtors") filed an objection to the Jefferies Retention Application [D.I. 446] (the "Debtors' Objection") and Euagore, LLC, Foris Ventures, LLC, Perrara Ventures, LLC, Anesma Group, LLC, Anjo Ventures, LLC and Muirisc, LLC (the "Foris Lenders") filed a joinder in support of

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Jefferies Retention Application.

the Debtors' Objection [D.I. 450]. In support of the Jefferies Retention Application, the Ad Hoc Noteholder Group respectfully states as follows:

## Background

1. On August 9 and August 21, 2023 (each, as applicable, the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2. On August 27, 2023, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") pursuant to Bankruptcy Code section 1102 and consisting of seven (7) members: U.S. Bank Trust Co. NA; Cosan U.S. Inc.; Sartorius Stedim North America Inc.; Hearst Magazine Media Inc.; Wiley Companies; Park Wynwood LLC; and Allog Participacoes, Ltda [D.I. 152].

## Statement in Support

3. The Debtors filed the Chapter 11 Cases determined to sell their consumer brands business, but without an established path for what would become of the remaining business. Instead, after a finite period for the Debtors' insider sponsor to evaluate the business, the Debtors stated they would pursue either a reorganization of the "Lab-to-Market" business or a sale of all the Debtors' assets related to the remaining business. Unsurprisingly, this evaluation process has taken much longer than anticipated and the original, self-imposed deadline to select a path (the "Sale Toggle") of September 13, 2023 has come and gone. In fact, one month later, a decision regarding the ultimate path for these Chapter 11 Cases has still not been reached. Notwithstanding these cases being more than two months old, the Ad Hoc Noteholder Group has only this week been "brought under the tent" and provided some rudimentary financial projections to inform a

negotiation with the Debtors' insider sponsor.

4. Notwithstanding persistent uncertainty about the path to maximize the value of the estate for the benefit of unsecured creditors, the Debtors (at the behest of their insider sponsor, the Foris Lenders) object to the Committee's retention of Jefferies. In order to satisfy its statutory duties, an official committee is entitled to retain professionals to advise the committee. The Committee should be afforded broad discretion in its selection of professionals and the Debtors and the Foris Lenders are not entitled to limit Committee's discretion or deprive the Committee of the professionals required to carry out its mandate.

5. Among other things, the Debtors contend that Jefferies' services are unneeded. The Ad Hoc Noteholder Group respectfully disagrees. Specifically, the Jefferies Retention Application outlines how the sale of the Debtors' consumer brands and the "toggle" feature of the Debtors' approach to these cases (an approach that was not chosen by the Committee nor by the Ad Hoc Noteholder Group) mandates that the Committee, and by extension all unsecured creditors, have access to the skill set of an independent investment banker.

6. *First*, unsecured creditors are entitled to oversee and augment the efforts of the Debtors to sell the consumer brands businesses. In that spirit, Jefferies' industry experts have already provided names of potential buyers that were not initially contacted by Intrepid Investment Bankers LLP ("Intrepid"). Jefferies has also played a meaningful role in working with Intrepid to identify one or more "stalking horse" bidders for some of the Debtors' assets, with an eye towards maximizing competitive tension during the auction process.

7. *Second*, Jefferies has the credentials and experience to offer unsecured creditors with guidance as to how they might be impacted by the triggering of the Sale Toggle and how the potential sale of the remaining assets would compare to any restructuring of those assets proposed

by the Debtors.

8.  *Third*, if the Debtors elect to pursue a sale of all the Debtors' assets, there is currently no articulated sale process to market the remaining assets.  In those circumstances, Jefferies will bring to bear many experiences on similar sale processes to work with Intrepid to design a process that maximizes value for the estates and unsecured creditors.

9.  *Finally*, having Jefferies, with its extensive capital markets credentials, at the table would provide an important "market check" on the terms and conditions of any new capital, including the availability (and pricing) of sources of capital that could replace the capital provided by the Foris Lenders.

10.  The Debtors, by contrast and by objecting to Jefferies' retention, seek only to strengthen their negotiating position during these cases and undermine the ability of the Committee, and by extension all unsecured creditors, to appropriately and adequately evaluate and respond to the Debtors' transaction proposal.  The reorganization of a portion of a debtor's business, on the terms specified by, and largely for the benefit of, an insider sponsor is exactly the type of transaction that has compelled other official committees to retain investment bankers to evaluate the impact of such transactions on unsecured creditors.

