## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al*., | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

## DEBTORS' OBJECTION TO MOTION OF DSM-FIRMENICH TO COMPEL DEBTORS' COMPLIANCE WITH SECTION 365(n)(4) OF THE BANKRUPTCY CODE

Amyris, Inc. ("Amyris") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases")[2] file this objection (the "Objection") to the *Motion of DSM-Firmenich to Compel Debtors' Compliance with Section 365(n)(4) of the Bankruptcy Code* [Docket No. 465] (the "Motion"). In support of this Objection, the Debtors submit the declaration of Corbin Johnson (the "Johnson Declaration"), which is filed contemporaneously herewith and incorporated herein by reference  In further support of this Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT AND RELIEF REQUESTED

1.     DSM Nutritional Products Ltd. ("DSM") and its affiliates (including Firmenich S.A.) ("Firmenich" and collectively, "DSM-Firmenich") assert that section 365(n)(4) of the Bankruptcy Code requires the Court to divest Amyris of its valuable intellectual property because Amyris has allegedly failed to perform under the *License and Drawing Rights Agreement* (the "LDRA") entered into between Amyris and DSM.  However, Amyris has continued to perform

---

[1]     A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2]     On August 9 and August 21, 2023 (as applicable, the "Petition Date"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.

under the LDRA and DSM-Firmenich is not entitled to possession of some of the Debtors' most valuable assets – its intellectual property.

2.      The LDRA, which is the subject of the Motion, is one agreement among many that govern the complex relationship among Amyris, DSM, and Firmenich regarding the research and development of cutting edge biosynthetic molecules.[3]   Together, these various agreements prescribe a collaborative process through which intellectual property developed by Amyris (generally referred to herein as the "Licensed Materials") is developed, commercialized, and continuously improved.  Amyris has operated pursuant to this collaborative process in the ordinary course of business throughout these Chapter 11 Cases.  Indeed, the Motion is premised primarily upon Amyris's *alleged* failure to comply with certain ███████ requests first made by DSM-Firmenich within recent weeks – outside the ordinary course of business and outside the terms of the Collaboration Agreement (defined below).

3.      Section 365(n)(4) of the Bankruptcy Code expressly permits a debtor-licensor (Amyris) to retain its valuable intellectual property if it performs under the applicable license agreement, pending assumption or rejection.  Since Amyris has been performing under the LDRA, it should not be deprived of its statutory right to preserve the confidentiality of its proprietary technology pending a decision to assume or reject the LDRA.  The Motion must be denied.

## JURISDICTION AND VENUE

4.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

---

[3] ████████████████████████████████████████████████████████████████████████████████████████████████

*Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.     The statutory predicates for the relief requested herein are section 105 and 365 of the Bankruptcy Code.

## RELEVANT BACKGROUND

**A.     The Amyris and DSM-Firmenich Contractual Relationship**

7.     Prior to the filing of these Chapter 11 Cases, the Debtors, DSM, and Firmenich entered into various intellectual property licenses and ancillary agreements, including the LDRA and that certain *Collaboration Agreement*, dated March 13, 2013 (the "Collaboration Agreement"), by and between Amyris, Inc. and Firmenich SA.[4] Since the commencement of these cases, the Debtors have continued to perform under these agreements in the ordinary course of business.

8.     The Collaboration Agreement, among other things, establishes the ordinary course procedures concerning the research, development, and commercialization of ingredients for use by Firmenich in limited markets.[5] These operating procedures include parameters for determining

---

[4]     A true and correct copy of the Collaboration Agreement is attached hereto as **Exhibit A**.

[5]     Amyris terminated the Collaboration Agreement prepetition. DSM disputes the termination. The parties have entered into a Standstill Agreement which is in effect until October 13, 2023, with an additional extension being negotiated, and the parties have continued to manage their relationship pursuant to the Collaboration Agreement. Amyris reserves all rights to argue that the prepetition termination of the Collaboration Agreement resulted in the LDRA itself no longer being executory, leaving DSM with no rights under section 365(n).

which ingredients Firmenich wants to continue to develop and which yeast strains (which synthesizes the applicable molecule) it wants to preserve via escrow (*i.e.*, store in a temperature controlled environment with a third party).

