# EXHIBIT B

# Szlezinger Declaration

AMERICAS 125313499

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*,[1] | Case No. 23-11131 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 334, 446, 450** |

### DECLARATION OF LEON SZLEZINGER IN SUPPORT OF REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO (A) DEBTORS' OBJECTION TO THE COMMITTEE'S APPLICATIONS TO RETAIN JEFFERIES LLC (B) JOINDER OF EUAGORE, LLC AND THE FORIS PREPETITION SECURED LENDERS TO THE DEBTORS' OBJECTION

I, Leon Szlezinger, hereby declare under penalty of perjury that, to the best of my knowledge and belief, and after reasonable inquiry, the following is true and correct:

1.  I am a Managing Director and Joint Global Head of Debt Advisory & Restructuring at Jefferies LLC ("**Jefferies**"), an investment banking and financial advisory firm with principal offices located at 520 Madison Avenue, New York, New York 10022, as well as at other locations worldwide.

2.  I submit this declaration in support of the Committee's reply (the "Reply") to (a) the *Debtors' Objection to Application of the Official Committee of Unsecured Creditors for Entry of an Order (I) Authorizing the Retention and Employment of Jefferies LLC as Investment Banker Pursuant to 11 U.S.C. §§ 328(a) and 1103(a)* [D.I. 446] (the "**Debtors' Objection**") and (b) the *Joinder of Euagore, LLC and the Foris Prepetition Secured Lenders to the Debtors' Objection* [D.I.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

450] (the "**DIP Lenders' Objection**" and, together with the Debtors' Objection, the "**Objections**") to the Retention Application.

3. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and, if called as a witness, I would testify thereto.

### Committee's Retention of Jefferies

5. On August 30, 2023, Jefferies participated in a conference call with the Committee and White & Case LLP ("**White & Case**") to discuss Jefferies' possible retention as an advisor to the Committee in the Debtors' Chapter 11 Cases. On that call, Jefferies presented its capabilities, experience with similar restructurings and its views on certain issues likely to arise in the Chapter 11 Cases. The Committee asked questions of Jefferies, including with respect to its credentials and the proposed terms of Jefferies' compensation.

6. Among other matters, Jefferies apprised the Committee of the strength and expertise of its Beauty & Wellness Investment Banking group, which Jefferies identified as important given the Debtors' contemplated sale of their performing and non-performing consumer brands. Jefferies further underlined the credentials and reputation of its Specialty Chemicals Investment Banking group, which Jefferies presented as critical given the complex and highly technical nature of the Debtors' core ingredients businesses and Jefferies' prior engagement by the Company in connection with a June 2020 PIPE transaction. In addition, Jefferies explained its presence in the Brazil market, where a material portion of the Debtors' operations and certain Committee members are located. Further, as discussed in my initial declaration [D.I. 334-3] in support of Jefferies' retention application, Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out of court and in chapter 11 proceedings. Jefferies has advised debtors, creditor and equity constituencies, and

purchasers in numerous reorganizations in the United States and worldwide. Since 2007, Jefferies has been involved in over 250 restructurings representing more than $550 billion in restructured liabilities. D.I. 334-3 ¶ 6.

7. Following the call with the Committee, White & Case contacted Jefferies on the Committee's behalf to further discuss the retention and, specifically, Jefferies' proposed compensation. Following negotiations, Jefferies agreed to modify its proposed compensation by reducing its Transaction Fee from $2,750,000 to $2,000,000. After Jefferies agreed to this modification, the Committee informed Jefferies of its decision to retain it as investment banker and FTI Consulting, Inc. ("**FTI**") as financial advisor.

## Division of Labor Between Jefferies and FTI

8. Following the Committee's decision to retain Jefferies as investment banker and FTI as financial advisor, personnel from Jefferies, FTI and White & Case held a conference call to discuss the Debtors' restructuring and the division of labor between the Committee's advisors. Following that call, Jefferies prepared a document setting forth the separate and distinct tasks and workstreams for which each of Jefferies and FTI would be responsible, which FTI approved shortly thereafter. The division of labor agreed to by Jefferies and FTI is set forth on **Exhibit 1** to this Declaration. Both Jefferies and FTI have significant experience performing discrete roles in chapter 11 representations and have worked together on behalf of numerous unsecured creditor committees in these same capacities and, based on this division of labor, Jefferies is confident that both firms will be able to avoid duplication of effort.

