# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC. *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No.: 23-11131 (TMH)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 534** |

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO THE DEBTORS' MOTION TO CONTINUE THE HEARING ON THE COMMITTEE'S APPLICATION TO RETAIN JEFFERIES LLC AS INVESTMENT BANKER

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") states as follows in support of this objection (the "**Objection**") to the *Debtors' Motion to Continue Hearing on the Application of the Official Committee of Unsecured Creditors for Entry of an Order (I) Authorizing the Retention and Employment of Jefferies LLC as Investment Banker Pursuant to 11 U.S.C. §§ 328(a) and 1103(a)* [Docket No. 534] (the "**Motion**"):[2]

### PRELIMINARY STATEMENT

1. More than 10 days ago, the Debtors, joined by their insider lenders, filed their objection to the Committee's request to retain Jefferies LLC ("**Jefferies**") as its investment banker. Apparently doubtful of the prospects of that objection, the Debtors now seek to gain leverage by other means: delaying the issue by at least three weeks, during the period when the Debtors and

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Capitalized terms used but not defined herein shall have the meanings given to such terms in the Motion.

their insider lenders are demanding that the Committee engage in plan discussions. For the reasons set forth below, the Court should deny the Motion.

2. *First*, there is no need for delay. At the Debtors' request, the matter at issue has been fully disclosed. Nor is there any need for discovery, given that all relevant information is already in the Debtors' possession. The Debtors have not explained how they were supposedly unaware of this matter until a week ago, and their tardiness and disorganization are not grounds for a prejudicial delay.

3. *Second*, Jefferies's May 2023 four-slide presentation does not constitute a "disabling conflict." The presentation—a short, after-the-fact analysis of the Givaudan transaction—was extremely limited in scope, uncompensated, and did not lead to any further work by Jefferies.

4. *Third*, a delay would be extremely prejudicial to the Committee, which needs an investment banker to discharge its fiduciary duties to unsecured creditors—especially now, with the clock ticking on both its challenge period and the plan process. Given the breakneck pace on which the Debtors have set this case at the behest of their insider lenders, the result of a delay will be that the Committee will be forced to negotiate plan terms and material asset sales with the Debtors and the DIP Lenders—both of whom have investment bankers—without the advice of their own chosen professional, and while having to litigate whether that professional can even be retained. The Committee, and the many unsecured creditors who rely on its representation, should not be prejudiced in this way.

5. For these reasons, the Committee respectfully requests that the Court deny the Motion and hear the Jefferies application as scheduled on October 18, 2023.

**BACKGROUND**

6.  On September 1, 2023, the Committee informed the Debtors that it had retained Jefferies as its investment banker. The Debtors' immediate response was that they intended to object to Jefferies's retention, although they gave no reasons other than that they did not want the Committee to have an investment banker as an advisor.

7.  On September 20, 2023 the Committee filed the *Application of the Official Committee of Unsecured Creditors for Entry of an Order (I) Authorizing the Retention and Employment of Jefferies LLC as Investment Banker Pursuant to 11 U.S.C. Sections 328(a) and 1103(a), Effective as of September 1, 2023 and (II) Waiving Certain Time-Keeping Requirements* [Docket No. 334] (the "**Jefferies Application**"). The Jefferies Application was filed on ordinary notice, with a hearing scheduled for four weeks later, on October 18, 2023.

8.  On Saturday, October 7, 2023—more than five weeks after Jefferies's retention by the Committee, more than two weeks after the Jefferies Application was filed, and after the objection deadline for the Jefferies Application had passed—Debtors' counsel phoned Committee counsel to say that he had learned about a PowerPoint presentation containing four slides that Jefferies had prepared for the Debtors' former Chief Executive Officer, John Melo, in May 2023. Mot. ¶¶ 6-7. Debtors' counsel also asserted that this presentation needed to be disclosed as part of Jefferies's retention application and might constitute a "disabling conflict." *Id.* ¶ 7. Committee counsel immediately investigated the matter by contacting Jefferies and its counsel, as well as reviewing two iterations of the four-slide, May 2023 presentation.[3]

---

[3] A copy of this presentation, as provided to the Committee by Jefferies, is attached hereto as **Exhibit A** (filed under seal). The Committee notes that it is attaching the last draft created by Jefferies because the final version that the Debtors supposedly shared with their board (Mot. ¶ 6) has not been produced to the Committee, despite the Committee asking for it and its being directly responsive to the Committee's discovery requests.

