UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: | . Chapter 11 . |
|  | . Case No. 23-11131(TMH) |
| AMYRIS, INC., et al, | . |
|  | . |
|  | . 824 Market Street |
|  | . Wilmington, Delaware 19801 |
| Debtors. | . |
| . . . . . . . . . . . . . . . . | . Wednesday, October 11, 2023 |

TRANSCRIPT OF HEARING RE:
RULING ON MOTION OF THE DEBTORS FOR INTERIM AND FINAL ORDERS
(I) TO OBTAIN POST-PETITION FINANCING AND (B) TO UTILIZE CASH
COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION
SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV)
SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF
BEFORE THE HONORABLE THOMAS M. HORAN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES VIA ZOOM:   (On the Record)

For the Debtors:               James E. O'Neill, Esq.
                               PACHULSKI, STANG, ZIEHL
                                & JONES, LLP
                               919 North Market Street
                               17th Floor
                               Wilmington, Delaware 19899


For the Ad Hoc Convertible
Notes Committee:               Frank Merola, Esq.
                               PAUL HASTINGS, LLP
                               1999 Avenue of the Stars
                               27th Floor
                               Century City, California 90067


(Appearances Continued)

Audio Operator:                Electronically Recorded
                               by Nolley Rainey, ECRO

Transcription Company:         Reliable
                               1007 N. Orange Street
                               Wilmington, Delaware 19801
                               (302)654-8080
                               Email:  gmatthews@reliable-co.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES VIA ZOOM CONTINUED:   (On the Record)

For the Foris Prepetition
Secured Lenders and DIP
Secured Parties:                    Alexander J. Nicas, Esq.
                                    GOODWIN PROCTER, LLP
                                    The New York Times Building
                                    620 Eighth Avenue
                                    New York, New York 10018

(Proceedings commence at 12:30 p.m.)

THE COURT: Okay. Good afternoon, Counsel. This is Judge Horan. We're on the record in Amyris.

We're here today for my ruling on the debtors' request for entry of a final order approving DIP financing.

I have a question for Mr. O'Neill, if he's on the line.

MR. O'NEILL: Your Honor, do you need James O'Neill? Yes, I am here.

THE COURT: Okay. Good to see you, Mr. O'Neill.

MR. O'NEILL: Thank you, sir.

THE COURT: I understand --

MR. O'NEILL: You, too.

THE COURT: -- that, in the past few moments -- or few minutes, the debtors have filed a revised form of proposed order.

MR. O'NEILL: Yes, Your Honor, that's correct. We filed it under a notice just after twelve o'clock today.

THE COURT: Okay. I have not had the opportunity to review it. Are any of the revisions germane to what I may be -- what I plan to decide right now?

MR. O'NEILL: Your Honor, we would modify what we have filed to make sure that it comports with your decision. We wanted to give you the lay of the land, the way things were as of the moment. We reached certain agreements with

the official committee, those are reflected in the order, so it's the most up-to-date version that we had prior to Your Honor's ruling.  So we anticipate that we would need to revise, should the Court so direct us.

I also see that Mr. Nicas is on.  He can also provide the Court with an update if I have not fully stated the correct position with respect to the order.

MR. NICAS:  Happy to help, Your Honor, if you so please.

THE COURT:  Yes.  Good morning -- or good afternoon, Mr. Nicas.

MR. NICAS:  Alexander Nicas, Goodwin Procter, on behalf of the DIP lender and the Foris pre-petition secured lenders.

Mr. O'Neill accurately characterized the filing of the revised proposed order.  We've reached an agreement with the committee on an extension of the challenge period and an increase of their carveout, which were the two issues that Mr. O'Neill raised at the October 4th hearings, so we wanted to make sure Your Honor was aware of that.

There may be parties who have -- including the ad hoc noteholder group, who may have issues with the revised proposed order that we filed and we made clear in the notice that only the committee has signed off on the order.  But we wanted to make sure Your Honor was aware of those changes,

given that the committee raised them at the prior hearing.

THE COURT: Okay.  Okay.  I appreciate that.  I understand.

Okay.  I am ready to proceed to my ruling.

As I said, we're here today for my ruling on the debtors' proposed -- or request for entry of a final order approving DIP financing.  Lavvan has objected.  And for the reasons that I'm about to describe, I'm going to overrule Lavvan's objection and grant approval, final approval of DIP financing.

On September 14, 2023, I conducted an initial hearing on final consideration of DIP financing and I concluded that the parties would need to develop a full record for me to decide the issues that were being presented.

On September 19th, I entered an order in which we defined the issues for the parties to present and I set a schedule for discovery, briefing, and a final hearing.

On October 4th, 2023, the Court held an evidentiary hearing to determine the issues presented.

And of the topics that were defined, there were really two that I found to be dispositive for my ruling today:

The first was whether the 2018 Foris loan and security agreement had been extinguished, as Lavvan proposed, in language contained in an Amyris 10-K for the fiscal year

of 2020.

