# EXHIBIT 1

## Bid Procedures

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

## PROCEDURES FOR SALE OF THE DEBTORS' BRAND
## ASSETS THROUGH ONE OR MORE SALE TRANSACTIONS

On August 9, 2023 and August 21, 2023, as applicable (the "Petition Date"), the above-captioned debtors and debtors in possession (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 11, 2023 and August 23, 2023, as applicable, the United States Bankruptcy Court for the District of Delaware (the "Court") entered orders authorizing the joint administration and procedural consolidation of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).[2]

On [●], 2023, the Court entered an order (the "Bid Procedures Order") authorizing the Debtors to, among other things, solicit offers for one or more Sale Transactions (as defined herein) through the process and procedures set forth below (the "Bid Procedures").

The Debtors seek to consummate one or more transactions (each, a "Sale Transaction(s)") for the sale of the Debtors' assets associated with their Operating Consumer Brands[3] (the "Brand Assets") under section 363 and, as applicable, section 365, of the Bankruptcy Code to the extent

---

[1]  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Motion for (I) An Order (A) Approving Bid Procedures for the Sale of the Debtors' Brand Assets; (B) Approving Certain Bid Protections in Connection with the Debtors' Entry Into Any Potential Stalking Horse Agreements; (C) Scheduling the Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II) An Order or Orders (A) Approving the Sale of the Debtors' Brand Assets Free and Clear of All Encumbrances; and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 316] (the "Bid Procedures Motion").

[3]  The "Operating Consumer Brands" consist of Biossance®, JVN™, Rose Inc.™, Pipette®, MenoLabs™, Stripes™, and 4U by Tia™. Terasana®, Eco-Fabulous™, Costa Brazil®, OLIKA™, Beauty Labs, Purecane™, and Onda Beauty (the "Non-Operating Consumer Brands") are subject to the procedures set forth in the *Order (I) Establishing Procedures Governing the Sale or Transfer of Certain De Minimis Assets and Non-Operating Brands, and (II) Granting Related Relief* [Docket No. 205] (the "Non-Operating Brand Procedures Order"); *provided*, *however*, that the Debtors reserve the right to include any Non-Operating Consumer Brand in these Bid Procedures after consultation with the Consultation Parties.

certain criteria are satisfied as set forth in greater detail below.  The Debtors may sell some, all, or none of the Brand Assets, and the parties may not give special consideration to any potential Bid proposed by an insider (as such term is defined in section 101(31) of the Bankruptcy Code) or to an affiliate of any insider.  Without either the prior written consent (email being sufficient) of the Debtors after consultation with the Committee, an order of the Court, or the prior written confirmation (email being sufficient) that (a) an insider or an affiliate of any insider; (b) the DIP Secured Parties (or any affiliate thereof); and/or (c) the Foris Prepetition Secured Lenders (or any affiliate thereof) ((a) through (c) collectively, the "Restricted Parties"), as applicable, does not, at the time of such proposed communication, intend to submit a credit bid, no such Restricted Party may directly communicate with any Potential Bidder(s) or Bidder(s) with respect to such party's Bid.  Any Sale Transaction will be subject to the approval of the Court.  ***A hearing by the Court on the approval of any Sale Transaction(s) is currently scheduled for December 12, 2023 at 11:00 a.m. (Eastern Time) (the "Sale Hearing").***

### *Summary of Key Dates Established by Bid Procedures*

| Date[4] | Event |
|---|---|
| **October 20, 2023** | Deadline to File Bid Procedures Notice |
| **October 25, 2023 at 5:00 p.m.** | Stalking Horse Bid Deadline |
| **November 1, 2023** | Deadline to (i) Designate Stalking Horse Bidder(s) and (ii) Execute Stalking Horse Agreement(s) |
| **November 6, 2023 at 5:00 p.m.** | Deadline to File and Serve Stalking Horse Objections |
| **November 14, 2023 at 5:00 p.m.** | Deadline to Submit Qualified Bids |
| **November 22, 2023** | Deadline to Designate Qualified Bids and File Auction Notice |
| **November 28, 2023 at 10:00 a.m.** | Sale Auction(s) |
| **December 1, 2023** | Deadline to File Notice of Successful Bidder(s) and Back-Up Bidder(s) |
| **December 5, 2023 at 5:00 p.m.** | Adequate Assurance Objection Deadline |
| | Deadline to Object to Sale(s) |
| **December 12, 2023 at 11:00 a.m.** | Sale Hearing |
| **December 29, 2023** | Deadline to Close Transaction(s) |

---

[4]    All times are prevailing Eastern time. The Debtors, after consultation with the Consultation Parties, may extend the deadlines set forth herein.

## I.    BID PROCEDURES

### A.    General Sale Transaction Information

#### 1.    Assets for Sale

The Debtors are soliciting interest for the consummation of one or more Sale Transactions with respect to the Brand Assets. All of the Debtors' rights, title, and interest in and to the Brand Assets shall be sold free and clear of any Encumbrances (as defined in the Bid Procedures Motion) on an "as is, where is" and "with all faults" basis and without representations, warranties or guarantees, express, implied or statutory, written or oral, of any kind, nature or description, by any Debtor, its affiliates or their respective representatives, except as otherwise provided in the applicable Purchase Agreement, as defined herein, to the maximum extent permitted by sections 363 and 365 of the Bankruptcy Code, with such Encumbrances to attach to the net proceeds of the applicable Sale Transaction with the same validity and priority as such Encumbrances applied against the respective the Brand Assets purchased pursuant to these Bid Procedures.

**All of the Brand Assets may be purchased together, or any Brand Assets associated with one or more Operating Consumer Brands may be purchased together**. The Debtors, in their discretion, exercised in good faith and in consultation with the Consultation Parties,[5] will have the right to determine the highest or best value from the potential offers received.

