UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered)<br><br>**Hearing Date: TBD Shortened Notice Requested**<br><br>**Objection Deadline: TBD Shortened Notice Requested** |

**MOTION OF THE AD HOC NOTEHOLDER GROUP FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL BANKRUPTCY RULE 2004-1 DIRECTING THE PRODUCTION OF DOCUMENTS BY THE FORIS LENDERS**

The Ad Hoc Group of Holders of 1.50% Convertible Senior Notes due 2026 (the "Ad Hoc Group" of holders of the "Convertible Notes") respectfully moves under Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), Rule 2004-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, this Court's Procedures for Discovery Disputes and Case Administration Matters, and 11 U.S.C. § 105 for entry of an order authorizing the Ad Hoc Group to seek discovery from Foris Ventures, LLC, Anesma Group, LLC, Anjo Ventures, LLC, and Muirisc, LLC (together, the "Foris Lenders"). In support of this Motion, the Ad Hoc Group respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Ad Hoc Group served a Notice of Rule 2004 Requests for Production on the

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

Foris Lenders on October 18. *See* Notice of Requests for Production, attached hereto as **Exhibit A**. Those requests are designed to investigate potential litigation claims arising out of the Debtors' directors' and officers' prepetition conduct. But within a day of service, the Foris Lenders refused outright to voluntarily comply with the requests or even engage with the Ad Hoc Group on them in detail.

2. That stonewalling is unacceptable. The discovery the Ad Hoc Group seeks is relevant and important for this Chapter 11 case. It is necessary for the Ad Hoc Group to investigate potential derivative claims to benefit the estate and assess the sweeping releases of its direct claims called for in the Plan. The Ad Hoc Group is entitled to that discovery to understand whether and how it is impaired under the Plan and what options it has in this case going forward. And each of the Foris Lenders' arguments against compliance lack merit. The Court should allow the Ad Hoc Group to issue Rule 2004 discovery requests and subpoenas *duces tecum* to the Foris Lenders requiring them to comply with a subset of the Ad Hoc Group's requests.

**FACTUAL BACKGROUND**

3. The Ad Hoc Group holds more than $450 million face value of the Convertible Notes, or over two-thirds of the outstanding amount. D.I. 579 Ex. A. The Ad Hoc Group is, by far, the largest constituency of unsecured creditors in this case. *See id*. While the Ad Hoc Group is represented indirectly on the UCC by U.S. Bank, N.A., as indenture trustee, D.I. 152, it has participated in this case directly through separate counsel since shortly after its commencement, *see* D.I. 76.

4. Holders of Convertible Notes such as the Ad Hoc Group are impaired under, and thus entitled to vote on, the Debtors' proposed plan. D.I. 523 ("Plan") at 29-30. Under the Plan, the form and the amount of the Convertible Noteholders' recoveries depends on the proceeds of the Debtors' planned asset sale. *Id*. Moreover, if the Convertible Noteholders vote to reject the

2

Plan, they may recover very little or nothing unless the proceeds from the asset sale are substantial. *See id*. But if the Convertible Noteholders vote to accept the Plan, they must accept sweeping releases that would forever release claims against, among others, Amyris, Inc. (the "Company") and its current and former directors, managers, and officers. *See id*. at 63-65. Thus, to decide whether to accept the Plan, the Ad Hoc Group needs to know whether the distribution the Convertible Noteholders stand to gain under that Plan is greater than what they might receive from the potential litigation claims the Plan seeks to release.[2]

5. To protect its interests, and to assess the Plan, the Ad Hoc Group is investigating potential claims against the Company's prepetition directors and officers. Those claims include both derivative claims on behalf of the Debtors and direct claims held by the Ad Hoc Group. Among other topics, the Ad Hoc Group is investigating: (1) whether the board and officers failed to consider, or improperly rejected, selling the same consumer brands now being slated for sale in the Plan; (2) whether the board and officers improperly caused the company to delay or forgo vital cost-cutting measures; (3) whether the board and officers improperly approved multiple pre-petition loans to the Foris Lenders; and (4) whether representations made to investors in connection with the company's "Fit to Win" cost-cutting initiative were false. The Ad Hoc Group's investigation is ongoing and may well uncover other potential causes of action.

