**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

### THE AD HOC NOTEHOLDER GROUP'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO THE FORIS PREPETITION SECURED LENDERS

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and Rule 2004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware, the Ad Hoc Noteholder Group submits these requests for the production of documents to Foris Ventures, LLC, Anesma Group, LLC, Anjo Ventures, LLC, and Muirisc, LLC (together, the "Foris Prepetition Secured Lenders"). The Ad Hoc Noteholder Group requests that the Foris Prepetition Secured Lenders produce the documents and information requested by delivering the same to Justin M. Ellis, MoloLamken, LLP, 430 Park Avenue, New York, NY 10022, counsel for the Ad Hoc Noteholder Group, on a rolling basis beginning no later than November 14, 2023.

### DEFINITIONS

1. The term "all documents" means any and all documents that might reasonably be located through a search of all locations reasonably likely to contain documents called for by these Requests.

2. The term "all" means "any and all."

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

3. The terms "and" and "or" are to be construed either disjunctively or conjunctively, whichever is appropriate in each instance so as to bring within the scope of each of these Definitions, Instructions, and Requests any information that might otherwise be considered beyond that scope.

4. The term "Anesma" means Anesma Group, LLC, as described in paragraph 42 of the First Day Declaration.

5. The term "Anjo" means Anjo Ventures, LLC, as described in paragraph 42 of the First Day Declaration.

6. The term "any" means "any and all."

7. The term "Board" means the board of directors of Amyris, Inc.

8. The term "Board Member" means any member of the Board.

9. The terms "communication" and "communications" means any transmission of information, ideas, facts, data, proposals, or any other matter by one or more persons and/or between two or more persons by any means, including telephone conversations, letters, telegrams, teletypes, telexes, telecopies, electronic mail, text messages, instant messages or chat applications, cloud-based document management systems, other computer link-ups, written memoranda, and face-to-face conversations.

10. The term "Debtors" means any or all of the debtors and debtors-in-possession in the above-captioned Chapter 11 Cases, as well as their advisors, agents, attorneys, accountants, consultants, officers, directors, employees, experts, investment bankers, representatives, and other persons acting, or who have acted, on behalf of the Debtors.

11. The terms "document" or "documents" are to be given meaning in the broadest sense, and shall include any kind of written, recorded, printed, or graphic matter, whether

produced, reproduced, or stored on paper, cards, film, audio or video tapes, electronic facsimile, computer storage device, or any other media of any kind or description, whether sent or received or neither, including without limitation: originals, copies (with or without notes or changes therein) and drafts, and including without limitation: papers, books, letters, electronic mail messages, electronic files or data, photographs, objects, tangible things, correspondence, telegrams, cables, telex messages, memoranda, notes, notations, work papers, transcripts, minutes, reports and recordings of telephone or other conversations, or of interviews, conferences, or other meetings, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, journals, newspaper accounts, statistical records, desk calendars, appointment books, diaries, lists, tabulations, summaries, sound recordings, computer printouts, data processing input and output, microfilms, all other records kept by electronic, photographic, or mechanical means, and things similar to the foregoing however denominated by You, in Your possession, custody, or control.  For purposes of the foregoing, "drafts" means any earlier, preliminary, preparatory, or tentative version of all or part of a document, whether or not such draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final document; and the term "copies" means all copies of any documents that are not identical in every respect to the documents being produced.

12. The term "DSM" means Koninklijke DSM N.V. and its affiliates that are counterparties to any contracts or agreements with the Debtors.

13. The term "Foris" means Foris Ventures, LLC.

14. The term "including" means "including but not limited to."

15. The term "Muirisc" means Muirisc, LLC, as described in paragraph 42 of the First Day Declaration.

16. The term "Pachulski" means the law firm Pachulski Stang Ziehl & Jones, and any of its advisors, agents, attorneys, employees, experts, partners, representatives, and other persons acting, or who have acted, on behalf of Pachulski.

17. The term "person" means the plural as well as the singular and shall include any natural person (alive or deceased), any firm, corporation, proprietorship, joint venture, trust or estate, business, association, partnership, or other form of legal entity, unless the context indicates otherwise.

18. The term "possession" means all information or documents within Your actual or constructive knowledge, custody, or control, including the knowledge, custody, or control of any employee, consultant, aide, other representative (including, without limitation, attorneys and accountants), or any other person acting or purporting to act on Your behalf or in concert with You, and includes any temporary placing of possession, custody, or control in any third party by any of the foregoing persons.

