# EXHIBIT B

**Bench Ruling**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: | . Chapter 11 . |
|  | . Case No. 23-11131(TMH) |
| AMYRIS, INC., et al, | . . |
|  | . 824 Market Street |
|  | . Wilmington, Delaware 19801 |
| Debtors. | . |
| . . . . . . . . . . . . . . . . | Wednesday, October 11, 2023 |

TRANSCRIPT OF HEARING RE:
RULING ON MOTION OF THE DEBTORS FOR INTERIM AND FINAL ORDERS
(I) TO OBTAIN POST-PETITION FINANCING AND (B) TO UTILIZE CASH
COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION
SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV)
SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF
BEFORE THE HONORABLE THOMAS M. HORAN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES VIA ZOOM:   (On the Record)

For the Debtors:            James E. O'Neill, Esq.
                            PACHULSKI, STANG, ZIEHL
                             & JONES, LLP
                            919 North Market Street
                            17th Floor
                            Wilmington, Delaware 19899

For the Ad Hoc Convertible
Notes Committee:            Frank Merola, Esq.
                            PAUL HASTINGS, LLP
                            1999 Avenue of the Stars
                            27th Floor
                            Century City, California 90067

(Appearances Continued)

Audio Operator:             Electronically Recorded
                            by Nolley Rainey, ECRO

Transcription Company:      Reliable
                            1007 N. Orange Street
                            Wilmington, Delaware 19801
                            (302)654-8080
                            Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES VIA ZOOM CONTINUED:    (On the Record)

```
For the Foris Prepetition
Secured Lenders and DIP
Secured Parties:              Alexander J. Nicas, Esq.
                              GOODWIN PROCTER, LLP
                              The New York Times Building
                              620 Eighth Avenue
                              New York, New York 10018
```

1    (Proceedings commence at 12:30 p.m.)

2    THE COURT: Okay. Good afternoon, Counsel. This

3    is Judge Horan. We're on the record in Amyris.

4    We're here today for my ruling on the debtors'

5    request for entry of a final order approving DIP financing.

6    I have a question for Mr. O'Neill, if he's on the

7    line.

8    MR. O'NEILL: Your Honor, do you need James

9    O'Neill? Yes, I am here.

10   THE COURT: Okay. Good to see you, Mr. O'Neill.

11   MR. O'NEILL: Thank you, sir.

12   THE COURT: I understand --

13   MR. O'NEILL: You, too.

14   THE COURT: -- that, in the past few moments -- or

15   few minutes, the debtors have filed a revised form of

16   proposed order.

17   MR. O'NEILL: Yes, Your Honor, that's correct. We

18   filed it under a notice just after twelve o'clock today.

19   THE COURT: Okay. I have not had the opportunity

20   to review it. Are any of the revisions germane to what I may

21   be -- what I plan to decide right now?

22   MR. O'NEILL: Your Honor, we would modify what we

23   have filed to make sure that it comports with your decision.

24   We wanted to give you the lay of the land, the way things

25   were as of the moment. We reached certain agreements with

1    the official committee, those are reflected in the order, so
2    it's the most up-to-date version that we had prior to Your
3    Honor's ruling.  So we anticipate that we would need to
4    revise, should the Court so direct us.
5            I also see that Mr. Nicas is on.  He can also
6    provide the Court with an update if I have not fully stated
7    the correct position with respect to the order.
8            MR. NICAS:  Happy to help, Your Honor, if you so
9    please.
10           THE COURT:  Yes.  Good morning -- or good
11   afternoon, Mr. Nicas.
12           MR. NICAS:  Alexander Nicas, Goodwin Procter, on
13   behalf of the DIP lender and the Foris pre-petition secured
14   lenders.
15           Mr. O'Neill accurately characterized the filing of
16   the revised proposed order.  We've reached an agreement with
17   the committee on an extension of the challenge period and an
18   increase of their carveout, which were the two issues that
19   Mr. O'Neill raised at the October 4th hearings, so we wanted
20   to make sure Your Honor was aware of that.
21           There may be parties who have -- including the ad
22   hoc noteholder group, who may have issues with the revised
23   proposed order that we filed and we made clear in the notice
24   that only the committee has signed off on the order.  But we
25   wanted to make sure Your Honor was aware of those changes,

1  given that the committee raised them at the prior hearing.

