## IN THE UNITED STATES BANKRUPTCY COURT`
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: Docket No. 614** |

### OBJECTION OF THE FORIS LENDERS TO THE MOTION OF THE AD HOC NOTEHOLDER GROUP FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL BANKRUPTCY RULE 2004-1 DIRECTING THE PRODUCTION OF DOCUMENTS BY THE FORIS LENDERS

The Foris Lenders[2] (the "<u>Foris Lenders</u>") hereby file this objection (the "<u>Objection</u>") to the

*Motion of the Ad Hoc Noteholder Group for an Order Pursuant to Bankruptcy Rule 2004 and*

*Local Bankruptcy Rule 2004-1 Directing the Production of Documents by the Foris Lenders* (the

"<u>Rule 2004 Motion</u>") [Docket No. 614].  In support of the Objection, the Foris Lenders hereby

state as follows:

### PRELIMINARY STATEMENT

1.      The Rule 2004 Motion seeks discovery from the Foris Lenders that is improper

under Rule 2004.  First, the Rule 2004 Motion is rife with references to the Plan and how the Ad

Hoc Group needs information to evaluate (1) recoveries provided to creditors, (2) whether to

release any claims under the Plan, and (3) whether to vote to accept or reject the Plan.  *See e.g.*,

Rule 2004 Motion, ¶ 5 (noting that the Ad Hoc Group is performing its investigation "to assess the

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris.  Each capitalized terms used but not defined herein shall have the meaning ascribed to it in the Rule 2004 Motion.

[2]     The Foris Lenders, also referred to as the Foris Prepetition Secured Lenders in these chapter 11 cases, include Foris Ventures, LLC, Perrara Ventures, LLC, Anesma Group, LLC, Anjo Ventures, LLC, and Muirisc, LLC.  The Ad Hoc Group omits reference to Perrara Ventures, LLC in the Rule 2004 Motion.

Plan"). Plan-related discovery is not, however, proper under Rule 2004 based on the text of the Bankruptcy Rules and applicable case law. Instead, Bankruptcy Rule 7026, *et seq*. is the procedural mechanism for a party seeking Plan-related discovery. On this ground alone, the Rule 2004 Motion fails. Second, the Ad Hoc Group asserts that its investigation is necessary under Rule 2004 to evaluate "potential claims" against non-debtor third parties. Again, the Ad Hoc Group's justification misses the mark. Courts hold that information related to direct claims held by individual creditors is not discovery properly sought under Rule 2004.

2.      But even if the Court finds these arguments unavailing (it should not), the Ad Hoc Group's substantive arguments also fail to pass muster. Simply put, the Ad Hoc Group, through the Rule 2004 Motion, has not and cannot (1) satisfy its burden to establish that "good cause" exists to overcome the Foris Lenders' objection to the Rule 2004 Motion, (2) demonstrate that the Requests are not duplicative of the Committee's document requests (as documents produced to the Committee in response to such requests are ***already*** being provided to the Ad Hoc Group), and (3) establish that the Requests would result in targeted discovery that is not overbroad nor unduly burdensome. The Court should deny the Rule 2004 Motion.

## BACKGROUND

3.      The Ad Hoc Group first engaged counsel "in connection with a potential restructuring of the Debtors" on or about March 28, 2023. *See* Docket No. 124. Then, as of August 1, 2023, the Debtors and counsel to the Ad Hoc Group executed a fee letter reimbursing counsel to the Ad Hoc Group for work beginning as of July 1, 2023. *See* Ex. B-1, Docket No. 150. Based on these public filings, the Ad Hoc Group, through counsel, began evaluating the Debtors' financial situation and a potential restructuring **long before** August 9, 2023 (the "<u>Petition Date</u>"),

the date the above-captioned debtors and debtors in possession filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[3]

4.    After the Petition Date, the Ad Hoc Group appeared at the first day hearing held on August 11, 2023, filed a notice of appearance on August 14, 2023, filed its initial Rule 2019 statement on August 24, 2023, was the subject of the Debtors' *Motion to Assume and/or Enter into the Reimbursement Agreements with Professionals for the Ad Hoc Noteholder Group* (the "Fee Reimbursement Motion")[4] filed on August 25, 2023, and filed an amended Rule 2019 statement on October 17, 2023, which amended statement reflects membership consistent with the initial Rule 2019 statement.  *See* Docket Nos. 56, 76, 129, 148, and 579.  Despite active participation in restructuring efforts beginning in mid-2023 and running through the present, the Rule 2004 Motion presupposes a sudden urgent and pressing need for the Ad Hoc Group to seek discovery.  This, however, completely ignores the conspicuous role the Ad Hoc Group has played in these chapter 11 cases and the manufactured emergency that they now posit.

