**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*,[1] | Case No. 23-11131 (TMH) |
| Debtors. | (Jointly Administered) |
| | Related Dkt. No. 524 and 525. |

**OBJECTION AND RESERVATION OF RIGHTS OF LEXON INSURANCE COMPANY TO THE DEBTORS' MOTION FOR AN ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) SCHEDULING CONFIRMATION HEARING; (III) APPROVING FORM AND MANNER OF NOTICE OF CONFIRMATION HEARING; (IV) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PLAN, INCLUDING (A) APPROVING FORM AND CONTENT OF SOLICIATION MATERIALS; (B) ESTABLISHING RECORD DATE AND APPROVING PROCEDURES FOR DISTRIBUTION OF SOLICITATION MATERIALS; (C) APPROVING FORMS OF BALLOTS; (D) ESTABLISHING VOTING DEADLINE FOR RECEIPT OF BALLOTS AND (E) APPROVING PROCEDURES FOR VOTE TABULATIONS; (V) APPROVING FORM AND MANNER OF NOTICE OF PLAN RELEASES; (VI) ESTABLISHING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO CONFIRMATION OF PLAN; AND (VII) GRANTING RELATED RELIEF**

Lexon Insurance Company ("Lexon") by and through its undersigned counsel, Harris Beach PLLC and The Powell Firm, LLC, submit this objection ("Objection") to the *Debtors' Motion for an Order (I) Approving the Disclosure Statement; (II) Scheduling Confirmation Hearing; (III) Approving Form and Manner of Notice of Confirmation Hearing; (IV) Establishing Procedures for Solicitation and tabulation of Votes to Accept or Reject Plan, Including (A) Approving Form and Content of Solicitation Materials; (B) Establishing Record Date and Approving Procedures for Distribution of Solicitation Materials; (C) Approving Forms of Ballots; (D) Establishing Voting Deadline for Receipt of Ballots*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

**Error! Unknown document property name.**

*and (E) Approving Procedures for Vote Tabulations; (V) Approving Form and Manner of Notice of Plan Releases; (VI) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plan; and (VII) Granting Related Relief* (the "Disclosure Statement Motion") [Dkt. No. 525], and in support thereof respectfully states as follows:

## BACKGROUND

1. On August 9 and August 21, 2023 (as applicable, the "Petition Date"), the Debtors commenced these Chapter 11 Cases[2] by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On August 27, 2023, the U.S. Trustee appointed the Committee.

4. The Debtors were founded in 2003 to create a more stable supply of key anti-malarial treatment. Through the Debtors' science, artemisinin is now consistently available to treat malaria. Using the same technological innovations that produced artemisinin, the Debtors have become a leading manufacturer of ingredients made with synthetic biology. The Debtors provide sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products.

5. In addition, the Debtors operate a family of consumer brands that utilize the Company's ingredients to meet the growing demand for sustainable, effective, and accessible products, including Biossance® (clean beauty skincare), JVNTM (haircare), Rose Inc.TM (clean color cosmetics), Pipette® (clean baby skincare), OLIKATM (clean wellness), MenoLabsTM (healthy living and menopause wellness), StripesTM (menopausal wellness), and 4U by TiaTM (a new clean haircare line).

---

[2] Capitalized terms not defined herein are defined in the Disclosure Statement Motion.

6. The Debtors have obtained two (2) surety bonds (the "Bonds") from Lexon listing the Department of Homeland Security U.S. Customs and Border Protection (the "Obligee") as Obligee under the Bonds with a total penal sum of $800,000.00. Copies of the Bonds are attached hereto as **Exhibit A**.

7. Lexon is also the beneficiary to two (2) Irrevocable Letters of Credit Nos. NUSGS044123 and NUSCGS041862, which serve as collateral for the Bonds in the total sum of $800,000.00 (the "Letters of Credit"). The issuing bank of the Letters of Credit is JP Morgan Chase Bank, N.A.

8. The surety relationship involves three (3) parties: (a) the principal, who is the primary obligor – Debtors; (b) the obligee – the party to whom the principal and surety owe the duty – the Obligee; and (c) the surety – who is the secondary obligator – Lexon.

9. Notably, the principal retains the primary duty to perform its obligations under the bonds. The principal cannot simply hand over its obligations for the surety to perform.

