## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| | (Jointly Administered) |
| Debtors.[1] | **Re: Docket No. 688** |

### LAVVAN, INC.'S OBJECTION TO DEBTORS'
### MOTION TO ESTABLISH DISCOVERY SCHEDULE AND PROTOCOLS

Lavvan, Inc. ("**Lavvan**"), by and through its undersigned counsel, objects to the *Debtors' Motion for Entry of an Order Establishing Confirmation Discovery Schedule and Protocols* (the "**Motion**"), and respectfully states as follows:

### Introduction[2]

1.      While Lavvan recognizes that a confirmation discovery schedule can be beneficial, the Debtors' proposed schedule moves at such a breakneck speed that it is unworkable and imposes such restrictive limits on discovery that it is unfairly prejudicial.

2.      First, the proposed schedule is too compressed to be realistic.  The Debtors want all fact and expert discovery, including document production and depositions, to start and finish in just 26 days (from November 27 to December 23), despite the fact that the confirmation hearing is scheduled for January 17.  The proposed schedule is so tight that it requires objecting parties to submit expert reports *before receiving document discovery or taking fact depositions*—an impossible task, since expert analysis and reports rely on fact discovery and therefore typically

---

[1]  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2]  Undefined capitalized terms have the same meaning as below.

start after the close of fact discovery.  The schedule then proposes that *all* depositions—fact and expert—happen in the week before the holiday break, and that expert depositions start on the same day document production is due (in other words, the day that the bulk of the documents likely will be produced and before anyone will have the chance to read them).  The schedule leaves no leeway to address any discovery issues, such as improper withholding of documents or privilege assertions.  Thus, the schedule prejudices objecting parties by hampering their ability to take orderly and effective discovery.  The schedule should be altered to provide for document production first, fact depositions second, and expert discovery third, with sufficient time between each to allow for meaningful review and, if necessary, Court intervention.  To accommodate this, the schedule should extend through the week before the confirmation hearing rather than cutting off three-and-a-half weeks before the hearing.

3.       Second, the protocol would significantly limit Lavvan's discovery rights for a Plan that appears to propose never to pay Lavvan a penny (*see* Lavvan's Disclosure Statement objection, filed contemporaneously herewith) and that simultaneously imposes mandatory third-party releases.  For example, the Debtors propose collective hard limits on the number and duration of depositions—7 hours aggregate for all objecting parties per witness, as if all objecting parties were a single party on all issues.  Although such an approach could make sense for certain common issues shared by objecting parties, it is untenable and prejudicial for additional objections involving Lavvan's unique issues.  As set forth in Lavvan's Disclosure Statement objection, the Plan appears to defer payment of Lavvan's secured claim in perpetuity, to the benefit of the Debtors' insiders and junior classes, who will receive some recovery.  As a result, the primary issues raised by Lavvan's forthcoming Plan objection—the Plan's unfair treatment of Lavvan's claim in Class 6—are unique to Lavvan.  But the Debtors' protocol would put the burden on

2

Lavvan to negotiate with the Official Committee of Unsecured Creditors, the two Ad Hoc Committees, and any other participating creditors—whose interests are separate from and not aligned with Lavvan—for a fraction of what Lavvan is otherwise entitled to under the Federal Rules.  Other parties should not be permitted to use up some or all of the time that Lavvan needs.

4.      Rather than arbitrarily place hard limits on depositions in a vacuum, the protocol instead should provide for objecting parties to coordinate and share time and numbers of depositions where they are objecting to the *same* issue—for example, third-party releases.  But Lavvan should not have its rights cut off by the fact that various creditor committees undoubtedly will have many questions for the Debtors and Foris about numerous issues with the Plan *other* than Lavvan's unfair treatment.

5.      Ultimately, any discovery schedule must account for the objecting parties' rights. The fact that the Debtors have proposed a Plan that has raised significant concern from most or all of its non-insider constituencies is not itself a basis to stunt discovery or impose an unfair schedule on the objectors.  Rather, that is a reflection of the problematic nature of the Plan.  If any party must bear the onus of confirmation, it should be the Debtors, who can adjust their proposed protocols and schedule to render it workable and fair.  The Debtors should choose between elongating the discovery schedule so that it concludes much closer to the January 17 confirmation hearing, or briefly adjourning confirmation (or both) to allow for a workable schedule.  For these reasons and those below, the Court should deny the Motion.

