IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

Hearing Date: December 12, 2023 at 11:00 a.m. (ET)
Objection Deadline: December 5, 2023 at 4:00 p.m. (ET)

## DEBTORS' MOTION FOR APPROVAL OF SETTLEMENT BETWEEN THE DEBTORS AND THE JVN PARTIES

The above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases") hereby move (the "Motion") this Court (the "Court"), pursuant to rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and sections 363 and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order substantially in the form attached hereto as **Exhibit A**, approving the settlement (the "Settlement"), by and between the Debtors, on the one hand, and JVN Entertainment, Inc. ("JVN Entertainment") and Jonathan Van Ness ("Van Ness" and, together with JVN Entertainment, "JVN"; JVN together with the Debtors, the "Parties"), on the other hand. The terms of the Settlement are fully set forth in that certain settlement agreement (the "Settlement Agreement"),[2] a true and correct copy of which is attached hereto as **Exhibit B**. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Settlement Agreement.

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

3. On August 9 and August 21, 2023 (as applicable, the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On August 27, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"), consisting of the following seven members: (i) Cosan U.S. Inc., (ii) U.S. Bank Trust Company, National Association as Trustee, (iii) Sartorius Stedim North America, Inc., (iv) Hearst Magazine Media, Inc., (v) Wiley Companies, (vi) Park Wynwood, LLC, and (vii) Allog Participacoes, Ltda. *See* Docket No. 152.

5.  The Debtors were founded in 2003 to create a more stable supply of a key anti-malarial treatment. Through the Debtors' cutting-edge science, artemisinin—the most effective anti-malarial drug in the world—is now consistently available to treat the deadly disease. Using the same technological innovations that produced artemisinin, the Debtors have become the world's leading manufacturer of ingredients made with synthetic biology. The Debtors provide sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products. A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), incorporated herein by reference.

6.  On January 8, 2021, Debtor Amyris Clean Beauty, Inc. ("ACB") and JVN entered into that certain *Licensing and Endorsement Agreement*, as amended by that certain *First Amendment to Licensing and Endorsement Agreement* effective September 1, 2021 (collectively, the "Licensing Agreement"). Pursuant to the Licensing Agreement, among other things, JVN granted ACB a limited license of Van Ness's name, image, and likeness in order to develop, produce, and promote certain agreed products and materials comprising the JVN Hair brand (the "Brand") in exchange for payment of royalties and other amounts as set forth more fully in the Licensing Agreement.

7.  In connection with the development and commercialization of the Brand, ACB registered the "JVN" trademark in various jurisdictions in certain classes (such as hair care preparations) central to the Brand (collectively, the "Core IP"). ACB's registration of the Core IP was contemplated by the Licensing Agreement. ACB also registered the "JVN" trademark in various jurisdictions in other classes (such as skin care preparations and retail stores), which JVN

contends were neither contemplated or permitted by the Licensing Agreement nor consented to by JVN (collectively, the "Subject Marks"). Prior to the Petition Date, JVN informed the Debtors that it strongly disputed the Debtors' registration of the Subject Marks and asserted, among other things, that the Debtors' registration of the Subject Marks, among other things, violated the License Agreement by misappropriating Van Ness' personality rights and accordingly demanded that ACB assign and transfer the Subject Marks to JVN. However, ACB did not do so prior to the Petition Date.

8. On November 15, 2023, JVN filed proof of claim no. 664 against ACB (the "Proof of Claim"), which Proof of Claim included, among other things, an unliquidated general unsecured claim for "damages arising from Debtor's improper application for the Subject Marks and subsequent failure to assign the Subject Marks to JVN before the Petition Date (the "Damages Claim")."

**Relief Requested**

9. By this Motion, pursuant to Bankruptcy Rule 9019 and sections 105 and 363 of the Bankruptcy Code, the Debtors request the entry of an order, substantially in the form attached hereto as **Exhibit A**, approving the Settlement Agreement and, to the extent necessary, authorizing the Debtors to transfer the Subject Marks to JVN.

