# EXHIBIT B

# SETTLEMENT AGREEMENT

This *Settlement Agreement* (this "Agreement") is entered into as of November 28, 2023 by and among (i) Amyris, Inc. and its affiliated debtors and debtors in possession (the "Debtors"), including Amyris Clean Beauty, Inc. ("ACB"); and (ii) JVN Entertainment, Inc. and Jonathan Van Ness (collectively, "JVN" and, together with the Debtors, the "Parties" and each individually a "Party").

## Recitals

A.  On January 8, 2021, ACB and JVN entered into that certain *Licensing and Endorsement Agreement*, as amended by that certain *First Amendment to Licensing and Endorsement Agreement* effective September 1, 2021 (collectively, the "Licensing Agreement").

B.  A dispute subsequently arose relating to the ownership of certain trademarks and uses thereof under the Licensing Agreement. Specifically, Debtors claim they hold all right title and interest to the Subject Marks (defined below) under the Agreement. On the other hand, JVN claims that they hold all right title and interest to the Subject Marks (collectively, the "Disputed IP Matters").

C.  On August 9, 2023, certain of the Debtors (including ACB) filed for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the jointly-administered chapter 11 cases pending as *In re Amyris, Inc.*, Case No. 23-11131 (TMH) (the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

D.  On November 15, 2023, JVN filed a proof of claim in the Chapter 11 Cases against ACB, which claim was assigned claim number 664 (the "Proof of Claim").

E.  The Parties wish to resolve the Disputed IP Matters on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing, the Parties stipulate and agree as follows:

## Agreement

1.  The foregoing Recitals, set forth in paragraphs A through E, inclusive, are incorporated herein as an integral part of this Agreement.

2.  The Parties warrant that they are authorized to enter into this Agreement and that by their signatures below, it will become a binding agreement, subject only to the satisfaction of the conditions set forth in paragraph 5 hereof.

3.  On the Effective Date, ACB and JVN agree that, on and after the Effective Date, ACB shall be deemed to hold all right, title, and interest in and to the trademarks set forth in **Appendix 1** (the "Core IP") and will continue to hold all right, title, and interest in and to the Core IP. On and after the Effective Date, JVN agrees not to contest that the Core IP is properly owned and controlled by ACB. For the avoidance of doubt, for the purpose of this paragraph 3, to the

1

extent that ACB sells or otherwise transfers its interest in the Core IP to a third party (the "Purchaser") in accordance with the Bid Procedures Order [Docket No. 553], the definition of "ACB" shall include the Purchaser.

4. On the Effective Date, ACB and JVN agree to execute the *Trademark Assignment Agreement* and *Declaration of Assignment* (collectively, the "Assignment Agreement"), attached hereto as **Exhibit A-1** and **A-2**, pursuant to which ACB and its successors, assigns, and purchasers (including, without limitation, the Purchaser) will cause any of the Debtors' right, title, and interest in and to the trademarks set forth in **Appendix 2** (the "Subject Marks") to be transferred to JVN Entertainment, Inc. On and after the Effective Date, the Debtors agree not to contest that the Subject Marks are properly owned and controlled by JVN.

5. This Agreement is not effective unless and until all of the following have occurred:

   a. The Debtors have filed a motion (the "9019 Motion") in the Chapter 11 Cases pursuant to section 105 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking approval of this Agreement.

   b. The Bankruptcy Court has granted the 9019 Motion and entered an order (the "Order") thereon.

   c. The time to commence an appeal of the Order pursuant to Bankruptcy Rule 8002(a) has run and no appeal has been filed, or such appeal has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of *certiorari* was sought.

   d. The Order has not been stayed pursuant to Bankruptcy Rule 8007.

The first date on which all of the preceding (paragraphs 5.a through 5.d, inclusive) have occurred is the "Effective Date." Upon the Effective Date, this Agreement shall become effective and shall be binding on the Parties.

