**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) SCHEDULING CONFIRMATION HEARING; (III) APPROVING FORM AND MANNER OF NOTICE OF CONFIRMATION HEARING; (IV) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PLAN, INCLUDING (A) APPROVING FORM AND CONTENT OF SOLICITATION MATERIALS; (B) ESTABLISHING RECORD DATE AND APPROVING PROCEDURES FOR DISTRIBUTION OF SOLICITATION MATERIALS; (C) APPROVING FORMS OF BALLOTS; (D) ESTABLISHING VOTING DEADLINE FOR RECEIPT OF BALLOTS AND (E) APPROVING PROCEDURES FOR VOTE TABULATIONS; (V) APPROVING FORM AND MANNER OF NOTICE OF PLAN RELEASES; (VI) ESTABLISHING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO CONFIRMATION OF PLAN; AND (VII) GRANTING RELATED RELIEF**

Before the Court is the above-captioned debtors and debtors-in-possession (the "Debtors") *Motion for an Order (I) Approving the Disclosure Statement; (II) Scheduling Confirmation Hearing; (III) Approving Form and Manner of Notice of Confirmation Hearing; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (A) Approving Form and Content of Solicitation Materials; (B) Establishing Record Date and Approving Procedures for Distribution of Solicitation Materials;(C) Approving Forms of Ballots; (D) Establishing Voting Deadline for Receipt of Ballots and (E) Approving Procedures for Vote Tabulations; (V) Approving Form and Manner of Notice of Plan Releases; (VI) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plan; and*

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

*(VII) Granting Related Relief* (the "<u>Motion</u>")[2]; and the Court, after considering any objections to the Motion; and upon review of the record and after due deliberation thereon; and the Court finding that proper and adequate notice of the hearing on the Motion [Docket No. 525] and the Disclosure Statement filed by the Debtors on October 12, 2023 [Docket No. 524], as amended on December 1, 2023 [Docket No. 809-2], and as amended on December 6, 2023 [Docket No. 826-2] has been given to all parties in interest, and no other or further notice or hearing being necessary; and after due deliberation and sufficient cause appearing therefor; **IT IS HEREBY FOUND, ORDERED, AND ADJUDGED** as follows:

1. The Motion is GRANTED as provided herein.

### **Approval of Disclosure Statement**

2. The Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code regarding the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. 523], as amended on December 1, 2023 [Docket No. 809-1], and as amended on December 6, 2023 [Docket No. 826-1] (including all exhibits thereto and as amended, modified or supplemented, the "<u>Plan</u>"). Therefore, the Disclosure Statement is approved pursuant to 11 U.S.C. § 1125(b) and Fed. R. Bankr. P. 3017(b).

3. All objections to the adequacy of the Disclosure Statement, if any, are, to the extent not consensually resolved as set forth herein, overruled in their entirety.

### **Setting of Confirmation Hearing**

4. The hearing to consider confirmation of the Plan shall commence on **January __, 2024, at __:00 a.m. (Eastern Time)** (the "<u>Confirmation Hearing</u>").    The

---

[2] Terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

Confirmation Hearing may be continued from time to time by announcing such continuance in open court or otherwise, all without further notice to parties in interest, and the Plan may be modified, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during, or as a result of, the Confirmation Hearing, without further notice to interested parties.

<u>**Approval of Solicitation Materials and Non-Voting Class Notices**</u>

5.       The Solicitation Materials as set forth in the Motion are approved.  The Debtors shall transmit, or cause to be transmitted, the Solicitation Materials no later than **December 18, 2023** (the "<u>Solicitation Mailing Deadline</u>") by first class, United States mail (or by international courier if the addresses are not located in the United States), to (a) Holders of Claims in Classes 3, 4, 5, 7, 8, 9, and 10, the only impaired classes entitled to vote on the Plan (collectively, the "<u>Voting Classes</u>") and (b) the Notice Parties (as defined below).

6.       To avoid duplication and reduce expenses, the Debtors shall serve only one set of Solicitation Materials on each creditor who has more than one Claim, but shall include the appropriate Ballots for each Class of Claims.

7.       Pursuant to Bankruptcy Rule 3017(d), the Debtors are not required to transmit the Solicitation Materials to the Non-Voting Classes (Classes 1, 2, 6, 12, and 14).  On or before **December 18, 2023**, the Debtors, through the Solicitation Agent (as defined below), shall mail the following: (i) to each Holder of Claims in the Non-Voting Classes (except Holders of Claims in Class 11), a notice substantially in the form attached hereto as **Exhibit B1** (the "<u>Non-Voting Class Notice (Holders of Claims)</u>") and (ii) to each Interest Holder in the Non-Voting Classes (except Holders of Interests in Class 13), a notice substantially in the form attached hereto as **Exhibit B2** (the "<u>Non-Voting Class Notice (Interest Holders)</u>", and with the Non-Voting Class Notice (Holders of Claims), the "<u>Non-Voting Class Notices</u>"), which set forth: (a)

the recipients status as a member of a Non-Voting Class; (b) a summary of the Plan; (c) the date and time of the Confirmation Hearing; and (d) the deadline and procedures for filing objections to the Plan.  The Non-Voting Class Notices will also include a description of the Plan's release, indemnification and exculpation provisions, including the Third-Party Release, and the Opt Out Election Form which will set forth the applicable deadline, instructions and procedures for each Holder of a Claim or Interest in a Non-Voting Class to make such opt out election.  The Non-Voting Class Notices will indicate that a holder of a Claim and/or Interest in a Non-Voting Class is entitled, upon written request to counsel to the Debtors, to receive a copy of the Plan and Disclosure Statement, in electronic format (or such other format as specifically requested by such Claimant or Interest Holder) at the expense of the Debtors.  The Non-Voting Class Notices will also contain the link to the Solicitation Agent's website where any party in interest can access copies of the Solicitation Materials, including the Plan and Disclosure Statement, at no cost. Holders of Claims in Class 11 (Intercompany Claims) and Interests in Class 13 (Intercompany Interests) are deemed to have received all necessary notices upon entry of this Order because these Classes consist of the Claims or Interests of Debtors or wholly-owned Affiliates of Debtors who are not entitled to vote on the Plan and have either consented to the Plan or are deemed to have accepted the Plan.

**Approval of Form and Manner of Notice of the Confirmation Hearing**

8.      The Confirmation Hearing Notice and the Non-Voting Class Notices, in substantially the form attached hereto as **Exhibits A, B1, and B2**, as modified consistent with any revisions to the Plan, are approved.  As set forth above, the Confirmation Hearing Notice shall be included as part of the Solicitation Materials and sent via regular mail to all creditors

entitled to vote on the Plan.  In addition, the Debtors shall serve the Confirmation Hearing Notice and Solicitation Materials on the Notice Parties.

9.     The Debtors shall publish the Confirmation Hearing Notice on December 18, 2023 once in the national editions of the *Wall Street Journal* and in the *Official Gazette* in Brazil (in Portuguese).   Additionally, the Confirmation Hearing Notice shall be posted electronically on the website maintained for the Debtors by the Voting Agent, at https://cases.stretto.com/Amyris.

### Record Date and Approval of Procedures for Distribution of Solicitation Materials and Non-Voting Class Notices

10.     The record date shall be December 1, 2023 (the "Record Date") for purposes of determining which parties are entitled to receive the Solicitation Materials or the Non-Voting Class Notices and, where applicable, vote on the Plan.

11.     Bankruptcy Management Solutions, Inc. d/b/a Stretto (the "Solicitation Agent"), shall serve the Solicitation Materials or, as applicable, the Non-Voting Class Notices, inspect, monitor, and supervise the solicitation process, serve as the tabulator of the Ballots, tabulator of the parties who have opted out of granting the Third-Party Releases, and certify to the Court the results of the balloting in the Voting Tabulation Affidavit.  The Voting Tabulation Affidavit shall identify any parties which elected to opt out of granting the Third-Party Release as to both Voting and Non-Voting Classes.

12.     Subject to the procedures set forth below regarding Holders of Convertible Notes Claims (Class 7), the Solicitation Agent will transmit the Solicitation Materials to the known Holders of Claims in the Voting Classes based upon the names and addresses in the proofs of claim filed by the claimants, or the Debtors' schedules if no proof of claim was filed by the Record Date.  Each Holder of an Allowed Claim in the Voting Classes will be required to

return a properly executed Ballot so that it is received by the Solicitation Agent on or before the Voting Deadline (as defined below) in order for that Holder's Ballot to be counted.

13.    The Solicitation Agent will transmit the Non-Voting Class Notice (Holders of Claims) to the known Holders of Claims in Classes 1, 2, 6, and 12 based upon the names and addresses in the proofs of claim filed by the claimants, or the Debtors' schedules if no proof of claim was filed by the Record Date.  Subject to the procedures set forth below regarding Holders of Class 14 Interests, the Solicitation Agent will transmit the Non-Voting Class Notice (Interest Holders) to the known Holders of Interests in Class 14 as of the Record Date.  The Non-Voting Class Notices and attached Opt Out Election Form provide sufficient notice of, and an opportunity for Holders of Claims and/or Interests in Non-Voting Classes to opt out of granting the Third-Party Release contained in the Plan.

14.    <u>Procedures for Notice and Distribution of (i) Solicitation Materials to Holders of Convertible Notes Claims (Class 7) and (ii) Non-Voting Class Notice (Interest Holders) to Holders of Class 14 Interests</u>.  In additional to the procedures set forth above, the Court approves the following procedures to facilitate appropriate notice being given to Holders of Claims in Class 7 and Interests in Class 14.

    a.    <u>Procedures for Notice to Holders of Class 7 Convertible Notes Claims</u>.  Within three (3) Business Days of the entry of the Disclosure Statement Order, the Convertible Notes Trustee shall (a) provide the Solicitation Agent with the names, addresses and holdings of any directly registered Holders of Convertible Notes as of the Record Date (other than DTC's nominee, Cede & Co.) to the extent such information is available to the Convertible Notes Trustee, (b) request from DTC a list (the "<u>Nominee List</u>") with the name and address of each bank, broker, or other intermediary (each a "<u>Nominee</u>") through which one or more beneficial noteholders (the "<u>Beneficial Noteholders</u>") hold a Convertible Notes Claim in "street name" as of the Record Date and provide such Nominee List to the Solicitation Agent, and (c) cooperate with reasonable requests of the Solicitation Agent related to the Solicitation Agent's performance of its duties pursuant to the Disclosure Statement Order to transmit the Solicitation Materials to the Beneficial Noteholders.  The Solicitation Agent shall use such information only for purposes

consistent with these Solicitation Procedures and any order of the Court. The Solicitation Agent will transmit the Solicitation Materials to such identified Holders of Convertible Notes Claims as provided herein.

b.    <u>Procedures for Notice to Holders of Class 14 Interests</u>. Within three (3) Business Days of the entry of the Disclosure Statement Order, each of the agents under the applicable documents governing the Class 14 Interests shall provide the Solicitation Agent with (a) a copy of the list of the names, addresses and holdings of any directly registered Holders of Class 14 Interests as of the Record Date in an electronic file, (b) the name and address of each Nominee identified as a Holder of record through which one or more beneficial holders (the "<u>Beneficial Interest Holders</u>") hold an Interest in the Parent in "street name" as of the Record Date in an electronic file, and (c) such other information the Solicitation Agent deems reasonable and necessary to perform its duties pursuant to the Disclosure Statement Order. The Solicitation Agent shall use such information only for purposes consistent with these Solicitation Procedures and any order of the Court. The Solicitation Agent will transmit the Non-Voting Class Notice (Interest Holders) to such identified Holders of Class 14 Interests as provided herein.

15.    The Debtors and/or the Solicitation Agent, as applicable, are permitted to dispense with the mailing of Solicitation Materials or applicable Non-Voting Class Notices to addresses and entities to which the notice of the Disclosure Statement Hearing was returned by the United States Postal Service or courier. The Debtors and/or the Solicitation Agent are further relieved of any obligation to attempt to locate the correct address and resend prior to the Voting Deadline the Solicitation Materials or the Non-Voting Class Notices that are returned as undeliverable. To the extent any Solicitation Materials or Non-Voting Class Notices are returned as undeliverable and are re-sent, the initial mailing date shall be the date of service for the purpose of calculating notice.

16.    In cases where a party has executed a Ballot in accordance with the terms of this Order, and has indicated corrections or updates to the mailing address used in the service of the Solicitation Materials, either physically on the face of the Ballot or otherwise separately enclosed with the Ballot, the corrected or updated mailing address shall be used to reflect the

mailing address of the creditor on the official register of Claims against or Equity Interests in the Debtors.

**<u>Approval of Form of Ballots and Opt Out Election Form</u>**

17.     The Ballots, substantially in the form attached hereto as **<u>Exhibits C1 – C7</u>**, as modified consistent with revisions to the Plan, are approved.  The Voting Class Notice of Confirmation Hearing and the Ballots provide sufficient notice of, and an opportunity for Holders of Claims in Voting Classes to opt out of granting the Third-Party Release contained in the Plan.

18.     The Opt Out Election Form, attached to the Non-Voting Class Notices substantially in the form attached hereto as **<u>Exhibits B1 and B2,</u>** is approved.  The Non-Voting Class Notices and the Opt Out Election Form provide sufficient notice of, and an opportunity for Holders of Claims or Interests in the Non-Voting Classes to opt out of granting the Third-Party Release contained in the Plan.

**<u>Deadline for Receipt of Ballots and Opt Out Election Forms</u>**

19.     Unless extended by the Debtors or their counsel in writing, on or before **January 16, 2024 at 5:00 p.m. (prevailing Eastern Time)** (the "<u>Voting Deadline</u>") (i) Ballots accepting or rejecting the Plan must be <u>received by the Solicitation Agent</u> at the address below (except for submission of the Class 7 Convertible Notes Claims Ballots (as defined below) which may only be submitted in accordance with the express instructions set forth in the applicable Beneficial Holder Ballot or Master Ballot, the forms of which are attached hereto as Exhibits D5(a) and D5(b)) and (ii) Opt Out Election Forms must be <u>received by the Solicitation Agent</u> at the address below.

**Amyris Balloting
c/o Stretto**

**410 Exchange, Suite 100**
**Irvine, CA 92602**

20.     Ballots or Opt Out Election Forms received via facsimile, electronic mail or other electronic transmission will not be counted unless approved by the Debtors, *provided, however*, that Ballots may be electronically submitted using the Solicitation Agent's on-line electronic ballot portal at https://cases.stretto.com/Amyris (except for submission of the Class 7 Convertible Notes Claims Ballots (as defined below) <u>which may only be submitted in accordance with the express instructions set forth in the applicable Beneficial Holder Ballot or Master Ballot</u>, the forms of which are attached hereto as Exhibits D5(a) and D5(b)).

## **Procedures for Vote Tabulation**

21.     Votes may not be changed after the Voting Deadline unless the Court, for cause, permits such change after notice and hearing pursuant to Bankruptcy Rule 3018(a).

22.     Ballots must be properly executed by the holder of a Claim in a Voting Class and timely received by the Solicitation Agent to be counted.  Any Ballot that is illegible or contains insufficient information to permit the identification of the holder of a Claim in a Voting Class will not be counted.

23.     The following tabulation procedures are approved solely for purposes of voting on the Plan (collectively, the "<u>Voting Procedures</u>"):

a.     If an objection has not been filed to a Claim, the amount of such Claim for voting purposes shall be the non-contingent, liquidated and undisputed Claim amount contained on a timely filed Proof of Claim or, if no timely filed Proof of Claim has been filed by the Voting Deadline, the amount of such Claim for voting purposes shall be the non-contingent, liquidated and undisputed amount of such Claim listed in the Debtors' Schedules of Assets and Liabilities;

b.     If a Claim (i) for which a Proof of Claim has been timely filed as wholly contingent, unliquidated or disputed, undetermined, or unknown in amount, or (ii) is Scheduled as wholly contingent, unliquidated or disputed, undetermined, or unknown in amount and such Claimant has not filed a superseding Proof of

Claim, in either case, such Claims shall be temporarily allowed in the amount of $1.00 for voting purposes only, but not for purposes of allowance or distribution;

c.   If a Claim is partially liquidated and partially unliquidated, such Claim shall be allowed for voting purposes only in the liquidated amount;

d.   If a holder of a Claim in a Voting Class casts a Ballot with respect to a Claim that is the subject of an objection filed no later than thirty (30) days before the Confirmation Hearing, the Debtors request, in accordance with Bankruptcy Rule 3018, that the party's Ballot not be counted, unless the Court temporarily allows such Claim for purposes of voting to accept or reject the Plan, and that such creditor be required to file a motion for such relief (the "Rule 3018 Motion") no later than **January 5, 2024 at 5:00 p.m. (prevailing Eastern Time)**, and that the Court schedule a hearing on such motion for a date on or prior to the Confirmation Hearing. Notwithstanding the foregoing, if the Debtors file an objection to a Claim and request that such Claim be allowed in a specific amount, such creditor's Ballot shall be counted in such specified amount, unless otherwise ordered by the Court;

e.   Holders of Proofs of Claim filed for $0.00 are not entitled to vote notwithstanding that the Holder of such Claim may be in a Voting Class;

f.   Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased one or more duplicate Claims within the same Voting Class shall be provided with only one Solicitation Materials and one Ballot for voting a single Claim in such Voting Class, regardless of whether the Debtors have objected to such duplicate Claims;

g.   If a Claim is the subject of an amended Proof of Claim, the originally filed Proof of Claim shall be deemed superseded by the later filed amended Proof of Claim, regardless of whether or not the Debtors have objected to such Claim, and only the amended Proof of Claim shall be used for the purpose of determining voting eligibility in accordance with the provisions herein;

h.   For purposes of the numerosity requirement of § 1126(c), a Creditor with multiple Claims in a particular Voting Class may vote each of its Claims against the Debtors in such Voting Class, but must vote all of such Claims either to accept the Plan or all of such Claims to reject the Plan, and each such vote to accept or reject the Plan shall be counted separately;

i.   If a Claim has been disallowed by agreement of the applicable creditor or order of the Court at any time before the Voting Deadline, or if the Claim is on account of a contract or lease that has been assumed pursuant to section 365 of the Bankruptcy Code, such Claim shall also be disallowed or disregarded for voting purposes; and

j.   If a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim shall be temporarily allowed in the amount so estimated

or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution.

24.    The following voting procedures and standard assumptions will be used in tabulating the Ballots (collectively, together with the Voting Procedures, the "Voting and Tabulation Procedures"):

a.    Except to the extent the Debtors otherwise agree, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Debtors in connection with the confirmation of the Plan;

b.    Claims shall not be split for purposes of voting; thus, each creditor must vote the full amount of its Claim(s) within each Voting Class to either accept or reject the Plan.  If a creditor attempts to split such vote on their Ballot, such Ballot will not be counted for voting purposes;

c.    Any executed Ballot which does not indicate an acceptance or rejection will not be counted;

d.    Any executed Ballot which indicates both an acceptance and rejection of the Plan will not be counted;

e.    Votes cast pursuant to a Ballot that is not signed or does not contain an original signature or, in the case of Ballots which are electronically submitted using the Solicitation Agent's official on-line electronic, an electronic signature, shall not be counted, unless the Court orders otherwise;

f.    Parties holding Claims in more than one Voting Class under the Plan may receive more than one Ballot coded for each applicable Voting Class;

g.    The method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder of a Claim, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Solicitation Agent;

h.    Delivery to and receipt by the Solicitation Agent of the original executed Ballot on or before the Voting Deadline is required in order for a vote to be counted. Delivery of a Ballot by facsimile, email or any other electronic means will not be accepted unless otherwise ordered by the Court; *provided, however*, that Ballots may be electronically submitted using the Solicitation Agent's official on-line electronic ballot portal at https://cases.stretto.com/Amyris (except for submission of the Class 7 Convertible Notes Claims Ballots (as defined below) which may only be submitted in accordance with the express instructions set forth in the applicable Beneficial Holder Ballot or Master Ballot, the forms of which are attached hereto as Exhibits D5(a) and D5(b));

i.    Ballots must be submitted in accordance with the Voting Procedures.  No Ballot sent to the Debtors, or to the Debtors' financial or legal advisors, will be accepted or counted in connection with confirmation of the Plan;

j.    If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

k.    If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtors, must submit proper evidence, satisfactory to the Debtors, of such person's authority to so act in such capacity;

l.    The Debtors, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein, the Debtors may reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

m.    Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots shall be determined by the Debtors, which determination shall be final and binding;

n.    If a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such Claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless otherwise ordered by the Court;

o.    Any holder of a Claim who has timely delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

p.    Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with delivery of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted in connection with confirmation of the Plan;

q.    Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

r.    No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

s.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

t.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of the validity or allowability of a Claim for distribution or any other purposes.

u.      Any executed Ballot which does not indicate an opt out of granting the Third-Party Release shall be deemed to be consent to such Third-Party Release, regardless of whether such Ballot is voted to accept or reject the plan, or contains no voting election.

