IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| | ) ) | Case No. 23-11131 (TMH) |
| AMYRIS, INC. et al, | ) ) | (Jointly Administered) |
| Debtors.[1] | ) ) ) ) | |
| | ) ) ) ) | **Re: Docket Nos. 525 & 826** |

<u>**OBJECTION AND RESERVATION OF RIGHTS OF AD HOC
CROSS-HOLDER GROUP TO DEBTORS' MOTION FOR AN ORDER
(I) APPROVING THE DISCLOSURE STATEMENT, (II) SCHEDULING
CONFIRMATION HEARING, (III) APPROVING FORM AND MANNER OF
NOTICE OF CONFIRMATION HEARING, (IV) ESTABLISHING PROCEDURES
FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE
PLAN, (V) APPROVING FORM AND MANNER OF NOTICE OF PLAN RELEASES,
(VI) ESTABLISHING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS
TO CONFIRMATION OF PLAN, AND (VII) GRANTING RELATED RELIEF**</u>

The ad hoc group (the "<u>Ad Hoc Cross-Holder Group</u>") of certain unaffiliated (a) holders of notes or other indebtedness issued under that certain Indenture, dated as of November 15, 2021 pursuant to which Amyris, Inc. issued certain 1.50% Convertible Senior Notes Due 2026 and/or (b) shareholders of Amyris, Inc., as identified on that certain *Verified Statement of Ad Hoc Cross-Holder Group Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 397], as the same may be amended or supplemented from time to time, by and through its undersigned counsel, hereby files this Objection (the "<u>Objection</u>") and Reservation of Rights to the Debtors' *Motion for an Order (I) Approving the Disclosure Statement, (II)*

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

*Scheduling Confirmation Hearing, (III) Approving Form and Manner of Notice of Confirmation Hearing, (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, (V) Approving Form and Manner of Notice of Plan Releases, (VI) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plan, and (VI) Granting Related Relief* [Docket No. 525] (the "Solicitation Procedures Motion") filed in the above-captioned cases jointly administered under Case No. 23-11131 (the "Chapter 11 Cases") in connection with the *Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors* [Docket No. 826-1] (the "Plan")[2] and the *Second Amended Disclosure Statement with Respect to Joint Chapter 11 Plan of Reorganization of Amyris Inc., and Its Affiliated Debtors* [Docket No. 826-2] (the "Disclosure Statement") and in support thereof states as follows:

## OBJECTION

1.      The Ad Hoc Cross-Holder Group understands the need to move the plan process forward.  The Ad Hoc Cross-Holder Group also recognizes and applauds the two other committees in obtaining the improved and better treatment of unsecured creditors.  The self-imposed liquidity constraints and desire to move valuable assets to the insider DIP Lender, however, does not give the Debtors a mandate to short-circuit the creditor protections afforded by the Bankruptcy Code.  Given the self-created accelerated confirmation process and compressed schedule, the Ad Hoc Cross-Holder Group has only had a few days to review, analyze and discuss the Disclosure Statement and Plan.  Based upon a preliminary review, the Plan seems to contain certain infirmities and defects that would render it unconfirmable.  The Ad Hoc Cross-Holder Group reserves all rights with respect to those issues and will continue its

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in Plan, and if not defined there, then the meaning ascribed to them in the Solicitation Procedures Motion.

dialogue with the Debtors to address them with the goal of obtaining a negotiated resolution in advance of confirmation.

2. Since the Disclosure Statement and Plan were filed two days ago, the Ad Hoc Cross-Holder Group has been engaged with the Debtors about the recent developments and has also raised its issues and concerns about the Disclosure Statement. Though no agreement was reached in advance of filing this Objection, the Ad Hoc Cross-Holder Group and the Debtors continue to discuss proposed resolutions about disclosures in advance of the hearing. The Ad Hoc Cross-Holder Group has a high degree of confidence that most, if not all, disclosure statement objections can be resolved prior to the hearing.

