# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*,[1] | Case No. 23-11131 (TMH) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF LORIE BEERS IN SUPPORT OF MOTION FOR (I) AN ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF THE DEBTORS' BRAND ASSETS; (B) APPROVING CERTAIN BID PROTECTIONS IN CONNECTION WITH THE DEBTORS' ENTRY INTO ANY POTENTIAL STALKING HORSE AGREEMENTS; (C) SCHEDULING THE AUCTION AND SALE HEARING; (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (E) GRANTING RELATED RELIEF; AND (II) AN ORDER OR ORDERS (A) APPROVING THE SALE OF THE DEBTORS' BRAND ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES; AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

I, Lorie Beers, hereby declare under penalty of perjury as follows:

1. I submit this declaration (this "Declaration") in support of the *Motion for (I) an Order (A) Approving Bid Procedures for the Sale of the Debtors' Brand Assets; (B) Approving Certain Bid Protections in Connection with the Debtors' Entry Into Any Potential Stalking Horse Agreements; (C) Scheduling the Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II) An Order or Orders (A) Approving the Sale of the Debtors' Brand Assets Free and Clear of All Encumbrances; and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 316]

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

(the "Sale Motion") and, in particular, the Sale of the Debtors' Brand Assets associated with their Biossance, MenoLabs, and 4U by Tia™ Operating Consumer Brands.[2]

2. I am a Managing Director and the Head of Special Situations at Intrepid Investment Bankers LLC ("Intrepid"), the investment bankers to the above-captioned debtors and debtors in possession (the "Debtors").

3. Except as otherwise indicated, all statements set forth in this Declaration are based upon (a) my personal knowledge of Debtors' operations and finances gleaned during the course of Intrepid's engagement with Debtors, (b) my discussions with Debtors' senior management, other members of the Intrepid team working directly with me or under my supervision, direction or control, and Debtors' other advisors, (c) my review of relevant documents and/or my opinion based upon my experience, (d) work performed by me and my team in connection with the efforts needed to effectuate the sale of certain of the Debtors' assets as contemplated by the Brand Assets Bid Procedures Order, and (e) my experience as an investment banker for over twenty years in selling assets in bankruptcy cases. If I were called upon to testify, I could and would testify competently to the facts set forth herein based on such personal knowledge, discussions, review of documents and/or opinion.

4. My background and the qualifications, as well as those of Intrepid, are set forth in my prior declarations submitted in connection with the *Motion of Debtors for Interim and Final Orders (I) Authorizing the Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 20] and *Application of Debtors for Entry of an Order, Pursuant to Sections 327(a) and 328(a) of*

---

[2] Capitalized terms used but not otherwise defined herein are intended to have the meanings ascribed to them in the Sale Motion.

*the Bankruptcy Code, (I) Authorizing the Retention and Employment of Intrepid Investment Bankers LLC as Investment Banker for Debtors and Debtors in Possession Effective as of the Petition Date; (II) Waiving Certain Information Requirements Imposed by Local Rule 2016-2; and (III) Granting Related Relief* [Docket Nos. 139-C and 262], and I reincorporate those herein.

5. I have over 35 years of professional experience that encompasses the full spectrum of financial restructuring. Prior to joining Intrepid, I was the founder and Group Head of Special Situations Investment Banking at Cowen. I have also held senior banker roles at StormHarbour Securities, Variant Capital Advisors, Seabury Group, KPMG Corporate Finance, and Gordian Group. I began my career as a bankruptcy attorney and was a partner at Kasowitz, Benson, Torres & Friedman. I have participated in dozens of major bankruptcy cases in numerous capacities, including organizing and running marketing processes for section 363 sale processes for the sale of the assets of chapter 11 debtors in possession.

### The Marketing Process

6. I and my team at Intrepid are managing the Debtors' Sale Process. Intrepid was retained by the Debtors in July 2023 to, among other things, assist the Debtors in marketing the Debtors' Brand Assets, including the Debtors' operating consumer brands: Biossance®, JVN™, Rose Inc.™, Pipette®, MenoLabs™, Stripes™, and 4U by Tia™ (collectively, the "Operating Consumer Brands"). To that end, prior to the Petition Date, Intrepid worked closely with the Debtors' management to analyze the Debtors' current financial position, prepare marketing and diligence materials for those assets the Debtors believed should be sold, and populate a digital data room (the "Data Room") for prospective purchasers interested in purchasing all or any portion of the Debtors' Brand Assets.

