**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*,[1] | Case No. 23-11131 (TMH) |
| Debtors. | (Jointly Administered) |
| | Related Dkt. No. 316, 553 and 803 |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF LEXON INSURANCE COMPANY TO THE DEBTORS' MOTION FOR AN ORDER OR ORDERS (A) APPROVING THE SALE OF THE DEBTORS' BRAND ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES; AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Lexon Insurance Company ("Lexon") by and through its undersigned counsel, Harris Beach PLLC and The Powell Firm, LLC, submit this limited objection ("Limited Objection") to the Debtors' *Motion for (II) An Order or Orders (A) Approving the Sale of the Debtors' Brand Assets Free and Clear of All Encumbrances; and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases* (the "Sale Motion") [Dkt. No. 316] based on the *Notice of Filing of Successful Bidders and Auction Results for Sale of Certain Brand Assets* ("Notice of Auction Results") [Dkt. No. 803], and in support thereof respectfully states as follows:

## BACKGROUND

1. On August 9 and August 21, 2023 (as applicable, the "Petition Date"), the Debtors commenced these Chapter 11 Cases[2] by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.

[2] Capitalized terms not defined herein are defined in the Disclosure Statement Motion.

**Error! Unknown document property name.**

2. The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On August 27, 2023, the U.S. Trustee appointed the Committee.

4. The Debtors were founded in 2003 to create a more stable supply of key anti-malarial treatment. Through the Debtors' science, artemisinin is now consistently available to treat malaria. Using the same technological innovations that produced artemisinin, the Debtors have become a leading manufacturer of ingredients made with synthetic biology. The Debtors provide sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products.

5. In addition, the Debtors operate a family of consumer brands that utilize the Company's ingredients to meet the growing demand for sustainable, effective, and accessible products, including Biossance® (clean beauty skincare), JVN™ (haircare), Rose Inc.™ (clean color cosmetics), Pipette® (clean baby skincare), OLIKA™ (clean wellness), MenoLabs™ (healthy living and menopause wellness), Stripes™ (menopausal wellness), and 4U by Tia™ (a new clean haircare line).

6. The Debtors have obtained at least two (2) surety bonds (the "Bonds") from Lexon listing the Department of Homeland Security U.S. Customs and Border Protection (the "Obligee") as Obligee under the Bonds with a total penal sum of $800,000.00. Copies of the Bonds are attached hereto as **Exhibit A**.

7. Lexon is also the beneficiary to two (2) Irrevocable Letters of Credit Nos. NUSGS044123 and NUSCGS041862, which serve as collateral for the Bonds in the total sum of $800,000.00 (the "Letters of Credit"). The issuing bank of the Letters of Credit is JP Morgan Chase Bank, N.A.

**Error! Unknown document property name.**

8. The surety relationship involves three (3) parties: (a) the principal, who is the primary obligor – Debtors; (b) the obligee – the party to whom the principal and surety owe the duty – the Obligee; and (c) the surety – who is the secondary obligator – Lexon.

9. Notably, the principal retains the primary duty to perform its obligations under the bonds. The principal cannot simply hand over its obligations for the surety to perform.

10. Based on the above, Lexon timely submitted proofs of claim in the amount of $800,000 (the "Proofs of Claim") representing the penal sum of the Bonds [Claim Nos. 538 and 540]. Lexon expressly reserved its right to file amended Proofs of Claim while it reviewed its books and records to determine if it paid any claims under the Bonds, incurred any loss adjustment expenses, and if there were any unpaid premiums.

11. Notably, there have been numerous claims made under the Bonds and Lexon anticipates that additional claims will be made in the future (the "Bond Claims"). Lexon is currently working with the Debtors to determine how/when these Bond Claims will be paid and/or cured. A spreadsheet of the Bond Claims made thus far is attached hereto as **Exhibit B**.

**The Sale Process**

12. On September 18, 2023, the Debtors filed the *Motion for (I) An Order (A) Approving Bid Procedures for the Sale of the Debtors' Brand Assets; (B) Approving Certain Bid Protections in Connection with the Debtors' Entry into any Potential Stalking Horse Agreements; (C) Scheduling the Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II) an Order or Orders (A) Approving the Sale of the Debtors' Brand Assets Free and Clear of All Encumbrances; and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases* (the "Bid Procedures Motion") [Dkt. No. 316].

