## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO DEBTORS' MOTION FOR AN ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) SCHEDULING CONFIRMATION HEARING; (III) APPROVING FORM AND MANNER OF NOTICE OF CONFIRMATION HEARING; (IV) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PLAN, INCLUDING (A) APPROVING FORM AND CONTENT OF SOLICITATION MATERIALS; (B) ESTABLISHING RECORD DATE AND APPROVING PROCEDURES FOR DISTRIBUTION OF SOLICITATION MATERIALS; (C) APPROVING FORMS OF BALLOTS; (D) ESTABLISHING VOTING DEADLINE FOR RECEIPT OF BALLOTS AND (E) APPROVING PROCEDURES FOR VOTE TABULATIONS; (V) APPROVING FORM AND MANNER OF NOTICE OF PLAN RELEASES; (VI) ESTABLISHING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO CONFIRMATION OF PLAN; AND (VII) GRANTING RELATED RELIEF**

Amyris, Inc. ("Amyris") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned Chapter 11 Cases hereby file this omnibus reply (the "Reply") (i) in support of the *Motion for an Order (I) Approving the Disclosure Statement; (II) Scheduling Confirmation Hearing; (III) Approving Form and Manner of Notice of Confirmation Hearing; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (A) Approving Form and Content of Solicitation Materials; (B) Establishing Record Date and Approving Procedures for Distribution of Solicitation Materials;(C) Approving*

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

*Forms of Ballots; (D) Establishing Voting Deadline for Receipt of Ballots and (E) Approving Procedures for Vote Tabulations; (V) Approving Form and Manner of Notice of Plan Releases; (VI) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plan; and (VII) Granting Related Relief* [D.I. 525] (the "Motion"), and (ii) in response to (a) the *Objection to the Disclosure Statement* [D.I. 730] (the "Lavvan Objection") filed by Lavvan, Inc. ("Lavvan"), (b) the *Objection and Reservation of Rights* [D.I. 860] (the "Cross-Holder Objection") filed by the ad hoc group (the "Ad Hoc Cross-Holder Group") of certain holders of notes or other indebtedness issued under the Indenture dated as of November 15, 2021 relating to the 1.50% Convertible Senior Notes Due 2026 (the "Convertible Notes"), (c) the *United States Trustee's Objection to Disclosure Statement* [D.I. 742] (the "UST Objection") filed by the United States Trustee (the "UST"), and (d) the *Objection and Reservation of Rights of Lexon Insurance Company* [D.I. 728] (the "Lexon Objection" and together with the Lavvan Objection, the Cross-Holder Objection, the UST Objection, and the Lexon Objection, the "Objections") filed by Lexon Insurance Company ("Lexon" and together with Lavvan, the Ad Hoc Cross-Holder Group and the UST, the "Objectors").[2] In further support of the Motion, the Debtors respectfully represent as follows:

# I.

## PRELIMINARY STATEMENT

The Debtors have reached out and worked with their key constituents and the Objectors to revise the Disclosure Statement to address certain points raised by the Objectors. That effort resulted in the resolution of most, but not all, of the formal and informal objections to the Disclosure Statement. The remaining objections should be overruled and the Modified Disclosure

---

[2] A capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the Motion, the Amended Plan, or the Amended Disclosure Statement, as applicable.

Statement should be approved.  Attached hereto as **Exhibit A** is a redline of proposed additions to the Disclosure Statement in response to the Objections (the "Modified Disclosure Statement" or "Amended Disclosure Statement")[3].  In addition, attached hereto as **Exhibit B** is a summary chart reflecting certain changes to the Disclosure Statement in specific response to the Lavvan Objection and Cross-Holder Objection.

As is set forth below, the proposed modifications to the Disclosure Statement provide additional information to enable creditors to make an informed decision whether to accept or reject the Plan, or have been made to consensually and reasonably resolve certain objections in the Estates' interests.  The proposed Disclosure Statement contains extensive disclosure about the Debtors, the Bankruptcy Cases and the Plan.  For the reasons set forth below, the specific issues raised in the  Objections either have been addressed with proposed additional language or should be overruled.

## II.

## RESPONSE TO LAVVAN OBJECTION

1. By its Objection, Lavvan asserts that (i) the Disclosure Statement allegedly fails to provide specific details of the Plan treatment of Lavvan's putative secured claim, in a purported attempt by the Debtors to hide the ball that the Plan does not propose to pay anything to Lavvan; and (ii) because of such Plan treatment, the Plan allegedly violates the absolute priority rule.

---

[3] Attached as **Exhibit C** is a cumulative redline showing all of the changes to the Disclosure Statement since the initial filing on October 12, 2023.

