**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC. *et al.*,[1] | Case No.: 23-11131 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Related Dkt. Nos.: 525, 688, 865** |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINDER AND STATEMENT IN SUPPORT OF THE DEBTORS' DISCLOSURE STATEMENT MOTION AND CONFIRMATION SCHEDULING MOTION**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of Amyris, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") hereby files this (i) joinder to the *Debtors' Omnibus Reply to Objections to Debtors' Motion for an Order Approving the Disclosure Statement* [Docket No. 865] (the "**Debtors' Omnibus Reply**")[2] and (ii) statement in further support of the *Debtors' Motion for an Order Approving The Disclosure Statement* [Docket No. 525] (the "**Disclosure Statement Motion**") and *Debtors' Motion for Entry of an Order Establishing Confirmation Discovery Schedule and Protocols* [Docket No. 688] (the "**Confirmation Scheduling Motion**"). In support hereof, the Committee respectfully states as follows.

---

[1]  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Debtors' Omnibus Reply.

11205860v.1

**PRELIMINARY STATEMENT**

1.  The Plan that the Disclosure Statement describes is the product of tireless negotiations among the Debtors, the DIP Lender, the Foris Prepetition Secured Lenders, the Committee, and the Ad Hoc Noteholder Group and represents the best outcome reasonably available for unsecured creditors in these cases. Given the minimal proceeds from the sale of the Debtors' Consumer Brands, without the further committed contributions from secured creditors and settlements under the Plan, administrative claims would not be paid in full and unsecured creditors would be entitled to recover nothing. The Committee only agreed to support the Plan after conducting an independent investigation of the Debtors, the DIP Lender, the Foris Prepetition Secured Lenders, and their principals—which involved the Committee seeking and receiving sweeping discovery—and only after the Committee obtained the agreement of the Debtors, the DIP Lender, and the Foris Prepetition Secured Lenders to increase the estimated cash consideration distributable to unsecured creditors under the Plan to at least $51.95 million. *See* Second Amended Disclosure Statement [Docket No. 826-2] at 2 ("Under the Plan, Holders of Claims in Classes 7 [Convertible Note Claims] and 8 [General Unsecured Claims] are eligible to receive estimated aggregate recoveries of $51.95 to $66.4 million.").

2.  The Disclosure Statement adequately describes these recoveries for unsecured creditors, as well as the terms of the Plan's settlements and releases that unlock this value for unsecured creditors. The Plan should be solicited so that these Chapter 11 Cases may conclude and distributions may commence. Given the exigencies and need to control administrative fee accruals, it is likewise absolutely critical that the Debtors' proposed confirmation schedule is approved. The DIP Lender and Foris Prepetition Secured Lenders have only agreed to continue to fund these Chapter 11 Cases for a limited, agreed period of time. If the Debtors do not exit chapter 11 on that agreed schedule, the DIP Lender and Foris Prepetition Secured Lenders may

seek to liquidate the Debtors, which would be disastrous for holders of administrative claims and unsecured creditors, and would likely result in unsecured creditors recovering nothing, compared to the distributions provided under the Plan. *See* Second Amended Disclosure Statement [Docket No. 826-2] at Exhibit D. Accordingly, the Committee respectfully requests that the Court grant the Disclosure Statement Motion and Confirmation Scheduling Motion.

## ARGUMENT

3.  In light of the broad consensus that the Plan and Disclosure Statement reflect, only five parties filed objections or reservations of rights with respect to the Disclosure Statement Motion and/or Confirmation Scheduling Motion: (i) Lexon Insurance Company [Docket No. 728]; Lavvan, Inc. [Docket Nos. 730, 731]; (iii) the United States Trustee [Docket No. 742]; (iv) DSM-Firmenich [Docket No. 856]; and (v) the Ad Hoc Cross-Holder Group [Docket No. 860] (the "**Cross-Holder Objection**"). The Committee understands that the Debtors have consensually resolved certain of these disclosure objections and confirmation scheduling objections as of the time of this filing. To the extent any objections remain outstanding, the Committee joins the Debtors' Omnibus Reply in full and requests that any unresolved objections be overruled based on the arguments set forth therein. The Committee also writes separately to respond to the objection filed by the Ad Hoc Cross-Holder Group.

