# EXHIBIT A

**Notice of Confirmation Hearing and Related Matters (Voting Classes)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

**NOTICE TO VOTING CLASSES OF (A) HEARING TO CONSIDER CONFIRMATION OF DEBTORS' CHAPTER 11 PLAN; (B) DEADLINE FOR VOTING TO ACCEPT OR REJECT PLAN; (C) DEBTORS' RELEASES AND THIRD-PARTY RELEASE; (D) DEADLINES REGARDING THIRD-PARTY RELEASE OPT OUT ELECTION; AND (E) RELATED MATTERS**

**TO:    HOLDERS OF CLAIMS IN VOTING CLASSES:**
   **Class 3 – Foris Prepetition Secured Claims**
   **Class 4 – DSM RealSweet Secured Claims**
   **Class 5 – DSM Other Secured Claims**
   **Class 7 – Convertible Notes Claims**
   **Class 8 – General Unsecured Claims**
   **Class 9 – DSM Contract Claims**
   **Class 10 – Givaudan Contract Claims**

**PLEASE TAKE NOTICE**: On October 12, 2023, Amyris, Inc. and its affiliated debtors and debtors in possession (the "Debtors") filed the *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. 523] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").

Concurrently with the filing of the Plan, the Debtors filed the related Disclosure Statement in support of the Plan [Docket No. 524] (including all exhibits thereto and as may be amended, modified or supplemented from time to time, collectively, the "Disclosure Statement"). On [_____, 2023], this Court entered an order approving the Disclosure Statement [Docket No. __] (the "Disclosure Statement Order") and certain related materials (i) establishing notice, voting and objection procedures for Voting Classes (the "Solicitation Materials") and (ii) establishing notice and objection procedures for Non-Voting Classes (the "Non-Voting Class Notices").

**A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held on January 24, 2024, commencing at 10:00 a.m. (prevailing Eastern Time),** before the Honorable Thomas M. Horan, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Courtroom No. 6, Wilmington, Delaware 19801. It may be possible to attend the Confirmation Hearing remotely. Any party who wishes to attend via video

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

conference is required to register with the Court at the following link: https://protect-us.mimecast.com/s/48LqCYEMNEs6v2kKt0scm9. The Confirmation Hearing may be continued from time to time without further notice except for (i) an announcement made at the Confirmation Hearing or any adjourned confirmation hearing or (ii) a written notice filed with the Bankruptcy Court and served on all parties who have filed Plan Objections, the United States Trustee, and all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

The record date for determining which Holders of Claims against the Debtors may vote on the Plan is December 1, 2023 (the "Record Date").

**If you have received this Notice and the enclosed Solicitation Materials, including a ballot form (a "Ballot"), you are in a Voting Class and eligible to vote to accept or reject the Plan.**

The Solicitation Materials include the following documents: (a) the order approving the Disclosure Statement setting forth (i) the commencement date of the Confirmation Hearing, (ii) the deadline and procedures for filing Plan Objections, and (iii) the deadline for receipt of Ballots to accept or reject the Plan; (b) a printed copy of the Ballots (as each may be applicable to your Claim(s)) and a Ballot return envelope; (c) a flash drive or printed book containing the Disclosure Statement (together with the exhibits thereto, including the Plan); (d) a cover letter from the Debtors explaining the enclosure and requesting that creditors vote in favor of the Plan; and (e) a cover letter from the Creditors' Committee making a recommendation to the Holders of General Unsecured Claims and Convertible Notes Claims with respect to voting on the Plan.

**YOU SHOULD READ THE DOCUMENTS CONTAINED IN THE SOLICITATION MATERIALS, WHICH IMPACT YOUR RIGHTS AND CLAIMS AGAINST THE DEBTORS, CAREFULLY, AND CONSULT WITH YOUR OWN COUNSEL, ACCOUNTANT OR FINANCIAL ADVISOR AT YOUR OWN DISCRETION.**

For your Ballot to be counted, you must complete all required information on the Ballot, execute the Ballot, and **return the completed Ballot to the address indicated on the Ballot so that it is received by 5:00 p.m. (Eastern Time) on January 18, 2024** (the "Voting Deadline"). Any failure to follow the voting instructions included with the Ballot or to return a properly completed Ballot so that it is received by the Solicitation Agent on or before the Voting Deadline may disqualify your Ballot and your vote.

