# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered)<br><br>**Re: D.I. 807** |

## OBJECTION OF SALESFORCE, INC. TO THE PROPOSED ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND CURE COSTS, IN CONNECTION WITH THE SALE AND RESERVATION OF RIGHTS

Salesforce, Inc. (fka salesforce.com, inc.) ("**Salesforce**"), by and through their undersigned counsel, hereby file this objection and reservation of rights (the "**Assumption Objection**")[2] to the assumption and/or assignment of the following executory contracts:

(1) the executory contracts (the "**Cure Notice Contracts**") identified by the Debtors for potential assumption and assignment pursuant to the Sale of the Debtors assets and the Supplemental Cure Notice filed by the Debtor,[3]

(2) the executory contracts (collectively, the "**Salesforce Contract**")[4] pursuant to which

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Defined Terms used in this Assumption Objection, but which are not specifically defined herein, shall have the meanings ascribed to them in the Ramirez Declaration filed concurrently herewith.

[3] *See First Supplemental Notice of Potential Assumption, Assumption and Assignment or Transfer of Executory Contracts and Unexpired Leases* [ECF 807] (the "**Supplemental Cure Notice**").

[4] The Salesforce Contract includes: (A) the agreements and orders identified on Exhibit "A" incorporated by reference at ¶8 of the Ramirez Declaration that is filled concurrently herewith; and (B) any and all additional agreements and orders that hereinafter are determined to be executory contracts that must be assumed pursuant to the Sale, the Cure Notice and/or any Assumption Motion in order for the Debtors or their assigns, as applicable, to realize the same Salesforce companies Services as currently enjoyed by the Debtors.

32123134v.2

Salesforce provide the Salesforce Services to the Debtor,[5] and/or

(3) any and all other executory contracts to which any one of Salesforce is a counterparty (collectively, the "**Additional Salesforce Contracts**") that the Debtor may seek to assume and assign pursuant to: (A) the Sale Motion[6] and/or any other motion seeking entry of an order approving and authorizing the assumption and/or assignment of any Additional Salesforce Contracts (collectively, the "**Additional Assumption Motions**"); (B) the Supplemental Cure Notice,[7] and any other notice(s) (collectively the "**Additional Cure Notices**") identifying any executory contracts to which any one of Salesforce is a counterparty and the Debtor seeks to assume and/or assign; and/or (C) any plan of reorganization (a "**Plan**") that authorizes the assumption and/or assignment of the Supplemental Cure Notice Contracts, the Salesforce Contract and/or any Additional Salesforce Contracts (collectively, the "**Collective Salesforce Contracts**"), *unless* the order (the "**Assumption Order**"), the Sale Order or any other order approving any sale ("**Sale**") of any Assets, as applicable, approving and authorizing the assumption of the Collective Salesforce Contracts includes the relief substantially as requested in this Assumption Objection.

This Assumption Objection is based on the matters set forth herein, the *Declaration of Kevin Ramirez in Support of the Objection of Salesforce, Inc. To The Proposed Assumption of Certain Executory Contracts and Cure Costs, In Connection with The Sale and Reservation of Rights* (the "**Ramirez Declaration**") filed in support hereof, the files and the records in this case, and such other and further evidence as may be submitted at or before the trial on this matter.

---

[5] *See* Ramirez Declaration at ¶3.

[6] *See Order (A) Approving Bid Procedures for the Sale of the Debtors' Brand Assets; (B) Approving Certain Bid Protections in Connection with the Debtors' Entry into Any Potential Stalking Horse Agreements; (C) Scheduling the Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief* [Docket No. 553] (the "**Brand Asset Bid Procedures Order**").

[7] *See* Supplemental Cure Notice.

Salesforce requests that the Court take judicial notice of the pleadings filed in this case and the facts set forth in the Court's orders, findings of fact and conclusions of law pursuant to Rule 201 of the Federal Rules of Evidence (as incorporated by Rule 9017 of the Federal Rules of Bankruptcy Procedure).

