IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | Ref. Docket Nos. 911, |

## LIMITED OBJECTION TO THE JVN CONSUMER BRAND SALE, DEMAND FOR ADEQUATE ASSURANCE AND RESERVATION OF RIGHTS OF QUIET LOGISTICS, INC.

Quiet Logistics, Inc. ("Quiet"), secured creditor of Amyris Clean Beauty, Inc. ("Clean Beauty"), one of the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Cases"), by and through its undersigned counsel, files the following limited objection and reservation of rights (the "Objection") to the sale of the JVN consumer brand, inventory or other assets as proposed in the *Amended Notice of Auction for the Debtors' JNV, Stripes, and Rose, Inc. Brand Assets* (the "JVN Notice")[Docket No. 911].[2] In support hereof, Quiet respectfully represents:

1.  Quiet and Clean Beauty are parties to that certain Fulfillment Services Agreement, dated May 9, 2022 (as amended or supplemented from time to time, the "FSA"). While Clean Beauty Collaborative, Inc. is a third-party beneficiary of the FSA with respect to the Rose consumer brand, Clean Beauty is the only signatory to the FSA.[3]

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.
[2] All terms not otherwise defined herein shall be given the meanings ascribed to them in the Notices.
[3] The terms of the FSA are confidential but may be provided upon request and consent of the Debtors.

2.  Pursuant to the FSA, Quiet provides warehousing and shipping service for the Debtors for JVN branded products (the "Warehouse Inventory").[4] Quiet has continued to perform under the FSA during the pendency of these Cases.

3.  As of August 9, 2023 (the "Petition Date"), Quiet was fully secured with a possessory general warehouse lien under New York Consolidated Laws, Uniform Commercial Code - UCC § 7-209 (or Section 7-209 of the Uniform Commercial Code (the "UCC"), as applicable) (the "Warehouse Lien").[5]

4.  As of the Petition Date, Quiet holds security deposits of no less $735,129.65 to secure the obligations under the FSA.

5.  Further, Quiet performs transportation services for Debtors under the FSA and had transportation liens under NY UCC § 7-307 (2022) (or Section 7-307 of the UCC, as applicable) (the "Transportation Liens" and together with the Warehouse Lien, the "Quiet Liens").

6.  Quiet continues to be secured with the Warehouse Inventory in its warehouses on a post-petition basis under Section 7-209 of the Uniform Commercial Code.

7.  On October 16, 2023, the Bankruptcy Court entered the Bid Procedures Order [Docket No. 553], approving the Bid Procedures.

8.  On December 13, 2023, the Debtors held an Auction to sell the JVN consumer brand and assets.

9.  On December 14, the JVN Notice was filed designating Windsong Global, LLC (the "JVN Successful Bidder") as the Successful Bidder for the JVN Brand Assets with the highest or otherwise best Bid for the purchase price of $1,250,000 (the "JVN Sale"). Also, in the JVN

---

[4] Quiet also provides services under the FSA with respect to the Rose Inc. brand inventory and will object to the sale of the Rose Inc. brand and assets separately.
[5] See Quiet's Proof of Claim No. 516 filed against Clean Beauty Collaborative, Inc. with respect to the Rose Products and Proof of Claim No. 518 filed against Clean Beauty with respect to the JVN Products.

2

Notice is the statement that the JVN Successful Bidder does not presently intend to designate any executory contracts or unexpired leases as Transferred Contracts.

10. According to Section 2.1(a) of the JVN Purchase Agreement, the purchase price of a cash payment of $1,250,000 (the "JVN Cash Purchase Price") and other assumed liabilities purchases certain assets, including all finished goods, such as the Warehouse Inventory, free and clear of liens.

11. As set forth on the *First Supplemental Notice of Potential Assumption, Assumption and Assignment, or Transfer of Executory Contracts and Unexpired Leases*, [Docket No. 807] Quiet's cure amount for the assumption of its contract is $3,311,338.83 (the "Quiet Cure").

12. Should either the JVN Successful Bidder (or any Rose successful bidder) later designate the FSA as a Transferred Contract, Quiet does not object to the assumption and assignment of the FSA and the release of the Quiet Liens with respect to the Debtors provided, (i) the Quiet Cure is paid, (ii) all unpaid post-petition arrearage outstanding is paid at the closing of the sale (as discussed in detail below), and (iii) any successful bidder provides Quiet adequate assurance of future performance as required under Section 365 of the of the title 11 of the United States Code (the "Bankruptcy Code").

13. In the event the FSA is not assumed and assigned, then the current JVN Cash Purchase Price does not pay in full the Quiet Liens. Section 363(f) Bankruptcy Code provides that a Debtor may sell assets free and clear of liens or interests of any person if the purchase price is greater than the value of the liens or the lienholder consents. See *Criimi Mae Servs. Ltd. P'ship v. WDH Howell, LLC (In re WDH Howell, LLC)*, 298 B.R. 527 (D.N.J. 2003); *In re Ferris Props.*, No. 14-10491 Jointly Administered, 2015 Bankr. LEXIS 2554 (Bankr. D. Del. July 30, 2015). Quiet does not consent to the sale free and clear of the Quiet Liens.

