IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC. et al,<br><br>Debtors.[1] | ) Chapter 11<br>)<br>) Case No. 23-11131 (TMH)<br>)<br>) (Jointly Administered)<br>)<br>)<br>)<br>) Re: Docket Nos. 917<br>)<br>) |

**AD HOC CROSS-HOLDER GROUP'S
NOTICE OF DEPOSITION TO AMYRIS, INC.**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), made applicable to these proceedings by Rules 7030 and 9014 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), the ad hoc group (the "Ad Hoc Cross-Holder Group") of certain unaffiliated (a) holders of notes or other indebtedness issued under that certain Indenture, dated as of November 15, 2021 pursuant to which Amyris, Inc. issued certain 1.50% Convertible Senior Notes Due 2026 and/or (b) shareholders of Amyris, Inc., as identified on that certain Verified Statement of Ad Hoc Cross-Holder Group Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure [Docket No. 397], as the same may be amended or supplemented from time to time, by and through its undersigned counsel, will take the oral deposition of the designated representative or representatives of Amyris, Inc. (the "Debtor" or "Amyris") on **January [ ], 2024 at 10:00 a.m.** (Eastern Time) remotely via Microsoft Teams or a similar remote video platform, in connection with the contested matter concerning the Debtors'

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

*Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors, as Modified* [Docket No. 892] (as the same may be amended or modified, the "Plan") filed in the above-captioned cases jointly administered under Case No. 23-11131 (the "Chapter 11 Cases").

Pursuant to Rule 30(b)(6) of the Fed. R. Civ. P. and Fed. R. Bankr. P. 7030, the Debtor is required to designate one or more appropriate persons to testify on its behalf concerning the topics identified in the attached **Schedule A**.

The deposition will be conducted pursuant to the Federal Rules of Civil Procedure for the purpose of discovery, for use at any contested hearing, or both. The deposition will take place before an officer authorized and certified to administer oaths and will be recorded by video and/or stenographic means, consistent with Fed. R. Civ. P. 30(b)(3). You are invited to attend and cross examine.

Dated: December 18, 2023
Wilmington, Delaware

**WOMBLE BOND DICKINSON LLP**

By: */s/ Matthew P. Ward*
Matthew P. Ward (DE Bar No. 4471)
Morgan L. Patterson (DE Bar No. 5388)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: matthew.ward@wbd-us.com
Email: morgan.patterson@wbd-us.com

**ARENTFOX SCHIFF LLP**

By: */s/ Andrew I. Silfen*
Andrew I. Silfen (*Pro Hac Vice*)
Beth M. Brownstein (*Pro Hac Vice*)
1301 Avenue of the Americas
42nd Floor
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Andrew.Silfen@afslaw.com

        Beth.Brownstein@afslaw.com

and

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON P.A.**

By:   */s/ Eric J. Silver*
      Eric J. Silver (*Pro Hac Vice*)
      150 W. Flagler St, Suite 2200
      Miami, FL 33130
      Telephone: (302) 789-3200
      Facsimile: (305) 789-2688
      esilver@stearnsweaver.com

## SCHEDULE A

## **DEFINITIONS**

For purposes of this Deposition, the terms below are defined as follows:

1. The terms "**communication**" or "**communications**" mean any manner or means of disclosure or exchange of information, whether oral, written, video, audio, or electronic form and whether face to face, in a meeting, by telephone, by mail, by email, by personal delivery, or otherwise.

2. The terms "**Debtor**," "**Debtors**" and "**Amyris**" refer to (i) Amyris, Inc., (ii) AB Technologies LLC, (iii) Amyris-Olika, LLC, (iv) Amyris Clean Beauty, Inc., (v) Amyris Fuels, LLC, (vi) Aprinnova, LLC, (vii) Adno Shell, Inc. (f/k/a Onda Beauty, Inc.), (viii) Upland 1 LLC, (ix) Clean Beauty Collaborative, Inc, (x) Clean Beauty 4U LLC, and (xi) Clean Beauty 4U Holdings, LLC, as well as with respect to each of the foregoing (i)-(xi), any and all of such entity's current and former corporate parents, partners, trustees, fiduciaries, owners, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, advisors, consultants, professional representatives, affiliates and assigns, and any of their officers, directors, employees, agents, representatives, and all other persons acting or purporting to act on its behalf.

