**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

Hearing Date:  January 9, 2024 at 11:00 a.m. (ET)
Objection Deadline:  January 2, 2024 at 4:00 p.m. (ET)

**MOTION FOR AN ORDER APPROVING <u>MODIFIED</u> KEY EMPLOYEE INCENTIVE PLAN FOR SENIOR LEADERSHIP EMPLOYEES**

The above-captioned debtors and debtors-in-possession (the "<u>Debtors</u>" or "<u>Amyris</u>") file this motion (the "<u>Motion</u>") for the entry of an order substantially in the form of **Exhibit A** hereto (the "<u>Proposed Order</u>") approving a modified key employee incentive program (as modified, the "<u>KEIP</u>" or the "<u>Program</u>") for six (6) Senior Leadership Employees (as defined below).  In support of this Motion, the Debtors rely upon and refer this Court to the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "<u>First Day Declaration</u>") and the declaration of Steven J. Fleming (the "<u>Fleming Declaration</u>"), attached hereto and incorporated herein by reference.[2]

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of*

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2]    A capitalized term used but not defined herein shall have the meaning ascribed to it in the First Day Declaration.

*Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. The Debtors confirm their consent, pursuant to Rule 9013-1(f) of the Local Rules, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein are sections 105(a), 363(b), and 503(b) and (c)(3) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

## INTRODUCTION

4. It is imperative that the Debtors modify their existing KEIP imminently in light of certain unanticipated developments that have taken place in these Chapter 11 Cases since the KEIP was initially devised and approved by the Court approximately two and a half months ago.[3] Specifically, Tranche One of the KEIP as initially structured comprised approximately $2 million of incentive payments that would be made to senior management upon consummation of consumer brand sales at target prices in order to fund a restructuring plan. Unfortunately, however, despite the Debtors' best efforts in marketing and negotiating with interested parties for the brand assets, the sales process did not generate proceeds in the anticipated target range for any of the brands. Without material proceeds from the brand sales to fund the Debtors' restructuring, agreements with key customers DSM-Firmenich and Givaudan are now critical.

---

[3] The Court's Order approving the Debtors' existing KEIP and Key Employee Retention Plan for certain non-insider employees (the "KERP") is entered as docket number 286. No changes to the KERP are proposed hereby. However, one employee who was not previously listed as a KERP participant and is instrumental to the Debtors' restructuring has been added to the KERP by agreement of the Debtors and the Creditors' Committee.

Senior management needs to continue to be incentivized to preserve operations and negotiate these agreements since they will not receive any incentive pay based on the brands sales, which were not successful.

5. By the Motion, therefore, the Debtors seek authorization to modify the Debtors' existing KEIP to address these new developments. Specifically, the Debtors propose that for five (5) members of the Debtors' senior management, the KEIP should be modified to replace payouts based on the consumer brands sales with payouts based on definitive agreements with both DSM-Firmenich and Givaudan such that senior management remains incentivized to maximize and preserve value for all stakeholders.

6. Importantly, the proposed modifications to the KEIP will not increase the aggregate cost that was originally budgeted. As the KEIP is currently structured, only a very small fraction of the approximately $2 million of the original Tranche One payments based on the consumer brands sales ($30,000) has come due and is to be paid to only one of the original twelve KEIP Participants. Thus, there are already amounts budgeted under the KEIP that can be re-allocated as proposed herein without increasing the overall cost.

7. Without this relief, KEIP Participants will not be properly incentivized to achieve the Debtors' objectives, which will imperil the success of these Chapter 11 Cases. As set forth in the Fleming Declaration, the modified KEIP is reasonable, within the range of comparable plans, and reflect a sound exercise of the Debtors' business judgment. Accordingly, the Debtors respectfully request the Court authorize the Debtors to implement the modified KEIP.

8. For these reasons, and as more fully explained below, the Debtors respectfully request that this Court grant the relief requested herein.

