## EXHIBIT B

**Fleming Declaration**

LA:4868-0761-1285.6 03703.004

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC*., et al*.,<br><br>                      Debtors.¹ | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

**DECLARATION OF STEVEN J. FLEMING IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER APPROVING MODIFIED KEY EMPLOYEE INCENTIVE PLAN <u>FOR SENIOR LEADERSHIP EMPLOYEES</u>**

I, Steven J. Fleming, hereby declare that the following is true and accurate to the best of my knowledge, information, and belief:

1. In conjunction with the Chapter 11 Cases of Amyris, Inc. ("<u>Amyris</u>") and its affiliated and related above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>" or the "<u>Company</u>"), I submit this declaration (the "<u>Declaration</u>") in support of the *Debtors' Motion for an Order Approving Modified Key Employee Incentive Plan for Senior Leadership Employees* (the "<u>Motion</u>") filed concurrently herewith. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion. Except as may otherwise be noted, I could and would testify to the following based upon my personal knowledge.

2. I am familiar with the terms of the Debtors' proposed Modified Key Employee Incentive Plan (the "<u>KEIP</u>") as described in the Motion.

3. In order to maintain the Debtors' operations and preserve going concern value while the Debtors prosecute their Chapter 11 Cases and to maximize value for their stakeholders,

---

¹ A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

LA:4868-0761-1285.6 03703.004

their management and employees have had to both maintain the Debtors' day-to-day operations and concurrently pursue a value maximizing transaction for the benefit of their stakeholders. In addition, the Debtors' management and key employees have had and must continue to minimize the disruption caused by the Chapter 11 Cases on their customers, vendors, and other stakeholders. In order to meet and overcome these challenges, the Debtors' must rely on the continued guidance of their Senior Leadership Employees, who are difficult to replace within the timeline of these Chapter 11 Cases.

4. In my opinion, it is imperative that the Debtors modify their existing KEIP in light of certain unanticipated developments that have taken place since the KEIP was initially devised and approved by the Court approximately two and a half months ago.

5. Specifically, Tranche One of the KEIP as initially structured comprised approximately $2 million of incentive payments that would be made to senior management upon consummation of brand sales at target prices in order to fund a restructuring plan. Unfortunately, however, despite the Debtors' best efforts in marketing and negotiating with interested parties for the brand assets, the sales process did not generate proceeds in the anticipated target range for any of the brands. Without material proceeds from the brand sales to fund the Debtors' restructuring, agreements with key customers DSM-Firmenich and Givaudan are now critical. Senior management needs to continue to be incentivized to preserve operations and negotiate these agreements since they will not receive any incentive pay based on the brands sales, which were not successful.

6. I believe that there is good cause for the Debtors to modify the KEIP to address these new circumstances. Specifically, the Debtors propose that for five members of the Debtors' senior management, the KEIP should be modified to replace payouts based on the consumer

brands sales with payouts based on definitive agreements with both DSM-Firmenich and Givaudan such that senior management remains incentivized to maximize and preserve value for all stakeholders.

7. Importantly, the proposed modifications to the KEIP will not increase the aggregate cost that was originally budgeted. As the KEIP is currently structured, only a very small fraction of the approximately $2 million of the original Tranche One payments based on the consumer brands sales ($30,000) has come due and is to be paid to only one of the original twelve KEIP Participants. Thus, there are already amounts budgeted under the Programs that can be re-allocated as proposed herein without increasing the overall cost.

8. I believe that, without this relief, KEIP Participants will not be properly incentivized to achieve the Debtors' objectives, which will imperil the success of these Chapter 11 Cases.

9. Accordingly, I have determined that implementing the proposed modifications to the KEIP is essential to effectively and efficiently accomplish the Debtors' goal of maximizing the value of their estates. I believe that the proposed modifications to the KEIP will help ensure that the Senior Leadership Employees are properly motivated to achieve this goal. Furthermore, the KEIP, as modified, is structured to align the incentives of the Debtors' employees with the Debtors' economic stakeholders, which include working to maximize the value that may be derived from the Debtors' estates.

10. I respectfully submit that the KEIP will provide the necessary incentive to the Senior Leadership Employees to consummate a chapter 11 plan on terms that will benefit the Debtors' chapter 11 estates, creditors, and other parties in interest.

11. For the reasons set forth above and in my declaration in support of the Motion, the modified KEIP is reasonable, within the range of comparable plans, and reflects a sound exercise of the Debtors' business judgment.

12. The modified KEIP was approved by the Leadership, Development, Inclusion and Compensation Committee of Debtors' Board of Directors, which does not include any Senior Leadership Employees who hold seats on the Board of Directors.

13. The Debtors, with their advisors and stakeholders in this case, have developed the KEIP, which is appropriately designed to incentivize the KEIP Participants as the Debtors continue to operate while negotiating agreements with their key customers, DSM-Firmenich and Givaudan. Without this relief, KEIP Participants will not be properly incentivized, which will imperil the success of these Chapter 11 Cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 19, 2023

                                                   */s/ Steven J. Fleming*
                                                   Steven J. Fleming