**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

**DECLARATION OF LORIE BEERS IN SUPPORT OF MOTION FOR (I) AN ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF THE DEBTORS' BRAND ASSETS; (B) APPROVING CERTAIN BID PROTECTIONS IN CONNECTION WITH THE DEBTORS' ENTRY INTO ANY POTENTIAL STALKING HORSE AGREEMENTS; (C) SCHEDULING THE AUCTION AND SALE HEARING; (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (E) GRANTING RELATED RELIEF; AND (II) AN ORDER OR ORDERS (A) APPROVING THE SALE OF THE DEBTORS' BRAND ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES; AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

I, Lorie Beers, hereby declare under penalty of perjury as follows:

1. I submit this declaration (this "Declaration") in support of the *Motion for (I) an Order (A) Approving Bid Procedures for the Sale of the Debtors' Brand Assets; (B) Approving Certain Bid Protections in Connection with the Debtors' Entry Into Any Potential Stalking Horse Agreements; (C) Scheduling the Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II) An Order or Orders (A) Approving the Sale of the Debtors' Brand Assets Free and Clear of All Encumbrances; and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 316]

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

(the "Sale Motion") and, in particular, the Sale of the Debtors' Brand Assets associated with the following Operating Consumer Brands: Pipette; JVN; Rose, Inc.; and Stripes.[2]

2. I am a Managing Director and the Head of Special Situations at Intrepid Investment Bankers LLC ("Intrepid"), the investment bankers to the above-captioned debtors and debtors in possession (the "Debtors").

3. Except as otherwise indicated, all statements set forth in this Declaration are based upon (a) my personal knowledge of Debtors' operations and finances gleaned during the course of Intrepid's engagement with Debtors, (b) my discussions with Debtors' senior management, other members of the Intrepid team working directly with me or under my supervision, direction or control, and Debtors' other advisors, (c) my review of relevant documents and/or my opinion based upon my experience, (d) work performed by me and my team in connection with the efforts needed to effectuate the sale of certain of the Debtors' assets as contemplated by the Brand Assets Bid Procedures Order, and (e) my experience as an investment banker for over twenty years in selling assets in bankruptcy cases. If I were called upon to testify, I could and would testify competently to the facts set forth herein based on such personal knowledge, discussions, review of documents and/or opinion.

4. My background and the qualifications, as well as those of Intrepid, are set forth in my prior declarations submitted in connection with the *Motion of Debtors for Interim and Final Orders (I) Authorizing the Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 20] and *Application of Debtors for Entry of an Order, Pursuant to Sections 327(a) and 328(a) of*

---

[2] Capitalized terms used but not otherwise defined herein are intended to have the meanings ascribed to them in the Sale Motion.

*the Bankruptcy Code, (I) Authorizing the Retention and Employment of Intrepid Investment Bankers LLC as Investment Banker for Debtors and Debtors in Possession Effective as of the Petition Date; (II) Waiving Certain Information Requirements Imposed by Local Rule 2016-2; and (III) Granting Related Relief* [Docket Nos. 139-C and 262], and I reincorporate those herein.

5. I have over 35 years of professional experience that encompasses the full spectrum of financial restructuring. Prior to joining Intrepid, I was the founder and Group Head of Special Situations Investment Banking at Cowen. I have also held senior banker roles at StormHarbour Securities, Variant Capital Advisors, Seabury Group, KPMG Corporate Finance, and Gordian Group. I began my career as a bankruptcy attorney and was a partner at Kasowitz, Benson, Torres & Friedman. I have participated in dozens of major bankruptcy cases in numerous capacities, including organizing and running marketing processes for section 363 sale processes for the sale of the assets of chapter 11 debtors in possession.

## The Marketing Process

6. I and my team at Intrepid are managing the Debtors' Sale Process. Intrepid was retained by the Debtors in July 2023 to, among other things, assist the Debtors in marketing the Debtors' Brand Assets, including the Debtors' operating consumer brands: JVN Hair, Rose Inc., Pipette, and Stripes (collectively, the "Operating Consumer Brands"). To that end, prior to the Petition Date, Intrepid worked closely with the Debtors' management to analyze the Debtors' current financial position, prepare marketing and diligence materials for those assets the Debtors believed should be sold, and populate a digital data room (the "Data Room") for prospective purchasers interested in purchasing all or any portion of the Debtors' Brand Assets.

