**Exhibit A**

LA:4877-9115-3816.1 03703.004

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al*., | Case No. 23-11131 (TMH) |
| Debtors. [1] | (Jointly Administered) |
| | **Related to Docket No. 917** |

**ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF THE
DEBTORS' LAB-TO-MARKET™ ASSETS; (B) SETTING MINIMUM RESERVE
PRICE; (C) SCHEDULING  THE AUCTION AND SALE HEARING; (D) APPROVING
THE FORM AND MANNER OF NOTICE THEREOF; AND (E) GRANTING RELATED
RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors"), for the entry of an order pursuant to sections

105(a), 363, 365, 503, 507, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy

Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules")

to establish certain sales procedures which will culminate in a sale or sales of certain of the Debtors

assets, all as more fully set forth in the Motion; and upon consideration of the First Day

Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334 and the *Amended Standing Order of Reference from the United States District Court for*

*the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2]    A capitalized term used but not defined herein have the meaning ascribed to it in the Motion.

proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.      The Debtors have articulated good and sufficient reasons for the Court scheduling or fixing dates pursuant to this order (this "Order") for, among other things, the (i) Bid Deadline; (ii) Sale Objection Deadline; (iii) Auction; and (iv) Sale Hearing, each as defined below.

B.      The Bid Procedures Notice, Stalking Horse Notice, Auction Notice, and Notice of Successful Bidder are reasonably calculated to provide the Sale Notice Parties, the Contract Counterparties, and other interested parties with proper notice of the (i) Bid Procedures; (ii) Auction; (iii) Sale Hearing; and (iv) Sale(s).

C.      The Motion and the Bid Procedures comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

D.      Due, sufficient, and adequate notice of the relief granted herein has been given to all parties in interest.

---

[3]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

AFDOCS:199255910.1

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is granted as set forth herein.

2.     All formal and informal objections, if any, to the relief requested in the Motion that have not been withdrawn, waived, or settled are overruled on the merits; provided however, that the Limited Objection of the Ad Hoc Cross-Holder Group [Dkt No. 946] and the arguments set forth therein are reserved and may be pursued at any hearing on the Sale or Plan if pursued in connection with a timely filed objection to such Sale or Plan.

3.     The Bid Procedures, which are attached hereto as **Exhibit 1** and incorporated herein by reference, are hereby approved in all respects and shall govern all Bidders and Bids, including those that may be submitted by Qualified Bidders at the Auction.

4.     Bidders seeking to submit Bids for the Lab-to-Market™ Assets must do so in accordance with the terms of the Bid Procedures and this Order.

5.     The deadline for all Potential Bidders to submit a Qualified Bid (other than any of the Secured Parties' deemed Qualified Bid(s)) is **January 16, 2024, at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline"), as set forth in the Bid Procedures.

6.     By **January 18, 2024**, the Debtors shall file a notice on the Court's docket (an "Auction Notice") providing (a) notice of the location of the Auction or whether the Debtors' intend to proceed with the Auction telephonically or bv video conference; and (b) notice of whether the Debtors believe, in the exercise of their business judgment and after consultation with the Consultation Parties, that the Auction should be held in two or more parts over multiple days so as to maximize value for the estates.

7.     As set forth in the Bid Procedures, if at least one Qualified Bid is received by the Bid Deadline (in addition to any of the Secured Parties' deemed Qualified Bid), the Debtors will

hold the Auction beginning on **January 19, 2024, at 10:00 a.m. (prevailing Eastern Time),** in accordance with the Bid Procedures at the location or in the manner designated by the Debtors in the Auction Notice.

8.      On or before **January 21, 2024**, the Debtors will file with the Court and serve on the Notice Parties (as defined below) <u>and</u> on all non-Debtor counterparties to Transferred Contracts (as defined below) included in the Successful Bid(s), the Notice of Successful Bidder.  With respect to any Sale Transaction, a filed Notice of Successful Bidder shall include, as exhibits, (a) a copy of the Purchase Agreement; (b) a copy of the proposed Sale Order; and (c) identification of the Transferred Contracts for such Sale Transaction (which may be in the form of an exhibit or schedule to the Purchase Agreement).[4]

9.      Any Contract Counterparty to a Transferred Contract that objects to a Successful Bidder's provision of additional assurance of future performance (the "<u>Adequate Assurance Objection</u>") must file such Adequate Assurance Objection on or before **January 23, 2024, at 5:00 p.m. (prevailing Eastern Time),** and serve such objection on the Notice Parties and the applicable Successful Bidder.  To the extent the parties are unable to resolve an Adequate Assurance Objection, the Court will set a hearing, which may be at the Sale Hearing, on the Adequate Assurance Objection to determine whether terms of the Successful Bid are compliant with section 365 of the Bankruptcy Code in providing adequate assurance of future performance to the Contract Counterparty of the applicable Transferred Contract.

---

[4]      The Debtors may, in their discretion, serve a Notice of Successful Bidder by U.S. Mail without attached copies of a Purchase Agreement and/or proposed Sale Order; *provided, however*, that any such Notice of Successful Bidder must identify where parties receiving such notice may access such documents free of charge.

10.     Any Secured Party shall be entitled to credit bid some or all of its claims pursuant to section 363(k) of the Bankruptcy Code.  Any credit bid by the DIP Agent and/or the Foris Prepetition Secured Lenders shall automatically be deemed a Qualified Bid.

11.     The  DIP Lenders and the Foris Prepetition Secured Lenders' Qualified Bid for the Lab-to-Market™ Assets constitutes the Other Assets Stalking Horse Credit Bid under the Plan.

12.     Following the conclusion of the Auction, and subject to compliance with the terms of the DIP Order, the Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the Court's docket. At the Sale Hearing, the Debtors shall present the Successful Bid(s) to the Court for approval.

13.     The Debtors are hereby authorized to conduct the Sale(s) without the necessity of complying with any state or local transfer laws or requirements.

14.     The Bid Procedures Notice substantially in the forms attached to this Order as Exhibit 2 is approved in all respects.  Other than with respect to the Notice of Successful Bidder, no other or further notice of the Bid Procedures, the Sale Hearing, relevant objection or other deadlines, or the Sale(s) is required.

15.     To be considered, any objection to the Sale(s) must: (a) comply with the Bankruptcy Rules and the Local Rules; (b) be made in writing and filed with the Court; and (c) be filed on or before **January 23, 2024, at 5:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline").

16.     The failure of any objecting person or entity to timely file an objection prior to the Sale Objection Deadline shall be a bar to the assertion at the Sale Hearing or thereafter of any objection to the relief requested by the Debtors, or the consummation and performance of the Sale(s) of the Lab-to-Market™ Assets to the Successful Bidder(s), including the transfer of the

AFDOCS:199255910.1

Lab-to-Market™ Assets free and clear of all Encumbrances (with the same to attach to the cash proceeds of the Sale(s) to the same extent and with the same order of priority, validity, force, and effect which they previously had against the Lab-to-Market™ Assets, subject to the rights and defenses of the Debtors and the Debtors' estates with respect thereto), and the Debtors' assumption and assignment or transfer of the Transferred Contracts to the Successful Bidder(s).

