**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

Hearing Date [Requested]:  January 9, 2024, at 11:00 a.m. (ET)
Objection Deadline [Requested]:  January 2, 2024 at 4:00 p.m. (ET)

**DEBTORS' MOTION PURSUANT TO SECTION 363**
**OF THE BANKRUPTCY CODE TO ENTER INTO A RELEASE PROTOCOLS**
**AGREEMENT WITH DSM NUTRITIONAL PRODUCTS LTD. AND FIRMENICH S.A.**

Amyris, Inc. ("Amyris") and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Company") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") file this motion (the "Motion") for the entry of an order, pursuant to section 363 of Title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors to enter into that certain *Release Protocols Agreement*, attached hereto as **Exhibit A** (the "Release Protocols Agreement"), with DSM Nutritional Products Ltd. ("DSM") and Firmenich S.A.

In support of this Motion, the Debtors submit the Declaration of Han Kieftenbeld (the "Kieftenbeld Declaration"), which is filed contemporaneously herewith and incorporated herein by reference.  In further support of this Motion, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT AND RELIEF REQUESTED**

1.      The Debtors have been engaged in extensive arm's length negotiations with DSM and its affiliates, including Firmenich S.A., (collectively, "DSM-Firmenich") for approximately

---

[1]     A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

4861-3633-1927.8 03703.004

four months regarding a comprehensive restructuring of their complex business relationship. These negotiations have culminated in a *Restructuring Term Sheet* (the "Term Sheet"), dated December 13, 2023, by and between the Debtors and DSM-Firmenich, which includes improved pricing terms for the Debtors.

2.     As contemplated by the Term Sheet and the *Amended & Restated Plan Support Agreement* [Docket No. 910] (the "Plan Support Agreement"), the Debtors anticipate that DSM-Firmenich will execute a joinder to the Plan Support Agreement and support the Debtors' restructuring efforts contemplated by that certain *Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors, as Modified* [Docket No. 892] (as may be amended, the "Plan").[2]

3.     A critical component of the Term Sheet is the ability of the Debtors to immediately implement the improved pricing terms upon (1) execution of the stand-alone Release Protocols Agreement and (2) delivery of certain strains and supporting documentation into escrow subject to the Release Protocols Agreement. The Release Protocols Agreement and the delivery of certain strains into escrow enable DSM-Firmenich to implement a business continuity program in the event of a future material breach by Amyris.

4.     By this Motion, the Debtors seek authority to undertake the actions necessary to gain the immediate economic benefits of the improved pricing terms, including authority to enter into the Release Protocols Agreement.

---

[2]    For the avoidance of doubt, this Motion does not seek approval of the Term Sheet. The Debtors anticipate that the DSM-Firmenich Joinder will shortly be filed on the docket with a redacted form of the Term Sheet attached thereto.

## JURISDICTION AND VENUE

5.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The statutory predicates for the relief requested herein are sections 105 and 363 of the Bankruptcy Code.

## RELEVANT BACKGROUND

8.     In 2017, the Company monetized the use of one of its mature molecules in certain fields of use by licensing farnesene to DSM for certain limited purposes.  The Company also sold its subsidiary, Amyris Brasil Ltda., which owned and operated a biofuel-oriented manufacturing facility in Brotas, Brazil that manufactures farnesene, to an affiliate of DSM-Firmenich.

9.     On March 31, 2021, the Company entered into a license agreement and asset purchase agreement pursuant to which DSM-Firmenich acquired exclusive rights to the Company's flavors and fragrances product portfolio, which included certain intellectual property licenses and the assignment of related supply agreements, for upfront consideration of $150 million, and certain contingent consideration if certain commercial milestones are achieved between 2022 and 2024.  In connection with this transaction, the Company also entered into a 15-

year agreement to manufacture certain flavors and fragrances ingredients for DSM for supply to third parties. These agreements have proven to not be commercially viable for the Company and as a result the Plan is predicated upon these agreements being substantially modified.

10.     The Term Sheet contemplates a comprehensive restructuring of these contractual arrangements and provides, among other things, improved pricing terms that will support the Debtors' reorganized business plan.

11.     At this time, however, the Debtors only seek authority to enter into the Release Protocols Agreement, which will trigger the improved pricing terms upon delivery of the strains and related documents into escrow, providing an immediate economic benefit to these estates.

12.     The Release Protocols Agreement is substantially consistent with DSM-Firmenich's existing rights but provides further clarification and clarity on certain issues, including, among other things, as follows: (a) terms and conditions for the current delivery of certain strains to DSM-Firmenich subject to the Release Protocols; (b) the terms and conditions of certain release protocols for certain developed and commercialized ingredients and related security protocols; and (c) intellectual property licenses with respect to these materials (limited to the flavors and fragrance market) upon a future uncured material breach, all as set forth more fully in the Release Protocols Agreement.

