**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

**DECLARATION OF HAN KIEFTENBELD**
**IN SUPPORT OF DEBTORS' MOTION PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE TO ENTER INTO A RELEASE PROTOCOLS AGREEMENT WITH DSM NUTRITIONAL PRODUCTS LTD. AND FIRMENICH S.A.**

I, Han Kieftenbeld, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1.      I am the Interim Chief Executive Officer and Chief Financial Officer of the above-captioned debtors and debtors in possession (the "Debtors" and, together with their non-Debtor subsidiaries, "Amyris" or the "Company"). I was appointed Interim Chief Executive Officer in June 2023 following the departure of the Company's previous Chief Executive Officer, John Melo, who had served in that role since January 2007. Additionally, I have served as the Company's Chief Financial Officer since March 2020 and, previously, I served as Amyris's Chief Administration Officer and Interim Chief Accounting Officer. I have over thirty years of international business leadership, finance, and operations experience in science-driven food, health, nutrition, personal care, and industrial end-markets.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

2.  I submit this declaration (the "Declaration") in support of the *Motion of the Debtors Pursuant to Section 363 of the Bankruptcy Code to Enter Into a Release Protocols Agreement With DSM Nutritional Products Ltd. and Firmenich S.A.* (the "Motion")[2] filed contemporaneously herewith.

3.  Except as otherwise indicated, the statements in this Declaration are based on: (a) my personal knowledge of the Debtors' operations, financing arrangements, and business affairs based upon information provided by the Debtors and their advisors; (b) the Debtors' books and records; (c) my review of the agreements setting forth the terms and conditions of the complex business relationship between the Debtors, DSM Nutritional Products Ltd. ("DSM") and its affiliates, including Firmenich S.A. (collectively, "DSM-Firmenich"); (d) information provided to me by, or discussions with, members of the Debtors' management team, the Debtors' other employees, or the Debtors' other advisors; (e) advice received from counsel to the Debtors concerning state and federal law, including bankruptcy law; and (f) my general experience and knowledge.

4.  I am authorized to submit this Declaration in support of the Motion. If called upon to testify, I can and would testify competently as to the facts set forth herein.

5.  In 2017, the Company monetized the use of one of its mature molecules in certain fields of use by licensing farnesene to DSM for certain limited purposes. The Company also sold its subsidiary, Amyris Brasil Ltda., which owned and operated a biofuel-oriented manufacturing facility in Brotas, Brazil that manufactures farnesene, to an affiliate of DSM-Firmenich.

6.  On March 31, 2021, the Company entered into a license agreement and asset purchase agreement pursuant to which DSM-Firmenich acquired exclusive rights to the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Company's flavors and fragrances product portfolio, which included certain intellectual property licenses and the assignment of related supply agreements, for upfront consideration of $150 million, and certain contingent consideration if certain commercial milestones are achieved between 2022 and 2024. In connection with this transaction, the Company also entered into a 15-year agreement to manufacture certain flavors and fragrances ingredients for DSM for supply to third parties. These agreements have proven to not be commercially viable for the Company and as a result the Plan is predicated upon these agreements being substantially modified.

7.  The Debtors have been engaged in extensive arm's length negotiations with DSM-Firmenich for approximately four months regarding a comprehensive restructuring of their complex business relationship. These negotiations have culminated in a *Restructuring Term Sheet* (the "Term Sheet"), dated December 13, 2023, by and between the Debtors and DSM-Firmenich, which includes improved pricing terms for the Debtors.

8.  As contemplated by the Term Sheet and the *Amended & Restated Plan Support Agreement* [Docket No. 910] (the "Plan Support Agreement"), the Debtors anticipate that DSM-Firmenich will execute a joinder to the Plan Support Agreement and support the Debtors' restructuring efforts contemplated by that certain *Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors, as Modified* [Docket No. 892] (as may be amended, the "Plan").[3]

9.  A critical component of the Term Sheet is the ability of the Debtors to immediately implement the improved pricing terms upon (1) execution of the stand-alone Release Protocols Agreement and (2) delivery of certain strains and supporting documentation into escrow subject

---

[3] For the avoidance of doubt, this Motion does not seek approval of the Term Sheet. The Debtors anticipate that the DSM-Firmenich Joinder will shortly be filed on the docket with a redacted form of the Term Sheet attached thereto.

to the Release Protocols Agreement. The Release Protocols Agreement and the delivery of certain strains into escrow enable DSM-Firmenich to implement a business continuity program in the event of a future material breach by Amyris.

10. By the Motion, the Debtors seek authority to undertake the actions necessary to gain the immediate economic benefits of the improved pricing terms, including authority to enter into the Release Protocols Agreement. The Release Protocols Agreement is attached to the Motion as **Exhibit A**, but the Debtors have sought permission to file the Release Protocols Agreement under seal because it contains proprietary and confidential information, as set forth in detail in the *Debtors' Motion for Entry of an Order Authorizing Debtors to File Under Seal Certain Information Related to Motion of the Debtors Pursuant to Section 363 of the Bankruptcy Code to Enter Into a Release Protocols Agreement With DSM Nutritional Products Ltd. and Firmenich S.A.* (the "Sealing Motion") filed contemporaneously herewith.

11. The Release Protocols Agreement is substantially consistent with DSM-Firmenich's existing rights but provides further clarification and clarity on certain issues, including, among other things, as follows: (a) terms and conditions for the current delivery of certain strains to DSM-Firmenich subject to the Release Protocols; (b) the terms and conditions of certain release protocols for certain developed and commercialized ingredients and related security protocols; and (c) intellectual property licenses with respect to these materials (limited to the flavors and fragrance market) upon a future uncured material breach, all as set forth more fully in the Release Protocols Agreement.

12. I have analyzed the restructuring of the commercial relationship between the Debtors and DSM-Firmenich contemplated by the Release Protocols Agreement and the related Term Sheet and Plan Support Agreement. The proposed restructuring is in the best interests of the

Debtors and their proposed reorganization and emergence from chapter 11. In my business judgment, I believe the Motion and the relief requested therein should be approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: December 20, 2023                                  /s/ *Han Kieftenbeld*
                                                          Han Kieftenbeld

5