# EXHIBIT B
## Stipulation

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x
: Chapter 11
In re: :
: Case No. 23-11131 (THM)
AMYRIS, INC., *et al.*, :
: Jointly Administered
Debtors. :
:
------------------------------------------------------x

**STIPULATION WITH JPMORGAN CHASE BANK, N.A.,
(I) AUTHORIZING DEBTOR TO (A) SUBMIT APPLICATION AND
AGREEMENT FOR ISSUANCE OF LETTER OF CREDIT, AND (B) OBTAIN
CREDIT UNDER LETTER OF CREDIT AGREEMENT SECURED BY
ASSIGNMENT OF CASH SECURITY, AND (II) MODIFYING THE AUTOMATIC
STAY TO ALLOW APPLICATION OF ASSIGNED CASH SECURITY UNDER
TERMS OF LETTER OF CREDIT AGREEMENT**

Amyris, Inc. ("**Amyris**") and its affiliated debtors and debtors in possession (with Amyris, collectively, the "**Debtors**"), and JPMorgan Chase Bank, N.A. ("**JPM**" and, together with Amyris, the "**Parties**"), hereby stipulate and agree (this "**Stipulation**") as follows:

## RECITALS

**WHEREAS**, on August 9, 2023 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), and continue to manage their businesses and assets as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS**, prior to the Petition Date, Amyris and JPM entered into nine (9) respective *Applications and Agreements for Irrevocable Standby Letters of Credit* (collectively, the "**LC Agreements**") pursuant to which JPM issued nine (9) corresponding Letters of Credit in various face amounts (collectively, the "**Letters of Credit**"), to assure the beneficiaries thereunder of

Amyris' payment of its monetary obligations to such beneficiaries as Amyris' landlords under various leases of commercial real property, and/or under various continuing import customs bonds;

**WHEREAS**, the LC Agreements provide that Amyris is obligated to reimburse JPM in the amount of any pay-out distribution made by JPM under the Letters of Credit on account of a compliant "sight draft" draw-down and demand for payment received by JPM from a beneficiary under any of the Letters of Credit (collectively, the "**LC Pay-Outs**"), together with JPM's interest, fees, costs and expenses incurred incidental thereto;

**WHEREAS**, Amyris delivered its *Assignment of Deposit Account* dated as of June 9, 2021, to and in favor of JPM (the "**Deposit Assignment**"), pursuant to which Amyris assigned and granted to JPM what JPM views as a perfected first priority lien and security interest in and control of Amyris' cash deposit account held by JPM and ending in account # ….8876 (the "**Deposit Account**"), to secure payment of Amyris' Liabilities (as defined in the Deposit Assignment) owing to JPM, including the Reimbursement Obligations (defined below), and which pledged Deposit Account as of September 11, 2023, held a cash balance of $6,052,238.00 (the "**Cash Security**");

**WHEREAS**, pursuant to the Deposit Assignment, upon JPM's payment of any LC Pay-Outs, JPM has the right, subject to approval of the Bankruptcy Court, to apply Cash Security against and in the amount of any such LC Pay-Outs, together with interest thereon (as provided in the LC Agreements), and in the amount of JPM's costs, expenses and fees in administering such LC Pay-Outs, including JPMs attorney's fees incurred in enforcing its rights and seeking relief in connection therewith (collectively, the "**Reimbursement Obligations**"), to thereby satisfy Amyris' Reimbursement Obligations arising under the LC Agreements;

**WHEREAS**, Amyris has requested JPM issue a new letter of credit for its account in the face amount of $70,000.00 in favor of American Alternative Insurance Corporation, to secure

Amyris' obligations under a certain import customs bond (the "**New LC**"), and in connection therewith Amyris has agreed to enter into and deliver to JPM agreements JPM determines are necessary for JPM to issue such New LC, including a new *Application and Agreement for Irrevocable Standby Letter of Credit* and, if necessary, a new *Assignment of Deposit Account* agreement (collectively, the "**New LC Agreements**");

**WHEREAS**, Amyris has agreed to deposit $77,000.00 of additional cash security (the "**New Cash Security**") in the Deposit Account under and pursuant to the terms of the Deposit Assignment, to serve as security for payment of Amyris' reimbursement and related obligations arising under the New LC Agreements in the amount of any prospective distribution pay-out by JPM under the New LC, together with interest thereon (as provided in the New LC Agreements), and in the amount of JPM's costs, expenses and fees in administering such a pay-out under the New LC, including JPMs attorney's fees incurred in enforcing its rights and seeking relief in connection therewith (collectively, the "**New LC Reimbursement Obligation**");

**WHEREAS**, if and when JPM receives a compliant sight draft draw-down demand for payment from the beneficiary under the New LC, Amyris will, pursuant to the New LC Agreements, be obligated to pay JPM the New LC Reimbursement Obligation and thereupon, JPM would have the right to apply New Cash Security in the amount of and against the New LC Reimbursement Obligation, to thereby satisfy Amyris' obligations arising under the New LC Agreements;

