## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

### AFFIDAVITS OF PUBLICATION

On December 18, 2023, the Notice of (A) Hearing to Consider Confirmation of Debtors' Chapter 11 Plan; (B) Deadline for Voting to Accept or Reject Plan; (C) Debtors' Releases and Third-party Release; (D) Deadlines Regarding Third-party Release Opt Out Election; and (E) Related Matters [Docket No. 946] (the "Combined Hearing Notice") was filed with the Court.

Between December 19, 2023 and December 21, 2023, three newspapers published the approved Combined Hearing Notice, copies and corresponding affidavits of which are attached hereto as **Exhibit A** through **Exhibit C**,

Exhibit A: The Wall Street Journal
Exhibit B: SP Official Gazette
Exhibit C: Jornal o Dia

Dated: January 1, 2024

/s/ Alexa Westmoreland
Alexa Westmoreland
410 Exchange, Suite 100
Irvine, CA 92602
(888)855-0485
TeamAmyris@Stretto.com

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris.   The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

# **Exhibit A**

# AFFIDAVIT

**STATE OF NEW JERSEY**                          )
                                                 ) ss:
**CITY OF MONMOUTH JUNCTION, in the COUNTY OF MIDDLESEX** )

I, Wayne Sidor, being duly sworn, depose and say that I am the Advertising Clerk of the

Publisher of THE WALL STREET JOURNAL, a daily national newspaper of general

circulation throughout the United States, and that the notice attached to this Affidavit

has been regularly published in THE WALL STREET JOURNAL for National

distribution for

1 insertion(s) on the following date(s):  12/19/2023

ADVERTISER: AMYRIS, INC.

and that the foregoing statements are true and correct to the best of my knowledge.

_Wayne Sidor_

          Sworn to
before          me          this19th
day of  December 2023



Notary Public

# COMMODITIES

wsj.com/market-data/commodities

## Futures Contracts

### Metal & Petroleum Futures

| | Open | High | hi Low | Settle | Chg | Open interest |
|---|---|---|---|---|---|---|
| **Copper-High (CMX)** 25,000 lbs.; $ per lb. | | | | | | |
| Dec | | | | 3.8460 | –0.0370 | 1,539 |
| March'24 | 3.8830 | 3.8915 | 3.8490 | 3.8520 | –0.0385 | 121,212 |
| **Gold (CMX)** 100 troy oz.; $ per troy oz. | | | | | | |
| Dec | 2024.30 | 2032.80 | 2024.00 | 2026.30 | 5.20 | 358 |
| Jan'24 | 2023.70 | 2036.30 | 2020.70 | 2030.90 | 4.90 | 3,259 |
| Feb | 2033.30 | 2048.00 | 2029.50 | 2040.50 | 4.80 | 370,747 |
| April | 2052.90 | 2067.40 | 2048.90 | 2060.10 | 4.90 | 52,316 |
| June | 2072.50 | 2085.20 | 2070.00 | 2079.60 | 5.00 | 20,747 |
| Aug | 2088.70 | 2103.60 | 2087.20 | 2096.90 | 5.10 | 16,350 |
| **Palladium (NYM)** 50 troy oz.; $ per troy oz. | | | | | | |
| Dec | | | | 1195.10 | –3.00 | 7 |
| March'24 | 1189.00 | 1226.50 | 1158.00 | 1199.40 | –3.00 | 18,494 |
| **Platinum (NYM)** 50 troy oz.; $ per troy oz. | | | | | | |
| Jan | | | | 951.50 | 1.70 | 16 |
| April'24 | 955.90 | 972.00 | 953.00 | 963.00 | 1.80 | 36,472 |
| **Silver (CMX)** 5,000 troy oz.; $ per troy oz. | | | | | | |
| Dec | 23.620 | 23.620 | 23.620 | 23.831 | –0.099 | 654 |
| March'24 | 24.125 | 24.355 | 23.885 | 24.027 | –0.047 | 105,939 |
| **Crude Oil, Light Sweet (NYM)** 1,000 bbls.; $ per bbl. | | | | | | |
| Jan | 71.66 | 74.26 | 70.64 | 72.47 | 1.04 | 51,630 |
| Feb | 72.05 | 74.41 | 70.99 | 72.82 | 1.04 | 292,573 |
| March | 72.37 | 74.63 | 71.29 | 73.10 | 1.05 | 172,162 |
| April | 72.68 | 74.82 | 71.58 | 73.35 | 1.04 | 94,222 |
| June | 73.01 | 75.27 | 71.97 | 73.67 | 1.02 | 147,497 |
| Dec | 71.90 | 73.99 | 71.02 | 72.43 | 0.83 | 161,040 |
| **NY Harbor ULSD (NYM)** 42,000 gal.; $ per gal. | | | | | | |
| Jan | 2.6296 | 2.7329 | 2.6032 | 2.6728 | 0520 | 49,217 |
| Feb | 2.6066 | 2.7039 | 2.5827 | 2.6509 | 0538 | 63,634 |
| **Gasoline-NY RBOB (NYM)** 42,000 gal.; $ per gal. | | | | | | |
| Jan | 2.1349 | 2.2163 | 2.1010 | 2.1590 | 0220 | 53,219 |
| Feb | 2.0987 | 2.1852 | 2.1139 | 2.1479 | 0199 | 87,619 |
| **Natural Gas (NYM)** 10,000 MMBtu.; $ per MMBtu. | | | | | | |
| Jan | 2.503 | 2.597 | 2.488 | 2.503 | .012 | 105,361 |
| Feb | 2.434 | 2.509 | 2.411 | 2.416 | –.009 | 248,104 |
| March | 2.334 | 2.384 | 2.302 | 2.309 | –.009 | 170,910 |
| April | 2.340 | 2.385 | 2.312 | 2.318 | –.015 | 118,239 |
| May | 2.425 | 2.461 | 2.393 | 2.389 | –.026 | 69,827 |
| Oct | 2.814 | 2.847 | 2.784 | 2.772 | –.022 | 70,207 |

### Agriculture Futures

| | | | | | | |
|---|---|---|---|---|---|---|
| **Corn (CBT)** 5,000 bu.; cents per bu. | | | | | | |
| March | 482.50 | 482.75 | 475.50 | 477.00 | –6.00 | 636,711 |
| July | 504.50 | 504.50 | 497.75 | 499.50 | –5.25 | 188,907 |
| **Oats (CBT)** 5,000 bu.; cents per bu. | | | | | | |
| Dec | 2.434 | 2.509 | 2.411 | 2.416 | –.009 | 248,104 |
| May | 382.25 | 382.25 | 368.00 | 383.50 | 6.50 | 283 |
| **Soybeans (CBT)** 5,000 bu.; cents per bu. | | | | | | |

### Interest Rate Futures

| | | | | | | |
|---|---|---|---|---|---|---|
| **Ultra Treasury Bonds (CBT)** $100,000; pts 32nds of 100% | | | | | | |
| Dec | 133-110 | 133-110 | 133-110 | 131-050 | 1.20.09 | 49,486 |
| March'24 | 133-140 | 133-140 | 131-190 | 132-110 | –1.19.02 | 1,445,114 |

### Treasury Bonds (CBT) $100,000; pts 32nds of 100%

| | | | | | | |
|---|---|---|---|---|---|---|
| Dec | 123-240 | 124-000 | 123-080 | 122-030 | –1.09.0 | 91 |
| March'24 | 123-290 | 124-090 | 123-000 | 123-080 | –1.09.0 | 1,170,771 |

### Treasury Notes (CBT) $100,000; pts 32nds of 100%

| | | | | | | |
|---|---|---|---|---|---|---|
| Dec | 112-050 | 112-085 | 112-045 | 111-285 | –5.0 | 596 |
| March'24 | 112-155 | 112-215 | 112-040 | 112-080 | –5.0 | 4,459,948 |

### 5 Yr. Treasury Notes (CBT) $100,000; pts 32nds of 100%

| | | | | | | |
|---|---|---|---|---|---|---|
| Dec | 107-312 | 108-002 | 107-262 | 107-235 | –3.2 | 482 |
| March'24 | 108-122 | 108-177 | 108-057 | 108-082 | –3.2 | 5,716,046 |

### 2 Yr. Treasury Notes (CBT) $200,000; pts 32nds of 100%

| | | | | | | |
|---|---|---|---|---|---|---|
| Dec | 102-150 | 102-168 | 102-128 | 102-101 | –1.5 | 301 |
| March'24 | 102-223 | 102-248 | 102-211 | 102-217 | –1.5 | 3,830,417 |

### 30 Day Federal Funds (CBT) $5,000,000; 100 − daily avg.

| | | | | | | |
|---|---|---|---|---|---|---|
| Dec | 94.6675 | 94.6725 | 94.6675 | 94.6700 | 0000 | 275,553 |
| Feb | 94.6850 | 94.6900 | 94.6850 | 94.6875 | .0025 | 403,582 |

### Currency Futures

| | | | | | | |
|---|---|---|---|---|---|---|
| **Japanese Yen (CME)** ¥12,500,000; $ per 100¥ | | | | | | |
| Dec | .7032 | .7039 | .6988 | .6994 | –.0040 | 50,045 |
| March'24 | .7140 | .7144 | .7089 | .7093 | –.0036 | 185,379 |
| **Canadian Dollar (CME)** CAD 100,000; $ per CAD | | | | | | |
| Dec | .7477 | .7492 | .7468 | .7468 | –.0011 | 479,974 |
| March'24 | .7481 | .7496 | .7472 | .7474 | –.0012 | 156,998 |
| **British Pound (CME)** £62,500; $ per £ | | | | | | |
| Dec | 1.2676 | 1.2703 | 1.2643 | 1.2649 | –.0021 | 95,036 |
| March'24 | 1.2684 | 1.2711 | 1.2650 | 1.2647 | –.0050 | 173,375 |
| **Swiss Franc (CME)** CHF 125,000; $ per CHF | | | | | | |
| Dec | 1.1500 | 1.1538 | 1.1480 | 1.1491 | .0025 | 40,290 |
| March'24 | 1.1611 | 1.1650 | 1.1590 | 1.1627 | .0021 | 44,290 |

### Index Futures

| | | | | | | |
|---|---|---|---|---|---|---|
| **Mini DJ Industrial Average (CBT)** $5 × index | | | | | | |
| March'24 | 37660 | 37772 | 37646 | 37678 | 17 | 93,658 |
| June | 38052 | 38113 | 38001 | 38034 | 17 | 149 |
| **Mini S&P 500 (CME)** $50 × index | | | | | | |
| March'24 | 4759.50 | 4793.50 | 4760.00 | 4793.00 | 25.00 | 2,123,223 |
| June | 4816.50 | 4825.25 | 4805.25 | 4825.25 | 25.00 | 75,467 |
| **Mini S&P Midcap 400 (CME)** $100 × index | | | | | | |
| March'24 | 2778.00 | 2789.40 | 2772.20 | 2778.10 | 2.90 | 42,449 |
| **Mini Nasdaq 100 (CME)** $20 × index | | | | | | |
| March'24 | 16820.00 | 16974.00 | 16821.75 | 16939.75 | 119.50 | 265,345 |
| June | 17056.25 | 17158.25 | 17022.25 | 17132.75 | 121.75 | 649 |
| **Mini Russell 2000 (CME)** $50 × index | | | | | | |
| March'24 | 2020.30 | 2042.60 | 2012.20 | 2031.30 | 13.30 | 439,039 |
| June | 2034.30 | 2047.50 | 2021.50 | 2036.40 | 13.80 | 67 |
| **Mini Russell 1000 (CME)** $50 × index | | | | | | |
| March'24 | 2623.90 | 2653.30 | 2623.30 | 2651.50 | 11.30 | 6,276 |
| **U.S. Dollar Index (ICE-US)** $1,000 × index | | | | | | |
| Dec | 102.50 | 102.54 | 102.15 | 102.55 | –.36 | 20,359 |
| March'24 | 102.20 | 102.20 | 101.88 | 101.72 | –.36 | 29,899 |

Source: FactSet

### Australian Dollar (CME) AUD 100,000; $ per AUD

| | | | | | | |
|---|---|---|---|---|---|---|
| Dec | .6701 | .6719 | .6694 | .6710 | .0003 | 56,630 |
| March'24 | .6721 | .6754 | .6712 | .6731 | .0005 | 143,706 |

### Mexican Peso (CME) MXN 500,000; $ per MXN

| | | | | | | |
|---|---|---|---|---|---|---|
| Dec | .05850 | .05907 | .05792 | .05795 | –.00019 | 60,544 |
| March'24 | .05746 | .05768 | .05696 | .05740 | .00019 | 230,521 |

### Euro (CME) €125,000; $ per €

| | | | | | | |
|---|---|---|---|---|---|---|
| Dec | 1.0895 | 1.0931 | 1.0893 | 1.0916 | .0017 | 689,074 |
| March'24 | 1.0938 | 1.0975 | 1.0896 | 1.0953 | .0017 | 688,005 |

## Dividend Changes

| Company | Symbol | Yld% | Amount New/Old | Frequency | Payable/Record |
|---|---|---|---|---|---|
| **Increased** | | | | | |
| Abbott Laboratories | ABT | 2.0 | .55/.51 | Q | Feb15 /Jan12 |
| Andersons | ANDE | 1.4 | .19/.18 | Q | Jan22 /Jan02 |
| ATN International | ATNI | 2.7 | .24/.21 | Q | Jan05 /Dec31 |
| Edison International | EIX | 4.5 | .7825/.745 | Q | Jan31 /Dec29 |
| Ellington Financial | EFC | 8.4 | .09/.06 | M | Jan25 /Dec29 |
| Ensign Group | ENSG | 0.2 | .06/.055 | Q | Jan31 /Dec31 |
| Lakeland Financial | LKFN | 4.2 | .20/.18 | Q | Feb05 /Jan26 |
| Prudential Finl | PRU | 7.4 | 1.82/1.80 | Q | Jan22 /Dec19 |
| Mosaic | MOS | 2.3 | .21/.20 | Q | Mar21 /Mar07 |
| Trinity Capital | TRIN | 12.7 | .50/.49 | Q | Jan12 /Dec29 |
| **Reduced** | | | | | |
| Armour Residential REIT | ARR | 12.2 | .24/.40 | M | Jan30 /Jan16 |
| New York Mortgage Tr | NYMT | 9.2 | .20/.30 | Q | Jan26 /Dec19 |
| Ready Capital | RC | 14.0 | .30/.36 | Q | Jan31 /Dec29 |
| **Stocks** | | | | | |
| Neoleukin Therapeutics | NLTX | | 1:4 | | /Dec19 |

| Company | Symbol | Yld% | Amount New/Old | Frequency | Payable/Record |
|---|---|---|---|---|---|
| **Foreign** | | | | | |
| Atlas 7.125% Nts 2027 | ATCO.L | 7.5 | .445531 | Q | Jul30 /Jul15 |
| Atlas 7.125% Nts 2027 | ATCO.N | 7.5 | .445531 | Q | Oct30/Oct15 |
| Autohome ADR | ATHM | 6.2 | 1.15 | SA | Mar27/Dec29 |
| City Office REIT | CIO | 6.9 | .10 | Q | Jan24 /Jan10 |
| City Office REIT Pfd A | CIOpA | 8.9 | .41406 | Q | Jan24 /Jan10 |
| Imperial Petroleum Pfd A | IMPPP | 8.8 | .546875 | Q | Jan02/Dec22 |
| Seapeak 8.5% Pfd B | SEALpB | 9.2 | .53125 | Q | Jan15 /Dec31 |
| Seapeak 9% Pfd A | SEALpA | 9.0 | .5625 | Q | Jan15 /Dec31 |
| **Special** | | | | | |
| Costco Wholesale | COST | 0.6 | 15.00 | | Jan12 /Dec28 |
| Host Hotels & Resorts | HST | 4.8 | .25 | Q | Jan16 /Dec29 |

Sources: FactSet; Dow Jones Market Data

KEY: A: annual; M: monthly; Q: quarterly; r: revised; SA: semiannual; S2Z: stock split and extra; b/n: stock split.

