**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re*:<br><br>AMYRIS, INC., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered)<br><br>**Re: D.I. 934** |

**GINKGO BIOWORKS, INC.'S (I) OBJECTION TO THE FIFTH OMNIBUS MOTION
FOR THE ENTRY OF AN ORDER (A) AUTHORIZING REJECTION OF EXECUTORY
CONTRACTS EFFECTIVE AS OF THE APPLICABLE REJECTION DATE AND (B)
GRANTING RELATED RELIEF; AND (II) NOTICE OF CONDITIONAL ELECTION
PURSUANT TO SECTION 365(n) OF THE BANKRUPTCY CODE**

Ginkgo Bioworks, Inc. ("Ginkgo") respectfully submits this (i) objection (the "Objection")
to the Fifth Omnibus Motion for the Entry of an Order (A) Authorizing Rejection of Executory
Contracts Effective as of the Applicable Rejection Date and (B) Granting Related Relief filed by
Debtors (the "Motion"); and (ii) notice of its conditional election (the "Election") pursuant to 11
U.S.C. § 365(n) to retain any and all of its rights to the intellectual property licensed to Ginkgo by
Amyris, Inc. ("Amyris") under the Partnership Agreement dated October 20, 2017 by and between
Ginkgo and Amyris (the "Partnership Agreement").

1.      On August 9 and August 21, 2023, the Debtors filed voluntary petitions for relief
under chapter 11 of the Bankruptcy Code.  Since their bankruptcy filings, the Debtors have operated
their businesses pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On December 18, 2023, the Debtors filed the Motion by which they seek to reject
the Partnership Agreement, among other executory contracts.  The Debtors assert that the contracts
they seek permission to reject include "service agreements, license agreements, and supply

---

[1] A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims
and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business
and the Debtors' service address in these chapter 11 cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

agreements, which the Debtors do not require for their go-forward operations and that are otherwise burdensome to the Debtors' estates." (Mot. ¶8.) The Motion does not contain any specific reasons why the Partnership Agreement, which includes cross-licenses of valuable intellectual property to Ginkgo and the Debtors, is burdensome to the Debtors' estates or should otherwise be rejected.

### A.    The Partnership Agreement

### 1. License to Ginkgo

3.      Ginkgo and Amyris entered into the Partnership Agreement as of October 20, 2017.[2]

4.      In Section 2.2(a) of the Partnership Agreement, Amyris granted Ginkgo "a royalty-free, fully paid-up, sublicensable, non-exclusive, perpetual . . . license under any of the Amyris Transferred Intellectual Property that is owned or Controlled by Amyris to make, have made, use, sell, offer to sell and import any products other than farnesene and/or farnesene derivatives that are chemically produced from farnesene[.]"[3] Amyris Transferred Intellectual Property is defined in Article I of the Partnership Agreement as follows:

> "**Amyris Transferred Intellectual Property**" means (a) any Intellectual Property associated with the materials transferred by Amyris to Ginkgo and listed on Exhibit Y, including any associated know-how and/or documentation (such as SOPs) transferred prior to the Effective Date; (b) any Intellectual Property transferred by Amyris to Ginkgo prior to the Effective Date that comprises Foundry IP or Overlapping Process IP; and (c) any Intellectual Property developed on or after the effective date of the Collaboration Agreement and prior to the Effective Date that comprises jointly-owned Foreground IP. For clarity, "associated" means, solely with regards to patents and patent applications within Intellectual Property, such patents and patent applications that claim materials transferred by Amyris to Ginkgo and listed on Exhibit Y.

5.      Exhibit Y to the Partnership Agreement contains a list of biomaterials identified by specific codes. Ginkgo's fully paid-up license is not limited to these biomaterials, but also includes,

---

[2] The Partnership Agreement is subject to certain confidentiality requirements and is therefore not attached. Although the Debtor is presumably in possession of the Partnership Agreement, a copy will be separately emailed to Debtor's counsel for convenience. Additionally, a copy will be provided to any interested party upon request but subject to the Debtor's consent or applicable court order."

