**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>Debtors. [1] | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered)<br><br>**Proposed Obj. Deadline: January 12, 2024 at 4:00 p.m. (ET)**<br>**Proposed Hr'g Date: January 17, 2024 at a time to be determined.**<br><br>**Re: Docket Nos. 1012 & 1013** |

**MOTION OF LAVVAN, INC. PURSUANT TO BANKRUPTCY RULE 3018(a)**
**FOR ESTIMATION AND TEMPORARY ALLOWANCE OF CLAIMS**
**FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN**

Lavvan, Inc. ("**Lavvan**") hereby files this motion (the "**Motion**") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), granting the relief requested below. In support of this Motion, Lavvan respectfully represents as follows:

**BACKGROUND**

1. On August 9, 2023 (the "**Petition Date**"), Amyris, Inc. ("**Amyris**") and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") filed voluntary petitions in this Court commencing cases for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"). The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been requested in these cases.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

RLF1 30400448v.4

2. Prior to the Petition Date, Lavvan and Amyris entered into that certain *Research, Collaboration and License Agreement*, dated as of March 18, 2019 (as amended from time to time, the "**RCL Agreement**").

3. In April 2020, Amyris repudiated the RCL Agreement. Lavvan commenced arbitration (the "**Arbitration**") in the International Chamber of Commerce International Court of Arbitration (the "**Tribunal**") for certain relief, in accordance with the terms of the RCL Agreement. Also in accordance with the terms of the RCL Agreement, Lavvan brought suit in the U.S. District Court for the Southern District of New York (the "**SDNY Action**") for related relief.

4. On September 11, 2023, this Court entered the *Order Granting Limited Modification of Automatic Stay to Permit Issuance of an Arbitration Award* [Docket No. 230] (the "**Arbitration Order**"). The Arbitration Order modified the automatic stay to allow the Tribunal to issue its ruling in the pending Arbitration.

3. On November 21, 2023, the Tribunal issued its final ruling (the "**Final Award**"), finding for Lavvan.

4. On November 15, 2023, Lavvan timely filed two proofs of claim: one for its claims in the Arbitration [Claim No. 663] (the "**Arbitration Claim**"), and one for its claims in the SDNY Action [Claim No. 666] (the "**SDNY Claim**," and together with the Arbitration Claim, the "**Claims**"). The Claims are attached hereto as **Exhibits B and C**.

5. On December 7, 2023, the Debtors filed the *Debtors' Objection to Claim Nos. 663 and 666 Filed by Lavvan, Inc.* [Docket No. 839] (the "**Claims Objection**") and the *Motion to Estimate Lavvan Intellectual Property Claims* [Docket No. 840].

6. On December 12, 2023, the Debtors filed the *Second Amended Joint Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors, as Modified* [Docket No. 892]

- 2 -

(including all exhibits thereto and as amended, modified or supplemented, the "**Plan**") and the *Disclosure Statement With Respect to Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors, as Modified* [Docket No. 893] (the "**Disclosure Statement**").

7. On December 13, 2023, the Court entered an order [Docket No. 897] (the "**Solicitation Procedures Order**") approving the Plan and Disclosure Statement on an interim basis for solicitation purposes, and approving certain solicitation and vote tabulation procedures.

8. On December 27, 2023, Lavvan filed *Lavvan, Inc.'s Response to Debtors' Claim Objection* [Docket No. 1012] (the "**Claims Objection Response**") and *Lavvan, Inc.'s Preliminary Response to Debtors' Motion to Estimate Lavvan Intellectual Property Claims* [Docket No. 1013] (the "**Motion to Estimate Response**" and together with the Claims Objection Response, the "**Responses**").

**JURISDICTION**

9. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Lavvan consents to the entry of a final order by the Court in connection with this Motion[2] to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with

---

[2] Such consent is solely with respect to the Court's determination of the amount of Lavvan's Claims for voting purposes and for no other purpose.

Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

10. By this Motion, Lavvan seeks entry of the Proposed Order temporarily allowing the Arbitration Claim in the amount of $820,458.67 and the SDNY Claim in the conservatively approximated amount of $500 million, solely for purposes of voting to accept or reject the Plan, pursuant to rule 3018 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and without prejudice to Lavvan's ability to proceed with the full amount of its Claims for all other purposes (including allowance) once discovery has been obtained.

