IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered)<br><br>**Related Docket No. 840** |

**REPLY IN SUPPORT OF MOTION TO ESTIMATE LAVVAN INTELLECTUAL PROPERTY CLAIMS PRELIMINARY STATEMENT**

    1.    In their Motion to Estimate Lavvan Intellectual Property Claims (the "Motion"),[2] the Debtors relied upon governing statutes and dozens of reported decisions to demonstrate that: (i) the SDNY Claims are required to be estimated under the Code; (ii) the SDNY Claims can be estimated in an amount not to exceed the maximum amount available on such claims under federal law, without any need to consider the factual merits of the claims; (iii) because the SDNY Claims are based on the same operative facts as Lavvan's Arbitration Claims, Lavvan may not recover separately on those claims; and (iv) even if the Court were to consider the merits, it should conclude that the SDNY Claims are baseless.

    2.    Lavvan's *Preliminary Response* to the Motion [Dkt No. 1013] (the "Response") simply ignores most of the arguments made, and *every* precedent cited, in the Motion. Lavvan

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Capitalized terms used and not defined herein shall have the meanings ascribed thereto in the Motion.

LA:4862-3315-5738.1 03703.004

does not dispute that estimation is mandatory under Section 502(c) because the SDNY Claims are unliquidated and the liquidation of those claims would cause undue delay. Lavvan also does not dispute that: (i) the remedies it seeks on account of its SDNY Claims are defined, and limited, by statute; (ii) such remedies are limited to damages to compensate for the acts of any alleged infringement; or (iii) damages for such claims are generally calculated as a fraction of revenues received from sales of infringing products.

3. Although Lavvan attempts to create a factual dispute concerning the amount of such revenues in this case by arguing that Amyris's infringement was "rampant" and "pervasive," it acknowledges that the only evidence of Amyris's sales of products containing cannabinoids is that "Amyris sold over $2 million of CBG." *See* Response ¶21 (citing the Kieftenbeld Declaration). Since the Kieftenbeld Declaration further evidences that Amyris sold no other products containing cannabinoids, the amount of the SDNY Claims could never exceed a small fraction of that amount. Lavvan failed to offer any evidence or authorities contrary to those presented by the Debtors.

4. Lavvan also argues – without citing a single case in support – that it may obtain an independent recovery on the SDNY Claims, even though those claims are based on the same operative facts as its Arbitration Claims. As Lavvan admits in its separate Response to the Debtors' Claim Objection (the "<u>Claim Objection Response</u>"), "the Tribunal was considering the same underlying facts in the Arbitration" that were at issue in "the SDNY Action." Claim Objection Response ¶24. The authorities cited in the Motion make clear that Lavvan may not obtain a double recovery by seeking additional remedies on account of intellectual property claims based upon a violation of federal law that are premised upon the same operative facts as the

Arbitration Claims. The SDNY Claims should, therefore, be estimated at zero dollars as a matter of law.

5. Finally, while Lavvan claims the Tribunal ruled that Amyris violated federal law by infringing Lavvan's intellectual property rights, that is obviously not true; the Tribunal did not, and could not, consider the SDNY Claims. For the reasons described herein and in the Motion, this Court can, and should, estimate the SDNY Claims without considering their merits. If it elects to do so, however, it should still estimate those claims at zero dollars upon consideration of the evidence in an expedited estimation proceeding.

## ARGUMENT

**A.    The SDNY Claims Are Required To Be Estimated**

6. The Debtors demonstrated in the Motion that the SDNY Claims *must* be estimated pursuant to Section 502(c) of the Bankruptcy Code because the liquidation of those claims in federal court would unduly delay the administration of the Debtors' estates. *See* Motion, ¶¶23-27. Lavvan does not mention Section 502(c) or any relevant precedent in its Response. Indeed, Lavvan's only opposition to estimation is: "It is premature to estimate the value of Lavvan's SDNY Claims at this time—as Amyris acknowledges (at 3), these claims 'would take years' to litigate." Response, ¶17. However, the undue delay associated with litigation is exactly the reason why the SDNY Claims must be estimated.

7. The Debtors cited numerous reported decisions in the Motion in which courts have estimated intellectual property claims similar to the SDNY Claims pursuant to Section 502(c). Lavvan does not address those cases in its Response and it has cited no case to the contrary.

Because it is undisputed that the SDNY Claims are readily capable of estimation, and estimation is required under Section 502(c), the Debtors respectfully assert that the Court is required by law to estimate the SDNY Claims at this time.

