

Alan J. Kornfeld

January 9, 2024

310.772.2395
akornfeld@pszjlaw.com

**LOS ANGELES**

10100 SANTA MONICA BLVD. 13TH FL.

LOS ANGELES, CALIFORNIA 90067-4003

310.277.6910

**NEW YORK**

780 THIRD AVENUE, 34TH FL.

NEW YORK, NEW YORK 10017-2024

212.561.7700

**WILMINGTON**

919 NORTH MARKET STREET, 17TH FLOOR,

P.O. BOX 8705

WILMINGTON, DELAWARE 19899-8705

302.652.4100

**HOUSTON**

700 LOUISIANA STREET, STE. 4500

HOUSTON, TEXAS 77002

713.691.9385

**SAN FRANCISCO**

ONE SANSOME STREET, 34TH FL. STE. 3430

SAN FRANCISCO, CALIFORNIA 94104

415.263.7000

The Honorable Thomas M. Horan
United States Bankruptcy Court
District of Delaware
824 North Market Street
3rd Floor
Wilmington, DE 19801

> Re:   ***In re Amyris, Inc., et al. No. 23-11131 (TMH)***

Dear Judge Horan:

      The Debtors submit this letter in response to Lavvan's January 9, 2024 letter regarding alleged discovery disputes between the Debtors and Lavvan with respect to its Discovery Requests (the "Lavvan Letter").[1]

      As a preliminary matter, the submission of the Lavvan Letter is both procedurally premature and substantively fails to take into account the document productions that the Debtors have made, and are continuing to make, both prior to, and following, the parties' meet and confer on January 6th. In fact, the Debtors commenced production of documents to Lavvan on December 23, 2023, almost 2 weeks prior to the production deadline, and have made four (4) subsequent productions on December 29, 2023, January 7, 8 and 9, 2024.[2] In total, the Debtors have produced approximately 23,370 documents, including emails, comprising approximately 180,676 pages.

---

[1]  Capitalized terms not otherwise defined have the meanings set forth in the Lavvan Letter.

[2]  As discussed in greater detail herein, Lavvan's contention that the Debtors' production on December 23rd (of more than 22,000 documents comprising over 175,000 pages) had "nothing whatsoever" to do with the Discovery Requests is simply wrong. This production contained highly relevant and responsive documents, if only Lavvan had deigned to look.

LA:4862-5148-0475.2 03703.004



The Honoable Thomas M. Horan
January 9, 2024
Page 2

At the January 6th meet and confer, Lavvan raised certain issues, many of which the Debtors agreed to or have considered and are implementing.  The Debtors also articulated their rationale for providing Lavvan with relevant, targeted, proportional material responsive to their overbroad requests (*e.g.,* the operative versions of plan models and projections, as opposed to each and every iteration).[3]  The Debtors never stated to Lavvan that the meet and confer process was over and, in fact, have continued the production of documents to address certain matters raised by Lavvan at the January 6th meet and confer over the past several days, clearly demonstrating the Debtors' continuing efforts to address Lavvan's discovery demands.  Contrary to its assertions, Lavvan has actually received much of what it complains it lacks.  Lavvan's failure to review what has been produced, or work further with the Debtors toward a solution through a follow-up meet and confer, and instead unnecessarily bringing these issues to the Court at a time when all parties are in the midst of preparation for hearings leading up to confirmation, is an unfortunate waste of judicial and the parties' time  and resources.  The Debtors will address Lavvan's stated issues in turn.

