## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*, | Case No. 23-11131 (TMH) |
| Debtors.[1] | (Jointly Administered) |

### DEBTORS' MOTION FOR THE ENTRY OF AN ORDER (A) AUTHORIZING REJECTION OF RESTRICTED STOCK UNITS AGREEMENTS AND (B) GRANTING RELATED RELIEF

**IF YOU HAVE RECEIVED THIS MOTION AND ARE A COUNTERPARTY TO A RESTRICTED STOCK UNITS AGREEMENT WITH THE ABOVE-CAPTIONED DEBTORS, PLEASE REVIEW THIS MOTION IN ITS ENTIRETY, INCLUDING <u>SCHEDULE 1 TO EXHIBIT A</u> ATTACHED HERETO, TO DETERMINE IF THIS MOTION AFFECTS YOUR AGREEMENT AND YOUR RIGHTS THEREUNDER**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") file this motion (the "<u>Motion</u>") for the entry of an order (the "<u>Order</u>"), substantially in the form attached hereto as **Exhibit A**: (a) authorizing the Debtors to reject certain restricted stock units agreements identified on **Schedule 1** to **Exhibit A** (collectively, the "<u>RSU Agreements</u>")[2] and (b) granting related relief. The Debtors seek the rejection of the RSU Agreements effective as of January 30, 2024 (the "<u>Rejection Effective Date</u>"). In support of this Motion, the Debtors rely upon and refer this Court to the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter*

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2]    For the avoidance of doubt, by this Motion, the Debtors seek to reject the RSU Agreements, including any amendments, restatements, supplements, and associated statements of work associated with the RSU Agreements, whether or not such amendments, restatements, supplements, and associated statements of work are listed in the schedule.

*11 Petitions and First Day Relief* (the "<u>First Day Declaration</u>"), incorporated herein by reference.[3]

In further support of the Motion, the Debtors respectfully represent as follows:

## <u>JURISDICTION AND VENUE</u>

1.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 365(a), and 554(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rule 9013-1.

---

[3]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

4887-0036-1115.3 03703.004

## BACKGROUND

### A.    The Chapter 11 Cases

4.    On August 9 and August 21, 2023 (as applicable, the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.    On August 27, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") which consists of the following members: U.S. Bank Trust Co. NA; Cosan U.S. Inc.; Sartorius Stedim North America Inc.; Hearst Magazine Media Inc.; Wiley Companies; Park Wynwood LLC; and Allog Participacoes Ltda.

6.    Amyris was founded in 2003 to create a more stable supply of a key anti-malarial treatment. Through Amyris's cutting-edge science, artemisinin—the most effective anti-malarial drug in the world—is now consistently available to treat the deadly disease. Using the same technological innovations that produced artemisinin, Amyris has become the world's leading manufacturer of ingredients made with synthetic biology. Amyris provides sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products.

7.    In addition, Amyris operates a family of consumer brands that use the company's ingredients to meet the growing demand for sustainable, effective, and accessible products, including Biossance® (clean beauty skincare), JVN™ (haircare), Rose Inc.™ (clean color cosmetics), Pipette® (clean baby skincare), OLIKA™ (clean wellness), MenoLabs™ (healthy

living and menopause wellness), Stripes™ (menopausal wellness), and 4U by Tia™ (a new clean haircare line).

8.      A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the First Day Declaration.

**B.      The RSU Agreements to Be Rejected**

9.      On June 22, 2020 Debtor Amyris, Inc. (the "Company") adopted the 2020 Equity Incentive Plan (the "2020 Equity Plan"). The 2020 Equity Plan provides for the grant of, among other equity interests, restricted stock units ("RSUs"), to eligible employees, consultants, and directors of the Company, or any of the Company's parent, subsidiaries, or affiliates. RSU Agreements represent a right to receive shares of common stock of the Company subject to satisfaction of certain restrictions, as set forth in a vesting schedule. The Company has regularly granted RSUs with time-based vesting to its employees to encourage retention among the employee base, and such RSU Agreements are part of such employees' overall compensation packages.  A true and correct copy of the form of the RSU Agreement for US-based employees is attached hereto as **Exhibit B**.[4]

10.      Pursuant to the RSU Agreements, the RSUs generally vest on a quarterly basis over four years.  As of the date of this Motion, the Company had approximately 5,316,624 outstanding RSUs.  Approximately 31,621 shares from RSU grants are scheduled to vest on February 1, 2024, and 328,772 shares from RSUs are scheduled to vest on March 1, 2024.  Two hundred thirty-nine (239) employees of the Company and its subsidiaries hold RSUs vesting on February 1, 2024 and five hundred fifty-one (551) employees of the Company and its subsidiaries hold RSUs vesting on

---

[4]      The RSU Agreement for non-US based employees is identical, except that the tax language conforms to the tax laws of the applicable jurisdiction.

