UNITED STATES BANKRUPTCY COURT
DISRICT OF DELAWARE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In re                                          Chapter 11
                                               Case No. 23-11131 (TMH)
AMYRIS, INC., et al.,                          Jointly Administered

                Debtors.[1]      Objection Deadline: January 18, 2024 at 5:00 p.m.
                                               Hearing Date: January 24, 2024 at 10:00 a.m.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**LIMITED OBJECTION OF THE U. S. SECURITIES AND EXCHANGE COMMISSION TO CONFIRMATION OF THE DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION**

      The U.S. Securities and Exchange Commission (the "Commission"), a statutory party to these proceedings[2] and the federal agency responsible for regulating and enforcing compliance with the federal securities laws, objects to the confirmation of the Debtors' Second Amended Joint Plan of Reorganization (the "Plan") filed by Amyris, Inc. ("Amyris") and its affiliated debtors (each a "Debtor" and collectively, the "Debtors"), dated December 12, 2023 to the extent that the Debtors seek to impose nonconsensual third party releases under the Plan. In support of its objection, the Commission respectfully states as follows:[3]

## INTRODUCTION

      As a general matter, nondebtor third party releases contravene Section 524(e) of the Bankruptcy Code, which provides that only debts of the debtor are affected by the Chapter 11 discharge provisions. Such releases have special significance for public investors because they

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] As a statutory party in corporate reorganization proceedings, the Commission "may raise and may appear and be heard on any issue". 11 U.S.C. §1109(a).

[3] Unless separately defined herein, capitalized terms have the meanings ascribed to them in the Plan.

1

enable nondebtors to benefit from a debtor's bankruptcy by obtaining their own releases with respect to past misconduct, which could include violations of the federal securities laws that would not be dischargeable had those same nondebtors filed their own Chapter 7 or Chapter 11 bankruptcy cases.

Under the Plan, the Debtors seek to impose nonconsensual third-party releases in favor of the Debtors' officers, directors, and numerous other parties (the "Releases"). The Releases purport to bind all creditors and shareholders and apply to a wide array of claims, other than those based on gross negligence, willful misconduct or fraud. If the bankruptcy court does not approve the Releases because they are nonconsensual, the Debtors have included an alternative "opt-out" release provision, which would bind stakeholders who fail to opt out of the Releases. In our view, the inclusion of an "opt-out" provision does not render the Releases consensual.

In the Third Circuit, nonconsensual releases are only permitted in "extraordinary cases" when the releases are critical to the debtor's reorganization.  Here, the Debtors have not proffered any extraordinary facts that justify this unusual relief.  The fact that the Debtors have proposed a default "consensual" structure for the Releases undermines the claim that the Releases are essential to this reorganization.

Finally, the Court lacks jurisdiction to approve the Releases with respect to public shareholders, holders of unsecured notes, and holders of subordinated claims.  Accordingly, to the extent that the Debtors seek to impose nonconsensual Releases on creditors and shareholders, such Releases should be deleted from the Plan, or the Court should decline to impose such Releases on any party who does not take affirmative action to consent to them.

## BACKGROUND

### A. Corporate Background

Amyris is a publicly traded company formerly trading on the NASDAQ and currently trading on the OTC markets under the symbol "AMRSQ". *Disclosure Statement With Respect To Second Amended Joint Chapter 11 Plan Of Reorganization Of Amyris, Inc. And Its Affiliated Debtors, As Modified ("Disclosure Statement")* Dkt. No. 893 at 17; *SEC Form 8-K*, January 3, 2024. Amyris and its affiliates operate the world's leading manufacturer of ingredients made with synthetic biology, providing eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products. *Id.* at 12. On August 9, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and each continues to operate its business and manage its properties as debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

As of the Petition Date, the Debtors had in excess of $1 billion in aggregate funded debt, including $386.1 million in secured term loan facilities and approximately $690 million in unsecured convertible notes. *Id.* at 15-17.

