IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., et al.,<br><br>         Debtors | Chapter 11<br>Case No. 23-11131 (TMH)<br>(Jointly Administered)<br><br>**Objection Deadline: January 18, 2024 at 5:00 pm**<br>**Hearing Date: January 24, 2024 at 10:00 am** |

# OBJECTION OF ANDREW E. ROTH, AN AMYRIS SHAREHOLDER, TO CONFIRMATION OF THE DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION

Andrew E. Roth ("**Roth**"), a shareholder of Amyris, Inc. ("**Amyris**") common stock, by and through his undersigned counsel, files this Objection to the Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors, As Modified and filed with this Court on December 12, 2023 (Doc 892) (the "**Plan**") on grounds that the Plan:

(1) Purports to release claims in a civil action pending in the U.S. District Court for the Northern District of California captioned *Andrew E. Roth v. Foris Ventures, LLC et al*, 21-cv-04288-YGR (the "**Foris Action**") for disgorgement of at least $6.4 million in short-swing profits to Amyris under Section 16(b) of the Securities Exchange Act of 1934 on the erroneous ground that the Foris Action is subject to subordination under Bankruptcy Code Section 510(b);

(2) The Foris Action is a Direct Claim, and the Plan's provisions purporting to release Direct Claims (including the claims asserted in the Foris Action), and providing for the exculpation of such Claims, and for an Injunction to further prosecution of Direct Claims is invalid because the Bankruptcy Code does not allow the Court to approve, as part of a plan of reorganization under Chapter 11 of the Bankruptcy Code, a release that extinguishes claims held by non-debtors against non-debtor third parties, without the claimants' consent;

(3) The Plan's purported releases and settlement of the Foris Action, and post-confirmation injunction, fails to compensate counsel for Roth and provide an allowed administrative claim for professional services rendered in the Foris Action; and

(4) In all events, the Foris Action can and should be transferred to preserve the Foris Action as a Creditor Trust asset.[1]

**PRELIMINARY STATEMENT**

1.  In the Foris Action, Roth, a shareholder of nominal defendant Amyris, brought claims in the U.S. District Court for the Northern District of California (21-cv-04288-YGR) under Section 16(b) of the Securities Exchange Act ("**Exchange Act**"), (15 U.S.C. § 78p(b)) ("**Section 16(b)**") on behalf of Amyris seeking disgorgement of at least $6.4 million in short-swing profits realized by defendants Foris Ventures, LLC ("**Foris**"), a greater than 10 percent beneficial owner of Amyris, and L. John Doerr ("**Doerr**"), an Amyris director (together, the "**Foris Defendants**"). The Foris Defendants' short-swing profits accrued from transactions between Amyris and Foris (the "**Amyris-Foris transactions**"). Doerr has an indirect interest in Foris and the Amyris-Foris transactions. The Complaint alleges that the short-swing profits may be substantially higher based on the valuation of the equities at issue.

2.  Amyris is not a true defendant in the Foris Action. The true defendants are Foris and Doerr, Amyris insiders who realized "short-swing" profits in violation of Section 16(b). Any recovery in the Foris Action inures directly to the Debtors after the payment of attorney's fees and expenses. Amyris is named in the Foris Action merely as a nominal defendant, as required by applicable law, since it is the ultimate beneficiary under the Foris Action.

3.  The Complaint in the Foris Action has overcome the Foris Defendants' motion to dismiss before the District Court and an interlocutory appeal to the Ninth Circuit. The Ninth

---

[1] In support of tis Objection, Roth submits herewith the Declaration of its counsel Glenn F. Ostrager ("Ostrager Declaration").

Circuit recently remanded the Foris Action to the District Court for further proceedings. *Roth v. Foris Ventures, LLC*, 86 F.4th 832, 838 (9th Cir. 2023).

