## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMYRIS, INC., *et al.*,[1] | Case No. 23-11131 (TMH) |
| Debtors. | (Jointly Administered) |
| | Related Dkt. No. 892 |

### OBJECTION AND RESERVATION OF RIGHTS OF LEXON INSURANCE COMPANY TO THE DEBTORS' SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF AMYRIS, INC. AND ITS AFFILIATED DEBTORS, AS MODIFIED

Lexon Insurance Company ("Lexon") by and through its undersigned counsel, Harris Beach PLLC and The Powell Firm, LLC, submit this objection ("Objection") to the confirmation of the *Debtors' Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors, as Modified* (the "Plan") [Dkt. No. 892], and in support thereof respectfully states as follows:

### BACKGROUND

1.    On August 9 and August 21, 2023 (as applicable, the "Petition Date"), the Debtors commenced these Chapter 11 Cases[2] by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.    The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    On August 27, 2023, the U.S. Trustee appointed the Committee.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor entity's tax identification number, are: Desolation Holdings LLC (0439); Bittrex, Inc. (0908); Bittrex Malta Holdings Ltd. (2227); and Bittrex Malta Ltd. (1764). The mailing and service address of the Debtors is 701 5th Avenue, Suite 4200, Seattle, WA 98104.
[2] Capitalized terms not defined herein are defined in the Plan.

4.      The Debtors were founded in 2003 to create a more stable supply of key anti-malarial treatment.  Through the Debtors' science, artemisinin is now consistently available to treat malaria. Using the same technological innovations that produced artemisinin, the Debtors have become a leading manufacturer of ingredients made with synthetic biology. The Debtors provide sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products.

5.      In addition, the Debtors operate a family of consumer brands that utilize the Company's ingredients to meet the growing demand for sustainable, effective, and accessible products, including Biossance® (clean beauty skincare), JVNTM (haircare), Rose Inc.TM (clean color cosmetics), Pipette® (clean baby skincare), OLIKATM (clean wellness), MenoLabsTM (healthy living and menopause wellness), StripesTM (menopausal wellness), and 4U by TiaTM (a new clean haircare line).

6.      The Debtors have obtained three (3) continuous customs surety bonds (the "Bonds") from Lexon listing the Department of Homeland Security U.S. Customs and Border Protection (the "Obligee") as Obligee under the Bonds with a total penal sum of $850,000.00.  Copies of the Bonds are attached hereto as **Exhibit A**.

7.      Lexon is also the beneficiary to two (2) Irrevocable Letters of Credit Nos. NUSGS044123 and NUSCGS041862, which serve as collateral for the Bonds in the total sum of $800,000.00 (the "Letters of Credit").  The issuing bank of the Letters of Credit is JP Morgan Chase Bank, N.A.   Copies of the Letters of Credit are attached hereto as **Exhibit B**.

8.      The surety relationship involves three (3) parties: (a) the principal, who is the primary obligor – the Debtors who are located in California under the Bonds; (b) the obligee – the party to whom the principal and surety owe the duty – the Obligee; and (c) the surety – who is the secondary obligator – Lexon.

Error! Unknown document property name.

9.      Notably, the principal retains the primary duty to perform its obligations under the bonds. The principal cannot simply hand over its obligations for the surety to perform.

10.     Based on the above, Lexon timely submitted proofs of claim in the amount of $800,000 (the "Proofs of Claim") representing the penal sum of the Bonds.  Lexon expressly reserved its right to file amended Proofs of Claim while it reviews its books and records to determine if it paid any claims under the Bonds, incurred any loss adjustment expenses, if there were any additional bonds, and if there were any unpaid premiums.  Lexon became aware of a third bond issued to Debtor Clean Beauty Collaborative, Inc. in the amount of $50,000 after it filed the Proofs of Claim

11.     Notably, there have been numerous claims made under the Bonds and Lexon anticipates that additional claims will be made in the future (the "Bond Claims").

