# **<u>APPENDIX I</u>**

*Millennium Lab Holdings II*, Hr'g Tr., dated December 15, 2015 [Case No. 15-12284-LSS]

1    findings to support the conclusions.

2          Since 2000, this Court and others within this

3    jurisdiction have approved plans containing third-party

4    releases, when appropriate, under the <u>Continental</u> hallmarks.

5    Voya has cited no cases within this jurisdiction which have

6    found, as a matter of law, that third-party releases are, per

7    se, impermissible.  I will not reach out to other circuits to

8    adopt such a position.

9          In analyzing whether the <u>Continental</u> hallmarks are

10   satisfied, some courts within this circuit considered the

11   factors announced by the <u>Master Mortgage</u> Court, discussed in

12   <u>Continental</u> and adopted by <u>Zenith</u>, with respect to debtor

13   releases.  These factors are:

14         An identity of interest between the debtor and the

15   third party, such that a suit against the debtor is, in

16   essence, a suit against the -- a suit against the non-debtor

17   is, in essence, a suit against the debtor, or will deplete

18   assets of the estate.

19         Substantial contribution by the non-debtor of assets

20   to the reorganization.

21         The essential nature of the injunction to the

22   reorganization, to the extent that, without the injunction,

23   there is little likelihood of success.

24         An agreement by a substantial majority of creditors to

25   support the injunction; specifically, if the impacted class or

1    classes overwhelmingly votes to accept the plan.

2         And a provision in the plan for payment of all or

3    substantially all of the claims of the classes -- class or

4    classes affected by the injunction.

5         Looking at the factors in order, first I find that

6    there is an identity of interest between the debtors and the

7    third parties, including those in the Voya complaint, because

8    of the indemnifications and advancement obligations discussed

9    above.  Any litigation claims brought against the released

10   parties will result in claims being brought for indemnification

11   and advancements, or certainly conceivably could.  While such

12   claims will not reduce the recoveries of those creditors

13   receiving 100 cents on the dollar, such claims will reduce

14   recoveries for Class 2, the prepetition lenders, because they

15   take equity.

16        Further, I find that the released parties, including

17   TA, MLH, the U.S.A. settlement parties, the participating

18   lenders, and the D's and O's, all share a common goal of

19   confirming and implementing the plan, which contains settlement

20   of contested and costly litigation.  These goals include:

21   Right-sizing the reorganized debtors' balance sheet, avoiding

22   complex litigation costs and delay, maximizing the debtors'

23   value for all concerned.

24        This finding supports the conclusion that there is an

25   identity of interests between the debtors and the released

1    parties.  And I would cite Tribune, 464, at 187; and Quorum

2    (phonetic), 315, at 335.

3         As to the second factor, I find that there is a

4    substantial contribution by the non-debtor parties of assets to

5    the reorganization.

6         First, as to TA and MLH, if this plan is confirmed, TA

7    will contribute 146 and a quarter million dollars to the

8    debtors.  MLH will contribute 178 and three-quarters million

9    dollars to the debtors.  There is an indication that each of

10   the shareholders in MLH, James Slattery, Howard Appel, David

11   Cohen, Greg Stein, Sunshine Alexis Stein, Marvin Retsky, and

12   Murray Rosenthal, are paying their proportionate contribution

13   of this amount.  Each of TA and MLH are relinquishing their

14   equity interest in the debtors consensually.  Each of TA and

15   MLH are releasing claims against the debtors.

16        As to TA and MLH, I find that this contribution is

17   substantial and real.  I also find, on the facts of this case,

18   that the contribution made by TA and MLH and each individual

19   shareholder, which settles claims against them, based on the

20   2014 recapitalization transaction, is made on behalf of

21   themselves and their "related parties," as that term is used in

22   the plan.  Each of these corporate families must be protected,

23   in order for TA and MLH to buy peace in this litigation.

24        As to the prepetition lenders, they have made

25   substantial contributions by relinquishing their existing

1    credit agreement claims and other potential claims against the

2    related parties, entering into the restructuring support

3    agreement, and voting in favor of the plan.  Because of this

4    workout, other creditors are receiving 100 cents on the dollar.

5    As the liquidation analysis attached to the disclosure

6    statement indicates, in a liquidating plan, the unsecured

7    creditors receive no distribution.  Thus, I find this

8    contribution to be substantial on the facts of this case.

