# EXHIBIT A

**Objections Summary Chart**

# EXHIBIT A

In re: AMYRIS, INC., et al.
Objections Summary Chart

| Parties (in Alphabetical Order) | Objections/Comments | Debtors' Responses |
|---|---|---|
| 10-11 Clerkenwell Green Limited | Objection to Confirmation of Second Amended Joint Chapter 11 Plan of Reorganization [D.I. 1156]:<br><br>Clerkenwell alleges it is a $2.9 million administrative creditor of Amyris pursuant to a prepetition guaranty of Amyris (the "Guaranty") of that certain lease entitled Counterpart Lease Related to Uniform Works 10-11 Clerkenwell Green, London, EC1R ODP, dated February 15, 2022 (the "Lease") between Clerkenwell and MG Empower Limited ("Tenant"), a non-debtor entity unaffiliated with the Debtors.<br><br>(1) The Plan allegedly is not feasible because Clerkenwell cannot determine how creditors will be paid and from what funds.<br><br>(2) The Plan allegedly does not comply with section 1129(a)(9)(A) because it asserts that there are insufficient funds to pay Allowed Administrative Claims in full, and as a result, the Plan unfairly discriminates against certain administrative claimants who might not get paid in full while others (specifically, case professionals) may get paid in full.<br><br>(3) The Plan allegedly contains impermissible non-debtor third party releases.<br><br>(4) The Plan allegedly effectuates impermissible substantive consolidation. | The Debtors dispute the validity of any alleged Administrative Claim asserted by Clerkenwell because lease guaranty claims are prepetition general unsecured claims, and even if the debt is deemed to have accrued post-petition, the Debtors' estates received no benefit from the Guaranty. As Debtor Amyris has neither occupied the leased premises nor received a benefit from the Lease between Clerkenwell and Tenant, Clerkenwell would not be entitled to an administrative claim. Either Clerkenwell has a $2.9 million Administrative Claim which will be paid in full if its claim is Allowed or Clerkenwell has a Class 8 General Unsecured Claim which will be handled by the Creditor Trust. Under no scenario does Clerkenwell have any interest in the post-Effective Date Reorganized Debtor. Taken as a whole and in context, Clerkenwell's objections are an attempt to extort immediate payment of a contrived and legally unsupportable Administrative Claim.<br><br>(1) & (2), the Plan is feasible and adequately describes the sources of funds to be utilized to pay Administrative Claims and the Allowed Claims of the various Classes of creditors contained in the Plan. The Plan's feasibility is fully addressed in the Fleming Declaration. The required Effective Date payments are adequately funded from either the Foris Secured Parties or the $160 million Exit Facility. Pursuant to the Plan, Administrative Claims will either be paid on the Effective Date if their Claims are Allowed on that date or within 30 days of allowance by the Court or by agreement. The Creditor Trust will be funded with the Creditor Trust Assets on the Effective Date. Either direct funding by Foris or the Exit Facility will be used to fund these payments on the Effective Date, including the funding of the Creditor Trust. The Plan is feasible.<br><br>(3) The propriety of the Third-Party Releases and Plan injunctions is fully addressed in the Debtors' responses herein to the SEC/UST Objections to the Third-Party Releases and in the Omnibus Reply. The Plan injunctions are appropriate and permissible as they implement the release and exculpation provisions of the Plan. The Plan injunction provisions are key terms of the Plan |

