**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMYRIS, INC. *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No.:  23-11131 (TMH)<br><br>(Jointly Administered)<br><br>**Hearing Date: January 24, 2024 at 10:00 a.m. (ET)** |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' STATEMENT IN
SUPPORT OF THE DEBTORS' THIRD AMENDED JOINT
CHAPTER 11 PLAN OF REORGANIZATION**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of Amyris, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") hereby files this statement (the "**Statement**") in support of the Debtors' *Third Amended Joint Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. 1170] (as it may be amended, modified, or supplemented, the "**Plan**").[2]  In support of this Statement, the Committee respectfully states as follows:[3]

**PRELIMINARY STATEMENT**

1.　　These Chapter 11 Cases have followed a challenging and at times precarious course.  Disappointing brand sales, a looming "sale option" for the entire business, and a limited

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris.  The location of Debtor Amyris, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan or the *Disclosure Statement With Respect to Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors, as Modified* [Docket No. 893], as applicable.

[3] The Committee also supports the confirmation of the Plan for the reasons set forth in the Debtors' Confirmation Brief and Confirmation Reply (each as defined herein).

DIP budget, among other things, made it unclear whether the Debtors would be able to reorganize or would need to convert these cases to a chapter 7 liquidation. However, with the assistance of the Court and good faith negotiations and hard work of the professionals, the Debtors, Foris, the Committee, the Ad Hoc Group, the Ad Hoc Cross-Holder Group and other key stakeholders settled their differences, agreed on a path to emergence, and have formulated a confirmable Plan. The Plan enables the Debtors to emerge from these Chapter 11 Cases as swiftly as possible, pays all administrative claims in full, provides a guaranteed recovery to unsecured creditors, and preserves the Debtors' go-forward business with the attendant preservation of jobs and vendor relationships.

2.	The Committee engaged in an exhaustive investigation of the Debtors' prepetition transactions and capital structure, their insiders, and all aspects of their businesses, and in the process carefully examined all potential litigation (and other) alternatives. After this careful analysis, the Committee concluded that the restructuring transactions set forth in the Plan maximize value and certainty for unsecured creditors. The Committee believes that the Plan is in the best interest of unsecured creditors, and is clearly superior to a liquidation or piece-meal sale of the Debtors' assets. As a result, the Committee respectfully requests that the Court confirm the Plan.

**RELEVANT BACKGROUND**

3.	On August 9, 2023 and August 21, 2023, as applicable, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

4.	On August 27, 2023, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Committee pursuant to Bankruptcy Code section 1102(a)(1) [Docket No. 152]. The Committee engaged White & Case LLP ("**White & Case**") as

counsel, FTI Consulting, Inc. ("**FTI**") as financial advisor, and Jefferies LLC ("**Jefferies**" and, together with FTI and White & Case, the "**Committee Professionals**") on August 28, 2023, August 30, 2023, and September 1, 2023, respectively. Immediately upon their engagement, the Committee Professionals commenced a comprehensive investigation into the Debtors' capital structure and claims and causes of action.

5. On December 12, 2023, the Debtors filed the Plan, as amended [Docket No. 892], and the *Disclosure Statement With Respect to Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors, as Modified* [Docket No. 893] (the "**Disclosure Statement**").

6. On December 13, 2023, the Bankruptcy Court entered an order approving the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and approving materials and procedures for solicitation and tabulation of votes [Docket No. 897] (the "**Solicitation Order**").

7. On December 14, 2023, the Debtors filed the *Notice of Filing Executed Revised Amended and Restated Plan Support Agreement and Joinders of the Official Committee of Unsecured Creditors and the Ad Hoc Noteholder Group* [Docket No. 910] (the "**Plan Support Agreement**"), reflecting a settlement between the Debtors, Foris, the Committee, and the Ad Hoc Group (the "**Settlement**").

8. On January 9, 2024, the Debtors filed the *Notice of Filing Plan Supplement for the Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors, as Modified* [Docket No. 1112].

