IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC. *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No.: 23-11131 (TMH)<br><br>(Jointly Administered)<br><br>Re: Docket No. 1189 |

**DECLARATION OF ELIZABETH HU IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' STATEMENT IN SUPPORT OF THE DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**

I, Elizabeth Hu, declare as follows under penalty of perjury:

1. I am over the age of 18, and I am authorized to submit this declaration on behalf of the official committee of unsecured creditors (the "**Committee**") appointed in the Chapter 11 Cases of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**").

2. I submit this declaration in support of the *Official Committee of Unsecured Creditors' Statement in Support of the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization*[2] filed contemporaneously herewith.

3. Unless otherwise indicated, the statements set forth in this declaration are based on (i) my personal knowledge, (ii) information learned from my review of relevant documents, (iii) information I received from the Debtors or their advisors, (iv) information received from the

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris. The location of Debtor Amyris, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the *Third Amended Joint Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. 1170] (the "**Plan**") or the *Disclosure Statement With Respect to Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors, as Modified* [Docket No. 893].

team at FTI Consulting, Inc. ("**FTI**") working under my and other FTI Senior Managing Directors' supervision, (v) information received from the Committee's professionals, including White & Case LLP ("**White & Case**"), and, in respect of transaction analyses, Jefferies LLC ("**Jefferies**"), or (vi) my experience as a restructuring and financial professional. I am not being specifically compensated for this testimony other than through payments FTI is to receive as a Committee-retained professional, which is subject to this Court's approval.

4. If I were called upon to testify, I would testify competently to the facts set forth in this declaration.

I. **PROFESSIONAL BACKGROUND**

5. I am a senior managing director of FTI, where I specialize in providing financial advisory services to unsecured creditors' committees in chapter 11 cases. FTI is a global business advisory firm that provides services in areas ranging from corporate finance and interim management to economic consulting, forensic and litigation consulting, strategic communications, and technology. FTI's clients include many of the world's largest public companies and majorities of the 50 largest bank holding companies and 100 largest law firms in the world. FTI's expertise includes liquidity and capital structure assessment, analysis and development of business plans, complex debt restructurings, and evaluation of strategic alternatives. FTI has considerable experience in providing financial advisory services in restructurings and reorganizations and enjoys an excellent reputation for the results it has obtained for debtors and creditors in chapter 11 cases throughout the United States.

6. FTI was engaged as financial advisor to the Committee on August 30, 2023. The order authorizing the retention of FTI as financial advisor to the Committee was entered on October 6, 2023. Since then, FTI has worked closely with counsel to the Committee, White &

Case, and investment banker to the Committee, Jefferies (together with FTI and White & Case, the "**Committee Professionals**") to maximize recoveries for unsecured creditors in these cases.

7. I received a Bachelor of Arts in Mathematics and a Bachelor of Arts in Economics from the University of Pennsylvania. I have over 18 years' experience in corporate finance, creditor rights, and restructuring and turnaround services. In 2005, I joined FTI as a consultant, and I have had multiple roles within the firm, such as senior consultant, director, and managing director, before becoming a senior managing director. During my career, I have been engaged in multiple high profile restructurings, including RGN Holdings, Enjoy Technologies, GBG USA Inc., Knotel, JC Penney, Brooks Brothers, Sanchez Energy, Puerto Rico Retiree Committee, Melinta Therapeutics, Sears, First Energy, Toys R Us, Penn Virginia, Samson Resources, Vanguard Resources, Energy Future Holdings, Central Grocers, IMX, Cengage, Residential Capital, New Century, Dots, The Educational Resources Institute (TERI), Advanta, Chemtura, Propex, Calpine and Delphi.

8. I have extensive experience providing financial advisory services in restructurings and reorganizations for official committees of unsecured creditors, including assessing and monitoring the efforts of debtors and their professional advisors to maximize the value of their estates and to reorganize successfully. I have also advised committees with respect to assessing claims and causes of action of debtors' estates and settlement of such claims. In providing such advice, I have substantial experience analyzing financial statements and business plans, constructing complex financial models and recovery analyses, developing strategies to maximize value for creditors, evaluating restructuring proposals and plans of reorganization, and overseeing liquidation and distribution of assets to creditors.

