# EXHIBIT 6

**22-16632, 22-16633**

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Andrew E. Roth,
*Plaintiff-Appellee-Cross-Appellant,*

v.

Foris Ventures, LLC, Vallejo Ventures Trust U/T/A 2/12/96,
L. John Doerr, Ann Doerr, and Amyris, Inc.,
*Defendants-Appellants-Cross-Appellees.*

On Interlocutory Appeal from the United States
District Court for the Northern District of
California

**BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
AMICUS CURIAE, IN SUPPORT OF NEITHER PARTY AND
REVERSAL OF THE DISTRICT COURT**

MICHAEL A. CONLEY
Solicitor

DOMINICK V. FREDA
Assistant General Counsel

KERRY J. DINGLE
Senior Appellate Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-6953 (Dingle)

# TABLE OF CONTENTS

Table of Authorities ........................................................... iii

Interest of the Securities and Exchange Commission and Summary
of Its Position .................................................................. 1

Background ...................................................................... 5

    A.    The Statutory and Rule Provisions at Issue................................. 5

        1.    Section 16(b) of the Securities Exchange Act of 1934 ............. 5

        2.    Rule 16b-3.................................................................. 6

    B.    The Transactions at Issue Between Foris and Amyris ............... 8

Summary of Argument ....................................................... 10

Argument ....................................................................... 11

    I.    The Rule 16b-3(d)(1) exemption does not require that the
board state its purpose in approving officer and director
transactions.............................................................. 11

    II.    The Section 16(b) claim against Foris turns on the factual
issue regarding whether Foris was a "director by
deputization."........................................................... 17

Conclusion ..................................................................... 20

Certificate of Compliance

Statement of Related Cases

## TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Blau v. Lehman,*
368 U.S. 403 (1962) ................................................................ 18, 20

*Bruh v. Bessemer Venture Partners III L.P.,*
464 F.3d 202 (2d Cir. 2006) ......................................................... 13

*Dreiling v. Am. Express Co.,*
458 F.3d 942 (9th Cir. 2006) ................................................. *passim*

*Dreiling v. Am. Online, Inc.,*
578 F.3d 995 (9th Cir. 2009) .......................................................... 6

*Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC,*
298 F.3d 136 (2d Cir. 2002) ................................................... *passim*

*Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC,*
No. 01-9139, 2002 WL 32625905 (2d Cir. 2002) ................................... 10, 12

*Kern Cnty. Land Co. v. Occidental Petroleum Corp.,*
411 U.S. 582 (1973) ....................................................................... 5

*Kisor v. Wilkie,*
139 S. Ct. 2400 (2019) ................................................................ 14

*Levy v. Sterling Holding Co.,*
544 F.3d 493 (3d Cir. 2008) ........................................................... 7

*Magma Power Co. v. Dow Chem. Co.,*
136 F.3d 316 (2d Cir. 1998) ........................................................... 6

*N.Y.C. Emps.' Ret. Sys. v. SEC,*
45 F.3d 7 (2d Cir. 1995) ............................................................... 13

*Roth ex rel. Beacon Power Corp. v. Perseus L.L.C.,*
522 F.3d 242 (2d Cir. 2008) ................................................... 2, 18-19

iii

*Strom v. United States*,
   641 F.3d 1051 (9th Cir. 2011) .......................................................... 19

**Statutes**

Securities Exchange Act of 1934, 15 U.S.C. 78a, *et seq.*

   Section 12, 15 U.S.C. 78*l* ................................................................ 17

   Section 16(a)(1), 15 U.S.C. 78p(a)(1) ........................................... 17

   Section 16(b), 15 U.S.C. 78p(b) ........................................... *passim*

**Rules and Regulations**

Federal Rule of Appellate Procedure 29(a) ..................................... 1

Rules Under the Securities Exchange Act of 1934, 17 C.F.R. 240.0-1, *et seq.*

   Rule 16b-3, 17 C.F.R. 240.16b-3 ........................................... *passim*

   Rule 16b-3(a), 17 C.F.R. 240.16b-3(a) ......................................... 17

   Rule 16b-3(d), 17 C.F.R. 240.16b-3(d) ................................... 14, 18

   Rule 16b-3(d)(1), 17 C.F.R. 240.16b-3(d)(1)......................... *passim*

**Commission Releases**

*Ownership Reports and Trading by Officers, Directors and Principal*
   *Security Holders*, Exchange Act Release No. 34-36356,
   60 Fed. Reg. 53832, 1995 WL 605661 (proposed Oct. 17, 1995)....... 7, 12, 15

