IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,[1]<br><br>　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |

Hearing Date: [Requested] March 15, 2024 at 10:00 a.m. (ET)
Objection Deadline: [Requested] Before or at the Hearing

## DEBTORS' MOTION FOR APPROVAL OF SETTLEMENT AMONG THE DEBTORS, LAVVAN INC., AND THE FORIS LENDERS

The above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases") hereby move (the "Motion") this Court (the "Court"), pursuant to rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and sections 363 and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order substantially in the form attached hereto as **Exhibit A**, approving the settlement (the "Lavvan Settlement"), by and among Amyris, Inc., ("Amyris"); Euagore, LLC, as DIP Lender and DIP Agent (the "DIP Secured Parties"), Foris Ventures, LLC ("Foris"), Perrara Ventures LLC, Anesma Group LLC, Anjo Ventures LLC, and Muirisc, LLC, (collectively, the "Foris Prepetition Secured Lenders" and together with the DIP Secured Parties, the "Foris Lenders"), and Lavvan, Inc. ("Lavvan" and, together with the Debtors and the Foris Lenders, the "Parties"). The terms of the Lavvan Settlement are fully set forth in that certain *Settlement and Release Agreement* (the "Lavvan Settlement Agreement"),[2] a true and correct copy

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

[2] All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Settlement Agreement.

of which is attached hereto as **Exhibit B**. In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

**A. General Background**

3. On August 9 and August 21, 2023 (as applicable, the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On August 27, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"), consisting of the following seven members: (i) Cosan U.S. Inc., (ii) U.S. Bank Trust Company, National

Association as Trustee, (iii) Sartorius Stedim North America, Inc., (iv) Hearst Magazine Media, Inc., (v) Wiley Companies, (vi) Park Wynwood, LLC, and (vii) Allog Participacoes, Ltda. *See* Docket No. 152.

5. The Debtors were founded in 2003 to create a more stable supply of a key anti-malarial treatment. Through the Debtors' cutting-edge science, artemisinin—the most effective anti-malarial drug in the world—is now consistently available to treat the deadly disease. Using the same technological innovations that produced artemisinin, the Debtors have become the world's leading manufacturer of ingredients made with synthetic biology. The Debtors provide sustainable ingredients that are eco-friendly alternatives to raw material sourced for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products. A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the *Declaration of Han Kieftenbeld in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 18] (the "First Day Declaration"), incorporated herein by reference.

**B.    Litigation with Lavvan and Settlement Thereof**

6. As detailed in the *Disclosure Statement with Respect to Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors, as Modified* [Docket No. 893] (the "Disclosure Statement"),[3] the Debtors and Lavvan have been embroiled in litigation since 2020. On August 22, 2020, Lavvan brought claims in arbitration (the "Lavvan Arbitration") against the Debtors in the ICC International Court of Arbitration (the "ICC") (Case No. 25998/PDP), seeking close to $900 million in damages under that certain *Research, Collaboration and License Agreement between Lavvan and Amyris*, dated March 18, 2019 (the "RCLA"), and on

---

3    *See generally* Disclosure Statement at §§ 2(D)(2), 2(F)(14), and 3(B)(21).

September 10, 2020, Lavvan filed a complaint against the Debtors in the U.S. District Court for the Southern District of New York (the "SDNY Action") (Case 1:20-cv-07386-JPO) in which Lavvan asserted claims for patent infringement and misappropriation of trade secrets (the "SDNY Claims").

7. On November 21, 2023, the ICC issued a final decision in the Lavvan Arbitration, in which it found that Amyris had breached both the RCLA and a fiduciary duty owed to Lavvan under New York law. As a result of such breach, the ICC, among other things, (i) ordered Amyris to disgorge to Lavvan all profits earned from the sale, if any, of Collaboration Cannabinoids (as defined in the RCLA), (ii) ordered Amyris to pay to Lavvan $820,458.67 for the costs of the arbitration, and (iii) declared that the Release Condition (related to rights to materials in escrow under the RCLA) had occurred. Furthermore, pursuant to the ICC's decision, Amyris is prohibited from engaging in the manufacture or sale of Collaboration Cannabinoids without Lavvan's express consent, except under certain limited circumstances set forth in the RCLA. The ICC rejected all remaining claims and requests. The SDNY Action remains pending.

