# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMYRIS, INC., *et al.*,<br><br>               Debtors.¹ | Chapter 11<br><br>Case No. 23-11131 (TMH)<br><br>(Jointly Administered) |
| AMYRIS, INC.,<br><br>               Plaintiff,<br><br>vs.<br><br>WINDSONG GLOBAL, LLC,<br><br>               Defendant. | Adv. Proc. No. 24-_____ (TMH) |

## COMPLAINT FOR (I) BREACH OF CONTRACT AND
## (II) TURNOVER OF PROPERTY OF THE DEBTORS' ESTATE

Amyris, Inc. ("Amyris") one of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter case and the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding") by and through its undersigned counsel, hereby files this complaint (the "Complaint") against Defendant Windsong Global, LLC ("Windsong" or "Defendant"). Amyris alleges upon knowledge of its own actions and upon information and belief as to other matters as follows:

## PRELIMINARY STATEMENT

1. Amyris brings this action against Windsong as a result of its nonpayment of amounts due and owing under two services agreements between Windsong and Amyris in the aggregate amount of $127,411.96. Windsong has failed to make payments in exchange for

---

¹ A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/amyris. The location of Debtor Amyris Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 5885 Hollis Street, Suite 100, Emeryville, CA 94608.

4877-8098-5780.4 03703.004

services rendered by Amyris under the terms of the agreements. Despite due demand, Windsong has failed to pay all or any portion of the amounts due and owing under the agreements.

2. Through this Complaint, Amyris seeks (a) damages from Windsong in an amount equal to the aggregate amount due and owing under the TSA (as defined below), and (b) turnover by the Windsong to Amyris of the foregoing amounts.

## JURISDICTION AND VENUE

3. This Adversary Proceeding arises in and relates to the Debtors' cases pending before the United States Bankruptcy Court for the District of Delaware (the "Court") under Chapter 11 of the Bankruptcy Code.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

5. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b), and, pursuant to Rule 7008 of the Bankruptcy Rules, the Debtors consent to the entry of a final order by the Bankruptcy Court in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

7. At all relevant times herein, Plaintiff is a Debtor and Debtor in Possession in the above-captioned Chapter 11 case. Amyris is a corporation, formed under the laws of Delaware with its principal place of business located at 5885 Hollis Street, Suite 100, Emeryville, California 94608.

8. Upon information and belief, Windsong is a Delaware limited liability company with its principal place of business located at 15 Riverside Ave., Westport, Connecticut 06880.

**CASE BACKGROUND**

9. On August 9 and August 21, 2023 (as applicable, the "Petition Date"), the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10. On August 27, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"), consisting of the following seven members: (i) Cosan U.S. Inc., (ii) U.S. Bank Trust Company, National Association as Trustee, (iii) Sartorius Stedim North America, Inc., (iv) Hearst Magazine Media, Inc., (v) Wiley Companies, (vi) Park Wynwood, LLC, and (vii) Allog Participacoes, Ltda. [Docket No. 152].

11. On February 7, 2024, the Court entered the *Order Confirming Third Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors* [Docket No. 1251] (the "Confirmation Order"), confirming the *Debtor's Third Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors* [Docket No. 1200] (the "Plan").

**STATEMENT OF FACTS**

**A.    The Consumer Brand Sales**

12. On October 16, 2023, the Court entered the Bid Procedures Order [Docket No. 553] with respect to the Debtors' Operating Consumer Brands (as defined therein), including the JVN Hair and Pipette Operating Consumer Brands.

13. Pursuant to and in accordance with the Bid Procedures Order, (a) on December 21, 2023, the Court entered the *Order (A) Approving the Sale of Substantially All of the Debtors Assets Relating to Pipette Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving Assumption and Assignment of Certain Executory Contracts; and (C) Granting Related*

*Relief* [Docket No. 984] (the "Pipette Sale Order"); and (b) on January 4, 2024, the Court entered the *Order (A) Approving the Sale of Substantially All of the Debtors Assets Relating to JVN Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving Assumption and Assignment of Certain Executory Contracts; and (C) Granting Related Relief* [Docket No. 1074] (the "JVN Sale Order"). Pursuant to the Pipette Sale Order and the JVN Sale Order, Windsong purchased substantially all of the Debtors' assets associated with the Pipette and JVN Operating Consumer Brands (the "Pipette Sale" and the "JVN Sale," respectively). The Pipette Sale and the JVN Sale each closed on January 9, 2024. *See* Docket Nos. 1118 and 1119.