11.  Further, the Debtors incorrectly assert that the Committee's proposed financial advisor, FTI Consulting, Inc. ("FTI") and Jefferies will duplicate services.  Jefferies and FTI have addressed this concern in the scope of their respective retentions and by also developing a detailed "division of labor" work plan delineating the tasks to be performed by the investment banker versus the financial advisor.  Such detailed allocations of responsibility are very common in large and sophisticated bankruptcy cases.  Interestingly, the Debtors did not have any concern about duplication of services when they retained PwC US Business Advisory LLP (financial advisor),

Intrepid (investment banker), Ankura Consulting Group, LLC (chief restructuring officer) and a retired PricewaterhouseCoopers LLP and FTI partner (independent director).

12. Finally, the Debtors assert that the Jefferies' fee structure is above market and should not be approved. In addition to a monthly fee, Jefferies' retention includes a Transaction Fee of $2 million that will be triggered only upon the sale of substantially all of the Debtors' assets[3] or confirmation of a Plan. This Transaction Fee is both consistent with fees in similar circumstances and reasonable here, especially when contrasted to Intrepid's fee structure, which includes, in addition to monthly fees and expense reimbursement:

- an Initial Restructuring Fee of $250,000;
- a Sales Fee of $4.5 million *plus* 1.5% of consideration over $250 million;
- a Restructuring Fee of $3 million; and
- a Financing Fee equal to 1% of aggregate bank debt or first lien secured debt, 2.0% of aggregate junior debt and 4.0% of aggregate equity raised by the Company.

13. In reality, Jefferies will serve to help to protect the interests of the Committee and unsecured creditors while working with Intrepid to maximize the value of the estates. Jefferies will analyze the decisions made by the Debtors and Intrepid to provide the Committee and unsecured creditors with the ability to evaluate the ultimate path forward in these cases and, if necessary, provide unsecured creditors with an *alternative* to the Debtors' path. If Jefferies is not retained, however, the Committee and unsecured creditors will be left without the tools required to assess or challenge the sales of the Debtors' assets or the go-forward valuation of the Debtors'

---

[3] The Ad Hoc Noteholder Group has confirmed with Jefferies and its counsel that the Transaction Fee will not be triggered by a sale of just one or more of the consumer brands, but only by a sale of all or substantially all of the Debtors' remaining assets and/or confirmation of a plan.

business. Instead, as is typical in similar Chapter 11 Cases, the Committee and unsecured creditors should be afforded full representation and Jefferies and FTI should be given the latitude and flexibility to work together efficiently to effectively represent the interests of unsecured creditors.

## Conclusion

For the reasons stated above, the Ad Hoc Noteholder Group respectfully requests that this Court approve the Jefferies Retention Application and overrule the Debtors' Objection and the Foris Lenders' joinder thereto.

| | |
|---|---|
| Dated: October 13, 2023<br>Wilmington, Delaware | **BLANK ROME LLP**<br><br>/s/ *Stanley B. Tarr*<br>Stanley B. Tarr (DE No. 5535)<br>Lawrence R. Thomas III (DE No. 6935)<br>1201 N. Market Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 425-6400<br>Facsimile: (302) 425-6464<br>Email: stanley.tarr@blankrome.com<br>　　　　lorenzo.thomas@blankrome.com<br><br>-and-<br><br>**PAUL HASTINGS LLP**<br>Frank Merola, Esq.<br>1999 Avenue of the Stars<br>Los Angeles, CA 90067<br>Telephone: (310) 620-5700<br>Facsimile: (310) 620-5899<br>Email: frankmerola@paulhastings.com<br><br>-and-<br><br>**PAUL HASTINGS LLP**<br>John Storz, Esq.<br>Matthew D. Friedrick, Esq.<br>Caroline Diaz, Esq.<br>200 Park Avenue<br>New York, NY 10166<br>Telephone: (212) 318-6000<br>Facsimile: (212) 319-4090<br>Email: johnstorz@paulhastings.com<br>　　　　matthewfriedrick@paulhastings.com<br>　　　　carolinediaz@paulhastings.com<br><br>*Counsel to the Ad Hoc Noteholder Group* |