9.      Pursuant to the LDRA, which is governed by New York law,[6] Amyris licensed to DSM its Molecule Intellectual Property, which consists of complex biosynthetic ingredients and related bio-engineering technologies.[7] The LDRA references and operates in conjunction with several other agreements, including the Collaboration Agreement and the Existing Escrow Agreements. Amyris's obligations under the LDRA include ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

10.     Pursuant to the LDRA, Amyris also ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

11.     ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████

---

[6] A capitalized term used but not defined herein shall have the meaning ascribed to it in the LDRA.

[7] ██████████████████████████████████████████████ ████████████████████████

12.     Despite the commencement of these Chapter 11 Cases, Amyris and DSM-Firmenich have continued to operate pursuant to the LDRA and all other relevant agreements (including the Collaboration Agreement) in the ordinary course of business. ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

13.     ██████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████ *See* Johnson Declaration at ¶ 5.

14.     At any given moment in time, Amyris may be investigating the technical and commercial prospects of potentially hundreds of strain candidates that may benefit from Amyris's bio-engineering technology. ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ *See* Johnson Declaration at ¶ 6.

**B.**     **The ████████ Materials Are Current**

15.     For each molecule in active development, Amyris creates bio-engineered yeast strains that synthesize the target ingredients as a by-product of the natural fermentation process. The generation of yeast strain candidates is complex and iterative. ████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████ *See* Johnson Declaration at ¶ 7.

16.     Attached as **Exhibit 1** to the Johnson Declaration is a chart showing the current status of Amyris's ████████████████████████████████████. ***This chart shows that Amyris is compliant with its ████████████████████████████.***

17.     ████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

18. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

19. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████

20.     Finally, it is important to note that DSM does not manufacture the Licensed Materials (other than ████████).  Rather, pursuant to a supply agreement dated March 31, 2021 (the "DSM Supply Agreement"), Amyris manufactures the active ingredients on behalf of DSM, thereby permitting DSM to fulfill its obligations to its customers, Firmenich and ████████.  As a result of this contract manufacturing arrangement, DSM does not require immediate access to the strains or technical documentation necessary to manufacture the ingredients at issue.

C.    **The ████████ Escrow Agreement**

21. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

[REDACTED]

## ARGUMENT AND AUTHORITIES

**A.** **Neither the LDRA nor the Bankruptcy Code**
**Supports the Relief Requested in the Motion**

22. DSM-Firmenich demands that Amyris [REDACTED]

[REDACTED]

[REDACTED] Neither is accurate. As set forth in the Johnson Declaration, the Debtors are in full compliance with the LDRA and DSM-Firmenich has provided no evidence to the contrary – only conclusory allegations.

23. Section 365(n)(4) provides:

---

[8] [REDACTED]

Unless and until the trustee rejects such contract, on the written request of the licensee the trustee shall—

(A)     to the extent provided in such contract or any agreement supplementary to such contract—

(i)     perform such contract; or

(ii)     provide to the licensee such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law) held by the trustee; and

(B)     not interfere with the rights of the licensee as provided in such contract, or any agreement supplementary to such contract, to such intellectual property (including such embodiment), including any right to obtain such intellectual property (or such embodiment) from another entity.

11 U.S.C. § 365(n)(4).

24.     Thus, prior to rejection, upon written request, and only to the extent provided in the parties' license agreement, the debtor may *either* (i) perform such contract, *or* (ii) provide certain intellectual property to the licensee. Where the debtor is performing, the licensee cannot demand that the debtor *also* ███████████████████████████████ .

25.     Nevertheless, DSM-Firmenich asserts that Section 6.2 of the LDRA ████████████ ███████████████████████████████████████████████████ ████████████████████████████████████ . DSM-Firmenich's position is not supported by either Section 6.2 of the LDRA (when read as a whole and not in selective snippets) or by section 365(n)(4) of the Bankruptcy Code. All "rights" protected by section 365(n)(4) must derive from the contract. *In re Bluberi Gaming Techs., Inc*., 554 B.R. 841, 860 (Bankr. N.D. Ill. 2016) (In holding that the license agreement at issue did not require the turnover of the debtor's software codes to the licensee, the court stated: "In order for there to be a

contractual right enforceable under section 365(n)(4), there must first be a right 'provided in such contract, or any agreement supplementary to such contract.' 11 U.S.C. § 365(n)(4)(A) & (B).")

26.     Section 6.2 of the LDRA[9] provides as follows in its entirety:



9

LDRA, § 6.02 (emphasis and division by sentence added).