9. In sum, Jefferies, as investment banker, is responsible for assisting and advising the Committee on the current (and any future) sale processes, including whether any bids are viable and advisable under the circumstances, any potential or proposed restructuring, the status and

prospects in the capital markets, and capital markets aspects of any avoidance actions, including potential testimony related thereto. Jefferies has and will continue to provide the Committee with independent analysis of the proposals and alternatives available to the Debtors as they seek to sell or restructure their businesses. Jefferies will also assist with plan negotiations if the Debtors head down that path and provide valuation analysis and expert testimony on value and plan feasibility, as needed. Notably, the majority of Jefferies' fees are earned in the form of a Transaction Fee which will only be earned in the event that a Transaction, as reflected in a chapter 11 plan confirmed by the Bankruptcy Court, is consummated. (Application, Ex. B ¶ 4(b).)

10. By contrast, FTI's primary responsibility is to review and analyze the financial aspects of the Debtors' complex day-to-day businesses and the administration of the Chapter 11 Cases. This role is complementary, and in no way duplicative, of Jefferies' role.[2] As befits its specific expertise and industry reputation, FTI's focus has been on, among other things, reviewing and analyzing financial disclosures and information, issues related to assumption or rejection of executory contracts, tax issues, employee retention and compensation plans, operating plan and projections, claims analysis and reconciliation, intercompany activities and claims, liquidity and cash flow, and operating results. FTI will also perform an investigation of potential avoidance actions and other claims against insiders and third parties. Where warranted, Jefferies will coordinate with FTI in connection that investigation.

---

[2] Jefferies' engagement letter does contemplate that Jefferies, like FTI, will "[b]ecome familiar with, to the extent Jefferies deems appropriate, and analyze the business, operations, properties, financial condition and prospects of the Debtors." However, this is work that Jefferies must do as a predicate to advising on any transaction and is not the focus of Jefferies' work for the Debtors, as the other tasks identified in the engagement letter demonstrate.

**Proposed Fees**

11.     Jefferies has performed a review and analysis of investment bank retentions by official committees of unsecured creditors in comparable chapter 11 cases in Delaware and other districts.  Such analysis is set forth on **Exhibit 2** to this Declaration.  As set forth on Exhibit 2, the projected compensation of Jefferies is on the lower end of the range of aggregate compensation approved for investment bankers in comparable cases.

12.     Further, the terms of Jefferies' proposed engagement in this case, including its retention under section 328(a) of the Bankruptcy Code, are consistent with customary terms for engagements of this nature.  Significantly, the engagements of both Jefferies and Intrepid Investment Bankers LP ("**Intrepid**"), the Debtors' investment banker, are subject to approval under section 328(a), which, in Intrepid's case, has already been granted.  Jefferies' fee structure, including the amount of its Monthly Fee and the terms of its Transaction Fee, are on the lower end of market and fair in light of the assigned tasks that Jefferies anticipates undertaking under the agreed division of labor set forth on **Exhibit 1**.

13.     Jefferies has already devoted significant time and resources to this matter.  To date Jefferies has, among other things, provided input on the Debtors' DIP financing, reviewed and commented on draft marketing and presentation materials prepared by Intrepid in connection with the Consumer Brands sale process, analyzed and provided input on bid procedures, analyzed and augmented Intrepid's list of potentially interested bidders and regularly advised the Committee and its other professionals on the status of the sale process.  Jefferies has also assisted the Committee in evaluating the Debtors' dual track process of pursuing a plan of reorganization as it pertains to potential value for unsecured creditors.  As the Debtors' Plan process progresses, Jefferies anticipates that it will, among other things, analyze indications of interest from potential bidders, provide input

on the designation of qualified bidders, provide comments on mark-ups of asset purchase agreements and be active at the auction on behalf of the Committee in its role as a consultation party.