3

9.      Although the Committee disagreed that this limited, uncompensated presentation was required to be disclosed, much less gave rise to a "disabling conflict," out of an abundance of caution, on October 10, 2023, Jefferies filed a supplemental declaration addressing the May 2023 four-slide presentation [Docket No. 496] (as amended, the "**Second Supplemental Declaration**").[4]  In response, Debtors' counsel asked Committee counsel to agree to a continuance of the Jefferies Application.  Since the disclosure of the May 2023 presentation in the Second Supplemental Declaration was clear and fully addressed any issues raised by the Debtors, no continuance was needed, and Committee counsel declined Debtors' counsel's request.

10.     Three days later, on October 13, 2023, the Debtors filed the Motion, seeking a nearly three-week continuance supposedly to allow the Debtors "to investigate and assess" the May 2023 four-slide presentation.  Mot. ¶ 2.[5]

## ARGUMENT

11.     The Court should deny the Motion, and allow the Jefferies Application to proceed on the timeline set nearly a month ago, for at least three reasons.

12.     *First*, the May 2023 presentation has been fully disclosed.  It is either a disabling conflict, or it is not—although the Committee notes the inherent contradiction in the Debtors' claiming that Jefferies did work of such substance and importance that it creates a "disabling conflict," yet the Debtors and their counsel allegedly did not even know about it until a week ago.

---

[4] Jefferies later amended this declaration to correct an inadvertent error regarding the date of the Board meeting at which it understood the May 2023 presentation had allegedly been presented to the Debtors' Board of Directors.  *See Amended Second Supplemental Declaration of Leon Szlezinger in Support of the Application of the Official Committee of Unsecured Creditors for Entry of an Order (I) Authorizing the Retention and Employment of Jefferies LLC as Investment Banker Pursuant to 11 U.S.C. §§ 328(a) and 1103(a), Effective as of September 1. 2023 and (II) Waiving Certain Time-Keeping Requirements* [Docket No. 503].

[5] The Debtors requested the Committee's consent to shortened notice for the Motion, which the Committee granted.  *See* Mot. ¶ 10.

Regardless, the issue is now before the Court, and the Court can make its decision. Discovery is unnecessary to the determination of that issue.

13. Indeed, the purported need for a delay—if there even is any—is wholly of the Debtors' own making. The Jefferies Application was filed nearly a month ago, and the Debtors objected nearly two weeks ago. The Debtors now seek a continuance so they can conduct discovery and prepare a supplemental objection (Mot. ¶ 11) as to facts that have been in their possession from the start. The Debtors' failure to do their due diligence—as well as their failure to seek *any* discovery with respect to the Jefferies Application either when it was filed or when they objected—is not a proper basis for delay. Indeed, the Committee has repeatedly (and as recently as October 12) offered Mr. Szlezinger for a deposition, including regarding Jefferies's May 2023 presentation. *See* Ex. B, October 12, 2023 Email from Gregory Pesce to Richard Pachulski (Committee counsel offering to "coordinate" with the Debtors on "any discovery" or "any deposition" they may seek). For reasons unknown to the Committee, the Debtors have repeatedly declined the Committee's offer.

14. Moreover, it is not clear—and the Debtors have not explained—how both they and their counsel were purportedly unaware until a week ago of the slide deck that Jefferies prepared for the Debtors *earlier this year*. The Debtors' purported ignorance of these matters raises serious concerns—similar to those the Committee raised in connection with the Debtors' ongoing failure to meet their discovery obligations—regarding the Debtors' lack of basic control over their books and records. *See Statement of the Official Committee of Unsecured Creditors Regarding the Debtors' Proposed Form of Final Order Authorizing DIP Financing and Extending the Committee's Investigation Challenge Period* [Docket No. 522]. Additionally, the fact that the Debtors claim to need nearly three weeks to "[g]ather and analyze internal communications

between the Debtors and Jefferies in May 2023, including a review of the documents provided by the Debtors to Jefferies" heightens the Committee's concern that the Debtors lack control over their books and records.  Indeed, Jefferies and the Committee completed their review of the documents and communications relevant to this issue over the weekend following the Debtors' filing the Motion.  The Debtors' alleged inability, two months after filing their voluntary petitions, to conduct a simple electronic search of their documents for a unique term—"Jefferies"—has a much broader impact than whether the Jefferies Application should be heard on its original hearing date, and calls into question the Debtors' proposed expedited schedule for these cases.