And the second issue is whether Lavvan waived adequate protection under the subordination agreement.

On June 29, 2018, Amyris and GACP Finance Company entered into a loan and security agreement.  And under that agreement, Amyris borrowed an original principal amount of $36 million.

On April 15, 2019, the assigned -- the agreement with GACP was assigned to Foris Ventures with Foris standing in the shoes of GACP.

On August 14th, 2019, Foris and Amyris entered into Amendment Number 5 of the LSA, increasing the principal amount owed to $71 million.

Following another ten-million-dollar advancement, Foris and Amyris entered into the amended and restated loan and security agreement with a principal owed of $81 million.

On November 17, 2019, an additional ten-million-dollar advance brought the principal owed to $91 million.

And then, in January of 2020, Foris and Amyris entered into a partial debt equitization transaction that reduced the principal amount owed to $50,041,000 in exchange for equity and the principal of the loan remains at this amount.

Foris effectuated the aforementioned changes in principal through several contract provisions.  The LSA

included a provision allowing for a thirty-five-million-dollar increase of principal.  But following the amendment to the Foris LSA, it allowed for new loan commitments in, quote, "an aggregate amount in excess of the maximum term loan."

At the September 14, 2023 hearing, Lavvan presented Amyris' Form 10-K for the fiscal year of 2020, which was dated March 5, 2021, and it discussed the possible "extinguishment," is the term used, of debt owed under the Foris LSA.  Lavvan contends that there may have been a legal extinguishment of the debt under the Foris LSA that would result in the inapplicability, therefore, of the subordination agreement.

At the evidentiary hearing that I held last week, the debtors presented expert testimony of Theodore Martens and entered his report into evidence.  Mr. Martens was qualified as a CPA in 1981, and has over 40 years of accounting experience in both the public and private sector, including service as an expert witness in over 50 cases.

His testimony focused on the issue of whether Foris' 10-K filing indicated that there had been a legal extinguishment of the debt owed by Amyris to Foris, such that the LSA would no longer be in effect and there would be no debt owed under the LSA.

In response, Lavvan presented the expert testimony of Michael Gaul and introduced his report as evidence.  Mr.

Gaul provided testimony as an expert on operational assessment on his career and qualifications as a certified turnaround professional and certified fraud examiner.

As a rebuttal witness, Mr. Gaul reported that he believed that a series of transactions regarding the principal in the Foris LSA constituted what he called a "complex and unusual set of transactions" that resulted in the extinguishment of the Foris LSA.  However, Mr. Gaul also testified that none of the transaction that he identified as combining to be complex and unusual were in and of themselves unusual transactions.  But Mr. Gaul reported that, in his belief, the series of transactions, the Foris LSA created an entirely new debt instrument.

I find Mr. Martens' report and testimony convincing.  As described by Mr. Martens, the extinguishment accounting is a form of accounting treatment applied to debt and the lender of the debt is the same and the change in the debt terms is substantial.  The accounting treatment records a gain or loss against the original debt and an interest expense on the new debt.  The Form 10-K filing presents this precise issue.  When accounting for the treatment of the debt, Amyris contemplated modification of extinguishment treatment of the debt.

It is important to recognize that, in cases of an extinguishment assessment, the legal liability of the debtor

to the creditor remains unchanged.  And here, no legal change to the liability owed by Amyris to Foris occurred.

The LSA, which was assigned by GACP to Foris, resulted in a change of principal over time.  After the debt equitization transactions, the principal settled at $50,041,000.  The Foris LSA requires a full cash payment of the principal for the debt to be completely satisfied or legally extinguished, as opposed to extinguished from an accounting perspective.

Amyris has not provided a cash payment to reduce the principal since its inception.  And as the Foris LSA maintains outstanding principal, no extinguishment of the debt has occurred.  Accordingly, the Foris LSA remains in effect.

Next, I'll focus on the question of whether Lavvan waived adequate protection under the May 2019 subordination agreement.

The subordination agreement relates to the loan and security agreement and subsequent assignment to Foris.  Under the subordination agreement, Lavvan agreed to subordinate its claim to Foris until the Foris LSA was paid in full, in cash. Lavvan agreed to subordinate its liens without any terms limiting the total debt allowable under the Foris LSA or any limits on amendment to the Foris LSA.

The original GACP agreement contemplated a thirty-

five-million-dollar increase in debt on top of the original principal. Subsequently, the Foris LSA included express language allowing for a new loan commitment without a limit. The subordination agreement contains explicit provisions allowing for the addition of debt under the Foris LSA and the right to amend its terms.

The subordination agreement remains effective in connection with the Foris LSA. If the Foris LSA has remaining principal, then Lavvan has agreed to have its lien subordinated to the principal of the Foris LSA. And as noted above, the Foris LSA has not been extinguished. There are remaining principal obligations of $50,041,000. Until payment in full of the Foris LSA occurs, the subordination agreement remains in effect.