**Further information on the Brand Assets being offered for sale pursuant to these Bid Procedures is available upon request from the Debtors' investment banker, Intrepid Investment Bankers, LLC ("Intrepid") - (Attn: Lorie Beers, lbeers@intrepidib.com; Carl Comstock, ccomstock@intrepidib.com; and Ana Alvarenga, aalvarenga@intrepidib.com) on the terms and conditions set forth below.**

#### 2.    Access to Due Diligence Materials

To participate in the bidding process and receive due diligence information, including full access to the Debtors' electronic data room (the "Data Room") and additional non-public information regarding the Debtors (the "Diligence Materials"), parties interested in receiving due diligence information to participate in the bidding process (each, an "Interested Party") must deliver or have previously delivered to the Debtors, if determined to be necessary by the Debtors in their sole discretion, the Preliminary Bid Documents (as defined herein) to the following parties (the "Recipient Parties"):

(i)    counsel to the Debtors: (a) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Steven W. Golden (sgolden@pszjlaw.com); and (b) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com); and

---

[5]    The "Consultation Parties" are, collectively, the DIP Secured Parties, the Foris Prepetition Secured Lenders, and the Official Committee of Unsecured Creditors (the "Committee") appointed in these Chapter 11 Cases.

(ii)  investment banker to the Debtors: Intrepid Investment Bankers, LLC, Attn: Lorie Beers (lbeers@intrepidib.com), Carl Comstock (ccomstock@intrepidib.com), and Ana Alvarenga (aalvarenga@intrepidib.com).

The "Preliminary Bid Documents" that must be submitted to the Recipient Parties include: (a) an executed confidentiality agreement using the Debtors' form, as may be amended, on terms reasonably acceptable to the Debtors, to the extent not already executed (a "Confidentiality Agreement"); (b) a statement and/or other factual support demonstrating to the Debtors' satisfaction in the exercise of their reasonable business judgment that the Interested Party has a *bona fide* interest in purchasing all or any portion of the Brand Assets; and (c) preliminary proof by the Interested Party of its financial capacity to close its proposed Sale Transaction(s), which may include verbal or written representations of an Interested Party's financial wherewithal or financial statements of, or verified financial commitments obtained by, the Interested Party (or, if the Interested Party is an entity formed for the purpose of acquiring all or any portion of the Brand Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors (including in consultation with their advisors). Any Interested Party who, in the Debtors' determination, qualifies for access to the Diligence Materials shall be deemed a "Potential Bidder." For the avoidance of doubt, a Secured Party (as defined herein) shall be a Potential Bidder and does not need to submit the Preliminary Bid Documents.

The Debtors will provide any Potential Bidder such due diligence access or additional information as the Debtors deem appropriate, which may include, without limitation, the right to withhold, restrict, or to delay providing any Diligence Materials to a Potential Bidder that the Debtors, in their reasonable discretion, determine are, among other things, business-sensitive, may risk unduly placing the Debtors at a competitive disadvantage, or are otherwise inappropriate for disclosure to such Potential Bidder at such time.

The Potential Bidder shall return or destroy any non-public information the Debtors or their advisors provided to the Potential Bidder in accordance with the terms of the confidentiality agreement executed by the Debtors and the Potential Bidder.

## 3.    *Due Diligence from Potential Bidders*

Each Interested Party, Potential Bidder, and Qualified Bidder (as defined herein) (each, a "Bidder" and, collectively, the "Bidders") shall comply with all requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated Sale Transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtors, after consultation with the Consultation Parties, to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

B. **Auction Qualification Process**

1. ***Stalking Horse Bidder***

The Debtors may, pursuant to these Bid Procedures, after consultation with the Consultation Parties and with either the express consent of the DIP Agent and the Foris Prepetition Secured Lenders or with further order of the Court, (i) designate one or more Qualified Bidders that submit a Qualified Bid for all or any portion of the Brand Assets a stalking horse bidder (the "Stalking Horse Bidder"), whose Qualified Bid shall serve as the stalking horse bid ("Stalking Horse Bid"), and  (ii) execute, subject to higher or otherwise better offers, one or more purchase agreements memorializing the proposed transaction set forth in the Stalking Horse Bid (a "Stalking Horse Agreement"), which may include: (x) a break-up fee of no more than 3.0% of the total cash consideration payable under such Stalking Horse Agreement (the "Break-Up Fee") plus (y) an expense reimbursement for the Stalking Horse Bidder's actual out-of-pocket costs of up to $350,000 (the "Expense Reimbursement" and, together with the Break-Up Fee, the "Bid Protections"); *provided, however*, that the aggregate Bid Protections with respect to any Stalking Horse Bid shall not exceed 5.0% of the total cash consideration offered in such Stalking Horse Bid; *provided, further*, that the Foris Prepetition Secured Lenders and/or the DIP Secured Parties must provide written confirmation (email being sufficient) to the Debtors of their intent to submit a Stalking Horse Bid on or before October 30, 2023, which written confirmation must include the Contemplated Transaction Documents (as defined herein); *provided, further*, that if at such time the DIP Agent and the Foris Prepetition Secured Lenders have provided a Credit Bid (as defined below) to be a Stalking Horse Bidder they shall not have consent rights with respect to such Brand Assets that are the subject of such Credit Bid so long as such Credit Bid has not been withdrawn; *provided, further,* that Bid Protections shall only be payable upon consummation of an alternative transaction.  For the avoidance of doubt, to the extent the Debtors designate more than one Stalking Horse Bidder pursuant to these Bid Procedures, no two Stalking Horse Bidders will be designated with respect to any of the same Brand Assets.  The Debtors shall not pay a Break-Up Fee to any Stalking Horse Bidder on account of the portion of the Purchase Price of such Bid that is a credit bid, assumption of liabilities, or other non-cash (or cash-equivalent) consideration, nor provide any Bid Protections to an insider or affiliate of the Debtors.[6]

**The deadline for a Potential Bidder to submit a Stalking Horse Bid is October 25, 2023 at 5:00 p.m. (prevailing Eastern Time) (the "Stalking Horse Bid Deadline"), which deadline may be extended by the Debtors after consultation with the Consultation Parties (such deadline as extended from time to time, the "Extended Designation Deadline").**

---

[6]   For the avoidance of doubt, the foregoing restriction on the provision of Bid Protections to an insider or affiliate of the Debtors neither (i) alters the DIP Secured Parties' or Foris Prepetition Lenders' rights or the Debtors' obligations pursuant to any order entered with respect to the *Motion of the Debtors for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 19] or the *Senior Secured Super Priority Debtor in Possession Loan Agreement dated as of August 9, 2023*, as amended; nor (ii) affects any other party's (including the Committee) rights with respect thereto.