6. As part of that investigation, the Ad Hoc Group served Rule 2004 requests for documents on the Foris Lenders on October 18, 2023 (the "Requests"). Ex. A. As relevant here, the Requests call for:

---

[2] The proposed Disclosure Statement contains a provision that could transfer the estate's claims against "Excluded Part[ies]" to a litigation trust, but it is unclear what claims would be included in such a transfer if this provision were adopted. *See* D.I. 524 at 53. But even so, the Ad Hoc Group needs to understand and value the claims to assess the propriety of the potential transfer.

3

- *Request 2:* Documents the Foris Lenders intend to use at any hearing regarding the Ad Hoc Group's standing to pursue litigation on behalf of the estate;

- *Requests 3 and 17*: Documents and communications related to any allegation of a breach of fiduciary duty or conflict of interest by one of the Debtors' officers or directors or an allegation of misconduct against the Debtors;

- *Requests 8-11*: Documents and communications related to a potential pre-petition sale by the Company of the Biossance, JVN, Rose, Inc., and Menolabs brands;

- *Request 16*: Documents and communications relating to forbearance agreements with the Debtors; and

- *Requests 19-23*: Communications between John Doerr and specific directors and officers of the Company, including John Melo, Han Kieftenbeld, M. Freddie Reiss, Nicole Kelsey, and Doris Choi.

Ex. A at 7-9. The Ad Hoc Group seeks only prepetition documents responsive to these Requests. The Ad Hoc Group has proposed to narrow Requests 19-23 to communications relating to any potential sale of strategic assets such as the Biossance, JVN, Rose, Inc, or Menolabs brands.

7. The Foris Lenders immediately made clear that they would not comply with those requests. Counsel for the Ad Hoc Group and for the Foris Lenders met and conferred on October 19, 2023. During that meet and confer, the Foris Lenders agreed to produce the same documents to the Ad Hoc Group which they would produce to the UCC. But the Foris Lenders refused even to discuss the Ad Hoc Group's separate Requests in detail, let alone produce documents.

8. The Ad Hoc Group then confirmed the Foris Lenders' stonewalling in an email exchange. *See* Email Correspondence dated October 20, 2023, attached hereto as **Exhibit B**. In that exchange, the Foris Lenders again refused to produce any documents, arguing that: (1) the Requests are beyond the scope of Rule 2004 discovery; (2) the UCC is the only party with potential standing to bring derivative claims; (3) the Requests were served too close to the current October 25 challenge period deadline for the Ad Hoc Group to seek standing for certain derivative claims;

4

(4) the Requests were served too late; and (5) the Requests are overbroad and unduly burdensome.[3] This motion to followed.

## ARGUMENT

I. **THE COURT SHOULD PERMIT DISCOVERY FROM THE FORIS LENDERS**

9. Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity," including third parties such as the Foris Lenders with knowledge of conduct affecting the bankruptcy estate. Fed. R. Bankr. P. 2004(a); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (quotation omitted). The party seeking Rule 2004 discovery must show good cause. *Millennium Lab Holdings,* 562 B.R. at 627.

10. Good cause exists here. The Ad Hoc Group is entitled to investigate whether the estate has valuable causes of action which, under the Plan, might be released. That is not, as the Foris Lenders claim, "procedurally improper," Ex. B at 2; it is a core function of Rule 2004. The Foris Lenders' speculation about whether the Ad Hoc Group would have standing to bring claims down the road is not a reason to prevent discovery into what claims might exist. The Requests are timely. And the Foris Lenders' arguments about overbreadth and burden are wrong.

A. **The Requests Are Proper Under Rule 2004**

11. The scope of Rule 2004 discovery is broad. Any discovery relating to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate" is proper. Fed. R. Bankr. P. 2004(b). Legitimate purposes for discovery include "discovering assets, examining transactions, and determining whether wrongdoing has occurred." *Millennium Lab Holdings*, 562 B.R. at 626, 627.