19. The term "PWC" means PricewaterhouseCoopers, as described in paragraph 60 of the First Day Declaration.

20. The terms "related to" and "relating to" mean constituting, containing, embodying, comprising, reflecting, identifying, stating, referring to, dealing with, commenting on, responding to, describing, analyzing, or in any way pertaining to.

21. The terms "You" or "Your" mean the Foris Prepetition Secured Lenders.

**INSTRUCTIONS**

1. Wherever possible or necessary to render a given Request for Production more inclusive than it otherwise might be, any verb tense should be construed to include other tenses; and any reference to one gender should be construed to include the other.

2. Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as in each case is most appropriate and inclusive.

3. If any term in these Instructions or a Request for Production is specifically defined in the Definitions, that term shall be construed in accordance with that definition.

4. Each Request for Production is to be read, construed, and responded to separately and independently without reference to or being limited by any other Request for Production.

5. In responding to these Requests, furnish all documents available to You, including documents in the possession of Your attorneys, agents, accountants, bankers, advisors, and all persons acting or purporting to act on Your behalf, and not merely such documents known to You of Your direct or personal knowledge. If You cannot respond to any of these Requests in full after exercising due diligence to secure the information, You are required to so state and answer to the extent possible, specifying Your inability to respond to the remainder, and why You are unable to respond thereto.

6. In the event that any document called for by these Requests has been destroyed or discarded, that document is to be identified as follows:

- each addressor and addressee;
- each indicated or blind copy;
- the document's date, subject matter, number of pages, and attachments or appendices;
- all persons to whom the document was distributed, shown, or explained;
- its date of destruction or discard, manner of destruction or discard, and reason for discard or destruction; and
- the person who authorized such destruction or discard.

7.  If any documents responsive to these Requests are withheld from production, furnish a list of all such documents withheld. Such list should contain a complete identification of each such document (as defined in these Instructions or in the Definitions herein) and a statement of the ground or grounds upon which it is being withheld, stated in sufficient detail to permit a ruling on the validity of the withholding.

8.  For any documents withheld from production in whole or in part on a claim of attorney-client privilege, attorney work product, common interest doctrine, or any other claim of privilege, provide a written privilege log setting forth sufficient information to permit a full determination of whether the claim of privilege is valid, including at a minimum:

- an identification of each communication or document embodying the allegedly protected information by author, date, and title;
- the identity of any person or persons from and to whom the information has been communicated;
- a brief description of the subject matter of the information; and
- the legal and factual ground or grounds upon which You rely in withholding the information in sufficient detail so that the Court may make a determination on Your claim of privilege.

9.  If no documents are responsive to a particular request, state that no responsive documents exist. The documents produced in response to the Requests shall be produced as they are kept in the ordinary course of business and shall be organized so that the Ad Hoc Noteholder Group can ascertain the files in which they were located, their relative order in such files, and how such files were maintained. By way of example, a document that is part of a file, docket, or other grouping should be physically produced together with all other documents from said file,

document, or grouping, in the same order or manner of arrangement as the original. By way of further example, documents stored in electronic format shall be produced in a medium that preserves the original file structure where the document resided and shall be produced with sufficient metadata to indicate the original file structure. Documents stored in electronic format shall be produced in their native format unless otherwise agreed by the parties.

10. Unless otherwise specified, the relevant time period for each Request is the time period from January 1, 2022 through August 9, 2023.

11. These Requests shall be deemed continuing. Accordingly, promptly produce any additional documents that become available to You, or to any of Your employees, officers, principals, attorneys, agents, or other representatives, after the date of Your initial production.

**REQUESTS FOR PRODUCTION**

1. All documents and communications You intend to use at any hearing regarding whether the Ad Hoc Noteholder Group or any other party in interest should have standing to pursue litigation on behalf of the estate.

2. All documents and communications concerning any allegation, investigation, discussion, or finding of accounting irregularities or misconduct against the Debtors or any officer or director of the Debtors.

3. All documents and communications relating to any proposed, potential, or contemplated sale of Biossance.

4. All documents and communications relating to any proposed, potential, or contemplated sale of JVN.

5. All documents and communications relating to any proposed, potential, or contemplated sale of Rose Inc.

6. All documents and communications relating to any proposed, potential, or contemplated sale of Menolabs.

7. All documents and communications relating to any forbearance agreement with the Debtors.

8. All documents and communications relating to an allegation of a conflict of interest, breach of fiduciary duty, or any other wrongful act by any officer or director of the Debtors.

9. All communications between John Doerr and Han Kieftenbeld.

10. All communications between John Doerr and John Melo.

11. All communications between John Doerr and M Freddie Reiss.

12. All nonprivileged communications between John Doerr and Nicole Kelsey.

13. All nonprivileged communications between John Doerr and Doris Choi.