2  THE COURT: Okay. Okay. I appreciate that. I
3  understand.

4  Okay. I am ready to proceed to my ruling.

5  As I said, we're here today for my ruling on the
6  debtors' proposed -- or request for entry of a final order
7  approving DIP financing. Lavvan has objected. And for the
8  reasons that I'm about to describe, I'm going to overrule
9  Lavvan's objection and grant approval, final approval of DIP
10 financing.

11 On September 14, 2023, I conducted an initial
12 hearing on final consideration of DIP financing and I
13 concluded that the parties would need to develop a full
14 record for me to decide the issues that were being presented.

15 On September 19th, I entered an order in which we
16 defined the issues for the parties to present and I set a
17 schedule for discovery, briefing, and a final hearing.

18 On October 4th, 2023, the Court held an evidentiary
19 hearing to determine the issues presented.

20 And of the topics that were defined, there were
21 really two that I found to be dispositive for my ruling
22 today:

23 The first was whether the 2018 Foris loan and
24 security agreement had been extinguished, as Lavvan proposed,
25 in language contained in an Amyris 10-K for the fiscal year

1  of 2020.

2  And the second issue is whether Lavvan waived
3  adequate protection under the subordination agreement.

4  On June 29, 2018, Amyris and GACP Finance Company
5  entered into a loan and security agreement.  And under that
6  agreement, Amyris borrowed an original principal amount of
7  $36 million.

8  On April 15, 2019, the assigned -- the agreement
9  with GACP was assigned to Foris Ventures with Foris standing
10 in the shoes of GACP.

11 On August 14th, 2019, Foris and Amyris entered into
12 Amendment Number 5 of the LSA, increasing the principal
13 amount owed to $71 million.

14 Following another ten-million-dollar advancement,
15 Foris and Amyris entered into the amended and restated loan
16 and security agreement with a principal owed of $81 million.

17 On November 17, 2019, an additional ten-million-
18 dollar advance brought the principal owed to $91 million.

19 And then, in January of 2020, Foris and Amyris
20 entered into a partial debt equitization transaction that
21 reduced the principal amount owed to $50,041,000 in exchange
22 for equity and the principal of the loan remains at this
23 amount.

24 Foris effectuated the aforementioned changes in
25 principal through several contract provisions.  The LSA

1  included a provision allowing for a thirty-five-million-

2  dollar increase of principal.  But following the amendment to

3  the Foris LSA, it allowed for new loan commitments in, quote,

4  "an aggregate amount in excess of the maximum term loan."

5  　　　　　At the September 14, 2023 hearing, Lavvan presented

6  Amyris' Form 10-K for the fiscal year of 2020, which was

7  dated March 5, 2021, and it discussed the possible

8  "extinguishment," is the term used, of debt owed under the

9  Foris LSA.  Lavvan contends that there may have been a legal

10 extinguishment of the debt under the Foris LSA that would

11 result in the inapplicability, therefore, of the

12 subordination agreement.

13 　　　　　At the evidentiary hearing that I held last week,

14 the debtors presented expert testimony of Theodore Martens

15 and entered his report into evidence.  Mr. Martens was

16 qualified as a CPA in 1981, and has over 40 years of

17 accounting experience in both the public and private sector,

18 including service as an expert witness in over 50 cases.

19 　　　　　His testimony focused on the issue of whether

20 Foris' 10-K filing indicated that there had been a legal

21 extinguishment of the debt owed by Amyris to Foris, such that

22 the LSA would no longer be in effect and there would be no

23 debt owed under the LSA.

24 　　　　　In response, Lavvan presented the expert testimony

25 of Michael Gaul and introduced his report as evidence.  Mr.