5.    At approximately 10:15 p.m. (prevailing Eastern Time) on October 18, 2023, counsel to the Ad Hoc Group served counsel to the Foris Lenders via email with discovery requests pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (such rule, "Rule 2004," such rules, the "Bankruptcy Rules," and such discovery requests, the "Initial Requests").  *See* Ex. A, Rule 2004 Motion.  The Ad Hoc Group served the Initial Requests **70 days after the Petition Date**.  Immediately upon receipt, counsel to the Foris Lenders reviewed and evaluated the Initial Requests.  Thereafter, late in the morning of October 19, 2023 (approximately 12 hours after

---

[3]    Subsequent to the Petition Date, on August 21, 2023, three debtor entities filed voluntary petitions for relief under the Bankruptcy Code.

[4]    As detailed in the Foris Lenders' objection to the Ad Hoc Group's recent motion to shorten, the scope of services subject to the Fee Reimbursement Motion is of particular importance because it makes clear that the Ad Hoc Group voluntarily decided to limit the scope of its professionals' engagement with the Debtors.  *See* Docket No. 619 ¶¶ 5, 10.

receipt of the Initial Requests), counsel to the Foris Lenders requested a meet and confer.  *See* Ex.

B, Rule 2004 Motion.

6.      During the meet and confer on October 19, 2023, counsel to the Foris Lenders

agreed that the materials produced to the official committee of unsecured creditors in these chapter

11 cases (the "<u>Committee</u>") would be produced to counsel for the Ad Hoc Group, subject to an

agreement that all such materials would be "Professional Eyes Only."  *See id*.  This agreement was

acceptable to counsel to the Ad Hoc Group and memorialized in an email on October 20, 2023.

*See id*.

7.      In the same string of email correspondence on October 20, 2023, the Foris Lenders

communicated that the balance of the Initial Requests were procedurally improper, overbroad,

unduly burdensome, and among other things, called for the discovery of privileged information.

*See id*.  The Ad Hoc Group characterizes this response as "stonewalling" its efforts to seek relevant

discovery.  *See* Rule 2004 Motion ¶ 8.  But review of the discovery requests attached as Exhibit C

to the Rule 2004 Motion (the "<u>Requests</u>") completely undermines this characterization.

8.      Attached as **<u>Exhibit A</u>** is a redline (the "<u>Redline</u>") of the Requests (subject to the

Rule 2004 Motion) marked to the Initial Requests (served on October 18).  As the Redline makes

clear, the Ad Hoc Group removed or pared back a number of the Initial Requests.  In doing so, the

Ad Hoc Group ***acknowledges*** that almost half of the Initial Requests were either (1) satisfied

through the materials the Foris Lenders' voluntarily agreed to produce or (2) not proper as

originally proposed.  This hardly supports the "stonewalling" the Ad Hoc Group alleges, but rather

demonstrates that the Foris Lenders appropriately and proportionally responded to discovery

initially sought by the Ad Hoc Group on October 18, 2023 (and, as a result, resolved numerous of

those requests), leaving only a limited subset of disputed Requests.

4

9.      The Ad Hoc Group then filed the Rule 2004 Motion on October 24, 2023.  The Rule 2004 Motion seeks overbroad discovery ("all documents and communications" or "all communications" or "all nonprivileged communications") covering 13 different topics.  According to the proposed order attached to the Rule 2004 Motion, the Ad Hoc Group requests that the Court order the Foris Lender to produce all documents **within 14 days of entry of the proposed order**.