10. Based on the above, Lexon will be timely submitting proofs of claim in the amount of $800,000 (the "Proofs of Claim") representing the penal sum of the Bonds. Lexon will be expressly reserving its right to file amended Proofs of Claim while it reviews its books and records to determine if it paid any claims under the Bonds, incurred any loss adjustment expenses, and if there were any unpaid premiums.

11. Notably, there have been numerous claims made under the Bonds and Lexon anticipates that additional claims will be made in the future (the "Bond Claims"). A spreadsheet of the claims made against the Bonds thus far are attached hereto as **Exhibit B**.

12. On October 13, 2023, the Debtors filed the Disclosure Statement Motion, *Disclosure Statement with Respect to Joint Chapter 11 plan of Reorganization of Amyris, Inc. and its Affiliated*

*Debtors* ("Disclosure Statement") [Dkt. No. 524] and *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* ("Plan") [Dkt. No. 523].

13. The Plan is a plan of reorganization which is intended to, among other things, (a) preserve the Debtors' Technology Access businesses (comprising revenue from ingredient product sales, R&D collaboration programs, and technology licensing) as a going concern, (b) implement a partial debt-to-equity conversion that will result in the DIP Lender and the Foris Prepetition Lenders holding the new Interests of the reorganized company, (c) distribute in tranches to various Classes of creditors the proceeds of the sale of the Debtors' Consumer Brands Businesses, made available by the DIP Lender and the Foris Prepetition Lenders and (d) establish, in connection with the releases provided for in the Plan, an Excluded Party Litigation Trust for the benefit of holders of Direct Claims and Reorganized Amyris, to hold and distribute certain funding and the proceeds from the Direct Claim Recovery Pool.

14. The hearing on the Disclosure Statement Motion is scheduled for November 21, 2023, and the objection deadline is set for November 14, 2023.

15. Notably, nowhere in the Disclosure Statement or Plan is there any reference to Lexon or the Bonds.

**ARGUMENT**

**POINT I**

**THE DISCLOSURE STATEMENT LACKS ADEQUATE INFORMATION**

16. Lexon opposes the approval of the Disclosure Statement for variety of reasons including that it contains inadequate information.

17. The Bankruptcy Code provides that adequate information is:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a

      hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing addition information.

11    U.S.C. § 1125(a)(1).

12.    Information that should be contained in a disclosure statement includes: "[a] complete description of the available assets and their value; . . . [a] liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7; [t]he accounting and valuation methods used to produce the financial information in the disclosure statement; [i]nformation regarding the future management of the debtor, including the amount of compensation to be paid any insiders, directors, and/or officers of the debtor; . . . [and] [i]nformation relevant to the risks being taken by creditors and interest holders . . . ." *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988). The disclosure statement must also contain facts to support the assertions contained therein. *In re Egan*, 33 B.R. 672, 676 (Bankr. N.D. Ill. 1983).

13.    In this case, neither the Disclosure Statement nor Plan reference how the Bonds are to be treated. Neither the Disclosure Statement nor Plan reference whether the Bonds will be replaced or reaffirmed and ratified by the Reorganized Amyris or any other reorganized company. To the extent the Bonds are not needed going forward, there is no reference in the Disclosure Statement to, nor does Lexon have, releases from the various obligees relating to the Bonds. In fact, Lexon has already received various Bond Claims and anticipates that more claims will be filed under the Bonds. The Disclosure Statements fails to address the Debtors' intent regarding the Bond Claims.

14.    The Debtors have the opportunity to cure the defaults in relation to the Bond Claims and/or pay the Bond claims. To the extent Lexon is forced to make payment on the Bond Claims, the

Debtors must indemnify Lexon for any payments made on the Bond Claims. Additionally, Lexon may draw on the proceeds of the Letters of Credit in order to pay the Bond Claims that have been made, and any Bond Claims that will be made under the Bonds, since "[i]t is well established that a letter of credit and the proceeds therefrom are not property of the debtor's estate under 11 U.S.C. § 541." *S-Tran Holdings, Inc. v. Protective Ins. Co. (In re S-Tran Holdings, Inc.)*, 414 B.R. 28, 33-34 (Bankr. D. 2009) (quoting *Kellog v. Blue Quail Energy, Inc. (Matter of Compton Corp.)*, 831 F.2d 586, 589 (5th Cir. 1987) ("When the issuer honors a proper draft under a letter of credit, it does so from its own assets and not from the assets of its customer who caused the letter of credit to be issued. As a result, the bankruptcy trustee is not entitled to enjoin a post petition payment of funds under a letter of credit from the issuer to the beneficiary, because such a payment is not a transfer of debtor's property.")).