## Background

6.      Contemporaneously with this objection, Lavvan has filed its objection to the Debtors' *Disclosure Statement with Respect to Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors* (the "**Disclosure Statement**").  Lavvan hereby incorporates that objection by reference.

3

7.      As discussed in Lavvan's Disclosure Statement objection, the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors* ("**Plan**") places Lavvan's secured claim in a class of its own.  The Plan provides that Lavvan will retain its lien but will not begin to receive payments on its secured claim until after payment "in cash in full" of the secured claims to which Lavvan is subordinated.  But the Plan appears to be structured so that those claims will *never* be paid "in cash in full."  *See* Disclosure Statement Objection.  Thus, the Debtors appear to intend that repayment of Lavvan's secured claim would languish in permanent limbo, while junior unsecured classes would receive some recoveries.

8.      Lavvan intends to object to confirmation based on the Plan's apparent treatment of its claim.  Because Lavvan is the only creditor in its class, Lavvan expects that it will be the only party raising the main issues in its objection.  Thus, although Lavvan also objects to certain parts of the Plan that are common to all creditors (third-party releases), the thrust of Lavvan's objection will be unique to Lavvan.

## Objection

## I.    The Proposed Schedule and Protocol Unfairly Limit Lavvan's Discovery Rights

9.      As a general matter, "[p]arties to litigation are entitled to 'broad and liberal discovery.'"  *Burtch v. Luminescent Sys., Inc. (In re AE Liquidation, Inc.)*, 2012 WL 6139950, at *2 (Bankr. D. Del. Dec. 11, 2012) (quoting *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999)). The permissive nature of the discovery rules helps "effectuate their purpose that civil trials in federal courts [need not] be carried on in the dark.'"  *In re FKF Madison Grp. Owner, LLC*, 2012 WL 13032955 at *3 (Bankr. D. Del. Oct. 12, 2012) (bracketing in original) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 114–15 (1964)).  While the Court has discretion to fashion discovery orders, a confirmation scheduling order should balance the need for efficiency against the rights of the objecting parties.  *Cf. In re Am. Capital Equip., LLC,* 688 F.3d 145, 154 n.6 (3d Cir. 2012)

4

(cautioning that "bankruptcy courts must ensure that due process concerns are protected" before holding a confirmation hearing); *see also Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) ("Thus, although the district court is customarily accorded wide discretion in handling discovery matters, we will not uphold a ruling which has fail[ed] to adhere to the liberal spirit of the Rules or which results in fundamental unfairness at trial.") (internal quotations omitted; bracketing in original).

10.    Here, the Debtors' proposal would unfairly restrict Lavvan's discovery rights, both in terms of the unworkable schedule the Debtors propose to mandate and the unreasonable limitations that the Debtors seek to impose.

### A.    The Schedule Is Unworkable Because It Requires Expert Reports To Be Submitted Before Documents Are Produced And Depositions Are Taken

11.    The Debtors propose the following unworkably compressed discovery schedule:

- **Nov. 27**:  Deadline to serve discovery requests.

- **Dec. 4**:  Deadline to serve responses and objections to document requests.

- **Dec. 7**:  Deadline to submit initial expert reports.

- **Dec. 8**:  Deadline for written interrogatory responses.

- **Dec. 14**:  Deadline to submit rebuttal expert reports.

- **Dec. [15]**:  Deadline to substantially complete document production.

- **Dec. 15-23**:  Expert witness depositions.

- **Dec. 18–22**:  Fact witness depositions.

This schedule remarkably contemplates that all discovery—including document production, depositions, and expert discovery—will start *and* finish in 26 days (and conclude 25 days before the confirmation hearing).  The schedule is not realistic, including as glaringly shown by how the Debtors propose to treat expert discovery.

5

12.     The Debtors call for expert reports to be submitted on December 7—ten days after discovery begins, and *before receiving document productions, interrogatory responses, or taking fact depositions.*  Normally, expert discovery starts *after* the close of fact discovery, for good reason:  experts need the information developed through fact discovery to develop their opinions.  For example, Lavvan may object to the Plan's feasibility and submit expert testimony on that topic.  To submit a report, the expert would need to review and evaluate the Debtors' detailed projections and underlying financial information—far more than the barebones projections that the Debtors attached to the Disclosure Statement.  The expert also would need to assess the Debtors' bases for and explanations of those projections during fact depositions.  Requiring the expert to opine before receiving any of that information would unfairly prejudice the rights of objecting parties.