**Basis For Relief Requested**

**A.    Entry into the Settlement is Appropriate Under Bankruptcy Rule 9019**

10. Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases.³ Bankruptcy Rule 9019 provides, in relevant part, that on motion by the

---

3   *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

trustee and after notice and a hearing, the Court may approve a compromise or settlement.[4] In deciding whether to approve a settlement pursuant to Bankruptcy Rule 9019, courts consider whether the compromise is fair, reasonable, and in the best interests of the estate.[5] Although approval of a compromise is within the discretion of the bankruptcy court,[6] the court should not substitute its judgment for that of a trustee or debtor in possession.[7] Accordingly, courts generally defer to a debtor-in-possession's business judgment when there is a legitimate business justification for its decision.[8]

11. The United States Court of Appeals for the Third Circuit has provided four criteria that a bankruptcy court should consider in determining whether a compromise should be approved: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors.[9] When applying the *Martin* factors to a particular motion, "the court is not supposed to have a 'mini-trial' on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness."[10] A court need not be convinced that a proposed settlement is the best possible settlement, but need only "conclude that it is within the reasonable range of litigation possibilities."[11]

---

[4] Fed. R. Bankr. P. 9019(a).
[5] *See, e.g., In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).
[6] *See, e.g., In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006)
[7] *See, e.g., In re Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996).
[8] *Martin*, 91 F.3d at 395.
[9] *Id.* at 393.
[10] *Aetna Casualty & Surety Co. v. Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D.N.J. 2000) (internal quotations omitted); *see also In re TSIC, Inc.*, 393 B.R. 71, 79 (Bankr. D. Del. 2008); *World Health*, 344 B.R. at 296.
[11] *World Health*, 344 B.R. at 296 (internal citations omitted).

12. The Debtors believe and submit that the compromise embodied in the Settlement is fair, reasonable, and in the best interests of the Debtors, their creditors, and the estates, and satisfies each of the applicable *Martin* factors.

13. ***Probability of Success in Litigation***. If JVN commenced litigation against the Debtors with respect to the Subject Marks, the Debtors believe that there is a reasonable possibility that JVN would prevail. The Licensing Agreement does not contemplate that the Debtors have the right to the "JVN" mark for all purposes and JVN asserts that he did not consent to the Debtors' registration of the Subject Marks that bear his initials.

14. ***Likely Difficulties in Collection***. Because of the nature of the dispute between the Parties, this factor is not relevant.

15. ***Complexity, Expense, Delay, and Inconvenience***. The dispute between the Debtors and JVN involve complicated issues at the intersection of intellectual property and contract law and, if litigated, would necessarily be expensive. Further, the Debtors believe that, under the circumstances, the inconvenience to Van Ness—a valuable partner and a central part of the Brand that bears his initials—attendant to any further delay outweighs any benefit to the Debtors in retaining the Subject Marks.

16. ***Paramount Interest of Creditors***. The compromise set forth in the Settlement Agreement is in the paramount interest of the Debtors' creditors because, as described above, approval of the Settlement will avoid the time and expense of costly intellectual property litigation with respect to the Subject Marks. Through the Settlement, JVN will release and waive the Damages Claim against the Debtors, reducing the total potential amount of claims that may be asserted in these Chapter 11 Cases.

17. Accordingly, the Debtors believe that the compromise embodied in the Settlement is fair, reasonable, and in the best interests of the Debtors and their estates and stakeholders. Moreover, the Settlement is the product of extensive, active, good-faith discussions and arms'-length negotiations among the Parties. For these reasons, the Debtors believe that the Settlement represents a beneficial outcome for the Debtors' estates and should be approved pursuant to Bankruptcy Rule 9019.

B. **Entry into the Settlement is Appropriate Under Sections 363 and 105(a) of the Bankruptcy Code, to the Extent Applicable**

18. Pursuant to 11 U.S.C. § 363(c)(1), the Debtors may "enter into transactions . . . in the ordinary course of business" and "use property of the estate in the ordinary course of business without notice or a hearing." Here, the Settlement requires that the Debtors shall execute the Assignment Agreement, thereby transferring the Subject Marks to JVN (the "IP Transfer").

19. Accordingly, to the extent the IP Transfer implicates sections 363(b) or 105(a) of the Bankruptcy Code, the Debtors seek authority thereunder for entry of the proposed order approving the Settlement.[12] "Settlement agreements frequently involve the disposition of assets of the estate."[13] Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[14]

---

[12] Arguably, because the Debtors improperly registered the Subject Marks in the first instance, the Subject Marks are not property of the Debtors' estates. However, in an abundance of caution, the Debtors seek the authority to transfer the Subject Marks to JVN pursuant to section 363 of the Bankruptcy Code by this Motion.