6. To the maximum extent permitted by law, on the Effective Date, JVN, on behalf of JVN, JVN's agents, successors, assigns, attorneys, and representatives (collectively, the "JVN Parties"), hereby release, acquit, and discharge, and covenant and agree that they will refrain and forbear from commencing, instituting, prosecuting, or continuing, any lawsuit, action, claim, right, demand, cause of action, suit or other proceeding (including filing any further claim) against the Debtors, their estates, their affiliates, predecessors, successors, assignors, and assignees (collectively, the "Amyris Parties"), in each case solely with respect to the Subject Marks and the Damages Claim (as such term is used and defined in the Proof of Claim). For the avoidance of doubt, the foregoing waiver and release by the JVN Parties applies solely to the Subject Marks and the Damages Claim and does not apply to any other lawsuit, action, claim, right, demand, cause of action, suit or other proceeding of any of the JVN Parties, whether now existing or hereafter arising, whether or not asserted or described in the Proof of Claim.

7. To the maximum extent permitted by law, on the Effective Date, the Amyris Parties hereby release, acquit, and discharge, and covenant and agree that they will refrain and forbear

from commencing, instituting, prosecuting, or continuing, any lawsuit, action, claim, right, demand, cause of action, suit or other proceeding against the JVN Parties, in each case solely with respect to the Subject Marks and the Damages Claim (as such term is used and defined in the Proof of Claim).

8.  The Parties hereby acknowledge that it is their intention that, as of the Effective Date, the releases set forth in paragraphs 6 and 7 shall be effective as a full and final release of and as a bar with prejudice to each and every claim as set forth therein that the JVN Parties and Amyris Parties have or had against the parties whom they are releasing in paragraphs 6 and 7. In connection with such waiver and relinquishment, the Parties acknowledge that they or their attorneys or agents may hereafter discover facts different from or in addition to the facts that they now know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to, as of the Effective Date, hereby fully, finally, absolutely, and forever release any and all claims released pursuant to paragraphs 6 and 7, which now do exist, may exist or heretofore have existed between them, and that in furtherance of such intentions the release as given herein by the Parties, shall be and remain in effect as a full and complete release of the claims released, notwithstanding the discovery of any such different or additional facts.

Notwithstanding the discovery of any such additional or different facts, the Parties certify that they have read Section 1542 of the California Civil Code set forth below:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Parties waive application of Section 1542 of the California Civil Code, to the extent applicable, and any other statutes, common law rights, rules or the like which may operate to limit the intent of this Agreement with respect to the claims released above. The Parties understand and acknowledge the significance and consequence of this waiver of Section 1542 of the California Civil Code is that even if the JVN Parties and Amyris Parties should eventually suffer additional damages on account of the claims released above, they will not be permitted to make any claim for such damages.

It is expressly understood and agreed by the Parties that the facts with respect to this Agreement may turn out to be different from the facts now known or believed by the Parties to be true. Each of the Parties expressly assumes the risk of the facts turning out to be different and agrees that this Agreement will be in all respects effective and not subject to termination or rescission by reason of any such differences.

9.  Should any action, suit, or proceeding be commenced by any Party to this Agreement to enforce any provision hereof, the prevailing Party shall be entitled to recover reasonable attorneys' fees and costs and expenses incurred in said action, suit or proceeding, including any appeal.

10. The Parties acknowledge that this Agreement represents a compromise of disputed claims and that, by entering into this Agreement, none of the Parties admits or acknowledges the existence of any liability or wrongdoing.

11. Each Party represents and warrants to all of the other Parties and each of them, that it has not assigned or transferred any of the claims or interests addressed in this Agreement. Each Party agrees to defend and indemnify all of the other Parties and each of them against any claim based upon, arising out of, or arising in connection with any such alleged or actual assignment or transfer.

12. The Parties and each of their respective successors, assigns, and purchasers (including, without limitation, the Purchaser) hereby provide assurances of cooperation to each other and agree to take any and all necessary and reasonable steps, including executing any other and further documents or instructions and performing any other and further acts, appropriate to effect the intent of this Agreement. JVN shall bear any and all costs and fees associated with the filing and recordation of any such documents, including any assignments involving the Subject Marks.

13. The Parties specifically consent to the jurisdiction and power of the Bankruptcy Court to determine any dispute relating to this Agreement, including any claim for breach of this Agreement, and to the authority of the Bankruptcy Court to enter a final judgment in connection therewith.