25.      <u>Procedures for Voting Tabulation of Class 7 Convertible Notes Claims</u>.  In addition to the foregoing generally applicable Voting and Tabulation Procedures, the following procedures shall apply to tabulating the votes of Beneficial Noteholders of Convertible Notes Claims in Class 7 that hold and therefore, will vote, their position through a Nominee:

a.      On the Solicitation Mailing Deadline, the Solicitation Agent shall distribute or cause to be distributed (i) the Solicitation Materials, including an applicable Ballot, to all Beneficial Noteholders of Convertible Notes Claims as of the Record Date, and (ii) an appropriate number of Solicitation Materials, including an appropriate number of applicable ballots, and a master ballot (a "<u>Master Ballot</u>") to each Nominee identified to the Solicitation Agent as a Holder of record through which one or more Beneficial Noteholders holds a Convertible Notes Claim in "street name" as of the Record Date;[3]

b.      Within three (3) business days of receipt of the Solicitation Materials from the Solicitation Agent, each Nominee must distribute the Solicitation Materials, including the applicable Ballots, to each Beneficial Noteholder for which they hold the applicable Convertible Notes Claim in one of the following two ways (as selected by the Nominee):

(i)      Obtaining the votes of the Beneficial Noteholders by (1) immediately distributing the Solicitation Materials, including Beneficial Holder Ballots, it receives from the Solicitation Agent to all such Beneficial Noteholders, (2) promptly collecting Beneficial Holder Ballots from such Beneficial Noteholders that cast votes on the Plan, (3) compiling and validating the votes and other relevant information of all such Beneficial Noteholders on the Master Ballot, and (4) transmitting the Master Ballot to the Solicitation Agent by the Voting Deadline; or

---

[3] Nominees may use their ordinary and standard procedures to disseminate the voting materials (including use of their own voting form) as well as in the collection of votes and elections from their Beneficial Noteholders.

(ii)    Distributing pre-validated Beneficial Holder Ballots pursuant to the following procedures: (1) the Nominee shall forward to each Beneficial Noteholder as of the Record Date the Solicitation Materials, an individual Beneficial Holder Ballot that has been pre-validated, postage prepaid return envelope as indicated in subparagraph (2); (2) to pre-validate a Beneficial Holder Ballot, the Nominee should complete the first item and execute the Ballot and indicate on the Beneficial Holder Ballot the name of the Nominee and DTC participant number, as applicable, the number and dollar amount of Convertible Notes held by the Nominee for the Beneficial Noteholder, and the account number for the account in which such Convertible Notes are held by the Nominee; and (3) the Beneficial Noteholder shall complete and return the pre-validated Beneficial Holder Ballot to the Solicitation Agent by the Voting Deadline.

c.    Any Nominee of a Convertible Notes Claim in its own name may vote on the Plan by completing a Beneficial Holder Ballot or a Master Ballot and returning it directly to the Solicitation Agent on or before the Voting Deadline.

d.    The Convertible Notes Trustee will not be entitled to vote on behalf of the Beneficial Holder; rather, each Beneficial Holder must vote his or her own Convertible Notes Claim in the manner set forth herein.

e.    Nominees that pre-validate Beneficial Holder Ballots must keep a list of Beneficial Noteholders for whom they pre-validated a Beneficial Holder Ballot along with copies of the pre-validated Beneficial Holder Ballots for a period of one year after the Effective Date of the Plan.

f.    The Solicitation Agent will not count votes of Beneficial Noteholders unless and until they are included on a valid and timely Master Ballot or a valid and timely "pre-validated" Beneficial Holder Ballot.

g.    If a Beneficial Noteholder holds Convertible Notes Claims through more than one Nominee or through multiple accounts, such Beneficial Noteholder may receive more than one Beneficial Holder Ballot and each such Beneficial Noteholder must vote consistently and execute a separate Beneficial Holder Ballot for each block of Convertible Notes that it holds through any Nominee and must return each such Beneficial Holder Ballot to the appropriate Nominee or return each such "pre-validated" Beneficial Holder Ballot to the Solicitation Agent.

h.    Votes cast by Beneficial Noteholders through Nominees will be applied to the applicable positions held by such Nominees in the applicable Voting Class, as of the Record Date, as evidenced by the record and depository listings. Votes submitted by a Nominee pursuant to a Master Ballot will not be counted in excess of the amount of such Convertible Notes Claims held by such Nominee as of the Record Date.

26.     If no Holder of a Claim eligible to vote in a particular Voting Class timely votes to accept or reject the Plan, the Debtors may seek to have the Plan deemed accepted by the Holders of such Claims in such Voting Class for purposes of section 1129(b) of the Bankruptcy Code.

27.     As set forth in the Plan, if the Third-Party Releases are not approved by the Bankruptcy Court, each holder of a Direct Claim may voluntarily elect to receive its Pro Rata portion of the Third-Party Release Settlement Amounts to which it is entitled by electing to grant the Third-Party Releases, through the following methods: (x) for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases, and (y) for holders of Claims and Interests who are deemed to accept or reject the Plan and are provided with a notice of non-voting status providing them with the right to opt out of granting the Third-Party Releases and do not elect to exercise such right; provided, that, as applicable, the Direct Claims Threshold is satisfied.

28.     The Solicitation Agent shall file the Voting Tabulation Affidavit with the Bankruptcy Court, on or before January 22, 2024 or such other date that is no later than three (3) business days prior to the Confirmation Hearing.

**Deadline and Procedures for Filing Plan Supplement, Objections to Confirmation
of the Plan and the Debtors' Confirmation Brief**

29.     To the extent necessary and appropriate, the Debtors shall file any Plan Supplement on or before January 9, 2024.

30.     All objections to confirmation of the Plan, including any supporting memoranda, (each a "<u>Plan Objection</u>") must be (a) in writing; (b) filed with the Clerk of the

United States Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801 together with proof of service; (c) (i) state the name and address of the objecting party and the amount of its Claim or the nature of its interest in the Debtors' chapter 11 cases, (ii) state with particularity the provision or provisions of the Plan objected to, and, (iii) for any objection asserted, the legal and factual basis for such objection, and (d) be served upon the Notice Parties (as defined below) so as to be received on or before **January 16, 2024** at **5:00 p.m. (Eastern Time)** (the "Plan Objection Deadline").

31.     As used herein, the Notice Parties are:

a.      Counsel for the Debtors, (i) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com); and (ii) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com);

b.      Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware, 19801, Attn: John Schanne, Esq. (John.Schanne@usdoj.gov);

c.      Counsel to the DIP Lenders, DIP Agent and the Foris Prepetition Secured Lenders, (i) Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein (mgoldstein@goodwinlaw.com), Alexander J. Nicas (anicas@goodwinlaw.com), and Debora A. Hoehne (dhoehne@goodwinlaw.com); and (ii) Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier (david.fournier@troutman.com);

d.      Counsel to the Committee, (i) White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, IL 60606-4302, Attn: Gregory Pesce, (gregory.pesce@whitecase.com) and Andrew O'Neill, (aoneill@whitecase.com); (ii) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095, Attn.: John Ramirez, (john.ramirez@whitecase.com) and Andrea Kropp, (andrea.kropp@whitecase.com); and (iii) local counsel to the Committee, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801; Attn: Christopher M. Samis, (csamis@potteranderson.com), Katelin A. Morales, (kmorales@potteranderson.com), Sameen Rizvi (srizvi@potteranderson.com); and

e.      any party that requests service pursuant to Bankruptcy Rule 2002.

32.     Any Plan Objections not timely filed and served in accordance with the provisions of this Order are hereby deemed waived and will not be considered by this Court. The Debtors may, in their sole discretion, extend the Plan Objection Deadline for any party in interest.

33.     On or before January 22, 2024 or such other date that is no later than two (2) business days prior to the Confirmation Hearing, the Debtors shall file a brief supporting confirmation of the Plan (including any supporting legal memoranda) and replying to any Plan Objections (the "Confirmation Brief"). The Debtors shall serve the Confirmation Brief on the Notice Parties, as set forth above.

34.     Prior to mailing the Disclosure Statement, Solicitation Materials, or the Non-Voting Class Notices, the Debtors may fill in any missing dates and other information, correct any typographical errors, and make such other non-material, non-substantive changes as they deem necessary.

35.     In the event of an inconsistency between the Plan, on the one hand, and the Disclosure Statement (or any Solicitation Materials or procedures approved by this Order), on the other hand, the Plan shall control.

36.     The Debtors and the Solicitation Agent are authorized and empowered to take such steps, expend such monies, and perform such acts as may be necessary to implement and effectuate the terms of this Order.

37.     This Court retains jurisdiction over any and all matters arising out of or related to the interpretation or implementation of this Order.

**EXHIBIT A**

**Notice of Confirmation Hearing and Related Matters (Voting Classes)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE TO VOTING CLASSES OF (A) HEARING TO CONSIDER CONFIRMATION OF DEBTORS' CHAPTER 11 PLAN; (B) DEADLINE FOR VOTING TO ACCEPT OR REJECT PLAN; (C) DEBTORS' RELEASES AND THIRD-PARTY RELEASE; (D) DEADLINES REGARDING THIRD-PARTY RELEASE OPT OUT ELECTION; AND (E) RELATED MATTERS**

**TO:     HOLDERS OF CLAIMS IN VOTING CLASSES:**
          **Class 3 – Foris Prepetition Secured Claims**
          **Class 4 – DSM RealSweet Secured Claims**
          **Class 5 – DSM Other Secured Claims**
          **Class 7 – Convertible Notes Claims**
          **Class 8 – General Unsecured Claims**
          **Class 9 – DSM Contract Claims**
          **Class 10 – Givaudan Contract Claims**

**PLEASE TAKE NOTICE**: On October 12, 2023, Amyris, Inc. and its affiliated debtors and debtors in possession (the "Debtors") filed the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. 523] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").

Concurrently with the filing of the Plan, the Debtors filed the related Disclosure Statement in support of the Plan [Docket No. 524] (including all exhibits thereto and as may be amended, modified or supplemented from time to time, collectively, the "Disclosure Statement"). On [_____, 2023], this Court entered an order approving the Disclosure Statement [Docket No. __] (the "Disclosure Statement Order") and certain related materials (i) establishing notice, voting and objection procedures for Voting Classes  (the "Solicitation Materials") and (ii) establishing notice and objection procedures for Non-Voting Classes (the "Non-Voting Class Notices").

**A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held on January ___, 2024, commencing at __ a.m. (prevailing Eastern Time),** before the Honorable Thomas M. Horan, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Courtroom No. 6, Wilmington, Delaware 19801.  It may be possible to attend the Confirmation Hearing remotely.  Any party who wishes to attend via video

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

conference is required to register with the Court at the following link: https://protect-us.mimecast.com/s/48LqCYEMNEs6v2kKt0scm9.  The Confirmation Hearing may be continued from time to time without further notice except for (i) an announcement made at the Confirmation Hearing or any adjourned confirmation hearing or (ii) a written notice filed with the Bankruptcy Court and served on all parties who have filed Plan Objections, the United States Trustee, and all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

The record date for determining which Holders of Claims against the Debtors may vote on the Plan is December 1, 2023 (the "Record Date").

**If you have received this Notice and the enclosed Solicitation Materials, including a ballot form (a "Ballot"), you are in a Voting Class and eligible to vote to accept or reject the Plan.**

The Solicitation Materials include the following documents: (a) the order approving the Disclosure Statement setting forth (i) the commencement date of the Confirmation Hearing, (ii) the deadline and procedures for filing Plan Objections, and (iii) the deadline for receipt of Ballots to accept or reject the Plan; (b) a printed copy of the Ballots (as each may be applicable to your Claim(s)) and a Ballot return envelope; (c) a flash drive or printed book containing the Disclosure Statement (together with the exhibits thereto, including the Plan); (d) a cover letter from the Debtors explaining the enclosure and requesting that creditors vote in favor of the Plan; and (e) a cover letter from the Creditors' Committee making a recommendation to the Holders of General Unsecured Claims and Convertible Notes Claims with respect to voting on the Plan.

**YOU SHOULD READ THE DOCUMENTS CONTAINED IN THE SOLICITATION MATERIALS, WHICH IMPACT YOUR RIGHTS AND CLAIMS AGAINST THE DEBTORS, CAREFULLY, AND CONSULT WITH YOUR OWN COUNSEL, ACCOUNTANT OR FINANCIAL ADVISOR AT YOUR OWN DISCRETION.**

For your Ballot to be counted, you must complete all required information on the Ballot, execute the Ballot, and **return the completed Ballot to the address indicated on the Ballot so that it is received by 5:00 p.m. (Eastern Time) on January 16, 2024** (the "Voting Deadline").  Any failure to follow the voting instructions included with the Ballot or to return a properly completed Ballot so that it is received by the Solicitation Agent on or before the Voting Deadline may disqualify your Ballot and your vote.

If an objection is pending with respect to your Claim as of the date you receive this Notice, your vote will not be counted unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan, and you are required to file a motion for such relief (a "Rule 3018 Motion") **no later than 5:00 p.m. (Eastern time) on January 5, 2024**, which may be heard on or prior to the Confirmation Hearing.  Notwithstanding the foregoing, if the Debtors file an objection to a claim and request that such claim be allowed in a specific amount, your Ballot shall be counted in such specified amount, unless otherwise ordered by the Court.

**The Bankruptcy Court has established January 16, 2024 at 5:00 p.m. (Eastern Time), as the last date and time for filing and serving objections to the confirmation of the Plan (the "Plan Objection Deadline").**  All Plan Objections must state with particularity the legal and factual grounds for such objection; (i) be in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection; (iv) be filed with the Court and served so as to be received by the Plan Objection Deadline; and (v) served on the following parties: (a) Counsel for the Debtors, (i) Pachulski Stang Ziehl & Jones LLP, 919 North

Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com); and (ii) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com); (b) Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware, 19801, Attn: John Schanne, Esq. (John.Schanne@usdoj.gov); (c) Counsel to the DIP Lenders, DIP Agent and the Foris Prepetition Secured Lenders, (i) Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein (mgoldstein@goodwinlaw.com), Alexander J. Nicas (anicas@goodwinlaw.com), and Debora A. Hoehne  (dhoehne@goodwinlaw.com); and (ii) Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier (david.fournier@troutman.com); (d) Counsel to the Committee, (i) Counsel to the Committee, (i) White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, IL 60606-4302, Attn: Gregory Pesce, (gregory.pesce@whitecase.com) and Andrew O'Neill, (aoneill@whitecase.com); (ii) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095, Attn.: John Ramirez, (john.ramirez@whitecase.com) and Andrea Kropp, (andrea.kropp@whitecase.com); and (iii) local counsel to the Committee, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801; Attn: Christopher M. Samis, (csamis@potteranderson.com), Katelin A. Morales, (kmorales@potteranderson.com), Sameen Rizvi (srizvi@potteranderson.com); and (e) any party that requests service pursuant to Bankruptcy Rule 2002.

**Any Plan Objection not timely filed and served by the Plan Objection Deadline in accordance with the provisions of this Notice will not be heard and will be overruled.**

**<u>PLEASE TAKE NOTICE: ARTICLE IX OF THE PLAN CONTAINS CERTAIN RELEASES, EXCULPATION PROVISIONS AND INJUNCTIONS, INCLUDING THIRD-PARTY RELEASES</u>**

**<u>THESE PROVISIONS ARE SET FORTH IN THE ATTACHED ANNEX A</u>**

**You are a Holder of a Claim in a Voting Class.**

**<u>*Non-Consensual Third-Party Release*</u>**

**The Debtors will seek approval of the Third-Party Release based upon the standard for approval of non-consensual third-party releases.  All Holders of Claims or Interests in Voting and Non-Voting Classes will be deemed to have consented to the Third-Party Release set forth in Article IX.D of the Plan (as set forth in full in the attached Annex A).**

**<u>*Opt Out Election*</u>**

**In the event the Bankruptcy Court does not approve the Third-Party Release on a non-consensual basis, the Third-Party Release will be deemed a settlement offer to the holders of Direct Claims, and each Holder of a Claim in a Voting Class that is a holder of a Direct Claim may voluntarily elect to receive its pro rata portion of the Third-Party Release Settlement Amounts to which it is entitled by electing to grant the Third-Party Releases, through the following methods: for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, or (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases; provided, that, as applicable, the Direct Claims Threshold is satisfied.**

4894-7043-7262.14 03703.004                                              3

Dated:  [●]                                  **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ DRAFT*
_____
Richard M. Pachulski (*pro hac vice* forthcoming)
Debra I. Grassgreen (*pro hac vice* forthcoming)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell (*pro hac vice* forthcoming)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
joneill@pszjlaw.com
jrosell@pszjlaw.com
sgolden@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

**Annex A**

**ARTICLE IX.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**B.** *Release of Liens*.

Except as otherwise provided herein, in the Exit First Lien Facility Documents, the Plan Supplement, the Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, and other than as to the DIP Facility Claims and Foris Prepetition Secured Claims rolled up, converted, exchanged, refinanced or amended and restated, into the Exit First Lien Facility, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, or any other Holder of a Secured Claim.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such mortgages, deeds of trust, Liens, pledges, and other security interests.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or the Exit First Lien Facility Agent, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

**C.** *Releases by the Debtors*.

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, each of the Debtors, on its own behalf and as a representative of its Estates, to the fullest extent permitted under applicable law, shall, and shall be deemed to, completely and forever release, waive, void and extinguish unconditionally, as against each and all of the Released Parties, any and all Claims, Estate Causes of Action, interests, obligations, suits, judgments, damages, debts, rights, remedies, set offs, and Liabilities of any nature whatsoever, whether liquidated or Unliquidated, fixed or Contingent, matured or unmatured,

4894-7043-7262.14 03703.004                           5

known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, tort, contract, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event, occurrence, or other circumstance, whether direct or derivative, taking place or existing on or prior to the Effective Date (including prior to the Petition Date) arising from, in connection with, or related to, directly or indirectly, in any manner whatsoever, the Debtors or their operations, assets, liabilities, financings, the Estates, or the Chapter 11 Cases, that may be asserted by or on behalf of such Debtor or its Estate, against any of the Released Parties; *provided, however*, that nothing in this section shall operate as a release, waiver, discharge or impairment of any Estate Causes of Action transferred to the Creditor Trust, which are preserved notwithstanding anything to the contrary in this section.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (b) the rights of any Holder of Allowed Claims to receive distributions under the Plan; (c) any Claims for indemnification that are expressly assumed by the Reorganized Debtors pursuant to the Plan or any document, instrument, or agreement executed to implement the Plan or the Restructuring Transactions; or (d) any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any claim or Cause of Action released by the Debtor release against any of the Released Parties.

D.      *Third-Party Release by the Releasing Parties.*

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Parties shall be deemed to forever release and waive, as against each and all of the Released Parties, any and all Direct Claims, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise that are or may be based in whole or in part upon any act, omission, transaction, event, or other occurrence taking place or existing on or prior to the Effective Date; provided, however, that nothing in this section shall operate as a release, waiver, discharge or impairment of (i) any Estate Causes of Action or liabilities arising out of actual fraud, willful misconduct, or gross negligence of any such Released Party as determined by a Final Order, or (ii) any Causes of Action transferred to the Creditor Trust, which Causes of Action are preserved notwithstanding anything to the contrary in this section, or (iii) any Excluded Party Direct Claims.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (a) any post-Effective Date obligations of any party or Entity under the Plan, the

Confirmation Order, any Restructuring Transaction, any Definitive Document, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions, including the Exit First Lien Facility Documents; (b) the rights of any Holder of Allowed Claims or Allowed Interests to receive distributions under the Plan; and (c) any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity.

If the Third-Party Releases are not approved by the Bankruptcy Court, each holder of a Direct Claim may voluntarily elect to receive its Pro Rata portion of the Third-Party Release Amounts to which it is entitled by electing to grant the Third-Party Releases, through the following methods: (x) for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases, and (y) for holders of Claims and Interests who are deemed to accept or reject the Plan and are provided with a notice of non-voting status providing them with the right to opt out of granting the Third-Party Releases and do not elect to exercise such right; provided, that, as applicable, the Direct Claims Threshold is satisfied.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) essential to the Confirmation; (ii) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Creditor Trust and the Third-Party Release Settlement Amounts and the restructuring and implementing the Plan; (iii) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (iv) in the best interests of the Debtors and their Estates; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; and (vii) a bar to any of the Releasing Parties asserting any Direct Claim released pursuant to the Third-Party Release.

E.    *Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any claims and Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of prepetition transactions (including with respect to the Debt Documents), the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the Exit First Lien Facility Documents, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the Exit First Lien Facility, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence, except for claims

related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable Law with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.    *Plan Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, and separate and apart from the Direct Claims Injunction, all Entities who have held, hold, or may hold the Released Claims are permanently enjoined from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any Released Claims; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Released Claims; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the Estates of such Entities on account of or in connection with or with respect to any Released Claims; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any Released Claims unless such Entity has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Released Claims released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article IX.F of the Plan.

G.    *Direct Claims Injunction.*

1.    **General Purposes and Terms.**

The Confirmation Order shall provide that, as of the Effective Date, and irrespective of whether any such holder has agreed to be bound by the Plan, all holders of Direct Claims and their respective Related Parties will be permanently and forever stayed, enjoined, barred, and restrained

from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Direct Claim against the Direct Claims Injunction Parties, including all of the following actions (collectively, the "<u>Direct Claims Injunction</u>"):

        a.      commencing or continuing in any manner, any actions or other proceedings of any kind with respect to any Direct Claims against any of the Direct Claims Injunction Parties or against the property of any of the Direct Claims Injunction Parties;

        b.      enforcing, levying, attaching, collecting, or otherwise recovering, by any manner or means, from any of the Direct Claims Injunction Parties, or the property of the Direct Claims Injunction Parties, any judgment, award, decree, or order with respect to any Direct Claim against any of the Direct Claims Injunction Parties, or any other person;

        c.      creating, perfecting, or enforcing any lien of any kind relating to any Direct Claim against any of the Direct Claims Injunction Parties, or the property of the Direct Claims Injunction Parties; and

        d.      taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, with respect to any such Direct Claim.