3. The Disclosure Statement omits core information that must be disclosed before the Debtors are permitted to solicit votes for the Plan. In order to make an informed judgment about a plan that delivers the company's assets to an insider and releases numerous insiders from estate and third-party claims, creditors and other stakeholders require details about the value of those assets and claims. The Debtors have not performed a market test of the proposed plan transaction and it is unclear whether they intend to do so in connection with confirmation. The Debtors have provided zero information about the claims being released or the alleged investigations performed into the claims. The notion of soliciting votes for a plan based on secret investigations, the results of which have been withheld from creditors and other stakeholders, is antithetical to the letter and spirt of Section 1125 of the Bankruptcy Code.

4. By their own admission, the Debtors' sale of their Consumer Brands assets was an unmitigated disaster. The projected $250+ million in sale proceeds to fund a plan turned out to be less than $30 million. This stunning turn of event raises serious questions into what went wrong and how the company could fail in such spectacular fashion compared to the expectations

set just a few months ago. No plausible explanation is provided in the Disclosure Statement. In these circumstances in particular, disclosure is paramount. While the Disclosure Statement and Plan have been updated to reflect these results and a proposed settlement and release of various estate and third-party claims and causes of action, the accompanying disclosures fall well short of what a party-in-interest requires to make an informed decision about the Plan.

5. First, the Disclosure Statement still contains no meaningful information about the estate claims and causes of action being released or the results of the alleged multiple investigations examining them. With respect to the Debtors' alleged independent investigation, the Debtors claim that Mr. Reiss has produced a secret report shared only with the Creditors' Committee and one new "independent director." There is no additional color on the nature or findings in the report. In fact, the Debtors claim that such investigation is ongoing but they nevertheless determined to release the claims under the original plan months ago. It is unclear who made that decision on behalf of the Debtors. What is clear is that the so-called "independent report" carries no real weight so long as it remains secret and subject to a tainted process. Without the disclosure of the contents of the report, the process has the appearance of lacking integrity and openness. In order to protect integrity, comply with the Bankruptcy Code's requirements and avoid selective and incomplete disclosure of information, the Debtors should incorporate the report into the Disclosure Statement. The Debtors should also be required to file a supplement when the investigation is completed, which should happen in advance of the voting deadline.

6. The Disclosure Statement only briefly mentions the Committee's investigation and agreement to reach a settlement of estate claims. It contains no description of the findings, the nature of the claims, or an explanation of the risks and benefits of settling that would permit a

stakeholder to make an informed decision about the Plan. The Ad Hoc Noteholder Committee's investigation has likewise been kept secret from voting stakeholders. Passing references to issues considered and documents produced is not adequate disclosure within the meaning of Section 1125. In order to consider the settlement of estate claims and causes of action and vote on whether to accept the Plan, stakeholders must, at a minimum, have an understanding of the claims, their strengths and weaknesses and the potential recoveries.[3] *In re Oneida Motor Freight, Inc.*, 848 F.2d 414, 417 (3d Cir. 1988) ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'"); *In re Lower Bucks Hosp.*, 488 B.R. 303, 321 (Bankr. E.D. Pa. 2013), *aff'd* 571 Fed. App'x 139 (3d Cir. 2014) (denying approval of disclosure statement because it "did not provide . . . information about the merits or value of the potential claims . . . or the class action that they would be relinquishing.").

7.      Second, the Disclosure Statement contains inadequate information about how the Debtors propose to meet the difficult standard for obtaining the controversial non-consensual Third Party Releases. In order to make an informed decision about voting and potentially opting out of the Third-Party Release, stakeholders need to understand the standard applied under the Third Circuit and how the Debtors plan to meet their burden. Currently the Disclosure Statement is not clear about who specifically is receiving a Third-Party Release and how much each Released Party is contributing to the reorganization. It appears, however, that parties obtaining the Third-Party Releases extend well beyond Foris and the DIP Lenders (the only two entities

---

[3] The First Amended Plan conjectured that the "recoveries from Causes of Action against D&Os and Avoidance Actions" could be "in the range of $25 - $35 million," but provides no elaboration or explanation of this figure. This language was then removed from the Second Amended Disclosure Statement.

providing any consideration).[4]  Nor is there any explanation why such releases are necessary to the reorganization or who made the decision to authorize them.  Without more information, stakeholders cannot make a decision on whether to support or oppose the Plan or to opt out.