7.  Since the Petition Date, Intrepid has continued the marketing process seeking to sell the Operating Consumer Brands pursuant to section 363 of the Bankruptcy Code. Pursuant to the procedures established by the Brand Assets Bid Procedures Order, the Debtors established strict procedures to insure the bona fides of any Potential Bidder. To participate in the bidding process and receive due diligence information, including full access to the Data Room and additional non-public information regarding the Debtors (the "Diligence Materials"), parties interested in receiving due diligence information to participate in the bidding process (each, an "Interested Party") delivered or had previously delivered to the Debtors, if determined to be necessary by the Debtors in their sole discretion, the following documents (collectively, the "Preliminary Bid Documents"): (a) an executed confidentiality agreement using the Debtors' form, as may be amended, on terms reasonably acceptable to the Debtors, to the extent not already executed (a "Confidentiality Agreement"); (b) a statement and other factual support demonstrating to the Debtors' satisfaction in the exercise of their reasonable business judgment that the Interested Party has a *bona fide* interest in purchasing all or any portion of the Operating Consumer Brands; and (c) preliminary proof by the Interested Party of its financial capacity to close its proposed Sale Transaction(s), which may include financial statements of, or verified financial commitments obtained by, the Interested Party (or, if the Interested Party is an entity formed for the purpose of acquiring any of the Operating Consumer Brands, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors (including in consultation with their advisors).

8.  As part of this process, Intrepid contacted more than 350 parties, 167 of whom signed Confidentiality Agreements and gained access to the Data Room. For each of the Operating Consumer Brands, Intrepid hosted dozens of virtual and in-person meetings with both the brand

teams and shared services personnel who provide key functions such as freight and logistics, IT, and accounting support. Among other things:

(a)  On September 28, 2023, Intrepid held a virtual management presentation for the Biossance Brand Assets, which was attended live by 12 Interested Parties with numerous others viewing the recording. Throughout the Sale Process, approximately 51 different Interested Parties accessed and performed diligence in the Data Room for the Biossance Brand Assets.

(b)  On September 26, 2023, Intrepid held a virtual management presentation for the 4U by Tia Brand Assets, which was attended live by 8 Interested Parties with numerous others viewing the recording. Throughout the Sale Process, approximately 35 different Interested Parties accessed and performed diligence in the Data Room for the 4U by Tia Brand Assets.

(c)  On October 3, 2023, Intrepid held a virtual management presentation for the MenoLabs Brand Assets, which was attended live by 8 Interested Parties with numerous others viewing the recording. Throughout the Sale Process, approximately 43 different Interested Parties accessed and performed diligence in the Data Room for the MenoLabs Brand Assets.

9.  At the hearing scheduled for December 12, 2023 (the "December 12 Sale Hearing"), the Debtors seek approval of three (3) separate Sales related to the following Operating Consumer Brands: Biossance (the "Biossance Sale"); MenoLabs (the "MenoLabs Sale"); and 4U by Tia™ (the "4U Sale"). The Pipette Brand Assets have already been auctioned and are the subject of a sale agreement that the Debtors will seek to be approved at a separate hearing[3] and the Brand Assets associated with JVN, Stripes, and Rose, Inc. will be auctioned on December 13, 2023.[4]

**The Biossance Sale**

10.  On November 30, 2023, the Debtors conducted a virtual Auction (the "Biossance Auction") for the Biossance Brand Assets. Two (2) Qualified Bidders participated in the Biossance Auction.

---

[3]  *See* Docket No. 857.
[4]  *See* Docket No. 861.

11. At the conclusion of the Biossance Auction, the Debtors, after consultation with the Consultation Parties, declared THG Beauty USA LLC (the "<u>Biossance Successful Bidder</u>") as the Successful Bidder for the Biossance Brand Assets with the highest or otherwise best Bid of $20,000,000.

12. On December 1, 2023, the Debtors filed the *Notice of Filing of Successful Bidders and Auction Results for Sale of Certain Brand Assets* [Docket No. 803], naming the Biossance Successful Bidder as the successful bidder for the Biossance Brand Assets. On December 6, 2023, the Debtors filed the *Notice of Filing of Successful Bidder and Auction Results for Sale of Biossance Brand Assets* [Docket No. 832].