13. On October 16, 2023, this Court entered an *Order (A) Approving Bid Procedures for the Sale of the Debtors' Brand Assets; (B) Approving Certain Bid Protections in Connection with the Debtors' Entry into any Potential Stalking Horse Agreements; (C) Scheduling the Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief* (the "Bid Procedures Order") [Dkt. No. 553]. The Bid Procedures Order set December 5, 2023 at 5:00 p.m. ET as the Sale Objection Deadline[3].

14. On December 1, 2023, the Debtors filed the Notice of Auction Results [Dkt. No. 803]. Pursuant to the Notice of Auction Results: (a) THG Beauty[4] was the successful bidder for the Biossance Brand Assets; (b) Dr. Reddy's was the successful bidder for the MenoLabs Brand Assets; (c) HRB was the successful bidder for the Pipette Brand Assets; and (d) Scent Theory (THG Beauty, Dr. Reddy's, HRB and Scent Theory, collectively, the "Successful Bidders") was the successful bidder for the 4U Brand Assets (collectively, the "Sales").

15. Also on December 1, 2023, the Debtors filed the *First Supplemental Notice of Potential Assumption, Assumption and Assignment, or Transfer of Executory Contracts and Unexpired Leases* (the "First Supplemental Assumption Notice") [Dkt. No. 807]. Neither the Lexon Bonds nor the Letters of Credit are listed in the First Supplemental Assumption Notice

16. Recently, on December 5, 6 and 8, 2023, the Debtors filed the Biossance APA with proposed Biossance Sale Order, 4U APA with proposed 4U Sale Order, MenoLabs APA with proposed MenoLabs Sale Order and Pipette APA with Pipette Sale Order (collectively, the "APAs and Proposed Sale Orders") [Dkt. Nos. 823, 824, 832 and 857[5]].

---

[3] As defined in the Bid Procedures Order.
[4] Capitalized terms not defined herein are defined in the Notice of Auction Results.
[5] Capitalized terms in this paragraph are defined in Dkt. Nos. 823, 824, 832 and/or 857.

**The Disclosure Statement and Plan**

17. On October 13, 2023, the Debtors filed the Disclosure Statement Motion, *Disclosure Statement with Respect to Joint Chapter 11 plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* ("Disclosure Statement") [Dkt. No. 524] and *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* ("Plan") [Dkt. No. 523].

18. The Plan is a plan of reorganization which is intended to, among other things, (a) preserve the Debtors' Technology Access[6] businesses (comprising revenue from ingredient product sales, R&D collaboration programs, and technology licensing) as a going concern, (b) implement a partial debt-to-equity conversion that will result in the DIP Lender and the Foris Prepetition Lenders holding the new Interests of the reorganized company, (c) distribute in tranches to various Classes of creditors the proceeds of the sale of the Debtors' Consumer Brands Businesses, made available by the DIP Lender and the Foris Prepetition Lenders and (d) establish, in connection with the releases provided for in the Plan, an Excluded Party Litigation Trust for the benefit of holders of Direct Claims and Reorganized Amyris, to hold and distribute certain funding and the proceeds from the Direct Claim Recovery Pool.

19. The hearing on the Disclosure Statement Motion is currently scheduled for December 12, 2023.

20. Notably, nowhere in the Disclosure Statement or Plan is there any reference to Lexon or the Bonds.

## ARGUMENT

21. While Lexon does not necessarily object to the Sales, it is unclear how the Lexon Bonds and Letters of Credit are to be treated pursuant to the terms of any of the Sales since there are no references to the Lexon Bonds in the APAs and Proposed Sale Orders. Accordingly, Lexon cannot

---

[6] Capitalized terms not otherwise defined herein in paragraph 18 are defined in the Plan.

assess the potential impact, if any, the Sales have in relation to the Lexon Bonds and Letters of Credit. Therefore, Lexon submits this Limited Objection to the extent any of the Sales contemplate transferring the Lexon Bonds, or seeks relief that is intended to impair and/or modify Lexon's rights and remedies under the Lexon Bonds and/or the Letters of Credit. Lastly, Lexon objects to the extent any of the Sales impair any of Lexon's rights and defenses, all of which are expressly reserved, including any rights of setoff and recoupment, under the Lexon Bonds and Letters of Credit.

22. While Lexon does not believe the Debtors are intending to assume and assign the Lexon Bonds or the Letters of credit since they are not listed in the First Supplemental Assumption Notice, to the extent the Debtors are attempting to treat the Lexon Bonds as executory contracts that can be assumed and/or assigned to the Successful Bidders of the respective Sales, the Debtors cannot do so.