When Lavvan filed its Objection, the prior Plan provided for payments over time to Lavvan and did not specify the interest rate or term for the repayment.

2.      However, Lavvan's Objection has been rendered moot by the Debtors' First Amended Plan [D.I. 809] (as may be amended or modified, the "<u>Plan</u>" or "<u>Amended Plan</u>"). Specifically, the Amended Plan leaves Lavvan's putative secured claim *unimpaired*:

> *Treatment*: On the Effective Date, in full and complete satisfaction of the Lavvan Secured Claim, Lavvan will retain whatever Lien it may have on the Debtors' assets solely to the extent it secures an Allowed Lavvan Secured Claim, and after such time as the Foris Prepetition Secured Lenders and/or the DIP Lender, as applicable, the indefeasible payment in cash in full of the obligations owing under the (i) Foris 2018 Loan, (ii) the DIP Facility Claims, and (iii) such other Foris Prepetition Secured Claims, or other Foris claims, as are determined by the Bankruptcy Court are required under the Lavvan Documents to be indefeasibly paid in cash in full prior to the Allowed Lavvan Secured Claim being paid, thereafter Lavvan will receive payment in cash in full of the Allowed Lavvan Secured Claim, without interest, fees, costs, penalty or premium, at any time….

Amended Plan, Sec. III.B.6.  In short, pursuant to the Amended Plan, any Allowed Secured Claim of Lavvan will be paid in cash in full after only after applicable senior debt is paid in cash in full as provided for in the Lavvan Documents.  The Lavvan Documents, including the subordination and marshalling provisions, have been determined by this Court to be in effect.  Unimpaired by and deemed to accept the Plan, Lavvan has no cause, or standing, to complain about alleged inadequate disclosures.  Nonetheless, to expeditiously resolve any disclosure matters, the Debtors are amenable to supplementing the Disclosure Statement as set forth in **Exhibit B**.

3.      Importantly, the matters of the validity, amount, extent and priority of security interest, subordinated nature, and allowance of the Lavvan Secured Claim will be adjudicated as part of the claim allowance process and other bankruptcy litigation pending, including (i) Lavvan's appeal of the October 30, 2023 bench ruling by the Bankruptcy Court, by which the Final DIP Order was granted (Civ. Action No. 23-cv-01239-MN, Bankruptcy BAP No. 23-00062) ("<u>DIP

Order Appeal"); (ii) Lavvan's *Challenge Period Adversary Complaint to Challenge Enforceability, Priority, and Extent of Security Interests and Liens, and for Other Relief* against Foris, Adv. Proc. 23-50751 ("Lavvan Challenge Suit"); (iii) Debtors' objection to Lavvan's proof of claim numbers 663 and 666 [D.I. 839] ("Lavvan Claim Objection"); and (iv) Debtors' motion to estimate under section 502(c) [D.I. 840] ("Lavvan Estimation Motion") Lavvan's asserted intellectual property claims (patent infringement and misappropriation of trade secrets) against the Debtors.  As the Debtors have asserted in certain of the foregoing Bankruptcy Court proceedings, based on the November 21, 2023 Arbitration Ruling (defined below) against Lavvan, Lavvan has at most a $820,458 claim for a Cost Award for Lavvan in the arbitration.

4. The Lavvan Objection should be overruled to the extent it raises disclosure objections in light of the Amended Plan and accompanying amended Disclosure Statement.  To the extent the Objection raises any plan issues (including a purported violation of the absolute priority rule and allegedly impermissible releases, matters referred to by Lavvan without elaboration), such matters should be resolved in due course as part of the Plan confirmation process.

**A.     Lavvan Background**

    **1.     Debtors' Relationship with Lavvan and Relevant Developments**

5. Prepetition, Amyris and Lavvan entered into the Research, Collaboration and License Agreement dated March 18, 2019 (the "RCL Agreement"), pursuant to which the parties agreed to jointly develop biosynthetically produced cannabinoids.  Lavvan alleged that Amyris breached the RCL Agreement by seeking to produce certain cannabinoids independently, and on August 23, 2020, Lavvan brought claims in arbitration against Amyris in the ICC International Court of Arbitration (the "ICC") (Case No. 25998/PDP) (the "Arbitration"), seeking close to $900

million in various contract and tort claims in relation to the RCL Agreement (the "Arbitration Claims").

6. On September 10, 2020, as a parallel proceeding, Lavvan filed a complaint against Amyris in the U.S. District Court for the Southern District of New York ("SDNY") (Case 1:20-cv-07386-JPO) in which Lavvan asserted claims based upon federal statutes regarding patent infringement and misappropriation of trade secrets (the "SDNY Claims"). The SDNY Claims are premised on the same alleged facts and circumstances that support the Arbitration Claims and they seek damages for the same alleged harm.