4.  The Ad Hoc Cross-Holder Group principally contends that the Disclosure Statement does not adequately describe the investigations conducted by the Committee, the Ad Hoc Noteholder Group, and the Debtors' independent director, and how the results of those investigations support the settlements and releases contained in the Plan. *See* Cross-Holder Obj. ¶¶ 5-6. With respect to the Committee, the Second Amended Disclosure Statement already sufficiently disclosed how the Committee conducted its investigation, and the breadth of that investigation. Namely, the Disclosure Statement noted that, "since its formation," the Committee

"proactively investigated the facts and circumstances leading to these Chapter 11 Cases and potential causes of action against the DIP Lender and Foris Prepetition Secured Lenders, their principals, and the Debtors and their officers and directors." Second Amended Disclosure Statement [Docket No. 826-2] at 26. To conduct that investigation, the Committee (i) sought broad-ranging discovery from the Debtors and the Foris Prepetition Secured Lenders; (ii) received 24,373 documents (totaling 206,305 pages) produced by those parties and reviewed nearly all of those documents; (iii) took depositions of the Debtors' former CEO (John Melo) and certain of the members of the Debtors' board of directors (John Doerr and Ryan Panchadsaram); and (iv) entered into a common interest agreement with the Debtors to allow the Committee and its advisors to review certain privileged materials, including the investigative report drafted by counsel to the Debtors' independent director. *Id.* at 26-28. The Disclosure Statement then explained that the Committee determined, based on the information it discovered in the course of its investigation, to "support[] entry into the proposed Estate Claims Settlement and Third-Party Release Settlement" under the Plan. *Id.* at 27 n.33.

5.  In light of these disclosures, the Disclosure Statement already provided "adequate information" to voting creditors regarding the Committee's investigation. 11 U.S.C. § 1125(a)(1); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 321 (3d Cir. 2003). The Committee is the only estate fiduciary to have investigated the prepetition conduct of the Debtors, their officers and directors, and the DIP Lender and Foris Prepetition Lenders and their principals. And the Committee—in the exercise of its fiduciary duty to maximize creditor recoveries—ultimately concluded that the value being provided through the settled claims and releases contemplated by the Plan will allow unsecured creditors to obtain greater recoveries than prosecuting causes of action against the Debtors' insiders, which the Committee's fulsome

4

investigation revealed are unlikely to yield equivalent value. The Disclosure Statement's description of the Committee's investigation and disclosure regarding the Committee's support for the Plan provides voting creditors adequate information about the reasonableness of the Plan's settlement and releases and about whether they should vote to accept the Plan.

6. Regardless, in response to the Ad Hoc Cross-Holder Group's concerns, the Committee prepared the following additional language to be added to the Disclosure Statement regarding the Committee's investigation:

> The Committee considered several potential causes of action against the Debtors' officers, directors, and employees. Among other things, the Committee considered claims for breach of fiduciary duty under Delaware law, including breach of the duty of care and breach of the duty of loyalty; aiding and abetting breach of fiduciary duty; breach of contract under applicable state law; business torts, including tortious interference with prospective contractual and business relations, fraud, and negligent misrepresentation under applicable state law; equitable subordination of debt under 11 U.S.C. § 510; recharacterization of debt as equity; preference claims under 11 U.S.C. § 547; fraudulent transfer claims under 11 U.S.C. § 548; and fraudulent transfer claims under 11 U.S.C. § 544 and applicable state law.
>
> For each of these claims, the Committee reviewed the appropriate statute of limitations and look-back periods. The Committee also examined the scope of the directors' and officers' liability under applicable state law and the Debtors' corporate documents, many of which contained exculpation clauses. In tandem with the Committee's legal research, the Committee analyzed the Company's financing arrangements, sale and purchase agreements, and other business decisions as identified in the Company's court filings, the documents produced by the Company, and the Company's board materials. The Committee's analysis included a robust review of the pertinent documents produced in these chapter 11 cases, including negotiations and communications between transacting parties, the materials presented to the Amyris board, the decision-making processes of the Amyris board and management, financing alternatives presented to the Amyris board, the Company's approval process, and proposed transactions that were never completed. Based on this extensive review and analysis, the Committee prepared a motion to seek derivative standing and a proposed adversary complaint.

> After substantial discussion among the Committee members and the Committee's advisors, the Committee determined that the settlement with the Debtors and Foris likely provided better value to the Committee than the claims that the Committee had developed through its investigation.

This additional disclosure, in addition to the disclosure already contained in the Disclosure Statement, provides more than adequate information for voting creditors about the scope and results of the Committee's investigation.

7. In addition, the Ad Hoc Cross-Holder Group argues that the Disclosure Statement does not set forth the Debtors' legal case justifying the approval of the Plan's Third Party Releases or the Reorganized Debtors' retention of the Other Assets (ultimately for the benefit of the DIP Lender and Foris Prepetition Secured Lenders that receive New Common Stock). Cross-Holder Obj. ¶¶ 7-8. But these objections address confirmation issues. *See id.* ¶ 8 (the Ad Hoc Cross-Holder Group recognizing that whether the Debtors market their Other Assets "will be an issue at confirmation"). The appropriate time to test a plan's compliance with the confirmation requirements under section 1129 is at the confirmation hearing, not the disclosure statement hearing. *In re Am. Capital Equip., LLC*, 688 F.3d 145, 153-54 (3d Cir. 2012). Accordingly, the Ad Hoc Cross-Holder Group's objections regarding the Third Party Releases and the debt for equity swap proposed in the Plan should be deferred to the confirmation hearing, at which time the Debtors will establish an appropriate record in support of confirmation.