If an objection is pending with respect to your Claim as of the date you receive this Notice, your vote will not be counted unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan, and you are required to file a motion for such relief (a "Rule 3018 Motion") **no later than 5:00 p.m. (Eastern time) on January 5, 2024**, which may be heard on or prior to the Confirmation Hearing. Notwithstanding the foregoing, if the Debtors file an objection to a claim and request that such claim be allowed in a specific amount, your Ballot shall be counted in such specified amount, unless otherwise ordered by the Court.

**The Bankruptcy Court has established January 18, 2024 at 5:00 p.m. (Eastern Time), as the last date and time for filing and serving objections to the confirmation of the Plan (the "Plan Objection Deadline").** All Plan Objections must state with particularity the legal and factual grounds for such objection; (i) be in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection; (iv) be filed with the Court and served so as to be received by the Plan Objection Deadline; and (v) served on the following parties: (a) Counsel for the Debtors, (i) Pachulski Stang Ziehl & Jones LLP, 919 North

4894-7043-7262.16 03703.004

2

DOCS_NY:48499.8 03703/004

Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com); and (ii) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com); (b) Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware, 19801, Attn: John Schanne, Esq. (John.Schanne@usdoj.gov); (c) Counsel to the DIP Lenders, DIP Agent and the Foris Prepetition Secured Lenders, (i) Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein (mgoldstein@goodwinlaw.com), Alexander J. Nicas (anicas@goodwinlaw.com), and Debora A. Hoehne (dhoehne@goodwinlaw.com); and (ii) Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier (david.fournier@troutman.com); (d) Counsel to the Committee, (i) Counsel to the Committee, (i) White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, IL 60606-4302, Attn: Gregory Pesce, (gregory.pesce@whitecase.com) and Andrew O'Neill, (aoneill@whitecase.com); (ii) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095, Attn.: John Ramirez, (john.ramirez@whitecase.com) and Andrea Kropp, (andrea.kropp@whitecase.com); and (iii) local counsel to the Committee, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801; Attn: Christopher M. Samis, (csamis@potteranderson.com), Katelin A. Morales, (kmorales@potteranderson.com), Sameen Rizvi (srizvi@potteranderson.com); and (e) any party that requests service pursuant to Bankruptcy Rule 2002.

**Any Plan Objection not timely filed and served by the Plan Objection Deadline in accordance with the provisions of this Notice will not be heard and will be overruled.**

**PLEASE TAKE NOTICE: ARTICLE IX OF THE PLAN CONTAINS CERTAIN RELEASES, EXCULPATION PROVISIONS AND INJUNCTIONS, INCLUDING THIRD-PARTY RELEASES**

**THESE PROVISIONS ARE SET FORTH IN THE ATTACHED ANNEX A**

**You are a Holder of a Claim in a Voting Class.**

*Non-Consensual Third-Party Release*

**The Debtors will seek approval of the Third-Party Release based upon the standard for approval of non-consensual third-party releases. All Holders of Claims or Interests in Voting and Non-Voting Classes will be deemed to have consented to the Third-Party Release set forth in Article IX.D of the Plan (as set forth in full in the attached Annex A).**

*Opt Out Election*

**In the event the Bankruptcy Court does not approve the Third-Party Release on a non-consensual basis, the Third-Party Release will be deemed a settlement offer to the holders of Direct Claims, and each Holder of a Claim in a Voting Class that is a holder of a Direct Claim may voluntarily elect to receive its pro rata portion of the Third-Party Release Settlement Amounts to which it is entitled by electing to grant the Third-Party Releases, through the following methods: for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, or (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases; provided, that, as applicable, the Direct Claims Threshold is satisfied.**

| | |
|---|---|
| Dated: [●] | **PACHULSKI STANG ZIEHL & JONES LLP**<br><br>*/s/ DRAFT*<br>Richard M. Pachulski (*pro hac vice* forthcoming)<br>Debra I. Grassgreen (*pro hac vice* forthcoming)<br>James E. O'Neill (DE Bar No. 4042)<br>Jason H. Rosell (*pro hac vice* forthcoming)<br>Steven W. Golden (DE Bar No. 6807)<br>919 N. Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Facsimile: (302) 652-4400<br>rpachulski@pszjlaw.com<br>dgrassgreen@pszjlaw.com<br>joneill@pszjlaw.com<br>jrosell@pszjlaw.com<br>sgolden@pszjlaw.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