## **RELIEF REQUESTED**

Salesforce seeks entry of the Assumption Order (or the Sale Order or other order, as applicable) that includes the following relief:

A.  Entry by the Court of the following *Findings of Fact*: (1) each of the Collective Salesforce Contracts includes certain Order Forms and other agreements that, taken together, provide the Debtor with the comprehensive Salesforce Services,[8] (2) each of the Collective Salesforce Contracts constitutes an integrated executory contract for purposes of assumption and assignment of executory contracts pursuant to: (i) 11 U.S.C. §365, (ii) the Sale Motion and the Additional Assumption Motions (collectively, the "**Applicable Assumption Motions**"), (iii) the Supplemental Cure Notice and the Additional Cure Notices (collectively, the "**Applicable Cure Notices**"), and/or (v) any Plan and (3) the aggregate monetary default due pursuant to the Salesforce Contract (the "**Salesforce Cure Amount**") includes: (i) as of December 12, 2023, not less than US$ 19,695.42 (the "**Current Monetary Default**"), (ii) such further monetary default amounts (the "**Future Monetary Default**") that may accrue from and after December 12, 2023 through the date the assumption of the Salesforce Contract becomes effective (the "**Effective Assumption Date**") and (iii) all monetary defaults that accrue through the Effective Assumption Date, but which remains unpaid as of that date, with respect to any Additional Salesforce Contract not listed on the Applicable Cure Notices but which are assumed pursuant to the Applicable

---

[8] *See* Ramirez Declaration at ¶3.

Assumption Motions, the Applicable Cure Notices, the Sale Order and/or the Plan (collectively, the "**Additional Salesforce Contract Monetary Default**");

B.     The requirement that, as a condition of approving and authorizing the assumption of any of the Collective Salesforce Contracts, the Debtor shall: (1) provide Salesforce with specific information identifying any and all Collective Salesforce Contracts that will be assumed and assigned; (2) file with the Court and serve Salesforce with a revised Cure Notice (the "**Revised Cure Notice**") listing: (i) all agreements and orders constituting each of the Collective Salesforce Contracts that the Debtor seeks to assume and/or assign and (ii) the monetary defaults the Debtor contends must be cured with respect each of the Collective Salesforce Contracts that the Debtor seeks to assume and/or assign and (3) pay not less than the aggregate Salesforce Cure Amount to cure the monetary defaults with respect to the Collective Salesforce Contracts the Debtor seeks to assume and/or assign;

C.     The requirement that, with respect to each Collective Salesforce Contracts not assumed, the Court shall enter an order (a "**Rejection Order**"): (1) approving and authorizing the rejection of each Collective Salesforce Contracts not assumed (a "**Rejected Contract**"); (2) specifying the date each rejection shall be effective (the "**Effective Rejection Date**"); (3) terminating the automatic stay imposed by 11 U.S.C. §362 (the "**Stay**") as it pertains to each Rejected Contract; (4) authorizing, but not requiring, Salesforce to terminate each Rejected Contract without further order of the Court; (5) terminating all obligations to provide any Salesforce Services (except as otherwise provided with respect to the Transition Services governed by subparagraph D, below), from and after the Effective Rejection Date and (6) authorizing all of the afore-mentioned relief shall be effective on the Effective Rejection Date without: (i) the filing of a motion by Salesforce seeking termination of the Stay or (ii) the Court entering any other order

terminating the Stay (other than the Rejection Order);

      D.      The requirement that if the Debtor, or any other third party purchaser of some or all of the Debtor's Assets (a "**Buyer**" and, together with the Debtor, collectively, the "**Transition Services Customers**") requests that any Salesforce Services (referred to as the "**Transition Services**") be provided to the Bankruptcy Estate and/or any of the Transition Services Customers, then, any agreement (a "**Transition Services Agreement**") entered into by any of the Transition Service Customers, or authorized by a Court order (a "**Transition Services Order**"), as applicable, governing such Transition Services shall include the following provisions *unless* Salesforce agrees otherwise: (1) the Transition Services Customer shall be obligated to pay any and all amounts that are due and owing (the "**Transition Services Claim**") for Transition Services provided pursuant to the Transition Services Agreement and/or the Transition Services Order, as applicable; (2) Salesforce's obligation to provide any Transition Services shall terminate on the Effective Rejection Date of the specific Collective Salesforce Contract pursuant to which the such services have been or are being provided *unless* Salesforce, in its sole discretion, agrees otherwise; (3) if a Transition Services Customer requests that Salesforce provide Transition Services after the Effective Rejection Date of the specific Salesforce Contract governing such services and Salesforce agrees to provide such services, the Transition Services Customer shall be obligated to pay any Transition Services Claim that accrues with respect to such services (the "**Post-Rejection Services Obligation**"); and (4) payment of any amount due with respect to the Post-Rejection Services Obligation shall not constitute a waiver or release of Salesforce's rights to payment of the Transition Services Claim incurred prior to the Effective Rejection Date pursuant to 11 U.S.C. §503 and 507 or derogate Salesforce's right to assert an administrative expense for all amounts due with respect to any and all Salesforce Services and/or Transition Services Claim provided from