14. Quiet files this limited objection to the sale of the Warehouse Inventory in its warehouses free and clear of the Quiet Liens (with no assumption of the FSA) unless it receives payment in full satisfaction of its Quiet Liens or Quiet consents to other treatment. To the extent that any order approving the JVN Sale provides that the Warehouse Inventory is excluded from the sale, Quiet will withdraw its objection to the JVN Sale.

15. As of December 14, 2024, the FSA is likely to be rejected. Quiet hereby demands adequate assurance that the Debtors will continue to perform on a post-petition basis, and the Quiet Liens will not be diminished by Quiet's continued performance under the FSA. Quiet does not want to interrupt the Debtors operations, however, once the Warehouse Inventory leaves the warehouse, Quiet's liens will terminate. To the extent Quiet continues to perform on the FSA during December 14, 2024, through the closing of the JVN Sale, any sale of the Rosen Inc. Consumer Brand or as such time may be extended until the date of the rejection of the FSA (the "Transition Period"), Quiet reserves the right to assert an administrative claim to the extent of the diminishment of the Quiet Liens for the Debtors use and sale of the Warehouse Inventory in the ordinary course of its business.

16. Since the Petition Date, Quiet has continued to perform under the FSA. Payment for post-petition warehouse and transportation services continues to accrue. According to the FSA, payment on the November services will be due and owing in early January pursuant to the terms of the FSA and Quiet continues to provide warehousing and transportation services in December. The Quiet Liens attach to the extent of the value of post-petition services. Quiet reserves the right to assert an administrative claim to the extent any post-petition services are not paid in the ordinary course.

17. Alternatively, if the FSA is assumed and assigned, all post-petition arrearage must be paid in addition to the Quiet Cure at the closing of the sale to resolve the post-petition Quiet Liens. Bankruptcy Code Section 365(b)(1) makes clear that defaults must be cured as of the assumption. Such defaults that must be cured include both pre-petition and post-petition defaults. *In re McLean Industries, Inc.*, 96 B.R. 440, 449 n. 11 (S.D.N.Y. 1989) ("assumption creates a post-petition liability and requires cure of pre-petition and post-petition defaults"); *In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 173 (Bankr. E.D. Va. 1993) ("Section 365(b)(1)(A) requires the debtor in possession to cure pre- and post-petition defaults . . . . This conclusion is clear from §365(b)(1) which measures defaults as of the 'time of assumption'").

18. Quiet hereby expressly reserves all rights, interests, claims, counterclaims, rights of setoff and recoupment and/or defenses pertaining to the FSA including, without limitation, (a) the right to demand adequate assurance of future performance from any party assuming the FSA; (b) the right to payment of all monetary defaults and the cure of all nonmonetary defaults that exist with respect to the FSA at the closing of any sale that includes the Warehouse Inventory; (c) the right to assert administrative claims for the diminution in value of the Quiet Liens if such diminution shall occur and for non-payment of post-petition services under the FSA; (d) all rights available under the Bankruptcy Code in the event the FSA is rejected, including, without limitation all rights to coordinate a wind down, access and disposition of the Warehouse Inventory, and foreclose on the Quiet Liens should the Warehouse Inventory be abandoned; and (f) all other rights under the Bankruptcy Code and appliable law.

19. Accordingly, Quiet respectfully requests that any sale which includes the Warehouse Inventory be denied unless (i) the FSA is assumed and assigned to a bidder acceptable to Quiet with all pre-petition and post-petition arrearage cured at closing, (ii) Quiet's Liens are

paid in full unless Quiet consents to other treatment, or (iii) the orders approving JVN Sale specifically exclude the Warehouse Inventory from the sale.

20.     Quiet requests adequate assurance from the Debtors for (i) its continued performance under the FSA during the Transition Period in the form of consent to administrative claims, (ii) agreement as to the timing of the abandonment of the Warehouse Inventory upon rejection of the FSA, (iii) consent to foreclosure of the Quiet Liens after abandonment and such other relief that may be appropriate.

Dated: December 15, 2023  
Wilmington, Delaware

**BIELLI & KLAUDER, LLC**

*/s/ David M. Klauder*  
David M. Klauder, Esquire (No. 5769)  
1204 N. King Street  
Wilmington, DE 19801  
Phone: (302) 803-4600  
Email: dklauder@bk-legal.com

and

**MOORE & VAN ALLEN PLLC**

Hillary B. Crabtree, Esquire (*pro hac vice*)  
321 North Clark Street, Suite 3000  
100 North Tryon Street, Suite 4700  
Charlotte, NC 28202-4003  
Phone: (704) 331-1000  
Email: hillarycrabtree@mvalaw.com

*Counsel for Quiet Logistics, Inc.*