3. The term "**Disclosure Statement**" refers to the *Disclosure Statement with Respect to Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors, as Modified* [Docket No. 893] (as the same may be amended or modified).

4. The term "**document**" means, without limitation, the original and any and all drafts and non-identical copies of any writings of any kind in Your possession, custody or control, including, but not limited to correspondence, scripts, records, reports, external and internal memoranda, electronic mail (e-mail), text messages, private or direct messages via social media platforms, computer or word processor printouts, information maintained on computer hard drive

4

or CD-Rom, calendars, routing slips, transcripts of oral testimony or statements, agreements and contracts (including all modifications and/or revisions thereof), calculations, court or agency papers, digital voice exchange transcripts or summaries, notes, letters, telegrams, telexes, messages (including, but not limited to, reports or notes of telephone conversations, messages and conferences), studies, analyses, books, magazines, newspapers, booklets, brochures, pamphlets, press releases, circulars, bulletins, instructions, minutes, other communications (including, but not limited to inter- and intra-office communications), questionnaires, surveys, contracts, memoranda of agreements, assignments, books of accounts, orders, records or summaries of negotiations, records or summaries of personal interviews or conversations, records or summaries of investigations, records or summaries of negotiations, diaries, schedules, printouts, drawings, blueprints, specifications, graphs, charts, studies, planning materials, statistical statements, forecasts, work papers, invoices, statements, receipts, income and other tax returns, bills, checks, bank books, bank statements, vouchers, notebooks, data sheets, photographs, microfilm, microfiche, photographic negatives, tapes, magnetic tapes, paper tapes, cassette tapes, videotapes, plotter output recordings, discs, data cards, films, data processing files, and other computer readable records or programs, breadboards, catalogues, brochures, all other written or printed matter of any kind, and all other data compilation from which information can be obtained, and translated if necessary. Any such document bearing on any page thereof, any marks such as initials, stamped indices, comments or notations of any character and not part of the signed text or photographic reproduction thereof is to be considered and produced as a separate document. **For the avoidance of doubt, the term "document" includes emails.**

  5.  The term "**including**" means including, but not limited to.

6. The term "**Independent Director**" refers to M. Freddie Reiss, as well as his agents, employees, servants, or representatives, and all other persons purporting to act on his behalf.

7. The term "**Independent Director Report**" means that certain report prepared by the Independent Director, comprising 61 pages, together with 455 pages of appendices, as described in Section 2.F.4(a) of the Disclosure Statement.

8. The term "**Lab-to-Market Sale Motion**" refers to the *Motion for (I) An Order (A) Approving Bid Procedures for the Sale of the Debtors' Lab-to-Market Assets; (B) Setting Minimum Reserve Price; (C) Scheduling the Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II) An Order or Orders (A) Approving the Sale of the Debtors' Lab-to-Market Assets Free and Clear of All Encumbrances; and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 917] filed by the Debtors in the Chapter 11 Cases on December 14, 2023.

9. The term "**person**" means any individual, partnership, firm, association, corporation or other business or any government or other legal entity, and each as of its directors, officers, employees, servants or representatives, and all other persons purporting to act on its behalf.

10. The term "**Petition Date**" refers to August 9, 2023.

11. The term "**post-petition**" refers to time on or after August 9, 2023.

12. The term "**pre-petition**" refers to time prior to August 9, 2023.

13. The terms "**relate**," "**relate to**," and/or "**refer**," with respect to any given subject mean anything that concerns, constitutes, contains, compromises, consists of, discloses, describes, discusses, explains, evidences, embodies, reflects, identifies, states, summarizes, refers to, pertains

to, deals with, implies or authorizes directly or indirectly, or is in any manner whatsoever pertinent to that subject.