## BACKGROUND

**A.     Case Background**

9.     On August 9 and August 21, 2023 (as applicable, the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

10.    On August 27, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") including the following:  U.S. Bank Trust Co. NA; Cosan U.S. Inc.; Sartorius Stedim North America Inc.; Hearst Magazine Media Inc.; Wiley Companies; Park Wynwood LLC; and Allog Participacoes Ltda.

11.    A detailed description of the Debtors' business and facts precipitating the commencement of these Chapter 11 Cases are set forth in the First Day Declaration.

12.    On December 12, 2023, the Debtors filed (a) the *Disclosure Statement With Respect to Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors, as Modified* [Docket No. 893] (the "Disclosure Statement"), which included as Exhibit C, the Amended and Restated Plan Support Agreement (the "PSA"), and (b) the *Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors, as Modified* [Docket No. 892] (the "Plan").

13.    On December 13, 2023, the Court entered its *Order (i) Approving the Disclosure Statement; (ii) Scheduling Confirmation Hearing; (iii) Approving Form and Manner*

*of Notice of Confirmation Hearing; (iv) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Etc.* and scheduled a confirmation hearing for January 24, 2024 [Docket No. 897].

14. On December 14, 2023, the Debtors filed the *Notice of Filing of Executed Revised Amended and Restated Plan Support Agreement and Joinders of the Official Committee of Unsecured Creditors and the Ad Hoc Noteholder Group* [Docket No. 910], with a further amended and restated Plan Support Agreement (the "Amended PSA").

15. On December 14, 2023, the Debtors also filed the *Motion for (i) an Order (a) Approving Bid Procedures for the Sale of the Debtors' Lab-to-Market™ Assets; (b) Setting Minimum Reserve Price; (c) Scheduling the Auction and Sale Hearing; (d) Approving the Form and Manner of Notice Thereof; and (e) Granting Related Relief; and (ii) an Order or Orders (a) Approving the Sale of the Debtors' Lab-to-Market™ Assets Free and Clear of All Encumbrances; and (b) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 917], pursuant to the Amended PSA in the event of a toggle event (as described in the Amended PSA).

B. **The Proposed Modified KEIP**

16. The "Senior Leadership Employees" are six (6) members of the Debtors' senior leadership team, consisting of among others the Debtors' Chief Financial Officer/Interim Chief Executive Officer, Chief Strategist/Product Development, and Chief People Officer.[4] The Senior Leadership Employees are responsible for executing the Debtors' operating and strategic plans, including maintaining the Debtors' business operations, overseeing and addressing issues during these Chapter 11 Cases, managing the Debtors' sale and marketing process, and

---

[4] The original KEIP also included five individuals who led the Debtors' consumer brands as well as the Debtors' former Chief Operations Officer who are not included in the modified KEIP.

maintaining employee morale and a positive culture among the Debtors' employees during these Chapter 11 Cases. The Debtors believe that the Senior Leadership Employees cannot be easily replaced without significant operational setbacks and material efficiency losses, especially during the anticipated brief duration of these Chapter 11 Cases. The Senior Leadership Employees are vital to the on-going stability, continuity, and strength of the Debtors during these Chapter 11 Cases.

17. There are two tranches of KEIP awards – the "Plan KEIP Award" and the "Commercial Contracts KEIP Award." The first tranche (the "<u>Plan KEIP Award</u>") is payable to all six (6) of the Senior Leadership Employees based on compliance with the DIP budget and confirmation of a chapter 11 plan. The second tranche (the "<u>Commercial Contracts KEIP Award</u>") is payable to five (5) of the six (6) Senior Leadership Employees based upon the Debtors executing definitive agreements with both DSM-Firmenich and Givaudan and such agreements becoming effective upon confirmation of a plan. The performance targets were developed carefully to ensure they are an appropriate "reach" to drive performance, on the one hand, but will not present unrealistic or unattainable goals, on the other hand—which would of course thwart the incentivizing nature of the modified KEIP.