7. Since the Petition Date, Intrepid has continued the marketing process seeking to sell the Operating Consumer Brands pursuant to section 363 of the Bankruptcy Code. Pursuant to

the procedures established by the Brand Assets Bid Procedures Order, the Debtors established strict procedures to insure the bona fides of any Potential Bidder. To participate in the bidding process and receive due diligence information, including full access to the Data Room and additional non-public information regarding the Debtors (the "Diligence Materials"), parties interested in receiving due diligence information to participate in the bidding process (each, an "Interested Party") delivered or had previously delivered to the Debtors, if determined to be necessary by the Debtors in their sole discretion, the following documents (collectively, the "Preliminary Bid Documents"): (a) an executed confidentiality agreement using the Debtors' form, as may be amended, on terms reasonably acceptable to the Debtors, to the extent not already executed (a "Confidentiality Agreement"); (b) a statement and other factual support demonstrating to the Debtors' satisfaction in the exercise of their reasonable business judgment that the Interested Party has a *bona fide* interest in purchasing all or any portion of the Operating Consumer Brands; and (c) preliminary proof by the Interested Party of its financial capacity to close its proposed Sale Transaction(s), which may include financial statements of, or verified financial commitments obtained by, the Interested Party (or, if the Interested Party is an entity formed for the purpose of acquiring any of the Operating Consumer Brands, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors (including in consultation with their advisors).

8.      As part of this process, Intrepid contacted more than 350 parties, over 170 of whom signed Confidentiality Agreements and had the opportunity to gain access to the Data Room. For each of the Operating Consumer Brands, Intrepid hosted dozens of virtual and in-person meetings with both the brand teams and shared services personnel who provide key functions such as freight and logistics, IT, and accounting support. Among other things:

(a) On September 28, 2023, Intrepid held a virtual management presentation for the JVN Brand Assets, which was attended live by 6 Interested Parties with numerous others viewing the recording. Throughout the Sale Process, approximately 46 different Interested Parties accessed and performed diligence in the Data Room for the JVN Brand Assets.

(b) On October 6, 2023, Intrepid held a virtual management presentation for the Rose Brand Assets, which was attended live by 5 Interested Parties with numerous others viewing the recording. Throughout the Sale Process, approximately 49 different Interested Parties accessed and performed diligence in the Data Room for the Rose Brand Assets.

(c) On October 5, 2023, Intrepid held a virtual management presentation for the Pipette Brand Assets, which was attended live by 14 Interested Parties with numerous others viewing the recording. Throughout the Sale Process, approximately 50 different Interested Parties accessed and performed diligence in the Data Room for the Pipette Brand Assets.

(d) On October 11, 2023, Intrepid held a virtual management presentation for the Stripes Brand Assets, which was downloaded or viewed by 21 Interested Parties. Throughout the Sale Process, approximately 49 different Interested Parties accessed and performed diligence in the Data Room for the Stripes Brand Assets.

9. At the hearing scheduled for December 20, 2023 (the "December 20 Sale Hearing"), the Debtors seek approval of four (4) separate Sales related to the following Operating Consumer Brands: JVN Brand Assets (the "JVN Sale"); Pipette Brand Assets (the "Pipette Sale"); Rose Brand Assets (the "Rose Sale"); and Stripes Brand Assets (the "Stripes Sale"). The Brand Assets associated with JVN, Stripes, and Rose, Inc. were auctioned on December 13, 2023.[3]

**The JVN Sale**

10. On December 13, 2023, the Debtors conducted a virtual Auction (the "JVN Auction") for the JVN Brand Assets. One (1) Qualified Bidder participated in the JVN Auction.

11. At the conclusion of the JVN Auction, the Debtors, after consultation with the Consultation Parties, declared Windsong Global, LLC (the "JVN Successful Bidder") as the Successful Bidder for the JVN Brand Assets with the highest or otherwise best Bid of $1,250,000.

---

[3] See Docket No. 861.

12. On December 14, 2023, the Debtors filed the *Amended Notice of Filing of Successful Bidder and Auction Results for Sale of JVN Brand Assets* [Docket No. 911], naming the JVN Successful Bidder as the successful bidder for the JVN Brand Assets. To my knowledge, the JVN Successful Bidder is not an insider of the Debtors and, other than as the JVN Successful Bidder, has no connection to the Debtors.

13. Based on the foregoing, I believe that no further delay or additional marketing is necessary in order to further test the market for the JVN Brand Assets. The JVN Brand Assets have already been extensively marketed and are ready for immediate sale. Under the circumstances, the sale of the JVN Brand Assets maximizes overall value for such assets and for the Debtors' estates and creditors. The offer from the JVN Successful Bidder to purchase the JVN Brand Assets constitutes the highest and best offer for the purchase of the JVN Brand Assets.

14. The sale process for the JVN Brand Assets, including the solicitation of Bids and the Auction, was conducted at arm's length and I am not aware of any collusion or interference from any party.