17.     No Qualified Bidder or any other person or entity shall be entitled to any expense reimbursement, break-up fee, termination, or other similar fee or payment in connection with the Sale(s).

18.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h) or 6006(d), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19.     The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

20.     All persons and entities that participate in the Sale Process and/or the Auction(s) shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Bid Procedures, the Sale Process, and the Auction(s).

21.     To the extent of any inconsistences between the Bid Procedures and this Order, this Order shall govern.

AFDOCS:199255910.1

22.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the Bid Procedures or this Order.

AFDOCS:199255910.1

# EXHIBIT 1

## Bid Procedures

AFDOCS:199255910.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**PROCEDURES FOR SALE OF THE DEBTORS' LAB-TO-MARKET™**
**ASSETS THROUGH ONE OR MORE SALES**

On August 9, 2023, and August 21, 2023, as applicable (the "Petition Date"), the above-captioned debtors and debtors in possession (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 11, 2023 and August 23, 2023, as applicable, the United States Bankruptcy Court for the District of Delaware (the "Court") entered orders authorizing the joint administration and procedural consolidation of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).[2]

On [●], 2023, the Court entered an order (the "Bid Procedures Order") authorizing the Debtors to, among other things, solicit offers for one or more Transactions (as defined herein) with respect to the Lab-to-Market™ Assets through the process and procedures set forth below (the "Bid Procedures"). As set forth in further detail in the Bid Procedures Motion, the "Lab-to-Market™ Assets" consist of the Debtors' business involving the research, formulation, and development of ingredients and ingredient applications, commercial scaling, and commercialization of its sustainable ingredients.

Through the Bid Procedures, the Debtors will solicit bids for the purchase and sale of the Lab-to-Market™ Assets through one or more transactions (each, a "Sale").

Subject to the Sale Option, the Debtors may enter into a Sale with respect to some, all, or none of the Lab-to-Market™ Assets. Any Sale will be subject to the approval of the Court. *A*

---

[1]     A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion for (I) An Order (A) Approving Bid Procedures for the Sale of the Debtors' Lab-to-Market™ Assets; (B) Setting Minimum Reserve Price; (C) Scheduling the Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II) An Order or Orders (A) Approving the Sale of the Debtors' Lab-to-Market Assets Free and Clear of All Encumbrances; and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases [Docket No. ●] (the "Bid Procedures Motion").

*hearing by the Court on the approval of any Sale(s) is currently scheduled for January 24, 2024, at 10:00 a.m. (Eastern Time) (the "Sale Hearing").*

<u>*Summary of Key Dates Established by Bid Procedures*</u>

| Date | Event |
|---|---|
| **December 19, 2023 at 5:00 p.m.** | Bid Procedures Motion Objection Deadline |
| **December 20, 2023 at 3:00 p.m.** | Bid Procedures Hearing |
| **December 22, 2023** | Deadline to File Bid Procedures Notice |
| **January 16, 2024 at 5:00 p.m.** | Deadline to Submit Qualified Bids |
| **January 18, 2024** | Deadline to Designate Qualified Bids and File Auction Notice |
| **January 19, 2024 at 10:00 a.m.** | Sale Auction(s) |
| **January 21, 2024 (Sunday)** | Deadline to File Notice of Successful Bidder(s) and Back-Up Bidder(s) |
| **January 23, 2024 at 5:00 p.m.** | Adequate Assurance Objection Deadline |
| | Deadline to Object to Sale(s) |
| **January 24, 2024** | Sale Hearing |
| **February 9, 2024** | Deadline to Close Transaction(s) |

## I.    <u>BID PROCEDURES</u>

### A.    <u>General Sale Information</u>

#### 1.    <u>*Assets for Sale*</u>

The Debtors are soliciting interest for the consummation of one or more Sales with respect to the Lab-to-Market™ Assets.  Subject to the Sale Option, in any Sale, all of the Debtors' rights, title, and interest in and to the Lab-to-Market™ Assets shall be sold free and clear of any Encumbrances (as defined in the Bid Procedures Motion) on an "as is, where is" and "with all faults" basis and without representations, warranties or guarantees, express, implied or statutory, written or oral, of any kind, nature or description, by any Debtor, its affiliates or their respective representatives, except as otherwise provided in the applicable Purchase Agreement, as defined herein, to the maximum extent permitted by sections 363 and 365 of the Bankruptcy Code, with such Encumbrances to attach to the net proceeds of the applicable Sale with the same validity and priority as such Encumbrances applied against the respective the Lab-to-Market™ Assets purchased pursuant to these Bid Procedures.

<u>**All of the Lab-to-Market™ Assets may be subject to one or more than one Sale**</u>. Subject to the Plan Support Agreement and the Plan, the Debtors, in their discretion, exercised in

2

good faith and in consultation with the Consultation Parties,[3] will have the right to determine the highest or best value from the potential offers received.

**Further information on the Lab-to-Market™ Assets is available upon request from the Debtors' investment banker, Intrepid Investment Bankers, LLC ("Intrepid") - (Attn: Lorie Beers, lbeers@intrepidib.com; Carl Comstock, ccomstock@intrepidib.com; and Ana Alvarenga, aalvarenga@intrepidib.com) on the terms and conditions set forth below.**

## 2. _Access to Due Diligence Materials_

To participate in the bidding process and receive due diligence information, including full access to the Debtors' electronic data room (the "Data Room") and additional non-public information regarding the Debtors (the "Diligence Materials"), parties interested in receiving due diligence information to participate in the bidding process (each, an "Interested Party") must deliver or have previously delivered to the Debtors, if determined to be necessary by the Debtors in their sole discretion, the Preliminary Bid Documents (as defined herein) to the following parties (the "Recipient Parties"):

(i)      counsel to the Debtors: (a) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Steven W. Golden (sgolden@pszjlaw.com); and (b) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com); and

(ii)      investment banker to the Debtors: Intrepid Investment Bankers, LLC, Attn: Lorie Beers (lbeers@intrepidib.com), Carl Comstock (ccomstock@intrepidib.com), and Ana Alvarenga (aalvarenga@intrepidib.com).

The "Preliminary Bid Documents" that must be submitted to the Recipient Parties include: (a) an executed confidentiality agreement using the Debtors' form, as may be amended, on terms reasonably acceptable to the Debtors, to the extent not already executed (a "Confidentiality Agreement"); (b) a statement and/or other factual support demonstrating to the Debtors' satisfaction in the exercise of their reasonable business judgment that the Interested Party has a

---

[3]      The Creditors' Committee, the Ad Hoc Group of Noteholders, the DIP Lenders and the Foris Prepetition Secured Lenders shall be consultation parties ("Consultation Parties"); _provided_ that the Debtors shall only consult with the DIP Lenders and the Foris Prepetition Secured Lenders when such consultation includes the Creditors' Committee and the Ad Hoc Group of Noteholders; _provided further_ in connection with determining if a Bid is a Qualified Bid if the Debtors determine that it is necessary and appropriate for the Sale Process to not consult with the DIP Lenders and the Foris Prepetition Secured Lenders as to a specific non-economic issue or aspect of a Bid because of such Qualified Bidder's confidential, proprietary business concerns regarding such identified specific issue or specific aspect of such Qualified Bidders' Bid, the Debtors shall notify the DIP Lenders and the Foris Prepetition Secured Lenders that it is not consulting with the DIP Lenders and the Foris Prepetition Secured Lenders with respect to certain confidential issues or aspects of such Bid in accordance with the provisions hereof; _provided, further, however,_ subject to the foregoing, if any such Bid is determined to be a Qualified Bid then at such time the Debtors shall consult with the DIP Lenders and the Foris Prepetition Secured Lenders as to all aspects of such Qualified Bid.