## ARGUMENT AND AUTHORITIES

13.     Section 363(b)(1) of the Bankruptcy Code provides that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ."[3] Section 105(a) of the Bankruptcy Code further provides, in relevant part, that "[t]he

---

[3]     11 U.S.C. § 363(b)(1).

court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

14.     A debtor may be authorized to use or sell assets outside of the ordinary course of business pursuant to section 363 of the Bankruptcy Code if it demonstrates a sound business purpose for doing so.[4] "Section 363(b) has been applied to other uses that one might not ordinarily posit as a question of use of property, but rather as entering into transactions out of the ordinary course of business. This seems appropriate, because nearly any kind of transaction will involve use, sale or lease of property of the estate, even if only cash." 3 COLLIER ON BANKRUPTCY P 363.02 (16th 2023).

15.     Since, the paramount goal of a chapter 11 process is to maximize the proceeds received by the estate,[5] courts have recognized that section 363 can be used to approve transactions outside the ordinary course that are consistent with the goal of maximizing the value received by the estate of a debtor.[6] The Court "should weigh the following factors when it is asked by debtor

---

[4]     *See In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del . 2003) (finding that a court should approve a debtor's use of assets outside ordinary course of business if debtor can demonstrate a sound business justification for proposed transaction); *see also In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 154 (Bankr. D. Del. 1999) (finding that the debtor's sound business purpose justified its sale of the assets outside of the ordinary course of business).

[5]     *See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) ("[A] primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand."); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149 (3d Cir. 1986) (noting the fairness and reasonableness of prices); *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . debtor's duty . . . is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bag Co. v. Champion Intl Corp. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)); *In re Summit Glob. Logistics, Inc.*, No. 08-11566, 2008 Bankr. LEXIS 896, at *43 (Bankr. D.N.J. Mar. 26, 2008) (describing a proposed transaction as one that "maximize[d] value and return to interested parties.").

[6]     *See, e.g., In re Dura Auto. Sys.*, 379 B.R. 257, 263 (Bankr. D. Del. 2017); *Integrated Res.*, 147 B.R. at 659 (providing that such procedures "encourage bidding and to maximize the value of the debtor's assets."); *In re Fin. News Network Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991) ("[C]ourt-imposed rules for the disposition of assets [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estate.").

to approve a transaction that is not covered by a specific provision in the Bankruptcy Code, that is not in the ordinary course of business, and that may have a significant impact on debtor's reorganization efforts: (1) Has the debtor satisfied the business judgment test by demonstrating good and sound business reasons for the proposed transaction? (2) Is the proposed transaction in the best interests of creditors? (3) Is the proposed transaction premature? (4) Does the debtor have other options available to reorganize? (5) Will the proposed transaction facilitate a plan of reorganization?" *In re American Dev. Corp.*, 95 B.R. 735, 739 (Bankr. C.D. Cal. 1989). With this in mind, courts have deferred to a debtor's business judgment.[7]

16.     The Release Protocols Agreement meets this test. In exchange for providing enhanced business continuity protection to DSM-Firmenich via the Release Protocols Agreement, the Debtors immediately get the benefit of the negotiated improved pricing terms, which are critical for the Debtors' successful emergence from bankruptcy and post-confirmation business operations.

## NO PRIOR REQUEST

17.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

---

[7]     *See, e.g., In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [Debtor] to show that a sound business purpose justifies such actions.' If the [Debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale." (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)); *In re Trans World Airlines Inc.*, No. 01-0056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001) ("It is not the function of a bankruptcy court to independently exercise a business judgment as to which proposal among competing proposals should be adopted by the debtor in effecting a § 363(b) sale.").

## CONCLUSION

18.     Based on the foregoing, the Debtors respectfully requests that the Court grant the

relief requested in the Motion in accordance with the proposed order attached hereto as **Exhibit B**

and grant the Debtors such other relief as is appropriate.

Dated: December 20, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*

Richard M. Pachulski (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell (admitted *pro hac vice*)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  rpachulski@pszjlaw.com
        dgrassgreen@pszjlaw.com
        joneill@pszjlaw.com
        jrosell@pszjlaw.com
        sgolden@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A

## RELEASE PROTOCOL AGREEMENT

## (FILED UNDER SEAL)

**EXHIBIT B**

**PROPOSED ORDER**

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors. | (Jointly Administered) |

**ORDER GRANTING DEBTORS' MOTION PURSUANT TO SECTION 363
OF THE BANKRUPTCY CODE TO ENTER INTO A RELEASE PROTOCOLS
AGREEMENT WITH DSM NUTRITIONAL PRODUCTS LTD. AND FIRMENICH S.A.**

Upon consideration of the *Motion of the Debtors Pursuant to Section 363 of the Bankruptcy Code to Enter into a Release Protocols Agreement with DSM Nutritional Products Ltd. and Firmenich S.A.* [Docket No. ____] (the "Motion") and the *Declaration of Han Kieftenbeld* [Docket No. ____] filed in support of the Motion; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing");

and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED**.

2.      The Debtors are authorized to execute the Release Protocols Agreement under section 363(b) of the Bankruptcy Code and take all other actions necessary to effectuate the relief granted in this Order in accordance with the Motion, including all actions necessary to effectuate (1) the Release Protocol Agreement and (2) the improved pricing terms contemplated in the Restructuring Term Sheet.

3.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.