**WHEREAS**, pursuant to the terms of this Stipulation, Amyris has agreed to request the Bankruptcy Court (a) authorize Amyris to enter into the new LC Agreements, to incur the New LC Reimbursement Obligation, and to deposit the New Cash Security in the Deposit Account under and pursuant to the Deposit Assignment, as security for payment of the New LC

Reimbursement Obligation, (b) approve, pursuant to Section 364(d) of the Bankruptcy Code, Amyris obtaining credit and incurring indebtedness under and connection with the New LC Agreements, the New LC, and the New LC Reimbursement Obligation, secured by its assignment and pledge of the New Cash Security to and in favor of JPM under the Deposit Assignment as aforesaid, and (c) grant JPM relief from the stay imposed under Section 362 of the Bankruptcy Code to permit JPM to apply New Cash Security toward satisfaction of any New LC Reimbursement Obligation that may arise, in accordance with the terms and conditions set forth in this Stipulation;

**WHEREAS**, the Parties have agreed to entry of an order approving the terms and conditions of this Stipulation, authorizing the Parties to consummate the transactions set forth herein, and granting JPM relief on the terms and subject to the conditions set forth herein (the "**Stipulation Order**"); and

**WHEREAS**, the Parties agree this Stipulation is in the best interests of Amyris and its estate and will further its efforts to successfully reorganize, including because it will preserve Amyris' assets by avoiding attorneys' fees and costs that would be expended by JPM if JPM was required to seek stay relief upon to enforce the New LC Reimbursement Obligation and related expenses as such may arise.

**NOW, THEREFORE**, subject to the approval of the Bankruptcy Court, in order to avoid the costs, risks and delays of litigation, the Parties hereby stipulate and agree as follows:

1. Upon entry of the Stipulation Order, the Stipulation is approved and the Parties are authorized to enter into and consummate the transactions described and contemplated thereunder, and Amyris may execute and deliver to JPM the New LC Agreements and other documents and

agreements JPM determines are reasonably necessary in connection therewith, and may deposit the New Cash Security in the Deposit Account.

2. Upon Amyris delivery of the New LC Agreements and the New Cash Security pursuant to the Deposit Assignment, JPM thereby shall, pursuant to Section 364(d) of the Bankruptcy Code, hold a perfected first priority lien and security interest in and control of the New Cash Security deposited in the Deposit Account under the terms of the Deposit Assignment, to secure payment of the New LC Reimbursement Obligation and the other Liabilities (as defined in the Deposit Assignment) that may arise.

3. JPM's senior possessory lien in and to the New Cash Security to secure the New Reimbursement Obligation and the other Liabilities shall not be subordinate to or impaired by virtue of or under any post-Petition Date secured and/or other financing approved on an interim or final basis in the Debtors' bankruptcy cases, and (to the extent applicable) JPM's senior liens therein shall constitute Permitted Liens (as defined in the Final Order (I) Authorizing The Debtors (A) To Obtain Postpetition Financing and (B) To Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief [Docket No. 558] (the "**Final DIP Order**") and in the DIP Credit Agreement (as therein defined)). The New LC Reimbursement Obligation shall further be entitled to priority as administrative expenses allowed under Section 503(b) of the Bankruptcy Code upon satisfaction of the notice and other procedures under Sections 4, 5 and 6 of this Stipulation. Furthermore, any intended exercise by JPM of its rights to apply the New LC Cash Security against the New Reimbursement Obligation shall be subject to the prior notice and objection terms and procedures as set forth in Sections 4 through 7 of this Stipulation.

4. If after the date of entry of the Stipulation Order JPM receives one or more compliant sight draft draw-down demands for payment from the beneficiary under the New LC and, in response, JPM makes one or more payment distributions under the New LC (a "**New LC Pay-Out**"), Amyris will, pursuant to the New LC Agreements, be obligated to pay JPM the New LC Reimbursement Obligation and thereupon, JPM will have the right to apply New Cash Security in the amount of and against the New LC Reimbursement Obligation, to thereby satisfy Amyris' obligations arising under the New LC Agreement, provided, however, that upon JPM's distribution of a New LC Pay-Out, JPM shall deliver via electronic mail to counsel for Amyris, counsel for the DIP Agent (as defined in the Final DIP Order), and counsel for the Debtors' Official Unsecured Creditors' Committee (the "**Committee**"), if the Committee is then still constituted, notice of the amount of such New LC Pay-Out (together with reasonable detail of the components of such New LC Reimbursement Obligation) and, based thereon, of JPM's intention to exercise its right to apply New Cash Security to, against and in satisfaction of the New LC Pay-Out and of any related applicable New LC Reimbursement Obligation.