## Exchange-Traded Portfolios | WSJ.com/ETFresearch

Largest 100 exchange-traded funds

### Monday, December 18, 2023

| ETF | Symbol | Closing Price | Chg | YTD% |
|---|---|---|---|---|
| CnsmrDiscSelSector | XLY | 180.00 | 0.62 | 40.4 |
| CnsmrStapleSelS | XLP | 71.65 | 0.25 | –4.3 |
| DimenUSCoreEq2 | DFAC | 26.95 | 0.24 | 18.4 |
| EnSelSectorSPDR | XLE | 82.87 | 0.03 | –4.5 |
| FinSelSectorSPDR | XLF | 37.29 | 0.33 | 9.8 |
| HealthCareSelS | XLV | 135.75 | 0.04 | 1.1 |
| InvscQQQI | QQQ | 397.16 | 0.76 | 52.8 |
| InvscS&P500Eq | RSP | 155.87 | 0.44 | 10.4 |
| iShCoreDivGrowth | DGRO | 55.30 | 0.24 | 8.2 |

(additional ETF listings continue)

## ADVERTISEMENT

# The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

## BANKRUPTCIES

## BUSINESS OPPORTUNITIES

Patent off product with tooling printing & product
$175,000.00
352-688-9188


THE WALL STREET JOURNAL.
THE MARKETPLACE
ADVERTISE TODAY
(800) 366-3975
Dow Jones Reserved.
wsj.com/classifieds

© 2023 Dow Jones & Company, Inc. All Rights Reserved.

## Bonds | wsj.com/market-data/bonds/benchmarks

### Tracking Bond Benchmarks

Return on investment and spreads over Treasurys and/or yields paid to investors compared with 52-week highs and lows for different types of bonds

| | | Total return close | YTD total return (%) | | | Yield (%) Latest Low High | |
|---|---|---|---|---|---|---|---|
| **Broad Market** Bloomberg Fixed Income Indices | | | | | | | |
| | | 2043.17 | 4.6 | U.S. Aggregate | 4.670 | 4.180 | 5.740 |
| **U.S. Corporate Indexes** Bloomberg Fixed Income Indices | | | | | | | |
| | 7.7 | | U.S. Corporate | 5.180 | 4.830 | 6.420 |
| | 10.1 | | Long term | 5.540 | 4.730 | 6.350 |
| | 4.3 | | Double-A-rated | 4.670 | 4.370 | 5.560 |
| | 6.4 | | Triple-B-rated | 5.400 | 4.920 | 6.700 |
| **High Yield Bonds** ICE BofA | | | | | | | |
| | 12.3 | | High Yield Constrained | 7.879 | 7.781 | 9.560 |
| | 18.3 | | Triple-C-rated | 13.065 | 13.149 | 16.666 |
| | 12.1 | | High Yield 100 | 7.298 | 7.622 | 9.101 |
| | 11.4 | | Global High Yield Constrained | 7.855 | 7.829 | 9.440 |
| | 8.9 | | Europe High Yield Constrained | 7.097 | 7.061 | 8.048 |
| **U.S Agency** Bloomberg Fixed Income Indices | | | | | | | |
| | 4.6 | | U.S Agency | 4.820 | 4.370 | 5.670 |
| | 4.2 | | 10-20 years | 4.760 | 4.320 | 5.620 |
| | 8.7 | | 20-plus years | 4.660 | 4.010 | 5.810 |
| | 4.6 | | Yankee | 5.130 | 4.910 | 6.360 |

| | | Total return close | YTD total return (%) | | | Yield (%) Latest Low High | |
|---|---|---|---|---|---|---|---|
| **Mortgage-Backed** Bloomberg Fixed Income Indices | | | | | | | |
| | 4.1 | | Mortgage-Backed | 4.360 | 4.140 | 6.050 |
| | 4.1 | | Ginnie Mae (GNMA) | 4.390 | 4.170 | 6.070 |
| | 3.6 | | Fannie mae (FNMA) | 4.330 | 4.160 | 6.000 |
| | 4.3 | | Freddie Mac (FHLMC) | 4.740 | 4.090 | 6.190 |
| | 5.2 | | Muni Master | 3.752 | 4.251 | |
| | 4.7 | | 7-12 year | 2.803 | 3.912 | 4.097 |
| | 6.2 | | 12-22 year | 3.474 | 3.417 | 4.538 |
| | 8.2 | | 22-plus year | 4.232 | 4.035 | 5.274 |
| **Global Government** J.P. Morgan | | | | | | | |
| | 3.7 | | Global Government | 3.110 | 2.800 | 3.580 |
| | 4.1 | | Canada | 3.290 | 2.880 | 4.260 |
| | 4.4 | | EMU\*\* | 2.859 | 2.691 | 3.790 |
| | 6.5 | | France | 2.840 | 2.560 | 3.150 |
| | 6.0 | | Germany | 2.200 | 2.000 | 2.840 |
| | 4.2 | | Japan | 0.860 | 0.257 | 0.970 |
| | 3.3 | | Netherlands | 2.440 | 2.260 | 3.320 |
| | 1.2 | | U.K. | 3.980 | 3.660 | 4.790 |
| | 5.9 | | Emerging Markets \*\* | 7.296 | 7.102 | 8.642 |

\*Constrained indexes limit individual issuer concentrations to 2%; the High Yield 100 are the 100 largest bonds
\*\*EMBI Global Index   Sources: ICE Data Services; Bloomberg Fixed Income Indices; S&P Dow Jones Indices

### Global Government Bonds: Mapping Yields

Yields and spreads over or under U.S. Treasurys on benchmark two-year and 10-year government bonds in selected other countries; arrows indicate whether the yield rose (▲) or fell (▼) in the latest session

| | Coupon (%) | Country/Maturity, in years | Yield (%) Latest | | Previous | | Spread Under/Over U.S. Treasurys, in basis pts Latest Prev Year ago | |
|---|---|---|---|---|---|---|---|---|
| 4.875 | U.S. 2 | 4.455 | | 4.455 | | | | |
| 4.250 | 10 | 3.955 | | 3.925 | | | | |
| 3.820 | **Australia** 2 | 3.888 | ▲ | 3.827 | | –56.3 | | –63.0 |
| 4.500 | 10 | 4.161 | ▼ | 4.205 | | 20.6 | | 17.5 |
| 0.000 | **Germany** 2 | 2.524 | ▲ | 2.499 | | –193.1 | | –137.4 |
| 2.300 | 10 | 2.020 | ▼ | 2.012 | | –193.3 | | –170.9 |
| 0.005 | **Japan** 2 | 0.016 | ▼ | 0.032 | | –443.9 | | –381.3 |
| 0.400 | 10 | 0.710 | ▲ | 0.699 | | –324.2 | | –323.7 |
| 3.500 | **U.K.** 2 | 4.411 | ▲ | 4.366 | | –4.0 | | –26.0 |
| 4.250 | 10 | 3.658 | ▼ | 3.669 | | –29.1 | | –42.5 |

Source: Tullett Prebon, Tradeweb ICE U.S. Treasury Close

## Corporate Debt

These bonds reflect factors including investors' economic, sectoral and company-specific expectations

### Investment-grade spreads that tightened the most...

| Issuer | Symbol | Coupon (%) | Yield (%) | Maturity | Spread\*, in basis points Current One-day change Last week |
|---|---|---|---|---|---|
| Siemens Financieringsmaatsch | SIEGR | 2.875 | 5.164 | March 2027 | 7 –18 6 |
| Morgan Stanley | MS | 4.350 | 5.125 | Sept. 2026 | 33 –16 47 |
| JPMorgan Chase | JPM | 2.956 | 5.006 | May 2026 | 30 –13 41 |
| Hyundai Capital America | HYNMTR | 5.500 | 5.250 | March 2026 | 76 –12 84 |
| Kraft Heinz | KHC | 5.000 | 4.970 | June 2035 | 121 –11 129 |

### ...And spreads that widened the most

| | | | | | |
|---|---|---|---|---|---|
| Wells Fargo | WFC | 4.300 | 5.070 | July 2026 | 34 10 27 |
| Dominion Energy South Carolina | DUK | 6.100 | 4.930 | June 2037 | 107 9 102 |
| ENEL Finance International | ENELIM | 4.875 | 5.260 | June 2038 | 117 8 114 |
| Bank of America | BAC | 3.500 | 5.000 | April 2026 | 28 7 23 |
| Credit Suisse | CS | 6.500 | 5.750 | Jan. 2023 | 81 6 76 |
| Hyundai Capital America | HYNMTR | 6.375 | 5.350 | April 2025 | 70 5 69 |
| Manufacturers & Traders | MTB | 5.050 | | March 4, 2037 | |

### High-yield issues with the biggest price increases...

| Issuer | Symbol | Coupon (%) | Yield (%) | Maturity | Bond Price as % of face value Current One-day change Last week |
|---|---|---|---|---|---|
| Transocean | RIG | 8.000 | 8.080 | Feb. 2027 | 99.005 1.28 96.250 |
| iHeartCommunications | IHRT | 8.375 | 10.930 | May 2027 | 78.750 1.25 76.838 |
| Bausch Health | BHCCN | 11.000 | 13.430 | Sept. 2028 | 91.250 1.00 90.000 |
| Liberty Interactive | LINTA | 8.500 | 11.920 | July 2029 | 79.250 0.88 78.750 |
| Intesa Sanpaolo | ISPIM | 5.710 | 6.270 | Jan. 2026 | 99.000 0.75 98.250 |

### ...And with the biggest price decreases

| | | | | | |
|---|---|---|---|---|---|
| Dish DBS | DISH | 5.125 | 14.000 | June 2029 | 60.250 –2.25 62.200 |
| Viking Cruises | VIK | 5.875 | 6.010 | Sept. 2027 | 99.540 –1.00 100.290 |
| KeyCorp Capital | KEY | 6.500 | 6.530 | April 2033 | 99.870 –0.88 101.000 |
| Teva Pharmaceutical Finance | TEVA | 5.125 | 5.630 | May 2029 | 98.070 –0.86 99.250 |
| ZF North America Capital | ZFFNGR | 6.875 | 6.400 | April 2028 | 101.750 –0.75 102.500 |
| Navient | NAVI | 5.000 | 7.240 | March 2027 | 94.200 –0.63 94.500 |
| Telecom Italia Capital | TITIM | 7.721 | 6.620 | June 2038 | 97.710 –0.63 98.250 |

\*Estimated spread over 2-year, 3-year, 5-year, 10-year or 30-year hot-run Treasury; 100 basis points = one percentage point; change in spread shown is for Z-spread.

Note: Data are for the most active issues of bonds with maturities of two years or more

Source: MarketAxess

# **Exhibit B**

## AMYRIS, INC.
CNPJ 09.345.642/0001-05
NO TRIBUNAL DE FALÊNCIAS DOS ESTADOS UNIDOS PARA O DISTRITO DE DELAWARE

Em re: AMYRIS, INC., *et al.*, Devedores.[1]

Capítulo 11
Número do Caso 23-11131 (TMH) (Administrado Conjuntamente)