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Partnership Agreement (as defined herein).

2

"with regards to patents and patent applications with Intellectual Property, such patents and patent applications that claim material transferred by Amyris to Ginkgo and listed in Exhibit Y."

## 2. License to Amyris

6.      Under Section 2.2(b) of the Partnership Agreement, Ginkgo granted Amyris a royalty-free, fully paid-up, sublicensable, non-exclusive, perpetual license under any of its Ginkgo Transferred Intellectual Property. Ginkgo Transferred Intellectual Property is defined in Article I of the Partnership Agreement and "means any Intellectual Property associated with the materials transferred by Ginkgo to Amyris and listed on Exhibit Z, including any associated know-how and/or documentation (such as SOPs) transferred prior to the Effective Date."

7.      The biomaterials listed on Exhibit Z of the Partnership Agreement, also identified with codes, are primarily metagenomically sourced sequences of two enzymes in the vanillin biosynthesis pathway, O-methyl transferases (OMTs) and aromatic carboxylic acid reductases (ACARs).

8.      Further, Articles III and IV of the Partnership Agreement contain provisions governing a certain "Vanillin project" between Ginkgo and Amyris.  (Partnership Agreement § 3.1.)  As part of this project, Amyris was permitted to use Ginkgo Transferred Intellectual Property to develop and commercialize vanillin.  Section 4.1(b) of the Partnership Agreement entitles Ginkgo to a 50% share of Amyris's Net Profits from vanillin: "Net Profits for Vanillin will be allocated fifty (50%) percent to each of Amyris and Ginkgo.  Amyris shall pay such Net Profits allocable to Ginkgo on a quarterly basis."

9.      Article I of the Partnership Agreement defines "Net Profits" as follows:

3

> "**Net Profits**" means, with respect to a Product, the number of units of Product sold multiplied by the difference between the (a) the Average Selling Price for such Product and (b) the product of (i) 1.1 (or a ten (10%) percent margin) and (ii) the Actual Cost of Goods Sold for such Product. Net Profits shall be calculated in accordance with the Accounting Principles. In the event such difference is a negative number, then such Net Profits shall equal zero.

### B.    The Motion to Reject the Partnership Agreement Should Be Denied

10.    Ginkgo has reason to believe that the Debtors are continuing to benefit from the license granted under Section 2.2(b) of the Partnership Agreement to use Ginkgo Transferred Intellectual Property. For example, the following publicly available bill of lading suggests that the Debtors have been, and may still be, supplying Givaudan with vanillin:



| | |
|---|---|
| BILL OF LADING | MEDUTO268485 |
| PRODUCT | |
| VANILLIN CONTAINER NET WEIGHT: 5,360,000 29124100 | |
| CONSIGNEE | GIVAUDAN FLAVO... |
| SHIPPER | AMYRIS BIOTECN... |
| ARRIVAL DATE | 2022-06-03 |
| COUNTRY OF OR... | BRAZIL |
| GROSS WEIGHT ... | 8706 KGS |
| QUANTITY | 398 PKG |

11.    Amyris has filed patents that disclose and include some of the metagenomically sourced enzymes licensed by Ginkgo to Amyris. These patent disclosures by Amyris provide Amyris with a competitive advantage in vanillin bioproduction, as other market entrants are likely to be inhibited by Amyris's vanillin-related patent estate. *See, e.g.,* WO2022198088A1 and WO2022060867A1 (disclosing, among other things, OMT enzymes sourced from the organisms *Cicer arietinum, Medicago truncatula, Osmerus mordax, Phoenix dactylifera, Setaria italica,* and *Tuber melanosporum,* along with a host of ACAR enzymes) (italics added). Since Ginkgo maintained the utility of these enzymes as trade secrets, Amyris's conduct in publishing them to the world

4

appropriated the benefits entirely from Ginkgo to Amyris. By virtue of their publication, their value cannot be returned to Ginkgo, except via the Partnership Agreement's required payments from Amyris's vanillin sales.