11. The statutory and legal predicates for the relief requested herein are sections 502 and 1126 of title 11 of the United States Code (the "**Bankruptcy Code**") and Bankruptcy Rules 3001 and 3018(a).

## BASIS FOR RELIEF REQUESTED

12. Only holders of allowed claims or interests are permitted to vote to accept or reject a chapter 11 plan. 11 U.S.C. § 1126. A claim represented by a timely and properly filed proof of claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Thus, once a party in interest objects to a filed claim, the holder of that claim is not entitled to vote on a chapter 11 plan while the objection is pending. *See* 11 U.S.C. § 1126. This principle is reflected in the Solicitation Procedures Order, which provides that any votes made by holders of claims that are subject to a pending objection will not be counted, "unless the Court temporarily allows such Claim for purposes of voting to accept or reject the Plan, and that such creditor be required to file a motion for such relief." *See* Solicitation Procedures Order ¶ 23(d).

13. Where a claim is not yet allowed, due to a pending objection or otherwise, the Court nevertheless "may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018. The policy behind Bankruptcy Rule 3018(a) is "to prevent possible abuse by plan proponents" who attempt to ensure acceptance of a plan by strategically objecting to the claims of dissenting creditors. *In re Armstrong*, 292 B.R. 678, 686 (10th Cir. B.A.P. 2003). Bankruptcy Rule 3018(a) "was designed to give all creditors, even those holding disputed claims, the opportunity to vote." *In re Century Glove, Inc.*, 88 B.R. 45, 46 (Bankr. D. Del. 1988).

14. The Debtors contend that Lavvan does not have the right to vote because Lavvan is "unimpaired" under the Plan, *see* Plan § III.B.6(c), but their contention lacks merit. The Debtors attempt to impose a non-consensual third-party release on Lavvan under the Plan. The Bankruptcy Code provides that a class of claims is unimpaired under a plan of reorganization only if the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(1). In other words, a class of claims is unimpaired only if the rights of the holders of such claims remain the same as they would have been if not for the bankruptcy. Lavvan is not "unimpaired" under the Plan because the Plan purports to alter Lavvan's rights to pursue its Claims against the Released Parties, as defined under the Plan. Further, the Debtors assert that all or substantially all of Lavvan's Claims are unsecured deficiency claims. *See* Claims Objection, ¶ 59. If the Debtors are correct (which Lavvan disputes), Lavvan's Claims are impaired because unsecured claims are not being paid in full. Thus, Lavvan is entitled to vote to accept or reject the Plan. Accordingly, this Motion is necessary to establish the amount in which Lavvan may vote.

RLF1 30400448v.4

15. Lavvan asserts that its Claims are substantial for the reasons set forth in the Responses and incorporates the rationale set forth in its Responses herein by reference.

16. As set forth in the Final Award, the Claims Objection, and the Claims Objection Response, with respect to the Arbitration Claim, the Tribunal found that "Amyris's breach of contract and breach of fiduciary duty were egregious" and ordered Amyris to (i) disgorge to Lavvan all profits from the sale of certain intellectual property under the RCL Agreement (the "**Disgorgement Component**") and (ii) pay Lavvan $820,458.67 in arbitration costs. The Debtors contend that Amyris did not earn any profits and therefore the Disgorgement Component is $0. Lavvan is currently in the process of taking discovery in connection with this issue and therefore reserves all rights, including when it comes to ultimate allowance of the Arbitration Claim, to assert that the Disgorgement Component has significant value. However, for voting purposes only, Lavvan respectfully submits that it is beyond dispute that it should be entitled to vote at least $820,458.67 on account of the Arbitration Claim.

17. As to the SDNY Claim, for voting purposes only, and without prejudice to Lavvan's ability to assert the full amount of the SDNY Claim for all other purposes (including allowance) once discovery has been obtained, Lavvan requests the temporary allowance of the SDNY Claim in the amount of $500 million for the following reasons.

18. The SDNY Claim arises from Amyris's pervasive violations of Lavvan's intellectual property rights, which under the RCL Agreement include broad and exclusive licenses (exclusive "even as to Amyris") under the Technology and the Amyris IP to make, have made, use, sell, offer for sale and import, and Manufacture and Commercialize Cannabinoids in the Lavvan Field (as those capitalized terms are broadly defined under the RCL Agreement). Upon the occurrence of a Release Condition—which the Tribunal in the Final Award found to have

occurred—those licenses become broader still, including to encompass exclusive rights to research and develop Cannabinoids in the Lavvan Field (again as those capitalized terms are broadly defined in the contract).