**B.**     **The Amount Of The SDNY Claims Is Capped By Law**

8.     In the Motion, the Debtors explained in detail how damages for patent infringement and trade secret misappropriation are calculated – and capped – under applicable federal law.  *See* Motion, ¶¶32-51.  Notably, Lavvan does not dispute the fact that its SDNY Claims are subject to those damage calculations and caps under federal law.  In fact, Lavvan ignores the issues entirely.  Lavvan does not cite any applicable statutes or even a single case to argue that its SDNY Claims could ever exceed the amounts permitted under the law as outlined in the Motion.

9.     Instead, because the only remedy potentially available on the SDNY Claims would necessarily be calculated as a fraction of Amyris's revenues received from sales of infringing products, *see id.*, Lavvan attempts to raise factual questions concerning "the full scope" of Amyris's alleged "rampant" and "pervasive" infringement.  Response, ¶18, 21.  But, Lavvan's hyperbole is unsupported by the facts; *i.e.,* Amyris generated aggregate revenues of less than $2.3 million from all known sales of products containing cannabinoids.  Kieftenbeld Declaration, ¶18.  Lavvan further alleges that "Amyris seems to have implicitly limited its accounting for infringing conduct to its manufacture and sale of CBG."  Response, ¶33.  Amyris did not "implicitly" limit its accounting.  As set forth clearly in the Kieftenbeld Declaration, Amyris sold no other products containing cannabinoids.  Kieftenbeld Declaration, ¶19.

10. Lavvan devotes most of the Response to arguing that Amyris must have committed patent infringement. However, as the Debtors proposed in the Motion, the Court may grant the relief sought in the Motion "[e]ven if Amyris's liability for the SDNY Claims is presumed for purposes of this stage of the estimation process. . . ." Motion, ¶65.[3]

11. Lavvan further argues that the Tribunal's ruling that "Section 13 [of the RCL Agreement] also specifically bars liability 'for lost profits' arising from 'tort' in addition to contract," Arbitration Ruling, par. 377, should not extend to the SDNY Claims. Response, ¶32. The Tribunal's ruling applies with equal force to the SDNY Claims. The plain language of Section 13 insulates Amyris from liability from lost profits and all other special damages,

> WHETHER IN CONTRACT, WARRANTY, NEGLIGENCE, TORT, STRICT LIABILITY OR OTHERWISE, ARISING OUT OF (a) THE DEVELOPMENT, MANUFACTURE, USE OR SALE OF ANY CANNABINOID OR ANY PRODUCT UNDER THIS AGREEMENT, (b) THE USE OF OR REFERENCE TO EITHER PARTY'S BACKGROUND IP OR FOREGROUND IP, OR (c) ANY BREACH OF OR FAILURE TO PERFORM ANY OF EITHER PARTY'S OBLIGATIONS UNDER THIS AGREEMENT . . . .

RCL Agreement, §13. This provision expressly prohibits lost profit damages on the SDNY Claims.[4]

---

[3] Specifically, the Debtors proposed the following:

> Even if Amyris's liability for the SDNY Claims is presumed for purposes of this stage of the estimation process, the maximum amount of damages available to Lavvan on account of the SDNY Claims is capped as a matter of law. The Debtors propose that these issues can be briefed by the parties in short order and the Court can consider any relevant evidence (e.g., the parties' agreements, the Debtors' books and records concerning relevant product sales, etc.) through submission by declaration.

[4] Lavvan asserts that it would be able to establish "actual loss" damages because "Amyris's misappropriation completely destroyed Lavvan's business." Response, ¶36. Putting aside that Lavvan had no business outside of its $10 million investment with Amyris, Lavvan's claimed losses are in the nature of "lost profits," which it sought unsuccessfully in the Arbitration. "Actual loss" damages on account of Lavvan's intellectual property claims would be limited to those actually "caused by the misappropriation." *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2022 WL 2757643, at *12 (S.D.N.Y. July 14, 2022). Even assuming that Amyris misappropriated any of

12. Lavvan also questions the use of a 10% royalty figure by reference to the RCL Agreement and proposes that the Court instead look to Lavvan's commitment to pay Amyris significant amounts had the parties' collaboration been wildly successful (it was not). Lavvan misunderstands the nature of the reasonable royalty, which, as discussed in the Motion, is a percentage of actual sales found to be infringing. Lavvan's damages could, therefore, never exceed the total revenues of all known sales made by Amyris involving allegedly infringing products (here, less than $2.3 million), and would actually be significantly less.