***First***, the Debtors believe that Lavvan's first articulated discovery dispute – the request for non-privileged plan related emails and drafts – has been addressed by the production today (following a consideration of Lavvan's position at the January 6th meet and confer and the subsequent running of searches and review of the results) of plan-related emails and attachments (including plan settlement proposals, term sheets, plan support agreements and draft plans) between counsel for the Debtors and counsel for the Committee, and counsel for the Debtors and counsel for the Ad Hoc Noteholders Group, for the period prior to these parties' agreement over the terms of a consensual plan, which agreement was reached on December 2, 2023 (as memorialized in the *Joint Second Amended Chapter 11 Plan of Reorganization* that was filed on December 12, 2023 [Dkt. No. 892]).  The production of these plan-related emails and attachments totaled 630 documents comprising 3,423 pages.  For the period subsequent to the December 2nd agreement between the Debtors, Foris as plan sponsor, the Committee and the Ad Hoc Noteholder Group – and the plan-related communications between the Debtors and Foris subsequent to the provision of the first draft term sheet on September 14th (which was memorialized in the plan filed on October 12, 2023 [Dkt. No. 523]), such communications are protected from disclosure by the attorney client privilege, work product and common interest doctrine.  *See In re Tribune Co.*, 2011 Bankr. LEXIS 299, *18-19 (Bankr. D. Del. Feb. 3, 2011) (the community of interest arises once plan proponents agree upon the material terms of a settlement); *In re Imerys Talc Am., Inc.*, 2021 Bankr. LEXIS 428, *14 (upon reaching agreement in principle on the material terms of a plan, plan proponents have a common legal interest in confirming the plan, protecting their communications and documents regarding the plan).[4]

---

[3] The voluminous plan financial models (each with 110 separate tabs providing support for the models) provided to Lavvan are discussed in further detail below.

[4] Moreover, the key issue for confirmation is not what prior versions of a draft plan or term sheet might have provided, but whether the Plan, as proposed, meets the standards for confirmation under section 1129 of the Bankruptcy Code.   Ironically, in this case, the treatment of Lavvan's secured claim ***improved*** from prior versions of the Plan such that Lavvan's allowed secured claim is now unimpaired.  The original plan provided

LA:4862-5148-0475.2 03703.004



The Honorable Thomas M. Horan
January 9, 2024
Page 3

*Second*, with respect to the provision of information relating to the value of Lavvan's collateral, it is the Debtors' position that Lavvan's collateral is limited to the cannabinoid IP. The valuation of the Debtors' intellectual property assets (including the cannabinoid IP) will be – as Lavvan acknowledges – the subject of an expert report. Expert reports are due in 2 days, on January 11th and, pursuant to Fed. R. Civ. Proc. 26(a)(2) and the Confirmation Scheduling and Protocols Order, Lavvan would have been provided with the reliance materials utilized by the Debtors' expert on January 11th in connection with the expert report timeline. Notwithstanding, to address Lavvan's stated concern at the January 6th meet and confer, on January 7th and 8th the Debtors produced to Lavvan additional materials relied on by its valuation expert, consisting of 14 documents comprising 356 pages, plus 6 voluminous excel spreadsheets, which are discussed in further detail below. Several of the documents provided in the December 23, 2023 production also contained materials relied on by the Debtors' valuation expert. *See* Appendix A, for a listing of the documents (with Bates references) responsive to Request #8.

*Third*, Lavvan's assertion that the Debtors have failed to produce documents directly responsive to Requests #4-7 is inaccurate. Lavvan simply failed to review the documents provided by the Debtors. The Debtors determined to provide the initial set of documents to Lavvan at the outset (12 days prior to the production deadline), in light of the fast-track timeframe for plan confirmation, so that Lavvan would have the access to the documents requested by the Committee and the Ad Hoc Noteholder Group in connection with, among other things, their ultimate determination to support the plan. In response to statements at the January 6th meet and confer that Lavvan considered the Debtors' production of documents that had previously been provided to the Committee and the Ad Hoc Noteholder Group to be non-responsive, and to show that the production was in fact responsive, the Debtors conducted some basic word searches which demonstrate that there are numerous documents in the initial production that are directly responsive to Lavvan's Requests #4-7. Lavvan's wholesale refusal to review the production by conducting the most basic searches, or to account for the documents provided thereafter, is not a failure by the Debtors to provide Lavvan with responsive documents.

Request #4:  All documents and communications referred to in or reviewed or relied upon by the Debtors in connection with, the Plan Projections, including all underlying support and data for the Plan Projections.

- The initial production contains at least 130 board presentations and materials (comprising 15,970 pages). *See* Appendix A, for a listing of the documents (with Bates references) responsive to Request #4.

- In addition, the Debtors produced voluminous excel files of the plan model and projections – 5 of which have over 110 separate tabs containing back-up support for the model – from August, October (disclosure statement) and December 2023. These are the versions of the plan models and financial projections presented to the

---

for payment over time, subject to the contractual subordination; the current plan provides for Lavvan to receive payment in full of any allowed secured claim subject to the contractual subordination.