March 1, 2024.  As set forth on Schedule 1, these employees are predominantly located in the United States and some are located in Brazil.

11.     While the Company's common stock has been delisted from the Nasdaq Stock Market, it continues to be traded, with low daily volume, in over-the-counter trading.  Many broker-dealers will not transact in securities trading in this market, making it difficult for smaller holders to actually sell any securities they receive.  Following the Company's delisting from the Nasdaq Stock Market, the Company's captive broker-dealer informed the Company that it will not process any sales of the Company's shares.

12.     Under United States tax law, vesting and settlement (i.e., the issuance of shares of Company common stock upon vesting) of the RSU is a taxable event for the recipient (the counterparties of the RSU Agreements).  The fair market value of the shares is included in an employee's taxable income as compensation at the time of vesting and settlement, and are subject to federal and employment tax, as well as applicable state and local taxes.  Further, for employees, the Company is required to withhold the applicable taxes and remit them to the Internal Revenue Service ("IRS") within specified prompt deadlines.  Historically, the Company obtained the applicable withholding tax owed on behalf of the employees by conducting a "sale-to-cover" transaction for each employee, whereby the Company directed a sale (via the broker-dealer) on the open market for such number of shares issued upon the RSU settlement required to cover the taxes due.[5]

---

[5]     As a generalized example, if 100 RSUs vested, and at the time the share price was $1 and the applicable tax rate was 38%, the Company would direct the sale of 38 shares on the employee's behalf, the Company would remit the proceeds of such sale to the IRS, or other applicable state tax agency, and the employee would receive the remaining 62 shares.

13.     Following the Petition Date, allowing RSUs to vest and be settled in shares of Company common stock has created a number of potential problems for both the Company and its employees.  Following the Company's delisting from the Nasdaq Stock Market, it no longer has a stock broker able to process a sale-to-cover transaction to facilitate to the tax withholding payment.  As a result, in order to satisfy its IRS withholding obligations and not be subject to potential penalties, the Company either would have to elect pay the withholding obligation out of its own cash reserves, or it would have to deduct from each employee's salary or other cash compensation the amount of the withholding obligation.

14.     Under the Debtors' *Second Amended Joint Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors, as Modified* [Docket No. 892] (the "Plan"), the RSUs, and the shares of Company common stock that may be issued in respect of the RSUs, are expected to be cancelled for no value as of the effective date of the Plan.  This, combined with the difficulty any employee will have in actually selling any shares received upon an RSU vesting (because of the likely unavailability of a willing broker-dealer to execute any trades), the economic value of the RSU vesting to each employee is going to be non-existent.  However, the vesting and settlement of the RSUs will still be a taxable event so long as the Company's common stock remains outstanding and has a quote greater than $0.00.  As a result, the employees would be taxed on the shares issued upon settlement of their vested RSUs, but would very likely not be able to sell such shares. Therefore, it is in the interest for the employees as a whole, and for the Company, to terminate these outstanding RSU Agreements before the next vesting date, of February 1, 2024.

15.     Each RSU Agreement is an executory contract between the Company and the employee/counterparty, and pursuant to each such RSU Agreement, the Company may not terminate or amend any RSU Agreement without the consent of the recipient, unless in accordance

6

with an applicable law, regulation or rule.  Given the number of employees impacted, and the complexity of explaining the unusual tax consequences and liquidity issues, it is not practicable or viable for the Company to obtain a signed consent from each RSU Agreement employee/counterparty before the next scheduled vesting date.[6]  Thus, the Debtors seek authority to reject the RSU Agreements.

16.     Section 18 of the RSU Agreement is entitled "**Consent to Electronic Delivery of All Plan Documents and Disclosures**" and provides as follows: "[Participant] consents to the electronic delivery of . . . other communications or information related to the RSUs and current or future participation in the Plan. Electronic delivery may include . . . the delivery of the document via e-mail or such other delivery determined at the Company's discretion."  Therefore, notice of this Motion to the RSU Agreement counterparties via e-mail should be sufficient and will protect the privacy of such counterparties.