### B. The Plan

The Plan incorporates the terms of a global settlement among the key stakeholders and provides a cash recovery to the convertible noteholders and unsecured creditors (along with the assignment of certain estate claims to a Creditor Trust) as treatment of their claims and in exchange for the Releases. (*Plan* at 27-33) The Debtors' public shareholders (Class 14) and holders of Section 510(b) Claims (Class 12) are not parties to the global settlement and are deemed to reject the Plan. They will not receive any distribution on account of their interests or claims. (*Plan* at 32-33) The Releases would release the Debtors' non-excluded officers and

3

directors as well as numerous other non-debtors including unidentified predecessors and affiliates,[4] and would release numerous claims and causes of action against the Released Parties.[5] The Plan provides for an exception to the Releases that allows persons, including shareholders, Section 510(b) claimants, and noteholders, to sue a released party for certain conduct, including actual fraud, willful misconduct, or gross negligence and to pursue claims against John Melo and Eduardo Alvarez, former officers excluded from the Releases. *Plan* at 66.

The Plan provides releasing parties with separate consideration from a settlement fund to allow the Releasing Parties to receive consideration, in the amount of $12.7 million *pro rata* distribution to holders of unsecured convertible notes, $3.68 million to holders of general unsecured claims, and an additional $5 million *pro rata* distribution to public shareholders (which would amount to less than a 1.5% recovery per outstanding share, assuming approximately 369 million outstanding shares per latest filed report). *Plan* at 20, 66-67.

If the bankruptcy court does not approve the Releases on a nonconsensual basis, the Debtors have included an alternative release provision that they characterize as "consensual." Under this provision, public shareholders, noteholders, and holders of Section 510(b) Claims will be bound by the Releases unless they opt out. In exchange for not opting out of the Releases, they would receive proceeds from the third-party release settlement fund in the amount of $9.26

---

[4] Article I.A.174 of the Plan defines Released Party to include: (a) the Debtors; (b) the Reorganized Debtors; (c); the DIP Lenders and the DIP Agent; (d) the Foris Prepetition Secured Lenders; (e) the Creditors' Committee; (f) the Consenting Convertible Noteholders, (g) the Ad Hoc Group Professionals; (h) the Consenting Contract Counterparties; and (i) with respect to each of the foregoing Entities in clauses (a) through (e), all Related Parties. For the avoidance of doubt, (i) the Debtors' current and former directors, managers, officers, employees, professionals, and shareholders, in each case, who are not an Excluded Party, shall each be a Released Party; and (ii) no Excluded Party shall be a Released Party. *Plan at* 18

[5] The claims and causes of action released include, but are not limited to: "any and all Direct Claims, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise that are or may be based in whole or in part upon any act, omission, transaction, event, or other occurrence taking place or existing on or prior to the Effective Date . . . *Plan* at 66.

mil for public noteholders, $2.69 mil for holders of general unsecured claims and $2.5 mil for public shareholders (which would amount to a less than 1% recovery per share). *Id*. Holders of Section 510(b) Claims are bound by the Releases and will receive no recovery under the Plan. *Id*. at 33.

## DISCUSSION

### I. The Releases Do Not Meet the Standard to be Approved as Nonconsensual Releases.

#### A. The Releases do not meet the extraordinarily high standard that must be satisfied before they can be approved as nonconsensual in the Third Circuit.

The Debtors cannot show that the facts of this case are sufficiently extraordinary to justify the imposition of the Releases on a non-consensual basis. The Third Circuit has held that allowing non-consensual non-debtor releases is an "extraordinary remedy" that should be used only sparingly. *See In re Continental Airlines*, 203 F.3d 203, 217 (3rd Cir. 2000).[6] The hallmarks of permissible non-consensual non-debtor releases include: (i) fairness, particularly whether the release was given in exchange for fair consideration, beyond what the class was entitled to as creditors under the plan; (ii) necessity to the reorganization; and (iii) specific factual findings to support these conclusions. *Id*. at 214-15.