4. The Plan identifies the Foris Action as a "Securities Action" in Article I A., paragraph 188 and includes the Securities Action as a "Section 510(b) Claim" subject to subordination in paragraph 185. The Plan does not identify any Allowed Section 510(b) Claims and purports to release all such claims. *See* Plan at Articles IV.A, IX.C, and IX.F. Thus, the Plan purports to release and/or subordinate the claims asserted in the Foris Action but does not provide any compensation to Roth's attorneys for professional services and their actual, necessary expenses incurred in prosecuting the Foris Action. The record in the Foris Action shows that Roth's attorneys made a substantial contribution to the value of the Debtor's estate for the benefit of all stakeholders.

5. Section 16(b) provides that suit to recover short-swing profits may be instituted "by the issuer, or by the owner of any security of the issuer in the name and on behalf of the issuer if the issuer shall fail or refuse to bring suit within sixty days after request or shall fail diligently to prosecute the same thereafter." 15 U.S.C. § 78p(b). Amyris declined to prosecute the claim against the Foris Defendants and affirmatively acted on their behalf to seek dismissal of the Foris Action. Before the Ninth Circuit, Amyris' counsel, Gibson, Dunn & Crutcher LLP, argued the appeal on behalf of the Foris Defendants.

6. In these circumstances, the Debtors have a conflict of interest that disqualifies it from prosecuting or releasing claims in the Foris Action on behalf of the bankruptcy estate. *See: In re G-I Holdings, Inc.*, 313 B.R. 612, 630 (Bankr. D.N.J. 2004); *In re First Capital Holdings Corp.*, 146 B.R. 7, 12-13 (Bankr. C.D. Cal. 1992); and *In re National Forge Co.*, 326 B.R. 532, 545 (W.D. Pa. 2005).

7.  In September 2023, Roth's counsel requested that the Creditors' Committee move the bankruptcy court for an order granting it authority to prosecute the Foris Action on behalf of the Debtors. Roth's counsel further advised that they were prepared to prosecute the case on a contingency fee basis. Thereafter, Roth's counsel engaged in ongoing discussions with counsel for the Creditors' Committee.

8.  On January 4, 2024, counsel for the Creditors' Committee advised that they would not pursue the Foris Action stating: "The Committee has reached a settlement with the Debtors and is supporting the Plan, which includes releases for, among other parties, Mr. Doerr and Foris. We therefore cannot assume the mantle of your clients claims." Ostrager Decl. Ex. 1.

9.  On January 4, 2024, counsel for the Creditor's Committee further confirmed that the Debtors received consideration for releasing the Foris Action: "The Committee is not in a position to preserve these claims given our settlement with the Debtors and Mr. Doerr, who is paying for the releases by providing consideration to the estates for this release." Ostrager Decl. Ex. 2. Counsel for the Creditors Committee did not disclose the details of the agreement. between Amyris and the Foris Defendants resulting in the release of claims in the Foris Action

10. In view of the enhanced value of the Foris Action to the Debtors' estate resulting from Roth's counsel's professional services, Roth's counsel is entitled to be compensated for its professional services and reimbursed for its necessary expenses incurred in litigating the Action.

11. We show below that the Foris Action, as a Section 16(b) claim brought on behalf of Amryis, is not a claim against the Debtors and therefore is not subject to subordination under Bankruptcy Code Section 510(b), and that the release of the Foris Action is invalid under the bankruptcy code and should otherwise be preserved as a Creditor Trust asset under the Plan (Article V).

**BACKGROUND**

A.  **Section 16(b)**

12.  Section 16(b) provides for disgorgement of "any profit realized" by any statutory insider whenever there is "(1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998).  The Exchange Act defines a "statutory insider" as "[e]very person who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security . . . which is registered pursuant to section 12, or who is a director or an officer of the issuer of such security." 15 U.S.C. §78p(a)(1).  Suit to recover any profits arising from those transactions are recoverable by the issuer or by a shareholder suing on its behalf.

B.  **The Parties in the Foris Action**

13.  Roth is a New York resident who is and has been an owner of Amyris common stock at all relevant times.  Foris is a Delaware liability company which acts as a private investment company.  At all relevant times, Foris was a greater than 10% beneficial owner of Amyris common stock and derivative securities relating to Amyris common stock, and therefore a statutory insider for purposes of §16(b).