12.     Upon information and belief, the Debtors have paid and resolved the Bond Claims, but Lexon is still attempting to confirm the same with the appropriate entities.  In addition, the Bonds have been terminated such that no customs transactions may be charged against the Bonds for transactions **occurring after** the date of termination *(see* Code of Federal Regulations, Title 19, Chapter1, Section 113.27); however, the potential for additional bond claims on the Bonds still exists for transactions that **occurred prior** to termination since the statute of limitations for the Obligee to make a bond claim is six (6) years from accrual. *See* 28 U.S. Code § 2415.

13.     On October 13, 2023, the Debtors filed the Disclosure Statement Motion, *Disclosure Statement with Respect to Joint Chapter 11 plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* ("Original Disclosure Statement") [Dkt. No. 524] and *Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* ("Original Plan") [Dkt. No. 523].

14.     On November 14, 2023, Lexon filed an objection and reservation of rights to the Disclosure Statement Motion [Dkt. No. 728] (the "Lexon Disclosure Statement Objection").

3

15.     Lexon agreed with the Debtors via email, and at the hearing on the Disclosure Statement Motion, to hold the Lexon Disclosure Statement Objection in abeyance until the confirmation hearing.

16.     On December 12, 2023, the Debtors filed the Plan and *Disclosure Statement with Respect to Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors, as Modified* (the "Disclosure Statement")

17.     On December 13, 2023, the Bankruptcy Court entered an *Order (I) Approving the Disclosure Statement; (II) Scheduling Confirmation Hearing; (III) Approving Form and Manner of Notice of Confirmation Hearing; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (A) Approving Form and Content of Solicitation Materials; (B) Establishing Record Date and Approving Procedures for Distribution of Solicitation Materials; (C) Approving Forms of Ballots; (D) Establishing Voting Deadline for Receipt of Ballots and (E) Approving Procedures for Vote Tabulations; (V) Approving Form and Manner of Notice of Plan Releases; (IV) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plan; and (VII) Granting Related Relief* (the "Disclosure Statement Order") [Dkt. No. 897].

18.     On January 9, 2024, the Debtors filed the *Notice of Filing Plan Supplement for the Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors, as Modified* (the "Plan Supplement").

19.     The Plan is a plan of reorganization which is intended to, among other things, (a) preserve the Debtors' Technology Access businesses (comprising revenue from ingredient product sales, R&D collaboration programs, and technology licensing) as a going concern, (b) implement a partial debt-to-equity conversion that will result in the DIP Lender and the Foris Prepetition Lenders holding the new Interests of the reorganized company, (c) distribute in tranches to various Classes of creditors the proceeds of the sale of the Debtors' Consumer Brands Businesses, made available by the DIP Lender

Error! Unknown document property name.

and the Foris Prepetition Lenders and (d) establish, in connection with the releases provided for in the Plan, an Excluded Party Litigation Trust for the benefit of holders of Direct Claims and Reorganized Amyris, to hold and distribute certain funding and the proceeds from the Direct Claim Recovery Pool.

20.    The Plan Supplement references: (a) a "Waiver of Suretyship Defenses" under Section 7 of the Amended and Restated Pledge Agreement, (b)"suretyship claims" in Section 11.8 of the Second Amended and Restated Loan and Security Agreement, (c) includes "surety bonds and letters of credit" in the definition of "Indebtedness" under the Second Amended and Restated Loan and Security Agreement, and (d) includeds deposits to secure "surety or appeal bonds, or to secure indemnity, performance or similar bonds" in the definition of "Permitted Liens" under the Second Amended and Restated Loan and Security Agreement.

21.    Notably, nowhere in the Plan is there any reference to Lexon or the Bonds, nor are there any other references to Lexon or the Bonds in the Plan Supplement other than those instances referenced above.

22.    Debtors' counsel provided Lexon an extension to file an objection to confirmation of the Plan to January 19, 2024 at 5:00 p.m. (ET).