9        As to the directors and officers, this is a closer

10   call.  Mr. Hardaway testified in his declaration that the

11   directors and officer made, quote:

12       "-- unique and substantial commitments of time and

13       effort to bring this global settlement before the

14       Court for confirmation."

15       Mr. Hardaway also testified in his declaration, that,

16   quote:

17       "Debtors' management will continue to work in their

18       present roles for the reorganized debtors, and as

19       such, make indispensable contributions to the

20       successful reorganization of debtors."

21       On the one hand, some of my colleagues have ruled on

22   numerous occasions that sweat equity is not sufficient

23   consideration for a release.  On the other hand, there are

24   cases cited by the debtors for the proposition that continued

25   service is a substantial asset to the reorganization.

1      I am not rejecting the argument that sweat equity

2  alone may not be sufficient to constitute a substantial

3  contribution in a given case.  But in this case, where the

4  record is unrebutted that the efforts of management

5  successfully resulted in a viable plan that garnered support

6  from all parties other than Voya, and results in 100 percent

7  payment to all creditors other than the prepetition lenders;

8  and that management, in the prepetition lenders' view, is

9  critical to unlocking the reorganized debtors' total enterprise

10  value, I find that the directors and officers have made a

11  substantial contribution.

12      The third factor is the essential nature of the

13  releases and injunctions to the reorganization to the extent

14  that, without the releases and/or injunction, there is little

15  likelihood of success.

16      While there was some debate about whether this factor

17  requires that the releases are a prerequisite to obtaining the

18  funding for the plan, or whether the releases themselves are a

19  necessary component of the plan, I find this factor is

20  satisfied, regardless of the interpretation.

21      Here, the unrefuted evidence is that that third-party

22  releases, all of them, even those who may not have made a

23  substantial contribution to the reorganization in the classic

24  sense, was required to obtain the funding for this plan.

25      The declarations of Mr. Kurtz and Mr. Aloise were

1   clear, and there may have been others supporting this, as well.

2   And I will quote from Mr. Kurtz's declaration at Paragraph 14:

3   "The third-party releases and related provisions in

4   the RSA and plan, disputed by Voya, were heavily

5   negotiated among the debtors, the equity holders, and

6   the ad hoc group.  The releases in particular were

7   specifically demanded by the equity holders as a

8   condition to making the contribution reflected in the

9   plan, and demanded by the other released parties, in

10   exchange for their contributions to and support for

11   the plan and reorganization.

12   "I believe" -- that's Mr. Kurtz -- "the releases and

13   related provisions were necessary to induce the equity

14   holders to make the three-hundred-and-twenty-five-

15   million-dollar settlement contribution that serves as

16   a critical element of the reorganization plan.

17   Moreover the equity holder settlement contribution was

18   necessary to induce the ad hoc group's support of the

19   RSA and the plan.

20   "I believe that, based on my personal involvement in

21   the negotiations with the various parties-in-interest,

22   without the third-party releases provided by the

23   prepetition lenders, as set forth in the plan" -- no,

24   that's -- "without the third-party releases, there

25   will be no cash contribution available to fund the

1          government settlements. Further, absent consummating

2          the U.S.A. settlement in accordance with the terms of

3          the plan, the company will liquidate and all going

4          concern value will be lost."

5      Thus, it is clear that the releases are necessary to

6   both obtaining the funding and consummating a plan.  In these

7   cases, the funding does not merely enhance creditor recoveries;

8   it is necessary for the debtor to confirm the plan.

9      The fourth factor.  The fourth factor is whether the

10  substantial majority of creditors support the releases, and

11  whether, in particular, the impacted class overwhelmingly votes

12  to accept the plan.

13      This factor is easily satisfied as to Class 2,

14  existing credit agreement claims.  As evidenced by the

15  declaration of James Daloia of Prime Clerk, LLC, the tabulator

16  of votes on the plan, Class 2 accepted its treatment under the

17  plan by 93.02 percent in number and 93.74 percent in amount.

18      The fifth factor.  The fifth factor is whether the

19  plan provides for the payment of all or substantially all of

20  the claims of Class 2.  As interpreted by Judge Carey in

21  Tribune, the standard is whether the nonconsenting creditors

22  receive reasonable compensation in exchange for the release.

23      The evidence is that Class 2 will receive a six-

24  hundred-million-dollar new term loan, all of the equity

25  interest in the reorganization, and recoveries under the two

1    trusts that are formed under the plan, as well as perhaps suit

2    against excluded parties.

3         Mr. Kurtz has estimated the total enterprise value of

4    the reorganized debtors is in excess of $900 million, on a

5    going concern, pro forma, reorganized basis.  His valuation

6    assumes that the plan is confirmed and goes effective by

7    December 31st.  His valuation also assumes that present senior

8    management will continue in their current positions.  There was

9    no challenge to this valuation.