| **Parties (in Alphabetical Order)** | **Objections/Comments** | **Debtors' Responses** |
|---|---|---|
| | (5) The Plan fails to identify post-effective date officers and directors of the Reorganized Debtors.<br>(6) The Plan provides that non-deliverable Class 8 distributions will be returned to the Reorganized Debtors rather than the Creditor Trust.<br><br>(7) The treatment of the DIP Claims and the Foris Prepetition Claims is confusing.<br><br>(8) No exact Distribution Record Date or Distribution Date is established so that creditors will know when they will be paid. | in that they provide a mechanism to enforce the terms of the Plan and to prevent third parties from commencing litigation against the protected parties by launching a collateral attack on the Plan in another forum. To the extent the Court finds that the Plan's release and exculpation provisions are appropriate, the Court should approve the Plan injunction provisions that merely implement those terms.<br><br>(4) The Debtors are not attempting to effectuate an impermissible substantive consolidation of the Debtors. The Plan, at Art. III.A expressly provides: "The Plan constitutes a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors, except as expressly set forth herein." Section IV.C of the Plan expressly states that the administrative consolidation is for voting and distribution purposes only to facilitate the Creditor Trust distributions to Class 8 General Unsecured Claims. The Liquidation Analysis, with its Debtor-by-Debtor review of the assets and liabilities of each Debtor, clearly show that no Debtor has any assets in excess of the obligations owed to the DIP Lenders and Foris Prepetition Lenders. The distributions being provided to general unsecured creditors through the Creditor Trust pursuant to the global settlement encompassed in the Plan benefits all holders of General Unsecured Claims equally and is in the best interests of all unsecured creditors.<br><br>(5) As set forth in the amended Plan Supplement, the Debtors have identified all officers and directors of the Reorganized Debtors.<br><br>(6) The Debtors have modified the Plan to provide that any non-deliverable Class 8 distributions (other than on account of the Third-Party Release Settlement Consideration) will be returned to the Creditor Trust.<br><br>(7) The plan treatment of the DIP Claims and the Foris Prepetition Claims is not confusing. The only parties impacted by this Plan provision – DIP Lenders and Foris Prepetition Lenders –are provided flexibility with respect to which debt to leave in place, waiver or convert. Clerkenwell is not affected or prejudiced by this provision. Clerkenwell will be paid in full if it has an Allowed Administrative Claim or paid through the Creditor Trust if it has an Allowed Class 8 General Unsecured Claim. |

| Parties (in Alphabetical Order) | Objections/Comments | Debtors' Responses |
|---|---|---|
| | | (8) The Distribution Record Date will be the Solicitation Record Date (as opposed to the Confirmation Date) as set out in the DS Approval Order [Dkt No. 897], or such other date as selected by the Debtors.<br><br>(Omnibus Reply, pp. 34-42) |
| Disruptional Ltd. and Vest Beauty Labs LP | Response and Reservation of Rights of Disruptional Ltd. and Vest Beauty Labs LP Regarding Debtors' Second Amended Joint Chapter 11 Plan of Reorganization [D.I. 1155]:<br>The response filed by Disruptional relates to the asserted need for a reserve with respect to its asserted general unsecured claim. | This is an issue that will be addressed by the Creditors' Committee and, in any case, is not relevant for purposes of Plan confirmation. |
| Givaudan | Objection and Reservation of Rights of Lexon Insurance Company to Debtors' Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors, as Modified [D.I. 1157]:<br><br>Givaudan asserts that (1) the Third-Party Releases are impermissible, (2) the Plan should contain a condition precedent to the Effective Date that the Amended Givaudan Escrow Agreement is effective, (3) the Confirmation Order should include a provision that states that the Givaudan Contracts are entitled to the protections of section 365(n) of the Bankruptcy Code, and (4) the Debtors cannot assume inbound intellectual property licenses from Givaudan without Givaudan's consent. | (1) The propriety of the Third-Party Releases is discussed herein in response to the SEC Objections to the Third-Party Releases.<br><br>(2) The Debtors have complied with all aspects of the Stipulation Resolving Motion of DSM-Firmenich to Compel Debtors' Compliance With Section 365(n)(4) of the Bankruptcy Code [Dkt. No. 591-1] ("Givaudan Stipulation"). The parties continue to discuss a resolution, but if an agreement cannot be reached, paragraph 7 of the Givaudan Stipulation directs the parties to "bring the matter to the Court seeking expedited consideration of any remaining disputes." Accordingly, if there is an impasse with respect to the amendment, Givaudan should be directed to follow the procedure previously agreed to and bring it to the Court's consideration on an expedited basis – this does not and cannot prevent the Plan from going effective. For the avoidance of doubt, nothing in the Plan or the Confirmation Order alters the terms or conditions of the Givaudan Stipulation.<br><br>(3) Nothing in the Plan or the proposed Confirmation Order alters a contract counterparty's rights under section 365(n) of the Bankruptcy Code. If the agreements between Givaudan and the Debtors are ultimately rejected, Givaudan will retain its rights under section 365(n). In order to clarify any potential ambiguity, the Debtors have modified the Plan to provide that "nothing in this [Plan] shall prejudice any rights under 11 U.S.C. § 365(n), if any, held by a counterparty to a rejected contract." |