9. On January 22, 2024, the Debtors' claims and noticing agent, Stretto, Inc. filed the *Voting Tabulation Affidavit of Jamilla Dennis of Stretto Regarding the Second Amended Joint*

*Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors, as Modified* (the "**Voting Declaration**") [Docket No. 1179].

10. On January 22, 2024, the Debtors filed the *Debtors' Memorandum of Law in Support of Confirmation of Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* (the "**Confirmation Brief**") [Docket No. 1182] and the *Omnibus Reply in Support of Confirmation of Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* (the "**Confirmation Reply**") [Docket No. 1187].

## STATEMENT

11. The Plan and the embedded releases received overwhelming support from unsecured creditors: 100% of Class 7 Convertible Notes Claims and 96.3% of Class 8 General Unsecured Claims voted to accept the Plan. *See* Voting Declaration, Ex. A. Further, only three (3) holders of General Unsecured Claims validly opted-out of the third-party release, and no holder of Convertible Notes Claims validly did so. As further evidence of the broad consensus in support of the Plan, only eight parties filed objections or reservations of rights with respect to the Plan: the U.S. Securities and Exchange Commission [Docket No. 1150]; Andrew E. Roth, an Amyris shareholder [Docket No. 1152]; the U.S. Trustee [Docket No. 1154]; Disruptional Ltd. and Vest Beauty Labs LP [Docket No. 1155]; 10-11 Clerkenwell Green Limited [Docket No. 1156]; Lexon Insurance Company [Docket No. 1157]; John Melo [Docket No. 1158]; and Givaudan SA [Docket No. 1168]. The Committee understands that the Debtors are working to consensually resolve certain of these objections as of the time of this filing. To the extent any objections remain outstanding, the Committee joins the Debtors' Confirmation Brief and Confirmation Reply and requests that any unresolved objections be overruled for the reasons set forth therein and herein.

### I. The Court Should Approve the Settlement as Embodied in the Plan

12. The Court should approve the Settlement, as embodied in the Plan. "Settlement agreements are generally favored and are, in fact, encouraged" because they bring "an often needed and efficient resolution of the bankruptcy case." *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008) (citing *In re Martin,* 91 F.3d 389, 393 (3d Cir. 1996)). As the Third Circuit explained, compromises in bankruptcy are favored because they "minimize litigation" and "expedite the administration of the bankruptcy estate." *In re Martin,* 91 F.3d at 393. When a court is deciding whether to approve a settlement under Federal Rule of Bankruptcy Procedure 9019, the court must consider whether the compromise is "fair, reasonable, and in the interest of the estate." *In re TSIC, Inc.*, 393 B.R. at 78 (quoting *In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997)).

13. In the Third Circuit, bankruptcy courts consider four criteria when deciding to approve a settlement: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."[4] *In re Martin*, 91 F.3d at 393. The court "does not have to be convinced that the settlement is the best possible compromise" but rather that the settlement is "within the reasonable range of litigation possibilities." *In re World Health Alternatives, Inc.*, 344 B.R. at 296 (internal citations and quotations omitted). Additionally, the court need not have a "mini-trial" on the merits but should instead "canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D.N.J. 2000).

---

[4] The second factor of the "likely difficulties in collection" is not particularly relevant here. *See In re World Health Alternatives, Inc.*, 344 B.R. 291, 302 (Bankr. D. Del. 2006) (approving settlement where "factor two is seemingly not relevant").