## II.  THE COMMITTEE'S INVESTIGATION AND ANALYSIS.

9. FTI and the other Committee Professionals engaged in an intensive investigation and analysis upon their engagement to determine the best outcome for unsecured creditors in these chapter 11 cases.

### A.  The Committee's Investigation

10. The Committee was formed on August 27, 2023. On August 28, 2023, the Committee retained White & Case as counsel. On August 30, 2023, the Committee engaged FTI as its financial advisor. On September 1, 2023, the Committee engaged Jefferies as its investment banker. On August 29, 2023, the Committee and the Committee Professionals received access to the Debtors' data room. The Debtors' data room contained hundreds of documents, which included documents relating to the Debtors' prepetition debts, corporate governance, insurance policies, commercial contracts, operative deals, major transactions, and intellectual property. The data room continued to be updated during the Debtors' chapter 11 cases.

11. Since the Committee's formation, it has proactively investigated the facts and circumstances leading to these Chapter 11 Cases and potential causes of action against the DIP Lender and Foris Prepetition Secured Lenders, their principals, and the Debtors and their officers and directors.

12. On September 18, 2023, the Committee served Rule 2004 requests on the Debtors, which included 47 document requests and 13 interrogatories. The Committee and the Debtors met and conferred regarding the Committee's requests on September 21, 2023 and September 26, 2023 to identify relevant search terms for electronically stored information and relevant custodians. The Committee also propounded separate discovery requests to the Foris Prepetition Secured Parties in connection with the Committee's investigation.

13. On September 29, 2023, the Debtors began formally producing documents responsive to the Committee's requests in accordance with the agreed search terms and custodians. Document custodians included, but were not limited to: (1) Han Kieftenbeld, Amyris CFO and interim CEO; (2) John Melo, former Amyris CEO; and (3) Kathleen Valiasek, former Amyris Chief Business Officer. Between September 29, 2023, and November 15, 2023, the Debtors produced to the Committee 24,373 documents consisting of 206,305 pages. On October 17, 2023, the Committee received the Debtors' responses to its interrogatories.

14. On October 14, 2023, the Foris Prepetition Secured Parties began formally producing documents responsive to the Committee's requests. Document custodians included, but were not limited to, Amyris board members John Doerr and Ryan Panchadsaram. Between October 14, 2023, and December 5, 2023, the Foris Prepetition Secured Parties produced to the Committee 755 documents consisting of 8,681 pages. The Committee and the Committee Professionals have reviewed substantially all of the documents produced and received by the Debtors and the Foris Prepetition Secured Parties.

15. On October 23, 2023, the Committee received from the Debtors a copy of the Independent Director Report.

16. In November 2023, the Committee deposed three directors and officers of Amyris in connection with its investigation: (1) Ryan Panchadsaram (current board member); (2) John Doerr (current board member); and (3) John Melo (former CEO).

17. Based on this investigation, and under the guidance of White & Case, the Committee and the Committee Professionals evaluated several potential causes of action against the Debtors' officers, directors, and employees, as well as the DIP Lender, the Foris Prepetition Secured Lenders, and their principals. These included claims considered for (i) breach of fiduciary

duty under Delaware law, including breach of the duty of care and breach of the duty of loyalty; (ii) aiding and abetting breach of fiduciary duty; (iii) breach of contract under applicable state law; (iv) business torts, including tortious interference with prospective contractual and business relations, fraud, and negligent misrepresentation under applicable state law; (v) equitable subordination of debt under 11 U.S.C. § 510; (vi) recharacterization of debt as equity; (vii) preference claims under 11 U.S.C. § 547; (viii) fraudulent transfer claims under 11 U.S.C. § 548; and (ix) fraudulent transfer claims under 11 U.S.C. § 544 and applicable state law.