*Ownership Reports and Trading by Officers, Directors and Principal*
   *Security Holders*, Exchange Act Release No. 34-37260,
   61 Fed. Reg. 30376, 1996 WL 324486 (June 14, 1996) .................... 2, 6, 8, 18

*Ownership Reports and Trading by Officers, Directors and Principal*
   *Security Holders*, Exchange Act Release No. 34-52202,
   70 Fed. Reg. 46080, 2005 WL 1865268 (Aug. 9, 2005) ........................ 7-8, 14

**Other Authorities**

*Am. Bar Ass'n*, SEC Staff No-Action Letter,
    1999 WL 61837 (Feb. 10, 1999) ........................................................... 3, 10, 16

H.R. Rep. No. 73-1383 (1934) .............................................................................. 5

## INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION AND SUMMARY OF ITS POSITION

The Securities and Exchange Commission ("Commission" or "SEC") submits this amicus curiae brief pursuant to Federal Rule of Appellate Procedure 29(a) to address important legal issues related to the "short-swing" trading provision in Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78p(b). Section 16(b) was enacted to deter corporate insiders—officers, directors, and beneficial owners of more than 10 percent of any class of the issuer's equity securities—from trading in their companies' securities on the basis of inside information. Congress viewed short-swing trading, which is defined as purchases and sales occurring within a period of less than six months, as posing a particular risk of misuse of inside information. Thus, Congress provided in Section 16(b) that any profits realized by the insider from such trading shall inure to and be recoverable by the issuer.

Although Section 16(b) actions are brought only by issuers and their shareholders, Congress delegated to the Commission the responsibility of formulating rules exempting from Section 16(b) transactions that, in the Commission's view, are "not comprehended within the purpose of"

1

Section 16(b). *Id.* Pursuant to this authority, the Commission adopted Rule 16b-3(d)(1) to exempt short-swing profits of officers and directors from transactions that are "approved by the board of directors of the issuer[.]" 17 C.F.R. 240.16b-3(d)(1). The Commission has a strong programmatic interest in ensuring the proper interpretation of Rule 16b-3, which provides relief from Section 16(b) for transactions that "the Commission is persuaded … are not vehicles for the speculative abuse that [S]ection 16(b) was designed to prevent." *Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Exchange Act Release No. 34-37260, 61 Fed. Reg. 30376, 30377, 1996 WL 324486, at 30377 (June 14, 1996) ("1996 Adopting Release"); *see Roth ex rel. Beacon Power Corp. v. Perseus L.L.C.*, 522 F.3d 242, 247 (2d Cir. 2008).

In the underlying action, plaintiff Andrew Roth ("Roth"), a shareholder of defendant Amyris, Inc., brought Section 16(b) claims derivatively on behalf of Amyris seeking disgorgement of the short-swing profits that accrued to defendants L. John Doerr ("Doerr"), an Amyris director, and his wholly-owned company, Foris Ventures, LLC ("Foris"), itself a 10 percent beneficial owner of Amyris. Doerr and Foris moved to dismiss the complaint on the ground that Foris's profits from its acquisition

of Amyris stock and Doerr's indirect interest in those transactions were exempt under Rule 16b-3(d)(1) because the transactions had been approved by the Amyris board of directors.

The district court denied the defendants' motion. Although the court found that the transactions had been approved by the Amyris board, it relied on a 1999 interpretive letter written by SEC staff to hold that, under Rule 16b-3(d)(1), defendants must show "that the approval [wa]s granted for purposes of making the transaction exempt under Rule 16b-3." 1-ER-10[1], Order Granting in Part and Denying in Part Motion to Dismiss ("Order") at 9 (citing *Am. Bar Ass'n*, SEC Staff No-Action Letter, 1999 WL 61837, at *2 (Feb. 10, 1999) ("ABA Letter")). The district court found that although the other elements of the Rule 16b-3(d)(1) exemption were met, there was nothing before the court at this stage of the proceedings that would establish that the Amyris board acted with the purpose of exempting the transactions from Section 16(b).

This interlocutory appeal presents two controlling legal questions. The first is whether, as the district court held, the Amyris board was

---

[1] "ER" refers to the Excerpts of Record filed by the defendants-appellants-cross-appellees with their opening brief.