8. The litigation among the Parties continued into these Chapter 11 Cases. Among other disputes, Lavvan objected to and litigated entry of the final DIP Financing Order [Docket No. 558], appealed from the Court's ruling overruling Lavvan's objection to the DIP Financing Order (which appeal remains pending) (the "Lavvan Appeal"), filed the *Challenge-Period Adversary Complaint to Challenge Enforceability, Priority, and Extent of Security Interests and Liens, and for Other Relief* [Docket No. 620] (the "Lavvan Complaint") against Foris Ventures, LLC (which adversary proceeding remains pending), objected to (and propounded discovery concerning) the Debtors' proposed plan of reorganization (the "Lavvan Plan Litigation"), and filed the *Motion of Lavvan, Inc. Pursuant to Bankruptcy Rule 3018(A) for Estimation and Temporary*

*Allowance of Claims for Purposes of Voting to Accept or Reject the Plan* (the "Lavvan 3018(a) Motion") [Docket No. 1095] (which remains pending). The Debtors also filed the *Motion to Estimate Lavvan Intellectual Property Claims* [Docket No. 840] ("Lavvan Estimation Motion") and *Debtors' Objection to Claim Nos. 663 and 666 Filed by Lavvan, Inc.* [Docket No. 839] ("Lavvan Claim Objection") (which both remain pending).

9. On January 17, 2024, the Parties reached a settlement in principle that provided for a global resolution of all of the disputes by and among the Parties, including the Lavvan Arbitration, the SDNY Action, the Lavvan Complaint, the Lavvan Appeal, the Lavvan 3018(a) Motion the Lavvan Plan Litigation, the Lavvan Estimation Motion, and the Lavvan Claim Objection. The Lavvan Settlement contemplates the transfer of all of Lavvan's rights, licenses and other related interests arising from or related to the RCLA and related agreements, including but not limited to, in Cannabinoid IP (as defined in the RCLA), to Amyris, as well as a complete disengagement of the Parties' existing commercial relationship. The Lavvan Settlement was incorporated into the Debtors' *Third Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. 1200] (the "Plan") and the terms thereof were filed as Exhibit U to the Plan Supplement [Docket No. 1193-12].

10. On February 7, 2024, the Court entered the *Order Confirming Third Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and its Affiliated Debtors* [Docket No. 1251] (the "Confirmation Order"), confirming the Plan. In the Confirmation Order, the Court made specific findings[4] with respect to and approved of[5] the Lavvan Settlement and Lavvan Settlement Agreement.

---

[4] *See* Confirmation Order at ¶¶ 32 – 34.
[5] *See* Confirmation Order at ¶ 154.

11. As of the date hereof, the Effective Date (as defined in the Plan) has not yet occurred. Pursuant to paragraph 3 of the Lavvan Settlement Agreement, if the Effective Date has not occurred by March 15, 2024, the Debtors are required to file and pursue a motion under Bankruptcy Rule 9019 seeking approval of the Lavvan Settlement Agreement. To the extent the Effective Date of the Plan occurs prior to the hearing on this Motion, the Debtors will withdraw this Motion, as it will be moot.

## Relief Requested

12. By this Motion, pursuant to Bankruptcy Rule 9019 and sections 105 and 363 of the Bankruptcy Code, the Debtors request the entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) approving the Lavvan Settlement Agreement; and (ii) authorizing the Debtors to use the Consumer Brands Sale Proceeds[6] to make any payments due to Lavvan under the Lavvan Settlement Agreement.

## Basis For Relief Requested

### C. Entry into the Settlement is Appropriate Under Bankruptcy Rule 9019

13. Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases.[7] Bankruptcy Rule 9019 provides, in relevant part, that on motion by the trustee and after notice and a hearing, the Court may approve a compromise or settlement.[8] In deciding whether to approve a settlement pursuant to Bankruptcy Rule 9019, courts consider whether the compromise is fair, reasonable, and in the best interests of the estate.[9] Although

---

[6] The "Consumer Brands Sale Proceeds" are the proceeds of the sales authorized by this Court by orders found at Docket Numbers 886, 887, 889, 984, 985, 988, and 1074.
[7] *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).
[8] Fed. R. Bankr. P. 9019(a).
[9] *See, e.g.*, *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).

approval of a compromise is within the discretion of the bankruptcy court,[10] the court should not substitute its judgment for that of a trustee or debtor in possession.[11] Accordingly, courts generally defer to a debtor-in-possession's business judgment when there is a legitimate business justification for its decision.[12]