**B.    The Transition Services Agreements**

14.    In connection with the Pipette Sale and the JVN Sale, Amyris and Windsong entered into that certain (a) *Transition Services Agreement*, dated January 9, 2024 (the "Pipette TSA"); and (b) *Transition Services Agreement*, dated January 9, 2024 (the "JVN TSA," and together with the Pipette TSA, the "TSA"). True and correct copies of the Pipette TSA and JVN TSA are attached hereto as **Exhibit A** and **Exhibit B**, respectively.[2]

15.    Pursuant to the TSA, Amyris, as Seller, provides Windsong, as Buyer, certain Services (as defined in the TSA). In exchange for the provision of the Services provided by Amyris, Windsong shall pay Amyris (a) the amount for each Service and (b) reasonable and documented out-of- pocket expenses in the provision of any Service. Section 2.02(a) of the TSA specifically provides:

> As consideration for provision of the Services, Buyer shall pay Seller the amount specified for each Service on such Service's respective Service Exhibit. In addition to such amount, in the event that Seller or any of its Affiliates incurs reasonable and documented out-of- pocket expenses in the provision of any Service, including, without limitation, license fees and payments to third-party service providers or subcontractors, but excluding payments made to employees

---

[2]    The Pipette TSA and the JVN TSA are, for all relevant purposes, identical. Accordingly, unless otherwise noted, any references to the TSA apply equally to the Pipette TSA and the JVN TSA. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the TSA.

of Seller or any of its Affiliates pursuant to **Section 2.01** (such included expenses, collectively, "**Out-of-Pocket Costs**"), Buyer shall reimburse Seller for all such Out-of-Pocket Costs in accordance with the invoicing procedures set forth in Section **2.02(b)**.

16.     The process for submitting invoices to Windsong for Services is set forth in Section 2.02(b)(i) of the TSA:

> Seller shall provide Buyer, in accordance with **Section 6.01** of this Agreement, with bi-weekly invoices ("**Invoices**"), which shall set forth in reasonable detail, with such supporting documentation as Buyer may reasonably request with respect to Out-of-Pocket Costs, amounts payable under this Agreement; and
>
> payments pursuant to this Agreement shall be made within five (5) business days after the date of receipt of an Invoice by Buyer from Seller.

17.     In the event Windsong disputes an Invoice, Windsong "shall deliver a written statement to [Amyris] no later than three (3) days prior to the date payment is due on the disputed Invoice listing all disputed items and providing a reasonably detailed description of each disputed item." TSA § 2.05.  "Amounts not so disputed shall be deemed accepted and shall be paid, notwithstanding disputes on other items, within the period set forth in **Section 2.02(b)**." *Id.*

C.     **Windsong Fails to Pay Amounts Due and Owing Under the Transition Services Agreement**

18.     On March 7, 2024, in accordance with Section 2.02(b)(i) of the TSA, Amyris issued to Windsong invoices for Services rendered under (a) the Pipette TSA (the "Pipette Invoice") and (b) the JVM TSA (the "JVM Invoice," and together, the "Invoices"), for the period January 20-31, 2024.  True and correct copies of the Pipette Invoice and the JVM Invoice are attached hereto as **Exhibit C** and **Exhibit D**, respectively.