27.     DSM-Firmenich argues that this section provides DSM with "two sets of rights" (Motion at ¶ 16) in the event of an Amyris bankruptcy. But this argument is based on a twisted reading of fragments of Section 6.2, which leads to absurd results and renders a third of the section meaningless. Such a reading is contrary to all norms of contract construction.

28.     The rules for construing contracts are well-developed under New York law.

"It is axiomatic under New York law . . . that the fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (internal alterations and quotation marks omitted). If the contract "as a whole makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the agreement." *Id.* (internal        alterations        and        quotation        marks omitted); *see Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352, 794 N.E.2d 667, 670, 763 N.Y.S.2d 525 (N.Y. 2003) (stating contracts should be read "as a harmonious and integrated whole" and each part should be "interpreted with reference to the whole . . . to give effect to its general purpose"). Accordingly, "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Vt. Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 807 N.E.2d 876, 879, 775 N.Y.S.2d 765 (N.Y. 2004) (internal quotation marks omitted); *see Law Debenture Tr. Co.*, 595 F.3d at 468 ("If the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." (internal alterations and quotation marks omitted)).

*Ambac Assur. Corp. v. U.S. Bank Nat'l Ass'n*, 2021 U.S. App. LEXIS 37514, *6-7, (2d Cir. December 20, 2021). DSM-Firmenich is asking this Court to add a provision to Section 6.2 that does not exist – the immediate turnover of all proprietary technology triggered only by the filing of the bankruptcy – when such an addition would nullify a significant part of the section.

29.     Section 6.2 is included among the LDRA's termination provisions and is designed to be consistent with section 365(n)(4) of the Bankruptcy Code by requiring Amyris, prior

to possible rejection of the agreement, to *either* perform *or* ███████████████████. This optionality preserves Amyris's power to assume the LDRA and thereby maintain the confidentiality of its proprietary technology. Nothing in the section expressly or impliedly requires Amyris to ████████████████████████████████████████████████████ ███████████████████████. This would be wholly inconsistent with section 365(n)(4) of the Bankruptcy Code.

30.    Section 6.2 is divided into three sentences, each of which has a different purpose. The first sentence states ██████████████████████████████████████ ████████████████████████████████████.

31.    The second sentence provides that ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████

32.    The third sentence of Section 6.2 provides that ██████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

---

[10]    Under the LDRA, under certain circumstances not relevant here, Amyris would be the licensee of certain intellectual property from DSM.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████ Contrary to

DSM's argument (Motion at ¶ 18), the third sentence is not an alternative remedies provision; it is

the *only* remedies provision

33.　　DSM-Firmenich's interpretation of Section 6.2 – *i.e.,* by reading the second

sentence to provide an independent turnover remedy at all times following the commencement of

a bankruptcy case – would effectively nullify Amyris's rights under section 365(n) of the

Bankruptcy Code to perform and later assume the LDRA without ███████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████

34.　　Moreover, DSM-Firmenich's interpretation of the second sentence of Section 6.2

renders the third sentence meaningless. ██████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████ A contract should not be construed to render a portion of it meaningless.

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc.*, 30 N.Y.3d

13

572, 581 (2017) ("[A] contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect."); *Ambac Assur. Corp.*, 2021 U.S. App. LEXIS 37514, *10 (applying New York law, courts should avoid a contract interpretation that renders a phrase "meaningless or superfluous").

35.     Thus, under the express terms of the LDRA, ███████████████████████ ████████████████████████████████████████ The LDRA is consistent with section 365(n)(4) of the Bankruptcy Code, which provides that prior to the time a debtor decides to reject an executory contract licensing intellectual property, the debtor shall "***to the extent provided in such contract*** or any agreement supplementary to such contract – (i) ***perform such contract***; ***or*** (ii) provide the licensee with such intellectual property. …" 11 U.S.C. § 365(n)(4) (emphasis added).  As Amyris has opted to perform under the LDRA, the second option does not come into play.

36.     In sum, DSM does not have the right under the LDRA to ████████████████ ████████████████████████████████████████ Pursuant to section 365(n)(4) of the Bankruptcy Code and Section 6.2 of the LDRA, Amyris's continued performance under the LDRA in the ordinary course of business eliminates any requirement that Amyris ███████████████████████████████████████.

37.     Policy and the legislative history of section 365(n)(4) support Amyris's position. Section 365(n)(4) was intended to protect the rights of licensees under license agreements, as they exist on the petition date, while affording the debtor-licensor time to determine whether to assume or reject the agreement.  The section does not permit licensees to contract around the statute by drafting an *ipso facto* provision requiring the debtor to ████████████████████████████ ████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████ That is not the law.