14. In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 13, 2023                               Respectfully submitted,

*/s/ Leon Szlezinger*

Leon Szlezinger

Managing Director and Joint Global Head of Debt Advisory & Restructuring

Jefferies LLC

**Exhibit 1**

**Division of Labor**

**Preliminary Draft
Subject to Material Change**

# Amyris, Inc.
Proposed Division of Labor



September 2023  /  Confidential

Jefferies LLC
Member SIPC



**Preliminary Draft**
**Subject to Material Change**

# Proposed Division of Labor

## Jefferies



| Investment Banking Services | Financial Advisory Services |

### Investment Banking Services

**DIP Financing**
- Evaluate DIP financing proposal and key considerations including fees, milestones, covenants and other issues
- Review process for obtaining alternative proposals
- Explore potential alternative DIP financing options

**Sale Process / Restructuring Transaction(s)**
- Provide advice and assistance in connection with the M&A / any asset sale process:
  – Identify potential acquirors and assist with contacting / gauging interest
  – Assess adequacy of sale timeline
  – Review marketing materials / data room adequacy, etc.
  – Assess whether sale of all or part of Debtors is likely to be value maximizing alternative
  – Consult during auction process, including with respect to asset allocation, valuing competing bids and assessing execution risk

**Restructuring Transaction**
- Evaluate potential restructuring alternatives and strategies
- Negotiate restructuring proposals
- Advise with respect to contingent consideration including earn-outs, CVRs or warrants

**Business Plan**
- Evaluate enterprise based on the Debtors' business plan and potential alternatives

**Current State of the Restructuring/Capital Markets**
- Review of debt and equity capital raising alternatives and assessment of capital markets

**Plan / Disclosure Statement**
- Support development / negotiation of plan and disclosure statement, including plan valuation and recoveries to unsecured creditors
- Design of plan consideration and mechanics relating to contingent consideration / milestone payments
- Evaluate debt capacity of restructured business
- Confirmation issues, including Plan feasibility

**Avoidance action analysis**
- Valuation / reasonably equivalent value / capital markets aspects / solvency analysis

**Other Financial Diligence & Support**
- Review investment banker retention
- Public company/governance issues related to restructured entity

### Financial Advisory Services

**Cash Flow & Liquidity**
- Diligence DIP budget and underlying models and assumptions
- Analyze monthly & weekly cash budgets; actual v. budget cash results, compliance with financial covenants
- Assess liquidity runway and monitor DIP on ongoing basis

**Cash Management & Intercompany**
- Diligence and monitor intercompany transactions
- Monitor reporting and approval protocols

**First Day and KEIP/KERP Motions**
- Conduct diligence on various first day and KEIP/KERP motions
- Prepare analyses to support modifications and/or objections as needed

**Business Plan**
- Review and analyze any business plan developed by the Debtors
- Analyze and diligence current business operations, including Brazil plant capabilities and current state
- Monitor and assess contract renegotiations
- Diligence all major commercial/license contracts and associated economics
- Review new cost structure for achievability

**Investigations**
- Investigate potential causes of action
- Investigate sources of unencumbered assets

**Plan / Disclosure Statement**
- Prepare recovery waterfall and validate liquidation analysis
  – Corporate structure and intercompany obligations
  – Review scheduled / filed claims, intercompany claims, rejection damage claims, and other potential liabilities of the estate
  – Substantive consolidation analysis

**Other Financial Diligence & Support**
- Review and analyze SOFAs / SOALs
- Review key contracts and associated rejection damage claims / cure costs
- Analyze tax assets by entity and strategies to monetize/minimize taxes payable
- Review professionals' retention motions, excluding IB retention, and issues
- Review other remaining key motions