15. *Second*, Jefferies's May 2023 four-slide presentation clearly does not create a "disabling conflict," nor affect Jefferies' status as a disinterested party.  As disclosed in the Second Supplemental Declaration, in May 2023, the Debtors' former CEO, John Melo, asked Jefferies to prepare a presentation comparing the recently completed Givaudan transaction with other recent market transactions.  Second Supplemental Declaration ¶ 5.  The presentation did not include any substantive analysis of the terms of the Givaudan Transaction, nor did the presentation provide any advice to the Debtors regarding the Givaudan Transaction or any similar transaction.  *Id.*; *see also* Ex. A.  In connection with the May 2023 presentation, the Debtors provided two sets of documents to Jefferies: (i) the Givaudan Asset Purchase Agreement dated February 21, 2023 (the "**Givaudan APA**"), and (ii) income statements and balance sheets for Debtor Aprinnova LLC ("**Aprinnova**").  *See id.* ¶ 6.  Needless to say, none of these documents is privileged, and all are obviously in the hands of the Debtors.  Moreover, the Givaudan APA was made public through the Debtors' Form 10-Q dated May 10, 2023, and several of the Aprinnova financial statements have been provided to the Committee through routine diligence.  *Id.*

16. Jefferies's May 2023 four-slide presentation was extremely limited in scope, was not prepared under an engagement letter, did not result in Jefferies receiving any compensation, and did not lead to any further engagement of Jefferies by the Debtors. *Id.* Notably, the May 2023 presentation was prepared entirely ***after*** the Givaudan transaction had closed, and was not used in connection with that transaction. *Id.* ¶ 5. In fact, Jefferies's presentation was not used by Debtors at all, since they chose not to retain Jefferies after receiving it. *Id.* ¶ 6. Notably, the Debtors' assertion that Jefferies's presentation "was presented to the Amyris Board on May 17, 2023" (Mot. ¶ 6) appears to be incorrect: the Committee has reviewed the minutes and materials from that board meeting, and they do not show that the May 2023 presentation was ever circulated to, or considered by, the Board. This may explain why the Debtors and their advisors were allegedly unaware of the presentation until a week ago.

17. Moreover, the Debtors have never argued that another, objectively more significant engagement performed by Jefferies—Jefferies's serving as joint lead placement agent with respect to the Debtors' June 2020 PIPE offering of shares of common stock and Series E Preferred Stock (*see* Jefferies Application ¶ 10)—constitutes a "disabling conflict."[6] The Debtors do not, and cannot, explain why Jefferies's far more limited and less consequential presentation in May 2023 should be treated differently. Indeed, after Jefferies pitched to act as restructuring banker to the Debtors in July of 2023 and was not hired, the Debtors advised Jefferies that, based on the Debtors' consultation with their counsel, there would be no issue with Jefferies pitching creditor constituencies after any cases were filed. *See* Ex. C, Text Messages between Steven Fleming and Leon Szlezinger.[7]

---

[6] For the reasons set forth in the Jefferies Application, this work also does not constitute a disabling conflict. *See* Jefferies App., Ex. B ¶¶ 10-11.

[7] In addition to arguing that the May 2023 presentation creates a "disabling conflict," the Debtors have repeatedly and without basis told the Committee that Jefferies's disclosure of the May 2023 presentation to Committee counsel and

7

18.  *Third*, a continuance of the Jefferies Application would be extremely prejudicial. The Debtors' last-ditch (and last-minute) effort to delay Jefferies's retention underscores the Debtors' and their insider lenders' eagerness to deny the Committee the services of an investment banker.  This effort is particularly prejudicial in light of the current posture of these chapter 11 cases.  The Debtors and their DIP Lenders (who are related parties of the Debtors' controlling insider equityholder) began these cases by pushing to conclude these chapter 11 cases at breakneck speed, claiming that the Debtors' limited liquidity requires confirmation in January 2024.  To that end, the Debtors have obtained approval to market their most valuable brands and related assets, and the Debtors filed a plan and disclosure statement a few days ago.  The Debtors' request for a three-week delay of the Jefferies Application is just another example of the Debtors' claiming to want efficiency and speed in these cases, but conducting the cases in a way that achieves the opposite result.  This delay may also deprive the Committee of the assistance of their investment banker in critical sale and plan negotiations—thus achieving the goal of the Debtors' objection to the Jefferies Application by other means.