Lavvan asserts two principal arguments regarding the application of the subordination agreement. First, Lavvan argues that, while they agreed not to assert the right of adequate protection, that agreement does not constitute a waiver, nor does it extend to DIP financing. Lavvan argues that any waiver of adequate protection against DIP financing must be explicitly negotiated and written within the contract; otherwise, the Court reads material terms not explicitly provided for.

Second, Lavvan argues that even considering the waiver of the right to assert adequate protection, the Court

must make a finding of adequate protection under Section 364.

As for the first argument, I'm not persuaded that there needed to be additional contract terms for Lavvan to waive adequate protection against DIP financing. The subordination agreement, in my view, is clear Lavvan will not seek adequate protection until the Foris LSA is paid in full, and this plain language speaks to a waiver.

Lavvan has waived almost all of its rights within the bankruptcy proceeding except for one: The right to file a proof of claim as the junior lender in a bankruptcy proceeding. Lavvan is asking the Court to disregard its agreement to not seek adequate protection and then read into the contract a specific and substantive right to obtain adequate protection in cases of non-consensual DIP financing.

In addition to severely limiting the rights of Lavvan under the subordination agreement and the LSA, the subordination agreement specifically bars Lavvan from taking any action inconsistent with the terms of the contract. Lavvan expressly waived almost all of its rights, as I noted. The subordination agreement limits its available recourse. Taking actions inconsistent with those limitations would contradict the specific rights within the LSA that the parties bargained for. The Court finds that Lavvan has waived its right to adequate protection.

As to Lavvan's second argument, the Court does not

find Lavvan's reading of 364 persuasive.  Lavvan asserts that, even with a general waiver of adequate protection, 364 mandates the Court finding adequate protection when subordinating a junior lien to DIP financing, and Lavvan attempts to differentiate Section 364 from the language of 363, which governs cash collateral.

In transactions involving cash collateral, the junior lender must assert its rights to adequate protection or otherwise waive it; however, under 364, the Court may authorize the incurrence of credit or additional debt, in relevant part, only if there is adequate protection.

Lavvan proposes a very limited reading of 364, while Section 364 requires adequate protection and remains silent on the issue of consent, and I have found that Lavvan has waived its right to adequate protection.  As such, I find the reasoning of the GDH Court persuasive.  Presented with the same argument, the Court found that, where a creditor waived its right to adequate protection, the Court did not need to make an independent finding of sufficient adequate protection.  However, Lavvan argues that the creditors in GDH expressly waived adequate protection against DIP financing.

However, I must read the subordination agreement in its entirety and, having done so, I find that there was a waiver of adequate protection and that, if I were take up Lavvan's invitation, I'd be granting relief contrary to the

terms of their contract.  And I will not mandate a finding of adequate protection where a party has waived its rights under, in this case, a subordination agreement.

And for these reasons, I overrule Lavvan's objection and will enter an order granting the motion.

Now, having said that, there is a new version of the order out there, and I understand that there may not be consent from all parties.  I am going to review that agreement.  If there are issues with it, then we'll need to come back.  But frankly, without having reviewed it, I'm not in a position to say whether I'm going to enter that precise form of order.

If, in the view of the parties, there's anything arising out of my ruling today that requires further amendment to the order -- and I suspect there isn't -- then I would look for a further revised order under certification of counsel.  But otherwise, I'll review the proposed form of order and act on it as I see appropriate.

So that concludes my ruling for today.  I wish everyone a good afternoon.  And we are adjourned.

MR. MEROLA:  Your Honor?  Your Honor, excuse me.

THE COURT:  Mr. Merola?

MR. MEROLA:  Yes, Frank Merola of Paul Hastings on behalf of the ad hoc committee of noteholders.

We have a very narrow issue regarding the

bifurcation of the challenge period and we filed a brief objection to the form of order.  To be honest, when the order was first circulated last week, we were surprised by the effort of the debtors and the insider to bifurcate the challenge period and don't think it makes a lot of sense.

We're happy to discuss that now or in a brief hearing before Your Honor at your convenience after you've reviewed the form of order, but there will not be certification with a sign-off from the ad hoc committee with a bifurcated challenge period.

THE COURT:  Okay.  I appreciate that, Mr. Merola. You know, I haven't seen the pleadings, so I'm unable to comment on it.

I think what we'll need to do is reconvene next week then, in order to deal with any lingering issues regarding the proposed form of order.

So I know that there are a number of parties on the line.  And if anyone has additional comments on the revised form of order, I'd ask that you present them to the Court in a submission of no more than five pages by Monday at noon, and I'll be prepared at that point to schedule some further time next week.

MR. MEROLA:  Thank you, Your Honor.

THE COURT:  Okay?  Thank you.

With that, we are adjourned.

(Proceedings concluded at 12:47 p.m.)

\*\*\*\*\*

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

_____          October 11, 2023

Coleen Rand, AAERT Cert. No. 341

Certified Court Transcriptionist

For Reliable