***The Debtors may but are not required to, designate one or more Stalking Horse Bidders on or before November 1, 2023 (the "Stalking Horse Bidder Designation Deadline").***

To the extent the Debtors, consistent with these Bid Procedures, determine to offer Bid Protections to any Stalking Horse Bidder, the Debtors shall disclose such Bid Protections in a corresponding notice designating such Stalking Horse Bidder (the "Stalking Horse Notice") to be filed pursuant to the Bid Procedures **no later than November 1, 2023**. A Stalking Horse Notice, if filed, shall also include (a) a copy of the Stalking Horse Agreement; (b) an appropriate declaration in support of the proposed Bid Protections (the "Bid Protections Declaration"); and (c) a proposed form of order approving the Bid Protections (the "Stalking Horse Order"). Any objection to (i) the Bid Protections set forth in the Stalking Horse Notice, or (ii) the form of Stalking Horse Order (a "Stalking Horse Objection"), shall be filed **no later than November 6, 2023 at 5:00 p.m. (prevailing Eastern Time)**; *provided*, *however*, any such Stalking Horse Objection shall be limited to whether the Stalking Horse Notice and Stalking Horse Order are consistent with the Bid Protections provided for herein. If a timely Stalking Horse Objection is filed, the Debtors are authorized to file a notice seeking an expedited hearing with respect to the Stalking Horse Objection on **not less than three (3) calendar days' notice.** Absent any timely Stalking Horse Objection, the Court may enter the Stalking Horse Order without further hearing.

2.    ***Form of Asset Purchase Agreement***

A Potential Bidder must submit a proposed asset purchase agreement (a "Purchase Agreement"), similar in form and substance, as modified, to the asset purchase agreement to be furnished by the Debtors in the Data Room (the "Form APA"), accompanied by a comparison of the Purchase Agreement to the Form APA.

3.    ***Designation as Qualified Bidder***

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for one or more Consumer Brand's Brand Assets constitute a Topping Bid (as defined herein) as applicable to each Consumer Brand's Brand Assets), that satisfies the Bid Conditions defined and as described below and otherwise satisfies the requirements of the Bid Procedures Order and the Bid Procedures set forth herein, and that the Debtors, after consultation with the Consultation Parties (as defined herein), determine is reasonably likely to submit a bona fide offer for all or any portion of the Brand Assets and to be able to consummate a Sale Transaction (or Sale Transactions, as applicable) if selected as a Successful Bidder (as defined herein).

The Debtors, after consultation with the Consultation Parties, shall determine and notify any Potential Bidder as to whether such Potential Bidder is a Qualified Bidder no later than **November 22, 2023**.

### *4.    <u>Right to Credit Bid</u>*

At the Auction, if any, a Qualified Bidder who has a valid and perfected lien[7] on any Brand Assets (a "<u>Secured Party</u>") shall be permitted to submit a credit bid for all or a portion of the assets subject to such lien, up to the amount of such Secured Party's claims (a "<u>Credit Bid</u>"), to the extent permitted under section 363(k) of the Bankruptcy Code; *provided, however*, that any Credit Bid by the Foris Prepetition Secured Lenders shall be subject to the Challenge Period (as defined in the DIP Orders); *provided*, *however*, that any Secured Party, other than the Foris Prepetition Secured Lenders and the DIP Agent, that intends to participate in the Auction with a Bid that includes a Credit Bid shall, as a condition to such participation, (i) notify the Debtors and the Committee at least five (5) calendar days prior to the Bid Deadline that it intends to submit a Credit Bid, and (ii) provide all documentation requested by the Debtors to establish the lien, claims, and encumbered assets that will be the subject of the Secured Party's potential Credit Bid.  The Foris Prepetition Secured Lenders and the DIP Secured Parties qualify as a Potential Bidder and Qualified Bidder and may submit a Credit Bid any time after the Bid Deadline or during the Auction, and such Credit Bid shall be a Qualified Bid unless otherwise ordered by the Court for cause (any such Credit Bid, the "<u>Foris Credit Bid</u>"); *provided*, *however*, that the Foris Prepetition Secured Lenders and the DIP Secured Parties must provide Contemplated Transaction Documents (as defined herein) to the Debtors no later than two (2) business days after the Bid Deadline.  Other than with respect to the Contemplated Transaction Documents, the Foris Credit Bid shall not be subject to the requirements herein for a Qualified Bid or a Back-Up Bid.

To the extent that any Secured Party who is a Consultation Party submits a Credit Bid for all or any portion of the Brand Assets, such Secured Party's respective rights as a Consultation Party and any consent rights provided for herein shall be terminated as of such time solely with respect to bids related to the same Brand Assets as that for which the Secured Party submitted a Credit Bid, and the Debtors shall establish reasonable procedures to prevent such Secured Party or its representatives from thereafter being privy to confidential information concerning the bids of other Bidders for such Brand Assets for so long as such Secured Party remains a Bidder; *provided*, *however*, that the Committee shall receive notice of such procedures and shall have the right to object to such procedures within five (5) business days of receipt of notice, *provided*, *further*, *however*, that (i) any Secured Party who submits a Credit Bid and later withdraws such bid shall immediately resume being treated as a Consultation Party and shall regain any consent rights provided for herein, as applicable, for purposes of these Bid Procedures and (ii) any Secured Party who does not submit a Credit Bid shall at all times be a Consultation Party for purposes of these Bid Procedures.

---

[7]    Any credit bid by the holder of a junior lien must include a cash component sufficient to indefeasibly pay in full, in cash all claims and obligations of the holder of all liens senior to such junior lien.

For the avoidance of doubt, the Debtors dispute the nature, extent, priority, and validity of any lien and security interest asserted by Lavvan, Inc. ("<u>Lavvan</u>") against Amyris, Inc.  The Debtors reserve all rights against Lavvan, including, but not limited to, the right to challenge any request by Lavvan to credit bid pursuant to section 363(k) of the Bankruptcy Code.  Nothing herein should be construed or implied as any agreement of or consent by the Debtors to Lavvan's ability to credit bid, nor a waiver of any of the Debtors' rights under the Bankruptcy Code or applicable law.