---

[3] The Ad Hoc Group later offered to narrow Requests 19-23 to include only communications relating to any potential sale of strategic assets such as the Biossance, JVN, Rose, Inc, or Menolabs brands, but the parties were not able to reach agreement.

Specifically, courts have long recognized that Rule 2004 may be used to determine whether "claims beneficial to the estate exist." *In re Recoton Corp.*, 307 B.R. 751, 755-56 (Bankr. S.D.N.Y. 2004); *see also Millennium Lab Holdings*, 562 B.R. at 627 (Rule 2004 permits investigating claims that could benefit the estate); *In re Gawker Media LLC*, No. 16-11700, 2017 WL 2804870, at *6 (Bankr. S.D.N.Y. June 28, 2017) (similar). Rule 2004 also allows discovery into "any other matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(b).

12. These principles entitle the Ad Hoc Group to seek Rule 2004 discovery. As an impaired class of unsecured creditors, the Convertible Noteholders have a direct stake in uncovering causes of action that may provide value to the estate. They also have a direct stake in understanding whether the Plan will release valuable direct claims that they may otherwise be able to bring. They should not be forced to decide whether to accept or reject the Plan without even knowing what they might be giving up. To make that decision, the Ad Hoc Group is entitled to discovery to assess what litigation claims they and the estate might have.

13. The Requests are squarely targeted at those litigation claims. Other than a boilerplate assertion that the claims are "irrelevant in many instances as to [them]," Ex. B. at 2, the Foris Lenders have never actually denied that the Requests are relevant to potential causes of action. Those Requests cover allegations of possible breaches of fiduciary duty, conflicts of interest, or other misconduct (#3 and #17); potential pre-petition sales that could have helped the Company avoid bankruptcy and increase the value recovered for unsecured creditors (#8-11); and communications between key directors and officers that might bear on potential claims (#19-23). *See* Ex. A. at 7-9. Each of those Requests may well uncover wrongdoing.

6

14. More to the point, the Ad Hoc Group *does not know yet what claims may exist*. That is what Rule 2004 discovery is for. Even if, unlike here, Rule 2004 requests are a "fishing expedition" or an "inquisition," that is no reason to deny them under the Rule's "broad and unfettered" scope. *Millennium Lab Holdings*, 562 B.R. at 626. The Requests are targeted at one of the Rule's core purposes – to investigate claims the Ad Hoc Group suspects exist, without having to first prove that those claims have merit. *In re Recoton Corp.*, 307 B.R. at 755-56; *Millennium Lab Holdings*, 562 B.R. at 627; *In re Wash. Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) ("determining whether wrongdoing occurred" is a "[l]egitimate goal[ ]" of Rule 2004 discovery).

15. The Foris Lenders argue that Rule 2004 requests cannot be used to "obtain pre-litigation discovery for non-derivative claims against non-debtors." Ex. B. at 2. That argument ignores that the Requests also seek discovery for potential *derivative* claims. And for the direct claims the Ad Hoc Group may have, this argument misses the point. The Ad Hoc Group needs to decide whether to accept a Plan that will release whatever direct claims it may have against a sweeping range of possible defendants. There is no way the Ad Hoc Group can make that decision without discovery into what those claims might be. The Ad Hoc Group is entitled at least to investigate direct claims before deciding how to vote on, and whether to object to, the Plan.

B. **The Ad Hoc Group Is Eligible for Derivative Standing**

16. In meeting and conferring, the Foris Lenders also argued that, even if derivative claims exist, the Ad Hoc Group would lack standing to pursue those claims. That argument is both baseless and premature.