1  Gaul provided testimony as an expert on operational
2  assessment on his career and qualifications as a certified
3  turnaround professional and certified fraud examiner.
4      As a rebuttal witness, Mr. Gaul reported that he
5  believed that a series of transactions regarding the
6  principal in the Foris LSA constituted what he called a
7  "complex and unusual set of transactions" that resulted in
8  the extinguishment of the Foris LSA.  However, Mr. Gaul also
9  testified that none of the transaction that he identified as
10 combining to be complex and unusual were in and of themselves
11 unusual transactions.  But Mr. Gaul reported that, in his
12 belief, the series of transactions, the Foris LSA created an
13 entirely new debt instrument.
14     I find Mr. Martens' report and testimony
15 convincing.  As described by Mr. Martens, the extinguishment
16 accounting is a form of accounting treatment applied to debt
17 and the lender of the debt is the same and the change in the
18 debt terms is substantial.  The accounting treatment records
19 a gain or loss against the original debt and an interest
20 expense on the new debt.  The Form 10-K filing presents this
21 precise issue.  When accounting for the treatment of the
22 debt, Amyris contemplated modification of extinguishment
23 treatment of the debt.
24     It is important to recognize that, in cases of an
25 extinguishment assessment, the legal liability of the debtor

to the creditor remains unchanged. And here, no legal change to the liability owed by Amyris to Foris occurred.

The LSA, which was assigned by GACP to Foris, resulted in a change of principal over time. After the debt equitization transactions, the principal settled at $50,041,000. The Foris LSA requires a full cash payment of the principal for the debt to be completely satisfied or legally extinguished, as opposed to extinguished from an accounting perspective.

Amyris has not provided a cash payment to reduce the principal since its inception. And as the Foris LSA maintains outstanding principal, no extinguishment of the debt has occurred. Accordingly, the Foris LSA remains in effect.

Next, I'll focus on the question of whether Lavvan waived adequate protection under the May 2019 subordination agreement.

The subordination agreement relates to the loan and security agreement and subsequent assignment to Foris. Under the subordination agreement, Lavvan agreed to subordinate its claim to Foris until the Foris LSA was paid in full, in cash. Lavvan agreed to subordinate its liens without any terms limiting the total debt allowable under the Foris LSA or any limits on amendment to the Foris LSA.

The original GACP agreement contemplated a thirty-

five-million-dollar increase in debt on top of the original principal. Subsequently, the Foris LSA included express language allowing for a new loan commitment without a limit. The subordination agreement contains explicit provisions allowing for the addition of debt under the Foris LSA and the right to amend its terms.

The subordination agreement remains effective in connection with the Foris LSA. If the Foris LSA has remaining principal, then Lavvan has agreed to have its lien subordinated to the principal of the Foris LSA. And as noted above, the Foris LSA has not been extinguished. There are remaining principal obligations of $50,041,000. Until payment in full of the Foris LSA occurs, the subordination agreement remains in effect.

Lavvan asserts two principal arguments regarding the application of the subordination agreement. First, Lavvan argues that, while they agreed not to assert the right of adequate protection, that agreement does not constitute a waiver, nor does it extend to DIP financing. Lavvan argues that any waiver of adequate protection against DIP financing must be explicitly negotiated and written within the contract; otherwise, the Court reads material terms not explicitly provided for.

Second, Lavvan argues that even considering the waiver of the right to assert adequate protection, the Court

1   must make a finding of adequate protection under Section 364.

2   As for the first argument, I'm not persuaded that

3   there needed to be additional contract terms for Lavvan to

4   waive adequate protection against DIP financing.  The

5   subordination agreement, in my view, is clear Lavvan will not

6   seek adequate protection until the Foris LSA is paid in full,

7   and this plain language speaks to a waiver.

8   Lavvan has waived almost all of its rights within

9   the bankruptcy proceeding except for one:  The right to file

10   a proof of claim as the junior lender in a bankruptcy

11   proceeding.  Lavvan is asking the Court to disregard its

12   agreement to not seek adequate protection and then read into

13   the contract a specific and substantive right to obtain

14   adequate protection in cases of non-consensual DIP financing.

15   In addition to severely limiting the rights of

16   Lavvan under the subordination agreement and the LSA, the

17   subordination agreement specifically bars Lavvan from taking

18   any action inconsistent with the terms of the contract.