10.      The Challenge Period (as defined in the Final DIP Order) applicable to all parties in interest other than the Committee expired on October 25, 2023.[5]  The Ad Hoc Group did not seek an extension of the Challenge Period (after entry of the Final DIP Order), nor did it move for standing to commence an adversary proceeding or contested matter challenging the Debtors' stipulations included in the Final DIP Order.  The Challenge Period for the Committee is set to expire on November 15, 2023.

11.      As of the filing of this Objection, the Foris Lenders have produced to counsel to the Ad Hoc Group, on a "Professional Eyes Only" basis, the same documents and materials that have been produced to the Committee in response to the Committee's document requests.

## ARGUMENT

## I.      RULE 2004 IS NOT THE APPROPRIATE MECHANISM FOR DISCOVERY THAT THE AD HOC GROUP SEEKS IN ITS RULE 2004 MOTION.

12.      The Ad Hoc Group seeks discovery under Rule 2004 to purportedly evaluate potential issues with the Debtors' chapter 11 plan of reorganization (the "Plan"), including any derivative or direct claims that the Ad Hoc Group might have so that the Ad Hoc Group can determine how to value those claims and/or whether to vote to accept or reject the Plan.  The plain

---

[5]      *See Final Order (I) Authorizing the Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Final DIP Order") [Docket No. 558].

language of the Bankruptcy Rules and prevailing weight of applicable case law make clear that Plan-related discovery is not proper under Rule 2004.

### A. Plan-Related Discovery Must Proceed Under Rule 9014, Rather than Under Rule 2004.

13.     The Ad Hoc Group admits that its Rule 2004 Motion is exclusively focused on Plan-related discovery.[6]  Plan-related discovery, however, is not properly sought under Rule 2004, but instead must follow the requirements of Rule 9014 of the Bankruptcy Rules, applicable to contested matters.  Under Rule 9014, a contested matter is commenced by filing of a motion.  *See* Fed. R. Bankr. P. 9014(b).  Here, the Debtors have filed a motion seeking approval of the disclosure statement accompanying the Plan, scheduling a hearing for confirmation of the Plan, and approving the form and content of solicitation materials, among other things.  *See* Docket No. 525.  Under the Bankruptcy Rules and applicable case law, a contested matter—the Plan confirmation process—has commenced.  *See Peltz v. Worldnet Corp. (In re USN Communs., Inc.)*, 280 B.R. 573, 587 (Del. Bankr. 2002) ("[The] confirmation process constitutes a contested matter under the Bankruptcy Rules."); *see also In re Sunpacific Energy Mgmt., Inc.*, 216 B.R. 776, 779 (Bankr. N.D. Tex. 1997) (observing that "the confirmation process constitutes a contested matter

---

[6]     *See* Rule 2004 Motion ¶ 2 (noting that it is necessary for the Ad Hoc Group to investigate potential derivative claims to benefit the estate and assess the sweeping releases of its direct claims called for in the Plan); *id.* at ¶ 4 (noting that to decide whether it should accept the Plan the Ad Hoc Group needs to know whether the distribution they stand to gain under the Plan is greater than what they might receive in potential litigation); *id.* at ¶ 5 (noting that to protect its interests and assess the Plan that the Ad Hoc Group is investigating potential claims against the Company's prepetition directors and officers); *Id.* at 10 ("The Ad Hoc Group is entitled to investigate whether the estate has valuable causes of action which, under the Plan, might be released."); *id.* at ¶ 12 ("They should not be forced to decide whether to accept or reject the Plan without even knowing what they might be giving up"); *id.* at ¶ 15 ("The Ad Hoc Group is entitled at least to investigate direct claims before deciding how to vote on, and whether to object to, the Plan."); *id.* at ¶ 25 (noting that the Debtors have not revealed details about direct claims in the disclosure statement).  *See also* Ex. B, Rule 2004 Motion (including email from Mr. Mark Kelley on October 20, 2023 at 6:57 a.m. (prevailing Eastern Time), in which Mr. Kelley states that "our Rule 2004 discovery requests are not limited to the October 25 challenge period and are proper to, among other reasons, investigate potential direct claims and derivative claims to which that challenge period does not apply").

under the Bankruptcy Rules."); *In re Star Mountain Res., Inc.*, No. 2:18-BK-01594-DPC, 2022 WL 2294175, at *10 (Bankr. D. Ariz. June 22, 2022) (same).