15    The Debtors do not appear to be attempting to treat the Bonds as executory contracts to be assumed; however, to the extent the Debtors are attempting to treat the Bonds and Indemnity Agreement as executory contracts that can be assumed and/or assigned, the Debtors cannot do so. The Bonds and Indemnity Agreement cannot be transferred, sold, assumed, and/or assigned because they are financial accommodations. *See In re James River Coal Co.*, 2006 WL 2548456 (Bankr. M.D. Tenn. 2006); *In re All Phase Electrical Contracting, Inc.*, 409 B.R. 272, 275 (Bankr. D. Conn. 2009); *see also* 11 U.S.C. §§ 365(c)(2) and 365(e)(2)(B). As the Bonds are specific to the individual Debtor named as principal on each bond and are financial accommodations, they cannot be transferred to the extent any such transfer may be contemplated under the Disclosure Statement and Plan.

16    Although the Bankruptcy Code does not define "financial accommodation," courts have held that the obligation to pay money on the obligation of another, such as the surety bonds in this case, <u>is a financial accommodation</u>. *See, e.g., In re Adana Mortg. Bankers, Inc.*, 12 B.R. 977, 987 (Bankr. N.D. Ga. 1980). As to matters of financial accommodation, prior to issuing bonds, a surety's

6

underwriters go through a careful and thorough investigation of the financial status of the entities seeking the bonds. *See generally, In re Wegner Farms Co.*, 49 B.R. 440, 444 (Bankr. N.D. Iowa 1985) ("[T]he issuance of a bond is intimately connected to debtor's financial integrity…").

17	Section 365(c)(2) and Section 365(e)(2)(B) of the Bankruptcy Code prohibit the assumption of financial accommodations, such as the Bonds, by a debtor in bankruptcy because they represent obligations to pay money based on the obligations of another. *See In re Thomas B. Hamilton Corp.*, 969 F.2d 1013, 1019 (11th Cir. 1992); *In re Wegner Farms*, 49 B.R. 440, 444 (Bankr. N.D. Iowa 1985) (in relation to surety bonds as financial accommodations only); *In re Edwards Mobile Home Sales, Inc.*, 119 B.R. 857, 859 (Bankr. M.D. Fla. 1990).

18	As a result, the Bonds cannot simply be transferred without the express consent of Lexon. A transfer to any entity, even the Reorganized Amyris, does not create any rights to acquire or assume any of the Bonds without the consent of Lexon. To the extent the Debtors are proposing or considering assuming and/or assigning the Bonds, it would violate 11 U.S.C. § 365(c)(2).

19	Accordingly, the Disclosure Statement fails to provide adequate information to a creditor as to whether or not it should vote to accept or reject the Plan.

## RESERVATION OF RIGHTS

20.	Nothing herein shall be considered a waiver of any rights or claims that Lexon might have against the Debtors and any indemnitors. Lexon reserves the right to amend and supplement this Objection and/or join in any other statements and/or objections related to the relief requested by the Debtors. The submission of this Objection by Lexon is not intended as, and shall not be construed as:

	a.	Lexon's admission of any liability or waiver of any defenses or limitations of any rights of Lexon with respect to any claims against one or more of the Bonds;

    b.    Lexon's waiver or release of any rights to exoneration it may have against any one with respect to its obligations pursuant to the Bonds;

    c.    Lexon's waiver or release of its right to be subrogated to the rights of one or more parties paid pursuant to the Bonds;

    d.    An election of remedies; or

    e.    Consent to the determination of Debtors' liability to Lexon by a particular Court, including, without limitations, the Bankruptcy Court.

## CONCLUSION

Based on the foregoing, Lexon respectfully requests the Court sustain the Objection and deny approval of the Disclosure Statement.

Dated: November 14, 2023                    Respectfully submitted,

*/s/ Jason C. Powell*
Jason C. Powell, Esq. (No. 3768)
THE POWELL FIRM, LLC
1813 N. Franklin Street
P.O. Box 289
Wilmington, DE 19899
(302) 650-1572
jpowell@delawarefirm.com

       -and-
*/s/ Brian D. Roy*
Lee E. Woodard, Esq.
Brian D. Roy, Esq.
HARRIS BEACH PLLC
333 W. Washington Street, Suite 200
Syracuse, New York 13202
Telephone: (315) 423-7100
Email: bkemail@harrisbeach.com
       broy@harrisbeach.com