13.     Other aspects of the schedule are likewise impracticable because of its overly condensed nature:

- The Debtors propose that parties serve *all* of their discovery requests (documents, interrogatories, deposition notices) just **two business days** after the hearing to consider the discovery protocols and the Disclosure Statement, with no ability to supplement.  That is too short a timeframe.  It appears designed to cut off objectors' ability to pose informed requests based on continued analysis of the Plan and to take appropriate discovery as they refine their analysis.  Moreover, it is simply unnecessary to require final discovery requests to be submitted *7.5 weeks* before the confirmation hearing.

- The proposed November 27 deadline to serve deposition notices is unreasonable because it requires objecting parties to determine whom to depose *before seeing the documents and written discovery*.  Typically, parties have the opportunity to review interrogatory responses and documents to identify relevant witnesses (including interrogatories asking to identify individuals with knowledge).  The Debtors' proposal would require objecting parties to guess, and again provides no means to file supplemental deposition notices after receiving documents (indeed, depositions start the day of completion of production).

- The Debtors propose for expert depositions to begin *before* fact depositions—as set forth above, expert discovery should *follow* fact discovery, not precede it.

- The Debtors propose for depositions to begin on the day of the document production deadline.  Although the Debtors state that they will endeavor to produce on a "rolling basis," that means little in the context of such a condensed schedule, and experience

6

indicates that most documents will be produced on or near the deadline, particularly under this compressed schedule.

- The Debtors allow no time to resolve discovery disputes before depositions commence. Thus, if the Debtors or secured lenders were to withhold documents or written discovery responses for any reason, the schedule provides no time to resolve that dispute and allow for the receipt of additional documents in advance of depositions.

- The schedule crams all depositions (fact and expert) into a single one-week period: December 15-23, the last day of which is the *Saturday* before Christmas and thus a day on which many witnesses and lawyers will be unavailable (the same is likely true for the day before).  Indeed, the schedule contemplates that all fact depositions (up to *ten* per side) will take place in the *five* days between December 18-22.  That is not a realistic schedule during any week on the calendar, let alone the week before Christmas.

- The schedule contains no time for any supplemental discovery.  Nothing in the Bankruptcy Rules or the Federal Rules permits limiting objecting parties from having any opportunity to pursue follow-up document discovery based on information learned through initial document requests, depositions, or otherwise.

14.     The schedule thus prejudices objecting parties by requiring far too much to happen in far too little time, and in an order that does not make sense.  Expert discovery cannot take place concurrently with fact discovery.  All discovery cannot be crammed into the three-and-a-half week period before the holidays.  Depositions cannot all happen in the one week before Christmas.  The schedule must be extended so that documents and written discovery responses are produced first, followed by fact depositions after a reasonable period of time to review those documents, followed by expert discovery.  Given that the confirmation hearing is currently scheduled for January 17, the schedule can be decompressed by extending the discovery schedule into January.  If the Debtors, for reasons unexplained, insist on holding the hearing three-and-a-half weeks after completing discovery, then the hearing day should be continued.

### B.    The Protocol Unfairly Limits Lavvan's Discovery Rights

15.     The Debtors' protocol also would impose unfair limitations on three aspects of Lavvan's discovery rights:  (1) depositions; (2) requests for admission and interrogatories; and (3) ability to participate as a party in interest.

7

16.     *Limitations on Depositions*.  The proposed limitations on depositions are unfair to Lavvan.  The Debtors propose to limit depositions to ten total for all objecting parties collectively (whether on overlapping issues or not), and to seven hours total per witness.  As set forth above, three of the Debtors' other largest constituencies appear to have substantial Plan objections, not counting Lavvan.  Additional parties also may have objections.  Thus, at least four parties, and likely more, will participate in depositions.  Given this context, the artificial limitations that the Debtors have proposed are unfair to creditors like Lavvan with their own unique issues, whose time and number of depositions are at risk of being swallowed up by other parties.  The Debtors want to put the burden on their creditors to spar over time and bear the risk of not having adequate opportunity to take necessary discovery.  That gets it backwards—as the proponents of a troubling plan that appears drafted to benefit insiders and that has drawn opposition from all or most of the non-insider constituencies, the Debtors bear the burden of proving its confirmability and of providing appropriate discovery to that end.

17.     The cases that the Debtors cite in support of the concept of collectively limiting depositions are readily distinguishable both in terms of (i) the number of separate parties participating in confirmation and (ii) whether their issues were common or distinct.  Indeed, many of the Debtors' cited cases were mass tort cases involving an order of magnitude greater number of objecting parties, all focused on common issues.  *See*, *e.g.*, Motion ¶ 12 n.7 (citing *Mallinckrodt*, *Imerys*, and *Purdue* as the lead examples to which the Debtors compare themselves).  The Debtors have cited no authority to force a handful of creditors pursuing distinct objections to be limited by the time the others spend in deposition.