[13] *Martin*, 91 F.3d at 394; *see also Goodwin v. Mickey Thompson Entertainment Group, Inc. (In re Mickey Thompson Entertainment Group, Inc.)*, 292 B.R. 415, 421 (B.A.P. 9th Cir. 2003) ("[D]isposition by way of 'compromise' of a claim that is an asset of the estate is the equivalent of a sale of the intangible property represented by the claim.") (citing *Martin*, among other cases); *In re Schuerman*, Case No. 07-31745, 2008 WL 336393, at *8 (Bankr. N.D. Ohio Feb. 5, 2008) ("In addition, to an extent that is presently not clear to the court, the compromise may involve the sale of assets of the estate.") (citations omitted).

[14] 11 U.S.C. § 363(b)(1); *see also Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999); *Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and

20. In determining whether authorization of the use, sale, or lease of property of the estate is appropriate, courts normally apply the business judgment standard.[15] Under the business judgment standard, so long as a debtor's decision is reasonable and in the best interests of the bankruptcy estate, courts generally defer to the business judgment of the debtor's management.[16]

21. The Debtors submit that the terms of the Settlement reflect a sound exercise of the Debtors' business judgment. If the Debtors were to engage in litigation over the Subject Marks, they would incur professional fees and other expenses even though they may not prevail in the litigation. The compromise set forth in the Settlement Agreement avoids the incurrence of these costs and provides an efficient resolution of claims made prior to the Petition Date. Accordingly, the Debtors' entry into the Settlement should be authorized and approved pursuant to section 363(b) of the Bankruptcy Code.

22. Moreover, pursuant to section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[17] Section 105(a) has been interpreted to expressly grant bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain."[18]

---

court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy.").

[15] *See Martin*, 91 F.3d at 395; *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

[16] *See Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task. Delaware courts have said that it may be accomplished by showing either irrationality or inattention.").

[17] 11 U.S.C. § 105(a).

[18] *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (en banc).

23. Authorizing the Debtors' entry into the Settlement and approval of its terms are well within the equitable powers of this Court. As described in further detail above, approval of the Settlement is in the best interest of the Debtors, their estates, and their stakeholders. Accordingly, the Debtors respectfully submit that the compromise set forth in the Settlement satisfies the requirements of sections 363 and 105(a) of the Bankruptcy Code and request that the Court authorize the Debtors' entry into the Settlement by granting this Motion.

## Waiver of Stay

24. Time is of the essence concerning the consummation of the Settlement. As such, to ensure the relief requested in the Motion is implemented immediately, the Debtors request that this Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

25. The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) counsel to the Committee, (i) White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, IL 60606, Attn: Gregory F. Pesce, Esq. (gregory.pesce@whitecase.com) and Andrew F. O'Neill, Esq. (aoneill@whitecase.com), and (ii) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: John Ramirez, Esq. (john.ramirez@whitecase.com) and Andrea Kropp, Esq. (andrea.kropp@whitecase.com); (c) co-counsel to the Official Committee of Unsecured Creditors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801, Attn: Christopher M. Samis (csamis@potteranderson.com), Katelin A. Morales (kmorales@potteranderson.com), and Sameen Rizvi, Esq. (srizvi@potteranderson.com); (d) counsel to the DIP Lenders, DIP Agent, and the Foris

Prepetition Secured Lenders, Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com) and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com); (e) co-counsel to the DIP Lenders, the DIP Agent, and the Foris Prepetition Secured Lenders, Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com); (f) counsel to JVN Entertainment and Jonathan Van Ness; and (g) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

## No Prior Request

26. No prior request for the relief sought in this Motion has been made to this or any other court.

## Conclusion

WHEREFORE, the Debtors respectfully request the entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: November 28, 2023

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Steven W. Golden*
Richard M. Pachulski, (admitted *pro hac vice*)
Debra I. Grassgreen, (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell, (admitted *pro hac vice*)
Steven W. Golden (DE Bar No. 6807)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Tel: 302-652-4100
Fax: 302-652-4400
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
joneill@pszjlaw.com
jrosell@pszjlaw.com
sgolden@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*