14. The Parties may give notice to each other by sending a written communication by overnight mail or e-mail to the Parties at the addresses set forth below:

    a. If to JVN:

        JVN Entertainment, Inc.
        c/o Hansen, Jacobson, Teller, Hoberman, Newman, Warren, Richman, Rush, Kaller, Gellman, Meigs & Fox, L.L.P.
        Attn: Adam Kaller, Esq.
        450 N. Roxbury Drive, 8th Floor
        Beverly Hills, CA 90210
        ak@hjth.com

        *with a copy (which shall not constitute notice) to*:

        Blank Rome LLP
        Attn: Joe Mintz, Esq.
        1201 N. Market Street, Suite 800
        Wilmington, DE 19801
        mintz@blankrome.com

    b. If to the Debtors:

        Amyris, Inc.
        Attn: General Counsel

>   5885 Hollis Street, Suite 100
>   Emeryville, CA 94608
>   legal@amyris.com
>
>   *with a copy (which shall not constitute notice) to*:
>
>   Pachulski Stang Ziehl & Jones LLP
>   Attn: Steven W. Golden
>   919 North Market Street, 17th Floor
>   Wilmington, DE 19801
>   sgolden@pszjlaw.com

15. This Agreement is to be construed under and governed by the internal laws of the State of California (without regard to conflict of laws principles) and, as applicable, the Bankruptcy Code.

16. This Agreement contains the entire agreement and understanding among the Parties concerning the matters set forth herein and supersedes all prior or contemporaneous stipulations, negotiations, representations, understandings, and discussions among the Parties or their respective counsel with respect to the subject matter of this Agreement. No other representations, covenants, undertakings, or other earlier or contemporaneous agreements respecting these matters may be deemed in any way to exist or bind any of the Parties. The Parties acknowledge that they have not executed this Agreement in reliance on any promise, representation, or warranty other than those contained in this Agreement.

17. This Agreement is the product of negotiation among the Parties and represents the jointly conceived and bargained-for language mutually determined by the Parties to express their intentions in entering into this Agreement. Any ambiguity or uncertainty in this Agreement is therefore to be deemed to be caused by or attributable to the Parties collectively and is not to be construed against any particular Party. Instead, this Agreement is to be construed in a neutral manner, and no term or provision of this Agreement as a whole is to be construed more or less favorably to any one Party. Furthermore, the Parties hereby waive California Civil Code § 1654.

18. If the Bankruptcy Court declines to approve this Agreement despite the Parties' efforts to obtain such approval, then (i) this Agreement will be null and void and of no force or effect; (ii) no Party shall have any obligations to any other Party arising out of this Agreement; and (iii) the Parties' respective rights and remedies with respect to all matters addressed by this Agreement will be fully reserved and the Parties will be restored to their respective positions*, status quo ante*, as of the date on which this Agreement was executed.

19. This Agreement may not be modified except as mutually agreed to in a writing signed by all the Parties.

20. No waiver, forfeiture, or forbearance of or concerning any provision of this Agreement shall be deemed or shall constitute a waiver, forfeiture or forbearance of or concerning any of the other provisions hereof, or a continuing waiver, forfeiture or forbearance.

21.   If, for any reason, any provision of this Agreement is determined to be invalid or unenforceable, such provision shall be automatically reformed to embody the essence of that provision to the maximum extent permitted by law, and the remaining provisions of this Agreement shall be construed, performed and enforced as if the reformed provision had been included in this Agreement at inception.

22.   This Agreement may be executed in several counterparts, and any and all such executed counterparts, taken together, will constitute a single agreement binding on all Parties to this Agreement. Electronic signatures and facsimiles of signatures may be taken as the actual signatures.

23.   This Agreement shall be binding upon and shall inure to the benefit of the Parties' heirs, assigns, executors, administrations, successors, subsidiaries, divisions, purchasers (including, without limitation, the Purchaser) and affiliated corporations and partnerships, past and present, and trustees, directors, owners, shareholders, partners, agents, and employees, past and present.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth above (but subject to the provisions regarding effectiveness set forth herein).

| | |
|---|---|
| **AMYRIS, INC. AND ITS AFFILIATED DEBTORS IN POSSESSION (INCLUDING AMYRIS CLEAN BEAUTY, INC.)** | **JONATHAN VAN NESS AND JVN ENTERTAINMENT, INC.** |

*DocuSigned by:*
*Han Kieftenbeld*
A144E0E76B6E45A...