        2.      **Standing of Direct Claim Injunction Parties.**

Each of the Direct Claims Injunction Parties shall have standing to seek relief from the Bankruptcy Court or any court of competent jurisdiction for purposes of enforcement of the Direct Claims Injunction or other Injunction or releases under the Plan to the extent that any act occurs or is taken that is contrary to the provisions of, or would interfere with, restrict, defeat, nullify, violate or otherwise limit the protections afforded the Direct Claims Injunction Party through the Direct Claims Injunction.

## RELEVANT DEFINITIONS (PLAN ARTICLE I):[2]

"*Debtor Release*" means the release given by the Debtors and the Estates to the Released Parties as set forth in <u>0</u> of the Plan.

"*Direct Claims*" means any claim or Cause of Action held by a Releasing Party against any of the Released Parties (excluding the Debtors) and their respective Related Parties, but only to the extent such claims arise from, relate to, or are connected with, directly or indirectly, in any manner whatsoever, the Debtors, including their respective assets, liabilities, operations, financings, contractual agreements, licenses, and including the governance thereof, and existing on or prior to the Effective Date (including prior to the Petition Date).

---

[2] The defined terms set forth herein are those relevant to the above the ability of Holders of Claims and Interests to make an informed decision about the release, exculpation and injunction provisions, and is not intended to be a complete list of all applicable definitions which are set forth in Article I of the Plan.

"*Direct Claims Injunction Parties*" means (a) the Reorganized Debtors; (b) the Foris Secured Parties; and (c) the Related Parties of the foregoing parties.

"*Direct Claims Threshold*" means (a) with respect to holders of Direct Claims who are creditors of the Debtors, determined separately with respect to such creditors classified in Class 7 and Class 8, respectively, creditors who hold at least a majority in amount of the Claims asserted against the Debtors (such Claims measured as of the Petition Date on the same basis as such Claims are Allowed for voting purposes); and (b) with respect to holders of Direct Claims who are Holders of any Interests consisting of issued and outstanding shares of common stock of Amyris, such Holders who hold at least a majority of the outstanding common stock of Amyris (excluding for purposes of such calculation, any outstanding common stock of Amyris held by any of the Direct Claims Injunction Parties) (such outstanding common stock of Amyris measured as of the Distribution Record Date Date).

"*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Foris Secured Parties; (c) all Consenting Convertible Noteholders; (d) the Ad Hoc Group Professionals; (e) the Creditors' Committee; and (f) the Related Parties of each of the foregoing parties.

"*Related Party*" means, collectively, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, shareholders, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts, or funds, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, fiduciaries, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, restructuring advisors, and other professionals and advisors, and any such person's or Entity's respective predecessors, successors, assigns, heirs, executors, estates, and nominees.

"*Released Claims*" means any Claim or Interest or Direct Claim that has been released, satisfied, stayed, terminated, discharged, or is subject to compromise and settlement pursuant to the Plan.

"*Released Parties*" means, collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c); the DIP Lenders and the DIP Agent; (d) the Foris Prepetition Secured Lenders; (e) the Creditors' Committee; (f) the Consenting Convertible Noteholders, (g) the Ad Hoc Group Professionals; (h) the Consenting Contract Counterparties; and (i) with respect to each of the foregoing Entities in clauses (a) through (e), all Related Parties. For the avoidance of doubt, (i) the Debtors' current and former directors, managers, officers, employees, professionals, and shareholders, in each case, who are not an Excluded Party, shall each be a Released Party; and (ii) no Excluded Party shall be a Released Party.

"*Releasing Parties*" means collectively, and in each case in its capacity as such:  (a) the Foris Prepetition Secured Lenders; (b) the Creditors' Committee; (c) the Consenting Convertible Noteholders; (d) the Consenting Contract Counterparties; (e) all Holders of Claims against the Debtors that are bound by the Third-Party Release Settlement; and (f) all persons who hold Interests in Amyris that are bound by the Third-Party Release Settlement.

"*Third-Party Release*" means the release of Direct Claims deemed given by each of the Releasing Parties to the Released Parties in consideration for the distributions to be made as set forth in <u>D</u> of the Plan.

"*Third-Party Release Settlement*" means that settlement and release of Direct Claims as provided for in Article IV.A. and Article IX.D & G. of the Plan. in consideration for the distributions to be made as set forth in Article IX.D of the Plan. The documentation of the Third-Party Release Settlement and the payment of the Third-Party Release Settlement Amounts will be included in the Plan Supplement.

"*Third-Party Release Settlement Amounts*" means, as applicable, the following amounts allocated from the Net Proceeds or other assets of the Estates that would otherwise be paid to the DIP Lenders and the Foris Prepetition Secured Lenders, as applicable:

(A) (i) $12,714,000, consisting of that portion of the Third-Party Release Settlement Amounts to be distributed to the Holders of Convertible Notes, if the Third-Party Release Settlement is approved on a non-consensual basis; or (ii) $9,264,000, consisting of that portion of the Third-Party Release Settlement Amounts to be distributed to the Holders of Convertible Notes if the Third-Party Release Settlement is not approved on a non-consensual basis and the Direct Claims Threshold is satisfied as to holders of Direct Claims who are creditors (but only as to holders of Allowed Convertible Notes Claims who do not opt out of the Third-Party Release Settlement);

(B) (i) $3,686,000, consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of General Unsecured Claims, if the Third-Party Release Settlement is approved on a non-consensual basis; or (ii) $2,686,000 consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of General Unsecured Claims if the Third-Party Release Settlement is not approved on a non-consensual basis and the Direct Claims Threshold is satisfied as to holders of Direct Claims who are creditors (but only as to Holders of Allowed General Unsecured Claims who do not opt out of the Third-Party Release Settlement);

(C) (i) $5,000,000 consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of Interests as of the Voting Record Date, if the Third-Party Release Settlement is approved on a non-consensual basis; or (ii)$2,500,000 consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of Interests as of the Voting Record Date if the Third-Party Release Settlement is not approved on a non-consensual basis and the Direct Claims Threshold is satisfied as to holders of Direct Claims who are holders of any Interests (but only as to Holders of Interests who do not opt out of the Third-Party Release Settlement).

## **EXHIBIT B1**

**Notice of Confirmation Hearing and Related Matters
(Non-Voting Classes/Holders of Claims)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al*., | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE TO NON-VOTING CLAIM HOLDER CLASSES OF (A) STATUS WITH RESPECT TO CLASSES DEEMED TO ACCEPT OR REJECT DEBTORS' CHAPTER 11 PLAN, (B) HEARING TO CONSIDER CONFIRMATION OF DEBTORS' CHAPTER 11 PLAN; (C) DEADLINE FOR FILING PLAN OBJECTIONS, (D) DEBTORS' RELEASES AND THIRD-PARTY RELEASE; (E) PROCEDURES AND DEADLINE REGARDING OPT OUT ELECTION; AND (F) RELATED MATTERS**

TO:    **HOLDERS OF CLAIMS IN NON-VOTING CLASSES:**
       **Class 1 (Other Secured Claims)**
       **Class 2 (Other Priority Claims)**
       **Class 6 (Lavvan Secured Claim)**
       **Class 12 (Section 510(b) Claims)**

**PLEASE TAKE NOTICE**: On October 12, 2023, Amyris, Inc. and its affiliated debtors and debtors in possession (the "Debtors") filed the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. 523] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").

Concurrently with the filing of the Plan, the Debtors filed the related Disclosure Statement in support of the Plan [Docket No. 524] (including all exhibits thereto and as may be amended, modified or supplemented from time to time, collectively, the "Disclosure Statement"). On [_____, 2023], this Court entered an order approving the Disclosure Statement [Docket No. __] (the "Disclosure Statement Order") and certain related materials (i) establishing notice, voting and objection procedures for Voting Classes (the "Solicitation Materials") and (ii) establishing notice and objection procedures for Non-Voting Classes (the "Non-Voting Class Notices").

**A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held on January ___, 2024, commencing at ___ a.m. (prevailing Eastern Time),** before the Honorable Thomas M. Horan, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 824 Market Street, Courtroom No. 6, Wilmington, Delaware 19801. It may be possible to attend the Confirmation Hearing remotely. Any party who wishes to attend via video conference is required to register with the Court at the following link: https://protect-

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

us.mimecast.com/s/48LqCYEMNEs6v2kKt0scm9.   The Confirmation Hearing may be continued from time to time without further notice except for (i) an announcement made at the Confirmation Hearing or any adjourned confirmation hearing or (ii) a written notice filed with the Bankruptcy Court and served on all parties who have filed Plan Objections, the United States Trustee, and all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

**<u>If you have received this Notice, your Claims are in a Non-Voting Class and you are not eligible to vote to accept or reject the Plan.</u>**

**PLEASE TAKE NOTICE** that pursuant to section 1126(f) of the Bankruptcy Code, Holders of Claims in Classes 1, 2, and 6 under the Plan are Unimpaired and deemed to have accepted the Plan and therefore, are not entitled to vote.  Also, pursuant to section 1126(g) of the Bankruptcy Code, Holders of Claims in Class 12 under the Plan are Impaired and shall not receive nor retain any property under the Plan on account of such Claims, and therefore, are deemed to have rejected the Plan and not entitled to vote.

Accordingly, the Debtors are not required to transmit Solicitation Materials to holders of Claims in Classes 1, 2, 6, and 12 under the Plan (each, a "<u>Non-Voting Class</u>") pursuant to the Disclosure Statement Order.  Instead, you have been sent this Notice for the purpose of notifying you of the Confirmation Hearing and Plan Objection Deadline, AND NOTIFYING YOU OF YOUR ABILITY TO OPT OUT OF GRANTING THE THIRD-PARTY RELEASE DESCRIBED IN DETAIL BELOW.

**The Bankruptcy Court has established January 16, 2024 at 5:00 p.m. (Eastern Time), as the last date and time for filing and serving objections to the confirmation of the Plan (the "<u>Plan Objection Deadline</u>").**  All Plan Objections must state with particularity the legal and factual grounds for such objection; (i) be in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection; (iv) be filed with the Court and served so as to be received by the Plan Objection Deadline; and (v) served on the following parties: (a) Counsel for the Debtors, (i) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com); and (ii) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com); (b) Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware, 19801, Attn: John Schanne, Esq. (John.Schanne@usdoj.gov); (c) Counsel to the DIP Lenders, DIP Agent and the Foris Prepetition Secured Lenders, (i) Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein (mgoldstein@goodwinlaw.com), Alexander J. Nicas (anicas@goodwinlaw.com), and Debora A. Hoehne (dhoehne@goodwinlaw.com); and (ii) Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier (david.fournier@troutman.com); (d) Counsel to the Committee, (i) Counsel to the Committee, (i) White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, IL 60606-4302, Attn: Gregory Pesce, (gregory.pesce@whitecase.com) and Andrew O'Neill, (aoneill@whitecase.com); (ii) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095, Attn.: John Ramirez, (john.ramirez@whitecase.com) and Andrea Kropp, (andrea.kropp@whitecase.com); and (iii) local counsel to the Committee, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801; Attn: Christopher M. Samis, (csamis@potteranderson.com), Katelin A. Morales, (kmorales@potteranderson.com), Sameen Rizvi (srizvi@potteranderson.com); and (e) any party that requests service pursuant to Bankruptcy Rule 2002.

**Any Plan Objection not timely filed and served by the Plan Objection Deadline in accordance with the provisions of this Notice will not be heard and will be overruled.**

**<u>PLEASE TAKE NOTICE: ARTICLE IX OF THE PLAN CONTAINS CERTAIN RELEASES, EXCULPATION PROVISIONS AND INJUNCTIONS, INCLUDING THIRD-PARTY RELEASES</u>**

**<u>THESE PROVISIONS ARE SET FORTH IN THE ATTACHED ANNEX A</u>**

**You are the Holder of a Claim in a Non-Voting Class.**

**<u>*Non-Consensual Third-Party Release*</u>**

**The Debtors will seek approval of the Third-Party Release based upon the standard for approval of non-consensual third-party releases.  All Holders of Claims or Interests in Voting and Non-Voting Classes will be deemed to have consented to the Third-Party Release set forth in Article IX.D of the Plan (as set forth in full in the attached Annex A).**

**<u>*Opt Out Election*</u>**

**In the event the Bankruptcy Court does not approve the Third-Party Release on a non-consensual basis, the Third-Party Release will be deemed a settlement offer to the holders of Direct Claims, and each Holder of Claims in a Non-Voting Class that is a holder of a Direct Claim may voluntarily elect to receive its pro rata portion of the Third-Party Release Settlement Amounts to which it is entitled, provided the Direct Claims Threshold is satisfied.  <u>If you do not want to consent to granting the Third-Party Release set forth in Article IX.D of the Plan, you must complete the attached Opt Out Election Form and return it to the Solicitation Agent in the manner indicated by January 16, 2024, at 5:00 p.m.</u>  A failure to complete and submit the Opt Out Election Form will be deemed consent to granting the Third-Party Release.**

> **PLEASE TAKE FURTHER NOTICE** that any party in interest, including any member of a Non-Voting Class, wishing to obtain copies of the Solicitation Materials, including the Plan and Disclosure Statement, at the Debtors' expense may do so by (i) contacting the Debtors' Solicitation Agent at 888.855.0485 (Toll free) or 303.276.0309 (International) or by email at TeamAmyris@stretto.com or by viewing such documents by accessing online at no cost to you at https://cases.stretto.com/Amyris.  The documents are also available on the Court's website: www.deb.uscourts.gov.  Please note that a PACER password and login are needed to access documents on the Court's website.

Dated:  [●]

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ DRAFT*
_____

Richard M. Pachulski (*pro hac vice* forthcoming)
Debra I. Grassgreen (*pro hac vice* forthcoming)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell (*pro hac vice* forthcoming)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
joneill@pszjlaw.com
jrosell@pszjlaw.com
sgolden@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

**Annex A**

**ARTICLE IX.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**B.**      *Release of Liens.*

Except as otherwise provided herein, in the Exit First Lien Facility Documents, the Plan Supplement, the Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, and other than as to the DIP Facility Claims and Foris Prepetition Secured Claims rolled up, converted, exchanged, refinanced or amended and restated, into the Exit First Lien Facility, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, or any other Holder of a Secured Claim.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such mortgages, deeds of trust, Liens, pledges, and other security interests.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or the Exit First Lien Facility Agent, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

**C.**      *Releases by the Debtors.*

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, each of the Debtors, on its own behalf and as a representative of its Estates, to the fullest extent permitted under applicable law, shall, and shall be deemed to, completely and forever release, waive, void and extinguish unconditionally, as against each and all of the Released Parties, any and all Claims, Estate Causes of Action, interests, obligations, suits, judgments, damages, debts, rights, remedies, set offs, and Liabilities of any nature whatsoever, whether liquidated or Unliquidated, fixed or Contingent, matured or unmatured,

4894-7043-7262.14 03703.004                           5

known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, tort, contract, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event, occurrence, or other circumstance, whether direct or derivative, taking place or existing on or prior to the Effective Date (including prior to the Petition Date) arising from, in connection with, or related to, directly or indirectly, in any manner whatsoever, the Debtors or their operations, assets, liabilities, financings, the Estates, or the Chapter 11 Cases, that may be asserted by or on behalf of such Debtor or its Estate, against any of the Released Parties; *provided, however*, that nothing in this section shall operate as a release, waiver, discharge or impairment of any Estate Causes of Action transferred to the Creditor Trust, which are preserved notwithstanding anything to the contrary in this section.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (b) the rights of any Holder of Allowed Claims to receive distributions under the Plan; (c) any Claims for indemnification that are expressly assumed by the Reorganized Debtors pursuant to the Plan or any document, instrument, or agreement executed to implement the Plan or the Restructuring Transactions; or (d) any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any claim or Cause of Action released by the Debtor release against any of the Released Parties.

D.     *Third-Party Release by the Releasing Parties.*

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Parties shall be deemed to forever release and waive, as against each and all of the Released Parties, any and all Direct Claims, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise that are or may be based in whole or in part upon any act, omission, transaction, event, or other occurrence taking place or existing on or prior to the Effective Date; provided, however, that nothing in this section shall operate as a release, waiver, discharge or impairment of (i) any Estate Causes of Action or liabilities arising out of actual fraud, willful misconduct, or gross negligence of any such Released Party as determined by a Final Order, or (ii) any Causes of Action transferred to the Creditor Trust, which Causes of Action are preserved notwithstanding anything to the contrary in this section, or (iii) any Excluded Party Direct Claims.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (a) any post-Effective Date obligations of any party or Entity under the Plan, the

Confirmation Order, any Restructuring Transaction, any Definitive Document, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions, including the Exit First Lien Facility Documents; (b) the rights of any Holder of Allowed Claims or Allowed Interests to receive distributions under the Plan; and (c) any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity.

If the Third-Party Releases are not approved by the Bankruptcy Court, each holder of a Direct Claim may voluntarily elect to receive its Pro Rata portion of the Third-Party Release Amounts to which it is entitled by electing to grant the Third-Party Releases, through the following methods: (x) for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases, and (y) for holders of Claims and Interests who are deemed to accept or reject the Plan and are provided with a notice of non-voting status providing them with the right to opt out of granting the Third-Party Releases and do not elect to exercise such right; provided, that, as applicable, the Direct Claims Threshold is satisfied.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) essential to the Confirmation; (ii) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Creditor Trust and the Third-Party Release Settlement Amounts and the restructuring and implementing the Plan; (iii) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (iv) in the best interests of the Debtors and their Estates; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; and (vii) a bar to any of the Releasing Parties asserting any Direct Claim released pursuant to the Third-Party Release.

E.      *Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any claims and Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of prepetition transactions (including with respect to the Debt Documents), the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the Exit First Lien Facility Documents, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the Exit First Lien Facility, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence, except for claims

related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable Law with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.      *Plan Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, and separate and apart from the Direct Claims Injunction, all Entities who have held, hold, or may hold the Released Claims are permanently enjoined from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any Released Claims; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Released Claims; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the Estates of such Entities on account of or in connection with or with respect to any Released Claims; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any Released Claims unless such Entity has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Released Claims released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article IX.F of the Plan.

G.      *Direct Claims Injunction.*

1.      **General Purposes and Terms.**

The Confirmation Order shall provide that, as of the Effective Date, and irrespective of whether any such holder has agreed to be bound by the Plan, all holders of Direct Claims and their respective Related Parties will be permanently and forever stayed, enjoined, barred, and restrained

from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Direct Claim against the Direct Claims Injunction Parties, including all of the following actions (collectively, the "<u>Direct Claims Injunction</u>"):

        a.      commencing or continuing in any manner, any actions or other proceedings of any kind with respect to any Direct Claims against any of the Direct Claims Injunction Parties or against the property of any of the Direct Claims Injunction Parties;

        b.      enforcing, levying, attaching, collecting, or otherwise recovering, by any manner or means, from any of the Direct Claims Injunction Parties, or the property of the Direct Claims Injunction Parties, any judgment, award, decree, or order with respect to any Direct Claim against any of the Direct Claims Injunction Parties, or any other person;

        c.      creating, perfecting, or enforcing any lien of any kind relating to any Direct Claim against any of the Direct Claims Injunction Parties, or the property of the Direct Claims Injunction Parties; and

        d.      taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, with respect to any such Direct Claim.

    2.        **Standing of Direct Claim Injunction Parties.**

Each of the Direct Claims Injunction Parties shall have standing to seek relief from the Bankruptcy Court or any court of competent jurisdiction for purposes of enforcement of the Direct Claims Injunction or other Injunction or releases under the Plan to the extent that any act occurs or is taken that is contrary to the provisions of, or would interfere with, restrict, defeat, nullify, violate or otherwise limit the protections afforded the Direct Claims Injunction Party through the Direct Claims Injunction.

## <u>RELEVANT DEFINITIONS (PLAN ARTICLE I):[2]</u>

"*Debtor Release*" means the release given by the Debtors and the Estates to the Released Parties as set forth in <u>0</u> of the Plan.

"*Direct Claims*" means any claim or Cause of Action held by a Releasing Party against any of the Released Parties (excluding the Debtors) and their respective Related Parties, but only to the extent such claims arise from, relate to, or are connected with, directly or indirectly, in any manner whatsoever, the Debtors, including their respective assets, liabilities, operations, financings, contractual agreements, licenses, and including the governance thereof, and existing on or prior to the Effective Date (including prior to the Petition Date).

---

[2] The defined terms set forth herein are those relevant to the above the ability of Holders of Claims and Interests to make an informed decision about the release, exculpation and injunction provisions, and is not intended to be a complete list of all applicable definitions which are set forth in Article I of the Plan.

"*Direct Claims Injunction Parties*" means (a) the Reorganized Debtors; (b) the Foris Secured Parties; and (c) the Related Parties of the foregoing parties.

"*Direct Claims Threshold*" means (a) with respect to holders of Direct Claims who are creditors of the Debtors, determined separately with respect to such creditors classified in Class 7 and Class 8, respectively, creditors who hold at least a majority in amount of the Claims asserted against the Debtors (such Claims measured as of the Petition Date on the same basis as such Claims are Allowed for voting purposes); and (b) with respect to holders of Direct Claims who are Holders of any Interests consisting of issued and outstanding shares of common stock of Amyris, such Holders who hold at least a majority of the outstanding common stock of Amyris (excluding for purposes of such calculation, any outstanding common stock of Amyris held by any of the Direct Claims Injunction Parties) (such outstanding common stock of Amyris measured as of the Distribution Record Date Date).

"*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Foris Secured Parties; (c) all Consenting Convertible Noteholders; (d) the Ad Hoc Group Professionals; (e) the Creditors' Committee; and (f) the Related Parties of each of the foregoing parties.