8.      Third, the Disclosure Statement contains no information about the market testing process for the Other Assets, including the intellectual property and R&D assets upon which the Debtors plan to reorganize.  Instead, the insiders who developed the Plan and who are now charged with prosecuting it, are handing themselves all of the value of the Reorganized Debtors and giving themselves sole discretion to determine whether to explore any alternatives.  There is also no discussion as to going concern value of those assets.  Delaware law and applicable Bankruptcy law require a higher level of scrutiny when insiders are in control and obtaining control of the Reorganized Debtors. *See, e.g.*, *In re Winstar Comm's, Inc.*, 554 F.3d 382, 396 (3d Cir. 2009) (lender's ability to coerce debtor's activities constituted insider status requiring heightened scrutiny of transactions between insider and debtor); *In re TSIC, Inc.*, 428 B.R. 103, 111 (Bankr. D. Del. 2010) ("An insider is any person or entity whose relationship with a debtor is sufficiently close that any transactions between them ought to be subjected to closer scrutiny than those occurring at arms' length.").  The Debtors' lack of disclosure and failure to market the Other Assets is problematic and will be an issue at confirmation.

9.      Finally, in connection with the confirmation schedule, the Ad Hoc Cross-Holder Group is working with the Debtors to come up with a workable schedule to engage in Plan-

---

[4] The list includes, but is not limited to, the Consenting Convertible Noteholders, the Ad Hoc Group Professionals, the Consenting Contract Counterparties, and all of their current or former directors, managers, officers, shareholders, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns, subsidiaries, current, former, and future associated entities, managed or advised entities, accounts, or funds, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, fiduciaries, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, restructuring advisors, and

related discovery and ensure a fair and fulsome confirmation hearing in the proposed compressed timeframe. If consensus is not achieved, the Cross-Holder Group will address specific issues before the Court at the hearing.

10.  The Ad Cross-Holder Group remains hopeful the issues can be resolved in advance of the hearing and will also continue to work with all stakeholders to reach a global resolution of the confirmation issues in advance of confirmation.

## RESERVATION OF RIGHTS

11.  The Ad Hoc Cross-Holder Group reserves its rights to supplement or amend this Objection to further address or object to the Solicitation Procedures Motion, and any related matter and to respond to any response or objection either by further submissions to this Court, at oral argument, or by testimony to be presented at any hearing. The Ad Hoc Cross-Holder Group further reserves all of its rights with respect to confirmation of the Plan, including the right to assert any and all objections to confirmation at the appropriate time, whether or not such objections are set forth herein, and the right to seek appropriate relief in connection with any Plan confirmation proceedings or otherwise.

## CONCLUSION

12.  For the above reasons, the Ad Hoc Cross-Holder Group respectfully asks that the Court require the Debtors to make the modifications requested herein as a condition to approval the adequacy of the Disclosure Statement.

*[Remainder of Page Intentionally Left Blank]*

---

other professionals and advisors, and any such person's or Entity's respective predecessors, successors, assigns, heirs, executors, estates, and nominees. See Plan at Article I.A. 172, 174,

Dated: December 8, 2023
       Wilmington, Delaware

**WOMBLE BOND DICKINSON LLP**

By: */s/ Matthew P. Ward*
     Matthew P. Ward (DE Bar No. 4471)
     Morgan L. Patterson (DE Bar No. 5388)
     1313 North Market Street, Suite 1200
     Wilmington, Delaware 19801
     Telephone: (302) 252-4320
     Facsimile: (302) 252-4330
     Email: matthew.ward@wbd-us.com
     Email: morgan.patterson@wbd-us.com

**ARENTFOX SCHIFF LLP**

By: */s/ Andrew I. Silfen*
     Andrew I. Silfen (*Pro Hac Vice*)
     Beth M. Brownstein (*Pro Hac Vice*)
     1301 Avenue of the Americas
     42nd Floor
     New York, New York 10019
     Telephone: (212) 484-3900
     Facsimile: (212) 484-3990
     Andrew.Silfen@afslaw.com
     Beth.Brownstein@afslaw.com

and

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON P.A.**

By: */s/ Eric J. Silver*
     Eric J. Silver (*Pro Hac Vice*)
     150 W. Flagler St, Suite 2200
     Miami, FL 33130
     Telephone: (302) 789-3200
     Facsimile: (305) 789-2688
     esilver@stearnsweaver.com