13. To my knowledge, the Biossance Successful Bidder is not an insider of the Debtors and, other than as the Biossance Successful Bidder and as a current customer of the Debtors, has no connection to the Debtors.

14. Based on the foregoing, I believe that no further delay or additional marketing is necessary in order to further test the market for the Biossance Brand Assets. The Biossance Brand Assets have already been extensively marketed and are ready for immediate sale. Under the circumstances, the sale of the Biossance Brand Assets maximizes overall value for such assets and for the Debtors' estates and creditors. The offer from the Biossance Successful Bidder to purchase the Biossance Brand Assets constitutes the highest and best offer for the purchase of the Biossance Brand Assets.

15. The sale process for the Biossance Brand Assets, including the solicitation of Bids and the Auction, was conducted at arm's length and I am not aware of any collusion or interference from any party.

**The MenoLabs Sale**

16. On December 1, 2023, the Debtors conducted a virtual Auction (the "MenoLabs Auction") for the MenoLabs Brand Assets. One (1) Qualified Bidder participated in the MenoLabs Auction.

17. At the conclusion of the MenoLabs Auction, the Debtors, after consultation with the Consultation Parties, declared Dr. Reddy's Laboratories, Inc. (the "MenoLabs Successful Bidder") as the Successful Bidder for the MenoLabs Brand Assets with the highest or otherwise best Bid of $3,000,000.

18. On December 1, 2023, the Debtors filed the *Notice of Filing of Successful Bidders and Auction Results for Sale of Certain Brand Assets* [Docket No. 803], naming the MenoLabs Successful Bidder as the successful bidder for the MenoLabs Brand Assets. On December 5, 2023, the Debtors filed the *Notice of Filing of Successful Bidder and Auction Results for Sale of MenoLabs Brand Assets* [Docket No. 823].

19. To my knowledge, the MenoLabs Successful Bidder is not an insider of the Debtors and, other than as the MenoLabs Successful Bidder, has no connection to the Debtors.

20. Based on the foregoing, I believe that no further delay or additional marketing is necessary in order to further test the market for the MenoLabs Brand Assets. The MenoLabs Brand Assets have already been extensively marketed and are ready for immediate sale. Under the circumstances, the sale of the MenoLabs Brand Assets maximizes overall value for such assets and for the Debtors' estates and creditors. The offer from the MenoLabs Successful Bidder to purchase the MenoLabs Brand Assets constitutes the highest and best offer for the purchase of the MenoLabs Brand Assets.

21. The sale process for the MenoLabs Brand Assets, including the solicitation of Bids and the Auction, was conducted at arm's length and I am not aware of any collusion or interference from any party.

### The 4U Sale

22. On December 1, 2023, the Debtors conducted a virtual Auction (the "4U Auction") for the 4U Brand Assets. One (1) Qualified Bidder participated in the 4U Auction.

23. At the conclusion of the 4U Auction, the Debtors, after consultation with the Consultation Parties, declared Scent Theory Products, LLC (the "4U Successful Bidder") as the Successful Bidder for the 4U Brand Assets with the highest or otherwise best Bid of $600,000.

24. On December 1, 2023, the Debtors filed the *Notice of Filing of Successful Bidders and Auction Results for Sale of Certain Brand Assets* [Docket No. 803], naming the 4U Successful Bidder as the successful bidder for the 4U Brand Assets. On December 6, 2023, the Debtors filed the *Notice of Filing of Successful Bidder and Auction Results for Sale of 4U Brand Assets* [Docket No. 824].

25. To my knowledge, the 4U Successful Bidder is not an insider of the Debtors and, other than as the 4U Successful Bidder, has no connection to the Debtors.

26. Based on the foregoing, I believe that no further delay or additional marketing is necessary in order to further test the market for the 4U Brand Assets. The 4U Brand Assets have already been extensively marketed and are ready for immediate sale. Under the circumstances, the sale of the 4U Brand Assets maximizes overall value for such assets and for the Debtors' estates and creditors. The offer from the 4U Successful Bidder to purchase the 4U Brand Assets constitutes the highest and best offer for the purchase of the 4U Brand Assets.

27. The sale process for the 4U Brand Assets, including the solicitation of Bids and the Auction, was conducted at arm's length and I am not aware of any collusion or interference from any party.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: December 11, 2023      /s/ Lorie Beers
New York, New York     Lorie Beers