23. The Lexon Bonds cannot be transferred, sold, assumed, and/or assigned because they are financial accommodations. *See In re James River Coal Co.*, 2006 WL 2548456 (Bankr. M.D. Tenn. 2006); *In re All Phase Electrical Contracting, Inc.*, 409 B.R. 272, 275 (Bankr. D. Conn. 2009); *see also* 11 U.S.C. §§ 365(c)(2) and 365(e)(2)(B). As the Lexon Bonds are specific to the individual Debtor named as principal on the Lexon Bonds and are financial accommodations, they cannot be transferred to the extent any such transfer may be contemplated under the Sales and/or the First Supplemental Assumption Notice.

24. Although the Bankruptcy Code does not define "financial accommodation," courts have held that the obligation to pay money on the obligation of another, such as the Lexon Bonds in this case, is a financial accommodation. *See, e.g., In re Adana Mortg. Bankers, Inc.*, 12 B.R. 977, 987 (Bankr. N.D. Ga. 1980). As to matters of financial accommodation, prior to issuing bonds, a surety's underwriters go through a careful and thorough investigation of the financial status of the entities

6

seeking the bonds. *See generally, In re Wegner Farms Co.*, 49 B.R. 440, 444 (Bankr. N.D. Iowa 1985) ("[T]he issuance of a bond is intimately connected to debtor's financial integrity…").

25. Section 365(c)(2) and Section 365(e)(2)(B) of the Bankruptcy Code prohibits the assumption of financial accommodations, such as the Lexon Bonds, by a debtor in bankruptcy because they represent obligations to pay money based on the obligations of another. *See In re Thomas B. Hamilton Corp.*, 969 F.2d 1013, 1019 (11th Cir. 1992); *In re Wegner Farms*, 49 B.R. 440, 444 (Bankr. N.D. Iowa 1985) (in relation to surety bonds as financial accommodations only); *In re Edwards Mobile Home Sales, Inc.*, 119 B.R. 857, 859 (Bankr. M.D. Fla. 1990).

26. As a result, the Lexon Bonds cannot simply be transferred without the express consent of Lexon. A transfer to any entity, including the Successful Bidders, does not create any rights to acquire or assume the Lexon Bonds without the consent of Lexon. To the extent the Debtors are proposing or considering assuming and/or assigning the Lexon Bonds, it would violate 11 U.S.C. § 365(c)(2).

27. Furthermore, to the extent the Debtors are attempting to transfer or assign the Letters of Credit to any of the Successful Bidders, the Debtors also cannot do so because the Letters of Credit are not property of the Debtors' bankruptcy estates. "It is well established that a letter of credit and the proceeds therefrom are not property of the debtor's estate under 11 U.S.C. § 541." *S-Tran Holdings, Inc. v. Protective Ins. Co. (In re S-Tran Holdings, Inc.)*, 414 B.R. 28, 33-34 (Bankr. D. 2009) (quoting *Kellog v. Blue Quail Energy, Inc. (Matter of Compton Corp.)*, 831 F.2d 586, 589 (5th Cir. 1987) ("When the issuer honors a proper draft under a letter of credit, it does so from its own assets and not from the assets of its customer who caused the letter of credit to be issued. As a result, the bankruptcy trustee is not entitled to enjoin a post petition payment of funds under a letter of credit from the issuer to the beneficiary, because such a payment is not a transfer of debtor's property.")).

**Error! Unknown document property name.**

28. Based on the above, Lexon files this Limited Objection to (a) put the Debtors, Successful Bidders and any other parties in interest on notice that the Lexon Bonds cannot be assumed and assigned, (b) reserve all Lexon's rights, remedies and defenses under, in, and to the Lexon Bonds and Letters of Credit, including any right of setoff and recoupment with respect to the claims of Lexon or the Obligee, and (c) seek clarity from the Debtors as to what is being transferred pursuant to the Sales.

29. Lexon is currently working with the Debtors to include language in the sale orders for the various Sales to resolve this Limited Objection. Counsel for Lexon has provided Debtors' counsel with the below proposed language to be included in any sale order related to the Sales (the "Proposed Language"). If the Proposed Language is included in the sale orders related to the Sales, or any other language mutually agreed to between Lexon and the relevant parties, then Lexon will consider this Limited Objection resolved:

<u>Surety Bond Obligations</u>:

Lexon Insurance Company ("Lexon") has issued certain commercial surety bonds on behalf of the Debtors and/or their affiliates, (collectively, the "**Existing Surety Bonds**" and each individually, an "**Existing Surety Bond**").