7. Recently, on November 22, 2023, the ICC issued a final decision in the Arbitration (the "Arbitration Ruling"), in which it found, among other things, that Amyris had breached both the RCL Agreement and a fiduciary duty owed to Lavvan under New York law.[4] As a result of such breach, the ICC, among other things, (i) ordered Amyris to disgorge to Lavvan all profits earned from the sale, if any, of Collaboration Cannabinoids (as defined in the RCL Agreement), and (ii) ordered Amyris to pay to Lavvan $820,458.67 for the costs of the Arbitration (the "Cost Award"). Because Amyris does not believe it has any profits that would be subject to disgorgement, Amyris believes its financial liability to Lavvan is limited to $820,458.67.

8. On November 15, 2023, Lavvan filed two proofs of claim (together, the "Proofs of Claim") against Amyris, each as a secured claim in an unliquidated amount. The Proofs of Claim

---

[4] On September 11, 2023, the Court entered the *Order Granted Limited Modification of Automatic Stay to Permit Issuance of an Arbitration Award* [Docket No. 230], pursuant to which the Debtors consented to the lifting of the automatic stay to allow the issuance of a decision in the Lavvan Arbitration.

are not supported by any evidence, but describe the Arbitration Claims and the SDNY Claims, respectively.

9. The issue of the scope, extent and enforceability of the prepetition Subordination Agreement between Lavvan and Foris was fully adjudicated in the context of the approval of the DIP Order. Lavvan seeks to relitigate those issues by the DIP Order Appeal and related proceedings.[5] By the Lavvan Estimation Motion, the Debtors have sought to estimate the allowed amount of the SDNY Claims at zero dollars. By the Lavvan Claim Objection, the Debtors have objected to the Proofs of Claim, among other reasons, to the extent they purport to evidence a debt exceeding the amount of the Cost Award.

**B.      The Objection Has Been Mooted by the Amended Plan
         and Amended Disclosure Statement**

10. The primary purpose of a disclosure statement is to provide creditors and interest holders affected by a proposed plan with all material information needed to make an informed decision whether to vote for the plan.[6] As explained above, Lavvan's Objection has been mooted by the Debtors' Amended Plan and Amended Disclosure Statement. Under the Amended Plan,

---

[5] Until "Payment in Full" of the "Obligations" to Foris under the Foris LSA has occurred, the Subordination Agreement remains effective. For purposes of the Subordination Agreement (at (¶ 1), Payment in Full requires that the Obligations have been "fully and indefeasibly paid in full in cash." The fundamental flaw in Lavvan's challenge to the enforceability of the Subordination Agreement is that its challenge is premised on an attempt to impose restrictions on amendment of the GACP LSA or Foris LSA and on the ability to incur future indebtedness under that agreement for which it did not bargain and which are nowhere to be found in the Subordination Agreement. Lavvan agreed to subordinate to all "Obligations" under the "Senior Agreement." The Subordination Agreement defined "Obligations" broadly to include all "present **and future indebtedness** of Borrower that may be incurred from time to time." Subordination Agreement § 1 (emphasis added). And the "Senior Agreement" means "that certain Loan and Security Agreement dated as of June 29, 2028 [*i.e.*, the GACP LSA] (as the same **has been and may be amended** from time to time)." Subordination Agreement, Recital A (emphasis added). Lavvan agreed to a Subordination Agreement that imposed no restrictions on the ability of the parties to amend it nor any limit on the amount of senior debt that could be incurred under that agreement. Lavvan has thus agreed that it would subordinate to any Obligations under any amendments to the GACP LSA or the Foris LSA. *See* Joint Reply of the Debtors, Euagore, LLC, and the Foris Prepetition Secured Lenders to Opening Brief of Lavvan, Inc.[D.I. 433], pp. 2-11.

[6] *See, e.g.*, *Century Glove, Inc. v. First Amer. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988) (stating that section 1125 "seeks to guarantee a minimum amount of information to the creditor asked for its vote").

Lavvan's putative secured claim will be unimpaired (Amended Plan, Sec. III.B.6). Any Allowed Secured Claim of Lavvan will be paid in cash in full only after applicable senior debt is paid in cash in full as provided for in the Lavvan Documents as approved by the Bankruptcy Court. Unimpaired and deemed to accept the Plan, Lavvan has no basis or standing to object to the purported inadequate disclosures. Even if Lavvan were entitled to vote on the Plan, it does not need any additional information to make that voting decision. Lavvan has made it clear that it will oppose the Plan - no amount of additional disclosure will change that position. The Lavvan Objection should be viewed for what it is: An improper, baseless attempt by Lavvan to gain leverage or engage in gamesmanship in its disputes with the Debtors, as well as Foris.