## CONCLUSION

8.      For the reasons set forth herein and in the Debtors' Omnibus Reply, the Committee respectfully requests that the Court grant the Disclosure Statement Motion and Confirmation Scheduling Motion and grant such other and further relief as may be just and proper.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: December 11, 2023<br>Wilmington, Delaware | Respectfully submitted,<br><br>*/s/ Katelin A. Morales*<br>**POTTER ANDERSON & CORROON LLP**<br>Christopher M. Samis (No. 4909)<br>Katelin A. Morales (No. 6683)<br>Sameen Rizvi (No. 6902)<br>1313 N. Market Street, 6th Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 984-6000<br>Facsimile: (302) 658-1192<br>Email:  csamis@potteranderson.com<br>           kmorales@potteranderson.com<br>           srizvi@potteranderson.com<br><br>-and-<br><br>**WHITE & CASE LLP**<br>Gregory F. Pesce (admitted *pro hac vice*)<br>Andrew F. O'Neill (admitted *pro hac vice*)<br>111 South Wacker Drive, Suite 5100<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Facsimile: (312) 881-5450<br>Email: gregory.pesce@whitecase.com<br>           aoneill@whitecase.com<br><br>-and-<br><br>**WHITE & CASE LLP**<br>Samuel P. Hershey (admitted *pro hac vice*)<br>John Ramirez (admitted *pro hac vice*)<br>Andrea Kropp (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Facsimile: (212) 354-8113<br>Email: sam.hershey@whitecase.com<br>           john.ramirez@whitecase.com<br>           andrea.kropp@whitecase.com<br><br>*Counsel for the Official Committee*<br>*of Unsecured Creditors* |

## **CERTIFICATE OF SERVICE**

    I, Katelin A. Morales, do hereby certify that on December 11, 2023, I caused a copy of the foregoing **The Official Committee of Unsecured Creditors' Joinder and Statement in Support of the Debtors' Disclosure Statement Motion and Confirmation Scheduling Motion** to be served on the parties listed on the attached service list in the manner indicated.

                                                                          */s/ Katelin A. Morales*
                                                                          Katelin A. Morales (No. 6683)

11198858v.1

**SERVICE LIST**

| | |
|---|---|
| *Counsel for the Debtors*<br><br>**Pachulski Stang Ziehl & Jones LLP**<br>919 North Market Street, 17th Floor<br>Wilmington, DE 19899-8705<br>Attn: James E. O'Neill<br>(joneill@pszjlaw.com)<br>Steven W. Golden (sgolden@pszjlaw.com)<br><br>and<br><br>**Pachulski Stang Ziehl & Jones LLP**<br>One Sansome Street, Suite 3430<br>San Francisco, CA 94104<br>Attn: Debra I. Grassgreen<br>(dgrassgreen@pszjlaw.com)<br>Maxim B. Litvak (mlitvak@pszjlaw.com)<br><br>**Via Email** | *Counsel to the Ad Hoc Cross-Holder Group*<br><br>**Womble Bond Dickinson (US) LLP**<br>Matthew P. Ward (DE Bar No. 4471)<br>Morgan L. Patterson (DE Bar No. 5388)<br>1313 North Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-4320<br>Facsimile: (302) 252-4330<br>Email: matthew.ward@wbd-us.com<br>Email: morgan.patterson@wbd-us.com<br><br>and<br><br>**Arentfox Schiff LLP**<br>Andrew I. Silfen<br>Beth N. Brownstein<br>1301 Avenue of the Americas, 42nd Floor<br>New York, New York 10019<br>Telephone: (212) 484-3900<br>Facsimile: (212) 484-3990<br>Email: andrew.silfen@afslaw.com<br>Email: beth.brownstein@afslaw.com<br><br>**Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.**<br>Eric J. Silver<br>150 West Flagler Street, Suite 2200<br>Miami, Florida 33130<br>Telephone: (305) 789-4175<br>Facsimile: (305) 789-2688<br>Email: esilver@stearnsweaver.com<br><br>**Via Email** |
| Office of The United States Trustee<br>844 King Street, Suite 2207, Lockbox 35,<br>Wilmington, DE 19801<br>Attn: John Schanne<br>(John.Schanne@usdoj.gov)<br><br>**Via Email** | |

11198858v.1