**Annex A**

**ARTICLE IX.
SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

B.      *Release of Liens.*

Except as otherwise provided herein, in the Exit First Lien Facility Documents, the Plan Supplement, the Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, and other than as to the DIP Facility Claims and Foris Prepetition Secured Claims rolled up, converted, exchanged, refinanced or amended and restated, into the Exit First Lien Facility, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, or any other Holder of a Secured Claim.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such mortgages, deeds of trust, Liens, pledges, and other security interests.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or the Exit First Lien Facility Agent, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

C.      *Releases by the Debtors.*

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, each of the Debtors, on its own behalf and as a representative of its Estates, to the fullest extent permitted under applicable law, shall, and shall be deemed to, completely and forever release, waive, void and extinguish unconditionally, as against each and all of the Released Parties, any and all Claims, Estate Causes of Action, interests, obligations, suits, judgments, damages, debts, rights, remedies, set offs, and Liabilities of any nature whatsoever, whether liquidated or Unliquidated, fixed or Contingent, matured or unmatured,

known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, tort, contract, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event, occurrence, or other circumstance, whether direct or derivative, taking place or existing on or prior to the Effective Date (including prior to the Petition Date) arising from, in connection with, or related to, directly or indirectly, in any manner whatsoever, the Debtors or their operations, assets, liabilities, financings, the Estates, or the Chapter 11 Cases, that may be asserted by or on behalf of such Debtor or its Estate, against any of the Released Parties; *provided, however*, that nothing in this section shall operate as a release, waiver, discharge or impairment of any Estate Causes of Action transferred to the Creditor Trust, which are preserved notwithstanding anything to the contrary in this section.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (b) the rights of any Holder of Allowed Claims to receive distributions under the Plan; (c) any Claims for indemnification that are expressly assumed by the Reorganized Debtors pursuant to the Plan or any document, instrument, or agreement executed to implement the Plan or the Restructuring Transactions; or (d) any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any claim or Cause of Action released by the Debtor release against any of the Released Parties.

D.      *Third-Party Release by the Releasing Parties.*

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Parties shall be deemed to forever release and waive, as against each and all of the Released Parties, any and all Direct Claims, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise that are or may be based in whole or in part upon any act, omission, transaction, event, or other occurrence taking place or existing on or prior to the Effective Date; provided, however, that nothing in this section shall operate as a release, waiver, discharge or impairment of (i) any Estate Causes of Action or liabilities arising out of actual fraud, willful misconduct, or gross negligence of any such Released Party as determined by a Final Order, or (ii) any Causes of Action transferred to the Creditor Trust, which Causes of Action are preserved notwithstanding anything to the contrary in this section, or (iii) any Excluded Party Direct Claims.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (a) any post-Effective Date obligations of any party or Entity under the Plan, the

Confirmation Order, any Restructuring Transaction, any Definitive Document, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions, including the Exit First Lien Facility Documents; (b) the rights of any Holder of Allowed Claims or Allowed Interests to receive distributions under the Plan; and (c) any obligations arising under business or commercial agreements or arrangements among the Released Parties and any non-Debtor Entity.

If the Third-Party Releases are not approved by the Bankruptcy Court, each holder of a Direct Claim may voluntarily elect to receive its Pro Rata portion of the Third-Party Release Amounts to which it is entitled by electing to grant the Third-Party Releases, through the following methods: (x) for (i) holders of Claims who are entitled to submit a ballot to vote on the Plan and vote to accept the Plan, (ii) holders of Claims who are entitled to submit a ballot to vote on the Plan and (a) vote to reject the Plan or (b) abstain from voting on the Plan and, in either case, do not elect to exercise their right to opt out of granting the Third-Party Releases, and (y) for holders of Claims and Interests who are deemed to accept or reject the Plan and are provided with a notice of non-voting status providing them with the right to opt out of granting the Third-Party Releases and do not elect to exercise such right; provided, that, as applicable, the Direct Claims Threshold is satisfied.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) essential to the Confirmation; (ii) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Creditor Trust and the Third-Party Release Settlement Amounts and the restructuring and implementing the Plan; (iii) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (iv) in the best interests of the Debtors and their Estates; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; and (vii) a bar to any of the Releasing Parties asserting any Direct Claim released pursuant to the Third-Party Release.