32123134v.2

and after the Petition Date through the latter of, as applicable: (a) the Effective Assumption Date or (b) in the event the any Collective Salesforce Contract is rejected, through the Effective Rejection Date applicable to such contract;

  E. The requirement that, pursuant 11 U.S.C. §§503 and 507, the Debtor and its bankruptcy estate (the "**Bankruptcy Estate**") shall be obligated to pay all amounts due with respect to all Salesforce Services and/or goods (the "**Salesforce Administrative Expense**") provided to the Bankruptcy Estate from and after the Petition Date through the latter of, as applicable: (1) the Effective Assumption Date, or (2) the Effective Rejection Date, as applicable.

  F. Approval of the Reservation of Rights (as set forth in this Assumption Objection); and

  G. Granting such other relief as may be just and proper under the facts and circumstances of the Bankruptcy Cases.

## BACKGROUND

  1. Salesforce is a Delaware corporation, and, among other activities, it provides on-demand customer relationship management and software application services (collectively, the "**Salesforce Services**") to Salesforce's business customers (individually, a "**Salesforce Customer**" and, collectively, "**Salesforce Customers**").[9]

  2. Salesforce provides the Salesforce Services, pursuant to the agreements and orders identified on Exhibit "A" attached to the Ramirez Declaration (collectively, the "**Salesforce Contract**") and Exhibit "A" is incorporated by referenced into this declaration as if fully set

---

[9] *See* Ramirez Declaration at ¶2.

forth.[10]

3. Prior to August 9, 2023 (the "**Petition Date**"), the Debtor entered into those certain Order Forms listed on the Cure Amount Summary[11] (the "**Order Forms**"), with Salesforce which are governed by certain *Master Subscription Agreements* (the "**MSAs**" and, together with the Order Forms, collectively referred to as the "**Salesforce Contracts**").[12]

4. Pursuant to the Salesforce Contract: (i) the Debtors ordered certain Salesforce Services and became obligated to pay in full the aggregate amounts due pursuant to this contract with respect to such services; (ii) Salesforce became obligated to provide Salesforce Services to the Debtors; (iii) Salesforce has provided such services to the Debtors; and (iv) the Debtors accepted and utilized Salesforce Services provided pursuant to the Salesforce Contract.[13]

5. On the Petition Date Amyris, Inc. and the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**") and, thereby, commenced its case under chapter 11 (collectively, the "**Bankruptcy Case**").

6. On October 13, 2023, the Court entered an order (the "**Contract and Lease Procedures Order**")[14] authorizing the Debtors to establish procedures related to the assumption, assumption and assignment, and/or transfer of executory contracts and unexpired leases in connection

---

[10] *See* Ramirez Declaration at ¶3.

[11] The Cure Amount Summary is attached to the Ramirez Declaration as <u>Exhibit A</u> and is incorporated by reference here in as if fully set forth.

[12] Due to the confidentiality provisions of the MSAs, a copy of the Salesforce Contract and related invoices (the "**Invoices**") are not attached to this Declaration. However, subject to appropriate non-disclosure protections, a copy of the Salesforce Contract and the Invoices will be made available to the Debtor and the Official Committee of Unsecured Creditors (the "**Committee**") in connection with this Assumption Objection.

[13] *See* Ramirez Declaration at ¶9.