14. The terms "**You**" or "**Your**" refers to the Debtors, as well as any and all current and former corporate parents, partners, trustees, fiduciaries, owners, officers, directors, employees, agents, representatives, predecessors, successors, attorneys, advisors, consultants, professional representatives, affiliates and assigns, and any of their officers, directors, employees, agents, representatives, and all other persons acting or purporting to act on any of their behalf.

15. Capitalized terms not otherwise defined herein have the meaning given to them in the Plan or Disclosure Statement, as applicable.

16. For purposes of interpreting or construing the scope of these topics, the terms used must be given their most expansive and inclusive interpretation unless otherwise specifically limited in the topic itself. This includes, without limitation, the following:

   A. Construing the words "**and**" and "**or**" used in any topic in the disjunctive or conjunctive, as necessary, to make the topic more inclusive;

   B. Construing the words "**any**" and "**all**" used in any topic to mean "any and all," as necessary, to make the topic more inclusive;

   C. Construing the words "**all**" and "**each**" used in any topic to mean "all" and "each," as necessary, to make the topic more inclusive;

   D. Construing the singular form of any word to include the plural and the plural form to include the singular;

   E. Construing the past tense of a verb to include the present tense and the present tense to include the past tense; and,

   F. Construing masculine or feminine pronouns to mean feminine or masculine pronouns, respectively, as necessary to make the topic more inclusive.

**TOPICS**

1. All investigations performed by the Debtors into Estate Causes of Action (as defined in the Plan), including investigations performed by or on behalf of the Independent Director.

2. All investigations performed by the Debtors into Direct Claims (as defined in the Plan), which the Debtors propose to be released under the Third Party Release Settlement (as defined in the Plan), including investigations performed by or on behalf of the Independent Director.

3. All Causes of Action (as defined in the Plan) that the Debtors propose to be released under the Plan, the nature and value of such Causes of Action.

4. The factual basis of liability and damages for Cause of Action (as defined in the Plan) that the Debtors propose to be released under the Plan.

5. All facts and fact-based assumptions stated, identified, or referenced in the Independent Director Report, or upon which the Independent Director Report otherwise relies.

6. All documents referenced in, incorporated by reference, or attached to the Independent Director Report.

7. The preparation of each draft of the Independent Director Report, including scope and details of the process; timing; and the identity of all persons who participated in the drafting or received copies of any draft.

8. The genesis and basis for third-party releases and injunctions under the Plan.

9. Supply chain and accounting irregularities referenced in the Disclosure Statement, including any investigation and other actions taken in response to such irregularities.

10. Investigations, claims, charges, or allegations asserted by any regulator (including the U.S. Securities and Exchange Commission) against the Debtors or their directors or officers.

11. The value of the Debtors' assets, including but not limited to all valuation information provided to the Debtors by The Michel-Shaked Group.

12. The specific identities of the persons identified as "Exculpated Parties" in the Plan, together with the work done by each such Exculpated Party on behalf of or for the benefit of the Debtors, including but not limited to any services performed by the same for or on behalf of the Debtors.

13. The specific identities of the persons identified as "Released Parties" in the Plan, together with the work done by each such Exculpated Party on behalf of or for the benefit of the Debtors, including but not limited to any services performed by the same for or on behalf of the Debtors.

14. Your contention in footnote 9 of the Disclosure Statement that "estimated recoveries from Retained Causes of Action [are] in the range of $25 to $35 million," together with all documents underlying, supporting, consulted with and/or relied upon by You in support thereof.

15. The Liquidation Analysis attached to the Disclosure Statement as Exhibit D, including the Debtors' assumptions regarding the value of any causes of action, including the uncollectibility thereof, estimated expenses, estimated claims, and projected recoveries, together with all documents underlying, supporting, consulted with and/or relied upon by You in support thereof.

16. The process for exercising the Sale Option, including all statements made in Paragraph 39 of the Lab-to-Market Sale Motion.

WBD (US) 4859-8122-3063v1