18. **Plan KEIP Award.** The Plan KEIP Award is a pool in the amount of $579,000 (the "<u>Plan KEIP Award Pool</u>"). Plan KEIP Awards are payable to all six (6) Senior Leadership Employees, based upon the following targets:

1. Fifty percent (50%) of the target payout ($289,500) is conditioned on the Debtors staying within 15% of the cumulative "Total Operating Cash Flows" line item of the approved DIP financing budget in effect at the time through confirmation of the chapter 11 plan.

2. The remaining fifty percent (50%) of the pay-out ($289,500) is earned upon the effective date of a chapter 11 plan.

19. **Commercial Contracts KEIP Award.** In addition to the Plan KEIP Award, the Commercial Contracts KEIP Award is a pool in the amount of $623,750 (the "Commercial Contracts KEIP Award Pool"). Commercial Contracts KEIP Awards are payable to five (5) of the Senior Leadership Employees who are instrumental in effectuating agreements with DSM-Firmenich and Givaudan.

20. In the event that the employment of a Senior Leadership Employee is terminated without cause, prior to target, such Senior Leadership Employee will receive his/her KEIP Award on a *pro rata* basis based on the percentage of the amount of time from the Petition Date to the date the KEIP Award is earned. Under all other employment termination scenarios, Senior Leadership Employees will not be eligible for any payments under the KEIP.

21. Subject to Court approval of the KEIP, the Senior Leadership Employees will waive any contractual cash severance and/or bonus payments, including claims arising from rejection of change in control agreements or executive severance agreements.

## RELIEF REQUESTED

22. By this Motion, pursuant to sections 105(a), 363(b) and 503(b) and (c)(3) of the Bankruptcy Code and Bankruptcy Rule 6004, the Debtors request the entry of the Proposed Order, attached hereto as Exhibit A, approving the modified KEIP for the Senior Leadership Employees.

**BASIS FOR RELIEF REQUESTED**

**A.     Implementation of the Modified KEIP Is Warranted Under Section 363(b)(1) as an Appropriate Exercise of the Debtors' Business Judgment**

23.     "The [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate," 11 U.S.C. § 363(b)(1), as long as the debtor can "show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *see also Culp v. Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015). Where there is a reasonable basis for a debtor's business decisions, courts generally do not contradict the proposed course of conduct. *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

24.     The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment. *In re Global Home Prods., LLC*, 369 B.R. 778, 784 (Bankr. D. Del. 2007) (citing *In re U.S. Airways, Inc.*, 329 B.R. 793, 795 (Bankr. E.D. Va. 2005)). Therefore, the implementation of the proposed KEIP is a sound exercise of the Debtors' business judgment and, as such, should be approved under section 363(b) of the Bankruptcy Code. The Senior Leadership Employees are essential to the Debtors' operations and their services are necessary to maximize the value of these Debtors' estates. The KEIP establishes goals for the Senior Leadership Employees that, if achieved, will have a meaningful impact on the Debtors' chapter 11 cases. Moreover, the Court already has determined that the payment levels under the KEIP are reasonable in light of the size of the Debtors' estates and the amounts that comparable companies have provided as incentives to their senior leadership in

other chapter 11 cases. As a result, the Debtors, in their sound business judgment, believe that the implementation of the KEIP is well justified under the circumstances and will benefit the Debtors' estates and their creditor constituencies.

B.     **The Modified KEIP Is Warranted Under Section 503(b)(1) as Actual, Necessary Costs and Expenses of Preserving the Debtors' Chapter 11 Estates**

25.    Section 503(b) of the Bankruptcy Code states in pertinent part that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including – (1)(A) the actual necessary costs and expenses of preserving the estate including – (i) wages, salaries, and commissions for services rendered after commencement of the case. . . ." 11 U.S.C. § 503(b); *see also In re APF Co.*, 270 B.R. 567, 570-71 (Bankr. D. Del. 2001) (postpetition employee bonus is an administrative expense claim under section 503(b)(1)(A)). As discussed above, the KEIP is appropriate designed to maximize the value of these estates and are appropriately categorized as wages earned after the Petition Date.