**The Pipette Sale**

15. On December 13, 2023, the Debtors conducted a virtual Auction (the "Pipette Auction") for the Pipette Brand Assets. Three (3) Qualified Bidders participated in the Pipette Auction.

16. At the conclusion of the Pipette Auction, the Debtors, after consultation with the Consultation Parties, declared Windsong Global, LLC (the "Pipette Successful Bidder") as the Successful Bidder for the Pipette Brand Assets with the highest or otherwise best Bid of $1,750,000.

17. On December 14, 2023, the Debtors filed the *Amended Notice of Filing of Successful Bidders and Auction Results for Sale of Pipette Brand Assets* [Docket No. 912], naming the Pipette Successful Bidder as the successful bidder for the Pipette Brand Assets.

18. To my knowledge, the Pipette Successful Bidder is not an insider of the Debtors and, other than as the Pipette Successful Bidder, has no connection to the Debtors.

19. Based on the foregoing, I believe that no further delay or additional marketing is necessary in order to further test the market for the Pipette Brand Assets. The Pipette Brand Assets have already been extensively marketed and are ready for immediate sale. Under the circumstances, the sale of the Pipette Brand Assets maximizes overall value for such assets and for the Debtors' estates and creditors. The offer from the Pipette Successful Bidder to purchase the Pipette Brand Assets constitutes the highest and best offer for the purchase of the Pipette Brand Assets.

20. The sale process for the Pipette Brand Assets, including the solicitation of Bids and the Auction, was conducted at arm's length and I am not aware of any collusion or interference from any party.

**The Rose Sale**

21. On December 13, 2023, the Debtors conducted a virtual Auction (the "Rose Auction") for the Rose Brand Assets. Three (3) Qualified Bidders participated in the Rose Auction.

22. At the conclusion of the Rose Auction, the Debtors, after consultation with the Consultation Parties, declared AA Investments (HK) Ltd. (the "Rose Successful Bidder") as the Successful Bidder for the Rose Brand Assets with the highest or otherwise best Bid of $2,500,000 in aggregate consideration plus assumption of certain Assumed Liabilities.

23. On December 15, 2023, the Debtors filed the *Notice of Filing of Successful Bidder and Auction Results for Sale of Rose Brand Assets* [Docket No. 924].

24. To my knowledge, the Rose Successful Bidder is not an insider of the Debtors and, other than as the Rose Successful Bidder, has no connection to the Debtors.

25. Based on the foregoing, I believe that no further delay or additional marketing is necessary in order to further test the market for the Rose Brand Assets. The Rose Brand Assets have already been extensively marketed and are ready for immediate sale. Under the circumstances, the sale of the Rose Brand Assets maximizes overall value for such assets and for the Debtors' estates and creditors. The offer from the Rose Successful Bidder to purchase the Rose Brand Assets constitutes the highest and best offer for the purchase of the Rose Brand Assets.

26. The sale process for the Rose Brand Assets, including the solicitation of Bids and the Auction, was conducted at arm's length and I am not aware of any collusion or interference from any party.

### The Stripes Sale

27. On December 13, 2023, the Debtors conducted a virtual Auction (the "Stripes Auction") for the Stripes Brand Assets. One (1) Qualified Bidder participated in the Stripes Auction.

28. At the conclusion of the Stripes Auction, the Debtors, after consultation with the Consultation Parties, declared Sakana, LLC (the "Stripes Successful Bidder") as the Successful Bidder for the Stripes Brand Assets with the highest or otherwise best Bid of $500,000 in aggregate consideration plus assumption of certain Assumed Liabilities.

29. On December 15, 2023, the Debtors filed the *Notice of Filing of Successful Bidder and Auction Results for Sale of Stripes Brand Assets* [Docket No. 923]. To my knowledge, the

Stripes Successful Bidder is not an insider of the Debtors and, other than as the Stripes Successful Bidder, has no connection to the Debtors.

30. Based on the foregoing, I believe that no further delay or additional marketing is necessary in order to further test the market for the Stripes Brand Assets. The Stripes Brand Assets have already been extensively marketed and are ready for immediate sale. Under the circumstances, the sale of the Stripes Brand Assets maximizes overall value for such assets and for the Debtors' estates and creditors. The offer from the Stripes Successful Bidder to purchase the Stripes Brand Assets constitutes the highest and best offer for the purchase of the Stripes Brand Assets.

31. The sale process for the Stripes Brand Assets, including the solicitation of Bids and the Auction, was conducted at arm's length and I am not aware of any collusion or interference from any party.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: December 20, 2023         */s/ Lorie Beers*
New York, New York                Lorie Beers