DE:4880-0700-6610.6 03703.004
ACTIVE/126592705.5

*bona fide* interest in purchasing all or any portion of the Lab-to-Market™ Assets; and (c) preliminary proof by the Interested Party of its financial capacity to close its proposed Sale(s), which may include verbal or written representations of an Interested Party's financial wherewithal or financial statements of, or verified financial commitments obtained by, the Interested Party (or, if the Interested Party is an entity formed for the purpose of acquiring all or any portion of the Lab-to-Market™ Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors (including in consultation with their advisors) and (d) a statement of willingness to abide by the "clean room procedures". Any Interested Party who, in the Debtors' determination, qualifies for access to the Diligence Materials shall be deemed a "<u>Potential Bidder</u>."

The Debtors will provide any Potential Bidder such due diligence access or additional information as the Debtors deem appropriate, which may include, without limitation, the right to withhold, restrict, or to delay providing any Diligence Materials to a Potential Bidder that the Debtors, in their reasonable discretion, determine are, among other things, business-sensitive, may risk unduly placing the Debtors at a competitive disadvantage, or are otherwise inappropriate for disclosure to such Potential Bidder at such time.

The Potential Bidder shall return or destroy any non-public information the Debtors or their advisors provided to the Potential Bidder in accordance with the terms of the confidentiality agreement executed by the Debtors and the Potential Bidder.

### 3. *Due Diligence from Potential Bidders*

Each Interested Party, Potential Bidder, and Qualified Bidder (as defined herein) (each, a "<u>Bidder</u>" and, collectively, the "<u>Bidders</u>") shall comply with all requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated Transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtors, after consultation with the Consultation Parties, to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

## B. <u>Auction Qualification Process</u>

### 1. *Stalking Horse Bidder(s)*

The DIP Lenders and Foris Prepetition Secured Lenders are Qualified Bidders (the "<u>Stalking Horse Bidder</u>") for purposes of the Bid Procedures as the Plan and PSA are deemed to be a Qualified Bid for purposes of the Bid Procedures. Such Qualified Bid constitutes the "Other Assets Stalking Horse Credit Bid" set forth in the Plan. The Qualified Bid of the DIP Lenders and Foris Prepetition Secured Lenders need not comply with the requirements set forth in Section C.2 below.

DE:4880-0700-6610.6 03703.004
ACTIVE/126592705.5

### 2.    *Minimum Reserve Price*

A Qualified Bid must provide a cash purchase price ("Cash Consideration") that equals or exceeds $255,844,922, which consists of the sum of (a) the outstanding principal and interest due and payable on the DIP Facility as of the Effective Date (estimated to be $197,644,922 as of February 9, 2024, of which $591,161 consists of accrued and unpaid interest outstanding); and (b) the amount of Plan Effective Date Funding Schedule (which is $58,200,000) (collectively, the "Minimum Reserve Price").

### 3.    *Implementation Through Plan*

A Successful Bid(s) shall be implemented in connection with confirmation of the Plan.

### 4.    *Form of Agreement*

Each Bid must include an executed Purchase Agreement marked against the Form APA pursuant to which the Qualified Bidder proposes to effectuate the contemplated Sale including: (i) a redlined copy of the Purchase Agreement marked to show all changes requested by the Qualified Bidder against the Form APA; (ii) specification of the proposed Purchase Price; and (iii) any changes to any exhibits or schedules to the Purchase Agreement (collectively, the "Contemplated Transaction Documents"). The terms and conditions of the Contemplated Transaction Documents must be, in the aggregate, not materially more burdensome to the Debtors than the provisions contained in the Form APA. A Bid must identify with particularity each and every condition to Closing and all Transferred Contracts pursuant to the Contemplated Transaction Documents. All Bids must provide that all Cure Amounts (as defined herein) will be paid by such Bidder. ***The Contemplated Transaction Documents must include a commitment to close by no later than February 9, 2024.*** A Bid shall contain a detailed description of how the Potential Bidder intends to treat current employees of the Debtors.

### 5.    *Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for one or more Lab-to-Market™ Assets constitute a Topping Bid (as defined herein) as applicable to each Lab-to-Market™ Asset), that satisfies the Bid Conditions defined and as described below and otherwise satisfies the requirements of the Bid Procedures Order and the Bid Procedures set forth herein, and that the Debtors, after consultation with the Consultation Parties (as defined herein), determine is reasonably likely to submit a bona fide offer for all or any portion of the Lab-to-Market™ Assets and to be able to consummate a Transaction (or Transactions, as applicable) if selected as a Successful Bidder (as defined herein).

The Debtors, after consultation with the Consultation Parties, shall determine and notify any Potential Bidder as to whether such Potential Bidder is a Qualified Bidder no later than **January 18, 2024**.

DE:4880-0700-6610.6 03703.004
ACTIVE/126592705.5

### 6.    _Right to Credit Bid_

At the Auction, if any, a Qualified Bidder who has a valid and perfected lien[4] on any Lab-to-Market™ Assets (a "Secured Party") shall be permitted to submit a credit bid for all or a portion of the assets subject to such lien, up to the amount of such Secured Party's claims (a "Credit Bid"), to the extent permitted under section 363(k) of the Bankruptcy Code; _provided, however_, that any Secured Party, other than the Foris Prepetition Secured Lenders and the DIP Lenders, that intends to participate in the Auction with a Bid that includes a Credit Bid shall, as a condition to such participation, (i) notify the Debtors at least five (5) calendar days prior to the Bid Deadline that it intends to submit a Credit Bid, and (ii) provide all documentation requested by the Debtors to establish the lien, claims, and encumbered assets that will be the subject of the Secured Party's potential Credit Bid.

### C. **Bidding Process**

The Debtors and their advisors shall, after consultation with the Consultation Parties: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions hereof; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made with respect to all or any portion of the Lab-to-Market™ Assets.  The Debtors, in consultation with the Consultation Parties, shall have the right to adopt such other rules for the bidding process that are not inconsistent with the Bid Procedures Order or these Bid Procedures that will better promote the goals of such process.

### 1.    _Bid Deadline_

**The Bid Deadline is January 16, 2024 at 5:00 p.m. (prevailing Eastern Time).**  On or before the Bid Deadline, a Qualified Bidder that desires to make a proposal, solicitation, or offer for a Transaction (each, a "Bid") shall deliver written and electronic copies of its Bid to the Recipient Parties.  The Debtors shall promptly (and in no event later than twelve (12) hours after the Debtors' receipt thereof) provide copies of all Bids to counsel for the Consultation Parties.

Unless the Debtors, after consultation with the Consultation Parties, determine otherwise, a Bid received after the Bid Deadline shall not constitute a Qualified Bid.