5. Immediately after the date that is five (5) business days after receipt by counsel for Amyris and by counsel for the Committee of the foregoing notice by JPM of its intent to exercise its right to apply New Cash Security against any New LC Reimbursement Obligation on account of any such New LC Pay-Out (such five (5) business day period, the "**5-Day Objection Period**"), the stay under Section 362 of the Bankruptcy Code is lifted and JPM may apply New Cash Security to, against and in satisfaction of such New LC Reimbursement Obligation Application of Funds, provided, however, that JPM may not exercise such right to apply New Cash Security immediately after expiration of the 5-Day Objection Period if, within and no later than expiration of the 5-Day Objection Period, Amyris, the DIP Agent, and/or the Committee (i) notify JPM that Amyris, the

DIP Agent, and/or the Committee object to the exercise of such right to apply the New Cash Security and (ii) within five (5) business days following expiration of the 5-Day Objection Period, file with the Bankruptcy Court in the above-captioned jointly administered bankruptcy cases an objection to JPM's exercise of such right to New Cash Security with respect to any such New LC Reimbursement Obligation, stating in reasonable detail the grounds for such objection (any such objection, an "**Objection**"). Nothing in this Stipulation shall modify, affect or shift any Party's burden of proof with respect to an Objection or the related exercise of rights to New Cash Security, including with respect to any a New LC Reimbursement Obligation. The Parties will thereupon confer in a timely manner to seek to resolve the Objection. Absent such a resolution, JPM may thereupon seek an order of the Bankruptcy Court overruling the Objection (and/or seeking related relief) and permitting JPM's exercise of its rights to New Cash Security that is the subject of the Objection.

6. Absent an Objection as provided in Section 6 herein, within five (5) business days following the date JPM applies New Cash Security against any New LC Reimbursement Obligation, JPM shall deliver to Amyris' counsel its report setting forth (a) the amount of New Cash Security applied in satisfaction of the New LC Reimbursement Obligation, (b) the respective amounts of JPM's administrative fees, costs and other fees and expenses, including its attorney's fees, included in the New LC Reimbursement Obligation, and (c) the then-remaining net balance of the New Cash Security held by JPM. The Parties reserve all rights with respect to the reasonableness of any charges above the respective face amount of the New LC Pay-Out.

7. At such time as JPM has (a) consummated the New LC Pay-Out and satisfied the related New LC Reimbursement Obligation, and (b) determined that (i) the New LC has expired, and (ii) JPM has no further liability to the beneficiary or otherwise under the New LC, JPM shall

(within five (5) business days after last of all such events) return to Amyris any then-remaining portion, if any, of the New Cash Security.

8. This Stipulation is entered into solely to reflect the agreement of the Parties with respect to the subject matter herein, and neither this Stipulation nor the fact of its execution will constitute any admission or acknowledgment on the part of any Party, except with respect to the subject matter of this Stipulation. Each Party is duly authorized and empowered to execute this Stipulation.

9. Amyris' respective actions and grants and JPM's respective rights and lien interests set forth in this Stipulation are made and shall be deemed authorized and approved pursuant to Sections 362(d) and 364(c) and (d) of the Bankruptcy Code by virtue of the Bankruptcy Court's entry of the Stipulation Order.

10. The Bankruptcy Court shall retain exclusive jurisdiction to resolve any disputes or controversies arising from or related to this Stipulation.

11. All of the recitals set forth above are incorporated by reference as if fully set forth herein. This Stipulation constitutes the complete express agreement of the Parties concerning the subject matter hereof, and no modification or amendment to this Stipulation shall be valid unless it is in writing, signed by the Party or Parties to be charged and approved by the Bankruptcy Court.

12. Each Party has participated in and jointly consented to the drafting of this Stipulation and any claimed ambiguity shall not be construed for or against either Party on account of such drafting.

13. Notwithstanding the applicability of Bankruptcy Rule 4001(a)(3), the terms and conditions of this Stipulation shall be immediately effective and enforceable upon its entry.

Dated: December 22, 2023

| | |
|---|---|
| *Steven W. Golden* | *William E. Schonberg* |
| Steven W. Golden, Esq. (DE No. 6807) | Kevin M. Capuzzi, Esq. (DE No. 5462) |
| Maxim B. Litvak, Esq. (CA No. 215852) | BENESCH FRIEDLANDER COPLAN |
| PACHULSKI STANG ZIEHL & JONES LLP | & ARONOFF, LLP |
| 919 North Market Street, 17th Floor | 1313 North Market Street, Suite 1201 |
| Wilmington, Delaware 19801 | Wilmington, Delaware 19801 |
| Telephone: (302) 652-4100 | Telephone: (302) 442-7010 |
| Facsimile: (302) 652-4400 | Email: kcapuzzi@beneschlaw.com |
| Email: sgolden@pszjlaw.com | |
| | William E. Schonberg, Esq. (OH No. 0025140) |
| *Counsel for the Debtors* | BENESCH FRIEDLANDER COPLAN & ARONOFF, LLP |
| | 127 Public Square, Suite 4900 |
| | Cleveland, Ohio 44114 |
| | Telephone: (216) 363-4634 |
| | Email: wschonberg@beneschlaw.com |
| | |
| | *Counsel for JPMorgan Chase Bank, N.A.* |