AVISO DE (A) AUDIÊNCIA PARA CONSIDERAR A CONFIRMAÇÃO DO PLANO DO CAPÍTULO 11 DOS DEVEDORES; (B) PRAZO PARA VOTAÇÃO PARA ACEITAR OU REJEITAR O PLANO; (C) LIBERAÇÕES DOS DEVEDORES E LIBERAÇÃO DE TERCEIROS; (D) PRAZOS RELACIONADOS À ELEIÇÃO DE RENÚNCIA DE LIBERAÇÃO DE TERCEIROS; E (E) ASSUNTOS RELACIONADOS
POR FAVOR, OBSERVE: Em 12 de dezembro de 2023, a Amyris, Inc. e seus devedores afiliados e devedores em posse (os "Devedores") apresentaram o Segundo Plano de Reorganização Conjunto Modificado da Amyris, Inc. e Seus Devedores Afiliados [Registro Nº 892] (incluindo todos os anexos e conforme alterado, modificado ou complementado de tempos em tempos, o "Plano"). Concomitantemente à apresentação do Plano, os Devedores apresentaram a Declaração de Divulgação relacionada em apoio ao Plano [Registro Nº 893] (incluindo todos os anexos e conforme possa ser alterada, modificada ou complementada de tempos em tempos, coletivamente, a "Declaração de Divulgação"). Em 13 de dezembro de 2023, este Tribunal emitiu uma ordem aprovando a Declaração de Divulgação [Registro Nº 897] (a "Ordem da Declaração de Divulgação") e certos materiais relacionados (i) estabelecendo procedimentos de notificação, votação e objeção para Classes de Votação (os "Materiais de Solicitação") e (ii) estabelecendo procedimentos de notificação e objeção para Classes Não Votantes (os "Avisos de Classes Não Votantes"). Uma audiência para considerar a confirmação do Plano (a "Audiência de Confirmação") será realizada em 24 de janeiro de 2024, a partir das 10h00 (Horário do Leste), perante o Honroso Thomas M. Horan, Juiz de Falências dos Estados Unidos, no Tribunal de Falências dos Estados Unidos para o Distrito de Delaware, 824 Market Street, Sala de Audiência Nº 5, Wilmington, Delaware 19801. Pode ser possível participar remotamente da Audiência de Confirmação. Qualquer parte que deseje participar da audiência deve se registrar junto ao Tribunal no seguinte link: https://debuscourts.zoomgov.com/meeting/register/vJItfuqorzgsHOJAF8ej3iJW34UADxTSbVl.
A Audiência de Confirmação pode ser prorrogada de tempos em tempos sem aviso prévio, exceto por (i) um anúncio feito durante a Audiência de Confirmação ou qualquer audiência de confirmação adiada, ou (ii) um aviso por escrito arquivado no Tribunal de Falências e servido a todas as partes que apresentaram objeções ao Plano, ao Síndico dos Estados Unidos e a todas as partes que solicitaram notificação nestes casos do Capítulo 11, conforme a Regra de Falências 2002. A data de registro para determinar quais Titulares de Créditos contra os Devedores podem votar no Plano é 1º de dezembro de 2023 (a "Data de Registro"). Para que sua cédula seja contada, você deve preencher todas as informações necessárias na cédula, assinar a cédula e devolvê-la ao endereço indicado na cédula para que seja recebida até as 17h00 (Horário do Leste) em 17 de janeiro de 2024 (o "Prazo de Votação"). Qualquer falha em seguir as instruções de votação na cédula ou em devolver uma cédula devidamente preenchida em um ou mais recibos até o Prazo de Votação pode desqualificar sua cédula e seu voto. Se houver uma objeção pendente em relação ao seu Crédito na data em que você recebê-la, seu voto não será contado a menos que o Tribunal determine o contrário ou a menos que seu Crédito tenha sido temporariamente permitido para votação nos termos da Regra de Falências 3018 e até o montante que será permitido para tal alívio (um "Pedido de Regra 3018") até o máximo das 17h00 (horário do Leste) em 9 de janeiro de 2024, o qual pode ser julgado na ou antes da Audiência de Confirmação. Não obstante o exposto, se os Devedores apresentarem uma objeção a um crédito e solicitarem que tal crédito seja permitido com uma quantia específica, sua cédula será contada quanto a esse montante especificado, a menos que uma quantia especificada, a menos que o Tribunal ordene o contrário nos termos da Regra de Falências estabelecida até 18 de janeiro de 2024 às 17h00 (Horário do Leste) como o último data e horário para apresentar e servir objeções à confirmação do Plano (o "Prazo de Objeção ao Plano"). Todas as Objeções ao Plano devem declarar detalhadamente os fundamentos legais e factuais para tal objeção; (i) ser por escrito; (ii) declarar o nome e o endereço da parte que objeta e a natureza do crédito ou interesse dessa parte; (iii) declarar detalhadamente a base e a natureza de qualquer objeção; (iv) ser arquivadas no Tribunal e servido ao modo e ser servidas no modo e o prazo devem ser servidas de modo a serem recebidas nas seguintes partes: (a) Advogados dos Devedores, (i) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17º Andar, Código Postal 8705, Wilmington, DE 19899-8705 (Correio 19801), A/C: James E. O'Neill (joneill@pszjlaw.com) e Steven W. Golden (sgolden@pszjlaw.com); e (ii) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, A/C: Debra I. Grassgreen (dgrassgreen@pszjlaw.com); (b) Escritório do Síndico dos Estados Unidos para o Distrito de Delaware, 844 King Street, Suite 2207, Caixa de Segurança 35, Wilmington, Delaware, 19801, A/C: John Schanne, Esq. (John.Schanne@usdoj.gov); (c) Advogados dos Credores DIP, Agente DIP e Credores Garantidos Pré-Petição da Foris, (i) Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, A/C: Michael H. Goldstein (mgoldstein@goodwinlaw.com), Alexander J. Nicas (anicas@goodwinlaw.com) e Debora A. Hoehne (dhoehne@goodwinlaw.com) e (ii) Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O Box 1709, Wilmington, DE 19899, A/C: David M. Fournier (david.fournier@troutman.com); (d) Advogados do Comitê, (i) Advogados do Comitê: (i) White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, IL 60606-4302, A/C: Gregory Pesce (gregory.pesce@whitecase.com) e Andrew O'Neill (aoneill@whitecase.com); (ii) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095, A/C: John Ramirez (john.ramirez@whitecase.com) e Andrea Kropp (andrea.kropp@whitecase.com); e (iii) advogado local do Comitê, Potter Anderson & Corroon LLP, 1313 North Market Street, 6º andar, Wilmington, DE 19801, A/C: Christopher M. Samis (csamis@potteranderson.com), Katelin A. Morales (kmorales@potteranderson.com) e Sameen Rizvi (srizvi@potteranderson.com) e (e) qualquer parte que solicite serviço conforme a Regra de Falências 2002. Qualquer Objeto ao Plano não apresentada e servido dentro do prazo até o Prazo de Objeção ao Plano, de acordo com as disposições deste Aviso, não será considerado e será indeferido. FAVOR TOMAR CONHECIMENTO ADICIONAL de que qualquer parte interessada, incluindo qualquer membro de uma Classe de Votação ou Classe Não Votante, que deseje obter cópias dos Materiais de Solicitação, incluindo o Plano e a Declaração de Divulgação, às custas dos Devedores, pode fazê-lo entrando em contato com o Agente de Solicitação dos Devedores pelo telefone 888.855.0485 (ligação gratuita) ou 303.276.0309 (Internacional) ou por e-mail em TeamAmyris@stretto.com, ou visualizando tais documentos online sem custo para você em https://cases.stretto.com/Amyris. Os documentos também estão disponíveis no site do Tribunal: www.deb.uscourts.gov. Observe que é necessário ter uma senha e login do PACER para acessar os documentos no site do Tribunal. Data: 15 de dezembro de 2023. PACHULSKI STANG ZIEHL & JONES LLP - /s/ James E. O'Neill - Richard M. Pachulski (pro hac vice disponível) - Debra I. Grassgreen (pro hac vice disponível) - James E. O'Neill (DE Nº 4042) - Jason H. Rosell (pro hac vice disponível) - Steven W. Golden (Barra DE nº 6807) - Rua Market, 919 N., 17º andar - Código Postal 8705 - Wilmington, DE 19899-8705 (Correio 19801) - Telefone: (302) 652-4100 - FAX: (302) 652-4400 - rpachulski@pszjlaw.com - dgrassgreen@pszjlaw.com - joneill@pszjlaw.com - jrosell@pszjlaw.com - sgolden@pszjlaw.com - *Advogados dos Devedores e Devedores em Posse.*

[1] Uma lista completa de cada um dos Devedores nestes Casos do Capítulo 11 pode ser obtida no site do agente proposto para reivindicações e notificação dos Devedores em https://cases.stretto.com/Amyris. A localização do principal local de negócios do Devedor Amyris Inc. e o endereço para correspondência nesses Casos do Capítulo 11 é 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

## CMN Solutions Serviços de Suporte Empresarial Ltda. – Em Liquidação
CNPJ/MF nº 20.192.409/0001-84 - NIRE 35.238.340.186

**Data, Hora e Local:** No 15º (décimo quinto) dia do mês de Dezembro de 2023, às 10:30 horas, via sistema eletrônico ZOOM (https://us02web.zoom.us/j/6257580708). No realizada eletronicamente a reunião de sócios ("Reunião") da CMN Solutions Serviços de Suporte Empresarial Ltda. - em Liquidação ("Sociedade"), sociedade empresária limitada, inscrita no CNPJ/ME sob o nº 20.192.409/0001-84, NIRE 35.238.340.186, com sede na Cidade de São Paulo, Estado de São Paulo, na Rua Pais Leme, 215, 14º andar, sala 1411, Pinheiros, CEP 05424-150. **Presença:** Compareceram o Liquidante e os sócios representando a totalidade do capital social da Sociedade, a saber (os "Sócios"): (a) Marcelo Nastromagario, brasileiro, divorciado, advogado, portador da cédula de identidade RG nº 26.284.823-5 SSP/SP, inscrito no CPF/ME sob o nº 266.804.808-76, com escritório na Cidade de São Paulo, Estado de São Paulo, na Rua Cláudio Soares, nº 72, 1º andar, Conjunto 115, Pinheiros, CEP: 05422-030, presente e representado por sua advogada Claudia Regina Figueira (OAB/SP 286.495); (b) Fábio Guimarães Corrêa Meyer, brasileiro, casado, advogado, portador da cédula de identidade RG nº 26.674.688-3 SSP-SP, inscrito no CPF/ME sob o nº 166.927.748-88, com escritório na Cidade de São Paulo, Estado de São Paulo, na Avenida Brigadeiro Faria Lima, nº 2391, Conjunto 41, Jardim Europa, CEP 01452-000, ausente e representado pelos advogados Marcela Massari Caleffi (OAB/SP 269.729) e Rafael Tempesti Bueno (OAB/SP 325.925), doravante designados de forma conjunta e em adiante, designados de forma conjunta como "Advogados do Fábio"; (c) Graziela Marques Conde, brasileira, solteira, advogada, portadora da Cédula de Identidade RG nº 44.422.927-9 SSP/SP, inscrita no CPF/ME sob o nº 337.345.468-17, residente e domiciliada na Cidade de São Paulo, Estado de São Paulo, com escritório na Cidade de São Paulo, Estado de São Paulo, na Rua Campos Vergueiro, 275, Apartamento 43, Vila Anastacio, CEP 05095-020, presente e representada por sua advogada Claudia Regina Figueira (OAB/SP 286.495); e (d) Defiant Participações S.A., sociedade anônima, com sede na Cidade de São Paulo, Estado de São Paulo, na Rua Cláudio Soares, nº 72, 1º andar, Conjunto 115, Pinheiros, CEP: 05422-030, inscrita no CNPJ/ME sob o nº 38.370.183/0001-00, com seus atos constitutivos arquivados na Junta Comercial do Estado de São Paulo sob o NIRE 35300555864, em sessão de 08/09/2020, neste ato presente e representada por sua advogada Claudia Regina Figueira (OAB/SP 286.495). **Convocação e Instalação:** Convocação realizada nos termos dos Avisos de Convocação publicados no "Diário Oficial do Estado de São Paulo" e no jornal "Folha Comercial", em edições dos dias 21.11.2023, 22.11.2023 e 23.11.2023 (cujas cópias fazem parte deste processo), tendo em vista a legalidade da convocação e a presença dos sócios representando a totalidade do capital social, ficando dispensadas as demais formalidades, nos termos do artigo 1.072 da legislação em vigor. **Composição da Mesa:** Presidente Sr. Marcelo Nastromagario e o Relatório Final da Liquidação, nos termos do artigo 1.103, incisos VI e VIII, do Código Civil, relativo ao período entre 01 de junho de 2023 e 8 de dezembro de 2023, sendo que tal Relatório Final da Liquidação já havia sido disponibilizado aos Sócios e seus advogados em 09.12.2023 pela manhã, juntamente com o respectivo documento de suporte via One Drive. O debate e as questões entre os Sócios e seus advogados podem ser consultados na gravação em vídeo desta Reunião. Em seguida, foram tomadas as deliberações, conforme o respectivo item da pauta: (i) aprovadas as contas da Liquidação por maioria de votos, ficando registrado o voto contrário do sócio Fábio, pelos motivos expostos por seus Advogados; (ii) aprovada por unanimidade dos sócios a distribuição dos lucros acumulados na Sociedade, na proporção do capital social, ficando registrado, pelos Advogados do Fábio, os motivos de seu voto; (iv) aprovado por unanimidade a nomeação como responsável pela guarda dos livros da Sociedade o Sr. Marcelo Nastromagario, já qualificado, pelo período e nos termos das deliberações assim tomadas ao descrito no Anexo III - Pagamentos aos Sócios. **Encerramento:** Nada mais havendo a tratar, o Liquidante deu por encerrada a Reunião, registrando que em razão da gravação da integra da reunião e disponibilização aos Sócios esta ata seria lavrada de forma sumária. A ata foi lavrada e assinada pelo Liquidante, presidente da mesa, secretária e pelos sócios. **Liquidante** Marcelo Nastromagario. **Sócios presentes:** (a) Marcelo Nastromagario, representado por sua advogada já acima identificada; (b) Fábio Guimarães Corrêa Meyer, representado por seus advogados já acima identificados; (c) Graziela Marques Conde, representada por sua advogada já acima identificada; e (d) Defiant Participações S.A., representada por sua advogada acima identificada. **Marcelo Nastromagario** - *Liquidante e Presidente da Mesa; Sócio; por Claudia Regina Figueira*, **Graziela Marques Conde** - *Sócia e Secretária; por Claudia Regina Figueira*, **Fábio Guimarães Corrêa Meyer** - *Sócio; por Marcela Massari Caleffi*, **Defiant Participações S.A.** - *Sócia; por Claudia Regina Figueira.*

## Fundação Educacional de Votuporanga
CNPJ: 45.164.654/0001-99
AVISO DE LICITAÇÃO - PROCESSO FEV Nº 052/2023
EDITAL DE CONCORRÊNCIA FEV Nº 004/2023
Objeto: contratação de empresa especializada, com empreitada global de material, mão de obra e equipamentos, para construção de uma **Guarita/Portaria**, localizada na Avenida Nasser Marão, nº 3.069, na cidade de Votuporanga/SP, imóvel de propriedade da Fundação Educacional de Votuporanga, conforme especificações constantes da Planilha Orçamentária, Cronograma Físico-Financeiro, Memorial Descritivo e Projeto, anexos ao Edital. Tipo: menor preço global. Recebimento dos Envelopes: Os envelopes serão recebidos até as 08:30 horas do dia 23 de janeiro de 2024, no Setor de Compras e Licitações da FEV, na Rua Pernambuco nº 4.196, em Votuporanga/SP, onde está, inclusive, à integra, podendo ser consultado no site www.unifev.edu.br (link: Institucional/Licitações). Informações: Fones (17) 3405-9999 ramal 878/883, no horário das 8:00 às 16:00 horas, de 2ª a 6ª-feira, nos dias úteis. Demais informações estão no edital, que poderá ser obtido no Setor de Compras e Licitações da Fundação Educacional de Votuporanga ou pelo telefone (17) 3405-9999 ramal 878/883, ou através do e-mail fev@fev.edu.br.
Votuporanga, 20 de dezembro de 2023.
**Douglas José Gianotti - Diretor Presidente**

## FCA Administração e Participações Ltda.
CNPJ nº 14.295.322/0001-10 - NIRE 3522590516-6
**Ata de Reunião de Sócios**
**Ata de Reunião de Sócios datada de 15/12/2023 com a totalidade dos sócios assinando, para a alteração do Capital Social que a neste ato reduzido dos atuais R$ 48.168.027,00 para R$ 19.191.841,00 com redução efetiva de R$ 28.976.186,00, para Absorção de Prejuízos Contábeis pela Equivalência na empresa investida.** Catanduva/SP, 15/12/2023. **Bento Geraldo Netto Sócio Administrador.**