12.     The Debtors, including Amyris, have not proffered any payments to Ginkgo for its share of the Net Profits from any such sales of vanillin. If the Partnership Agreement were rejected, Ginkgo's rejection damages would include any unpaid Net Profits due to Ginkgo.

13.     Once the Debtors published and appropriated Ginkgo's metagenomically sourced enzymes to themselves, Debtors received value for which they have not yet compensated Ginkgo, value that will continue through the twenty-year life of the patents filed by Amyris. This uncompensated, unilateral benefit to Debtors is a fundamental issue, as the Debtors may not reject a contract and then continue to reap the fruits of that contract while depriving the counterparty of the benefit of its bargain. An executory contract that benefits a debtor's business should be assumed, not rejected. *See In re Fleming Cos.*, 499 F.3d 300, 304 (3d Cir. 2007) (Section 365 allows a debtor-in-possession "'to maximize the value of the debtor's estate by assuming executory contracts . . . that benefit the estate and rejecting those that do not.'").

14.     "The 'business judgment' test requires a showing that rejection of the executory contract or unexpired lease will benefit the debtor's estate." *In re Extraction Oil & Gas*, 622 B.R. 608, 614-15 (Bankr. D. Del. 2020). While the business judgment test typically presents a relatively low bar, the Debtors have failed to make any showing to justify the rejection of the Partnership Agreement. On the contrary, by virtue of having published Ginkgo's metagenomically sourced enzymes to the world, the Debtors realize continuing benefits in the commercial bioproduction of vanillin. Therefore, the Court should deny the Motion as it applies to the Partnership Agreement.

      C.     **Section 365(n) Election**

15.     In the event that the Debtors are permitted to reject the Partnership Agreement, Ginkgo elects pursuant to 11 U.S.C. § 365(n) to retain any and all of its rights under Section 2.2(a) and other provisions of the Partnership Agreement to the intellectual property licensed by Amyris to Ginkgo including, without limitation, the rights to a complete duplicate of, or complete access to any such intellectual property and all embodiments thereof, as provided in Section 2.7 of the Partnership Agreement.

16.     "After a debtor rejects a contract under § 365(a), section 365(n) allows the holder of an intellectual property license to elect to retain its rights under the contract." *In re Spansion, Inc.*, 507 Fed. Appx. 125, 128-129 (3d Cir. 2012); *see also Apple, Inc. v. Spansion, Inc. (In re Spansion Inc.)*, 2011 U.S. Dist. LEXIS 82829, *23-24 (D. Del. July 28, 2011) (*citing In re Exide Techs.*, 607 F.3d 957, 965 (3d Cir. 2010) (Ambro, J., concurring) (Congress through enacting § 365(n) sought "to make clear that the rights of an intellectual property licensee to use the licensed property cannot be unilaterally cut off as a result of the rejection of the license pursuant to Section 365 in the event of the licensor's bankruptcy."); *In re Kemeta, LLC*, 470 B.R. 304, 329 (Bankr. D. Del. 2012) ("Under section 365(n), [the licensee] is entitled to full delivery, possession and use of the scope of [the intellectual property] as set forth in the License Agreement.").

17.     Ginkgo reserves all rights with respect to the Partnership Agreement, Motion, these chapter 11 cases, this Objection, and the Election.  Nothing herein is intended as a waiver of any rights, claims, remedies or defenses held by Ginkgo, all of which are expressly reserved.


Dated: January 2, 2024                    **MCCARTER & ENGLISH, LLP**


                                          /s/ Kate R. Buck
                                          Kate Roggio Buck (No. 5140)
                                          Renaissance Centre
                                          405 N. King St., 8th Floor
                                          Wilmington, DE 19801

ME1 47239659v.1

Tel: 302-984-6300
Fax: 302-984-6399
Email: kbuck@mccarter.com

-and-

FOLEY HOAG LLP
Euripides Dalmanieras
Amanda Coleman
Seaport West
155 Seaport Boulevard
Boston, MA 02210
Tel: 617-832-1000
Fax: 617-832-7000
Email: edalmani@foleyhoag.com
        acoleman@foleyhoag.com

*Counsel for Ginkgo Bioworks, Inc.*

7