19. In light of the Tribunal's rulings in the Final Award, there can be no serious dispute that Amyris pervasively violated Lavvan's intellectual property rights—at a minimum, through Amyris's open and flagrant research, development, manufacture, commercialization and sale of Cannabigerol (CBG) using the Technology and Amyris IP. Indeed, in the Final Award, the Tribunal resoundingly rejected Amyris's primary defense (to both its breaches and its intellectual property violations), that it was somehow permitted to manufacture and commercialize Cannabinoids without Lavvan.

20. With discovery on the full scope of Amyris's intellectual property violations just underway, the full measure of Lavvan's damages in the SDNY Claim remain to be determined. But for voting purposes only, conservatively approximated damages of at least $500 million are well founded:

   a. Measured by reference to Lavvan's lost profits, contemporaneous documents and expert analysis support the conclusion that Amyris's violations deprived Lavvan of hundreds of millions of dollars in profits, conservatively ranging from $206.4 million to $669.5 million, based on projected revenues that are *materially less* than the projections Amyris itself contemporaneously presented to third parties.[3]

   b. Measured by reference to a reasonable royalty amount, the RCL Agreement shows that, in addition to numerous other valuable payment rights (including an "ongoing profit-share fee" of 10%), Lavvan had agreed to pay Amyris up to $300 million in milestone payments alone for the use of the licensed IP in the creation of

---

[3] Amyris has incorrectly contended that the RCL Agreement's limitation-of-liability clause precludes Lavvan from obtaining infringement damages based on lost profits. On the contrary, while that clause limits damages for contract and tort claims (like those asserted in the Arbitration), the clause makes no mention of limiting damages for IP infringement in violation of federal statutes. Moreover, the clause on which Amyris relies contains an express carve-out for "gross negligence" that would readily permit Lavvan's damages.

commercial-scale cannabinoids. This amount is generally in line with amounts that other of Amyris's arms'-length counterparties have agreed to pay (in the range of $150 million to $200 million) for rights to use Amyris IP in certain markets or as to certain molecules on terms that were *narrower* in scope than the Lavvan rights Amyris violated in connection with the SDNY Claim.

c. Moreover, federal statute expressly authorizes the award of enhanced, treble damages in instances of willful misconduct. *See* 35 U.S.C. § 284. Such a finding is amply supported here, where the Tribunal has already found that "Amyris's breach of contract and breach of fiduciary duty were egregious." Final Award ¶ 397.[4]

21. Thus, even without the benefit of discovery as to the full scope of Amyris's intellectual property violations, enhanced damages for Amyris's pervasive and egregious intellectual property violations could exceed $2 billion (trebling $669.5 million). Lavvan conservatively proposes that a quarter of that amount be used, for voting purposes only.

## NOTICE

22. Notice of this Motion will be provided to: (i) the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; and (iii) all parties that, as of the filing of this Motion, have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, Lavvan submits that no other or further notice is necessary.

WHEREFORE, Lavvan requests that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Motion and such other and further relief as may be just and proper.

---

[4] While Amyris has noted that the Tribunal did not find Amyris's egregious misconduct to rise to the requisite level of "extreme bad faith" or "reprehensible motives" to impose common-law punitive damages, that finding does not preclude imposition of statutory enhanced damages for Amyris's willful infringement of Lavvan's intellectual property rights. To the contrary, the Tribunal's finding of egregious misconduct supports enhanced statutory damages.

Dated: January 5, 2024
      Wilmington, Delaware

                                        Respectfully submitted,

*/s/ Russell C. Silberglied*
Russell C. Silberglied (No. 3462)
Cory D. Kandestin (No. 5025)
Emily R. Mathews (No. 6866)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:    silberglied@rlf.com
             kandestin@rlf.com
             mathews@rlf.com

**-and-**

Jason Cyrulnik
Paul Fattaruso
**CYRULNIK FATTARUSO LLP**
55 Broadway, Third Floor
New York, NY 10006
Telephone:  (646) 844-2466
Email:    jcyrulnik@cf-llp.com
            pfattaruso@cf-llp.com

*Counsel for Lavvan, Inc.*