13. Finally, Lavvan appears to argue that it should be entitled to treble damages under 35 U.S.C. § 284 and/or to double-enhanced damages under 18 U.S.C. § 1836(b)(3)(C) because the Tribunal stated that Amyris's conduct was "egregious." Response, ¶35. However, just as "the bar for punitive damages was very high indeed," *id.*, which led the Tribunal to deny Lavvan such damages, so too is the bar for enhanced damages in intellectual property cases. As the Debtors explained in the Motion, such damages are available only in extraordinary cases involving willful or malicious behavior and, even in such cases, are within the court's discretion. Motion, ¶¶44, 49. Because the Tribunal found that Amyris did not engage in such bad faith or malicious behavior, enhanced damages are not available on the SDNY Claims.

C. **Lavvan Cannot Recover More Than the Arbitration Award**

14. Lavvan concedes, as it must, that Lavvan's SDNY Claims of infringement and misappropriation depend entirely on the same operative facts as its Arbitration Claims. As Lavvan

---

Lavvan's trade secrets (it did not), Lavvan cannot demonstrate that Amyris's *de minimis* sales of products containing cannabinoids caused Lavvan any actual loss.

states in its Claim Objection Response, "the Tribunal was considering the same underlying facts in the Arbitration" that were at issue in "the SDNY Action." Claim Objection Response, ¶24.

15. The Debtors cited in the Motion multiple decisions in which the Court of Appeals for the Federal Circuit – which would have heard any appeal of the merits of the SDNY Claims because they include a patent infringement claim – held that a plaintiff may not recover on both intellectual property claims and breach of contract claims where the two claims arise out of the same set of operative facts. Motion, ¶55. Lavvan made no effort in the Response to distinguish those cases or to cite any case in support of its position to the contrary. Instead, Lavvan relies entirely on a statement in the Arbitration Ruling that "the relief sought in the District Court Proceedings is not duplicative of the relief sought in the Arbitration." Response, ¶27.

16. Initially, that statement concerned only "one of Lavvan's requests for relief; its request for a declaration 'that Amyris's breaches of the RCL Agreement have resulted in the occurrence of a Breach Condition as defined in Section 1.23 and a Release Condition as defined in Section 4.4.4(i).'" Arbitration Ruling, ¶272-73. The Tribunal's statement did not concern the other breach of contract and tort claims asserted by Lavvan in the Arbitration with respect to which Lavvan sought monetary damages.

17. Moreover, the Tribunal's conclusion that "***the relief*** sought in the District Court Proceedings is not duplicative of the relief sought in the Arbitration" does not change the fact that, as the Tribunal expressly stated, the SDNY Claims are "based on the same facts as the Arbitration." *Id.* ¶278. As explained in the Motion, "even though damages are claimed based upon separate statutes or causes of action, when the claims arise out of the same set of operative facts, as is the

7

case here, there may be only one recovery." *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1020 (Fed. Cir. 2006). As a result, the SDNY Claims should be estimated in the amount of zero dollars.

**D.      The SDNY Claims Lack Merit**

18.      Notwithstanding Lavvan's protestations to the contrary, the Tribunal did not consider, let alone "establish[]" or "resolve[]," the merits of the SDNY Claims. *See Response* ¶¶2, 29. Not only did the Tribunal lack jurisdiction over the SDNY Claims, but Lavvan itself argues that the SDNY Claims "seek to vindicate different rights relating to the RCL Agreement, grounded in different sources of law, with different elements, different defenses, and different ranges of available damages than the common-law Arbitration Claims." Response, ¶27. No court or other tribunal has ever held that Lavvan has satisfied any of the relevant elements, withstood any relevant defenses, or established any damages concerning the SDNY Claims.

19.      For the reasons discussed above and in the Motion, the Court should estimate the SDNY Claims without considering their merits. However, if the Court determines to consider the merits of those claims in an expedited estimation proceeding, the evidence will demonstrate that Lavvan's claims would fail.

WHEREFORE the Debtors respectfully request that the Court: (a) enter the Order substantially in the form annexed as **Exhibit A** to the Motion, granting the relief requested therein; and (b) grant such other and further relief as may be just.

| | |
|---|---|
| Dated: January 5, 2024 | **PACHULSKI STANG ZIEHL & JONES LLP**<br><br>*/s/ James E. O'Neill*<br>Richard M. Pachulski (admitted *pro hac vice*)<br>Debra I. Grassgreen (admitted *pro hac vice*)<br>James E. O'Neill (DE Bar No. 4042)<br>Jason H. Rosell (admitted *pro hac vice*)<br>Steven W. Golden (DE Bar No. 6807)<br>919 N. Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Facsimile: (302) 652-4400<br>Email:  rpachulski@pszjlaw.com<br>          dgrassgreen@pszjlaw.com<br>          joneill@pszjlaw.com<br>          jrosell@pszjlaw.com<br>          sgolden@pszjlaw.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

LA:4862-3315-5738.1 03703.004