The Honorable Thomas M. Horan
January 9, 2024
Page 4

Debtors' board.  *See* Appendix A, for a listing of the plan models and financial projections, including the related presentations (with Bates references) responsive to Request #4.

<u>Request #5</u>:  For the years 2021, 2022, and 2023 year-to-date, the following financial information of the Debtors: (a) Renewable products revenue and gross margin by customer; (b) License and royalty revenue by counterparty; (c) Detailed sales, general and administrative expense breakdown as internally reported to company management; (d) Detailed research & development expense breakdown as internally report to company management; and (e) Annual gross current and 2022 full year payroll broken down by executive, operations, research & development, sales, and general administrative departments.

- As reflected in detail on Appendix A, a word search demonstrates that the initial production (and subsequent productions) contain at least 20 documents and/or excel files responsive to Request #5(a); at least 2 documents and/or excel files responsive to Request #5(b); at least 21 documents and/or excel files responsive to Request #5(c); at least 9 documents and/or excel files responsive to Request #5(d); and at least 8 documents and/or excel files responsive to Request #5(e).  *See* Appendix A, for a listing of the documents (with Bates references) responsive to Request #5.

<u>Request #6</u>:  All business plans, financial projections and associated forecast assumptions created during the Time Period relating to the Debtors, including fully functional Microsoft Excel models and related support.

- As reflected in detail on Appendix A, in addition to the production of voluminous excel files of the plan model and projections – 5 of which have over 110 separate tabs containing back-up support for the model – from August, October (disclosure statement) and December 2023 (discussed above as responsive to Request #4), the Debtors produced business plans and presentations.  *See* Appendix A for a listing of the documents (with Bates references) responsive to Request #6.  As expressed to Lavvan's counsel at the meet and confer, to the extent that, after a review of the provided financial information, Lavvan has further questions into specific aspects of the model/projections, the Debtors would attempt to provide the requested information.  Lavvan has not made any such request, taking the blanket position that what the Debtors have provided is insufficient, instead of working with the Debtors with respect to a proportionate and reasonable response.

<u>Request #7</u>:  All appraisals, valuations, solvency opinions, analyses, PowerPoints, presentations, or other materials created during the Time Period referring or relating to the Debtors' business plans, financial projections, or associated forecast assumptions.

- In addition to the production of voluminous excel files of the plan model and projections responsive to Requests #4 and 6, the Debtors have provided at least 8 business plans, valuations and information regarding the Debtors' IP.



The Honorable Thomas M. Horan
January 9, 2024
Page 5

*See* Appendix A, for a listing of the documents (with Bates references) responsive to Request #7. The Debtors will also provide an expert valuation report on the date that such expert reports are due – January 11th. The Debtors submit that, contrary to Lavvan's assertions, it has the information necessary for its expert to assess feasibility and valuation and, if appropriate, file a rebuttal to the Debtors' expert report.

***Finally***, Lavvan asserts that the Debtors have not provided the DSM term sheet, as promised. This is inaccurate. On January 8th, the Debtors provided Lavvan with the DSM term sheet. *See* Appendix A (with Bates reference) responsive to Request #1 to Lavvan's Second Request for Production. As further noted, there is no agreement with Givaudan on revised commercial terms (negotiations are ongoing), so there is nothing to produce in this regard. The Debtors will provide a categorical privilege log, which will assert a common interest privilege between the Debtors and Foris as plan sponsor as of at least September 14, 2023 (the date of the first shared draft of the term sheet), and between the Debtors and the Committee and the Ad Hoc Noteholder Group, respectively, as of December 2, 2023, the date an agreement regarding a consensual plan was reached between the Debtors, Foris, the Committee and the Ad Hoc Noteholder Group.

The Debtors thank the Court for its time in dealing with these issues raised by Lavvan, and hopes that the Debtors have demonstrated their good faith dealings with respect to Lavvan and its discovery demands.

Very truly yours,

*/s/ Alan J. Kornfeld*

Alan J. Kornfeld

cc:     Russell C. Silberglied
        Jason Cyrulnik
        Paul Fattaruso
        Cory D. Kandestine