## RELIEF REQUESTED

17.     By this Motion, the Debtors seek the entry of an order, substantially in the form attached hereto as **Exhibit A**: (a) authorizing  the  Debtors  to reject the RSU Agreements as set forth on **Schedule 1** thereto effective as of the Rejection Effective Date; and (b) granting related relief.

## BASIS FOR RELIEF

**Rejection of the RSU Agreements Is Appropriate**

18.     The RSU Agreements are part of an employee's compensation, and therefore, are executory because the obligation of the Company to distribute the applicable stock is based upon

---

[6]    The Company does note that shortly after the Petition Date, all of the Company's directors and executive officers signed consents waiving any rights to all existing RSU awards, for similar reasons to those described above.

the employee's continued employment with the Company.  *Cinicola v. Scharffenberger*, 248 F.3d 110, 123 (3rd Cir. 2001) (physician employment agreements were executory contracts which could be assumed and assigned under section 365 of the Bankruptcy Code).   Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor.  *See Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) (citation omitted) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test.");  *see also Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (Bankr. D. Del. 1995).  Application of the business judgment standard requires a court to approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice.  *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001); *Lubrizol Enters., Inc. v. Richmond Metal Finishes*, 756 F.2d 1043, 1047 (4th Cir. 1985).  Further, "[t]his provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed."  *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citation omitted).

19.     Rejection of executory contracts and unexpired leases is appropriate where such rejection would benefit the estate.  *See Sharon Steel Corp. v. Nan Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 39–40 (3d Cir. 1989).  Upon finding that a debtor has exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection under section 365(a).  *See In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re Bradlees*

8

*Stores, Inc.*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996), *appeal dismissed*, 210 B.R. 506 (S.D.N.Y. 1997); *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtors' decision to assume or reject an executory contract "should be granted as a matter of course").

20.     The RSU Agreements are not sources of potential value for the Debtors' estates or stakeholders.  As discussed previously, upon confirmation of the Debtors' Plan, the RSUs, and the shares of Company common stock that may be issued in respect of the RSUs, will be cancelled and shareholders will receive no distribution under the Plan.  Thus, the economic value of the RSU vesting to each employee is going to be non-existent.  However, the vesting and settlement of the RSUs will still be a taxable event so long as the Company's common stock remains outstanding and has a quote greater than $0.00.  As a result, the employees would be taxed on the shares issued upon settlement of their vested RSUs, but would very likely not be able to sell such shares. Therefore, it is in the best interest of both the Debtors and the employee/counterparties to the RSU Agreements for the Debtors to reject the RSU Agreements before the next vesting date, of February 1, 2024.  Accordingly, the Debtors have determined that the RSU Agreements constitute an unnecessary drain on the Debtors' resources, and rejection of the RSU Agreements reflects the Debtors' exercise of sound business judgment.

21.     Accordingly, the Debtors respectfully submit that the Court should deem the Contracts rejected, effective as of the Rejection Effective Date.

### **WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)**

22.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**NOTICE**

23.     The Debtors will provide notice of this Motion to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lenders, DIP Agent, and the Foris Prepetition Secured Lenders, Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com) and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com); (d) co-counsel to the DIP Lenders, the DIP Agent, and the Foris Prepetition Secured Lenders, Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com); (e) counsel to the Official Committee of Unsecured Creditors, (i) White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, IL 60606, Attn: Gregory F. Pesce, Esq. (gregory.pesce@whitecase.com) and Andrew F. O'Neill, Esq. (aoneill@whitecase.com), and (ii) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: John Ramirez, Esq. (john.ramirez@whitecase.com) and Andrea Kropp, Esq. (andrea.kropp@whitecase.com); (f) co-counsel to the Official Committee of Unsecured Creditors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801, Attn: Christopher M. Samis (csamis@potteranderson.com), Katelin A. Morales (kmorales@potteranderson.com), and Sameen Rizvi, Esq. (srizvi@potteranderson.com); the United States Attorney's Office for the District of Delaware; (g) the state attorneys general for all states in which the Debtors conduct business; (h) Counterparties to the RSU Agreements; and (i) any party that requests service pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that no further notice is required.

## NO PRIOR REQUEST

24.    The Debtors have not made any prior request for the relief sought herein to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:  January 11, 2024

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*
Richard M. Pachulski (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell (admitted *pro hac vice*)
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  rpachulski@pszjlaw.com
          dgrassgreen@pszjlaw.com
          joneill@pszjlaw.com
          jrosell@pszjlaw.com
          sgolden@pszjlaw.com

*Proposed Counsel to the*
*Debtors and Debtors in Possession*

4887-0036-1115.3 03703.004