---

[6] In *Continental Airlines*, the Third Circuit rejected a plan provision that released and permanently enjoined shareholder lawsuits against present and former officers and directors who were not in bankruptcy. The court held that the release and injunctive provisions fell squarely into the Section 524(e) prohibition because they amounted to nothing more than a lockstep discharge of nondebtor liability. The Court held open the possibility that "there are circumstances under which [it] might validate a nonconsensual release that is both necessary and given in exchange for fair consideration," *Id*. at 214, n.11, but made this comment in light of releases and permanent injunctions issued in such extraordinary cases as *Robins*, *Manville*, and *Drexel*; *See Menard-Sanford v. Mabey* (In re A.H. Robins Co.), 880 F.2d 694 (4th Cir. 1989); *MacArthur Co. v. Johns-Manville Corp*. (In re Johns-Manville Corp.), 837 F.2d 89 (2d Cir.1988); *Drexel Burnham Lambert Trading Corp. v. Drexel Burnham Lambert Group, Inc*. (In re Drexel Burnham Lambert Group, Inc.), 960 F.2d 285 (2d Cir. 1992); *see also Deutsche Bank AG v. Metromedia Fiber Network, Inc*. (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 143 (2d. Cir. 2005) (the Second Circuit held a "nondebtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to the success of the plan. . ..").

Specifically, courts in this circuit have considered the following factors in determining whether a non-consensual release satisfies the hallmarks discussed in *Continental*: "(i) the non-consensual release is necessary to the success of the reorganization; (ii) the releasees have provided a critical financial contribution to the debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is fair to the non-consenting creditors, i.e., whether the non-consenting creditors received reasonable compensation in exchange for the release." *In re Spansion, Inc.*, 426 B.R. 114, 144-145 (Bankr. D. Del. 2010); *see also In Re Purdue Pharma L.P., 69 F.4th 45, 78-79 (2d Cir.), cert. granted sub nom. Harrington v. Purdue Pharma L.P., 144 S. Ct. 44, 216 L. Ed. 2d 1300 (2023)* (holding that the bankruptcy court had statutory authority to impose nonconsensual third-party releases only if the bankruptcy court found that the releases met a variety of factors including whether the nonconsensual releases are necessary for the reorganization, the non-debtor contributed substantial assets to the reorganization and whether the plan provides for the fair payment of enjoined claims).

Here, the Debtors have contradicted themselves by simultaneously asserting that the nonconsensual releases are essential to the reorganization and that that an opt-out release would also suffice to successfully confirm the Plan. When applying the *Continental* factors to the facts of this case, it is abundantly clear that the Releases contravene Bankruptcy Code Section 524(e) and applicable Third Circuit law. There is no evidence that fair consideration was provided specifically in exchange for the release of identifiable claims against nondebtors or that all of the nondebtor parties being released made contributions to the Plan. Nor is there evidence that the Releases are fair to all of the Debtors' stakeholders, some of whom are receiving limited or no consideration under the Plan. *See In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717,

728 (Bankr. S.D.N.Y. 2019) (proponents' inability to identify the claims affected or the owners of such claims meant that there was lack of proof of facts necessary to support a proposed nonconsensual release and governing law required court to consider not only the contributions made by the proposed releasees but also the fairness of the releases from the point of view of the people upon whom the releases are imposed).

Indeed, the "Released Party" definition includes not only the enumerated parties, but also a host of nondebtors contained in the definition of "Related Party" including current and former officers and directors and entities, as well as former predecessors, successors, affiliates and others who may not have contributed anything to the Plan or the restructuring process.[7] There has not been an adequate showing that all of the numerous parties being released have provided a critical financial contribution.  In sum, the list of parties that the Debtors are releasing is extensive and the Debtors have the burden to establish that each *Continental* factor has been met as to each of the nondebtors who benefits from the Releases.  Even if the Court determines that the consideration to the non-consensual releasing parties does not have be contributed by the released parties, the consideration here is *woefully inadequate*, at most an approximate 1% recovery, essentially no recovery at all.  Therefore, the Releases do not satisfy the strict standard set forth by the Third Circuit.

---

[7] "Related Party" is defined to mean, "collectively, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, shareholders, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts, or funds, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, fiduciaries, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, restructuring advisors, and other professionals and advisors, and any such person's or Entity's respective predecessors, successors, assigns, heirs, executors, estates, and nominees. *Plan* at 17-18.