14.  Doerr has been a member of the Amyris board of directors since 2006, and indirectly owns all membership interests in Foris.  Defendant Vallejo Trust is the sole member of Foris.  Doerr and his wife Ann (also a defendant) are the trustees of Vallejo Trust, and defendant Barbara Hager ("**Hager**") is the special trustee of Vallejo Trust and manager of Foris.

15.  Under the Plan Supplement submitted January 9, 2024 (Doc. 1112-15), Doerr is identified as a member of the New Board of Reorganized Amyris.

C.  **Procedural History of the Foris Action**

16. On March 30, 2021, Roth made a demand on Amyris' board of directors to commence suit against the Foris Defendants for violation of Section 16(b). Thereafter, on May 18, 2021, Roth sent the board a follow-up letter requesting their advice in the matter. Amyris never responded to Roth's demand or pursued any legal action against Foris Defendants.

17. On June 4, 2021, Roth filed a complaint, for the benefit of Amyris, alleging claims under Section 16(b) against the Foris Defendants. The Complaint sought disgorgement of at least $6,471,124 in short-swing profits realized by Foris Defendants in the Amyris-Foris transactions.

18. On September 21, 2021, the Foris Defendants and Amyris jointly moved to dismiss the Complaint on the ground that the Amyris-Foris transactions were exempt from Section 16(b) liability under SEC Rule 16b-3(d)(1) (17 C.F.R. § 240.16b-3(d)) because the Amyris-Foris transactions were approved by Amyris's board and were between Amyris and Foris, Doerr's investment vehicle. SEC Rule 16b-3(d)(1) exempts certain "transactions between an issuer and its officers and directors" including those that are "approved by the board of directors of the issuer…" from Section 16(b) liability.

19. On June 13, 2022, the District Court issued an order ("**Order**") granting the motion to dismiss as to defendant Hager, as an unnecessary party, but denied the motion to dismiss as to the remaining Foris Defendants stating that they were not entitled to exemptions from §16(b) liability under SEC Rule 16b-3(d)(1). The remaining Foris Defendants and Amyris filed a motion to certify the Order for immediate interlocutory appeal to the Court of Appeals for the Ninth Circuit. The District Court granted the motion.

20. On August 29, 2022, the remaining Foris Defendants and Amyris filed a petition for permission to appeal to the Ninth Circuit and Roth filed a petition for permission to cross-appeal. On October 24, 2022, the Ninth Circuit issued an order granting both petitions.

21. At issue before the Ninth Circuit were two controlling questions: (1) whether Doerr established an entitlement to an exemption under Rule 16b-3(d)(1) for his "indirect pecuniary interest" in the Foris transactions, and (2) whether Doerr's exemption, if available, would cover Foris's direct pecuniary interest in the transactions.

22. The Securities and Exchange Commission filed an *amicus curiae* brief in which the Commission stated unequivocally that an exemption for Doerr, if available, does not extend to Foris.

23. The Ninth Circuit issued an Opinion on November 13, 2023, reversing the district court in part and remanded the case to the district court for further proceedings. The Ninth Circuit held that fact issues are presented as to whether Foris was a director by deputization and entitled to an exemption under Rule 16b-3(d)(1). It is settled that deputization determinations present fact questions. *Roth v. Foris Ventures, LLC*, 86 F.4th 832, 838 (9th Cir. 2023). The Ninth Circuit affirmed the district court's determination that Doerr is entitled to an exemption for his "indirect interest" in the Foris trading. The Foris Action remains pending in the District Court for the Northern District of California.

24. Thus, there are fair grounds for litigating the Foris Action before the district court and Roth's attorneys' professional services before the district court and the Ninth Circuit enhanced the value of the Foris Action for settlement purposes for the benefit of the Debtors' stakeholders.