## ARGUMENT

### POINT I

### TREATMENT OF THE LEXON BONDS AND LETTERS OF CREDIT

23.    Lexon opposes confirmation of the Plan because it is not clear how the Bonds, Bond Claims and Letters of Credit are to be treated.  That being said, Lexon is in discussions with Debtors' counsel to include language in the Confirmation Order to address Lexon's concerns.  Lexon is submitting this Objection in the event Lexon and the Debtors cannot come to a resolution.

Error! Unknown document property name.

24.    In this case, the Plan does not reference how the Bonds, Bond Claims and Letters of Credit are to be treated.  As referenced above, Lexon has already received various Bond Claims and anticipates that more claims will be filed under the Bonds.  The Plan fails to address the Debtors' intent regarding the Bond Claims or future Bond Claims as the statute of limitations to make a claim by the Obligee is six (6) years. *See* 28 U.S. Code § 2415.

25.    While the Debtors assert the Bond Claims have been paid, Lexon is still working to confirm the same.  To the extent Lexon is forced to make payment or there are future Bond Claims made under the Bonds for past transactions, the Debtors must indemnify Lexon for any payments made on the Bond Claims and losses incurred in defending against the Bond Claims under common law indemnity and implied indemnity.  *See Liberty Mut. Ins. Co. v. Milender White Constr. Co.*, 2017 U.S. Dist. LEXIS 2045479 (D. Ct. Colorado, Dec. 13, 2017 ("The surety's right to indemnity is well established at common law") (citing *Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F. Supp. 2d 1290, 1303 (S.D. Fla. 2008); Cal. Civ. Code § 2847 (titled "A principal bound to reimburse his surety"); Cal. Code Civ. Proc. § 1021.6 (titled "Attorney fees involving claim to implied indemnity).

26.    Additionally, Lexon may draw on the proceeds of the Letters of Credit in order to pay: (a) the Bond Claims that have been made, (b) losses incurred in relation to the Bond Claims, and (c) any Bond Claims that will be made under the Bonds in the future based, *inter alia*, on common law indemnity and because "[i]t is well established that a letter of credit and the proceeds therefrom are not property of the debtor's estate under 11 U.S.C. § 541." *S-Tran Holdings, Inc. v. Protective Ins. Co. (In re S-Tran Holdings, Inc.)*, 414 B.R. 28, 33-34 (Bankr. D. 2009) (quoting *Kellog v. Blue Quail Energy, Inc. (Matter of Compton Corp.)*, 831 F.2d 586, 589 (5th Cir. 1987) ("When the issuer honors a proper draft under a letter of credit, it does so from its own assets and not from the assets of its customer who caused the letter of credit to be issued.  As a result, the bankruptcy trustee is not entitled to enjoin a post

Error! Unknown document property name.

petition payment of funds under a letter of credit from the issuer to the beneficiary, because such a payment is not a transfer of debtor's property.")).

27.     The Plan is unclear whether the Debtors intend to cancel, terminate and/or not renew the Letters of Credit.  Given the six (6) year statute of limitations for the Obligee to make Bond Claims and Lexon's common law rights of indemnity, it is imperative that the Debtors and/or Reorganized Debtors maintain the existing collateral for the Bonds – the Letters of Credit – until the limitations period expires.  Alternatively, Lexon may have to draw on the Letters of Credit today in order protect Lexon from future Bond Claims based on the six (6) year statute of limitations, and hold that money in escrow for the limitations period to pay any losses associated with future Bond Claims, after which any surplus funds will be returned to the Debtors.

28.     Accordingly, the Plan cannot be confirmed because it fails to address how the Bonds, Bond Claims and Letters of Credit are to be treated under the Plan.

**POINT II**

**THE PLAN POTENTIALLY CLONTAINS IMPERMISSIBLE THIRD-PARTY RELEASES**

29.     The releases, third-party releases and injunctions found in Article IX of the Plan are impermissibly overly broad and cannot be approved.