10        I find the value to be received by Class 2 creditors

11   to be reasonable compensation for this release, as did over 90

12   percent of the prepetition lenders.  In particular, in the

13   event of a liquidation of the debtors, and as reflected in the

14   disclosure statement and unchallenged by any party, the

15   prepetition lenders would receive between one percent and five

16   percent, and general unsecured creditors would receive nothing

17   in a liquidation.  Therefore, I find the fifth factor is

18   satisfied.

19        Having walked through the factors, which courts

20   examine, I return to the Continental hallmarks of appropriate

21   third-party releases and injunctions:  Fairness and necessity

22   to the reorganization.  Taking into consideration the facts of

23   this case, I find the releases and injunctions to all parties

24   to be fair and necessary to the reorganization.

25        To only summarize, but not replace the above findings

1    and rulings, I find significant to my decision that:

2         One, the contributions made by MLH and TA are

3    absolutely essential to the reorganization of this debtor.

4    Without the contributions, there is no reorganization.  While

5    Voya would have me speculate as to other options, I do not see

6    one.  CMS will revoke the debtors' license, and there will be

7    no ongoing business if payment is not made to the U.S.A.

8    settlement parties by December 30th.

9         Two, there is an enormous disparity between the

10   reorganization value and the liquidation value of this company.

11   So the contributions facilitate distributions to creditors --

12   not only facilitate distribution to creditors, including those

13   in Class 2, but those -- again, those distributions are

14   enormously greater in a reorganization, versus a liquidation.

15        The prepetition lenders are subordinating their claims

16   to permit unsecureds to receive a 100 percent recovery.

17   Without this settlement, this case turns into litigation.

18   Inherent in that litigation is the uncertainty of success,

19   expenses and delay in obtaining recoveries.  Over 90 percent of

20   the creditors prefer recoveries from an ongoing business.

21        All parties were at the table in the negotiation in

22   this settlement contained in a plan.  This is not a situation

23   of entrenched management forcing recoveries upon unwilling

24   creditors, and seeking a release in connection with that.

25        There was no objection to the settlement, even by

1    the third party releases.  Are we to alter any of the

2    parties that are included in the third party releases?

3                THE COURT:  No.

4                MR. HALL:  Thank you, Your Honor.  Appreciate it.

5                THE COURT:  Okay.  Is there anything else for

6    today?

7                MS. GOOD:  No, Your Honor, nothing else for today.

8    Thank you for your ruling.  We will incorporate those

9    changes, file the further amended plan and the confirmation

10   order under certification of counsel and have that

11   (indiscernible)...

12               THE COURT:  Okay, thank you.  I appreciate the

13   extremely well-briefed and argued issues that were before me

14   today.  It's great.  Very helpful to the Court.  So, I

15   appreciate it all.  And with that, I wish everybody a good

16   day and we are adjourned.

17               MS. GOOD:  Thank you, Your Honor.

18               MR. HALL:  Thank you, Your Honor.

19

20                         * * * * *

21

22

23

24

25

*In re TK Holdings Inc*., Hr'g Tr., dated February 16, 2018 [Case No. 17-11375-BLS]

1   is an extraordinary case.

2         And so when I look at the five factors, again, I

3   will address them in summary form, and I note and rely upon

4   the evidence that was submitted, particularly, Mr. Bowling's

5   declaration laying out the factors. But, nevertheless, for

6   purposes of completeness of the record, courts have

7   considered whether is there an identity of interest.

8         The Court has spent a great deal of time over the

9   past six or seven months, dealing with these proceedings and

10  identifying matters where there are indemnification

11  obligations that are running in every possible direction; in

12  addition, many, if not all of the release parties, including

13  officer and directors of the debtor entities, are parties

14  that would have meaningful indemnification rights.

15        So, the fact of the matter is, as the Court noted

16  in the injunction litigation, litigation against the debtor

17  is often litigation against multiple parties. And litigation

18  against the OEMs or other parties is effectively litigation

19  against the debtors. I am satisfied that the identity of

20  interest prong has been satisfied.

21        Second, the question of substantial contribution.

22  Again, I don't think there is any meaningful dispute that

23  there is, in fact, substantial contribution being provided by

24  each of the parties. The OEMs have provided for the

25  restitution of substantial claims in support of the debtors

*In re Tritek International, Inc. et al*., Hr'g Tr., dated October 5, 2023 [Case No. 23-10520-TMH]

1       THE COURT:  Okay.  I want to take a few moments to

2 gather my notes and why don't we come back on the record at

3 1:15, unless the parties would like a longer break to go to

4 lunch or anything of that sort.