| Parties (in Alphabetical Order) | Objections/Comments | Debtors' Responses |
|---|---|---|
| | | (4) Absent a global agreement with Givaudan, the Debtors are not intending to assume any licenses or agreements with Givaudan, including in-bound licenses that Givaudan asserts are not capable of assumption.<br><br>(Omnibus Reply, pp. 43-45) |
| Lexon Insurance Co. | Objection and Reservation of Rights of Lexon Insurance Company to Debtors' Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors, as Modified [D.I. 1157] | The Debtors have been in conversations with Lexon, the provider of certain of the Debtors' now-terminated customs bonds, regarding language that would consensually resolve Lexon's objection to confirmation of the Plan. The Debtors expect to include such language, when finalized, in the Confirmation Order to be submitted to the Court. |
| Melo, John | Informal Comments | Section VI.B of the Plan will be modified to read in full as follows:<br><br>*B. Indemnification Obligations.*<br><br>All indemnification provisions, consistent with applicable Law, in place as of the Effective Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for current directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be Reinstated and remain intact, irrevocable, and shall survive the effectiveness of the Plan on the same terms that existed prior to the Effective Date; provided that nothing herein shall expand any of the Debtors' indemnification obligations in place as of the Petition Date.<br><br>Upon the Effective Date, the Debtors' existing D&O Liability Insurance Policy expires and the Endorsement #94: "Run off Endorsement" will be in place and shall not be altered, amended or modified by the Plan. For the avoidance of doubt, the Reorganized Debtors do not assume any indemnification obligation for any insured under the Debtors' D&O Liability Insurance Policies, including but not limited to, any Excluded Party who is an insured under the Debtors' D&O Liability Insurance Policies, and no insured, including any Excluded Party, shall have any recourse to the Reorganized Debtors with respect to any such indemnification obligation under such policies. |

| Parties (in Alphabetical Order) | Objections/Comments | Debtors' Responses |
|---|---|---|
| Roth, Andrew | Objection of Andrew E. Roth, an Amyris Shareholder, to Confirmation of the Debtors' Second Amended Joint Plan of Reorganization [D.I. 1152]:<br><br>Roth, the plaintiff in a derivative action (the "Roth Action") brought against Foris, Vallejo Ventures Trust U/T/A 2/12/96, L. John Doerr, Ann Doerr, and Barbara Hager, naming Amyris as a nominal defendant, argues that the Plan cannot be confirmed for two reasons: (1) the Plan cannot release the Roth Action; and (2) the plan fails to compensate Roth's counsel through an allowed administrative claim. | (1) In its Objection, Roth admits the Roth Action "is a valuable asset of the Debtor"; only Amyris would receive the benefit of any recovery realized from the Roth Action, and thus it is subject to Bankruptcy Rule 9019 and may be released pursuant to the Estate Claims Settlement. To the extent the Roth Action cannot be released by the Estate Claims Settlement, it can and should be released through the Third-Party Release. And, if the Roth Action cannot be released by either the Estate Claims Settlement or the Third-Party Release, it should be transferred to the Creditor Trust, which can determine whether to pursue the non-meritorious claim. (Omnibus Reply, pp. 32-33)<br><br>(2) Whether Roth's counsel is entitled to a substantial contribution claim (which they are not)—is not a confirmation issue and can be resolved on an expedited basis after notice and a hearing. |
| Texas Comptroller | Informal Comments | Debtors will add following provision to Confirmation Order:<br><br>**Provisions Regarding Texas Comptroller of Public Accounts.** Notwithstanding any term in the Plan or this Confirmation Order to the contrary as to the Texas Comptroller of Public Accounts (the "Comptroller"): (a) The Plan shall not release or discharge any entity, other than the Debtors or Reorganized Debtors, from any liability owed to the Comptroller for a tax debt, including interest and penalties on such tax. This provision is not an admission by any party that such liability exists; and (b) The Plan shall not limit the Comptroller's setoff rights under 11 U.S.C. § 553. This provision is not admission by any party that such setoff rights exist.<br><br>If the Reorganized Debtors fail to make a payment to the Comptroller pursuant to the terms of the Plan as to the Comptroller's Priority Tax Claims, if any, and to cure such non-payment within ten (10) calendar days after service of written notice of default from the Comptroller, the Comptroller may (a) enforce the entire amount of its Claim, if any, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this Court. Notice of the non-payment shall be served by first class mail upon the Reorganized Debtors at: 5885 Hollis St., Suite 100, Emeryville, CA 94608, Attn: Chief Executive Officer, and upon Debtor's attorney at Pachulski Stang Ziehl & Jones LLP, 780 Third Ave., 24th Fl, New York, NY 10017, Attn: Steven W. Golden, sgolden@pszjlaw.com. |