14.     The Plan, incorporating the terms of the Settlement, is reasonable, fair, and in the best interest of the Debtors, their estates, and the unsecured creditors.  The Committee's thorough investigation of the Debtors and the Foris Prepetition Secured Lenders, as well as each of their principals, officers and directors, supports the Settlement.  Since the Committee's formation, it has proactively investigated the facts and circumstances leading to these Chapter 11 Cases and potential causes of action against these parties.[5]  Hu Decl. ¶ 11.  In tandem with the investigation, the Committee and the Committee Professionals have worked tirelessly to determine the best outcome and maximize recoveries for unsecured creditors.  *Id.* ¶¶ 6, 9.  In addition, the Committee and its professionals extensively diligenced the Debtors' businesses and brand sales process, and rejected earlier settlement formulations that focused on a waterfall recovery based on brand sales proceeds, and instead focused on maximizing a guaranteed recovery for unsecured creditors.  *Id.* ¶ 21.

15.     *First*, the Court should approve the Settlement because the probability of success of litigation of claims and causes of action identified by the Committee's investigation is uncertain.  *See In re TSIC, Inc.*, 393 B.R. at 79 (finding the first factor satisfied because "the probability for success of litigation was far from certain"); *In re World Health Alternatives, Inc.*, 344 B.R. at 302 (finding the first factor satisfied where "[a] sufficient degree of uncertainty exist[ed] as to whether the Committee . . . could prevail on any of the potential causes of action").  The Committee and the Committee Professionals evaluated numerous potential causes of action against the Debtors' officers, directors, and employees, as well as the DIP Lender, the Foris Prepetition Secured

---

[5] The *Declaration of Elizabeth Hu in Support of the Official Committee of Unsecured Creditors' Statement in Support of the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization*, filed contemporaneously herewith, is referenced herein as the "**Hu Declaration**."

6

Lenders, and their principals.[6] Hu Decl. ¶ 17.

16. In parallel, FTI, with input from White & Case and Jefferies, conducted recovery analyses and assessed projected creditor recoveries under various scenarios, including potential settlement and litigation scenarios. *Id.* ¶ 20. FTI developed a creditor recovery model that analyzed recoveries for unsecured creditors, comparing various settlement constructs to illustrative litigation scenarios, which were appropriately risk adjusted. *Id.* FTI, with assistance from White & Case, identified key litigation variables"[7] as potential sources of value for the unsecured creditors if there was no settlement, the Debtors' estates were liquidated, and litigation claims were pursued. *Id.* Using these variables, FTI, with the input of White & Case, assigned percentage probabilities of a "win" or "loss" for each litigation variable. *Id.* ¶ 21. The Committee Professionals then compared the illustrative analysis of the projected unsecured creditor recoveries in the litigation scenarios against the projected unsecured creditor recoveries under the potential settlement being negotiated in tandem by the Committee Professionals. *Id.*

17. Applying these analyses, the Committee determined the Settlement, including the value obtained from Estate Claims Settlement and Third-Party Release Settlement, and funding and establishment of a creditor trust to pursue certain preserved causes of action and preferences, as contemplated under the Plan, will enable unsecured creditors to receive greater recoveries than pursuing potential causes of action against the Debtors' insiders, which are inherently uncertain

---

[6] The Committee considered, among other things (i) breach of fiduciary duty under Delaware law, including breach of the duty of care and breach of the duty of loyalty; (ii) aiding and abetting breach of fiduciary duty; (iii) breach of contract under applicable state law; (iv) business torts, including tortious interference with prospective contractual and business relations, fraud, and negligent misrepresentation under applicable state law; (v) equitable subordination of debt under 11 U.S.C. § 510; (vi) recharacterization of debt as equity; (vii) preference under 11 U.S.C. § 547; (viii) fraudulent transfer under 11 U.S.C. § 548; and (ix) fraudulent transfer under 11 U.S.C. § 544 and applicable state law. Hu Decl. ¶ 17.

[7] Examples of these litigation variables include the recharacterization of certain Foris Prepetition Secured Lenders' prepetition secured debt, potential settlement or other outcomes with key creditors, and potential causes of action against the Foris Prepetition Secured Lenders. Hu Decl. ¶ 20.

and which the analysis of the Committee Professionals determined were unlikely to yield equivalent, if any, value. In addition, the Committee recognized the inherent uncertainly in pursuing causes of action against the insiders and prepetition lender given the limited funding available in the cases, and possibility of a conversion to chapter 7.