18.    For each of the considered claims, the Committee conducted review and analysis under the direction of White & Case. This work included reviewing applicable statutes of limitations and look-back periods and the scope of the directors' and officers' liability under applicable state law and the Debtors' corporate documents. The Committee also reviewed and analyzed the Debtors' financing arrangements, asset sale purchase agreements, relevant financial information, and other business decisions as identified in the Debtors' court filings, the documents produced by the Debtors, and the Debtors' board materials. The Committee's analysis included a robust review of the pertinent documents produced in these Chapter 11 Cases, including negotiations and communications between transacting parties, the materials presented to the Amyris board, the decision-making processes of the Amyris board and management, financing alternatives presented to the Amyris board, the Debtors' approval process, and proposed transactions that were never completed.

19.    Based on its investigation, the Committee Professionals prepared a motion to seek derivative standing and drafted a proposed adversary complaint. After substantial discussion among the Committee members and the Committee Professionals, the Committee determined that the settlement being negotiated with the Debtors, Foris, and the Ad Hoc Group in tandem with the

Committee's investigation likely provided better value to the Committee and its constituents than the claims that the Committee had developed through its investigation. The Committee did negotiate as part of the settlement, however, that certain claims and causes of action be reserved for the Creditor Trust, including certain estate claims and causes of action (including preference actions that are not Designated Preference Actions).

### B.     The Committee's Recovery Analysis

20.    Starting in November 2023, FTI, with input from White & Case and Jefferies, undertook a comprehensive assessment of projected creditor recoveries under various scenarios, including potential settlement and litigation scenarios. Specifically, FTI developed a creditor recovery model that analyzed recoveries under various settlement constructs compared to recoveries under illustrative litigation scenarios, which were risk adjusted for probability of success. To develop litigation scenarios, FTI, in consultation with White & Case, identified key litigation variables, including the recharacterization of certain Foris Prepetition Secured Lenders' prepetition secured debt, potential settlement or other outcomes with key creditors, and potential causes of action against the Foris Prepetition Secured Lenders that could provide sources of value for unsecured creditors if no settlement was reached, the Debtors' estates were liquidated under a chapter 11 plan of liquidation, and litigation claims were pursued.

21.    With input from White & Case, FTI assigned a percentage probability of a "win" or a "loss" for each litigation variable. Outcomes under illustrative litigation analyses were compared against the projected recoveries for unsecured creditors under the potential settlement being negotiated in parallel by the Committee Professionals. In addition to uncertainty of any ultimate recovery on account of litigating the identified claims, the Committee Professionals also considered the cost and time required to litigate potential claims, in contrast to the guaranteed minimum cash recovery upon emergence under the contemplated settlement. Moreover, the

Committee and the Committee Professionals, particularly Jefferies, extensively analyzed the Debtors' businesses and brand sales process. Based on the results of Jefferies' analysis and projected outcomes, the Committee rejected earlier settlement formulations that focused on a waterfall recovery based exclusively on brand sales proceeds, and instead focused on maximizing a guaranteed recovery for unsecured creditors.

### C.     The Settlement and the Plan Negotiation

22.     The Committee, through the Committee Professionals, negotiated and obtained support for the terms of the settlement, and participated in the negotiation and development of the Plan reflecting the terms of the settlement. The settlement is the product of good-faith negotiations and significant efforts by representatives of the Committee, the Debtors, Foris, and the Ad Hoc Group to reach a mutually acceptable agreement resolving the treatment of unsecured creditors in these Chapter 11 Cases.

23.     Based on the results of the Committee's investigation, FTI's recovery analysis, input on asset values from Jefferies, and other discussions and considerations between the Committee and the Committee Professionals, the Committee determined that the negotiated settlement embodied in the Debtors' Plan, including the release of claims and causes of action other than those reserved for the Creditor Trust pursuant to the settlement, was the best option reasonably available for unsecured creditors. The Committee believes that the settlement and the Plan provides the greatest amount and certainty of recoveries available to unsecured creditors in these Chapter 11 Cases.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 22, 2024
      Wilmington, Delaware

                                                */s/ Elizabeth Hu*
                                                Elizabeth Hu
                                                Senior Managing Director
                                                FTI Consulting, Inc.