3

required to state that it was approving the transactions with Foris for the specific purpose of exempting those transactions from Section 16(b). If, as the Commission urges below, the Amyris board was *not* required to state its purpose in approving the transactions, then defendant Doerr's indirect pecuniary interests in those transactions should be exempt if the Amyris board was aware of the existence and extent of his indirect pecuniary interest in the transaction. Whether there is sufficient evidence to find that the Amyris board knew of the existence and extent of Doerr's indirect pecuniary interest in the transactions when it approved them is a factual question on which the Commission takes no position.

The second question is whether that exemption would also cover Foris's interests in the transactions, given that Foris does not appear to have been a named director of Amyris and Rule 16b-3(d)(1) applies only to officers and directors, not beneficial owners. Whether Foris was a "director by deputization" is also a factual question on which the Commission takes no position.

# BACKGROUND

## A.    The Statutory and Rule Provisions at Issue

*1. Section 16(b) of the Securities Exchange Act of 1934*

Section 16(b) of the Securities Exchange Act of 1934 states, in relevant

part:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) … within any period of less than six months … shall inure to and be recoverable by the issuer ….

15 U.S.C. 78p(b).  The statute permits an issuer or a shareholder to file suit

in federal court within two years of the date the allegedly prohibited

profits were realized by the beneficial owner, director, or officer.  *Id.*

Congress enacted Section 16(b) as a "prophylactic rule" to "prevent

corporate insiders from exploiting their access to 'information not generally

available to others.'"  *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946-47 (9th

Cir. 2006) ("*Dreiling I*") (quoting *Kern Cnty. Land Co. v. Occidental Petroleum

Corp.*, 411 U.S. 582, 592 (1973)); H.R. Rep. No. 73-1383, at 13 (1934) (Section

16(b) intended to prevent corporate insiders from using "information for

their own advantage"). Section 16(b) "operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart, and bypassing corrupt insiders who skirt the letter of the prohibition." *Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 320-21 (2d Cir. 1998); *see Dreiling v. Am. Online, Inc.*, 578 F.3d 995, 1001 (9th Cir. 2009) ("*Dreiling II*") (Section 16(b) "imposes strict liability on insiders, regardless of motive, and disgorges profits from all short-swing trades[,] even those not actually based on inside information.").

*2. Rule 16b-3*

Rule 16b-3 exempts certain categories of "[t]ransactions between an issuer and its officers or directors[,]" including those that are "approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors[.]" 17 C.F.R. 240.16b-3(d)(1). The rule exempts such transactions because "they 'do not appear to present the same opportunities for insider profit on the basis of non-public information as do market transactions by officers and directors[.]'" *Dreiling I*, 458 F.3d at 948 (quoting 1996 Adopting Release, 1996 WL 324486, at 30377). This is because "the issuer, rather than trading markets, is on the other side of an officer or director's transaction in the

6

issuer's equity securities" and "any profit obtained is not at the expense of uninformed shareholders and other market participants of the type contemplated by the statute." *Id.* (internal quotation marks omitted); *see also Levy v. Sterling Holding Co.*, 544 F.3d 493, 505 (3d Cir. 2008) (Such transactions "do[] not present the same informational asymmetry, and associated opportunity for speculative abuse, that … Congress was targeting in enacting [S]ection 16(b).").

By requiring board approval for each specific transaction, the rule "ensure[s] that appropriate company gate-keeping procedures are in place to monitor any grants or awards and to ensure acknowledgement and accountability on the part of the company when it makes such grants or awards." *Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Exchange Act Release No. 34-36356, 60 Fed. Reg. 53832, 53835, 1995 WL 605661, at 53835 (proposed Oct. 17, 1995) ("1995 Proposing Release"). "The legislative history of Section 16(b) makes it clear that the 'unfair use of information' that concerned Congress was insiders' transactions with investors who were at an informational disadvantage." *Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Exchange Act Release No. 34-52202, 70 Fed. Reg. 46080, 46083, 2005

7

WL 1865268, at 46083 (Aug. 9, 2005) ("2005 Release"). The rule's

gatekeeping procedures are thus designed to exempt only transactions

involving parties who do not possess an "inequality of information[,]"

because such inequality "generally does not exist when an officer or

director acquires securities from, or disposes of them to, the issuer." *Id.* As

the Commission stated when it adopted a streamlined version of Rule

16b-3 "[b]ased on its experience with the Section 16 rules, the Commission

is persuaded that transactions between the issuer and its officers and

directors … that satisfy [the] objective gate-keeping conditions" of the

revised rule "are not vehicles for the speculative abuse that [S]ection 16(b)

was designed to prevent." 1996 Adopting Release, 1996 WL 324486, at

30377.