14.  The United States Court of Appeals for the Third Circuit has provided four criteria that a bankruptcy court should consider in determining whether a compromise should be approved: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors.[13] When applying the *Martin* factors to a particular motion, "the court is not supposed to have a 'mini-trial' on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness."[14] A court need not be convinced that a proposed settlement is the best possible settlement, but need only "conclude that it is within the reasonable range of litigation possibilities."[15]

15.  The Debtors believe and submit that the compromise embodied in the Lavvan Settlement is fair, reasonable, and in the best interests of the Debtors, their creditors, and the estates, and satisfies each of the applicable *Martin* factors.

16.  ***Probability of Success in Litigation***.  While the Debtors are ultimately confident that they would likely prevail against Lavvan, the Lavvan Settlement provides a final disposition

---

[10] *See, e.g., In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006)
[11] *See, e.g., In re Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996).
[12] *Martin*, 91 F.3d at 395.
[13] *Id.* at 393.
[14] *Aetna Casualty & Surety Co. v. Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D.N.J. 2000) (internal quotations omitted); *see also In re TSIC, Inc.*, 393 B.R. 71, 79 (Bankr. D. Del. 2008); *World Health*, 344 B.R. at 296.
[15] *World Health*, 344 B.R. at 296 (internal citations omitted).

of multiple litigations, both in and outside of these Chapter 11 Cases and which would have taken at minimum, months to resolve.

17. ***Likely Difficulties in Collection***. Because of the nature of the dispute among the Parties, this factor is not relevant.

18. ***Complexity, Expense, Delay, and Inconvenience***. The disputes between the Debtors and Lavvan involve complicated issues of, among other things, intellectual property law, contract law, secured transaction law, and bankruptcy law. To date, millions of dollars have been spent by the Parties in the ongoing disputes among the Parties and if the disputes continue, those expenses will continue to accrue in large amounts.

19. ***Paramount Interest of Creditors***. The compromise set forth in the Lavvan Settlement Agreement is in the paramount interest of the Debtors' creditors because, as described above, approval of the Lavvan Settlement will avoid the time and expense of costly litigation. Most importantly for unsecured creditors, though, is that the Lavvan Settlement assures that Lavvan's asserted nine-digit claim against the Debtors, which, if allowed, would substantially dilute general unsecured creditor recoveries, will be disallowed.

20. Accordingly, the Debtors believe that the compromise embodied in the Lavvan Settlement is fair, reasonable, and in the best interests of the Debtors and their estates and stakeholders. Moreover, the Lavvan Settlement is the product of extensive, active, good-faith discussions and arms'-length negotiations among the Parties, and such findings, as reflected in the Plan,[16] constitute law of the case. For these reasons, the Debtors believe that the Lavvan Settlement represents a beneficial outcome for the Debtors' estates and should be approved pursuant to Bankruptcy Rule 9019.

---

[16] Plan, Article IV.A.4.

SF 4879-7389-1753.5 03703.004
ACTIVE/128197440.10

8

D.   **Entry into the Lavvan Settlement is Appropriate Under Sections 363 and 105(a) of the Bankruptcy Code, to the Extent Applicable**

21.   Pursuant to 11 U.S.C. § 363(c)(1), the Debtors may "enter into transactions . . . in the ordinary course of business" and "use property of the estate in the ordinary course of business without notice or a hearing."  To the extent the Lavvan Settlement implicates sections 363(b) or 105(a) of the Bankruptcy Code, the Debtors seek authority thereunder for entry of the proposed order approving the Lavvan Settlement.  "Settlement agreements frequently involve the disposition of assets of the estate."[17]  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[18]

22.   In determining whether authorization of the use, sale, or lease of property of the estate is appropriate, courts normally apply the business judgment standard.[19]  Under the business judgment standard, so long as a debtor's decision is reasonable and in the best interests of the bankruptcy estate, courts generally defer to the business judgment of the debtor's management.[20]

23.   The Debtors submit that the terms of the Lavvan Settlement, including the transfer of all of Lavvan's rights, licenses and other related interests arising from or related to the RCLA

---

[17] *Martin*, 91 F.3d at 394; *see also Goodwin v. Mickey Thompson Entertainment Group, Inc. (In re Mickey Thompson Entertainment Group, Inc.)*, 292 B.R. 415, 421 (B.A.P. 9th Cir. 2003) ("[D]isposition by way of 'compromise' of a claim that is an asset of the estate is the equivalent of a sale of the intangible property represented by the claim.") (citing *Martin*, among other cases); *In re Schuerman*, Case No. 07-31745, 2008 WL 336393, at *8 (Bankr. N.D. Ohio Feb. 5, 2008) ("In addition, to an extent that is presently not clear to the court, the compromise may involve the sale of assets of the estate.") (citations omitted).