19.     As reflected on the Invoices, the amount due and owing for Services rendered under the Pipette Invoice is $ 30,476.77, and the amount due and owing for Services rendered under the JVM Invoice is 96,935.19.  Thus, the aggregate amount due and owing for Services rendered under the TSA is $127,511.96 (the "Past Due Amount").  The Past Due Amount was due by March 17, 2024. *See* Exhibit B.  Windsong did not dispute the Invoices under Section 2.05 of the TSA.  As

set forth on the chart attached hereto as **Exhibit E**, since receiving the Invoices, Windsong has failed to pay Amyris any of the amounts due and owing thereunder.[3]

20. By letter dated March 21, 2024, Amyris made demand on Windsong for payment under the Invoices in the amount of $127,411.96 (the "Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as **Exhibit F**. The Demand Letter provides:

> As of the date hereof, Windsong is past due in remitting the $127,411.96 (the "Past Due Amount") it owes under the TSA to Amyris.
>
> In accordance with Section 6.08 of the TSA,[4] unless Windsong remits the entirety of the Past Due Amount to Amyris on or before March 29, 2024, Amyris will commence action against Windsong in the Bankruptcy Court to recover such Past Due Amount.

Demand Letter at 2. Despite Amyris' demand, Windsong has not paid all or any portion of the Past Due Amount.

21. Amyris has provided all Services contemplated by the TSA to Windsong and has incurred actual expenses in doing so, as reflected in the Invoices. As of the date hereof, Windsong is past due in remitting the $127,411.96 it owes to Amyris under the TSA.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

22. Amyris repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

23. The TSA is a binding and enforceable contract.

24. Windsong breached the TSA by failing to pay amounts due and owing thereunder.

25. Amyris is entitled to damages from Windsong in an amount equal to the aggregate amount due and owing under the TSA.

---

[3] Prior to Amyris's issuance of the Unpaid TSA Invoices, Windsong paid Amyris $50,000.00 towards the previously-invoiced GXO moveout costs. *See* **Exhibit E**.

[4] Section 6.08 provides, in pertinent part, that "[a]ny legal suit, action or proceeding arising out of or based upon this agreement or the transactions contemplated hereby must be instituted in the Bankruptcy Court, and each party irrevocably submits to the exclusive jurisdiction of such court in any such suit, action or proceeding."

26. As a direct and proximate cause of Windsong's breach of the TSA, Amyris has suffered damages in the total amount of at least $127,411.96.

## SECOND CLAIM FOR RELIEF
(Turnover of Property – 11 U.S.C. §§ 105(a) and 542(b))

27. Amyris repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

28. Windsong owes to Amyris an amount equal to the aggregate amount due and owing under the TSA.

29. The Past Due Amount is property of the Debtors' estate.

30. Windsong has not paid the Past Due Amount under the TSA to Amyris.

31. As of the date of filing of this Complaint, Windsong has not turned over to Amyris all or any of the amounts due under the TSA.

32. Amyris is entitled to the turnover of all amounts due under the TSA.

**WHEREFORE**, Amyris prays for judgment as follows:

a. On its First Claim for Relief, damages in an amount to be determined at trial, including, among other things, the aggregate amount due and owing under the TSA;

b. On its Second Claim for Relief, ordering turnover by Windsong to Amyris of an amount equal to the aggregate amount due and owing under the TSA, and

c. Such other and further relief as this Court deems just and proper.

[*Remainder of Page Intentionally Left Blank*]

| | |
|---|---|
| Dated: April 5, 2024 | **PACHULSKI STANG ZIEHL & JONES LLP**<br><br>*/s/ Steven W. Golden*<br>Richard M. Pachulski (admitted *pro hac vice*)<br>Debra I. Grassgreen (admitted *pro hac vice*)<br>James E. O'Neill (DE Bar No. 4042)<br>Steven W. Golden (DE Bar No. 6807)<br>Hayley R. Winograd (admitted *pro hac vice*)<br>919 N. Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Facsimile: (302) 652-4400<br>Email:  rpachulski@pszjlaw.com<br>            dgrassgreen@pszjlaw.com<br>            joneill@pszjlaw.com<br>            sgolden@pszjlaw.com<br>            hwinograd@pszjlaw.com<br><br>*Counsel to the Plaintiff, and Debtors and Debtors in Possession* |