38.     The legislative history bears out that the turnover requirement of section 365(n)(4) is only triggered by nonperformance:

> ***Prior to rejection*** by the debtor licensor ***but upon nonperformance*** by the trustee ((n)(4)), as well as upon rejection by the debtor licensor combined with the licensee's election to retain rights in intellectual property ((n)(3)), the trustee, upon written request by the licensee, ***as provided in the parties' agreements***, shall turn over to the licensee intellectual property held by the trustee and shall not interfere with the licensee's contractual rights to use the intellectual property or to obtain it from a third party.

S. Rep. No. 505, 100th Cong., 2nd Sess. 1988, 1988 U.S.C.C.A.N. 3200, 1988 WL 169875, S. REP. 100-505 (Leg. Hist.) at p. 7 (emphasis added).

39.     Thus, the legislative history makes clear that the licensee's entitlement to turnover is *only* triggered by either nonperformance or rejection, and that upon rejection, the licensee's rights are limited to the intellectual property as it existed as of the petition date. *See id.* ("The intellectual property referred to is only that which is in existance [sic] at the time of petition filing and not anything which first comes into being post-petition. New paragraphs (n)(3) and (n)(4) do not compel future affirmative performance by the trustee, . . .").

**B.     Amyris Continues to Perform All Its Obligations Under the LDRA.**

40.     DSM-Firmenich argues that Amyris is not performing under the LDRA because it

███████████████████████████████████████████████████████

██████████████████████. As discussed herein, and in the Johnson Declaration, that is simply not true.

### a. **Amyris is in compliance with its contractual ███████████████ obligations.**

41.     As set forth in detail in the Johnson Declaration, Amyris continues to perform under the LDRA and all other supplementary agreements.  DSM-Firmenich has provided no evidence to the contrary, and relies instead on unsupported conclusory statements.

42.     Corbin Johnson, the declarant in the Johnson Declaration, is the Amyris employee who oversees the relationship between Amyris and DSM.  *See* Johnson Declaration at ¶¶ 1-4.  As set forth in the Johnson Declaration, ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ Johnson Declaration at ¶¶ 8-9.

43.     The heart of the Johnson Declaration is Mr. Johnson's review and response to the allegations in the Motion that Amyris has not honored its contractual obligation to ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

[REDACTED]

Johnson Declaration at ¶ 12.

44.     Amyris is in full compliance with its obligations under the LDRA. It has opted to perform under the LDRA prior to any decision to assume or reject the LDRA, as it is entitled to do under section 365(n)(4) of the Bankruptcy Code. DSM-Firmenich has not and cannot show evidence to the contrary, and its requested relief should be denied.

[REDACTED]

████████████████████████████████████ Such a harsh result is not sanctioned by

New York contract law[11] or by the Bankruptcy Code.

## CONCLUSION

46. ████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

47.     Section 365(n)(4) of the Bankruptcy Code expressly permits Amyris to perform

under the LDRA prior to a decision on assumption or rejection, without risking the loss of its

valuable intellectual property.  The LDRA does not provide otherwise and the Motion must be

denied.

**WHEREFORE**, based on the foregoing, Amyris respectfully requests that the Court deny

the relief requested in the Motion and grant Amyris such other relief as is appropriate.

---

[11]     *See Danco Elec. Contractors, Inc. v. Dormitory Auth. of State*, 162 A.D.3d 412, 413 (1st Dep't 2018) ("[W]e conclude that plaintiff should be excused from the non-occurrence of that condition, because otherwise it would suffer a disproportionate forfeiture, and the occurrence of the condition was not a material part of the agreed exchange."); *Aktiv Assets LLC v Centerbridge Partners, L.P.*, 2019 N.Y. Misc. LEXIS 6798, *20 (N.Y. Sup. Ct. December 24, 2019) (technical non-compliance with two provisions in a partnership agreement did not excuse performance where no harm resulted from the failure to comply with the two provisions and the fundamental bargained for economics of the contract were not impacted).

Dated: October 13, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*
Richard M. Pachulski (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell (admitted *pro hac vice*)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  rpachulski@pszjlaw.com
         dgrassgreen@pszjlaw.com
         joneill@pszjlaw.com
         jrosell@pszjlaw.com
         sgolden@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A

**COLLABORATION AGREEMENT**

**(FILED UNDER SEAL)**