**Exhibit 2**

**Fee Comparison**

# Investment Banker Fee Precedents for Official Committees
Select Cases with Pre-petition Debt of $500 Million to ~$2.0 Billion
($Thousands)

| Company | Petition Date | Venue | UCC Investment Banker | UCC Financial Advisor | Funded Debt | Monthly Fees $/mo | Monthly Fees Crediting | Monthly Fees Credit After Month | Transaction Fees Amount | Transaction Fees % of Debt | Implied 5-Month Fee Amount | Implied 5-Month Fee % of Debt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Yellow Corp. | 8/6/2023 | Delaware | Miller Buckfire | Huron | $1,223,274 | $175 | 50% | 4 | $3,750 | 0.31% | $4,538 | 0.37% |
| Core Scientific | 12/21/2022 | Texas Southern | Ducera Partners | N/A | 909,000 | 150 | 50% | 3 | 3,000 | 0.33% | 3,600 | 0.40% |
| Clovis Oncology Inc. | 12/11/2022 | Delaware | Jefferies | Alvarez & Marsal | 790,576 | 125 | 50% | 3 | 2,000 | 0.25% | 2,406 | 0.30% |
| Vital Pharmaceuticals[2] | 10/10/2022 | Florida Southern | Miller Buckfire | Lincoln Partners | 1,050,200 | 125 | 50%[1] | 3 | 2,500 | 0.24% | 3,000 | 0.29% |
| SAS AB | 7/5/2022 | New York Southern | Jefferies | Alton / AlixPartners | 1,455,000 | 175 | 50% | 9 | 4,250 | 0.29% | 5,125 | 0.35% |
| GWG Holdings[3] | 4/20/2022 | Texas Southern | Piper Sandler | AlixPartners | 2,016,339 | 150 | 50% | 6 | 5,000 | 0.25% | 5,750 | 0.29% |
| Brazos Electric Power Cooperative | 3/1/2021 | Texas Southern | Lazard | FTI Consulting | 2,044,584 | 150 | 50% | 6 | 3,250 | 0.16% | 4,000 | 0.20% |
| Global Eagle Entertainment Inc. | 7/22/2020 | Delaware | PWP | N/A | 855,600 | 150 | 50% | 3 | 2,250 | 0.26% | 2,850 | 0.33% |
| Sable Permian Resources | 6/25/2020 | Texas Southern | Miller Buckfire | Conway MacKenzie | 1,318,690 | 125 | 50% | 3 | 2,500 | 0.19% | 3,000 | 0.23% |
| GNC Holdings, Inc. | 6/23/2020 | Delaware | Miller Buckfire | BRG | 903,400 | 125 | 50% | 3 | 1,500 | 0.17% | 2,000 | 0.22% |
| LSC Communications | 4/13/2020 | New York Southern | Jefferies | Alvarez & Marsal | 972,000 | 150 | 50% | 6 | 2,750 | 0.28% | 3,500 | 0.36% |
| OneWeb Holdings LLC | 3/27/2020 | New York Southern | Jefferies | Province | 1,733,122 | 125 | 50% | 3 | 3,000 | 0.17% | 3,500 | 0.20% |
| McClatchy | 2/13/2020 | New York Southern | Moelis & Company | BRG / Dundon Advisors | 703,300 | 150 | 50% | 6 | 3,450 | 0.49% | 4,200 | 0.60% |
| Southland Royalty Company LLC[4] | 1/27/2020 | Delaware | Jefferies | Conway MacKenzie | 540,000 | 125 | 50% | 4 | 1,500 | 0.28% | 2,000 | 0.37% |
| **Maximum** | | | | | $2,044,584 | $175 | 50% | 9 | $5,000 | 0.49% | $5,750 | 0.60% |
| **Mean** | | | | | $1,179,649 | $143 | 50% | 4 | $2,907 | 0.26% | $3,533 | 0.32% |
| **Median** | | | | | $1,011,100 | $150 | 50% | 4 | $2,875 | 0.26% | $3,500 | 0.32% |
| **Minimum** | | | | | $540,000 | $125 | 50% | 3 | $1,500 | 0.16% | $2,000 | 0.20% |
| **Amryis, Inc.** | | | | | $1,133,000 | $125 | 50% | 4 | $2,000 | 0.18% | $2,500 | 0.22% |

Source: Court Filings
(1) Monthly crediting of 25% for first 3 months, 50% thereafter.
(2) Funded debt includes litigation claims.
(3) Official committee of bondholders.
(4) Monthly fee of $125k for first two months, $100k thereafter.

Jefferies LLC  /  October 2023                                                                 i                                                                        **Jefferies**