---

in its supplemental declarations violated Jefferies's NDA.  *See* Ex. D, October 14, 2023 Email from Richard Pachulski to Gregory Pesce ("Just referencing the work done in a declaration submitted by Jefferies was a blatant breach of the NDA."); Ex. E, October 12, 2023 Email from Richard Pachulski to Gregory Pesce ("I certainly hope Jefferies publicly disclosing the existence of the Givaudan Valuation Report does not have a negative impact on the Debtors.  That, in and of itself, is a likely breach of the NDA!!!").  This argument lacks merit for at least four reasons.  *First*, as the Debtors acknowledge in the Motion and accompanying declaration by Mr. Pachulski, it was the Debtors who directed the Committee to disclose Jefferies's May 2023 presentation.  *See* Mot. ¶ 7, Pachulski Decl. ¶ 7 ("On the morning of Saturday, October 7, 2023, [Mr. Pachulski] contacted Greg Pesce, counsel to the OCC, to inform him that the Jefferies Application failed to disclose the Jefferies's work for the Debtors in May 2023[.]"); *see also* Ex. F, October 12, 2023 Email from Richard Pachulski to Gregory Pesce ("The failure to disclose Jefferies May 2023 involvement with the Debtors is a serious disclosure omission and should have resulted in the the [*sic*] OCC filing a revised retention motion.").  *Second*, the Debtors have never argued that the disclosure of Jefferies's work in connection with other prior NDAs, such as the July 2023 investment banker pitch, violates any NDA.  *Third*, Debtors' counsel provided Committee counsel with a copy of the NDA between the Debtors and Jefferies that was purportedly signed on May 11, 2023 in connection with the presentation.  That NDA does not provide that the mere fact that Jefferies did work for the Debtors, or the subject matter of that work, must be treated as confidential.  *See* Ex. G, May 11, 2023 NDA.  *Fourth*, even if these facts were confidential under the NDA, the NDA has a standard carve-out for disclosures "requested or required to be disclosed by law," which the Committee believes encompasses the professional disclosures required under the Bankruptcy Code and Bankruptcy Rules.  *See* Ex. G § 1(b).

19.    Delay of the Court's approval would therefore require an extension of the Committee's deadlines to object to approval of the Debtors' disclosure statement[8] and to commence a challenge under the terms of the proposed final DIP order.[9]  If a final determination of whether the Committee may retain Jefferies must wait three more weeks, the Committee should not be forced to conclude its investigation or evaluate the disclosure statement without the benefit of Jefferies's advice, and while actively litigating whether Jefferies can be retained.

## CONCLUSION

For these reasons, the Committee respectfully requests that the Court deny the Motion, hear the Jefferies application as scheduled on October 18, 2023, and grant such other and further relief as may be just and proper.

[*Remainder of Page Intentionally Left Blank*]

---

[8] See *Debtors' Motion for an Order (I) Approving the Disclosure Statement; (II) Scheduling Confirmation Hearing; (III) Approving Form and Manner of Notice of Confirmation Hearing; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (A) Approving Form and Content of Solicitation Materials; (B) Establishing Record Date and Approving Procedures for Distribution of Solicitation Materials; (C) Approving Forms of Ballots; (D) Establishing Voting Deadline for Receipt of Ballots and (E) Approving Procedures for Vote Tabulations; (V) Approving Form and Manner of Notice of Plan Releases; (VI) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plan; and (VII) Granting Related Relief* [Docket No. 525] ¶ 2 (proposing disclosure statement objection deadline of November 14, 2023).

[9] See *Notice of Filing (I) Revised Proposed Final Order (I) Authorizing the Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 508] (proposing to extend the Committee's challenge deadline to November 15, 2023).

| | |
|---|---|
| Dated:  October 15, 2023<br>Wilmington, Delaware | Respectfully submitted,<br><br>*/s/ Katelin A. Morales*<br>Christopher M. Samis (No. 4909)<br>Katelin A. Morales (No. 6683)<br>Sameen Rizvi (No. 6902)<br>**POTTER ANDERSON & CORROON LLP**<br>1313 N. Market Street, 6th Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 984-6000<br>Facsimile:  (302) 658-1192<br>Email:   csamis@potteranderson.com<br>            kmorales@potteranderson.com<br>            srizvi@potteranderson.com<br><br>-and-<br><br>**WHITE & CASE LLP**<br>Gregory F. Pesce (admitted *pro hac vice*)<br>Andrew F. O'Neill (admitted *pro hac vice*)<br>111 South Wacker Drive, Suite 5100<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Facsimile:  (312) 881-5450<br>Email:  gregory.pesce@whitecase.com<br>            aoneill@whitecase.com<br><br>-and-<br><br>**WHITE & CASE LLP**<br>Samuel P. Hershey (admitted *pro hac vice*)<br>John Ramirez (admitted *pro hac vice*)<br>Andrea Kropp (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Facsimile:  (212) 354-8113<br>Email: sam.hershey@whitecase.com<br>           john.ramirez@whitecase.com<br>           andrea.kropp@whitecase.com<br><br>*Counsel for the Official Committee*<br>*of Unsecured Creditors* |