C. **Bidding Process**

The Debtors and their advisors shall, after consultation with the Consultation Parties: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions hereof; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase all or any portion of the Brand Assets. The Debtors, in consultation with the Consultation Parties, shall have the right to adopt such other rules for the bidding process that are not inconsistent with the Bid Procedures Order or these Bid Procedures that will better promote the goals of such process.

1. *Bid Deadline*

***The Bid Deadline is November 14, 2023 at 5:00 p.m. (prevailing Eastern Time).*** On or before the Bid Deadline, a Qualified Bidder that desires to make a proposal, solicitation, or offer for a Sale Transaction (each, a "Bid") shall deliver written and electronic copies of its Bid to the Recipient Parties. The Debtors shall promptly (and in no event later than twelve (12) hours after the Debtors' receipt thereof) provide copies of all Bids to counsel for the Consultation Parties and the Ad Hoc Noteholder Group.[8]

Unless the Debtors, after consultation with the Consultation Parties and the Ad Hoc Noteholder Group, determine otherwise, a Bid received after the Bid Deadline shall not constitute a Qualified Bid.

2. *Qualified Bids*

To be eligible to participate in the Auction and to be eligible for consideration as a Qualified Bidder, a Potential Bidder must deliver a Bid, so as to be received by the Recipient Parties on or before the Bid Deadline, that meets the following requirements (collectively, the "Bid Conditions"):

i. Purpose and Identity of Assets to be Purchased. Each Bidder must state that the Bid includes an offer by the Bidder to effectuate a Sale Transaction and identify with specificity which Brand Assets are included in the Bid.

ii. Good Faith Deposit. Each Bid must be accompanied by a cash deposit (the "Good Faith Deposit") in the form of a wire transfer, certified check, or cash payable to the order of counsel pursuant to instructions to be provided by Debtors equal to 10% of the Bidder's proposed Purchase Price (as defined herein), which will be held in a non-interest bearing escrow or trust account; *provided however*, that a Secured Party submitting a credit bid shall not be required to post a Good Faith Deposit.

iii. Purchase Price. Each Bid must clearly set forth the cash purchase price (the "Cash Consideration") and identify any non-cash consideration included in such Bid (together with the Cash Consideration, the "Purchase Price") including, without

---

[8] As used herein, the "Ad Hoc Noteholder Group" shall have the meaning ascribed to it in the *Verified Statement of the Ad Hoc Noteholder Group Pursuant to Bankruptcy Rule 2019* [Docket No. 129].

limitation, which executory contracts and unexpired leases the Bidder expects the Debtors to assume and assign to the Bidder (the "Transferred Contracts") and which liabilities, if any, of the Debtors the Bidder is agreeing to assume (the "Assumed Liabilities").  ***Any Bidder who submits a Bid for more than one Consumer Brand's Brand Assets must allocate the Purchase Price between or among each Consumer Brand's Brand Assets and include the basis and methodology for such allocation.  Further, any Bidder who submits a Bid for more than one Consumer Brand's Brand Assets must provide that such Bid is severable as between or among Operating Consumer Brands***.  The Purchase Price associated with each Bid may include only cash and/or other consideration acceptable to the Debtors after consultation with the Consultation Parties.  If a Stalking Horse Bidder(s) has been selected for all or any portion of the Brand Assets, the cash component of any other Qualified Bid with respect to all or any portion of the Brand Assets must be no less than an amount necessary to satisfy the Break-Up Fee and Expense Reimbursement, as defined herein, and be a Topping Bid with respect to the applicable Consumer Brand's Brand Assets.  In order for the Bid to qualify as a "Topping Bid," it must provide for consideration at Closing (as defined herein) that is equal to or in excess of the sum of: (i) the Stalking Horse Bid; (ii) the Expense Reimbursement; (iii) the Break-Up Fee; and (iv) the Minimum Increment (as defined herein).

iv.     Binding and Irrevocable.  Each Bid must include a signed writing stating that it is binding and irrevocable until the selection of the Successful Bidder, provided that if such Bidder is selected as the Successful Bidder or the Back-Up Bidder, its offer shall remain irrevocable until the closing of the Sale with the Successful Bidder or, as applicable, the Back-Up Bidder (the "Closing").

v.      Contemplated Transaction Documents.  Each Bid must include an executed Purchase Agreement marked against the Form APA pursuant to which the Qualified Bidder proposes to effectuate the contemplated Sale Transaction including: (i) a redlined copy of the Purchase Agreement marked to show all changes requested by the Qualified Bidder against the Form APA; (ii) specification of the proposed Purchase Price allocated, if applicable, as set forth in section I.C.2.iii hereof; and (iii) any changes to any exhibits or schedules to the Purchase Agreement (collectively, the "Contemplated Transaction Documents").  The terms and conditions of the Contemplated Transaction Documents must be, in the aggregate, not materially more burdensome to the Debtors than the provisions contained in any applicable Stalking Horse Agreement.  A Bid must identify with particularity each and every condition to Closing and all Transferred Contracts pursuant to the Contemplated Transaction Documents.  All Bids must provide that all Cure Amounts (as defined herein) will be paid by such Bidder.  ***The Contemplated Transaction Documents must include a commitment to close by no later than December 29, 2023***.  A Bid shall contain a detailed description of how the Potential Bidder intends to treat current employees of the Debtors.

vi.     Contingencies.  A Bid may not be conditioned on obtaining financing or any internal approval or on the outcome or completion of due diligence, but may be

subject to the accuracy in all material respects at Closing of representations and warranties at or before Closing or the satisfaction in all material respects of customary representations and warranties for transactions of similar size and nature at or before Closing or the satisfaction in all material respects of customary conditions for transactions of similar size and nature at or before Closing.  A Bid must disclose any governmental approvals identified by the Potential Bidder other than as set forth in the Contemplated Transaction Documents that may impact the evaluation of such Bid.

vii.    <u>No Collusion</u>.  Each Bid must include a representation that the Bidder has not engaged in any collusion with respect to its Bid submission (though Potential Bidders are permitted to make joint bids) and that the Bidder will not engage in any collusion with respect to any Bids, the Auction, or the Sale Process.