17. The Third Circuit has made clear that bankruptcy courts can grant both creditor committees **and** creditors derivative standing to sue. *Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003). While the

movant in *Cybergenics* was a creditor's committee, the court's reasoning and the sources of law it evaluated – including the Bankruptcy Code, pre-Code practices, and the policy goals of derivative standing – all support derivative standing for **both** creditor committees **and** creditors. *Id.* at 580. The court thus consistently described how a "***creditor or committee***" could have standing. *See, e.g., id.* at 576 (emphasis added). In fact, the court explicitly noted that several sources of law provide more support for creditors' standing to sue than a committee's:

- It noted that Section 503(b)(3)(B) of the Bankruptcy Code provides payment of expenses to "***creditors***," not "creditors' committees," that pursue derivative claims, *id.* at 564-65 (emphasis added);

- It found a "compelling" pre-Code tradition of conferring "derivative standing upon ***creditors***," *id.* at 569 (emphasis added); and

- It placed "great weight" on the 1978 version of the "authoritative" treatise, *Collier on Bankruptcy*, which references ***creditors'*** ability to sue on behalf of the estate in "six different volumes," *id.* at 570.

The court also twice favorably cited a Seventh Circuit case holding that ***a creditor*** may obtain the permission of the bankruptcy court to bring an action on behalf of a bankruptcy estate. *Id.* at 561, 566-67 (citing *Fogel v. Zell*, 221 F.3d 955, 965-66 (7th Cir. 2000)).[4]

18.  The District of Delaware has applied *Cybergenics* to grant derivative standing to creditors. *In re Yes! Ent. Corp.*, 316 B.R. 141, 145 (D. Del. 2004). The court noted that while *Cybergenics* specifically discussed creditor committees, not creditors, its reasoning applies to creditors, too. *Id.* Together, *Cybergenics* and *Yes! Entertainment Corp.* preclude any argument by the Foris Lenders that only the UCC, and not the Ad Hoc Group, can have standing to sue.[5]

---

[4] The Third and Seventh Circuits are not outliers. At least two other circuits have held that creditors, not just committees, can have derivative standing. *See, e.g., In re Racing Servs., Inc.*, 540 F.3d 892, 898 (8th Cir. 2008); *In re Gibson Grp., Inc.*, 66 F.3d 1436, 1446 (6th Cir. 1995).

[5] The Foris Lenders may argue, as they have before, that *In re Yes!* should be confined to its facts because the creditor seeking standing was a DIP lender and the trustee ultimately supported its

8

19. The Foris Lenders' standing argument also ignores context. The Ad Hoc Group does not know yet what derivative claims, if any, the UCC may try to bring. It is not at all clear yet whether the UCC's decisions on that issue will align with the Ad Hoc Group's interests. As the largest constituency of unsecured creditors, the Ad Hoc Group cannot rely solely on the UCC to assess and, if necessary, enforce its rights. *Cybergenics* and *Yes! Entertainment Corp.* protect those rights by ensuring that the Ad Hoc Group may seek standing on its own if need be.

20. In any event, the Foris Lenders' standing argument is premature. The Ad Hoc Group has not yet brought any derivative claims. To evaluate derivative standing, courts ask whether (1) the trustee has unjustifiably refused to pursue a claim, (2) the moving party has alleged colorable claims, and (3) the moving party has received leave to sue from the bankruptcy court. *See In re Pursuit Cap. Mgmt., LLC*, 595 B.R. 631, 664 (Bankr. D. Del. 2018). There is no point in trying to decide, in the abstract, whether the Ad Hoc Group satisfies those factors for any given claim without knowing what that claim might be. Should the Ad Hoc Group decide to seek standing to bring estate claims, it will make that showing in a motion for standing to this Court. Any arguments against standing by the Foris Lenders should be deferred until that point.

C. **The Requests Are Timely**

21. The Foris Lenders have also claimed that the looming October 25, 2023 Challenge Period Termination Date in the Final DIP Order renders the Requests untimely. Ex. B. at 2. That argument, too, is incorrect. The Challenge Period does not cover all possible derivative claims the Ad Hoc Group might seek to bring. Rather, it applies only to claims which seek to avoid or

---

claim. *See* D.I. 549 at 2 n.5. But the brief decision in *In re Yes!* did not rely on these or any other facts specific to the creditor to grant standing. Rather, the court simply noted that the Third Circuit's intervening decision in *Cybergenics* clarified the law, and it then found that the elements for derivative standing were met. *See In re Yes! Ent. Corp.*, 316 B.R. at 145. That the trustee ultimately supported the claims simply confirmed that its prior refusal was unjustified.

challenge (1) the validity of the Foris Prepetition Secured Loans, (2) the priority of the Foris Lenders, or (3) the validity of the Foris Prepetition Obligations, or suits which assert one of several kinds of claims against the Foris Lenders.  Final DIP Order at 42.