19   Lavvan expressly waived almost all of its rights, as I noted.

20   The subordination agreement limits its available recourse.

21   Taking actions inconsistent with those limitations would

22   contradict the specific rights within the LSA that the

23   parties bargained for.  The Court finds that Lavvan has

24   waived its right to adequate protection.

25   As to Lavvan's second argument, the Court does not

find Lavvan's reading of 364 persuasive.  Lavvan asserts that, even with a general waiver of adequate protection, 364 mandates the Court finding adequate protection when subordinating a junior lien to DIP financing, and Lavvan attempts to differentiate Section 364 from the language of 363, which governs cash collateral.

In transactions involving cash collateral, the junior lender must assert its rights to adequate protection or otherwise waive it; however, under 364, the Court may authorize the incurrence of credit or additional debt, in relevant part, only if there is adequate protection.

Lavvan proposes a very limited reading of 364, while Section 364 requires adequate protection and remains silent on the issue of consent, and I have found that Lavvan has waived its right to adequate protection.  As such, I find the reasoning of the GDH Court persuasive.  Presented with the same argument, the Court found that, where a creditor waived its right to adequate protection, the Court did not need to make an independent finding of sufficient adequate protection.  However, Lavvan argues that the creditors in GDH expressly waived adequate protection against DIP financing.

However, I must read the subordination agreement in its entirety and, having done so, I find that there was a waiver of adequate protection and that, if I were take up Lavvan's invitation, I'd be granting relief contrary to the

1      terms of their contract.  And I will not mandate a finding of

2      adequate protection where a party has waived its rights

3      under, in this case, a subordination agreement.

4              And for these reasons, I overrule Lavvan's

5      objection and will enter an order granting the motion.

6              Now, having said that, there is a new version of

7      the order out there, and I understand that there may not be

8      consent from all parties.  I am going to review that

9      agreement.  If there are issues with it, then we'll need to

10     come back.  But frankly, without having reviewed it, I'm not

11     in a position to say whether I'm going to enter that precise

12     form of order.

13             If, in the view of the parties, there's anything

14     arising out of my ruling today that requires further

15     amendment to the order -- and I suspect there isn't -- then I

16     would look for a further revised order under certification of

17     counsel.  But otherwise, I'll review the proposed form of

18     order and act on it as I see appropriate.

19             So that concludes my ruling for today.  I wish

20     everyone a good afternoon.  And we are adjourned.

21             MR. MEROLA:  Your Honor?  Your Honor, excuse me.

22             THE COURT:  Mr. Merola?

23             MR. MEROLA:  Yes, Frank Merola of Paul Hastings on

24     behalf of the ad hoc committee of noteholders.

25             We have a very narrow issue regarding the

1      bifurcation of the challenge period and we filed a brief
2      objection to the form of order.  To be honest, when the order
3      was first circulated last week, we were surprised by the
4      effort of the debtors and the insider to bifurcate the
5      challenge period and don't think it makes a lot of sense.
6              We're happy to discuss that now or in a brief
7      hearing before Your Honor at your convenience after you've
8      reviewed the form of order, but there will not be
9      certification with a sign-off from the ad hoc committee with
10     a bifurcated challenge period.
11             THE COURT:  Okay.  I appreciate that, Mr. Merola.
12     You know, I haven't seen the pleadings, so I'm unable to
13     comment on it.
14             I think what we'll need to do is reconvene next
15     week then, in order to deal with any lingering issues
16     regarding the proposed form of order.
17             So I know that there are a number of parties on the
18     line.  And if anyone has additional comments on the revised
19     form of order, I'd ask that you present them to the Court in
20     a submission of no more than five pages by Monday at noon,
21     and I'll be prepared at that point to schedule some further
22     time next week.
23             MR. MEROLA:  Thank you, Your Honor.
24             THE COURT:  Okay?  Thank you.
25             With that, we are adjourned.

15

1  (Proceedings concluded at 12:47 p.m.)

2  *****

3  CERTIFICATION

4  I certify that the foregoing is a correct
5  transcript from the electronic sound recording of the
6  proceedings in the above-entitled matter to the best of my
7  knowledge and ability.

13  _____    October 11, 2023

14  Coleen Rand, AAERT Cert. No. 341
15  Certified Court Transcriptionist
16  For Reliable