14.     Once the Plan confirmation process is commenced under Rule 9014, discovery is governed by Rule 7026 of the Bankruptcy Rules, which incorporates by reference Rule 26 of the Federal Rules of Civil Procedure.  *See* Fed. R. Bankr. P. 9014, 7026.  The language of these Bankruptcy Rules is plain and express and must be applied here.  Although discovery under Rule 2004 is oft-cited as a flexible pre-litigation tool, once a contested matter is commenced, litigants are entitled to the procedural safeguards set forth in the Federal Rules of Civil Procedure.  *See In re Dinubilo*, 177 B.R. 932, 941 (E.D. Cal. 1993) ("Once a contested matter is pending, discovery requests are granted under Rule 9014, which invokes the procedural safeguards of the Federal Rules of Civil Procedure."); *see also In re French*, 145 Bankr. 991, 992 (Bankr. D.S.D. 1992) (noting that if a contested matter or adversary proceeding is pending that Rule 2004 discovery should not be used but instead "the various discovery provisions of the Federal Rules of Civil Procedure should apply") (citations omitted); *See also* Fed. R. Bankr. P. 9014 advisory committee's note ("Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter.").

15.     Accordingly, the Ad Hoc Group's Plan-related discovery must follow the procedures set forth in the Federal Rules of Civil Procedure, as incorporated by Rule 9014.

**B. Discovery Related to Potential Direct Claims Against Non-Debtor Third Parties Purportedly Held by the Ad Hoc Group is Not Proper under Rule 2004.**

16.     The Ad Hoc Group argues that it requires Rule 2004 discovery "to investigate potential litigation claims arising out of the Debtors' directors' and officers' prepetition conduct" and specifically mentions, at least five times in the Rule 2004 Motion, that this discovery is focused on direct claims against non-debtor third parties.  Rule 2004 Motion ¶¶ 1, 2, 5, 12, 15, and 25.

17.     Courts interpreting Rule 2004 hold that discovery focused on direct private claims against non-debtor third parties falls outside the purview of Rule 2004.  For example, in *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 629 (Bankr. D. Del. 2016), Judge Silverstein denied a Rule 2004 seeking discovery in connection with a claim by a creditor to recover against a third party:  "Any request for information regarding potential causes of action belonging to the Lenders' Trust, however, is denied, as Rule 2004 was not intended to provide private litigants [*i.e.* the Consenting Lenders] with a strategic advantage in fishing for potential private litigation." (internal quotation omitted).  *See also Boulder Operations Holdings LLC*, No. 22-10664, 2023 Bankr. LEXIS 1401, at *6 (Bankr. D. Del. May 30, 2023) (denying a Rule 2004 examination where discovery was primarily addressed to a claim by a creditor against a third party).

18.     The Ad Hoc Group's demand for Rule 2004 discovery related to potential direct claims against non-debtor third parties is impermissible under that rule, contrary to case law, and should be denied.  To the extent that the Ad Hoc Group argues that it requires the same discovery in connection with the proposed releases under the Plan, this too constitutes Plan-related discovery, which, as discussed above, must follow the procedural safeguards under Bankruptcy Rules 7026 *et seq.* once a contested matter under Rule 9014 is commenced (which here, it has).  Rule 2004 is simply not a vehicle for any direct claim discovery that the Ad Hoc Group seeks.

**C. This Court's *Chambers Procedures* Provides Guidance on Discovery Governing the Plan Confirmation Process.**

19.     This Court's *Chambers Procedures* reaffirm that any discovery related to confirmation of the Plan should be subject to the procedural guardrails established by the Federal Rules of Civil Procedure. *See* Chambers Procedures for Judge Thomas M. Horan at 3.   In particular, the *Chambers Procedures* provide that parties involved in a "contested matter that will involve discovery and the presentation of evidence are encouraged to submit a proposed Joint

Pretrial Order (or, if the parties are unable to agree, to submit competing forms of order)." *See id.* The Foris Lenders understand that the Debtors will seek approval of a scheduling order governing the Plan confirmation process. This scheduling order will provide, among other things, necessary deadlines to seek, respond to, and produce such discovery in advance of the Plan confirmation hearing currently scheduled for January 17, 2024.