18.     The Court should not impose arbitrary hard limits on depositions.  To the extent the Court is inclined to enter any order now with respect to depositions that the parties have not yet

8

even had the occasion to consider—which it should not—Lavvan would suggest a provision like that adopted in the *Tribune* case cited by the Debtors: "Parties shall work cooperatively as to the order of questioning, the allocation of time and the extent to which any deposition should extend beyond seven (7) hours of questioning, provided that all rights are reserved for all Parties to seek relief respecting such matters in the event disagreements cannot be resolved." *In re Tribune Co.*, No. 08-13141 (Bankr. D. Del. Apr. 5, 2012), ECF 11326 ¶ 11. Such a provision recognizes that depositions of many witnesses likely will not require 7 hours, but certain key witnesses whose testimony is germane to most or all objections may require more.

19. *Limitations on Interrogatories and Requests for Admission.* The Debtors propose to limit interrogatories to ten and to eliminate requests for admission. But the Debtors offer no basis to truncate or eliminate these useful forms of discovery, which can be both more effective and less burdensome for certain issues than document discovery or depositions. Because "admission requests serve the highly desirable purpose of eliminating the need for proof of issues upon trial, there is strong disincentive to finding an undue burden where the requested party can make the necessary inquiries without extraordinary expense or effort." *Sun Elec. Corp. v. Allen Grp.*, 1985 U.S. Dist. LEXIS 22571, *6 (N.D. Ill. Feb. 14, 1985) (quoting *Al-Jundi v. Rockefeller*, 91 F.R.D. 590, 594 (W.D.N.Y. 1981)); *see also BP Amoco Chem. Co. v. Flint Hill Res. LLC*, 2008 WL 4542738, at *1 (N.D. Ill. 2008) (because requests for admission "are generally quite important in resolving issues," "[n]o presumptive limit has ever been set on the number of requests a party can propound"). Similarly, as set forth in Lavvan's objection to the Disclosure Statement, the Plan's treatment of Lavvan's claim is vague, and Lavvan may submit contention interrogatories to determine the Debtors' position. Like requests for admission, "contention interrogatories are 'designed to assist parties in narrowing and clarifying the disputed issues . . . .'" *Sofia* v. *Esposito*,

2019 WL 6529432, at *7 (S.D.N.Y. Dec. 4, 2019) (quoting *Wechsler v. Hunt Health Sys., Ltd.*,

1999 WL 672902, at *1 (S.D.N.Y. Aug. 27, 1999)).  The Court should reject the Debtors' attempt

to limit or eliminate interrogatories and requests for admission from what is set forth in Federal

Rules.

20. *Notice of Intent*.  The Debtors purport to require a party seeking to participate in

the confirmation proceedings to file a "notice of intent," and request language in the proposed

order stating that "[o]nly a Proposed Participant who file[s] a Notice of Intent, to which the Court

does not sustain an objection, may take part in the Confirmation Proceedings."  Proposed Order ¶

3.  The Court should reject this limitation on a party's ability to participate in these cases.  The

Bankruptcy Code allows any party-in-interest to appear and be heard on issues in the case.

Confirmation is the most fundamental issue in the case.  *See* 11 U.S.C. § 1109.  The Debtors may

not constrain the standing that the Bankruptcy Code grants to participating in bankruptcy

proceedings by imposing an artificial "notice" requirement that, at best, appears to be a trap for

the unwary.

### Conclusion

21. Because the Debtors' proposed schedule is unworkable and their proposed protocol

is unfairly limiting, the Court should deny the Motion.

*[Signature page follows]*

10

Dated: November 14, 2023

Respectfully submitted,

/s/ Russell C. Silberglied
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Cory D. Kandestin (No. 5025)
Emily R. Mathews (No. 6866)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:       collins@rlf.com
                   silberglied@rlf.com
                   kandestin@rlf.com
                   mathews@rlf.com

          -and-

Jason Cyrulnik
Paul Fattaruso
**CYRULNIK FATTARUSO LLP**
55 Broadway, Third Floor
New York, New York  10006
Telephone:  (646) 844-2466
Email:       cyrulnik@cf-llp.com
                   pfattaruso@cf-llp.com

*Counsel for Lavvan, Inc.*