*by:* Han Kieftenbeld

*its:* Interim Chief Executive Officer

*by:* _____

*its:* _____

7

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth above (but subject to the provisions regarding effectiveness set forth herein).

| **AMYRIS, INC. AND ITS AFFILIATED DEBTORS IN POSSESSION (INCLUDING AMYRIS CLEAN BEAUTY, INC.)** | **JVN ENTERTAINMENT, INC.** |
|---|---|
| *by:* _____ | *by:* ___Jonathan Van Ness___ |
| *its:* _____ | *its:* ___President___ |

**JONATHAN VAN NESS**

_____
(DocuSigned by: 6C8DC719BF85486...)

7

## Appendix 1 – Core IP

Trademark applications and registrations for the mark **JVN** in the following classes and countries:

| Classes | Registrations |
|---|---|
| <ul><li>Cl. 3: Hair care preparations; temporary hair coloring preparations as part of a shampoo and/or conditioner product and not as permanent treatments like bleaches and dyes; hair treatment products, namely, non-medicated hair treatment preparations for cosmetic purposes; cream for body and curl definition for the hair being hair care preparations</li><li>Cl. 5: Hair care products in the nature of medicated hair care preparations</li><li>Cl. 18: Cosmetic toiletry bags sold empty</li><li>Cl. 21: Hair brushes and hair combs</li></ul> | <ul><li>US 90784559<ul><li>90/980426</li></ul></li><li>IR 1656591<ul><li>AU</li><li>BR</li><li>CA</li><li>MX</li><li>MY</li><li>NZ</li></ul></li><li>UK00003706332</li><li>EU 018571951</li></ul> |

## Appendix 2 – Subject Marks

Trademark applications and registrations for the mark JVN in the following classes and countries:

| | |
|---|---|
| • Cl. 3: Non-medicated skin care preparations; facial products, namely, oil, cream, beauty serum, gel, lotion, cleanser, toner and skin softener; body products, namely, oil, cosmetic gel, lotion; eye products, namely, eye cream; moisturizers for the body, skin, and face; anti-aging treatments, namely, oil, cream, beauty serum, gel, lotion, cleanser, toner and skin softener<br>• Cl. 9: Downloadable written articles featuring lifestyles, skin care, hair care and beauty products, and techniques for using such skin care, hair care and beauty products; downloadable digital media, namely, audio files and video files featuring lifestyles, skin care, hair care and beauty products, and techniques for using such skin care, hair care and beauty products<br>• Cl. 11: Electric hair dryers<br>• Cl. 26: Electric hair curlers, other than hand implements<br>• Cl. 35: retail stores and online retail store services featuring non-medicated skin care preparations; facial products, hair care preparations, hair coloring preparations, hair care products, hair coloring products, hair treatment products, cream for body and curl definition for the hair, electric hair dryers, electric styling combs, brushes, electric hair curlers, cosmetic toiletry bags, hair brushes, hair combs; providing a website featuring consumer information in the fields of cosmetics, skincare and haircare; providing consumer information in the fields of cosmetics, skincare and haircare<br>• Cl. 41: Education services in the nature of business training services and master classes led by experts in the field of skin care, hair care and beauty products; Entertainment services, namely, online services in the nature of providing a website featuring non-downloadable written articles and audiovisual media, namely, non-downloadable videos and audio recordings, in the field of lifestyles, skin care, hair care and beauty products, and techniques for using such skin care, hair care and beauty products<br>• Cl. 42: Providing a website allowing users to download written articles and digital media, namely, videos, and audio recordings, in the field of lifestyles, skin care, hair care and beauty products, and techniques for using such skin care, hair care and beauty products | • US 97302716<br>• IR 1695348<br>  • AU<br>  • BR<br>  • CA<br>  • CN<br>  • EU<br>  • UK<br>  • MX<br>  • MY<br>  • NZ<br>  • SG<br>  • TH |

| | |
|---|---|
| • Cl. 44: Hair cutting, hair styling, hairdressing, beauty salon, all hair coloring except for temporary treatments as part of a shampoo and/or conditioner, make-up applications, and cosmetician services; Hair dressing and grooming services for men and women | |
| • Cl. 03: Non-medicated skin care preparations; oil; facial cream; facial lotion; facial cleanser; facial toner; body oil; body lotion; eye cream; moisturizers for the body; moisturizers for the skin; moisturizers for face; anti-aging cream; anti-aging lotion; anti-aging toner; lotion for facial and body care; after-sun oil [cosmetics]; anti-wrinkle skin care preparation; skin care essence, not for medical purposes; beauty gels; exfoliating cream; eye make-up; anti-aging moisturizing lotion(cosmetic); anti-aging cosmetic gel; smoothing toner | • CN 71427014 |
| • Cl. 35: Marketing services; providing business information via a web site; commercial information and advice for consumers in the choice of products and services; retail or wholesale services for pharmaceutical, veterinary and sanitary preparations and medical supplies | • CN 71427029 |