"*Related Party*" means, collectively, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, shareholders, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts, or funds, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, fiduciaries, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, restructuring advisors, and other professionals and advisors, and any such person's or Entity's respective predecessors, successors, assigns, heirs, executors, estates, and nominees.

"*Released Claims*" means any Claim or Interest or Direct Claim that has been released, satisfied, stayed, terminated, discharged, or is subject to compromise and settlement pursuant to the Plan.

"*Released Parties*" means, collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c); the DIP Lenders and the DIP Agent; (d) the Foris Prepetition Secured Lenders; (e) the Creditors' Committee; (f) the Consenting Convertible Noteholders, (g) the Ad Hoc Group Professionals; (h) the Consenting Contract Counterparties; and (i) with respect to each of the foregoing Entities in clauses (a) through (e), all Related Parties. For the avoidance of doubt, (i) the Debtors' current and former directors, managers, officers, employees, professionals, and shareholders, in each case, who are not an Excluded Party, shall each be a Released Party; and (ii) no Excluded Party shall be a Released Party.

"*Releasing Parties*" means collectively, and in each case in its capacity as such:  (a) the Foris Prepetition Secured Lenders; (b) the Creditors' Committee; (c) the Consenting Convertible Noteholders; (d) the Consenting Contract Counterparties; (e) all Holders of Claims against the Debtors that are bound by the Third-Party Release Settlement; and (f) all persons who hold Interests in Amyris that are bound by the Third-Party Release Settlement.

"*Third-Party Release*" means the release of Direct Claims deemed given by each of the Releasing Parties to the Released Parties in consideration for the distributions to be made as set forth in <u>D</u> of the Plan.

"*Third-Party Release Settlement*" means that settlement and release of Direct Claims as provided for in Article IV.A. and Article IX.D & G. of the Plan. in consideration for the distributions to be made as set forth in Article IX.D of the Plan. The documentation of the Third-Party Release Settlement and the payment of the Third-Party Release Settlement Amounts will be included in the Plan Supplement.

"*Third-Party Release Settlement Amounts*" means, as applicable, the following amounts allocated from the Net Proceeds or other assets of the Estates that would otherwise be paid to the DIP Lenders and the Foris Prepetition Secured Lenders, as applicable:

(A) (i) $12,714,000, consisting of that portion of the Third-Party Release Settlement Amounts to be distributed to the Holders of Convertible Notes, if the Third-Party Release Settlement is approved on a non-consensual basis; or (ii) $9,264,000, consisting of that portion of the Third-Party Release Settlement Amounts to be distributed to the Holders of Convertible Notes if the Third-Party Release Settlement is not approved on a non-consensual basis and the Direct Claims Threshold is satisfied as to holders of Direct Claims who are creditors (but only as to holders of Allowed Convertible Notes Claims who do not opt out of the Third-Party Release Settlement);

(B) (i) $3,686,000, consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of General Unsecured Claims, if the Third-Party Release Settlement is approved on a non-consensual basis; or (ii) $2,686,000 consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of General Unsecured Claims if the Third-Party Release Settlement is not approved on a non-consensual basis and the Direct Claims Threshold is satisfied as to holders of Direct Claims who are creditors (but only as to Holders of Allowed General Unsecured Claims who do not opt out of the Third-Party Release Settlement);

(C) (i) $5,000,000 consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of Interests as of the Voting Record Date, if the Third-Party Release Settlement is approved on a non-consensual basis; or (ii)$2,500,000 consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of Interests as of the Voting Record Date if the Third-Party Release Settlement is not approved on a non-consensual basis and the Direct Claims Threshold is satisfied as to holders of Direct Claims who are holders of any Interests (but only as to Holders of Interests who do not opt out of the Third-Party Release Settlement).

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al*., | Case No. 23-11131 (TMH) |
| Debtors.[3] | (Jointly Administered) |

### NON-VOTING CLASS RELEASE OPT OUT ELECTION FORM (HOLDERS OF CLAIMS)

**THIS OPT OUT ELECTION FORM IS TO BE USED BY OR ON BEHALF OF HOLDERS OF CLAIMS IN NON-VOTING CLASSES TO INDICATE THAT SUCH HOLDER DOES NOT CONSENT TO THE THIRD-PARTY RELEASE SET FORTH IN THE PLAN, AS DESCRIBED MORE FULLY IN ANNEX A TO THE ENCLOSED NON-VOTING CLASS NOTICE.**

**IF YOU ARE RECEIVING THIS FORM, YOU ARE A HOLDER OF A CLAIM IN A NON-VOTING CLASS.**

**IF YOU DO NOT (I) COMPLETE THIS OPT OUT ELECTION FORM PURSUANT TO WHICH YOU INDICATE YOUR ELECTION NOT TO CONSENT TO THE THIRD-PARTY RELEASE AND (II) TIMELY RETURN THIS OPT OUT ELECTION FORM BY JANUARY 16, 2024 AT 5:00 P.M. (PREVAILING EASTERN TIME) TO THE SOLICITATION AGENT IN THE MANNER INDICATED BELOW, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE SET FORTH IN THE PLAN.**

**Release Opt Out**: The undersigned, the Holder of a Claim in a Non-Voting Class, hereby elects to opt out of granting the Third-Party Release set forth in the Plan, **the relevant provisions of which are attached as Annex A to the enclosed Non-Voting Class Notice.** [Check box]

☐ Opt Out of the granting the Third-Party Release

**In the event the Bankruptcy Court does not approve the Third-Party Release on a non-consensual basis, the Third-Party Release will be deemed a settlement offer to the holders of Direct Claims, and each holder of a Direct Claim may voluntarily elect to receive its portion of the Unsecured Claims Reserve to which it is entitled by electing to grant the Third-Party Releases, through the following methods: (x) for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases, and (y) for holders**

---

[3] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

**of Claims and Interests who are deemed to accept or reject the Plan and are provided with a notice of non-voting status providing them with the right to opt out of the Third-Party Releases and do not elect to exercise such right; provided, that, as applicable, the Direct Claims Threshold is satisfied.**

**Acknowledgments.**  By signing this Opt Out Election Form, the undersigned acknowledges receipt of the Non-Voting Class Notice, including Annex A, and certifies that (i) the undersigned is the claimant, or (ii) has the power and authority complete this Opt Out Election Form on behalf of the claimant.

| | |
|---|---|
| _____ | _____ |
| Name of Holder of Claim | Social Security or Federal Tax I.D. No. (optional) |
| _____ | _____ |
| Signature | Amount of Claim: |
| _____ | _____ |
| If by Authorized Agent, Name and Title | Street Address |
| | _____ |
| | City, State, Zip Code |
| _____ | _____ |
| Date Completed | E-mail: |
| | Telephone Number: |

## INFORMATION AND INSTRUCTIONS FOR SUBMITTING OPT OUT ELECTION FORM

In the Release Opt Out box provided on the first page of this Opt Out Election Form, please indicate your election to opt out of granting the Third-Party Release, complete the Form by providing all the information requested and sign, date and return the Form by mail, overnight courier or personal delivery to the Solicitation Agent at the following address:

**Amyris Balloting**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

An envelope addressed to the Solicitation Agent is enclosed for your convenience.

**Opt Out Election Forms must be _received_ by the Solicitation Agent by 5:00 p.m., prevailing Eastern Time, January 16, 2024.**  If an Opt Out Election Form is received after that date, it will not be counted and you will be deemed to consent to granting the Third-Party Release and will be a Releasing Party under the Plan.

**EXHIBIT B2**

**Notice of Confirmation Hearing and Related Matters**
**(Non-Voting Classes/Interest Holders)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE TO NON-VOTING INTEREST HOLDER CLASSES OF (A) STATUS WITH RESPECT TO CLASSES  DEEMED TO ACCEPT OR REJECT DEBTORS' CHAPTER 11 PLAN, (B) HEARING TO CONSIDER CONFIRMATION OF DEBTORS' CHAPTER 11 PLAN; (C) DEADLINE FOR FILING PLAN OBJECTIONS, (D) DEBTORS' RELEASES AND THIRD-PARTY RELEASE; (E) PROCEDURES AND DEADLINE REGARDING OPT OUT ELECTION; AND (F) RELATED MATTERS**

**TO:      HOLDERS OF NON-VOTING INTERESTS:**
          **Class 14 (Amyris, Inc. Equity Interests)**

PLEASE TAKE NOTICE: On October 12, 2023, Amyris, Inc. and its affiliated debtors and debtors in possession (the "Debtors") filed the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. 523] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").

Concurrently with the filing of the Plan, the Debtors filed the related Disclosure Statement in support of the Plan [Docket No. 524] (including all exhibits thereto and as may be amended, modified or supplemented from time to time, collectively, the "Disclosure Statement"). On [_____, 2023], this Court entered an order approving the Disclosure Statement [Docket No.  __] (the "Disclosure Statement Order") and certain related materials (i) establishing notice, voting and objection procedures for Voting Classes  (the "Solicitation Materials") and (ii) establishing notice and objection procedures for Non-Voting Classes (the "Non-Voting Class Notices").

A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held on January ___, 2024, commencing at __ a.m. (prevailing Eastern Time), before the Honorable Thomas M. Horan, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 824 Market Street, Courtroom No. 6, Wilmington, Delaware 19801.  It may be possible to attend the Confirmation Hearing remotely.  Any party who wishes to attend via video conference is required to register with the Court at the following link: https://protect-us.mimecast.com/s/48LqCYEMNEs6v2kKt0scm9.  The Confirmation Hearing may be continued from time to time without further notice except for (i) an announcement made at the Confirmation Hearing or any adjourned confirmation hearing or (ii) a written notice filed with the Bankruptcy Court and served on

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

all parties who have filed Plan Objections, the United States Trustee, and all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

**If you have received this Notice, your Interests are in a Non-Voting Class and you are not eligible to vote to accept or reject the Plan.**

**PLEASE TAKE NOTICE** that pursuant to section 1126(g) of the Bankruptcy Code, Holders of Interests in Class 14 under the Plan, are Impaired and shall not receive nor retain any property under the Plan on account of such Interests, and therefore, are deemed to have rejected the Plan and not entitled to vote.

Accordingly, the Debtors are not required to transmit Solicitation Materials to holders of Interests in Class 14 of the Plan (each, a "<u>Non-Voting Class</u>") pursuant to the Disclosure Statement Order.  Instead, you have been sent this Notice for the purpose of notifying you of the Confirmation Hearing and Plan Objection Deadline, AND NOTIFYING YOU OF YOUR ABILITY TO OPT OUT OF GRANTING THE THIRD-PARTY RELEASE DESCRIBED IN DETAIL BELOW.

**The Bankruptcy Court has established January 16, 2024 at 5:00 p.m. (Eastern Time), as the last date and time for filing and serving objections to the confirmation of the Plan (the "<u>Plan Objection Deadline</u>").**  All Plan Objections must state with particularity the legal and factual grounds for such objection; (i) be in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection; (iv) be filed with the Court and served so as to be received by the Plan Objection Deadline; and (v) served on the following parties: (a) Counsel for the Debtors, (i) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com); and (ii) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (<u>dgrassgreen@pszjlaw.com</u>); (b) Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware, 19801, Attn: John Schanne, Esq. (<u>John.Schanne@usdoj.gov</u>); (c) Counsel to the DIP Lenders, DIP Agent and the Foris Prepetition Secured Lenders, (i) Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein (mgoldstein@goodwinlaw.com), Alexander J. Nicas (anicas@goodwinlaw.com), and Debora A. Hoehne  (dhoehne@goodwinlaw.com); and (ii) Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier (<u>david.fournier@troutman.com</u>); (d) Counsel to the Committee, (i) Counsel to the Committee, (i) White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, IL 60606-4302, Attn: Gregory Pesce, (<u>gregory.pesce@whitecase.com</u>) and Andrew O'Neill, (aoneill@whitecase.com); (ii) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095, Attn.: John Ramirez, (<u>john.ramirez@whitecase.com</u>) and Andrea Kropp, (andrea.kropp@whitecase.com); and (iii) local counsel to the Committee, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801; Attn: Christopher M. Samis, (csamis@potteranderson.com), Katelin A. Morales, (kmorales@potteranderson.com), Sameen Rizvi (<u>srizvi@potteranderson.com</u>); and (e) any party that requests service pursuant to Bankruptcy Rule 2002.

**Any Plan Objection not timely filed and served by the Plan Objection Deadline in accordance with the provisions of this Notice will not be heard and will be overruled.**

**PLEASE TAKE NOTICE: ARTICLE IX OF THE PLAN CONTAINS CERTAIN RELEASES, EXCULPATION PROVISIONS AND INJUNCTIONS, INCLUDING THIRD-PARTY RELEASES**

**THESE PROVISIONS ARE SET FORTH IN THE ATTACHED ANNEX A**

4894-7043-7262.14 03703.004
DOCS_NY:48499.8 03703/004

**You are the Holder of an Interest in a Non-Voting Class.**

***Non-Consensual Third-Party Release***

**The Debtors will seek approval of the Third-Party Release based upon the standard for approval of non-consensual third-party releases. All Holders of Claims or Interests in Voting and Non-Voting Classes will be deemed to have consented to the Third-Party Release set forth in Article IX.D of the Plan (as set forth in full in the attached Annex A).**

***Opt Out Election***

**In the event the Bankruptcy Court does not approve the Third-Party Release on a non-consensual basis, the Third-Party Release will be deemed a settlement offer to the holders of Direct Claims, and each Holder of an Interest in a Non-Voting Class that is a holder of a Direct Claim may voluntarily elect to receive its pro rata portion of the Third-Party Release Settlement Amounts to which it is entitled, provided the Direct Claims Threshold is satisfied.  <u>If you do not want to consent to granting the Third-Party Release set forth in Article IX.D of the Plan, you must complete the attached Opt Out Election Form and return it to the Solicitation Agent in the manner indicated by January 16, 2024, at 5:00 p.m.</u>  A failure to make and submit the Opt Out Election Form will be deemed consent to granting the Third-Party Release.**

   **PLEASE TAKE FURTHER NOTICE** that any party in interest, including any member of a Non-Voting Class, wishing to obtain copies of the Solicitation Materials, including the Plan and Disclosure Statement, at the Debtors' expense may do so by (i) contacting the Debtors' Solicitation Agent at 888.855.0485 (Toll free) or 303.276.0309 (International) or by email at TeamAmyris@stretto.com or by viewing such documents by accessing online at no cost to you at https://cases.stretto.com/Amyris.  The documents are also available on the Court's website: www.deb.uscourts.gov.  Please note that a PACER password and login are needed to access documents on the Court's website.

Dated:  [●]                          **PACHULSKI STANG ZIEHL & JONES LLP**

_/s/ DRAFT_
Richard M. Pachulski (_pro hac vice_ forthcoming)
Debra I. Grassgreen (_pro hac vice_ forthcoming)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell (_pro hac vice_ forthcoming)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
joneill@pszjlaw.com
jrosell@pszjlaw.com
sgolden@pszjlaw.com

_Counsel to the Debtors and Debtors in Possession_

**Annex A**

**ARTICLE IX.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**B.**    *Release of Liens*.

Except as otherwise provided herein, in the Exit First Lien Facility Documents, the Plan Supplement, the Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, and other than as to the DIP Facility Claims and Foris Prepetition Secured Claims rolled up, converted, exchanged, refinanced or amended and restated, into the Exit First Lien Facility, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, or any other Holder of a Secured Claim.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such mortgages, deeds of trust, Liens, pledges, and other security interests.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or the Exit First Lien Facility Agent, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

**C.**    *Releases by the Debtors*.

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, each of the Debtors, on its own behalf and as a representative of its Estates, to the fullest extent permitted under applicable law, shall, and shall be deemed to, completely and forever release, waive, void and extinguish unconditionally, as against each and all of the Released Parties, any and all Claims, Estate Causes of Action, interests, obligations, suits, judgments, damages, debts, rights, remedies, set offs, and Liabilities of any nature whatsoever, whether liquidated or Unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, tort,

contract, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event, occurrence, or other circumstance, whether direct or derivative, taking place or existing on or prior to the Effective Date (including prior to the Petition Date) arising from, in connection with, or related to, directly or indirectly, in any manner whatsoever, the Debtors or their operations, assets, liabilities, financings, the Estates, or the Chapter 11 Cases, that may be asserted by or on behalf of such Debtor or its Estate, against any of the Released Parties; *provided, however*, that nothing in this section shall operate as a release, waiver, discharge or impairment of any Estate Causes of Action transferred to the Creditor Trust, which are preserved notwithstanding anything to the contrary in this section.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (b) the rights of any Holder of Allowed Claims to receive distributions under the Plan; (c) any Claims for indemnification that are expressly assumed by the Reorganized Debtors pursuant to the Plan or any document, instrument, or agreement executed to implement the Plan or the Restructuring Transactions; or (d) any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any claim or Cause of Action released by the Debtor release against any of the Released Parties.

D.      *Third-Party Release by the Releasing Parties.*

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Parties shall be deemed to forever release and waive, as against each and all of the Released Parties, any and all Direct Claims, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise that are or may be based in whole or in part upon any act, omission, transaction, event, or other occurrence taking place or existing on or prior to the Effective Date; provided, however, that nothing in this section shall operate as a release, waiver, discharge or impairment of (i) any Estate Causes of Action or liabilities arising out of actual fraud, willful misconduct, or gross negligence of any such Released Party as determined by a Final Order, or (ii) any Causes of Action transferred to the Creditor Trust, which Causes of Action are preserved notwithstanding anything to the contrary in this section, or (iii) any Excluded Party Direct Claims.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to

implement the Plan or the Restructuring Transactions, including the Exit First Lien Facility Documents; (b) the rights of any Holder of Allowed Claims or Allowed Interests to receive distributions under the Plan; and (c) any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity.

If the Third-Party Releases are not approved by the Bankruptcy Court, each holder of a Direct Claim may voluntarily elect to receive its Pro Rata portion of the Third-Party Release Amounts to which it is entitled by electing to grant the Third-Party Releases, through the following methods: (x) for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases, and (y) for holders of Claims and Interests who are deemed to accept or reject the Plan and are provided with a notice of non-voting status providing them with the right to opt out of granting the Third-Party Releases and do not elect to exercise such right; provided, that, as applicable, the Direct Claims Threshold is satisfied.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) essential to the Confirmation; (ii) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Creditor Trust and the Third-Party Release Settlement Amounts and the restructuring and implementing the Plan; (iii) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (iv) in the best interests of the Debtors and their Estates; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; and (vii) a bar to any of the Releasing Parties asserting any Direct Claim released pursuant to the Third-Party Release.

E.    *Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any claims and Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of prepetition transactions (including with respect to the Debt Documents), the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the Exit First Lien Facility Documents, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the Exit First Lien Facility, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all

respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable Law with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.    *Plan Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, and separate and apart from the Direct Claims Injunction, all Entities who have held, hold, or may hold the Released Claims are permanently enjoined from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any Released Claims; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Released Claims; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the Estates of such Entities on account of or in connection with or with respect to any Released Claims; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any Released Claims unless such Entity has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Released Claims released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article IX.F of the Plan.

G.    *Direct Claims Injunction.*

1.    **General Purposes and Terms.**

The Confirmation Order shall provide that, as of the Effective Date, and irrespective of whether any such holder has agreed to be bound by the Plan, all holders of Direct Claims and their respective Related Parties will be permanently and forever stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Direct Claim against the Direct Claims Injunction Parties, including all of the following actions (collectively, the "<u>Direct Claims Injunction</u>"):

e.      commencing or continuing in any manner, any actions or other proceedings of any kind with respect to any Direct Claims against any of the Direct Claims Injunction Parties or against the property of any of the Direct Claims Injunction Parties;

f.      enforcing, levying, attaching, collecting, or otherwise recovering, by any manner or means, from any of the Direct Claims Injunction Parties, or the property of the Direct Claims Injunction Parties, any judgment, award, decree, or order with respect to any Direct Claim against any of the Direct Claims Injunction Parties, or any other person;

g.      creating, perfecting, or enforcing any lien of any kind relating to any Direct Claim against any of the Direct Claims Injunction Parties, or the property of the Direct Claims Injunction Parties; and

h.      taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, with respect to any such Direct Claim.

2.      **Standing of Direct Claim Injunction Parties.**

Each of the Direct Claims Injunction Parties shall have standing to seek relief from the Bankruptcy Court or any court of competent jurisdiction for purposes of enforcement of the Direct Claims Injunction or other Injunction or releases under the Plan to the extent that any act occurs or is taken that is contrary to the provisions of, or would interfere with, restrict, defeat, nullify, violate or otherwise limit the protections afforded the Direct Claims Injunction Party through the Direct Claims Injunction.

## RELEVANT DEFINITIONS (PLAN ARTICLE I):[2]

"*Debtor Release*" means the release given by the Debtors and the Estates to the Released Parties as set forth in 0 of the Plan.

"*Direct Claims*" means any claim or Cause of Action held by a Releasing Party against any of the Released Parties (excluding the Debtors) and their respective Related Parties, but only to the extent such claims arise from, relate to, or are connected with, directly or indirectly, in any manner whatsoever, the Debtors, including their respective assets, liabilities, operations, financings, contractual agreements, licenses, and including the governance thereof, and existing on or prior to the Effective Date (including prior to the Petition Date).

"*Direct Claims Injunction Parties*" means (a) the Reorganized Debtors; (b) the Foris Secured Parties; and (c) the Related Parties of the foregoing parties.