Nothing in this Order, the Purchase Agreement, or otherwise shall (i) release, discharge, preclude or enjoin any obligation of the Debtors to Lexon under the Existing Surety Bonds and obligations under the common law of suretyship; (ii) affect any letters of credit or proceeds therefrom issued to Lexon as security for the Debtors' obligations under the Existing Surety Bonds (collectively, the "**Existing Surety Collateral**"); (iii) affect any claim of Lexon against any Debtor or third party; (iv) bar, impair, prevent or otherwise limit Lexon from exercising its valid rights under or with respect to any of the Existing Surety Collateral, or any related indemnity agreements, applicable law, or the common law of suretyship; (v) alter, limit, expand, modify, release, waive or prejudice any rights, remedies and/or defenses of Lexon under any Existing Surety Bonds relating to any assets, obligations or liabilities to be transferred and/or sold to the Purchaser; (vi) authorize or permit the assignment or assumption of any Existing Surety Bonds or Existing Surety Collateral or other agreements of the Debtors or any non-Debtor with Lexon (collectively, the "**Surety Agreements**"), (vii) alter, limit, expand, modify, prejudice, release or waive any rights of Lexon under the Surety Agreements; (viii) alter, limit, expand, modify, prejudice, waive or release any rights of Lexon in any and all Existing Surety Collateral; (ix) alter, limit, expand, modify, prejudice, waive or release any rights of Lexon in connection with any of the Debtors' Chapter 11 Cases or any case

8

**Error! Unknown document property name.**

under Title 11 of the United States Code; or (x) be deemed to provide Lexon's consent to the involuntary substitution of any principal under any Existing Surety Bond.

Nothing in this Order shall be interpreted to alter, diminish or enlarge the rights or obligations of Lexon in regard to state and federal agencies, third parties or otherwise under any surety bonds, any indemnity agreements or applicable law nor shall any of the foregoing be deemed to enjoin Lexon from asserting any rights, claims or defenses, in regard to or against any state and federal agencies, third parties including, without limitation, any of Lexon's indemnitors, insurers, or otherwise under any surety bonds, any indemnity agreements, or applicable law.

## **RESERVATION OF RIGHTS**

20. Nothing herein shall be considered a waiver of any rights or claims that Lexon might have against the Debtors and any indemnitors. Lexon reserves the right to amend and supplement this Limited Objection and/or join in any other statements and/or objections related to the relief requested by the Debtors. The submission of this Limited Objection by Lexon is not intended as, and shall not be construed as:

  a. Lexon's admission of any liability or waiver of any defenses or limitations of any rights of Lexon with respect to any claims against one or more of the Lexon Bonds;

  b. Lexon's waiver or release of any rights to exoneration it may have against any one with respect to its obligations pursuant to the Lexon Bonds;

  c. Lexon's waiver or release of its right to be subrogated to the rights of one or more parties paid pursuant to the Lexon Bonds;

  d. An election of remedies; or

  e. Consent to the determination of Debtors' liability to Lexon by a particular Court, including, without limitations, the Bankruptcy Court.

**Error! Unknown document property name.**

## **CONCLUSION**

Based on the foregoing, Lexon respectfully requests the Court sustain the Limited Objection and enter the Proposed Language in the sale orders related to the Sales.

Dated: December 11, 2023                                      Respectfully submitted,

                                                                         */s/ Jason C. Powell*
                                                                         Jason C. Powell, Esq. (No. 3768)
                                                                         THE POWELL FIRM, LLC
                                                                         1813 N. Franklin Street
                                                                         P.O. Box 289
                                                                         Wilmington, DE 19899
                                                                         (302) 650-1572
                                                                         jpowell@delawarefirm.com

                                                                         -and-
                                                                         */s/ Brian D. Roy*
                                                                         Lee E. Woodard, Esq.
                                                                         Brian D. Roy, Esq.
                                                                         HARRIS BEACH PLLC
                                                                         333 W. Washington Street, Suite 200
                                                                         Syracuse, New York 13202
                                                                         Telephone: (315) 423-7100
                                                                         Email:  bkemail@harrisbeach.com
                                                                                  broy@harrisbeach.com

**Error! Unknown document property name.**