11. The Debtors have reached out to counsel for Lavvan on several occasions and asked if there is proposed suggested language that Lavvan would like to include in the Disclosure Statement. Lavvan has declined to do so, stating that their objection is "not the type that you can put the onus on us to provide language to you." Nonetheless, the Debtors have included additional disclosure in response to the Lavvan Objection (see **Exhibit B**) and if there is further language or reservations of rights that Lavvan would like for the Debtors to include setting forth their position, the Debtors are willing to review any such language and include it as appropriate.

C. **Confirmation and Claim Allowance Issues Should Not Be Addressed at This Stage**

12. To the extent the Lavvan Objection raises Plan issues (including a purported violation of the absolute priority rule and allegedly impermissible releases – matters passingly referred to by Lavvan) and claim allowance issues (including subordination issues to the extent not already resolved by the law of the case), all such matters should be resolved in due course as part of the Plan confirmation process and claims related proceedings already pending or to be shortly filed by the Debtors. *See, e.g., In re Foxwood Hills Prop. Owners Ass'n*, 2021 Bankr.

LEXIS 1626, at *17 (Bankr. D.S.C. June 1, 2021) (" 'At disclosure statement hearings, courts should refuse to hear issues that are confirmation rather than disclosure issues, such as classification of claims, feasibility, whether the plan has been proposed in good faith, or whether a plan is fair and equitable.' ") (quoting *In re American Capital Equip., LLC*, 688 F.3d 145, 153–54 (3d Cir. 2012) ("Ordinarily, confirmation issues are reserved for the confirmation hearing, and not addressed at the disclosure statement stage.")).

### III.

### RESPONSE TO THE CROSS-HOLDER OBJECTION

13. The Ad Hoc Cross-Holder Group raises three issues in its Objection, none of which prohibit granting of the Debtors' Motion and approval of the Disclosure Statement.

14. **Alleged Inadequate Settlement/Investigation Disclosures:** The Ad Hoc Cross-Holder Group argues that additional information needs to be added to the Disclosure Statement relating to the claims subject to release by virtue of the Third-Party Release, the purported "secret investigations" of such claims allegedly being conducted but not disclosed to creditors and parties in interest, the arms' length settlement among the key parties embodied in the PSA and the Plan, and related matters. Notwithstanding the Ad Hoc Cross-Holder Group's insinuations, Mr. Freddie Reiss conducted an extensive, independent analysis so that the Debtors would be in a position to negotiate with creditors over the terms of a consensual plan. The Independent Director Report is an attorney-client work product and contains attorney client communications. It was shared with the Creditors' Committee in late October 2023 under a common interest agreement. The Creditors' Committee and the Ad Hoc Group undertook their own, extensive investigations including review of over 200,000 pages of documents produced by the Debtors and Foris and approximately 20 hours of testimony from two board members and the Debtors' former Chief Executive Officer, all as set forth in detail in the Disclosure Statement. The current Disclosure Statement includes

discussion of the Independent Director Report, the Creditors' Committee Investigation and the Ad Hoc Group Investigation. Nonetheless, in response to the Cross-Holder Objection, the Debtors have amended the Disclosure Statement to provide further additional disclosure regarding the Creditors' Committee and Ad Hoc Group investigations as well as the legal bases for the settlements contained in the Plan (see **Exhibit B**).

15. **Third-Party Release:** The Ad Hoc Cross-Holder Group objects to the Third Party Releases in the Plan. The Debtors will provide full argument and evidence as necessary in support of the Third-Party Releases in the first instance on a non-consensual basis, or if denied on such basis, alternatively, on a consensual basis. Of course, as a general matter, Third-Party Release related objections should be addressed at Plan confirmation, not the Disclosure Statement stage.[7]

16. With respect to the non-consensual Third-Party Release, the Debtors will establish that the *Master Mortgage* factors are satisfied for the non-Debtor Released Parties. In *Master Mortgage*, the court discussed the following factors, the presence of which may support approval of a release:

> (1) There is an identity of interest between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate.
>
> (2) The non-debtor has contributed substantial assets to the reorganization.
>
> (3) The injunction is essential to reorganization. Without it, there is little likelihood of success.
>
> (4) A substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment.
>
> (5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

---

[7] *See, e.g., In re Foxwood Hills Prop. Owners Ass'n.*, 2021 Bankr. LEXIS 1626, at *17 (Bankr. D.S.C. June 1, 2021) (quoting *In re American Capital Equip., LLC*, 688 F.3d 145, 153–54 (3d Cir. 2012) ("Ordinarily, confirmation issues are reserved for the confirmation hearing, and not addressed at the disclosure statement stage.")).