E.     *Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any claims and Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of prepetition transactions (including with respect to the Debt Documents), the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the Exit First Lien Facility Documents, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, the Exit First Lien Facility, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence, except for claims

related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable Law with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.     *Plan Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, and separate and apart from the Direct Claims Injunction, all Entities who have held, hold, or may hold the Released Claims are permanently enjoined from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any Released Claims; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Released Claims; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the Estates of such Entities on account of or in connection with or with respect to any Released Claims; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any Released Claims unless such Entity has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Released Claims released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article IX.F of the Plan.

G.     *Direct Claims Injunction.*

   1.     **General Purposes and Terms.**

The Confirmation Order shall provide that, as of the Effective Date, and irrespective of whether any such holder has agreed to be bound by the Plan, all holders of Direct Claims and their respective Related Parties will be permanently and forever stayed, enjoined, barred, and restrained

from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Direct Claim against the Direct Claims Injunction Parties, including all of the following actions (collectively, the "<u>Direct Claims Injunction</u>"):

    a.    commencing or continuing in any manner, any actions or other proceedings of any kind with respect to any Direct Claims against any of the Direct Claims Injunction Parties or against the property of any of the Direct Claims Injunction Parties;

    b.    enforcing, levying, attaching, collecting, or otherwise recovering, by any manner or means, from any of the Direct Claims Injunction Parties, or the property of the Direct Claims Injunction Parties, any judgment, award, decree, or order with respect to any Direct Claim against any of the Direct Claims Injunction Parties, or any other person;

    c.    creating, perfecting, or enforcing any lien of any kind relating to any Direct Claim against any of the Direct Claims Injunction Parties, or the property of the Direct Claims Injunction Parties; and

    d.    taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, with respect to any such Direct Claim.

    **2.**    **Standing of Direct Claim Injunction Parties.**

Each of the Direct Claims Injunction Parties shall have standing to seek relief from the Bankruptcy Court or any court of competent jurisdiction for purposes of enforcement of the Direct Claims Injunction or other Injunction or releases under the Plan to the extent that any act occurs or is taken that is contrary to the provisions of, or would interfere with, restrict, defeat, nullify, violate or otherwise limit the protections afforded the Direct Claims Injunction Party through the Direct Claims Injunction.

**RELEVANT DEFINITIONS (PLAN ARTICLE I):[2]**

"*Debtor Release*" means the release given by the Debtors and the Estates to the Released Parties as set forth in <u>0</u> of the Plan.

"*Direct Claims*" means any claim or Cause of Action held by a Releasing Party against any of the Released Parties (excluding the Debtors) and their respective Related Parties, but only to the extent such claims arise from, relate to, or are connected with, directly or indirectly, in any manner whatsoever, the Debtors, including their respective assets, liabilities, operations, financings, contractual agreements, licenses, and including the governance thereof, and existing on or prior to the Effective Date (including prior to the Petition Date).

---

[2] The defined terms set forth herein are those relevant to the above the ability of Holders of Claims and Interests to make an informed decision about the release, exculpation and injunction provisions, and is not intended to be a complete list of all applicable definitions which are set forth in Article I of the Plan.

"*Direct Claims Injunction Parties*" means (a) the Reorganized Debtors; (b) the Foris Secured Parties; and (c) the Related Parties of the foregoing parties.

"*Direct Claims Threshold*" means (a) with respect to holders of Direct Claims who are creditors of the Debtors, determined separately with respect to such creditors classified in Class 7 and Class 8, respectively, creditors who hold at least a majority in amount of the Claims asserted against the Debtors (such Claims measured as of the Petition Date on the same basis as such Claims are Allowed for voting purposes); and (b) with respect to holders of Direct Claims who are Holders of any Interests consisting of issued and outstanding shares of common stock of Amyris, such Holders who hold at least a majority of the outstanding common stock of Amyris (excluding for purposes of such calculation, any outstanding common stock of Amyris held by any of the Direct Claims Injunction Parties) (such outstanding common stock of Amyris measured as of the Distribution Record Date Date).