[14] *See,* Order (A) Approving Procedures Related to The Assumption, Assumption and Assignment, Or Transfer of Executory Contracts and Unexpired Leases; And (B) Granting Related Relief [ECF 526] (the "**Contract and Lease Procedures Orde**r").

-7-

32123134v.2

with a sale of the Debtors' assets (including, but not limited to, a sale governed by the Brand Asset Bid Procedures Order[15] but excluding any sale governed by the Non-Operating Brand Procedures Order[16]) or a plan of reorganization (each, a "**Restructuring Transaction**").

7. On October 19, 2023, the Debtors filed the *Notice of Potential Assumption, Assumption and Assignment or Transfer of Executory Contracts and Unexpired Leases* [Docket No. 601] (the "Assumption and Assignment Notice"). Attached as Schedule A to the Assumption and Assignment Notice was the *Schedule of Potential Assumed/Assigned Contracts* (the "**Initial Cure Notice**").

8. On December 1, 2023, the Debtor filed its *First Supplemental Notice of Potential Assumption, Assumption and Assignment or Transfer of Executory Contracts and Unexpired Leases* [ECF 807] (the "**Supplemental Cure Notice**") that identifies (A) certain Additional Contracts that it has designated for assumption and assignment including the following executory contracts to which Salesforce are counterparties (the "**Supplemental Cure Notice Contracts**"), and (B) the amount of any monetary default (the "**Debtors' Proposed Cure Amount**") that it contends must be cured as a condition of the assumption of these Cure Notice Contracts:

| Number | Contract Counterparty | Contract/Lease Debtor Party | Contract/Lease Title | Date of Contract/Lease | Cure Amount |
|---|---|---|---|---|---|
| 3292 | Salesforce.com, Inc. | Amyris, Inc. | Contract 03166566 - Tableau Cloud | 7/28/2022 | $645.75 |

9. The Cure Notice states that counterparties to the Additional Contracts should contact the debtor with an informal objection by December 10, 2023 and if not resolved via informal objection that any formal objection to the proposed assumption of an Additional Contract

---

[15] *See, Order (A) Approving Bid Procedures for the Sale of the Debtors' Brand Assets; (B) Approving Certain Bid Protections in Connection with the Debtors' Entry into Any Potential Stalking Horse Agreements; (C) Scheduling the Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief* [Docket No. 553] (the "**Brand Asset Bid Procedures Order**").

[16] *See, Order (I) Establishing Procedures Governing the Sale or Transfer of Certain De Minimis Assets and Non-Operating Brands, and (II) Granting Related Relief* [Docket No. 205].

32123134v.2

(including to the proposed Cure Amount) had to be filed with the Court not later than December 14, 2023.

10. On December 9, 2023, counsel for Salesforce sent an informal objection to the Debtor but the Debtor has not responded.

### THE CURE AMOUNT

11. The Salesforce' books and records that are pertinent to the Debtors' account show that: (A) each executory contract identified as the Cure Notice Contract on the Cure Notice does not match the description of the Salesforce Contract as listed on the Salesforce' records[17]; (B) the Salesforce Contract is correctly identified on Exhibit "A", the Cure Amount Summary, attached to the Ramirez Declaration; and (C) as of the date of December 12, 2023, the Salesforce' records show that the Debtors have failed to pay all Fees due and owing pursuant to the Salesforce Contract in an aggregate amount of not less than **US$ 19,695.42** (the "**Salesforce Cure Amount**") and such amount must be paid by the Debtors as a condition of the assumption of the Salesforce Contract.[18]

12. Because the Cure Notice does not correctly identify all the Potentially Assumable Contracts to which Salesforce are counterparties that may be assumed, it is possible that Salesforce Cure Amount may be increased once all executory contracts to be assumed are determined by Salesforce and the Debtors.[19]

### FUTURE PAYMENTS

13. If the Salesforce Contracts are assumed in connection any of the Applicable

---

[17] Accordingly, the Salesforce Assumption Objection requests the Debtor provide further information concerning the executory contract they propose may be assumed pursuant to the Sale.

[18] *See* Ramirez Declaration at ¶16.

[19] By the Salesforce Assumption Objection, Salesforce reserves all rights with respect to each Potentially Assumable Contract that is not identified in the Cure Notice that, ultimately, may be assumed pursuant to the Cure Notice and/or the Sale.