C.     **The Modified KEIP Provides Incentives, Not Retention or Severance Payments, and Therefore Sections 503(c)(1) and 503(c)(2) Do Not Apply**

26.    Sections 503(c)(1) and (2) of the Bankruptcy Code govern retention and severance payments to insiders, and therefore does not apply to performance-based incentive plans like the KEIP. *See*, *e.g.*, *In re Alpha Natural Res., Inc.*, 546 B.R. 348, 356 (Bankr. E.D. Va. 2016) ("On its face, § 503(c)(1) does not apply to a KEIP because the payments thereunder are incentive and not purely retentive."); *In re Nobex Corp.*, 2006 Bankr. LEXIS 417, at *8 (Bankr. D. Del. Jan. 19, 2006) ("The sale-related incentive pay to [senior management] is not governed by sections 503(c)(1) or 503(c)(2) of the Bankruptcy Code.").

27. Also, the KEIP is not subject to the restrictions set forth in section 503(c)(2) of the Bankruptcy Code with respect to severance payments to insiders because no payments under the KEIP are tied to the termination of employment. See *In re Dana Corp.*, 358 B.R. 567, 577-78 (Bankr. S.D.N.Y. 2006) (incentive plan was not subject to section 503(c)(2) of the Bankruptcy Code because incentives were not tied to termination of employment); accord In *In re Pilgrim's Pride Corp.*, 401 B.R. 229, 235-36 (Bankr. N.D. Tex. 2009) (consulting agreement did not fall under section 503(c)(2) of the Bankruptcy Code because payments were not intended as severance).

28. The modifications to the KEIP were designed in order to incentivize a value maximizing plan and align the Senior Leadership Employees' interests with the Debtors' economic stakeholders.  The KEIP was not designed to retain the Senior Leadership Employees, although a prerequisite to receiving a payment under the KEIP is that the particular Senior Leadership Employee must be employed at the time of the payment unless such employee's employment was terminated without cause.  This should not bar its implementation; any successful incentive program would be expected to have this indirect benefit.  *See, e.g., In re Global Home Prods., LLC,* 369 B.R. at 786 ("The fact, as Debtors pointed out, that all compensation has a retention element does not reduce the Court's conviction that Debtors' primary goal [is] to create value by motivating performance.  All companies seek to retain employees they value by fairly compensating them.").  As a result of the foregoing, the Debtors respectfully submit that sections 503(c)(1) and 503(c)(2) of the Bankruptcy Code do not apply to the modified KEIP.

**D. Approval of the Modified KEIP Is Justified by the Facts and Circumstances of these Chapter 11 Cases and Therefore Satisfies Section 503(c)(3)**

29. Section 503(c)(3) of the Bankruptcy Code prohibits transfers or obligations outside the ordinary course of business "not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition." 11. U.S.C. § 503(c)(3). Courts use the business judgment standard in analyzing transfers and obligations under section 503(c)(3). *See, e.g., In re Alpha Natural Res., Inc.*, 546 B.R. at 357-58 (citing *In re Borders Grp., Inc.*, 453 B.R. 459, 474 (Bankr. S.D.N.Y. 2011) ("[T]he legal standard under § 363(b) is no different than section 503(c)(3) . . . ."); *In re Global Home Prods., LLC*, 369 B.R. at 786 (applying the business judgment test to an incentive plan)).[5]

30. Courts assessing a debtor's business judgment relating to an incentive program under section 503(c)(3) look at six factors (the "Dana Factors"): (a) whether a reasonable relationship existed between the proposed plan and the desired results; (b) whether the cost of the plan was reasonable in light of the overall facts of the case; (c) whether the scope of the plan was fair and reasonable; (d) whether the plan was consistent with industry standards; (e) whether the debtor had put forth sufficient due diligence efforts in formulating the plan; and (f) whether the debtor received sufficient independent counsel in performing any due diligence and formulating the plan. *In re Dana Corp.*, 358 B.R. at 576-77, applied in *In re Global Home Products, LLC*, 369 B.R. at 786.