### 2.    _Qualified Bids_

To be eligible to participate in the Auction and to be eligible for consideration as a Qualified Bidder, a Potential Bidder must deliver a Bid, so as to be received by the Recipient

---

[4]    Any credit bid by the holder of a junior lien must include a cash component sufficient to indefeasibly pay in full, in cash all claims and obligations of the holder of all liens senior to such junior lien.

For the avoidance of doubt, the Debtors dispute the nature, extent, priority, and validity of any lien and security interest asserted by Lavvan, Inc. ("Lavvan") against Amyris, Inc.  The Debtors reserve all rights against Lavvan, including, but not limited to, the right to challenge any request by Lavvan to credit bid pursuant to section 363(k) of the Bankruptcy Code.  Nothing herein should be construed or implied as any agreement of or consent by the Debtors to Lavvan's ability to credit bid, nor a waiver of any of the Debtors' rights under the Bankruptcy Code or applicable law.

DE:4880-0700-6610.6 03703.004
ACTIVE/126592705.5

Parties on or before the Bid Deadline, that meets the following requirements (collectively, the "Bid Conditions"):

a. <u>Purpose and Identity of Assets to be Purchased</u>. Each Bidder must state that the Bid includes an offer by the Bidder to effectuate a Sale and identify with specificity which Lab-to-Market™ Assets are included in the Bid.

b. <u>Good Faith Deposit</u>. Each Bid must be accompanied by a cash deposit (the "Good Faith Deposit") in the form of a wire transfer, certified check, or cash payable to the order of counsel pursuant to instructions to be provided by Debtors equal to 10% of the Bidder's proposed Purchase Price (as defined herein), which will be held in a non-interest bearing escrow or trust account; *provided however*, that the Stalking Horse Bidder shall not be required to post a Good Faith Deposit.

c. <u>Purchase Price</u>. Each Bid must clearly set forth the Cash Consideration and identify any non-Cash Consideration included in such Bid (together with the Cash Consideration, the "Purchase Price") including, without limitation, which executory contracts and unexpired leases the Bidder expects the Debtors to assume and assign to the Bidder (the "Transferred Contracts") and which liabilities, if any, of the Debtors the Bidder is agreeing to assume (the "Assumed Liabilities"). The Purchase Price associated with each Bid may include only cash and/or other consideration acceptable to the Debtors after consultation with the Consultation Parties; *provided, however*, in order for one or more Bids to qualify as a "Topping Bid," it or they collectively must provide for Cash Consideration at Closing (as defined herein) that is equal to or in excess of the Minimum Reserve Price.

d. <u>Binding and Irrevocable</u>. Each Bid must include a signed writing stating that it is binding and irrevocable until the selection of the Successful Bidder, provided that if such Bidder is selected as the Successful Bidder or the Back-Up Bidder, its offer shall remain irrevocable until the closing of the Sale with the Successful Bidder or, as applicable, the Back-Up Bidder (the "Closing").

e. <u>Contemplated Transaction Documents</u>. Each Bid must include an executed Purchase Agreement marked against the Form APA pursuant to which the Qualified Bidder proposes to effectuate the contemplated Sale including: (i) a redlined copy of the Purchase Agreement marked to show all changes requested by the Qualified Bidder against the Form APA; (ii) specification of the proposed Purchase Price; and (iii) any changes to any exhibits or schedules to the Purchase Agreement (collectively, the "Contemplated Transaction Documents"). The terms and conditions of the Contemplated Transaction Documents must be, in the aggregate, not materially more burdensome to the Debtors than the provisions contained in the Form APA. A Bid must identify with particularity each and every condition to Closing and all Transferred Contracts pursuant to the Contemplated Transaction Documents. All Bids must provide that all Cure Amounts (as defined herein) will be paid by such Bidder. ***The Contemplated Transaction Documents must include a commitment to close by no later than February 9, 2024***. A Bid shall contain a detailed description of how the Potential Bidder intends to treat current employees of the Debtors.

DE:4880-0700-6610.6 03703.004
ACTIVE/126592705.5

f.  <u>Contingencies</u>.  A Bid may not be conditioned on obtaining financing or any internal approval or on the outcome or completion of due diligence, but may be subject to the accuracy in all material respects at Closing of representations and warranties at or before Closing or the satisfaction in all material respects of customary representations and warranties for transactions of similar size and nature at or before Closing or the satisfaction in all material respects of customary conditions for transactions of similar size and nature at or before Closing.  A Bid must disclose any governmental approvals identified by the Potential Bidder other than as set forth in the Contemplated Transaction Documents that may impact the evaluation of such Bid.

g.  <u>No Collusion</u>.  Each Bid must include a representation that the Bidder has not engaged in any collusion with respect to its Bid submission (though Potential Bidders are permitted to make joint bids) and that the Bidder will not engage in any collusion with respect to any Bids, the Auction, or the Sale Process.

h.  <u>Authorization to Bid and Identity of Bidder</u>.  Each Bid must include evidence of authorization and approval from such Potential Bidder's board of directors (or comparable governing body, or a statement as to why such approval is unnecessary) with respect to the submission, execution, delivery, and closing of the Contemplated Transaction Documents. A Bid must also fully disclose the identity of the entity that is submitting the Bid, including the identity of the ultimate beneficial owners of the Bidder and the identity of any person or entity providing debt or equity financing for the Bid.

i.  <u>Financing Sources</u>.  Each Bid must include written evidence that demonstrates the Potential Bidder has the necessary financial ability to close the contemplated Sale and provide adequate assurance of future performance under all Transferred Contracts.  Such information may include, *inter alia*, the following:

  i.  the Potential Bidder's current financial statements (audited, if they exist);

  ii.  contact names, telephone numbers, and e-mail addresses for verification of financing sources;

  iii.  evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated Sale (including confirmation that the funding of such commitments is not subject to any contingency); and

  iv.  any other form of financial disclosure of credit-quality support information acceptable to the Debtors demonstrating that such Potential Bidder has the ability to close the contemplated Sale.

j.  <u>Adequate Assurance of Future Performance</u>.  Each Bid must demonstrate, in the Debtors' reasonable business judgment and after consultation with the Consultation Parties, that the potential Bidder can provide adequate assurance of future performance to the applicable counterparty under all Transferred Contracts as required by section 365 of the Bankruptcy Code.

DE:4880-0700-6610.6 03703.004
ACTIVE/126592705.5

k.  <u>No Fees Payable to Qualified Bidder</u>.  A Bidder may not request any break-up fee, termination fee, expense reimbursement, or any similar type of payment.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code relating in any way to the submission of its Bid, compliance with the Bid Procedures, or participation in the Sale Process.

l.  <u>Non-Reliance</u>.  A Bid must include an acknowledgement and representation of the Potential Bidder that it has had an opportunity to conduct any and all due diligence regarding the Lab-to-Market™ Assets (as applicable to its Bid) and Assumed Liabilities prior to making its Bid, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Lab-to-Market™ Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Lab-to-Market™ Assets, the financial performance of the Lab-to-Market™ Assets or, as applicable, the physical condition of the Lab-to-Market™ Assets, the Assumed Liabilities, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Contemplated Transaction Documents.

m.  <u>As Is, Where Is</u>.  A Bid must include an acknowledgement and representation of the Potential Bidder that it understands that any Sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or their estates except to the extent set forth in the Purchase Agreement of the Successful Bidder.