## Bosch Basf Smart Farming Ltda.
CNPJ nº 45.352.679/0001-16 – NIRE 35.238.619.663
**Distrato Social**
Pelo presente instrumento particular: **Bosch Basf Smart Farming Gmbh**, neste ato representado por seu procurador, **Rodrigo Almeida Neiva de Lima**, RG nº 4.637.145 SSP/SC e CPF nº 071.188.259-21; fica qualificada de única sócia da sociedade empresária limitada unipessoal, denominada **Bosch Basf Smart Farming Ltda.** ("Sociedade"), resolve acordar o presente Instrumento Particular de Distrato Social para Dissolução, Liquidação e Extinção da Sociedade, nos termos definidos a seguir: **Considerando** que a Sócia da Sociedade tem a intenção de proceder com a sua dissolução, tendo em vista não possuir mais nenhum interesse em exercer qualquer atividade econômica relacionada ao objeto social da Sociedade; **Considerando** a decisão da sócia em extinguir a Sociedade; Decide, com base nos **Considerandos** acima, promover o presente Instrumento de Distrato Social ("Distrato Social"), por este ato societário, nas seguintes condições: **I – Da Dissolução:** 1 A sócia detentora da totalidade das quotas representativas do capital social da Sociedade, declara por unanimidade não possuir mais nenhum interesse em prosseguir com a atividade empresarial da Sociedade e, portanto, decide pela dissolução da Sociedade. 2. Por esta razão, a sócia resolve, de acordo com o disposto no artigo 1.036 do Código Civil, nomear o investidor para o cargo de liquidante o Sr. **Alexandre Junior da Silva Nogueira**, RG nº 22.377.497-2 SSP/SP e CPF nº 130.049.868-41. 3. Os atos de gestão do liquidante nomeado ratificados à gestão da Sociedade, havendo verbalmente quaisquer novas operações em nome dela, respeitados os termos do artigo 1.104 do Código Civil, o qual determina que as obrigações do liquidante reger-se-ão pelos preceitos concernentes aos administradores. **II – Da Liquidação.** 5 O liquidante da Sociedade, tendo observado todos os procedimentos previstos nos artigos 1.103, 1.106 e 1.108 do Código Civil, procedeu à arrecadação de bens, livros e documentos da Sociedade, bem como elaborou o inventário e o balanço patrimonial geral do ativo e do passivo. O liquidante realizou o ativo, pagou o passivo e procedeu à finalização da liquidação, conforme disposto no artigo 6. Finda a liquidação, o liquidante apresentou à sócia o relatório da liquidação e as contas finais da Sociedade, o qual foi lido e integralmente aprovado pela sócia da Sociedade. Nesta mesma oportunidade, a sócia declara concordar plenamente com os valores apresentados no balanço patrimonial de encerramento da Sociedade. 7. De acordo com o balanço patrimonial de encerramento, a relação da liquidação e contas finais da Sociedade, apresentadas pelo liquidante, todas as obrigações da Sociedade receberam as devidas quitações, não havendo quaisquer débitos em aberto, tendo a sócia manifestado a quitação geral plena e total para a Sociedade. 8. Na possibilidade de existir qualquer importância, este acervo remanescente será distribuído na proporção da participação de cada um deles no capital social da Sociedade. **III – Da Extinção:** 9. Em face de todo o acima exposto, a Sociedade é, neste ato, declarada totalmente dissolvida, liquidada e extinta nos termos da legislação em vigor. 10. A posse dos livros da Sociedade, ora extinta, ficará a cargo do Sr. **Alexandre Junior da Silva Nogueira**, acima qualificado, que se compromete a mantê-los guardados e diligentemente sob sua guarda. 11. O Liquidante compromete-se, ainda, a promover o arquivamento do presente Distrato Social na Junta Comercial do Estado de São Paulo competente, para que a Sociedade seja extinta, nos termos do artigo 1.109 do Código Civil, legalmente considerada extinta; e proceder com os atos societários para o cancelamento e baixa de todas as inscrições da Sociedade perante todos os órgãos públicos, e privados competentes. 12. A sócia, a particularmente, o liquidante nomeado declaram, expressamente e para todos os fins de direito, não estarem impedidos por lei especial, nem condenados ou sob os efeitos de condenação da pena que vede, ainda que temporariamente, o acesso a cargos públicos; ou por crime falimentar, de prevaricação, peita ou suborno, concussão, peculato; ou contra a economia popular, contra o sistema financeiro nacional, contra as normas de defesa da concorrência, contra as relações de consumo, a fé pública ou a propriedade e que estão cientes de que não poderão exercer atividade empresarial, se estiverem impedidos por lei especial, nem condenados ou sob os efeitos de condenação da pena que vede, ainda que temporariamente, o acesso a cargos públicos; ou por crime falimentar, de prevaricação, peita ou suborno, concussão, peculato; ou contra a economia popular, contra o sistema financeiro nacional, contra as normas de defesa da concorrência, contra as relações de consumo, a fé pública ou a propriedade. 13. Elegem as partes o Foro Central da Comarca de São Paulo. Estando assim, justo e contratado, a única sócia o presente Distrato Social, em duas vias de igual teor. São Paulo, 22/11/2023. **Bosch Basf Smart Farming Ltda.** Por Rodrigo Almeida Neiva de Lima; Liquidante: Alexandre Junior da Silva Nogueira. Testemunhas: **Letícia de Souza Leal**, RG: 49.425.678-3 SSP/SP; **Surléen Christine de Novaes**, RG: 52.193.927-6 SSP/SP. JUCESP Certifico o registro sob o nº 464.258/23-3 em 05/12/2023. Maria Cristina Frei - Secretária Geral.

## SEU DINHEIRO PUBLICAÇÕES LTDA.
CNPJ/MF nº 323.500.405/0001-63 - NIRE 35.300.535.685
ATA DA REUNIÃO DE SÓCIOS
REALIZADA EM 1º DE OUTUBRO DE 2022
**1. Data, Hora e Local:** Realizada no dia 1º de outubro de 2022, às 11:00 horas, na sede social da Seu Dinheiro Publicações Ltda ("Sociedade"), localizada na Avenida Brigadeiro Faria Lima, nº 3.477, 10º andar, Itaim Bibi, CEP 04538-133, na Cidade e Estado de São Paulo. **2. Convocação e Presença:** Dispensada a publicação de Editais de Convocação, tendo em vista a presença de sócios quotistas que representam a totalidade do capital social da Sociedade, conforme o disposto no Parágrafo 2º, Artigo 1.072, do Código Civil. **3. Composição da Mesa:** Presidente: Sr. César Augusto Cesar de Arruda Mesquita; e Secretária: Sra. Fernanda Jorge Stallone Palmeiro. **4. Ordem do Dia e Deliberações:** Pela unanimidade dos votos dos sócios presentes, foram tomadas as seguintes deliberações: **4.1.** Aprovar os termos e condições do "Protocolo e Justificação de Incorporação" celebrado nesta data entre a Sociedade e MT Publicações Ltda., sociedade limitada, com sede na Cidade de São Paulo, Estado de São Paulo, na Avenida Brigadeiro Faria Lima 3.477, 10º andar, torre B, Itaim Bibi, CEP 04538-133, inscrita no CNPJ/ME sob o nº 37.258.491/0001-61, com seu contrato devidamente registrado na JUCESP sob o NIRE 35.235.414.262 ("MT Publicações"), anexo à presente ata na forma do seu Anexo I ("Protocolo"). O Protocolo estabeleceu os termos e as condições da incorporação da MT Publicações pela Sociedade e da consequente extinção de pleno direito da MT Publicações; **4.2.** Ratificar a nomeação da RSM Acal Auditores Independentes S/S, empresa especializada em avaliações, com sede na Rua Teixeira de Freitas, 31 - 12º andar - Centro - Rio de Janeiro/RJ, inscrita no CRC-RJ sob o nº 003.775 - e no CNPJ/ME sob o nº 07.377.136/0001-64 ("Empresa Avaliadora"), para realizar a avaliação dos ativos da Sociedade na data-base de 31/08/2022, conforme Laudo de Avaliação a Patrimônio Contábil do acervo líquido da Sociedade com base nos valores patrimoniais contábeis dos bens, direitos e obrigações ("Laudo de Avaliação"), o qual, depois de elaborado, passará a fazer parte integrante da presente ata como seu Anexo II; **4.3.** Aprovar o Laudo de Avaliação da Sociedade, que estima o valor do patrimônio líquido contábil da Sociedade em R$ 93.259,11 (noventa e três mil, duzentos e cinquenta e nove reais e onze centavos). **4.4.** Aprovar a incorporação da MT Publicações pela Sociedade, por meio da qual o acervo líquido da MT Publicações será vertido para a Sociedade sucederá a MT Publicações em todos os seus direitos e obrigações; conforme o artigo 1.116 do Código Civil. **4.5.** Aprovar a extinção da MT Publicações, que será sucedida pela Sociedade a título universal, sem solução de continuidade, assumindo a Sociedade todos os ativos e passivos, bens, direitos e obrigações da MT Publicações, na forma da Avaliação, sendo certo que não haverá qualquer alteração no valor do capital social da Sociedade em função da incorporação, devendo o acervo incorporado ser registrado em conta de patrimônio líquido. **4.6.** Autorizar os administradores da Sociedade a praticarem todos os atos necessários para a efetivação das deliberações tomadas. **5. Encerramento e Assinaturas:** Nada mais havendo a tratar, foi encerrada e lavrada a presente ata, que, lida e achada conforme, foi por todos assinada. São Paulo, 1º de outubro de 2022. **Mesa:** Caio Cesar de Arruda Mesquita - Presidente; Fernanda Jorge Stallone Palmeiro - Secretária. JUCESP Certifico o registro sob o nº 89.705/23-3 em 02/03/2023.




SELO DE AUTENTICIDADE

Página do Diário Oficial certificada pela Companhia de Processamento de Dados do Estado de São Paulo - Prodesp em 21/12/2023 06:03:27.
Nº de Série do Certificado: e801a571-d554-44fd-842a-ad55ef248858
[ Ticket: 54918384 ] - www.imprensaoficial.com.br

# **Exhibit C**

Edição impressa produzida pelo Jornal O Dia SP com circulação diária, em bancas de jornais. As íntegras dessas publicações encontram-se disponíveis no site: https://www.jornalodiasp.com.br/leiloes-publicidade-legal

**Jornal O DIA SP**

QUINTA-FEIRA, 21 DE DEZEMBRO DE 2023
ATAS/BALANÇOS/EDITAIS/LEILÕES

## Samp do Brasil Participações Ltda.

CNPJ/MF nº 19.587.640/0001-78 - NIRE 3522815246-1

**Edital de Convocação de Reunião de Sócios**

Ficam convocados os sócios da **Samp do Brasil Participações Ltda.** ("Sociedade"), nos termos da Lei nº 10.406 de 10 de janeiro de 2022 ("Código Civil"), a se reunirem em reunião de sócios a ser realizada na sede da Sociedade localizada na cidade de Jundiaí, Estado de São Paulo, na Rodovia Dom Gabriel Paulino Bueno Couto, Km 66,3, sala 2, Bairro Medeiros, CEP 13212-240, no dia 27 de dezembro de 2023, às 10 horas, para deliberar sobre a proposta de distribuição de lucros da Sociedade. Informações gerais: Esta convocação cumpre com o disposto no Artigo 1.152, §3º, do Código Civil e será publicada 3 (três) vezes, com 8 (oito) dias de antecedência. Os sócios que desejarem comparecer na reunião de sócios deverão apresentar documentos de representação válidos e vigentes, nos termos da lei aplicável. Jundiaí, 19 de dezembro de 2023. **Samp S.r.L.** - p.p Leonardo Luis do Carmo.

## PERKONS S/A

CNPJ nº 82.646.332/0001-02 - NIRE nº 41300020728

**ATA DA 67ª ASSEMBLEIA GERAL EXTRAORDINÁRIA**

**DATA**: 29 de novembro de 2.023. **HORA**: 10:00h (dez horas). **LOCAL**: Na sede da companhia na Rua Inajá, nº 366, Centro, em Pinhais, Estado do Paraná. **CONVOCAÇÃO**: Cartas-convites aos acionistas, expedidas com a antecedência legal. **PRESENÇAS**: Acionistas representando a totalidade (100%) do capital social, conforme registrado no Livro de Presença de Acionistas. **PUBLICAÇÕES**: Dispensadas as publicações diante do comparecimento de 100% (cem por cento) dos acionistas. **ORDEM DO DIA**: a) autorização para captação de empréstimo junto a Bancos, conforme preconiza o item (o) do artigo 10, Capítulo IV, e alínea "a", parágrafo 4º, do artigo 14, Capítulo V - DA ADMINISTRAÇÃO DA SOCIEDADE, do ESTATUTO CONSOLIDADO, data de 28 de outubro de 2022. **MESA**: Presidente: Walter Alberto Mitt Schause, Secretário: Regis Eidi Nishimoto. **CONSIDERAÇÕES**: a) Os acionistas presentes aprovaram por unanimidade, a autorização para operações de empréstimos e/ou financiamentos, junto ao Banco Bradesco, na modalidade CCB, capital de giro, PEAC, FGI, em até R$ 6.000.000,00 (seis milhões de reais) cabendo a qualquer um dos diretores assinarem isoladamente. **ENCERRAMENTO**: Nada mais havendo a tratar e encerradas as matérias constantes da ordem do dia, o Sr. Presidente declarou suspensos os trabalhos da Assembleia pelo tempo necessário à lavratura da presente Ata que, lida em alta voz e achada exata e conforme, depois de reaberta a sessão, foi aprovada e assinada por mim, Regis Eidi Nishimoto, Secretário da Assembleia, pelo Sr. Presidente e pelos acionistas presentes. [Certifico que a presente é cópia fiel da ata lançada no Livro de Atas da Companhia].

Pinhais, 29 de novembro de 2023

| **WALTER ALBERTO MITT SCHAUSE** | **REGIS EIDI NISHIMOTO** |
|---|---|
| Presidente da Assembleia | Secretário da Assembleia |

Registrado na JUCEPAR sob n. 20238463389, em 29/11/2023. Leandro Marcos Raysel Biscaia.

## PERKONS S/A

CNPJ nº 82.646.332/0001-02 - NIRE nº 41300020728

**ATA DA 68ª ASSEMBLEIA GERAL EXTRAORDINÁRIA**

**DATA**: 11 de dezembro de 2.023. **HORA**: 10:00h (dez horas). **LOCAL**: Na sede da companhia na Rua Inajá, nº 366, Centro, em Pinhais, Estado do Paraná. **CONVOCAÇÃO**: Cartas-convites aos acionistas, expedidas com a antecedência legal. **PRESENÇAS**: Acionistas representando a totalidade (100%) do capital social, conforme registrado no Livro de Presença de Acionistas. **PUBLICAÇÕES**: Dispensadas as publicações diante do comparecimento de 100% (cem por cento) dos acionistas. **ORDEM DO DIA**: a) autorização para captação de empréstimo junto a Bancos, conforme preconiza o item (o) do artigo 10, Capítulo IV, e alínea "a", parágrafo 4º, do artigo 14, Capítulo V - DA ADMINISTRAÇÃO DA SOCIEDADE, do ESTATUTO CONSOLIDADO, data de 28 de outubro de 2022. **MESA**: Presidente: Walter Alberto Mitt Schause, Secretário: Luiz Gustavo C. de O. Campos. **CONSIDERAÇÕES**: a) Os acionistas presentes aprovaram por unanimidade, a autorização para operações de empréstimos e/ou financiamentos, junto ao Banco Itaú, na modalidade CCB, capital de giro, PEAC, FGI, em até R$ 6.000.000,00 (seis milhões de reais) cabendo a qualquer um dos diretores assinarem isoladamente. **ENCERRAMENTO**: Nada mais havendo a tratar e encerradas as matérias constantes da ordem do dia, o Sr. Presidente declarou suspensos os trabalhos da Assembleia pelo tempo necessário à lavratura da presente Ata que, lida em alta voz e achada exata e conforme, depois de reaberta a sessão, foi aprovada e assinada por mim, Luiz Gustavo C. de O. Campos, Secretário da Assembleia, pelo Sr. Presidente e pelos acionistas presentes. [Certifico que a presente é cópia fiel da ata lançada no Livro de Atas da Companhia].