B. **The Opt Out Alternative Does Not Constitute Consent**

The Debtors' alternative proposal—to bind stakeholders who fail to opt out if the Court will not approve the explicitly nonconsensual Releases—does not render the Releases consensual because silence or inaction does not constitute "consent." In the SEC's view, in order for releases to be considered consensual, parties should opt into the release to be bound. *See, e.g., Emerge Energy Servs. LP*, No. 19-11563 (KBO), 2019 WL 7634308, at *18 (Bankr. D. Del. 2019) ("the Court cannot on the record before it find that the failure of a creditor or equity holder to return a ballot or Opt-Out Form manifested their intent to provide a release. Carelessness, inattentiveness, or mistake are three reasonable alternative explanations.") (emphasis added); *In re Washington Mutual, Inc*., 442 B.R. 314, 352 (Bankr. D. Del. 2011) ("[f]ailing to return a ballot is not a sufficient manifestation of consent to a third party release"); *In re Exide Techs*., 303 B.R. 48, 74 (Bankr. D. Del. 2003) (court found releases consensual and binding only on creditors and interest holders voting to accept the plan); cf. *In re Spansion, Inc.*, 426 B.R. 114, 144-45 (Bankr. D. Del. 2010) (court found releases consensual only with respect to parties voting to accept the Plan, and unimpaired creditors deemed to have accepted the Plan). Thus, neither failing to return an opt-out form, nor abstaining from voting, nor voting to reject a plan but failing to opt out of the releases constitutes "consent." *But see In re Indianapolis Downs, LLC*, 486 B.R. 286, 304-6 (Bankr. D. Del. 2013) (in nonpublic company case that sets forth the minority view among published opinions in this district, nondebtor releases deemed consensual with respect to impaired creditors who abstained from voting on the Plan, and those who voted to reject the Plan and did not otherwise opt out of the releases. Creditors that were deemed to reject the Plan were not subject to the releases.).

"Courts generally apply contract principles in deciding whether a creditor consents to a third party release." *In re SunEdison, Inc.*, 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017), citing *Washington Mutual, Inc.*, 442 B.R. at 352; *Emerge Energy*, 2019 WL 7634308, at *18. The Court in *Emerge Energy* enumerated the basic contract principles under which consent to the Release may be implied from silence:

> For the Court to infer consent from the nonresponsive creditors and equity holders, the Debtors must show under basic contract principles that the Court may construe silence as acceptance because (1) the creditors and equity holders accepted a benefit knowing that the Debtors, as offerors, expected compensation; (2) the Debtors gave the creditors and equity holders reason to understand that assent may be manifested by silence or inaction, and the creditors and equity holders remained silent and inactive intending to accept the offer; or (3) acceptance by the creditors and equity holders can be presumed due to previous dealings between the parties.

*Emerge Energy*, 2019 WL 7634308, at *18.

The Debtors therefore cannot rely on the silence of the Debtors' stakeholders to manufacture consent. Rather, they are extinguishing a right these parties may have against non-debtor third parties unless they affirmatively submit an opt-out form. This is a particularly onerous requirement to place on public investors, many of whom must rely on broker-dealer intermediaries to deliver the appropriate forms and instructions to them. The more appropriate mechanism is to permit stakeholders to opt in to the Releases which would evidence a clear manifestation of consent to be bound to the subject release and acceptance of the proposed settlement.

**II.    The Bankruptcy Court Lacks Jurisdiction to Approve the Releases.**

Bankruptcy courts are courts of limited jurisdiction. Even if the Releases are intended to be limited to claims relating to the Debtors, that purported nexus alone is insufficient to grant the court the constitutional authority to approve the Releases under *Stern v. Marshall*, 564 U.S. 462,

131 S. Ct. 2594,180 L. Ed. 2d 475 (2011). As a threshold matter, the Court must have jurisdiction over a claim in order to release and enjoin it. *W.R. Grace & Co. v. Chakarian* (In re W.R. Grace & Co., et. al.), 591 F.3d 164, 170 (3rd Cir. 2009); *In re Millennium Lab Holdings II, LLC*, 242 F.Supp.3d. 322, 327 (D. Del. 2017); *Patterson v. Mahwah Bergen Retail Group, Inc.*, 636 B.R. 641, 670-71 (E.D. Va. 2022).

Assuming that the Debtors make the proper jurisdictional showing, the Court must then determine whether the released and enjoined claims fall within the Court's "core" or "non-core" jurisdiction for purposes of 28 U.S.C. §157. *Patterson*, 636 B.R. at 668. "Core" proceedings are "proceedings arising under title 11, and proceedings arising in a case under title 11[.]" *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3rd Cir. 2005). The claims implicated by the Releases are nearly limitless. As such, permanently enjoining these non-bankruptcy claims between third parties is a non-core proceeding.