# ARGUMENT

### A. The Foris Action is Not Subject to Subordination Under Bankruptcy Code Section 510(b)

25. The Plan purports to release the Foris Action under Bankruptcy Court Section 510(b). In general, Section 510(b) provides a mechanism designed to preserve the creditor/shareholder risk allocation paradigm by categorically subordinating most types of claims asserted against a debtor by equity holders in respect of their equity holdings. Section 510(b) automatically subordinates claims of ordinary creditors: (i) arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor; (ii) for damages arising from the purchase or sale of such a security; or (iii) for reimbursement or contribution on account of such a claim. 11 U.S.C. § 510(b). The Foris Action is not a claim against the Amyris. It is a claim brought on behalf of and for the benefit of Amyris against the Foris Defendants. It therefore should not be included as a Section 510(b) Claim under the Plan.

26. The Plan does not identify any Allowed Section 510(b) Claims and purports to release all such claims, which would include the Foris Action. *See* Plan Articles IV.A, IX.C, and IX.F.

### B. The Foris Action is Not a Derivative Action Or Property of the Debtor's Estate

27. The Foris Action is not derivative in nature such that it vests in Amyris and the Debtors upon filing of its bankruptcy, and is not subject to release under the Plan, and certainly is not subject to subordination under Section 510(b).

28. In *Rosenberg v. XO Communs., Inc. (In re XO Communs., Inc.),* 330 B.R. 394 (Bankr. S.D.N.Y. 2005), the court considered "whether liability under the Section 16(b) Action belonged to the Debtor, such that it was subject to the Debtor's Release." 330 B.R. at 427. The

8

*XO Communications* court held that a §16(b) claim "is not a right that is secondary or derivative from that of the corporation, but is a statutory enabling right directly empowering an issuer's security holder to sue." *Id.* at 430.

29. The *XO Communications* court further recognized that "a Section 16(b) cause of action brought by a security holder after an issuing corporation refuses upon demand to pursue the action does not simply revert to the corporation's estate upon its filing of bankruptcy." *Id*. at 430. Instead, "although under Section 541 the proceeds, or right thereto, of the Section 16(b) Action are property of the estate, the cause of action itself is not property of the estate." *Id. See also Schaffer v. CC Investments, LDC,* 286 F. Supp. 2d 279, 282 (S.D.N.Y. 2003) (a Section 16(b) cause of action 'amounts to an enforcement right," enabling the issuing corporation to gain from the redistribution of the statutory insiders' illicit short-swing profits . . . .).

30. As a result, the Debtors here had no right to release the Foris Action.

**C.     The Plan's Non-Consensual Release of Direct Claims, Exculpation and Injunction are Invalid**

31. The Plan also purports to release Direct Claims, provides for exculpation and an injunction against further prosecution of the Direct Claims, and provides for Third-Party Releases that purport to release claims by third parties, such as Roth as a shareholder in Amyris. The Plan provides, *inter alia,* for Third Party releases of claims, and exculpation of claims against Debtor and its officers and directors and the Foris Prepetition Secured Lenders, which would appear to include claims asserted against the defendants in the Foris Action. Specifically, the Plan provides, *inter alia*:

> Third-Party Release by the Releasing Parties.
> Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Parties shall be deemed to forever release and waive, as against each and all of the Released Parties, any and all Direct Claims, whether liquidated or unliquidated, fixed

or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise that are or may be based in whole or in part upon any act, omission, transaction, event, or other occurrence taking place or existing on or prior to the Effective Date; provided, however, that nothing in this section shall operate as a release, waiver, discharge or impairment of (i) any Estate Causes of Action or liabilities arising out of actual fraud, willful misconduct, or gross negligence of any such Released Party as determined by a Final Order, or (ii) any Causes of Action transferred to the Creditor Trust, which Causes of Action are preserved notwithstanding anything to the contrary in this section, or (iii) any Excluded Party Direct Claims. (Plan at 66).