30.     The "hallmarks of permissible non-consensual releases" include "fairness, necessity to the reorganization, and specific factual findings to support these conclusions." However, "even if the threshold *Continental* criteria of fairness and necessity for approval of non-consensual third-party releases were marginally satisfied," "the broader context of the *Continental* discussion" provides that such releases should be approved only "in the context of extraordinary cases" such as mass tort litigation cases. *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 608 (Bankr. D. Del. 2001), *appeal dismissed*, 280 B.R. 339 (D. Del. 2002) (citing *In re Continental Airlines*, 203 F.3d 203, 214-17 (3d Cir. 2000)).

Error! Unknown document property name.

31. The Released Parties, as defined in the Plan, include:

> (a)the Debtors; (b) the Reorganized Debtors; (c) the DIP Lenders and the DIP Agent; (d) the Foris Prepetition Secured Lenders; (e) the Creditors' Committee; (f) the Consenting Convertible Noteholders, (g) the Ad Hoc Group Professionals; (h) the Consenting Contract Counterparties; and (i) with respect to each of the foregoing Entities in clauses (a) through (e), all Related parties.   For the avoidance of doubt, (i) the Debtors' current and former directors, managers, officers, employees, professionals, and shareholders, in each case, who are not an Excluded Party, shall each be a Released Party; and (ii) no Excluded Party shall be a Released Party.

*See* Plan, Article I(A)(174).

32. The Releasing Parties, as defined in the Plan include:

> (a)the Foris Prepetition Secured Lenders; (b) the Creditors' Committee; (c) the Consenting Convertible Noteholders; (d) the Consenting Contract Counterparties; (e) all Holders of Claims against the Debtors that are bound by the Third-Party Release Settlement; and (f) all persons who hold interest in Amyris that are boudn by the Third-Party Release Settlement.

*See Id.,* (175).

33.     In addition, the Plan includes an impermissibly overbroad exculpation clause, and/or one not appropriate in this case.

34.     Section 524(e) of the Bankruptcy Code limits the effect of a debtor's discharge: "discharge of a debt of the debtor does not affect the liability of any entity on, or the property of any other entity for, such debt."

35.     The releases included in the Plan attempt to discharge the liabilities of other non-debtor entities in violation of Section 524(e).  As a result, the Plan does not comply with the requirements of 11 U.S.C. §1129(a)(2) and cannot be confirmed.

36.     The proposed releases in Article IX of the Plan do not seem to differentiate between the liabilities of the Debtors resulting from the obligations to pay taxes, fees and other charges to the United

Error! Unknown document property name.

States Department of Homeland Security, U.S. Customs and Border Protection, from the wide-sweeping

releases being given to virtually anyone who has had anything to do with this case.

37.     In addition, Articles IX(F) and (G) of the Plan provide for injunctions against actions as

to third-parties that creditors do not appear to have an ability to challenge or opt-out of such relief being

granted.

38.     By this Objection, Lexon is advising that, in the absence of an agreement with the

Debtors, it does not intend to release any potential indemnitors, including the Debtors, or third-parties,

as they should not be afforded the benefit of a discharge injunction.

39.     Accordingly, the proposed Plan cannot be confirmed.

40.     To resolve Lexon's concerns with the Plan, Lexon proposes the following language be

included in the Confirmation Order:

> **Surety Bond Obligations.**  Notwithstanding any other provisions of the Plan, this Order,
> or any other order of this Bankruptcy Court, on the Effective Date, all rights and
> obligations   related to the (i) Debtors surety bonds issued by Lexon Insurance Company
> ("Lexon" or "Surety")  ; (ii) surety payment and indemnity agreements, setting forth the
> Surety's rights against the Debtors, and the Debtors' obligations to pay and indemnify the
> Surety from any loss, cost, or expense that the Surety may incur, in each case, on account
> of the issuance of any surety bonds on behalf of the Debtors; (iii) surety collateral
> agreements governing collateral, including but not limited to letters of credit, if any (the
> "Collateral"), in connection with the Debtors' surety bonds; and/or (iv) ordinary course
> premium payments to the Surety for the Debtors' surety bonds (collectively, the "Surety
> Bond Program," and the Debtors' obligations arising therefrom, the "Surety Bond
> Obligations") are not discharged, enjoined or released by the Plan in any way, including
> any rights pursuant to common law afforded to the Surety, which include but is not
> limited to, indemnification, exoneration and contribution.  In addition, the Debtors shall
> maintain the existing Collateral on this account until the Lexon bonds are released by the
> obligee. Nothing in the Plan or this Order impairs the rights of the Surety vis-à-vis, its
> non-property of the estate Collateral, and the Surety's right to draw on the Collateral.  For
> the avoidance of doubt, nothing in the Plan, this Order or other agreements between the
> Debtors and third parties, including, without limitation, any exculpation, release,
> injunction, exclusions and discharge provision of the Plan, including, without limitation,
> any of those provisions contained in Section IX of the Plan, shall bar, alter, limit, impair,
> release or modify or enjoin any Surety Bond Obligations.   The Surety is deemed to have
> opted out of any release, exculpation, injunction provisions of the Plan that apply or
> could be interpreted to apply to the Surety, its rights or claims in any respect, and are

Error! Unknown document property name.

otherwise not Releasing Parties under the Plan.  Nothing in the foregoing shall be deemed to alter, limit, modify or expand any such Surety Bond Obligations.  Nothing in the Plan or this paragraph shall affect in any way the Surety's rights against any non-debtor, or any non-debtor's rights against the Surety, including under the Surety Bond Program or with regard to the Surety Bond Obligations.

## JOINDER

41.     Lexon hereby joins, adopts and relies upon the arguments and the objections made in the *Limited Objection of the U.S. Securities and Exchange Commission to Confirmation of the Debtors' Second Amended Joint Plan of Reorganization* [Dkt. No. 1150] and the *Objection of the United States Trustee to Confirmation of Second Amended Joint Chapter 11 Plan of Reorganization* [Dkt. No. 1154] to the extent they do not conflict with the factual assertions arguments set forth in the instant Objection.

## RESERVATION OF RIGHTS

42.     Nothing herein shall be considered a waiver of any rights or claims that Lexon might have against the Debtors and any indemnitors. Lexon reserves the right to amend and supplement this Objection and/or join in any other statements and/or objections related to the relief requested by the Debtors.  The submission of this Objection by Lexon is not intended as, and shall not be construed as:

a.     Lexon's admission of any liability or waiver of any defenses or limitations of any rights of Lexon with respect to any claims against one or more of the Bonds;

b.     Lexon's waiver or release of any rights to exoneration it may have against any one with respect to its obligations pursuant to the Bonds;

c.     Lexon's waiver or release of its right to be subrogated to the rights of one or more parties paid pursuant to the Bonds;

d.     An election of remedies; or

Error! Unknown document property name.

e.    Consent to the determination of Debtors' liability to Lexon by a particular Court, including, without limitations, the Bankruptcy Court.

## **CONCLUSION**

Based on the foregoing, Lexon respectfully requests the Court sustain the Objection and deny confirmation of the Plan.

Dated: January 19, 2024                                  Respectfully submitted,

*/s/ Jason C. Powell*
Jason C. Powell, Esq. (No. 3768)
THE POWELL FIRM, LLC
1813 N. Franklin Street
P.O. Box 289
Wilmington, DE 19899
(302) 650-1572
jpowell@delawarefirm.com

-and-

*/s/ Brian D. Roy*
Lee E. Woodard, Esq.
Brian D. Roy, Esq.
HARRIS BEACH PLLC
333 W. Washington Street, Suite 200
Syracuse, New York 13202
Telephone: (315) 423-7100
Email:  bkemail@harrisbeach.com
          broy@harrisbeach.com

11