5       MR. HALL:  From our perspective, Your Honor, we

6 defer the Court.

7       THE COURT:  Yeah, okay.  Well, let's push it

8 through then.  We'll recess until 1:15.

9       (Recess)

10       THE COURT:  Okay, I'm prepared to rule on the

11 plan.  I want to start by noting that I appreciate the work

12 of the parties and the cooperation that went into it to

13 narrow the issues and come to resolutions on many important

14 issues.  And I note that when the plan was solicited, the

15 committee had a statement that said that they urged the

16 creditors to vote against the plan.  And I think it's really

17 significant that the committee is here today supporting the

18 plan.  And through the work of the parties, the projected

19 recovers to unsecured creditors have increased meaningfully.

20 The projections have increased meaningfully.  So, I

21 appreciate that.

22       I'm going to grant final approval of the

23 disclosure statement, and I am going to confirm the fourth-

24 amended plan.  The opt out versus opt in issue and the

25 question of what constitutes consent are questions that, as

1    we know, are not uncontroversial.  But, in my view, if a

2    party receives notice of proposed releases and doesn't

3    object, that party has consented to the releases.  As in

4    many other respects, when it comes to bankruptcy, parties

5    are required to be vigilant and defend their rights, and

6    such is the case here.  In this case, I find that the opt

7    out, it was conspicuous and some creditors did opt out,

8    which evidences to me that the procedures were effective.

9            The UST raises a number of concerns that I take

10   very seriously and I'm grateful for the outstanding argument

11   from the UST and appreciate the positions that the office

12   takes.  The UST raises concerns about the possibility of

13   mail errors preventing parties from receiving notice.  But I

14   note that the federal rules of bankruptcy procedure and

15   civil procedure call for mail notice, and there is a

16   rebuttal presumption of receipt when a piece of mail is sent

17   to an addressee.  And I think it's the system that we have

18   and it's the one that we have to live with.

19           As for unimpaired creditors, the evidence before

20   me shows that they received notice identifying the release

21   provisions of the plan, directing them on how to receive

22   copies of the full plan if they wished, free of cost, and

23   identified procedures for objecting to being a releasing

24   party.  And I find this to be adequate and also find that

25   any unimpaired creditor who received such notice and did not

1    object has consented to the release that they are granting.

2              I find the scope of the third party releases to

3    generally be appropriate but I raise an issue about third

4    party releases only extending to unknown claims, and I

5    believe it should extend to known claims as well.

6              Also, to the extent there are parties receiving

7    releases that are, in effect, illusory because they already

8    benefit from exculpation, or in the case of a liquidating

9    trustee, there can be no pre-effective date claims to

10   release, the drafting may be overzealous.  And I won't fault

11   anybody for that, but there is no harm.

12             So, on those grounds, I am confirming the plan.

13   There is the one revision I identified and I think there may

14   be others coming, but I would ask the parties to submit the

15   -- well, to file a further amended plan if that's what we're

16   doing and also to submit the proposed form of order as

17   revised under certification of counsel so that it appears on

18   the docket.  And I have had a chance to review it and I will

19   enter the order.  But, again, I do want to emphasize my

20   appreciation to the Office of the United States Trustee for

21   their argument.  It is a very important issue and one that I

22   take very, very seriously.  And I think it's my first time

23   ruling on the issue.

24             MR. HALL:  Your Honor, if I may, just to make sure

25   I understand?  We will add known in addition to unknown in

1   the third party releases.  Are we to alter any of the

2   parties that are included in the third party releases?

3                THE COURT:  No.

4                MR. HALL:  Thank you, Your Honor.  Appreciate it.

5                THE COURT:  Okay.  Is there anything else for

6   today?

7                MS. GOOD:  No, Your Honor, nothing else for today.

8   Thank you for your ruling.  We will incorporate those

9   changes, file the further amended plan and the confirmation

10  order under certification of counsel and have that

11  (indiscernible)...

12               THE COURT:  Okay, thank you.  I appreciate the

13  extremely well-briefed and argued issues that were before me

14  today.  It's great.  Very helpful to the Court.  So, I

15  appreciate it all.  And with that, I wish everybody a good

16  day and we are adjourned.

17               MS. GOOD:  Thank you, Your Honor.

18               MR. HALL:  Thank you, Your Honor.

19

20                        * * * * *

21

22

23

24

25