| Parties (in Alphabetical Order) | Objections/Comments | Debtors' Responses |
|---|---|---|
| | | The Debtors', the Reorganized Debtors', and the Comptroller's rights and defenses under Texas state Law, the Bankruptcy Code and other applicable law, with respect to the foregoing are fully preserved. |
| U.S. Securities and Exchange Commission | Limited Objection of the U.S. Securities and Exchange Commission to Confirmation of the Debtors' Second Amended Joint Plan of Reorganization [D.I. 1150]:<br><br>(1) The proposed nonconsensual third-party releases do not meet the high standard for approval of such releases and are not necessary in this case.<br><br>(2) The consensual third-party releases are not consensual because parties need to affirmatively opt out of any releases.<br><br>(3) SEC (and no one else) asserts that this Court lacks jurisdiction to approve nonconsensual third party releases. The SEC argues that constitutional authority only exists if the Court finds that the releases are integral to the Debtors' restructuring, but that the Debtors have not provided any such evidence.<br><br>(4) The "Related Parties" definition for purposes of the Third-Party Releases is overly broad. | (1) The nonconsensual Third-Party Releases satisfy Third Circuit law. Objections to the releases fail to take into the complexity of the global settlement incorporated into the Plan or the overwhelming support for the Plan from all key creditor constituents, each of whom acts as a fiduciary for hundreds of millions of dollars in creditor claims and negotiated the terms of the Plan through sophisticated counsel. The nonconsensual Third-Party Releases are absolutely necessary for creditors, and equity holders, to maximize recoveries under the Plan and the Debtors to effectuate the most successful reorganization possible. The terms of the Plan provide substantial benefits to all parties in interest and satisfy the standards for approval of nonconsensual third-party releases under the *Master Mortgage* factors and the "fairness and necessary" *Continental* standard. (Omnibus Reply, pp. 7-27)<br><br>(2) Weight of authority in this District approves of opt-out releases including Judge Horan's ruling in Tritek International. The consensual Third Party Releases are reasonably tailored and only applicable to certain parties (*i.e.*, voting creditors who vote to accept the Plan; creditors entitled to vote who vote to reject the Plan or do not vote, but do not opt out of the releases; and creditors and Interest holders who are deemed to accept or reject the Plan, who do not opt out of the releases), and consistent with governing Third Circuit law.<br><br>The procedures for opting out of the Third Party Releases were approved by this Court in connection with approval of the Disclosure Statement. The ability to opt out of the Third Party Releases was highlighted in the Disclosure Statement, the applicable ballots, and the related confirmation hearing notices. The Voting Declaration sets forth the creditors and Interest holders who made the opt-election. (Omnibus Reply, pp. 20-26)<br><br>(3) There is substantial precedent including *Millennium Lab* confirming that bankruptcy courts have both constitutional and statutory authority to approve plans with nonconsensual third-party releases. Confirmation of a plan that contains third-party releases plainly falls within this Court's "arising under" or "arising in" jurisdiction. Moreover, the Direct Claims against non-Debtors |

| Parties (in Alphabetical Order) | Objections/Comments | Debtors' Responses |
|---|---|---|
| | | released under the Plan fall within this Court's "related to" jurisdiction, as the Direct Claims and the release thereof will affect the assets of the Estates. And, the Third-Party Releases are critical to the restructuring under the Plan that maximizes creditor returns. Without approval of the third-party consensual releases, creditors who overwhelmingly support the Plan would not have the benefit of the full consideration offered to them under the Plan. The Plan would no longer maximize value or lead to the most successful reorganization possible. (Omnibus Reply, pp. 7-27)<br><br>(4) As reflected in the Third Amended Plan, the Debtors and the other supporting creditor constituents have agreed to modify and narrow the definition of Related Party. (Omnibus Reply, pp. 27-28) |
| United States Trustee | Objection of the United States Trustee to Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization [D.I. 1154]:<br><br>(1) The proposed nonconsensual Third-Party Releases do not meet the high standard for approval of such releases and are not necessary in this case.<br><br>(2) The consensual Third-Party Releases are not consensual because parties need to affirmatively opt out of any releases.<br><br>(3) The "Related Parties" definition for purposes of the Third-Party Releases is overly broad.<br><br>(4) U.S. Trustee objects to the scope of the Exculpated Parties and argues that such parties must be limited solely to estate fiduciaries. | (1) *See* Debtors' Responses above to item (1) of the SEC's Objection.<br><br>(2) *See* Debtors' Responses above to item (2) of the SEC's Objection.<br><br>(3) *See* Debtors' Responses above to item (3) of the SEC's Objection.<br><br>(4) As reflected in the Third Amended Plan at Section I.A.98, the Debtors and the other supporting creditor constituents have agreed to modify and clarify the definition of Exculpated Parties. (Omnibus Reply, p. 29) |