18. *Second*, "the estimate of the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it" supports the Settlement. *See In re TSIC, Inc.*, 393 B.R. at 78 (approving settlement where litigation "would have been costly, protracted, and ultimately of little or no value to either the estate or its creditors"). The Committee's investigation was thorough and robust, and it demonstrates the complexity and expense of any potential litigation.

19. The Committee sought and served broad-ranging discovery from the Debtors and the Foris Prepetition Secured Lenders. Hu Decl. ¶¶ 12-16. The Committee and the Committee Professionals have reviewed hundreds of thousands of pages and substantially all of the documents produced and received by the Debtors and the Foris Prepetition Secured Lenders. *Id. ¶* 14. Beginning in August 2023 through December 2023, the Committee received: (i) hundreds of documents in the Debtors' data room, including documents relating to the Debtors' prepetition debts, corporate governance, insurance policies, commercial contracts, operative deals, major transactions, and intellectual property; (ii) 24,373 documents consisting of 206,305 pages from the Debtors, including negotiations and communications between relevant parties, Amyris board materials, documents revealing decision-making processes of the Amyris board and management, documents revealing proposed financing alternatives, documents detailing the Debtors' approval process, and documents detailing proposed transactions that were never completed; (iii) 755 documents consisting of 8,681 pages from the Foris Prepetition Secured Lenders; and (iv) a copy

8

of the Independent Director Report. *Id.* ¶¶ 10, 13-15, 18. In connection with its investigation, the Committee deposed three Amyris directors and officers: (1) Ryan Panchadsaram (current board member); (2) John Doerr (current board member); and (3) John Melo (former CEO). *Id.* ¶ 16.

20. For each of the claims considered by the Committee, it reviewed the applicable statute of limitations, look-back periods, and examined the scope of the directors' and officers' liability under applicable state law and the Debtors' corporate documents. *Id.* ¶ 18. The Committee Professionals were prepared to file a motion to seek derivative standing and to attach proposed adversary complaints regarding claims against insiders and claims regarding the prepetition lenders' collateral based on its investigation. *Id.* ¶ 19. The Committee Professionals considered the required costs and time of litigation compared to any contemplated settlement's guaranteed minimum cash recovery upon the Debtors' emergence. *Id.* ¶ 21. The Committee ultimately concluded, based on its thorough investigation during the Chapter 11 Cases, that prosecution of the complex litigation contemplated above would necessarily be expensive, inconvenient, and protracted, and result in materially delayed, if any, recoveries for unsecured creditors. This factor favors the more expedient, guaranteed recoveries for unsecured creditors as contemplated under the Settlement and embodied in the Plan.

21. *Third*, it is in the paramount interest of the creditors to approve this Settlement. The Committee concluded that the Settlement, as reflected in the Plan, was the best option reasonably available for unsecured creditors, and indeed the voting and release opt-out results demonstrate that creditors realized this as well. *Id.* ¶ 23. As described above, the Committee's determination was based on its investigation, FTI's recovery analysis, input on asset values from Jefferies, its review of the Debtors' businesses and brand sales process, and substantial discussions between the Committee and the Committee Professionals. *Id.* The Committee found that its

9

analysis and investigation supported the release of estate claims and causes of action, other than those reserved for the Creditor Trust as negotiated by the Committee. *Id.* ¶¶ 19, 23. The Settlement was accomplished through good-faith negotiations and significant effort by the representatives of the Committee, the Debtors, Foris, and the Ad Hoc Group to reach a mutually acceptable agreement resolving unsecured creditors' treatment. *Id.* ¶ 22. Ultimately, the Settlement provides certainty and the only guaranteed path to a recovery for unsecured creditors in these cases. *Id.* ¶¶ 19, 23. The Committee's analyses, investigation, and negotiation support that the Settlement is fair and reasonable, and carefully considers the interests of its constituency, and thus, this factor weighs in favor of approving the Settlement.