### B. The Transactions at Issue Between Foris and Amyris

As the district court explained, 1-ER-3-4, Roth seeks recovery on

behalf of Amyris of Doerr's and Foris's short-swing profits from four

transactions between Amyris and Foris spanning April 2019 through

January 2020. In April 2019, Foris paid Amyris $20 million to purchase

shares and warrants to purchase additional shares at a set exercise price for

a two-year term. In July 2019, Foris and Amyris entered into an agreement

8

to amend an older warrant from August 2018 by lowering the exercise price, which Roth contends constitutes a cancellation of the August 2018 warrant and re-grant of a new warrant. One month later, Foris and Amyris entered into a credit agreement that amended two other previously issued warrants to lower the exercise price. Finally, in January 2020, Foris and Amyris amended all four pre-existing warrants to lower the exercise price of each warrant. Roth contends that each amendment constituted a cancellation of the prior warrant and re-issuance of a new warrant, and thus each prior warrant was sold at a price equal to the difference between the exercise price of the cancelled warrant and the exercise price of the new warrant.

The district court held that because the amendments reduced Foris's purchase price of the underlying shares in the preexisting warrants, Roth had plausibly alleged that the transactions constituted "purchases" and "sales" under the Exchange Act. 1-ER-8-9. That issue is not presently before this Court, and the Commission takes no position on that question for the purpose of this interlocutory appeal.

9

## SUMMARY OF ARGUMENT

1.  The district court erred in holding that the Rule 16b-3(d)(1) exemption requires the issuer's board of directors to state that it is approving the relevant transaction for the purpose of providing the exemption. As the Commission has made clear, the plain text of the rule requires only that the board approve the transaction for the exemption to apply; a statement of purpose is not required.

The district court relied on a non-binding interpretive letter written by SEC staff that would impose further exemptive requirements not found in the text of the rule. *See* 1-ER-10 (citing ABA Letter, 1999 WL 61837). But the Commission rejected the staff's approach in a subsequent amicus brief. *See* Brief of the Securities and Exchange Commission, Amicus Curiae, *Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC*, 298 F.3d 136 (2d Cir. 2002) (No. 01-9139), 2002 WL 32625905 ("*Gryl* SEC Amicus Curiae"). Unlike statements made by SEC staff in interpretive letters, the Commission's interpretations of ambiguous rules as set forth in amicus briefs are controlling so long as the interpretation is not plainly erroneous or inconsistent with the law.

2. Rule 16b-3(d)(1) exempts officer or director transactions, and is thus not available to beneficial owners like Foris. Foris could avail itself of the exemption if it can establish that it is an Amyris "director by deputization," but that is a fact-dependent inquiry on which the Commission does not opine.

## ARGUMENT

### I. The Rule 16b-3(d)(1) exemption does not require that the board state its purpose in approving officer and director transactions.

The district court erred in holding that the Rule 16b-3(d)(1) exemption did not apply to Doerr's indirect pecuniary interest in the Amyris-Foris transactions because the Amyris board of directors did not "approve[] the transactions *for the purposes of* making them exempt under Rule 16b-3." 1-ER-10-11 (emphasis added). The Court should reverse and remand with instructions to determine whether Rule 16b-3(d)(1) exempts Doerr's indirect pecuniary interest in the transactions absent that requirement.

The Commission has rejected the premise of the district court's ruling. In *Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC*, 298 F.3d 136 (2d Cir. 2002), the Commission submitted an amicus brief at the

11

Second Circuit's request addressing a number of Section 16(b)-related
questions, including whether Rule 16b-3(d)(1) requires purpose-specific
approval. The Commission answered no: "[A] board can, but need not,
specify that it is approving the transaction in order to exempt the grant or
award from Section 16(b). The rule does not contain such a requirement."
*Gryl* SEC Amicus Curiae, 2002 WL 32625905, at *24.

As the Commission explained, the exemption turns on "board
approval, standing alone" because "the basis for the exemption is that
approved grants of securities are likely to be motivated by legitimate
corporate objectives, and not by an attempt to profit from inside
information[.]" *Id.* In other words, board approval is "critical" because it
demonstrates the company's "acknowledgement and accountability" for
the transactions. *Id.* (internal quotation marks omitted); 1995 Proposing
Release, 1995 WL 605661, at 53835 (Board approval "ensure[s]
acknowledgement and accountability on the part of the company.").