[18] 11 U.S.C. § 363(b)(1); *see also Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999); *Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy.").

[19] *See Martin*, 91 F.3d at 395; *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

[20] *See Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task. Delaware courts have said that it may be accomplished by showing either irrationality or inattention.").

and related agreements, including but not limited to, in Cannabinoid IP (as defined in the RCLA), to Amyris, reflect a sound exercise of the Debtors' business judgment. If the Debtors were to engage in continued, multi-jurisdictional litigation with Lavvan, they would incur considerable professional fees and other expenses. The compromise set forth in the Lavvan Settlement Agreement avoids the incurrence of these costs and provides an efficient resolution of all of the complex disputes by and among the Parties, and also provides for the above-described transfer of Lavvan's rights and licenses, which would not have been an outcome in the litigation and further supports the Debtors' entry into the Lavvan Settlement. Accordingly, the Debtors' entry into the Lavvan Settlement should be authorized and approved pursuant to section 363(b) of the Bankruptcy Code.

24. Moreover, pursuant to section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[21] Section 105(a) has been interpreted to expressly grant bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain."[22]

25. Authorizing the Debtors' entry into the Lavvan Settlement and approval of its terms are well within the equitable powers of this Court. As described in further detail above, approval of the Lavvan Settlement is in the best interest of the Debtors, their estates, and their stakeholders. Accordingly, the Debtors respectfully submit that the compromise set forth in the Lavvan Settlement Agreement satisfies the requirements of sections 363 and 105(a) of the Bankruptcy

---

[21] 11 U.S.C. § 105(a).

[22] *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (en banc).

Code and request that the Court authorize the Debtors' entry into the Lavvan Settlement by granting this Motion.

## Waiver of Stay

26.     Time is of the essence concerning the consummation of the Lavvan Settlement.  As such, to ensure the relief requested in the Motion is implemented immediately, the Debtors request that this Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

27.     The Debtors will provide notice of this Motion to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) counsel to the Committee, (i) White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, IL 60606, Attn: Gregory F. Pesce, Esq. (gregory.pesce@whitecase.com) and Andrew F. O'Neill, Esq. (aoneill@whitecase.com), and (ii) White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: John Ramirez, Esq. (john.ramirez@whitecase.com) and Andrea Kropp, Esq. (andrea.kropp@whitecase.com); (c) co-counsel to the Official Committee of Unsecured Creditors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801, Attn: Christopher M. Samis (csamis@potteranderson.com), Katelin A. Morales (kmorales@potteranderson.com), and Sameen Rizvi, Esq. (srizvi@potteranderson.com); (d) counsel to the DIP Lenders, DIP Agent, and the Foris Prepetition Secured Lenders, Goodwin Procter LLP, 620 Eighth Avenue, New York, NY 10018, Attn: Michael H. Goldstein, Esq. (mgoldstein@goodwinlaw.com) and Alexander J. Nicas, Esq. (anicas@goodwinlaw.com); (e) co-counsel to the DIP Lenders, the DIP Agent, and the Foris Prepetition Secured Lenders, Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite

5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899; Attn: David M. Fournier, Esq. (david.fournier@troutman.com); (f) counsel to Lavvan Inc.; and (g) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

### **No Prior Request**

28.     Other than the approval of the Lavvan Settlement in the context of the confirmation of the Plan, no prior request for the relief sought in this Motion has been made to this or any other court.

### **Conclusion**

WHEREFORE, the Debtors respectfully request the entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: March 11, 2024               PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Steven W. Golden*
Richard M. Pachulski, (admitted *pro hac vice*)
Debra I. Grassgreen, (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
Jason H. Rosell, (admitted *pro hac vice*)
Steven W. Golden (DE Bar No. 6807)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Tel:  302-652-4100
Fax: 302-652-4400
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
joneill@pszjlaw.com
jrosell@pszjlaw.com
sgolden@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*