viii.   <u>Authorization to Bid and Identity of Bidder</u>.  Each Bid must include evidence of authorization and approval from such Potential Bidder's board of directors (or comparable governing body, or a statement as to why such approval is unnecessary) with respect to the submission, execution, delivery, and closing of the Contemplated Transaction Documents.  A Bid must also fully disclose the identity of the entity that is submitting the Bid, including the identity of the ultimate beneficial owners of the Bidder and the identity of any person or entity providing debt or equity financing for the Bid.

ix.    <u>Financing Sources</u>.  Each Bid must include written evidence that demonstrates the Potential Bidder has the necessary financial ability to close the contemplated Sale Transaction and provide adequate assurance of future performance under all Transferred Contracts.  Such information may include, *inter alia*, the following:

    a.    the Potential Bidder's current financial statements (audited, if they exist);

    b.    contact names, telephone numbers, and e-mail addresses for verification of financing sources;

    c.    evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated Sale Transaction (including confirmation that the funding of such commitments is not subject to any contingency); and

    d.    any other form of financial disclosure of credit-quality support information acceptable to the Debtors demonstrating that such Potential Bidder has the ability to close the contemplated Sale Transaction.

x.    <u>Adequate Assurance of Future Performance</u>.  Each Bid must demonstrate, in the Debtors' reasonable business judgment and after consultation with the Consultation Parties, that the potential Bidder can provide adequate assurance of future performance to the applicable counterparty under all Transferred Contracts as required by section 365 of the Bankruptcy Code.

xi.       <u>No Fees Payable to Qualified Bidder</u>.  Other than any Stalking Horse Bidder(s), a Bidder may not request any break-up fee, termination fee, expense reimbursement, or any similar type of payment.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code relating in any way to the submission of its Bid, compliance with the Bid Procedures, or participation in the Sale Process.

xii.      <u>Payment of the Break-Up Fee and Expense Reimbursement</u>.  If a Stalking Horse Bidder has been selected for all or any portion of the Brand Assets that are the subject of a Bid, a Bid must allow for the payment of the Break-Up Fee and Expense Reimbursement to the applicable Stalking Horse Bidder from the first proceeds of the cash portion of the Purchase Price of such Bid upon Closing to the extent the Bid overlaps with the Stalking Horse Bid in regard to the Brand Assets included in such Bid.  The applicable Bid Protections will only be earned by the applicable Stalking Horse Bidder if the Successful Bidder has Overbid the Stalking Horse Bidder on the same Brand Assets included in the applicable Stalking Horse Bid, and will only be payable at the Closing of the applicable Sale Transaction to the Successful Bidder.  To the extent a party is designated Stalking Horse Bidder for multiple Brand Assets and is ultimately the Successful Bidder for only a portion of such Brand Assets, the payment of the Break-Up Fee and Expense Reimbursement shall not exceed 5.0% of the value of the Brand Assets for which the Stalking Horse Bidder was not named the Successful Bidder.

xiii.     <u>Non-Reliance</u>.  A Bid must include an acknowledgement and representation of the Potential Bidder that it has had an opportunity to conduct any and all due diligence regarding the Brand Assets (as applicable to its Bid) and Assumed Liabilities prior to making its Bid, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Brand Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Brand Assets, the financial performance of the Brand Assets or, as applicable, the physical condition of the Brand Assets, the Assumed Liabilities, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Contemplated Transaction Documents.

xiv.      <u>As Is, Where Is</u>.  A Bid must include an acknowledgement and representation of the Potential Bidder that it understands that any Sale Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or their estates except to the extent set forth in the Purchase Agreement of the Successful Bidder.

A Bid received from a Potential Bidder shall constitute a "<u>Qualified Bid</u>" if the Debtors believe, after consultation with the Consultation Parties, that such Bid would be consummated if selected as the Successful Bid.  The Debtors shall have the right to reject any and all Bids that they believe, after consultation with the Consultation Parties, do not comply with the Bid Procedures. In the event that any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit.

D. **Auction**

After the receipt and review of all Qualified Bids, the Debtors shall make a determination, after consultation with the Consultation Parties, whether to accept the highest or best Qualified Bid(s) for all or any portion of the Brand Assets.

To the extent the Debtors receive Qualified Bids and determine to proceed to Auction, the Debtors, after consultation with the Consultation Parties, shall determine which Qualified Bid(s) represent the then highest or otherwise best Bid(s) for all or any subset of the Brand Assets, as applicable (the "Baseline Bid(s)"). The determination of which Qualified Bid(s) constitute the Baseline Bid(s) and which Qualified Bid(s) constitute the Successful Bid(s) (as defined herein) shall take into account any factors the Debtors, after consultation with the Consultation Parties, reasonably deem relevant to the value of the Qualified Bid(s) to their estates, including, *inter alia*: (a) the amount and nature of the consideration; (b) the certainty of closing; (c) the net economic effect of any changes to the value to be received by the Debtors' creditors from the proposed Sale Transaction(s); (d) the allocation of the Purchase Price between or among Brand Assets; (e) tax consequences of such Qualified Bid(s); and (f) any other quantitative or qualitative criteria available to assess such Bid (collectively, the "Bid Assessment Criteria"). If the Debtors, pursuant to these Bid Procedures, designate a Stalking Horse Bidder(s), the Baseline Bid(s), to the extent not the Stalking Horse Bid(s), must be not less than the Purchase Price of the Stalking Horse Bid *plus* (ii) the Break-Up Fee *plus* (iii) the Expense Reimbursement *plus* (iv) the Minimum Increment (as defined herein).

On or before ***November 22, 2023***, the Debtors shall file a notice on the Court's docket (an "Auction Notice") providing (i) notice of the location of the Auction; and (ii) notice of whether the Debtors believe, in the exercise of their business judgment and after consultation with the Consultation Parties, that the Auction should be held in two or more parts over multiple days so as to maximize value for the estates.

Unless otherwise designated by the Debtors, after consultation with the Consultation Parties, the Auction shall commence at ***10:00 a.m. (Eastern Time) on November 28, 2023,*** at a location to be designated in the Auction Notice. In the Debtors' discretion, the Auction may be held by telephonic or video conference.