22.     The Final DIP Order's Challenge Period thus does not apply to the claims the Ad Hoc Group is investigating – derivative claims against the Company's directors and officers in their capacity as such.  It would make no sense for the Final DIP Order to have released such claims, because the Plan already proposes to release those claims.  *See* D.I. 525-3 at 7, 11.  Subjecting claims against those entities to the Challenge Period Termination Date would provide the Company with non-consensual releases from creditors and other parties without adequate notice or investigation.  The Foris Lenders should not be allowed to sandbag stakeholders in that way.

23.     In proper context, the Ad Hoc Group's discovery is more than timely.  The Proposed Plan was not filed until October 13, D.I. 525, and the Requests were served five days later, on October 18.  The Final DIP Order provides for confirmation of a plan by January 31, 2024.  D.I. 517-1 at 3.  There is ample time for the Ad Hoc Group to investigate the claims, bring any motion for standing, and decide whether to accept the Plan in that period.

24.     In addition, discovery in this case has only just begun.  The UCC served discovery requests on the Debtors on September 18, a month before the Ad Hoc Group's Requests.  D.I. 522 at 2.  But the Debtors refused to meaningfully respond to the UCC's requests for weeks.  By October 12 – 6 days before service of the Ad Hoc Group's Requests – the debtors had produced no emails and only 1,000 documents, many of which were nonresponsive.  *Id*. at 3.  Even as of the date of this motion, the Debtors have produced only 6,024 documents, and the Foris Lenders have produced only 408 documents, in response to the UCC's discovery requests.  The Ad Hoc Group's

Requests were served just as the parties began making substantive exchanges of discovery for the first time.

25. Nor are the UCC and the Ad Hoc Group somehow behind schedule. The Debtors have not even reported finishing their own internal investigation into directors' and officers' prepetition conduct. Nor have the Debtors revealed any details about possible direct claims in their proposed disclosure statement for the Plan. It makes little sense to claim that the Ad Hoc Group has somehow delayed when other stakeholders are proceeding at the same pace. To the contrary, the lack of transparency so far about potential litigation claims warrants the Ad Hoc Group's investigation at this stage of the case.

26. In any event, the Foris Lenders have not claimed any possible prejudice from the timing of the Requests. They cannot. The Foris Lenders can produce any responsive documents to the Ad Hoc Group's requests on the same schedule that they are responding to the UCC's and other parties' requests. If anything, that overlapping schedule will make it *easier* for the Foris Lenders to produce documents by allowing them to avoid repetitive or overlapping productions. By contrast, the Ad Hoc Group will be obviously prejudiced if it cannot seek any independent discovery into potential litigation claims. The balance of harms weighs heavily towards allowing the Ad Hoc Group to serve these document requests.

D. **The Foris Lenders' Burden and Overbreadth Arguments Lack Merit**

27. Finally, the Foris Lenders seek to avoid discovery with a conclusory argument that the Requests are overbroad and burdensome. Ex. B at 2. That argument, too, should be rejected.

28. The Foris Lenders have given zero proof that the requests would be unreasonably burdensome. They have done no searches reflecting the Requests and provided no hit counts showing that the requests call for reviewing too many documents. And they certainly have not shown that the purported burden of complying with this discovery outweighs its value to the Ad

11

Hoc Group – and to the estate as a whole – of helping assess what litigation claims there might be. Given the broad, unfettered scope of Rule 2004 discovery, *Millennium Lab Holdings*, 562 B.R. at 626, the Foris Lenders cannot avoid their obligations based on their say-so alone, *see In re Roman Cath. Church of Diocese of Gallup*, 513 B.R. 761, 767 (Bankr. D.N.M. 2014) ("[T]he target of Rule 2004 discovery . . . has the burden of showing that the burden is in fact undue.").