## II.   EVEN IF RULE 2004 WAS APPROPRIATE, THE AD HOC GROUP CANNOT DEMONSTRATE THAT "GOOD CAUSE" EXISTS.

20.    "The party seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks." *Millennium*, 562 B.R. at 627 (citations omitted). Good cause can be demonstrated "if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, [but not] if denial of such request would cause the examiner undue hardship or injustice." *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004). Courts apply a "totality of the circumstances test" to determine whether "good cause" exists. *See In re Kearney*, 590 B.R. 913, 924 (Bankr. D.N.M. 2018) ("[B]ankruptcy courts should be careful to balance the estate's right to pre-litigation discovery with the target's right to be protected against improper, unwarranted, or unduly burdensome discovery."); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 392–94 (Bankr. W.D. Pa. 2008) (articulating a balancing test for determining "good cause"); *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) ("Rule 2004 requires that we balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination.").

21.    This case law makes clear that Rule 2004 is not boundless. Courts therefore exercise discretion to determine if discovery under Rule 2004 is appropriate. *See, e.g.*, Fed. R. Bankr. P. 2004(a) ("[T]he court *may* order the examination of any entity") (emphasis added); *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("[T]he Court has the discretion to

grant a request for a 2004 examination"); *In re Martelli*, No. 16-20983-PRW, 2017 Bankr. LEXIS 2015, at *11 n. 5 (Bankr. W.D.N.Y. July 20, 2017) ("The phrase, 'any matter which may affect the administration of the debtor's estate,' is not viewed by this Court as a loophole through which an interested party—here, the UST—can wiggle to avoid the catch limits of Rule 2004(b)").

22.     Accordingly, the "permissive, conditional language" of Rule 2004 (*i.e.*, "may order) works to "restrict discovery that appears unduly intrusive or burdensome," *In re Roman Catholic Church of Diocese of Gallup*, 513 B.R. 761, 766 (Bankr. D.N.M. 2014), and to "limit, condition or even forbid the use of Rule 2004" to prevent abuse or harassment. *Martin v. Schaap Moving Systems*, 152 F.3d 919, 1998 WL 405966 (2d Cir. April 20, 1998). Moreover, courts do not permit unfettered "fishing expedition[s]." *In re SunEdison, Inc.*, 562 B.R. 243, 250-51 (Bankr. S.D.N.Y. 2017) (recognizing that Rule 2004 requests should be proportional to the claim at issue); *see also Countrywide*, 384 B.R. at 393-94 (Bankr. W.D. Pa. 2008) ("The Court is further mindful that, while Rule 2004 allows a fishing expedition to some extent, it may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs.").

23.     Even if the Court determines that Rule 2004 is appropriate, the Court has ample authority and clear discretion to deny the Rule 2004 Motion because the Ad Hoc Group fails to carry its burden to show that "good cause" exists. The Ad Hoc Group seeks to conduct a duplicative, parallel investigation to the Committee's investigation. The Committee has requested documents from the Foris Lenders and the Foris Lenders are providing those documents to **both** the Committee and the Ad Hoc Group. Demonstrating "good cause" requires a showing by the movant that the documents requested are necessary to "establish the claim" at issue. The Ad Hoc Group fails to demonstrate that any discovery, above and beyond what they are already receiving, is required. To force the Foris Lenders to gather, review, and produce additional document

10

discovery within 14 days, at this juncture in the chapter 11 cases, would impose an undue burden on the Foris Lenders.  The Court should deny the Rule 2004 Motion.

**A. The Court Should Deny the Motion Because the Requests Impose an Undue Burden on the Foris Lenders.**

24.    The relief requested in the Rule 2004 Motion is overbroad and imposes an undue burden on the Foris Lenders.  When weighing the proper scope of an examination under Rule 2004, the Court should balance the Ad Hoc Group's interest in collecting further information (above and beyond all documents provided to the Committee pursuant to its discovery requests) against the burden imposed on the Foris Lenders.  *See also Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (stating that Rule 2004 requires the court to exercise its discretion and balance competing interests).  If discovery is unduly intrusive, burdensome, or sought to abuse or harass, courts favor denial of a Rule 2004 request.  *Martin*, 1998 WL 405966 at *3.