DE:4875-0265-6910.8 03703.004

# EXHIBIT A-1

**TRADEMARK ASSIGNMENT AGREEMENT**

This Trademark Assignment Agreement ("Agreement") is made and entered into as of November 28, 2023 by and between Amyris, Inc. and Amyris Clean Beauty, Inc. (collectively, "Assignor"), and JVN Entertainment, Inc. and Jonathan Van Ness, (collectively, "Assignee"). Assignor and Assignee each shall be a "Party," and, collectively, the "Parties." All capitalized terms not otherwise defined herein shall have the respective meanings set forth in the Settlement Agreement (as defined below).

**WHEREAS**, pursuant to that certain Settlement Agreement, dated as of November 21, 2023 by and among Assignor and Assignee ("Settlement Agreement"), Assignor has agreed to assign, transfer, convey, and deliver to Assignee all rights, title, and interests to the Subject Marks designated in Appendix 2 of the Settlement Agreement;

**WHEREAS**, Assignor is the owner of all right, title and interest in and to the Subject Marks and applications and registrations therefor, as set forth on Schedule A hereto, including all common law rights therein and the goodwill associated therewith (the "Trademarks"); and

**WHEREAS**, Assignee now wishes to acquire from Assignor, and Assignor and now wishes to assign to Assignee, all rights, title, and interests in and to the Trademarks.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the Settlement Agreement, the Parties hereto agree as follows:

1. Assignment. Assignor hereby irrevocably assigns, transfers, conveys and sets over absolutely to Assignee and its successors and assigns, and Assignee hereby accepts the assignment, transfer, conveyance, and setting over of, all of Assignor's rights, title and interests in and to the Trademarks, together with (a) the goodwill and common law rights associated therewith, (b) all other corresponding rights secured under the laws of the United States and any foreign country, (c) all claims and rights to sue for damages by reason of past, present or future infringement, unauthorized use or other violation of the Trademarks, including the right to collect all proceeds and damages therefrom (whether before or after the date hereof), and (d) any and all royalties, fees, income, payments, and other proceeds now or hereafter due or payable with respect to any and all of the foregoing.

2. Transfer. Assignor agrees to execute, at any time and from time to time upon the request and expense of Assignee, such additional documents as Assignee reasonably requests to register and otherwise give full effect to the rights of Assignee under this Agreement in and to the Trademarks, including all documents necessary to record in the name of Assignee the assignment of the Trademarks with the United States Patent and Trademark Office, successor offices or foreign equivalents.

3. Severability. Any term or provision of this Agreement that is invalid or unenforceable in any situation will not affect the validity or enforceability of the remaining terms

and provisions hereof or the validity or enforceability of the offending term or provision in any other situation.

4.  <u>Governing Law</u>.  All matters arising out of, relating to or based upon this Agreement shall be deemed to be made and in all respects shall be interpreted, construed and governed by and in accordance with the Laws of the State of California, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction.

5.  <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Agreement by facsimile or scanned pages shall be effective as delivery of a manually executed counterpart to this Agreement.

6.  <u>Relation to Settlement Agreement</u>.  Nothing in this Agreement, express or implied, is intended to or shall be construed to modify, expand or limit in any way the terms of the Settlement Agreement.  In the event of a conflict or other inconsistency between the representations, warranties, covenants, agreements, terms, conditions, limitations, and other provisions of this Agreement and the representations, warranties, covenants, agreements, terms, conditions, limitations, and other provisions of the Settlement Agreement, the representations, warranties, covenants, agreements, terms, conditions, limitations, and other provisions of the Settlement Agreement shall govern, supersede, control and prevail.

**IN WITNESS WHEREOF**, Assignor and Assignee, have caused this Agreement to be signed and executed by its undersigned duly authorized officer.