"*Direct Claims Threshold*" means (a) with respect to holders of Direct Claims who are creditors of the Debtors, determined separately with respect to such creditors classified in Class 7 and Class 8, respectively, creditors who hold at least a majority in amount of the Claims asserted against the Debtors

---

[2] The defined terms set forth herein are those relevant to the above the ability of Holders of Claims and Interests to make an informed decision about the release, exculpation and injunction provisions, and is not intended to be a complete list of all applicable definitions which are set forth in Article I of the Plan.

(such Claims measured as of the Petition Date on the same basis as such Claims are Allowed for voting purposes); and (b) with respect to holders of Direct Claims who are Holders of any Interests consisting of issued and outstanding shares of common stock of Amyris, such Holders who hold at least a majority of the outstanding common stock of Amyris (excluding for purposes of such calculation, any outstanding common stock of Amyris held by any of the Direct Claims Injunction Parties) (such outstanding common stock of Amyris measured as of the Distribution Record Date Date).

"*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Foris Secured Parties; (c) all Consenting Convertible Noteholders; (d) the Ad Hoc Group Professionals; (e) the Creditors' Committee; and (f) the Related Parties of each of the foregoing parties.

"*Related Party*" means, collectively, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, shareholders, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts, or funds, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, fiduciaries, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, restructuring advisors, and other professionals and advisors, and any such person's or Entity's respective predecessors, successors, assigns, heirs, executors, estates, and nominees.

"*Released Claims*" means any Claim or Interest or Direct Claim that has been released, satisfied, stayed, terminated, discharged, or is subject to compromise and settlement pursuant to the Plan.

"*Released Parties*" means, collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c); the DIP Lenders and the DIP Agent; (d) the Foris Prepetition Secured Lenders; (e) the Creditors' Committee; (f) the Consenting Convertible Noteholders; (g) the Ad Hoc Group Professionals; (h) the Consenting Contract Counterparties; and (i) with respect to each of the foregoing Entities in clauses (a) through (e), all Related Parties. For the avoidance of doubt, (i) the Debtors' current and former directors, managers, officers, employees, professionals, and shareholders, in each case, who are not an Excluded Party, shall each be a Released Party; and (ii) no Excluded Party shall be a Released Party.

"*Releasing Parties*" means collectively, and in each case in its capacity as such:  (a) the Foris Prepetition Secured Lenders; (b) the Creditors' Committee; (c) the Consenting Convertible Noteholders; (d) the Consenting Contract Counterparties; (e) all Holders of Claims against the Debtors that are bound by the Third-Party Release Settlement; and (f) all persons who hold Interests in Amyris that are bound by the Third-Party Release Settlement.

"*Third-Party Release*" means the release of Direct Claims deemed given by each of the Releasing Parties to the Released Parties in consideration for the distributions to be made as set forth in <u>D</u> of the Plan.

"*Third-Party Release Settlement*" means that settlement and release of Direct Claims as provided for in Article IV.A. and Article IX.D & G. of the Plan. in consideration for the distributions to be made as set forth in Article IX.D of the Plan. The documentation of the Third-Party Release Settlement and the payment of the Third-Party Release Settlement Amounts will be included in the Plan Supplement.

"*Third-Party Release Settlement Amounts*" means, as applicable, the following amounts allocated from the Net Proceeds or other assets of the Estates that would otherwise be paid to the DIP Lenders and the Foris Prepetition Secured Lenders, as applicable:

(A) (i) $12,714,000, consisting of that portion of the Third-Party Release Settlement Amounts to be distributed to the Holders of Convertible Notes, if the Third-Party Release Settlement is approved on a non-consensual basis; or (ii) $9,264,000, consisting of that portion of the Third-Party Release Settlement Amounts to be distributed to the Holders of Convertible Notes if the Third-Party Release Settlement is not approved on a non-consensual basis and the Direct Claims Threshold is satisfied as to holders of Direct Claims who are creditors (but only as to holders of Allowed Convertible Notes Claims who do not opt out of the Third-Party Release Settlement);

(B) (i) $3,686,000, consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of General Unsecured Claims, if the Third-Party Release Settlement is approved on a non-consensual basis; or (ii) $2,686,000 consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of General Unsecured Claims if the Third-Party Release Settlement is not approved on a non-consensual basis and the Direct Claims Threshold is satisfied as to holders of Direct Claims who are creditors (but only as to Holders of Allowed General Unsecured Claims who do not opt out of the Third-Party Release Settlement);

(C) (i) $5,000,000 consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of Interests as of the Voting Record Date, if the Third-Party Release Settlement is approved on a non-consensual basis; or (ii)$2,500,000 consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of Interests as of the Voting Record Date if the Third-Party Release Settlement is not approved on a non-consensual basis and the Direct Claims Threshold is satisfied as to holders of Direct Claims who are holders of any Interests (but only as to Holders of Interests who do not opt out of the Third-Party Release Settlement).

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[3] | (Jointly Administered) |

**<u>NON-VOTING CLASS RELEASE OPT OUT ELECTION FORM</u>
<u>(HOLDERS OF INTERESTS)</u>**

**THIS OPT OUT ELECTION FORM IS TO BE USED BY OR ON BEHALF OF HOLDERS INTERESTS IN NON-VOTING CLASSES TO INDICATE THAT SUCH HOLDER <u>DOES NOT CONSENT</u> TO THE THIRD-PARTY RELEASE SET FORTH IN THE PLAN, AS DESCRIBED MORE FULLY IN ANNEX A TO THE ENCLOSED NON-VOTING CLASS NOTICE.**

**IF YOU ARE RECEIVING THIS FORM, YOU ARE A HOLDER OF AN INTEREST IN A NON-VOTING CLASS.**

**IF YOU DO NOT (I) COMPLETE THIS OPT OUT ELECTION FORM PURSUANT TO WHICH YOU INDICATE YOUR ELECTION NOT TO CONSENT TO THE THIRD-PARTY RELEASE <u>AND</u> (II) TIMELY RETURN THIS OPT OUT ELECTION FORM BY <u>JANUARY 16, 2024 AT 5:00 P.M. (PREVAILING EASTERN TIME)</u> TO THE SOLICITATION AGENT IN THE MANNER INDICATED BELOW, <u>YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE SET FORTH IN THE PLAN.</u>**

<u>**Release Opt Out**</u>: The undersigned, the Holder of an Interest in a Non-Voting Class, hereby elects to opt out of granting the Third-Party Release set forth in the Plan, **the relevant provisions of which are attached as Annex A to the enclosed Non-Voting Class Notice**. [Check box]

☐ Opt Out of granting the Release Provisions

**In the event the Bankruptcy Court does not approve the Third-Party Release on a non-consensual basis, the Third-Party Release will be deemed a settlement offer to the holders of Direct Claims, and each holder of a Direct Claim may voluntarily elect to receive its portion of the Unsecured Claims Reserve to which it is entitled by electing to grant the Third-Party Releases, through the following methods: (x) for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases, and (y) for holders**

---

[3] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

4894-7043-7262.14 03703.004
DOCS_NY:48499.8 03703/004

of Claims and Interests who are deemed to accept or reject the Plan and are provided with a notice of non-voting status providing them with the right to opt out of the Third-Party Releases and do not elect to exercise such right; provided, that, as applicable, the Direct Claims Threshold is satisfied.

**Acknowledgments.** By signing this Opt Out Election Form, the undersigned acknowledges receipt of the Non-Voting Class Notice, including Annex A, and certifies that (i) the undersigned is the interest holder, or (ii) has the power and authority complete this Opt Out Election Form on behalf of the interest holder.

| | |
|---|---|
| _____ | _____ |
| Name of Holder of Interest | Social Security or Federal Tax I.D. No. (optional) |
| _____ | _____ |
| Signature | Amount of Interest Held on Petition Date: |
| _____ | _____ |
| If by Authorized Agent, Name and Title | Street Address |
| | _____ |
| | City, State, Zip Code |
| _____ | _____ |
| | E-mail: |
| Date Completed | Telephone Number: |

## INFORMATION AND INSTRUCTIONS FOR SUBMITTING OPT OUT ELECTION FORM

In the Release Opt Out box provided on the first page of this Opt Out Election Form, please indicate your election to opt out of granting the Third-Party Release, complete the Form by providing all the information requested and sign, date and return the Form by mail, overnight courier or personal delivery to the Solicitation Agent at the following address:

**Amyris Balloting**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

An envelope addressed to the Solicitation Agent is enclosed for your convenience.

**Opt Out Election Forms must be *received* by the Solicitation Agent by 5:00 p.m., prevailing Eastern Time, January 16, 2024.** If an Opt Out Election Form is received after that date, it will not be counted and you will be deemed to consent to granting the Third-Party Release and will be a Releasing Party under the Plan.

## **EXHIBIT C1 – C8**

### **Form of Ballot for Each Voting Class**

**EXHIBIT C1**


**FORM OF BALLOT FOR CLASS 3**
**(FORIS PREPETITION SECURED CLAIMS)**

4894-7043-7262.14 03703.004
DOCS_NY:48499.8 03703/004

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al*., | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**BALLOT TO ACCEPT OR REJECT
DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

**CLASS 3: FORIS PREPETITION SECURED CLAIMS**

**THIS BALLOT IS TO BE USED BY OR ON BEHALF OF HOLDERS OF CLAIMS IN THE ABOVE-IDENTIFIED CLASS SOLELY FOR THE PURPOSE OF VOTING ON THE DEBTORS' PLAN OF REORGANIZATION WHICH IS INCLUDED IN THE ENCLOSED SOLICITATION MATERIALS.  PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY.  PLEASE COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED ENVELOPE PROMPTLY.  IF THE SOLICITATION AGENT HAS NOT RECEIVED THIS BALLOT BY 5:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 16, 2024 (THE "VOTING DEADLINE"), UNLESS OTHERWISE EXTENDED AT THE SOLE DISCRETION OF THE DEBTORS, IT WILL NOT BE COUNTED.  FACSIMILE AND E-MAIL BALLOTS WILL NOT BE ACCEPTED.**

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___ filed by Amyris, Inc. and its affiliated debtors and debtors in possession (the "Debtors") (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").[2]  The Plan is described in the related *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Disclosure Statement") approved by order of the United States Bankruptcy Court for the District of Delaware [Docket No. ___] (the "Disclosure Statement Order").  The Disclosure Statement provides information to assist you in deciding how to vote your Ballot.  You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal or other financial advice concerning the Plan and the classification and treatment of your claim(s) under the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least one-half in number and two-thirds in amount of the claims in this Class and who vote on the Plan and if the Plan otherwise satisfies applicable legal requirements.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

**If you have received a damaged ballot or if you lose your ballot, or if you have any questions concerning this ballot or the voting procedures, please contact the Solicitation Agent.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

PLEASE COMPLETE ITEM 1. IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST. IF THIS BALLOT IS NOT SIGNED IN ITEM 2 BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1.  Class Vote.**  The undersigned, the holder of a Class 3 Foris Prepetition Secured Claim, hereby votes, in the amount set forth below, as follows (check <u>one</u> box):

☐ Accept the Plan            ☐ Reject the Plan.

Amount of Claim:  $_____

**Item 2.  Releases.**  The undersigned, the holder of a Claim as indicated in Item 1, above, hereby elects to opt out of granting the Third-Party Release set forth in the Plan, **the relevant provisions of which are attached as Annex A to the enclosed Confirmation Hearing Notice and more fully described in the Solicitation Materials**. (Check if applicable):

☐ Opt Out of granting the Third-Party Release

**If you vote to accept the Plan, you shall be deemed to have consented to granting the Third-Party Release in the Plan.  If you fail to check the box or leave this Item blank, you will be deemed to have consented to granting the Third-Party Release and you will be deemed a Releasing Party.  Even if you check the box, the Court may deem your acceptance of the Plan on a non-consensual basis as consent to granting the Third-Party Release and that you are bound by such release.**

**Item 3.  Acknowledgments.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials (the "<u>Solicitation Materials</u>") and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant.  The undersigned understands that if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted.

*[Signature of following page]*

_____          _____
Name of Creditor                         Social Security or Federal Tax I.D. No. (optional)


_____          _____
Signature

_____          _____
If by Authorized Agent, Name and Title    Street Address


                                         _____
                                         City, State, Zip Code

_____          _____
                                         E-mail:
Date Completed                           Telephone Number:

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.     In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to the Solicitation Agent at the following address:

**Amyris Balloting**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

An envelope addressed to the Solicitation Agent is enclosed for your convenience.

Alternatively, you may submit your Ballot via the Solicitation Agent's online portal by visiting https://cases.stretto.com/Amyris.   Click on the "File a Ballot" section of the website and follow the instructions to submit your Ballot.

IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:

Unique E-Ballot PASSWORD:_____

The Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

Each E-Ballot PASSWORD is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot PASSWORD you receive, as applicable.  **Creditors who cast a Ballot using the Solicitation Agent's Electronic Balloting Portal system SHOULD NOT also submit a paper Ballot.**

**Ballots must be** *received* **by the Solicitation Agent by 5:00 p.m., prevailing Eastern Time, January 16, 2024 (the "Voting Deadline").**  If a Ballot is received after the Voting Deadline, it will not be counted.

2.     Please sign and date your ballot as required in Item 2.  **Your signature is required before your ballot may be counted**.

3.     If your claim has not been previously allowed by order of the Bankruptcy Court, your claim will be deemed to be temporarily allowed, solely for purposes of voting on the Plan unless there is an objection to your claim pending as of the date you receive the Solicitation Materials.  The temporary allowance of your claim for voting purposes does not constitute an allowance of your claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors, or any other party in interest (including but not limited to the post-confirmation reorganized debtor or any post-confirmation trustee), in any other context (*e.g.*, the right to contest the amount or validity of any claim for purposes of allowance under the Plan).  If your claim is the subject of an objection that was filed by prior to the date you receive the Solicitation Materials, in accordance with Bankruptcy Rule 3018, your Ballot will not be counted unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan.  In order for a claim subject to a timely filed objection to be temporarily allowed for voting purposes only, **you are required to file a motion with the Bankruptcy Court seeking such relief by no later than January 5, 2024.**  Notwithstanding the foregoing, if the Debtors file a timely objection to your claim and request that your claim be allowed in a specific amount, and you file a timely and valid Ballot, your Ballot shall be counted in such specified amount.

4. The following voting and standard assumptions shall be used in tabulating Ballots, including yours:

 a. Except to the extent the Debtors otherwise agree, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Debtors in connection with the confirmation of the Plan;

 b. Claims shall not be split for purposes of voting; thus, each creditor must vote the full amount of its Claim(s) within each Voting Class to either accept or reject the Plan. If a creditor attempts to split such vote on their Ballot, such Ballot will not be counted for voting purposes;

 c. Any executed Ballot which does not indicate an acceptance or rejection will not be counted;

 d. Any executed Ballot which indicates both an acceptance and rejection of the Plan will not be counted;

 e. Votes cast pursuant to a Ballot that is not signed or does not contain an original signature will not be counted, unless otherwise ordered by the Court;

 f. Parties holding Claims in more than one Voting Class under the Plan may receive more than one Ballot coded for each applicable Voting Class;

 g. The method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder of a Claim, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Solicitation Agent;

 h. Delivery to and receipt by the Solicitation Agent of the original executed Ballot on or before the Voting Deadline is required in order for a vote to be counted. Delivery of a Ballot by facsimile, email or any other electronic means will not be accepted unless otherwise ordered by the Court; *provided, however*, that Ballots may be electronically submitted using the Solicitation Agent's official on-line electronic ballot portal at https://cases.stretto.com/Amyris;

 i. No Ballot sent to the Debtors, or to the Debtors' financial or legal advisors, will be accepted or counted in connection with confirmation of the Plan;

 j. If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

 k. If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtors, must submit proper evidence, satisfactory to the Debtors, of such person's authority to so act in such capacity;

 l. The Debtors, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein, the Debtors may reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

 m. Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots shall be determined by the Debtors, which determination shall be final and binding;

n.  If a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such Claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless otherwise ordered by the Court;

o.  Any holder of a Claim who has timely delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

p.  Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with delivery of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted in connection with confirmation of the Plan;

q.  Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

r.  No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

s.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

t.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of the validity or allowability of a Claim for distribution or any other purposes.

u.  Any executed Ballot which does not indicate an opt out of granting the Third-Party Release shall be deemed to be consent to such Third-Party Release, regardless of whether such Ballot is voted to accept or reject the plan, or contains no voting election.

5.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

6.  **PLEASE RETURN YOUR BALLOT PROMPTLY.  THE SOLICITATION AGENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE OR E-MAIL**.

NO PERSON, INCLUDING THE SOLICITATION AGENT, HAS BEEN AUTHORIZED TO GIVE ANY ADVICE, INCLUDING LEGAL ADVICE, REGARDING THE DEBTORS OR THE PLAN.

**EXHIBIT C2**

**FORM OF BALLOT FOR CLASS 4
(DSM REALSWEET SECURED CLAIMS)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**BALLOT TO ACCEPT OR REJECT
DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

**CLASS 4: DSM REALSWEET SECURED CLAIMS**

**THIS BALLOT IS TO BE USED BY OR ON BEHALF OF HOLDERS OF CLAIMS IN THE ABOVE-IDENTIFIED CLASS SOLELY FOR THE PURPOSE OF VOTING ON THE DEBTORS' PLAN OF REORGANIZATION WHICH IS INCLUDED IN THE ENCLOSED SOLICITATION MATERIALS. PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY. PLEASE COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED ENVELOPE PROMPTLY. IF THE SOLICITATION AGENT HAS NOT RECEIVED THIS BALLOT BY 5:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 16, 2024 (THE "VOTING DEADLINE"), UNLESS OTHERWISE EXTENDED AT THE SOLE DISCRETION OF THE DEBTORS, IT WILL NOT BE COUNTED. FACSIMILE AND E-MAIL BALLOTS WILL NOT BE ACCEPTED.**

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___ filed by Amyris, Inc. and its affiliated debtors and debtors in possession (the "Debtors") (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").[2] The Plan is described in the related *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Disclosure Statement") approved by order of the United States Bankruptcy Court for the District of Delaware [Docket No. ___] (the "Disclosure Statement Order"). The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal or other financial advice concerning the Plan and the classification and treatment of your claim(s) under the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least one-half in number and two-thirds in amount of the claims in this Class and who vote on the Plan and if the Plan otherwise satisfies applicable legal requirements.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

**If you have received a damaged ballot or if you lose your ballot, or if you have any questions concerning this ballot or the voting procedures, please contact the Solicitation Agent.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ITEM 1.  IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST.  IF THIS BALLOT IS NOT SIGNED IN ITEM 3 BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Class Vote.**  The undersigned, the holder of a Class 4 DSM RealSweet Secured Claim, hereby votes, in the amount set forth below, as follows (check one box):

☐ Accept the Plan            ☐ Reject the Plan.

Amount of Claim:  $_____

**Item 2.  Releases.**  The undersigned, the holder of a Claim as indicated in Item 1, above, hereby elects to opt out of granting the Third-Party Release set forth in the Plan, **the relevant provisions of which are attached as Annex A to the enclosed Confirmation Hearing Notice and more fully described in the Solicitation Materials**. (Check if applicable):

☐ Opt Out of granting the Third-Party Release

**If you vote to accept the Plan, you shall be deemed to have consented to granting the Third-Party Release in the Plan.  If you fail to check the box or leave this Item blank, you will be deemed to have consented to granting the Third-Party Release and you will be deemed a Releasing Party.  Even if you check the box, the Court may deem your acceptance of the Plan on a non-consensual basis as consent to granting the Third-Party Release and that you are bound by such release.**

**Item 3.  Acknowledgments.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials (the "Solicitation Materials") and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant.  The undersigned understands that if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted.

*[Signature of following page]*

_____          _____
Name of Creditor                 Social Security or Federal Tax I.D. No. (optional)

_____          _____
Signature

_____          _____
If by Authorized Agent, Name and Title          Street Address

                                 _____
                                 City, State, Zip Code

_____          _____
                                 E-mail:
Date Completed                   Telephone Number:

### VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.  In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to the Solicitation Agent at the following address:

**Amyris Balloting**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

An envelope addressed to the Solicitation Agent is enclosed for your convenience.

Alternatively, you may submit your Ballot via the Solicitation Agent's online portal by visiting https://cases.stretto.com/Amyris.  Click on the "File a Ballot" section of the website and follow the instructions to submit your Ballot.

IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:

       **Unique E-Ballot PASSWORD:**_____

The Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot PASSWORD is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot PASSWORD you receive, as applicable. **Creditors who cast a Ballot using the Solicitation Agent's Electronic Balloting Portal system SHOULD NOT also submit a paper Ballot.**

**Ballots must be *received* by the Solicitation Agent by 5:00 p.m., prevailing Eastern Time, January 16, 2024 (the "Voting Deadline").**  If a Ballot is received after the Voting Deadline, it will not be counted.

2.  Please sign and date your ballot as required in Item 2.  **Your signature is required before your ballot may be counted**.

3.  If your claim has not been previously allowed by order of the Bankruptcy Court, your claim will be deemed to be temporarily allowed, solely for purposes of voting on the Plan unless there is an objection to your claim pending as of the date you receive the Solicitation Materials.  The temporary allowance of your claim for voting purposes does not constitute an allowance of your claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors, or any other party in interest (including but not limited to the post-confirmation reorganized debtor or any post-confirmation trustee), in any other context (*e.g.*, the right to contest the amount or validity of any claim for purposes of allowance under the Plan).  If your claim is the subject of an objection that was filed by prior to the date you receive the Solicitation Materials, in accordance with Bankruptcy Rule 3018, your Ballot will not be counted unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan.  In order for a claim subject to a timely filed objection to be temporarily allowed for voting purposes only, **you are required to file a motion with the Bankruptcy Court seeking such relief by no later than January 5, 2024.** Notwithstanding the foregoing, if the Debtors file a timely objection to your claim and request that your claim be allowed in a specific amount, and you file a timely and valid Ballot, your Ballot shall be counted in such specified amount.