*In re Master Mortgage Inv. Fund*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994). *See also, e.g., In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343-LSS, 2022 WL 3030138 (Bankr. D. Del. July 29, 2022); *In re Millennium Lab Holdings*, 575 B.R. 252, 272 (Bankr. D. Del. 2017); *In re Blitz U.S.A., Inc.*, 2014 Bankr. LEXIS 2461, *15-16 (Bankr. D. Del. Jan. 30, 2014). As set forth in **Exhibit B**, the Debtors have added further disclosures regarding the standards for approval of the Third-Party Release Settlement embodied in the Plan.

17. **Valuation:** Finally, the Ad Hoc Cross-Holder Group asserts there is inadequate disclosure regarding the market testing and/or valuation of the Debtors' Other Assets around which the Debtors anticipate reorganizing. The Debtors have engaged a valuation expert and, as part of Plan confirmation, will present a valuation and other evidence supporting the Plan and its provisions. Nevertheless, the Debtors are amenable to including additional language in the Disclosure Statement regarding the valuation process as set forth on **Exhibit B**.

## IV.

## RESPONSE TO UST OBJECTION

18. Since the filing of the UST's Objection, the Debtors have reached agreement with the Creditors' Committee and the Ad Hoc Noteholders Group on the terms of plan treatment and the Debtors have revised the Plan and the Disclosure Statement including to have additional information regarding the Third-Party Release Settlement as requested by the Creditors' Committee. The Debtors have spoken with the UST regarding issues raised by the UST pertaining to the adequacy of the information contained in the Disclosure Statement. The UST has advised that it intends to pursue its objection at the disclosure statement regarding the non-consensual third-party releases. In short, the UST asserts that the structure of leading with non-consensual releases with the option to fall back to a consensual basis prevents the hypothetical reasonable

investor from being able to understand it sufficiently to make an informed judgment. The Debtors disagree that the structure of the releases presents a problem which would preclude approval of the Disclosure Statement. The additional disclosure that has been added to the Modified Disclosure Statement explains to creditors the financial impact of the non-consensual releases and the mechanics related to the consensual releases if the non-consensual releases are not approved. In addition, the Creditors' Committee Letter, attached hereto as Exhibit D, provides a clear and concise explanation of how the proposed releases work. Any substantive issues regarding the propriety of the Third-Party releases can be resolved at Confirmation.

## V.

## RESPONSE TO LEXON OBJECTION

19. Lexon, which provides two customs bonds for the Debtors (the "Bonds"), objects to the adequacy of the information continued in the Disclosure Statement because Lexon states that the Disclosure Statement fails to address how the Bonds will be treated and whether they will be needed going forward. While the Debtors understand that Lexon's Objection was filed as a protective measure, the Debtors have been in discussions with Lexon over the course of these cases with respect to both the Debtors' operations as they relate to the Bonds and the effect of a sale of any of the Debtors on Lexon. To expeditiously resolve the matter, the Debtors have requested Lexon to propose some language for the Disclosure Statement for the Debtors' review. The Debtors believe, however, that any additional disclosure regarding the prospective treatment of the

Bonds is unnecessary to enable creditors to help them decide where or not to accept or reject the Plan.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter the Disclosure Statement Order, grant the Motion, approve the Amended Disclosure Statement, overrule the Objections, and grant such other and further relief as may be just and appropriate.

| | |
|---|---|
| Dated: December 11, 2023 | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | */s/ James E. O'Neill* |
| | Richard M. Pachulski (*pro hac vice*) |
| | Debra I. Grassgreen (*pro hac vice*) |
| | James E. O'Neill (DE Bar No. 4042) |
| | Jason H. Rosell (*pro hac vice*) |
| | Steven W. Golden (DE Bar No. 6807) |
| | 919 N. Market Street, 17th Floor |
| | P.O. Box 8705 |
| | Wilmington, DE 19899-8705 (Courier 19801) |
| | Telephone: (302) 652-4100 |
| | Facsimile: (302) 652-4400 |
| | Email:  rpachulski@pszjlaw.com |
| | dgrassgreen@pszjlaw.com |
| | joneill@pszjlaw.com |
| | jrosell@pszjlaw.com |
| | sgolden@pszjlaw.com |
| | |
| | *Counsel to the Debtors and Debtors in Possession* |