"*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Foris Secured Parties; (c) all Consenting Convertible Noteholders; (d) the Ad Hoc Group Professionals; (e) the Creditors' Committee; and (f) the Related Parties of each of the foregoing parties.

"*Related Party*" means, collectively, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, shareholders, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts, or funds, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, fiduciaries, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, restructuring advisors, and other professionals and advisors, and any such person's or Entity's respective predecessors, successors, assigns, heirs, executors, estates, and nominees.

"*Released Claims*" means any Claim or Interest or Direct Claim that has been released, satisfied, stayed, terminated, discharged, or is subject to compromise and settlement pursuant to the Plan.

"*Released Parties*" means, collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c); the DIP Lenders and the DIP Agent; (d) the Foris Prepetition Secured Lenders; (e) the Creditors' Committee; (f) the Consenting Convertible Noteholders, (g) the Ad Hoc Group Professionals; (h) the Consenting Contract Counterparties; and (i) with respect to each of the foregoing Entities in clauses (a) through (e), all Related Parties. For the avoidance of doubt, (i) the Debtors' current and former directors, managers, officers, employees, professionals, and shareholders, in each case, who are not an Excluded Party, shall each be a Released Party; and (ii) no Excluded Party shall be a Released Party.

"*Releasing Parties*" means collectively, and in each case in its capacity as such: (a) the Foris Prepetition Secured Lenders; (b) the Creditors' Committee; (c) the Consenting Convertible Noteholders; (d) the Consenting Contract Counterparties; (e) all Holders of Claims against the Debtors that are bound by the Third-Party Release Settlement; and (f) all persons who hold Interests in Amyris that are bound by the Third-Party Release Settlement.

"*Third-Party Release*" means the release of Direct Claims deemed given by each of the Releasing Parties to the Released Parties in consideration for the distributions to be made as set forth in D of the Plan.

"*Third-Party Release Settlement*" means that settlement and release of Direct Claims as provided for in Article IV.A. and Article IX.D & G. of the Plan. in consideration for the distributions to be made as set forth in Article IX.D of the Plan. The documentation of the Third-Party Release Settlement and the payment of the Third-Party Release Settlement Amounts will be included in the Plan Supplement.

"*Third-Party Release Settlement Amounts*" means, as applicable, the following amounts allocated from the Net Proceeds or other assets of the Estates that would otherwise be paid to the DIP Lenders and the Foris Prepetition Secured Lenders, as applicable:

(A) (i) $12,714,000, consisting of that portion of the Third-Party Release Settlement Amounts to be distributed to the Holders of Convertible Notes, if the Third-Party Release Settlement is approved on a non-consensual basis; or (ii) $9,264,000, consisting of that portion of the Third-Party Release Settlement Amounts to be distributed to the Holders of Convertible Notes if the Third-Party Release Settlement is not approved on a non-consensual basis and the Direct Claims Threshold is satisfied as to holders of Direct Claims who are creditors (but only as to holders of Allowed Convertible Notes Claims who do not opt out of the Third-Party Release Settlement);

(B) (i) $3,686,000, consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of General Unsecured Claims, if the Third-Party Release Settlement is approved on a non-consensual basis; or (ii) $2,686,000 consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of General Unsecured Claims if the Third-Party Release Settlement is not approved on a non-consensual basis and the Direct Claims Threshold is satisfied as to holders of Direct Claims who are creditors (but only as to Holders of Allowed General Unsecured Claims who do not opt out of the Third-Party Release Settlement);

(C) (i) $5,000,000 consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of Interests as of the Voting Record Date, if the Third-Party Release Settlement is approved on a non-consensual basis; or (ii) $2,500,000 consisting of that portion of the Third-Party Release Settlement Amounts distributed to the Holders of Interests as of the Voting Record Date if the Third-Party Release Settlement is not approved on a non-consensual basis and the Direct Claims Threshold is satisfied as to holders of Direct Claims who are holders of any Interests (but only as to Holders of Interests who do not opt out of the Third-Party Release Settlement).