32123134v.2

Assumption Motions (as defined in this Assumption Objection), not less than an aggregate amount of US$ 19,695.42 (*i.e.,* the Future Payments) will become due and owing pursuant to the Salesforce Contracts.[20]

## BASIS FOR RELIEF

### The Salesforce Contract Constitutes an Integrated Contract That Must Be Assumed in Its Entirety

14. Pursuant to the U.S. Bankruptcy Code, a debtor-in-possession has the power, with court approval, to assume or reject any executory contract or unexpired lease. 11 U.S.C. §365(b)(1)(A). As a practical matter, a commercial relationship often includes several agreements that, taken together, constitute an integrated contract. Therefore, a threshold issue for the Court in determining whether to approve the assumption of any executory contract is to identify the agreements that constitute the "executory contract" at issue. *Lewis Bros. Bakeries, Inc. v. Interstate Brands Corp. (In re Interstate Bakeries Corp.),* 751 F.3d 955, 961 (8th Cir.2014) (To determine the applicability of this provision, the Court "must first identify what constitutes the agreements at issue.").

15. Where multiple agreements are intended to comprise one contract or transaction, a party may not sever them for purposes of assumption or rejection. "[A]ll of the contracts that comprise an integrated agreement must be either assumed or rejected, since they all make up one contract." *In re LG Philips Displays USA, Inc.,* No. 06–10245(BLS), 2006 WL 1748671, at *4 (Bankr. D. Del. June 21, 2006); accord *In re Buffets Holdings, Inc.,* 387 B.R. 115, 120 (Bankr. D. Del. 2008) (holding that two master leases incorporating twenty-one individual leases in twelve states were integrated, signed for the purpose of bundling and monetizing existing leases, were integrated with their subsidiary leases, and each lease group had to be assumed or rejected in its

---

[20] *See* Ramirez Declaration at ¶17.

entirety).

16.     In determining whether a series of agreements constitute an integrated contract or separate contracts, the intention of the parties is the first and foremost factor considered by a Court. *Fuentes v. TMCSF, Inc.*, 26 Cal. App. 5th at 548, 237 Cal. Rptr. 3d at 261 *citing Goodman v. Severin* (1969) 274 Cal.App.2d 885, 895, 79 Cal. Rptr. 555; *accord Stewart Title Guar. Co., supra,* 83 F.3d at 739 ("Determination of the issue depends primarily on the intention of the parties, the subject matter of the agreement, and the conduct of the parties". In addition, the subject matter of the agreement, and the conduct of the parties with respect to entering into the contract are critical factors in determining whether a contract constitutes one, integrated contract or a series of separate agreements. *Stewart Title Guar. Co. supra,* 83 F.3d at 739; *accord, In re Ferguson,* 183 B.R. 122, 124 (Bankr.N.D.Tex.1995). Further, in construing a contract, its unambiguous language alone will generally be deemed to express the intent of the parties. *Norman v. Apache Corp.,* 19 F.3d 1017, 1024 (5th Cir. 1994); *accord*, *Pirinate Consulting Corp, LLC v. C.R. Meyer & Sons, Co. (In re Newpage Corporation)*, 2017 WL 571478 at * 5.

17.     Here, the terms and conditions applicable to Salesforce Services that are subject to Salesforce Orders are set forth in the *Master Subscription Agreement* and the *Main Service Agreement* (*i.e.,* the MSAs) and, as noted, the MSAs together with the Salesforce Orders, constitute the Salesforce Contract. The Salesforce Contract (by the terms of the MSAs) provides that California law is the governing law of the Salesforce Contracts.[21]

18.     Salesforce submits that the Debtors and Salesforce intended the Salesforce Contract

---

[21] Each of the Orders included in the Salesforce Contracts are governed by the terms of an applicable MSA. *See* Ramirez Declaration at ¶8. The "Governing Law" sections of the MSAs applicable to the Salesforce Contracts specify California law as the applicable law governing these contracts. [*See* §12..9 of the applicable MSAs.] As previously noted, due to the confidentiality provisions of the Salesforce Contracts, these agreements have not been filed with the Court but Salesforce will make such agreements available subject to appropriate non-disclosure agreements and/or Court orders.