---

[5] Although the Debtors believe that the business judgment rule applies to the "facts and circumstances" test of section 503(c)(3), some courts have applied a slightly higher bar. *See Pilgrim's Pride*, 401 B.R. at 236-37 (finding that, in addition to satisfying the business judgment standard, a proposed transfer was in the best interests of creditors and the debtor's estate). The Debtors believe that the modified Programs would also satisfy any more rigorous standard that this Court might choose to apply because the benefits of the KEIP and KERP, respectively, to Debtors' chapter 11 estates and constituencies described in this Motion, along with the support for them by the Debtors' secured creditors.

31. The KEIP as modified satisfies each of the Dana Factors. As to the first and third Dana Factors ((a) and (c) above), the KEIP was designed to motivate the Senior Leadership Employees for their significant efforts in these Chapter 11 Cases and to ensure that key management and employees continue to focus their full effort and attention on the Debtors' day-to-day operations and affairs as well as to implement the other goals of the KEIP. The KEIP incentivizes Senior Leadership Employees to stabilize and improve the Debtors' business performance during chapter 11 to make their operations an attractive target for potential sale. It fairly compensates the Senior Leadership Employees for the increased demands placed upon them in connection with these Chapter 11 Cases, thereby maximizing the value of the Debtors' chapter 11 estates for the benefit of all parties in interest. As to the remaining Dana Factors, the modified KEIP was designed by the Debtors with the assistance of PwC, which (a) priced the KEIP based on comparisons with similar incentive plans of other comparable companies; (b) designed the KEIP to be within industry standards; (c) performed due diligence for purposes of designing and implementing the KEIP; and (d) provided independent counsel in performing due diligence and formulating the KEIP.

32. Additionally, Courts in this district have approved similar incentive plans. *See*, *e.g.*, *In re Melinta Therapeutics, Inc., et al.*, Case No. 19-12748 (LSS) (Bankr. D. Del. Feb. 5, 2020) (KEIP with sale price thresholds); *Pacific Sunwear of California, Inc., et al.,* Case No. 16-10822 (LSS) (Bank. D. Del. May 12, 2016) (plan confirmation and compliance with DIP covenants metrics); *New Gulf Resources, LLC*, et al., Case No. 15-12566 (BLS) (Bankr. D. Del. January 19, 2016); *In re Hipcricket, Inc*., Case No. 15-10104 (LSS) (Bankr. D. Del. March 18, 2015) (plan confirmation performance goals); *In re Longview Power, LLC*, et al. Case No. 13-

12211 (BLS) (Bank. D. Del. December 18, 2013) (KEIP with chapter 11 confirmation and power capacity operation milestones).

E.     **Authorization and Approval of the Modified KEIP Is Appropriate Under Section 105(a) of the Bankruptcy Code**

33.    Bankruptcy courts may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Courts use their section 105(a) powers to authorize payments essential to the operation of the debtor's business and maximizing the value of the estate. *Just for Feet, Inc.*, 242 B.R. 821, 824-26 (D. Del. 1999) (debtors may make payments that are essential to the continued operation of the business while in chapter 11); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payments to employees on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit … payment of creditors in full or at least proportionately"). Here, approval of the modified KEIP is an appropriate use of the Court's section 105(a) powers because the KEIP is necessary to the continued operation of the Debtors' business and to the maximization of the value of the Debtors' chapter 11 estates for all stakeholders.

**NOTICE**

34.    The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the Committee; (c) counsel to the DIP Lenders, DIP Agent and the Foris Prepetition Secured Lenders, Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com), and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com); (d)

co-counsel to the DIP Lenders, the DIP Agent and the Foris Prepetition Secured Lenders, Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com; and (e) parties who requested notice pursuant to Bankruptcy Rule 2002.

## CONCLUSION

WHEREFORE, the Debtors respectfully request the entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: December 19, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*
Richard M. Pachulski (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell (admitted *pro hac vice*)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  rpachulski@pszjlaw.com
         dgrassgreen@pszjlaw.com
         joneill@pszjlaw.com
         jrosell@pszjlaw.com
         sgolden@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*