A Bid received from a Potential Bidder shall constitute a "<u>Qualified Bid</u>" if the Debtors believe, after consultation with the Consultation Parties, that such Bid would be consummated if selected as the Successful Bid.  The Debtors shall have the right to reject any and all Bids that they believe, after consultation with the Consultation Parties, do not comply with the Bid Procedures.  In the event that any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit.

**D.  <u>Auction</u>**

After the receipt and review of all Qualified Bids, the Debtors shall make a determination, after consultation with the Consultation Parties and subject to the exercise of the Sale Option, whether to accept the highest or best Qualified Bid(s) for all or any portion of the Lab-to-Market™ Assets.

To the extent the Debtors receive multiple Qualified Bids and determine to proceed to Auction, the Debtors, after consultation with the Consultation Parties and subject to the exercise of the Sale Option, shall determine which Qualified Bid(s) represent the then highest or otherwise best Bid(s) for all or any subset of the Lab-to-Market™ Assets, as applicable (the "<u>Baseline Bid(s)</u>").  The determination of which Qualified Bid(s) constitute the Baseline Bid(s) and which Qualified Bid(s) constitute the Successful Bid(s) (as defined herein) shall take into account any factors the Debtors, after consultation with the Consultation Parties and subject to the exercise of the Sale Option, reasonably deem relevant to the value of the Qualified Bid(s) to their estates,

9

including, *inter alia*: (a) the amount and nature of the consideration; (b) the certainty of closing; (c) the net economic effect of any changes to the value to be received by the Debtors' creditors from the proposed Sale(s); (d) the allocation of the Purchase Price between or among Lab-to-Market™ Assets; (e) tax consequences of such Qualified Bid(s); and (f) any other quantitative or qualitative criteria available to assess such Bid (collectively, the "Bid Assessment Criteria").  For the avoidance of doubt, the Baseline Bid(s) must not be less than the Minimum Reserve Price.

On or before **December 22, 2023**, the Debtors shall file a notice on the Court's docket (an "Auction Notice") providing (i) notice of the location of the Auction or whether the Debtor's intend to proceed with the Auction telephonically or by video conference; and (ii) notice of whether the Debtors believe, in the exercise of their business judgment and after consultation with the Consultation Parties, that the Auction should be held in two or more parts over multiple days so as to maximize value for the estates.

Unless otherwise designated by the Debtors, after consultation with the Consultation Parties, the Auction shall commence at **10:00 a.m. (Eastern Time) on January 19, 2024,** at a location to be designated in the Auction Notice.  In the Debtors' discretion, the Auction may be held telephonically or video conference.

The Auction shall be conducted according to the following procedures:

(i)     *Participation at the Auction*. Only the Stalking Horse Bidder(s) and Qualified Bidders that have submitted Qualified Bids are eligible to participate at the Auction.  Only the authorized representatives and professional advisors of each of the Qualified Bidders, the Stalking Horse Bidder(s), the Debtors, the Consultation Parties, and the United States Trustee for the District of Delaware shall be permitted to attend the Auction.

Except as otherwise set forth herein, the Debtors, after consultation with the Consultation Parties, may conduct the Auction in the manner they determine will result in the highest or best offer(s) for the Lab-to-Market™ Assets in accordance with the Bid Procedures, including sequencing the sale of any Lab-to-Market™ Assets.

In the event, after the conclusion of the Auction, that certain discrete Lab-to-Market™ Assets which are not included in the Successful Bid(s) have not been sold (the "Unsold Assets"), the Debtors may, in the exercise of their business judgment and after consultation with the Consultation Parties, resume an auction for the sale of the Unsold Assets, on such bid procedures as may be implemented by the Debtors after consultation with the Consultation Parties.

(ii)    *The Debtors Shall Conduct the Auction*.  The Debtors and their professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall describe the terms of any Baseline Bid(s).  All Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Bid shall

be fully disclosed to all other Qualified Bidders.  The Debtors reserve the right to conduct the Auction, after consultation with the Consultation Parties, in the manner designed to maximize value based upon the nature and extent of the Qualified Bids received in accordance with the Bid Procedures, the Bid Procedures Order, the Bankruptcy Code, and any other order of the Court entered in connection herewith and disclosed to each Qualified Bidder.  The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, and the Successful Bid(s).  Pursuant to Local Rule 6004-1, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the Sale Process, the Bid Procedures, the Auction, or the proposed Sale(s).

(iii)    *Terms of Overbids*.  An "<u>Overbid</u>" is any Bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the applicable Baseline Bid(s) that satisfies the following conditions:

a.    <u>Minimum Increment</u>.  During the Auction, bidding shall begin with the Baseline Bid.  Due to the potential combinations of Lab-to-Market™ Assets that may be included in any Bid, the Debtors reserve all rights with respect to the comparison of Qualified Bids and the determination of the Baseline Bid(s) subject to the exercise of the Sale Option and the rights of the Consultation Parties as provided for herein.  The initial Overbid after the Baseline Bid (the "<u>Initial Overbid</u>") shall be made in an increment announced on the record prior to the start of the Auction (the "<u>Minimum Increment</u>").  Any Overbids subsequent to the Initial Overbid shall be made in increments of at least the applicable Minimum Increment.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtors, after consultation with the Consultation Parties, accept a higher Qualified Bid as an Overbid.

b.    <u>Consideration of Overbids</u>.  Subject to compliance with the terms of the DIP Orders, the Debtors reserve the right, after consultation with the Consultation Parties, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in the exercise of their business judgment and after consultation with the Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale at the prevailing Overbid amount.

DE:4880-0700-6610.6 03703.004
ACTIVE/126592705.5

c.    <u>Closing Evidence</u>.  To the extent not previously provided on or before the Bid Deadline, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence reasonably acceptable to the Debtors, after consultation with the Consultation Parties, demonstrating such Qualified Bidder's ability to close the Sale proposed by such Overbid.

(iv)    *Additional Procedures*.    The Debtors, after consultation with the Consultation Parties, may (a) determine which Qualified Bid or Qualified Bids, if any, is the highest or best offer for all Lab-to-Market™ Assets or any of the Lab-to-Market™ Assets and (b) reject at any time before entry of an order of the Court approving a Sale of all or any portion of the Lab-to-Market™ Assets pursuant to a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the Bid Procedures Order; or (iii) contrary to the best interest of the Debtors, their estates, and their creditors.