Pinhais, 11 de dezembro de 2023

| **WALTER ALBERTO MITT SCHAUSE** | **LUIZ GUSTAVO C. DE O. CAMPOS** |
|---|---|
| Presidente da Assembleia | Secretário da Assembleia |

Registrado na JUCEPAR sob n. 20238754693, em 14/12/2023. Leandro Marcos Raysel Biscaia.

## VIRGO COMPANHIA DE SECURITIZAÇÃO

*(nova denominação da Isec Securitizadora S.A)*

CNPJ/MF nº 08.769.451/0001-08 - NIRE 35.300.340.949

**EDITAL DE 2ª (SEGUNDA) CONVOCAÇÃO PARA ASSEMBLEIA GERAL DOS TITULARES DE CERTIFICADOS DE RECEBÍVEIS DO AGRONEGÓCIO DA 1ª E DA 2ª SÉRIES, DA 34ª EMISSÃO DA VIRGO COMPANHIA DE SECURITIZAÇÃO *(NOVA DENOMINAÇÃO DA ISEC SECURITIZADORA S.A.)***

Ficam convocados os Titulares dos Certificados de Recebíveis do Agronegócio da 1ª e da 2ª Série da 34ª Emissão da **VIRGO COMPANHIA DE SECURITIZAÇÃO** *(**nova denominação da ISEC SECURITIZADORA S.A.**)*, com sede na Rua Gerivatiba, nº 207, 16º andar, conjunto 162, Butantã, na cidade de São Paulo, Estado de São Paulo, CEP 05501-900 ("CRA", "Titulares dos CRA", "Emissão", e "Emissora" respectivamente), a **PENTAGONO S.A. DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS** ("Agente Fiduciário") e a Emissora, a reunirem-se em **segunda convocação**, para assembleia geral ("Assembleia"), **a ser realizada em 09 de janeiro de 2024 às 11h00, de forma exclusivamente remota e eletrônica através da plataforma Microsoft Teams,** conforme Resolução CVM nº 60, de 23 de dezembro de 2021 ("Resolução CVM 60"), nos termos deste edital, a fim de, conforme previsto no Termo de Securitização de Recebíveis do Agronegócio da Emissão ("Termo de Securitização"), para deliberar sobre: a) Exame, discussão, e votação, nos termos do artigo 25 item "I" da Resolução CVM 60, das Demonstrações Financeiras do Patrimônio Separado dos CRA da Emissora, acompanhadas do Parecer dos Auditores Independentes; e b) Autorizar o Agente Fiduciário para, em conjunto com a Emissora, realizar e celebrar todos e quaisquer documentos que se fizerem necessários para implementar o que fora deliberado no item acima. A Assembleia convocada por meio deste edital ocorrerá de forma exclusivamente remota e eletrônica, através do sistema "Microsoft Teams" de conexão via internet por meio de link de acesso a ser disponibilizado pela Emissora àqueles Titulares dos CRA que enviarem ao endereço eletrônico da Emissora para gestao@virgo.inc com cópia para **juridico@virgo.inc** e ao Agente Fiduciário para **assembleias@pentagonotrustee.com.br** preferencialmente em até 2 (dois) dias antes da realização da Assembleia, podendo ser encaminhado até o horário de início da realização da Assembleia, os seguintes documentos: (a) quando pessoa física, documento de identidade; (b) quando pessoa jurídica, cópia de atos societários e documentos que comprovem a representação do Titular dos CRA; e (c) quando for representado por procurador, procuração com poderes específicos para sua representação na Assembleia, obedecidas as condições legais; Conforme Resolução CVM 60, a Emissora disponibilizará acesso simultâneo a eventuais documentos apresentados durante a Assembleia que não tenham sido apresentados anteriormente, e a Assembleia será integralmente gravada. São Paulo, 20 de dezembro de 2023.

**VIRGO COMPANHIA DE SECURITIZAÇÃO** *(atual denominação da Isec Securitizadora S.A.)*

## AMYRIS, INC.

CNPJ 09.345.642/0001-05

**NO TRIBUNAL DE FALÊNCIAS DOS ESTADOS UNIDOS PARA O DISTRITO DE DELAWARE**

| | |
|---|---|
| Em re: AMYRIS, INC., *et al.*, Devedores.[1] | Capítulo 11<br>Número do Caso 23-11131 (TMH)<br>(Administrado Conjuntamente) |

**AVISO DE (A) AUDIÊNCIA PARA CONSIDERAR A CONFIRMAÇÃO DO PLANO DO CAPÍTULO 11 DOS DEVEDORES; (B) PRAZO PARA VOTAÇÃO PARA ACEITAR OU REJEITAR O PLANO; (C) LIBERAÇÕES DOS DEVEDORES E LIBERAÇÃO DE TERCEIROS; (D) PRAZOS RELACIONADOS À ELEIÇÃO DE RENÚNCIA DE LIBERAÇÃO DE TERCEIROS; E (E) ASSUNTOS RELACIONADOS**

**POR FAVOR, OBSERVE:** Em 12 de dezembro de 2023, a Amyris, Inc., e suas devedoras afiliadas e devedores em posse (os "Devedores") apresentaram o Segundo Plano de Reorganização Conjunto Modificado da Amyris, Inc. e Seus Devedores Afiliados [Registro Nº 892] (incluindo todos os anexos e conforme alterado, modificado ou complementado de tempos em tempos, o "Plano"). Concomitantemente à apresentação do Plano, os Devedores apresentaram a Declaração de Divulgação relacionada ao Plano [Registro Nº 893] (incluindo todos os anexos e conforme alterado, modificado ou complementado de tempos em tempos, coletivamente, a "Declaração de Divulgação"). Em 13 de dezembro de 2023, este Tribunal emitiu uma ordem aprovando a Declaração de Divulgação [Registro Nº 897] (a "Ordem da Declaração de Divulgação") e certos materiais relacionados (i) estabelecendo procedimentos de notificação, votação e objeção para Classes de Votação (os "Materiais de Solicitação") e (ii) estabelecendo procedimentos de notificação e objeção para Classes Não Votantes (os "Avisos de Classes Não Votantes"). Uma audiência para considerar a confirmação do Plano (a "Audiência de Confirmação") será realizada em 24 de janeiro de 2024, a partir das 10h00 (Horário do Leste), perante o Honroso Thomas M. Horan, Juiz de Falências dos Estados Unidos, no Tribunal de Falências dos Estados Unidos para o Distrito de Delaware, 824 Market Street, Sala de Audiência Nº 5, Wilmington, Delaware 19801. Pode ser possível participar remotamente da Audiência de Confirmação. Qualquer parte que deseje participar via videoconferência deve se registrar junto ao Tribunal no seguinte link: https://debuscourts.zoomgov.com/meeting/register/vJItfuqorzgsHOJAF8e3jW34UADxT5bVI. A Audiência de Confirmação pode ser prorrogada de tempos em tempos sem aviso prévio, exceto por (i) um anúncio feito durante a Audiência de Confirmação ou qualquer audiência de confirmação adiada, ou (ii) um aviso por escrito arquivado no Tribunal de Falências e servido a todas as partes que apresentaram objeções ao Plano, ao Síndico dos Estados Unidos e a todas as partes que solicitaram notificação nestes casos do Capítulo 11, conforme a Regra de Falências 2002. A data de registro para determinar quais Titulares de Créditos contra os Devedores podem votar no Plano é 1º de dezembro de 2023 (a "Data de Registro"). Para que sua cédula seja contada, você deve preencher todas as informações necessárias na cédula, assinar e datar a cédula e devolvê-la ao endereço indicado na cédula para que seja recebida até às 17h00 (Horário do Leste) em 18 de janeiro de 2024 (o "Prazo de Votação"). Qualquer falha em seguir as instruções incluídas na cédula ou em devolver uma cédula devidamente preenchida de modo que seja recebida pelo Agente de Solicitação até ou antes do Prazo de Votação pode desqualificar sua cédula e seu voto. Se houver discrepância entre este Aviso e a Ordem da Declaração de Divulgação, a Ordem da Declaração de Divulgação prevalecerá. Os Titulares que não votarem para aceitar ou rejeitar o Plano, ou que votarem a favor do Plano, mas não se opuserem às liberações de terceiros previstas no Plano, estarão sujeitos às liberações de terceiros. Os Titulares de Créditos ou Participações que se opuserem ao Plano e/ou às liberações de terceiros devem apresentar um pedido para tal efeito (um "Pedido de Regra 3018") até no máximo às 17h00 (Horário do Leste) em 5 de janeiro de 2024, o qual pode ser julgado na ou antes da Audiência de Confirmação. No obstante o exposto, se os Devedores apresentarem uma objeção a um crédito e solicitarem que tal crédito seja permitido em uma quantia específica, sua cédula será contada nessa quantia especificada, a menos que o Tribunal determine de outra forma pelo Tribunal. **O Tribunal de Falências estabeleceu 18 de janeiro de 2024 às 17h00 (Horário do Leste) como a última data e horário para apresentar e servir objeções à confirmação do Plano (o "Prazo de Objeção ao Plano").** Todas as Objeções ao Plano devem declarar detalhadamente os fundamentos legais e factuais para tal objeção; (i) ser por escrito; (ii) declarar o nome e endereço da parte que faz a objeção e o valor e a natureza do crédito ou interesse dessa parte; (iii) declarar detalhadamente a base e natureza de qualquer objeção; (iv) ser arquivadas no Tribunal e servidas de modo a serem recebidas até o Prazo de Objeção ao Plano; e (v) servidas às seguintes partes: (a) Advogados dos Devedores, (i) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17º Andar, Código Postal 8705, Wilmington, DE 19899-8705 (Correio 19801), A/C: James E. O'Neill (joneill@pszjlaw.com) e Steven W. Golden (sgolden@pszjlaw.com); e (ii) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, A/C: Debra I. Grassgreen (dgrassgreen@pszjlaw.com); (b) Escritório do Síndico dos Estados Unidos para o Distrito de Delaware, 844 King Street, Suite 2207, Caixa de Segurança 35, Wilmington, Delaware, 19801, A/C: John Schanne, Esq. (John.Schanne@usdoj.gov); (c) Advogados dos Credores DIP, Agente DIP e Credores Garantidos Pré-Petição de Foris, (i) Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, A/C: Michael H. Goldstein (mgoldstein@goodwinlaw.com), Alexander J. Nicas (anicas@goodwinlaw.com) e Debora A. Hoehne (dhoehne@goodwinlaw.com); e (ii) Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O Box 1709, Wilmington, DE 19899, A/C: David M. Fournier (david.fournier@troutman.com); (d) Advogados do Comitê, (i) Advogados do Comitê, White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, IL 60606, A/C: Gregory Pesce (gregory.pesce@whitecase.com) e Andrew O'Neill (aoneill@whitecase.com); (ii) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095, A/C: John Ramirez (john.ramirez@whitecase.com) e Andrea Kropp (andrea.kropp@whitecase.com); e (iii) Advogados locais do Comitê, Potter Anderson & Corroon LLP, 1313 North Market Street, 6º andar, Wilmington, DE 19801, A/C: Christopher M. Samis (csamis@potteranderson.com), Katelin A. Morales (kmorales@potteranderson.com) e Sameen Rizvi (srizvi@potteranderson.com); e (e) qualquer parte que solicite serviço conforme a Regra de Falências 2002. **Qualquer Objeção ao Plano não apresentada e servida dentro do prazo até o Prazo de Objeção ao Plano, de acordo com as disposições deste Aviso, não será considerada e será indeferida.** FAVOR TOMAR CONHECIMENTO ADICIONAL de que qualquer parte interessada, incluindo qualquer membro de uma Classe de Votação ou Classe Não Votante, que deseje obter cópias dos Materiais de Solicitação, incluindo o Plano e a Declaração de Divulgação, às custas dos Devedores, pode fazê-lo entrando em contato com o Agente de Solicitação dos Devedores pelo telefone 888.855.0485 (ligação gratuita) ou 303.276.0309 (Internacional) ou por e-mail em TeamAmyris@stretto.com, ou visualizando tais documentos online sem custo para você em https://cases.stretto.com/Amyris. Os documentos também estão disponíveis no site do Tribunal: www.deb.uscourts.gov. Observe que é necessário ter uma senha e login do PACER para acessar os documentos no site do Tribunal.

Data: 15 de dezembro de 2023. **PACHULSKI STANG ZIEHL & JONES LLP** - */s/ James E. O'Neill* - Richard M. Pachulski (pro hac vice pendente) - Debra I. Grassgreen (pro hac vice disponível) - James E. O'Neill (DE Bar Nº 4042) - Jason H. Rosell (pro hac vice disponível) - Steven W. Golden (Barra DE nº 6807) - Rua Market, 919 N, 17º andar - Código Postal 8705 - Wilmington, DE 19899-8705 (Correio 19801) - Telefone: (302) 652-4100 - FAX: (302) 652-4400 - rpachulski@pszjlaw.com - dgrassgreen@pszjlaw.com - joneill@pszjlaw.com - jrosell@pszjlaw.com - sgolden@pszjlaw.com - *Advogados dos Devedores e Devedores em Posse.*

[1] Uma lista completa de cada um dos Devedores nestes Casos do Capítulo 11 pode ser obtida no site do agente proposto para reivindicações e notificação dos Devedores em https://cases.stretto.com/Amyris. A localização do principal local de negócios do Devedor Amyris Inc. e o endereço de serviço dos Devedores nestes Casos do Capítulo 11 é 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

## PERKONS S/A

CNPJ nº 82.646.332/0001-02 - NIRE nº 41300020728

**ATA DA 69ª ASSEMBLEIA GERAL EXTRAORDINÁRIA**

**DATA**: 13 de dezembro de 2.023. **HORA**: 14:00h (quatorze horas). **LOCAL**: Na sede da companhia na Rua Inajá, nº 366, Centro, em Pinhais, Estado do Paraná. **CONVOCAÇÃO**: Cartas-convites aos acionistas, expedidas com a antecedência legal. **PRESENÇAS**: Acionistas representando a totalidade (100%) do capital social, conforme registrado no Livro de Presença de Acionistas. **PUBLICAÇÕES**: Dispensadas as publicações diante do comparecimento de 100% (cem por cento) dos acionistas. **ORDEM DO DIA**: Aprovação do Plano de Negócios, plano de investimentos e Orçamento da Companhia para o ano de 2024. **MESA**: Presidente: Luiz Gustavo Cunha de Oliveira Campos, Secretário: Regis Eidi Nishimoto. **CONSIDERAÇÕES: a) Passando a Ordem do Dia, os acionistas presentes de acordo com o que prevê o artigo 10º Alínea (b) do seu estatuto aprovam o Plano de Negócios, plano de investimentos e o orçamento anual proposto pela diretoria da Companhia para o ano de 2024, o qual foi entregue uma cópia do documento aprovado (DRE e DFC) e se encontra devidamente assinado e arquivado na sua sede, com base nessa ata a diretoria está autorizada a executar o referido plano, nos termos do Artigo 13º, Parágrafo sexto do estatuto da companhia. ENCERRAMENTO**: Nada mais havendo a tratar e encerradas as matérias constantes da ordem do dia, o Sr. Presidente declarou suspensos os trabalhos da Assembleia pelo tempo necessário à lavratura da presente Ata que, lida em alta voz e achada exata e conforme, depois de reaberta a sessão, foi aprovada e assinada por mim, Regis Eidi Nishimoto, Secretário da Assembleia, pelo Sr. Presidente e pelos acionistas presentes.