The fact that plan confirmation is a core proceeding under 28 U.S.C. §157(b)(2)(L) does not render the enjoining of third-party claims under a plan a core proceeding too. In *Stern v. Marshall*, 564 U.S. 462 (2011), the Supreme Court held that bankruptcy courts may violate Article III of the Constitution when adjudicating on a final basis a state law counterclaim filed by the debtor, even though 28 U.S.C. §157(b)(2)(C) expressly classifies the debtor's counterclaim as a core proceeding.[8] In *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126 (3rd Cir. 2019), the Third Circuit Court of Appeals analyzed how Stern applies in the context of plan

---

[8] As recently explained by a district court judge in this District:

"Whether the analysis is characterized as jurisdictional or a determination on the merits, it is clear to me that the permissibility of third-party releases does not end with whether the Bankruptcy Court had 'arising in' or 'arising under' jurisdiction to confirm the Plan containing them. Rather a separate analysis is required with respect to a Plan's release of claims and/or suits between third parties." Nat'l Union Fire Ins., Co. of Pittsburgh, PA v. Boy Scouts of America and Delaware BSA, LLC, et. al, (In re Boy Scouts of America and Delaware BSA, LLC), 650 B.R. 87, 124 (Bankr. D. Del. 2023).

10

confirmation when, like here, the plan contains a third-party release of state law and other non-bankruptcy claims. The *Millennium Lab* court held that a bankruptcy court does not violate the Constitution when entering a final order confirming a plan with such a release, but only in the "specific and limited" case in which the release is integral to the debtor's restructuring. *Id*. at 140; *see also In Re Purdue Pharma L.P.*, 69 F.4th 45, 68–69 (2d Cir.), *cert. granted sub nom. Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 44, 216 L. Ed. 2d 1300 (2023) (Court held that the bankruptcy court does not have constitutional authority to enter final orders on non-core matters, but the bankruptcy court can resolve claims that might impact the res of the estate).

In this case, the Releases include much more than rights and claims created solely by federal bankruptcy law or that arise solely in a bankruptcy case. Under *Millennium Lab*, this Court lacks constitutional authority to release and enjoin such claims under the Plan unless the Court finds that doing so is integral to the Debtors' restructuring. But the Debtors have provided no evidence that the Releases are integral to the restructuring of the debtor-creditor relationship. Accordingly, absent such a showing, the Court lacks the constitutional authority to approve any of the Releases set forth in the Plan.

And while the Supreme Court has held that bankruptcy courts may exercise core jurisdiction over a state law claim when the claimant knowingly and voluntarily consents to adjudication in the non-Article III forum, the Debtors' shareholders and subordinated claimants have taken no action that could be interpreted as knowing and voluntary consent to waive their Article III rights. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S. Ct. 1932 (2015).

**CONCLUSION**

For all of the foregoing reasons, the SEC requests that the Court deny approval of the Plan unless the Plan is amended to delete any nonconsensual Releases from the Plan and that stakeholders, including public shareholders, holders of unsecured notes, and holders of subordinated claims be required to opt in to the Releases in order to be bound.

Dated: New York, New York
       January 17, 2024

                                UNITED STATES SECURITIES AND
                                EXCHANGE COMMISSION

                                By: /s/ Alan Maza
                                Alan Maza
                                Senior Bankruptcy Counsel
                                New York Regional Office
                                100 Pearl Street, Suite 20-100
                                New York, New York 10004
                                Phone: (212) 336-1100
                                Mazaa@sec.gov

Of Counsel: Alistaire Bambach
                Morgan Bradylyons

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of January, 2024, a true and correct copy of the foregoing *Limited Objection Of The U. S. Securities And Exchange Commission To Confirmation Of The Debtors' Second Amended Joint Plan Of Reorganization* was furnished to all ECF Participants via the CM/ECF system, and/or served via email upon the following:

Debtors' Counsel
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705
Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com); Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com)