"Direct Claims" means any claim or Cause of Action held by a Releasing Party against any of the Released Parties (excluding the Debtors) and their respective Related Parties, but only to the extent such claims arise from, relate to, or are connected with, directly or indirectly, in any manner whatsoever, the Debtors, including their respective assets, liabilities, operations, financings, contractual agreements, licenses, and including the governance thereof, and existing on or prior to the Effective Date (including prior to the Petition Date). (Plan at 8, ¶ 72)

"Released Parties" means, collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c); the DIP Lenders and the DIP Agent; (d) the Foris Prepetition Secured Lenders; (e) the Creditors' Committee; (f) the Consenting Convertible Noteholders, (g) the Ad Hoc Group Professionals; (h) the Consenting Contract Counterparties; and (i) with respect to each of the foregoing Entities in clauses (a) through (e), all Related Parties. For the avoidance of doubt, (i) the Debtors' current and former directors, managers, officers, employees, professionals, and shareholders, in each case, who are not an Excluded Party, shall each be a Released Party; and (ii) no Excluded Party shall be a Released Party. (Plan at 18, ¶ 174)

"Releasing Parties" means collectively, and in each case in its capacity as such: (a) the Foris Prepetition Secured Lenders; (b) the Creditors' Committee; (c) the Consenting Convertible Noteholders; (d) the Consenting Contract Counterparties; (e) all Holders of Claims against the Debtors that are bound by the Third-Party Release Settlement; and (f) all persons who hold Interests in Amyris that are bound by the Third-Party Release Settlement. (Plan at 18, ¶ 175)

"Third-Party Release" means the release of Direct Claims deemed given by each of the Releasing Parties to the Released Parties in consideration for the distributions to be made as set forth in D of the Plan. (Plan at 20, ¶ 196)

"Third-Party Release Settlement" means that settlement and release of Direct Claims as provided for in Article IV.A. and Article IX.D & G. of the Plan. in consideration for the distributions to be made as set forth in Article IX.D of the Plan. The documentation of the Third-Party Release Settlement and the payment of the Third-Party Release Settlement Amounts will be included in the Plan Supplement. (Plan at 20, ¶ 197)

"Exculpated Parties" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Foris Secured Parties; (c) all Consenting Convertible Noteholders; (d) the Ad Hoc Group Professionals; (e) the Creditors' Committee; and (f) the Related Parties of each of the foregoing parties. (Plan at 11, ¶ 101)

32. The topic of Non-Consensual Third-Party Releases and their enforceability under the provisions of the Bankruptcy Code are exhaustively analyzed in the cases involving the Purdue Pharma bankruptcy. *See Purdue Pharma, L.P. v. City of Grande Praire (In re Pharma L.P),* 69 F.4th 45, 2023 U.S. App. LEXIS 13236 (2d Cir. 2023), *cert. granted, Harrington v. Purdue Pharma, L.P.*, 2023 U.S. LEXIS (U.S. Aug. 10, 2023). The Purdue appeal was argued before the Supreme Court on December 4, 2023, and is awaiting decision. The legal arguments are fully set forth in the decisions discussing the releases at issue in that appeal.

33. Here, while any recovery in the Foris Action may benefit Amyris (as opposed to Roth individually) or, if the claim is not released, the Creditor Trust, the release of the claim requires Roth's consent. And, as explained earlier, settling and releasing the claim without compensating Roth's counsel is not an acceptable consensual resolution for Roth. As such, Roth objects to the Non-consensual third-party release, exculpation and injunction set forth in the Plan.

34. Roth incorporates by reference herein the Limited Objection of the U.S. Securities and Exchange Commission To Confirmation of the Debtors' Second Amended Joint Plan of Reorganization filed January 17, 2024 (Doc 1150) including, without limitation, the Commission's arguments that nondebtor third party releases contravene Section 524(e) of the Bankruptcy Code which provides that only debts of the debtor are affected by the Chapter 11 discharge provisions. The Commission further argued that such releases have special significance for public investors because they enable nondebtors, like the Foris Defendants here,

11

to benefit from a debtor's bankruptcy by obtaining their own releases with respect to past misconduct.