## II. Response to Certain Confirmation Objections

### A. The Court Should Overrule the Roth Objection.

22. Andrew Roth, an Amyris shareholder, objects to the Plan and attaches previous correspondence with the Committee in support of his objection.[8] In the correspondence, Mr. Roth's attorneys urged the Committee to assume and pursue shareholder claims under Section 16(b) of the Securities Exchange Act of 1934 brought in *Andrew E. Roth v. Foris Ventures, LLC et al*, 21-cv-04288-YGR (N.D. Cal.) (the "**Roth Action**"). *See* Ostrager Decl. at 2 [Docket No. 1153-1] ("Subject: Delaware – Request for Creditors Committee to substitute as Plaintiff in a Section 16(b) case on the behalf of Amyris, Inc."). The Committee maintained at that time—and still maintains—that "substituting" as the plaintiff and prosecuting the Roth Action would not benefit its constituency.

---

[8] The *Objection of Andrew E. Roth, an Amyris Shareholder, to Confirmation of the Debtors' Second Amended Joint Plan of Reorganization* [Docket No. 1152] is referenced as the "**Roth Objection**" herein. The *Declaration of Glenn F. Ostrager in Support of the Objection of Andrew E. Roth, an Amyris Shareholder, to Confirmation of the Debtors' Second Amended Joint Plan of Reorganization* [Docket No. 1153] is referenced as the "**Ostrager Declaration**" herein.

23. Putting aside the feasibility of the Committee assuming the role of plaintiff in a shareholder lawsuit and prosecuting the Roth Action,[9] pursuing an unliquidated, contingent claim of "at least $6,471,124" did not warrant jeopardizing the carefully negotiated Settlement between the Committee, the Debtors, Foris, and the Ad Hoc Group. Roth Obj. ¶ 17. The Committee is a fiduciary to its constituency. *In re Kensington Int'l, Ltd.*, 368 F.3d 289, 315 (3d Cir. 2004) ("[I]t is established that a Creditors Committee owes a fiduciary duty to the unsecured creditors as a whole[.]"); *see Drexel Burnham Lambert Group,* 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992) ("The duty [of the committee and its counsel] extends to the class as a whole, not to its individual members."); *see also* Ostrager Decl. at 4 [Docket No. 1153-1] (Mr. Pesce: "The Committee is a fiduciary for [unsecured] creditors."). As such, the Committee is responsible for "maximizing their recovery." *In re Haskell–Dawes, Inc.*, 188 B.R. 515, 519 (Bankr. E.D. Pa. 1995). As discussed above, the Settlement was the product of extensive investigation and analysis to ascertain the best recovery available for unsecured creditors in these cases, and it accomplishes that goal.

24. Additionally, whether the Roth Action is a "Direct Claim" under the Plan need not be decided at confirmation and should not be allowed to derail confirmation. *See* Roth Obj. ¶¶ 27-29. The Roth Action is either derivative and property of the Debtors' estates, or the Roth Action is a Direct Claim. If the Roth Action is derivative and property of the Debtors' estates,

---

[9] Mr. Roth cites no authority for the proposition that the Committee may seek standing to pursue claims under Section 16(b) of the Securities Exchange Act of 1934. Moreover, the purpose of the Committee's ability to seek derivative standing in certain circumstances is when the "the trustee is 'delinquent' in pursuing action on *behalf of the estate*." *In re Valley Media, Inc.*, No. 01-11353 (PJW), 2003 WL 21956410, at *2 (Bankr. D. Del. Aug. 14, 2003) (citing *Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568-69 (3d Cir. 2003)) (emphasis added); *see also* Ostrager Decl. at 4 [Docket No. 1153-1] (Mr. Pesce: "The Committee itself does not have any claims itself."). The Committee does not take a position at this time as to whether the Roth Action is property of the Debtors' estates, and reserves its rights with respect thereto. However, Mr. Roth's own position is that the Roth Action is not property of the Debtors' estates. *See* Roth Obj. § B ("The Foris Action is Not a Derivative Action Or Property of the Debtor's Estate").