The Second Circuit agreed with the Commission's position and held
that "a securities transaction need not receive purpose-specific approval in
order to qualify for the Board Approval Exemption of Rule 16b-3(d)(1)."
*Gryl*, 298 F.3d at 146; *see also id.* at 145 ("[T]he text of [Rule 16b-3] itself

12

contains no suggestion that such a requirement exists" and "the rule …

mentions nothing about the subjective motivations of the approving

body."). "A requirement of purpose-specific approval would run counter

to the very reason why the Board Approval Exemption was established in

the first place[,]" the court explained, because the exemption was intended

to provide "a simplified, flexible approach" for transactions between an

issuer and an officer or director. *Id.* Thus,

> [s]o long as the relevant securities transaction is
> between an issuer and insider, and so long as the
> terms and conditions of that transaction receive
> advance approval by the board of directors, there
> exists sufficient protection to ensure that any short-
> swing profit taking that follows is not the result of
> unfair market manipulation.

*Id.* at 145-46.

The district court erred in relying on the SEC staff's 1999 interpretive

letter after the Commission repudiated the staff's position in the *Gryl*

amicus brief. Staff interpretive letters "do not bind the SEC, the parties, or

the courts[,]" *N.Y.C. Emps.' Ret. Sys. v. SEC*, 45 F.3d 7, 12, 14 (2d Cir. 1995),

but "[t]he views expressed in the Commission's *amicus* brief are the views

of the Commission itself and not merely of the staff[,]" *Bruh v. Bessemer*

*Venture Partners III L.P.*, 464 F.3d 202, 207 n.7 (2d Cir. 2006).

13

Thus, while courts defer to the SEC's interpretations of its own ambiguous regulations "in its amicus briefs unless they are plainly erroneous or inconsistent with the regulations, SEC no-action letters constitute neither agency rule-making nor adjudication and thus are entitled to no deference beyond whatever persuasive value they might have[.]" *Gryl*, 298 F.3d at 145 (citation omitted); *see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (courts defer to *agency* interpretations of ambiguous regulations); *Dreiling I*, 458 F.3d at 953 n.11 (finding Commission's interpretation of Rule 16b-3(d) as set forth in its amicus brief "controlling"). And in any event, the Commission's interpretation of Rule 16b-3(d) as expressed in its *Gryl* amicus brief and repeated here is based on the plain language of the rule, which (as shown) does not contain a purpose-specific requirement.

That this case involves Doerr's *indirect* pecuniary interest in the transactions does not alter this conclusion. The rule applies to indirect interests, but nothing in the language of the rule provides a basis to require purpose-specific approval when indirect, rather than direct, interests are involved. *See* 2005 Release, 2005 WL 1865268, at 46082 & n.35 (Rule 16b-3

14

exempts "[a]n officer's or director's indirect pecuniary interest in transactions between the issuer and certain other persons and entities.").

Note 3 to the rule, however, requires that each specific transaction be approved to assure that the board focuses on each particular grant or award, and is accountable for authorizing each one. Since the basis for the exemption is that approved grants of securities are likely to be motivated by legitimate corporate objectives, and not by an attempt to profit from inside information, it is important that the board actually consider each specific transaction, and that it evidence "acknowledgement and accountability" as to what it is doing. 1995 Proposing Release, 1995 WL 605661, at 53835. This acknowledgment is critical because board approval, standing alone, provides the exemption.

The SEC staff's ABA Letter advised that in order to satisfy the specificity requirements of Note 3 to Rule 16b-3 where board approval is relied upon to exempt an officer's or director's indirect interests, "the approving entity must know and the document evidencing the approval must specify:

- the existence and extent of the officer's or director's indirect interest in the transaction; and

15

- that the approval is granted for purposes of making the transaction exempt under Rule 16b-3."

ABA Letter, 1999 WL 61837, at *2.  While, as discussed above, the second requirement is not supported by the language of the rule, the Commission agrees with the staff that Note 3 requires the board, in approving a transaction, to have understood the existence and extent of an officer's or director's indirect pecuniary interest in order to exempt that interest from potential short-swing profit recovery under Section 16(b).  The Commission does not, however, interpret the rule to require the issuer to acknowledge the indirect interest in the approval document itself; other evidence of the board's knowledge may be used to satisfy this requirement.

The Commission takes no position on the factual question regarding whether there is sufficient evidence of the required "acknowledgement and accountability on the part of" the Amyris board that it knew of the existence and extent of Doerr's indirect pecuniary interest in the transactions when it authorized them.