The Auction shall be conducted according to the following procedures:

*1.     **Participation at the Auction***

Unless the Debtors, after consultation with the Consultation Parties and the Ad Hoc Noteholder Group, determine otherwise, only the Stalking Horse Bidder(s) and Qualified Bidders that have submitted Qualified Bids are eligible to participate at the Auction. Only the authorized representatives and professional advisors of each of the Qualified Bidders, the Stalking Horse Bidder(s), the Debtors, the Consultation Parties, the Ad Hoc Noteholder Group, and the United States Trustee for the District of Delaware shall be permitted to attend the Auction.

Except as otherwise set forth herein, the Debtors, after consultation with the Consultation Parties, may conduct the Auction in the manner they determine will result in the highest or best

offer(s) for the Brand Assets in accordance with the Bid Procedures, including sequencing the sale of any Consumer Brand's Brand Assets.

In the event, after the conclusion of the Auction, that certain discrete Brand Assets which are not included in the Successful Bid(s) have not been sold (the "Unsold Assets"), the Debtors may, in the exercise of their business judgment and after consultation with the Consultation Parties, resume an auction for the sale of the Unsold Assets, on such bid procedures as may be implemented by the Debtors after consultation with the Consultation Parties.

## 2.    *The Debtors Shall Conduct the Auction*

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of any Baseline Bid(s). All Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtors reserve the right to conduct the Auction, after consultation with the Consultation Parties, in the manner designed to maximize value based upon the nature and extent of the Qualified Bids received in accordance with the Bid Procedures, the Bid Procedures Order, the Bankruptcy Code, and any other order of the Court entered in connection herewith and disclosed to each Qualified Bidder. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, and the Successful Bid(s). Pursuant to Local Rule 6004-1, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the Sale Process, the Bid Procedures, the Auction, or the proposed Sale Transaction(s).

## 3.    *Terms of Overbids*

An "Overbid" is any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the applicable Baseline Bid(s) that satisfies the following conditions:

### (a)    Minimum Increment

During the Auction, bidding shall begin with the Baseline Bid. Due to the potential combinations of Brand Assets that may be included in any Bid, the Debtors reserve all rights with respect to the comparison of Qualified Bids to Stalking Horse Bids and the determination of the Baseline Bid(s) subject to the rights of the Consultation Parties as provided for herein. The initial Overbid after the Baseline Bid (the "Initial Overbid") shall be made in an increment announced on the record, after consultation with the Consultation Parties, prior to the start of the Auction (the "Minimum Increment") *plus*, solely in the event the Baseline Bid is a Stalking Horse Bid, (ii) the Break-Up Fee *plus* (iii) the Expense Reimbursement, as applicable to the Brand Assets included in the Bid, in cash or other consideration acceptable to the Debtors, after consultation with the Consultation Parties. Any Overbids subsequent to the Initial Overbid shall be made in increments of at least the applicable Minimum Increment; *provided, however*, that any Overbids by the Stalking Horse Bidder(s) shall only be required to be equal to the sum of (x) (1) the Baseline Bid or the then existing highest Bid *plus* (2) the Minimum Increment *less* (y) the sum of the amount of the Bid Protections applicable to the Brand Assets included in the Bid.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtors, after consultation with the Consultation Parties, accept a higher Qualified Bid as an Overbid.

### (b)    **Consideration of Overbids**

Subject to compliance with the terms of the DIP Orders, the Debtors reserve the right, after consultation with the Consultation Parties, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in the exercise of their business judgment and after consultation with the Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount.

### (c)    **Evidence of Ability to Close Sale Transaction**

To the extent not previously provided on or before the Bid Deadline, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence reasonably acceptable to the Debtors, after consultation with the Consultation Parties, demonstrating such Qualified Bidder's ability to close the Sale Transaction proposed by such Overbid.

### 4.    _Additional Procedures_

The Debtors, after consultation with the Consultation Parties, may (a) determine which Qualified Bid or Qualified Bids, if any, is the highest or best offer for all Brand Assets or any Consumer Brand's Brand Assets and (b) reject at any time before entry of an order of the Court approving a Sale Transaction of all or any portion of the Brand Assets pursuant to a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the Bid Procedures Order; or (iii) contrary to the best interest of the Debtors, their estates, and their creditors.

### 5.    _Consent to Jurisdiction as Condition to Bidding_

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and to have waived any right to a jury trial in connection with any disputes relating to the Sale Process, the Auction, the Bid Procedures, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

### 6.    _Closing the Auction_

The Auction shall continue until there is only one Qualified Bid for all of the Brand Assets or for one or more Consumer Brand's Brand Assets (or multiple non-overlapping Qualified Bids for any subsets of the Brand Assets if there is no single Qualified Bid for all the Brand Assets) that the Debtors determine, in the exercise of their business judgment and after consultation with the Consultation Parties, is the highest or otherwise best Qualified Bid(s) (such Qualified Bid(s), the "Successful Bid(s)", and such Qualified Bidder(s), the "Successful Bidder(s)"), and that further

bidding is unlikely to result in a higher or otherwise better Qualified Bid, at which point, the Auction will be closed. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction. In selecting the Successful Bid, the Debtors, after consultation with the Consultation Parties, may consider all factors relevant to the sale of the Brand Assets, including the Bid Assessment Criteria.

Upon the closing of the Auction, the Debtors, after consultation with the Consultation Parties, shall identify the Successful Bidder(s) and the Successful Bid(s) and the Back-Up Bidder(s) and Back-Up Bid(s) as soon as reasonably practicable which highest or best offer will provide the greatest amount of net value to the Debtors, and advise the Qualified Bidders of such determination. Due to the potential combinations of Brand Assets that may be included in any Bid, the Debtors reserve all rights with respect to the comparison of Qualified Bids and the determination of the Successful Bidder(s) and Back-Up Bidder(s) (as defined herein).

The Qualified Bidder with the second highest or otherwise best Bid at the Auction, as determined by the Debtors after consultation with the Consultation Parties, shall be required to serve as the back-up bidder (the "Back-Up Bidder(s)"). The identity of the Back-Up Bidder(s) and the amount and material terms of the final Bid of the Back-Up Bidder(s) (the "Back-Up Bid(s)") shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the Successful Bid(s). Any Back-Up Bidder shall keep its Back-Up Bid open and irrevocable until the Closing of the Sale Transaction with the Successful Bidder. The Good Faith Deposit of the Back-Up Bidder(s) shall be returned by the Debtors within three (3) days after Closing.