29. There is strong reason to think that any burden will be minimal. The Foris Lenders are already reviewing and producing documents in response to discovery requests from the UCC. Those documents may well overlap with the documents called for by the Ad Hoc Group's Requests. In addition, the Debtors and the Foris Lenders may well have to produce these documents in any event should there be an objection to the releases in the Plan. The more efficient path forward is for the Foris Lenders to produce these documents now so that the Ad Hoc Group can decide what claims to bring and how to respond to the Plan.

30. The Foris Lenders may argue that the Requests are burdensome because the Ad Hoc Group is represented indirectly on the UCC and because the Ad Hoc Group will receive the same productions as the UCC. Any argument along those lines would be baseless. As a separate party in interest, the Ad Hoc Group is entitled to seek discovery in its own right. *See* Fed. R. Bankr. P. 2004(a). Nor is the Ad Hoc Group required to accept the materials produced by the Debtors or the Foris Parties and forgo the ability to seek documents on its own. *See Millennium Lab Holdings*, 562 B.R. at 627-28. Those materials have just been received, and the Ad Hoc Group will need to review and analyze them to understand what further discovery may be appropriate.

31. At a minimum, the Foris Lenders' arguments are premature. The Ad Hoc Group remains ready to meet and confer with the Foris Lenders over its document requests. So far, the Foris Lenders have refused to engage in any detail over their purported burden and overbreadth

12

concerns. But the Ad Hoc Group has nevertheless already narrowed its requests in response to the documents it has received so far. If the Court declines to require immediate compliance with the Requests, it should direct the parties to meet and confer to resolve any differences. *See Millennium Lab Holdings*, 562 B.R. at 628 (compelling compliance with requests, but "defer[ring] on ruling on the breadth of the specific requests until the parties meet and confer").

### CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1

32. As described in paragraphs 7-8 above, the Ad Hoc Group met and conferred with the Foris Lenders on October 19, 2023, regarding the documents the Ad Hoc Group is requesting pursuant to this Motion. The parties have agreed that they are at an impasse. Accordingly, counsel for the Ad Hoc Group certifies that the Ad Hoc Group has complied with Local Rule 2004-1.

### NOTICE

33. Notice of this Rule 2004 Motion will be provided by electronic mail or overnight delivery to the to the following parties, or, in lieu thereof, their counsel, if known: (a) the Office of the U.S. Trustee for the District of Delaware; (b) counsel to the Committee; (c) counsel to the DIP Lenders, DIP Agent, and the Foris Prepetition Secured Lenders; and (d) any party that requests service pursuant to Bankruptcy Rule 2002. The Ad Hoc Group submits that no other or further notice need be provided.

### NO PRIOR REQUEST

34. No prior request has been made for the relief sought in this motion.

### CONCLUSION

35. Accordingly, the Court should enter an order, substantially in the form attached hereto as **Exhibit D**, permitting the Ad Hoc Group to serve a subpoena, substantially in the form attached hereto as **Exhibit C**, containing document requests for Rule 2004 discovery on the Foris

Lenders, specifically, Requests 2, 3, 8-11, 16, 17, and 19-23 for the time period from January 1, 2022 to the petition date.

Dated: October 24, 2023

**BLANK ROME LLP**

*/s/ Stanley B. Tarr*
Stanley B. Tarr (DE No. 5535)
Lawrence R. Thomas III (DE No. 6935)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
Tel.: (302) 425-6400
Fax: (302) 425-6464
stanley.tarr@blankrome.com
lorenzo.thomas@blankrome.com

**MOLOLAMKEN LLP**
Steven F. Molo
Justin M. Ellis
Sara E. Margolis
Mark W. Kelley
Catherine Martinez
430 Park Avenue
New York, NY 10022
Tel.: (212) 607-8160
smolo@mololamken.com
jellis@mololamken.com
smargolis@mololamken.com
mkelley@mololamken.com
cmartinez@mololamken.com

*Counsel to the Ad Hoc Noteholder Group*