25.    The Ad Hoc Group's requests are extremely broad in scope as they request "all" documents and communications relating to a litany of topics that will capture a substantial number of documents and communications.  *See SunEdison*, 562 B.R. at 250-52 (applying the concept of proportionality to the Rule 2004 examination context, finding that it is "consistent with the historic concerns regarding the burden on the producing party" and denying motion because, inter alia, the requests asked for "all documents" that "relate to" the subject matter of a specific request).  For example, the Ad Hoc Group's requests "all communications" between John Doerr and each of Han Kieftenbeld, John Melo, and M. Freddie Reiss as well as "all nonprivileged communications" between John Doerr and each of Nicole Kelsey and Doris Choi.  These unqualified requests for all communications over a multi-year period are facially overbroad and would lead to hundreds, if not thousands, of irrelevant documents.  Even more, the substantial burden on the Foris Lenders to

gather, review for relevance and privilege, and produce dictates that the Requests are not proportionate to any "investigation" that the Ad Hoc Group has apparently undertaken.

26.     Moreover, the Ad Hoc Group's defined terms of "document"[7] and "communication"[8] are themselves overbroad.  Courts routinely limit such definitions to readily identifiable and accessible materials that can be practically gathered.  For example, in *In re Texaco, Inc.*, 79 B.R. 551, 554 (Bankr. S.D.N.Y. 1987), the court concluded that a definition of the term "document" (which itself was similar to the one put forward by the Ad Hoc Group) was "obviously too broad and border[ing] on the ridiculous" before imposing a substantially narrower definition to only include "financial or other reports, contracts, records and minutes."  To the extent that the Court decides Rule 2004 relief is appropriate here (and it should not for the reasons described herein), the definitions of "document" and "communication" should be limited to clearly identifiable categories of information relevant to potential claims that can be practically gathered.

27.     To counter arguments of overbreadth and undue burden, the Ad Hoc Group argues that the Foris Lenders have provided "zero proof" that the requests would be "unduly burdensome", and that "[g]iven the broad, unfettered scope of Rule 2004 discovery . . . the Foris

---

[7]     *See* Requests ¶ 11 ("The terms 'document' or 'documents' are to be given meaning in the broadest sense, and shall include any kind of written, recorded, printed, or graphic matter, whether produced, reproduced, or stored on paper, cards, film, audio or video tapes, electronic facsimile, computer storage device, or any other media of any kind or description, whether sent or received or neither, including without limitation: originals, copies (with or without notes or changes therein) and drafts, and including without limitation: papers, books, letters, electronic mail messages, electronic files or data, photographs, objects, tangible things, correspondence, telegrams, cables, telex messages, memoranda, notes, notations, work papers, transcripts, minutes, reports and recordings of telephone or other conversations, or of interviews, conferences, or other meetings, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, journals, newspaper accounts, statistical records, desk calendars, appointment books, diaries, lists, tabulations, summaries, sound recordings, computer printouts, data processing input and output, microfilms, all other records kept by electronic, photographic, or mechanical means, and things similar to the foregoing however denominated by You, in Your possession, custody, or control.").

[8]     *See* Requests ¶ 9 ("The terms 'communication' and 'communications' means any transmission of information, ideas, facts, data, proposals, or any other matter by one or more persons and/or between two or more persons by any means, including telephone conversations, letters, telegrams, teletypes, telexes, telecopies, electronic mail, text messages, instant messages or chat applications, cloud-based document management systems, other computer link-ups, written memoranda, and face-to-face conversations.").

Lenders cannot avoid their obligations based on their say-so alone." *See* Rule 2004 Motion ¶ 28. These arguments are ineffective. First, the burden is squarely on the Ad Hoc Group in the first instance (not the Foris Lenders) to demonstrate that the Requests are proper under Rule 2004, which they have not done. The Foris Lenders need not, for example, conduct searches to provide evidence affirmatively establishing the infirmities of the Ad Hoc Group's request. Second, the Ad Hoc Group exaggerates the scope of Rule 2004, going so far as saying that its scope is "unfettered." Nothing could be further from the truth—discovery demands that are intrusive, unduly burdensome, or intended to harass, all of which are applicable here, are facts that weigh in favor of limiting Rule 2004.