**ASSIGNOR**

Signature: _____

By: _____

Title: _____

**ASSIGNEE**

Signature: _____

By: _____

Title: _____

## Schedule A

### Trademarks

Trademark applications and registrations for the mark **JVN** in the following classes and countries:

| | |
|---|---|
| <ul><li>Cl. 3: Non-medicated skin care preparations; facial products, namely, oil, cream, beauty serum, gel, lotion, cleanser, toner and skin softener; body products, namely, oil, cosmetic gel, lotion; eye products, namely, eye cream; moisturizers for the body, skin, and face; anti-aging treatments, namely, oil, cream, beauty serum, gel, lotion, cleanser, toner and skin softener</li><li>Cl. 9: Downloadable written articles featuring lifestyles, skin care, hair care and beauty products, and techniques for using such skin care, hair care and beauty products; downloadable digital media, namely, audio files and video files featuring lifestyles, skin care, hair care and beauty products, and techniques for using such skin care, hair care and beauty products</li><li>Cl. 11: Electric hair dryers</li><li>Cl. 26: Electric hair curlers, other than hand implements</li><li>Cl. 35: retail stores and online retail store services featuring non-medicated skin care preparations; facial products, hair care preparations, hair coloring preparations, hair care products, hair coloring products, hair treatment products, cream for body and curl definition for the hair, electric hair dryers, electric styling combs, brushes, electric hair curlers, cosmetic toiletry bags, hair brushes, hair combs; providing a website featuring consumer information in the fields of cosmetics, skincare and haircare; providing consumer information in the fields of cosmetics, skincare and haircare</li><li>Cl. 41: Education services in the nature of business training services and master classes led by experts in the field of skin care, hair care and beauty products; Entertainment services, namely, online services in the nature of providing a website featuring non-downloadable written articles and audiovisual media, namely, non-downloadable videos and audio recordings, in the field of lifestyles, skin care, hair care and beauty products, and techniques for using such skin care, hair care and beauty products</li><li>Cl. 42: Providing a website allowing users to download written articles and digital media, namely, videos, and audio recordings, in the field of lifestyles, skin care, hair</li></ul> | <ul><li>US 97302716</li><li>IR 1695348<ul><li>AU</li><li>BR</li><li>CA</li><li>CN</li><li>EU</li><li>UK</li><li>MX</li><li>MY</li><li>NZ</li><li>SG</li><li>TH</li></ul></li></ul> |

| | |
|---|---|
| care and beauty products, and techniques for using such skin care, hair care and beauty products<br>• Cl. 44: Hair cutting, hair styling, hairdressing, beauty salon, all hair coloring except for temporary treatments as part of a shampoo and/or conditioner, make-up applications, and cosmetician services; Hair dressing and grooming services for men and women | |
| • Cl. 03: Non-medicated skin care preparations; oil; facial cream; facial lotion; facial cleanser; facial toner; body oil; body lotion; eye cream; moisturizers for the body; moisturizers for the skin; moisturizers for face; anti-aging cream; anti-aging lotion; anti-aging toner; lotion for facial and body care; after-sun oil [cosmetics]; anti-wrinkle skin care preparation; skin care essence, not for medical purposes; beauty gels; exfoliating cream; eye make-up; anti-aging moisturizing lotion(cosmetic); anti-aging cosmetic gel; smoothing toner | • CN 71427014 |
| • Cl. 35: Marketing services; providing business information via a web site; commercial information and advice for consumers in the choice of products and services; retail or wholesale services for pharmaceutical, veterinary and sanitary preparations and medical supplies | • CN 71427029 |

# EXHIBIT A-2

## Declaration of Assignment

## 同意转让证明

The Assignor:   AMYRIS CLEAN BEAUTY, INC.

转让人：艾美锐思净美公司（英文名称： AMYRIS CLEAN BEAUTY, INC.）

The Assignee: JVN ENTERTAINMENT, INC.

受让人：吉维恩娱乐有限公司（英文名称：JVN ENTERTAINMENT, INC.）

After amicable consultation of the said parties, the Assignor has agreed to assign the trademark Application Nos.71427014 and 71427029 to the Assignee.

兹证明，上列双方经协商，一致同意将转让人的第 71427014 和 71427029 号商标转让给受让人。

转让人（Assignor）：艾美锐思净美公司 AMYRIS CLEAN BEAUTY, INC.

签名（Signature）: _____

受让人（Assignee）：吉维恩娱乐有限公司 JVN ENTERTAINMENT, INC.

签名（Signature）: _____

日期（Date :）