4.      The following voting and standard assumptions shall be used in tabulating Ballots, including yours:

a.      Except to the extent the Debtors otherwise agree, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Debtors in connection with the confirmation of the Plan;

b.      Claims shall not be split for purposes of voting; thus, each creditor must vote the full amount of its Claim(s) within each Voting Class to either accept or reject the Plan.  If a creditor attempts to split such vote on their Ballot, such Ballot will not be counted for voting purposes;

c.      Any executed Ballot which does not indicate an acceptance or rejection will not be counted;

d.      Any executed Ballot which indicates both an acceptance and rejection of the Plan will not be counted;

e.      Votes cast pursuant to a Ballot that is not signed or does not contain an original signature will not be counted, unless otherwise ordered by the Court;

f.      Parties holding Claims in more than one Voting Class under the Plan may receive more than one Ballot coded for each applicable Voting Class;

g.      The method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder of a Claim, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Solicitation Agent;

h.      Delivery to and receipt by the Solicitation Agent of the original executed Ballot on or before the Voting Deadline is required in order for a vote to be counted.  Delivery of a Ballot by facsimile, email or any other electronic means will not be accepted unless otherwise ordered by the Court; *provided, however*, that Ballots may be electronically submitted using the Solicitation Agent's official on-line electronic ballot portal at https://cases.stretto.com/Amyris;

i.      No Ballot sent to the Debtors, or to the Debtors' financial or legal advisors, will be accepted or counted in connection with confirmation of the Plan;

j.      If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

k.      If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtors, must submit proper evidence, satisfactory to the Debtors, of such person's authority to so act in such capacity;

l.      The Debtors, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice.  Except as otherwise provided herein, the Debtors may reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

m.      Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots shall be determined by the Debtors, which determination shall be final and binding;

n.      If a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such Claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless otherwise ordered by the Court;

o.      Any holder of a Claim who has timely delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

p.      Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with delivery of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted in connection with confirmation of the Plan;

q.      Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

r.      No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

s.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

t.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of the validity or allowability of a Claim or Interest for distribution or any other purposes.

u.      Any executed Ballot which does not indicate an opt out of granting the Third-Party Release shall be deemed to be consent to such Third-Party Release, regardless of whether such Ballot is voted to accept or reject the plan, or contains no voting election.

5.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

6.      **PLEASE RETURN YOUR BALLOT PROMPTLY.  THE SOLICITATION AGENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE OR E-MAIL**.

NO PERSON, INCLUDING THE SOLICITATION AGENT, HAS BEEN AUTHORIZED TO GIVE ANY ADVICE, INCLUDING LEGAL ADVICE, REGARDING THE DEBTORS OR THE PLAN.

**EXHIBIT C3**

**FORM OF BALLOT FOR CLASS 5
(DSM OTHER SECURED CLAIMS)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al*., | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**BALLOT TO ACCEPT OR REJECT
DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

**CLASS 5: DSM OTHER SECURED CLAIMS**

**THIS BALLOT IS TO BE USED BY OR ON BEHALF OF HOLDERS OF CLAIMS IN THE ABOVE-IDENTIFIED CLASS SOLELY FOR THE PURPOSE OF VOTING ON THE DEBTORS' PLAN OF REORGANIZATION WHICH IS INCLUDED IN THE ENCLOSED SOLICITATION MATERIALS. PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY. PLEASE COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED ENVELOPE PROMPTLY. IF THE SOLICITATION AGENT HAS NOT RECEIVED THIS BALLOT BY 5:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 16, 2024 (THE "<u>VOTING DEADLINE</u>"), UNLESS OTHERWISE EXTENDED AT THE SOLE DISCRETION OF THE DEBTORS, IT WILL NOT BE COUNTED. <u>FACSIMILE AND E-MAIL BALLOTS WILL NOT BE ACCEPTED.</u>**

This ballot (the "<u>Ballot</u>") is submitted to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___] filed by Amyris, Inc. and its affiliated debtors and debtors in possession (the "<u>Debtors</u>") (including all exhibits thereto and as amended, modified or supplemented from time to time, the "<u>Plan</u>").[2] The Plan is described in the related *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "<u>Disclosure Statement</u>") approved by order of the United States Bankruptcy Court for the District of Delaware [Docket No. ___] (the "<u>Disclosure Statement Order</u>"). The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal or other financial advice concerning the Plan and the classification and treatment of your claim(s) under the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least one-half in number and two-thirds in amount of the claims in this Class and who vote on the Plan and if the Plan otherwise satisfies applicable legal requirements.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

**If you have received a damaged ballot or if you lose your ballot, or if you have any questions concerning this ballot or the voting procedures, please contact the Solicitation Agent.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

PLEASE COMPLETE ITEM 1.  IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST.  IF THIS BALLOT IS NOT SIGNED IN ITEM 3 BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1.  Class Vote.**  The undersigned, the holder of a Class 5 DSM Other Secured Claim, hereby votes, in the amount set forth below, as follows (check <u>one</u> box):

☐ Accept the Plan                  ☐ Reject the Plan.

Amount of Claim:  $_____

**Item 2.  Releases.**  The undersigned, the holder of a Claim as indicated in Item 1, above, hereby elects to opt out of granting the Third-Party Release set forth in the Plan, **the relevant provisions of which are attached as Annex A to the enclosed Confirmation Hearing Notice and more fully described in the Solicitation Materials**. (Check if applicable):

☐ Opt Out of granting the Third-Party Release

**If you vote to accept the Plan, you shall be deemed to have consented to granting the Third-Party Release in the Plan.  If you fail to check the box or leave this Item blank, you will be deemed to have consented to granting the Third-Party Release and you will be deemed a Releasing Party.  Even if you check the box, the Court may deem your acceptance of the Plan on a non-consensual basis as consent to granting the Third-Party Release and that you are bound by such release.**

**Item 3.  Acknowledgments.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials (the "<u>Solicitation Materials</u>") and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant.  The undersigned understands that if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted.

*[Signature of following page]*

_____          _____
Name of Creditor                          Social Security or Federal Tax I.D. No. (optional)

_____          _____
Signature

_____          _____
If by Authorized Agent, Name and Title          Street Address

                                          _____
                                          City, State, Zip Code

_____          _____
                                          E-mail:
Date Completed                            Telephone Number:

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.  In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to the Solicitation Agent at the following address:

    **Amyris Balloting**
    **c/o Stretto**
    **410 Exchange, Suite 100**
    **Irvine, CA 92602**

    An envelope addressed to the Solicitation Agent is enclosed for your convenience.

    Alternatively, you may submit your Ballot via the Solicitation Agent's online portal by visiting https://cases.stretto.com/Amyris.  Click on the "File a Ballot" section of the website and follow the instructions to submit your Ballot.

    IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:

    Unique E-Ballot PASSWORD:_____

    The Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

    Each E-Ballot PASSWORD is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot PASSWORD you receive, as applicable.  **Creditors who cast a Ballot using the Solicitation Agent's Electronic Balloting Portal system SHOULD NOT also submit a paper Ballot.**

    **Ballots must be *received* by the Solicitation Agent by 5:00 p.m., prevailing Eastern Time, January 16, 2024 (the "Voting Deadline").**  If a Ballot is received after the Voting Deadline, it will not be counted.

2.  Please sign and date your ballot as required in Item 2.  **Your signature is required before your ballot may be counted**.

3.  If your claim has not been previously allowed by order of the Bankruptcy Court, your claim will be deemed to be temporarily allowed, solely for purposes of voting on the Plan unless there is an objection to your claim pending as of the date you receive the Solicitation Materials.  The temporary allowance of your claim for voting purposes does not constitute an allowance of your claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors, or any other party in interest (including but not limited to the post-confirmation reorganized debtor or any post-confirmation trustee), in any other context (*e.g.*, the right to contest the amount or validity of any claim for purposes of allowance under the Plan).  If your claim is the subject of an objection that was filed by prior to the date you receive the Solicitation Materials, in accordance with Bankruptcy Rule 3018, your Ballot will not be counted unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan.  In order for a claim subject to a timely filed objection to be temporarily allowed for voting purposes only, **you are required to file a motion with the Bankruptcy Court seeking such relief by no later than January 5, 2024.**  Notwithstanding the foregoing, if the Debtors file a timely objection to your claim and request that your claim be allowed in a specific amount, and you file a timely and valid Ballot, your Ballot shall be counted in such specified amount.

4.      The following voting and standard assumptions shall be used in tabulating Ballots, including yours:

a.      Except to the extent the Debtors otherwise agree, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Debtors in connection with the confirmation of the Plan;

b.      Claims shall not be split for purposes of voting; thus, each creditor must vote the full amount of its Claim(s) within each Voting Class to either accept or reject the Plan.  If a creditor attempts to split such vote on their Ballot, such Ballot will not be counted for voting purposes;

c.      Any executed Ballot which does not indicate an acceptance or rejection will not be counted;

d.      Any executed Ballot which indicates both an acceptance and rejection of the Plan will not be counted;

e.      Votes cast pursuant to a Ballot that is not signed or does not contain an original signature will not be counted, unless otherwise ordered by the Court;

f.      Parties holding Claims in more than one Voting Class under the Plan may receive more than one Ballot coded for each applicable Voting Class;

g.      The method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder of a Claim, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Solicitation Agent;

h.      Delivery to and receipt by the Solicitation Agent of the original executed Ballot on or before the Voting Deadline is required in order for a vote to be counted.  Delivery of a Ballot by facsimile, email or any other electronic means will not be accepted unless otherwise ordered by the Court; *provided, however*, that Ballots may be electronically submitted using the Solicitation Agent's official on-line electronic ballot portal at https://cases.stretto.com/Amyris;

i.      No Ballot sent to the Debtors, or to the Debtors' financial or legal advisors, will be accepted or counted in connection with confirmation of the Plan;

j.      If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

k.      If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtors, must submit proper evidence, satisfactory to the Debtors, of such person's authority to so act in such capacity;

l.      The Debtors, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice.  Except as otherwise provided herein, the Debtors may reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

m.      Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots shall be determined by the Debtors, which determination shall be final and binding;

n.     If a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such Claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless otherwise ordered by the Court;

o.     Any holder of a Claim who has timely delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

p.     Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with delivery of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted in connection with confirmation of the Plan;

q.     Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

r.     No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

s.     The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

t.     The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of the validity or allowability of a Claim or Interest for distribution or any other purposes.

u.     Any executed Ballot which does not indicate an opt out of the Third-Party Release shall be deemed to be consent to such Third-Party Release, regardless of whether such Ballot is voted to accept or reject the plan, or contains no voting election.

5.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

6.     **PLEASE RETURN YOUR BALLOT PROMPTLY.  THE SOLICITATION AGENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE OR E-MAIL**.

NO PERSON, INCLUDING THE SOLICITATION AGENT, HAS BEEN AUTHORIZED TO GIVE ANY ADVICE, INCLUDING LEGAL ADVICE, REGARDING THE DEBTORS OR THE PLAN.

**EXHIBIT C4(a)**

**FORM OF BENEFICIAL BALLOT FOR CLASS 7
(CONVERTIBLE NOTES CLAIMS)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**BENEFICIAL BALLOT TO ACCEPT OR REJECT
DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

<u>**CLASS 7:  CONVERTIBLE NOTES CLAIMS**</u>

**1.50% Convertible Senior Notes due 2026**
CUSIP No: 03236MAJ0
ISIN: US03236MAJ09

**THIS BALLOT IS TO BE USED BY OR ON BEHALF OF BENEFICIAL HOLDERS OF CLASS 7 CONVERTIBLE NOTES CLAIMS (THE "<u>BENEFICIAL NOTEHOLDERS</u>") SOLELY FOR THE PURPOSE OF VOTING ON THE DEBTORS' PLAN OF REORGANIZATION WHICH IS INCLUDED IN THE ENCLOSED SOLICITATION MATERIALS.  PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY.**

**PLEASE COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED ENVELOPE PROMPTLY.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO THE SOLICITATION AGENT (STRETTO), PLEASE COMPLETE THE BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY STRETTO BY THE VOTING DEADLINE.**

**<u>IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.</u> PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY STRETTO ON OR BEFORE THE VOTING DEADLINE.**

**IF THE SOLICITATION AGENT HAS NOT RECEIVED YOUR BALLOT OR APPLICABLE MASTER BALLOT BY 5:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 16, 2024 (THE "<u>VOTING DEADLINE</u>"), UNLESS OTHERWISE EXTENDED AT THE SOLE DISCRETION OF THE DEBTORS, IT WILL NOT BE COUNTED. <u>FACSIMILE AND E-MAIL BALLOTS WILL NOT BE ACCEPTED.</u>**

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___] filed by Amyris, Inc. and its affiliated debtors and debtors in possession (the "Debtors") (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").[2]  The Plan is described in the related *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Disclosure Statement") approved by order of the United States Bankruptcy Court for the District of Delaware [Docket No. ___] (the "Disclosure Statement Order").  **The Disclosure Statement provides information to assist you in deciding how to vote your Ballot.  You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal or other financial advice concerning the Plan and the classification and treatment of your claim(s) under the Plan.**

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least one-half in number and two-thirds in amount of the claims in this Class and who vote on the Plan and if the Plan otherwise satisfies applicable legal requirements.

**You are receiving this ballot for Beneficial Noteholders[3] (the "Beneficial Holder Ballot") because you are a beneficial holder of a Convertible Notes Claim as of December 1, 2023 (the "Record Date").**  Accordingly, you have a right to vote to accept or reject the Plan. You can cast your vote through this Beneficial Holder Ballot and return it to your broker, bank, or other nominee, or the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"), in accordance with the instructions provided by your Nominee, who will then submit a master ballot (the "Master Ballot") on behalf of the Beneficial Noteholders.

This Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent immediately at: (855) 489-1434 (toll free) or +1 (949) 561-0347 (international) (ask to speak with a member of the solicitation group) or email amyrisinquiries@stretto.com and reference "Amyris" in the subject line.

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR IF YOU LOSE YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

| |
|---|
| PLEASE COMPLETE ITEM 1.  IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST.  IF THIS BALLOT IS NOT SIGNED IN ITEM 3 BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST. |

---

[2] Terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

[3] A "Beneficial Noteholder" means a beneficial owner of publicly-traded securities (the Convertible Notes) whose claims have not been satisfied prior to the Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees holding through DTC.

**Item 1.    Amount of Claim.**  The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Holder of a Class 7 Convertible Notes Claim in the following principal amount (insert amount in box below, unless otherwise completed by your Nominee):

Amount of Claim:  $_____

**Item 2.    Vote on Plan.**  The undersigned Beneficial Holder of a Class 7 Convertible Notes Claim, hereby votes, in the amount set forth above, as follows (check <u>one</u> box):

☐ Accept the Plan                 ☐ Reject the Plan

**Item 3.    Releases.**  The undersigned, Beneficial Holder of a Class 7 Convertible Notes Claim, hereby elects to opt out of granting the Third-Party Release set forth in the Plan, **the relevant provisions of which are attached as Annex A to the enclosed Confirmation Hearing Notice and more fully described in the Solicitation Materials**. (Check if applicable):

☐ Opt Out of the granting the Third-Party Release

**If you vote to accept the Plan, you shall be deemed to have consented to granting the Third-Party Release in the Plan.  If you fail to check the box or leave this Item blank, you will be deemed to have consented to granting the Third-Party Release and you will be deemed a Releasing Party.  Even if you check the box, the Court may deem your acceptance of the Plan on a non-consensual basis as consent to granting the Third-Party Release and that you are bound by such release.**

**Item 4.    Other Beneficial Holder Ballots Submitted.**  By returning this Beneficial Holder Ballot, the Holder of the Claims identified in Item 1 certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for Claims identified in Item 1 owned by such holder, except as identified below, and (b) all Beneficial Holder Ballots submitted by the holder in the same Class indicate the same vote to accept or reject the Plan that the holder has indicated in Item 3 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary):

**ONLY COMPLETE THIS TABLE IF YOU HAVE VOTED OTHER CLAIMS IN THE SAME CLASS ON OTHER BENEFICIAL HOLDER BALLOTS**

| Account Number of other Claims Voted | Name of Record Holder or Nominee | Principal Amount of Other Claims Voted | CUSIP of Other Claims Voted |
|---|---|---|---|
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |

**Item 5.    Acknowledgments.**  By signing this Beneficial Holder Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a) as of the Record Date, either: (i) the Entity is the Holder of the Claims being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Note Claims being voted;

(b) the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Materials, including a description of the Plan's release, indemnification and exculpation provisions, including the Third-Party Release, and the alternative option to opt out of granting such Third-Party Release if the Third-Party Release is not approved on a non-consensual basis, and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c) the Entity has cast the same vote with respect to all Claims in a single Class;

(d) no other Beneficial Holder Ballots with respect to the amount of the Claims identified in Item 1 have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such earlier Beneficial Holder Ballots are hereby revoked; and

(e) the undersigned understands that, if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted.

| | |
|---|---|
| Name of Creditor | Social Security or Federal Tax I.D. No. (optional) |
| Signature | |
| If by Authorized Agent, Name and Title | Street Address |
| | City, State, Zip Code |
| | E-mail: |
| Date Completed | Telephone Number: |

**VOTING INFORMATION AND INSTRUCTIONS FOR
COMPLETING THE BENEFICIAL HOLDER BALLOT**

1. In the boxes provided in **Item 1** of the Ballot, please indicate acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to the address listed on the envelope enclosed for your convenience.

  **IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO THE SOLICITATION AGENT PLEASE COMPLETE THE BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY STRETTO BY THE VOTING DEADLINE.**

  **IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY STRETTO ON OR BEFORE THE VOTING DEADLINE.**

  **Ballots must be *received* by the Solicitation Agent by 5:00 p.m., prevailing Eastern Time, January 16, 2024 (the "Voting Deadline").**  If a Ballot is received after the Voting Deadline, it will not be counted.

2. Unless otherwise instructed by your Nominee, to ensure that your vote is counted, you must submit your Beneficial Holder Ballot to your Nominee so that the Nominee can submit a Master Ballot that reflects your vote so that the Ballot is actually received by Stretto by the Voting Deadline. You may instruct your Nominee to vote on your behalf in the Master Ballot as follows: (a) complete the Beneficial Holder Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Beneficial Holder Ballot; and (c) **sign, date and return** the Beneficial Holder Ballot to your Nominee in accordance with the instructions provided by your Nominee.  **Your completed Beneficial Holder Ballot must be received by your Nominee in sufficient time to permit your Nominee to deliver your votes to Stretto on or before the Voting Deadline.**

  If your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted, unless the Debtors, in their discretion, determine otherwise. In all cases, Beneficial Noteholders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot to your Nominee. No Beneficial Holder Ballot should be sent to any of the Debtors, the Debtors' agents, the Debtors' financial or legal advisors, and if so sent will not be counted.

  If you deliver multiple Beneficial Holder Ballots to the Nominee with respect to the same Claim prior to the Voting Deadline, unless otherwise determined by the Debtors, the last received valid Beneficial Holder Ballot timely received will supersede and revoke any earlier received Beneficial Holder Ballots.

3. If your claim has not been previously allowed by order of the Bankruptcy Court, your claim will be deemed to be temporarily allowed, solely for purposes of voting on the Plan unless there is an objection to your claim pending as of the date you receive the Solicitation Materials.  The temporary allowance of your claim for voting purposes does not constitute an allowance of your claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors, or any other party in interest (including but not limited to the post-confirmation reorganized debtor or any post-confirmation trustee), in any other context (*e.g.*, the right to contest the amount or validity of any claim for purposes of allowance under the Plan).  If your claim is the subject of an objection that was filed by prior to the date you receive the Solicitation Materials, in accordance with Bankruptcy Rule 3018, your Ballot will not be counted unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan.  In order for a claim subject to a timely filed objection to be temporarily allowed for voting purposes only, **you are required to file a motion with the Bankruptcy Court seeking such relief by no later than January 5, 2024.**

Notwithstanding the foregoing, if the Debtors file a timely objection to your claim and request that your claim be allowed in a specific amount, and you file a timely and valid Ballot, your Ballot shall be counted in such specified amount.