-11-

– consisting of Salesforce Orders and the MSAs – to provide a range of specific Salesforce Services and functionality that, taken together, comprise a comprehensive business solution. This integrated business solution is embodied in the Salesforce Contracts by providing an integrated on-demand customer relationship management and software application package for the Salesforce Customers such as the Debtor.  Clearly, the Debtor and Salesforce intended to create an integrated business solution for the Debtor by creating a comprehensive set of services and software applications and this integrated contract is comprised of Salesforce Orders and the MSAs.  In short, the individual Salesforce Orders, along with the MSAs, comprise a single, integrated contract:  the Salesforce Contract.

19. Further, in order for the Debtors to recreate the business functionality enjoyed by the Debtors, and to utilize any intellectual property or data created pursuant to the Salesforce Contract, Salesforce contends that the Buyer must have the Salesforce Contract assumed and assigned to it by the Debtors.  Because the MSAs are incorporated into each Salesforce Order, these agreements are clearly tied together as one integrated contract that must either be assumed or rejected *in toto*.  Accordingly, Salesforce submits that the entire Salesforce Contract – that is, the MSAs *and* all of Salesforce Orders identified on Exhibit "A" to the Ramirez Declaration – constitute a single, integrated executory contract that must be assumed *in toto.*

20. Ultimately, in order for the Debtor or the Buyer (in the event of Salesforce Contract is assigned to it by the Debtor) to utilize the same Salesforce Services after assumption of the Salesforce Contract as the Debtors have utilized until now, the entire Salesforce Contract has to be assumed and assigned to the Buyer.

### All Defaults Under an Assumed Contract Must Be Cured

21. Where (as in the case before the Court) a debtor has defaulted on an executory

contract, the Bankruptcy Code prohibits the debtor from assuming the contract unless the debtor:

> (A) cures, or provides adequate assurance that the [debtor] will promptly cure, such default . . . .
>
> (B) compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

*See* 11 U.S.C. § 365(b)(1)(A).

22.  "Once an assumption order is entered, the creditor must perform in accordance with the terms of the assumed agreements. . . In other words, the debtor must cure all defaults, assure future performance, and make the other contracting party whole before it may be permitted to assume the agreement.". *In re Kiwi Intern. Air Lines, Inc.*, 344 F.3d 311, 318 (3rd Cir. 2003); *cf. In re Columbia Gas System Inc.,* 50 F.3d 233, 238–39 (3d Cir.1995) ("the Bankruptcy Code provides that the cost of performing the debtor's obligations is an administrative expense of the estate. . . .").

23.  Here, the Salesforce' books and records show that: (A) the Debtor has failed to pay all Fees due and owing pursuant to the Salesforce Contract, and (B) as of December 12, 2023, an amount not less than US$ 19,695.42 (*i.e.,* Salesforce Cure Amount) is due and owing, but unpaid, pursuant to the Salesforce Contract.[22]

24.  Further, if the Salesforce Contract is assumed and assigned, not less than an aggregate amount of US$ 19,695.42 (*i.e.,* the Future Payments) will become due and owing pursuant to the Salesforce Contract.[23]

---

[22] *See* Ramirez Declaration at ¶16 and Exhibit "A".

[23] *See* Ramirez Declaration at ¶17 and Exhibit "A".

**Assignment of the Executory Contract and Unexpired Lease**

25. The Bankruptcy Code permits assignment of an unexpired executory contract or unexpired lease only if: (A) the debtor in possession or trustee assumes the contract or lease in accordance with 11 U.S.C. §365(b)(1), and (B) the assignee provides adequate assurance of future performance of such contract or lease, whether or not there has been a default in such contract or lease. *See* 11 U.S.C. §365(f)(1), (2)(A) and (B); *In re Fleming Companies, Inc.*, 499 F.3d 300, 305 (3d Cir. 2007) (assignment denied where the prospective assignee cannot perform a material and significant term of the agreement). Determining whether an assignee has provided adequate assurance of its ability to perform the contract in the future "must be determined by consideration of the facts of the proposed assumption." *In re Fleming Companies, Inc.,* 499 F.3d at 307. Adequate assurance of future performance must be provided before an assignment may be authorized even if the executory contract at issue is not in default (*e.g.*, a monetary default has been cured as a condition of assumption pursuant to 11 U.S.C. §365(b)(1)). *Id.*, 499 F.3d at 305).