(v)    *Consent to Jurisdiction as Condition to Bidding*.  All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and to have waived any right to a jury trial in connection with any disputes relating to the Sale Process, the Auction, the Bid Procedures, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

(vi)    *Closing the Auction*.  The Auction shall continue until there is only one Qualified Bid for all of the Lab-to-Market™ Assets or for one or more of the Lab-to-Market™ Assets (or multiple, non-overlapping Qualified Bids for any subsets of the Lab-to-Market™ Assets if there is no single Qualified Bid for all the Lab-to-Market™ Assets) that the Debtors determine, in the exercise of their business judgment and after consultation with the Consultation Parties, is the highest or otherwise best Qualified Bid(s) (such Qualified Bid(s), the "<u>Successful Bid(s)</u>", and such Qualified Bidder(s), the "<u>Successful Bidder(s)</u>"), and that further bidding is unlikely to result in a higher or otherwise better Qualified Bid, at which point, the Auction will be closed.  The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction.  In selecting the Successful Bid, the Debtors, after consultation with the Consultation Parties, may consider all factors relevant to the sale of the Lab-to-Market™ Assets, including the Bid Assessment Criteria.  To the extent the Qualified Bid from the DIP Lenders and the Foris Prepetition Secured Lenders is not the Successful Bid, it shall be deemed to be the Back-Up Bid.

Upon the closing of the Auction, the Debtors, after consultation with the Consultation Parties and subject to the exercise of the Sale Option, shall identify the Successful Bidder(s) and the Successful Bid(s) and the Back-

12

Up Bidder(s) and Back-Up Bid(s) as soon as reasonably practicable which highest or best offer will provide the greatest amount of net value to the Debtors, and advise the Qualified Bidders of such determination. Due to the potential combinations of Lab-to-Market™ Assets that may be included in any Bid, the Debtors reserve all rights with respect to the comparison of Qualified Bids and the determination of the Successful Bidder(s) and Back-Up Bidder(s) (as defined herein).

The Qualified Bidder with the second highest or otherwise best Bid at the Auction, as determined by the Debtors after consultation with the Consultation Parties, shall be required to serve as the back-up bidder (the "Back-Up Bidder(s)"). The identity of the Back-Up Bidder(s) and the amount and material terms of the final Bid of the Back-Up Bidder(s) (the "Back-Up Bid(s)") shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the Successful Bid(s). Any Back-Up Bidder shall keep its Back-Up Bid open and irrevocable until the Closing of the Sale with the Successful Bidder. The Good Faith Deposit of the Back-Up Bidder(s) shall be returned by the Debtors within three (3) days after Closing.

Within one (1) business day after the close of the Auction, the Successful Bidder(s) shall supplement the Successful Bidder(s)' Good Faith Deposit(s) such that the Good Faith Deposit(s) shall be equal to an amount that is ten percent (10%) of the Purchase Price of the Successful Bid(s).

The Debtors shall not consider any Bids or Overbids submitted after the closing of the Auction and any and all such Bids and Overbids shall be deemed untimely.

As stated above, the Successful Bid(s) of the Successful Bidder(s) and the Back-Up Bid(s) of the Back-Up Bidder(s), respectively, must be irrevocable until Closing.

### E. Notice of Acceptance of Successful Bid

Upon determination of the Successful Bid(s), on or before *January 21, 2024*, the Debtors will file a Notice of Successful Bidder with the Court. Any Contract Counterparty to a Transferred Contract seeking additional assurance of future performance than that provided by the Successful Bidder(s) (the "Adequate Assurance Objection") should immediately contact Steven W. Golden (sgolden@pszjlaw.com) and the applicable Successful Bidder to attempt to resolve any Adequate Assurance Objection. All Adequate Assurance Objections must be filed and served on the Notice Parties (as defined in the Bid Procedures) and the applicable Successful Bidder no later than **January 23, 2024, at 5:00 p.m. (prevailing Eastern Time)**. To the extent the parties are unable to consensually resolve the Adequate Assurance Objection prior to Closing, the Court will set a hearing on the Adequate Assurance Objection to determine whether terms of the Successful Bid are compliant with section 365 of the Bankruptcy Code in providing adequate assurance of future performance to the Contract Counterparty of the applicable Transferred Contract, which may be

13

at the Sale Hearing. The Debtors intend to cooperate with Contract Counterparties to Transferred Contracts to attempt to reconcile any Adequate Assurance Objection.

### F. **Free of Any and All Interests**

Except as otherwise provided in the Purchase Agreement(s) of the Successful Bidder(s) and subject to the approval of the Court, all of the Debtors' rights, title, and interest in and to the Lab-to-Market™ Assets subject thereto shall be sold free and clear of any Encumbrances to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Encumbrances to attach to the proceeds of the sale of the applicable Lab-to-Market Assets™ with the same validity and priority as such Encumbrances were held against the applicable Lab-to-Market Assets prior to the sale; *provided*, for the avoidance of doubt, that, should the DIP Lenders not be identified among the Successful Bidders, the rights of the DIP Lenders and the DIP Agent to be repaid in cash from such proceeds pursuant to the DIP Order and the DIP Documents shall not be modified without the prior written consent of the DIP Lenders.

### G. **Sale Hearing**

*The Sale Hearing will occur on January 24, 2024, at 10:00 a. m. (prevailing Eastern Time),* before the Hon. Thomas M. Horan, United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801. Any objections to the Sale(s) requested at the Sale Hearing must be filed and served so as to be received by the Notice Parties or before *January 23, 2024 at 5:00 p.m. (prevailing Eastern Time)*.

At the Sale Hearing, the Debtors will seek entry of an order (the "Sale Approval Order") authorizing and approving one or more Sale(s) to the Successful Bidder(s). Subject to the terms of the DIP Order, the Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties other than the Consultation Parties, including by (i) an announcement of such adjournment at the Sale Hearing or at the Auction or (ii) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

If any Successful Bidder fails to consummate an approved Sale in accordance with its applicable Purchase Agreement or such Purchase Agreement is terminated, the Debtors, after consultation with the Consultation Parties, shall be authorized, but not required, to deem the applicable Back-Up Bid, as disclosed at the Sale Hearing, as the Successful Bid, and the Debtors, after consultation with the Consultation Parties, shall be authorized, but not required, to consummate the sale with the Back-Up Bidder submitting the next highest Bid for any Lab-to-Market Assets™ without further order of the Court.

### H. **Return of Good Faith Deposit**

The Good Faith Deposit of any Successful Bidder (or any Back-Up Bidder that becomes a Successful Bidder) shall be applied to the Purchase Price of such Transaction at Closing. Counsel to the Debtors will hold the Good Faith Deposits of the Successful Bidder(s) and the Back-Up Bidder(s) in a segregated account until the Closing of the Transaction with the Successful Bidder(s). Good Faith Deposits of all other Qualified Bidders shall be held in a segregated account, and thereafter returned to the respective Bidders following the conclusion of the Auction. If a

14

Successful Bidder (including any Back-Up Bidder that has become the Successful Bidder) fails to consummate an approved Transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain such Successful Bidder's Good Faith Deposit as part of the Debtors' damages resulting from such Successful Bidder's breach or failure to perform, without prejudice to the Debtors' rights to seek additional damages from the Court as appropriate. The retention of the Good Faith Deposit is not, and is not intended to be, liquidated damages.