Pinhais, 13 de dezembro de 2023

| **Luiz Gustavo C. de O. Campos** | **Regis Eidi Nishimoto** |
|---|---|
| Presidente da Assembleia | Secretário da Assembleia |

Acionistas:

| NAUDIN PARTICIPAÇÕES S/A | DARGOS PARTICIPAÇÕES S/A |
|---|---|
| Walter Alberto Mitt Schause | Walter Alberto Mitt Schause |

LAIME PARTICIPAÇÕES S/A
Eduardo Augusto Purin Schause

Registrado na JUCEPAR sob n. 20238911519, em 18/12/2023 - Leandro Marcos Raysel Biscaia.

## VIRGO COMPANHIA DE SECURITIZAÇÃO

CNPJ/ME nº 08.769.451/0001-08 - NIRE 35.300.340.949

**EDITAL DE CONVOCAÇÃO PARA ASSEMBLEIA GERAL DOS TITULARES DE CERTIFICADOS DE RECEBÍVEIS IMOBILIÁRIOS DA SÉRIE ÚNICA DA 38ª EMISSÃO DA VIRGO COMPANHIA DE SECURITIZAÇÃO**

Ficam convocados os Titulares dos Certificados de Recebíveis Imobiliários da **Série Única da 38ª Emissão da VIRGO COMPANHIA DE SECURITIZAÇÃO**, com sede na Rua Gerivatiba, nº 207, 16º andar, conjunto 162, Butantã, na cidade de São Paulo, Estado de São Paulo, CEP 05501-900 ("CRI", "Titulares dos CRI", "Emissão", e "Emissora" respectivamente), a **OLIVEIRA TRUST DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS** ("Agente Fiduciário"), e os representantes da Emissora, a reunirem-se em **segunda convocação**, para Assembleia Geral ("Assembleia"), **a ser realizada em 09 de janeiro de 2024 às 10h00, de forma exclusivamente remota e eletrônica através da plataforma Microsoft Teams**, conforme Resolução CVM nº 60, de 23 de dezembro de 2021 ("Resolução CVM 60"), nos termos deste edital, a fim de, conforme previsto no Termo de Securitização de Recebíveis Imobiliários da Emissão ("Termo de Securitização"), para deliberar sobre: **a)** Aprovar as Demonstrações Financeiras do Patrimônio Separado dos CRI da Emissora, acompanhadas do Parecer dos Auditores Independentes, nos termos do artigo 25 "I" da Resolução CVM nº 60; e **b)** Autorizar o Agente Fiduciário para, em conjunto com a Emissora, realizar e celebrar todos e quaisquer documentos que se fizerem necessários para implementar o que fora deliberado no item acima. A Assembleia convocada por meio deste edital ocorrerá de forma exclusivamente remota e eletrônica, através do sistema "Microsoft Teams" de conexão via internet por meio de link de acesso a ser disponibilizado pela Emissora àqueles Titulares dos CRI que enviarem ao endereço eletrônico da Emissora para gestao@virgo.inc com cópia para **juridico@virgo.inc** e ao Agente Fiduciário para **af.assembleias@oliveiratrust.com.br** preferencialmente em até 2 (dois) dias antes da realização da Assembleia, podendo ser encaminhado até o horário de início da Assembleia, os seguintes documentos: (a) quando pessoa física, documento de identidade; (b) quando pessoa jurídica, cópia de atos societários e documentos que comprovem a representação do Titular dos CRI; e (c) quando for representado por procurador, procuração com poderes específicos para sua representação na Assembleia, obedecidas as condições legais; Conforme Resolução CVM 60, a Emissora disponibilizará acesso simultâneo a eventuais documentos apresentados durante a Assembleia que não tenham sido apresentados anteriormente, e a Assembleia será integralmente gravada. São Paulo, 21 de dezembro de 2023. **VIRGO COMPANHIA DE SECURITIZAÇÃO.**