Counsel to the DIP Lenders, DIP Agent and the Foris Prepetition Secured Lenders
Goodwin Procter LLP
620 Eighth Avenue
New York, NY 10018
Attn: Michael H. Goldstein (mgoldstein@goodwinlaw.com), Alexander J. Nicas (anicas@goodwinlaw.com), and Debora A. Hoehne (dhoehne@goodwinlaw.com)

Troutman Pepper Hamilton Sanders LLP
Hercules Plaza, Suite 5100, 1313 N. Market Street
Wilmington, DE 19899
Attn: David M. Fournier (david.fournier@troutman.com)

Counsel to the Official Committee of Unsecured Creditors
White & Case LLP
111 South Wacker Drive, Suite 5100
Chicago, IL 60606-4302
Attn: Gregory Pesce, (gregory.pesce@whitecase.com) and Andrew O'Neill, (aoneill@whitecase.com), John Ramirez, (john.ramirez@whitecase.com) and Andrea Kropp, (andrea.kropp@whitecase.com)

Potter Anderson & Corroon LLP
1313 North Market Street, 6th Floor
Wilmington, DE 19801
Attn: Christopher M. Samis, (csamis@potteranderson.com), Katelin A. Morales, (kmorales@potteranderson.com), Sameen Rizvi (srizvi@potteranderson.com)

Counsel to Ad Hoc Noteholder Group
Frank Merola, Esq.
PAUL HASTINGS LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

Email: frankmerola@paulhastings.com, johnstorz@paulhastings.com, matthewfriedrick@paulhastings.com, carolinediaz@paulhastings.com

MOLOLAMKEN LLP
Steven F. Molo, Esq.
Justin M. Ellis, Esq.
Sara E. Margolis, Esq.
Mark W. Kelley, Esq.
Catherine Martinez, Esq.
430 Park Avenue
New York, NY 10022
Telephone: (212) 607-8160
Email: smolo@mololamken.com
 jellis@mololamken.com
 smargolis@mololamken.com
 mkelley@mololamken.com
 cmartinez@mololamken.com

BLANK ROME LLP
Stanley B. Tarr (DE No. 5535)
Lawrence R. Thomas III (DE No. 6935)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
Email: stanley.tarr@blankrome.com, lorenzo.thomas@blankrome.com

Counsel for U.S. Bank Trust Company, National Association, as Trustee for Convertible Senior Notes Due 2026
GREENBERG TRAURIG, LLP
Michael B. Fisco
Eric J. Howe
Whitney A. Mark
90 South 7th Street, Suite 3500
Minneapolis, MN 55402
Telephone: 212-450-4725
Email: FiscoM@gtlaw.com
HoweE@gtlaw.com
Whitney.Mark@gtlaw.com

Ad Hoc Group of Cross-Holders
ARENTFOX SCHIFF LLP
Andrew I. Silfen
Beth M. Brownstein
1300 Avenue of the Americas, 42nd Floor
New York, New York 10000
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: andrew.silfen@afslaw.com
Email: beth.brownstein@afslaw.com

WOMBLE BOND DICKINSON (US) LLP
Matthew P. Ward
Ericka F. Johnson
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: matthew.ward@wbd-us.com
Email: ericka.johnson@wbd-us.com

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Eric J. Silver
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-4175
Facsimile: (305) 789-2688
Email: esilver@stearnsweaver.com

Office of the U.S. Trustee
Office of the U.S. Trustee for the District of Delaware
844 King Street, Suite 2207
Wilmington, Delaware, 19801
Attn: John Schanne, Esq. (John.Schanne@usdoj.gov)

RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7815
Email: silberglied@rlf.com
 mathews@rlf.com

CYRULNIK FATTARUSO LLP
55 Broadway, Third Floor
New York, NY 10006
Telephone: (917) 353-3005
Email: jcyrulnik@cf-llp.com
 pfattaruso@cf-llp.com

KTBS LAW LLP
David M. Stern
Samuel M. Kidder
Nir Maoz
1801 Century Park East, 26th Floor
Los Angeles, CA 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
Email: dstern@ktbslaw.com
skidder@ktbslaw.com
nmaoz@ktbslaw.com

/s/ Alan S. Maza
Alan S. Maza
Senior Bankruptcy Counsel
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004
Phone: (212) 336-1100
Mazaa@sec.gov