**D.    The Plan Fails to Provide an Administrative Claim under Section 503(b)(4)**

35. As explained above, the Plan wrongly releases the Foris Action. Counsel for the Creditors' Committee advised Roth's counsel that there was consideration for the release of the Foris Action, but there are no documents explaining what specific consideration was obtained for the release of the Foris Action apart from what set forth in the Plan. Ostrager Decl. Exs. 1 and 2.

36. The Plan makes no provision for compensation to Roth's counsel, nor does it provide for an Administrative Claim for reimbursement of his legal fees and expenses in the Foris Action. If this Court determines that the Foris Action is subject to release in this Chapter 11 proceeding (which we dispute) then the Plan should provide for an allowed Administrative Claim under Section 503(b)(4) for Roth's attorney's having created a substantial benefit for the estate. Although not particularized in the Plan, the settlement of the Foris Action made a substantial contribution to the value of the Debtors' estate for the benefit of the Debtors that, at minimum, requires an allocation of monies for the release of the Foris Action.

**E.    The Foris Action Can Also be Transferred to the Creditor Trust for the Benefit of the Creditors of the Debtors' Estate**

37. The Foris Action asserts a claim under Section 16(b) for disgorgement of short swing profits that can be preserved and assigned to the Creditor Trust established by the Plan for enforcement and benefit of the Debtors' creditors. The Debtors' purported release of the Foris Action benefits only its insiders—the Foris Defendants—and undermines the polices of Section 16(b). Congress enacted Section 16(b) as a "prophylactic" rule to prevent corporate insiders from exploiting their access to "information not generally available to others." *Kern Cnty. Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 592 (1973).

38. The Debtors are poorly positioned to prosecute and/or settle the Foris Action. Amyris declined to prosecute the claim against the Foris Defendants and affirmatively acted on their behalf to seek dismissal of the Foris Action before the district court and the Ninth Circuit. This presents a conflict of interest as described above (¶¶ 5-6), and carries the potential to cripple the prosecution of the Foris Action and settle it far below its fair value to the detriment of the bankruptcy estate and its creditors.

39. The Foris Action is a direct claim that is a valuable asset of the Debtor. Pursuant to Article V of the Plan it should be transferred to the Creditor Trust for the benefit of the creditors of the Debtor's Estate.

Dated: January 18, 2024
      Wilmington, Delaware

                                                      _/s/ Brad deLeeuw_
Brad deLeeuw (DE No. 3569)
**deLeeuw Law LLC**
1301 Walnut Green Road
Wilmington, DE 19807
Phone: (302) 274-2180
Email: brad@deleeuwlaw.com

Glenn F. Ostrager (*admitted pro hac vice*)
Joshua S. Broitman (*admitted pro hac vice*)
**Ostrager Chong Flaherty & Broitman P.C.**
437 Madison Avenue, 24th Floor
New York, NY 10022-7034
Phone: (212) 702-7041
Email: gostrager@ocfblaw.com
        jbroitman@ocfblaw.com


Counsel for Objecting Party, Andrew E. Roth

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of January, 2024, a true and correct copy of the foregoing Objection Of Andrew E. Roth, An Amyris Shareholder, To Confirmation Of The Debtors' Second Amended Joint Plan Of Reorganization was furnished to all ECF Participants via the CM/ECF system, and/or served via email upon the following:

Debtors' Counsel
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705
Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com);
Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com)

Counsel to the DIP Lenders, DIP Agent and the Foris Prepetition Secured Lenders
Goodwin Procter LLP
620 Eighth Avenue
New York, NY 10018
Attn: Michael H. Goldstein (mgoldstein@goodwinlaw.com), Alexander J. Nicas (anicas@goodwinlaw.com), and Debora A. Hoehne (dhoehne@goodwinlaw.com)

Troutman Pepper Hamilton Sanders LLP
Hercules Plaza, Suite 5100, 1313 N. Market Street
Wilmington, DE 19899
Attn: David M. Fournier (david.fournier@troutman.com)