11

then the Debtor Release contained in the Plan releases the Roth Action, which for the reasons set forth above is a proper component of the Settlement.  Plan, Art. IV.A.2.  If the Roth Action is a Direct Claim and not otherwise released pursuant to the Plan Third-Party Release Settlement, as noted in the Roth Objection, the Roth Action may be subject to further prosecution.  *See In re XO Comnc'ns, Inc.*, 330 B.R. 394, 416 (Bankr. S.D.N.Y. 2005) (seeking a declaratory judgment in a post-confirmation adversary proceeding that the confirmed Plan and confirmation order did not release defendants from plaintiff's Section 16(b) action).

25. At bottom, much of the Roth Objection appears to be about Mr. Roth's attorneys' fees, rather than the underlying action.  Mr. Roth asserts that, "[i]f the Court determines that the [Roth] Action is subject to release in this Chapter 11 proceeding," then his counsel is entitled to an Administrative Claim under 11 U.S.C. § 503(b)(4) for the purported "substantial benefit for the estate" that his counsel created.  Roth Obj. ¶ 36.  But this issue, too, need not be determined in connection with confirmation.  Mr. Roth's counsel can bring substantial contribution claim at the appropriate time, pursuant to the Plan, and if it is allowed it will be paid accordingly.[10]

### B. Granting the Debtor Release to the Committee is Appropriate.

26. The U.S. Trustee asserts that the "[t]he Released Parties list [] impermissibly includes the Debtors and Creditors' Committee, both of which are estate fiduciaries."[11]  U.S. Trustee Obj. ¶ 45.  However, the release and exculpation of the Committee is warranted under applicable law and is consistent with relief previously granted by this Court.  *See In re Tritek International Inc., et al*, Case No. 23-10520 (Bankr. D. Del. 2023) (TMH) [Docket No. 506]

---

[10] The Committee does not take a position at this time about whether Mr. Roth and his counsel are entitled to an Administrative Claim under 11 U.S.C. § 503(b)(4) in connection with the Roth Action, and reserves its rights with respect thereto.

[11] The *Objection of the United States Trustee to Confirmation of Second Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 1154] is referenced as the "**U.S. Trustee Objection**" herein.

(approving Plan that included both the Committee and its members as "Released Parties" and "Exculpated Parties").

27. In determining whether a debtor release of a third party is proper, courts consider:

   a. whether there is an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete estate assets;

   b. whether the non-debtor has made a substantial contribution;

   c. the essential nature of the release to the extent that, without the release, there is little likelihood of success of the reorganization;

   d. an agreement by a substantial majority of creditors to support the release, specifically if the impacted class or classes "overwhelmingly" vote to accept the plan; and

   e. whether there is a provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the release.

*See In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (citing *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)).

28. Not all of these factors need to be met for a court to approve a release. *See, e.g., In re Wash. Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011). Rather, these factors are "helpful in weighing the equities of the particular case after a fact-specific review." *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013).

29. The Debtors' release of the Committee under the Plan satisfies all applicable factors. **First**, there is an identity of interest between the Debtors and the Committee because such parties all "share the common goal" of confirming the Plan and implementing the Settlement. *See*

*In re Tribune Co.*, 464 B.R. 126, 187 (Bankr. D. Del. 2011) (finding an identity of interest existed between the debtors and the released parties because they "share[d] the common goal of confirming" the plan and implementing the global settlement); *Zenith Elecs.*, 241 B.R. at 110 (concluding that certain releases who "were instrumental in formulating the Plan" shared an identity of interest with the debtor "in seeing that the Plan succeed").