16

## II. The Section 16(b) claim against Foris turns on the factual issue regarding whether Foris was a "director by deputization."

In the Order Granting Defendants' Motion to Certify the Order for Immediate Interlocutory Appeal, the district court stated that if this Court were to hold that there is no "purpose-specific approval" requirement, "the Rule would apply to the transactions in this case, and the entire case would be dismissed." 2-ER-19. That is incorrect. The Section 16(b) claim against Foris should be dismissed only if Foris is found to be a "director by deputization," such that the Rule 16b-3 exemption was available to Foris and the conditions of that exemption were satisfied. Whether Foris is a "director by deputization" is a factual issue on which the Commission takes no position.

Section 16(b) provides for short-swing profit recovery not only from officers and directors but also from any "person who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security (other than an exempted security) which is registered pursuant to [Exchange Act Section 12]." 15 U.S.C. 78p(a)(1); (b). Rule 16b-3's exemptions, however, are available only to officers and directors. 17 C.F.R. 240.16b-3(a). The basis for this distinction is that officers and

17

directors, unlike beneficial owners, are subject to fiduciary duties under state laws that "create[] potent deterrents to insider self-dealing and other breaches[.]"  1996 Adopting Release, 1996 WL 324486, at 30377 & n.17.  The rule thus provides a limited exemption to the prophylactic recoupment of profits under Section 16(b) in narrow circumstances where sufficient protection already exists because the fiduciary obligations of the counterparty to the transaction align with the interests of the company and its shareholders.  Accordingly, Foris may qualify for a Rule 16b-3 exemption only if it was an officer or director at the time of the transactions.

Foris may satisfy that burden if it were able to establish that Doerr was a director of Amyris deputized by Foris to act on Foris's behalf.  "The Supreme Court has recognized that a corporation may be a virtual director, and thus an insider for purposes of § 16(b) liability, by deputizing a natural person to perform its duties on the board."  *Dreiling I*, 458 F.3d at 952 (citing *Blau v. Lehman*, 368 U.S. 403, 410 (1962)).  Such "directors by deputization are entitled to seek the protection of Rule 16b-3(d) to the same extent, and on the same terms, as an individual director or officer."  *Id.* at 953; *accord Roth ex rel. Beacon Power Corp. v. Perseus L.L.C.*, 522 F.3d 242, 247

(2d Cir. 2008). This is so because the "exemption primarily rests on the safety provided by the issuer's knowledge of its own affairs—a factor whose weight is unaffected by whether the person or entity on the other side of the transaction is a director by deputization rather than an officer or director." *Perseus*, 522 F.3d at 247. That rationale depends upon the issuer understanding that the person or entity with whom it is transacting is a director by deputization through a named director. *Dreiling I*, 458 F.3d at 954.

Foris is not a named director, and, as the district court determined, "[n]either the allegations in the complaint, nor those documents of which judicial notice has been taken, suffice to find as a matter of law that Foris" is a director by deputization. 1-ER-11. Whether Foris is a "director by deputization" is "a question of fact to be settled case by case and not a conclusion of law." *Dreiling I*, 458 F.3d at 952 (internal quotation marks omitted); *see also Strom v. United States*, 641 F.3d 1051, 1060 (9th Cir. 2011) ("[T]he applicability of § 16(b) often will turn on factual issues not appropriately resolved on a motion to dismiss …."). Foris would be a "director by deputization" if it "actually functioned as a director through [Doerr], who had been deputized by [Foris] to perform a director's duties

19

not for himself but for [Foris]." *Blau*, 368 U.S. at 410. The Commission takes no position on that factual question.

## CONCLUSION

For the foregoing reasons, the Court should reverse and remand for further proceedings.

February 10, 2023                    Respectfully submitted,

MICHAEL A. CONLEY
Solicitor

DOMINICK V. FREDA
Assistant General Counsel

 /s/ Kerry J. Dingle

KERRY J. DINGLE
Senior Appellate Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-6953 (Dingle)

## CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number(s)** __22-16632, 22-16633__

I am the attorney or self-represented party.

**This brief contains __3,776__ words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

**Signature** __s/Kerry J. Dingle__ **Date** __February 10, 2023__

## STATEMENT OF RELATED CASES

**9th Cir. Case Number(s)**  ___22-16632, 22-16633___

The undersigned attorney or self-represented party states the following:

[ X ]  I am unaware of any related cases currently pending in this court.

[ ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**  ___s/Kerry J. Dingle___  **Date**  ___February 10, 2023___