Within one (1) business day after the close of the Auction, the Successful Bidder(s) shall supplement the Successful Bidder(s)' Good Faith Deposit(s) such that the Good Faith Deposit(s) shall be equal to an amount that is ten percent (10%) of the Purchase Price of the Successful Bid(s).

The Debtors shall not consider any Bids or Overbids submitted after the closing of the Auction and any and all such Bids and Overbids shall be deemed untimely.

As stated above, the Successful Bid(s) of the Successful Bidder(s) and the Back-Up Bid(s) of the Back-Up Bidder(s), respectively, must be irrevocable until Closing.

### E.  Notice of Acceptance of Successful Bid

Upon determination of the Successful Bid(s), on or before ***December 1, 2023***, the Debtors will file a notice (the "Notice of Successful Bidder") of the Debtors' intent to effectuate one or more Sale Transaction(s) for all or any portion of the Brand Assets with the Successful Bidder(s) upon the approval of the Successful Bid(s) by the Court at the Sale Hearing.[9] The Debtors' presentation of a particular Successful Bid to the Court for approval does not constitute the

---

[9]   With respect to any Sale Transaction, a filed Notice of Successful Bidder shall include, as exhibits, (a) a copy of the Purchase Agreement; (b) a copy of the proposed Sale Order; and (c) identification of the Transferred Contracts with respect to such Sale Transaction; *provided, however*, that a Successful Bidder shall have the right to add or remove Transferred Contracts until the closing of such Sale Transaction and any definitive identification of Transferred Contracts with respect to a Sale Transaction will be made in connection with a notice of closing of such Sale Transaction.

Debtors' acceptance of such Successful Bid.  The Debtors will be deemed to have accepted a Successful Bid only when such Successful Bid has been approved by the Court at the Sale Hearing.

## F. <u>Free of Any and All Interests</u>

Except as otherwise provided in the Purchase Agreement(s) of the Successful Bidder(s) and subject to the approval of the Court, all of the Debtors' rights, title, and interest in and to the Brand Assets subject thereto shall be sold free and clear of any Encumbrances to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Encumbrances to attach to the proceeds of the sale of the applicable Brand Assets with the same validity and priority as such Encumbrances were held against the applicable Brand Assets prior to the sale; *provided*, for the avoidance of doubt, that the rights of the DIP Lenders and the DIP Agent to be repaid in cash from such proceeds pursuant to the DIP Order and the DIP Documents shall not be modified without the prior written consent of the DIP Lenders.

## G. <u>Sale Hearing</u>

***The Sale Hearing will occur on December 12, 2023 at 11:00 a.m. (prevailing Eastern Time)*** before the Hon. Thomas M. Horan, United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801.  Any objections to the Sale Transaction(s) requested at the Sale Hearing must be filed and served so as to be received by the Notice Parties or before ***December 5, 2023 at 5:00 p.m. (prevailing Eastern Time)***.

At the Sale Hearing, the Debtors will seek entry of an order (the "<u>Sale Approval Order</u>") authorizing and approving one or more Sale Transaction(s) to the Successful Bidder(s).  Subject to the terms of the DIP Order, the Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties other than the Consultation Parties, including by (i) an announcement of such adjournment at the Sale Hearing or at the Auction or (ii) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

If any Successful Bidder fails to consummate an approved Sale Transaction in accordance with its applicable Purchase Agreement or such Purchase Agreement is terminated, the Debtors, after consultation with the Consultation Parties, shall be authorized, but not required, to deem the applicable Back-Up Bid, as disclosed at the Sale Hearing, as the Successful Bid, and the Debtors, after consultation with the Consultation Parties, shall be authorized, but not required, to consummate the sale with the Back-Up Bidder submitting the next highest Bid for any Consumer Brand's Brand Assets without further order of the Court.

## H. <u>Return of Good Faith Deposit</u>

The Good Faith Deposit of any Successful Bidder (or any Back-Up Bidder that becomes a Successful Bidder) shall be applied to the Purchase Price of such Sale Transaction at Closing. Counsel to the Debtors will hold the Good Faith Deposits of the Successful Bidder(s) and the Back-Up Bidder(s) in a segregated account until the Closing of the Sale Transaction with the Successful Bidder(s).  Good Faith Deposits of all other Qualified Bidders shall be held in a segregated account, and thereafter returned to the respective Bidders following the conclusion of the Auction. If a Successful Bidder (including any Back-Up Bidder that has become the Successful Bidder) fails to consummate an approved Sale Transaction because of a breach or failure to

perform on the part of such Successful Bidder, the Debtors shall be entitled to retain such Successful Bidder's Good Faith Deposit as part of the Debtors' damages resulting from such Successful Bidder's breach or failure to perform, without prejudice to the Debtors' rights to seek additional damages from the Court as appropriate.  The retention of the Good Faith Deposit is not, and is not intended to be, liquidated damages.

**J.    Procedures Related to the Assumption and Assignment of Contracts and Leases**

As part of a Sale Transaction(s), the Debtors may assume and assign certain of their executory contracts and unexpired leases (the "Potential Assumed/Assigned Contracts") to one or more Successful Bidders (*i.e.* the Transferred Contracts).  The procedures governing the Debtors' identification of the Potential Assumed/Assigned Contracts and the non-Debtor counterparties' (the "Contract Counterparties") rights and obligations with respect to objecting to such identification, including to the assumability, assignability, or transferability of such Potential Assumed/Assigned Contracts and/or to the amounts the Debtors believe necessary to cure all monetary defaults under such Potential Assumed/Assigned Contracts pursuant to section 365 of the Bankruptcy Code, are governed by the *Order (A) Approving Procedures Related to the Assumption, Assumption and Assignment, or Transfer of Executory Contracts and Unexpired Leases; and (B) Granting Related Relief* [Docket No. ●] (the "Contract and Lease Procedures Order").[10]  **All Contract Counterparties should refer to the Contract and Lease Procedures Order, which contains the following dates and deadlines with respect to the Potential Assumed/Assigned Contracts:**

| Date[11] | Event |
|---|---|
| **October 20, 2023** | Deadline to File Contract Notice |
| **November 7, 2023 at 5:00 p.m.** | Contract Objection Deadline |

If an Assignment Objection or Cure Objection is timely filed by the Cure/Assignment Objection Deadline and cannot be resolved, to the extent such Assignment Objection or Cure Objection relates to a Transferred Contract under a Sale Transaction contemplated by these Bid Procedures, a hearing will be held (i) at the Sale Hearing or (ii) on such other date subsequent to the Sale Hearing but before the Closing Date, as the Court may designate prior to, during, or after the Sale Hearing (the "Cure/Assignment Hearing") before the Bankruptcy Court to consider the objection.