28.     The stark reality facing the Ad Hoc Group is that the Committee, an estate fiduciary, is conducting the investigation that the Ad Hoc Group now seeks to duplicate. But rather than admit duplication, the Ad Hoc Group avers that it is working closely with the Committee on the investigation. The Ad Hoc Group should be held to those words. The Committee has sought and has received document discovery from the Foris Lenders focused on prepetition conduct that is purportedly the subject of the Rule 2004 Motion. The Foris Lenders have provided the Ad Hoc Group with the same document discovery provided to the Committee. As set forth below, comparing the Committee requests (inclusive of agreed search terms) and the Requests here clearly demonstrates that the Ad Hoc Group requires no more than what is being produced to it and to the Committee.

29.     Given all of these facts, "good cause" requires a showing ***by the Ad Hoc Group*** that the Requests are (1) proper under Rule 2004, (2) not duplicative of the Committee's requests, and (3) and would result in targeted discovery that is not overbroad nor unduly burdensome. The Ad Hoc Group fails to carry its burden on each point. Undeterred, the Ad Hoc Group nonetheless

presses on.  But courts hold that third party creditors cannot substitute their authority for an estate fiduciary under these and similar circumstances.  *See In re Celsius Network LLC*, No. 22-10964, 2022 Bankr. LEXIS 3091, at *6 (Bankr. S.D.N.Y. Nov. 2, 2022); (denying a request of a creditor to conduct 2004 examination of the debtors when other estate fiduciaries were conducting an investigation into certain of the debtors' pre-petition practices); *See also In re Marks*, Case No. 22-50080, 2022 Bankr. LEXIS 3590 (S.D. Ohio Dec. 13, 2022) (finding that a creditor was not entitled to a 2004 investigation of a non-debtor because there were no special circumstances which warranted a second examination, especially because the chapter 7 trustee's attorney had already covered the same ground in an earlier 2004 investigation).

30.     The Ad Hoc Group has wholly failed to: (1) establish the relevance of its Requests; (2) articulate why its Requests are targeted in scope; and (3) demonstrate how the Requests are not overbroad or unduly burdensome, or otherwise establish "good cause" sufficient to pursue the requested discovery under Rule 2004.  For each of these reasons, the Court should deny the Rule 2004 Motion.

**B.  The Ad Hoc Group is Not Prejudiced if the Court Denies the Rule 2004 Motion.**

31.     The Ad Hoc Group will not suffer any prejudice if the Rule 2004 Motion is denied.  First, the Challenge Period under the Final DIP Order expired as to the Ad Hoc Group on October 25, 2023.  Any claims required to be brought by expiration of that deadline have now lapsed as to the Ad Hoc Group and thus discovery related to any such claims is unfounded.  The other bases for discovery asserted by the Ad Hoc Group focus exclusively on Plan-related issues which, as discussed herein, are not discoverable under Rule 2004.

32.     Second, the Committee already is conducting an investigation into the prepetition conduct that purportedly supports the Ad Hoc Group's Rule 2004 Motion.  The notes held by the Ad Hoc Group are represented on the Committee through U.S. Bank Trust Company, the indenture

trustee.  As a fiduciary, the Committee is bound to act in the best interests of general unsecured

creditors, including the Ad Hoc Group.

**C.  The Ad Hoc Group's Requests Substantially Overlap with Document Discovery the Debtors and Foris Lenders are Producing to the Committee and the Ad Hoc Group.**

33.    As noted above, many of the Requests are duplicative of document requests made

by the Committee.  Below is a side-by-side chart that illustrates for the Court the overlap that

exists.