4.      The following voting and standard assumptions shall be used in tabulating Ballots, including yours:

a.      Except to the extent the Debtors otherwise agree, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Debtors in connection with the confirmation of the Plan;

b.      Claims shall not be split for purposes of voting; thus, each creditor must vote the full amount of its Claim(s) within each Voting Class to either accept or reject the Plan.  If a creditor attempts to split such vote on their Ballot, such Ballot will not be counted for voting purposes;

c.      Any executed Ballot which does not indicate an acceptance or rejection will not be counted;

d.      Any executed Ballot which indicates both an acceptance and rejection of the Plan will not be counted;

e.      Votes cast pursuant to a Ballot that is not signed or does not contain an original signature will not be counted, unless otherwise ordered by the Court;

f.      Parties holding Claims in more than one Voting Class under the Plan may receive more than one Ballot coded for each applicable Voting Class;

g.      The method of delivery of Ballots is at the election and risk of each holder of a Claim, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Solicitation Agent;

h.      Delivery to and receipt by the Solicitation Agent of the original executed Ballot on or before the Voting Deadline is required in order for a vote to be counted.  Delivery of a Ballot by facsimile, email or any other electronic means will not be accepted unless otherwise ordered by the Court. **CLASS 7 BALLOTS MAY ONLY BE SUBMITTED IN ACCORDANCE WITH THE INSTRUCTIONS SET OUT ON THE FIRST PAGE OF THE BALLOT AND IN PARAGRAPH 1 OF THESE INSTRUCTIONS**;

i.      No Ballot sent to the Debtors, or to the Debtors' financial or legal advisors, will be accepted or counted in connection with confirmation of the Plan;

j.      If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

k.      If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtors, must submit proper evidence, satisfactory to the Debtors, of such person's authority to so act in such capacity;

l.      The Debtors, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice.  Except as otherwise provided herein, the Debtors may reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

m.    Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots shall be determined by the Debtors, which determination shall be final and binding;

n.    If a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such Claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless otherwise ordered by the Court;

o.    Any holder of a Claim who has timely delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

p.    Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with delivery of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted in connection with confirmation of the Plan;

q.    Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

r.    No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

s.    The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor Stretto will accept delivery of any such certificates or instruments surrendered together with a Ballot; and

t.    The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of the validity or allowability of a Claim or Interest for distribution or any other purposes.

u.    Any executed Ballot which does not indicate an opt out of granting the Third-Party Release shall be deemed to be consent to such Third-Party Release, regardless of whether such Ballot is voted to accept or reject the plan, or contains no voting election.

5.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

6.    **PLEASE RETURN YOUR BENEFICIAL HOLDER BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL STRETTO AT: (855) 489-1434 (TOLL FREE) OR +1 (949) 561-0347 (INTERNATIONAL) (ASK TO SPEAK WITH A MEMBER OF THE SOLICITATION GROUP) OR EMAIL AmyrisInquiries@Stretto.com AND REFERENCE "AMYRIS" IN THE SUBJECT LINE.**

NO PERSON, INCLUDING THE SOLICITATION AGENT, HAS BEEN AUTHORIZED TO GIVE ANY ADVICE, INCLUDING LEGAL ADVICE, REGARDING THE DEBTORS OR THE PLAN.

**EXHIBIT C4(b)**

**FORM OF MASTER BALLOT FOR CLASS 7
(CONVERTIBLE NOTES CLAIMS)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al*., | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**MASTER BALLOT TO ACCEPT OR REJECT
DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

<u>CLASS 7:  CONVERTIBLE NOTES CLAIMS</u>

**1.50% Convertible Senior Notes due 2026**
CUSIP No: 03236MAJ0
ISIN: US03236MAJ09

**THIS MASTER BALLOT IS TO BE USED BY YOU AS A BROKER, BANK, OR OTHER NOMINEE; OR AS THE AGENT OF A BROKER, BANK, OR OTHER NOMINEE (EACH OF THE FOREGOING, A "<u>NOMINEE</u>"); OR AS THE PROXY HOLDER OF A NOMINEE FOR CERTAIN BENEFICIAL HOLDERS OF CLASS 7 CONVERTIBLE NOTES CLAIMS (THE "<u>BENEFICIAL NOTEHOLDERS</u>") TO TRANSMIT TO STRETTO AS SOLICITATION AGENT THE VOTES OF SUCH BENEFICIAL HOLDERS IN RESPECT OF THEIR CLAIMS TO ACCEPT OR REJECT THE PLAN. THIS BALLOT MAY NOT BE USED FOR ANY PURPOSE OTHER THAN FOR SUBMITTING VOTES WITH RESPECT TO THE PLAN.**

**PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY.**

**PLEASE COMPLETE, SIGN AND DATE THIS MASTER BALLOT AND SUBMIT IT VIA ONE OF THE FOLLOWING METHODS:**

> **Via electronic mail service to (preferred method):**
> **E-MAIL to** <u>AmyrisSecuritiesVote@Stretto.com</u> with a reference to "Amyris Master Ballot" in the subject line.

> **In the envelope provided via first class mail, by overnight courier, or by hand delivery to:**
> **AMYRIS Ballot Processing**
> **c/o Stretto**
> **410 Exchange, Suite 100**
> **Irvine, CA 92602**

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at <u>https://cases.stretto.com/Amyris</u>.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

**IF THE SOLICITATION AGENT HAS NOT RECEIVED THIS BALLOT BY 5:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 16, 2024 (THE "VOTING DEADLINE"), UNLESS OTHERWISE EXTENDED AT THE SOLE DISCRETION OF THE DEBTORS, IT WILL NOT BE COUNTED.**

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___] filed by Amyris, Inc. and its affiliated debtors and debtors in possession (the "Debtors") (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").[2]  The Plan is described in the related *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___] (including all exhibits thereto as amended, modified or supplemented from time to time, the "Disclosure Statement") approved by order of the United States Bankruptcy Court for the District of Delaware [Docket No. ___] (the "Disclosure Statement Order").  **The Disclosure Statement provides information to assist you in deciding how to vote your Ballot.  You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal or other financial advice concerning the Plan and the classification and treatment of your claim(s) under the Plan.**

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least one-half in number and two-thirds in amount of the claims in this Class and who vote on the Plan and if the Plan otherwise satisfies applicable legal requirements.

**You are receiving this master ballot (the "Master Ballot") because you are the Nominee of a Beneficial Holder[3] of Class 7 Convertible Notes Claims (as set forth above) as of December 1, 2023 (the "Record Date").**

This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you have received a damaged ballot, lose your ballot or believe you have received this Master Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent immediately at: (855) 489-1434 (toll free) or +1 (949) 561-0347 (international) (ask to speak with a member of the solicitation group) or email amyrisinquiries@stretto.com and reference "Amyris" in the subject line.

**YOUR VOTE ON THIS MASTER BALLOT FOR BENEFICIAL HOLDERS OF CLASS 7 CONVERTIBLE NOTES CLAIMS INDICATED IN SCHEDULE A, SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM SUCH BENEFICIAL HOLDERS HAVE A CLAIM.**

You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Noteholders through online voting, by phone, facsimile, or other electronic means.

---

[2] Terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

[3] A "Beneficial Noteholder" means a beneficial owner of publicly-traded securities (the Convertible Notes) whose claims have not been satisfied prior to the Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees holding through DTC.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

| THE VOTING DEADLINE IS ON JANUARY 16, 2024, AT 5:00 P.M., PREVAILING EASTERN TIME. |
| --- |

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Record Date, the undersigned (please check the applicable box):

☐    Is a broker, bank, or other nominee for the Beneficial Holders of the aggregate principal amount of the Claims listed in Item 2 below, and is the record Holder of such bonds, or

☐    Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered Holder of the aggregate principal amount of the Claims listed in Item 2 below, or

☐    Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner, that is the registered Holder of the aggregate principal amount of the Claims listed in Item 2 below.

Accordingly, the undersigned has full power and authority to vote to accept or reject the Plan, on behalf of the Beneficial Holders of the Class 7 Convertible Notes Claims.

**Item 2. Vote on Plan**

The undersigned transmits the following votes of Beneficial Noteholders of Class 7 Convertible Notes Claims indicated in Schedule A and certifies that the following Beneficial Noteholders of Class 7 Convertible Notes Claims, as identified by their respective customer account numbers set forth below, are the Beneficial Noteholders of such Convertible Notes Claims as of the Record Date and have delivered to the undersigned, as Nominee, ballots (the "Ballots") casting such votes.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table. Please note that each Beneficial Noteholder must vote all such Beneficial Noteholder's Claims (as indicated in Schedule A) to accept or reject the Plan and may not split such vote. Any Beneficial Holder Ballot executed by the Beneficial Noteholders that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

| Your Customer Account Number for Each Beneficial Holder of Claims | Principal Amount Held as of Voting Record Date | Item 2 <br><br> Indicate the vote cast on the Beneficial Holder Ballot by checking the appropriate box below. | | Item 3 <br><br> Check the box below if the Beneficial Holder checked the box in Item 3 of their Ballot Opting Out of Granting the Third-Party Release |
|---|---|---|---|---|
| | | Accept the Plan | Reject the Plan | Release Opt out |
| 1 | $ | ☐ | ☐ | ☐ |
| 2 | $ | ☐ | ☐ | ☐ |
| 3 | $ | ☐ | ☐ | ☐ |
| 4 | $ | ☐ | ☐ | ☐ |
| 5 | $ | ☐ | ☐ | ☐ |
| 6 | $ | ☐ | ☐ | ☐ |
| TOTALS | $ | | | |

**Item 3.  Release.**

**THE PLAN CONTAINS A THIRD-PARTY RELEASE THAT RESULTS IN A RELEASE OF ANY AND ALL DIRECT CLAIMS A BENEFICIAL HOLDER MIGHT HAVE AGAINST THE RELEASED PARTIES IN EXCHANGE FOR CERTAIN CONSIDERATION.  A BENEFICIAL HOLDER HAS THE RIGHT TO OPT OUT OF GRANTING SUCH THIRD-PARTY RELEASE BY CHECKING THE BOX IN ITEM 3 OF THE BENEFICIAL NOTEHOLDER BALLOT.**

- **If the Beneficial Holder of a Claim does not opt out of granting the Releases described in Annex A to the Confirmation Hearing Notice and more fully described in the Solicitation Materials, the Beneficial Holder of a Claim will be deemed to have released whatever claims it may have against the Released Parties unless the Nominee; or the proxy Holder of the Nominee returns this ballot with the box included at the end of  this  Item  3  marked  by January 16, 2024, at 5:00 P.M., prevailing Eastern Time**.

- There will be no harm to you under the Plan if a Beneficial Holder of a Claim elects to opt out of granting the Third-Party Release.

- **The election of the Beneficial Holder to opt out of granting the Third-Party Release is indicated in the voting chart set out in Item 2, above.**

**Item 4. Other Ballots Submitted by Beneficial Noteholders in the same Class.**

The undersigned certifies that it has transcribed in the following table the information, if any, provided by the Beneficial Holders in Item 4 of the Beneficial Holder Ballot:

| YOUR customer account number and/or Customer Name for each Beneficial Holder who completed Item 4 of the Beneficial Holder Ballot | Transcribe from Item 4 of the Beneficial Holder Ballot | | | |
| --- | --- | --- | --- | --- |
| | Account Number | Name of Record Holder or Nominee | Principal Amount of other Claims | CUSIP of other Claims Votes |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |

**Item 5.  Certifications.**

Upon execution of this Master Ballot, the undersigned certifies that:

(a)      it has received a copy of the Disclosure Statement, the Plan, the Master Ballots, the Beneficial Holder Ballots, and the remainder of the Solicitation Materials and has delivered the same to the Beneficial Noteholders of the Claims listed in Item 2 above;

(b)      it has received a completed and signed Beneficial Holder Ballot from each Beneficial Noteholder listed in Item 2 of this Master Ballot and has indicated, where applicable, the intent of the Beneficial Holder to opt out of granting the Third-Party Release contained in the Plan;

(c)      it is the registered Holder of all Claims listed in Item 2 above being voted, or

(d)      it has been authorized by each Beneficial Noteholders of Convertible Notes Claims listed in Item 2 above to vote on the Plan;

(e)      no other Master Ballots with respect to the same Claims identified in Item 2 have been cast or, if any other Master Ballots have been cast with respect to such Claims, then any such earlier Master Ballots are hereby revoked;

(f)      it has properly disclosed: (a) the number of Beneficial Noteholders of Convertible Notes Claims who completed the Beneficial Holder Ballots related to this Master Ballot; (b) the respective amounts of the Convertible Notes Claims owned, as the case may be, by each Beneficial Noteholder who completed a Beneficial Holder Ballot related to this Master Ballot; (c) each such Beneficial Noteholders' respective vote concerning the Plan; (d) each such Beneficial Noteholders' certification as to other Claims voted in the same Class as the votes cast in this Master Ballot; and (e) the customer account or other identification number for each such Beneficial Holder of Claims; and

(g)      it will maintain ballots and evidence of separate transactions returned by Beneficial Holder of Claims (whether properly completed or defective) for at least one (1) year after the Effective Date of the Plan and disclose all such information to the Bankruptcy Court or the Debtors, if so ordered.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Participant Number | |
| Name of Proxy Holder or Agent for Nominee (if applicable) | |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |
| | |

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Please complete and sign this Master Ballot and submit to the Solicitation Agent by one of the following methods:

> **Via electronic mail service to (preferred method):**
> **E-MAIL to** AmyrisSecuritiesVote@Stretto.com with a reference to "Amyris Master Ballot" in the subject line.
>
> **In the envelope provided via first class mail, by overnight courier, or by hand delivery to:**
> **AMYRIS Ballot Processing**
> **c/o Stretto**
> **410 Exchange, Suite 100**
> **Irvine, CA 92602**

> **Ballots must be *received* by the Solicitation Agent by 5:00 p.m., prevailing Eastern Time, January 16, 2024 (the "Voting Deadline").** If a Ballot is received after the Voting Deadline, it will not be counted.

2.      You should immediately distribute the Beneficial Holder Ballots and the Solicitation Materials to all Beneficial Noteholders of Class 7 Convertible Notes Claims indicated in Schedule A and take any action required to enable each such Beneficial Noteholder to vote timely the Convertible Notes Claims that it holds. You may distribute the Solicitation Materials to Beneficial Noteholders, as appropriate, in accordance with your customary practices. You are authorized to collect votes to accept or to reject the Plan from Beneficial Noteholders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a beneficial ballot, and collecting votes from Beneficial Noteholders through online voting, by phone, facsimile, or other electronic means. Any Beneficial Holder Ballot returned to you by a Beneficial Noteholders of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to Stretto, a Master Ballot that reflects the vote of such Beneficial Noteholders by January 16, 2024 at 5:00 p.m., prevailing Eastern Time.

3.      If you are transmitting the votes of any Beneficial Noteholder of Convertible Notes Claims other than yourself, you may either:

a.      "Pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Materials and then forward the Solicitation Materials to the Beneficial Noteholder of Convertible Notes Claims for voting within five (5) Business Days after the receipt by such Nominee of the Solicitation Materials, with the Beneficial Noteholder then returning the individual Beneficial Holder Ballot directly to Stretto in the return envelope to be provided in the Solicitation Materials. A Nominee "pre-validates" a Beneficial Holder Ballot by signing the Beneficial Holder Ballot and including their DTC participant number; indicating the account number of the Beneficial Noteholder and the principal amount of Claim indicated in Schedule A held by the Nominee for such Beneficial Noteholder; and then forwarding the Beneficial Holder Ballot together with the Solicitation Materials to the Beneficial Noteholder. The Beneficial Noteholder then completes the information requested on the Beneficial Holder Ballot and returns the Beneficial Holder Ballot directly to Stretto. A list of the Beneficial Noteholders to whom "pre-validated" Beneficial Holder Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date.

b.      Within five (5) Business Days after receipt by such Nominee of the Solicitation Materials, forward the Solicitation Materials to the Beneficial Noteholder of Convertible Notes Claims for voting along with a return envelope provided by and addressed to the Nominee, with the Beneficial Noteholder then returning the individual Beneficial Holder Ballot to the Nominee. In such case, the Nominee will tabulate the votes of its respective owners on a Master Ballot that will be

provided to the Nominee separately by Stretto, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to Stretto. The Nominee should advise the Beneficial Noteholder to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to Stretto so that the Master Ballot is actually received by Stretto on or before the Voting Deadline.

4.      With regard to any Beneficial Holder Ballots returned to you by a Beneficial Noteholder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Noteholder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to Stretto by the Voting Deadline; and (d) retain such Beneficial Holder Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date of the Plan. You may be ordered to produce the Beneficial Holder Ballots to the Debtors or the Bankruptcy Court.

The Master Ballot must be returned to Stretto so as to be actually received by Stretto on or before the Voting Deadline. **The Voting Deadline is January 16, 2024, at 5:00 p.m., prevailing Eastern Time**.

5.      The following voting and standard assumptions shall be used in tabulating Ballots, including yours:

a.      Except to the extent the Debtors otherwise agree, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Debtors in connection with the confirmation of the Plan;

b.      Claims shall not be split for purposes of voting; thus, each creditor must vote the full amount of its Claim(s) within each Voting Class to either accept or reject the Plan.  If a creditor attempts to split such vote on their Ballot, such Ballot will not be counted for voting purposes;

c.      Any executed Ballot which does not indicate an acceptance or rejection will not be counted;

d.      Any executed Ballot which indicates both an acceptance and rejection of the Plan will not be counted;

e.      Votes cast pursuant to a Ballot that is not signed or does not contain an original signature will not be counted, unless otherwise ordered by the Court;

f.      Parties holding Claims in more than one Voting Class under the Plan may receive more than one Ballot coded for each applicable Voting Class;

g.      The method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder of a Claim, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Solicitation Agent;

h.      Delivery to and receipt by the Solicitation Agent of the original executed Master Ballot on or before the Voting Deadline is required in order for a vote to be counted.  **CLASS 7 MASTER BALLOTS MAY ONLY BE SUBMITTED IN ACCORDANCE WITH THE INSTRUCTIONS SET OUT ON THE FIRST PAGE OF THE BALLOT AND IN PARAGRAPH 1 OF THESE INSTRUCTIONS**;

i.      No Ballot sent to the Debtors, or to the Debtors' financial or legal advisors, will be accepted or counted in connection with confirmation of the Plan;

j.      If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

k.  If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtors, must submit proper evidence, satisfactory to the Debtors, of such person's authority to so act in such capacity;

l.  The Debtors, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice.  Except as otherwise provided herein, the Debtors may reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

m.  Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots shall be determined by the Debtors, which determination shall be final and binding;

n.  If a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such Claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless otherwise ordered by the Court;

o.  Any holder of a Claim who has timely delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

p.  Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with delivery of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted in connection with confirmation of the Plan;

q.  Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

r.  No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

s.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

t.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of the validity or allowability of a Claim or Interest for distribution or any other purposes.

u.  Any executed Ballot which does not indicate an opt out of granting the Third-Party Release shall be deemed to be consent to such Third-Party Release, regardless of whether such Ballot is voted to accept or reject the plan, or contains no voting election.

6.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

7.  **PLEASE RETURN YOUR BALLOT PROMPTLY.  THE SOLICITATION AGENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE OR E-MAIL**.

NO PERSON, INCLUDING THE SOLICITATION AGENT, HAS BEEN AUTHORIZED TO GIVE ANY ADVICE, INCLUDING LEGAL ADVICE, REGARDING THE DEBTORS OR THE PLAN.

**EXHIBIT C5**

**FORM OF BALLOT FOR CLASS 8**
**(GENERAL UNSECURED CLAIMS)**

4894-7043-7262.14 03703.004
DOCS_NY:48499.8 03703/004

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**BALLOT TO ACCEPT OR REJECT**
**DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

**CLASS 8:  GENERAL UNSECURED CLAIMS**

**THIS BALLOT IS TO BE USED BY OR ON BEHALF OF HOLDERS OF CLAIMS IN THE ABOVE-IDENTIFIED CLASS SOLELY FOR THE PURPOSE OF VOTING ON THE DEBTORS' PLAN OF REORGANIZATION WHICH IS INCLUDED IN THE ENCLOSED SOLICITATION MATERIALS.  PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY.  PLEASE COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED ENVELOPE PROMPTLY.  IF THE SOLICITATION AGENT HAS NOT RECEIVED THIS BALLOT BY 5:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 16, 2024 (THE "<u>VOTING DEADLINE</u>"), UNLESS OTHERWISE EXTENDED AT THE SOLE DISCRETION OF THE DEBTORS, IT WILL NOT BE COUNTED.  <u>FACSIMILE AND E-MAIL BALLOTS WILL NOT BE ACCEPTED.</u>**

This ballot (the "<u>Ballot</u>") is submitted to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___] filed by Amyris, Inc. and its affiliated debtors and debtors in possession (the "<u>Debtors</u>") (including all exhibits thereto and as amended, modified or supplemented from time to time, the "<u>Plan</u>").[2]  The Plan is described in the related *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "<u>Disclosure Statement</u>") approved by order of the United States Bankruptcy Court for the District of Delaware [Docket No. ___] (the "<u>Disclosure Statement Order</u>").  The Disclosure Statement provides information to assist you in deciding how to vote your Ballot.  You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal or other financial advice concerning the Plan and the classification and treatment of your claim(s) under the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least one-half in number and two-thirds in amount of the claims in this Class and who vote on the Plan and if the Plan otherwise satisfies applicable legal requirements.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

**If you have received a damaged ballot or if you lose your ballot, or if you have any questions concerning this ballot or the voting procedures, please contact the Solicitation Agent.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

PLEASE COMPLETE ITEM 1.  IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST.  IF THIS BALLOT IS NOT SIGNED IN ITEM 3 BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1.  Class Vote.**  The undersigned, the holder of a Class 8 General Unsecured Claim, hereby votes, in the amount set forth below, as follows (check one box):

☐ Accept the Plan          ☐ Reject the Plan.

Amount of Claim:  $_____

**Item 2.  Releases.**  The undersigned, the holder of a Claim as indicated in Item 1, above, hereby elects to opt out of granting the Third-Party Release set forth in the Plan, **the relevant provisions of which are attached as Annex A to the enclosed Confirmation Hearing Notice and more fully described in the Solicitation Materials**. (Check if applicable):

☐ Opt Out of granting the Third-Party Release

**If you vote to accept the Plan, you shall be deemed to have consented to granting the Third-Party Release in the Plan.  If you fail to check the box or leave this Item blank, you will be deemed to have consented to granting the Third-Party Release and you will be deemed a Releasing Party.  Even if you check the box, the Court may deem your acceptance of the Plan on a non-consensual basis as consent to granting the Third-Party Release and that you are bound by such release.**

**Item 3.  Acknowledgments.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials (the "Solicitation Materials") and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant.  The undersigned understands that if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted.