26. Additionally, the non-debtor counterparty to the executory contract that may be assumed and assigned (such as Salesforce) is entitled to notice of the identity of the actual assignee and to demand adequate assurance of future performance by that specific assignee. *In re Golden Books Family Entertainment, Inc.*, 269 B.R. 300 (Bankr. D. Del. 2001).

**RESERVATION OF RIGHTS**

27. Salesforce does not object to assumption of the Salesforce Contract *per se provided* the Assumption Order includes the provisions and relief requested by the Assumption Objection.

28. With respect to any and all other executory contracts and/or unexpired leases to which it is a counterparty (individually, an "**Excluded Contract**" and, collectively, the "**Excluded Contracts**") *other than the Salesforce Contract* (*i.e.,* any Additional Salesforce Contract) hereby

-14-

expressly reserves (the "**Reservation of Rights**") all rights, interests, claims, counterclaims, rights of setoff and recoupment and/or defenses pertaining to any or all Excluded Contracts including, without limitation: (a) the right to object to the assumption and/or assignment by the Debtors of any such Excluded Contract, (b) the right to payment of all monetary defaults and the cure of all non-monetary defaults that exist with respect to each such Excluded Contract, (c) the right to assert any Cure Costs due and owing with respect to any Additional Salesforce Contract(s) that hereinafter are designated for assumption and assignment by the Debtors, and/or (d) the right to have the assignment of any such Excluded Contract specifically conditioned on the Court finding, based on competent evidence, that the actual assignee of such contract is capable of performing all terms and conditions of such Excluded Contract including, without limitation, payment of all amounts that will come due and owing subsequent to any such assignment.

WHEREFORE, if the Court determines to approve assumption of any of the Collective Salesforce Contracts, Salesforce requests entry of an Assumption Order (or the Sale Order if applicable) that includes the following provisions and relief:

A.    Entry by the Court of the following *Findings of Fact*: (1) each of the Collective Salesforce Contracts includes certain Order Forms and other agreements that, taken together, provide the Debtor with the comprehensive Salesforce Services; (2) each of the Collective Salesforce Contracts constitutes an integrated executory contract for purposes of assumption and assignment of executory contracts pursuant to: (i) 11 U.S.C. §365, (ii) the Applicable Assumption Motions, (iii) the Applicable Cure Notices, (iv) the Sale Order, and/or (v) any Plan; and (3) Salesforce Cure Amount includes: (i) as of December 12, 2023, not less than US$ 19,695.42 (*i.e.,* the Current Monetary Default, (ii) such further monetary default amounts (*i.e.,* the Future Monetary Default) that may accrue from and after December 12, 2023 through the Effective

Assumption Date of the Salesforce Contract, and (iii) all monetary defaults that accrue through the Effective Assumption Date, but which remains unpaid as of that date, with respect to any Additional Salesforce Contract not listed on the Applicable Cure Notices but which are assumed pursuant to the Applicable Assumption Motions, the Applicable Cure Notices, the Sale Order and/or the Plan (*i.e.*, the Additional Salesforce Contract Monetary Default);

   B. The requirement that, as a condition of approving and authorizing the assumption of any of the Collective Salesforce Contracts, the Debtor shall: (1) provide Salesforce with specific information identifying any and all Collective Salesforce Contracts that will be assumed and assigned; (2) file with the Court and serve Salesforce with the Revised Cure Notice listing: (i) all agreements and orders constituting each of the Collective Salesforce Contracts that the Debtor seeks to assume and/or assign, and (ii) the monetary defaults the Debtor contends must be cured with respect each of the Collective Salesforce Contracts that the Debtor seeks to assume and/or assign; and (3) pay not less than the aggregate Salesforce Cure Amount to cure the monetary defaults with respect to the Collective Salesforce Contracts the Debtor seeks to assume and/or assign;