### J.  Procedures Related to the Assumption and Assignment of Contracts and Leases

With respect to (i) the Debtors' identification and notice of executory contracts and unexpired leases that may be assumed, assumed and assigned, or transferred by the Debtors pursuant to a plan or sale (the "Potential Assumed/Assigned Contracts") and the amount, if any, the Debtors believe is necessary to cure all monetary defaults under such Potential Assumed/Assigned Contracts pursuant to section 365 of the Bankruptcy Code (the "Cure Amounts"); and (ii) the procedures and deadlines for the non-Debtor counterparties to such Potential Assumed/Assigned Contracts (the "Contract Counterparties") to object to the Cure Amounts and/or the assumption, assumption and assignment, or transfer of their Potential Assumed/Assigned Contracts (a "Contract Objection"), to the extent a Potential Assumed/Assigned Contract is a Transferred Contract pursuant to a proposed Sale of Lab-to-Market™ Assets, the Debtors request that any Contract Objections be heard at (i) the Sale Hearing or (ii) on such other date subsequent to the Sale Hearing as the Court may designate prior to, during, or after the Sale Hearing (the "Cure/Assignment Hearing"). **Any Additional Contract Objections (as defined in the Contract and Lease Procedures) will be resolved at a hearing to be held by the Court (i) on or before seven (7) calendar days from the timely filing of the Additional Contract Objection; (ii) at the Cure/Assignment Hearing; or (iii) such other date designated by the Court**.

Upon determination of the Successful Bid(s), on or before ***January 21, 2024***, the Debtors will file a Notice of Successful Bidder with the Court. Any Contract Counterparty to a Transferred Contract seeking additional assurance of future performance than that provided by the Successful Bidder(s) (the "Adequate Assurance Objection") should immediately contact Steven W. Golden (sgolden@pszjlaw.com) and the applicable Successful Bidder to attempt to resolve any Adequate Assurance Objection. **All Adequate Assurance Objections must be filed and served on the Notice Parties (as defined in the Bid Procedures) and the applicable Successful Bidder no later than January 23, 2024, at 5:00 p.m. (prevailing Eastern Time)**. To the extent the parties are unable to consensually resolve the Adequate Assurance Objection prior to Closing, the Court will set a hearing on the Adequate Assurance Objection to determine whether terms of the Successful Bid are compliant with section 365 of the Bankruptcy Code in providing adequate assurance of future performance to the Contract Counterparty of the applicable Transferred Contract, which may be at the Sale Hearing. The Debtors intend to cooperate with Contract Counterparties to Transferred Contracts to attempt to reconcile any Adequate Assurance Objection.

At the Sale Hearing, (i) the Successful Bidder(s) shall present evidence necessary to demonstrate adequate assurance of future performance by the Successful Bidder(s) with respect to the Transferred Contracts and (ii) the Debtors will request entry of an order approving the

DE:4880-0700-6610.6 03703.004
ACTIVE/126592705.5

assumption and assignment of any or all Potential Assumed/Assigned Contracts to be assumed by the applicable Debtors and assigned to the Successful Bidder(s).

## II.    NOTICE PARTIES

As used herein, the "Notice Parties" are:

i.    counsel for the Debtors, (a) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com); and (b) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com) and Maxim B. Litvak (mlitvak@pszjlaw.com);

ii.    counsel to the DIP Lenders and the DIP Agent (collectively, the "DIP Secured Parties") and the Foris Prepetition Secured Lenders (together with the DIP Secured Parties, the "Secured Parties"), (a) Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com), and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com), and Debora A. Hoehne, Esq. (dhoehne@goodwinlaw.com); and (b) Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com);

iii.    counsel to the Committee, (a) White & Case LLP, 111 South Wacker Drive, Suite 5100 Chicago, Illinois 60606, Attn.: Gregory Pesce, Esq. (gregory.pesce@whitecase.com), and Andrew O'Neill, Esq. (aoneill@whitecase.com) and (b) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095; Attn: John Ramirez, Esq. (john.ramirez@whitecase.com) and Andrea Kropp, Esq. (andrea.kropp@whitecase.com); co-counsel to the Committee, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801; Attn: Christopher M. Samis, Esq. (csamis@potteranderson.com), Katelin A. Morales, Esq. (kmorales@potteranderson.com), Sameen Rizvi, Esq.(srizvi@potteranderson.com);

iv.    counsel for the Ad Hoc Noteholder Group, (a) Paul Hastings LLP, 1999 Avenue of the Stars, Twenty-Seventh Floor, Century City, CA 90067, Attn.: Frank Merola, Esq. (frankmerola@paulhastings.com); (b) Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn.: John F. Storz, Esq. (johnstorz@paulhastings.com); and (c) Blank Rome, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Stanley B. Tarr, Esq. (stanley.tarr@blankrome.com); and

v.    the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: John Schanne (John.Schanne@usdoj.gov).

## III.    RESERVATION OF RIGHTS AND MODIFICATIONS

Except as otherwise provided in the Bid Procedures Order or these Bid Procedures, and subject to the Plan Support Agreement, the Debtors further reserve the right as the Debtors may

16

reasonably determine in their discretion, after consultation with the Consultation Parties, to be in the best interest of the Debtors' estates to: (i) determine which Bidders, if any, are Qualified Bidders; (ii) determine which Bids, if any, are Qualified Bids; (iii) determine which Qualified Bid, if any, is the highest and best bid and which is the next highest and best bid; (iv) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) impose additional terms and conditions with respect to all Potential Bidders (other than the Stalking Horse Bidder); (vii) make non-material modifications to the Bid Procedures; and (viii) implement additional procedural rules with respect to the conduct of the Auction that the Debtors determine (together with the Bid Procedures, the "Auction Rules"), in their reasonable business judgment, will better promote the goals of the bidding process and are not inconsistent with any Bankruptcy Court order or any rights of the Stalking Horse Bidder under these Bid Procedures; *provided* that nothing herein shall limit any party in interest's right to file an objection with the Bankruptcy Court with respect to any Auction Rules (other than the Bid Procedures).

Notwithstanding anything to the contrary in these Bid Procedures and subject to the Plan Support Agreement, nothing in these Bid Procedures or the Bid Procedures Order shall require the Debtors to take any action or to refrain from taking any action related to any Sale to the extent taking or failing to take such action would be inconsistent with applicable law or the Debtors' fiduciary obligations, if any, under applicable law; *provided*, *however*, that the Debtors shall promptly provide the Consultation Parties and any Qualified Bidders with notice of such action or inaction and, to the extent any such action or inaction would constitute a material change from the Bid Procedures, the Debtors shall first seek approval from the Bankruptcy Court for such action or inaction.

DE:4880-0700-6610.6 03703.004
ACTIVE/126592705.5

# <u>EXHIBIT 2</u>

**Bid Procedures Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF PROPOSED SALE OR SALES OF THE DEBTORS' LAB-TO-MARKET™
ASSETS, FREE AND CLEAR OF ALL ENCUMBRANCES, OTHER THAN ASSUMED
LIABILITIES, AND SCHEDULING FINAL SALE HEARING RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On December __, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion (the "Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking entry of (i) an order (the "Bid Procedures Order") (a) approving bid procedures for the sale or sales (the "Sale") of the Debtors' Lab-to-Market™ assets (the "Lab-to-Market™ Assets"), (b) setting Minimum Reserve Price; (c) scheduling the Auction and Sale Hearing,[2] (d) approving the form and manner of notice of the Sale, and (e) granting related relief (clauses (a) through (e), collectively, the "Bid Procedures Relief"), and (ii) an order (the "Sale Order") (a) authorizing the Sale(s) of the Lab-to-Market™ Assets free and clear of all Encumbrances (as defined in the Motion), other than assumed liabilities, to the Successful Bidder(s) submitting the highest or otherwise best bid, (b) authorizing the assumption and assignment of the identified executory contracts and unexpired leases (the "Transferred Contracts"), and (c) granting certain related relief.