## TRAVESSIA SECURITIZADORA DE CRÉDITOS FINANCEIROS S.A.

CNPJ nº 38.042.694/0001-00 - NIRE 35.300.554.035

**ATA DA ASSEMBLEIA GERAL EXTRAORDINÁRIA REALIZADA EM 15 DE DEZEMBRO DE 2023**

**1. DATA, HORA E LOCAL:** Realizada no dia 15 de dezembro de 2023, às 10:00 horas, na sede social da **TRAVESSIA SECURITIZADORA DE CRÉDITOS FINANCEIROS S.A.** ("Companhia"), localizada na Capital do Estado de São Paulo, na Rua Tabapuã, nº 41, 13º andar, sala 02, Itaim Bibi, CEP 04533-010. **2. CONVOCAÇÃO E PRESENÇA:** Dispensada a publicação de editais de convocação, conforme disposto no artigo 124, §4º, da Lei nº 6.404, de 15 de dezembro de 1976, conforme alterada ("Lei das S.A."), em decorrência de estarem presentes os acionistas titulares de ações representativas da totalidade do capital social da Companhia. **3. MESA:** Presidida pelo Sr. **VINICIUS BERNARDES BASILE SILVEIRA STOPA** e secretariada pela Sra. **THAIS DE CASTRO MONTEIRO**. **4. ORDEM DO DIA:** Resolvem os acionistas da Companhia deliberar sobre: **(i)** a realização da 7ª (sétima) emissão de debêntures simples, não conversíveis em ações, da espécie quirografária, em 5 (cinco) séries, com instituição de patrimônio separado, para distribuição pública sob o rito de registro automático de distribuição para as debêntures da 1ª (primeira) série ("Primeira Série"), para as debêntures da 2ª (segunda) série ("Segunda Série"), para as debêntures da 3ª (terceira) série ("Terceira Série"), e para as debêntures da 4ª (quarta) série ("Quarta Série"), nos termos da Resolução da Comissão de Valores Mobiliários ("CVM") nº 160, de 13 de julho de 2022, conforme alterada ("Resolução CVM 160"), da Lei nº 6.385, de 7 de dezembro de 1976, conforme alterada ("Lei do Mercado de Valores Mobiliários"), da Lei das S.A., e da Lei nº 14.430, de 03 de agosto de 2022, conforme alterada ("Lei 14.430" e "Oferta", respectivamente), e para colocação privada para as debêntures da 5ª (quinta) série ("Quinta Série" e "Colocação Privada", respectivamente), da Travessia Securitizadora de Créditos Financeiros S.A., lastreada em direitos creditórios oriundos de determinadas operações de crédito representadas por Certificados de Cédulas de Crédito Bancário ("CCCB"), conforme listados no Apêndice B do Termo de Endosso a ser assinado entre a Companhia e o Endossante (conforme abaixo definido), representativos de empréstimos pessoais a pessoas físicas titulares de benefícios de aposentadora, pensão do Regime Geral de Previdência Social e/ou titulares de benefício de prestação continuada (BPC/LOAS) ("Beneficiários" e "Benefícios", respectivamente), mediante a emissão de cédulas de crédito bancário ("CCBs"), com amortização realizada mensalmente mediante desconto ("Consignação") de parte do Benefício a que faz jus o Beneficiário contratante ("Tomadores") e repasse mensal de tais valores pelo INSS ao Cedente ("Repasse INSS"), conforme autorizado pela Lei nº 10.820 ("Empréstimo Consignado") (sendo os créditos decorrentes de referidas CCB os "Direitos Creditórios"), observado que a referida emissão será realizada em regime de melhores esforços de colocação, com instituição de regime fiduciário ("Debêntures" e "Emissão", respectivamente); **(ii)** a aquisição dos CCCB, a serem emitidos eletronicamente pelo Endossante, nos termos do artigo 43 e seguintes da Lei nº 10.931, de 2 de agosto de 2004, conforme alterada ("Lei 10.931"), e da Resolução do Conselho Monetário Nacional ("CMN") nº 2.843, de 28 de junho de 2001 ("Resolução CMN 2.843"), os quais representarão as CCB, constituindo o lastro da Emissão, observadas as disposições do Instrumento de Endosso; **(iii)** a autorização para a Diretoria da Companhia (a) discutir, negociar e definir os termos e condições das Debêntures e que venham a ser aplicáveis à Emissão, desde que observado o disposto no item 5.1 abaixo, em especial, as hipóteses de vencimento antecipado das Debêntures ou substituição da Securitizadora, (b) negociar e celebrar todos os documentos necessários para a formalização das deliberações desta assembleia e para a realização, formalização e aperfeiçoamento da Emissão, bem como quaisquer aditamentos aos referidos documentos, incluindo sem limitação, o "*Instrumento Particular de Escritura da 7ª (Sétima) Emissão de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, em 5 (Cinco) Séries, com Instituição de Patrimônio Separado, para Distribuição Pública sob o Rito de Registro Automático de Distribuição para as Debêntures da Primeira Série, para as Debêntures da Segunda Série, para as Debêntures da Terceira Série e para as Debêntures da Quarta Série, e para Colocação Privada para as Debêntures da Quinta Série da Travessia Securitizadora de Créditos Financeiros S.A.*" ("Escritura de Emissão"), o "*Instrumento de Promessa de Endosso e Aquisição de Direitos Creditórios sem Coobrigação e Outras Avenças*" ("Instrumento de Endosso") e o "*Instrumento Particular de Coordenação, Colocação e Distribuição Pública, sob o Rito de Registro Automático, em Regime de Melhores Esforços de Colocação, da Primeira, Segunda, Terceira e Quarta Séries da 7ª (Sétima) Emissão de Debêntures Simples, Não Conversíveis em Ações, da Espécie com Garantia Real, com Instituição de Patrimônio Separado, de Emissão da Travessia Securitizadora de Créditos Financeiros S.A.*" ("Contrato de Distribuição"), e (c) tomar todas as providências e praticar os atos necessários à implementação das deliberações ora tomadas; **(iv)** a contratação dos prestadores de serviços para Emissão, incluindo, sem limitação, o Agente de Liquidação e o Escriturador (conforme abaixo definidos), os assessores legais, o Agente Fiduciário, entre outros, bem como dos sistemas de distribuição e negociação das Debêntures nos mercados primário e secundário operacionalizados pela B3 (conforme definido na Escritura de Emissão), podendo, para tanto, negociar e assinar os respectivos contratos; e **(v)** a ratificação de todos os atos já praticados pela Diretoria da Companhia relacionados à Emissão. **5. DELIBERAÇÕES:** Após a discussão das matérias objeto da ordem do dia, os acionistas presentes, por unanimidade de votos e sem quaisquer restrições, deliberaram o quanto segue: 5.1. Aprovar a Emissão, que terá as seguintes principais características: (i) Número da Emissão. A Emissão representa a 7ª (Sétima) emissão de debêntures da Companhia; (ii) Valor Total da Emissão. O valor total da Emissão será de R$ 5.000.000.000,00 (cinco bilhões de reais), na Data de Emissão (conforme abaixo definido), sendo que o valor total da Emissão das (a) Debêntures da Primeira Série será de R$ 1.700.000.000,00 (um bilhão e setecentos milhões de reais); (b) Debêntures da Segunda Série será de R$ 800.000.000,00 (oitocentos milhões de reais); (c) Debêntures da Terceira Série será de R$ 700.000.000,00 (setecentos milhões de reais); (d) Debêntures da Quarta Série será de R$ 300.000.000,00 (trezentos milhões de reais); e (e) Debêntures da Quinta Série será de R$ 1.500.000.000,00 (um bilhão e quinhentos milhões de reais) ("Valor Total da Emissão"); observada a possibilidade de distribuição parcial das Debêntures, nos termos da Escritura de Emissão. A manutenção da Oferta será condicionada à subscrição e integralização do Montante Mínimo (conforme abaixo definido), de modo que o Valor Total da Emissão poderá ser ajustado por meio de aditamento à Escritura de Emissão, sem necessidade de aprovação prévia dos Debenturistas e/ou de qualquer aprovação societária adicional pela Companhia; (iii) Agente de Liquidação e Escriturador. O agente de liquidação e o escriturador da Emissão será a Vórtx Distribuidora de Títulos e Valores Mobiliários Ltda., instituição financeira, com sede na Cidade de São Paulo, no Estado de São Paulo, na Rua Gilberto Sabino, nº 215, 4º andar, Pinheiros, CEP 05425-020, inscrita no CNPJ/MF sob o nº 22.610.500/0001-88 ("Agente de Liquidação" e "Escriturador", cuja definição inclui qualquer outra instituição que venha a suceder o Agente de Liquidação ou o Escriturador, conforme o caso na prestação dos serviços de agente de liquidação da Emissão ou na prestação dos serviços de escriturador das Debêntures); (iv) Destinação dos Recursos da Emissão. Os recursos oriundos da Emissão serão destinados à aquisição dos CCCB listados no Apêndice B do Termo de Endosso, que representarão o agrupamento das CCB e os seus respectivos Direitos Creditórios; (v) Colocação e Procedimento de Distribuição das Debêntures da Primeira Série, das Debêntures da Segunda Série, das Debêntures da Terceira Série e das Debêntures da Quarta Série. As Debêntures da Primeira Série, as Debêntures da Segunda Série, as Debêntures da Terceira Série e as Debêntures da Quarta Série serão objeto de oferta pública de distribuição, sob o rito automático, nos termos da Lei do Mercado de Valores Mobiliários, da Resolução CVM 160 e das demais disposições legais e regulamentares aplicáveis, com a intermediação de instituição financeira integrante do sistema de distribuição de valores mobiliários, organizada de acordo com as leis do Brasil ("Coordenador Líder"), sob o regime de melhores esforços de colocação, nos termos do Contrato de Distribuição, a ser celebrado entre a Companhia e o Coordenador Líder; (vi) Colocação das Debêntures da Quinta Série. As Debêntures da Quinta Série serão objeto de colocação privada exclusivamente para o Banco C6 S.A., instituição financeira constituída sob a forma de sociedade por ações, inscrita no CNPJ/MF sob o nº 31.872.495/0001-72, com sede na cidade de São Paulo, estado de São Paulo, na Av. Nove de Julho, nº 3.186, Jardim Paulista, CEP 01.406-000 ("Endossante" ou "Banco C6"), sem a intermediação de quaisquer instituições, sejam elas integrantes do sistema de distribuição de valores mobiliários ou não, e não contará com qualquer forma de esforço de venda, sendo expressamente vedada a transferência e/ou negociação das Debêntures da Quinta Série em mercado secundário de bolsa de valores ou em mercado secundário de balcão organizado. As Debêntures da Quinta Série serão registradas em nome do titular na B3 para liquidação financeira dos eventos de pagamento previstos na Escritura de Emissão, sendo que as Debêntures da Quinta Série não serão admitidas para negociação junto a B3 e, portanto, as negociações realizadas privadamente fora do âmbito da B3; (vii) Distribuição Parcial. Será admitida a distribuição parcial das Debêntures, nos termos dos artigos 73 e 74 da Resolução CVM 160, observada a quantidade mínima de 1.000.000 (um milhão) de Debêntures, perfazendo o montante de R$ 1.000.000.000,00 (um bilhão de reais) ("Montante Mínimo" e "Distribuição Parcial", respectivamente). Caso até o fim do Período de Distribuição (conforme definido na Escritura de Emissão) a quantidade total de Debêntures ofertadas não tenha sido totalmente subscrita e integralizada, mas tenha sido atingido o Montante Mínimo, o eventual saldo de Debêntures não colocado no âmbito da Oferta será cancelado pela Companhia por meio de aditamento à Escritura de Emissão, sem a necessidade de realização de deliberação societária da Companhia ou de realização de Assembleia Geral de Debenturistas (conforme definido na Escritura de Emissão); (viii) Data de Emissão. Para todos os fins e efeitos legais, a data de emissão das debêntures será o dia 15 de dezembro de 2023 ("Data de Emissão"); (ix) Data de Início da Rentabilidade. Para todos os fins e efeitos legais, a data de início da rentabilidade será a data da primeira subscrição e integralização das Debêntures ("Data da Primeira Integralização" e "Data de Início da Rentabilidade", respectivamente); (x) Forma, Tipo e Comprovação de Titularidade. As Debêntures serão emitidas sob a forma nominativa e escritural, sem emissão de cautelas ou certificados, sendo que, para todos os fins de direito, a titularidade das Debêntures será comprovada pelo extrato emitido pelo Escriturador e, adicionalmente, com relação às Debêntures que estiverem custodiadas eletronicamente na B3, conforme o caso, será expedido por esta extrato em nome do Debenturista, que servirá como comprovante de titularidade de tais Debêntures; (xi) Séries e Subordinação. A Emissão será realizada em 5 (cinco) séries, sendo que as Debêntures Quinta Série serão subordinadas às Debêntures Primeira Série, às Debêntures da Segunda Série, às Debêntures da Terceira Série e às Debêntures da Quarta Série no recebimento de todos e quaisquer valores a que os titulares das Debêntures Primeira Série, os titulares das Debêntures da Segunda Série, os titulares das Debêntures da Terceira Série e/ou os titulares das Debêntures da Quarta Série façam jus, sem prejuízo das disposições da Escritura de Emissão e observada a Ordem de Aplicação dos Recursos (conforme definido na Escritura de Emissão) estabelecida na Cláusula 4.30 da Escritura de Emissão. Desde a Data da Primeira Integralização até a última Data de Vencimento das Debêntures (conforme definido abaixo), o resultado da subtração entre (a) o saldo devedor dos Direitos Creditórios, e (b) o montante total das Debêntures da Primeira Série, das Debêntures da Segunda Série, das Debêntures da Terceira Série e das Debêntures da Quarta Série, deverá representar, no mínimo, 25% (vinte e cinco por cento) do saldo devedor dos Direitos Creditórios, sendo certo que o cálculo do saldo devedor dos Direitos Creditórios deverá considerar as provisões para crédito de liquidação duvidosa (PDD), nos termos da Resolução do CMN nº 2.682, de 21 de dezembro de 1999 (conforme definido na Escritura de Emissão) ("Índice Mínimo de Subordinação"). O Índice Mínimo de Subordinação deverá ser calculado e verificado mensalmente pela Companhia na respectiva Data de Apuração (conforme definido na Escritura de Emissão); (xii) Conversibilidade. As Debêntures serão simples, ou seja, não conversíveis em ações de emissão da Companhia; (xiii) Espécie. As Debêntures serão da espécie quirografária, nos termos do artigo 58, caput, da Lei das S.A.; (xiv) Data de Vencimento. Sem prejuízo dos pagamentos em decorrência de eventual Evento de Vencimento Antecipado (conforme definido na Escritura de Emissão) das obrigações decorrentes das Debêntures ou resgate antecipado previstos na Escritura de Emissão: (i) as Debêntures da Primeira Série terão vencimento em 15 de dezembro de 2030 ("Data de Vencimento das Debêntures da Primeira Série"); (ii) as Debêntures da Segunda Série terão vencimento em 15 de dezembro de 2030 ("Data de Vencimento das Debêntures da Segunda Série"); (iii) as Debêntures da Terceira Série terão vencimento em 15 de dezembro de 2030 ("Data de Vencimento das Debêntures da Terceira Série"); (iv) as Debêntures da Quarta Série terão vencimento em 15 de dezembro de 2030 ("Data de Vencimento das Debêntures da Quarta Série"); e (v) as Debêntures da Quinta Série terão vencimento em 15 de dezembro de 2030 ("Data de Vencimento das Debêntures da Quinta Série", e em conjunto com Data de Vencimento das Debêntures da Primeira Série, Data de Vencimento das Debêntures da Segunda Série, Data de Vencimento das Debêntures da Terceira Série e Data de Vencimento das Debêntures da Quarta Série, as "Datas de Vencimento"); (xv) Valor Nominal Unitário. O valor nominal unitário das Debêntures será de R$ 1.000,00 (mil reais), na Data de Emissão ("Valor Nominal Unitário"); (xvi) Quantidade de Debêntures. Serão emitidas 5.000.000 (cinco milhões) de Debêntures, sendo (i) 1.700.000 (um milhão e setecentas mil) Debêntures alocadas para a Primeira Série, (ii) 800.000 (oitocentas mil) Debêntures alocadas para a Segunda Série, (iii) 700.000 (setecentas mil) Debêntures alocadas para a Terceira Série, (iv) 300.000 (trezentas mil) Debêntures alocadas para a Quarta Série, e (v) 1. 500.000 (um milhão e quinhentas mil) Debêntures alocadas para Quinta Série, observada a possibilidade de distribuição parcial das Debêntures, nos termos da Escritura de Emissão. A quantidade final de Debêntures definida poderá ser ratificada por meio de aditamento à Escritura de Emissão em caso de Distribuição Parcial. Ressalvadas as referências expressas às Debêntures da Primeira Série, às Debêntures da Segunda Série, às Debêntures da Terceira Série, às Debêntures da Quarta Série ou às Debêntures da Quinta Série, todas as referências às Debêntures devem ser entendidas como referência às Debêntures da Primeira Série, às Debêntures da Segunda Série às Debêntures da Terceira Série, às Debêntures da Quarta Série e às Debêntures da Quinta Série, em conjunto; (xvii) Preço de Subscrição e Forma de Integralização. As Debêntures serão subscritas e integralizadas à vista, em moeda corrente nacional ou em direitos creditórios, no ato da subscrição, pelo seu Valor Nominal Unitário, de acordo com as normas de liquidação da B3. Caso qualquer Debênture venha a ser integralizada em data diversa e posterior à Data da Primeira Integralização, a integralização deverá considerar o seu Valor Nominal Unitário acrescido da Remuneração (conforme definido abaixo) da respectiva Série, calculada *pro rata temporis* desde a Data de Início da Rentabilidade até a data de sua efetiva integralização. As Debêntures poderão ser colocadas com ágio ou deságio, a ser definido pelo Coordenador Líder, se for o caso, no ato de subscrição das Debêntures, desde que seja aplicado de forma igualitária à totalidade das Debêntures da Primeira Série, das Debêntures da Segunda Série, das Debêntures da Terceira Série e/ou das Debêntures da Quarta Série em uma mesma data de integralização; (xviii) Atualização Monetária do Valor Nominal Unitário. Não haverá atualização monetária do Valor Nominal Unitário; (xix) Remuneração das Debêntures da Primeira Série. Sobre o Valor Nominal Unitário das Debêntures da Primeira Série incidirão juros remuneratórios correspondentes à variação acumulada de 100% (cem por cento) das taxas médias diárias do DI de um dia, "*over extra-grupo*", expressas na forma percentual ao ano, base 252 (duzentos e cinquenta e dois) Dias Úteis (conforme definido na Escritura de Emissão), calculadas e divulgadas diariamente pela B3 ("Taxa DI"), acrescida de *spread* (sobretaxa) de 0,90% (noventa centésimos por cento) ao ano, base 252 (duzentos e cinquenta e dois) Dias Úteis ("Remuneração das Debêntures da Primeira Série"). A Remuneração das Debêntures da Primeira Série será calculada de forma exponencial e cumulativa *pro rata temporis* por Dias Úteis decorridos, incidentes sobre o Valor Nominal Unitário ou saldo do Valor Nominal Unitário, conforme o caso, das Debêntures da Primeira Série, desde a Data de Início da Rentabilidade ou a Data de Pagamento (conforme definido abaixo) da Remuneração das Debêntures da Primeira Série imediatamente anterior (inclusive) até a Data de Pagamento da Remuneração das Debêntures da Primeira Série em questão (ou Data de Pagamento da Remuneração das Debêntures da Primeira Série decorrente de declaração de vencimento antecipado em decorrência de um evento de inadimplemento ou eventual Resgate Obrigatório (conforme definido abaixo), o que ocorrer primeiro); (xx) Remuneração das Debêntures da Segunda Série. Sobre o Valor Nominal Unitário das Debêntures da Segunda Série incidirão juros remuneratórios correspondentes à variação acumulada de 100% (cem por cento) da Taxa DI, acrescida de *spread* (sobretaxa) de 1,15% (um inteiro e quinze centésimos por cento) ao ano, base 252 (duzentos e cinquenta e dois) Dias Úteis ("Remuneração das Debêntures da Segunda Série"). A Remuneração das Debêntures da Segunda Série será calculada de forma exponencial