Counsel to the Official Committee of Unsecured Creditors
White & Case LLP
111 South Wacker Drive, Suite 5100
Chicago, IL 60606-4302
Attn: Gregory Pesce, (gregory.pesce@whitecase.com) and Andrew O'Neill, (aoneill@whitecase.com), John Ramirez, (john.ramirez@whitecase.com) and Andrea Kropp, (andrea.kropp@whitecase.com)

Potter Anderson & Corroon LLP
1313 North Market Street, 6th Floor
Wilmington, DE 19801
Attn: Christopher M. Samis, (csamis@potteranderson.com), Katelin A. Morales, (kmorales@potteranderson.com), Sameen Rizvi (srizvi@potteranderson.com)

Counsel to Ad Hoc Noteholder Group
Frank Merola, Esq.

PAUL HASTINGS LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899
Email: frankmerola@paulhastings.com, johnstorz@paulhastings.com, matthewfriedrick@paulhastings.com, carolinediaz@paulhastings.com

MOLOLAMKEN LLP
Steven F. Molo, Esq.
Justin M. Ellis, Esq.
Sara E. Margolis, Esq.
Mark W. Kelley, Esq.
Catherine Martinez, Esq.
430 Park Avenue
New York, NY 10022
Telephone: (212) 607-8160
Email: smolo@mololamken.com
jellis@mololamken.com
smargolis@mololamken.com
mkelley@mololamken.com
cmartinez@mololamken.com

BLANK ROME LLP
Stanley B. Tarr (DE No. 5535)
Lawrence R. Thomas III (DE No. 6935)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
Email: stanley.tarr@blankrome.com, lorenzo.thomas@blankrome.com

<u>Counsel for U.S. Bank Trust Company, National Association, as Trustee for Convertible Senior Notes Due 2026</u>
GREENBERG TRAURIG, LLP
Michael B. Fisco
Eric J. Howe
Whitney A. Mark
90 South 7th Street, Suite 3500
Minneapolis, MN 55402
Telephone: 212-450-4725
Email: FiscoM@gtlaw.com
HoweE@gtlaw.com
Whitney.Mark@gtlaw.com

Ad Hoc Group of Cross-Holders

ARENTFOX SCHIFF LLP
Andrew I. Silfen
Beth M. Brownstein
1300 Avenue of the Americas, 42nd Floor
New York, New York 10000
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: andrew.silfen@afslaw.com
Email: beth.brownstein@afslaw.com


WOMBLE BOND DICKINSON (US) LLP
Matthew P. Ward
Ericka F. Johnson
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: matthew.ward@wbd-us.com
Email: ericka.johnson@wbd-us.com

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Eric J. Silver
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-4175
Facsimile: (305) 789-2688
Email: esilver@stearnsweaver.com

Office of the U.S. Trustee
Office of the U.S. Trustee for the District of Delaware
844 King Street, Suite 2207
Wilmington, Delaware, 19801
Attn: John Schanne, Esq. (John.Schanne@usdoj.gov)

RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7815
Email: silberglied@rlf.com
mathews@rlf.com

CYRULNIK FATTARUSO LLP
55 Broadway, Third Floor
New York, NY 10006

Telephone: (917) 353-3005
Email: jcyrulnik@cf-llp.com
pfattaruso@cf-llp.com

KTBS LAW LLP
David M. Stern
Samuel M. Kidder
Nir Maoz
1801 Century Park East, 26th Floor
Los Angeles, CA 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
Email: dstern@ktbslaw.com
skidder@ktbslaw.com
nmaoz@ktbslaw.com

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (DE No. 3569)
**deLeeuw Law LLC**
1301 Walnut Green Road
Wilmington, DE 19807
Phone: (302) 274-2180
Email: brad@deleeuwlaw.com

Glenn F. Ostrager (*admitted pro hac vice*)
Joshua S. Broitman (*admitted pro hac vice*)
**Ostrager Chong Flaherty & Broitman P.C.**
437 Madison Avenue, 24th Floor
New York, NY 10022-7034
Phone: (212) 702-7041
Email: gostrager@ocfblaw.com
         jbroitman@ocfblaw.com