30.  *Second*, the Committee is providing necessary contributions in exchange for the Debtor Release provided to the Released Parties under the Plan, including, as discussed above, by agreeing to compromise or otherwise waive substantive rights to effectuate the Settlement and providing other material support to the Debtors' overall chapter 11 efforts, including the Debtors' efforts to formulate and confirm the Plan.  The Committee, through the Committee Professionals, was an active participant in the negotiation of the Settlement and the negotiation and development of the Plan reflecting the terms of the Settlement.  Hu Decl. ¶ 22; *see also In re W.R. Grace*, 446 B.R. 96, 138 (Bankr. D. Del. 2011) (providing third party release to parties providing substantial contributions to settlements that "are fair and necessary to the reorganization").

31.  *Third*, the Debtor Release is an essential component of the Plan.  Without the Debtor Release, the Debtors and their stakeholders would neither have been able to secure the significant benefits provided by the Plan and Settlement nor build consensus around the Plan.  Absent confirmation of the Plan, the Settlement could not be effectuated, and the Chapter 11 Cases would collapse into extensive and expensive litigation that would potentially provide only minimal recoveries, if any, for unsecured creditors and other parties in interest.  Accordingly, the Debtor Release is essential to preserving and maximizing the value of the Debtors' estates for the benefit of stakeholders, including holders of unsecured claims.

32. **Fourth**, as evidenced by the Voting Declaration, all classes eligible to vote, except Class 10 Givaudan Contract Claims,[12] overwhelmingly voted in support the Plan and, by extension, the Debtor Release.

33. For these reasons, the release of the Committee is justified, in the best interests of the Debtors and their Estates, and an integral part of the Plan. It should therefore be approved.

### C. The Establishment of the Disputed Claims Reserve by the Creditor Trust is Appropriate.

34. Disruptional Ltd. and Vest Beauty Labs LP (collectively, "**Disruptional**") object to the treatment of their filed proofs of claim as Disputed Claims and alleged lack of clarity in the Plan regarding the establishment of reserves on account of Disputed Claims, including the calculation of the Disputed Clam Reserve amount and whether Disruptional's asserted claims will be included in such calculation.[13] Disruptional Obj. ¶ 3.

35. Pursuant to the Plan, the Creditor Trust will "establish one or more reserves of the applicable consideration for any Claims against any Debtor that are Disputed Claims as of the Distribution Record Date, which reserves shall be administered by the Disbursing Agent." Plan, Art. VIII.D. The Creditor Trust is the Disbursing Agent for Classes 7 and 8. Plan, Art. I.A.81. The Creditor Trust is accordingly required under the Plan to establish a reserve on account of Disputed Claims in Classes 7 and 8 on the Effective Date. The Plan does not require the Trust to provide such a calculation, and the Creditor Trust will have to do some work to understand the

---

[12] Givaudan, who "has been in discussions with the Debtors regarding potential amendments to the Givaudan Contracts and the go-forward relationship of the parties," did not vote to approve the Plan and filed its objection "to protect and preserve its rights in the event that no consensual resolution is reached prior to the confirmation hearing." *Givaudan SA's Objection to the Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors, as Modified* [Docket No. 1168] (the "**Givaudan Objection**") ¶1.

[13] The *Response and Reservation of Rights of Disruptional Ltd. and Vest Beauty Labs LP Regarding Debtors' Second Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 1155] is referenced as the "**Disruptional Objection**" herein.