**For the avoidance of doubt, if no Assignment Objections or Cure Objections are filed or received with respect to any Potential Assumed/Assigned Contracts identified on the Cure Schedule in accordance with the Contract and Lease Procedures Order, then the Cure Amounts set forth in the Cure Schedule for such Potential Assumed/Assigned Contract will be binding upon the Contract Counterparty to such Potential Assumed/Assigned Contract for all purposes and will constitute a final determination of the Cure Amounts required to**

---

[10]    Capitalized terms used in this section but not otherwise defined herein shall have the meanings ascribed to them in the Contract and Lease Procedures Order.

[11]    All times are prevailing Eastern time.

be paid by the applicable Debtors in connection with the assumption and assignment of such **Potential Assumed/Assigned Contract.**

Upon determination of the Successful Bid(s), on or before ***December 1, 2023***, the Debtors will file a Notice of Successful Bidder with the Court.  Any Contract Counterparty to a Transferred Contract seeking additional assurance of future performance greater than that provided by the Successful Bidder(s) (the "Adequate Assurance Objection") should immediately contact Steven W. Golden (sgolden@pszjlaw.com) and the applicable Successful Bidder to attempt to resolve any Adequate Assurance Objection.  **All Adequate Assurance Objections must be filed and served on the Notice Parties and the applicable Successful Bidder no later than December 5, 2023 at 5:00 p.m. (prevailing Eastern Time)**.  To the extent the parties are unable to consensually resolve the Adequate Assurance Objection prior to Closing, the Court will set a hearing, which may be at the Sale Hearing, on the Adequate Assurance Objection to determine whether terms of the Successful Bid are compliant with section 365 of the Bankruptcy Code in providing adequate assurance of future performance to the Contract Counterparty of the applicable Transferred Contract.  The Debtors intend to cooperate with Contract Counterparties to Transferred Contracts to attempt to reconcile any Adequate Assurance Objection.

## II.    NOTICE PARTIES

As used herein, the "Notice Parties" are:

i.     counsel for the Debtors, (a) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com); and (b) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com) and Maxim B. Litvak (mlitvak@pszjlaw.com);

ii.    counsel to the DIP Lenders and the DIP Agent (collectively, the "DIP Secured Parties") and the Foris Prepetition Secured Lenders (together with the DIP Secured Parties, the "Secured Parties"), (a) Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com), and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com), and Debora Hoehne, Esq. (dhoehne@goodwinlaw.com); and (b) Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com);

iii.   counsel to the Committee, (a) White & Case LLP, 111 South Wacker Drive, Suite 5100 Chicago, Illinois 60606, Attn.: Gregory Pesce, Esq. (gregory.pesce@whitecase.com), and Andrew O'Neill, Esq. (aoneill@whitecase.com); and (b) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095; Attn: John Ramirez, Esq. (john.ramirez@whitecase.com) and Andrea Kropp, Esq. (andrea.kropp@whitecase.com); local counsel to the Committee, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801; Attn: Christopher M. Samis, Esq. (csamis@potteranderson.com), Katelin A. Morales, Esq. (kmorales@potteranderson.com), Sameen Rizvi, Esq.(srizvi@potteranderson.com);

iv.     counsel for the Ad Hoc Noteholder Group, (a) Paul Hastings LLP, 1999 Avenue of the Stars, Twenty-Seventh Floor, Century City, CA 90067, Attn.: Frank Merola, Esq. (frankmerola@paulhastings.com); (b) Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn.: John F. Storz, Esq. (johnstorz@paulhastings.com); and (c) Blank Rome, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn.: Stanley B. Tarr, Esq. (stanley.tarr@blankrome.com); and

v.      the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: John Schanne (John.Schanne@usdoj.gov).

## III.    RESERVATION OF RIGHTS AND MODIFICATIONS

Except as otherwise provided in the Bid Procedures Order or these Bid Procedures, the Debtors further reserve the right as the Debtors may reasonably determine in their discretion, after consultation with the Consultation Parties, to be in the best interest of the Debtors' estates to: (i) determine which Bidders, if any, are Qualified Bidders; (ii) determine which Bids, if any, are Qualified Bids; (iii) determine which Qualified Bid, if any, is the highest and best bid and which is the next highest and best bid; (iv) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) impose additional terms and conditions with respect to all Potential Bidders (other than the Stalking Horse Bidder); (vii) make non-material modifications to the Bid Procedures; and (viii) implement additional procedural rules with respect to the conduct of the Auction that the Debtors determine (together with the Bid Procedures, the "Auction Rules"), in their reasonable business judgment, will better promote the goals of the bidding process and are not inconsistent with any Bankruptcy Court order or any rights of the Stalking Horse Bidder under these Bid Procedures; *provided* that nothing herein shall limit any party in interest's right to file an objection with the Bankruptcy Court with respect to any Auction Rules (other than the Bid Procedures).

Notwithstanding anything to the contrary in these Bid Procedures, nothing in these Bid Procedures or the Bid Procedures Order shall require the Debtors to take any action or to refrain from taking any action related to any Sale Transaction to the extent taking or failing to take such action would be inconsistent with applicable law or the Debtors' fiduciary obligations, if any, under applicable law; *provided*, *however*, that the Debtors shall promptly provide the Consultation Parties and any Qualified Bidders with notice of such action or inaction and, to the extent any such action or inaction would constitute a material change from the Bid Procedures, the Debtors shall first seek approval from the Bankruptcy Court for such action or inaction.