| Ad Hoc Group Discovery Requests | Committee Discovery Requests |
|---|---|
| All documents and communications concerning any allegation, investigation, discussion, or finding of accounting irregularities or misconduct against the Debtors or any officer or director of the Debtors. | All Documents and Communications concerning any allegation of conflict of interest or any other wrongful act against any officer or director of the Debtors. |
| | All Documents and Communications concerning any investigation by the Debtors concerning potential claims or causes of action against the Debtors' Insiders. |
| All documents and communications relating to any proposed, potential, or contemplated sale of Biossance. | All Documents and Communications concerning the valuation of the Debtors or their assets.<br><br>(Search terms run: valu* /5 (Amyris OR Biossance OR JVN)<br><br>(sale OR purchase OR sell OR buy OR APA OR asset purchase agreement) W/10 (Biossance OR substantially all) |
| All documents and communications relating to any proposed, potential, or contemplated sale of JVN. | All Documents and Communications concerning the valuation of the Debtors or their assets.<br><br>(Search terms run: valu* /5 (Amyris OR Biossance OR JVN))<br><br>(sale OR purchase OR sell OR buy OR APA OR asset purchase agreement) W/10 (Biossance OR substantially all) |

| | |
|---|---|
| All documents and communications relating to any forbearance agreement with the Debtors. | All Documents and Communications concerning the Debtors' solvency, capitalization, and ability to pay debts as they become due, including any fairness or solvency opinions concerning the Debtors.<br><br>(Search terms run: (solven\* or insolven\*) AND (AMRS or Amyris))<br><br>(sale OR purchase OR sell OR buy OR APA OR asset purchase agreement) W/10 (Biossance OR substantially all) |
| | All Documents and Communications concerning any releases by the Debtors, including any releases of intercompany claims. |
| All documents and communications relating to an allegation of a conflict of interest, breach of fiduciary duty, or any other wrongful act by any officer or director of the Debtors. | All Documents and Communications concerning any allegation of conflict of interest or any other wrongful act against any officer or director of the Debtors. |

34.     Courts hold that duplicative discovery like that which the Ad Hoc Group seeks is inappropriate under Rule 2004. *See, e.g., In re Merrill*, No. 09-54616-C, 2010 WL 985231, at *2 (Bankr. W.D. Tex. Mar. 16, 2010) (granting a motion to quash a Rule 2004 examination request to the extent materials requested were actually produced in an earlier action, rendering them "duplicative"*); In re Transmar Commodity Grp. Ltd.*, Case No. 16-13625-JLG, 2018 WL 4006324, at *9 (Bankr. S.D.N.Y. Aug. 17, 2018) (ruling that Trustee had failed to establish "good cause" where he was already in possession of documents from other parties and he failed to establish any gaps or prejudice absent additional discovery); *Millennium*, 562 B.R. at 628 (instructing the movant to "avoid duplicative requests, both with respect to documents already in the [movant's] possession and in terms of targeting document requests to the most relevant Third Party(ies)").

## **RESERVATION OF RIGHTS**

35.    The Foris Lenders reserve all rights with respect to any subpoena or other discovery request served in these chapter 11 cases, including without limitation, the right to object on grounds of overbreadth, burden, and relevance, or to assert any applicable claim of privilege.   Moreover, to the extent that the Ad Hoc Group attempts to remedy its failure in the Rule 2004 Motion to articulate proper bases for the relief requested, the Foris Lenders reserve all rights to supplement this objection or to reply to any such additional arguments.

[*Remainder of page left intentionally blank*]

## CONCLUSION

36.     For the reasons set forth herein, the Foris Lenders respectfully request that the Court

deny the Rule 2004 Motion and grant such other relief as the Court may deem just and appropriate.

Dated: November 2, 2023
Wilmington, Delaware

/s/ Kenneth A. Listwak
David M. Fournier (DE No. 2812)
Kenneth A. Listwak (DE No. 6300)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Hercules Plaza, Suite 5100
1313 N. Market Street, P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
E-mail:   david.fournier@troutman.com
          ken.listwak@troutman.com
-and-

Michael H. Goldstein (admitted *pro hac vice*)
Alexander J. Nicas (admitted *pro hac vice*)
Debora A. Hoehne (admitted *pro hac vice*)
Artem Skorostensky (admitted *pro hac vice*)
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800
Email:    mgoldstein@goodwinlaw.com
          anicas@goodwinlaw.com
          dhoehne@goodwinlaw.com
          askorostensky@goodwinlaw.com


*Counsel to the Foris Lenders*