*[Signature of following page]*

| | |
|---|---|
| _____ | _____ |
| Name of Creditor | Social Security or Federal Tax I.D. No. (optional) |
| _____ | _____ |
| Signature | |
| _____ | _____ |
| If by Authorized Agent, Name and Title | Street Address |
| | _____ |
| | City, State, Zip Code |
| _____ | _____ |
| | E-mail: |
| Date Completed | Telephone Number: |

## <u>VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT</u>

1.   In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to the Solicitation Agent at the following address:

**Amyris Balloting**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

An envelope addressed to the Solicitation Agent is enclosed for your convenience.

Alternatively, you may submit your Ballot via the Solicitation Agent's online portal by visiting https://cases.stretto.com/Amyris.  Click on the "File a Ballot" section of the website and follow the instructions to submit your Ballot.

IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:

   **Unique E-Ballot PASSWORD:**_____

The Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot PASSWORD is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot PASSWORD you receive, as applicable.  **Creditors who cast a Ballot using the Solicitation Agent's Electronic Balloting Portal system SHOULD NOT also submit a paper Ballot.**

**Ballots must be *received* by the Solicitation Agent by 5:00 p.m., prevailing Eastern Time, January 16, 2024 (the "<u>Voting Deadline</u>").**  If a Ballot is received after the Voting Deadline, it will not be counted.

2.   Please sign and date your ballot as required in Item 2.  **Your signature is required before your ballot may be counted**.

3.   If your claim has not been previously allowed by order of the Bankruptcy Court, your claim will be deemed to be temporarily allowed, solely for purposes of voting on the Plan unless there is an objection to your claim pending as of the date you receive the Solicitation Materials.  The temporary allowance of your claim for voting purposes does not constitute an allowance of your claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors, or any other party in interest (including but not limited to the post-confirmation reorganized debtor or any post-confirmation trustee), in any other context (*e.g.*, the right to contest the amount or validity of any claim for purposes of allowance under the Plan).  If your claim is the subject of an objection that was filed by prior to the date you receive the Solicitation Materials, in accordance with Bankruptcy Rule 3018, your Ballot will not be counted unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan.  In order for a claim subject to a timely filed objection to be temporarily allowed for voting purposes only, **you are required to file a motion with the Bankruptcy Court seeking such relief by no later than January 5, 2024.**  Notwithstanding the foregoing, if the Debtors file a timely objection to your claim and request that your claim be allowed in a specific amount, and you file a timely and valid Ballot, your Ballot shall be counted in such specified amount.

4.      The following voting and standard assumptions shall be used in tabulating Ballots, including yours:

a.      Except to the extent the Debtors otherwise agree, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Debtors in connection with the confirmation of the Plan;

b.      Claims shall not be split for purposes of voting; thus, each creditor must vote the full amount of its Claim(s) within each Voting Class to either accept or reject the Plan. If a creditor attempts to split such vote on their Ballot, such Ballot will not be counted for voting purposes;

c.      Any executed Ballot which does not indicate an acceptance or rejection will not be counted;

d.      Any executed Ballot which indicates both an acceptance and rejection of the Plan will not be counted;

e.      Votes cast pursuant to a Ballot that is not signed or does not contain an original signature will not be counted, unless otherwise ordered by the Court;

f.      Parties holding Claims in more than one Voting Class under the Plan may receive more than one Ballot coded for each applicable Voting Class;

g.      The method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder of a Claim, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Solicitation Agent;

h.      Delivery to and receipt by the Solicitation Agent of the original executed Ballot on or before the Voting Deadline is required in order for a vote to be counted. Delivery of a Ballot by facsimile, email or any other electronic means will not be accepted unless otherwise ordered by the Court; *provided, however*, that Ballots may be electronically submitted using the Solicitation Agent's official on-line electronic ballot portal at https://cases.stretto.com/Amyris;

i.      No Ballot sent to the Debtors, or to the Debtors' financial or legal advisors, will be accepted or counted in connection with confirmation of the Plan;

j.      If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

k.      If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtors, must submit proper evidence, satisfactory to the Debtors, of such person's authority to so act in such capacity;

l.      The Debtors, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein, the Debtors may reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

m.      Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots shall be determined by the Debtors, which determination shall be final and binding;

n. If a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such Claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless otherwise ordered by the Court;

o. Any holder of a Claim who has timely delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

p. Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with delivery of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted in connection with confirmation of the Plan;

q. Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

r. No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

s. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

t. The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of the validity or allowability of a Claim or Interest for distribution or any other purposes.

u. Any executed Ballot which does not indicate an opt out of granting the Third-Party Release shall be deemed to be consent to such Third-Party Release, regardless of whether such Ballot is voted to accept or reject the plan, or contains no voting election.

5. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

6. **PLEASE RETURN YOUR BALLOT PROMPTLY.  THE SOLICITATION AGENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE OR E-MAIL**.

NO PERSON, INCLUDING THE SOLICITATION AGENT, HAS BEEN AUTHORIZED TO GIVE ANY ADVICE, INCLUDING LEGAL ADVICE, REGARDING THE DEBTORS OR THE PLAN.

**EXHIBIT C6**

**FORM OF BALLOT FOR CLASS 9**
**(DSM CONTRACT CLAIMS)**

4894-7043-7262.14 03703.004
DOCS_NY:48499.8 03703/004

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**BALLOT TO ACCEPT OR REJECT
DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

**CLASS 9:  DSM CONTRACT CLAIMS**

**THIS BALLOT IS TO BE USED BY OR ON BEHALF OF HOLDERS OF CLAIMS IN THE ABOVE-IDENTIFIED CLASS SOLELY FOR THE PURPOSE OF VOTING ON THE DEBTORS' PLAN OF REORGANIZATION WHICH IS INCLUDED IN THE ENCLOSED SOLICITATION MATERIALS.  PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY.  PLEASE COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED ENVELOPE PROMPTLY.  IF THE SOLICITATION AGENT HAS NOT RECEIVED THIS BALLOT BY 5:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 16, 2024 (THE "VOTING DEADLINE"), UNLESS OTHERWISE EXTENDED AT THE SOLE DISCRETION OF THE DEBTORS, IT WILL NOT BE COUNTED.  FACSIMILE AND E-MAIL BALLOTS WILL NOT BE ACCEPTED.**

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___ filed by Amyris, Inc. and its affiliated debtors and debtors in possession (the "Debtors") (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").[2]  The Plan is described in the related *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Disclosure Statement") approved by order of the United States Bankruptcy Court for the District of Delaware [Docket No. ___] (the "Disclosure Statement Order").  The Disclosure Statement provides information to assist you in deciding how to vote your Ballot.  You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal or other financial advice concerning the Plan and the classification and treatment of your claim(s) under the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least one-half in number and two-thirds in amount of the claims in this Class and who vote on the Plan and if the Plan otherwise satisfies applicable legal requirements.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

**If you have received a damaged ballot or if you lose your ballot, or if you have any questions concerning this ballot or the voting procedures, please contact the Solicitation Agent.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

PLEASE COMPLETE ITEM 1.  IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST.  IF THIS BALLOT IS NOT SIGNED IN ITEM 2 BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1.  Class Vote.**  The undersigned, the holder of a Class 9 DSM Contract Claim, hereby votes, in the amount set forth below, as follows (check <u>one</u> box):

☐ Accept the Plan           ☐ Reject the Plan.

Amount of Claim:  $_____

**Item 2.  Releases.**  The undersigned, the holder of a Claim as indicated in Item 1, above, hereby elects to opt out of granting the Third-Party Release set forth in the Plan, **the relevant provisions of which are attached as Annex A to the enclosed Confirmation Hearing Notice and more fully described in the Solicitation Materials**. (Check if applicable):

☐ Opt Out of granting the Third-Party Release

**If you vote to accept the Plan, you shall be deemed to have consented to granting the Third-Party Release in the Plan.  If you fail to check the box or leave this Item blank, you will be deemed to have consented to granting the Third-Party Release and you will be deemed a Releasing Party.  Even if you check the box, the Court may deem your acceptance of the Plan on a non-consensual basis as consent to granting the Third-Party Release and that you are bound by such release.**

**Item 3.  Acknowledgments.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials (the "<u>Solicitation Materials</u>") and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant.  The undersigned understands that if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted.

*[Signature of following page]*

4894-7043-7262.14 03703.004
DOCS_NY:48499.8 03703/004

_____          _____
Name of Creditor                          Social Security or Federal Tax I.D. No. (optional)

_____          _____
Signature

_____          _____
If by Authorized Agent, Name and Title    Street Address


                                          _____
                                          City, State, Zip Code

_____          _____
                                          E-mail:
Date Completed                            Telephone Number:

### VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.      In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to the Solicitation Agent at the following address:

**Amyris Balloting**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

An envelope addressed to the Solicitation Agent is enclosed for your convenience.

Alternatively, you may submit your Ballot via the Solicitation Agent's online portal by visiting https://cases.stretto.com/Amyris.  Click on the "File a Ballot" section of the website and follow the instructions to submit your Ballot.

IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:

        **Unique E-Ballot PASSWORD:**_____

The Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

Each E-Ballot PASSWORD is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot PASSWORD you receive, as applicable.  **Creditors who cast a Ballot using the Solicitation Agent's Electronic Balloting Portal system SHOULD NOT also submit a paper Ballot.**

**Ballots must be *received* by the Solicitation Agent by 5:00 p.m., prevailing Eastern Time, January 16, 2024 (the "Voting Deadline").**  If a Ballot is received after the Voting Deadline, it will not be counted.

2.      Please sign and date your ballot as required in Item 2.  **Your signature is required before your ballot may be counted**.

3.      If your claim has not been previously allowed by order of the Bankruptcy Court, your claim will be deemed to be temporarily allowed, solely for purposes of voting on the Plan unless there is an objection to your claim pending as of the date you receive the Solicitation Materials.  The temporary allowance of your claim for voting purposes does not constitute an allowance of your claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors, or any other party in interest (including but not limited to the post-confirmation reorganized debtor or any post-confirmation trustee), in any other context (*e.g.*, the right to contest the amount or validity of any claim for purposes of allowance under the Plan).  If your claim is the subject of an objection that was filed by prior to the date you receive the Solicitation Materials, in accordance with Bankruptcy Rule 3018, your Ballot will not be counted unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan.  In order for a claim subject to a timely filed objection to be temporarily allowed for voting purposes only, **you are required to file a motion with the Bankruptcy Court seeking such relief by no later than January 5, 2024.** Notwithstanding the foregoing, if the Debtors file a timely objection to your claim and request that your claim be allowed in a specific amount, and you file a timely and valid Ballot, your Ballot shall be counted in such specified amount.

4.      The following voting and standard assumptions shall be used in tabulating Ballots, including yours:

a.      Except to the extent the Debtors otherwise agree, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Debtors in connection with the confirmation of the Plan;

b.      Claims shall not be split for purposes of voting; thus, each creditor must vote the full amount of its Claim(s) within each Voting Class to either accept or reject the Plan.  If a creditor attempts to split such vote on their Ballot, such Ballot will not be counted for voting purposes;

c.      Any executed Ballot which does not indicate an acceptance or rejection will not be counted;

d.      Any executed Ballot which indicates both an acceptance and rejection of the Plan will not be counted;

e.      Votes cast pursuant to a Ballot that is not signed or does not contain an original signature will not be counted, unless otherwise ordered by the Court;

f.      Parties holding Claims in more than one Voting Class under the Plan may receive more than one Ballot coded for each applicable Voting Class;

g.      The method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder of a Claim, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Solicitation Agent;

h.      Delivery to and receipt by the Solicitation Agent of the original executed Ballot on or before the Voting Deadline is required in order for a vote to be counted.  Delivery of a Ballot by facsimile, email or any other electronic means will not be accepted unless otherwise ordered by the Court; *provided, however*, that Ballots may be electronically submitted using the Solicitation Agent's official on-line electronic ballot portal at https://cases.stretto.com/Amyris;

i.      No Ballot sent to the Debtors, or to the Debtors' financial or legal advisors, will be accepted or counted in connection with confirmation of the Plan;

j.      If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

k.      If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtors, must submit proper evidence, satisfactory to the Debtors, of such person's authority to so act in such capacity;

l.      The Debtors, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice.  Except as otherwise provided herein, the Debtors may reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

m.      Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots shall be determined by the Debtors, which determination shall be final and binding;

n.    If a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such Claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless otherwise ordered by the Court;

o.    Any holder of a Claim who has timely delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

p.    Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with delivery of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted in connection with confirmation of the Plan;

q.    Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

r.    No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

s.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

t.    The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of the validity or allowability of a Claim for distribution or any other purposes.

u.    Any executed Ballot which does not indicate an opt out of granting the Third-Party Release shall be deemed to be consent to such Third-Party Release, regardless of whether such Ballot is voted to accept or reject the plan, or contains no voting election.

5.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

6.    **PLEASE RETURN YOUR BALLOT PROMPTLY.  THE SOLICITATION AGENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE OR E-MAIL**.

NO PERSON, INCLUDING THE SOLICITATION AGENT, HAS BEEN AUTHORIZED TO GIVE ANY ADVICE, INCLUDING LEGAL ADVICE, REGARDING THE DEBTORS OR THE PLAN.

**EXHIBIT C7**

**FORM OF BALLOT FOR CLASS 10**
**(GIVAUDAN CONTRACT CLAIMS)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**BALLOT TO ACCEPT OR REJECT
DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

**CLASS 10:  GIVAUDAN CONTRACT CLAIMS**

**THIS BALLOT IS TO BE USED BY OR ON BEHALF OF HOLDERS OF CLAIMS IN THE ABOVE-IDENTIFIED CLASS SOLELY FOR THE PURPOSE OF VOTING ON THE DEBTORS' PLAN OF REORGANIZATION WHICH IS INCLUDED IN THE ENCLOSED SOLICITATION MATERIALS.  PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY.  PLEASE COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED ENVELOPE PROMPTLY.  IF THE SOLICITATION AGENT HAS NOT RECEIVED THIS BALLOT BY 5:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 16, 2024 (THE "<u>VOTING DEADLINE</u>"), UNLESS OTHERWISE EXTENDED AT THE SOLE DISCRETION OF THE DEBTORS, IT WILL NOT BE COUNTED.  <u>FACSIMILE AND E-MAIL BALLOTS WILL NOT BE ACCEPTED.</u>**

This ballot (the "<u>Ballot</u>") is submitted to you to solicit your vote to accept or reject the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___] filed by Amyris, Inc. and its affiliated debtors and debtors in possession (the "<u>Debtors</u>") (including all exhibits thereto and as amended, modified or supplemented from time to time, the "<u>Plan</u>").[2]  The Plan is described in the related *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. ___] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "<u>Disclosure Statement</u>") approved by order of the United States Bankruptcy Court for the District of Delaware [Docket No. ___] (the "<u>Disclosure Statement Order</u>").  The Disclosure Statement provides information to assist you in deciding how to vote your Ballot.  You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal or other financial advice concerning the Plan and the classification and treatment of your claim(s) under the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least one-half in number and two-thirds in amount of the claims in this Class and who vote on the Plan and if the Plan otherwise satisfies applicable legal requirements.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

**If you have received a damaged ballot or if you lose your ballot, or if you have any questions concerning this ballot or the voting procedures, please contact the Solicitation Agent.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ITEM 1.  IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST.  IF THIS BALLOT IS NOT SIGNED IN ITEM 3 BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Class Vote.**  The undersigned, the holder of a Class 10 Givaudan Contract Claim, hereby votes, in the amount set forth below, as follows (check <u>one</u> box):

☐ Accept the Plan                ☐ Reject the Plan.

Amount of Claim:  $_____

**Item 2.  Releases.**  The undersigned, the holder of a Claim as indicated in Item 1, above, hereby elects to opt out of granting the Third-Party Release set forth in the Plan, **the relevant provisions of which are attached as Annex A to the enclosed Confirmation Hearing Notice and more fully described in the Solicitation Materials**. (Check if applicable):

☐ Opt Out of granting the Third-Party Release

**If you vote to accept the Plan, you shall be deemed to have consented to granting the Third-Party Release in the Plan.  If you fail to check the box or leave this Item blank, you will be deemed to have consented to granting the Third-Party Release and you will be deemed a Releasing Party.  Even if you check the box, the Court may deem your acceptance of the Plan on a non-consensual basis as consent to granting the Third-Party Release and that you are bound by such release.**

**Item 3.  Acknowledgments.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials (the "<u>Solicitation Materials</u>") and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant.  The undersigned understands that if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted.

*[Signature of following page]*

| | |
|---|---|
| _____ | _____ |
| Name of Creditor | Social Security or Federal Tax I.D. No. (optional) |
| _____ | _____ |
| Signature | |
| _____ | _____ |
| If by Authorized Agent, Name and Title | Street Address |
| | _____ |
| | City, State, Zip Code |
| _____ | _____ |
| | E-mail: |
| Date Completed | Telephone Number: |

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1. In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan. Complete the Ballot by providing all the information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to the Solicitation Agent at the following address:

**Amyris Balloting**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

An envelope addressed to the Solicitation Agent is enclosed for your convenience.

Alternatively, you may submit your Ballot via the Solicitation Agent's online portal by visiting https://cases.stretto.com/Amyris. Click on the "File a Ballot" section of the website and follow the instructions to submit your Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:

Unique E-Ballot PASSWORD:_____

The Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot PASSWORD is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot PASSWORD you receive, as applicable. **Creditors who cast a Ballot using the Solicitation Agent's Electronic Balloting Portal system SHOULD NOT also submit a paper Ballot.**

**Ballots must be** *received* **by the Solicitation Agent by 5:00 p.m., prevailing Eastern Time, January 16, 2024 (the "Voting Deadline").** If a Ballot is received after the Voting Deadline, it will not be counted.

2. Please sign and date your ballot as required in Item 2. **Your signature is required before your ballot may be counted**.

3. If your claim has not been previously allowed by order of the Bankruptcy Court, your claim will be deemed to be temporarily allowed, solely for purposes of voting on the Plan unless there is an objection to your claim pending as of the date you receive the Solicitation Materials. The temporary allowance of your claim for voting purposes does not constitute an allowance of your claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors, or any other party in interest (including but not limited to the post-confirmation reorganized debtor or any post-confirmation trustee), in any other context (*e.g.*, the right to contest the amount or validity of any claim for purposes of allowance under the Plan). If your claim is the subject of an objection that was filed by prior to the date you receive the Solicitation Materials, in accordance with Bankruptcy Rule 3018, your Ballot will not be counted unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan. In order for a claim subject to a timely filed objection to be temporarily allowed for voting purposes only, **you are required to file a motion with the Bankruptcy Court seeking such relief by no later than January 5, 2024.** Notwithstanding the foregoing, if the Debtors file a timely objection to your claim and request that your claim be allowed in a specific amount, and you file a timely and valid Ballot, your Ballot shall be counted in such specified amount.

4894-7043-7262.14 03703.004
DOCS_NY:48499.8 03703/004

4.      The following voting and standard assumptions shall be used in tabulating Ballots, including yours:

a.      Except to the extent the Debtors otherwise agree, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Debtors in connection with the confirmation of the Plan;

b.      Claims shall not be split for purposes of voting; thus, each creditor must vote the full amount of its Claim(s) within each Voting Class to either accept or reject the Plan. If a creditor attempts to split such vote on their Ballot, such Ballot will not be counted for voting purposes;

c.      Any executed Ballot which does not indicate an acceptance or rejection will not be counted;

d.      Any executed Ballot which indicates both an acceptance and rejection of the Plan will not be counted;

e.      Votes cast pursuant to a Ballot that is not signed or does not contain an original signature will not be counted, unless otherwise ordered by the Court;

f.      Parties holding Claims in more than one Voting Class under the Plan may receive more than one Ballot coded for each applicable Voting Class;

g.      The method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder of a Claim, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Solicitation Agent;

h.      Delivery to and receipt by the Solicitation Agent of the original executed Ballot on or before the Voting Deadline is required in order for a vote to be counted. Delivery of a Ballot by facsimile, email or any other electronic means will not be accepted unless otherwise ordered by the Court; *provided, however*, that Ballots may be electronically submitted using the Solicitation Agent's official on-line electronic ballot portal at https://cases.stretto.com/Amyris;

i.      No Ballot sent to the Debtors, or to the Debtors' financial or legal advisors, will be accepted or counted in connection with confirmation of the Plan;

j.      If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

k.      If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtors, must submit proper evidence, satisfactory to the Debtors, of such person's authority to so act in such capacity;

l.      The Debtors, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein, the Debtors may reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

m.      Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots shall be determined by the Debtors, which determination shall be final and binding;

n.      If a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such Claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless otherwise ordered by the Court;

o.      Any holder of a Claim who has timely delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

p.      Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with delivery of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted in connection with confirmation of the Plan;

q.      Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

r.      No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

s.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

t.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of the validity or allowability of a Claim or Interest for distribution or any other purposes.

u.      Any executed Ballot which does not indicate an opt out of granting the Third-Party Release shall be deemed to be consent to such Third-Party Release, regardless of whether such Ballot is voted to accept or reject the plan, or contains no voting election.

5.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

6.      **PLEASE RETURN YOUR BALLOT PROMPTLY.  THE SOLICITATION AGENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE OR E-MAIL**.

NO PERSON, INCLUDING THE SOLICITATION AGENT, HAS BEEN AUTHORIZED TO GIVE ANY ADVICE, INCLUDING LEGAL ADVICE, REGARDING THE DEBTORS OR THE PLAN.