   C. The requirement that, with respect to each Collective Salesforce Contracts not assumed, the Court shall enter a Rejection Order: (1) approving and authorizing the rejection of each Rejected Contract; (2) specifying the Effective Rejection Date applicable to each Rejected Contract; (3) terminating the Stay as it pertains to each Rejected Contract; (4) authorizing, but not requiring, Salesforce to terminate each Rejected Contract without further order of the Court; (5) terminating all obligations to provide any Salesforce Services (except as otherwise provided with respect to the Transition Services governed by subparagraph D, below), from and after the Effective Rejection Date; and (6) authorizing all of the afore-mentioned relief shall be effective on

the Effective Rejection Date without: (i) the filing of a motion by Salesforce seeking termination of the Stay or (ii) the Court entering any other order (other than the Rejection Order) terminating the Stay;

   D. The requirement that, if any of the Transition Services Customers (including, but not limited to the Debtor and/or the buyer) requests that any Transition Services be provided to the Bankruptcy Estate and/or any of the Transition Services Customers, the Transition Services Agreement entered into by any of the Transition Service Customers and/or Transition Services Order, as applicable, governing such Transition Services shall include the following provisions *unless* Salesforce agrees otherwise: (1) the Transition Services Customer shall be obligated to pay any and all amounts that are due and owing (*i.e.*, the Transition Services Claim) pursuant to a Transition Services Agreement and/or the Transition Services Order, as applicable; (2) Salesforce's obligation to provide any Transition Services shall terminate on the Effective Rejection Date of the specific Collective Salesforce Contract pursuant to which the such services have been or are being provided *unless* Salesforce, in its sole discretion, agrees otherwise; (3) if a Transition Services Customer requests that Salesforce provide Transition Services after the Effective Rejection Date of the specific Salesforce Contract governing such services and Salesforce agrees to provide such services, the Transition Services Customer shall be obligated to pay any Transition Services Claim that accrues with respect to such services (*i.e.,* the Post-Rejection Services Obligation); and (4) payment of any amount due with respect to the Post-Rejection Services Obligation shall not constitute a waiver or release of Salesforce's rights to payment of a Transition Services Claim incurred prior to the Effective Rejection Date of the applicable Rejected Contract pursuant to 11 U.S.C. §503 and 507 or derogate Salesforce's right to assert an administrative expense for all amounts due with respect to any and all Salesforce Services

and/or Transition Services provided from and after the Petition Date through the latter of, as applicable: (a) the Effective Assumption Date or (b) in the event the applicable Collective Salesforce Contract is rejected, through the Effective Rejection Date applicable to such contract;

      E.      The requirement that, pursuant 11 U.S.C. §§503 and 507, the Debtor and its Bankruptcy Estate shall be obligated to pay all amounts due with respect to all Salesforce Administrative Expenses pertaining to Salesforce Services provided to the Bankruptcy Estate from and after the Petition Date through the latter of, as applicable: (1) the Effective Assumption Date or (2) the Effective Rejection Date, as applicable.

      F.      Approval of the Reservation of Rights (as set forth in this Assumption Objection); and

      G.      Granting such other relief as may be just and proper under the facts and circumstances of the Bankruptcy Cases.

[*Remainder of Page Intentionally Left Blank.*]

Dated: December 14, 2023                              Respectfully submitted,

**WHITE AND WILLIAMS LLP**

*/s/ Michael A. Ingrassia*
Michael A. Ingrassia (No. 7068)
600 North King Street, Suite 800
Wilmington, DE 19801
Phone: (302) 467-4503
Fax:     (302) 467-4550
Email:   ingrassiam@whiteandwilliams.com

-and-

Amy E. Vulpio, Esquire
1650 Market Street, Fl. 18
Philadelphia, PA 19103
Phone : (215) 864-7000
Fax :    (215) 864-7123
Email : vulpioa@whiteandwilliams.com

-and-

**BIALSON, BERGEN & SCHWAB**,
A Professional Corporation
Thomas M. Gaa, Esq.
Gaye N. Heck
830 Menlo Avenue, Suite 201
Menlo Park, CA 94025
Phone: (650) 857-9500
Fax: (650) 494-2738
E-mail: Gheck@bbslaw.com

*Attorneys for Creditor Salesforce, Inc.*

32123134v.2