**I.      Bid Procedures**

On [●], 2023, the Bankruptcy Court entered the Bid Procedures Order [Docket No. ●], thereby approving the Bid Procedures Relief.

In order for a Potential Bidder to be eligible to participate in the Auction as a Qualified Bidder, **it must comply with the Bid Procedures, and deliver its Bid, so as to be received on or before January 16, 2024, at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline")**, to: (a) investment banker to the Debtors: Intrepid Investment Bankers, LLC, Attn: Lorie Beers (lbeers@intrepidib.com), Carl Comstock (ccomstock@intrepidib.com) and Ana Alvarenga

---

[1]      A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2]      Capitalized terms used but not defined herein shall have the meaning ascribed to it in the Bid Procedures and Bid Procedures Order, as applicable.

(aalvarenga@intrepidib.com); and (b) counsel to the Debtors: (i) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Steven W. Golden (sgolden@pszjlaw.com); and (ii) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com).

To receive copies of the (i) Sale Motion, any exhibits to the Sale Motion, and/or a confidentiality agreement to become a Potential Bidder (as defined below), or (ii) a copy of the Form APA or Stalking Horse Agreement, as applicable, please submit a request by email to: (a) counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, Attention: Steven Golden (email: sgolden@pszjlaw.com); and (b) the Debtors' investment banker, Intrepid, Attn: Ana Alvarenga (aalvarenga@intrepidib.com).  Additionally, the Sale Motion and the exhibits thereto are available from the Debtors' claims and noticing agent's website at https://cases.stretto.com/amyris/.

In order for Interested Parties to obtain access to the Debtors' data room, each Interested Party must first sign and deliver a confidentiality agreement to the Debtors and provide certain financial data, which financial must be acceptable to the Debtors after consultation with the Consultation Parties.  Please refer to the Bid Procedures for further information concerning submitting a Qualified Bid to participate at the Auction.

## II.      Sale Hearing and Closing

The Sale Hearing is scheduled for **January 24, 2024, at 10:00 a.m. (prevailing Eastern Time),** at the United States Bankruptcy Court for the District of Delaware, United States Courthouse, 824 Market Street North, 3rd Floor, Wilmington, DE 19801, before the Honorable Thomas M. Horan, United States Bankruptcy Judge.  The Sale Hearing is being held to approve the highest or otherwise best offer(s) received for the Lab-to-Market™ Assets at the Auction, which, if any, will take place on **January 19, 2024, commencing at 10:00 a.m. (prevailing Eastern Time)**, at a location and in a manner to be determined by the Debtors.  Subject to the terms of the DIP Order, the Sale Hearing may be adjourned or rescheduled with prior notice filed on the docket of these Chapter 11 Cases or without prior notice by an announcement of the adjourned date at the Sale Hearing.

**THE DEADLINE TO OBJECT TO THE DEBTORS' REQUEST TO APPROVE THE SALE(S) OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES TO THE SUCCESSFUL BIDDER(S) (EACH, A "<u>SALE OBJECTION</u>") IS JANUARY 23, 2024, at 5:00 P.M. (PREVAILING EASTERN TIME) (THE "<u>SALE OBJECTION DEADLINE</u>").**

Any person or entity wishing to submit a Sale Objection must do so in writing and state with particularity the grounds for such objections or other statements of position.  All Sale Objections shall be served so as to be actually received by no later than the Sale Objection Deadline by the following (collectively, the "<u>Notice Parties</u>"):

i.       counsel for the Debtors, (a) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James    E.    O'Neill    (joneill@pszjlaw.com)    and    Steven    W.    Golden

(sgolden@pszjlaw.com); and (b) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com);

ii.     counsel to the DIP Lenders and the DIP Agent (collectively, the "DIP Secured Parties") and the Foris Prepetition Secured Lenders (together with the DIP Secured Parties, the "Secured Parties"), (a) Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com), Alexander J. Nicas, Esq. (anicas@goodwinlaw.com), and Debora A. Hoehne, Esq. (dhoehne@goodwinlaw.com); and (b) Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com)

iii.    counsel to the Committee, White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095; Attn: Gregory Pesce, Esq. (gregory.pesce@whitecase.com), O'Neill, Esq. (aoneill@whitecase.com), and John Ramirez, Esq. (john.ramirez@whitecase.com); co-counsel to the Committee, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801; Attn: Christopher M. Samis, Esq. (csamis@potteranderson.com), Katelin A. Morales, Esq. (kmorales@potteranderson.com), Sameen Rizvi, Esq. (srizvi@potteranderson.com);

iv.     counsel for the Ad Hoc Noteholder Group, (a) Paul Hastings LLP, 1999 Avenue of the Stars, Twenty-Seventh Floor, Century City, CA 90067, Attn.: Frank Merola, Esq. (frankmerola@paulhastings.com); (b) Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: John F. Storz, Esq. (johnstorz@paulhastings.com); and (c) Blank Rome, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Stanley B. Tarr, Esq. (stanley.tarr@blankrome.com); and

v.      the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: John Schanne (John.Schanne@usdoj.gov).

The failure of any person or entity to file and serve a Sale Objection on or before the Sale Objection Deadline, as applicable, (i) shall be deemed a consent to the Sale(s) to the Successful Bidder(s) and the other relief requested in the Motion, and (ii) shall be a bar to the assertion of any objection the sale(s) of the Lab-to-Market™ Assets to the Successful Bidder(s) (including in any such case, without limitation, the transfer of the Lab-to-Market™ Assets free and clear of all Encumbrances, other than the assumed liabilities).

## III.    The Debtors' Contracts and Leases

The Sale Order, if approved, shall authorize the assumption and assignment or transfer of the Transferred Contracts to the Successful Bidder(s).  In accordance with the Bid Procedures Order, notices setting forth the specific Potential Assumed/Assigned Contracts that may be assumed by the Debtors and assigned to the Successful Bidder(s), or sold and transferred to the Successful Bidder(s), and the proposed Cure Amounts for such Potential Assumed/Assigned Contracts will be given to all Contract Counterparties to the Potential Assumed/Assigned Contracts.  Such counterparties will be given the opportunity to object to the assumption,

assumption and assignment, or sale and transfer, of a Potential Assumed/Assigned Contract in connection with any restructuring transaction (including a Sale) and the proposed Cure Amount.

**This notice is subject to the full terms and conditions of the Bid Procedures and the Bid Procedures Order, which shall control in the event of any conflict. The Debtors encourage all persons to review such documents and all other Sale-related documents in their entirety and to consult an attorney if they have questions or want advice.**

Dated: [●], 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ DRAFT*

Richard M. Pachulski (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell (admitted *pro hac vice*)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
joneill@pszjlaw.com
jrosell@pszjlaw.com
sgolden@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*