e cumulativa *pro rata temporis* por Dias Úteis decorridos, incidentes sobre o Valor Nominal Unitário ou saldo do Valor Nominal Unitário, conforme o caso, das Debêntures da Segunda Série, desde a Data de Início da Rentabilidade ou a Data de Pagamento da Remuneração das Debêntures da Segunda Série imediatamente anterior (inclusive) até a Data de Pagamento da Remuneração das Debêntures da Segunda Série em questão (ou Data de Pagamento da Remuneração das Debêntures da Segunda Série decorrente de declaração de vencimento antecipado em decorrência de um evento de inadimplemento ou eventual Resgate Obrigatório, o que ocorrer primeiro; (xxi) Remuneração das Debêntures da Terceira Série. Sobre o Valor Nominal Unitário das Debêntures da Terceira Série incidirão juros remuneratórios correspondentes à variação acumulada de 100% (cem por cento) da Taxa DI, acrescida de *spread* (sobretaxa) de 1,65% (um inteiro e sessenta e cinco centésimos por cento) ao ano, base 252 (duzentos e cinquenta e dois) Dias Úteis ("Remuneração das Debêntures da Terceira Série"). A Remuneração das Debêntures da Terceira Série será calculada de forma exponencial e cumulativa *pro rata temporis* por Dias Úteis decorridos, incidentes sobre o Valor Nominal Unitário ou saldo do Valor Nominal Unitário, conforme o caso, das Debêntures da Terceira Série, desde a Data de Início da Rentabilidade ou a Data de Pagamento da Remuneração das Debêntures da Terceira Série imediatamente anterior (inclusive) até a Data de Pagamento da Remuneração das Debêntures da Terceira Série em questão (ou Data de Pagamento da Remuneração das Debêntures da Terceira Série decorrente de declaração de vencimento antecipado em decorrência de um evento de inadimplemento ou eventual Resgate Obrigatório, o que ocorrer primeiro; (xxii) Remuneração das Debêntures da Quarta Série. Sobre o Valor Nominal Unitário das Debêntures da Quarta Série incidirão juros remuneratórios correspondentes à variação acumulada de 100% (cem por cento) da Taxa DI, acrescida de *spread* (sobretaxa) de 2,00% (dois inteiros por cento) ao ano, base 252 (duzentos e cinquenta e dois) Dias Úteis ("Remuneração das Debêntures da Quarta Série"). A Remuneração das Debêntures da Quarta Série será calculada de forma exponencial e cumulativa *pro rata temporis* por Dias Úteis decorridos, incidentes sobre o Valor Nominal Unitário ou saldo do Valor Nominal Unitário, conforme o caso, das Debêntures da Quarta Série, desde a Data de Início da Rentabilidade ou a Data de Pagamento da Remuneração das Debêntures da Quarta Série imediatamente anterior (inclusive) até a Data de Pagamento da Remuneração das Debêntures da Quarta Série em questão (ou Data de Pagamento da Remuneração das Debêntures da Quarta Série decorrente de declaração de vencimento antecipado em decorrência de um evento de inadimplemento ou eventual Resgate Obrigatório, o que ocorrer primeiro; (xxiii) Remuneração das Debêntures da Quinta Série. Sobre o Valor Nominal Unitário das Debêntures da Quinta Série incidirão juros remuneratórios correspondentes à variação acumulada de 100% (cem por cento) da Taxa DI, acrescida de spread (sobretaxa) de 2,50% (dois inteiros e cinquenta centésimos por cento) ao ano, base 252 (duzentos e cinquenta e dois) Dias Úteis ("Remuneração das Debêntures da Quinta Série" e em conjunto com a Remuneração das Debêntures da Primeira Série, Remuneração das Debêntures da Segunda Série, Remuneração das Debêntures da Terceira Série e Remuneração das Debêntures da Quarta Série, "Remuneração"). A Remuneração das Debêntures da Quinta Série será calculada de forma exponencial e cumulativa pro rata temporis por Dias Úteis decorridos, incidentes sobre o Valor Nominal Unitário ou saldo do Valor Nominal Unitário, conforme o caso, das Debêntures da Quinta Série, desde a Data de Início da Rentabilidade ou a Data de Pagamento da Remuneração das Debêntures da Quinta Série imediatamente anterior (inclusive) até a Data de Pagamento da Remuneração das Debêntures da Quinta Série em questão (ou Data de Pagamento da Remuneração das Debêntures da Quinta Série decorrente de declaração de vencimento antecipado em decorrência de um evento de inadimplemento ou eventual Resgate Obrigatório, o que ocorrer primeiro; (xxiv) Datas de Pagamento e Pagamento da Remuneração. Após a Data da Primeira Integralização até a última Data de Vencimento das Debêntures, o eventual Saldo Disponível (conforme definido abaixo), observado o previsto na Cláusula 4.27 da Escritura de Emissão, deverá ser aplicado conforme a respectiva Ordem de Aplicação dos Recursos aplicável, sendo certo que todos os eventuais pagamentos deverão ser realizados no dia 25 (vinte e cinco) de cada mês a partir do mês imediatamente subsequente à Data da Primeira Integralização (sendo cada uma dessas datas, uma "Data de Pagamento"), conforme o disposto na Cláusula 4.15 da Escritura de Emissão. Na respectiva Data de Apuração (conforme definido na Escritura de Emissão), a Companhia verificará o Saldo Disponível na conta de pagamento aberta em nome da Emissora junto à C6 Corretora de Títulos e Valores Mobiliários Ltda. ("C6 CTVM"), inscrita no CNPJ/MF sob o nº 32.345.784/0001-86, sob o nº 000030395761-1, na agência nº 0001 ("Conta Centralizadora Principal"), a qual deverá ser objeto da instituição de regime fiduciário, juntamente com a conta de pagamento aberta em nome da Emissora junto à C6 CTVM sob o nº 000030395779-4, na agência nº 0001 ("Conta de Despesas"), a conta de pagamento aberta em nome da Emissora junto à C6 CTVM sob o nº 000030395990-8, na agência nº 0001 ("Conta de Reservas") e a conta de pagamento aberta em nome da Emissora junto à C6 CTVM sob o nº 000030395999-1, na agência nº 0001 ("Conta Garantia" e, em conjunto com a Conta Centralizadora Principal, a Conta de Despesas e a Conta de Reservas, as "Contas Centralizadoras") compondo também o Patrimônio Separado (conforme definido na Escritura de Emissão), para o cálculo dos pagamentos a serem realizados na Data de Pagamento subsequente conforme a Ordem de Aplicação de Recursos, observado o disposto na Cláusula 4.28.1 da Escritura de Emissão. Sem prejuízo dos pagamentos em decorrência de eventual Evento de Vencimento Antecipado ou eventual Resgate Obrigatório, nos termos previstos na Escritura de Emissão, e observada a Ordem de Aplicação dos Recursos, a Remuneração será paga em cada Data de Pagamento, a partir da Data de Início da Rentabilidade. Caso não haja, ao final de cada Período de Capitalização (conforme definido na Escritura de Emissão), Saldo Disponível nas Contas Centralizadoras suficiente para o pagamento mensal da totalidade da Remuneração devida na Data de Pagamento em questão, a Remuneração apurada e não paga no respectivo período deverá ser capitalizada e acrescida ao Valor Nominal Unitário ou saldo do Valor Nominal Unitário, conforme o caso, das Debêntures ("Capitalização da Remuneração"), sem incidência de qualquer penalidade e/ou multa. Na hipótese de Capitalização da Remuneração prevista na Cláusula 4.13.4 da Escritura de Emissão, a B3 deverá ser comunicada com antecedência mínima de 3 (três) Dias Úteis da Data de Pagamento, sem necessidade de aditamento da Escritura de Emissão, aprovação societária adicional da Companhia e/ou aprovação em Assembleia Geral de Debenturistas. Farão jus aos pagamentos das Debêntures aqueles que sejam Debenturistas ao final do Dia Útil anterior a Data de Pagamento prevista na Escritura de Emissão; (xxv) Prêmio de Participação. As Debêntures da Quinta Série poderão fazer jus a um prêmio de participação a ser pago na Data de Vencimento das Debêntures ou no momento em que ocorrer a amortização de 98% (noventa e oito por cento) do Valor Nominal Unitário das Debêntures da Quinta Série, o que ocorrer antes, correspondente a todo o Saldo Disponível que vier a existir nas Contas Centralizadoras, acrescido dos Direitos Creditórios que ainda estejam na titularidade da Companhia, após o Resgate Obrigatório das Debêntures da Primeira Série, das Debêntures da Segunda Série, das Debêntures da Terceira Série e das Debêntures da Quarta Série e amortização de 98% (noventa e oito por cento) do Valor Nominal Unitário das Debêntures da Quinta Série ("Prêmio"). Caso ainda existam Direitos Creditórios sob a titularidade da Companhia após o Resgate Obrigatório das Debêntures da Primeira Série, das Debêntures da Segunda Série, das Debêntures da Terceira Série e das Debêntures da Quarta Série e amortização de 98% (noventa e oito por cento) do Valor Nominal Unitário das Debêntures da Quinta Série, os titulares das Debêntures da Quinta Série farão jus ao Prêmio equivalente aos respectivos Direitos Creditórios, o qual será pago aos titulares das Debêntures da Quinta Série mediante Dação em Pagamento (conforme definido na Escritura de Emissão), nos termos da Cláusula 4.32 da Escritura de Emissão; (xxvi) Criação de Evento de Pagamento. Será admitida a criação de evento na B3 para fins de pagamento de Remuneração, Resgate Obrigatório e Prêmio, caso aplicável. A B3, o Agente Fiduciário, o Agente de Liquidação e o Escriturador deverão ser informados pela Companhia, por escrito ou por correspondência eletrônica, com, no mínimo, 3 (três) Dias Úteis de antecedência da data de criação de qualquer evento de pagamento relacionado às Debêntures previsto na Escritura de Emissão ("Comunicação Evento de Pagamento"). Quando do envio da Comunicação Evento de Pagamento, a Companhia deverá informar a natureza e o montante total dos recursos relacionados ao respectivo evento de pagamento; (xxvii) Amortização do Saldo do Valor Nominal Unitário. O Valor Nominal Unitário ou saldo do Valor Nominal Unitário, conforme o caso, das Debêntures será amortizado a cada Data de Pagamento, nos termos da Escritura de Emissão e desde que observada a Ordem de Aplicação dos Recursos prevista na Cláusula 4.30 da Escritura de Emissão, por meio do procedimento que consta da cláusula 4.15 da Escritura de Emissão; (xxviii) Local de Pagamento. Os pagamentos a que fizerem jus as Debêntures serão efetuados pela Companhia no respectivo vencimento utilizando-se, conforme o caso: (a) os procedimentos adotados pela B3 para as Debêntures custodiadas eletronicamente na B3 ou registradas em nome do titular na B3; e/ou (b) os procedimentos adotados pelo Escriturador, para as Debêntures que não estejam custodiadas eletronicamente na B3 ou registradas em nome do titular na B3; (xxix) Prorrogação dos Prazos. Considerar-se-ão prorrogados os prazos referentes ao pagamento de qualquer obrigação até o 1º (primeiro) Dia Útil subsequente, se a data do vencimento coincidir com dia em que não houver expediente bancário no local de pagamento das Debêntures, ressalvados os casos cujos pagamentos devam ser realizados por meio da B3, hipótese em que somente haverá prorrogação quando a data de pagamento coincidir com feriado declarado nacional, sábado ou domingo; (xxx) Encargos Moratórios. Sem prejuízo da Remuneração das Debêntures e ressalvado o disposto nas Cláusulas 4.13.4 e 4.27 da Escritura de Emissão, ocorrendo impontualidade no pagamento pela Companhia de qualquer quantia devida aos Debenturistas, os débitos em atraso vencidos e não pagos pela Companhia ficarão sujeitos a, independentemente de aviso, notificação ou interpelação judicial ou extrajudicial (i) multa convencional, irredutível e de natureza não compensatória, de 2% (dois por cento); e (ii) juros moratórios à razão de 1% (um por cento) ao mês, desde a data da inadimplência até a data do efetivo pagamento, ambos calculados sobre o montante devido e não pago ("Encargos Moratórios"); (xxxi) Decadência dos Direitos aos Acréscimos. Sem prejuízo do disposto na Cláusula 4.19 da Escritura de Emissão, o não comparecimento do Debenturista para receber o valor correspondente a quaisquer das obrigações pecuniárias da Companhia, nas datas previstas na Escritura de Emissão ou em comunicado publicado pela Companhia, não lhe dará direito ao recebimento da Remuneração e/ou Encargos Moratórios no período relativo ao atraso no recebimento, sendo-lhe, todavia, assegurados os direitos adquiridos até a data do respectivo vencimento ou pagamento; (xxxii) Garantias. Não será constituída garantia para o adimplemento do pagamento das Debêntures aos Debenturistas, observado, no entanto, a constituição do Regime Fiduciário e o Patrimônio Separado; (xxxiii) Repactuação. As Debêntures não serão objeto de repactuação programada; (xxxiv) Classificação de Risco. Foi contratada como agência de classificação de risco da Oferta, a Local BR Agência de Classificação de Risco Ltda. ("Agência de Classificação de Risco"), que atribuirá classificação de risco (*rating*) às Debêntures. Enquanto não atribuído rating às Debêntures, as informações prestadas na Escritura de Emissão devem ser cuidadosamente analisadas pelos potenciais Investidores Profissionais e não possuem o escopo ou função de orientação de investimento ou desinvestimento, pelo Agente Fiduciário; (xxxv) Prazo de Subscrição e Integralização. A subscrição e integralização das Debêntures no mercado primário serão realizadas de acordo com os procedimentos adotados pela B3, à vista, em moeda corrente nacional ou em créditos, no ato de subscrição, admitindo-se uma ou mais subscrições e integralizações, observado, para as Debêntures objeto de Oferta, os prazos e procedimentos estabelecidos na Resolução CVM 160; (xxxvi) Pagamentos Condicionados. Observado o disposto na Escritura de Emissão e nos termos do artigo 5º da Resolução CMN 2.686 (conforme definido na Escritura de Emissão), o cumprimento das obrigações da Companhia de efetuar o pagamento da amortização do Valor Nominal Unitário ou saldo do Valor Nominal Unitário, conforme o caso, da Remuneração e/ou quaisquer outros valores devidos nos termos da Escritura de Emissão estão única e exclusivamente condicionados ao recebimento, em montante suficiente, dos Direitos Creditórios pela Companhia. Deste modo, a não realização dos pagamentos, pela Companhia, da amortização do Valor Nominal Unitário ou saldo do Valor Nominal Unitário, conforme o caso, da Remuneração e/ou quaisquer outros valores devidos nos termos desta Escritura de Emissão, no âmbito da presente Emissão, em razão do não recebimento em montante suficiente dos Direitos Creditórios, não constituirá inadimplemento por parte da Companhia, não sendo devidos Encargos Moratórios ou qualquer outro tipo de remuneração; (xxxvii) Amortização Extraordinária Obrigatória. Desde a Data da Primeira Integralização até a última Data de Vencimento das Debêntures, todos e quaisquer recursos apurados como Saldo Disponível em determinada Data de Apuração, nos termos da Cláusula 4.28 da Escritura de Emissão, serão destinados, na Data de Pagamento subsequente, após o pagamento da Remuneração apurada no respectivo período, à amortização do Valor Nominal Unitário das Debêntures, conforme Ordem de Aplicação dos Recursos no regime de Amortização A, estabelecida na Cláusula 4.30.1.1 da Escritura de Emissão. A Amortização A será limitada sempre a 98% (noventa e oito por cento) do Valor Nominal Unitário das Debêntures, e deverá abranger, (a) em primeiro lugar, as Debêntures da Primeira Série; (b) em segundo lugar, somente caso não existam Debêntures da Primeira Série em circulação, as Debêntures da Segunda Série; (c) em terceiro lugar, somente caso não existam Debêntures da Segunda Série em circulação, as Debêntures da Terceira Série; (d) em quarto lugar, somente caso não existam Debêntures da Terceira Série, as Debêntures da Quarta Série; e (e) em quinto lugar, somente caso não existam Debêntures da Quarta Série em circulação, as Debêntures da Quinta Série. Após amortização do limite para as Debêntures da Quinta Série, será realizado o pagamento do Resgate Obrigatório junto ao Prêmio, caso devido, observado o procedimento previsto na Cláusula 4.15 da Escritura de Emissão; (xxxviii) Resgate Obrigatório. Não obstante as demais hipóteses de resgate das Debêntures previstas na Escritura de Emissão, a Companhia deverá realizar o resgate obrigatório da totalidade das Debêntures, sem necessidade de deliberação dos Debenturistas reunidos em Assembleia Geral de Debenturistas, na hipótese prevista na Cláusula 5.1 da Escritura de Emissão) (apenas quando atingido o limite de amortização previsto na Cláusula 5.1.2 da Escritura de Emissão para cada série de Debêntures) ("Resgate Obrigatório"). Não haverá o resgate parcial obrigatório das Debêntures; (xxxix) Aquisição Facultativa. A Emissora, por meio da presente Escritura de Emissão, renuncia expressamente à faculdade prevista no artigo 55, parágrafo 3º, da Lei das Sociedades por Ações, sendo vedada a aquisição facultativa das Debêntures pela Emissora. (xl) Vencimento Antecipado. As Debêntures estarão sujeitas a eventos de vencimento antecipado automáticos e não automáticos usuais para este tipo de operação no mercado de capitais, nos termos a serem previstos na Escritura de Emissão; e (xli) Demais Condições. Todas as demais condições e regras específicas relacionadas à emissão das Debêntures são tratadas detalhadamente na Escritura de Emissão. 5.2. Aprovar a aquisição dos CCCB, a serem emitidos eletronicamente pelo Endossante, nos termos do artigo 43 e seguintes da Lei 10.931 e da Resolução CMN 2.843, os quais representarão as CCB, constituindo o lastro da Emissão, observadas as disposições do Instrumento de Endosso; 5.3. Autorizar a Diretoria da Companhia, bem como quaisquer de seus representantes legais, a: (a) discutir, negociar e definir os termos e condições das Debêntures e que venham a ser aplicáveis à Emissão, desde que observado o disposto no item 5.1 acima, em especial, as hipóteses de vencimento antecipado das Debêntures ou substituição da Securitizadora; (b) negociar e celebrar todos os documentos necessários à formalização das deliberações desta assembleia e à realização, formalização e aperfeiçoamento da Emissão, incluindo, sem limitação, a negociação e formalização da Escritura de Emissão, do Instrumento de Endosso, do Contrato de Cessão Fiduciária e do Contrato de Distribuição, bem como quaisquer aditamentos aos referidos documentos; e (c) tomar todas as providências e praticar os atos necessários à implementação das deliberações ora tomadas; 5.4. Autorizar a Diretoria da Companhia a contratar (a) os prestadores de serviços para a Emissão, incluindo, sem limitação, o Agente de Liquidação e o Escriturador, os assessores legais, o Agente Fiduciário, dentre outros, e (b) os sistemas de distribuição e negociação das Debêntures nos mercados primário e secundário operacionalizados pela B3, podendo, para tanto, negociar e assinar os respectivos contratos; e 5.5. Ratificar todos os atos já praticados pela Diretoria da Companhia relacionados à Emissão. **6. ENCERRAMENTO**: Nada mais havendo a ser tratado, foi oferecida a palavra a quem dela quisesse fazer uso e, como ninguém se manifestou, foram encerrados os trabalhos e suspensa a assembleia pelo tempo necessário à lavratura desta ata, nos termos do artigo 130, §1º, da Lei das S.A., a qual, após reaberta a sessão, foi lida, achada conforme, aprovada e por todos os presentes assinada. A presente ata é cópia fiel da via lavrada em livro próprio. São Paulo, 15 de dezembro de 2023. *Mesa:* **VINICIUS BERNARDES BASILE SILVEIRA STOPA -** Presidente, **THAIS DE CASTRO MONTEIRO -** Secretária. Acionistas: **VINICIUS BERNARDES BASILE SILVEIRA STOPA, TRAVESSIA ASSESSORIA FINANCEIRA LTDA. -** Representada por VINICIUS BERNARDES BASILE SILVEIRA STOPA.