15

universe of disputed claims prior to the Effective Date in order to quantify reserve amounts. The Committee does not think that Disruptional has a valid Plan objection, however, in order to resolve Disruptional's concerns, the Committee and the Ad Hoc Group have proposed the following language in the Confirmation Order:

> The Disputed Claims Reserve shall be funded on the Effective Date in an amount sufficient to pay the Pro Rata portion of the disputed claims filed by Disruptional Ltd. [Claim No. 589] and &Vest Beauty Labs LP [Claim No. 588] (the "**Disputed Claimants**") in accordance with the terms of the Plan. The Disputed Claimants shall receive no less than fourteen (14) days' notice if the Creditor Trust intends to reduce the Disputed Claims Reserve to an amount less than the amount necessary to provide a Pro Rata distribution for the Disputed Claimants' aggregate asserted claims (the "**Proposed Reduction**"). No distributions shall be made until the Court rules, or the parties reach agreement, on any Proposed Reduction.

### D. 10-11 Clerkenwell Green's Objection Should be Overruled

36. 10-11 Clerkenwell Green Limited ("**Clerkenwell**") objects to confirmation of the Plan based on, among other things, their concern regarding the payment of their filed proofs of claim for payment of a guarantee (the "**Guarantee**") provided by the Debtors for all obligations of a former subsidiary of the Debtors, MG Empower, Ltd. ("**MG Empower**") arising under a lease dated February 15, 2022, among Clerkenwell, MG, and the Debtor (the "**Lease**").[14] Clerkenwell Obj. ¶¶ 1–4.

37. The Committee understand that the obligations under the Lease have been contractually assumed pursuant to that certain Share Purchase Agreement dated as of August 4, 2023 (the "**MG Empower SPA**") by and among MG Ribeiraio Limited ("**Buyer**"), MG Empower, and Amyris, Inc. ("**Amyris**"). The Committee further understands that Buyer and MG Empower

---

[14] The *Objection of 10-11 Clerkenwell Green Limited to Confirmation of Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. 1156] is referenced as the "**Clerkenwell Objection**" herein.

have agreed, pursuant to the MG Empower SPA, at their sole expense, to release Amyris from all obligations arising from or relating to the Lease. The Committee and Creditor Trust reserve all rights regarding any claim filed against the Debtors' estates and any claims, rights to setoff or recoupment, or other rights of the Debtors' estates against third parties regarding such claims, including, for the avoidance of doubt, any claims arising from or relating to the Lease.

## **RESERVATION OF RIGHTS**

38.    The Committee reserves all rights to supplement this Statement in advance of the confirmation hearing, respond to any supplemental objections to the Plan or to any modifications to the Plan, and to address any such issues at the confirmation hearing.

## **CONCLUSION**

39.    For the reasons set forth herein and in the Debtors' Confirmation Brief and Confirmation Reply, the Committee respectfully requests that the Court confirm the Plan, overrule any objections thereto, and grant such other and further relief as may be just and proper.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: January 22, 2024<br>Wilmington, Delaware | Respectfully submitted,<br><br>*/s/ Katelin A. Morales*<br>**POTTER ANDERSON & CORROON LLP**<br>Christopher M. Samis (No. 4909)<br>Katelin A. Morales (No. 6683)<br>Sameen Rizvi (No. 6902)<br>1313 N. Market Street, 6th Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 984-6000<br>Facsimile: (302) 658-1192<br>Email: csamis@potteranderson.com<br>kmorales@potteranderson.com<br>srizvi@potteranderson.com<br><br>-and-<br><br>**WHITE & CASE LLP**<br>Gregory F. Pesce (admitted *pro hac vice*)<br>Andrew F. O'Neill (admitted *pro hac vice*)<br>111 South Wacker Drive, Suite 5100<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Facsimile: (312) 881-5450<br>Email: gregory.pesce@whitecase.com<br>aoneill@whitecase.com<br><br>-and-<br><br>**WHITE & CASE LLP**<br>Samuel P. Hershey (admitted *pro hac vice*)<br>John Ramirez (admitted *pro hac vice*)<br>Andrea Kropp (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Facsimile: (212) 354-8113<br>Email: sam.hershey@whitecase.com<br>john.ramirez@whitecase.com<br>andrea.kropp@whitecase.com<br><br>*Counsel for the Official Committee*<br>*of Unsecured Creditors* |